Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Street, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Peter Offenbecher
SKELLENGER BENDER, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
(206) 623-6501

Attorneys for Defendant James Wells

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>JAMES MICHAEL WELLS,<br><br>                    Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>**RESPONSE TO GOVERNMENT'S MOTION TO COMPEL COMPLIANCE WITH LOCAL RULES AND UNSEAL *EX PARTE* FILINGS, AND TO RECONSIDER APPOINTMENT OF CJA COUNSEL** |

      The Defendant James Wells, by and through his attorneys, Rich Curtner, Federal Defender, and Peter Offenbecher, submits this response to the Government's Motion to Compel Compliance with Local Rules and Unseal Ex Parte Filings, and to Reconsider Appointment of CJA Counsel (Dkt. No. 36).

**I.     THE COURT PROPERLY CONSIDERED THE EX PARTE MOTION FOR APPOINTMENT OF ADDITIONAL COUNSEL UNDER SEAL AS THIS IS SPECIFICALLY AUTHORIZED BY THE GUIDE TO JUDICIARY POLICIES AND PROCEDURES AND IS ALSO THE PRACTICE PREVIOUSLY FOLLOWED BY THIS COURT IN APPOINTMENT OF SECOND COUNSEL FOR A DEFENDANT CHARGED WITH A CAPITAL CRIME.**

The government objects to the fact that the application for appointment of second counsel pursuant to 18 U.S.C. § 3005 (the court "shall promptly, upon the defendant's request assign 2 such counsel" for a defendant indicted for a "capital crime") was filed *ex parte* and under seal. Dkt. 36 at 3-7.

The Guide to Judicial Policies and Procedures ("Guide") specifically provides the Court the authority to place documents pertaining to CJA appointments under seal:

> **§ 510.40 CJA Information Placed Under Seal**
>
> Upon request, or upon the court's own motion, documents pertaining to activities under the CJA and related statutes maintained in the clerk's open files, which are generally available to the public, may be judicially placed under seal or otherwise safeguarded until after all judicial proceedings, including appeals, in the case are completed and for such time thereafter as the court deems appropriate. Interested parties should be notified of any modification of such order.

This is consistent with other sections of the Guide which provide that certain CJA filings in federal death penalty cases be filed *ex parte* and maintained under seal. *See, e.g.*, Vol. 7, Ch. 6, § 640 ("(b) Case budgets [for appointed counsel in federal death penalty cases] should be ex parte and filed and maintained under seal.").

Additionally, in filing the application *ex parte* and under seal, the Federal Public Defender was following the previous custom and practice in this Court. This is the practice that this Court followed in *United States v. Keyes*, No. 3:12-cr-00041-TMB, another case in which the defendant was charged with a capital crime. *See, e.g., Keyes* docket at 57 (documenting the *Ex Parte Hearing on Ex Parte Request for Immediate Appointment of Third Counsel*).

## II. THE ABSENCE OF A PRO HAC VICE APPLICATION BY MR. OFFENBECHER IS CONSISTENT WITH THE POLICY AND PAST PRACTICE OF THE CJA ADMINISTRATOR FOR THE DISTRICT OF ALASKA AND THE PAST PRACTICE OF THE DISTRICT COURT IN APPOINTING COUNSEL FROM OUTSIDE THE STATE. THE GOVERNMENT HAS NO STANDING TO OBJECT TO MR. OFFENBECHER'S APPOINTMENT ON THIS BASIS.

The government apparently objects to the fact that Mr. Offenbecher has not filed an application for permission to appear *pro hac vice* and participate in this district, pursuant to Local Rule 83.1. The government argues that the "substantial documentation" of an attorney's biography provided in a *pro hac vice* application would assist the government in weighing in on whether a particular attorney creates a risk of reversal on appeal because of a "failure of competence or ethics on the part of appointed counsel." Dkt. 36 at 7. Such failures, the government argues, "may lead to appellate issues and needless delays of justice . . . thus shortchanging justice for victims and their families." *Id.* The government argues that it has an important role in making sure that the Court not appoint defense counsel who may have "a history of conflicts of interest" or "a history of counsel misconduct with respect to witnesses" and which might cause the government to be concerned about the safety, and mental and emotional well-being of the victims and possible witnesses in this case." Dkt. 36 at 8.

