KAREN L. LOEFFLER
United States Attorney

DANIEL COOPER, JR.
Assistant U.S. Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: daniel.cooper@usdoj.gov
E-mail: bryan.schroder@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | No. 3:13-cr-00008-RRB-JDR |
| | ) | **OPPOSITION TO** |
| Plaintiff, | ) | **DEFENDANT'S MOTION ON** |
| | ) | **SHORTENED TIME FOR** |
| vs. | ) | **RECONSIDERATION OF** |
| | ) | **ORDER SETTING PRETRIAL** |
| JAMES MICHAEL WELLS, | ) | **DEADLINES** |
| | ) | |
| Defendant. | ) | [Docket 45] |

The United States opposes Defendant's Motion on Shortened Time

For Reconsideration of Order Setting Pretrial Deadlines because the

defendant has not shown "the most compelling of reasons" as required

by the Order at Docket 26 (page 5, paragraph 5.), and because the Joint Motion at Docket 18 was the result of negotiations carried out in good faith by both parties. Nothing in the stance or position of the case has changed in the intervening time, other than the addition of Peter Offenbecher as a lawyer appointed to assist Mr. Curtner, who entered his appearance three weeks after the court entered the order at Docket 26.

## I.     The history behind the Pretrial Order at Docket 26.

At the arraignment held February 19, 2013, the court, at the parties' request, ordered the parties to meet and confer, and propose a joint scheduling order. Thereafter, the parties met at the United States Attorney's office on Monday, February 25, 2012, at 10:00 a.m. for that purpose. Mr. Curtner proposed that the prosecution follow the timing and order set out in *U.S. v. Keyes*, another recent capital case in this District. While the prosecutors stated that there are significant differences between the Wells case and the Keyes case, they agreed to look at the pretrial orders. In that meeting, the parties also arranged for the defense team to view the evidence at the FBI, and for

U.S. v Wells
3:13-cr-00008-RRB-JDR          Page 2 of 22

government counsel to make a presentation of the government's theory of the case to the defense team.

After the meeting, the prosecutors reviewed the <u>Keyes</u> pretrial order. Based upon that review, and the discussions with Mr. Curtner and his staff, the Government prepared a draft document titled "Discovery Conference and Notification and Proposed Pre-Trial Deadlines," which was provided to Mr. Curtner and the Federal Defender's Office. The document proposed a number of deadlines. In that draft document, the government disclosed the following information regarding discovery materials: "The indictment came at the end of a lengthy investigation, which generated 343 recorded interviews and 268 non-recorded interviews. The government also executed 20 search warrants, and obtained information through 62 grand jury subpoenas. There is also important video evidence. All of this discovery material must also be analyzed to determine whether there may be new or novel legal issues." Based upon that disclosure, the parties commenced negotiations regarding the scheduling.

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 3 of 22

There were several telephone calls and a number of emails regarding the proposed scheduling.  On February 22, the Federal Defender's Office was provided with, amongst other discovery, the recordings of all of the interviews with Mr. Wells, and copies of all the search warrants issued in this case.[1]  The negotiations and discussions with the Federal Defender's Office relating to pretrial scheduling occurred after the materials were provided to them.

After receiving the materials, Sue Ellen Tatter wrote in an email to the government that she had been asked by Mr. Curtner to respond to the proposed schedule.  In the email, delivered at 3:19 p.m. on February 27, 2013, she made several suggestions and requests.  The government responded at 3:47 p.m. that day, acquiescing in some of the requests, and disagreeing on others.  At 3:59 p.m., Ms. Tatter wrote back stating "all satisfactory except please give us 6 weeks on the statements."  A copy of the email string is attached as Exhibit A.  The government

---

[1] The defense argues that they have not received all of the discovery. However, part of the delay is attributable to the Federal Defender's Office.  That office was told they must provide two hard drives so materials could be copied to the drives.  They were informed of this on March 4th via email at 5:21 p.m.  However, the U.S. Attorney's office did not receive the drives until on or about March 28th.

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 4 of 22

accepted her final proposal, re-captioned the document as "Joint Motion to Continue Complex Case and Proposed Pretrial Deadlines" and filed the document at Docket 18. The name change was the result of a conversation with Mr. Curtner when the agreement was reached that the parties both needed, in the interests of justice, a continuance of the trial date from April 15.

