KAREN L. LOEFFLER
United States Attorney

DANIEL COOPER, JR.
Assistant U.S. Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: daniel.cooper@usdoj.gov
E-mail: bryan.schroder@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-00008-RRB-JDR |
| | ) | |
| | ) | **UNITED STATES'** |
| Plaintiff, | ) | **OBJECTION TO COURT'S** |
| | ) | **SECOND PRETRIAL** |
| vs. | ) | **SCHEDULING ORDER** |
| | ) | |
| JAMES MICHAEL WELLS, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Local Magistrate Rule 6, and 28 U.S.C. § 636(b), the

United States respectfully objects to the Court's Second Pretrial

Scheduling Order of April 30, 2013, filed in the instant case at Docket

56 (hereinafter the "Order"). The First Pretrial Scheduling Order at docket 26 was an agreement negotiated between the parties, after significant discovery was presented to the defense. After reaching that agreement, the defendant moved to change the schedule, adding approximately three months to the primary deadlines for motions to suppress. This change is unnecessary, and if the current process remains in place, will certainly result in a continuation of the trial date, delaying justice for the families of two murdered men and the community of Kodiak.

## Facts of the Instant Case

The defendant has been charged with the murder of two federal employees, an active duty member of the U.S. Coast Guard and a retired Coast Guardsman working for the service as a civilian employee. The murders happened at the duty station of both victims, U.S. Coast Guard Communications Station Kodiak ("COMMSTA Kodiak), on April 12, 2012.

At the time of the murders, three employees should have been in COMMSTA's "Rigger Shop." Two were murdered. The third person was the defendant. Instead, the defendant left voice mails indicating that he had a tire problem and would be in after making repairs. Unfortunately for the defendant, a video camera located between his residence and the COMMSTA captured his truck going Northbound toward the COMMSTA 25 minutes before the murder. Then, immediately before and after the time of the murders, a camera at COMMSTA captures an image of a small, blue SUV entering the parking area behind the Rigger Shop, then leaving again 5 minutes later. At the time, the defendant's wife was in Anchorage, and she left her vehicle, a small blue Honda CR-V, at the Kodiak Airport. The airport is only 2 miles from COMMSTA, also on the route between the defendant's residence and his workplace in the Rigger Shop. A few minutes after the blue car leaves the scene of the murder, the defendant is seen again in his truck by the same camera that caught him heading

Northbound 34 minutes earlier, heading Southbound towards his residence.

The defendant's alibi has a number of weaknesses. His story is that he was driving to work when he noticed that his tire felt low. He turned into the area of the Kodiak Airport, got out, looked at the tire then decided to return home. When confronted with the inconsistency that the actions in his story would only have taken a few minutes time, and the video cameras caught him in the vicinity of the Airport and COMMSTA for 34 minutes, he admitted he had no reasonable explanation to cover the missing time. Even more telling are the results of an examination of the defendant's "low tire" by a forensic tire expert. The expert found that the nail found in the tire had been inserted on purpose, most likely by a nail gun, and the tire was never driven on while the nail was in place. Moreover, the nail resulted in such a slow leak that the loss of pressure would not have been noticeable in a limited period of time.

## The United States' Objections to the Second Pretrial Order

1. <u>The First Pretrial Order was Negotiated in Good Faith and with Significant Knowledge of the Case by the Lead Defense Counsel. There was no Reasonable Change in Circumstances Justifying the New Schedule.</u>

In an effort to provide an orderly progression of the case, and to provide sufficient time for both parties to prepare, the parties negotiated a pretrial motions schedule. At the suggestion of defense counsel, the parties used the schedule ordered by the Court in the most recent case in the District of Alaska that had death penalty implications, *U.S. v. Keyes*. Based upon the negotiations partially documented by the electronic mails at docket 50-1, the parties reached an agreement and reported to the Court. The Magistrate Judge issued the First Pre-Trial Scheduling Order at docket 26. The order concluded by stating that "the Court will not alter the deadlines specified except for the most compelling of reasons."

There has been no change in circumstance from the time of the First Pre-Trial Scheduling Order that provides the "most compelling of reasons." The only real change is that the Federal Public Defender

made an ex parte motion asking the Court to appoint a Seattle lawyer to the case. While the addition of a new lead counsel may provide some level of justification for continuance, Mr. Offenbecher is not the lead counsel. Mr. Curtner has made it clear that he remains lead counsel. Changing the agreed-upon – and court-approved – trial dates just to accommodate the second chair attorney cannot meet the standard of a "compelling reason." For the Court's orders to have meaning, the Court itself must be willing to enforce its own strong language. Without that enforcement, future orders from this Court will simply be treated by the defense as advisory.

