Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Peter Offenbecher
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
(206) 623-6501

Attorneys for Defendant James Wells


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | Case No. 3:13-cr-00008-RRB-JDR<br><br><br>**MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO PROVIDE ADDITIONAL DISCOVERY TO JAMES WELLS** |

I.      MOTION FOR DISCOVERY

        James Wells respectfully moves this Court for an order directing the

government to disclose additional discovery materials as outlined below and as previously

requested in correspondence with the United States Attorney's Office.  (*See* Exhibit A.)

        This motion is based on Mr. Wells' Federal Constitutional rights:  (1) to be

free from unreasonable searches and seizures, protected by the Fourth Amendment to the

United States Constitution; (2) to due process of law and a fair trial proceeding by an

impartial jury, protected by the Fifth and Sixth Amendments to the United States Constitution; (3) to the effective assistance of counsel in his defense, protected by the Sixth Amendment to the United States Constitution; (4) not to be compelled to incriminate himself, protected by the Fifth and Sixth Amendments the United States Constitution; (5) to confront and cross-examine the witnesses against him and to compulsory process of law, protected by the Sixth Amendment to the United States Constitution; and (6) to be free from cruel and unusual punishment, protected by the Eighth Amendment to the United States Constitution.

This motion is also based on the Federal Rules of Criminal Procedure and the Federal Rules of Evidence, including, but not limited to Fed. R. Crim. P. 12, 16 and 26.2; Fed R. Evid. 404(b); *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny; and all other applicable rules, statutes, and case law.

This motion is also based on the authorities set forth in the following memorandum, as well as any argument or authorities offered at the hearing on this motion.[1]

---

[1] The Court previously has issued a scheduling order (Second Scheduling Order, Docket No. 56). This motion is not intended to be, and should not be construed as, a request to reconsider the due dates and deadlines previously established by that Order.
However, the parties currently are discussing the timing of the government's disclosure of various categories of Jencks Act materials. With the Court's permission, the parties have agreed not to address that issue, *i.e.*, the timing of the disclosure of various Jencks Act materials, in this pleading, or by the time of the July 26, 2013, discovery motions deadline. Instead, if the parties are unable to reach agreement, any remaining areas of disagreement on this issue will be raised a later time with the Court.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR                                               Page 2

## II.  INTRODUCTION REGARDING BOTH GENERAL AND SPECIFIC DISCOVERY REQUESTS

Some of these requests below are more comprehensive than they might be in an ordinary federal criminal case, where only a term of prison time, or even life in prison, is at stake.  Given the scope of the allegations against defendant and the potential punishment at stake – death – this is as it should be.  "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case."  *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) (*quoting Gardner v. Florida*, 430 U.S. 349, 363-64 (1977) (White, J., concurring) (*quoting Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).  The United States Supreme Court has repeatedly recognized that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed."  *Gregg v. Georgia*, 428 U.S. 153, 187 (1976).

As this Court is aware, the penalty of death is qualitatively and profoundly different from any other sentence.  *See, e.g., Ford v. Wainwright*, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability.  This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different" (citations omitted)); *California v. Ramos*, 463 U.S. 992, 998-99 (1983) (recognizing "the qualitative difference of death from all other punishments"); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) ("the imposition of death by public authority is . . . profoundly different from all other penalties").  For this reason, our system

Case 3:13-cr-00008-SLG   Document 98   Filed 07/26/13   Page 3 of 25

of justice must indulge "*extraordinary measures* to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or *mistake*." *Eddings*, 455 U.S. at 118 (O'Connor, J. concurring) (emphasis added). These "extraordinary measures" must be taken at both stages of any capital trial. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).

This Court is uniquely situated to ensure the fairness of the proceeding against Mr. Wells through exercising its authority to direct discovery in a manner that ensures that his defense team can conduct adequate investigation and preparation for trial. *Kyles* and *Brady* place the burden on a prosecutor to learn of any evidence favorable to the defense known to anyone acting on behalf of the prosecution and anybody who assisted them. Mr. Wells requests that the trial court order the government to turn over *Kyles/Brady* information as soon as it comes to their attention. *Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995).

