**THE FEDERAL PUBLIC DEFENDER**
for the **DISTRICT OF ALASKA**

Rich Curtner
Federal Defender

601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400 – Phone
(907) 646-3480 – Fax

June 5 , 2013


Karen Loeffler
Bryan D. Schroder
United States Attorney's Office
222 West 7th Avenue, #9
Anchorage, Alaska 99513

> Re:  *United States v. James Wells*
> Case No. 13-cr-00008-RRB-JDR
> Discovery Letter No. 2

Dear Karen and Bryan:

Thank you both for providing us with the discovery already produced by the government to date in this matter. We have detailed the discovery that we have been provided in section "I" below. If there is additional discovery that you have provided but is not listed in Section I below, please let us know so that we can identify those items and be on the same page on that issue.

Pursuant to Fed.R.Crim.P. 12, 16 and 26.2; Fed.R.Evid. 404(b); *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and all other applicable rules, statutes, and case law, we write to formally request discovery in this matter.

## I.  DISCOVERY ALREADY PROVIDED BY THE GOVERNMENT

### A.  Documents Provided

Documents Bates Numbered by the government as 000001-017583. Also documents received without Bates numbers which the defense has now numbered G-0001 through G-0857 and which are described in Exhibit A, attached to this letter.

### B.  Audio Files Provided

Audio files as set forth in Exhibit B, attached to this letter.

### C.    Video Files Provided

Video files as set forth in Exhibit C, attached to this letter.

### D.    Other Evidence

Hard drives including various digital media as described in Exhibit D, attached to this letter.

## II.    GENERAL DISCOVERY REQUESTS

### A.    <u>Scope of Request</u>

The documents[1] and information requested include not only documents and information in the possession, custody, or control of your office, but also documents and information in the possession, custody, or control of the Department of Justice, and any federal, state, or local agency allied with the prosecution, including, without limitation, the United States Coast Guard Investigative Service, the Alaska State Troopers, the Kodiak Police Department, the Anchorage Police Department, the Federal Bureau of Investigation ("FBI"), the Defense Department, and any other related agency under which these law enforcement functions have variously been reorganized or re-named during the past years. *See*, *e.g.*, *United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009) (federal prosecutor has duty "to disclose all favorable evidence known to him or that he could have learned from "others acting on the government's behalf.")

---

[1]  The word "documents" includes, but is not limited to, all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, computer facilitated or transmitted materials, images, photographs, Polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

In particular, we request discovery as follows:

**B.**     **Defendant's Statements**[2]

The defendant requests any written or recorded statements made by the defendant, the substance of any other oral statement made by the defendant in response to interrogation by any person then known by the defendant to be a government agent, any portion of any written record containing the substance of any oral statement made by the defendant in response to interrogation by any person then known to the defendant to be a government agent, and all recorded testimony of the defendant before a grand jury which relates to the offense charged. Fed.R.Crim.P. 16(a)(1)(A) & (B).

**C.**     **Arrest Reports, Notes, and Dispatch Tapes**.

The defendant also specifically requests production of all reports, notes, and dispatch or any other tapes relating to the circumstances surrounding defendant's arrest and/or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, or other documents in which statements of the defendant or any other discoverable material is contained.

**D.**     **Experts**.

The defendant requests disclosure of the identities, qualifications, and written summaries of expected testimony of any expert witnesses the government intends to use. Fed.R.Crim.P. 16(a)(1)(G). As soon as opinions are formulated, the defendant requests production of a written summary of testimony the government intends to use under Fed.R.Evid. 702, as well as the underlying data pursuant to Fed.R.Evid. 703, 705. Fed.R.Crim.P.16(a)(1)(G). *See United States v. Barrett*, 703 F.2d 1076, 1081 (9th Cir. 1983) (fairness requires sufficient advance notice for the defense to obtain an expert to assist in rebutting findings of government experts; trial court's failure to grant continuance to permit defense to obtain rebuttal expert is an abuse of discretion). This summary shall

