KAREN L. LOEFFLER
United States Attorney

BRYAN D. SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>JAMES MICHAEL WELLS,<br><br>　　　　　　Defendant. | ) No. 3:13-cr-00008-RRB-JDR<br>)<br>)<br>)<br>) **UNITED STATES'**<br>) **RESPONSE TO**<br>) **DEFENDANT'S MOTION FOR**<br>) **ADDITIONAL DISCOVERY**<br>)<br>) |

COMES NOW the United States, by and through undersigned counsel, and hereby responds to defendant's motion for additional discovery, filed at docket 105.

## I.  INTRODUCTION AND BACKGROUND

The Court's pretrial order at docket 14 and local rules for the District of Alaska require that the parties meet and confer before the filing of any discovery motion and certify that "the issues set out in the motion are genuine and in dispute between the parties."  D.Ak.LCrR. 16.1(d).  Local Rule 7.1(a)(2) further requires such requests to be accompanied by a memoranda of points and authorities supporting the motion.  The pretrial order set a a deadline to file discovery motions for matters that could not be resolved and required a decision by the Court.

The parties have met and conferred concerning discovery on numerous occasions and will continue to do so whenever necessary. Defendant has timely filed the instant motion pursuant to that scheduling order.  As pointed out below, however, defendant's motion mixes, confuses, and interweaves — in a disorganized fashion —

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 2 of 42

requests for an order to compel:  1) production of items that have already been provided; 2) immediate production of items the government has already agreed to produce in accordance with the district court's pretrial scheduling order; and 3) production of a few items that are beyond the scope of discovery rules and precedent. Sprinkled throughout his "motion" are also various form discovery requests and vague lists of items that are neither specific nor accompanied by any sort of legal authority.

Under the Court's order and local rules it is only items 2 and 3 above that are ripe for decision by this Court.  Defendant's non-specific "request for discovery," such as the request for Rule 16(a)(1)(E)(i) material, provide nothing for the Court to rule on; the government is well aware of its obligations and intends to comply and continue to comply according to the law, its policies, and the Court-set timetable.

Moreover, as to his requests for a compulsion order, defendant asks the Court to overlook well-established rules and precedents governing discovery in favor of reliance on vague references to broad-

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 3 of 42

based constitutional provisions and the Rules of Evidence.  See Wells'
Motion, p. 2.  Defendant also spends four pages at the end of his memo
citing to Department of Justice policies, which while they govern the
actions of all prosecutors, confer no rights on defendant.  *United States
v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (The U.S. Attorney's
Manual confers no legal rights on a defendant).

  As is the policy and practice in the District of Alaska, the
government is committed to providing broad discovery and an expansive
and liberal view of *Brady* and *Giglio* requirements not limited to the
strict confines of Rule 16 and governing law.  For those requests below
that the government opposes as either untimely or beyond the scope of
discovery, the government respectfully requests this Court to review
and rely on the laws and rules governing discovery practice.  Finally,
although the government has attempted to address all items for which
defendant has met the case specific and local rules, the task has been
difficult to organize, as some items are discussed, some parts of
defendant's motion are just lists of discovery requests unconnected to

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 4 of 42

legal arguments, some parts are long definitional sections that resemble civil discovery requests, and some lists refer to other lists. To the extent the government has failed to address an item for which the Court seeks a response, the government apologizes and respectfully requests an opportunity, on shortened time, to provide whatever further response the Court requests.

## II. LEGAL PRINCIPLES GOVERNING CRIMINAL DISCOVERY

Discovery in criminal cases is governed by three specific rules, authorities and statutes: 1) Fed. R. Crim. P. 16, *see United States v. U.S. Dist. Ct. Central Dist. Of Cal.*, 717 F.2d 478, 480 (9th Cir. 1983) (Discovery governed by Rule 16 rejecting argument that FOIA can be used to obtain discovery), *United States v. Nixon*, 418 U.S. 683, 698 (1974) (Rule 17(c) cannot be used to broaden Rule 16); 2) the principles of *Brady v. Maryland* and its progeny, 373 U.S. 83 (1963); *see Weatherford v. Bursey*, 429 U.S. 545, 549 (1977); (3) and the Jencks Act, 18 U.S.C. § 3500. Where *Brady* is contained within Jencks Act

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 5 of 42

statements it is the Jencks Act that controls. *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979).

