Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Street, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Peter Offenbecher
SKELLENGER BENDER, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
(206) 623-6501

Attorneys for Defendant James Wells

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>   v.<br><br>JAMES MICHAEL WELLS,<br><br>             Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>DEFENDANT WELLS' REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR AN ORDER COMPELLING DISCOVERY<br><br>**ORAL ARGUMENT REQUESTED** |

The defendant, JAMES MICHAEL WELLS, through counsel, Peter Offenbecher, and

Rich Curtner, Federal Defender, hereby files this Reply to the Government's Response (Dkt. No.

111) to Defendant's Motion for an Order Compelling Discovery. Dkt. No. 105.

Case 3:13-cr-00008-SLG   Document 127   Filed 09/06/13   Page 1 of 29

## I.     STATEMENT OF THE CASE

The defendant filed a Motion for an Order Directing the Government to Provide Additional Discovery to James Wells on July 26, 2013.  Dkt. No. 98.  The motion was re-filed on August 6, 2013, modifying the original motion with respect to discovery request specific to a potential capital prosecution only.  Dkt. No. 105.  The government's response was filed on August 20, 2013.  Dkt. No. 111.

During this period of time, there has also been an exchange of correspondence and personal and telephonic conferences attempting to resolve outstanding discovery issues.  While some agreement has been reached, most issues remain unresolved.

## II.    SUMMARY OF REPLY

The government's refusal to disclose the most basic discovery materials relating to this investigation must be matched against three sources of authority mandating such production: (1) Federal Rule of Criminal Procedure 16; (2) the constitutional standard announced in *Brady v. Maryland* and its progeny; and (3) a prosecutor's ethical responsibilities under the applicable rules of professional responsibility.  The government's responsive pleading demonstrates a complete misunderstanding of its obligations under Rule 16 and *Brady,* and does not address at all its obligations under the Rules of Professional Conduct.

## III. THE GOVERNMENT UTTERLY MISAPPREHENDS ITS OBLIGATIONS TO PROVIDE DISCOVERY UNDER FEDERAL RULE 16.

In response to the defendant's request for information regarding video of trucks similar to the defendant's and additional "other suspect" evidence, the government states:

> The above two requests appear to us to be requests for the government to turn over the results of our investigation into people who DID NOT murder Petty Officer Hopkins or Mr. Belisle. As you are aware, the government has conducted an extensive investigation leading to the conclusion that Mr. Wells – and only Mr. Wells – committed the murders. To be clear, we do not intend to parcel out bits of the investigation, not covered by Rule 16 or other discovery rules and case law in a piece by piece, fashion.

Govt. Letter of August 23, 2013 (capitalization in original).

This passage is typical of the government's response to defense counsels' requests for discovery in this case. The arrogance of this passage notwithstanding,[1] this statement demonstrates the government's fundamental misunderstanding of its obligations under Fed. R. Crim. P. 16(a)(1)(E)(i). Rule 16(a)(1)(E)(i) requires the government to produce anything that is "material to the preparation of the defense."

> (E) *Documents and Objects*. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> ### *(i) the item is material to preparing the defense;*

---

[1] Having already determined by its own investigation that Mr. Wells is guilty of the murders of Mr. Belisle and Mr. Hopkins (despite the fact that the government's evidence is admittedly entirely circumstantial), the government simply refuses to disclose evidence that is material to the defense in discharging its own obligation to investigate the case and provide Mr. Wells with the effective assistance of counsel.

In the government's view of the universe, all of the possible knowledge about the case resides within the four walls of the Office of the United States Attorney for the District, where it will remain. Defense counsel—and presumably the Court—have no role to play in investigation of possible defenses for Mr. Wells or the preparation of his case for trial.

PAGE – 3
USA v. WELLS, 13-CR-00008-RRB-JDR

Fed. R. Crim. P. 16 (a)(1)(E) (emphasis supplied).

Recent Ninth Circuit authority has clarified how prosecutors should view their discovery obligations under Rule 16(a)(1)(E)(i), and what constitutes "item[s] . . . material to preparing the defense" that must be disclosed under that rule. In reversing two recent convictions, the Ninth Circuit demonstrated zero tolerance for prosecutors' withholding of information from a defendant that relates to preparing the defense or even a potential defense. In *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013), the Ninth Circuit vacated and remanded a conviction, stating "[i]t…behooves the government to interpret the disclosure requirement [of Rule 16(a)(1)(E)(i)] broadly and turn over whatever evidence it has pertaining to the case." The court held that Rule 16(a)(1)(E)(i) "[m]ateriality is a low threshold" and is satisfied so long as the information sought could help the defendant prepare a defense. *Hernandez-Meza*, 720 F.3d at 768.

In *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183-84 (9th Cir. 2013), the court held that Rule 16(a)(1)(E)(i) permits discovery of information "relevant to the development of a possible defense." (quotation marks and citation omitted) (vacating and remanding conviction where district court abused its discretion by not requiring disclosure of information material to preparation of the defense). Explaining that favorable or exculpatory information is discoverable not only under a *Brady* standard, but also under Rule 16(a)(1)(E)(i), the court noted that "materiality" under Rule 16(a)(1)(E)(i) is "broader than *Brady*…because [i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Id.* at 1183.

