# EXHIBIT B

# 165  Guidance for Prosecutors Regarding Criminal Discovery

January 4, 2010

**MEMORANDUM FOR DEPARTMENT PROSECUTORS**

FROM:   David W. Ogden
        Deputy Attorney General

SUBJECT:   Guidance for Prosecutors Regarding Criminal Discovery

      The discovery obligations of federal prosecutors are generally established by Federal Rules of Criminal Procedure 16 and 26.2, 18 U.S.C. § 3500 (the Jencks Act), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). In addition, the United States Attorney's Manual describes the Department's policy for disclosure of exculpatory and impeachment information. *See* USAM 9-5.001. In order to meet discovery obligations in a given case, Federal prosecutors must be familiar with these authorities and with the judicial interpretations and local rules that discuss or address the application of these authorities to particular facts. In addition, it is important for prosecutors to consider thoroughly how to meet their discovery obligations in each case. Toward that end, the Department has adopted the guidance for prosecutors regarding criminal discovery set forth below. The guidance is intended to establish a methodical approach to consideration of discovery obligations that prosecutors should follow in every case to avoid lapses that can result in consequences adverse to the Department's pursuit of justice. The guidance is subject to legal precedent, court orders, and local rules. It provides prospective guidance only and is not intended to have the force of law or to create or confer any rights, privileges, or benefits. *See United States v. Caceres*, 440 US. 741 (1979).

      The guidance was developed at my request by a working group of experienced attorneys with expertise regarding criminal discovery issues that included attorneys from the Office of the Deputy Attorney General, the United States Attorneys' Offices, the Criminal Division, and the National Security Division. The working group received comment from the Office of the Attorney General, the Attorney General's Advisory Committee, the Criminal Chiefs Working Group, the Appellate Chiefs Working Group, the Professional Responsibility Advisory Office, and the Office of Professional Responsibility. The working group produced this consensus document intended to assist Department prosecutors to understand their obligations and to manage the discovery process.

      By following the steps described below and being familiar with laws and policies regarding discovery obligations, prosecutors are more likely to meet all legal requirements, to make considered decisions about disclosures in a particular case, and to achieve a just result in every case. Prosecutors are reminded to consult with the designated criminal discovery coordinator in their office when they have questions about the scope of their discovery obligations. Rules of Professional Conduct in most jurisdictions also impose ethical obligations on prosecutors regarding discovery in criminal cases. Prosecutors are also reminded to contact the Professional Responsibility Advisory Office when they have questions about those or any other ethical responsibilities.

---

### Department of Justice Guidance for Prosecutors Regarding Criminal Discovery

**Step 1: Gathering and Reviewing Discoverable Information**[FN1]

    **A. Where to look—The Prosecution Team**

Department policy states:

It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.

USAM 9-5.001. This search duty also extends to information prosecutors are required to disclose under Federal Rules of Criminal Procedure 16 and 26.2 and the Jencks Act.

In most cases, "the prosecution team" will include the agents and law enforcement officers within the relevant district working on the case. In multi-district investigations, investigations that include both Assistant United States Attorneys and prosecutors from a Department litigating component or other United States Attorney's Office (USAO), and parallel criminal and civil proceedings, this definition will necessarily be adjusted to fit the circumstances. In addition, in complex cases that involve parallel proceedings with regulatory agencies (SEC, FDIC, EPA, etc.), or other non-criminal investigative or intelligence agencies, the prosecutor should consider whether the relationship with the other agency is close enough to make it part of the prosecution team for discovery purposes.

