KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | No. 3:13-cr-00008-RRB-JDR |
| Plaintiff, | ) ) | **GOVERNMENT'S** |
| v. | ) ) ) | **OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DIRECTING** |
| JAMES MICHAEL WELLS, | ) ) | **GOVERNMENT TO PROVIDE ADDITIONAL DISCOVERY,** |
| Defendant. | ) ) ) | **FILED WITH THE DISTRICT COURT** |

COMES NOW the United States, by and through undersigned counsel, and files objections, in part, to the Magistrate Judge's order issued on September 11, 2013 at docket 131, and thereby requests the District Court to modify portions of that order.

## PROCEDURAL POSTURE

The Magistrate Judge issued a pretrial ruling in this case to decide discovery motions pending before this court at dockets 105, 111, and 127. The Court issued its ruling on September 11, 2013 at docket 131 granting in part, and denying in part, the defense's motion for additional discovery. By these objections, the government requests that five discrete portions of the magistrate court's order be overturned. The government either has already or will comply with all other portions of the Magistrate Judge's order. As stated below, the government believes that the five parts of the ruling objected to here are based on overbroad extensions of the law governing discovery, or are unsupported by, or in direct contravention to established precedents. The government brings this appeal directly to the District Court under Rule of Criminal Procedure 59(a) and District of Alaska Local Magistrate's Rule 6(a).

# ARGUMENT

Before addressing the five areas of appeal, the there are two preliminary points of that need to be made, one factual and one legal. First, throughout this case, the government has and will continue to take a liberal approach to discovery, endeavoring to go beyond the required rules, meet its policy goals, and help move this case efficiently toward trial. For example, the government has already committed to turning Jencks Act statements over six weeks in advance of trial and has repeatedly stated that it will turn over all statements at that time regardless of whether they qualify as *Brady* or not. Moreover, the government provided *Brady* material, including information related to vehicle misidentification and an alternate – but unlikely – suspect, within a month of indictment. Also, the government provided the defense with a crucial expert report on a tire examination, even though the deadline for providing expert reports was months away. That being said, the government is entitled to rely on clear precedents that govern its investigation in making some decisions as to what and when to turn over certain matters.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 3 of 27

The second preliminary matter, and the one controlling of this appeal, is the well-established rule that discovery in criminal cases is governed by rules and long-standing precedent, including the obligations of the government to comply with *Brady* and its subset, *Giglio*. The corollary of this rule is that the court is not empowered to create new discovery rules or new definitions of *Brady* in order to expand the legal requirements beyond that contained in the governing law.[1] The Magistrate Judge's order, in the five areas listed below, falls afoul of this corollary in two regards, by removing materiality from the definition of *Brady* in order to expand the government's discovery obligations, and by overlooking controlling Ninth Circuit precedents to order early production of witness statements.

The government further notes that part of the Magistrate Judge's order, identified in section II below, adopts arguments raised for the

---

[1] The government is aware of the ongoing national debate about *Brady*, including role of materiality. However, when a local magistrate judge attempts to force the issue by locally redefining materiality outside of statute or existing precedent, using executive branch policies or state bar association ethics rules as the basis, the results can be confusing and potentially treacherous to navigate by all parties. That is the situation in this case.

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 4 of 27

first time in defendant's reply.  It is therefore in contravention of the

local rules.

## Orders to Which the Government Objects

The government objects to five orders in the Magistrate Court's

decision at docket 131 as being contrary to applicable law or

unsupported by law.

I.    THE GOVERNMENT IS "DIRECTED TO FOLLOW THE
      DEPARTMENT OF JUSTICE'S OWN POLICIES"
      RELATED TO *BRADY* MATERALITY.  Docket 131, section
      8, page 7.

II.   THE GOVERNMENT IS DIRECTED TO TURN OVER
      "EXCULPATORY INFORMATION FORTHWITH" BASED
      UPON ABA MODEL RULE OF PROFESSIONAL
      CONDUCT 3.8.  Docket 131, section 8, page 7.

III.  THE GOVERNMENT IS ORDERED TO PROVIDE
      WITNESS STATEMENTS -- FIVE MONTHS BEFORE
      TRIAL -- OF WITNESSES WHOSE INFORMATION WAS
      USED IN SEARCH WARRANTS.  Docket 131, section 22,
      page 13.

