Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant James Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>　　　　　Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>**REPLY TO OPPOSITION TO MOTION TO SUPPRESS STATEMENTS (Fourth and Fifth Amendments)** |

　　　　James Wells replies to the government's opposition (Docket No. 138) to his motion to suppress his statements to an FBI special agent and Coast Guard Investigative Service (USCGIS) special agent on April 12 and 13, 2012 (Docket Nos 120).

　　　　As enumerated in the underlying motion, Mr. Wells has challenged the admissibility of these statements on the following bases:  (1) the government obtained the statements through an illegal seizure; (2) the statements were not voluntary; and (3) the government obtained the statements in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

The burden is on the government to prove voluntariness and a waiver of *Miranda* rights by a preponderance of the evidence with the court considering the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973) and *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

I.   **The Government Illegally Seized Mr. Wells**

The government disputes that Mr. Wells was in custody and or illegally seized. A person is seized if an objectively reasonable person would not feel free to leave a particular location. *United States v. Mendenhall*, 446 U.S. 544 (1980).

USCG officials working with law enforcement ordered Mr. Wells to remain at T1 on April 12, 2012, from 8:20 a.m. until approximately 9:30 p.m. No government official ever told Mr. Wells that he was free to leave. Mr. Wells did not leave T1 that day except when escorted by law enforcement. The government admits in its opposition that the USCG command, who are a branch of the military, were working with the Alaska State Troopers, the FBI, and unnamed law enforcement personnel in their investigation of the murders from the morning of April 12, 2012. (Docket No. 138, pp. 4, 8-10.)

When USCG and law enforcement ordered Mr. Wells to report to T1, a secure facility which was not his place of work, it was an illegal seizure by government actors since there was no probable cause or reasonable suspicion that he had committed any crime. The government detained Mr. Wells for over thirteen hours for questioning without access to his medications and appropriate food. A reasonable person in Mr. Wells' position would not have felt free to leave.

United States v. James Michael Wells
Case No. 3:13-cr-00008-RRB-JDR                                                                                    Page 2

Case 3:13-cr-00008-SLG   Document 141   Filed 10/04/13   Page 2 of 7

The government with law enforcement officials ordered Mr. Wells to return to T1 the following morning from 9:00 a.m. to approximately 2:00 p.m. This was also an illegal seizure by government actors since there was no probable cause or reasonable suspicion that Mr. Wells had committed any crime. A reasonable person in Mr. Wells' position would not have felt free to disobey the orders and/or leave.

II. Mr. Wells' Statements Were Involuntary

The government disputes that Mr. Wells's statements were involuntary. A voluntary statement is made through an individual's self-direction as opposed to any compulsion. *See Henry v. Kernan*, 197 F.3d 1021, 1026-27 (9th Cir. 1999).

The government claims that Mr. Wells voluntarily sat in T1, a building where he did not work, for over thirteen hours on April 12, 2012, and approximately five hours on April 13, 2012. The government admits in its opposition that USCG command "called for" the T2 workers to gather at T1 on April 12, 2012. The only time Mr. Wells left the T1 area was under law enforcement escort. Mr. Wells was unable to leave T1. Mr. Wells did not remain voluntarily at T1, a secure facility, for over thirteen hours, rather he was compelled to do so by law enforcement and the USCG. Any statements he made as a result of these pressures are not voluntary.

Further, Mr. Wells did not have access to critical medication and/or his own food. As a diabetic, Mr. Wells' lack of access to medication and/or proper food may have influenced his physical and mental state. The government also continued to interrogate Mr. Wells after he explained he would need to take his medication and eat proper food.

(Docket No. 138-4.) Mr. Wells had no choice but to remain and answer questions. Any statements made while under the compulsion to remain at T1 for interrogation by the FBI were not voluntary.

### III. The Government Obtained Mr. Wells' Statements in Violation of *Miranda*

The government disputes that Mr. Wells was in custody. The government also disputes that Mr. Wells' *Miranda* waiver was invalid. The government does not dispute that Mr. Wells was subject to interrogation.

A person is in custody when objectively a reasonable person would not feel at liberty to terminate an interrogation and leave. *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). A court conducts a totality of the circumstances test to determine whether there are coercive pressures indicating a person is in custody. *Id.* The court examines the following five factors to make a determination of custody: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Kim*, 292 F.3d 969, 973-74 (9th Cir. 2002). A waiver of *Miranda* warnings is valid only if it is made voluntarily, knowingly, and intelligently. *Miranda v. Arizona*, 384 U.S. 444 (1966).

Mr. Wells was summoned to the interviews by USCG command working with law enforcement. Mr. Wells was confronted with evidence of his specialized knowledge of the workings of the T2 facility. Mr. Wells was interrogated at T1, which was a secure facility surrounded by fences and barbed wire. Mr. Wells did not work at T1. Mr. Wells

was interrogated in a room with the door closed at T1. The government claims the door was unlocked. It is not clear how the government knows whether the door was locked or unlocked.

Mr. Wells was detained at T1 for over thirteen hours on April 12, 2012, and approximately five hours on April 13, 2012. Mr. Wells was subject to the command of the USCG, a branch of the military, and law enforcement to remain at T1 and participate in the interrogations. Mr. Wells' interrogators had authority over him in multiple dimensions, including both his personal freedom and his professional capacities. Mr. Wells was in custody.

The government's reliance on *United States v. Bassignani*, 575 F.3d 879 (9th Cir. 2009) is misplaced. Unlike the defendant in *Bassignani*, Mr. Wells was not questioned in a familiar location where he actually worked (*i.e.* T2), the length of detention in this case is significantly longer (thirteen hours as opposed to two and one-half hours), law enforcement seem to have maintained a clear presence at T1 the entire day along with the interrogators (which is closer to the facts in *Kim*), and Mr. Wells was under orders to remain at T1 and participate in interrogations for over thirteen hours.

On April 13, 2012, when the USCGIS and FBI interrogated Mr. Wells they administered *Miranda* warnings and gave him a form to sign. Mr. Wells was still under USCG and law enforcement commands to participate in the interrogation. His signing of a form acknowledging the administration of *Miranda* warnings was not voluntary under these circumstances.

### IV. Conclusion

There are numerous factual determinations that the court must undertake in evaluating the motion to suppress Mr. Wells' statements, such as whether Mr. Wells was in custody and the nature of his detention. Those factual determinations will depend on a number of issues that are currently unknown, such as when the USCG began communicating with law enforcement in detaining Mr. Wells. The court should hold a hearing to gather that information. At the hearing, the government bears the burden, by a preponderance of the evidence, to demonstrate that Mr. Wells was not illegally seized, that his statements were voluntary, and that any *Miranda* waiver was knowing, intelligent, and voluntary. If the court should find a violation of Mr. Wells' Fourth or Fifth Amendment rights on the previously-stated grounds, Mr. Wells moves the court to suppress the fruits of these illegalities.

DATED this 4th day of October 2013.

Respectfully submitted,

/s/Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:   907-646-3400
Fax:     907-646-3480
E-Mail:  rich_curtner@fd.org

Certification:
I certify that on October 4, 2013,
a copy of the **Reply to Opposition to Motion to Suppress Statements (Fourth and Fifth Amendments)** was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: karen.loeffler@usdoj.gov

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: kathlee.duignan@usdoj.gov

/s/Rich Curtner