Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant James Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A *DAUBERT* HEARING RE: CRIME SCENE** |

### I.  A *DAUBERT* HEARING IS REQUIRED HERE.

Mr. Wells is charged with two homicides that occurred at the rigger shop building in the Communication Station (COMMSTA) for the United States Coast Guard in Kodiak, Alaska.

USCG non-rates Cody Beauford and Aaron Coggins found the bodies of Richard Belisle and James Hopkins on April 12, 2012, around 7:45 a.m.  The government has provided notice that it intends to call William Gifford and Robert Morton as experts to testify about the manner in which the homicides occurred.

Mr. Gifford has opined that this is a case of workplace violence. He also has opined that the shooter used an intervening object while shooting. He claims that the perpetrator shot Hopkins in the face and then shot Belisle three times. He has also expressed opinions including but not limited to the impact bloodstain pattern, the number of fibers and shrapnel injuries to Hopkins' shirt and skin.

Mr. Morton has opined that the perpetrator shot Belisle before shooting Hopkins. He makes no mention of the use of an intervening object while shooting. Morton provides testimony that includes but is not limited to a narrative of how the shootings occurred based on the locations of the bodies, the wounds and fired bullets, as well as the layout of the rigger shop. He also opines as to the motive behind the homicides.

The government witnesses reach contradictory conclusions. Mr. Gifford has provided no methodology or tests or analysis on which he based his opinions. His opinions may be proper police investigative theories but it does not convert them into expert testimony absent some methodology for reaching his conclusions. Mr. Morton similarly has not provided any testable explanation for how he reaches his opinions.

Mr. Wells believes the government will rely on this testimony to claim Mr. Wells was the perpetrator of the homicides.

Neither expert seems to have conducted any identifiable tests to come to these conclusions. Before the type of opinion evidence that the government proposes is produced before the jury, the defense requests a hearing under FRE 702, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

*Daubert* and *Kumho Tire* stringently limited the admissibility of proposed "expert" evidence in federal court. The Supreme Court required the trial court to act as a "gatekeeper" to ensure the reliability of expert opinions. The court in *Daubert* set forth five factors for the determination of admissibility:

1. Whether the expert's theory opinion has been subjected to objective testing;

2. Whether the expert's opinion has been subjected to formal peer review;

3. Whether there is a known or potential error rate for the opinion;

4. Whether standards are in place for controlling the technique or opinion; and

5. Whether the theory or technique at issue enjoys general acceptance.

Indeed, FRE 702 requires the court to exclude testimony from an "expert" unless (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The defense requests that any so called "expert opinion" from Mr. Gifford and Mr. Morton be the subject of pretrial rulings on admissibility under the above standards. The defense is unable at this time to address how either expert came to their conclusions and they cannot both be accurate since they contradict each other.

The issue is whether the government can prove that the homicide was a case of workplace violence by reliable, objective evidence. The defense reserves the right to file supplemental briefing once it has received outstanding government discovery that has

been requested.[1] The defense needs to evaluate: (1) which facts and data the experts evaluated; (2) the reliability of the process and methodology that the experts employed; and (3) the applicability of that methodology and testing to the facts of this case.

The defense requests exclusion of Mr. Gifford's and Mr. Morton's testimony about their opinions in the absence of a court determination under FRE 702, *Daubert* and its progeny that those opinions are accurate and verifiable.

DATED at Anchorage, Alaska this 5th day of December 2013.

Respectfully submitted,

s/Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:	907-646-3400
Fax:	907-646-3480
E-Mail:	rich_curtner@fd.org

Certification:
I certify that on December 5, 2013,
a copy of the ***Memorandum of Law in Support of Motion for a Daubert Hearing Re: Crime Scene*** was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: karen.loeffler@usdoj.gov

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: kathlee.duignan@usdoj.gov

/s/Rich Curtner

---

[1] *See* attached request (Exhibit A).