KAREN L. LOEFFLER
United States Attorney

BRYAN D. SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney

Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>  vs.<br><br>JAMES MICHAEL WELLS,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:13-cr-00008-RRB-JDR<br><br>**GOVERNMENT'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS FOR *DAUBERT* HEARINGS (AND REQUEST FOR A DETERMINATION BY THE DISTRICT COURT)** |

COMES NOW the United States of America, by and through its undersigned counsel, and hereby files its Consolidated Response in Opposition to Defendant's motions for a hearing under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) (Docs. 193-201) and states as follows:

**INTRODUCTION**

On October 25, 2013, the government filed a notice of its intent to introduce the testimony of a number of expert witnesses under Rules 702, 703, and 705 of the Federal Rules of Evidence (Docket 160). On December 5, 2013, the defendant filed motions requesting a *Daubert* hearing on six of the named experts: William Gifford and Robert Morton, both crime scene experts (Docket 193); Gary Bolden, a transportation technology and tire expert (Docket 195); Dr. J. Reid Meloy, a forensic psychologist (Docket 196); Neil Schmidt, an engineer with Honda North America (Docket 199); and Angelo Toglia, a mechanical engineer, forensic photo and video analyst, and an accident reconstruction expert (Docket 201). Defendant requests that for each of the above experts this Court conduct a hearing to determine whether

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 2 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 2 of 36

their testimony should be admitted.  *Id.*

As discussed below, the government's experts are well qualified and their opinions are both reliable and relevant to the issues presented in this case.  Because the legal analysis for each expert is similar, the United States believes one consolidated response to the defendant's motions is appropriate.

## REQUEST FOR INITIAL CONSIDERATION BY THE DISTRICT COURT

The defendant has asked for separate evidentiary hearings on six government expert witnesses, citing as his only basis *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (hereinafter "*Daubert*"). Under *Daubert*, this Court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 592-93.  This Court, however, retains "broad latitude when it decides *how* to determine reliability" of the proffered testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (emphasis added) (hereinafter "*Kumho*

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 3 of 36

*Tire*").

Defendant has requested separate pretrial hearings as to each expert. Such a hearing is not mandated by *Daubert* or its progeny. *United States v. Alatorre*, 222 F.3d 1098, 1101-02 (9th Cir. 2000) ("Nowhere [ ] does the Supreme Court mandate the form that the inquiry into relevance and reliability must take"). As discussed below, each expert is well qualified and each opinion is both reliable and relevant. The government contends that, to fulfill the gatekeeping requirements of *Daubert*, this Court should make a preliminary determination on the pleadings that the proffered expert testimony is admissible and allow the defendant to address further questions regarding the admissibility of any expert testimony through normal *voir dire* at trial.

It is anticipated that the defendant will raise some of the same issues at trial as have been raised in his motions. Therefore, for the purposes of efficiency and judicial economy, the government respectfully requests that the district court decide the six motions addressed in this consolidated opposition. Of course, if the district court decides that a

pretrial evidentiary hearing is needed to ascertain disputed facts, the government concedes that the hearing may be conducted in any manner, and before any judicial officer, as the district court deems best suited for the task at hand.

## EXPERT TESTIMONY UNDER FED.R.EVID. 702

The admissibility of expert testimony is governed by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The seminal case applying Rule 702 is *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). There, the Supreme Court explained the district court's gatekeeping function "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. Contrary to the defendant's assertion that expert evidence is "stringently limited" in federal court,

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 5 of 36

the Court in *Daubert* recognized that American jurisprudence on evidence rests upon a foundation of liberal admissibility, and the conviction that the jury should be presented with any and all reliable evidence that will assist it in its deliberations. *Id.* at 587. Indeed, in *Daubert,* the Court noted that the district court's role as gatekeeper does not replace the traditional adversarial system and jury. Vigorous cross examination, presentation of contrary evidence, and instructions on the burden of proof are the traditional and appropriate methods to challenge expert evidence. *Id.* at 596; *see also, Goebel v. Denver and Rio Grand W. R.R. Co.*, 346, F.3d 987, 994 (10th Cir. 2003). Moreover, doubts about the usefulness of expert testimony are to be resolved in favor of admissibility. *Clark v. Heidrick,* 150 F.3d 912, 915 (8th Cir. 1998); s*ee also* Advisory Committee Notes to 2000 Amendments to Rule 702 (rejection of expert testimony is the exception, not the rule).

