Gifford Consulting and Training
22246 Rosewood Place
Cottonwood, Ca. 530-999-8637

U.S. vs James Wells

**Case Synopsis:**
On 4-12-12 at 0747 hrs. the bodies of Richard Belisle and James Hopkins were discovered in the rigging shop USCG base Kodiak. Both had been shot multiple times.

**Case type:**
This double homicide appears to be a case of work place violence. Belisle and Hopkins worked in the rigging shop and had both recently arrived at work and were starting their daily activities. There is no evidence of forced entry, nothing was noted missing or staged to be taken. There is no evidence to suggest either subject was the victim of a robbery. No evidence of illegal drug dealings or use was uncovered for either victim. There is no evidence suggesting this to be any type of sex related crime. The offender approached and departed the scene avoiding a video camera, entered and departed through the only unlocked door to the building.

**Reconstructive analysis rigging shop time line:**
4-11-12 at 1905 hrs Jason Bullis conducted his security rounds finding all exterior doors secure.
      From Bullis interview.

4-12-12 at 0700 hrs. Richard Belisle arrived using his security card to open the door. After entering the building Belisle unlocked the side door, sat at this desk and turned on his computer.
      Belisle's vehicle seen on video
      Security system records Belisle's card used to open door
      Common practice at rigging shop was for the first person to arrive opened the side door allowing others to enter without using the locked door
      Belisle's computer was turned on

4-12-12 0708 hrs. Hopkins arrived at work, entered the side door, went to his desk, moved into break room to blouse his shirt.
      Hopkins vehicle seen on video – T2 lot camera
      Key card not used to gain entry
      Hopkins keys and on his desk – scene photos
      Hopkins found with his shirt in the break room – first responders
      Common practice was to blouse his shirt on the table in the break room – co-workers statements

1

4-12-12 0734 hrs. Cody Beauford and Coggins arrived at the rigging shop and smelled gun powder.
- T2 lot camera
- Interviews

4-12-12 0741 hrs. Cody Beauford calls the OPS desk to report finding the bodies.

## Reconstructive analysis rigging shop shooting

**Entry:**
Suspect enters building through unlocked side door avoiding T2 lot camera.
- All other doors locked – Building checked by responding officers
- No record of entry through key lock door – examination of key card records
- No evidence of entry through any windows – checked by responding officers
- Employees knew side door to be unlocked by first person arriving to start the days work – from interviews of employees
- Suspect not seen on T2 video recording

**Shooting sequence:**

### HOPKINS

Hopkins is in break room facing the opening into the hallway when shot in the face with exit out back of head.
- Trajectory line from impact on wall, along with the height of the entry wound on Hopkins face – crime scene report, autopsy report, scene visit
- Broken bowl on refrigerator – crime scene report, photos, examination of physical evidence
- Projected bloodstain on far wall – crime scene report, photos
- Hopkins tooth on desk near door opening – crime scene report, photos
- Blowback blood stains on Hopkins hand demonstrates his hand held up in a defensive position when shot

Hopkins fell to the floor with his head and shoulder striking the magazine rack where he remained. He is shot a second time with bullet passing through arm into chest exits chest striking floor. The shooter was standing over Hopkins at the time of this shot.
- Bloodstains on magazine rack and door molding – scene photos, crime scene report
- Autopsy report and photographs

2

### BELISLE

Belisle in office near door when shot three times. I am not able to determine the exact order of these shots.

Belisle shot once in the right shoulder, injuries to right index finger and stippling to right hand suggest right hand was between muzzle of weapon and shoulder entry wound. Belisle falls to floor after being shot causing minor injuries.
- Body located near doorway – scene photos, crime scene reports
- Stippling or pseudo-stippling to right hand, injury to index finger – autopsy report, autopsy photos
- Abrasion to right elbow – autopsy report
- Internally 1 ½ inch hemorrhage within the left occipital region – autopsy report

Belisle shot twice while on the floor near Wells desk.
- Shooter standing near Belisle shooting downward – Scene photographs, crime scene reports, autopsy report, scene visit

**Exit:**
Suspect exits through same door as entered avoiding T2 camera
- All other doors locked – Building checked by responding officers
- No evidence of exit through any windows – checked by responding officers
- Suspect not seen on T2 video recording

**Muzzle to target issues:**

Evidence within the scene demonstrates the presence of an intervening object between the muzzle of the weapon and some of the gunshot wounds.
- White fibers on the clothing of both victims – scene photos, physical evidence
- Shrapnel damage to Hopkins shirt – Scene photos, physical evidence
- Shrapnel injuries to Hopkins stomach – Autopsy report, photos
- Minor stippling to Belisle's right hand and injury to index finger
- Black debris on the floor near Belisle's body and bullet holes in floor
- Absence or minimal evidence of gun shot residue on clothing around entry sites – physical evidence, laboratory reports

Belisle's two torso shots and Hopkins torso shot were fired with the suspect standing over them. With a pistol held in the normal fashion I would expect these shots to have produced gun shot residue that would have been detected during visual and or laboratory examinations.

