

U.S. Department of Justice

Federal Bureau of Investigation

```
                              Quantico, Virginia 22135
                              October 11,2013

                  UNKNOWN SUBJECT(S);
         JAMES HOPKINS - VICTIM (DECEASED);
        RICHARD BELISLE - VICTIM (DECEASED);
           CRIME ON GOVERNMENT RESERVATION;
                  CRIME OF VIOLENCE;
```

The following Criminal Investigative Analysis was prepared by Supervisory Special Agent (SSA) Robert J. Morton of the Federal Bureau of Investigation (FBI), Behavioral Analysis Unit 4 (BAU-4), National Center for the Analysis of Violent Crime (NCAVC), in consultation with other members of the NCAVC. This analysis is based upon a review of case materials and other information submitted by the FBI's Anchorage Office. The following items were utilized in preparing this report:

- Crime scene photographs, reports, and diagrams
- Autopsy photographs and reports
- Various investigative and laboratory reports

The observations, opinions, and suggestions contained herein are the result of the knowledge drawn from the personal investigative experience, educational background, specialized training, and research conducted by members of the NCAVC and others. This analysis is not a substitute for a thorough, well-planned investigation and should not be considered all inclusive. This report is limited in its scope to an assessment of the crime and subsequent analysis.

The information provided is based upon probabilities. However, no two criminal acts or criminal personalities are exactly alike, and therefore, the offender may not fit the analysis in every aspect. This analysis is based upon information available at the time this report was prepared and assumes that the information set forth is valid and complete. Should additional information or case materials become available at a later date, certain aspects of this analysis may be subject to modification or change.

This document is the property of the FBI. It contains information of a confidential and sensitive nature, and is provided exclusively for your investigative assistance. It should not be disseminated except to other criminal justice agencies with a legitimate investigative or prosecutorial interest in this matter. Any other dissemination is governed by federal law (28 CFR 16.21 et seq., pursuant to 5 USC 301), and must be coordinated with the CIRG Chief Division Counsel.

## Case Summary

On 04/12/2012, at approximately 7:45 a.m., the victims were found dead in the United States Coast Guard Communication Station, Kodiak, Alaska. The victims were located in two different areas of the station and both had been shot multiple times. Victim #1 James Hopkins had gunshot wounds to his head, left upper arm, and chest. Victim #2 Richard Belisle had gunshot wounds to his right shoulder, right side of his trunk and left side of his trunk. The building is located on the Kodiak Island Coast Guard Base. The victims were discovered by a co-worker, who found them when he arrived for work.

## Autopsy Report

The autopsies of the two victims were conducted by Dr. Meredith A. Lann, Medical Examiner, State of Alaska's Medical Examiner's Office in Anchorage, Alaska on 04/13/2012.

Victim #1, James Hopkins, suffered a number of injuries:

- Gunshot wound of the head, which entered the right naris/nasal ala, perforating the skull, dura and brain, causing many injuries, partially exiting the right occipital scalp. The direction of the wound path was front to back, left to right, and slightly upward. There was no soot or stippling on the skin, and there were numerous minute, deformed fragments of gray-metal from the projectile in the head.

- Two gunshot wounds of the right side of the lower chest, neither of which can be defined as true entrance or exit wounds. Therefore, direction of the projectile could not be determined.

- One of the gunshots was a 7/8 x ½ inch, somewhat ovid gunshot wound in the lower chest in the parasternal region. There was an eccentric, dried, red-black abrasion which lined the edge of the wound from the 1 o'clock to 5 o'clock positions. There was a discrete ¼ inch, L-shaped red abrasion on the skin just medial to the wound. There were several grouped, small red petechiae on the skin directly superior and inferior to the entrance wound. Soot and stippling were absent.

- The other gunshot was a 1 x 5/8 inch, irregular gunshot wound defect, which had a ¾ inch, linear abrasion extending

from the edge of the wound from the 3 o'clock position. There was also a somewhat irregular red-purple abrasion extending up to 3/8 inch from the 5 o'clock to 10 o'clock positions, which may represent a shored abrasion. There was patchy, purple contusion and irregular grouped purple petechiae surrounding the wound. There was no soot or stippling.

- A 2 x ¾ inch horizontally-orientated superficial graze wound of the posterior aspect of the left upper arm. There was up to a 1/8 inch, eccentric purple abrasion extending from the lateral edge of the wound. The medial portion was bordered by tiny skin tags which point laterally. The wound path was left to right, neither upward or downward, or to the front or to the back. The wound only penetrated the subcutaneous and fatty tissues, and the facia overlying the left triceps muscle was intact and without hemmorrhage. There was no soot or stippling on the skin.

- Blunt force injuries consisted of abrasions and contusions of the right face and ear, a red contusion of the left wrist, irregular dried abrasions on the abdomen, subgaleal hemorrhage, and lingual hemorrhage.

