Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant James Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>　　　　　Defendant. | Case No. 3:13-cr-00008-RRB-JDR<br><br>**REPLY TO GOVERNMENT OPPOSITION TO MOTION REQUESTING *DAUBERT* HEARINGS** |

　　　　JAMES MICHAEL WELLS replies to the government's opposition (Docket No. 230) to his motions requesting *Daubert* hearings on proposed government "experts" (Docket Nos. 192, 194, 196, 198, and 200).

　　　　Mr. Wells relies on his motions, which alert the court of the government's failure to turn over critical and required discovery that would allow Mr. Wells to evaluate the testimony of the government's proposed "expert" witnesses. Should the court permit these "experts" to testify without pretrial disclosure of the data or methodology they relied upon in reaching their opinions, the defense will not have sufficient time to obtain defense experts to analyze this information. Without the ability for adequate expert review,

Mr. Wells will be unable to adequately confront and cross-examine these witnesses at trial, in violation of the Sixth Amendment of the Constitution. That is the current status of this case. The government's proposal that Mr. Wells proceed to trial without this information and without adequate review of the proposed experts by defense counsel and court would result in ineffective assistance of counsel and potentially a series of continuances in the middle of trial, which would be a highly inefficient way to litigate these issues.

Mr. Wells responds to the government's arguments in turn.

I. **THE COURT SHOULD NOT PERMIT THE PROPOSED "EXPERTS" TO TESTIFY BECAUSE THE GOVERNMENT HAS NOT DISCLOSED THE FACTS OR DATA AND PRINCIPLES AND METHODS SUPPORTING THE "EXPERT" OPINIONS, AS REQUIRED BY FEDERAL RULE OF EVIDENCE 702**

The parties are in agreement that Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), are controlling law. However, the government has failed to honor the requirements of Fed. R. Evid. 702 and Fed. R. Crim. P. 16(a)(1)(E)(I). The government has not disclosed the underlying data and/or principles and methodology of the following "experts":

A. **Mr. Gifford and Mr. Morton**

Mr. Gifford and Mr. Morton, the crime scene "experts," reach different conclusions about how the crime occurred, with no explanation of how they reached their conflicting opinions. Surely, their opinions cannot both be reliable. Mr. Wells reiterates that he contests Mr. Gifford's opinions, including: that the double homicide appears to be a case of workplace violence, the shooting sequence, and the possible presence of an intervening object. He also renews his objections to Mr. Morton's opinions, including: the

shooting sequence, that the offender killed the victims for a "personal reason," and the perpetrator targeted the victims.

Mr. Wells has not received any additional materials from Mr. Morton that would explain how he formed his opinions. On December 16, 2013, Mr. Wells received additional materials from the government, photographs, that Mr. Gifford used in forming his opinions. Mr. Wells also received a list of materials that Mr. Gifford reviewed in forming his opinions. Mr. Wells received additional discovery on Christmas Eve, which may include some of the items that Mr. Gifford lists. However, Mr. Gifford's list is not precise about the dates of the interviews and recordings he reviewed, and the drawings, measurements, and logs he used in forming his opinions. Mr. Wells requests that Mr. Gifford clarify this information so that Mr. Wells can ascertain if he has these materials. Mr. Wells renews his request for the underlying data on which both experts relied, and some explanation for how they came to their conclusions.

Mr. Wells does not dispute that both of the government's proposed "experts" have a great deal of practical experience. However, their testimony should reliably assist the trier of fact in ascertaining how the homicides occurred. The proposed testimony of these "experts" could not be useful to the trier of fact if it is not based on reliable principles and methods. The principles and methods employed by Mr. Gifford and Mr. Morton cannot both be reliable, since they arrive at such different conclusions. Moreover, their hypotheses that this is a "personal cause" killing with targeted victims, and a case of workplace violence, appear to amount to testimony on the ultimate issue in this case, which is not admissible. Mr. Wells renews his request that the court exclude Mr. Gifford's and

Mr. Morton's testimony because of the failure to produce the data, principles, and methods that they employed, as well as the lack of reliability of their testimony.

