KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071; Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | No. 3:13-cr-00008-RRB-JDR |
| Plaintiff, | ) ) ) | **GOVERNMENT'S COMBINED RESPONSE TO** |
| vs. | ) ) ) | **DEFENDANT'S MOTIONS AT DOCKETS 213,216,219,222,** |
| JAMES MICHAEL WELLS, | ) ) ) | **225**[1] |
| Defendant. | ) | |

---

[1] The government's response will also address new allegations contained in the defendant's reply at Docket 234.  For the reasons described above, the three sets of pleadings by the defendant all address a single issue—defendant's efforts to exclude the government's experts.

## I.   INTRODUCTION AND SUMMARY OF RELEVANT PLEADINGS

In what amounts to a rolling set of pleadings, defendant has now filed a third set of motions seeking to address the issue of the government's proposed expert testimony.  In his motions at Dockets 189-201, defendant filed "*Daubert*" motions, requesting a hearing on six of the government's expert witnesses purportedly pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Those motions were accompanied by memoranda relying almost entirely on the two Supreme Court cases of *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Misconstruing the law of *Daubert* as set forth in the ensuing precedents cited in the government's response at Docket 230, (see e.g., pp. 7-9) the defendant, for the most part, made no specific attacks on the qualifications, reliability, or relevance of the expert reports. Instead, defendant apparently believed that citing *Daubert* alone was sufficient to require the Court to hold a pretrial discovery hearing.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 2 of 21

Each one of the memoranda in support of those motions also concluded with a request that the Court exclude the testimony of the identified expert.

At Docket 234, the defendant then filed a consolidated reply to the government's opposition, again requesting pretrial hearings on the six government experts and/or exclusion of their testimony. In that pleading the defendant, without citation to the applicable rule governing discovery, claimed his failure to provide any basis for the requested hearings was caused by governmental discovery violations. Defendant then made a few vague and non-credible attacks on the reliability of some experts that were unsupported by any evidence. Now the defendant files a third set of motions again requesting exclusion of the same government experts.

In violation of Local Rule 7.1 and Criminal Local Rule 47.1, these latest motions are neither accompanied by a memorandum of points and authorities, nor by any competent evidence putting any matters in issue. Instead, the latest motions simply restate defense counsel's

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 3 of 21

personal opinions that the Court should grant his earlier motions.

Despite the three sets of pleadings raising identical claims, defendant remarkably asserts, in these latter motions, that he has "reserved the right" to file more supplemental pleadings on his *Daubert* motions.[2]

Concurrent with this response, the government has filed a motion to strike the pleadings at Dockets 213, 216, 219 and 225, or, in the alternative, for summary denial pursuant to District of Alaska Local Rule 7.1(e)(1).  However, in order to avoid any possible delays, the government will, in addition, address the substance of the defendant's latest allegations below.

## II.  THE GOVERNMENT HAS MORE THAN FULFILLED ALL DISCOVERY REQUIREMENTS RELATED TO EXPERT REPORTS

---

[2] The government is baffled by what "right" defendant is reserving since the local rules do not appear to grant defendant an unlimited right to file continuous pleadings on the same motions, but will leave to the Court whether or whatever further briefing the Court might deem necessary to the resolution of these matters.

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 4 of 21

In his attempt to justify his failure to raise any specific disputed issues that would justify a pretrial *Daubert* hearing, the defendant simply states that he is blocked from making colorable motions by a failure of discovery.  Fed.R.Crim.P. 16 (a)(1)(G), specifically addresses and governs the government's obligation to produce expert witness information.  That rule states:  "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."

The rule goes on to state that the summary must describe, "the witness's opinions, the bases and reasons for those opinions, and witness's qualifications."  *Id.*  The Court's pretrial order required the government to produce this information on October 25, 2013.  The government met that deadline with all information required by the rule on the date set.  See Docket 160.  Moreover, many of the experts' lab reports had already been turned over to the defense on August 30, 2013, almost two months prior to the deadline for expert witness notifications.

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 5 of 21

The defendant, the government must assume, does not dispute that the government has met this requirement, as the defendant's allegations neither cite nor mention the governing rule, Rule 16(a)(1)(G). The government, moreover, has not just relied on the substance of the rule, but, working with the defendant, has produced a wide array of information beyond that required by Rule 16(a)(1)(G).

The defendant requested additional discovery material related to the expert witnesses on November 21, 2013. While the government had already provided the discovery required by the rules for expert witnesses, the government has worked with defense counsel's requests to provide bench notes, supporting test notes and results, lists of documents, photographs, and recordings the experts have reviewed or relied on, identification of computer programs used by experts, and survey data used by experts. In addition, the government has made evidence available for the defendant's experts to examine. The government has previously provided all of the investigative information relied on by the experts such as photographs, seized or subpoenaed

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 6 of 21

documents, physical evidence, and other materials as required by Rule 16(a)(1)(E).

