Form 3610
(Rev. April 1965)

Department of the Treasury — Internal Revenue Service

**Audit Statement**

Symbol: CC:LA:TL: JAS

Name: Petitioner
**JENNIFER BALBIER**

Date Prepared: 12-15-87

Kind of Tax: Income Tax

Docket Number: 23288-85

| Tax Period Ended | Tax | DEFICIENCY (Increase in Tax and Penalties) | | Overassessment (Decrease in Tax and Penalties) |
|---|---|---|---|---|
| | | Addition to Tax | | |
| 1981 | $9025.00 | 6653 $1,805.00 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

☐ Interest for _____ (Year) will be computed under section _____ of the Internal Revenue Code.

☐ The deficiency shown above for _____ (Year) does not take into account a payment of $_____ made on

_____
(Date)

Adjustment of tax liability shown herein is based on revision of prior determination to reflect District Counsel's settlement.

Form 5278
(Rev. May 1982)

Statement — Income Tax Changes

Return Form No. 1040

Name(s) of Taxpayer(s)

JENNIFER BALBIER

DOCKET No. 23288-85

☐ Notice of Deficiency   ☐ Other (specify)
☒ Settlement Computation

Tax Years Ended

1981

| | | | |
|---|---|---|---|
| 1. Adjustments to income | | | |
| a. THEFT LOSS - §165(c) | $14,307.00 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| 2. Total adjustments | 14,307.00 | | |
| 3. a. ☒ Taxable income    ☐ Adjusted gross income | | | |
| b. As shown in: ☐ Preliminary letter dated   ☒ Notice of deficiency dated 4-12-85   ☐ Return as filed | 61,207.00 | | |
| c. ☒ Taxable income as revised   ☐ Adjusted gross income as revised   ☐ Tax table income as revised | 46,900.00 | | |
| 5. Tax from ☐ Tax tables   ☐ Schedule TC   ☒ Tax rate schedule (INCOME AVERAGING) W/1 EXEMPTION | 15,837.00 | | |
| 6. Alternative tax if applicable (from page _____) | — | | |
| 7. Corrected tax liability (lesser of line 5 or 6) | 15,837.00 | | |
| 8. Less credits (specify)  a.  b.  c. | | | |
| 9. Balance (line 7 less amounts on lines 8a through 8c) | 15,837.00 | | |
| 10. Plus  a. Tax from recomputing prior year investment credit  b. Self-employment tax  c. | | | |
| 11. Total corrected income tax liability (line 9 plus amounts on lines 10a through 10c) | 15,837.00 | | |
| 12. Total tax shown on return or as previously adjusted | 6,812.00 | | |
| 13. Increase or (decrease) in tax (difference between lines 11 and 12) | 9,025.00 | | |
| 14. Additions to the tax listed below: | | | |

I.R.C. §6653(a)(1) ———— NONE.

I.R.C. §6653(a)(2) ———— NONE.

I.R.C. §6659 ———— $1,805.00 (USING 20%).

**Income Averaging**
► See instructions on back.
► Attach to Form 1040.

OMB No. 1545-0014

**1981**
20

Name(s) as shown on Form 1040    JENNIFER BALBIER

Your social security number    176:38:6920

| Base Period Income and Adjustments | (a) 1980 | (b) 1979 | (c) 1978 | (d) 1977 |
|---|---|---|---|---|
| 1 Enter amount from: Form 1040—line 34 Form 1040A (1977 and 1978)—line 10 Form 1040A (1979 and 1980)—line 11 . . | | | | |
| 2 a Multiply $750 by your total number of exemptions each year, 1977 and 1978 . | | | | |
| b Multiply $1,000 by your total number of exemptions each year, 1979 and 1980 . | | | | |
| 3 Taxable income (subtract line 2a or 2b from line 1). If less than zero, enter zero . . . | | | | |
| 4 Income earned outside of the United States or within U.S. possessions and excluded under sections 911 and 931 . . . . . | | | | |
| 5 Base period income (add lines 3 and 4) . . | 39,979.- | 28,318.- | 29,605.- | 26,042.- |

**Computation of Averageable Income**

| | | |
|---|---|---|
| 6 Taxable income for 1981 from Form 1040, line 34 . . . . . . . . . . . | 6 | 46,900.- |
| 7 Certain amounts received by owner-employees subject to a penalty under section 72(m)(5) | 7 | - |
| 8 Subtract line 7 from line 6 . . . . . . . . . . . . . . . . . . . | 8 | 46,900.- |
| 9 Excess community income . . . . . . . . . . . . . . . . . . . | 9 | - |
| 10 Adjusted taxable income (subtract line 9 from line 8). If less than zero, enter zero . . . | 10 | 46,900.- |
| 11 Add columns (a) through (d), line 5, and enter here . . . . . . . | 11 | 123,844.- |
| 12 Enter 30% of line 11 . . . . . . . . . . . . . . . . . . . . | 12 | 37,153.20 |
| 13 Averageable income (subtract line 12 from line 10) . . . . . . . . . | 13 | 9,746.80 |

## If line 13 is $3,000 or less, do not complete the rest of this form. You do not qualify for income averaging.

G

**Computation of Tax**

| | | |
|---|---|---|
| 14 Amount from line 12 . . . . . . . . . . . . . . . . . . . . | 14 | 37,153.20 |
| 15 20% of line 13 . . . . . . . . . . . . . . . . . . . . . . | 15 | 1,949.36 |
| 16 Total (add lines 14 and 15) . . . . . . . . . . . . . . . . | 16 | 39,102.56 |
| 17 Excess community income from line 9 . . . . . . . . . . . . . | 17 | - |
| 18 Total (add lines 16 and 17) . . . . . . . . . . . . . . . . | 18 | 39,102.56 |
| 19 Tax on amount on line 18 (see caution below) . . . . . . . . . | 19 | 12,271.75 |
| 20 Tax on amount on line 16 (see caution below) . . . | 20 | 12,271.75 | |
| 21 Tax on amount on line 14 (see caution below) . . . | 21 | 11,316.09 | |
| 22 Subtract line 21 from line 20 . . . . . . . . . | 22 | 955.16 | |
| 23 Multiply the amount on line 22 by 4 . . . . . . . . . . . . . | 23 | 3,820.64 |
| Note: If no entry was made on line 7 above, skip lines 24 through 26 and go to line 27. | | |
| 24 Tax on amount on line 6 (see caution below) . . . . . . . . | 24 | | |
| 25 Tax on amount on line 8 (see caution below) . . . . . . . . | 25 | | |
| 26 Subtract line 25 from line 24 . . . . . . . . . . . . . . . | 26 | |
| 27 Add lines 19, 23, and 25 . . . . . . . . . . . . . . . . . | 27 | 16,092.39 |
| 28 Multiply line 27 by .0125 . . . . . . . . . . . . . . . . . | 28 | 200.11 |
| 29 Tax (subtract line 28 from line 27). Enter here and on Form 1040, line 35 and check Schedule G box . | 29 | 15,892.42 |

**Caution:** Use Tax Rate Schedule X, Y, or Z from the Form 1040 instructions, but do not use the Tax Computation Worksheet on that page. Do not use the Tax Table.

