KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-00008-RRB-JDR |
| | ) | |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **SUPPLEMENTAL BRIEFING** |
| vs. | ) | **ON COURT'S GATEKEEPING** |
| | ) | **FUNCTION PRESCRIBED BY** |
| JAMES MICHAEL WELLS, | ) | ***DAUBERT V. MERRELL DOW*** |
| | ) | ***PHARMACEUTICALS, INC.*** |
| Defendant. | ) | |

Pursuant to the Court's request, the government hereby files its supplemental briefing addressing legal principles relevant to the defendant's motions to exclude expert witnesses.

## I.    BACKGROUND SUMMARY

Defendant has filed numerous pleadings attacking the government's proposed expert witnesses–allegedly under the legal principles set forth under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) (hereinafter *Daubert*) and its progeny.  Despite the defendant's continuous filings and ever changing theories of why the Court should exclude the government's witnesses, his arguments are most marked by his failure to cite precedent, misstatements of facts, statements of irrelevant facts, and total failure to raise any specific identifiable challenges to the qualifications and methodology of any of the six witnesses–the relevant inquiry for the Court.  *See generally* Advisory Committee Notes to Fed.R.Evid. 702 (2000 Amendments) (hereinafter Ad.Notes).  As shown by the C.V.'s and reports attached to the government's original response filed at docket 220, each of the

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 2 of 32

government's witnesses has years, if not decades, of experience in the fields of expertise on which they are slated to testify. Similarly, the methodology employed by each is common, well established, and presents no unique application. Under the well-established principles of *Daubert* and Fed.R.Evid. 702, the government has clearly provided more than sufficient information to meet the gatekeeping threshold delineated by the courts for the introduction of expert testimony.

## II.    SUMMARY OF RELEVANT LEGAL PRINCIPLES

Well-established principles define the court's role in meeting its obligations under *Daubert* and Rule 702. First, neither the case law nor the rule is intended "to provide an excuse for an automatic challenge to the testimony of every expert." Ad.Notes.; *United States v. Alatorre*, 222 F.3d 1098, 1101-2 (9th Cir. 2000); *Children's Broadcasting Corp., v. Walt Disney Company*, 357 F.3d 860, 1015 (8th Cir. 2004). Second, while the court is required to conduct its gatekeeping function, the threshold to meet the criteria for admission is not a high bar. *See Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.,* 709 F.3d 872, 883 (9th Cir. 2013)

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 3 of 32

(on appeal from District of Alaska) ("Basically the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.". . . "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof."); Ad.Notes ("A review of case law after *Daubert* shows that rejection of expert testimony is the exception rather than the rule"); *Hangarter v. Provident Life and Acc.Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) ("Rule 702 contemplates a broad conception of expert qualifications"); *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (Rule 702 is construed liberally to admit non-scientific expert testimony based on "other specialized knowledge"); *North v. Ford Motor Company*, 505 F.Supp.2d 1113, 1118 (D.Utah 2007) (Expert stated a sufficient basis for his opinion such that it was not mere speculation or guesswork).

Defendant's contrary statement, that expert evidence is "stringently limited" in federal court, is thus, in direct contravention of controlling law. Once the Court has assured itself that the expert's

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 4 of 32

testimony "rests on a reliable foundation and is relevant to the task at hand," its gatekeeping function is satisfied. *Daubert,* 509 U.S. at 597 (1993). "The focus is on principles and methodology, not conclusions." *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001) (expert animal studies admissible despite difficulties extrapolating results to humans); *Avis Rent-A-Car*, 709 F.3d at 883 (Defendant's attack on comparisons and markets relied on by plaintiff's expert to assess value, while colorable, were province of the jury and did not go to methodology).

Third, experience and application of experience, whether buttressed by education and training or not, is not only proper, but a common and well accepted methodology to support admissible expert testimony. *See Hangarter*, 373 F.3d at 1015; Ad. Notes ("in certain fields, experience is the predominant, if not sole basis for a great deal of reliable expert testimony"); *Precision Seed Cleaners v. County Mut. Inc. Co.*, 2013 WL 943571, *15 (D.Ore.2013) (expert with 27 years in seed equipment business competent to opine on equipment values).

