Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant James Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEFING ON COURT'S GATEKEEPING FUNCTION PURSUANT TO *DAUBERT v. MERRELL DOW PHARMACEUTICALS, INC.*** |

James Wells, through counsel, hereby responds to the government's supplemental briefing (Docket No. 273) regarding this court's duty to act as a gatekeeper in order to ensure that only relevant and reliable expert testimony are placed before the jury.  The district court must assess or make findings regarding the scientific validity or methodology of experts in order to fulfill its role as gatekeeper.  *See Estate of Barabin v. AstenJohnson, Inc.*, ---- F.3d ----, 2014 WL 129884 (9th Cir. 2014) (district court's failure to make determination of relevancy and reliability of expert was an abdication of its role as gatekeeper necessitating a remand for a new trial).  Mr. Wells has challenged six of the

twenty-two proposed government experts. The government's attempts to minimize the critical role of the district court in fulfilling this function are unavailing. *See Id.*

Mr. Wells will first specifically address the egregious discovery violations by the government which impede his ability to contest the government's proposed experts at this time. The government's actions prevent counsel from conducting effective investigation and preparing for cross examination. Thereafter Mr. Wells has limited ability to respond to recent and missing discovery related to the testimony of proposed government experts. Mr. Wells again requests the opportunity to file additional briefing once his experts have time to review information that has been recently provided or has not yet been provided.

## I. DISCOVERY VIOLATIONS

The government should provide discovery in a timely fashion pursuant to Fed.R.Crim.P. 16(a)(1)(E). Fed.R.Crim.P. 16 Advisory Committee Notes; *United States v. VonWillie*, 59 F.3d 922, 928 fn. 4 (9th Cir. 1995). To be meaningful, disclosures of anticipated expert testimony made pursuant to Rule 16(a)(1)(G) should be made in time, "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony." Advisory Committee's Note 10 1993 Amendment to Rule 16. The government has failed to do so with respect to all of the experts. In the last two weeks the government has provided Mr. Wells with over three hundred interviews and hundreds of additional pages of discovery. Although seemingly timely pursuant to the pretrial order,

these discovery dumps do not comply with Fed.R.Crim.P. 16(a)(1)(E) or 16 (a)(1)(G). Many of the documents disclosed were necessary months ago, at the time of initial expert notices, for the defense experts to be able to review the materials and methodology of proposed government experts by this juncture.

The government argues that the facts that their experts relied upon are matters that will go to the weight of their experts' testimony. However, without access to these facts, Mr. Wells' experts cannot effectively do their work and properly test the government expert testimony through the adversarial process. This violates Mr. Wells' right to have a fair trial. When the discovery process is timely, Mr. Wells agrees that cross examination, contrary evidence and "attention to the burden of proof" are the appropriate manner to counter scientific experts. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

The government has provided notice that a number of the government's experts reviewed the recently disclosed interviews in forming their opinions, namely Dr. Meloy and Mr. Gifford. Counsel is unaware if Mr. Morton also had access to interviews in forming his opinions since the government has not disclosed the bases for his opinions. The government has not identified the precise interviews the experts reviewed. Counsel for Mr. Wells are currently reviewing the hundreds of recordings of recently disclosed interviews in order to ascertain which interviews the experts likely used. The government has not provided transcripts of these interviews.

Once counsel for Mr. Wells completes a review of these recordings, many of which have been in the government's possession for over a year, counsel will send the

appropriate interviews to our experts so they can evaluate the methodology that the government experts employed based on the facts available. The court has expressed concern that the defense experts have not disclosed their opinions to the government. Mr. Wells' experts are still awaiting the discovery they need in order to form opinions. Mr. Wells' experts are not refraining from writing their reports, they have been stymied in working on the case by the government's failures to disclose critical information that it has had in its possession for a long time. If the court does not exclude the government's proposed expert witnesses based on these untimely disclosures, Mr. Wells will need a continuance in order to permit his experts to review the materials and form opinions about the materials.

Additionally, within the last week, the government has sent physical evidence to defense expert Mr. Jaco Swanopoel. Once Mr. Swanopoel receives and is able to examine the physical evidence, conduct his own tests on the materials, and assess whether he has all the information he needs, he will be able to form an opinion and write a report. As noted above, if the court does not exclude the government experts, Mr. Wells may need a continuance in order to timely provide his experts' reports pre-trial.

