

**U.S. Department of Justice**

United States Attorney
District of Alaska

Federal Building & U.S. Courthouse  Commercial: (907) 271-5071
222 West 7th Avenue, #9, Room 253  Fax Number: (907) 271-3224
Anchorage, Alaska 99513-7567

January 13, 2014

**RECEIVED**
JAN 13 2014
FEDERAL PUBLIC DEFENDER

Rich Curtner
Federal Defender
Office of the Federal Public Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501

Re: *United States v. James Michael Wells*, Case No. 13-cr-00008-RRB-JDR
Discovery production responsive to your letter dated December 12, 2013

Dear Mr. Curtner:

    As we discussed at our meeting of December 20, 2013, this is our written response to your request for additional discovery dated December 12, 2013. As discussed in our December 20, 2013 meeting, we have already provided some of these materials to you in our letter of December 13, 2013. And we are working on assembling others for disclosure right now. To address some of your prior statements and requests for additional discovery, we are compelled to point out that we have long complied with all of our discovery obligations under Rule 16, the court's expert notice deadlines, and have provided discovery beyond that required by discovery rules, Fed. R. Evid. 702, 703, 705, and applicable case law.

    Rule 16(a)(1)(G) requires a written summary of any expert testimony that the government intends to use at trial. We provided summaries, as well as the experts' C.V.'s and written reports. These products all contained, "the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications." Rule 16(a)(1)(G). This is all that is required. We met these requirements by the deadline date of October 25, 2013. At this point, we are going well beyond the minimum discovery requirements to ensure you have access to any and all underlying material needed to procure your own expert opinions. But, to be clear, this additional discovery is not required under law. To the extent that you claim in your Notice of Expert Witnesses, filed on January 6, 2014, that you cannot provide expert reports without additional discovery, we disagree.

Moreover, we have received no reciprocal discovery and no expert reports for any of your expert witnesses to date, despite having asked for them more than two months ago. Thus, we were forced to file a motion to compel production at docket 250 on January 8, 2014. Finally, there are a few items you requested for which we see no legal basis for disclosure and that have limited, if any, relevance. For these items, identified below, we ask you to cite additional legal authority, so that we may reconsider our position.

### *Already Disclosed*

Your last letter of December 12, 2013 and our response of December 13, 2013 were close in time, and it seems that many of the items you requested, we had already provided or were in the process of producing. In your letter, you stated that you had not received much of the discovery requested in your letter of November 21, 2013. However, in our letter of December 13, 2013, we provided most of the requested discovery, with the exception of a few laboratory-held items for which we needed additional time. We have just secured the ballistics evidence you requested, and have provided by email a final stipulation for signature. Therefore, we will focus this response on the new matters you raised and as discussed in our meeting of December 20, 2013.

### *Enclosed Herein or Nothing to Provide*

We enclose the following items:

1. The type of camera Angelo Toglia used was a SonyDSC-R1. However, the reference to calibration that he makes in his report applies more to use of the camera with a specific brand of software, called Photomodeler. Mr. Toglia had "calibrated" the camera by taking a photo of a grid provided with Photomodeler. The software then uses the photo of the grid, to help assure that the other substantive photos are used accurately.

2. Angelo Toglia reviewed a news article about this case published by the Anchorage Daily News on February 20, 2013.

3. Angelo Toglia reviewed photos that you already have as Bates 515-1985; 2115-2668; 2683-2689; 6336-6390; 7442-7462; 7476-7497; and 18336-18546. You can compare the ones in his report to the ones in your possession and see which photos he selected for use in his report.

4. The "exemplar vehicle surveys" you requested are the same as the vehicle specifications and as the vehicle wire frame diagrams you requested. The specifications were purchased from a commercial provider and cannot be duplicated because this would be in violation of copyright laws. As we have provided to you, that commercial provider is "Digimation."

5. Enclosed is the "Total Station" data you requested. The files are named "NikonPt.csv" and "NikonPts2.csv".

6. In addition to the previously disclosed CAD program called "3D Studio Max," and source of the 3D image source called "Digimation," Collision Research also used a program called Virtual Dub to produce some of the videos in this case.

7. Enclosed are bench notes prepared by Mr. Richard Vorder Bruegge, marked as Bates 22939-22968.

8. Enclosed is a copy of the drawing that Don Rudat made while giving his statement, marked as Bates 22969.

9. As disclosed verbally during the December 22, 2013 meeting, we do not have any identifying information about who owned the white truck that appears in the T2 video on the evening of April 11, 2012. It may well be your client.

