KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-00008-RRB-JDR |
| | ) | |
| | ) | **GOVERNMENT'S** |
| Plaintiff, | ) | **SUPPLEMENTAL REPLY TO** |
| | ) | **DEFENDANT'S** |
| vs. | ) | **SUPPLEMENTAL** |
| | ) | **OPPOSITION AT DOCKET** |
| JAMES MICHAEL WELLS, | ) | **274** |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States, by and through undersigned counsel, and submits a reply to its supplemental briefing filed at docket 273, and the defendant's "reply" at docket 274.

At the evidentiary hearing on January 14, 2013, the Court asked the government to file supplemental briefing on specific questions posed by the Court at the hearing. The government filed its briefing on schedule on January 17, 2014. Docket 273. The defendant, who was scheduled to file his response within 3 business days, filed a "reply" on January 23, 2014. Docket 274.

The defendant continues to try to distract the Court from making a decision based on the applicable law under *Daubert* and its progeny about the qualifications and reliability of the government's expert witnesses. Instead, the defendant tries to turn the Court's attention to an entirely separate matter, discovery. And even there, the defendant tries to steer the Court's focus away from the F.R.Cr.P. 16(a)(1)(G) & 16(a)(1)(F), which directly apply to expert discovery, and ask the Court to decide in his favor based on general principles, unsupported by rule

*United States. v. Wells*
3:13-cr-00008-RRB-JDR          Page 2 of 15

or precedent.

The defendant does so by misrepresenting both the facts and the law. The government will address its major concerns in order:

1. "Egregious Discovery Violations"

The defendant accuses the government of "egregious discovery violations." Docket 274, p. 2. When the defendant's specific allegations are examined, the Court will find that each "violation" actually involves the government meeting and exceeding its discovery obligations and the Court's orders.

### a) *"Interviews" = Jencks Production*

The defense accuses the government of providing a number of "recently disclosed interviews," implying that the government has failed to provide discovery appropriately or on time. In fact, the recordings and documents that the government provided were Jencks material, provided according to the Court's schedule on January 10, 2014. Moreover, the government provided a significant amount of Jencks material, even earlier on January 3, 2014. The implication that the

government has provided this material late, or has somehow withheld material required to be disclosed earlier, is simply wrong. The government met and exceeded the Court's schedule, which required Jencks to be provided 6-7 weeks earlier than the Jencks Act (18 U.S.C. § 3500) itself requires.

### b) F.R.Cr.P 16

The defendant continues to make discovery arguments, alleging violations of F.R.Cr.P. 16. However, the defendant keeps attempting to turn the Court to the wrong section, F.r.Cr.P. 16(a)(1)(E). *Id.*, p. 2. As briefed previously, the government has fully met its discovery obligations. Docket 273, p. 6-7. Moreover, those obligations were met on time or ahead of time. Indeed, the exhibits provided by the defendant to docket 274 show the government has gone even further. After the government provided the discovery required by Rule 16(a)(1)(G) on time on October 25, 2013 (docket 160), the defendant asked for additional information one month later. Docket 274-2. The government, after considerable effort, provided additional information.

Docket 274-1. When the defendant asked for even more information, the government again provided more. Dockets 274-3 and 274-4. The defendant continues to ask for more and more information, without providing any precedent for his request, and without demonstrating why his experts need the additional information to conduct <u>independent</u> examinations or tests. If the defendant has hired experts solely to consult on cross examination, they have no basis for requesting information above and beyond Rule 16(a)(1)(G) solely to educate a consultant on cross examination.

    2.    Crime Scene Experts

The defendant argues that the crime scene experts, should they testify about whether the condition of the murder scene indicates that the crimes were committed by someone familiar with the workplace, and who targeted the victims, would be testifying on the "mental state of the defendant" and should be excluded. The defendant misinterprets the concept of "mental state." The limitation on mental state testimony is found in Federal Rule of Evidence (Fed.R.Evid.) 704, but only applies

*United States. v. Wells*
3:13-cr-00008-RRB-JDR        Page 5 of 15

to opinions "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." The testimony of experts that the conditions of the crime scene support the conclusion that the murder was committed by someone with knowledge of the location, thus likely targeting the victims, versus a burglary or some other scenario, is not testimony on the mental state of "the defendant"; it is testimony on the circumstances of the offense.

The case cited by the defendant is consistent with the government's position. In *United State v. Moran*, the defendants were convicted of tax and fraud related charges for peddling various "tax education plans." 493 F.3d 1002, 1007 (9th Cir. 2007). At trial, the government offered an academic expert, who opined that the "tax education plans" were a "sham." *Id*. at 1008. The court, while recognizing that experts cannot offer opinions on the "requisite mental state of the defendant," found that the opinion that the underlying activities were a "sham" did not relate to the mental state. *Id*. The

court stated that "even if the transactions were a sham, 'the jury would still have to draw its own inference from the predicate testimony to answer the ultimate fact question,' of whether income tax was owed." *Id.*, *quoting United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997). Similarly, whether the jury believes the murder was by a person with knowledge of COMMSTA, they must still reach the ultimate question of whether that person was James Wells.

### 3. Dr. J. Reid Meloy

The Ninth Circuit has approved of expert testimony from mental health experts in numerous criminal cases. *See e.g., United States v. Sandoval–Mendoza*, 472 F.3d 645, 652 (9th Cir. 2006) (neuro-psychologist and a neurologist); *United States v. Cohen*, 510 F.3d 1114, 1122 (9th Cir. 2007) (psychiatrist); *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (clinical psychologist). Contrary to defendant's assertions, the testimony of Dr. Meloy does not usurp the role of the jury. Dr. Meloy will provide background testimony concerning the characteristics of persons who carry out targeted

killings. Similar testimony has been upheld by the Ninth Circuit. *United States v. Lukashov,* 694 F.3d 1107, 1116 (9th Cir. 2012) (expert testimony concerning general characteristics of sexual abuse helpful to jury). Dr. Meloy's testimony will assist the jury by providing insight into the behaviors and motivations of persons who engage in targeted killings. *See United States v. Espinosa*, 827 F.2d 604, 612 (9th Cir. 1987) (expert testimony founded solely on observations of innocent conduct "may be valuable to the jury"); *United States v. Fleishman*, 684 F.2d 1329, 1336 (9th Cir. 1982) (same).

Defendant claims that workplace violence receives so much media attention, jurors do not need expert assistance to understand its various causes and manifestations. Docket 274, p. 7. While this "As Seen on TV" approach would certainly shorten trials (jurors could be sent home early each day to catch an episode of *"CSI"* or *"Law and Order"* rather than having an FBI fingerprint analyst or DEA chemist drone on and on), it has been rejected by courts slow to adapt to the brave new world proposed by the defense. *See United States v. Ervin*,

59 Fed.Appx. 631, 637 (6th Cir. 2003) (allowing expert testimony on mechanics of drug trade over defense objection that it was "common knowledge to people who watch police dramas on television"); *see also United States v. Foster*, 939 F.2d 445, 451-52 (7th Cir. 1991) ("Despite our country's 'war on drugs' and its accompanying media coverage, it is still a reasonable assumption that jurors are not well versed in the behavior of drug dealers.") Other courts have been so bold as to find expert testimony necessary to *counteract* some of the "truths" espoused on prime time television. *United States v. Amuso*, 21 F.3d 1251, 1264 (2nd Cir. 1994) (allowing expert testimony because there exists a "*probability* that the depiction of organized crime in movies and television is misleading") (emphasis added); *United States v. Locascio*, 6 F.3d 924, 937 (2nd Cir. 1993) (same); "); *United States v. Paracha*, 2006 WL 12768, *22 (S.D. N.Y. 2006) (allowing expert testimony on structure of al Qaeda "because the media's depiction may be misleading").[1]

---

[1] It must be noted that these cases pre-date television shows like

Dr. Meloy's testimony satisfies *Daubert*. It is relevant and reliable and will be helpful to the jury in understanding workplace violence. The defendant's request to exclude Dr. Meloy should be denied.

4.  Neil Schmidt

The defendant tries to simplify Mr. Schmidt's analysis by stating that all he is able to do is "identity a Honda from a blurry image of a car." Docket 274, p. 7. The key to Mr. Schmidt's analysis is his identification of vehicle characteristics, and how those characteristics are either consistent or inconsistent with certain vehicles, including Hondas. A person with the level of Mr. Schmidt's experience in the automobile industry, as well as his auto racing avocation, is certainly

---

*"Keeping Up With the Kardasians"* and *"Here Comes Honey Boo Boo,"* either of which would cause any thinking court to reconsider its opinion of the American media. *But see United States v. Motsenbocker*, 2011 WL 902121, *3 (W.D. Okla. 2011) (post-*Kardashian/Boo Boo* case allowing testimony on *modus operandi* of bank robbers, holding that while jurors "may possess knowledge based on their observation of media reports, that observation can also create misconceptions about certain criminal behavior").

qualified to make those comparisons. The defendant's request to exclude Mr. Schmidt should be denied.

5. Tire Expert

The defense cites a new case, *Unigard Sec. Ins. v. Lakewood Engineering & Mfg*, for the proposition that this Court should exercise "inherent powers" to exclude Mr. Bolden from testifying. 982 F.2d 363 (9th Cir. 1992). The defendant's argument is flawed in two key aspects. First, while the defendant argues that the government's cases related to destruction of evidence in criminal matters (see Docket 273, pp. 23-24) are "not on point," and that the "government's arguments that this is a civil issue are unavailing…", the defendant then relies on a civil destruction of evidence case. There is no need to rely on civil precedent on the issue of destruction of evidence. There is ample criminal law, starting with the Supreme Court decision in *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488 U.S. 51 (1988), and the Ninth Circuit precedent cited by the government in docket 273, pp. 23-24. There is no need for this Court to turn away from existing

criminal precedent to apply "inherent authority" provided in civil caselaw.

Moreover, the facts of *Unigard* are distinguishable from the case at bar. In *Unigard,* an insurance company paid a claim on a yacht file they believed might have been caused by an electric heater. Believing they had an insufficient basis to make a third party claim against the heater manufacturer Lakewood, the insurance company allowed the heater to be disposed of and the vessel to be sold. *Unigard* at 365. Two years later, different attorneys for the insurer decided the heater manufacturer was potentially liable and filed suit. *Id*. A key finding of the court in *Unigard* was that the destruction of evidence "precluded Lakewood from <u>any</u> opportunity to inspect the evidence." *Id*. at 369 (emphasis added). In this matter, not only were the tire and nail retained and able to be inspected, the defendant's expert has inspected the material. The tire and nail were shipped to him on October 29, 2013. Based on this significant distinguishing fact, there is no basis for abandoning existing precedent in criminal law related to the

destruction of evidence, and adopt the defendant's proposal of using an extraordinary remedy from civil practice. The defendant's request to exclude Mr. Bolden should be denied.

      6.    Angelo Toglia

Even though this litigation is based on a *Daubert* motion, the defendant again fails to make an argument related to the *Daubert* standards of the relevance and reliability of Mr. Toglia's testimony. Instead, he continue to make collateral discovery arguments but provide no support in rule or in applicable precedent. The government has met all of its obligations under F.R.Cr.P 16(a)(1)(G), the section of the discovery rule directly applicable to expert witnesses, as well as Rule 16(a)(1)(F) on reports and examinations. Moreover, as Court can see by a review the defendant's attachments to docket 274, the defense has made additional requests for discovery, much of which has been provided by the government.

    The defense expert has access to all the substantive data necessary to make an independent analysis. At this point, it appears

that the defendant's expert is acting in the role of a consultant to assist the defense in preparing a cross-examination of Mr. Toglia. As such, they seek a detailed, step-by-step replay of Mr. Toglia's work. What they are seeking is the equivalent of a deposition. There is no such requirement in criminal practice, and the defendant has cited no precedent for his request. They now simply resort to threats of continuance. The government suspects such threats will have little impact on the Court. The defendant's request to exclude Mr. Toglia should be denied.

RESPECTFULLY SUBMITTED on January 28, 2014, in Anchorage, Alaska.

s/ Karen L. Loeffler<br>
KAREN L. LOEFFLER<br>
United States Attorney

s/ Bryan Schroder<br>
BRYAN SCHRODER<br>
Assistant U.S. Attorney<br>
United States of America

                                                          s/ Kathleen A. Duignan
                                                          KATHLEEN A. DUIGNAN
                                                          Special Assistant U.S. Attorney
                                                          United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2014,
a copy of the foregoing was served
via the CM/ECF system on all counsel
of record.

s/ Bryan Schroder
Office of the U.S. Attorney