The government's position that it has an important role in determining who is appropriate counsel for the Court to appoint to represent a criminal defendant is puzzling. Appointment of counsel is a matter that has always been reserved to the good judgment of the Court, not the prosecutor, who has an inherent conflict of interest in choosing who his opponent might be in a particular case. Surely the Court would not entertain a motion or conduct a hearing to entertain the Federal Public Defender's opinion about whether a particular prosecutor in a particular case is likely to disrupt the proceedings or cause a reversal on appeal because he or she is prone to unethical behavior, although we know that convictions sometimes get reversed for exactly this

reason.  *See, e.g., United States v. Kohring,* 637 F.3d 895 (9th Cir. 2011) (conviction reversed because federal prosecutor concealed from defense counsel important exculpatory impeachment information about the government's key witness that was required to be disclosed pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972)).

With respect to the absence of a *pro hac vice* application by Mr. Offenbecher, the facts are set forth in Mr. Offenbecher's Declaration, which is filed with this pleading.  To summarize, based on Mr. Offenbecher's prior experience in another other District of Alaska CJA appointment, the information provided to him by the CJA Administrator for this District, the experience of other Washington lawyers who have been CJA appointed in this district, the fact that he is associating in this case with a member of the Alaska Bar Association who is also the appointed Federal Public Defender for the District, and the fact that he is appearing by an Order of this Court, it appeared to Mr. Offenbecher that no *pro hac vice* application was necessary.  *See* Offenbecher Dec. at 1-3.

However, all of the "substantial information," Dkt. 36 at 8, which *would* be included in a *pro hac vice* application, is included in Mr. Offenbecher's Declaration.  While it is apparently not the past practice of this Court to require CJA appointed counsel to do so, Mr. Offenbecher will, of course, file such an application at the direction of the Court.

**III. THE COURT HAS CORRECTLY APPOINTED ADDITIONAL COUNSEL PURSUANT TO 18 U.S.C. 3005 AND Vol. 7, Ch. 6, § 620.10.10 OF THE GUIDE TO JUDICIARY POLICIES AND PROCEDURES, BECAUSE MR. WELLS IS CHARGED WITH A CAPITAL CRIME, THAT IS, A CRIME IN WHICH THE DEATH PENALTY MAY BE SOUGHT IF THE GOVERNMENT CHOOSES TO DO SO. THE GOVERNMENT HAS NO STANDING TO OBJECT TO THE COURT'S APPOINTMENT ON THIS BASIS.**

### A. Authority for Appointment of Additional Counsel

With respect to the appointment of counsel in a federal death penalty case, 18 U.S.C. § 3005 provides, in pertinent part, as follows:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization, or, if no such organization exists in the district, of the Administrative Office of the United States Courts. The defendant shall be allowed, in his defense to make any proof that he can produce by lawful witnesses, and shall have the like process of the court to compel his witnesses to appear at his trial, as is usually granted to compel witnesses to appear on behalf of the prosecution.

With respect to the appointment of counsel in a federal death penalty case, the Guide provides as follows:

> (a) As required by 18 U.S.C. § 3005, at the outset of every capital case, courts should appoint two attorneys, at least one of whom is experienced in and knowledgeable about the defense of death penalty cases.
>
> (b) Under 18 U.S.C. § 3599(a)(1), if necessary for adequate representation, more than two attorneys may be appointed to represent a defendant in a capital case.

The Guide to Judiciary Policies And Procedures, Vol. 7, Ch. 6, § 620.10.10 (a) and (b).

## B.    Government Resources Expended in the Past Year Investigating this Case

In order to assess the resources that the defense may need to effectively represent Mr. Wells in this matter the Court should evaluate (1) the resources that the government has expended in investigating and prosecuting this matter to date; (2) the physical product of that investigation; and (3) the nature and scope of an effective investigation in defense of Mr. Wells. To assist the Court as to item (1), the defense has asked the government to provide the data as to the resources it has expended in investigating this case, including the number of attorneys assigned to the case, attorney hours expended, agents assigned to the case, agent hours expended, etc:

> Last evening, I received your motion requesting that the Court reconsider my appointment to this case. In order for the defense to properly respond to your motion, we will need you to provide to us the following information regarding the resources the government has expended in this investigation to date:
>
> 1. The number of attorneys from the United States Attorney's Office, the Department of Justice, the Coast Guard, the local prosecutor's offices, or any other law enforcement agencies who have worked on this matter since April 12, 2012;
> 2. With respect to these lawyers, the percentage of their time that has been devoted to this investigation since April 12, 2012, and the number of hours these lawyers have spent on this investigation;
> 3. The number of paralegal staff in your office or other offices, the percentage of their time, and the number of hours that have been devoted to this investigation since April, 12, 2012;
> 4. The number of agents, officers, and troopers from the Federal Bureau of Investigation (FBI), the Coast Guard Investigative Service (CGIS), Alaska State Troopers (AST), Kodiak Police Department (KPD), or any other law enforcement agencies who have worked on this matter since April 12, 2012;
> 5. With respect to the agents, officers, and troopers, the percentage of their time that has been devoted to this investigation since April, 12, 2012, and the number of hours these officers have spent on this investigation;
> 6. The number of witnesses that have been interviewed regarding this matter since April 12, 2012;
> 7. The number of attorney and agent hours spent traveling to/from, or residing on, Kodiak Island since April 12, 2012, in order to prepare the government's case in this matter;

8. The number of experts consulted by the government and time spent to date by lawyers or agents preparing experts to conduct tests or testify in this matter;
9. The number and character of any forensic tests performed in preparing this matter for trial.

This information (i.e., the amount of lawyer and investigative resources the government has devoted to this investigation since April 12, 2012) is all relevant to the question you have raised in your motion: Do Mr. Curtner and Federal Public Defender Office require additional assistance in this potentially capital murder case. The Court will need this information to fairly determine whether the appointment of additional CJA counsel is appropriate in this case.

We request that you provide this information promptly so that we may timely respond to your motion. Should you be unwilling to provide this information prior to the hearing on this motion, we ask that you assemble the information so that we can examine a witness (someone from your office or one of the case agents) under oath at the evidentiary hearing that you have requested on your motion.

If you are unwilling or unable to provide this information to us, then we will be required to provide the Court our best good faith estimate of these facts from a review of the discovery materials that you have provided, to give the Court a good sense of the scope of the task ahead for the defense team in responding to the product of your investigation.

*Letter from Peter Offenbecher to Daniel Cooper and Bryan Schroder (March 28, 2013)* (attached to the Offenbecher Declaration).

As of this writing, the government has not provided the requested information regarding the resources it has invested in this case. Defense counsel will therefore provide the Court with its estimate of the resources the government has expended and the product of its investigation. The Court may also wish to inquire of government counsel as to these questions at the time of the hearing on the government's motion.

Since April 12, 2012, the government has deployed extraordinary resources in the investigation of these homicides on Kodiak Island. From conversations and correspondence with counsel, and an overview of the discovery provided to date, however, it appears that at least three Assistant United States Attorneys (AUSAs) from the United States Attorney's Office for the

District of Alaska are working on this case. There may be more, including lawyers with the Department of Justice; we just will not know unless the Court inquires of counsel for the government. It appears to counsel that at least one of the AUSAs has devoted most of his time in the past 11 months to this case alone. It appears that other lawyers from the Coast Guard have also been involved in the investigation; we do not know the amount of time that they have invested.

Since April 12, 2012, these homicides have been intensely investigated by a team of criminal investigators with various law enforcement agencies, including the Federal Bureau of investigation (FBI), the Coast Guard Investigative Service (CGIS), the Alaska State troopers (AST), and the Kodiak Police Department (APD). We do not know whether some of these agents have been deployed full or close to full time on this case or the particulars of the amount of time that has been expended. It also appears that other law-enforcement agencies both in the state of Alaska and outside the state of Alaska have participated in this year-long investigation. We will not know the facts about the extent of the involvement of these other law enforcement agencies unless the Court inquires of counsel for the government.

The government began investigating this case on April 12, 2012. The government has interviewed over six hundred witnesses and has obtained and executed over twenty search warrants. To date, the government has provided 17,287 pages of discovery, 1,464 photos, eleven audio recordings, twenty-four videos, twelve pieces of miscellaneous discovery, and hundreds of items of physical evidence. Some of the items of physical evidence include Outlook files with hundreds of email messages and the contents of the cellular phone of at least one of the decedents.

The discovery materials have been received on the following dates:

| Date: | Pages of Docs | Photos | Audio | Video | Misc. Discovery |
|---|---|---|---|---|---|
| 02/22/2013 | 2039 | 1464 | 8 | 0 | 0 |
| 02/22/2013 | 2639 | 0 | 0 | 0 | 0 |
| 02/25/2013 | 138 | 0 | 0 | 2 | 0 |
| 03/01-05/2013 | 93 | 0 | 0 | 0 | 0 |
| 03/15/2013 | 3804 | 0 | 0 | 21 | 8 (xls. files & autocad |
| 03/18/2013 | 7307 | 0 | 0 | 0 | 0 |
| 03/20/2013 | 1267 | 0 | 3 | 1 | 4 (Forensic reports) |
| 03/20/2013 - (ThumbDrive)* | | 371 | | | |
| Total Pages: **17,287** | | **1835** | **11** | **24** | **12** |

It is our understanding that the government still intends to provide Mr. Wells with additional video discovery.

It seems quite clear that the government has expended thousands of hours of attorney and agent time on this case over the past year.

C. **Defense Counsel Review of Discovery to Date**

Defense counsel for Mr. Wells have only begun reviewing and assimilating the thousands of pages of discovery. This is a painstaking and slow process, particularly since many of the documents have been heavily redacted.

The government has not provided defense counsel with a list of the hundreds of potential witnesses in this case. Although the government may not be required to share this information at this point, the government's failure to provide this information greatly increases the amount of time that Mr. Wells' defense team must devote to trying to ascertain whom to interview regarding these homicides.

Defense counsel are also in the process of analyzing information related to forensic evidence such as the crime scene, guns and ballistics, fingerprints, vehicles, tires, and personnel and military records.

The government completed its investigation and timed the charging decision when it had all of its ducks in a row and when the AUSAs were prepared to proceed with the case. On the other hand, neither Mr. Curtner and Mr. Offenbecher (or any other criminal defense lawyer who might be appointed) planned for this particular case to be a full time endeavor at this particular time. Understandably, both Mr. Curtner and Mr. Offenbecher have long standing obligations to other clients and other courts in the near term.

### D. Counsel's Obligations in a Death Penalty Case

The Sixth Amendment entitles a criminal defendant to more than mere legal representation; an accused has the right to the effective assistance of competent counsel. *Powell v. Alabama*, 287 U.S. 45, 58 (1932). Adequate time to prepare for a case is essential to render effective assistance. *See Powell*, 287 U.S. at 71 (inadequate case preparation jeopardizes an accused's right to effective assistance of counsel). The need for adequate preparation is paramount when an accused is facing death.

Capital cases are fundamentally different from other criminal cases, not only in the severity of the potential penalty but also in the nature of the evidence and information that must be developed. Sensitive facts need to be disclosed to members of the defense team, who are essentially strangers to the defendant. Developing the necessary level of trust can take many months. The process can be incrementally slow, especially where witnesses are uncooperative.

Defense counsel face difficult and time-consuming tasks in capital cases, especially considering that they operate without the virtually unlimited resources available to the government. When a person's life is at stake, counsel must undertake an exhaustive exploration of every factual and legal aspect of the "defendant's character... and any of the circumstances of the offense." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). In essence, defense counsel prepares for two trials, i.e. the guilt and penalty phases, simultaneously.

Moreover, a capital trial is different from all other cases because the burden of death and its finality are irrevocable. In *Wiggins v. Smith*, 539 U.S. 510, 535 (2003), the Supreme Court outlined minimum tasks for capital counsel, relying on ABA standards on guilt-phase investigation, ABA Guideline 11.4.1, Investigation (1989), which expressly provides:

> Counsel should conduct independent investigations relating to the guilt/innocence phase and to the penalty phase of a capital trial. Both investigations should begin immediately upon counsel's entry into the case and should be pursued expeditiously.

The ABA Guidelines specify that counsel should investigate: (1) potential witnesses, including "witnesses having purported knowledge of events surrounding the offense"; and (2) "physical evidence or expert reports relevant to the offense." ABA Guideline 11.4.1, Section D.3 and D.5 Investigation (1989).

The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. ed. 2003) set forth the expectations of the profession concerning the obligations of counsel in capital cases. ABA Guideline 10.7 states:

RESPONSE TO GOVERNMENT'S MOTION TO COMPEL
COMPLIANCE WITH LOCAL RULES AND UNSEAL *EX PARTE* FILINGS, AND TO RECONSIDER APPOINTMENT OF
CJA COUNSEL – 2
USA v. WELLS, 13-CR-00008-RRB-JDR

Case 3:13-cr-00008-SLG   Document 40   Filed 04/03/13   Page 11 of 15

A. Counsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty.

The Commentary to Guideline 10.7 provides that, appropriate guilt-phase investigation includes review of:

1. Charging documents;

2. Potential witnesses (barring exceptional circumstances, counsel should seek out and interview potential witnesses, including, but not limited to: (1) eyewitnesses or other witnesses having purported knowledge of events surrounding the alleged offense itself; (2) potential alibi witnesses; (3) witnesses familiar with aspects of the client's life history that might affect the likelihood that the client committed the charged offense, the degree of culpability for the offense; (4) members of the victim's family);

3. The Police and Prosecution witnesses;

4. The Physical Evidence;

5. The Scene.

Because the sentence in a capital case must consider mitigation, "anything in the life of the defendant which might militate against the appropriateness of the death penalty for the defendant, penalty phase preparation requires extensive and generally unparalleled investigation into personal and family history."

The ABA Guidelines obligate capital counsel to explore: medical history, family and social history, family history of mental illness, cognitive impairments, substance abuse, domestic violence, poverty, familial instability, neighborhood environment and peer influence, traumatic events, the loss of a loved one or natural disaster, experience of social or ethnic bias, cultural or religious influences, failures of government or social intervention; educational history; military

RESPONSE TO GOVERNMENT'S MOTION TO COMPEL
COMPLIANCE WITH LOCAL RULES AND UNSEAL *EX PARTE* FILINGS, AND TO RECONSIDER APPOINTMENT OF CJA COUNSEL – 3
USA v. WELLS, 13-CR-00008-RRB-JDR

Case 3:13-cr-00008-SLG   Document 40   Filed 04/03/13   Page 12 of 15

service; employment and training history; and prior juvenile and adult correctional experience. (For complete list see Exhibit A- http://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalty_representation/2003guidelines.authcheckdam.pdf p. 1022-23).

Capital counsel at every stage must exercise professional judgment in accordance with the Guidelines and investigate and consider all legal claims potentially available. Counsel must thoroughly investigate the basis for each potential claim before reaching a conclusion as to whether it should be asserted and evaluate potential claims in light of the unique characteristics of death penalty law and practice. ABA Guideline 10.8.

Capital counsel at every stage of the case have a continuing duty to investigate issues bearing upon penalty and to seek information that supports mitigation or rebuts the prosecution's case in aggravation. ABA Guideline 10.11(A). Counsel must consider, in developing their evidence and making strategic decisions with regard to the presentation of such evidence, witnesses familiar with and evidence relating to the client's life and development, from conception to the time of sentencing, that would be explanatory of the offense for which the client is being sentenced, would rebut or explain evidence presented by the prosecutor, would present positive aspects of the client's life, or would otherwise support a sentence less than death; expert and lay witnesses with supporting documentation to provide insight into the client's mental or emotional state; evidence to support a sentence less than death and witnesses who can testify about the adverse impact of the client's execution on the client's family and loved ones. ABA Guideline 10.11(F)1-5.

RESPONSE TO GOVERNMENT'S MOTION TO COMPEL
COMPLIANCE WITH LOCAL RULES AND UNSEAL *EX PARTE* FILINGS, AND TO RECONSIDER APPOINTMENT OF
CJA COUNSEL – 4
USA v. WELLS, 13-CR-00008-RRB-JDR

Case 3:13-cr-00008-SLG   Document 40   Filed 04/03/13   Page 13 of 15

The Supreme Court has emphasized the duties of capital counsel to conduct a thorough investigation. *See, e.g., Rompilla v. Beard*, 54 U.S. 374 (2005). Counsel must have adequate time to develop the relationship of trust required for effective representation in a capital case in order to understand and present the most crucial facts about the defendant.

## IV. CONCLUSION

This is an extraordinarily complex death penalty prosecution, involving homicides that occurred over a year ago on remote Kodiak Island. Over the past year, the government has devoted thousands of hours of attorney and agent time to investigate these homicides. Nevertheless, the government's case against Mr. Wells is admittedly circumstantial, since there is, despite extensive interrogation, no admission by Mr. Wells of any liability and no weapon or other physical evidence weapon linking him to the homicide scene.

It is clearly in the government's short term interest to limit the amount of resources Mr. Wells has to investigate the government's case and respond to these most serious charges. That is why the decision on what resources are appropriate to defend Mr. Wells is committed to the good judgment of the court and not to the prosecutor. The prosecutor has a direct conflict of interest in attempting to influence the Court to limit the resources available to Mr. Wells; that is why the prosecutor has no standing on these issues.

The Court properly considered the Federal Public Defebnder's motion for appointment of counsel ex parte and under seal. Although the filing of a *pro hac vice* motion appears to be superfluous at this point, it will be accomplished if directed by the Court. Finally, the Court has

RESPONSE TO GOVERNMENT'S MOTION TO COMPEL
COMPLIANCE WITH LOCAL RULES AND UNSEAL *EX PARTE* FILINGS, AND TO RECONSIDER APPOINTMENT OF CJA COUNSEL – 5
USA v. WELLS, 13-CR-00008-RRB-JDR

Case 3:13-cr-00008-SLG   Document 40   Filed 04/03/13   Page 14 of 15

correctly appointed additional counsel pursuant to 18 U.S.C. 3005 and Vol. 7, Ch. 6, § 620.10.10 of the Guide To Judiciary Policies And Procedures.

The government's attempt to limit the resources Mr. Wells has to defend this case should be rejected. The government's motion should be denied.

DATED this 4th day of April 2013.

>Respectfully submitted,
>
>/s/Rich Curtner
>Federal Defender
>601 West Fifth Avenue, Suite 800
>Anchorage, AK 99501
>Phone: 907-646-3400
>Fax: 907-646-3480
>E-Mail: rich_curtner@fd.org

Certification:
I certify that on April 4, 2013
a copy of the *Response to Government's Motion to Compel Compliance With Local Rules and Unseal Ex Parte Filings, and to Reconsider Appointment of CJA* was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Daniel R. Cooper , Jr.
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: daniel.cooper@usdoj.gov

/s/Rich Curtner

RESPONSE TO GOVERNMENT'S MOTION TO COMPEL
COMPLIANCE WITH LOCAL RULES AND UNSEAL *EX
PARTE* FILINGS, AND TO RECONSIDER APPOINTMENT OF
CJA COUNSEL – 6
USA v. WELLS, 3:13-CR-00008-RRB-JDR