Docket 18 clearly disclosed that the case is complex, and the extent of the investigation. Based upon those disclosures, the defense, in the person of the Federal Defender for the District of Alaska, Mr. Curtner, agreed to the schedule on the Joint Motion. There was no coercion by the government, there was open disclosure, and there was give and take by both parties in the negotiation process. It was an exemplar of good faith negotiations by seasoned counsel in a complex case. Moreover, on March 4, 2013, the defense was provided an open and honest evaluation of the case by the prosecutors, including a presentation of a summary of the evidence and the government's theory of the case.

Based upon the joint motion, on March 1, the court entered its First Pre-Trial Scheduling Order at Docket 20. The government asked for reconsideration of that portion of the order requiring certain deadlines with respect to the so-called "Death Penalty Protocol" and the notice required by 18 U.S.C. § 3593. (In that portion to which the government objected, the court ordered the defense to provide mitigation evidence to the government by May 2, 2013. Order at Docket 20, p. 3.). Upon reconsideration of the First Pre-Trial Order, on March 8, the court issued its Amended First Pre-Trial Order at Docket 26. It is this order which Wells seeks reconsideration a month later.

In the First Amended Pre-Trial Order, the court specifically ordered the United States Attorney "to submit her recommendation and any supporting memorandum concerning whether the death penalty is sought to the Capital Review Committee in a timely manner." (Order, Docket 26, pp. 2 – 3.).

//

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 6 of 22

## II. History of events after the entry of the First Amended Pre-Trial Order.

After the entry of the order, the government continued to produce discovery. The defense team also appeared twice at the FBI to review evidence held there. Mr. Offenbecher entered his appearance on March 11, 2013. At that time, the government attorneys had no idea who he was, whether he was privately retained, or if he was appointed as CJA counsel. The first communication in that regard was by Mr. Curtner outside the courtroom just prior to the hearing before Judge Beistline on March 13. Mr. Offenbecher appeared at the evidence viewing at the FBI with the other members of the defense team on Wednesday, March 20, 2013. No member of the defense mentioned anything about an adjustment to the fast approaching deadlines, even though Mr. Offenbecher received the presentation by the government's lawyers which had been given earlier to Mr. Curtner.

On March 27, 2013, Mr. Offenbecher called and left a voice mail wanting to discuss the case. After exchanging a number of calls, Mr. Offenbecher spoke with the government's lawyers on March 29th. In

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 7 of 22

that call, which lasted over 20 minutes, Mr. Offenbecher stated that he

wanted to change all the due dates.  Government counsel listened to his

reasons.  They were not persuaded.  Moreover, they attempted to

explain the following reasons for the deadlines to which Mr. Wells' then

lawyers had already agreed:

1.  The taped statements, for which transcripts were also
    provided, were six in number, occurred over two days, and were
    a discrete set of statements.  Moreover, the law regarding the
    suppression of statements is well established.  If the statement
    is made while in custody, <u>Miranda</u> warnings must be given.
    (<u>Miranda v. Arizona</u>, 384 U.S. 436,444 (1966)).  The test of
    whether the statement was custodial is an objective test.
    (<u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994)).  Here, the
    court has a recording of the interviews to assist in determining
    whether an objective person in the circumstances thought they
    would be free to leave.  Thus, a period of 56 days (from
    February 22 to April 19) seemed a reasonable amount of time
    in which to file motions to suppress the statements.

2.  The many search warrants were based on "rolling affidavits"
    with new material added as it became known.  While the
    government acknowledged that there were many warrants --
    over 20 -- the issue of probable cause as to each submission was
    discrete.  Since a challenge to whether the affidavit in support
    warrants contained probable cause is generally limited to the
    four corners of the affidavit itself (<u>Crowe v. County of San
    Diego</u>, 608 F3d. 406, 434 (9th Cir. 2010)), a period of 112 days
    seemed reasonable to prepare the motions to suppress.  Once
    again, the law is well settled in this area, and the issues are

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 8 of 22

limited. Eight days shy of four months to prepare such motions was, and is, a reasonable amount of time.

3. Mr. Offenbecher also wanted the death penalty issue addressed early in the proceedings. Specifically, he wanted "the death penalty off the table." Government counsel explained that, in their view, before Mr. Wells could make any informed decisions about this case, the fundamental factual issues had to be determined: would his statements be admissible against him? Would the evidence seized pursuant to the search warrants be suppressed? Whatever the outcome of those motions, the evidentiary issues had to be decided before meaningful negotiations could take place.

4. Mr. Offenbecher was also informed by the government's lawyers that the structure of the motions schedule was reached so the government could prepare the so-called "death penalty memo" required by the Department of Justice in a capital case. He was informed that government counsel were starting it, and recognized that it had to be presented early to accommodate his expressed desire to resolve the issue as expeditiously as possible. This was also in line with the court's expectations as expressed in both Docket 20 and Docket 26.

Mr. Offenbecher was not satisfied with those explanations and arguments. On March 28, government counsel emailed Mr. Curtner, with a copy to Mr. Offenbecher, that to respond to Mr. Offenbecher's request regarding the death penalty issue, we would be willing to meet with the defense team regarding that issue. After

telephone calls, voice mails and emails, an agreement was reached to meet on April 5, 2013 to discuss that discrete issue.

Also on March 28, Mr. Offenbecher sent the letter to government counsel set forth on pages 7 – 8 of the Motion at Docket 45, and in full at Docket 41-2. The government has not responded to the letter because none of the listed material is relevant to any question or issue pending before the court, or ever likely to be before the court. Indeed, the letter seems designed more to inflame than resolve any legitimate issue before the court.

During the meeting on April 5 regarding the death penalty issue, Mr. Offenbecher attempted to bring up the separate issue of changing the First Amended Pre-Trial Order. He was told that that issue was not going to be discussed, and he would need to file a motion. This motion followed. It was in this meeting also that the government informed defense counsel that the government was submitting its recommendation to the Capital Review Committee shortly after May 1, and if they wanted to submit anything in mitigation at this time, it was needed by May 1st, a date consistent with the court's earlier order.

U.S. v Wells
3:13-cr-00008-RRB-JDR          Page 10 of 22

## III.  Argument.

A.    The defendant has not shown "the most compelling of reasons" as required by the Order at Docket 26.

When the court entered the First Amended Pre-Trial Order at Docket 26, it did so upon the advice and representations of the parties expressed in the Joint Motion at Docket 18.  In that joint motion, the parties expressed their agreement, and also clearly set out that this case has been extensively investigated.  The scope of the investigation was disclosed by the number of witnesses interviewed, the number of grand jury subpoenas issued, and the number of warrants sought.  The defendant's lawyers were aware from the outset of the scope of the defendant's statements and the number of warrants, and they had the statements and the warrants in their possession prior to making the joint motion.

Nothing has changed in this case except the addition of a CJA appointment – Peter Offenbecher.  But that is not a compelling reason to alter dates agreed upon by lead counsel after having received the

discovery and negotiated dates by which lead counsel and his staff could, presumably, meet the obligations they had undertaken.

Notwithstanding the appointment of additional CJA counsel, there is no new compelling reason. All of the arguments advanced that this is a capital case, deserving of great and grave care in its prosecution and defense, were known to Mr. Curtner prior to his agreement to the dates. It is no more compelling now than it was then that he attend the defense of this case with the best of his efforts, assigning all such resources within his office as are necessary to a defense of the government's indictment. Having failed to advance any reason, and having been aware of the nature of the case and investigation from the start, the motion should be denied.

B.    That the investigation has been long and detailed is irrelevant to any issue before the court.

The defense argues at pages 6 – 10 of their motion that the government has spent ten months and thousands of hours investigating this case, and therefore they should have months to prepare their defense. The argument is irrelevant, as well as logically flawed. That

the government spent ten months and thousands of hours investigating the case is beyond dispute. The government, having the heavy burden of proof beyond a reasonable doubt, is required to look very carefully at an event such as these two homicides. A rush to charge a person with a double homicide would be contrary to every sense of justice and due process. It is proper and just to collect and consider evidence, to seek out others who may have motive or opportunity, to await the completion of forensic examinations, to consult with those who have specialized knowledge, in short, to be cautious in making an accusation of murder.

But such caution and prudence has no bearing on motions practice, particularly where, as here, the defense was aware of the scope of both discovery materials and investigation. More importantly, perhaps, is that Mr. Curtner was contacted by the United States Attorney in April, 2012 about this investigation, and informed that Mr. Wells might need his assistance. The Federal Defender then met with Mr. Wells, and acted as his spokesman in communications with the U.S. Attorney's Office. The Federal Defender's Office has been aware of the investigation, counseled Mr. Wells regarding the investigation, and

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 13 of 22

facilitated interactions between Mr. Wells and the investigation from and after mid-April, 2012.

Regardless, the issue is not how long it took to collect the investigative materials now called discovery, but whether, having been informed of the scope of the materials, and having received the relevant material itself, the Federal Defender's Office had the information necessary to enter an agreement on scheduling. Likewise, the Federal Defender's Office should not be heard to complain that they are lost in the mass of material. They have been provided the government's theory of the case in a complaint supported by a lengthy affidavit, and have been twice shown a detailed presentation by the government of certain key aspects of the case, including videos and material they may believe to be exculpatory. They cannot in good faith assert that they are lost without benefit of a guide: the guide has been provided.

The logical fallacy of their argument is this: the motions which they have agreed to bring deal with three specific areas. They do not deal with the complete investigation necessary for the defense of the case. Discretely, the areas covered are discovery motions (which are

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 14 of 22

usually resolved by the defense sending a letter first which requests the materials and only reaches the court of there is a dispute), the motions to suppress the statements, and the motions to suppress the physical evidence. The investigation of all possible defenses, such as others with motive and opportunity, does not bear on these three types of motions. The alibi defense may, however, be dependent on the outcome of these motions. But the alibi defense is only one of several possible defenses, any and all of which the defense team will have ample time to investigate prior to trial. Thus, the argument at IV.D. of the motion is irrelevant at this stage of the proceedings. All that is necessary now, at this time, is for the defense counsel to be fully apprised of the events surrounding the statements made by Wells to investigators on April 12th and 13th.

It is also of note that defense counsel did not send investigators to Kodiak to start interviewing witnesses until after they filed the motion for reconsideration. They had not made any effort to even commence their on-site investigation until approximately April 10, when the U.S. Attorney's Office started receiving calls about defense investigators on

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 15 of 22

Kodiak contacting potential witnesses. Whether Mr. Curtner and Mr. Offenbecher intentionally chose the days surrounding and including the one-year anniversary of the homicides to approach witnesses, many of whom were grieving and gathering the emotional courage to attend the memorial service on April 12, or whether they were merely insensitive, or whether they were simply unaware of the date of the homicides, they didn't start their investigation until after they brought this motion.

    C.    There has been reliance on the agreed upon dates.

Wells' argument that there will be no prejudice to the prosecution is ill-informed.  Based upon the agreement, members of the prosecution team arranged their lives and other work commitments. Notwithstanding allegations to the contrary, there has been no one lawyer assigned to the case full time.  Every lawyer assigned to the case, up to this point, has carried an additional case load as well.  That will continue to be so, particularly in light of the reduced government funding known colloquially as "sequestration."  However, funding has been secured to assign a U.S. Coast Guard lawyer to work on the case full time commencing on or about May 15, 2013.

U.S. v Wells
3:13-cr-00008-RRB-JDR        Page 16 of 22

Moreover, the schedule agreed upon by the parties has been factored into trial preparation. With the current schedule, there will be adequate time just prior to trial to prepare witnesses. If the court adopts the schedule proposed by Mr. Wells, the period up through the holidays will be consumed by evidentiary hearings, the court's preparation of Reports and Recommendations, the objections to those reports and Recommendations, the issuance of the Final Report and Recommendation, the objections to the Final Report and Recommendation, and Motions for Reconsideration of the court's final order. Mr. Wells will not know, nor will the government know, what evidence will be admissible, what evidence will be suppressed, or the contours of the final trial strategy until the eve of trial. Such delay eliminates any possibility of resolution short of trial for either party. It is a recipe for disaster, leaving neither party sufficient time to marshal the evidence and witnesses for trial. Such a situation should be avoided if at all possible. Contrary to the defendant's assertions, a delay in the pre-trial schedule will almost certainly lead to a delay in the trial date.

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 17 of 22

D.    Mr. Curtner and Mr. Offenbecher necessarily knew this case was complex when they accepted the appointment.

In paragraph IV.E., the defense argues that the two lawyers assigned to the case, Mr. Curtner and Mr. Offenbecher, have a case load that also requires attention.  Of course they do.  However, they were under an ethical obligation to decline appointment to this case if they lacked sufficient time and resources to effectively and promptly defend Mr. Wells. (Rule 1.3, Alaska Rules of Professional Conduct; see also Comments [1] and [2] to Rule 1.3; Rule 1.16(a) and Comment 1 to Rule 1.6 "A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion . . . "(emphasis added)).  This argument is wholly without merit, and is a red herring drawn across the trail of justice to distract the court from the relevant question before it: has the defense shown the most compelling of reasons to amend the pre-trial scheduling order.

//

E.    Mitigation material can be presented at any time by a defendant.

In the First Pre-Trial Scheduling Order (Docket 20), the court ordered the defense to provide the government with any material in mitigation by May 2.  At no time has the defense objected to that date. Indeed, they insist that the government either decline to pursue the death penalty, or seek declination on an expedited basis, or in any event, make its submission to the Capital Case Unit promptly.[2]

As Mr. Curtner knows, pursuant to Section 9-10.080 of the United States Attorneys' Manual, the U.S. Attorney is required to submit a "Prosecution Memorandum" to the Capital Case Unit which discusses ten areas.  Also, the U.S. Attorney must attach any documents or materials provided by the defense, the "mitigation" submission. However, there is no policy or procedure that bars or prohibits a

---

[2] Mr. McNally's affidavit adds nothing to the arguments advanced by defendant. The "average" number of months for an event has little meaning unless the court is advised also of the number of events being averaged, the maximum and minimum of months for the events, and the two other statistics of central tendency: the mode and the median.  That is, what is the number of that most frequently occurs, and what is the number of months where the number of events occurring before that month and the number of events occurring after that month are equal.  For a complete discussion on the improper use of "averages", see chapter 2, "The Well Chosen Average" in Darrell Huff's classis reference on misuse of statistics, "How to Lie With Statistics," W.W. Norton & Company, 1954.

U.S. v Wells
3:13-cr-00008-RRB-JDR          Page 19 of 22

defendant from providing later submissions or presentations. Indeed, as Mr. Curtner knows from his practice in capital cases, he will have the opportunity as defense counsel to make more than one submission. As a practical matter, Mr. Curtner knows that the submission of mitigation or defense materials is accepted throughout the review process.

All that was requested of the defense at the April 5th meeting was if they have anything they want to go in with the first memorandum, the government needed it by May 1. There has been no attempt to preclude Mr. Wells from presenting his mitigating information, nor will there be. However, if his lawyers want the death penalty question to be disposed of quickly, then they have to participate quickly in that process.

## IV.  **Conclusion**.

Everyone wants justice to be served in this case: Mr. Wells, the court, the U.S. Attorney's Office, and the families of the victims. Justice is best served if the parties move efficiently through the process. Efficiency does not mean hastily. It means with due deliberation and

Case 3:13-cr-00008-SLG   Document 50   Filed 04/15/13   Page 20 of 22

without waste.  Here, the parties were both informed of the scope of the discovery and investigation, were represented by seasoned and able counsel, and after give and take, reached an agreement.  There has been no reason advanced to amend the schedule, much less the most compelling of reasons.  If one party had misled the other, then perhaps such a reason could be termed compelling.  But that is not the case.

//

//

//

//

//

//

U.S. v Wells
3:13-cr-00008-RRB-JDR          Page 21 of 22

Here, Mr. Wells, through his attorneys, was well informed. The motion should be denied.

RESPECTFULLY SUBMITTED this 15th day of April, 2013 in Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/ Daniel R. Cooper, Jr.
DANIEL R. COOPER, JR.
Assistant U.S. Attorney
United States of America


s/ Bryan D. Schroder
BRYAN D. SCHRODER
Assistant U.S. Attorney
United States of America

**Certificate of Service**

I hereby certify that on April 15, 2013,
the foregoing was served electronically via
the CM/ECFsystem on the following counsel
of record:

Rich Curtner
Peter Offenbecher

s/ Daniel R. Cooper
Office of the U.S. Attorney


U.S. v Wells
3:13-cr-00008-RRB-JDR          Page 22 of 22