2. <u>The Dates Requested by the Defendant, and Promulgated in the Second Pre-Trial Order will Certainly result in a Continuation of the February 17, 2014 Trial Date.</u>

The Second Pre-Trial Scheduling Order continues all the significant pretrial litigation into a 3 month period in the fall. A review of the time required to litigate the key motions, as per the order, the local rules, and a conservative estimate of the Court's decision-making requirements, shows the motions dates adopted by the Court in the

Second Pre-Trial Scheduling Order will certainly lead to a continuance of the trial:

| Action | Time Requirement | Total Time |
|---|---|---|
| Original Motion | | 0 |
| Opposition | 14 days (per docket 56) | 14 days |
| Reply to Opposition | 7 days (per docket 56) | 21 days |
| Schedule and hold evidentiary hearing (estimate) | 10 days | 31 days |
| Research and draft Initial Report and Recommendation (estimate) | 20 days | 51 days |
| Opposition to Initial R &R | 14 days (per F.R.Cr.P 59) | 65 days |
| Reply to Opposition to Initial R & R | 7 days (per F.R.Cr.P 59) | 72 days |
| Research and draft Final R & R (estimate) | 5 days | 77 days |
| Opposition to Final R & R | 14 days (per F.R.Cr.P 59) | 92 days |
| Reply to Opposition to Final R&R | 7 days (per F.R.Cr.P 59) | 99 days |

Applying this conservative time schedule to the dates adopted by the Court in the Second Pre-Trial Scheduling Order, the District Court

U.S. v Wells
3:13-cr-00008-RRB-JDR   Page 7 of 17

would have the motions in front of it for final disposition on the following dates:

| Motion to Suppress Statements | Filing Deadlines | +99 days |
|---|---|---|
| Motions to Suppress Statements | August 30, 2013 | December 8, 2013 |
| Motions to Suppress Evidence | September 27, 2013 | January 4, 2014 |
| Daubert Motions | December 3, 2013 | March 12, 2014 |

Thus, some of the potential key evidence in the case -- expert witness evidence -- will not even be in the District Court's hands until 3 weeks into the trial. Moreover, these estimates of the time required for the Court to hear the evidence, analyze the law, and draft a report and recommendation are likely to be longer that the conservative estimates in the table above. The time period in question also involves the Thanksgiving and Christmas holidays. While the government understands that the Court works diligently, the holiday period includes a number of scheduled days off. There is no reason for the Court to put itself and the Court's staff in a position where everyone

U.S. v Wells
3:13-cr-00008-RRB-JDR            Page 8 of 17

has to work excessive hours during one of the most important family times of the year.

The defendant's claims that he needs such an overextended continuance are based on a novel theory that he must completely investigate all aspects of the case before filing any motions. In effect, they need to be ready for trial. If that was the standard for criminal defense, all cases would be inexorably delayed while counsel did a complete investigation prior to litigating any issues. The criminal justice system would bog down. The defendant cites no precedent for this position.

The key motions at issue here are motions to suppress statements and motions to suppress evidence. For the defendant to file motions to suppress statements, defense counsel need to know the circumstances surrounding his statements. In this matter, there were 6 primary interviews with the defendant. Those statements were provided to counsel on February 22, 2013 (three days after the defendant was arraigned). Written transcripts of the statements were provided to

counsel on March 1, 2013.  The defense has now had that material 3 months.  That is more than sufficient time to file motions to suppress.

As for the motions to suppress physical evidence, the defense has had the search warrants and affidavits since February 22, 2012.  While there were a number of search warrants, they were based on a rolling affidavit.  Each warrant does not present a raft of new information.  Once the defense counsel and the defendant understand the facts in that running affidavit, they can determine if there is an appropriate challenge to probable cause.  Under the original pre-trial schedule, the defendant was scheduled to file motions to suppress by mid-June.  At that point they will have had the search warrants in hand for almost 4 months.  That is more than sufficient time to determine whether the unredacted affidavits presented sufficient probable cause to support their issuance, and to interview any person necessary for that determination.   It is also important to note that none of the evidence found during execution of the search warrants is dispositive.  For example, the murder weapon was not found, nor was any trace evidence

tied to victims found in the defendant's residence, his vehicles, or on his belongings. The defense team had sufficient time to draft and file motions under the original schedule. Their motion to extend the dates was simply a tactic, one that in the end will lead to continuance of the trial.

3. <u>The Speedy Trial Act also Protects the Public and the Victim's Rights to a Speedy Trial.</u>

The murders of Richard Belisle and James Hopkins have had a significant impact on the families of both men, as well as the small community of Kodiak. The family of James Hopkins has left Kodiak, and members of Richard Belisle's family have also left for periods of time.

The Speedy Trial Act, which we most often equate to a defendant's right, also protects the public's interest in a prompt trial. Citing to the House Judiciary Committee's report on the Speedy Trial Act, the Ninth Circuit Court of Appeals has held that:

> "The right to a speedy trial belongs not only to the defendant, but to society as well." …Accordingly, regardless of the willingness of counsel to accept pretrial delay, the

> Speedy Trial Act assigns district courts an independent responsibility to protect both the defendant's and the public's strong interest in the timely administration of justice.

*U.S. v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999), *quoting U.S. v. Hall*, 181 F.3d 1957, 1062 (9th Cir. 1999). The community of Kodiak, as well as the men and women of the Coast Guard in Kodiak, and their families, deserve this case to be brought to justice fairly and promptly.

Moreover, the victims, especially the families of the murdered men, have a statutory right to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7). The language of the statute is important. A one year period from the time of indictment to the time of trial, as agreed upon by the parties, was reasonable. The original pretrial motions schedule, which was agreed upon by the parties to allow for an orderly progression to that trial date, was also reasonable. To move the pretrial scheduling dates so far into the future that they will clearly require a continuance of the trial date, is unreasonable and the victims and the community should not be prejudiced by such a delay.

## Government's Request for Remedy

At this point, the defendant has already been granted a de facto delay of one month because of these proceedings. Discovery motions were due 21 days ago, and motions to suppress statements were due 17 days ago. The Court should cancel the Second Pre-trial Scheduling Order and issue a new order setting dates consistent with the existing delay:

| Action | Date |
| --- | --- |
| Rule 16(a)(1)(A), (B), and (D) discovery | Completed on 2/22/13 |
| Rule 16(a)(1)(E) inspection of physical items | 3/5/13 |
| Rule 16(a)(1)(E) production of documents | 3/15/13 |
| Defense discovery motions | 5/31/13 |
| Motions to suppress statements | 6/14/13 |
| Motions to suppress physical evidence | 7/12/13 |
| Expert notices | 8/16/13 |
| Rebuttal expert notices | 9/27/13 |

| Daubert Motions | 10/18/13 |
|---|---|
| Jencks and *Giglio* material | 6 weeks before trial |
| Inspection of trial documents and objects | 1 month before trial date |
| Motions in Limine<br><br>- F.R.E. 404(b) notices will be provided 4 weeks prior to the motions in limine deadline. | 2 months before trial date |

This schedule gives the defendant sufficient time, indeed additional time, to analyze the discovery, conduct any investigation tailored to the limited issue of the pretrial motions, and submit motions. However, it also leaves the Court with at least an opportunity to maintain the current trial date.

In an effort to mitigate the current delay, and provide a better likelihood to hold the current trial date, the government asks the District Court to directly litigate the motions to suppress and any *Daubert* motions. This process would have two important advantages. First, a considerable amount of the time required to litigate the motions, the magistrate judge's report and recommendation, is

eliminated if the district court hears the motions directly. This alone, will eliminate 42 days from the time analysis we presented in section 2 above. A more prompt litigation process on the motions would assure that the parties would know the status of the evidence well before trial. This knowledge would also allow the parties to have more fruitful negotiations toward a resolution, if the defendant desires to have those discussions.

Second, hearing the motions practice would allow the District Court to obtain a strong working knowledge of the facts and issues in the case. In a matter of such seriousness and importance, a thorough knowledge of the case coming out of the motions practice would allow the District Court to provide the fairest possible trial.

Finally, if the District Court decides to allow the dates of the Second Pre-trial Scheduling Order to remain in effect, directly hearing the motions litigation is the only way to maintain the existing trial date.

//

## CONCLUSION

The dates requested by the defendant and granted in the Second Pre-trial Scheduling Order will result in an unreasonable delay by inexorably causing a continuance of the trial date. Under the schedule set in the Second Order, the motions litigation in this case cannot be reasonably accomplished by the trial date. This does not serve the interests of justice, especially the mandated interests of the public and the victims of this heinous murder. Recognizing that the defendant has effectively received a one-month delay by challenging the schedule he agreed to, the Court should cancel the Second Order and reset the motions practice dates as requested by the government. Moreover, in order to further strive to maintain the current trial date, the District Court should decide to directly hear the motions practice in this case.

//


//

U.S. v Wells
3:13-cr-00008-RRB-JDR		Page 16 of 17

Case 3:13-cr-00008-SLG   Document 57   Filed 05/06/13   Page 16 of 17

This streamlined procedure would significantly shorten the motions practice, and would allow the Court to become intimately familiar with the facts and the issues of the case prior to trial.

RESPECTFULLY SUBMITTED this 6th day of May, 2013, in Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/ Daniel R. Cooper, Jr.
DANIEL R. COOPER, JR.
Assistant U.S. Attorney
United States of America

s/ Bryan D. Schroder
BRYAN D. SCHRODER
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2013, the foregoing was served electronically via the CM/ECFsystem on the following counsel of record:

Richard Curtner
Peter Offenbecher

s/ Daniel R. Cooper
Office of the U.S. Attorney

U.S. v Wells
3:13-cr-00008-RRB-JDR             Page 17 of 17