Trial courts have inherent authority to order discovery as necessary for the orderly administration of justice. Rule 16 (d)(1) provides the Court the authority to regulate discovery." "It is the judge, not counsel, who has the ultimate responsibility for the conduct of a fair and lawful trial." *Lakeside v. Oregon*, 435 U.S. 333, 341-42 (1978); *see United States v. Karake*, 370 F. Supp. 2d 275, 281 (D.D.C. 2005) (district courts have inherent authority to order discovery outside the rules).

Regulation of discovery is the type of matter classically commended to the sound discretion of an experienced federal district judge under the peculiar facts and circumstances of the case before it. *See, e.g., United States v. W.R. Grace*, 526 F.3d 499,

Case 3:13-cr-00008-SLG   Document 98   Filed 07/26/13   Page 4 of 25

508-12 (9th Cir. 2008) (*en banc*) (affirming trial court order directing the disclosure of the government's final witness list one year prior to trial):

> [T]he district court is charged with effectuating the speedy and orderly administration of justice. There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly.

*Id.* at 508-09.

Also, Federal Rule of Criminal Procedure 2 states that the Federal Rules of Criminal Procedure "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."

## III. GENERAL DISCOVERY REQUESTS PURSUANT TO RULE 16 AND FED. R. EVID. 404(b)

Bearing in mind the broad scope of *Brady* material, the qualitative differences implicit in a capital case, and the Court's inherent authority to supervise pretrial proceedings, Mr. Wells requests that the government disclose the general discovery items requested in Exhibit A, letter from June 5, 2013, as follows:[2]

A.     Mr. Wells' statements.

B.     Arrest reports, notes, and dispatch tapes.

---

[2] By specifying the items known to be outstanding at this time, Mr. Wells does not intend to limit his requests for full disclosure of other items not named, nor waive the disclosure of other items to which he is entitled in any way. Additionally, these requests should be considered severable from one other and distinct from one another to the extent that they may overlap. These requests should be deemed ongoing in nature. *See* Fed. R. Crim P. 16(c) (Continuing Duty to Disclose).

C.      Expert witnesses pursuant to Fed. R. Crim. P. 16(A)(1)(G).[3]

D.      Reports of scientific tests or examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), defendant requests that the Court direct disclosure of the reports of all tests, examinations, and/or experiments conducted upon the evidence in this case or any physical object or premises, including but not limited to any fingerprint analyses, laboratory testing, reports of any physical examinations, and dog sniff searches.

In particular, we have received no information regarding any testing or analysis done at the homicide scene at Building T2. For example, one assumes that some effort was made by law enforcement personnel to process the homicide scene for fingerprints, other trace evidence, etc. Defendant has received no reports either of the collection of that evidence, the current disposition of such evidence, or any testing or analysis or comparison of that evidence with other standards. For example, if fingerprints were taken, have they been compared with known standards to determine whether there are any unidentified fingerprints present at the homicide scene? Have the unidentified fingerprints been run in any database to determine potential matches?

Additionally, it appears from the transcript of the recorded interviews with Mr. Wells, that some gunshot residue tests were performed on his person and or clothing. Defendant has not received the results of any such gunshot residue testing on Mr. Wells.

Furthermore, defendant has not received any reports about gunshot residue testing, or other testing, that might have been performed on the other individuals who were

---

[3] The Court previously has set a due date of October 25, 2013, for this disclosure. (Docket No. 56.)

questioned on April 12 or April 13, 2013, or at some other time, at COMMSTA, or at T1, or elsewhere.

   E. Defendant's prior record.

   F. Alleged crimes, wrongs, or other bad acts of defendant offered pursuant to Fed. R. Evid. 404(b). Defendant requests that the Court order the government to provide notice of any evidence that the prosecutor intends to offer pursuant to Rule 404(b), to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Included in this request are alleged bad acts or misconduct, including, but not limited to, allegations of theft or misuse of government property; prostitution; false statements; violation of government regulations; insubordination; failure to follow policies of the United States Coast Guard; or any other alleged criminal or bad acts or wrongful conduct that the government intends to offer at trial.

   Defendant further requests that the Court order the government to specifically identify each other crime, wrong, or act that it intends to introduce or may introduce at trial whether during its case-in-chief or impeachment or rebuttal, the existence of which is known, or by the exercise of due diligence could became known to the government. Such identification shall include the nature of the incident; the date, time, and place of the incident; all persons who may testify regarding such incident, including their name, address, and phone number; and all persons having knowledge of such incident, including their names, addresses, and phone numbers.

   Defendant is entitled to notice of any such evidence pursuant to Fed. R. Evid. 404(b)(2)(a).

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR        Page 7

Case 3:13-cr-00008-SLG Document 98 Filed 07/26/13 Page 7 of 25

Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis supplied; internal citations omitted).

G.    Documents and Tangible Objects Material to Preparation of the Defense.  Defendant seeks production of all documents and tangible objects that are potentially evidence in this case, including but not limited to video files, audio files, books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof that are within the control of the government and that might be material to the defense or are intended for use by the government at trial.  Fed. R. Crim. P. 16(a)(1)(E).

> Rule 16 . . . requires the disclosure of all books, papers, documents, data, tangible objects, etc., that are "within the government's possession, custody or control" and are "material to preparing the defense" or "[that] the government intends to use . . . in its case in chief at trial [or that] was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E). This portion of the Rule also uses the terms "possession, custody or control." So, again, the prosecution must turn over everything in its possession *or* custody *or* control, regardless of the original source of the document or other object, so long as it is "material" under the Rule. . . . .  While it is true that the government must produce items it intends to use at trial and items that it obtained from the defendant, its obligations are not limited to those categories only; it also must disclose items that are "material to preparing the defense."  And the government cannot take a narrow reading of the term "material" in making its decisions on what to disclose under Rule 16.  Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation.
>
> As Judge Sentelle said for the D.C. Circuit in *United States v. Marshall,* 132 F.3d at 67, Rule 16(a)(1)(E) (formally Rule 16(a)(1)(C)) covers evidence that is "material 'to *the preparation of* the defendant's defense'" (emphasis in original).  It is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure.

> *See id.* "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence. . . . [I]t is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths." *Id.* (footnote omitted). Rule 16 is intended to provide a criminal defendant "the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case." *United States v. Poindexter,* 727 F. Supp. 1470, 1473 (D.D.C.1989). *See also United States v. Lloyd,* 992 F.2d 348, 351 (D.C. Cir.1993) (materiality standard "is not a heavy burden;" evidence is material if there is indication that it may play "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."); *United States v. George,* 786 F. Supp. 11, 13 (D.D.C.1991) (the materiality hurdle "is not a high one").

*United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005).

As Chief Judge Kozinski recently reiterated the government's obligations under Fed. R. Crim. P. 16(a)(1)(E)(I):

> A defendant needn't spell out his theory of the case in order to obtain discovery. Nor is the government entitled to know in advance specifically what the defense is going to be. The relevant subsection of Rule 16 is written in categorical terms: Upon defendant's request, the government must disclose any documents or other objects within its possession, custody or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(I). Unlike the preceding and subsequent subsections, which both require that "the government knows – or through due diligence could know – that the" item exists, *see* Fed. R. Crim. P. 16(a)(1)(D), (F), subsection (E) is unconditional. Lack of knowledge or even a showing of due diligence won't excuse non-compliance.
>
> It thus behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case. *See United States v. Leal-Del Carmen,* 697 F.3d 964, 969 n.4 (9th Cir. 2012); *see also* Editorial, *Beyond the Brady Rule,* N.Y. Times, May 19, 2013, at SR10.

*United States v. Hernandez-Mesa*, 12-50220, 2013 WL 3112562 (9th Cir. June 21, 2013).

Defendant also requests immediate notice of any intention to use any tangible evidence at trial, in order to afford an opportunity to raise objections to such evidence prior to trial. This request includes evidence seized by the government, as well

as any evidence that the government may intend to introduce at trial that was otherwise

obtained from or belonged to defendant.

       H.     Information regarding informants and cooperating witnesses.

       I.     Witness statements.

       J.     Notes of interviews.

       K.     Photographs used in any identification procedure.

       L.     Related wire or other surveillance.

       M.     Charts and summaries.

       N.     Refreshing memory.

       O.     Exhibit list.

       P.     Witness list[4]

## IV.   INFORMATION AND EVIDENCE RELATING TO THE MOTIONS TO SUPPRESS EVIDENCE

### A.   The Defense Motion to Suppress Defendant's Statements

      Mr. Wells was one of approximately 15 to 20 individuals who were questioned

by law enforcement agents on April 12 and April 13, 2012, at the United States Coast

Guard facility in building T1. The various Coast Guard employees and enlisted persons

were directed to stay in a particular area on the Coast Guard base, not permitted to leave

---

   [4] The defense requests the name and last known address of each prospective government witness. 18 U.S.C. § 3432. *See also United States v Napue*, 834 F.2d 1311 (7th Cir. 1987); *United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses is ineffective assistance of counsel); *United States v. Cook*, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). The defense also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness. *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984).
   The defense requests a list of name, address, and telephone number of each witness whom it intends to call at trial.

the base, and then interrogated individually by law enforcement officers. Mr. Wells was one of those interrogated. There are approximately six tape recordings of the interrogation sessions of Mr. Wells. Mr. Wells was not advised of his *Miranda* rights until the second day of questioning.

As it has been explained to the defense by the prosecutors, these statements made to law enforcement agents form a key part of the government's case against Mr. Wells. The government believes that it can prove that the statements made to law enforcement agents are untrue and, in conjunction with other evidence, the government believes that these allegedly false statements prove that Mr. Wells is guilty of the homicides.

The defense intends to move to suppress evidence of these statements from being admitted at his trial. In order to determine defendant's motion to suppress this evidence, the Court will need to determine a number of important factual and legal issues. Among these include whether Mr. Wells was "in custody" at the time of the initial interrogations. *See, e.g., Yarborough v. Alvarado,* 541 U.S. 652, 663-65 (2004) ("Custody" is the deprivation of "freedom of action in any significant way," determined by whether, *under the totality of circumstances*, a reasonable person would not feel free to end the encounter and leave).

The Court will also be conducting a voluntariness hearing pursuant to 18 U.S.C. § 3501. To determine if defendant's statements to law enforcement agents are involuntary, the Court must ask whether, *under the totality of the circumstances*, law enforcement officials obtained the evidence by overbearing the will of the defendant. *See Haynes v. Washington*, 373 U.S. 503, 513-14 (1963).

Thus, for both the *Miranda* issue and the voluntariness issue, the Court will be necessarily focused on the "totality of the circumstances" surrounding the interrogations. In order to litigate this issue, defendant needs to investigate and understand the "totality of the circumstances" surrounding this interrogation. This means that the defense needs to have access to, at the very least: (1) the names and identities of the law enforcement officers who conducted the interrogation of Mr. Wells and the other individuals at the base on April 12 and April 13, 2012; (2) the reports of the law enforcement officers who conducted the interrogation of Mr. Wells and the other individuals at the base; (3) the names and contact information of the other individuals who were interrogated on April 12 and April 13, 2012; (4) the names and contact information of the other individuals, including Coast Guard personnel or employees who were present at the scene on April 12 and April 13, 2012, during the time when these interrogations were conducted; and (5) the statements of the other individuals who were interrogated on April 12 and April 13, 2012.

**B.    The Defense Motions to Suppress Physical Evidence**

Many important items of physical evidence have been seized by the government and/or examined by the government. These items of physical evidence include but are not limited to: tires, guns, swords, and telephones. One expects that these physical items of evidence, or the results of the inspection of these items, will be offered by the government in evidence against Mr. Wells at his trial.

Some of these items were obtained as a result of execution of one or more of the 26 search warrants on Mr. Wells' property or person. Some of these items of evidence may have been obtained by the alleged consent of Mr. Wells or his wife, Nancy Wells. Some of these items of evidence may have been seized under what the

government believes is some other exception to the warrant requirement. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

In order to assess and formulate the appropriate motions to suppress any physical evidence seized by the government, defendant must understand the circumstances under which the warrants were obtained, the statements made in support of the affidavits sworn out in order to obtain the warrants, and the facts regarding the execution of the search warrants.

Therefore, defendant asks the Court to direct the government to produce: (1) all full statements of people whose statements were used in the affidavit to support the issuance of the search warrants; (2) the identity and contact information of any law enforcement officers or other persons who were present at or who participated in the execution of any of the search warrants; (3) the reports of any law enforcement officers who were present at, or who participated in the execution of any of the search warrants; (4) the identity and contact information for any law enforcement officer or any other person who participated in the search or seizure of any property or the person of Mr. Wells that the government claims was the result of Mr. Wells' consent, or, alternatively, was the fruit of some other exception to the warrant requirement; and (5) the reports of any officer who participated in the search or seizure of any property or the person of Mr. Wells that the government claims was the result of Mr. Wells' consent, or, alternatively, was the fruit of some other exception to the warrant requirement.

## V.    OTHER GENERAL DISCOVERY REQUESTS

### A.    *United States v. Henthorn*

The defense also requests a review of the personnel files of any government witness to determine whether such files contain any information tending to cast doubt on that witness's credibility.  *See United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1992); *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991).

Accordingly, the defense requests that this Court order the government to obtain and review personnel files of all law enforcement personnel it intends to call to testify at trial, or who it may call at trial, whether during its case-in-chief, in rebuttal, or at any hearing in this case, including any such witness to be called by the defense, and disclose any material contained therein required to be disclosed under *Henthorn* and its progeny.  This material shall include, but is not limited to, material bearing on the witness's credibility in general and material regarding any misconduct in obtaining search warrants or statements.   This order shall also extend to any law enforcement personnel who obtained any search warrant or participated in obtaining statements from Mr. Wells, whether or not they expect to be called to testify.

> We have long held that the government has a *Brady* obligation "to produce any favorable evidence in the personnel records" of an officer. *United States v. Cadet,* 727 F.2d 1453, 1467 (9th Cir. 1984).  A defendant doesn't have to make a request for exculpatory or impeachment evidence: "[T]he duty to disclose [exculpatory] evidence is applicable even though there has been no request by the accused, and . . . the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler,* 527 U.S. at 280, 119 S. Ct. 1936 (internal citation omitted).  We've also held that "the government has a duty to examine personnel files upon a defendant's request for their production." *United States v. Henthorn,* 931 F.2d 29, 31 (9th Cir. 1991).  If the prosecution isn't sure whether material in a personnel file rises to the *Brady* threshold, "it may submit the information to the trial court for an *in camera* inspection." *Cadet,* 727 F.2d at 1467-68 (internal quotation

marks omitted) (*quoting United States v. Gardner,* 611 F.2d 770, 775 (9th Cir.1980)). As the Supreme Court held in *Kyles v. Whitley,* "a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." 514 U.S. at 439, 115 S. Ct. 1555.

*Milke v. Ryan*, 711 F.3d 998, 1016 (9th Cir. 2013).

### B.     Evidence Regarding the Homicide Scene

A review of the videotape evidence suggests that a number of law enforcement and other personnel entered the homicide scene at Building T2 on the morning of April 12, 2013. In order to conduct its own defense investigation of the homicide scene, defendant's forensic investigators need to have a clear understanding of who entered the homicide scene, the order in which these individuals entered the homicide scene, and what each person did with respect to the physical evidence present at the homicide scene.

The defense asks the Court to direct the government to initially provide: (1) the identity and contact information for every person who entered the homicide scene on April 12 and April 13, 2103, or until the homicide scene was cleared; (2) the reports of every person who entered the homicide scene on April 12 and April 13, 2013, or until the homicide scene was finally cleared; (3) the logs of every person or agency who dispatched personnel to homicide scene on April 12 and 13th 2003; and (4) the photographs, videos, diagrams, or drawings, or measurements made by every person who was present at the homicide scene on April 12 and April 13, 2013, or until the homicide scene was finally cleared.

The defense also asks the Court to direct the production of the forensic evaluation or opinion of every crime scene reconstruction this, evidence collection

technician, fingerprint analyst, pathologist, physician, gunshot expert, blood spatter expert, or other forensic expert or scientist who conducted an evaluation of the homicide scene, fingerprints located at the homicide scene, the physical evidence seized at the homicide scene, the remains of the deceased, or photographs or videos of the homicide scene.

## VI.  EXCULPATORY EVIDENCE PURSUANT TO *BRADY, GIGLIO*, AND *KYLES*

### A.  Exculpatory Evidence/*Brady* Material

The Fifth and Fourteenth Amendments require the government to disclose evidence favorable to the accused when such evidence is favorable as to the guilt or punishment of the accused.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  "In order to comply with *Brady, . . .* 'the individual prosecutor has duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  *Strickler*, 527 U.S. at 281 (*quoting Kyles v. Whitley,* 514 U.S. 419, 433 (1995).

Defendant asks that the Court direct the government to disclose all information, facts, documents, statements, agents' reports, and tangible evidence in any way favorable to defendant on the issue of guilt or punishment or which might affect the credibility of the government's theory of the case.  *See Brady v. Maryland*, 373 U.S. 83 (1963).

Under *Brady,* prosecutors have an affirmative duty to search possible sources of exculpatory information, including a duty to learn of favorable evidence known to others acting on the prosecution's behalf, including the police, *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), and to cause files to be searched that are not only maintained by the prosecutor's or investigative agency's office, but also by

other branches of government "closely aligned with the prosecution." *Safavian*, 233 F.R.D. at 16-17 (internal citations omitted).

### B. Brady Includes Information, Not Just Papers, Reports, Notes or Other Documents

*Brady* applies to *information*, not just to documents. *See United States v. Kohring*, 637 F.3d 895, 907-08 (9th Cir. 2011) (repeatedly referencing the "newly-disclosed information" rather than "documents"). *Kohring* makes clear that prosecutors have "a duty to disclose the . . . 'underlying exculpatory facts.'" *Id.* at 908 (*quoting Morris v. Ylst,* 447 F.3d 735, 742 (9th Cir. 2006)).

### C. Timeliness of Brady Disclosures

In order to litigate this case in an efficient manner, the defense requests that all other *Brady* material be provided in time for effective use at any evidentiary hearing or trial in this matter. It is therefore requested that the *Brady* material be disclosed as soon as it comes to the government's attention. Specifically, any statements of a government witness which generally would not be required to be disclosed as Jencks Act material should be disclosed immediately if they fall within the definition of *Brady/Giglio* material.

The Department of Justice ("DOJ") has recently published revised guidelines for federal prosecutors on the disclosure of exculpatory and impeachment information. These new guidelines encourage disclosure of information beyond what is required by statute or the constitution.

**D.      Disclosure of Exculpatory and Impeachment Information Beyond That Which Is Constitutionally and Legally Required**

Department of Justice policy recognizes that a fair trial with often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the Court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).  United States Attorneys' Manual, Ch. 9-5.001 Policy Regarding Disclosure of Exculpatory and Impeachment Information (C) (updated Oct. 2008) (emphasis supplied), *available at* http://www.justice.gov/usao/eousa/foia_ reading_room/usam/title9/5mcrm.htm.

> ***Under this policy, the government's disclosure will exceed its constitutional obligations.***  Thus, this policy encourages prosecutors to err on the side of disclosure in close questions of materiality and identifies standards that favor greater disclosure in advance of trial through the production of exculpatory information that is inconsistent with any element of any charged crime and impeachment information that casts a substantial doubt upon either the accuracy of any evidence the government intends to rely on to prove an element of any charged crime or that might have a significant bearing on the admissibility of prosecution evidence . . . Where it is unclear whether evidence or information should be disclosed, prosecutors are encouraged to reveal such information to defendants or to the court for inspection *in camera* and, where applicable, seek a protective order from the Court.  By doing so, prosecutors will ensure confidence in fair trials and verdicts.

United States Attorneys' Manual, Ch. 9-5.001 Policy Regarding Disclosure of Exculpatory and Impeachment Information (F) (updated Oct. 2008) (emphasis supplied), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.

The new guidelines also encourage timely, prompt disclosure:

<u>Considerations Regarding the Scope and Timing of the Disclosures</u>: Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error. Prosecutors are encouraged to provide broad and early discovery consistent with any countervailing considerations.

United States Attorneys' Manual, Ch. 9-5.100, Criminal Resource Manual 165 (3)(A) (Jan. 4, 2010), *available at http://www.justice.gov/usao/eousa/foia_ reading_room/usam/title9/crm00165.htm*.

<u>Timing</u>: Exculpatory information, regardless of whether the information is memorialized, must be disclosed to the defendant reasonably promptly after discovery. Impeachment information, which depends on the prosecutor's decision on who is or may be called as a government witness, will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently.

United States Attorneys' Manual, Ch. 9-5.100, Criminal Resource Manual 165 (3)(B) (Jan. 4, 2010), *available at http://www.justice.gov/usao/eousa/foia_reading_ room/usam/title9/crm00165.htm*.

**D.    Timing of disclosure.** Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See*, *e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). In most cases, the disclosures required by the Constitution and this policy will be made in advance of trial.

**1.    Exculpatory information.** Exculpatory information must be disclosed reasonably promptly after it is discovered. . . .

**2.    Impeachment information.** Impeachment information, which depends on the prosecutor's decision on who is or may be called as a government witness, will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently. . . .

United States Attorneys' Manual, Ch. 9-5.001 Policy Regarding Disclosure of Exculpatory and Impeachment Information (D) (updated Oct. 2008), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.

The new DOJ guidelines also broaden the scope of what federal prosecutors should disclose to the defense.

**1.     Additional exculpatory information that must be disclosed.** A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.

**2.     Additional impeachment information that must be disclosed.** A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence—including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime.

**3.     Information.** Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.

**4.     Cumulative impact of items of information.** While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above, several items together can have such an effect. If this is the case, all such items must be disclosed.

United States Attorneys' Manual, Ch. 9-5.001 Policy Regarding Disclosure of Exculpatory and Impeachment Information (C) (updated October 2008), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.

### C.   Requests for Specific Brady Material

While the universe of potential *Brady* material is unlimited, in this case, exculpatory materials would include at a minimum:

1.   **Names of witnesses favorable to defendant**; *see United States v. Baileaux*, 685 F.2d 1105, 1113 (9th Cir. 1982).

2.   **Other potential/possible suspect information**.

3.   **Bias, prejudice, animus impeachment evidence**.   Defendant expressly requests production of impeachment evidence, including but not limited to any evidence that any prospective government witness is biased or prejudiced against defendant, or has a motive to falsify or distort his or her testimony.

4.   **Evidence of prior criminal acts, convictions, and/or investigations**.  The defense also requests any and all information or evidence that any prospective government witness has engaged in or been investigated for any criminal act, whether or not resulting in conviction*.  See* Fed. R. Evid. 608, 609.  Defendant also requests any evidence that any prospective witness has been under investigation by federal, state or local authorities for any criminal conduct.  *See United States v. Kohring*, 637 F.3d 895 (9th Cir. 2011).

5.   ***Giglio* Information**. Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses, including any document or information (in whatever form) relating to promises, consideration, or inducements made to any potential government witness, whether directly

to the witness or indirectly to the witness' attorney, friend, family, employer, or business associate.[5]

6. **Evidence affecting perception, recollection, ability to communicate, or truth telling**. The defense requests any information or evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is or was impaired.

7. *In Camera* **Review.** If there is any evidence about which the government has doubts concerning its exculpatory nature, it is requested that the government resolve those doubts in favor of disclosure. If these doubts are to be resolved, instead, by resort to an *in camera* inspection by the Court pursuant to *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984), it is requested that defense counsel be given notice

---

[5] "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation assistance, money, immigration benefits, or assurances, promises, or suggestions of favorable treatment with respect to any criminal, civil, or administrative matter; such "considerations" refer to anything which arguably could be of value or use to a witness, including but not limited to all promises, understandings or agreements – formal or informal – for leniency, favorable treatment or recommendations, or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, or other matter involving the state or federal government, any other authority, or other parties; civil, criminal, or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees or special witness fees; provisions of food, clothing, transportation, legal services or other benefits; placement in a "witness protection" program; informer status of the witness; letters to anyone informing the recipient of the witness's cooperation; recommendations concerning federal aid or benefits; recommendations concerning licensing, certification or registration; recommendations concerning ingress to and egress from the United States; promises to take affirmative action to help the status of the witness in a profession, business or employment or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness; aid or efforts on behalf of the witness' family; and anything else which arguably could reveal an interest, motive or bias in the witness in favor of the prosecution or against any defendant or act as an inducement to the witness to testify or to color his testimony.

of the fact that such an *in camera* review is taking place and that defense counsel be given an opportunity to examine these materials and argue their relevancy to the Court. This is the procedure ordered by Chief Judge Kozinski in *Milke v. Ryan*, 711 F.3d 998, 1019 (9th Cir. 2013). Furthermore, it is requested that any materials that are reviewed *in camera* by the trial court be copied and a copy be sealed for appellate review in the event the Court orders that disclosure is not required.

## VII. SPECIFIC DISCOVERY REQUESTS

Defendant requests that the Court direct the government to provide the following:

A. The identifying and contact information for all Coast Guard and civilian witnesses interviewed by law enforcement regarding this investigation.

B. All summaries, reports, transcripts, or recordings of the interview of the witnesses in "A" above.

C. The government has provided 1.5 hours of the video feed of one video camera located at T1. All of the video feed from this camera from April 4, 2012, to April 18, 2012, is requested.

D. The video feed from the other cameras located at T1 from April 4, 2012, through April 18, 2012.

E. The video feed from all T2 video cameras from April 4, 2012, through April 18, 2012.

F. All security logs from T1 and T2 for the period of April 4, 2012, through April 18, 2012.

G. The government has advised counsel that it has investigated the ownership of all small blue SUV vehicles on Kodiak Island that are similar to the blue SUV driven by Nancy Wells. It is requested that ownership and contact information for these vehicles and their owners/drivers' statements be provided.

H. The government has advised counsel that it has identified the owner of the white pickup truck seen: (1) in the T1 video at 7:02:58 a. m. on April 12, 2012; (2) in the T1 video at 7:09:11 a.m. on April 12, 2012; (3) in the T2 video at 10:42:11 p.m. (with an additional time stamp showing 22:36:42) on April 11, 2012; and (4) at approximately 7:45 a.m. on April 12, 2013, near T2 on Tom Stiles Road. It is requested that the ownership and owner/driver contact information on these vehicles be provided.

I. The ownership information and owner/driver contact information for all other white trucks investigated with respect to "H" above.

J. The results of any gunshot residue testing conducted on April 12, 2012, on the body of James Wells, or the clothing he was wearing at that time.

## VII. ADDITIONAL DISCOVERY REQUESTS DUE TO POSSIBILITY OF CAPITAL STATUS OF PROSECUTION

Mr. Wells respectfully submits that, pursuant to the authority of *Brady v. Maryland*, 373 U.S. 83 (1963), he is entitled to any information or evidence known to the United States Attorney or cooperating law enforcement agencies, *see Price, supra*, or which is included in the United States Attorney's death penalty evaluation form and prosecution memorandum, which might be exculpatory or might mitigate any potential sentence in this case.

The death penalty authorization process is a critical stage of a federal capital case at which properly prepared counsel performs an indispensable role in assuring the fairness and accuracy of the authorization process. Any favorable information or evidence known to the United States Attorney or cooperating law enforcement agencies, *see Price, supra*, or which is included in the United States Attorney's death penalty evaluation form and prosecution memorandum will permit Mr. Wells to prepare more expeditiously for his presentation to the death panel in Washington, D.C., should that become necessary.

DATED this 26th day of July, 2013.

Respectfully submitted,

/s/Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:      907-646-3400
Fax:          907-646-3480
E-Mail:      rich_curtner@fd.org

/s/ Peter Offenbecher
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
Phone:      206-623-6501
Fax:          206-447-1973
E-Mail:      poffenbecher@skellengerbender.com
WA State Bar No. 11920

Certification:

I certify that on July 26, 2013, a copy of the foregoing, with enclosures, was served electronically on:

Karen L. Loeffler, Esq.
karen.loeffler@usdoj.gov

Bryan D. Schroder, Esq.
bryan.schroder@usdoj.gov

/s/ Rich Curtner

Case 3:13-cr-00008-SLG   Document 98   Filed 07/26/13   Page 25 of 25