---

[2] "Statement" includes, without limitation, (a) any statement as to which any Defendant allegedly manifested his adoption or belief in its truth, Fed.R.Evid. 801(d)(2)(B); (b) any statement made by another which was purportedly authorized by any Defendant, Fed.R.Evid. 801(d)(2)(C); (c) any statement made by an agent or servant of any Defendant concerning a matter within the scope of his agency or employment made during the existence of such a relationship, Fed.R.Evid. 801(d)(2)(D); and (d) any statement made by an alleged co-conspirator during the course of and in furtherance of any alleged conspiracy, Fed.R.Evid. 801(d)(2)(E).

include, but not necessarily be limited to, the witness's opinions, the bases and the reasons for those opinions, and the witness's qualifications. Fed.R.Crim.P. 16(a)(1)(G).[3]

### E.     Reports of Scientific Tests or Examinations.

Pursuant to Fed.R.Crim.P. 16(a)(1)(F), the defendant requests the reports of all tests, examinations, and/or experiments conducted upon the evidence in this case or any physical object or premises, including but not limited to any fingerprint analyses, reports of any physical examinations, and dog sniff searches.

### F.     The Defendant's Prior Record.

Pursuant to Fed.R.Crim.P.16 (a)(1)(B), the defendant requests that the government provide a statement of the defendant's prior criminal record, if any. Fed.R.Crim.P.16 (a)(1)(D).

### G.     Exculpatory Evidence/*Brady* Material.

The defendant requests all documents, statements, any co-defendants' or co-conspirators' exculpatory statements, agents' reports, and tangible evidence in any way favorable to the defendant on the issue of guilt or punishment which might affect the credibility of the government's case. *See Brady v. Maryland*, 373 U.S. 83 (1963).

This request again is directed at all law enforcement agencies involved in any way in the investigation and prosecution. *See Price*, 566 F.3d at 908 ("*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Youngblood v. West Virginia,* 547 U.S. 867, 869-70 (2006) (*per curiam*) (quoting *Kyles v. Whitley,* 514 U.S. 419, 438 (1995)). *See also Carriger v. Stewart,* 132 F.3d 463, 479-80 (9th Cir. 1997) (*en banc*) ("Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned.")

---

[3] To the extent that the government intends to offer such testimony through witnesses who also have first-hand factual knowledge, the disclosure obligations apply to such witnesses.

This request includes, but is not limited to, the following evidence:

(a)   **Names of Witnesses Favorable to the Defendant**.  The defendant requests the name of any witness who made any arguably favorable statement concerning the defendant or the issues in this case or that may relevant to any possible defense of the defendant.  *See United States v. Bailleaux*, 685 F.2d 1105, 1113 (9th Cir. 1982).

(b)   **Evidence Favorable to the Defendant – Other Potential/Possible Suspect Information**.  In this case, information and evidence favorable to the defendant includes, but is not limited to, any information or evidence that some person or persons other than James Wells were investigated as potential or possible suspects in the homicides of Richard Belisle and James Hopkins.

(c)   **Bias, Prejudice, Animus Impeachment Evidence.** The defendant expressly requests production of impeachment evidence, including but not limited to any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(d)   **Evidence of Prior Criminal Acts, Convictions, and/or Investigations**.  The defense also requests any and all information or evidence that any prospective government witness has engaged in or been investigated for any criminal act, whether or not resulting in conviction.  *See* Fed.R.Evid. 608, 609.  The defendant also requests any evidence that any prospective witness has been under investigation by federal, state or local authorities for any criminal conduct.  *See United States v. Kohring*, 637 F.3d 895 (9th Cir. 2011).

(e)   ***Giglio* Information**.  Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses, including any document or information (in whatever form) relating to promises, consideration, or inducements made to any potential government witness,

whether directly to the witness or indirectly to the witness' attorney, friend, family, employer, or business associate. [4]

**(f)**   **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling**.  The defense requests any information or evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is or was impaired.

## H.    **Timeliness of Brady Disclosures.**

In order to litigate this case in an efficient manner, we also ask that this and all other *Brady* material be provided in time for effective use at any evidentiary hearing or trial in this matter.  It is therefore requested that the *Brady* material be disclosed as soon as it comes to your attention.  Specifically, any statements of a government witness which generally would not be required to be disclosed as Jencks material should be disclosed immediately if they fall within the definition of *Brady/Giglio* material.

---

[4]   "Consideration" means anything of value or use, including immunity grants, whether formal or informal, witness fees, transportation assistance, money, immigration benefits, or assurance, promises, or suggestions of favorable treatment with respect to any criminal, civil, or administrative matter; such "considerations" refer to anything which arguably could be of value or use to a witness, including but not limited to all promises, understandings or agreements – formal or informal – for leniency, favorable treatment or recommendations, or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, or other matter involving the state or federal government, any other authority, or other parties; civil, criminal, or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees   special witness fees; provisions of food, clothing, transportation, legal services or other benefits; placement in a "witness protection" program; informer status of the witness; letters to anyone informing the recipient of the witness' cooperation; recommendations concerning federal aid or benefits; recommendations concerning licensing, certification or registration; recommendations concerning ingress to and egress from the United States; promises to take affirmative action to help the status of the witness in a profession, business or employment or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness; aid or efforts on behalf of the witness' family; and anything else which arguably could reveal an interest, motive or bias in the witness in favor of the prosecution or against any defendant or act as an inducement to the witness to testify or to color his testimony.

## I.     *In Camera* Review.

If there is any evidence about which you have doubts concerning its exculpatory nature, it is requested that you resolve those doubts in favor of disclosure.  If these doubts are to be resolved, instead, by resort to an *in camera* inspection by the Court pursuant to *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984), it is requested that defense counsel be given notice of the fact that such an *in camera* review is taking place and that defense counsel be given an opportunity to examine these materials and argue their relevancy to the Court.  This would allow defense counsel to present argument to the Court concerning what matters should be discoverable and to articulate for the Court specific areas of concern to the defense which would aid the Court in its *in camera* review. This is the procedure ordered by Chief Judge Kozinski in *Milke v. Ryan*, 711 F.3d  998, 1019 (9th Cir. 2013).  Furthermore, it is requested that any materials that are reviewed *in camera* by the trial court be copied and a copy be sealed for appellate review in the event the Court orders that disclosure is not required.

## J.     Documents and Tangible Objects.

The defendant seeks production of all documents and tangible objects that are potentially evidence in this case, including but not limited to video files, audio files, books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof that are within the control of the government and that might be material to the defense or are intended for use by the government at trial.  The defendant also requests immediate notice of any intention to use any tangible evidence at trial, in order to afford an opportunity to raise objections to such evidence prior to trial.  This request includes both evidence seized by the government as well as any evidence that the government may intend to introduce at trial that was otherwise obtained from or belonged to the defendant.

The defense also requests production of any search warrants and all supporting affidavits which resulted in seizure of evidence from the defendant which was otherwise obtained from, or belongs to, the defendant.  Finally, the defense requests notice of any and all physical evidence intended to be offered at trial that was seized pursuant to any exception to the warrant requirements.

## K.     Information Regarding Informants and Cooperating Witnesses.

The defendant requests that the government provide all relevant information concerning any informants or cooperating witnesses involved in this case.  The government is obligated to disclose the identification and location of any informants or cooperating

witnesses, as well as the identity and location of any other percipient witnesses unknown to the defendant.

**L.**     **Witness Statements**.

The defense requests all material to which the defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, as well as Fed.R.Crim.P. 26.2, and Local Cr.R 16(f), including, but not limited to, any statement of any witness in its entirety which is related in any way to the defendant's case. We are aware that the Court has previously set a schedule for disclosure of Jencks material (statements of witnesses the government intends to call as witnesses) which will be addressed in a separate motion.

**M.**     **Notes of Interviews**.

All notes of interviews relating to the conduct alleged in the indictment. At a minimum, all interview notes should be preserved. *See United States v. Brown*, 303 F.3d 582, 593-98 (5th Cir. 2002) (conducting *in camera* review of notes).

**N.**     **Photographs Used in Identification.**

The defense hereby requests that the government give the defendant notice of any lineup, show up, photo spread, or any other identification proceeding that occurred and the results thereof. The defense requests production of any and all photograph(s) used in such identification proceeding.

**O.**     **Wire Taps.**

The defendant requests notice of whether the defendant was subject to any electronic eavesdrop, wire tap, or any other interception of wire or oral communications as defined in 18 U.S.C. § 2510, *et seq*. The defendant also hereby requests production of any records of any and all intercepted communications as well as the court order and accompanying application under which the interception was authorized or approved. 18 U.S.C. § 2510, *et seq*.

**P.**     **Related Wire or Other Surveillance.**

In connection with any tape recording, wiretaps, or other surveillance during the investigation of the allegations of the indictment or any related allegations, the defendant requests: (a) the names and addresses of all persons whose personal or business telephones the government tapped or monitored, or whose conversations or actions the government monitored by any means without the person's knowledge; (b) transcripts or

other records of the statements or conversations monitored; (c) the original recorded tapes created during such surveillance; (d) the procedures used to conduct such surveillance; and (e) the authority under which such surveillance was conducted.

**Q.** **Suppression Issues**.

As a predicate to any suppression motions pursuant to Fed.R.Crim.P. 12, please indicate:

(a) Whether the government intends to offer into evidence any of the statements made by the defendant, and the substance of any such statement or statements. The government has previously provided the defense with (1) the audio files for six tape recorded statements alleged to have been made to law enforcement authorities on April 12 and April 13, 2012; (2) the transcripts of the statements in "(1)" above; and (3) the audio files for three recorded statements alleged to have been made by the defendant to Para Upchurch who was surreptitiously recording the conversations.

The defense is unaware of any other statements of the defendant. Please advise if the government intends to offer any other statements of the defendant at trial.

(b) Whether any information in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

(c) Whether any evidence in the government's possession, custody, or control was obtained through electronic or other surveillance, including without limitation wiretaps, body wires, pen registers, and/or surveillance of telephone calls, and a description of such evidence;

(d) Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

(e) Whether any evidence in the government's possession, custody, or control was obtained through a mail cover and or trash cover and a description of such evidence;

(f) Whether any evidence in the government's possession, custody or control was obtained by what the government contends was the consent of the defendant or member of his family and a description of such evidence; and

(g)   Whether the government employed any informant or undercover agent during its investigation of the charges of the indictment.

This information is also sought pursuant to Fed.R.Crim.P. 16 and *Brady v. Maryland* and its progeny.

### R.   Charts and Summaries.

Pursuant to Fed.R.Evid. 1006, the defendant requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be made available for inspection and copying.

### S.   Refreshing Memory.

Pursuant to Fed.R.Evid. 612, the defendant requests production in advance of trial of all documents the government intends to provide, or provides, any witness to refresh the memory of that witness for the purpose of testifying at trial.

The defense requests that any materials referenced above which are not presently within the possession, custody, or control of the government; or are not presently known to exist; or by the exercise of due diligence may become known to the attorney for the government as evidence-in-chief at trial be produced as soon as discovered pursuant to Fed.R.Crim.P. 16(c).

### T.   Witness List.

The defense requests a list of name, address, and telephone number of each witness whom it intends to call at trial.

### U.   Exhibit List.

The defense requests production of a list of exhibits that the government intends to introduce during the presentation of its case in chief.

## III.   SPECIFIC DISCOVERY REQUESTS

A.   Please provide the identifying and contact information for all Coast Guard and civilian witnesses interviewed by law enforcement regarding this investigation.

B.  Please provide all summaries, reports, transcripts, or recordings of the interview of the witnesses in "A" above.

C.  You have provided 1.5 hours of the video feed of one video camera located at T1. Please provide all of the video feed from this camera from April 4, 2012, to April 18, 2012.

D.  Please provide the video feed from the other cameras located at T1 from April 4, 2012, through April 18, 2012.

E.  Please provide the video feed from all T2 video cameras from April 4, 2012, through April 18, 2012.

F.  Please provide all security logs from T1 and T2 for the period of April 4, 2012, through April 18, 2012.

G.  You have advised counsel that you have investigated the ownership of all small blue SUV vehicles on Kodiak Island that are similar to the blue SUV driven by Nancy Wells. Please provide the ownership and contact information for these vehicles and their owners/drivers' statements.

H.  You have advised counsel that you have identified the owner of the white pickup truck seen: (1) in the T1 video at 7:02:58 a. m. on April 12, 2012; (2) in the T1 video at 7:09:11 a.m. on April 12, 2012; (3) in the T2 video at 10:42:11 p.m. (with an additional time stamp showing 22:36:42) on April 11, 2012; and (4) at approximately 7:45 a.m. on April 12, 2013, near T2 on Tom Stiles Road. Please provide the ownership and owner/driver contact information on these vehicles.

I.  Please provide the ownership information and owner/driver contact information for all other white trucks investigated with respect to "H" above.

J.  Please provide the results of any gunshot residue testing conducted on April 12, 2012, on the body of James Wells or the clothing he was wearing at that time.

## IV.  ADDITIONAL DISCOVERY REQUESTS DUE TO POSSIBILITY OF CAPITAL STATUS OF PROSECUTION.

Mr. Wells respectfully submits that, pursuant to the authority of *Brady v. Maryland*, 373 U.S. 83 (1963), he is entitled to any information or evidence known to the United States Attorney or cooperating law enforcement agencies, *see Price, supra*, or which is

included in the United States Attorney's death penalty evaluation form and prosecution memorandum, which might be exculpatory or might mitigate any potential sentence in this case.

The death penalty authorization process is a critical stage of a federal capital case at which properly prepared counsel performs an indispensable role in assuring the fairness and accuracy of the authorization process. Any favorable information or evidence known to the United States Attorney or cooperating law enforcement agencies, *see Price, supra*, or which is included in the United States Attorney's death penalty evaluation form and prosecution memorandum will permit Mr. Wells to prepare more expeditiously for his presentation to the death panel in Washington, D.C. should that become necessary.

Thank you in advance for your attention to these matters. We look forward to discussing these requests with you and to working further with you on this case.


Very truly yours,



Rich Curtner
Federal Defender
Attorneys for Defendant


/s/Peter Offenbecher
Skellenger Bender, P.S.
Attorneys for Defendant


Enclosures: Exhibits A through D



**U.S. Department of Justice**

*United States Attorney*
*District of Alaska*

_____

*Federal Building & U.S. Courthouse*     *Commercial: (907) 271-5071*
*222 West 7th Avenue, #9, Room 253*      *Fax Number: (907) 271-3224*
*Anchorage, Alaska 99513-7567*

July 8, 2013

Rich Curtner
Federal Defender
Office of the Federal Public Defender
601 West Fifth Avenue, Suite 800
Anchorage Alaska 99501

**RECEIVED**

JUL 0 8 2013

**FEDERAL PUBLIC DEFENDER**

Re:   Your letter dated June 5, 2013 referencing discovery in
*United States v. James Wells*, Case No. 13-cr-00008-RRB-JDR

Dear Mr. Curtner:

This is in response to your lengthy discovery letter of June 5, 2013. Although it appears that parts of the letter are a "form" request, such as your request for "co-defendants' or co-conspirators' exculpatory statements," we have tried to address or provide answers to your request by category.

As an organizational matter, most of the substance of your letter seems to be divided into 3 categories:

- Reminders of our obligations to provide discovery under Federal Rule of Criminal Procedure 16; the Jencks Act, 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. U.S.*, 405 U.S. 150 (1972).
- Requests for materials to be provided earlier than set forth by the Court's second scheduling order, docket 56.[1]
- Requests for materials not covered by Rule 16 or any other identified federal rule or authority.

_____

[1] The defendant has twice agreed to the terms of the existing scheduling order. Initially, defense counsel negotiated and agreed to the terms of the first scheduling order, docket 20, amended at docket 26. Then when that schedule was not acceptable to additional new counsel, the defendant requested an extended schedule, which was granted by the Court.

1

Exhibit A -- Page 13 of 21

Case 3:13-cr-00008-SLG   Document 105-1   Filed 08/06/13   Page 13 of 21

1. Federal Rule of Criminal Procedure 16, Jencks Act, *Brady* and *Giglio*.

In sections II.A., II.B., II.D., II.E., II.F., II.G., II.H., II.J., and II.L., you request material required under the legal authorities cited above. We are familiar with our requirements under each of these authorities, and will provide material as the law requires. Other than what is required by law, we do not agree to any of your assertions.

In our initial policy letter of February 20, 2013, we asked that you make a formal request for discovery under F.R.Cr.P. 16(a)(1)(C), (D), and (E). While there is no organizational defendant in this matter requiring a request under 16(a)(1)(C), we interpret your requests in sections II.F. and II.J. of your letter as being requests for discovery under F.R.Cr.P. 16(a)(1)(D) and (E). Moreover, your requests in sections II.E. and II.D. are requests under F.R.Cr.P. 16(a)(1)(F) and (G) respectively. The government has provided much of this material, and will provide the remainder under the Court's schedule at docket 56, and under our continuing duty to disclose under F.R.Cr.P. 16(c). Thus, the government's right to reciprocal discovery is triggered under F.R.Cr.P. 16(b). If you did not deem our right triggered by the previous court hearings and policy letter, please take this letter as a demand for reciprocal discovery under Rule 16 and provide the same.

A few of your requests require specific responses. First, in section II.A. of your letter, you request documents and information in the possession, custody, and control of "any federal, state, or local agency allied with the prosecution...." We are not clear about what the term "allied" includes. We will follow Department of Justice policy and include information in the possession, custody and control of members of the prosecution team. U.S. Attorney's Manual (USAM) 9-5.001.

To the extent Section II.C. goes beyond Rule 16 and authorities thereunder, we will comply with the rule and established law. For example, we have, of course, already ordered the preservation of rough notes. However, they are not generally discoverable under Rule 16, with certain exceptions. Similarly Rule 16(a)(1)(A) and (B) require production of defendant's statements made to a known law enforcement officer, but does not require production of any statement made by the defendant at any time, to any person. Thus, to the extent you have similarly requested material beyond the scope of the rules and precedents covering discovery we do not intend to produce such items at this time without further consultations, as detailed below and as we have previously discussed with you.

In a similar vein, we are confused by section II.S., which seems to request the government to speculate on whether a witness might forget something, and then guess what might be used to refresh a recollection and produce such material now? Needless to say, we are unaware of any such discovery requirement. That being said, we have been and continue to

produce all documents, tangible evidence, and statements covered under Rule 16, Brady, or Giglio and the Jencks Act as set forth by the Court.

2. Request for materials earlier than required by the Court's second scheduling order.

As you are well aware, there has been significant litigation on the scheduling order in this case. You agreed to the original scheduling order, and then later asked for an extended schedule, which was granted by the Court. Nonetheless, in sections II.D., and II.L., you request discovery of expert reports and Jencks material even earlier than the deadline you requested from the court. We intend to follow the schedule established by the Court, at your request.

3. Requests for materials not required by Statute, Rule, or Precedent.

A significant portion of your letter was a list of requests with no supporting authorities. We have carefully reviewed those requests, and we are not aware of authorities support the demands. These sections are II.C., II.G.(b) & (d), II.I., II.J., II.Q., III.A., III.G., III.H., III.I. While we are willing to negotiate early discovery, we will not provide information prior to when the law and the court's schedule requires without negotiation, and will expect a quid pro quo in return. A good starting point would be reciprocal discovery. As of this date, we have received no reciprocal discovery.

4. Material Already in Your Position, or not Available.

Certain information that you've requested is either already in your possession or is not in the possession of the government. In section II.O. you requested notice if the defendant was subject to any wiretap. There was no Title III wiretap in this case. You also requested video feed from the T1 and T2 cameras from April 4 to April 18, 2012. My understanding is that we imaged the COMMSTA hard drive which contained all the T1 and T2 video from April 2, 2012, to April 21, 2012. That information was provided to you on a hard drive on April 9, 2013. If you are having difficulty accessing that information, we are willing to assist, as we have done on previous occasions.

5. In Camera Review.

If there are any matters that are appropriate for in camera review by the Court in this case, we intend to submit those matters to the Court directly. We are not aware of any requirement to submit those matters to the defense, and believe it would defeat the purpose of in camera submission to do so.

6. Capital Status Requests.

As you are aware, the United States Attorney met with you and requested any mitigating evidence you wished to provide. The United States Attorney's memorandum is confidential work product. Nevertheless, we take very seriously the importance of presenting exculpatory

information, which is why you were asked on April 5, 2013 to provide any such information you wished to be considered.

Finally, we are happy at any time to continue to discuss discovery issues with you.

Sincerely,

KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN DUIGNAN
Special Assistant U.S. Attorney

4

THE FEDERAL PUBLIC DEFENDER
for the DISTRICT OF ALASKA

Rich Curtner
Federal Defender

601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400 – Phone
(907) 646-3480 – Fax

July 18, 2013

Karen Loeffler, U.S. Attorney
Bryan D. Schroder, Assistant U.S. Attorney
Kathleen Duignan, Special Assistant U.S. Attorney
222 West 7th Avenue
Anchorage, Alaska 99513

Re:     *United States v. James Wells*
          Case No. 13-cr-00008-RRB-JDR

Dear Karen, Bryan and Kathleen:

        Thank you for your letter dated July 8, 013, in response to our discovery request of June 5, 2013.  I want to clarify some of the specific information we are seeking in that letter, in order to avoid any confusion concerning our discovery request.

        I feel that our request is consistent with *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and not contrary to the District Court's scheduling order.  The nature of our request addresses our need to conduct an adequate investigation on behalf of Mr. Wells.  Any information about other potential suspects is critical to the defense function.

        After reviewing the discovery that we have received thus far, I can illustrate some examples:

1.      <u>The White Truck</u>

        A.      An unidentified white pickup truck can be seen in the video feed from the T1 camera on April 12, 2012, at 07:02 a.m. and 07:09 a.m., in the vicinity of the site of the homicides.  We have not been able to identify that truck or the driver of the truck.  We assume that the government has investigated that truck and has that information.  Screen shots of that truck are attached as Exhibits A and B.

        B.      In reviewing the video feed from the T2 camera during the night of April 11, 2012, we note a similar white truck pull into the parking lot of T2.  We have discovered that there was suspicious activity concerning this white pickup truck.  We assume that your investigation has revealed the identity of the owner and the driver of this truck.  A copy of a screen shot of this truck is attached as Exhibit C.  We are requesting any watch log notations from

COMMSTA that refer to this truck at approximately 10:36 p.m. on April 11, 2012.

C. The Coast Guard Military Police dispatch received a call concerning a white truck on "Tom Stiles going toward Anton Larsen and the driver was acting 'strange'" at 7:45 a.m. on April 12, 2012. Again, we assume that the government has investigated the owner and driver of this truck. We are attaching a copy of the report received in discovery as Exhibit D.

2. Jason Barnum

At Bates Nos. 6282-6283 of the discovery there is an "incident report" of "suspicious activity" of a person at the AC Corner Store in Kodiak. (This report is attached as Exhibit E. It appears that there is a missing middle page, and if there is, we request a copy of that page of the report.) The incident report states that a "tall man with tattoos on his face" came into the store around 7:00 p.m. on the evening of April 12, 2012, and "scared the clerk on shift." On the morning of April 13, 2012, at around 11:45 a.m. the "same male came into the store with his hands in the air saying 'I didn't do it, I didn't do it,'" then "used his hands to make them look like guns and pretended to shoot at her, another female and her son as he drove off."

Our investigation leads us to believe that person was Jason Barnum. Mr. Barnum was in Kodiak at the time of the homicides. He later traveled to Anchorage, where he conducted a crime spree of home invasions culminating with a shootout with Anchorage Police.

We feel confident that Jason Barnum would be identified as a possible suspect in the homicides of April 12, 2012, and thoroughly investigated by FBI agents and Alaska State Troopers. We are requesting any information from that investigation.

3. Wilford J. Malsol

In the discovery (Bates No. 006216-006217), we received a two-page form regarding Wilford Malsol dated September 8, 2012. One was a Department of Homeland Security USCG Investigative Service Interview Interrogation form, and another form for Wilford to sign stating that he understood his rights. Nowhere on the form did it detail what they were interviewing him about, nor what he said.

At some point we were told that a member of the Coast Guard had made admissions to the shooting of Richard Belisle and James Hopkins. We assume that the *Miranda* rights waiver of Wilford Malsol is related, and request any information

concerning the investigation and interview of Malsol, so that the defense can conduct an independent investigation.

4.    Other "Leads" Concerning This Investigation

At Bates No. 004713 there is a statement by an investigator that there were "about 300 leads that came into the Coast Guard PD" the night of April 12, 2012. We request information concerning any "leads" relative to this investigation so that the defense can conduct an independent investigation.

5.    Video Feed From COMMSTA Surveillance Cameras

We have now accessed the video feed from the T1 and T2 cameras from April 2, 2012 to April 12, 2012. (It was a challenge to access and view that video footage, requiring new software.) We understand that COMMSTA had a total of 14 video feeds to their computer hard drive. The hard drive that we received indicates that there is "no video" for camera feeds identified as 6-1 and 9-1 through 14-1.

We would appreciate any assistance you can provide to access the video feeds from those cameras.

6.    Lab Reports

As of May 25, 2013, the government executed 25 search warrants in this investigation. During those searches the government seized DNA, hair and fingernail samples from Mr. Wells, numerous firearms, computers, cell phones and other digital information.

Thus far we have only received nine "lab reports." Seven reports concern the testing or examination of firearms or ammunition (Bates Nos. 002675-002682), one report concerns the examination of the tire (no Bates No.), and one DNA worksheet (Bates Nos. 017373-017388).

We request any examinations completed by the government, especially those that are not incriminating, and therefore exculpatory, as to Mr. Wells. We specifically request the results of any gunshot residue tests conducted on Mr. Wells' person and/or clothing, forensic testing of the soda can seen in the photo at Bates No. 001578, and any forensic examination of any fingerprints or footprints from the crime scene.

7.    Independent Examination of the Tire

We request that the LT265/75R16 BF Goodrich tire seized from Mr. Wells' truck and examined by STL Investigative Sciences be made available for independent

inspection by a defense expert. Please let us know how we can arrange for this examination. We also request all bench notes, copies of x-rays taken of the tire, computer and/or manual printouts and or logs from the "static air retention study" and the "dynamic study" conducted on the tire, and all photographs taken of the tire during the testing/study of the tire.

8.    <u>Reciprocal Discovery</u>

We appreciate your cooperation in providing discovery in a timely fashion so that we can adequately complete our investigation prior to our scheduled trial date. And, of course, we are familiar with our requirements to provide reciprocal discovery, and will do so in a timely fashion as well.

Finally, your suggestion that we meet in person to discuss discovery issues is a good one. Mr. Offenbecher will be in Anchorage for our status hearing in front of Judge Beistline on July 22, 2013. Would you be available to meet with us after that hearing?


Sincerely,


Rich Curtner
Federal Defender
Attorney for Defendant

RC/km
Enclosures: Exhibits A through E