It is also well established that there is no general constitutional right to pretrial discovery in federal criminal cases and *Brady* did not establish such a right. *Weatherford*, 429 U.S. at 549; *accord United States v. Salyer*, 271 F.R.D. 148, 152 (E.D. Cal 2010). Rather, *Brady* is a rule of fairness and obligation. *United States v. Beasley*, 576 F.2d 626 (5th Cir. 1978), *cert. denied*, 440 U.S. 947 (1979).

Accordingly, *Brady* does not require the government to disclose every piece of evidence that could arguably be relevant. *United States v. Von Brandy*, 726 F.2d 548, 551 (9th Cir. 1984). Rather, the government must disclose only evidence that is both favorable and material to the defense. *United States v. Gardner*, 611 F.2d 770, 774-75 (9th Cir. 1980); s*ee also, United States v. Olson*, 704 F.3d 1172, 1181 (9th Cir. 2013). Evidence is favorable if it has either exculpatory or impeachment value. *Id.* Pre-trial the government's obligations include disclosure of information that potentially meets these standards. *Id.*

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 6 of 42

The prosecution does not have a duty to disclose all information that might affect the jury's decision.  Rather, the government is required to provide the defense with only information that meets the appropriate standard of materiality.  *See United States v. Agurs*, 427 U.S. 97, 108-112 (1976); *United States v. Olsen*, 704 F.2d at 1183.

The Supreme Court addressed the issue of materiality as it affects the government's due process obligations under *Brady* in *United States v. Bagley*, 473 U.S. 667 (1985), where the Court stated:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

*Id.* at 682; *accord Olsen*, 704 F.2d at 1183.

The definition of what is material under Rule 16 has been long established in the Ninth Circuit; to be material, the evidence must be "relevant to the development of a possible defense," *United States v. Mandel*, 914 F.2d. 1215, 1219 (9th Cir. 1990) (citation and internal quotations omitted), or "enable the defendant significantly to alter the

quantum of proof in his favor." *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976). The disclosure of evidence affecting the credibility of a witness falls within *Brady* only if the reliability of the given witness may be determinative of guilt or innocence. *Giglio v. United Staes*, 405 U.S. 150, 154 (1972).

The requisite showing of materiality is not satisfied by conclusory allegations that the requested information is material to the preparation of the defense. *United States v. Condor*, 423 F.2d 904, 910 (9th Cir. 1970); *see also, United States v. Cadet*, 727 F.2d 1453, 1467 (9th Cir. 1984). Moreover, mere speculation about the existence of *Brady* material does not require inspection of the government's evidence. *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986). Similarly a "hunch" that material evidence might be discovered in certain areas is not a sufficient showing of materiality to warrant discovery. *United States v. Flores*, 540 F.2d at 432, 437-38 (9th Cir. 1976). *Brady* also does not require the Court to make an *in camera*

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 8 of 42

search of the government files.  *Michaels*, 796 F.2d 1116*; citing *United States v. Harris*, 409 F.2d 77, 80-81 (4th Cir. 1969).

Although materiality is a limit on what meets the criteria for *Brady* production, the definition of materiality is an expansive one.  The recent cases make clear that the government should provide all evidence that it believes could arguably be helpful to the defense.  Moreover, the government's policies, followed by this district, emphasize this expanded view and the government has and will continue to turn over any items that could be arguably deemed exculpatory or material to the defense, or will provide such items *in camera* for court review if the government has a belief that an item should not be turned over to the defense.  That being said, unspecific requests for information such as defendant's instant request for all Rule 16(a)(1)(E) material provide no basis for any action by the court and are essentially meaningless here where the government has committed to and has turned over such evidence.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 9 of 42

The cases cited by the defendant do not change these definitions. The only case cited by the defendant from the Ninth Circuit provides little guidance. While the Circuit Court argues in *U.S. v. Hernandez-Meza*, 720 F.3d 760, 768-69 (9th Cir. 2013), for a broad interpretation of the term "material," the court's own analysis provides little guidance and no support for the defense reading. First, the defense argues that government's obligations to provide material under Rule 16(a)(1)(E)(l) are not limited as long as the government shows due diligence, because there is no "due diligence" clause in that section like there is in 16(a)(1)(D) or (F). That comparison is apples to oranges. The due diligence clause cited by the court relate to the existence of the documents, not the substance. Thus the comparison has little value. Moreover, when the court makes its broadest statement, that it "behooves" the government to "turn over whatever evidence it has," the case citation has nothing to do with the issue. Footnote 4 of *United States v. Leal-Del Carmen* comments on whether prosecutors should require defense counsel to request discovery, instead of just turning

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                    Page 10 of 42

over material without a formal request (which is, of course, required for reciprocal discovery). 697 F.3d 964, 969 n. 4 (9th Cir. 2012). Again, this is not about the substance of the items, only the timing of discovery. Nothing in the case cited by the defendant disturbs the exiting Ninth and long-standing Circuit precedents, cited above.

## III. RESPONSE TO REQUESTS

In an attempt to provide a structure that will permit the court to address all issues in dispute in a coherent fashion, the government has recategorized the defendant's requests as follows and will attempt to cite the applicable governing precedents to any decision required by the Court.

Defendant's requests generally fall into three categories:

1. Rule 16 and other information already provided by the government.

2. Specific requests that the government will not provide at this time.

3. Other miscellaneous requests.

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                    Page 11 of 42

For the first category there is no controversy for the Court to decide. For the reasons listed below, the government believes that the Court need only resolve the issues listed in category 2 at this time.

A.   Category 1 - Material Already Provided to Defense

A number of the items requested by the defense have already been provided to the defendant as part of the original and continuing discovery productions in the case. In addition, after the change-over of personnel on the government's trial team in May and June 2013, and in anticipation of the discovery motions deadline, the government recently reviewed its productions and has additional material to be provided to the defendant. The major part of this production is the reports of examinations and tests under Rule 16 (a)(1)(F). This production was never addressed by the parties, but is certainly a part of the government's discovery obligations. The newly constituted trial team has been working to gather a complete list of everything done to date and turn that list over with all such reports by August 30, 2013.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 12 of 42

1. <u>Rule 16 Materials.</u>

The government has already provided a plethora of material to the defense. Thus, the status of the defendant's requests for other Rule 16 discovery are as follows (each request is identified by the corresponding section and sub-section from docket 105 and the page on which it can be found in the defense pleadings):

- At defense motion section III.A on page 4 requesting Wells' statements: The government assumes that defendant is referring to defendant's oral or written statements as defined in Rule 16(a)(1)(A) and (B). To the extent that defendant is asking for something else, the government is unable to respond as the request is not specific. As to those statements covered by the rule, responsive materials were provided in initial discovery productions in March 2013. Additional statements, recordings of jail phone calls made by Wells, will be provided to the defendant by August 23, 2013.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 13 of 42

- III.E on page 5 – Defendant's prior criminal history: Will be provided to the defendant on August 23, 2013.

- III.G on page 6 – Documents & Tangible Objects Material to the Defense:

  This portion of the defendant's motion is simply a Rule 16 discovery request, with no specific items cited. The government has provided, and continues to provide, significant discovery. So much so, that in defendant's request for a new pretrial schedule, they recognized the extent of the discovery by providing the Court with 25 pages of the government's in-depth, itemized discovery receipts. Dockets 53-1 to 53-3. Defendant's non-specific request for all Rule 16(a)(1)(E)(1) material is essentially reducdant and meaningless in context.

- At Section III.K. on page 8, the defense has requested any photographs used in identification procedures. The only photograph used was the photo of defendant, James Wells,

taken from his driver's license photograph. This photo is already in possession of the defense.

- III.H on page 8 – Informants & Cooperating Witnesses: Informant and cooperating witness information, if any, will be provided to the defendant on August 23, 2013.

- V.B(4) on page 14 – Photos, videos, diagrams, drawings, or measurements made by persons at the homicide scene on April 12 & 13, or until the crime scene was cleared: The government has already discovered extensive amounts of photographs, as well as diagrams and drawing, as documented in dockets 53-1 to 53-3. The government is not aware of any items under this heading that meet the requirements of Rule 16 that have not already been discovered. If the defendant has any specific requests, the government will respond as appropriate. Any photos, videos, diagrams, drawings and measurements made in conjunction with expert witness activities will be discovered according to the Court's schedule.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 15 of 42

- VII.C through VII.F – Video from COMMSTA T1 and T2 cameras: Provided to the defendant on April 10, 2013.

2. <u>Other Non-Rule 16 Materials Already Provided</u>

Certain other materials requested by the defendant in docket 105, that are not necessarily covered by Rule 16, have also already been provided.

- At Section III.L on page 8 - Related Wire or Other Surveillance: There were no informants in this case, and any recordings of the defendant related to cooperating witnesses have already been provided in discovery. There was no Title III wiretap in this case.

- At Section IV.A(1) on page 10 - Names of officers who questioned Wells on April 12, 2013 and April 13: The interviews of Wells on April 12th and 13th were recorded. Those recordings were turned over to the defendant on February 22, 2013. In those recordings, the interviewing agents identified themselves.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 16 of 42

- At Section IV.A(2) on page 10 – Statements of officers who questioned Wells on April 12 & 13, 2013: Those interviews were recorded. There were no additional written reports of the interviewing agents. Those recordings were turned over to the defendant on February 22, 2013.

- At Section III.D. on pages 4-5: Reports of Scientific Tests and Examination, Expert Reports, and Laboratory Reports

  a. The newly constituted trial team re-inventoried the laboratory reports and expert reports to ensure that the new trial team had a full accounting of the work done to date. It is the intent of the trial team to turn over all laboratory reports, along with an index cataloguing the items turned over, by August 30, 2013. The trial team wants to ensure that the government is sending all laboratory reports that exist, and is taking the time to ensure those completed to date are sent. The government intends to send reports that are not yet completed as they

become finalized, in accordance with its continuing

discovery obligations.

    b. Expert reports are not due as per the Court's order until

October 25, 2013. For further discussion of this issue, see

Section B.3. *infra.*

## B. Specific Requests Unrelated to Rule 16 or *Brady* that the Government Does not Intend to Produce at this Time

All items in this section will be provided to the defendant, but

under the appropriate time schedule. Defendant's request for these

items in advance is unsupported.

## 1. Various Requests for a Pretrial Witness List and Early Production of Witness Statements Covered by the Jencks Act.

In addition to items the government has already provided or is in

the process of providing, the defendant has made a number of broad

requests to compel production of categories of information that the

government does not intend to produce at this time. These include

repetitive requests for the Court to compel the production of witness

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 18 of 42

lists and Jencks Act statements (sprinkled throughout their motion under the guise of different theories), requests for law enforcement personnel files purportedly pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), and broad-based requests for the government's overall investigation. For the most part, the government will produce most of the requested material under the deadlines set by the district court in its second pretrial scheduling order at Docket 56 – a timetable requested by, and agreed upon, by the defendant. However, to the extent defendant has demanded information beyond the scope of discovery, even under any liberal reading of the government's expanded discovery obligations, the government will object to any production. Based on the authorities and discussion listed below, the government respectfully requests this Court deny defendant's motion as to all those categories as untimely and overbroad.

Throughout his motion in various and differing places and with various and differing reasons, defendant asks this Court to order the

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 19 of 42

government to turn over a witness list and witness statements.[1]  The
defense has asked directly for a witness list and an exhibit list in their
motion at sections III.O. and III.P (addressed below).  But in a number
of other places, the defendant asks for the same information, alleging a
number of differing theories, in an attempt to achieve the same result.

- Thus on page 8, in sections III.I. and III.J., the defendant seems to
  be requesting immediate disclosure of witness statements and
  notes of interviews without either explanation or coherent
  restriction as to what witnesses or interview notes he is seeking or
  why.

- On page 9, footnote 4, at section III.P., defendant requests the
  name and address of every witness the government intends to call
  and every witness it does not intend to call.  Indeed, the defendant
  also requests the a list of the names, addresses, and telephone

---

[1] Defendant states in footnote one that he is not seeking a change in the Court's
previously set deadlines and is not seeking earlier disclosure of Jencks Act
statements.  However, throughout his motion he appears to be seeking an order
compelling exactly that.  If the defendant is not seeking an order compelling the
early turnover of Jencks Act statements, the government is simply confused by
what he is seeking in the requests discussed in this section.

numbers of witnesses **"it" (** presumably meaning the **defense)** intends to call.

- On pages 10-11 at Section IV.A(1)-(5), defendant requests the names and contact information not only of the law enforcement officers who interviewed him, (which are evident in the recordings provided to him in February 2013; see section III.A.2 above), but also the names and contact information for law enforcement officers who interviewed other individuals on the base on April 12 and 13, 2012; the reports of all such law enforcement officers; the statements of any individuals interviewed on those two days; and the names of all Coast Guard personnel or employees who were present when the defendant or anyone else apparently was interviewed. They also request statements of others who were interviewed at the COMMSTA on April 13 and 14, 2012. The government reads this too as an attempt to discover early Jencks Act material and intends to hold to the Court's deadline of January 10, 2014 for disclosure.

- Then on page 12, at Sec. IV.B. (1)-(5), defendant requests that the Court compel the government to provide the full statements of anyone whose information was used to obtain any search warrants; the names, contact information, and reports of anyone who assisted in the search of any property or the person of Mr. Wells; or anything that was seized under a theory of consent or "any other exception to the warrant requirement" and anyone who was present at any searches. Although not spelled out, the government assumes that the defendant may only be referring to searches for which Mr. Wells might have standing to object.

- On page 14 at Sec. V.B. (1) and (2), defendant requests the identity and contact information and reports of any person who entered the homicide scene on April 12 or 13, 2012, plus any logs of any person dispatched to the scene. The defendant further asks for diagrams videos and expert and forensic reports. The government is in the process of producing some of this material

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                              Page 22 of 42

and is planning on producing anything related to an expert opinion at the time already scheduled in the pretrial order.

- III.B. at page 4 – Arrest Reports, Notes, and Dispatch Tapes: Again, defendant requests items in advance of the Court's schedule. Arrest reports are statements of the officers, which will be provided as Jencks material. As for notes, the defendant does not specify which notes, or even which law enforcement officers. The defendant is only entitled to an officer's notes if they are determined to be a statement under the Jencks Act. *United States v. Griffin*, 659 F.2d 932, 937 (9th Cir. 1981). This is most commonly done by the court *in camera*. Agent rough notes are highly unlikely to qualify as Jencks statements. *Id*. at 937-38.

- Finally, in its catch-all laundry list of requests, on pages 21 and 22, at VII.A and VII.B, defendant again requests a list of all Coast Guard and civilian witnesses interviewed by law enforcement, all summaries and recordings of the statements of such witnesses.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 23 of 42

The government opposes these various requests for pretrial witness lists and immediate production of Jencks Act statements because none of these requests are supported by law. Moreover, the government has already committed to early production of Jencks Act statements and the government is simply confused how defendant's numerous requests for interview reports and notes comports with his initial statement that he is not seeking at this time to litigate early production of Jencks.

Three well established and fairly simple principles cover defendant's intermingled various requests for witness lists and Jencks Act statements. First, it is well established that defendant is not entitled to a witness list in a non-capital case. *United States v. Dischner*, 960 F.2d 870, 890 (9th Cir. 1992); *accord United States v. McCullah*, 745 F.2d 350, 353 (9th Cir. 1984). A list of witnesses or persons who have given information to the government is not required to be furnished pursuan to Rule 16. *Weatherford,* at 559 ("It does not follow from the prohibition against concealing evidence favorable to the

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 24 of 42

accused that the prosecution must reveal before trial the names of all witnesses who will testify favorably."); *United States v. Laurins,* 660 F.Supp. 1579, 1584 (N.D. Cal. 1987) (discovery rules do <u>not</u> require disclosure of names and addresses of prospective government witnesses or persons with knowledge of the case).

In support of his claims on page 9, defendant cites 18 U.S.C. § 3432 which is the statute that requires the government to turn over a witness list in a **capital** case. As the government has determined not to seek the death penalty in this case this statute does not apply. Second, the production of witness statements is convered by the Jencks Act. Third, production of *Brady* that is contained within Jencks Act statements is governed by the timing of the Jencks Act, 18 U.S.C. § 3500. *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979). Again, as the defendant is well aware, the government is not relying on the Jencks Act deadlines in this case and has committed to turning over all statements 6 weeks before trial.

Surprisingly the defendant cites to *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984) in support of his request for a list of witnesses and statements of witnesses that the government **does not** intend to call.  In fact, in *Cadet*, the court **reversed** a district court order ordering the government to turn over such information as an abuse of discretion.  The court did note that eyewitnesses to a crime that the government did not intend to call might be *Brady* and therefore discoverable under another theory.  However, there were no eyewitnesses to this crime.  Moreover, the government has already noted that it does intend to turn over all witness statements with its scheduled Jencks Act production.

With respect to his similar requests for witness lists and statements under the guise that they are necessary for his ability to litigate possible motions to suppress statements and search warrants, defendant provides no authority at all for his broad requests except to argue, in general, that it would be useful to see what everyone had to say in order to determine what motions to file.  This is analogous to the

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 26 of 42

type of fishing expedition for discovery rejected by the Supreme Court in *United States v. Armstrong,* 116 S.Ct. 377 (1996).

In *Armstrong*, defendant sought discovery from the government in order to file a motion for selective prosecution. The Court noted that Rule 16 applied only to discovery in response to the government's case in chief, at least to the extent that defendant sought discovery to try and create a claim of selective prosecution. *Id.* at 1485. Similarly here, defendant has not articulated a specific basis as to why he needs specific witness statements. He seeks instead a fishing expedition into material that he would ordinarily not be entitled to at this time in order to see if he can make anything out of it. Neither Rule 16 nor any articulated view of *Brady* supports these claims.

Defendant does not even attempt to articulate a theory under which he would be entitled to his catch-all request for a witness list and Jencks Act production of the statements of all witnesses interviewed by the government. All of these requests should be denied and the

production of witness statements made under the Court's present pretrial order agreed to by both parties.

2.   Requests for the Government's Investigation

Interspersed throughout defendant's motion are various requests that are most aptly categorized as requests for an order compelling the government to turn over its investigative files and any investigative leads.  These items that fall into this category include the following requests:

The ownership, contact information, and witness statements for all blue SUV's on Kodiak Island similar to Nancy Wells' vehicle.  Page 22, Section VII.G.;

The ownership and contact information for certain white pick-up trucks.  Page 22, Section VII.H. ;

The results and ownership information for all other white trucks investigated.  Page 22, Section VII.I.;

This is another area where defendant has provided no authorities in support of his motion, but has simply listed items and asked this

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                    Page 28 of 42

Court to compel production. As defendant is well aware and the government has noted repeatedly, the government intends to produce all witness statements at the time of the court-ordered Jencks Act production. To the extent that the government interviews an individual either to follow up a lead or for any other reason the defendant will receive those statements at that time. The government further acknowledges that its obligations under Rule 16 and Brady are broad. However, those obligations have never gone so far as defendant requests. Defendant points to no section of Rule 16 in support of his request, and the courts have long acknowledged that, "the prosecution is not required to deliver his entire file to the defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would the defendant of a fair trial." *United States v. Bagley*, 105 S.Ct. 3375, 3380 and fn 7.

Despite this well-established rule, the government will be providing the defendant with the name and contact information of the driver of the white pick-up truck requested in his letter of June 5, 2013,

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 29 of 42

and has already provided on March 18, 2013, the arguable *Brady* information concerning an individual who, in a very bad joke, suggested he had committed the murder. However, no rule of discovery requires the government to identify every individual who it has deemed did not commit the murder or provide all reports of its investigative leads as they occur. This is in essence what defendant seeks. *Cf. United States v. Buckner*, 610 F.2d 570, 574 (9th Cir. 1979) (The purpose of Rule 16 is not to require the government to disclose its theory under which it will proceed).

Concerning the government's investigation into blue SUV's and white pick-up trucks, the government acknowledges that it has reviewed DMV records of registered vehicles as part of its investigation. The government will produce these DMV records by August 30, 2013. The government is also preparing a summary chart and presentation under Evidence Rule 1006. The government acknowledges that the items used to support any chart or summaries must all be admissible and produced and it will produce any documents once they have been

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                    Page 30 of 42

assembled. However, these exhibits are still in production and the backup documentation has not yet all been gathered. With respect to white or blue trucks investigated the defendant is entitled to witness statements either as Jencks, or as arguable potential *Brady,* and they will be provided pursuant to the Court's previous order for pretrial scheduling.

3. <u>Expert Witnesses</u>

- III.C. on page 4 Expert Witnesses – The government contends that expert notices are not due until October 25, 2013. The government intends to produce its list of expert witness as that time, and may seek to modify it as it receives more finalized expert reports.

4. *<u>Brady/Giglio</u>*

- At Section VI., especially VI.E. (1)-(6), pages 14-21, the defense requests *Brady/Giglio* material. Again, defendant has made no specific request for material, only a general request that the government comply with applicable policy. There is no dispute for

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                           Page 31 of 42

this Court to address. All *Brady/Giglio* material will be provided according to Department of Justice policy and the Court's second pretrial schedule (docket 56).

- The defense's requests in sections VI.C(1), VI.C(3), VI.C(4), VI.C(5), and VI.C(6) are similarly premature or unsubstantiated.

5. Request for Review of all Law Enforcement Personnel Files Pursuant to *United States v. Henthorn*

- At Section V.A. on pages 12-13, the defendant moves for the government to review the personnel files of a wide range of law enforcement officers involved in the investigation of this case. The list includes:

  - Law enforcement officers the United States intends to call at trial,
  - Law enforcement officers the United States may call at trial,
  - Law enforcement officers the United States may call in rebuttal,
  - Law enforcement officers the United States may call at "any hearing in this case," and
  - any such witness to be called by the defense."

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 32 of 42

This request is both overbroad and premature.  The first request on the list above, review of personnel files of law enforcement witnesses that testify at trial, is otherwise known as a "*Henthorn*" request, which derives its name from *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991).  The United States acknowledges the defendant's request and will comply with the law as it pertains to *Henthorn* requests for review of testifying federal law enforcement officers' personnel files.

*Henthorn* requires that "when confronted with a request by a defendant for the personnel files of <u>testifying</u> officers" [emphasis added], the United States must examine the officer's personnel files, and must "disclose information favorable to the defense that meets the appropriate standard of materiality."  *Id.* at 30-31.

As for the officers that the government will call at its case-in-chief at trial, we will conduct a *Henthorn* review, and provide appropriate information, either to the defendant or to the Court for *in camera* review.  *Milke v. Ryan*, 771 F.3d 998, 1016 (9th Cir. 2013).  For government rebuttal witnesses, unless the defendant is willing to

provide a witness and exhibit list of their own, it is impossible for the government to determine which officers may be called in rebuttal. And for witnesses the government may call at "any hearing," the government does not know what potential suppression motions, or other litigation the defendant is contemplating. This again makes it impossible for the government to determine which files to review.

Finally, and most absurdly, is the defendant's request for the government to conduct a *Henthorn* review of government witnesses he may decide to call. Not only is there no support for this request, the defendant has provided no indication to the government what law enforcement witnesses he may call. However, the defendant is reminded that it is well-settled that it is improper to call a witness for the primary purpose of impeaching that witness. *United States v. Gilbert,* 57 F.3d 709, 711 (9th Cir. 1995) (internal citations omitted):

> Impeachment is improper when employed as a guise to present substantive evidence to the jury that would be otherwise inadmissible. A determination must be made as to whether the [party] examined the witness for the primary purpose of placing before the jury substantive evidence which is otherwise inadmissible.

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                     Page 34 of 42

*Id.* at 711.

6. <u>Charts and Summaries</u>

At Section III.M on page 8, the defendant requests "Charts and Summaries." The defendant cites no authority to support his request for production at this stage of the litigation. Because they are used to display other substantive evidence, charts and summaries are not included in any of the Rule 16 categories, nor are they *Brady* material for the same reason. However, in order to promote efficiency of the trial, the government will agree to make an initial production of charts and summaries two weeks before trial.[2]

7. <u>Production of 404(b) Material</u>

At Section III.F. on pages 5-6, the defense has requested the government's 404(b) notice. The Court set the 404(b) notice four weeks prior to the motions in limine deadline, which the Court has scheduled

---

[2] However, due to the nature of trial preparations, the government reserves to the right to amend or add charts and summaries as needed, with appropriate notice to the defendant and the Court.

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 35 of 42

for December 16, 2013. The government will comply with the Court's deadline.

8.   Expert Notices

At Section III.C & D., at page 4, and section V.B at page 14, the defense has requested forensic evaluations or opinions of every expert that conducted analysis of evidence from the crime scene.   The government intends to comply with the Court's deadline of October 25, 2013 to provide expert notices.  The government agrees to provide laboratory reports sooner, as soon as a list of those that have been completed can be compiled and verified by the new trial team.  Also see para. 3., *infra*, for the government's response to request for the expert reports.

9.   Other Potential Suspects

At section VI.E.2 on page 19, the defense requested information about other potential suspects.  The government is under no obligation to turn over all aspects of its investigation.  See section III.B.2. above. To the extent that information on other possible suspects qualifies, or

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                    Page 36 of 42

may qualify under a liberal analysis, as *Brady* material, the government will provide it to the defense. In fact, the government has already provided *Brady* material in its previous submissions related to a person who jokingly (obviously a poor joke) admitted to the murders, at Bates numbers 6208-6218 and 6255-6262. The government will continue to provide material according to DOJ policy.

10. *In Camera* Review

At Section VI.E(7) on page 21, the defense discusses their recommended procedure for *in camera* review. The government opposes this proposed procedure and intends to follow the applicable law on point. If there are any matters that are appropriate for *in camera* review by the Court in this case, we intend to submit those matters to the Court directly. We are not aware of any requirement to submit those matters to the defense, and believe it would defeat the purpose of *in camera* submission to do so. The cases cited by the defendant, do not support his proposition that all *in camera* submissions should be disclosed to the defense. When discussing the procedure of how to

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 37 of 42

determine whether items are *Brady* material <u>prior</u> to trial, the court advises: "If the prosecution isn't sure whether material in a personnel file rises to the *Brady* threshold, "it may submit the information to the trial court for an *in camera* inspection." *Milke v. Ryan*, 771 F.3d 998, 1016 (9th Cir. 2013), quoting *United States v. Cadet,* 727 F.2d 1453, 1467-68 (9th Cir. 1984). It is only after the court finds that there has already been a *Brady* violation, that it orders on remand that defense counsel be allowed to view the documents submitted to the court. *Id.* at 1019. The standard procedure for *in camera* review of *Brady* material is to have the court alone review the material. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987). Thus, there is no basis to order the special review requested by the defendant.

On February 27, 2013, the parties filed a joint motion to declare the case complex, which included a pretrial schedule for discovery, motions practice and other key dates in the litigation of the case. (Docket 18). Both parties agreed on those dates, which served as the basis for the Court's first pretrial scheduling order (Docket 20), and the

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 38 of 42

subsequent amended pretrial scheduling order. (Docket 26). The defendant later proposed their own set of dates, with the deadlines extended into the future. (Docket 45). Those new dates, chosen by the defendant were accepted by the Court in the second pretrial scheduling order (Docket 56), the schedule all parties are currently obligated to meet.

Nonetheless, a number of the items in the defendant's discovery motion are simply requests for those items in advance of the schedule. The defendant offers no basis for advancing the Court's discovery schedule, one they proposed themselves. Most of the defendant's motion is a request to compel earlier production of material the government has already agreed to provide, and, in most cases, well before the law requires.

The Court should deny these requests until and unless the government fails to meet the schedule set in Docket 56.

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                                    Page 39 of 42

C.  Category 3 - Other Miscellaneous Requests

- At Section III.D. at page 5 and VII.J on page 22, the defense requests the results of a gunpowder residue test allegedly performed by the government from samples taken from defendant's hands the day of the murders on April 12, 2012. The government has no such samples and has done no testing. This type of testing has been determined to be unscientifically reliable under the *Daubert* standard. Thus, in the past few years, both the FBI Laboratory and the Alaska Scientific Crime Detection Laboratory have decided to no longer conduct gunshot residue tests, and the testing was not done. The agents who took the samples did so as an investigative technique in conjunction with questioning the defendant. This is permissible under the law. *See, e.g., Ortiz v. Uribe*, 671 F.3d 863, 870 (9th Cir. 2011) (affirming investigator's use of deceptive interrogation tactics, including discussion of polygraph exam). The alleged samples taken were not kept

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 40 of 42

because they served no evidentiary purpose. Thus, there is no material to disclose in response to this defense request.

- III.N. at page 8 – Refresh memory – This request is too open-ended for the government to respond to, or for the Court to provide a ruling. The government has no way of determining which witnesses may need to have their memory refreshed, and which documents may be needed.

## IV. CONCLUSION

For the foregoing reasons, the government requests the defendant's motion to compel be denied in its entirety.

RESPECTFULLY SUBMITTED on August 20, 2013, in Anchorage, Alaska.

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney

s/ Bryan D. Schroder
BRYAN D. SCHRODER
Assistant U.S. Attorney
United States of America

s/ Kathleen A. Duignan

Case 3:13-cr-00008-SLG   Document 111   Filed 08/20/13   Page 41 of 42

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2013,
a copy of the foregoing was served via
the CM/ECF system on all counsel of
record.

s/ Bryan D. Schroder
Office of the U.S. Attorney

*United States v. Wells*
Case No. 3:13-cr-00008-RRB-JDR                           Page 42 of 42