Chief Judge Kozinski recently explicated the government's obligations under Fed. R. Crim. P. 16(a)(1)(E)(i):

> A defendant needn't spell out his theory of the case in order to obtain discovery. Nor is the government entitled to know in advance specifically what the defense is going to be. The relevant subsection of Rule 16 is written in categorical terms: Upon defendant's request, the government must disclose any documents or other objects within its possession, custody or control that are "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E)(i)(i). Unlike the preceding and subsequent subsections, which both require that "the government knows—or through due diligence could know—that the" item exists, *see* Fed.R.Crim.P. 16(a)(1)(D), (F), subsection (E) is unconditional. Lack of knowledge or even a showing of due diligence won't excuse non-compliance.

*Hernandez-Meza*, 720 F.3d at 768-69.

**There is no requirement in Rule 16(a)(1)(E)(i) that the material be exculpatory.** The obligation under Rule 16(a)(1)(E)(i) is separate from the government's constitutional obligation under *Brady* and the due process clause of the Constitution. What is "material to preparing the defense" under Rule 16(a)(1)(E)(i) **is not limited to exculpatory evidence:**

> Rule 16 . . . requires the disclosure of all books, papers, documents, data, tangible objects, etc., that are "within the government's possession, custody or control" and are "material to preparing the defense" or "[that] the government intends to use ... in its case in chief at trial [or that] was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(i). This portion of the Rule also uses the terms "possession, custody or control." So, again, the prosecution must turn over everything in its possession *or* custody *or* control, regardless of the original source of the document or other object, so long as it is "material" under the Rule. . . . . While it is true that the government must produce items it intends to use at trial and items that it obtained from the defendant, its obligations are not limited to those categories only; it also must disclose items that are "material to preparing the defense." And the government cannot take a narrow reading of the term "material" in making its decisions on what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation.

As Judge Sentelle said for the D.C. Circuit in *United States v. Marshall,* 132 F.3d at 67, Rule 16(a)(1)(E)(i) (formally Rule 16(a)(1)(C)) covers evidence that is "material 'to *the preparation of* the defendant's defense'" (emphasis in original). **It is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure.** *See id.*

**"Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence.... [I]t is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths."** *Id.* **(footnote omitted).**

**Rule 16 is intended to provide a criminal defendant "the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case."** *United States v. Poindexter,* 727 F.Supp. 1470, 1473 (D.D.C.1989). *See also United States v. Lloyd,* 992 F.2d 348, 351 (D.C.Cir.1993) (materiality standard "is not a heavy burden"; evidence is material if there is indication that it may play "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."); *United States v. George,* 786 F.Supp. 11, 13 (D.D.C.1991) (the materiality hurdle "is not a high one").

*United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (emphasis supplied).

Defense counsel have a constitutional obligation to conduct an independent investigation of the case on behalf of Mr. Wells. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 691 (1984) (holding that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). This obligation goes beyond mere acceptance of the government's assertion in a letter that it has conducted a thorough investigation and have determined that only Mr. Wells is guilty.

The materials in the "government's possession, custody or control" that are requested in the defendant's motion to compel discovery are "material to the preparation of the defense" because of defense counsel's constitutional and ethical obligation to investigate. "It thus behooves the government to . . . . turn over whatever evidence it has pertaining to the case."

*Hernandez-Meza*, 720 F.3d at 768. Why would the government want to hide this important evidence? Hiding evidence from the defense serves no legitimate purpose and serves only to increase the total cost of the prosecution to the judiciary by forcing appointed defense counsel to reinvestigate what the government has already accomplished.

## IV. SPECIFIC EXAMPLES OF DISCOVERY THAT HAS BEEN REQUESTED AND SHOULD BE DISCLOSED UNDER RULE 16 BECAUSE IT IS "MATERIAL TO PREPARING THE DEFENSE."

The government continues to fight against the disclosure of basic discovery items that are "material to preparing the defense." Fed. R. Crim P. 16(a)(1)(E)(i). Some of these materials may also turn out to be exculpatory material required to be disclosed under the Constitution and the Rules of Professional Conduct. Defense counsel will not know if they fall into the second two categories until we see these materials, and see how the further defense investigation and trial develop.

> [A]ny such judgment [on whether discovery materials will be materially exculpatory] necessarily is speculative on so many matters that simply are unknown and unknowable before trial begins: which government witnesses will be available for trial, how they will testify and be evaluated by the jury, which objections to testimony and evidence the trial judge will sustain and which he will overrule, what the nature of the defense will be, what witnesses and evidence will support that defense, what instructions the Court ultimately will give, what questions the jury may pose during deliberations (and how they may be answered). . .

*Safavian*, 233 F.R.D. at 16.

However, regardless of whether they can now be characterized as *Brady* material, these items are "material to preparing the defense" in defense counsels' investigation of these homicides and the defense preparation for trial. These items are detailed in the defendant's

motion to compel discovery. Dkt. No. 105. Examples of the items the government continues to hide from the defense include the following:

### A. Reports And Statements From The First Responders And Investigators Who Processed The Homicide Scene.

The government continues to refuse to provide statements of the civilian, Coast Guard, law enforcement, and medical personnel who first responded to T2, discovered the decedents, attempted to revive them, examined the homicide scene, and collected critically important physical evidence.

The statements of these witnesses and their documentary reports are critical in determining the manner and means of the death of these two individuals. Defense counsel have a constitutional obligation to investigate the forensics and ballistics in a shooting homicide prosecution. *See, e.g., Draughton v. Dretke*, 427 F.3d 286, 296 (5th Cir. 2005) (counsel's failure to investigate forensics of shooting scene constitutes ineffective assistance).

The defendant's forensic experts are simply unable to conduct their own analysis of the crime scene and determine the manner and means of death without these basic materials. The defendant's experts are unable to determine where the decedents were first discovered, whether the decedents were first discovered facing up or facing down, what medical therapies were applied to the decedents prior to them being pronounced dead, what clothing they were wearing at the time of their demise, etc. Although there are some photos, it is impossible for defense investigators, defense lawyers, and defense experts to figure out how critically important ballistic evidence (bullet fragments) was discovered and recovered. This is evidence that is obviously

necessary to determine where the individuals were and what they were doing when they were shot. This is basic information that is being withheld by the government.

These basic pieces of information can be known only through the statements of the first responders to the scene. This information is necessary for the defense experts to do their jobs. In the absence of these basic statements of the first responders, defense investigators, lawyers, and experts are left to speculate about what is depicted in the photographs, and how the bodies looked before the photographs were taken. If defense counsel have a constitutional obligation to investigate the forensics and ballistics of the homicide scene, then these materials are "material to the preparation of the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i).

Why would the government want to hide these materials from the defense investigators lawyers and experts? No legitimate purpose is served by the government hiding the materials that describe condition of the bodies when they were first discovered and the manner and means of the collection of the ballistics and other evidence at the homicide scene. The government is in possession of the only reports detailing how the scene looked at the time and how the ballistics and other evidence was retrieved. There is no other source of these materials for the defense. This type of "hide the ball" gamesmanship must be rejected by the Court. This information is "material to the preparation of the defense." The Court should order that this information be immediately disclosed.

**B.    Information Concerning The Identity Or Identities Of The Persons Seen In The Videos In The White Truck(s).**

Much of the government's circumstantial case revolves around snippets of a video feed from surveillance cameras at T1, T2 and at the Coast Guard Base Support Unit ("BSU").

According to the government, the camera at BSU captures images of Mr. Wells' white truck passing the main gate at times that implicate him in the homicides. Video from other cameras shows a white truck similar to Mr. Wells' at various critically important times, including the late night before the homicides and also the morning of the homicides.[2] The government has advised Mr. Curtner that it has identified the owner and operator of these vehicles. This information was requested in the defendant's discovery motion. Dkt. No. 105 at 22.

By letter dated August 23, 2013, the government has provided the owner/driver contact information for the white pickup truck described in "(1)." Regarding the other trucks, however, the government is "not willing to provide information at this time." This is information "material to the preparation of the defense," Rule 16(a)(1)(E)(i), because defense investigators are attempting to determine whether there was another truck similar to Mr. Wells' truck in the vicinity, which could have been operated by a different person or persons who might be responsible for the homicides. This is basic investigation of other vehicles similar to the defendant's at the homicide scene, at or near the time of the homicides, that is required of counsel, who are charged with providing constitutionally effective assistance of counsel. *See, e.g., Lord v. Wood*, 183 F.3d 1083, 1093 (9th Cir. 1999) ("A lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the

---

[2] Specifically, the defendant has requested identifying information for the owner of the white pickup seen: (1) in the T1 video at 7:02:58 a. m. on April 12, 2012; (2) in the T1 video at 7:09:11 a.m. on April 12, 2012; (3) in the T2 video at 10:42:11 p.m. (with an additional time stamp showing 22:36:42) on April 11, 2012; and (4) at approximately7:45 a.m. on April 12, 2013, near T2 on Tom Stiles Road.

verdict, renders deficient performance.") *quoting Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

No legitimate purpose is served by hiding this contact information from the defense. It only makes the defense investigation of this aspect of the case more difficult or impossible. The Court should reject this hide-the-ball gamesmanship as unworthy of a public prosecutor in a serious federal criminal trial and order the information disclosed.

### C.     Other Suspect Information

On August 23, 2013, the government provided to the defense the taped statement of one other suspect, a Coast Guardsman who had allegedly confessed to the homicides. The government continues to refuse to provide information regarding any other potential suspects it has investigated regarding these homicides.

Although the government has continually assured defense counsel that there is no "other suspect" information, it strains credulity to imagine that the government has not investigated other suspects. Why would the government want to hide this information from the defense? Why would the government provide information (which it believes clearly exonerates one "other suspect"), but refuse to disclose the information regarding other potential suspects? This information is "material to the preparation of the defense," *see* Fed. R. Crim. P. 16(a)(1)(E)(i), because defense investigators and defense counsel have a constitutional duty to fully investigate "other suspect" evidence. *See Wood*, 183 F.3d at 1093 (failure to fully investigate constitutes ineffective assistance of counsel).

**D.     Information And Evidence Relating To The Motions To Suppress Evidence.**

The defense has repeatedly requested information and evidence relating to the defense motions to suppress statements and the defense motions to suppress physical evidence. Dkt. No. 105 at 9-12. The government has refused to provide the requested information.

Defense counsel clearly have an obligation to investigate and present appropriate motions to suppress the defendant's statements and to suppress physical evidence seized under the apparent authority of a warrant, an alleged consent, or some other exception to the warrant requirement. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 385-86 (1986) (defense counsel constitutionally ineffective for failing to conduct an investigation which would have revealed a meritorious Fourth Amendment motion to suppress physical evidence and failing to pursue the motion to suppress); *Streetman v. Lynaugh*, 812 F.2d 950, 958-59 (5th Cir. 1987) (defense counsel constitutionally ineffective for failing to investigate facts surrounding defendant's interrogation and confession, and failing to file a motion to suppress the statements).

Because defense counsel have a constitutional obligation to investigate and file these motions to suppress, the information and evidence requested regarding the motion, *see* Dkt. No. 105 at 9-12, is "material to preparation of the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Why would the government want to hide this evidence? Hiding this evidence serves no legitimate purpose. The Court should order the government to produce the information requested.

**E.     This List Is Merely Illustrative.**

All of the items requested in the Defendant's Motion for an Order Compelling Discovery are "items material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). As such, "[u]pon

PAGE – 12
USA v. WELLS, 13-CR-00008-RRB-JDR

the defendant's request, the government ***must*** permit the defendant to inspect and to copy or photograph" the items requested. *Id.* (emphasis supplied) *See Hernandez-Meza*, 720 F.3d at 768; *Muniz-Jaquez*, 715 F.3d 1183-84. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Alaska Rules of Professional Conduct 3.8 at comment 1. Where, as here, the government refuses to comply with the plain language of the rule, the Court should issue an Order compelling the production.

V. **CONTRARY TO THE SELF LAUDATORY RHETORIC IN ITS RESPONSIVE PLEADING, THE PUBLIC RECORD OF FEDERAL PROSECUTIONS EMANATING FROM THIS DISTRICT DEMONSTRATES A WHOLESALE FAILURE OF FEDERAL PROSECUTORS TO COMPLY WITH THEIR CONSTITUTIONAL OBLIGATIONS TO OBTAIN AND DISCLOSE EXCULPATORY INFORMATION UNDER *BRADY V. MARYLAND*.**

In its response to the defendant's discovery motion, the government boldly states:

As is the policy and practice in the District of Alaska, the government is committed to providing broad discovery and an expansive and liberal view of *Brady* and *Giglio* requirements not limited to the strict confines of Rule 16 and governing law.

Dkt. No. 111 at 4. The public record of federal prosecutions emanating from this district is, however, to the contrary.

In a series of well-publicized and notorious cases that captured the attention of the national legal community, the United States Congress, and the Attorney General of the United States, federal prosecutors have been excoriated and disciplined, and defendants' convictions have been reversed and charges dismissed, because of the wholesale failure of prosecutors to

comply with their constitutional obligations to obtain and disclose exculpatory information under *Brady v. Maryland*.

In *United States v. Kohring*, 637 F.3d 895, 900 (9th Cir. 2011) the Ninth Circuit Court of Appeals reversed the defendant's conviction because the government failed to disclose "several thousand pages of documents, including 'FBI 302 reports,' undated and dated handwritten notes from interviews with [government witnesses], e-mails, various memoranda, and police reports." This was a case prosecuted in the District of Alaska.

The prosecution of Alaska Senator Ted Stevens was another case that exposed the government's failure to disclose exculpatory information under *Brady*:

> Meanwhile, essentially the same prosecution team that was prosecuting Kohring was also prosecuting Senator Ted Stevens in Washington, D.C., on public corruption charges. See United States v. Stevens, Criminal Case No. 08–231 (D.D.C.). The government prosecuted Senator Stevens because he failed to disclose gifts he had received from Allen, as required by the Ethics in Government Act, see 5 U.S.C. App'x 4 §§ 101–505. Senator Stevens was convicted on several counts. After his conviction, though, it became apparent that the prosecution team had failed to provide Senator Stevens' with favorable discovery pertaining to a key witness—Bill Allen. A new group of government lawyers reviewed the matter, and they moved to dismiss all charges against Senator Stevens with prejudice, based on the undisclosed *Brady/Giglio* material.

*Kohring,* 637 F.3d at 900. The history of the discovery abuses in the *Stevens* case is set forth in full in the report filed by Henry Schuelke, an attorney retained by United States District Court Judge Emmett Sullivan to independently investigate the discovery abuses. IN RE SPECIAL PROCEEDINGS, 2012 WL 858523 (D.D.C.).

*In United States v. Kott,* 423 Fed. Appx. 736 (9th Cir. 2011) another federal criminal prosecution in the District of Alaska, the Court reversed Mr. Kott's conviction, again because the

government failed to disclose a similar cornucopia of exculpatory information about key government witnesses.

In response to the highly publicized abuses of the *Stevens* case, and a public outcry demanding changes in the statutes and rules governing federal prosecutors' disclosure obligations, Attorney General Holder quickly moved to institute changes in Department of Justice policies intended to impact federal prosecutors across the country.

> In April 2009, within days after the *Stevens* case was dismissed, the Criminal Discovery and Case Management Working Group was created to review the Department's policies, practices, and training concerning criminal case management and discovery, and to evaluate ways to improve them. Our comprehensive review of discovery practices identified some areas where the Department could improve, and we have undertaken a series of reforms which have since been institutionalized.

Statement for the Record from the Department of Justice, Hearing on the Special Counsel's Report on the Prosecution of Senator Ted Stevens at 3 (March 28, 2012).[3]  As demonstrated in the next section, however, the reforms spawned by the *Stevens* scandal apparently have not yet made their way back to Alaska.

**VI.  THE GOVERNMENT FUNDAMENTALLY MISUNDERSTANDS ITS OBLIGATIONS WITH RESPECT TO DISCLOSURE OF EXCULPATORY INFORMATION PURSUANT TO *BRADY V. MARYLAND*.**

In its responsive pleading the government makes a number of clearly incorrect statements regarding the legal standard for disclosure of exculpatory information that demonstrate a fundamental misunderstanding of its *Brady* obligations.  For example, while, on page four of its responsive pleading the government alleges it provides "broad discovery and an expansive and

---

[3] Available at http://www.justice.gov/opa/documents/SFR-for-SJC-hearing-on-Schuelke-report-26MAR12-FINAL.PDF.

liberal view of *Brady* and *Giglio* requirements," on page seven of the same pleading, it retreats to

an extremely narrow reading of its *Brady* obligation:

> The prosecution does not have a duty to disclose all information that might affect the jury's decision. Rather, the government is required to provide the defense with only information that meets the appropriate standard of materiality. *See United States v. Agurs*, 427 U.S. 97, 108-112 (1976); *United States v. Olsen*, 704 F.2d at 1183.

> The Supreme Court addressed the issue of materiality as it affects the government's due process obligations under *Brady* in *United States v. Bagley*, 473 U.S. 667 (1985), where the Court stated:

>> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

> *Id.* at 682; *accord Olsen*, 704 F.2d at 1183.

Dkt. No. 111 at 7.

In this regard, the government's extensive reliance upon *United States v. Olsen*, 704 F.3d

1172 (9th Cir. 2013) in its responsive pleading for this proposition is curious and decidedly

misplaced. In *Olsen,* the three-judge panel found that *important exculpatory impeachment*

*evidence had been withheld* from the defendant. The only question in *Olsen* was whether the

prosecutors were going to be able to get away with it on appeal (from a 2255 dismissal) because

of the appellate standard of review as to materiality. *Id.* at 1183-84.

The three-judge panel concluded that the *withheld evidence was exculpatory and should*

*have been disclosed to the defense,* but, applying the appellate standard of review regarding

materiality, declined to reverse the conviction because of a lack of confidence that the withheld evidence would have changed the outcome of the case. *Id.* at 1185.[4]

Contrary to the government's assertion in the passage above, the *Olsen* court stated that this appellate review standard is ***not*** the standard that should be employed by a prosecutor in determining whether to produce favorable evidence pretrial and during discovery proceedings:

> A trial prosecutor's speculative prediction about the likely materiality of favorable evidence, however, should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence will prove to be "material" after trial. Thus, "there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge." *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*Olsen*, 704 F.3d at 1183 n.3 (*citing United States v. Acosta,* 357 F. Supp. 2d 1228, 1239–40 (D. Nev. 2005) ("[T]he 'materiality' standard usually associated with *Brady* for pretrial discovery purposes . . . should not be applied to pretrial discovery of exculpatory materials.") and *United States v. Sudikoff,* 36 F. Supp. 2d 1196 (C.D. Cal. 1999) (The standard of whether evidence would have changed the outcome "is only appropriate, and thus applicable, in the context of appellate review . . . [I]t obviously cannot be applied by a trial court facing a pretrial discovery request.") and *United States v. Safavian,* 233 F.R.D. 12, 16 (D.D.C. 2005) ("The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court

---

[4] Despite its extensive reliance upon *Olsen* in its responsive pleading, the government has also failed to disclose to this Court that there is currently a petition for rehearing pending before the *en banc* Ninth Circuit Court of Appeals. *UNITED STATES OF AMERICA*, Plaintiff-Appellee, v. *Kenneth OLSEN*, Defendant-Appellant, Nos. 10-36063, 1036064, Dkt. No. 55 (C.A. 9 April 19, 2013). The Court of Appeals has required the government to file a response to the petition for rehearing, a procedural step that is necessary before a petition for rehearing, or a petition for rehearing *en banc*, is granted. *Id*. at Dkt. No. 56. *See* Fed. R. App. P. 40(a)(3).

would use post-trial.  Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial.")).   In short, a prosecutor making pretrial decisions as to whether evidence should be produced as "favorable" should not employ a *Brady* "materiality" standard but rather should produce all information that is potentially exculpatory or otherwise favorable.

In *Safavian*, District Judge Friedman explained why the application of this appellate review standard of materiality is completely inappropriate for a federal prosecutor (or a trial Court) to apply ***prior to trial:***

> The government acknowledges that under *Brady* it has the affirmative duty to produce exculpatory evidence when such evidence is material to either guilt or punishment. But it contends that evidence is "material" only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" (quoting *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). The problem with this iteration of *Brady* and the government's view of its obligations at this stage of the proceedings, however, is that it permits prosecutors to withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the outcome of the trial. Most prosecutors are neither neutral (nor should they be) nor prescient, and any such judgment necessarily is speculative on so many matters that simply are unknown and unknowable before trial begins: which government witnesses will be available for trial, how they will testify and be evaluated by the jury, which objections to testimony and evidence the trial judge will sustain and which he will overrule, what the nature of the defense will be, what witnesses and evidence will support that defense, what instructions the Court ultimately will give, what questions the jury may pose during deliberations (and how they may be answered), and whether the jury finds guilt on all counts or only on some (and which ones).

> The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed-with the

benefit of hindsight-as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. Because the definition of "materiality" discussed in *Strickler* and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase. The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial. *United States v. Sudikoff,* 36 F.Supp.2d 1196, 1198-1199 (C.D.Cal.1999); *see also United States v. Acosta,* 357 F.Supp.2d 1228, 1233 (D.Nev.2005), and appended magistrate judge's decision, 357 F.Supp.2d at 1237; *United States v. Carter,* 313 F.Supp.2d 921, 924-25 (E.D.Wis.2004).

The meaning of the term "favorable" under *Brady* is not difficult to discern. It is any information in the possession of the government-broadly defined to include all Executive Branch agencies-that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. It covers both exculpatory and impeachment evidence. *See United States v. Bagley,* 473 U.S. 667, 676-77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (both exculpatory and impeachment evidence "fall[ ] within the *Brady* rule"); *United States v. Smith,* 77 F.3d 511, 514 (D.C.Cir.1996); *United States v. Hsia,* 24 F.Supp.2d 14 (D.D.C.1998). "The government is obligated to disclose all evidence relating to guilt or punishment which might be reasonably considered favorable to the defendant's case," that is, all favorable evidence that is itself admissible or "that is likely to lead to favorable evidence that would be admissible," *United States v. Sudikoff,* 36 F.Supp.2d at 1199-1200, or that could be used to impeach a prosecution witness. *See United States v. Trie,* 21 F.Supp.2d at 23 ("favorable evidence" encompasses "both evidence that is exculpatory and evidence that could be used to impeach a government witness"). Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure. *See United States v. Paxson,* 861 F.2d 730, 737 (D.C.Cir.1988) (insufficient for government to provide "niggling excuses" for its failure to provide potentially exculpatory evidence).

Under *Brady,* the prosecutors have an affirmative duty to search possible sources of exculpatory information, including a duty to learn of favorable evidence known to others acting on the prosecution's behalf, including the police, *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), and to cause files to be searched that are not only maintained by the prosecutor's or investigative agency's office, but also by other branches of government "closely aligned with

the prosecution." *United States v. Brooks,* 966 F.2d at 1503 ("affirmative duty of inquiry"). *See United States v. Beers,* 189 F.3d 1297, 1304 (10th Cir.1999) ("[i]nformation possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case" for *Brady* purposes); *United States v. Jennings,* 960 F.2d at 1490 ("[t]his personal responsibility cannot be evaded by claiming lack of control over the files ... of other executive branch agencies").

*Safavian*, 233 F.R.D. at 16.

The *Brady* materiality standard for disclosure set forth in the government's Response is ***not*** the policy of the United States Department of Justice. One of the reforms implemented by Attorney General Holder in the wake of the Ted Stevens scandal was the rejection of the application of the appellate (*Brady*) standard for disclosure of exculpatory evidence by federal prosecutors prior to trial:

> The Department's own policies require federal prosecutors to go beyond what is required to be disclosed under the Constitution, statutes, and rules. For example, under the USAM, prosecutors are directed to take a broad view of their obligations and resolve close calls in favor of disclosing exculpatory and impeaching evidence. **The USAM requires prosecutors to disclose information beyond that which is "material" to guilt as articulated by the U.S. Supreme Court, and prosecutors must disclose exculpatory or impeachment information "regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime."** USAM § 9-5.001. In addition, pursuant to the January 2010 memoranda issued by then-Deputy Attorney General David Ogden, prosecutors have been instructed to provide broader and more comprehensive discovery than the law requires, and to be inclusive when identifying the members of the prosecution team for discovery purposes.

Statement for the Record from the Department of Justice, Hearing on the Special Counsel's Report on the Prosecution of Senator Ted Stevens at 5. Some of these changes are set forth in the Defendant's Motion for Discovery. Dkt. No. 105 at 16-19.

In its responsive brief, the government also states:

> The disclosure of evidence affecting the credibility of a witness falls within Brady only if the reliability of a given witness may be determinative of guilt or innocence. *Giglio v. United Staes* [sic] 405 U.S. 150,154 (1972).

Dkt. No. 111 at 8. This statement is incorrect. First, that is not the holding of *Giglio*. The holding of *Giglio* is that a conviction will be reversed **on appeal** if the government withholds evidence affecting the credibility of the witness and the reliability of that witness may be determinative of guilt or innocence. That is the application of an appellate standard of review, not the standard a prosecutor would apply in deciding whether to withhold impeachment evidence. Second, this is contrary to Ninth Circuit law and Department of Justice policy set forth above.

As Judge Friedman notes in the above passage, on a practical level, this is a preposterous standard to apply *before trial*. Six months before the trial, how can the prosecutor possibly know whether the reliability of a given witness may be "determinative of guilt or innocence?"[5] And why would a prosecutor want to withhold *any* impeachment evidence? Just because he or she thought she could get away with it on appellate review?

---

[5] And what if there are only three government witnesses, none of whom individually is "determinative of guilt or innocence," and the prosecutor possesses evidence to impeach the credibility of each witness? If the defendant is convicted based on the cumulative testimony of those three witnesses, was the prosecutor correct in withholding the impeachment evidence of each of them, because viewing each witness in isolation, no one witness was "determinative of guilt or innocence?" Of course not.

**VII. THE GOVERNMENT LAWYERS HAVE AN INDEPENDENT OBLIGATION UNDER ALASKA RPC 3.8 TO PROVIDE PROMPT AND TIMELY DISCLOSURE OF EXCULPATORY INFORMATION, REGARDLESS OF THE INDIVIDUAL PROSECUTOR'S ASSESSMENT OF ITS CONSTITUTIONAL MATERIALITY.**

A third source of authority for discovery of favorable evidence is the ethical rules applicable to prosecutors in Alaska requiring timely disclosure of favorable evidence without regard to the *Brady* or constitutional standard of materiality.

ABA Model Rule of Professional Conduct 3.8, which has been adopted in Alaska (*see* Alaska RPC 3.8(d)) and is entitled "Special Responsibilities of a Prosecutor," provides: "The prosecutor in a criminal case shall . . . (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." RPC 3.8(d) does not simply codify the constitutional due process obligation to produce favorable information, or any similar obligation established by statute, procedural rule, or court order. Instead, the ethical duty arising from RPC 3.8(d) is a separate, stand-alone obligation that requires a "prosecutor who knows of evidence and information favorable to the defense to disclose it *as soon as reasonably practicable* so that defense can make meaningful use of it in making such decisions as whether to plead guilty and how to conduct its investigation." *See* ABA Formal Op. 09-454, at (July 8, 2009)) (attached as Exh. A and referenced to here as the "Opinion") (emphasis added).

The prosecutors in this case are subject to the disclosure obligations set forth in Alaska RPC 3.8. *See* 28 U.S.C. § 530B(a) (also known as the "Citizen's Protection Act of 1998") ("An attorney for the Government shall be subject to State laws and rules, and local Federal court

rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."); *see also* 28 C.F.R. § 77.3 ("In all criminal investigations and prosecutions . . . attorneys for the government shall conform their conduct and activities to the state rules and laws, and federal local court rules.")

Until recently, there was no clear guidance on what constituted "timely" production. As explained in the Opinion, Rule 3.8 requires that exculpatory information be furnished "as soon as reasonably practicable" after the prosecution learns of the information. The Opinion is clear that a prosecutor should not sit on favorable information until it is strategically convenient to furnish it to the defense. "Because the defense can use favorable evidence and information most fully and effectively the sooner it is received, such evidence or information, *once known to the prosecutor, must* be disclosed under Rule 3.8(d) *as soon as reasonably practicable."* Opinion at 6 (emphasis added); *see also* ABA *Standards for Criminal Justice, Prosecution and Defense Function,* Standard 3-3.11(a) (ABA 3d. ed.1993), *available at* http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/prosecutio n_defense_function.authcheckdam.pdf (calling for disclosure of exculpatory information "at the earliest feasible opportunity").

Thus, timing the production of favorable evidence for strategic purposes violates the ethical rule. The Opinion suggests a prosecutor who believes there is a legitimate basis for withholding evidence in his or her possession, but which is favorable to an accused, should obtain a protective order. Opinion at 6, *see also Acosta,* 357 F. Supp. 2d. at 1236 (stating that if a witness statement contains favorable evidence, then the government may either voluntarily

produce it (as it usually does), or seek a protective order to guard against disclosure that would implicate Jencks Act concerns.

The Opinion further concludes that a prosecutor's ethical duty "is not limited to admissible 'evidence,'" but also "requires disclosure of favorable 'information,'" which "may lead a defendant's lawyer to admissible testimony or other evidence or assist him in other ways, such as in plea negotiations." Opinion at 5. Nor is there a "de minimis" exception for when the prosecutor "believes that the information has only a minimal tendency to negate the defendant's guilt." *Id.* All favorable information, regardless of its value in the eyes of the prosecutor, must be disclosed. *Id.*

In addition, the Opinion describes as "inaccurate" the proposition that RPC 3.8(d) "requires no more from a prosecutor than compliance with the constitutional and other legal obligations of disclosure." *Id.* at 1. A prosecutor's *constitutional* obligation to disclose exculpatory information "extends only to favorable information that is 'material,' *i.e.,* evidence and information likely to lead to an acquittal." *Id.* at 2. After reviewing the background and history of Rule 3.8, the Opinion notes that "Rule 3.8(d) is more demanding than the constitutional case law, in that it requires the disclosure of evidence or information favorable to the defense without regard to the anticipated impact of the evidence or information on the trial's outcome." *Id.* at 4. In other words, the "rule requires prosecutors to steer clear of the constitutional line, erring on the side of caution." *Id.; see also id.* at 3 n.12 ("[A] disparity exists between the prosecutor's disclosure duty as a matter of law and the prosecutor's duty as a matter of ethics.") (*quoting* Olavi Maru, Annotated Code of Professional Responsibility 330 (American

Bar Found., 1979)); *ABA Standards for Criminal Justice,* Standard 3-3.11(a) ("A prosecutor should not intentionally fail to make timely disclosure to the defense, at the earliest feasibly opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged . . .").

The prosecutors in this case have not addressed their ethical obligations and instead have written only in terms of the constitutional requirement for disclosure. The government cannot argue, however, that it meets its ethical obligations simply by observing *Brady.* The Supreme Court has recognized that prosecutors are subject to Rule 3.8's ethical obligation, which is broader than any constitutionally based obligations, particularly insofar as the ethical obligation is not limited by *Brady's* after-the-fact outcome-determinative "materiality" test for whether certain evidence should be disclosed. *See Cone v. Bell,* 556 U.S. 449, 470 n.15 (2009) ("Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady,* only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. . . As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure."); Opinion at 4 n.16 ("The professional ethical duty is considerably broader than the constitutional duty announced in *Brady v. Maryland...*and its progeny.") (*quoting* 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering §34-6* (3d 2001 & Supp. 2009)).

Why is the *Brady* rule different? For one thing, *Brady* is applied retrospectively. There is no *Brady* violation unless (a) there was exculpatory evidence, (b) it was not disclosed, and

(c) it was of such demonstrable moment that the outcome of the trial might well have been different if the evidence was disclosed or disclosed at an earlier time. *See generally Kyles v. Whitley,* 514 U.S. 419 (1995); *Acosta,* 357 F. Supp. 2d at 1232 ("*Brady* and its progeny arise in post-trial context" and concern "whether the failure to disclose favorable material evidence in violation of defendant's due process rights justifies a new trial."). In other words, *Brady* essentially asks, "Given the prosecutor's failure to disclose, has the accused demonstrated a violation of his constitutional right to due process?" In contrast, the ethics rule is forward looking. It creates an ethical duty and a discovery obligation at the earliest stages of the prosecution.

The Opinion makes the distinction between *Brady* and the ethical obligations clear: "[A] court's determination in post-trial proceedings that evidence withheld by the prosecution was not material is not equivalent to a determination that evidence or information did not have to be disclosed under Rule 3.8(d)." *See* Opinion at 4 n.20. Thus, while the case law interpreting a prosecutor's *Brady* obligations may limit a prosecutor's liability in various ways – for example, depending on whether the information is produced sufficiently in advance of trial to be "useful" – the ethical duties are separate and distinct and, under Rule 3.8(d), require disclosure as soon as reasonably practicable absent a protective order.

The Justice Department is aware that its ethical obligation to provide favorable information to the defense is broader than constitutional or statutory discovery standards. On January 4, 2010, Deputy Attorney General David Ogden issued a memorandum to prosecutors entitled, "Guidance for Prosecutors Regarding Criminal Discovery" (attached as Exh. B). The

memorandum encourages prosecutors "to provide discovery broader and more comprehensive than the discovery obligations," since doing so "promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases." Exh. B. at 6. As for timing of the disclosure, the memorandum states that "[e]xculpatory information, regardless of whether the information is memorialized, *must be disclosed* to the defendant *reasonably promptly* after discovery." *Id.* at 6 (emphasis added). Even if the pertinent favorable information "is not provided in its original form and is instead provided in a letter to defense counsel . . . prosecutors should take great care to ensure that the full scope of pertinent information is provided." *Id.* at 7. Nowhere in Mr. Ogden's memorandum are prosecutors given the option of *not* providing favorable information because it presently exists in a form – such as a grand jury transcript –that is not discoverable under Rule 16 or the Jencks Act.

## VIII. CONCLUSION

The items outlined in the defendant's motion for an order compelling discovery are "within the government's possession, custody, or control," and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). The Court should therefore order the government to produce these items immediately. Depending on the character of the items requested, some of them may also be subject to the government's *Brady/Giglio* duties, or its obligations to produce information under RPC 3.8; neither the Court or defense counsel will know until the items are produced.

It may be that the government is delaying disclosure of these important investigative materials until January on the theory that they are Jencks material. If so, no legitimate or useful purpose is served thereby.

If the defense investigators, lawyers, and experts are forced to wait until January to obtain the requested items, then the defense will be unable to provide any type of expert reports by the currently scheduled dates and it is certain that the current trial date could not reasonably be maintained.

DATED this 6th day of September 2013.

Respectfully submitted,

s/ Peter Offenbecher
Peter Offenbecher
SKELLENGER BENDER, P.S.

Rich Curtner
Federal Defender – Alaska

Attorneys for Defendant James Wells

## CERTIFICATE OF SERVICE

I certify that on September 6, 2013, I electronically filed Defendant Wells' Reply to Government's Response to Defendant's Motion for an Order Compelling Discovery (with Exhibits A and B) with the Clerk of the Court using the CM/ECF system which will send notification of such filings to all attorneys of record.

DATED this 6th day September 2013.

s/ Jule Sprenger
Jule Sprenger
SKELLENGER BENDER, P.S.
Paralegal