Some factors to be considered in determining whether to review potentially discoverable information from another federal agency include:

- Whether the prosecutor and the agency conducted a joint investigation or shared resources related to investigating the case;
- Whether the agency played an active role in the prosecution, including conducting arrests or searches, interviewing witnesses, developing prosecutorial strategy, participating in targeting discussions, or otherwise acting as part of the prosecution team;
- Whether the prosecutor knows of and has access to discoverable information held by the agency;
- Whether the prosecutor has obtained other information and/or evidence from the agency;
- The degree to which information gathered by the prosecutor has been shared with the agency;
- Whether a member of an agency has been made a Special Assistant United States Attorney;
- The degree to which decisions have been made jointly regarding civil, criminal, or administrative charges; and
- The degree to which the interests of the parties in parallel proceedings diverge such that information gathered by one party is not relevant to the other party.

Many cases arise out of investigations conducted by multi-agency task forces or otherwise involving state law enforcement agencies. In such cases, prosecutors should consider (1) whether state or local agents are working on behalf of the prosecutor or are under the prosecutor's control; (2) the extent to which state and federal governments are part of a team, are participating in a joint investigation, or are sharing resources; and (3) whether the prosecutor has ready access to the evidence. Courts will generally evaluate the role of a state or local law enforcement agency on a case-by-case basis. Therefore, prosecutors should make sure they understand the law in their circuit and their office's practice regarding discovery in cases in which a state or local agency participated in the investigation or on a task force that conducted the investigation.

Prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes. Carefully considered efforts to locate discoverable information are more likely to avoid future litigation over *Brady* and *Giglio* issues and avoid surprises at trial.

Although the considerations set forth above generally apply in the context of national security investigations and prosecutions, special complexities arise in that context. Accordingly, the Department expects to issue additional guidance for such cases. Prosecutors should begin considering potential discovery obligations early in an investigation that has national security implications and should also carefully evaluate their discovery obligations prior to filing charges. This evaluation should consider circuit and district precedent and include consultation with national security experts in their own offices and in the National Security Division.

**B. What to Review**

To ensure that all discovery is disclosed on a timely basis, generally all potentially discoverable material within the custody or control of the prosecution team should be reviewed.[FN2] The review process should cover the following areas:

1. <u>The Investigative Agency's Files</u>: With respect to Department of Justice law enforcement agencies, with limited exceptions,[FN3] the prosecutor should be granted access to the substantive case file and any other file or document the prosecutor has reason to believe may contain discoverable information related to the matter being prosecuted. [FN4] Therefore, the prosecutor can personally review the file or documents or may choose to request production of potentially discoverable materials from the case agents. With respect to outside agencies, the prosecutor should request access to files and/or production of all potentially discoverable material. The investigative agency's entire investigative file, including documents such as FBI Electronic Communications (ECs), inserts, emails, etc. should be reviewed for discoverable information. If such information is contained in a document that the agency deems to be an "internal" document such as an email, an insert, an administrative document, or an EC, it may not be necessary to produce the internal document, but it will be necessary to produce all of the discoverable information contained in it. Prosecutors should also discuss with the investigative agency whether files from other investigations or non-investigative files such as confidential source files might contain discoverable information. Those additional files or relevant portions thereof should also be reviewed as necessary.

2. <u>Confidential Informant (CI)/Witness (CW)/Human Source (CHS)/Source (CS) Files</u>: The credibility of cooperating witnesses or informants will always be at issue if they testify during a trial. Therefore, prosecutors are entitled to access to the agency file for each testifying CI, CW, CHS, or CS. Those files should be reviewed for discoverable information and copies made of relevant portions for discovery purposes. The entire informant/source file, not just the portion relating to the current case, including all proffer, immunity, and other agreements, validation assessments, payment information, and other potential witness impeachment information should be included within this review.

If a prosecutor believes that the circumstances of the case warrant review of a non-testifying source's file, the prosecutor should follow the agency's procedures for requesting the review of such a file.

Prosecutors should take steps to protect non-discoverable, sensitive information found within a CI, CW, CHS, or CS file. Further, prosecutors should consider whether discovery obligations arising from the review of CI, CW, CHS, and CS files may be fully discharged while better protecting government or witness interests such as security or privacy via a summary letter to defense counsel rather than producing the record in its entirety.

Prosecutors must always be mindful of security issues that may arise with respect to disclosures from confidential source files. Prior to disclosure, prosecutors should consult with the investigative agency to evaluate any such risks and to develop a strategy for addressing those risks or minimizing them as much as possible, consistent with discovery obligations.

3. <u>Evidence and Information Gathered During the Investigation</u>: Generally, all evidence and information gathered during the investigation should be reviewed, including anything obtained during searches or via subpoenas, etc. As discussed more fully below in Step 2, in cases involving a large volume of potentially discoverable information, prosecutors may discharge their disclosure obligations by choosing to make the voluminous information available to the defense.

4. <u>Documents or Evidence Gathered by Civil Attorneys and/or Regulatory Agency in Parallel Civil Investigations</u>: If a prosecutor has determined that a regulatory agency such as the SEC is a member of the prosecution team for purposes of defining discovery obligations, that agency's files should be reviewed. Of course, if a regulatory agency is not part of the prosecution team but is conducting an administrative investigation or proceeding involving the same subject matter as a criminal investigation, prosecutors may very well want to ensure that those files are reviewed not only to locate discoverable information but to locate inculpatory information that may advance the criminal case. Where there is an ongoing parallel civil proceeding in which Department civil attorneys are participating, such as a qui tam case, the civil case files should also be reviewed.

5. <u>Substantive Case-Related Communications</u>: "Substantive" case-related communications may contain discoverable information. Those communications that contain discoverable information should be maintained in the case file

or otherwise preserved in a manner that associates them with the case or investigation. "Substantive" case-related communications are most likely to occur (1) among prosecutors and/or agents, (2) between prosecutors and/or agents and witnesses and/or victims, and (3) between victim–witness coordinators and witnesses and/or victims. Such communications may be memorialized in emails, memoranda, or notes. "Substantive" communications include factual reports about investigative activity, factual discussions of the relative merits of evidence, factual information obtained during interviews or interactions with witnesses/victims, and factual issues relating to credibility. Communications involving case impressions or investigative or prosecutive strategies without more would not ordinarily be considered discoverable, but substantive case-related communications should be reviewed carefully to determine whether all or part of a communication (or the information contained therein) should be disclosed.

Prosecutors should also remember that with few exceptions (see, e.g., Fed.R.Crim.P. 16(a)(1)(B)(ii)), the format of the information does not determine whether it is discoverable. For example. material exculpatory information that the prosecutor receives during a conversation with an agent or a witness is no less discoverablc than if that same information were contained in an email. When the discoverable information contained in an email or other communication is fully memorialized elsewhere, such as in a report of interview or other document(s), then the disclosure of the report of interview or other document(s) will ordinarily satisfy the disclosure obligation.

6. <u>Potential *Giglio* Information Relating to Law Enforcement Witnesses</u>: Prosecutors should have candid conversations with the federal agents with whom they work regarding any potential *Giglio* issues, and they should follow the procedure established in USAM 9-5.100 whenever necessary before calling the law enforcement employee as a witness. Prosecutors should be familiar with circuit and district court precedent and local practice regarding obtaining *Giglio* information from state and local law enforcement officers.

7. <u>Potential *Giglio* Information Relating to Non-Law Enforcement Witnesses and Fed.R.Evid. 806 Dec!arants</u>: All potential *Giglio* information known by or in the possession of the prosecution team relating to non-law enforcement witnesses should be gathered and reviewed. That information includes, but is not limited to:

- Prior inconsistent statements (possibly including inconsistent attorney proffers, *see United States v. Triumph Capital Group*, 544 F.3d 149 (2d Cif. 2008))

- Statements or reports reflecting witness statement variations (see below)

- Benefits provided to witnesses including:

    - Dropped or reduced charges
    - Immunity
    - Expectations of downward departures or motions for reduction of sentence
    - Assistance in a state or local criminal proceeding
    - Considerations regarding forfeiture of assets
    - Stays of deportation or other immigration status considerations
    - S-Visas
    - Monetary benefits
    - Non-prosecution agreements
    - Letters to other law enforcement officials (e.g. state prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf
    - Relocation assistance
    - Consideration or benefits to culpable or at risk third-parties

- Other known conditions that could affect the witness's bias such as:

    - Animosity toward defendant
    - Animosity toward a group of which the defendant is a member or with which the defendant is affiliated
    - Relationship with victim
    - Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor)

- Prior actS under Fed.R.Evid. 608

- Prior convictions under Fed.R.Evid. 609

- Known substance abuse or mental health issues or other issues that could affect the witness's ability to perceive and recall events

8. <u>Information Obtained in Witness Interviews</u>: Although not required by law, generally speaking, witness interviews[FN5] should be memorialized by the agent.[FN6] Agent and prosecutor notes and original recordings should be preserved, and prosecutors should confirm with agents that substantive interviews should be memorialized. When a prosecutor participates in an interview with an investigative agent, the prosecutor and agent should discuss note-taking responsibilities and memorialization before the interview begins (unless the prosecutor and the agent have established an understanding through prior course of dealing). Whenever possible, prosecutors should not conduct an interview without an agent present to avoid the risk of making themselves a witness to a statement and being disqualified from handling the case if the statement becomes an issue. If exigent circumstances make it impossible to secure the presence of an agent during an interview, prosecutors should try to have another office employee present. Interview memoranda of witnesses expected to testify, and of individuals who provided relevant information but are not expected to testify, should be reviewed.

   a. <u>Witness Statement Variations and the Duty to Disclose</u>: Some witnesses' statements will vary during the course of an interview or investigation. For example, they may initially deny involvement in criminal activity, and the information they provide may broaden or change considerably over the course of time, especially if there are a series of debriefings that occur over several days or weeks. Material variances in a witness's statements should be memorialized, even if they are within the same interview, and they should be provided to the defense as *Giglio* information.

   b. <u>Trial Preparation Meetings with Witnesses</u>: Trial preparation meetings with witnesses generally need not be memorialized. However, prosecutors should be particularly attuned to new or inconsistent information disclosed by the witness during a pre-trial witness preparation session. New information that is exculpatory or impeachment information should be disclosed consistent with the provisions of USAM 9-5.001 even if the information is first disclosed in a witness preparation session. Similarly, if the new information represents a variance from the witness's prior statements, prosecutors should consider whether memorialization and disclosure is necessary consistent with the provisions of subparagraph (a) above.

   c. <u>Agent Notes</u>: Agent notes should be reviewed if there is a reason to believe that the notes are materially different from the memorandum, if a written memorandum was not prepared, if the precise words used by the witness are significant, or if the witness disputes the agent's account of the interview. Prosecutors should pay particular attention to agent notes generated during an interview of the defendant or an individual whose statement may be attributed to a corporate defendant. Such notes may conlain information that must be disclosed pursuant to Fed.R.Crim.P. 16(a)(1)(A)-(C) or may themselves be discoverable under Fed.R.Crim.P. 16(a)(1)(B). *See, e.g., United States v. Clark*, 385 F.3d 609, 619-20 (6th Cir. 2004) and *United States v. Vaffee*, 380 F.Supp.2d II, 12-14 (D. Mass. 2005).

**Step 2: Conducting the Review**

Having gathered the information described above, prosecutors must ensure that the material is reviewed to identify discoverable information. It would be preferable if prosecutors could review the information themselves in every case, but such review is not always feasible or necessary. The prosecutor is ultimately responsible for compliance with discovery obligations. Accordingly, the prosecutor should develop a process for review of pertinent information to ensure that discoverable information is identified. Because the responsibility for compliance with discovery obligations rests with the prosecutor, the prosecutor's decision about how to conduct this review is controlling. This process may involve agents, paralegals, agency counsel, and computerized searches. Although prosecutors may delegate the process and set forth criteria for identifying potentially discoverable information, prosecutors should not delegate the disclosure determination itself. In cases involving voluminous evidence obtained from third parties, prosecutors should consider providing defense access to the voluminous documents to avoid the possibility that a well-intentioned review process nonetheless fails to identify material discoverable evidence. Such broad disclosure may not be feasible

in national security cases involving classified information.

**Step 3: Making the Disclosures**

The Department's disclosure obligations are generally set forth in Fed.R.Crim.P. 16 and 26.2, 18 U.S.C. § 3500 (the Jencks Act), *Brady*, and *Giglio* (collectively referred to herein as "discovery obligations"). Prosecutors must familiarize themselves with each of these provisions and controlling case law that interprets these provisions. In addition, prosecutors should be aware that USAM 9-5.001 details the Department's policy regarding the disclosure of exculpatory and impeachment information and provides for broader disclosures than required by *Brady* and *Giglio*. Prosecutors are also encouraged to provide discovery broader and more comprehensive than the discovery obligations. If a prosecutor chooses this course, the defense should be advised that the prosecutor is electing to produce discovery beyond what is required under the circumstances of the case but is not committing to any discovery obligation beyond the discovery obligations sct forth above.

A. <u>Considerations Regarding the Scope and Timing of the Disclosures</u>: Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error. Prosecutors are encouraged to provide broad and early discovery consistent with any countervailing considerations. But when considering providing discovery beyond that required by the discovery obligations or providing discovery sooner than required, prosecutors should always consider any appropriate countervailing concerns in the particular case, including, but not limited to: protecting victims and witnesses from harassment or intimidation; protecting the privacy interests of witnesses; protecting privileged information; protecting the integrity of ongoing investigations; protecting the trial from efforts at obstruction: protecting national security interests; investigative agency concerns; enhancing the likelihood of receiving reciprocal discovery by defendants; any applicable legal or evidentiary privileges; and other strategic considerations that enhance the likelihood of achieving a just result in a particular case. In most jurisdictions, reports of interview (ROIs) of testifying witnesses are not considered Jencks material unless the report reflects the statement of the witness substantially verbatim or the witness has adopted it. The Working Group determined that practices differ among the USAOs and the components regarding disclosure of ROIs of testifying witnesses. Prosecutors should be familiar with and comply with the practice of their offices.

Prosecutors should never describe the discovery being provided as "open file." Even if the prosecutor intends to provide expansive discovery, it is always possible that something will be inadvertently omitted from production and the prosecutor will then have unintentionally misrepresented the scope of materials provided. Furthermore, because the concept of the "file" is imprecise, such a representation exposes the prosecutor to broader disclosure requirements than intended or to sanction for failure to disclose documents, e.g. agent notes or internal memos, that the court may deem to have been part of the "file." When the disclosure obligations are not clear or when the considerations above conflict with the discovery obligations, prosecutors may seek a protective order from the court addressing the scope, timing, and form of disclosures.

B. <u>Timing</u>: Exculpatory information, regardless of whether the information is memorialized, must be disclosed to the defendant reasonably promptly after discovery. Impeachment information, which depends on the prosecutor's decision on who is or may be called as a government witness, will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently. See USAM 9-5.001. Section 9-5.001 also notes, however, that witness security, national security, or other issues may require that disclosures of impeachment information be made at a time and in a manner consistent with the policy embodied in the Jencks Act. Prosecutors should be attentive to controlling law in their circuit and district governing disclosure obligations at various stages of litigation, such as pre-trial hearings, guilty pleas, and sentencing.

Prosecutors should consult the local discovery rules for the district in which a case has been indicted. Many districts have broad, automatic discovery rules that require Rule 16 materials to be produced without a request by the defendant and within a specified time frame, unless a court order has been entered delaying discovery, as is common in complex cases. Prosecutors must comply with these local rules, applicable case law. and any final court order regarding discovery. In the absence of guidance from such local rules or court orders, prosecutors should consider making Rule 16 materials available as soon as is reasonably practical but must make disclosure no later than a reasonable time before trial. In deciding when and in what format to provide discovery. prosecutors should always consider security concerns and the other factors set

forth in subparagraph (A) above. Prosecutors should also ensure that they disclose Fed.R.Crim.P. 16(a)(1)(E) materials in a manner that triggers the reciprocal discovery obligations in Fcd.R.Crim.P. 16(b)(1).

Discovery obligations are continuing, and prosecutors should always be alert to developments occurring up to and through trial of the case that may impact their discovery obligations and require disclosure of information that was previously not disclosed.

C. <u>Form of Disclosure</u>: There may be instances when it is not advisable to turn over discoverable information in its original form, such as when the disclosure would create security concerns or when such information is contained in altorney notes, internal agency documents, confidential source documents, Suspicious Activity Reports, etc. If discoverable information is not provided in its original form and is instead provided in a letter to defense counsel, including particular language, where pertinent, prosecutors should take great care to ensure that the full scope of pertinent information is provided to the defendant.

**Step 4: Making a Record**

One of the most important steps in the discovery process is keeping good records regarding disclosures. Prosecutors should make a record of when and how information is disclosed or otherwise made available. While discovery matters are often the subject of ligation in criminal cases, keeping a record of the disclosures confines the litigation to substantive matters and avoids time-consuming disputes about what was disclosed. These records can also be critical when responding to petitions for post-conviction relief, which are often filed long after the trial of the case. Keeping accurate records of the evidence disclosed is no less important than the other steps discussed above, and poor records can negate all of the work that went into taking the first three steps.

**Conclusion**

Compliance with discovery obligations is important for a number of reasons. First and foremost, however, such compliance will facilitate a fair and just result in every case, which is the Department's singular goal in pursuing a criminal prosecution. This guidance does not and could not answer every discovery question because those obligations are often fact specific. However, prosecutors have at their disposal an array of resources intended to assist them in evaluating their discovery obligations including supervisors, discovery coordinators in each office, the Professional Responsibility Advisory Office, and online resources available on the Department's intranet website, not to mention the experienced career prosecutors throughout the Department. And, additional resources are being developed through efforts that will be overseen by a full-time discovery expert who will be detailed to Washington from the field. By evaluating discovery obligations pursuant to the methodical and thoughtful approach set forth in this guidance and taking advantage of available resources, prosecutors are more likely to meet their discovery obligations in every case and in so doing achieve a just and final result in every criminal prosecution. Thank you very much for your efforts to achieve those most important objectives.

---

FN 1. For the purposes of this memorandum, "discovery" or "discoverable information" includes information required to be disclosed by Fed.R.Crim.P. 16 and 26.2, the Jencks Act, *Brady*, and *Giglio*, and additional information disclosable pursuant to USAM 9-5.001.

FN 2. How to conduct the review is discussed below.

FN 3. Exceptions to a prosecutor's access to Department law enforcement agencies' files are documented in agency policy, and may include, for example. access to a non-testifying source's files.

FN 4. Nothing in this guidance alters the Department's Policy Regarding the Disclosure to Prosecutors of PotentiaJ Impeachment Information Concerning Law Enforcement Agency Witnesses contained in USAM 9-5.100.

FN 5. "Interview" as used herein refers to a formal question and answer session with a potential witness conducted for the purpose of obtaining information pertinent to a matter or case. It does not include conversations with a potential witness for the purpose of scheduling or attending to other ministerial matters. Potential witnesses may provide substantive information outside of a formal interview, however. Substantive, case-related communications are addressed above.

FN 6. In those instanccs in which an interview was audio or video recorded, further memorialization will generally not be necessary.

[added January 2010] [cited in USAM 9-5.001; 9-5.100]