IV.   THE GOVERNMENT IS ORDERED TO PRODUCE AND
      PROVIDE THE DEFENDANT WITH A LIST OF
      EVIDENCE THAT "MIGHT REASONABLY BE SUBJECT
      TO A MOTION TO SUPPRESS OR OTHER PRETRIAL
      CHALLENGE…."  Docket 131, section 8, page 4.

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 5 of 27

V.    THE GOVERNMENT IS ORDERED TO PROVIDE THE
NAMES AND CONTACT INFORMATION FOR ALL LAW
ENFORCEMENT WITNESSES WHO:
(1) PARTICIPATED IN THE SEARCH
WARRANTS,
(2) SEIZED THE DEFENDANT'S PROPERTY
BY CONSENT (OR OTHER WARRANT
EXCEPTION), OR
(3) ENTERED THE CRIME SCENE.
Docket 131, section 23, page 13; section 24, pages 13-14; and
section 29, page 15.

The government objects to these rulings and addresses these five

issues *seriatim*.

## ANALYSIS

Discovery in criminal cases is governed by three specific rules,

authorities and statutes: 1) Fed. R. Crim. P. 16, *see United States v.*

*U.S. Dist. Ct. Central Dist. Of Cal.*, 717 F.2d 478, 480 (9th Cir. 1983)

(Discovery governed by Rule 16 rejecting argument that FOIA can be

used to obtain discovery), *United States v. Nixon*, 418 U.S. 683, 698

(1974) (Rule 17(c) cannot be used to broaden Rule 16); 2) the principles

of *Brady v. Maryland,* , 373 U.S. 83 (1963), and its progeny; *see*

*Weatherford v. Bursey*, 429 U.S. 545, 549 (1977); (3) and the Jencks Act,

18 U.S.C. § 3500.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 6 of 27

*Brady* does not require the government to disclose every piece of evidence that could arguably be relevant. *United States v. Von Brandy*, 726 F.2d 548, 551 (9th Cir. 1984). Rather, the government must disclose only evidence that is both favorable and material to the defense. *United States v. Gardner*, 611 F.2d 770, 774-75 (9th Cir. 1980); s*ee also, United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013).

The Supreme Court addressed the issue of materiality as it affects the government's due process obligations under *Brady* in *United States v. Bagley*, 473 U.S. 667 (1985), where the Court stated, "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682; that definition of materiality is still the controlling law. *Olsen* at 1183. [2]

The Magistrate Judge's order, in section 8, page 7 (arguments I and II specified above and below), runs afoul of the law by relying on

---

[2] For a more extensive discussion of *Brady* precedent, see the government's opposition to the defendant's motion to suppress. Docket 111, pp.5-11.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 7 of 27

internal government policies and rules of professional responsibility to read the materiality element out of the law and, in essence, rewrite Supreme Court and Ninth Circuit precedents to expand the scope of the government's already broad obligations.

I. THE GOVERNMENT IS "DIRECTED TO FOLLOW THE DEPARTMENT OF JUSTICE'S OWN POLICIES" RELATED TO THE *BRADY* MATERALITY. Docket 131, section 8, page 7.

<u>The government's internal policies and manuals do not create independent legal rights that are enforceable by Court order.</u>

The government objects to the order to follow the department's own internal policies as a matter of law. Docket 131, § 8 para. 9, page 7. The Court states, "[t]he prosecutors are directed to follow the Department of Justice's own policies regarding what is discoverable and disclose exculpatory or impeachment information 'regardless of whether the prosecutor believes such information will make a difference between conviction and acquittal of the defendant for a charged crime.' USAM 9-5.001." *Id.* The "USAM" is the U.S. Attorney's Manual.

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 8 of 27

While the government has followed — and will continue to abide by — its own internal policies, the government objects to the Magistrate Judge's ruling where it finds that these policies confer rights to a defendant as a matter of law.  Department of Justice policies, while they govern the actions of all prosecutors, confer no additional legal rights.  *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (The U.S. Attorney's Manual confers no legal rights on a defendant).  This case is directly on point.

In *Fernandez*, the Court reviewed the government's refusal to comply with the Court's discovery order requiring them to disclose a copy of their death penalty memorandum, relying on the work-product doctrine and privilege.  The Court relied on the language of the USAM, which explicitly states that "[t]he Manual provides only internal Department of Justice guidance.  It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any manner civil or criminal." *Id.*, citing USAM § 1-1.100.  Relying on this language, the court vacated the district court's discovery order.

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 9 of 27

Thus, the USAM guidelines cannot serve as a legal basis for the district court's discovery order. *Fernandez*, 231 F.3d 1240; *see also United States v. Piervinanzi*, 23 F.3d 670, 682-83 (2nd Cir. 1994); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); and *United States v. Booth*, 2010 WL 4181186 (D. Nev. 2010).

The government respectfully requests this court to overturn the part of the Magistrate Judge's order that elevates these policies to controlling law, not because the government objects to complying with its own policies, but because the government takes very seriously the effect of court orders and the consequences that can flow from any interpretation that such orders are not complied with in full.

Converting internal policies into binding orders, as the Magistrate Judge's order does here, both interferes with the executive branch's ability to make (and change) policy and would discourage the executive branch agencies from making specific public policy out of concern that policy decisions will be converted to law by the judicial branch. Finally, using executive branch policy to find a legal right for criminal defendants creates the opportunity for unbounded and open-ended

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 10 of 27

litigation as the court is forced to interpret policy that the courts have previously agreed is expressly exempted from judicial enforcement.

II. THE GOVERNMENT IS DIRECTED TO TURN OVER "EXCULPATORY INFORMATION FORTHWITH" BASED UPON ABA MODEL RULE OF PROFESSIONAL CONDUCT 3.8. Docket 131, section 8, page 7.

The Rules of Professional Conduct do not create rights greater than those guaranteed by the Constitution and applicable case law.

Similar to the error in conferring legal status on internal government policy, the Magistrate Judge's order improperly relies on rules of professional conduct to expand the definition of *Brady* beyond that contained in binding Supreme Court and Ninth Circuit precedents.

The government notes at the outset that this argument was not raised in the defendant's initial motion to suppress at docket 105. It was only in the defendant's reply at docket 127 that they first argued that the court should use the Rules of Professional Conduct (RPC) -- specifically RPC 3.8, as a basis for a discovery order. Thus, this is the government's first opportunity to respond to the argument. While the government believes that the Court should overrule any portion of the

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 11 of 27

Magistrate Judge's order based on RPC 3.8 for the substantive reasons

argued below, this portion of the order should also be stricken under the

local rules.  Under the Local Rules of the United States District Court

for the District of Alaska, rule 7.1(b), all replies "must be restricted to

rebuttal of factual and legal arguments raised in the opposition."

Because the RPC 3.8 argument was not raised in the defendant's

original motion, the government has never had the opportunity to

address the flaws in the argument.  Thus, it was not appropriately

raised in the defendant's reply.  The defendant's argument based on

RPC 3.8, and the Magistrate Judge's subsequent order relying on RPC

3.8, should be stricken.

Besides the procedural argument, the government also

substantively objects to the Magistrate Judge's expansion of discovery

to convert the Rules of Professional Conduct, specifically Rule 3.8(d)

into binding law that trumps legal precedent.  For this reason, the

government objects to the part of the order requiring the government to

"turn over all exculpatory information forthwith," regardless of the

materiality standard.  Docket 131 at § 8, para. 10, pp. 7-8.  For the

same reasons, the government objects to the Magistrate Judge's order under RPC 3.8(d) that the government seek a "protective order" for the evidence it decides not to provide to the defense. Docket 131 at § 8, para. 11, p. 9. In essence, the Magistrate Judge is using a bar association ethics rule – not a statute, not case law, not even a government regulation – to order the government to turn over all evidence in discovery, unless the Court approves individual items of evidence being retained by the government.

This reliance on Rules of Professional Conduct to confer rights more expansive than those granted by case law may be part of a national discussion, but it is not the current law. Moreover, the RPC's scope and reach are not well settled, *Cf. Kyles v. Whitley,* 514 U.S. [419] at 437, 115 S.Ct. 1555 [(1995)] ("[T]he rule in [*United States v.*] *Bagley* [473 U.S. 667, 105 S.Ct. 3375 (1985).] (and, hence, in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3–3.11(a) (3d ed.1993).").

As the government stated in its earlier reply to defendant's motion for discovery at docket 111, the government has complied with, and will

continue to adhere to, the law, as well as applicable rules and policy. Case law cautions the "prudent prosecutor" to take note of policies and rules, and resolve them in favor of disclosure. This is what the government intends to do. But the ethical rules should not be interpreted by the Court to create a more expansive legal standard.

The government urges interpretation in line with that of the First Circuit. In *In Re Auerhahn*, the District Court for the District of Massachusetts asked state bar counsel to investigate whether an AUSA had violated rules of professional conduct in failing to immediately disclose a statement of a cooperating witness allegedly made to the prosecutor that may have contradicted previous statements and grand jury testimony. Based on the bar counsel's investigation, the District Court appointed a three-judge panel to determine whether to sanction the prosecutor. 2013 WL 3784416, p.1. The panel found that "a prosecutor's ethical obligations do not require disclosure of *all* exculpatory evidence to a defendant, holding that a prosecutor may withhold certain exculpatory evidence, such as evidence not required to be disclosed under *Brady v. Maryland,* 373 U.S. 83 (1963)." *Id.* at 12.

The First Circuit Court of Appeals decided the case based on lack of jurisdiction for the bar counsel to appeal the panel's ruling, but the Circuit Court also considered whether to exercise its power of mandamus, including on the *Brady* issue. The Circuit Court defined the purpose of "advisory mandamus" review as "to settle substantial questions of law in circumstances that would assist other jurists, parties, [and] lawyers." *Id.* The Circuit Court declined to exercise that mandamus authority, leaving the panel's decision, including its findings on *Brady*, intact.

Other districts, as well as the Supreme Courts of a number of states, have followed this same interpretation also finding that Rule 3.8(d) is similar to, or the same as, a prosecutor's obligations under *Brady* or *Giglio* in application. *See, e.g., United States v. Weiss*, 2006 WL 1752373, at *3 (D. Colo. June 21, 2006) (rejecting an interpretation of ABA Model Rule 3.8(d) that would require prosecutor to disclose more than is required under the Constitution); *Disciplinary Counsel v. Kellogg-Martin*, 923 N.E.2d 125, 130 (Ohio 2010) ("We decline to construe DR 7-103(B) [predecessor to Ohio Rule 3.8(d)] as requiring a

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 15 of 27

greater scope of disclosure than *Brady* and Crim. R. 16 require."); *In re*
*Attorney C*, 47 P.3d 1167, 1170-71 (Colo. 2002) (reading Colorado Rule
of Professional Conduct 3.8(d) consistent with *Brady* and "declining to
impose inconsistent obligations upon prosecutors attempting to comply
with both procedural rules and rules of professional conduct"); *In re*
*Reik*, 834 N.W.2d 384, 390-391 (Wisc. 2013); *but see, e.g., United States*
*v. Acosta*, 357 F. Supp. 2d 1228, 1233 (D. Nev. 2005) (interpreting a
prosecutor's duty of disclosure under ethical rule to be broader than the
duty under the Constitution).[3]

The government opposes the Court's application of Rule 3.8(d)
RPC as granting broader rights to discovery than existing statute and

---

[3] While the government has not identified a similar case interpreting Alaska's Rule
of Professional Conduct 3.8(d), a review of the commentary included when the rule
was adopted is instructive. When the Alaska Rules of Professional Conduct were
adopted by the Alaska Supreme Court in 1993, the Alaska Bar Association proposed
that Rule 3.8 be deleted because of a controversial provision in 3.8(c) (unrelated to
this case). As for the rest of the rule, the Alaska Bar Association commented that
"each of the subsections of in Rule 3.8, except subsection (c), are already covered in
other rules, in the statutes, or in the constitutions of the United States and Alaska."
The Supreme Court adopted all parts of rule 3.8, with the exception of subpart (c).
This indicates that in adopting subpart (d), the Alaska Bar Association, as well as
the Alaska Supreme Court did not intend to create new law that conflicted with
existing constitutional requirements.

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 16 of 27

case law.  This expansion is especially unnecessary and ill-advised where the government has and will continue to exceed the scope of the law in producing discovery.  Attorneys working for the government must independently comply with ethics rules to protect their ability to practice law and keep their law licenses in good standing, and any prudent prosecutor would avoid complying with ethical rules at his or her own peril.  Thus, the government urges the Court to reverse the portion of the order enforcing ethical rules as binding rules of law, conferring separate and more expansive legal rights to defendants than the courts have adopted.

III.  THE GOVERNMENT IS ORDERED TO PROVIDE WITNESS STATEMENTS – FIVE MONTHS BEFORE TRIAL – OF WITNESSES WHOSE INFORMATION WAS USED IN SEARCH WARRANTS.  Docket 131, section 22, page 13.

*Brady* material contained within statements falling under the Jencks Act are not required to be produced as a matter of law until the government must turn over the Jencks Act materials.

The government objects as a matter of law to the order at docket 131, section 22, requiring the government to turn over Jencks materials

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 17 of 27

– witness statements later used to support search warrant applications – five months in advance of the deadline requested by the defendant and ordered by the Court. The Magistrate Judge provides no legal basis for this order. To the contrary, the Magistrate Judge's order contradicts the Jencks Act statute, 18 U.S.C. § 3500.

The Jencks Act requires that the government turn over statements of a witness at trial after the witness has testified. The government has already committed to turning over its Jencks Act materials no later than six weeks prior to trial, which is well before the deadline required by law. Where *Brady* is contained within Jencks Act statements it is well-settled in the Ninth Circuit that it is the Jencks Act that controls. *United States v. Alvarez,* 358 F.3d 1194, 1211 (9th Cir. 2004); *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979).

The Magistrate Judge bases this section of the order on the need to conduct "a review of whether the issuing magistrate or judge was provided an accurate and fair representation of what the witness stated." The only relevant legal theory that could appear to justify the Magistrate Judge's order would be the standards for a hearing under

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 18 of 27

*Franks v. Delaware*, 438 U.S. 154 (1978), hereinafter, a *Franks* hearing. However, the order puts "the cart before the horse." In essence, it orders the government to produce statements in order to fish for a basis for a *Franks* hearing without meeting the well-established preliminary requirements.

*Franks* requires a "substantial preliminary showing" to trigger an evidentiary hearing on the validity of the affidavit or testimony underlying a search warrant. To fulfill that requirement, the defendant must: (1) allege specifically which portions of the warrant affidavit are claimed to be false; (2) contend that the false statements or omissions were deliberately or recklessly made; (3) make a detailed offer of proof, including affidavits, to accompany the allegations; (4) challenge only the veracity of the affiant; and (5) show that the challenged statements must be necessary to find probable cause. *United States v. DeCesare*, 765 F.2d 890, 894-95 (9th Cir. 1985).

Thus, even if the evidence showed a variation between the witness statements and the search warrant affidavits, it is not a sufficient basis for a *Franks* hearing. There is no suggestion of false statements, or

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 19 of 27

deliberate omissions.  And examination of the affidavits filed in support

of over 20 search warrants in this case show that probable cause was

extensive.  Even had the judicial officers discounted any single piece of

evidence, there would have been more than enough probable cause.

If the Magistrate Judge's order in section 22 is upheld, it will only

serve to generate a fishing expedition by the defense, followed by

extensive, unneeded, and ultimately wasteful litigation for the Court.

IV.   THE GOVERNMENT IS ORDERED TO PRODUCE AND
      PROVIDE THE DEFENDANT WITH A LIST OF
      EVIDENCE THAT "MIGHT REASONABLY SUBJECT TO
      A MOTION TO SUPPRESS OR OTHER PRETRIAL
      CHALLENGE…."  Docket 131, section 8, page 4.

      The government is not required to create work-product –
      such as a list of evidence that the defense might wish to
      suppress – as part of discovery.

In section 8, page 3 of the discovery order, the Magistrate Judge

denied the defendant's request for immediate notice of all evidence the

government intended to use at trial but granted the request, "with

respect to such evidence that might reasonably be subject to a motion to

suppress  or other pretrial challenge to the lawfulness of its use at

trial." (emphasis added.)  Although neither the order nor the defense

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 20 of 27

motion made reference to Fed. R. Crim. P 12(b)(4)(B), the rule governing such requests, the government has already provided the defense with all search warrants and defendant's statements to law enforcement. Moreover, the defendant's legal counsel and investigators have examined the physical evidence.

Thus, the government has previously provided all evidence that it appears could be subject to a motion to suppress, and, indeed, defendant has already filed such motions. In response to the first part of the Court's order, the defense should assume that any evidence gathered pursuant to such warrants and any statements made to law enforcement by the defendant may be used by the government in its case-in-chief.

The government, however, does object to the part of the sentence contained in the order underlined above. That part of the order goes beyond anything contained in Rule 12(b)(4), and the Court's order cites neither that rule nor any other authority to justify the statement. As a practical matter the government has no way of guessing what evidence the defendant might want to challenge pretrial other than that obtained

by warrant or statements subject to a potential motion to suppress. The defendant has and will continue to receive any evidence obtained by the government, and will receive Jencks Act statements and expert reports under the time frame set by this court – a time frame that the Magistrate Judge explicitly stated he was not intending to disturb.

Thus, the government objects only to the latter half of the sentence contained on pp. 3-4 of the order and quoted above, as it is unsupported by any citation to any governing rule of discovery. Moreover, the practical effect of such an order would seem to simply create future pretrial litigation over matters that in no way advance the trial, for example whether the government had properly guessed what evidence that the defense already has that it might want to file a motion about. For this reason, the government respectfully requests that this court simply strike that part of the order listed in bold above.

V.     THE GOVERNMENT IS ORDERED TO PROVIDE THE
        NAMES AND CONTACT INFORMATION FOR ALL LAW
        ENFORCEMENT WITNESSES THAT :
              (1) PARTICIPATED IN THE SEARCH
              WARRANTS,

(2) SEIZED THE DEFENDANT'S PROPERTY
BY CONSENT (OR OTHER WARRANT
EXCEPTION), OR,
(3) ENTERED THE CRIME SCENE.
Docket 131, section 23, page 13; section 24, pages 13-14; and
section 29, page 15.

<u>The government is not required by law to create documents
related to search warrants specified in the Court's order.</u>

The government objects to creating a list of names and contact

information for officers who participated in search warrants, who

searched and seized defendant's property via consent or some other

exception to a warrant, or who entered the crime scene on April 12 and

13, 2012 until the scene was "cleared" as requiring the government to

generate additional work-product to meet this order. Docket 131 at

§ 23, 24, and 29. This order would require the government to provide

an advance witness list in a non-capital case.

This order is unsupported by legal authority. Federal discovery

law is premised on providing the defendant something that already

exists, such as physical evidence or recordings. No aspect of federal

evidence law, Rule 16, *Brady/Giglio*, or the Jencks Act, requires the

government counsel to create evidence documents.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 23 of 27

Moreover, turning over the existing documents that might contain this information is inconsistent with other rulings by the Magistrate Judge in docket 131. In section 11, the Magistrate Judge denies the defendant's request for the "discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agent in connection with the investigation or prosecution of this case." He specifically found that such a disclosure under Rule 16 is "not authorized."

## CLARIFICATION OF MAGISTRATE JUDGE'S DISCOVERY ORDER

In addition to the five objections discussed above, there are also two other sections of the Magistrate Judge's order that the government would like to bring to the attention of the Court. In each of these sections, the Magistrate Judge's order is not entirely clear, but the government believes its actions are in compliance with the orders. However, in order to be above-board, the government is providing this information to the Court. If the Court believes that government is

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 24 of 27

misinterpreting the Magistrate Judge's orders, this notice will allow the Court to provide additional guidance.

     1.    <u>Related Wire and Other Surveillance</u> – The Magistrate Judge ordered the government to disclose "wire or other surveillance" evidence.  Docket 131 at § 13, p. 11.  The government interprets this order to apply to disclosures of wire and <u>electronic</u> surveillance, not physical surveillance.  Reports of physical surveillance would be covered under the Magistrate Judge's denial in section 11 of the disclosure of "reports, memoranda, or other internal government documents made by the attorney for the government or other government agent in connection with the investigating or prosecution of this case."  The government has already complied with this order as it related to wire and electronic information.

     2.    <u>Forensic evaluation and reconstruction</u> – In section 31, the Magistrate Judge orders the government to produce "forensic evaluation of every crime scene and reconstruction" under Rule 16(a)(1)(F), which related to "Reports of Examinations and Tests." Under that rule, the government has already disclosed lab reports and

evaluations from the crime scene. However, the government has employed an expert to perform crime scene evaluation and reconstruction. Under the schedule requested by the defendant, and set by the Magistrate Judge in Second Pretrial Scheduling Order docket 56), the government will turn over expert witness reports under Rule 16(a)(1)(G) on October 25, 2013.

## CONCLUSION

For the foregoing reasons, the government requests that the Court reverse the identified portions of the Magistrate Judge's order.

RESPECTFULLY SUBMITTED on September 25, 2013, in Anchorage, Alaska.

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney

s/ Bryan Schroder
BRYAN SCHRODER
Assistant U.S. Attorney
United States of America

s/ Kathleen A. Duignan
KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
United States of America

Case 3:13-cr-00008-SLG   Document 140   Filed 09/25/13   Page 26 of 27

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2013,
a copy of the foregoing was served
via the CM/ECF system on all counsel
of record.


s/ Bryan Schroder
Office of the U.S. Attorney