The Court in *Daubert* noted several factors to help determine the reliability of expert testimony, including: (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3)

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 6 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 6 of 36

whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002), *citing Daubert*, 509 U.S. at 592-94.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-151 (1999), the Court again considered Rule 702 and determined that the gatekeeping obligation established in *Daubert* applies equally to non-scientific experts. A trial court must determine whether the witness is qualified to offer the opinions he is espousing and whether the witness's opinions are both relevant and reliable. 526 U.S. at 141, 152. The *Kumho* Court noted however, that the *Daubert* factors are not definitive, and district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

The trial court has leeway not only in deciding *whether* an expert is reliable, but also:

> deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not

that expert's relevant testimony is reliable. . . . . Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises. Indeed, the Rules seek to avoid "unjustifiable expense and delay" as part of their search for "truth" and the "jus[t] determin[ation]" of proceedings. Fed. Rule Evid. 102.

*Id.* at 152-53; *see also, Mukhtar*, 299 F.3d at 1064 ("A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." (emphasis in original)).

Consistent with the discretion afforded by *Kumho*, the Ninth Circuit has held that a trial court may make a determination as to a proposed expert's qualifications, the relevance of the testimony, and the reliability of the testimony without a hearing. *United States v. Alatorre*, 222 F.3d 1098, 1101-02 (9th Cir. 2000) (narcotics agent testifying regarding smuggling operations – "trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping obligation"); *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (trial court's consideration of pre-trial motion *in*

*limine* and *voir dire* at trial sufficient to admit expert on insurance industry standards). Instead, the court, in its discretion, may make its decision based upon the briefs provided by the parties. *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009) (veterinarian testifying as to cause of calves' death); *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007) (forensic document examiner testifying that documents were forgeries); *United States v. Gonzales*, 2010 WL 5392644, *4 (D. Ariz. 2010) (police officer testifying regarding drug impairment symptoms).

As detailed in the attached documents and argued below, each of the experts the government intends to call at trial are well qualified in their fields. In addition, their opinions are both relevant and reliable. As such, this Court may decide defendant's motions on the pleadings without the need for a hearing or may defer any decision until the expert is proffered at trial. The government proposes that this Court make a preliminary determination on the pleadings that the proffered expert testimony is admissible and allow the defendant to address further questions regarding the admissibility of any expert testimony

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 9 of 36

through normal *voir dire* at trial.

## GOVERNMENT'S EXPERTS ARE WELL-QUALIFIED AND THEIR OPINIONS ARE RELEVANT AND RELIABLE

### <u>Robert Morton and William Gifford - Crime Scene Experts</u>

The district court should exercise its discretion to determine the admissibility of the crime scene experts, on the attached pleadings, supplemented, as necessary, at trial. As is consistent throughout the defendant's motions, the defendant makes no specific challenges to the qualifications, opinions, or relevance of the proposed testimony of Supervisory Special Agent (SSA) Morton or William Gifford, a homicide detective retired from the Anchorage Police Department. Instead, he simply invokes the case name *Daubert,* and relies on the name alone, to trigger what amounts to discovery depositions of the government's experts. His request relies on a basic and profound misunderstanding of the jurisprudence of *Daubert* itself and the ensuing precedents. Moreover, his suggested procedure would amount to a massive waste of judicial resources and inefficiency with no demonstrated benefit to due process and the conduct of a fair trial.

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 10 of 36

A number of principles set forth in the post-*Daubert* precedents suggest that the Court should exercise its discretion to address the admissibility of the proffered experts on the pleadings or as part of the trial process. First, as noted in the government's argument above on pages 8-9 of this brief, the Ninth Circuit, as well as other courts, has recognized that while *Daubert* does require the court to exercise its gatekeeping function before permitting expert testimony, it does not require that the court exercise this function through a pre-trial hearing. While there are no black and white rules as to when the court should conduct such a hearing and when it is appropriate for the court to exercise its gatekeeping function, either on the pleadings or at trial, a review of the cases make the common sense point that a pretrial hearings are most necessary and efficient when there are genuine issues of disputed facts concerning the admission of proposed testimony that need significant pretrial vetting. *See, e.g., United States v. McLuskey,* 2013 WL 3766686 (D. N.M. 2013) (evidentiary hearing on DNA expert, where defendant made numerous specific challenges to experts qualifications and methodology). In contrast, the courts have

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                      Page 11 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 11 of 36

commonly and consistently ruled without a separate pretrial hearing in cases such as this where the proposed testimony concerns areas of expertise that commonly have been admitted in the courts.

Moreover, *Daubert* and *Kumho Tire*, as explained above, explicitly support the district court exercising its discretion to conserve judicial resources. *Kumho Tire*, 526 U.S. at 152-53 (noting the evidence rules seek to avoid unjustifiable expense and delay as part of the search for truth and just proceedings). Where, as here, the defendant raises not a single specified objection to the qualifications, reliability, or relevance of the proposed expert testimony, and seeks solely a pretrial discovery hearing, the Court should simply review the pleadings, rule that the expert testimony meets *Daubert* subject to any flaws or failings determined after *voir dire,* and rule on any objections at trial.

### SSA Morton and Mr. Gifford Meet all the Criteria for Admission of Crime Scene Analysis Testimony

While it is difficult to discern how much detail the Court needs at this point in the absence of any articulated objections by the defense, the following information from the attached reports and C.V.'s of both

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 12 of 36

crime scene experts make clear that both are well qualified to give expert opinions on crime scene analysis (Exhibits 2, 4).

### 1. SSA Robert Morton

Far from imposing specific scientific criteria for expert reports the cases make clear that an expert may be qualified to render an opinion based on experience alone. Thus, in certain fields, "experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702; *see United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007) (police officer's experience provided sufficiently reliable methodology to testify on interpreting encoded drug jargon); *United States v. Gonzalez*, 2010 WL 5392644 (D. Ariz. 2010), and cases cited therein, (officer qualified to give evidence as drug recognition expert ); *see also Kumho Tire*, 119 S. Ct. at 1178 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

It cannot be disputed that SSA Robert Morton has extensive training and experience – qualifications to give an opinion on crime scene analysis. Here is just a small example from his attached CV:

- SSA Morton has extensive experience analyzing homicide cases;

- He has 30 years of experience in law enforcement;

- He has taken and taught numerous courses in death investigations, advanced forensic investigation;

- He has researched and written numerous abstracts on crime scene investigation and techniques and authored publications on multi-victim homicides, criminal profiling and serial murders, for example and has developed and organized symposiums on homicide investigative topics;

- He is a member of related professional associations;

- He has testified in numerous cases as an expert in crime scene analysis.

Thus, there is little doubt that SSA Morton is qualified to give the opinion set forth in his report, as evident in the report itself and the defendant's failure to raise any objections.

The reliability and relevance of his opinions are similarly obvious on the face of the report and the facts of this case. As set forth in the report, SSA Morton reviewed crime scene photographs, reports and diagrams, autopsy photos and reports, and investigative and lab reports. He then drew his opinions from experience, background, and

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 14 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 14 of 36

training. This type of analysis is commonly approved as proper expert testimony under *Daubert*, has been admitted repeatedly by the courts, and is not challenged by the defendant here. *Alatorre,* 222 F.3d 1098 (officer could testify as expert on marijuana valuation); *Merlen v. Dickinson*, 2010 WL 2650620 (E.D. Cal.2010) (police officer with sufficient qualifications could testify as expert); *United States v. Nelson*, 285 Fed.Appx. 491 (9th Cir. 2008) (officer qualified as expert based on experience and training). Indeed, it is difficult to imagine any other methodology for analyzing a crime scene than review of the photographs, statements, diagrams, and investigative reports – the methodology used by the two experts here.

The relevance of crime scene in analysis in homicide cases, such as this, is obvious and needs little discussion. Certainly the jury is entitled to have expert testimony setting forth a hypothesis of how the murders happened based on an experienced and trained expert review of the evidence gathered. Again, the defendant does not raise any dispute to this common sense point.

### 2. Former Detective Gifford

Former detective William Gifford is similarly qualified to give expert crime scene testimony. Mr. Gifford has been a law enforcement officer for over 40 years. He has engaged in numerous crime-scene investigations. He has published in the field and has been an instructor for numerous courses related to crime-scene analysis and reconstruction; he is a member of numerous professional associations in the field; has been a presenter at numerous conferences; and has given prior expert testimony in dozens of cases. Similar to SSA Morton, Mr. Gifford reviewed investigative reports. He also traveled to the crime scene, took measurements, and relied on his experience and training. He wrote a report detailing his theory of how the crime unfolded. See report attached as Exhibit 3.

The government is mindful of the rule that the proponent of the evidence must establish the requirements for expert testimony under Rule 702 and the *Daubert* standards. However, where, as here, the qualifications and proposed testimony are of the type commonly and repeatedly taken and recognized by the courts, the best and most

efficient method to meet the court's gatekeeping obligation will simply be through presentation and appropriate *voir dire* at trial.

### *Gary Bolden - Transportation Technology and Tire Expert*

Mr. Bolden will testify as to his examination of the tire and embedded nail seized from defendant's truck. The government has provided defendant with copies of Mr. Bolden's report, his bench notes, photographs, x-rays of the tire, and read-outs from his static air retention studies. A copy of his report and C.V. are attached to this motion as Exhibits 5 and 6.

Mr. Bolden is an expert in issues involving truck and passenger car tires. He worked as an engineer in the tire industry for 20 years before becoming an independent consultant in 1997. As such, he is well-qualified to opine on tire punctures. *See Andrews v. Bridgestone/Firestone, Inc.,* 2008 WL 5142155, *3 (D. Ariz. 2009) (engineer with 10 years working in tire industry and 19 years as tire consultant).

At the government's request, Mr. Bolden examined and analyzed a tire taken from defendant's truck which had been punctured by a nail.

Mr. Bolden will testify, based upon his detailed examination, x-rays, and testing, that the tire was not in service while the nail was present and that the rate of air loss from the nail puncture would allow the tire to travel several hundred miles before needing additional air.

Courts routinely admit tire expert testimony which is based upon the expert's observations and testing of particular tires. *Kumho Tire*, 526 U.S. at 156 ("Nor does anyone deny that, as a general matter, tire abuse may often be identified by qualified experts through visual or tactile inspection of the tire."); *Vega v. Ford Motor Co.*, 2013 WL 6147558, *2 (W.D. Tex. 2013) (testimony admissible when expert made "detailed physical examination of the tire" and "x-rays of the tire to inspect its internal structure"); *Walton v. Bridgestone/Firestone, Inc.*, 2009 WL 2778441, *12 (D. Ariz. 2009) (questions of tire expert's methodology and other possible causes of failure go to weight, not admissibility).

Mr. Bolden's opinions are based upon:

- His examination of the tire exterior;

- His examination of the tire interior after removing it from

the rim;

- His examination of the nail puncturing the tire;

- X-rays of the tire and nail puncture;

- Leakage tests to determine the rate of air loss from the nail puncture.

The defendant's motion does not challenge Mr. Bolden's qualifications, the reliability of his observations and tests or the relevance of his opinion. Instead, the defendant simply asserts that the government has not disclosed the complete circumstances of those tests. Docket 195, p. 2. Contrary to the defendant's assertions, the government has provided the notes and methodology used by Mr. Bolden to conduct the tests and reach his conclusions.

Based upon the pleadings alone, there is ample evidence for this Court to find that Mr. Bolden's testimony satisfies the requirements of *Daubert* and *Kuhmo Tire* and is admissible under Rule 702.

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                      Page 19 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 19 of 36

### *Dr. J. Reid Meloy – Forensic Psychologist*

The defense challenges the admissibility of the testimony of Dr. J. Reid Meloy, alleging his testimony is not accurate, will be unverifiable, and lacks methodology. Defense memorandum of law, docket 197 at pp. 2-3.

Dr. Meloy has been a forensic psychologist since 1982. He has studied and published on targeted and intended violence, workplace violence, multiple murder, and the personality and psychological characteristics of individuals who commit such acts for more than 30 years. Dr. Meloy's testimony is relevant and will be helpful to the trier of fact, because he can explain the context of overall behavior that might otherwise seem unexplainable. Dr. Meloy's report and C.V. are included as Exhibit 7 and 8 to this motion.

Dr. Meloy has testified on these matters and has been recognized as an expert numerous times since 1982 to the present. He has testified for both the prosecution and defense, having conducted more than 2,000 clinical criminal evaluations during the course of his career.

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 20 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 20 of 36

Because Dr. Meloy is testifying generally about workplace violence and characteristics of those who commit multiple murders, but is not testifying regarding any opinions he may have about the defendant or drawing any ultimate conclusion about the defendant's specific actions, his testimony will not confuse the issues and instead will assist the fact-finders.

Academic expertise is admissible, if it will aid the trier of fact. *United States v. Taylor*, 239 F.3d 994 (9th Cir. 2001) (Testimony of academic expert witness regarding nature of relationship between prostitutes and their pimp was admissible under *Daubert* in prosecution for knowingly transporting a minor in interstate or foreign commerce for purposes of prostitution; testimony reflected specialized knowledge that assisted jury in evaluating credibility of government's principal witnesses.)

The Court can properly admit testimony regarding general characteristics of those who engage in workplace violence and multiple homicides, and limit the witness from concluding on any ultimate opinion on whether those characteristics apply to the defendant. *See*

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 21 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 21 of 36

*United States v. Seschillie*, 310 F. 3d 1208 (9th Cir. 2002), *cert. denied*,

538 U.S. 953 (2003) (District court permits expert criminologist to

testify on general scenarios that can lead to accidental discharge of

weapons, but does not allow expert to comment on ultimate opinion

about whether defendant intended to fire.  Jury permitted to apply own

common sense to determine whether there was an accidental discharge

of weapon under any of the expert's scenarios).

Here, the expertise will be provided by Dr. J. Reid Meloy, who is

an academic well-qualified in psychology.  He will testify regarding the

psychological characteristics of those who commit workplace violence

and those who commit multiple homicides generally.   He will offer no

opinion on whether those characteristics apply to defendant.  This will

be question for the jury to answer.  The triers of fact then will be free to

apply that knowledge to the facts of the case, or disregard it, as they see

fit.  Therefore, this testimony should be allowed under *Daubert* and

applicable Ninth Circuit case law without the need for a hearing.

_Neil Schmidt - Honda North America_

Mr. Schmidt is a mechanical engineer who worked for the Honda North America Corporation between 1997 and 2007. During Mr. Schmidt's employment, Honda was manufacturing the Honda CRV sport utility vehicle and is familiar with its body style and exterior paint colors. Mr. Schmidt will use his years of experience with automobile engineering, and his familiarity with the Honda CRV, other Honda vehicles, and other vehicles with similar design characteristics to opine that the blue vehicle in photographs and video obtained by the Government is more likely than not a Honda CRV. Defendant owned a blue 2001 Honda CRV at the time of the murders, and it is the government's contention that he used the CRV to assist in committing the murders.

Under _Daubert_ and _Kumho Tire_, an expert need not always perform scientific tests, but may draw upon his education, training, and experience to reach his conclusions. _See Precision Seed Cleaners v. County Mut. Ins. Co._, 2013 WL 943571, *15 (D. Ore. 2013) (expert who had worked in seed equipment business for 27 years competent to opine

on equipment values); *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, *8 (N.D. Cal. 2011) (expert comparing two devices in patent dispute); *Ramirez v. Avery Berkel, Inc.*, 2005 WL 1683534, *6 (S.D. N.Y. 2005) (engineer who had never seen product at issue qualified to testify based upon his "education, training, experience..., and apply those attributes to the facts [of the case] in order to reach certain conclusions and form opinions....").  The expert need only explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.R.Civ.P. 702, Advisory Committee Notes (2000).

Here, the defendant has not challenged Mr. Schmidt's qualifications or his opinions regarding the vehicle in the photographs and video.  Instead, the defendant has merely asserted that the video is "quite blurry" and that it is unclear whether the government has disclosed all images referenced in the report or explained Mr. Schmidt's methodology in reaching his conclusion.  Docket 199, p. 2.  In fact, the government has disclosed all images upon which Mr. Schmidt relies and

his methodology is clearly stated in the FBI Reports provided to the defendant.

In those reports, Mr. Schmidt details the basis for his familiarity with the Honda CRV and explains the criteria used to determine that the vehicle in the photographs and video is a CRV, including:

- The unique shape of the CRV body panels;

- The CRV's unique roof line;

- The unique placement of tail lights on the CRV;

- The unique location of the CRV's exterior spare tire;

- Methods for excluding other makes and models similar to the Honda CRV.

Any flaws that the defendant may assert regarding Mr. Schmidt's methodology go to the weight, not admissibility of his testimony. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Mr. Schmidt's testimony is sufficiently reliable to be admitted under *Daubert*. In addition, Mr. Schmidt's testimony will assist the trier of fact, especially if the details of the images are not clear. *See United States v. Pollard*, 128 F.Supp.2d 1104, 1125 (E.D. Tenn. 2001) (expert

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 25 of 36

testimony regarding age of child in video of "substantial assistance" to jury given poor condition of video).

Defendant has not asserted any basis to exclude Mr. Schmidt's testimony or raised sufficient questions concerning its reliability or relevance to justify a *Daubert* hearing.

### *Angelo Toglia – Mechanical Engineer*

Angelo Toglia has been working as an engineer in the automotive testing and analysis field for 20 years. He is currently employed by Collision Research and Analysis Inc., where he has been a Research and Consulting Engineer for 12 years. He specializes in engineering analysis, reconstruction, and computer simulations of automobile collisions and industrial accidents. A part of those duties includes forensic video and photographic analysis.

Prior to coming to work for Collision Research, Mr. Toglia was employed as a Consulting/Test Engineer at Exponent Failure Analysis Associates for 8 years. He has both a bachelor's and master's degree in mechanical engineering, and is a registered Professional Mechanical Engineer in Alabama, Arizona, Mississippi, and Washington. He is a

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                    Page 26 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 26 of 36

member of both the American Society of Mechanical Engineers and the Society of Automotive Engineers.  He has presented papers before both professional organizations, including papers on the use of photography modeling accident reconstruction.  See attached Curriculum Vitae, Exhibit 12.

In his motion, the defendant does not contest that identifying the small blue SUV that pulled behind COMMSTA Building T2 at 7:09 a.m. on the morning of April 12, 2012 is relevant to the ultimate issue of whether the defendant murdered Richard Belisle and James Hopkins. Petty Officer Hopkins and Mr. Belisle were both at work in Building T2 by 7:08 a.m. that morning, and were discovered shot and killed at 7:35 a.m.  The defendant was admittedly in the area of the Kodiak Airport at approximately the same time, and the defendant's wife's small blue Honda CR-V was in the airport parking lot while she was visiting Anchorage.  Thus, if any aspect of Mr. Toglia's proposed testimony makes it more or less probable that a vehicle consistent with the defendant's wife's car arrived at the murder seen at the time of the murders, it qualifies as relevant under Rule 401, and is admissible

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 27 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 27 of 36

under Rule 702 to "assist" the jury.

The defendant also does not challenge that Mr. Toglia is eminently qualified within the field of engineering analysis, reconstruction, and computer simulations of automobile collisions, including forensic video and photographic analysis. Accordingly, should the Court determine that Mr. Toglia's analysis an appropriate subject of testimony under Rule 702, his testimony should be admitted without limitation.

In fact, the defendant fails to make any specific challenge to Mr. Toglia's analysis. They only complain that they do not understand his analysis. Yet, the government provided the defendant with a copy of Mr. Toglia's extensive report and his C.V. on October 25, 2013. Thus, between that date and when the defendant filed his *Daubert* motion on December 5, 2013, the defendant had 40 days to engage an expert to help him understand Mr. Toglia's report. Instead, the defendant asks this Court to hold a hearing simply to explain the report. That is not what *Daubert* and *Kumho Tire* were designed to do.

Mr. Toglia's 3-D Modeling and Video Analysis is 'Technical, or

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 28 of 36

Other Specialized Knowledge" within the Meaning of Fed. R. Evid. 702. *Daubert* and *Kumho Tire* require this Court to act as the "gatekeeper" of expert testimony to ensure that proffered expert testimony is sufficiently relevant and reliable. *See*, *e.g.*, *United States v. Havvard*, 117 F. Supp.2d 848, 850 (S.D. Ind. 2000) (citing *Kumho Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 589). This Court has wide latitude in making its reliability and relevance determinations. *See United States v. Jolivet*, 224 F.3d 902 (8th Cir. 2000) (citing *Kumho Tire*, 526 U.S. at 152). The court's gatekeeper role, however, is not intended to serve as a replacement for the adversary system; the rejection of expert testimony should be the exception rather than the rule. *See* Fed. R. Evid. 702 Advisory Committee's Note. In this case, Mr. Toglia's testimony is both reliable and relevant.

1. Mr. Toglia's Testimony is Reliable

Contrary to the defendant's complaint, Mr. Toglia's methodology in this case is not difficult to understand.

- First, he visited COMMSTA Kodiak and used modern surveying techniques to accurately measure physical features visible from the camera located at Building T1 –

the same camera that caught the blue SUV approaching T2.

- Next, he used commercially available software and his surveyor-accurate measurements to create a 3-D virtual model of the scene and surrounding area.

- He placed a camera in the modeled scene and adjusted the camera's settings so that its view closely matched the view of the subject camera.

- Then, he overlaid the video images of the T1 camera from the morning of April 12, 2012, including the frames of the small blue SUV arriving at the time of the murders.

- With the 3-D model/video overlay created, he could add accurately sized models of vehicles to compare to the image of the small blue SUV. The result was a comparison of different vehicles that showed that the vehicle in the video was consistent with the defendant's wife's Honda CR-V.

While the process involved computers, the matter does not involve complicated science. In essence, the process is computer-aided geometry. Mr. Toglia's report is provided as Exhibit 11. While this expert is appropriately evaluated under the Court's gatekeeper function from *Kumho Tire*, a review of the *Daubert* factors confirm that this type of analysis is reliable. In his report, Mr. Toglia explains that his process of "camera matching" the scene within the three-dimensional

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 30 of 36

model, with the captured video view from the camera, has been subjected to and validated by peer review. Moreover, the methodology itself confirms the accuracy of the model. In other words, in *Daubert* terms, it checks itself to confirm there is little or no error rate. The methodology does this in two ways. First, the photogrammetry process described by Mr. Toglia on pages 2 and 3 of his report inherently checks for accuracy. By taking the accurate surveying measurements he collected on-site, and building a wireframe and 3-D model, and then comparing that model to the actual photographs and screen captures from the T1 camera, he can clearly see whether the objects align. Those objects include fence-posts, buildings, roads, and even lines painted in the parking lot. If the model is compared to the visual image, and the objects align, the model is accurate.

Second, during Mr. Toglia's visit to Kodiak, he captured images of known vehicles on the same road, in the approximately the same place as the small SUV on the morning of April 12, 2012. Then, he overlaid accurate computer models of those vehicles over the captured images using the view of the video camera at T1. Once those images were

aligned, he could move the viewpoint in the 3-D model to see where the computer image of the car aligned with the road. If the camera matching of the 3-D model and the video capture image contained error, the vehicle would not be properly placed on the road in the 3-D model. In this instance, the computer image of the vehicles lined up exactly on the road, confirming the accuracy.

Accident reconstruction experts have been admitted in federal courts, based upon a *Daubert/Kumho Tire* analysis, including use of computer animations as part of the analysis. *North v. Ford Motor Company*, 505 F.Supp.2d 1113, 1118 (D.Utah 2007). In *North*, the survivors of a rollover accident involving a Ford Explorer sued the manufacturer. The trial court ruled that the accident reconstruction expert's methodology, reviewing the photographs and measurements taken at the scene by law enforcement officers, was sufficient for *Daubert* purposes. *Id.* The *North* court recognized the appropriate liberal approach to admission of evidence that stems from the Federal Rules of Criminal Procedure, and was supported in *Daubert*, finding that the expert "stated a sufficient basis for his opinion such that it is

not mere speculation and guesswork and, thus, meets the *Daubert* standard for admission." As part of the expert's analysis, the *North* court accepted the use of a computer crash simulation produced with software called "PC Crash." *Id.* Mr. Toglia's analysis is even more supported and reliable than what was provided by the expert in *North,* because Mr. Toglia visited the scene himself and took his own measurements. He did not rely on others. Moreover, his product is not a simulation. There is no attempt to estimate some activity that happened in the past. His work simply uses computers and accurate surveryor's measurements to help the jury better analyze actual photos and video.

Video depictions have also been admitted in criminal cases after a *Daubert/Kumho Tire* analysis. *United States v. Norris*, 217 F.3d 262, 269-270 (5th Cir. 2000). In *Norris*, the defendant had claimed in bankruptcy court that he had burned $490,000 in cash that he disbursed to himself from his law practice. As part of the trial for perjury, the government prepared a videotape simulation of the burning of cash under the conditions described by the defendant. The defendant

attempted to exclude the videotape simulation, arguing that *Daubert's* scientific-related factors were not met.  The court first recognized that "the test of reliability is flexible and bends according to the particular circumstances of the testimony at issue.  *Id.*, *quoting Tanner v. Westbrook*, 174 F.3d 542, 547 (5th Cir. 1999).  The court then held that the district court did not abuse its discretion by admitting the video simulation as being "substantially similar" to the alleged events, a standard used in a number of circuits.  *Id.*

The Ninth Circuit Court of Appeals has also accepted the use of experts with accident reconstruction backgrounds under a *Daubert* analysis.  *Desrosiers v. Flight International of Florida, Inc.*, 156 F.3d 952, 959-961 (9th Cir. 1998).  In *Desrosiers*, the plaintiffs were a survivor of an aircraft crash and the son of person who died in the crash.  They hired an expert on aircraft accident reconstruction to support their lawsuit against a maintenance company.  The Ninth Circuit held the expert's testimony admissible under the existing F.R.Cr.P. 702, and although the court found that the expert's testimony was not "scientific," requiring a *Daubert* analysis, they found the expert's

Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 34 of 36

testimony admissible under the *Daubert* factors as well. *Id.* at 960-61.

First, the court started with an analysis of the methodology, finding the expert's review of all the available material relevant to his determination a sound approach. *Id.* at 961. The court then emphasized the flexibility of the *Daubert* analysis. Finally, the court recognized the liberal standard for admission of relevant evidence, and upheld the trial court's admission of the evidence: "District courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in *Daubert*." *Id.*, *quoting United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997).

As the Court will see by reviewing Mr. Toglia's report, his methodology was certainly sound, leading to a reliable set of comparisons. The Court will also see that the Mr. Toglia's testimony and exhibits will be helpful to the jury, assisting them in identifying the vehicle that the murderer used in this case. Mr. Toglia's testimony should be admitted.

WHEREFORE, the United States respectfully urges that the

*United States v. Wells*
Case No. 3:13-cv-00008-RRB                                    Page 35 of 36
Case 3:13-cr-00008-SLG   Document 228-2   Filed 12/19/13   Page 35 of 36

defendant's motion to exclude or limit the testimony of the

government's expert witnesses under Fed. R. Evid. 702 be denied,

without need for a hearing.

RESPECTFULLY SUBMITTED this 19th day of December, 2013

in Anchorage, Alaska.

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney


s/ Bryan D. Schroder
BRYAN D. SCHRODER
Assistant U.S. Attorney
United States of America


s/ Kathleen A. Duignan
KATHLEEN A DUIGNAN.
Special Assistant U.S. Attorney
United States of America


Certificate of Service

I hereby certify that on December 19, 2013,
the foregoing was served electronically via
the CM/ECF system on counsel of record.

s/ Kathleen A. Duignan