A few white fibers were found on Belisle's clothing during examination. Similar fibers, in much greater quantity were found on Hopkins shirt and pants. The fibers on Hopkins shirt are in the area where the shirt was damaged. The fibers continue from the t-shirt onto the upper region of his pants. Shadowing of this patter demonstrates that Hopkins

3

was lying on the floor with his knee bent toward his chest when the fibers were deposited. Shrapnel like injuries to Hopkins' stomach are under the defects in his t-shirt. The orientation of the fibers, damage to the shirt and injuries to his stomach all appear to be related to the gunshot wound to his torso. The fibers, damage to the shirt, injuries to the stomach area were all created by a force moving at an angle away from the path of the bullet. In my training and experience this only occurs with the introduction of an intervening object.

Photographs of the floor area around Belisle's body show dark marks. The cause of these marks is not known however this is the only place within the scene where these marks are observed and is very near the area of the two bullet holes in the floor. A possible cause of these marks could be from the discharge of the pistol with the bullet striking an intervening object causing the object to fragment creating shrapnel that impacted the floor. Belisle received an injury to his right index finger. The cause of this injury in not conclusively known however, a possible cause could be shrapnel from an intervening object.

**Intervening object:**
In a typical shooting case where a bullet strikes an intervening object only one type of physical evidence of that object is created. Examples would be:
- Window – glass fragments
- Wall board (sheet rock) – white dusty powder
- Wooden item – wood fibers
- Cloth item – cloth fibers

In this case white fibers were deposited on the clothing of both victims. Fibers would not cause damage to the shirt or injuries to skin. Therefore the intervening object must be constructed of something hard, like metal or plastic and contain some type of fiber material such as cheese cloth, paper towel or any other similar material.

The presence of a home made silencer would explain the above evidence. Silencers are built in many ways and with a variety of materials. However they are common in construction:
- An aligning tube larger enough for the passage of the bullet
- Baffles within the tube to allow passage of gasses (gunshot residue) and noise
- Materials to absorb the gasses and noise (cloth, steel wool etc.)
- A hard outer tube (metal or plastic such as PVC) to hold the absorbing material
- A front end cap (with hole drilled to allow passage of bullet) to hold the aligning tube and outer tube
- A rear end cap with clamp to attach to the barrel of the weapon

4

A silencer becoming miss aligned and damaged by continued shooting could produce fibers (used to reduce noise) and shrapnel (PVC piping or similar material) such as in this case. A damaged silencer would no longer be as effective in reducing noise. An increase in noise from the last shot could be the noise Mr. Rudat heard while passing by the building.

No intervening object was found within the scene which means the suspect took it with him.

**Synopsis:**
Possible order of events:

    Suspect enters side door avoiding video camera. Confronts Hopkins in break room. While standing in the area of doorway shoots Hopkins in the face. Suspect moves to office confronting Belisle near the office doorway. Belisle is shot three times. The suspect was standing over Belisle for two of these shots. Suspect returns to the break room, while standing over Hopkins shoots him through the torso. This order of events is based mostly upon the increase in the number of fibers from Belisle to Hopkins and the shrapnel injuries to Hopkins shirt and skin. An impact bloodstain pattern was present radiating away from the area of Hopkins head. This pattern was created by impact to a blood pool. It was created either by impact of the bullet through Hopkins torso or aggressive movement of his body by first responders. If created by a bullet impact this would be more evidence to support Hopkins having been shot first.

    Suspect departed scene through the same door he entered avoiding video camera.

*Wm. Alford* (signature)
William Gifford                                       Date: 10-24-13

This report is based on information available at this time. Should additional information become available some aspects of this case may be subject to change.

5

In December 2012 I was contacted by Daniel Cooper U.S. Attorney's Office, Anchorage Alaska requesting my services regarding the above case. I requested the case file and associated photographs that were sent to me.

On 12-17-12 flew to San Francisco for meeting to discuss case and preliminary findings.

On 12-31-12 flew to Anchorage Alaska then to Kodiak on 1-2-13 to conduct a scene visit and examination.

On 2-26-13 flew to Anchorage Alaska to examine physical evidence.

6