The cause of death was gunshot wound of the head, and manner of death was homicide.

Victim #2, Richard Belisle, suffered a number of injuries:

- Gunshot wound which entered the posterior aspect of the right shoulder perforated the musculature of the upper right arm, right humerus and clavicle (with fracture), right shoulder/neck soft tissues and vasculature and lodged within the right lateral portion of the C2 vertebra, fracturing it. The direction of the wound path was right to left, upward, and front to back. There was marked purple hemorrhage of the deep tissues of the right shoulder and right side of the neck along the wound track. The bullet caused factures of the right humerus and clavicle. There was no soot or stippling on the skin, and a mildly deformed gray-metal bullet with copper-colored metallic jacketing was recovered from the C2 vertebrate.

- Gunshot wound of the right side of the trunk, which entered the right side of the chest, perforated the chest wall, right hemidiaphragm, liver, small bowel, transverse colon, omentum, anterior chest wall and exited the left upper

quadrant of the abdomen. No projectile was recovered, and soot and stippling were absent. There were patchy red-purple hemorrhagic lacerations that emanated from the lateral aspect of the wound. A tiny markedly deformed gray-metal projectile fragment was recovered from the skin near the exit wound. The direction of the wound path was right to left, downward, and front to back.

- Gunshot wound of the left side of the trunk, which entered the left side of the chest, perforating the anterolateral left chest wall, grazed the lower left ribcage, possibly grazed the small intestine, soft tissues of the right abdominal wall, and exiting the right lower quadrant/flank. The direction of the wound path was left to right, downward, and back to front.

- There were other additional injuries noted. There was a ¼ inch, slightly crusted, red abrasion on the right elbow. There was a ½ x ¼ inch irregular and focally-abraded laceration which extended to the depths of the subcutaneous tissues, in the lateral aspect of the right index finger. Exploration of the depths of the wound revealed no debris, fragment, or projectile, and soot and stippling were missing. There was a 4x2 inch area of tiny, punctuate red abrasions on the right hand which might represent true stippling or pseudo-stippling. Additionally, the subgaleal tissues had an approximately 1½ inch purple hemorrhage with the left occipital region. The scalp had no notable overlying injury and was intact.

The cause of death was gunshot wound of the neck and trunk, and manner of death was homicide.

## Victimology

Complete information about the victim of a violent crime is an important part of the crime analysis process. An individual's personality and lifestyle will affect their chance of becoming a victim of a violent crime and will determine how they will react when confronted by a violent offender. Their actions may affect the activity of the offender and the eventual outcome of the violent confrontation.

Both victims were employed, lived unobtrusive lives and had no other factors that would raise their probability of becoming the victims of a violent crime. Neither had substantial debt

and they did not participate in any high risk behavior.  Both
victims would be considered a low risk for becoming the victim
of a violent crime.

## Crime Analysis

Most crime scenes provide the investigator with clues as to
what occurred during a violent crime, and can provide certain
information relating to the behavior of the offender and the
interaction between the victim and the offender.  Based upon a
review of the case materials and other information that has been
provided in this case, the following observations and opinions
are set forth regarding the commission of this offense:

The usual routine was for Victim #2 to arrive at the shop
around 7:00 a.m., and Victim #1 to arrive after 7:10 a.m.  On
this particular day, Victim #2 utilized the badge reader at 6:54
a.m.(badge reader is 6 minutes slow) and the video camera showed
he arrived at 7:00 a.m.  Video also showed Victim #1 arriving at
7:07 a.m.  A small SUV type vehicle was observed approaching the
shop at 7:09 a.m., and leaving at 7:14 a.m.

After analyzing all of the physical evidence, the probable
sequence of events is as follows:

- Analysis indicates that Victim #2 was shot first.  The room
  where Victim #2 was found was long and narrow with a single
  doorway at one end of the room.  Upon entering the room,
  the desk area where the victim was found was immediately on
  the right, adjacent to the doorway, and the desk was butted
  up against the wall where the doorway was located.  Against
  the wall on the far side of desk there was a filing
  cabinet.  There were also boxes stacked on the floor
  against this wall.

- Victim #2 was initially found face down by the first
  responders with his head facing the desk, and his hands up
  near his head.  It appears the first shot would be the one
  which struck him on his left side.  The bullet traveled
  through his abdomen, and exited in the lower right quadrant
  of his abdomen.  After exiting, the bullet struck the
  floor.  The location of this wound and the angle of the
  shot correspond to the bullet fragment imbedded in the
  floor, closest to the filing cabinet and boxes.  This
  scenario would place Victim #2 with his back to the doorway
  leading into the room.  The position would indicate that
  Victim #2 was not alarmed to the presence of another

person, and indicates Victim #2 was shot first. The angle of the shot also indicates Victim #2 was likely sitting in the chair found by the desk. After being shot, Victim #2 fell on the floor, face down.

- The offender then exited the office and approached Victim #1, who was in the break-room, near the water fountain. Since the report of a large caliber weapon inside a building would be substantial, it appears that Victim #1 was alerted prior to being attacked. The first bullet struck the victim in the face and exited the back of his head. Based upon the physical evidence, Victim #1 was standing when he was hit with this bullet. There was a blood drop found on the wall behind the entrance door, adjacent to the microwave, and an apparent bullet strike mark on the wall in the same area. This would correspond to the gunshot being fired from outside of the room, striking the victim in the face and exiting the back of his head while the victim was standing. This wound would have been completely incapacitating and the victim would have collapsed immediately. Victim #1 suffered blunt force injuries to the right side of his face consistent with the victim striking his face on the floor or other objects after falling. According to responding EMS personnel, Victim #1 was initially found in a fetal position on his right side, with his right leg semi bent and his left arm behind his back with the palm facing up in an open position, and his head pressed against the east wall. Additionally, Victim #1's head was bent toward his left shoulder with his left ear almost touching his left shoulder.

- After the shooting of both Victim #1 and Victim #2 as described above, it is not possible from the evidence available to determine the sequence of the next three shots.

- The other gunshot wounds suffered by Victim #1 appear to all have been caused by the second shot. The bullet struck the back of the victim's left upper arm, traveled left to right, entered the victim's chest to the right of the anterior midline and exited the right side of the victim's chest farther to the right of the midline. This conclusion is based upon the autopsy report which showed the direction of the gunshot wound to the upper left arm was left to right, indicating the victim was shot while his left side was facing up and his right side closest to the floor.

There were pieces of lead projectile found in the skin on the right flank, below the bullet wound located on the far right side of the victim's abdomen. This would indicate that the bullet exited after traveling left to right. After exiting the victim, the bullet struck the concrete floor, fragmented, and bounced off the floor. The fragments created the wounds on Victim #1's right flank and on the periumbilical area of his abdomen. There were also tears in his t-shirt that correspond to these injuries.

- The recovered bullet fragments from this room and the nearby area appear to consist of only two fired projectiles. One of the bullets, or fragments from the bullet, struck a plastic container sitting on top of the refrigerator in the break-room. A fired bullet was recovered on top of the microwave, adjacent to the refrigerator. Another bullet fragment (copper jacket) was recovered near a table in the break-room. Another fragment was found in the hallway outside the break-room. Additionally, Victim #1 had numerous minute bullet fragments of gray metal inside the hemorrhagic wound track within his head, and a gray metal projectile fragment was also recovered from the Victim #1's right flank.

- The offender returned to the office and shot Victim #2 two more times. Based upon the evidence, these two gunshot wounds Victim #2 suffered occurred after he was on the floor face down. One shot struck him in the right shoulder which did not exit the victim's body. The other shot struck the victim in the right side of the chest, and exited the left upper quadrant of the abdomen. It then entered the floor underneath him, which corresponded to the second bullet hole located in the floor, closest to the room entrance. This would have been directly beneath Victim #2 while he was lying face down. A bullet was recovered from underneath the floor in this area, and a bullet fragment was removed from the floor itself.

- Both of these shots would be consistent with the offender shooting from inside the room. The angles of these two shots appear to be different, indicating the offender was in two different positions when firing these shots.

- The two additional gunshots Victim #2 suffered and the second gunshot wound Victim #1 suffered to his upper left arm and chest were coup de grâce gunshots fired by the offender to ensure the victims were dead.

- After the final gunshots, the offender fled the scene.

The circumstances and activities of this crime reflect an offender who was familiar with the shop location, had knowledge of the victim's time schedule, and knew that no one else would be at the shop at that time. Although there were a number of people who worked out of this particular shop, only these two victims were killed, indicating they were targeted. All of the actions of the offender reflect a singular purpose, to kill both victims. The assault on the two victims was direct and immediate. The offender brought a large caliber weapon and fired multiple times to ensure the death of the victims.

The motive in this case can be discerned through the actions of the offender, as well as the life styles and occupations of the victims. In this particular case, there were no apparent controversies in either victim's personal life, and their occupations did not present a high risk for violence. Additionally, the location of the murder scene, located on a Coast Guard Base, reduces the chances that this was a random event. In considering all of these factors, it highlights that the offender killed the victims for some personal reason. These kinds of murders have been referred to as personal cause homicides. Personal cause homicides are murders where the offender has or perceives having a conflict or problem with the victim(s) and believes the solution to the disagreement is to kill the victim(s).

Any questions or comments regarding this analysis may be directed to Supervisory Special Agent (SSA) Robert J. Morton, Behavioral Analysis Unit 4 (BAU-4), National Center for the Analysis of Violent Crime (NCAVC), Critical Incident Response Group (CIRG), FBI Academy, Quantico, Virginia, (703)632-4193.