### B. Mr. Bolden

Mr. Bolden, a tire expert, had not provided the specific evidence he used to support each of his opinions at the time when Mr. Wells filed the underlying motion to exclude his testimony. On December 16, 2013, the government provided some additional information about how Mr. Bolden performed his tests. Based on the information in the defense's possession at this time, it appears that Mr. Bolden conducted a dynamic study of air retention by running the tire with the nail in it for 24 hours. The conditions described in the newly discovered bench notes are very different from the conditions in Kodiak, Alaska, on April 12, 2012. In particular, Mr. Bolden ran the tire at a much higher temperature, which would have an impact on his results. His test is not an accurate reflection of the actual conditions affecting the tire. Thus, his tests are not relevant.

Additionally, Mr. Bolden appears to have removed the nail from the tire, an alteration of the evidence in this case. Consequently, Mr. Wells is unable to examine how the nail originally was embedded in the tire. Removal of the nail from the tire changed the nature of the puncture in the tire, which will make it impossible for Mr. Wells' expert to simulate the tests the government conducted.

The government argues that tire expert testimony is admissible pursuant to the Fifth Circuit case *Vega v. Ford Motor Co.*, 2013 WL 6147558, *2 (W.D. Tex. 2013). However, in that case, the tire expert actually provided the evidence he used to support his opinions, and there is no indication that his tests altered the condition of the tire before the opposing side had access to the evidence. Based on spoliation of this evidence, and its

lack of relevance, Mr. Wells requests that the court exclude Mr. Bolden and the tests that he conducted.

### C. Dr. Meloy

Dr. Meloy, a psychologist, appears to have relied on grand jury testimony and undisclosed interviews in forming a general opinion about workplace violence related issues. The general opinions Dr. Meloy describes, such as an innate biological capacity for affective or predatory violence among humans, which is unsupported by any research on humans, is so broad that it is not clear why it should be relevant testimony in this case. Similarly, Dr. Meloy opines that most cases of multiple murders are committed by single or divorced men in their fourth decade of life, experiencing a profound sense of rejection. Dr. Meloy opines that most people who commit multiple murders were psychotic at the time of the killings. This testimony is not relevant in this case.

On December 16, 2013, the government disclosed a list of materials that Dr. Meloy used in order to form his opinions, again, after the *Daubert* motion deadline. On December 24, 2013, the government disclosed some of the materials included on the December 16, 2013, list, but not others. Mr. Wells still is hampered in his ability to properly contest Dr. Meloy's opinions because of the government's decision to withhold this information.

The government cites *United States v. Taylor*, 239 F.3d 994 (9th Cir. 2001), to support its position that academic testimony is admissible. However, that court conducted a *Daubert* hearing in order to determine if such testimony would aid the trier of fact. The court should do so here. This is important since the defense does not have access to the evidence on which Dr. Meloy relied in forming his opinion, unlike in *Taylor*,

where the defense had access to the academic research that the expert used to form his opinion. Mr. Wells renews his request that the court exclude the testimony of Dr. Meloy because it is not relevant and the government has not provided key information that would allow Mr. Wells to adequately evaluate Dr. Meloy's opinions.

### D. Mr. Schmidt

Mr. Neil Schmidt, an engineer at Honda North America, has opined that the measurements of the vehicle in the USCG footage of the crime scene are consistent with a 2001 Honda CR-V, like that owned by the Wells'. In forming his opinion, it appears that he has relied on images that have not been disclosed to the defense. He also has not provided any principles or methodology to explain how he reaches his opinions, which is unlike the expert in the case cited by the government in support of their proposal to have Mr. Schmidt testify. *See Precision Seed Cleaners v. County Mut. Ins. Co.*, 2013 WL 943571 *5-6 (D. Ore. 2013). Mr. Wells renews his request to exclude Mr. Schmidt because he has not been given access to the data on which Mr. Schmidt has based his opinions.

### E. Mr. Toglia

Mr. Angelo Toglia, an accident reconstructionist, has relied on data that has not been disclosed to the defense, and has utilized a methodology that has not been disclosed to the defense. Although the government has provided the defense with additional discovery on December 16, 2013, i.e., photographs and video on which Mr. Toglia relied, the government has not disclosed the raw data that Mr. Toglia used to fashion his model, i.e., his measurements. Without this information, the defense cannot properly evaluate his analysis and model. The government does not get to hide an expert's methodology and the underlying raw data in order to gain an unfair advantage, as the

United States v. James Michael Wells
Case No. 3:13-cr-00008-RRB-JDR                                                                 Page 6

Case 3:13-cr-00008-SLG   Document 234   Filed 12/27/13   Page 6 of 11

government seeks to do here. In fact, the government, citing *Desrosiers v. Flight Int'l of Florida, Inc.*, 156 F.3d 952 (9th Cir. 1998), to argue that this type of expert testimony is admissible, specifically outlines the sound approach the Ninth Circuit advocates in evaluating this type of testimony as including an analysis of the expert's methodology and a review of all the available material relevant to his determination. The defense would ask for the same approach to be applied in this case.

Additionally, according to the government's disclosures, Mr. Toglia has made a video that superimposes an image of the Wells' vehicle onto the crime scene. This appears to be equivalent to testifying to an ultimate issue in this case, because this would be a simulation that places Mr. Wells' car at the scene of the crime. Mr. Wells moves to exclude the video on that basis, as well. None of the cases cited by the government about the admissibility of such testimony have included a proposed expert's importation of images, such as a defendant or his property, to a crime scene. *See North v. Ford Motor Co.*, 505 F. Supp. 2d 1113 (D. Utah 2007). Accident reconstruction is very different from what the government is proposing to do here.

The government argues that video depictions have been admitted in the Fifth Circuit, where a simulation of a defendant's explanation was deemed admissible to show that the events could not have transpired as the defendant described. *See United States v. Norris*, 217 F.3d 262 (5th Cir. 2000). However, the video in this case is not a form of impeachment. Rather, it seems to go to an ultimate issue in this case, namely whether Mr. Wells' car could have been at the scene of the crime. It is inadmissible for that reason, as described above. The government urges the court to adopt the rule of the Fifth Circuit in this case, claiming that the simulation is "substantially similar" to the alleged events.

Here, the simulation actually places Mr. Wells' car at the crime scene. This is not so much a simulation as it is a video depiction of the government's theory, and speculation that has Mr. Wells perfectly placed to commit the crime. Mr. Wells renews his request to exclude Mr. Toglia and his models based on the government's failure to disclose the underlying facts, data, method, and principles Mr. Toglia employed to create his video.

Mr. Wells is under the impression that the government intends to call these experts for its case-in-chief at trial. The failure to disclose this information by this late date should bar these "experts'" testimony at trial. The issues related to these "experts'" testimony cannot be adequately addressed at the time of trial because the defense must be able to retain experts to examine this information in order to confront these governments "experts" at trial. This is crucial for Mr. Toglia's testimony, for example, because he has built a video model of the crime scene and the defense has no way to evaluate its accuracy and will be unable to do so in the middle of a trial in a timely fashion. Counsel for Mr. Wells would be rendered ineffective by this inability to subject Mr. Toglia's testimony and model to vigorous adversarial testing. It is unclear why the government, with its responsibility to seek justice, would not disclose information to which Mr. Wells is entitled, and which would allow him adequately to confront his accusers.

## II. IF THE COURT DOES NOT CATEGORICALLY EXCLUDE THE "EXPERT" TESTIMONY, THE COURT SHOULD MAKE A RELIABILITY DETERMINATION FOR THESE EXPERTS AT A *DAUBERT* HEARING

For a *Daubert* hearing, "the gatekeeping inquiry must be tied to the facts of a particular case." *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) (*citing Kumho Tire*, 526 U.S. at 150) (internal quotation marks and citations omitted). Based on

the lack of raw data provided to the defense in assessing these "experts," Mr. Wells asserts that a *Daubert* hearing is critical to ensure the reliability of the proposed testimony.

Unlike the cases cited by the government in support of its proposition to permit their "experts" to testify, the experts in this case are not case agents who investigated this case, experts who employ no particular method or technical framework in reaching their conclusions, or experts whose data and/or methodology are not disclosed. *See Alatorre*; *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir 2004); *Millenkamp v. Davisco Foods, Int'l, Inc.*, 562 F.3d 971 (9th Cir. 2009).

The government is proposing "experts" who have technical areas of purported specialization, which are not tied by any specific and disclosed data to the facts of Mr. Wells' case. The court should make a determination at a hearing as to whether these technical areas are relevant and reliable because of the dearth of information provided by the government to support any finding that their "experts'" opinions are reliable. The government cites *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007), for the proposition that the court need not hold a *Daubert* hearing in every case where an expert is proposed. However, in *Jawara*, the court held that it was unnecessary to hold a *Daubert* hearing because there were sufficient indicia of reliability in the proposed expert's testimony. That case did not turn on any technical modeling that was only in the government's possession, as is the case here. Also, there was no indication that experts on the same subject would be providing conflicting testimony. For example, the government details the extensive experience of Mr. Morton and Mr. Gifford in providing crime scene analysis. They reach opposite conclusions about the sequence of the homicides. How can their analyses be reliable?

United States v. James Michael Wells
Case No. 3:13-cr-00008-RRB-JDR                                                                                                    Page 9

Case 3:13-cr-00008-SLG   Document 234   Filed 12/27/13   Page 9 of 11

The government also cites case law from other circuits extensively to argue the court should not actually scrutinize the reliability and relevancy of their "experts" at a pretrial hearing. Those cases are not the law of our circuit. However, the government cites *United States v. McLuskey*, 2013 WL 3766686 (D.N.M. 2013), to argue that a pretrial hearing is most necessary when there is a need for significant pretrial vetting of disputed factual issues. Unlike *McLuskey*, where the government disclosed the raw data necessary for the defense experts to contest the expert's qualifications and methodology, Mr. Wells does not have access to the raw data and is subsequently unable to clarify specific factual issues in dispute with the aid of an expert. Mr. Wells needs this information in order to contest the government "experts." Since he has not been provided this information, the government experts should be excluded.

The government argues that Mr. Wells has not raised a single, specific objection to the proposed expert testimony, and is actually seeking a discovery hearing. That is not accurate. Mr. Wells is renewing his request for the discovery to which he is entitled. Mr. Wells is reserving his right to contest the government proposed "experts" once he has access to the information he needs to do so. It would be a waste of the court's resources to have a *Daubert* hearing until Mr. Wells has the data on which to contest the government experts. Mr. Wells is not seeking a *Daubert* hearing to discuss discovery issues. Mr. Wells notes that the government's failure to turn over this information likely is going to result in unnecessary delays, as mentioned above, unless the "experts" are excluded.

## III. CONCLUSION

The court should exclude the proposed government "experts'" testimony for the reasons provided in the underlying motions and outlined above.

As requested before, the defense moves for *Daubert* hearings to be held after defense counsel receives and reviews the methodology and raw data the "expert" relied upon in the event that Mr. Wells seeks to contest the data, methodology, and/or opinions of the government's proposed "experts."

DATED this 27th day of December, 2013.

Respectfully submitted,

/s/Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone: 907-646-3400
Fax: 907-646-3480
E-Mail: rich_curtner@fd.org

Certification:

I certify that on December 27, 2013, a copy of the **Reply to Government Opposition to Motion Requesting *Daubert* Hearings** was served electronically on:

Bryan D. Schroder, Esq.
bryan.schroder@usdoj.gov

Karen L. Loeffler, Esq.
karen.loeffler@usdoj.gov

Kathleen A. Duignan, Esq.
kathlee.duignan@usdoj.gov

/s/Rich Curtner