Thus, the government has more than met its discovery obligations concerning expert information. Indeed, the government has met virtually all of the much more extensive discovery requirements applicable in the civil context. *See* Fed.R.Civ.P. 26 (a)(2). The defendant's complaints that he has been precluded from raising any colorable challenge to the government's experts by any failure of the government are neither factually credible nor legally valid.

As the Court is well aware, in criminal cases, the primary method for testing the testimony, credibility, and competence of witnesses is through cross-examination and presentation of contrary evidence. This is true even in the area of expert testimony. *Daubert*, 509 U.S. at 596 and cases previously cited at Docket 230. There is no criminal rule akin to Fed. R. Civ. P. 26(a)(2) and 26(b)(4) providing for pretrial depositions of expert witnesses. As detailed below, the defendant's complaints appear to assume a right akin to a pretrial discovery deposition of an

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 7 of 21

expert's thought processes, the specifications and settings of all computer programs and equipment, and all intermediate work product that may have been used by an expert as a preliminary to trial – a legal theory that is unsupported by criminal law and process. The defendant's factual assertions similarly fail for lack of support and, for the most part, lack credibility as a matter of common sense. The government is not aware of this type of standard ever being applied in a criminal case.

## III. THE GOVERNMENT'S EXPERTS ARE ALL PROPERLY QUALIFIED, RELIABLE AND RELEVANT AND THE COURT CAN BEST ADDRESS ITS GATEKEEPING OBLIGATION THROUGH *VOIR DIRE* AT TRIAL

A review of the authorities cited by the government in its response at Docket 230 leads to the following implicit and explicit conclusions. First, *Daubert*, the subsequent cases, and the advisory committee notes to Fed.R.Evid. 702 all state that the admission of evidence in American courts, including expert evidence, rests upon a foundation of liberal admissibility. *See Daubert*, 509 U.S. at 587 and cases cited at Docket

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 8 of 21

230, p. 6.  As noted in the Advisory Committee Notes to the 2000 Amendments to Rule 702, "A review of caselaw after *Daubert* shows that rejection of expert testimony is the exception rather than the rule." Second, the courts have generally exercised their gatekeeping functions either on the briefs or at trial through the well-established processes of *voir dire* and the standard qualification examination at trial prior to moving for acceptance of a witness as an expert.  The exception to this practice are cases where the opposing party has, through expert affidavits and/or other competent evidence, raised a genuine issue as to the qualifications of the expert or some credible issue that the methodology is so unreliable as to be akin to "speculation or guesswork."  *See e.g., North v. Ford Motor Company*, 505 F.Supp.2d 1113, 1118 (D.Utah 2007).  The vague allegation raised by the defendant here, runs afoul of both rules and amounts to a request for pretrial discovery depositions of clearly qualified witnesses.

IV.    RESPONSE TO SPECIFIC ALLEGATIONS

    A.    Crime Scene Experts (Dockets 213,234 pp.2-3)

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 9 of 21

Defendant moves to exclude the government's crime scene experts stating that they reach conflicting conclusions about how the homicides occurred and that the government has not provided sufficient "testable methodology" – whatever that means. Their motion is not accompanied by any memoranda of points and authorities nor have they provided any competent evidence of any failings in the reliability of the methods used by the two experts – experience and observance of the crime scene photographs, scene and reports, all of which have been provided in a timely manner. In support of their request for exclusion they rely solely on the declaration under oath of defense counsel giving his personal belief that the proffered testimony is irrelevant and without foundation. Counsel's personal opinions on this matter are obviously irrelevant to the Court's determination. Moreover, they are unsupported by applicable legal standards, fact and common sense.

First, the government assumes that the defendant agrees that both Mr. Gifford and SA Morton are qualified to give the opinions contained in their reports. Indeed, he explicitly concedes that point in

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 10 of 21

his reply to the government's *Daubert* response at Docket 234 at p. 3. The defendant's challenge to reliability comes from his statement that "they cannot both be reliable, since they arrive at such different conclusions." *Id.* As a matter of fact, the two experts actually agree on virtually all matters, except for their opinions of the order of the first two shots fired into both victims. See Government's Response to Motion for *Daubert* Hearings, Dockets 230-1 (Morton) and 230-3 (Gifford).

Thus, they both agree on the conclusion that this was targeted murder, that the murdered was an insider, that the two individuals were shot close in time and proximity, and other details. Their conclusions, thus, are not identical, but they are consistent in most areas. More importantly, as a matter of law, any doubt as to the conclusions is an issue for the jury, not a matter to be decided by the court under *Daubert*. See Advisory Committee Notes to Rule 702 ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the Amendment on sufficient facts or data is not intended to authorize a

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 11 of 21

trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.)

Defendant's only other challenge is his bald statement that, "Neither has provided any 'testable methodology' ". Defendant cites no law suggesting that "testable methodology" is a prerequisite to admission of expert testimony. While methodology of an expert – the way they conduct their analysis – is certainly important, there is no requirement that all methodology be "testable." Indeed, this appears to be a term simply created by defendant. Defendant appears to rely on the period between Supreme Court's decisions in *Daubert* and *Kumho Tire*, when some parties argued that because of *Daubert*, all expert testimony had to be scientific. This argument failed at the circuit court level, *Desrosiers v. Flight International of Florida, Inc.*, 156 F.3d 952, 960 (9th Cir. 1998), and was finally rejected in *Kumho Tire*.

Quite in contrast, both the advisory committee notes to Rule 702 and the cases cited by the government in its response at Docket 230

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 12 of 21

point out clearly that "experience is the predominant, if not the sole basis for a great deal of reliable expert testimony."

Both of the crime scene experts detail their experience in their reports, what they looked at and what conclusions they drew from the evidence they reviewed. It begs belief that the defendant is incapable of finding an expert to review the crime scene evidence already provided to them who can do a crime scene analysis without further explanation of how each expert applied their experience to the raw evidence from the crime scene.

B.    Dr. Meloy

Defendant moved to exclude Dr. Meloy's testimony on the grounds that his report fails to explain the relevance or admissibility of his testimony.   Again the defendant provides no memorandum suggesting such testimony is not relevant to identity of the perpetrator, but simply provides a declaration of defense counsel, who has no obvious training in the field, and states that apparently, according to defense counsel, no scientific data supports Dr. Meloy's conclusions.  Counsel then gives

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 13 of 21

counsel's personal opinion that the evidence is not relevant and is without foundation.

The government's Rule 16 production to defendant provides a footnoted report setting the basis for all of Dr. Meloy's conclusions. Dr. Meloy's CV lists over 200 peer reviewed scientific papers, abstracts, and other materials. Dr. Meloy is obviously fully qualified to testify as to the characteristics of those who commit targeted, intended violence, and workplace violence against multiple victims.

The connection between this case and those opinions will be set up by the evidence introduced by witnesses, and the conclusions of the crime scene experts, who will say that this is exactly the type of crime committed here. Dr. Meloy will not testify as to how these characteristics fit Mr. Wells. The connection will be established by the testimony of other witnesses as to Mr. Wells' behavior and the facts related to the murders. Certainly testimony by an expert who is one of the preeminent experts in the field of targeted violence, and who has a career of credentials and studies in the field as to characteristics of

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 14 of 21

perpetrators, is clearly relevant to the identity of the perpetrator of such a crime. As noted above, if the defendant disputes Dr. Meloy's conclusions, the proper way to present this dispute to the jury is through cross examination and/or contrary evidence, not exclusion based on nothing more than defense counsel's personal statements.

C.    Tire Expert Gary Bolden

Defendant moves to exclude government tire expert Gary Bolden's testimony on the claimed grounds that the defendant cannot test Mr. Bolden's assertions and does not understand why they are relevant. Defendant's claims, again only supported by defense counsel's personal beliefs, beg credulity. As counsel is well aware, defendant Wells stated, in a recorded interview, that he was not at work at time of the murders because he had a low or flat tire,  Docket 138-1, p. 6. The government is alleging that this is a false alibi. Mr. Bolden's well qualified opinion and tests support the conclusion that Mr. Wells was lying in his statement about where he was during the time of the murders. It begs

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 15 of 21

belief that defense counsel would profess an inability to understand how such testimony would be relevant at trial.

Although defendant provides no support for his claims in his motion *in limine,* in his reply motion defendant, again with no affidavits or other contrary evidence, complains that the tests run by Mr. Bolden on tire pressure are not consistent with conditions in Kodiak and that removing the nail from the tire amounts to spoliation that should preclude this obviously relevant testimony. In neither pleading does the defendant provide any authorities in support of his spoliation claim which should be summarily rejected. Indeed, defendant's unsupported theory seems to be that any test that changes evidence is precluded.

One would suppose defendant would then argue analogously that if a victim was stabbed in the heart, removing the knife would bar testimony concerning the cause of death. The government provided the defendant, not only with Mr. Bolden's report, but also with the pictures taken by Mr. Bolden showing the tire with the nail still in it, pictures of the hole, and further information depicting exactly what Mr. Bolden did

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 16 of 21

to the tire to run his tests. Questions about how the results of the test might differ from Ohio to Kodiak are the proper subject of cross examination.

D.    Mr. Schmidt

Defendant challenges the admission of Honda Expert Neil Schmidt's testimony as irrelevant based on one statement in an FBI agent's report provided to the defense that is misquoted and taken out of context. As noted in the government's report, Mr. Schmidt is an expert by experience in Honda CRV's. In viewing the video of the car alleged to have been used to commit the murders, he stated that it looked like an early model CRV and although he cannot be 100 percent certain, he was 70% sure. Ms. Wells's car is an early model CRV.

Defense counsel, based on his statements and declaration, is apparently confused as to how opinions as to the make and model of the car that carried the murderer to the scene are relevant to murder although the relevance is obvious. The statement referred to by defense counsel, in context, is a statement about whether one can identify the

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 17 of 21

*grille of the vehicle* from the video. Defense counsel misleadingly implies that the statement refers to the vehicle as a whole. That is clearly not the case. Mr. Schmidt does not state that he cannot discern anything about the vehicle and, in fact, as is clearly noted, he identifies the vehicle by a number of characteristics, based on his experience and extensive knowledge of SUV's and Honda CRV's in particular as most likely an early model Honda CRV. As noted above, extensive direct experience is a perfectly good, and indeed, common basis for expert testimony. Moreover, testimony that expresses an opinion as to the make of the car used to transport the murderer to the crime scene is clearly relevant. See e.g. *United States v. Ford*, 481 F.3d 215, 220-1 (3rd Cir. 2007) (Expert opinion that expresses a possibility that a crime scene impression may have been made by shoes worn by defendant clearly relevant.

    E.    Angelo Toglia

    As with most of his other complaints, defendant's challenge to the testimony of Mr. Toglia has nothing to do with his qualifications or the

Case 3:13-cr-00008-SLG   Document 238   Filed 01/06/14   Page 18 of 21

reliability of his testimony.  Wells alleges only that he does not have sufficient discovery to assess his work.  Again, as with all of defendant's other complaints he fails to cite to the applicable governing discovery rule—Rule 16 (1)(1)(G).  As stated above in section II, the government has more than met its discovery obligations, including those regarding Mr. Toglia.  Indeed, the government has provided and is continuing to provide information beyond that required by the rule, including all the underlying data from the survey Mr. Toglia personally conducted at COMMSTA Kodiak.

Defendant's challenge to Mr. Toglia's testimony includes only counsel's personal opinion that he, defense counsel, cannot understand how Mr. Toglia was able to locate the precise location of the blue car in the original video footage.  The answer to that is easy.  Part of the demonstrative exhibit used by Mr. Toglia involves accurately superimposing an image of a Honda CRV over the actual video footage from the day in question.  The report also clearly explains how that accuracy was maintained.  The discovery provided clearly shows that

the model created by Mr. Toglia was made using a highly accurate survey, personally conducted by Mr. Toglia. That survey was the basis for a computer model that precisely matches the actual video images taken by the T1 camera on April 12 – the day of the murder.

As with all other experts the government has provided more information than required by Rule 16 (1)(1)(G). Defendant's continued attempts to exclude relevant admissible opinion evidence based on allegations only, with no evidentiary support other than counsel's personal opinions, is insufficient to justify the discovery deposition that seems to be the goal of their continuous pleadings.

## CONCLUSION

Based on the pleadings provided, the Court should deny defendant's requests for pretrial evidentiary hearings on the government's experts. The court should also deny defendant's motions *in limine* (or strike based on the government's motion which will be filed subsequent to this reply). The court should require the government to present the qualifications and reliability of its experts at trial and

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                  Page 20 of 21

permit *voir dire* on these issues to the extent necessary for the court to

conduct its gatekeeping function.  Using that method, the court can be

assured that the opinions given are sufficiently supportable to meet rule

702 and *Daubert* criteria for expert opinion testimony.

RESPECTFULLY SUBMITTED on January 6, 2014, in

Anchorage, Alaska.

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney

s/ Bryan Schroder
BRYAN SCHRODER
Assistant U.S. Attorney
United States of America

s/ Kathleen A. Duignan
KATHLEEN A. DUIGNAN
 Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2014,
a copy of the foregoing was served
via the CM/ECF system on all counsel
of record.

s/ Bryan Schroder
Office of the U.S. Attorney

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 21 of 21