For Paperwork Reduction Act Notice, see Form 1040 Instructions.

| Type of Activity: | Inspection Service | Date and Time |
| --- | --- | --- |
| ☐ Personal Interview<br>☐ Telephone Interview<br>☐ Records Review<br>☐ Other | Memorandum of Interview<br>or Activity | July 1, 1991 |

| Activity or Interview of: (Include all necessary data) | Conducted by: |
| --- | --- |
| RICK RATHMAN<br>Assistant United States Attorney<br>(213) 894-2423 | Inspector WILLIAM SCHAFER |
| | Location Of Interview/Activity: |
| | Telephone Call |

## Subject Matter/Remarks

RATHMAN was contacted for a prosecutive opinion regarding facts and allegations involving former IRSE JEFFREY A. SHERMAN.

RATHMAN declined prosecution.

35

ie Name:

**PROOF OF SERVICE**

STATE OF CALIFORNIA     )
                        )  ss.
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 9150 Wilshire Boulevard, #300, Beverly Hills, California 90212.

On April 11, 2001, I served the foregoing document described as **DEFENDANT LETANTIA BUSSELL'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. J. REID MELOY** on the interested parties in this action by placing the true copies of the original thereof enclosed in sealed envelopes addressed as follows:

Paul Stern, Esq.                    Bryan Altman, Esq.
Assistant United States Attorney    Altman & Morris
United States Attorney's Office     1880 Century Park East
312 North Spring Street             Suite 613
11th Floor                          Los Angeles, CA  90067
Los Angeles, CA 90012

X___ **(BY U.S. MAIL)** I caused such envelope(s) to be deposited in the United States mail at Beverly Hills, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States postal service each day and that practice was followed in the ordinary course of business for the service herein attested to. (C.C.P. § 1013(a)(3)).

X___ **(BY PERSONAL SERVICE)** I caused to be delivered such envelope(s) by hand to the addresses of the interested parties noted on the attached service list.

____ **(VIA FACSIMILE)** I caused to be delivered such document(s) via facsimile transmission to the fax numbers listed above.

____ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

X___ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

Executed on April 11, 2001, at Beverly Hills, California.

_____
M.F. WILLIAMS

188663.1

1 | JOHN S. GORDON
    United States Attorney
2 | RONALD L. CHENG
    Assistant United States Attorney
3 | Acting Chief, Criminal Division
    PAUL G. STERN (No. 162734)
4 | RANEE A. KATZENSTEIN (No. 187111)
    Assistant United States Attorneys
5 | Major Frauds Section
    1100 United States Courthouse
6 | 312 North Spring Street
    Los Angeles, California 90012
7 | Telephone: (213) 894-0715/2432

8 | Attorney for Plaintiff
    United States of America

9 |

10 |

11 |                    UNITED STATES DISTRICT COURT

12 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 | UNITED STATES OF AMERICA      )    SA CR 01-56(A)-AHS
                                   )
14 |              Plaintiff,       )    GOVERNMENT'S REPLY TO
                                   )    DEFENDANTS' OPPOSITIONS TO
15 |         v.                    )    ITS MOTION IN LIMINE TO
                                   )    EXCLUDE THE TESTIMONY OF
16 | JOHN BUSSELL and              )    DRS. MARK MILLS AND J. REID
     LETANTIA BUSSELL,            )    MELOY REGARDING MENTAL
17 |                               )    CONDITION
              Defendants.         )
18 |                               )
                                   )    Hearing Date: 4/30/01
19 |                               )    Hearing Time: 2:30 p.m.
                                   )    Length of Hearing: 1/2 Hour
20 |

21 |      Plaintiff United States of America, through its counsel,

22 | Assistant United States Attorney Paul G. Stern, hereby files the

23 | government's Reply to defendants John and Letantia Bussell's

24 | Oppositions to the government's Motion In Limine to Exclude

25 | Testimony of Defendants' Experts, Drs. Mark Mills and J. Reid

26 | Meloy, regarding issues of mental condition. This Reply is based

27 | upon the attached Memorandum of Points and Authorities, the

28 | pleadings and papers on file in this action, and such additional

ENTER ON ICMS

APR 2 4 2001

Exhibit B - Part 5
Page 206 of 233

1  evidence and argument as the Court may permit at the hearing on

2  the Government's Motion.

3      DATED: April 23, 2001.

4

5                          Respectfully submitted,

6                          JOHN S. GORDON
                           United States Attorney

7                          RONALD L. CHENG
                           Assistant United States Attorney
8                          Acting Chief, Criminal Division

9

10                         PAUL G. STERN
                           Assistant United States Attorney

11

12                         Attorneys for Plaintiff
                           United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              2

**TABLE OF CONTENTS**

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . 1

I    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.    Dr. Mills' Opinion Testimony Should
           Be Excluded . . . . . . . . . . . . . . . . . . . 7

           1.    Dr. Mills testimony pertains to
                 the ultimate issue of John Bussell's
                 good faith and is properly excludable
                 under Rule 704(b) . . . . . . . . . . . . . 7

           2.    Dr. Mills' testimony fails to satisfy
                 the *Daubert* threshold of reliability . . 11

           3.    Dr. Mills' testimony should be excluded
                 under Rule 403 . . . . . . . . . . . . . . 16

     B.    Dr. Meloy's Opinion Testimony Should
           Be Excluded . . . . . . . . . . . . . . . . . . 16

           1.    Dr. Meloy's testimony is not relevant
                 for the determination of any
                 fact in issue . . . . . . . . . . . . . . 16

           2.    Dr. Meloy's proffered testimony does
                 not meet the required *Daubert*
                 threshold of reliability . . . . . . . . . 19

           3.    Dr. Meloy's proffered testimony
                 is also inadmissible under
                 Rules 608(b) and 403 . . . . . . . . . . . 21

III  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 23

i

Exhibit B - Part 5
Page 208 of 233

**TABLE OF AUTHORITIES**

**CASES**                                                                PAGE(S)

Claar v. Burlington N.R.R.,
    29 F.3d 499 (9th Cir. 1994) . . . . . . . . . . . . . 14

Daubert v. Merill Dow Pharmaceuticals,
    509 U.S. 579 (1993) . . . . . . . . . . . . . . . 5, 6, 20

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) . . . . . . . . . . . . . . . . passim

United States v. Beasley,
    72 F.3d 1518(11th Cir. 1996) . . . . . . . . . . . . 21

United States v. Bussey,
    942 F.2d 1241 (8th Cir. 1991) . . . . . . . . . . . . 22

United States v. Claiborne,
    765 F.2d 784 (9th Cir. 1985) . . . . . . . . . . . . . 8

United States v. Conforte,
    624 F.2d 869 (9th Cir. 1980) . . . . . . . . . . . . . 8

United States v. Frisbee,
    623 F.Supp. 1217 (N.D. Cal. 1985) . . . . . . . . . . 10

United States v. Hoac,
    990 F.2d 1099 (9th Cir. 1993) . . . . . . . . . . . . 20

United States v. Morales,
    108 F.3d 1031 (9th Cir. 1997) . . . . . . . . . . passim

United States v. Rahm,
    993 F.2d 1405 (9th Cir. 1993) . . . . . . . . . . . 2, 9

United States v. Schneider,
    111 F.3d 197 (1st Cir. 1997) . . . . . . . . . 4, 16, 23


**STATUTES**

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . 4, 5

Fed. R. Evid. 704(b) . . . . . . . . . . . . . . . . 5, 15

ii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

In opposing the government's Motion to exclude the testimony of Dr. Mills, defendant John Bussell contends that Dr. Mills' proffered testimony as to John Bussell's likely acquiesence in, and deference to, the legal advice and of Messrs. Sherman and Beaudry is admissible on the following three grounds: First, Dr, Mills' testimony does not pertain to the "ultimate issue" of John Bussell's mental condition, but "only covers the characteristics of Dr. Bussell's depression during the relevant time period" (John Bussell's Opposition ("JB Opp.") at 2); second, Dr. Mill's testimony satisfies the required Daubert standard in that it is "scientifically reliable" (id.); and third, the probative value of this testimony is not substantially outweighed by the danger of undue jury confusion on the issue of defendant's specific intent. (Id.).

Similarly, in opposing the government's Motion to exclude the testimony of Dr. Meloy as to the "psychopathic traits and behaviors of Beaudry and Sherman" (Letantia Bussell's Opposition ("LB Opp.") at 8), defendant Letantia Bussell argues that Dr. Meloy's proffered testimony is admissible on the following three grounds: First, Dr. Meloy's testimony satisfies the Daubert threshold of relevance and reliability under Fed. R. Evid. 702 (LB Opp. at 6-10); second, Dr. Meloy's testimony does not violate the prohibition on attacking the credibility of witnesses by

1

means of extrinsic evidence, because the purpose of his testimony
is not to prove up specific instances of Beaudry's and Sherman's
deceitful conduct but to identify "their psychopathic
personalities that led them to deceive and manipulate the
Bussells" (LB Opp. at 11); and (3) the probative value of Dr.
Meloy's testimony will not be substantially outweighed by the
danger of unfair prejudice because this testimony "will provide a
scientific basis from which to understand the deceitful and
manipulative actions of Beaudry and Sherman." (LB Opp. at 12).

Defendants' arguments are uniformly without merit. With
respect to Dr. Mills, it is clear, first, that his proffered
opinion effectively draws an impermissible inference under Fed.
R. Evid. 704(b) as to the "ultimate issue" of John Bussell's good
faith reliance on advice of counsel, which directly pertains to
an essential element of the crimes charged. Dr. Mills' expert
opinion is not restricted to a predicate factual matter, e.g.,
poor bookkeeping skills or deficiencies in visual perception,
from which an inference as to defendant's mental state or intent
(or lack thereof) may be drawn, which the Ninth Circuit expressly
approved in United States v. Morales, 108 F.3d 1031, 1037 (9th
Cir. 1997); see also United States v. Rahm, 993 F.2d 1405, 1408-
12 (9th Cir. 1993). Rather, Dr. Mills' proffered testimony
renders a direct opinion that, owing to his depression, cognitive
impairment and highly specialized training, John Bussell was
likely to have acquiesced in good faith to the advice of his

2

1 attorneys, and thereby not to have acted with the fraudulent
2 intent comprising a necessary element of the crimes at issue.

3     Second, defendant John Bussell's claim that Dr. Mill's
4 proffered opinion satisfies the Daubert reliability requirement
5 under Fed. R. Evid. 702 is belied by careful review of the
6 articles and publications submitted in support of this claim.
7 Indeed, none of the submitted articles and publications establish
8 a specific connection between either depression, cognitive
9 impairment, or specialized training in anesthesiology and a
10 disposition passively to rely on the advice of outside experts
11 such as lawyers. For example, the article "Does Major Depression
12 Result in Lasting Personality Change," submitted as Exhibit 5 to
13 JB Opp., actually concludes that "episodes of major depression of
14 moderate duration and severity are not associated with a
15 persisting change in personality" (JB Opp. at 88). Moreover,
16 while this  article identifies certain general traits of
17 depression, such as interpersonal dependency and submissiveness,
18 which might conceivably be linked with passive reliance on
19 outside experts, it also identifies other depressive traits, such
20 as introversion and neuroticism, which appear inconsistent with
21 the premise that a depressed person is likely passively to accede
22 or defer to the alleged technical expertise of outside
23 professionals. (JB Opp. at 84). Nor does Dr. Mills' proffer
24 include any specific diagnosis of the particular type of
25 depression or cognitive impairment from which John Bussell
26 suffered during the relevant time period, which might serve to
27
28                        3

1 explain why his _specific_ emotional or cognitive difficulties
2 resulted in his alleged disposition to passively follow the
3 instructions of outside authority figures. _See_ Advisory
4 Committee Notes to Amendment to Rule 702 (in determining whether
5 to admit expert testimony, trial court "must scrutinize not only
6 the principles and methods used by the expert, but also whether
7 those principles and methods have been properly applied to the
8 facts of the case").

9      Finally, defendant John Bussell's insistence that Dr. Mills'
10 testimony should not be excluded under Rule 403 because his
11 testimony will have "tremendous probative value" (JB Opp. at 22)
12 simply ignores the likelihood that admission of this testimony
13 will invite the "confusing spectacle of competing expert
14 witnesses testifying to directly contradictory conclusions as to
15 the ultimate legal issue to be found by the trier of fact."
16 _Morales_, 108 F.3d at 1036 (quoting S. Rep. No. 225, 98th Cong.,
17 2d Sess. 230 (1984)). _See also_ _United States v. Schneider_, 111
18 F.3d 197, 203 (1st Cir. 1997) (excluding medical/psychiatric
19 evidence on Rule 403 grounds because it was of limited probative
20 value given the length of the fraudulent scheme and could easily
21 mislead the jury into thinking such a mental condition amounted
22 to temporary insanity or ameliorates the offense).

23      With respect to Dr. Meloy, it is evident, first, that
24 defendant Letantia Bussell has failed to establish that this
25 proffered testimony satisfies either the relevance or the
26 reliability threshold under _Daubert_. Assuming _arguendo_ that
27
28                   4

Sherman and Beaudry exhibited "psychopathic tendencies" "that led
them to deceive and manipulate the Bussells" (LB Opp. at 5),
which the government does not concede, it is wholly unclear how
this fact has any bearing on the question whether the Bussells
conspired with Sherman and Beaudry or fraudulently misled the
bankruptcy trustee and their creditors in failing to disclose
their assets and transfering their funds to foreign bank
accounts.  Dr. Meloy's proffered opinion nowhere precludes the
possibility that "psychopathic personalities" may enter into
conspiracies to commit crimes with other similarly-oriented
individuals, who may also conceivably exhibit "psychopathic
tendencies."

    With regard to the satisfaction of the Daubert reliability
requirement, defendant Letantia Bussell asserts that "the science
of psychopathy" is reliable under applicable legal standards and
"has been rigorously tested over the past 30 years." (LB Opp. at
5,8).  The issue of reliability, however, does not pertain
principally to the question whether the "science of psychopathy"
is generally reliable.  Rather, it pertains more importantly to
the question whether "the witness has applied the principles and
methods reliably to the facts of the case." Fed. R. Evid. 702;[1]

---

[1]The requirement that the court's reliability finding
encompass a determination whether the witness has reliably
applied the principles and methods to the facts of the instant
case was expressly adopted as an amendment to Rule 702 in
December 2000.  The amendment of Rule 702 codifies the
interpretation of the rule set forth in Daubert v. Merill Dow
Pharmaceuticals, 509 U.S. 579 (1993) and in Kumho Tire Co. v.
Carmichael, 526 U.S. 137 (1999).  See Advisory Committee Notes to
2000 Amendment to Rule 702.

5

1  see also Kumho, 526 U.S. at 156 (the district court has to
2  determine whether this particular expert had "sufficient
3  specialized knowledge to assist the jurors 'in deciding the
4  particular issues in the case'"). In the instant matter, it
5  clear that Dr. Meloy has not reliably applied his expertise to
6  the facts of this case, because he has based his determination
7  that Beaudry and Sherman are "psychopathic personalities" solely
8  upon his review of the First Superseding Indictment and on
9  discovery produced by the government, without interviewing the
10  subjects, attempting to review pertinent psychiatric or medical
11  records or performing any relevant evaluative testing.

12      Aside from its lack of relevance and reliability, Dr.
13  Meloy's proffered testimony is also inadmissible under Rules
14  608(b) and 403 because: (1) its introduction is designed to serve
15  an underlying improper purpose, namely, to discredit and to
16  attack the credibility of two government witnesses through the
17  use of extrinsic evidence in the form of expert testimony; and
18  (2) its probative value, which is negligible, is substantially

19  _____

20      The amended Rule 702, which was not quoted in its entirety
    in the government's initial Motion, provides as follows:
21
22      If scientific, technical, or other specialized
        knowledge will assist the trier of fact to understand
23      the evidence or to determine a fact in issue, a witness
        qualified as an expert by knowledge, skill, experience,
24      training or education, may testify thereto in the form
        of an opinion or otherwise, if (1) the testimony is
25      based upon sufficient facts or data, (2) the testimony
        is the product of reliable principles and methods, and
26      (3) the witness has applied the principles and methods
        reliably to the facts of the case.

27  Fed. R. Evid. 702.

28                              6

1   outweighed by the danger of unfair prejudice and confusion of the

2   issues.  Indeed, the absurdity of defendant Letantia Bussell's

3   position is demonstrated by the fact that, if valid, it would

4   permit the government to call its own expert in psychopathology

5   to testify in rebuttal following the cross-examination of the

6   Bussells, in order "to provide a scientific basis from which to

7   understand" (LB Opp. at 12) their deceitful and manipulative

8   actions in concealing their assets from the bankruptcy trustee

9   and thereby victimizing their creditors.  See Rule 404(a)

10   ("[e]vidence of a person's character or a trait of character is

11   not admissible for the purpose of proving action in conformity

12   therewith on a particular occasion").

13      For all the foregoing reasons, and for the reasons stated

14   below, the government's Motion to exclude the testimony of Drs.

15   Mills and Meloy should be granted.

16                **II**

17              <u>ARGUMENT</u>

18   A.  <u>Dr. Mills' Opinion Testimony Should Be Excluded</u>

19       1.  <u>Dr. Mills testimony pertains to the ultimate issue of</u>
             <u>John Bussell's good faith and is properly excludable</u>

20             <u>under Rule 704(b)</u>

21      In repudiating the government's contention that Dr. Mills'

22   proffered testimony effectively constitutes an improper opinion

23   that John Bussell did not have the requisite mental state,

24   defendant John Bussell argues that this testimony does not

25   pertain to the ultimate issue of <u>mens</u> <u>rea</u> because Dr. Mills will

26   not testify that Bussell did not intend to commit bankruptcy

27

28                7

1  fraud or tax fraud. (JB Opp. at 13). This argument ignores that
2  Dr. Mills' opinion testimony directly pertains to the issue of
3  John Bussell's good faith reliance on advice of counsel which, if
4  applicable, <u>necessarily</u> entails that John Bussell lacked
5  fraudulent intent in implementing the charged bankruptcy and tax
6  fraud schemes.

7      Good faith is a complete defense to the charges of
8  bankruptcy and tax fraud because it is inconsistent with a
9  defendant having an intent to defraud, and good faith reliance on
10  advice of counsel is simply a species of the good faith defense.
11  <u>United States v. Claiborne</u>, 765 F.2d 784, 798 (9th Cir. 1985);
12  <u>United States v. Conforte</u>, 624 F.2d 869, 876 (9th Cir. 1980).
13  Accordingly, Dr. Mills' proffered testimony that John Bussell was
14  likely to have passively acceded or deferred to the advice of his
15  attorneys does not constitute a permissible opinion as to a
16  "predicate matter," from which a conclusion as to the ultimate
17  factual matter of fraudulent intent is not compelled. <u>See</u>
18  <u>Morales</u>, 108 F.2d at 1037. Rather, if Dr. Mills' testimony is
19  credited, it follows that defendant John Bussell was merely
20  passively following in good faith the advice of his lawyers in
21  carrying out the bankruptcy and tax fraud schemes described in
22  the First Superseding Indictment and that he therefore did not
23  act with the requisite fraudulent intent. Because Dr. Mills'
24  testimony, if credited, effectively compels the conclusion that
25  John Bussell was acting in good faith reliance upon advice of
26
27
28                              8

1 counsel and without the requisite fraudulent intent, it is
2 precluded under Fed. R. Evid. 704(b).

3     The cases cited by defendant John Bussell are not to the
4 contrary.  In Morales, the Ninth Circuit reversed the exclusion
5 of expert testimony that defendant had a weak grasp of
6 bookkeeping principles, from which a conclusion could have been
7 drawn (but did not necessarily follow) that she did not willfully
8 make false entries in a union ledger as charged in the
9 indictment.  Morales, 108 F.2d at 1037.  Admission of this type
10 of expert testimony was found permissible under Rule 704(b)
11 precisely because this testimony concerned a "predicate matter,"
12 namely, bookkeeping skills, and did not, if credited, necessarily
13 compel the conclusion that defendant "did or did not possess the
14 requisite mens rea," i.e. willfully making false entries.  Id.
15 Similarly, in United States v. Rahm, 993 F.2d 1405, 1408-12, the
16 Ninth Circuit reversed the exclusion of a defense expert's
17 testimony that defendant had poor visual perception and
18 consistently overlooked significant visual details.  As the Ninth
19 Circuit stated in Morales, the rationale for the admission of
20 this expert testimony in Rahm was that this testimony did not
21 directly pertain to the disputed issue of defendant's mens rea,
22 namely, her knowledge that bills were counterfeit, but was
23 limited to a predicate matter, namely, defendant's poor vision,
24 from which the jury could, but was not compelled to, infer that
25 she did not know the bills were counterfeit.  Morales, 108 F.3d
26 at 1038.

27
28                                    9

1     Unlike the expert testimony in Morales and Rahm, Dr. Mills'

2   proffered opinion testimony does not pertain to a "predicate

3   matter" involving a defendant's possession of a neutral skill or

4   capacity, e.g., poor vision or weak accounting skills, which may

5   be relevant to, but does not compel, a conclusion regarding

6   defendant's mens rea. Rather, Dr. Mills' opinion testimony goes

7   to the heart of defendant John Bussell's defense on the element

8   of mens rea -- namely, that he passively deferred to and relied

9   in good faith on the advice of his attorneys, Messrs. Sherman and

10  Beaudry, and thereby lacked the fraudulent intent essential to

11  the crimes charged.[2]  Because Dr. Mills' testimony expresses an

12  opinion that, if credited, directly bears upon, and corroborates,

13  defendant's own account of his lack of mens rea, namely, that he

14  passively acceded in good faith to the directions and advice of

15  his attorneys in carrying out the bankruptcy and tax schemes set

16

17  ─────────────

        [2]Defendant John Bussell insists that Dr. Mills' testimony
18  "covers the characteristics of John Bussell's depression during
    the relevant time period," and not the ultimate issue of whether
19  he intended to commit bankruptcy or tax fraud.  (JB Opp. at 2).
    A careful review of Dr. Mills' report, however, demonstrates that
20  he has almost nothing to say about the specific characteristics
    of John Bussell's depression or cognitive impairment.  Rather,
21  Dr. Mill's report focuses exclusively upon one of the alleged
    consequences of his otherwise unspecified depression and
22  cognitive impairment, namely, a disposition passively to rely on
    the advice of outside experts such as attorneys, which goes
23  directly to the "ultimate issue" of defendant's good faith.  In
    so doing, Dr. Mills fails properly to limit his testimony to
24  "diagnoses, the facts upon which these diagnoses are based, and
    the characteristics of any mental diseases or defects the experts
25  believe the defendant possessed during the relevant time period,"
    and thereby runs afoul of the Rule 704(b) prohibition on
26  "directly or indirectly opining on the [ultimate] issue of
    specific intent."  United States v. Frisbee, 623 F.Supp. 1217,
27  1224 (N.D. Cal. 1985).

28                                  10

1  forth in the First Superseding Indictment, it is precluded under
2  Rule 704(b).

3       2.   Dr. Mills' testimony fails to satisfy the *Daubert*
            threshold of reliability

4       In disputing the government's contention that Dr. Mills'
5  proffered expert testimony does not meet the <u>Daubert</u> standard
6  requiring that it reflect "a reliable basis in the knowledge and
7  experience of his discipline," defendant John Bussell identifies
8  four publications which allegedly provide scientific support for
9  Dr. Mill's "conclusions"[3]: (1) an article published in the
10  American Journal of Psychiatry, "Does Major Depression Result in
11  Lasting Personality Change," attached as Exh. 5 to JB Opp.; (2) a
12  single page list of different criteria for different types of
13  depressive disorders, taken from Kaplan & Sadock's <u>Comprehensive</u>
14  <u>Textbook of Psychiatry</u>, attached as Exh. 6 to JB Opp.; and (3)
15  two articles on the anesthesiologist-surgeon relationship,
16  published in professional journals in 1973 and 1990 respectively,
17  attached as Exh. 9 to JB Opp.

18      None of these publications provide support for, much less
19  even directly address, the "universal psychiatric theories" (JB
20  Opp. at 19) on which Dr. Mill's conclusions rest: namely,

21

22

23

24      [3]Defendant John Bussell also argues that Dr. Mills'
    testimony should be admitted because his opinion addresses
25  matters beyond the common knowledge of the average lay person and
    because he is a witness having sufficient expertise.  (JB Opp. at
26  16-18.  Since neither of these requirements for the admission of
    expert testimony are in dispute, they will not be addressed
27  below.

28                                11

1 (1) that there is a link between depression and cognitive

2 impairment and an individual's disposition passively to accede or

3 defer to the advice of outside experts, such as attorneys; and

4 (2) that the nature of an anesthesiologist's specialized training

5 causes them to be "unusually deferent to outside professional

6 advice" (JB Opp. at 36). While the first two publications

7 (identified as (1) & (2) above) discuss a number of traits

8 associated with various types of depression -- including

9 submissiveness, neuroticism, introversion and interpersonal

10 dependency, they do not indicate how or whether any one of these

11 traits, or any combination thereof, can result in a disposition

12 to rely on the authority of outside experts.[4] Nor does Dr.

13 Mills' report, which is supposedly premised on these

14 publications, take cognizance of the fact that some of these

15 traits, such as neuroticism and introversion, appear inconsistent

16 with the assumption that depression results in passive reliance

17 on outside experts or authority figures. Moreover, the first

18 article, "Does Major Depression Result in Lasting Personality

19 Change," actually concludes that "episodes of major depression of

20 moderate duration and severity are not associated with a

21 persisting change in personality" (JB Opp. at 88), a view which

22 hardly appears to provide support for Dr. Mills' conclusions.

23

24 _____

25 [4]Indeed, Dr. Mills never offers any opinion as to the specific type of depression or cognitive impairment from which John Bussell is suffering during the relevant time period, nor

26 does he identify specific depressive traits (among the many traits listed in the publications) characteristic of John

27 Bussell's depressive disorder.

28                                    12

1    As to the submitted publications relating to the
2 anesthesiologist-surgeon relationship, these two articles
3 directly contradict Dr. Mills' assumption in his report that the
4 proper model of relationship between surgeon and anesthesiologist
5 is that of the "captain of the ship" to crew members who defer to
6 the captain's decisions. (JB Opp. at 36). Indeed, both of these
7 articles call into question the "one captain on a ship, and one
8 God in heaven" model of the surgeon-anesthesiologist
9 relationship; rather, they suggest that with the modern advent of
10 greater complexity and interdependence between the two
11 specialties, it is appropriate to adopt a more cooperative model
12 of the surgeon-anesthesiologist relationship, which takes account
13 of their respectively independent areas of expertise and
14 transcends a "simplistic approach" focusing exclusively on the
15 senior role of the surgeon. (JB Opp. At 99, 102, 111-16, 120-
16 26).[5] Further, defendant John Bussell identifies no evidence in
17 support of Dr. Mills' additional, highly counter-intuitive
18 assumption that the allegedly deferential attitude the
19 anesthesiologist supposedly adopts toward the surgeon generally
20 characterizes his attitudes and behaviors toward all other
21
22
23 _____
24        [5]Given that the two submitted publications on the
    anesthesiologist-surgeon relationship flatly contradict the
25 "captain on a ship" model invoked by Dr. Mills, it appears fair
    to conclude that he never actually read these articles,
26 notwithstanding his statement under penalty of perjury that the
    articles support his "theories/findings/impressions" regarding
    physicians' and anesthesiologists' reliance on experts. See
27 Declaration of Mark J. Mills ¶ 8.

28                              13

outside specialists, including those working in fields other than
medicine, such as attorneys or accountants.

Apart from the fact that "the universal psychiatric
theories" on which Dr. Mills relies do not find support in the
relevant professional literature he has submitted, Dr. Mills'
application of these universal theories to the facts of the
instant case also lacks the requisite indicia of reliability
under Daubert. See Kumho, 526 U.S. at 154 (in assessing the
reliability of an expert's testimony as to tire malfunction, "the
relevant issue was whether the expert could reliably determine
the cause of *this* tire's separation"). Dr. Mills' failure
reliably to apply his "universal theories" in this case is
evidenced, in particular, by his refusal to consider contrary
evidence suggesting an obvious alternative explanation for John
Bussell's adherence to the advice of Messrs. Sherman and Beaudry,
namely, the enormous financial rewards to be gained by
undertaking this extended fraudulent course of conduct. See
Advisory Committee Notes to 2000 Amendment to Rule 702 (one of
the relevant factors in assessing reliability is "[w]hether the
expert has accounted for obvious alternative explanations");
Claar v. Burlington N.R.R., 29 F.3d 499 (9th Cir. 1994)
(testimony excluded where expert failed to consider other obvious
causes for the plaintiff's condition).

In the instant case, Dr. Mills elected to ignore a large
class of contrary evidence suggesting an obvious alternative
explanation for John Bussell's alleged psychiatric and cognitive

14

Exhibit B - Part 5
Page 223 of 233

difficulties and his simultaneous adherence to the advice and directions of Messrs. Sherman and Beaudry. This evidence includes: (1) that a civil jury already rejected John Bussell's claim of total disability involving in excess of $1 million in benefits during the relevant time period (premised in part upon his depression), following a lengthy trial; (2) that there is significant evidence that John Bussell is a malinger, disposed to exaggerate his physical and mental problems for expedient purposes, including enabling him to collect excessive disability benefits; and (3) that there is substantial evidence that John Bussell did not passively follow the directions of Messrs. Sherman and Beaudry, but actively implemented a comprehensive scheme to conceal assets and commit tax fraud from which he reaped huge financial benefits.

Because Dr. Mills' opinion testimony is based upon scientifically unsupported "universal theories," which are not reliably applied to the facts of the instant case, it fails to satisfy the required reliability threshold under Daubert and should be excluded under Rule 702.[6]

_____

[6]Defendant John Bussell also argues that Dr. Mills' conclusions are based on his "specialized knowledge" obtained through having conducted numerous pyschiatric evaluations and are admissible on this ground alone. (JB Opp. at 20-21). As the Supreme Court made clear in Kumho, however, the Daubert standard of evidentiary reliability applies no less to specialized, than to scientific, knowledge. Kumho, 526 U.S. at 147-49. Kumho further made clear that, in the case of specialized knowledge, the required showing of evidentiary reliability cannot be satisfied simply by appealing to the qualifications of the specialist and the extensiveness of his experience in the field. Id. at 153. Thus, in Kumho the tire specialist's expert opinion as to the cause of the tire's separation was excluded because his

15

3. Dr. Mills' testimony should be excluded under Rule 403

Defendant John Bussell's further insists that Dr. Mills' testimony should not be excluded under Rule 403 because his testimony will have "tremendous probative value" (JB Opp. at 22). In fact, as argued above, this testimony has negligible probative value and its admission will make inevitable the jury's subjection to the "confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact." Morales, 108 F.3d at 1036. See also Schneider, 111 F.3d at 203 (excluding medical/psychiatric evidence on Rule 403 grounds because it could easily mislead the jury into thinking such a mental condition amounted to temporary insanity or ameliorates the offense).

B. Dr. Meloy's Opinion Testimony Should Be Excluded

    1. Dr. Meloy's testimony is not relevant for the determination of any fact in issue

In response to the government's relevance objection to the admission of Dr. Meloy's ill-defined opinion testimony as to the "psychopathological" traits and behaviors of Sherman and Beaudry, who have pled guilty and are cooperating with the government, defendant Letantia Bussell argues that "Dr. Meloy's testimony will be highly relevant to show the psychopathic tendencies of Beaudry and Sherman that led them to deceive and manipulate the

---

methodology was found to be unreliable, notwithstanding that he had a masters degree in mechanical engineering, 10 years' work at Michelin America, Inc. and testimony as a tire failure consultant in other tort cases. Id.

16

1 Bussells." (LB Opp. At 5). The problem with this response,

2 however, is that the underlying psychological "motives" or

3 "tendencies" of Beaudry and Sherman are simply not relevant

4 matters for the jury's determination in this case. Accordingly,

5 defendant Letantia Bussell has not made a sufficient showing

6 under Daubert that Dr. Meloy's testimony will in any way "assist

7 the trier of fact to understand the evidence or to determine a

8 fact in issue." Fed. R. Evid. 702; see also Daubert, 509 U.S. at

9 591 (court's gatekeeping function extends to relevancy

10 determination as to "whether expert testimony proffered in the

11 case is sufficiently tied to the facts of the case that it will

12 aid the jury in resolving a factual dispute").

13     The critical factual question in this case that pertains to

14 the relationship between the Bussells and their attorneys is the

15 following: Whether the Bussells relied in good faith upon the

16 advice of their attorneys when their attorneys proposed a plan

17 that enabled the Bussells to conceal practically all their assets

18 from the bankruptcy trustee and thereby to evade payment of in

19 excess of $1 million in taxes, or whether the Bussells followed

20 the directions of these attorneys with the intent to commit a

21 fraud. In this connection, the proffered testimony of Dr. Meloy

22 is not relevant because it does not make either more or less

23 probable the central fact in issue: namely, whether the Bussells

24 relied in good faith upon the advice of their counsel. See Fed.

25 R. Evid. 401. That clients engage attorneys with "psychopathic

26 tendencies" does not appear to make it either more or less likely

27

28                          17

1  that they will rely on these attorneys in good faith when these

2  attorneys propose a course of conduct constituting bankruptcy and

3  tax fraud.

4      Defendant Letantia Bussell insists that her attorneys

5  "psychopathology" is relevant because it will serve to show that

6  the Bussells were victims of "deceitful, manipulative,

7  psychopathic lawyers."[7] (LB Opp. at 9). However, it is not at

8  all evident that, even if true, this fact has any bearing on the

9  question whether the Bussells conspired with Sherman and Beaudry

10  to fraudulently misled the bankruptcy trustee and their creditors

11

_____

12     [7]The Bussells' claim that there were innocent, unwitting
victims of their "psychopathic" attorneys in this case stretches
13  the bounds of reasonable credulity. In fact, the Bussells were
the principal beneficiaries, not the victims, of the charged
14  bankruptcy and tax fraud schemes: They discharged virtually all
their outstanding liabilities, in excess of $4 million, through
15  their March 1995 bankruptcy filing, including over $1 million in
tax debts, while simultaneously retaining control over their
16  undisclosed assets, including a concealed profit account at the
Sanwa Bank, the total value of which exceeded $2 million.
17

     The Bussells only became "victims" of their "psychopathic"
18  attorneys because their fraudulent scheme was uncovered and
formed the subject-matter of the pending criminal indictment.
19  Indeed, even after they were indicted, the Bussells did not
assert that they were victims of unscrupulous attorneys; rather,
20  they vigorously asserted claims of attorney-claim privilege,
sought to bar all access to attorney witnesses and repeatedly
21  asserted without any factual basis that they were victims of
governmental misconduct and of a conspiracy between the the
22  Provident Insurance Company and the United States Attorney's
Office. It was only a full nine months after their initial
23  indictment, that is, after (1) the government's Motion For a
Finding of Crime-Fraud was granted, (2) the Bussells' claims of
24  attorney-client privilege were definitively rejected, (3) counsel
for Letantia Bussell was instructed by the district court to
25  refrain from threatening Beaudry with a civil suit if he talked
to the government, and (4) Sherman and Beaudry entered pleas of
26  guilty to aiding and abetting the Bussells, that the Bussells
first started to raise their instant claims of victimization by
27  "psychopathic lawyers."

28                 18

Exhibit B - Part 5
Page 227 of 233

1  by failing to disclose their assets and transfering their funds
2  to foreign bank accounts.  Dr. Meloy's proffered opinion is
3  entirely consistent with the possibility that "psychopathic
4  personalities" may enter into conspiracies to commit crimes with
5  other similarly-oriented individuals, who may also conceivably
6  exhibit "psychopathic personalities."

7      2.   Dr. Meloy's proffered testimony does not meet the
           required *Daubert* threshold of reliability
8
9      In rejecting the government's contention that Dr. Meloy's
10 proffered testimony does not have sufficient indicia of
11 reliability to qualify for admission under Daubert, defendant
12 Letantia Bussell asserts that this objection is without merit
13 because "Dr. Meloy's opinion will be grounded in the science of
14 psychopathy that has been rigorously tested over the past 30
15 years." (LB Opp. At 8).  In support of her claim that
16 psychopathy is a rigorous science, defendant Letantia Bussell
17 submitted a chapter on "Psychopathy" from a practice guide
18 prepared by Dr. Meloy entitled Violence, Risk and Threat
19 Assessment.  (Exh. 2 to LB Opp.).  The contents of this chapter
20 themselves raise serious questions whether "psychopathy" is a
21 genuine science, as is evident from the quality of the opening
22 remarks by Dr. Meloy:

23     If you think that a psychopath is just a figment of
       movie makers' imaginations, just follow your local
24     newspaper for a period of time.  You can always count
       of psychopaths making the news, usually self-
25     destructing after a period of callous manipulation and
       exploitation of other people for a number of years.  I
26     can think of lots of examples.  President Bill Clinton
       evidenced some psychopathic traits in his lying to the
27     American public about his affair with Monica Lewinsky,

28                              19

and then his subsequent use of his friends to protect
him . . . I don't think Clinton is a full blown,
primary psychopath; but like some other politicians he
is psychopathic and narcissistic enough . . . to
succeed in that profession.

(Exh. 2 to LB Opp. at p. 99).

Irrespective of the scientific status of "psychopathy,"
defendant Letantia Bussell's argument also fails because the
question of reliability under Daubert does not pertain
principally to whether the "science of psychopathy" is generally
reliable. Rather, it pertains more specifically to the question
whether "the witness has applied the principles and methods
reliably to the facts of the case." Fed. R. Evid. 702; see also
Kumho, 526 U.S. at 156 (the district court has to determine
whether this particular expert had "sufficient specialized
knowledge to assist the jurors 'in deciding the particular issues
in the case'"). In the instant matter, it is evident that Dr.
Meloy has not reliably applied his expertise to the facts of this
case, because he has based his determination that Beaudry and
Sherman are "psychopathic personalities" solely upon his review
of the First Superseding Indictment and on discovery produced by
the government, without seeking to interview the subjects,
attempting to review pertinent psychiatric or medical records,
investigating medical or psychiatric histories of subjects or
performing any relevant evaluative testing. See United States v.
Hoac, 990 F.2d 1099, 1103 (9th Cir. 1993) (affirming exclusion of
testimony of forensic psychologist based on determination that

20

1 his knowledge was limited owing to lack of formal testing and
2 brevity of meetings with subject).

3     3.   <u>Dr. Meloy's proffered testimony is also inadmissible</u>
        <u>under Rules 608(b) and 403</u>
4

5     Defendant Letantia Bussell emphasizes in her Opposition to
6 the government's Motion that in rendering his expert opinion Dr.
7 Meloy will rely, among other things, on his observation of the
8 testimony of Sherman and Beaudry on the witness stand "in order
9 to gauge their responses to questions dealing with traits of the
10 psychopathic personality." (LB Opp. at 8). This makes clear
11 that, notwithstanding defendant Letantia Bussell's
12 representations to the contrary, the underlying purpose of
13 calling Dr. Meloy as a witness is to discredit and undermine the
14 credibility of two government witnesses by eliciting testimony
15 from Dr. Meloy as to their psychological "tendencies" for
16 untruthfulness after Sherman and/or Beaudry have testified in the
17 government's case.

18     Counsel for defendant Letantia Bussell will have ample
19 opportunity to cross-examine all of the governments' witnesses,
20 and considerable impeachment material has already been provided
21 as to the prior bad acts of both Sherman and Beaudry, which may
22 be used for that purpose. Use of expert testimony to bolster a
23 defendant's impeachment of government witnesses, however, is
24 clearly improper both because it runs afoul of the Rule 608(b)
25 prohibition of proving up prior acts of dishonesty by means of
26 extrinsic evidence and because it invades the jury's province of
27 making credibility determinations. <u>See</u> <u>United States v. Beasley</u>,

28                                       21

72 F.3d 1518, 1528 (11th Cir. 1996) (proper to exclude expert
psychiatric testimony that government witness was a "psychopath"
who had no conception of the truth because expert testimony
concerning the truthfulness or credibility of a witness is
generally inadmissible); United States v. Bussey, 942 F.2d 1241,
1253 (8th Cir. 1991) (use of expert testimony to attack
credibility of a witness following cross-examination is barred
under Rule 608(b)).

In further denying that Dr. Meloy's testimony is
inadmissible on Rule 403 grounds, defendant Letantia Bussell
insists that "the probative value of Dr. Meloy's testimony is
very high since it will provide a scientific basis from which to
understand the deceitful and manipulative actions of Beaudry and
Sherman." (LB Opp. at 12). As argued above, however, Dr.
Meloy's testimony has little, if any, probative value. The
deceitful and manipulative actions of Beaudry and Sherman
relevant to the facts in issue may be readily proved by direct
evidence, i.e. testimony of percipient witnesses (including the
Bussells), and allegedly scientific evidence as to the underlying
psychological motives, character and tendencies of Sherman and
Beaudry is irrelevant and will only serve to confuse and mislead
the jury.

The absurdity of defendant Letantia Bussell's position is
indicated by the fact that, if valid, it would permit the
government to call its own expert in psychopathology to testify
in rebuttal following the cross-examination of the Bussells, in

22

1   order "to provide a scientific basis from which to understand"
2   (LB Opp. at 12) their deceitful and manipulative actions in
3   concealing their assets from the bankruptcy trustee and thereby
4   victimizing their creditors. See Schneider, 111 F.3d at 203
5   (excluding medical/psychiatric evidence on Rule 403 grounds
6   because it was of limited probative value could easily mislead
7   the jury into thinking such a mental condition amounted to
8   temporary insanity or ameliorates the offense).

9                               III

10                          CONCLUSION

11       For all the foregoing reasons, the government respectfully
12   submits that the court should exclude the proffered testimony of
13   Drs. Mills and Meloy at trial in the above-entitled matter.
14       DATED: April 23, 2001.


16                      Respectfully submitted,

17                      JOHN S. GORDON
                        United States Attorney
18
                        RONALD L. CHENG
19                      Assistant United States Attorney
                        Chief, Criminal Division
20

21                      _____ For
                        PAUL G. STERN
22                      Assistant United States Attorney

23                          Attorneys for Plaintiff
                            United States of America
24



                                23

# CERTIFICATE OF SERVICE

I, Rebecca Sato, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 411 West Fourth Street, Suite 8000, Santa Ana, CA 92701; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S REPLY TO DEFENDANTS' OPPOSITIONS TO ITS MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DRS. MARK MILLS AND J. REID NELOY REGARDING MENTAL CONDITION** service was:

[  ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

**[XX]** Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

**[XX]** By facsimile as follows:

[ ] By messenger as follows:     [ ] By federal express as follows:

Counsel for John Bussell:
Peter Morris, Esq.
Bryan C. Altman, Esq.
Altman & Morris
1880 Century Park East
Suite 613
Los Angeles, CA 90067
FAX: 310 277-8483

Counsel for Letantia Bussell:
Nathan J. Hochman, Esq.
9150 Wilshire Blvd.
Suite 300
Beverly Hills, CA 90212
FAX: 310 859-1430

This Certificate is executed on **April 23, 2001,** at Santa Ana, California.

I certify under penalty of perjury that the foregoing is true and correct.