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 5 of 32

Defendant's ever changing arguments–either those raised in his original motions or those newly raised in oral argument–do nothing to undermine the demonstrated qualifications, reliability, and relevance of the government's experts. Indeed, defendant's arguments generally fall into two categories:alleged facts irrelevant to the Court's inquiry or legal arguments that are directly contrary to controlling law.

## III. LAW AND FACTS APPLICABLE TO DEFENADANT'S ARGUMENTS[1]

In his earlier filings, the defendant did not appear to challenge any of the relevant factors under *Daubert*, but instead made repeated claims that he had not received sufficient evidence to test the government's experts. The government fully disputes these claims; the reports alone demonstrate that the government has complied with Fed.R.Crim.P. 16(a)(1)(G) and, has indeed, gone well beyond the rule to provide more information to document and explain the bases,

---

[1] The government respectfully apologizes for any failure to provide the Court with the authorities cited herein in its earlier pleadings. However, in its defense, the defendant's failure to cite to any law in support of his theories made it very difficult to discern what attacks to address, and what issues needed to be briefed, in order to provide the Court with relevant law.

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 6 of 32

methodology, and even the background on the methodology, instruments, and tools used by the government experts. *See, e.g., United States v. McCluskey*, ___F.Supp.2d___, 2013 WL 3766686 (D.N.M.) (Noting that government is only required to provide information contained in Fed.R.Crim.P. 16(a)(1)(G) and noting that detailed extensive discussion is not required in Rule 16 summary).

Most importantly, the defendant's complaints are not before the Court through any motion. [2]  Additionally, these *ad hoc* arguments simply have no bearing on whether the proposed experts are qualified to give opinions in their respective fields, and whether their opinions meet the low bar of reliability to be admissible.  These arguments fail because the government's experts have applied a reasonable methodology to reach conclusions that are not "nonsensical." *Avis-Rent-A-Car,* 709 F.3d at 883

---

[2]  At the hearing, defendant complained about having recently received even more information.  The government would only note that the newly received information resulted from the government's compliance with the district court's order to provide Jencks Act information well before the statutory obligation and seven weeks before trial.

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 7 of 32

At oral argument, the defendant conceded most of the matters necessary to the Court's decision; he: 1) admitted that the experts were well-qualified; 2) acknowledged the relevance of their testimony by arguing that their opinions would tend to make the jury believe the defendant committed the murders; and 3) did not dispute the methodology used by the experts, but merely took issue with their conclusions.[3]  Instead, his major legal arguments were that the experts were giving opinions on the "ultimate issue", the government was "filling in gaps" with expert testimony, that the Court should investigate whether the facts recited in the reports were sufficiently accurate and admissible to form the basis of the opinions rendered, and pulling a nail out of a tire amounts to "spoliation" of evidence so as to preclude testimony.  As argued in previous government filings (*see, e.g.*, dockets. 230, 238, 243, and 254, and as supplemented herein), the

---

[3]  Indeed, the defendant's only contrary evidence came in his last pleading when he submitted the affidavit of Bruce Currie criticizing the conditions under which Mr. Bolden ran a dynamometer test.  However, this affidavit is similarly irrelevant to the Court's task as it does not challenge the well-established methodology, but simply states a fact for cross examination.  *See Avis-Rent-A-Car,* 709 F.3d at 883 (challenge to factors relied on by expert goes to issue for the jury not admissibility).

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 8 of 32

defendant's previous and his most recent arguments involve similar legal misdirection.  None are supported by applicable law.

While the government will address law and the arguments applicable to each expert below, a few principles negate many, if not all, of the defendant's arguments.

1.  Testimony on the "ultimate issue"

Under Federal Rule of Evidence 704, an expert may testify as to an ultimate issue, except the mental state of the defendant. *United States v. Moran*, 493 F.3d 1002, 1008 (9th  Cir. 2007) (testimony that transaction was a "sham"); *United States v. Hatcher*, 487 Fed.Appx. 416, 417 (9th Cir. 2012) (expert opinion that firearm travelled in interstate commerce); *United States v. Freeman*, 498 F.3d 893, 906-07 (9th Cir. 2007) (opinion that defendant's words and actions were consistent with drug trafficking).  *See also Hangarter*, 373 F.3d at 1016; *Muktar v. Cal. State Univ. Hayward*, 299 F.3d 1053, 1066 n. 10 (9thCir. 2002).  The ultimate issue in this case is whether Mr. Wells shot Mr. Belisle and Mr. Hopkins.  Since none of the experts offered by the

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 9 of 32

government purport to testify to that fact, or even opine on Wells' guilt or mental state, the defendant's argument is a red herring in addition to a misstatement of law.

2. Filing in gaps

At the hearing, the defendant stated repeatedly that the government was using experts to "fill in gaps" in the evidence. The government is frankly not sure whether that claim purported to be an attack on relevance, or support for his previous claims that the witnesses were improperly testifying on the ultimate issues. Neither argument, however, has any application to the Court's task.

Of course the expert testimony is designed to fill in gaps. In fact, in some sense, every piece of evidence introduced at trial, to the extent it builds a case, is designed to fill in gaps. That is more a definition of relevance than a challenge to admissibility. *See United States v. Corona*, 34 F.3d 876, 881-82 (9th Cir. 1994) (expert testimony combined with other evidence sufficient to prove defendant maintained drug customer lists); *United States v. Mulder*, 273 F.3d 91, 101-02 (2d Cir.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 10 of 32

2001) (affirming admission of government expert over defense objections that "government impermissibly used expert testimony rather than victim testimony to fill in the gaps in their factual case"); *Celebrity Cruises, Inc. v. Essef Corp.*, 478 F.Supp.2d 440, 447 (S.D.N.Y. 2007) ("expert evidence may fill what would otherwise be gaps in [ ] direct proof"). *See also United States v. Venegas-Reynoso*, 524 Fed.Appx. 373, 375-76 (9th Cir. 2013) (government expert testimony relevant because it went "right to the heart" of defense).

3. Reliance on Investigative Facts

Defendant also requested the Court to question the foundation and basis for the investigative facts recited in expert reports. However, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination." *Hangarter*, 373 F.3d at 1017 n.14, citing *Children's Broadcasting*, 357 F.3d 860, 865 (8th Cir. 2004); *United States v. Boyajian*, 2013 WL 4189649 (C.D. Cal.) *15. The trial court is "a gatekeeper, not a fact

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 11 of 32

finder." *United States v. Sandoval–Menxoza*, 472 F.3d 645, 654 (9th Cir. 2006) (reasonable medical opinion should have been admitted even though it did not conclusively prove lack of predisposition). Likewise, the admissibility or the strength of the evidence relied upon by the expert is not a determining factor in a pretrial *Daubert* analysis. *United States v. Gonzales*, 307 F.3d 906, 910 (9th Cir. 2002) (expert could properly rely on inadmissible hearsay to form opinion); *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (in *Daubert* challenge "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony").

As discussed below, with regard to each expert, the defense has attempted to turn the above analysis on its head, disputing the conclusions drawn by the experts and arguing matters which go to weight of the testimony, rather than its admissibility. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010 (primary method for attacking expert is "cross examination, contrary evidence, and attention to the burden of proof" not exclusion); Ad.Notes.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 12 of 32

a. Crime Scene Experts, Robert Morton and William Gifford

Crime scene interpretation is "as old as Sherlock Holmes, and [] properly admitted to help the jury understand certain characteristics of the crime scene." *Duvardo v. Giurbino*, 649 F.Supp. 2d 980, 995-96 (N.D. Cal. 2009) *quoting with approval, People v. Duvardo*, 2004 WL 2458585, *16 (Cal. App. 1st Dist. 2004) (analysis reconstructing how a double homicide was committed). It is well settled in the Ninth Circuit that experts "with sufficient qualifications may testify concerning the methods and techniques employed in an area of criminal activity." *United States v. Espinosa*, 827 F.2d 604, 612 (9th Cir. 1987) (modus operandi of drug traffickers); *see also Freeman,* 498 F.3d at 901 (police officer qualified to testify on encoded drug jargon); *United States v. Gonzalez*, 2010 WL 5392644 (D. Ariz ) and cases cited therein (officer qualified to give evidence as drug recognition expert); *United States v. Kearns*, 61 F.3d 1422, 1427 (9th Cir. 1995) (characteristics of criminal activity). Crime scene experts add "to the jury's common knowledge [their] expertise of crime scene reconstruction" and "assist the jury in

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 13 of 32

interpreting the physical characteristics of the crime scene." *Duvardo*, 649 F.Supp. 2d at 996.

At the hearing, the defense contended that the opinions of Morton and Gifford are inadmissible because they go to an "ultimate issue" which the defense defined as tending to prove that Wells committed the offense. He further complained about the facts relied upon by the experts and set forth in their reports. As noted above, neither argument is one recognized by the courts.

Here, Morton and Gifford are expected to testify concerning their analyses of the crime scene, the order of events during the course of the murders, and that the murders appear to have been committed by someone familiar with the workplace who was targeting the victims. Such testimony is clearly relevant in that it "helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984) (expert testimony on fraudulent schemes – *citing cases*); *United States*

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 14 of 32

*v. Venegas-Reynoso*, 524 Fed.Appx. 373, 375-76 (9th Cir. 2013)

(government expert testimony relevant because it went "right to the

heart" of defense).

Defendant did not and could not challenge either witness's

qualifications.  Their methodology is one commonly and almost

exclusively relied on in the field.  Any concerns about their conclusions

are a matter for the jury and cross examination, and not properly a part

of the *Daubert* gatekeeping function.  *See* Ad.Notes.

b.  Honda Engineer, Neil Schmidt

Defendant's challenge to Mr. Schmidt involved an attack on the

credibility of his ability to identify the characteristics of a car with

which he has decades of familiarity.  As the cases noted above and the

2000 Advisory Notes to Fed.R.Evid. 702 make clear, however,

experience and familiarity with a subject or item are fully proper bases

for expert testimony.  Moreover, defendant's factual claim, at argument,

not only misstated the evidence previously provided to him, but also

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 15 of 32

repeated the misstatement this court previously caught and corrected at the December 16, 2013 hearing on the motion to suppress.

At the argument on January 14, 2014, the defendant reiterated his previous misstatement that a witness had stated they could not identify the small, blue SUV, and then added that two other witnesses had said the same thing. What the witnesses actually said in the statements provided to the defense was they could not enhance the video. In fact, all three witnesses provided either suggestions as to further actions that could help identify the vehicle, or insight into things they could make out from the video. Mr. Chris Iber said that while he could not determine the make and model of the car in the video, perhaps a car expert could. Docket 163-2. Mr. Gerald Richards, in a statement previously provided to the court at docket 256-1 indicated that he could determine certain characteristics from the video including, general color, dark colored wheels, and the taillights high on the rear of the vehicle. Finally, another FBI analyst, Richard Vorder Bruegge, was able to determine basic size parameters by using

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 16 of 32

measurements taken from the video. Defendant's reliance on the statements of other witnesses, even if not entirely overstated, would of course be a matter for cross examination. Use of these other witnesses do not attack the methodology–observation based on lengthy experience–of the expert at all. Thus, it is really of no moment here.

The defendant also challenged the certainty of the witness. Both common sense and the cases make clear that absolute certainty is not required for an expert to give an opinion on whether he or she can discern a fact that would make a piece of evidence more likely to have a tie to the defendant. For example, in *United States v. Ford*, 481 F.3d 215 (3rd Cir. 2007), the court rejected defendant's challenge to the government's expert on shoe print identification. The court found no error in admitting testimony that the characteristics of the defendant's shoes put them in the class of shoes that could have made the impression on the counter at the crime scene. The court found that the expert's experience would aid the jury in comparing the soles of shoes found on the defendant with those at the crime scene. The court also

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 17 of 32

rejected defendant's challenge to the relevancy of the testimony based on the imprecision of the expert's opinion showing only a possibility that the shoes could match. The court went on to cite with approval an article pointing out that it is, in fact, desirable for experts to express the degree of confidence they have in their opinions accurately. *Id.* at n. 7. In any event, there can be little question that Mr. Schmidt's almost thirty years of experience with Hondas makes him fully qualified to give an opinion on the likely make and model of the car in the video and why. [4] In fact, Mr. Schmidt's expertise extends far beyond Hondas. A review of the "projects" section of Mr. Schmidt's C.V. shows he has extensive experience in auto racing, separate from his work at Honda.

c. Forensic Psychologist, Dr. J. Reid Meloy

Defendant's argument against the admission of Dr. Meloy's testimony was a combination of claims that Dr. Meloy was providing

---

[4] Defendant's other unsupported argument was that because Mr. Schmidt worked for Honda he was too biased (apparently by his experience) to be permitted to testify. This argument seems almost nonsensical. Under defendant's theory, experience with the matter at issue would appear to exclude, as opposed to include, an expert. Moreover, any issues of credibility or bias are properly for the jury and fall nowhere in the court's gatekeeping function. *See* Ad.Note.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR         Page 18 of 32

testimony on the ultimate issue and that his testimony would be used to "fill gaps" in other evidence. For the reasons listed above neither argument has any basis in law.

Dr. Meloy's testimony will provide qualified and educated information concerning an area of human behavior that he has long studied that is not within the common understanding of jurors. *See, e.g., United States v. Lukashov, Jr.* 694 F.3d 1107, 1116-7 (9th Cir. 2012) (Expert testimony concerning assessment of child sex abuse victim's story admissible as helpful to the jury to understand the evidence); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (Admitting expert testimony concerning the methods by which sexual abusers of children commonly operate); *United States v. Hayward*, 359 F.3d 631, 635-6 (3rd Cir.. 2004 ( testimony about characteristics of acquaintance child molesters admitted); *United States v. Hadley*, 918 F.2d 848, 853 (9th Cir. 1990) (Admitting expert testimony on general behavioral characteristics of abused children based on experience prior to *Daubert*). As with the cases cited, the government will not ask Dr. Meloy to give

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 19 of 32

an opinion concerning Mr. Wells. He will only testify concerning characteristics of those who commit targeted, violent acts in workplace settings. Again, contrary to defendant's previous legal claims, it is both common and useful for experts to testify about general principles and characteristics without "ever attempting to apply them to the facts of the case". Ad.Notes.

d. Tire Expert, Mr. Gary Bolden

Another red herring put forth by the defense is the argument that evidence spoliation has occurred merely because Gary Bolden, the government tire expert, during a routine test, removed the nail that defendant claims punctured his tire. As discussed below, the removal of the nail from the tire in no way constitutes spoliation or destruction of evidence.

It is not entirely clear from the defense submission what its concern might be with respect to its "spoliation" theory. However, some hints might be gleaned from the affidavit of the defense expert, Mr. Currie. In order to test the tire, after careful examination of the

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 20 of 32

condition of the tire and the nail, including photographs, measurements, and x-rays, Mr. Bolden mounted the tire on a test wheel, and ran it for the equivalent of 1488 miles to test the rate at which it lost air under use. He then removed the nail in order to examine the nail itself, the angle of its penetration of the tire, the shape of the hole, and the condition of the rubber around the nail. A summary of the results of his findings are in the notice of expert testimony provided to the defense in discovery.

Upon defense request, the tire and the nail were provided to it for its independent examination and any further testing it might wish to conduct. The defense has submitted a statement from Mr. Currie, stating that he had been retained to "analyze the tire as to its condition and its ability to retain air." The affidavit stated that running the tire on the test wheel "definitely altered the condition of the tire and made it impossible to further evaluate the condition of the tire at the time of the incident," and "would have had a significant effect on the condition of the nail relative to the nail hole in the tire." As a result, Mr. Currie

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 21 of 32

stated that he could not "evaluate the air loss condition of the evidence."

Thus, it appears that Wells is contending that because the condition of

the original evidence had been altered from its condition when it was

seized from his truck, he is unable to offer independent evidence of the

air loss condition of the tire, and therefore the government's expert

witness testimony should be excluded, an argument Wells describes as

"spoliation."

Spoliation is a term most often used in connection with civil

disputes, in which intentional failure to retain relevant evidence may

serve to justify an adverse inference instruction.  *See Millenkamp v.*

*Davisco Foods Intern., Inc.*  562 F.3d 971 (9th  Cir. 2009) (approving

district court's refusal to give spoliation instruction when defendants

did not preserve tissue samples taken from dead livestock before

litigation initiated).  Notably, in that case, the defense expert testified

regarding his conclusions based on testing conducted in the necropsies

and tissue samples; there was no suggestion that for some reason his

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 22 of 32

testimony should have been excluded because the plaintiffs could not conduct their own necropsies of the dead calves.

In the criminal context, although the term spoliation is occasionally used, the analysis is a due process one. It is framed in terms of the government's failure to preserve potentially exculpatory evidence. *See United States v. Sivilla*, 714 F.3d 1168, 1172-1174 (9th Cir. 2013) (concluding that remedial instruction appropriate when government sold drug trafficking vehicle before examination by defense). The "failure to collect and preserve evidence that is potentially exculpatory may violate a defendant's due process rights if that failure was motivated by bad faith." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1086 (9th Cir. 2004). "In order to prevail on this claim, [the defendant] must first demonstrate that [the evidence was] material. Evidence is material to a defendant's case if it 'possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 23 of 32

means.'" *Id.*, *quoting California v. Trombetta*, 467 U.S. 479, 488-89 (1984). The mere fact that the evidence *may* have proven exculpatory is not sufficient; it must possess an exculpatory value that was "apparent" before the evidence was "destroyed." *Id.* For example, in *Arizona v. Youngblood*, 488 U.S. 51 (1988), the state did not preserve semen samples that may have eliminated the defendant as the perpetrator, but the Supreme Court held that the mere possibility that evidence *might* have proved exculpatory is insufficient to establish a claim based on destruction of evidence. In order to prevail on such a claim, the defendant must demonstrate that the destruction of evidence was motivated by bad faith, i.e., to prevent the defense from obtaining potentially exculpatory evidence. *See United States v. Del Toro,* 673 F. 3d 1136, 1149 (9th Cir. 2012).

A great deal of forensic testing either destroys or alters evidence to some degree, and it has never been suggested that good faith scientific testing to determine the evidentiary value of an item might in and of itself give rise to a claim that the defendant's due process rights

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 24 of 32

have been violated. It would be absurd to argue that conducting an autopsy ought to bar prosecution of a murderer simply because the defendant cannot thereafter independently determine the angle of the knife wound. Nor has Wells identified any case– and research has disclosed no such case– suggesting that in such a situation the forensic analyst ought not to be permitted to testify as to his observations and conclusions concerning the knife wound. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994) (disassembly in order to test product permissible). However, even under a spoliation analysis, Bolden's testimony is admissible.

The government has the duty to preserve evidence that is both material and of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). In order to show materiality, the defense must prove that the evidence "possesses an exculpatory value that was apparent before the evidence was destroyed." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004). "[T]he

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 25 of 32

fact that the evidence may have proven exculpatory . . . does not render it per se material." *Id.* "The exculpatory value of an item of evidence is not 'apparent' when the evidence merely 'could have' exculpated the defendant." *United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008). Indeed, "the possibility that evidence could have exculpated a defendant if preserved and tested is insufficient to satisfy the standard of constitutional materiality in *Trombetta*." *Portee v. Alvarado*, 2011 WL 4079055, *2 (N.D. Cal. 2011).

Here, the defense makes no showing of any obvious exculpatory evidence which was destroyed during Bolden's testing. Instead, the defense merely complains that it "may" not be able to replicate the tests performed by Bolden because the nail was removed. This argument fails for four reasons.

First, the defense can make no showing that, had the nail been left in the tire, pressure tests by a different expert would have yielded different results. *See Trombetta*, 476 U.S. at 489 (preservation of actual breath samples unlikely to change results in all but a "tiny fraction" of

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 26 of 32

cases); *United States v. Gibson*, 2012 WL 1123057, *2 (N.D. Cal. 2012) (argument that DNA tests on clothing may have assisted defense insufficient to require preservation of contents of laundry bag); *Donohoe v. American Isuzu Motors, Inc.*, 157 F.R.D. 238, 244 (M.D. Pa. 1994) (no prejudice where no destructive testing was performed, no alterations were made and no parts lost, damaged or replaced incorrectly).

Second, the defense expert has already examined the tire and the nail, and makes no argument that it could not replicate the test by re-inserting the nail into the tire or by piercing an identical tire with the nail. *United States v. Kennedy*, 714 F.2d 968, 976 (9th Cir. 1983) (defense given additional stains which were not tested by government); *United States v. Belden*, 957 F.2d 671, 674 (9th Cir. 1992) (no prejudice when police cut up marijuana plants– "plants were still available for another count, albeit an imperfect one"); *Sanchez v. M&H Enterprises*, 2007 WL 923686, *5 (D. Nev. 2007) (plaintiffs failed to show that defense tests "cannot be independently examined, rebutted or verified by Plaintiffs' own experts" or that "they were deprived of the

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 27 of 32

opportunity to conduct inspections or perform tests under circumstances substantially similar to those under which defendant's experts or agents have conducted testing").

Third, the defense has Bolden's report and notes and will be able to cross-examine him on the test results at trial. *United States v. Lillard*, 929 F.2d 500, 504 (9th Cir. 1991) (meth lab chemicals destroyed, but defense could cross government witnesses and present own experts to dispute capacity of lab); *Kennedy*, 714 F.2d at 976 (defense could cross regarding testing procedures and methods); *Belden*, 957 F.2d at 674 (cross regarding plant count).

Fourth, the defense cannot show bad faith on the part of the government. *Martinez-Martinez*, 369 F.3d at 1087. The testing occurred as part of the investigation, months prior to indictment. Because the defendant's alibi was central to the case, the tire and nail had to be tested at that time. The tire and nail were tested as part of Bolden's standard practice and not with any animus toward defendant. *Trombetta*, 476 U.S. at 488 ("record contains no allegation of official

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 28 of 32

animus towards respondents or of a conscious effort to suppress exculpatory evidence").

Bolden did not destroy any evidence. The defense has all it needs to replicate Bolden's testing and thoroughly cross-examine him on his methods and conclusions. There is no prejudice and Bolden's testimony should be admitted at trial.

e. Accident Reconstruction Expert, Mr. Angelo Toglia

At the hearing, defendant's sole attack on the admission of Mr. Toglia's testimony was to claim it was improper testimony on the "ultimate issue." As noted above, that attack has no legal significance in a criminal case unless the witness was to opine on the mental state of the defendant. Fed.R.Evid.704. Indeed, the defendant's explanation as to why the Court should preclude Mr. Toglia's testimony really amounts to an admission of its relevance. Thus, defendant argued that evidence that would tend to help identify the blue SUV in the video evidence was central to the case. And therefore, he argued somewhat ironically, it was too important to admit. His argument for excludability defies the

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 29 of 32

actual definition of admissibility contained in Fed.R.Evid. 401regarding relevance. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Wells also claimed, again contrary to law, that the government should be precluded from calling experts to "fill in the gaps" from other evidence.

As the cases cited above make clear, the latter is a valid reason for calling expert witnesses; they fill in the gaps in areas that would not be of common understanding to the jury. See cases at pp. 9-10*supra*.

With regard to the task before the court, the case of *United States v. Quinn*, 18 F.3d 1461, 1464-5 (9th Cir. 1994) is directly on point to the testimony of Mr. Toglia. In *Quinn*, the court affirmed the admission of expert testimony by a witness who relied on the photogrammetry process to render an opinion about the height of a person in surveillance photos based on computer-assisted mathematical calculations drawn from the known heights of other in the photo. In this case, as the government explained at the hearing, Mr. Toglia used similar

Case 3:13-cr-00008-SLG   Document 273   Filed 01/17/14   Page 30 of 32

methodology and computer-assisted programming to derive information about the image of a vehicle depicted in a video.[5] As in *Quinn*, the defendant here has pointed to nothing in the record calling into question the reliability of the process used by Mr. Toglia. *Id* at 1465.

## CONCLUSION

For the reasons stated in the government's previous submissions, in this submission, and based on the information contained in the government expert reports, the government requests this Court recommend denial of defendant's motions to exclude expert witnesses. Each expert offered by the government is eminently qualified in his field, is using methodologies commonly relied on in the field, and is in no way unique; each has relevant information to provide to aid the trier of fact.

---

[5] The government will admit that there have been advances in computer programs in the 20 years since the *Quinn* case  But similar to the other methods employed by the experts proffered by the government, all of the methodology has been well established for decades.

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 31 of 32

**RE**SPECTFULLY SUBMITTED on January 17, 2014, in

Anchorage, Alaska.

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney

s/ Bryan Schroder
BRYAN SCHRODER
Assistant U.S. Attorney
United States of America

s/ Kathleen A. Duignan
KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2014,
a copy of the foregoing was served
via the CM/ECF system on all counsel
of record.

s/ Bryan Schroder
Office of the U.S. Attorney

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 32 of 32