Finally, after repeated requests from the defense, the government has indicated that it will not disclose information that is crucial for Mr. Wells' expert, Mr. DiTallo, to review Mr. Toglia's work or conduct his own tests (Exhibit A). Mr. Wells has repeatedly informed the government that it needs this information in order to move forward with his expert (Exhibit B). If the government continues to refuse to disclose the information Mr. Wells' expert needs (or continues to ignores Mr. Wells' requests) in order to conduct his

own review of Mr. Toglia's work, then Mr. Wells will need a continuance and Mr. DiTallo will need to be able to access T1 and T2 in order to conduct his own tests.

In the event that Mr. Toglia is not excluded, Mr. Wells requests that the government assist Mr. DiTallo in gaining access to the COMMSTA and the surveillance cameras at the COMMSTA to conduct his own test. Mr. DiTallo will provide a report as soon as he is able to access the materials he needs to form an opinion and write a report. Without access to this information, the government has precluded Mr. Wells from contesting the reliability and relevance of Mr. Toglia's computer generated model of the COMMSTA with animation of a car identical to Mr. Wells' vehicle at the scene of the crime. The prejudice to Mr. Wells would be substantial because it is both the only information that would place Mr. Wells at the scene of the crime and information that is liable to taint the juror's perception.

## II. MR. WELLS CONTESTS THE RELIABILITY AND RELEVANCE OF THE PROPOSED GOVERNMENT EXPERTS' METHODOLOGIES.

The government has proposed a variety of experts whose opinions are based on different disciplines and areas of expertise. The court looks at the methodology of the expert in light of "reliability-related factors... such as a theory's testability, etc..." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 145. As the government notes, "[t]he focus is on principles and methodology, not conclusions." *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001).

## III. THE GOVERNMENT'S PROPOSED CRIME SCENE EXPERTS SHOULD BE EXCLUDED OR LIMITED IN THEIR TESTIMONY.

As mentioned at the status hearing and in the underlying briefing, neither Mr. Gifford nor Mr. Morton have listed any methodology. Their lack of an explicit methodology undermines any claim that their reports are reliable or relevant. It appears that the government is relying solely on the proposed experts' experience to establish the reliability and relevance of their testimony. While each may have relevant experience to explain how a crime took place (albeit reaching some diametrically opposed hypotheses), neither is qualified to speculate as to the psychological factors that may have contributed to the incident. Neither expert has any specialized knowledge on this issue.

Critically, it would invade the province of the jury, as mentioned in the evidentiary hearing, for either crime scene expert to speculate as to the imagined mental state of a defendant. *United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007). For this reason, these proposed experts should be prohibited from testifying "that the murders appear to have been committed by someone familiar with the workplace who was targeting the victims." The cases the government cites in support of offering these experts' testimony do not include this type of speculative testimony. Instead they are limited to the "methods and techniques employed in an area of criminal activity." *United States v. Espinosa*, 827 F.2d 604, 612 (9th Cir. 1987).

Finally, as mentioned in earlier filings, Mr. Wells does not know which interviews these experts relied upon in forming their opinions. He renews his request that the government disclose this information.

## IV. PROPOSED GOVERNMENT EXPERT NEIL SCHMIDT.

As mentioned previously, Mr. Schmidt has never been qualified as an expert. It is not clear what expertise he has developed as an engineer at Honda that uniquely qualifies him to identify a Honda from a blurry image of a car. Counsel relies on the underlying motions regarding Mr. Schmidt, that demonstrate that FBI crime lab experts were unable to identify the make or model of the vehicle. (*See* Docket No. 199, Exhibit A, p. 2.) Mr. Schmidt may in fact know a great deal about Hondas but that is not at issue here. What is at issue is whether he has specialized expertise in identifying vehicles from blurry images. That is the purpose for which his testimony is proffered. The government has not even endeavored to explain whether he has any such expertise. Thus, Mr. Schmidt's testimony is not clearly relevant or reliable. The court should exclude Mr. Schmidt's testimony.

## V. PROPOSED GOVERNMENT EXPERT DR. J. REID MELOY.

Contrary to the government's assertions, Dr. Meloy's testimony does not provide information that is outside the realm of the common understanding of jurors. Incidents of workplace violence are so common in our culture, that most of the jurors will be able to understand this evidence without any need for expert interpretation. This is unlike the experience of most jurors with regard to child sex abusers. It is outside the realm of common understanding to experience child sex abuse or to be knowingly acquainted with child sex abusers. The government has not cited a single case in support of admitting an expert to testify about workplace violence. This is likely because incidents

of workplace violence and friction are too ubiquitous, as mentioned above, to merit an expert's explanation. The court should exclude this testimony.

### VI. PROPOSED GOVERNMENT EXPERT MR. BOLDEN.

> "Courts are invested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.
>
> This circuit has recognized as part of a district court's inherent powers the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. *Within this discretion lies the power... to exclude testimony of witnesses whose use at trial... would unfairly prejudice an opposing party*."

*Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal citations and quotations omitted; emphasis added).

In *Unigard*, the Ninth Circuit affirmed the trial court's exclusion of proposed expert testimony regarding the cause of a fire on a boat, which was allegedly caused by a heater that was destroyed. *Id*. The court reasoned that the court's power to exclude this testimony did not stem from the Fed.R.Civ.P. 37. *Id.* The court held that it was a proper exercise of the trial court's inherent authority to exclude evidence that precluded a party from gaining testimony directly related to the heater's potential causation of the fire. *Id.* The court further held that the destruction of this key evidence rendered a full defense about the cause of the fire impossible. *Id.*

*Unigard* is directly on point in this case. The government seeks to prove that Mr. Wells committed two homicides on the morning of April 12, 2012. Mr. Wells' alibi is that his tire had low air pressure at the time of the homicides and that he returned to his

home to change the tire. The government seized Mr. Wells' offending tire, which had a nail in the tread (Government's Search Warrant No. 168). The government sent this nail and tire to its expert, Mr. Gary Bolden. Mr. Bolden conducted tests related to the air pressure of the tire, which materially altered the tire as explained in Mr. Currie's affidavit (Mr. Wells' expert on the matter) (Exhibit C). Even worse, it appears that Mr. Bolden removed the nail from the tire, which further enlarged the size of the hole, which is an additional alteration of the tire. Mr. Currie is unable to evaluate the tire in the condition existing at the time of the homicides. Moreover, he cannot test any of Mr. Bolden's assertions. Mr. Bolden asserts that the nail was inserted manually into the tire and that the rate of air loss to the tire was imperceptible (Exhibit D). Mr. Wells is precluded from gaining expert testimony related to whether the nail caused air loss sufficient to cause a flat tire on April 12, 2012.

Mr. Wells is also precluded from gaining expert testimony as to how the nail came to rest in the tire tread. This destruction of the evidence renders a full defense impossible on a key issue in the case, Mr. Wells' alibi. There is no other way for Mr. Wells to obtain this evidence or comparable evidence. The government expert's opinion relates to his belief that the nail must have been inserted manually. This is not scientific nor testable. The court should exclude this testimony. If the court needs further information on these factual issues not included in the affidavit from Mr. Currie, Mr. Wells suggests scheduling an evidentiary hearing so that Mr. Currie can explain the spoliation of the tire in greater detail.

The government's arguments that this is a civil issue are unavailing as the Ninth Circuit has specifically made clear that this power to exclude does not stem from the

civil rules. The government's arguments regarding a due process violation based on malicious destruction of evidence are not on point since Mr. Wells is not raising a due process violation. The government's attempts to argue that the court should apply tests from other circuits should not influence the court's decision since Ninth Circuit law is clear and controlling.

The government cites *Millenkamp v. Davisco Foods Intern., Inc.*, 562 F.3d 971 (9th Cir. 2009) for the proposition that an intentional failure to retain relevant evidence may serve to justify an adverse jury instruction. First, the evidence obtained in that case was biological tissue samples. The evidence was arguably preserved through a process of scientific testing with a high degree of certainty when it was initially tested, unlike in this case. Further, the parties in *Millenkamp*, conducted their testing before they knew of impending litigation. *Id.* at 981. The government conducted this testing in furtherance of litigation here.

The court, in *Millenkamp*, held the benefits of allowing the jury to draw negative inferences from the spoliation of evidence would not be realized because this information was not prepared in anticipation of litigation and the party destroying the evidence had no knowledge the information would be used in litigation. That is simply not true in this case. Moreover, the government knew that counsel represented Mr. Wells at the time it conducted this testing. During the status hearing, the government stated that Mr. Wells had not been formally charged when it conducted this testing. That is irrelevant. The government had already asked the Federal Public Defender office to represent Mr. Wells. The government knew that Mr. Wells was represented by the Federal Public

Defender office.  *See Memorandum of Law in Support of Motion to Suppress Statements (Fourth and Fifth Amendments)* at Docket No. 121.

The government also attempts to argue that disassembly of a product that could be spoliation is nonetheless admissible.  *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994).  This is a Third Circuit case so clearly not the law of this circuit.  Nonetheless, in *Schmidt*, the district court excluded expert testimony about a circular saw in a design defect case.  The district court reasoned that manipulation of the saw, which materially altered its condition at the time of the incident, should not be admitted because "[I]t would be grossly unfair... to allow one side to present that kind of testimony and not have the other side be in a similar position to do so."  *Id.* at 78 (internal citations and quotations omitted).  The Third Circuit held that this sanction was too harsh because in a design defect case alteration of an individual specimen was not particularly relevant or prejudicial to the party unable to access the saw in its earlier state.  If the issue had been defective manufacturing, the court reasoned the outcome would rest on an individual assessment of the saw and a potentially different outcome.  Here, Mr. Wells is seeking review of this particular tire, not a class of tires so *Schmidt* is not on point.  Additionally, the testing, in *Schmidt*, was not performed in anticipation of litigation, unlike this case.

Mr. Currie is asserting that he could not replicate the government's test by re-inserting the nail because the tire has been materially altered.  The government's claims to the contrary notwithstanding, Mr. Wells is stating that he was deprived of the opportunity to conduct inspections and perform tests under circumstances substantially similar to those

which the government's agents have conducted testing. *See Sanchez v. M&H Enterprises*, 2007 WL 923686, *5 (D.Nev. 2007). Access to Mr. Bolden's reports and notes will not remedy this violation because of Mr. Wells' deprivation of the ability to conduct inspections and perform tests under circumstances substantially similar to those which Mr. Bolden has conducted testing.

### VII. PROPOSED GOVERNMENT EXPERT MR. TOGLIA.

The government is refusing to turn over the discovery to allow Mr. Wells' expert to test Mr. Toglia's work or conduct his own independent testing, as explained above. The court should exclude Mr. Toglia's testimony based on the failure of the government to produce timely discovery, as outlined above. If the court does not exclude Mr. Toglia, then in the alternative, the court should order discovery of these materials. Then the defense will require a continuance in order to allow its expert to gather his own information and create his own models. Mr. Wells is not contesting photogrammetry as a method of determining the relative size of objects. However, without access to the facts and principles applied by Mr. Toglia, Mr. Wells is both unable to review and understand Mr. Toglia's work and, crucially, the defense is unable to construct its own model. The defense is hampered in constructing their own model because Mr. Wells and his counsel do not have access the United State Coast Guard base communication station and its cameras.

## VIII. CONCLUSION

The government's refusal to provide timely discovery will necessitate a continuance unless their experts are excluded from testifying at trial. At the status hearing on January 14, 2014, the court urged Mr. Wells to ask his experts to write reports as soon as possible. Mr. Wells' experts would like to get to work on reviewing pertinent information in order to form opinions for their reports. They have not yet been able to do so. Based on the government's late discovery and refusal to provide necessary discovery, Mr. Wells respectfully renews his request that the court exclude these experts' testimony. Also Mr. Wells requests the court exclude Mr. Bolden and evidence of the tire and nail because of the spoliation of the tire based on his testing. Finally, Mr. Wells renews his request that the court exclude the government experts based on the government's failure to produce discovery because it would violate his Sixth Amendment right to confrontation and right to counsel as well as his Fifth Amendment right to due process.

DATED this 23th day of January 2014.

Respectfully submitted,

/s/Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone: 907-646-3400
Fax: 907-646-3480
E-Mail: rich_curtner@fd.org

Certification:
I certify that on January 23, 2014,
a copy of the  ***Defendant's Reply to Government's Supplemental Briefing on Court's Gatekeeping Function Pursuant to Daubert V. Merrell Dow Pharmaceuticals, Inc.*** was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: karen.loeffler@usdoj.gov

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: kathlee.duignan@usdoj.gov

/s/Rich Curtner