10. There has been no photographic or video surveillance of Mr. Wells, and thus there is none to disclose to you.

11. We cannot provide an un-redacted parking list, because one does not exist. The black boxes that look like redactions are not actually redactions. Instead these are placeholders in the original and part of the Coast Guard's original record. There is no information beneath them. As explained at our December 22, 2013 meeting, the black areas show areas that cannot be assigned as parking or which will no longer be assigned as parking once the person currently assigned to the spot departed on permanent change of station (PCS) orders. Therefore, the information in this form is the best version in anyone's possession and is complete.

12. You requested other reports allegedly referenced in Bates Nos. 8730-8731. There are no reports referenced in that location, except the report and video cited as included in evidence log number 1A-344, which you already have as the video produced as a direct copy from the hard drive. This was already provided as 1B-395, containing QUAN3_1, which is an exact duplicate of all the COMMSTA video in the government's possession from the day of the murders.

13. There are no written reports from CGPD Officers 245 and 251 who followed tracks that led "off of the road into the woods," as mentioned in Bates 6153. Both officers investigated the tracks, which led to an area frequented by fly fishers and eagle watchers around Bridge 7. This lead was resolved, but not documented in a separate report.

14. We enclose a copy of Dr. Meredith Lann's C.V. as Bates 22970. She is the pathologist in this case.

### *Materials In the Process of Being Provided*

1. We are in the process of assembling all of the requested ballistics materials to be shipped to your expert. We have emailed a final stipulation for signature. Once that stipulation is signed and returned, we will ship the materials to your expert.

2. We are in the process of having the nail from the tire shipped to your expert. The nail is also included in the stipulation.

3. We requested Mr. Brett Mills' bench notes from the FBI lab. We will provide them to you as soon as we have them.

4. You have all of the video tape of the main gate in the government's possession, which was the video seized at the time of the murders. The video camera loops over and re-records over existing tape. After receiving your request, the government contacted the Coast Guard to find out whether video from the investigation of Wells in September 2011 for theft was preserved. It is our understanding that the relevant portion of the video was preserved, and we requested a copy of it. You will be provided a copy as soon as we receive it.

### *Additional Legal Authority Requested*

1. There is no legal authority for walking you through the full, detailed process that Angelo Toglia used to prepare his report. This would be akin to a deposition, which is not required by either Rule 16 or the Federal Rules of Evidence governing expert testimony. You already have all of the raw materials, names of computer programs used, the make and models of cameras used, raw survey site data, photographs used, video used, and Mr. Toglia's report itself. Your expert can independently review the materials and come to his or her own conclusion. And once your expert does this, we renew our request for a copy of his or her report.

2. It is the government's position that we are not required to provide you information on other suspects the government investigated as part of its case-in-chief, because none of it is exculpatory, and thus does not fall under *Brady v. Maryland*. But to avoid any delay in or at trial, we have already disclosed a majority of the information you requested and disclose some additional items below.

    a. You are already aware about the false claims of Malsol Wilford and have his statements and the investigation into these statements.

   b. You already are aware of Jason Barnum, his association with Dylan Froehlich, and are capable of conducting your own investigation regarding his activities and whereabouts that morning.

   c. You already know about the dog bite rumors, a theory that was quickly investigated and dispelled. The dog bite investigation is enclosed as Bates 22971-22974.

   d. We already produced the investigation into Casey Brennick and Marco DeCastro, none of which resulted in any connections to this case. On December 3, 2013 we sent you the interview of Marco DeCastro (Bates 20395-20396) and the notes regarding photographs shown to DeCastro (Bates 20397). We gave you the Casey Brennick interview with the Jencks material last week, and we had already provided paperwork regarding it on December 24, 2013 as Bates 22584-22585. We have one further interview relevant to this line of investigation that we just received of Wade Brennick. We have enclosed that interview as Bates 22975.

   e. And although you did not request this, we have already proactively turned over all of the tip-line phone calls received by the FBI regarding this case - none of which resulted in any valid leads.

We remain available to continue discovery discussions with you at any time.

Sincerely,

KAREN L. LOEFFLER
United States Attorney

BRYAN D. SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney