FILED

NOV 01 2013

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH.

1
2
3
4
5
6
7
8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SNOHOMISH

9

10    The State of Washington,

11                        Plaintiff,                No. 13-1-01557-3

           vs.
12    WALKER, ERICK NATHANIEL               STATE'S MOTION FOR ORDER
                                            PROTECTING EVIDENCE DURING
13                        Defendant.        DEFENSE TESTING

14         COMES NOW the State of Washington and moves this court for a detailed, specific

15    order protecting the evidence in this case during defense testing by Mr. Kay Sweeney.  Counsel

16    for the defendant has informed the State that they have retained Kay Sweeney as an expert in

17    the above entitled cause.

18         The defendant is currently charged with First Degree Murder with a firearm

19    enhancement and four counts Drive-by Shooting.  The State has informed counsel that for trial

20    the State will add four counts of Assault in the First Degree with firearm enhancements, and add

21    one additional count of Drive-by Shooting.

22         A critical part of the State's case will be physical evidence: recovered guns and bullets.

23    Also critical will be testimony about bullets recovered from the scenes of the shootings and guns

24    recovered from the defendant's home pursuant to a search warrant.  Washington State Patrol

25    Forensic Scientist Brian Smelser examined the bullets and guns in this case. He concluded that

26    four specific bullets recovered after being fired into houses and cars in Lake Stevens were fired

1  from a specific .30 carbine caliber Ruger revolver recovered from the defendant's home.  He

2  also concluded that four other bullets recovered after being fired into cars in Marysville were

3  fired from a different specific .30 carbine caliber Ruger revolver recovered from the defendant's

4  home.

5          The defense has requested that the State release those items and many more items in

6  in evidence to Mr. Sweeney for the purpose of further testing.

7          The parties have made efforts toward drafting an agreed order, as was done for another

8  defense expert in this case, but were unable to reach an agreement acceptable to both parties.

9  The State's proposed order is attached hereto as Exhibit 1.

10         The State agrees the defense has a right to independent testing of the evidence.  Under

11  CrR 4.7(a) the burden is upon the State to establish the need for appropriate restrictions.  *State*

12  *v. Boyd,* 160 Wn.2d 424, 433-34 (2007).

13                      I. ARGUMENT IN FAVOR OF RESTRICTIONS

14         The particular individual that this defendant has chosen to examine evidence in this

15  case, Mr. Kay Sweeney, has a lengthy history of failing to comply with court orders.  He also

16  has a history of engaging in other actions that create significant concerns regarding his ability to

17  maintain the integrity of the evidence in this case.

18         By letter dated September 9, 2013 the State requested that Mr. Mestel provide the State

19  with a list of the evidence Mr. Sweeney wants to examine, along with a description of what Mr.

20  Sweeney plans to do with each piece of evidence.  In the letter to Mr. Mestel, counsel for the

21  State expressed particular interest *"…in anything he would do that would even potentially*

22  *change, damage, or in any way alter the evidence, either through the use of tools, chemicals, or*

23  *any other implement."*  No information has been provided to the State about what Mr. Sweeney

24  wants to do with the evidence in this case once it released to him.

25         Some of Mr. Sweeney's previous history of failing to comply with court orders and

26  altering evidence is established by the affidavits and pleadings attached hereto and

ORDER AUTHORIZING
TRANSPORTATION OF EVIDENCE FOR
EXAMINATION BY DEFENDANTS
EXPERTS– Page 2

**Snohomish County**
**Prosecuting Attorney - Criminal Division**
3000 Rockefeller Ave., M/S 504
Everett, Washington  98201-4046
(425) 388-3333 Fax: (425) 388-3572

1     incorporated herein by this reference. Some of the attached affidavits and pleadings were filed

2     in King County in connection with the murder case in State v. Conner Schierrman 06-1-06563-4

3     SEA:

4     Exhibit 2:     *Declaration of Shelly Warren*
Mr. Sweeney violated court order in State v. Morimoto Aggravated Murder case by failing to
5     return each of three separate batches of evidence as ordered. Instead of returning in 60 days
he kept batches of items for 93 days, 126 days, and 203 days. Also addresses repackaging
6     problems with trace evidence. Many items were initialed by someone other than Sweeney.

7     Exhibit 3:     *Declaration of Det. Rolf Norton* &
8     Exhibit 4:     *Declaration of Craig Peterson*
Mr. Sweeney failed to return evidence items in State v. McCloud Second Degree Murder case
9     for over a year.

10     Exhibit 5:     *Declaration of Christopher Anderson*
Mr. Sweeney failed to return evidence in State v. Lyons in Clallum County homicide even after
11     court issued order compelling Mr. Sweeney to return the items.

12     Exhibit 6:     *Declaration of Richard Wyant* &
13     Exhibit 7:     *Declaration of John Pavlovich*
Mr. Sweeney returned a gun to evidence it in different, inoperable, condition in State v.
14     Sidorchuk. Gun had shifted hammer pin and missing retainer clip.

15     Exhibit 8:     *Declaration of David Devault*
Mr. Sweeney was to examine a hat at his lab that was to remain in the custody of the detective
16     in State v. Brightman. Mr. Sweeney made concerning comments about altering the evidence
and would not allow the detective inside.

17     Exhibit 9:     State's Motion Opposing Independent Testing by Mr. Sweeney in Schierrman

18

19        Due to Mr. Sweeney's history, in Snohomish County Mr. Sweeney has been subject to

20     very specific, tightly controlled court orders. For example, in State v. Casey Nix 08-1-00630-6,

21     when presented with the State's concerns, Judge Krese ordered that Mr. Sweeney would be

22     allowed only one item of evidence at a time. He was to examine one item, return it to the

23     agency within a limited time frame, then he would be allowed to check out another item. A true

24     copy of the order entered by the court in that case is attached hereto as Exhibit 10.

25        In Clark County due to concerns about Mr. Sweeney's handling of evidence, the court

26     ordered significant restrictions including requiring Mr. Sweeney to video tape all of his actions

ORDER AUTHORIZING
TRANSPORTATION OF EVIDENCE FOR
EXAMINATION BY DEFENDANTS
EXPERTS– Page 3

**Snohomish County**
**Prosecuting Attorney - Criminal Division**
3000 Rockefeller Ave., M/S 504
Everett, Washington 98201-4046
(425) 388-3333 Fax: (425) 388-3572

involving evidence. A true copy of the Order and supporting documents related to the release of evidence to Mr. Sweeney in State v. Gramckow, Clark County 11-1-01584-0 is attached hereto as Exhibit 11.

Mr. Sweeney's failure to comply with court orders was the subject of controversy in the aggravated murder case in State v. Stenson WA Supreme Ct # 61965-4. Portions of pleadings are included as Exhibit 12. In that case the parties were arguing about whether Mr. Sweeney should be allowed to remove a primer cap from a bullet to allow additional DNA testing of the item. The crime lab had declined to perform that task as it was too dangerous. Mr. Sweeney however claimed that he could remove the cap safely by using the same amount of pressure to remove the cap as has been used to put the primer cap on. Instead, Mr. Sweeney's report reflects: "The bullet was positioned in a vise and a high speed rotary tool fitted with a cutting wheel was used to cut around the circumference of the bullet jacket at the shoulder of the ogive…" Exhibit 12 Sweeney 2/8/10 report at 2. He further altered the bullet evidence by, "A scalpel was used to create longitudinal scoring along the nose of the lead core up to the nose opening."

## II. CONCLUSION

In order to protect the integrity of the evidence in the present case, the State requests that the court order enter the State's proposed order attached as exhibit 1.

Dated this 31st day of October, 2013.

EDWARD E. STEMLER, #19175
Deputy Prosecuting Attorney

ORDER AUTHORIZING
TRANSPORTATION OF EVIDENCE FOR
EXAMINATION BY DEFENDANTS
EXPERTS– Page 4

Snohomish County
Prosecuting Attorney - Criminal Division
3000 Rockefeller Ave., M/S 504
Everett, Washington  98201-4046
(425) 388-3333 Fax: (425) 388-3572

# Exhibit 1

1
2
3
4
5
6
7
8
9

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

10

| STATE OF WASHINGTON, | ) | No. 13-1-01557-3 |
| Plaintiff, | ) | |
| | ) | ORDERING RELEASING |
| vs. | ) | EVIDENCE AND CONDITIONS |
| | ) | RELATED THERETO |
| WALKER, ERICK | ) | |
| Defendant. | ) | |

The defendant has retained Mr. Kay Sweeney as an expert witness for the purpose of examining certain items of evidence in this case. Based upon the pleadings filed, the court finds that restrictions upon the release of evidence to Mr. Kay Sweeney are necessary to protect the evidence in this case:

**IT IS HEREBY ORDERED:**

1. Evidence related to this case is stored in three different property rooms and this order applies to evidence in this case located at the Snohomish County Sheriff's Office(SCSO) , Marysville Police Department and Lake Stevens property rooms.

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 1

**Snohomish County**
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333 Fax(425)3883572

2. The SCSO, Marysville Police Department, and Lake Stevens Police Department shall temporarily release to the defendant's expert witness, Mr. Kay Sweeney, certain items of evidence as set forth in this order. The will be released up to 5___ items at a time. Mr. Mestel, attorney for the defendant shall advise Detective Pince which 5_____ five items from batch one are to be released first.

3. Once the first 5____ items from batch one have been returned to the correct agency property room, Detective Pince will be responsible for finding out from the property rooms whether the evidence was returned in compliance with this order. Detective Pince or his designee must make that determination within two business days and then notify Mr. Mestel either that the next 5___ items are ready to be picked up or that there was a problem with the items returned.

4. If the items were returned in compliance with this order then the property room will release the next 5___ items from batch 1 to Mr. Sweeney. Mr. Mestel will advise Detective Pince which 5____ items from batch 1 are to be released next. This procedure shall be followed until all items from batch 1 have been released and returned in compliance with this order. Then the same procedure will go forward with the items in batch 2 until those items have been released and returned in compliance with this order. Then the same procedure will go forward with the items in batch 3 until those items have been released and returned in compliance with this order.

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 2

**Snohomish County**
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333 Fax(425)3883572

## ITEMS FOR BATCH ONE

SCSO case # 13-8940 items:

| | |
|---|---|
| 72 | 5 live rounds (.45)- from cylinder of revolver front passenger floorboard |
| 73 | Single live round (.45)-front driver's floor board |
| 77 | Plastic gun case- gun found inside-front seat floor |
| 78 | 2 clips with 8 rounds each (30-06)-passenger seat |
| 79 | Revolver (.45) serial #7065-front seat floor |
| 80 | Rifle M1 30 serial #3364518- backseat floor board |
| 105 | Empty ammo box (.30 carbine)-Room N downstairs closet |
| 111 | .30 carbine casing-Room D top bedside table |
| 123 | 1 box .30 carbine rounds 36 count-Room D Lower shelf bedside table |
| 134 | Black gun case Placard 14- Room D closet |
| 135 | .30 carbine caliber Ruger Blackhawk Old Model serial # 3594 |
| 136 | .30 carbine caliber Ruger Blackhawk New Model serial # 51-43184 |
| 139 | Ruger box w/spent brass various calibers Placard 16-Room E |
| 148 | 4 cowboy holsters & 2 belts Placard AA-Room E closet |
| 202 | Fired bullet from Hurst Dodge Charger vehicle-WA 167 VQF |

SCSO case # 13-8944

| | |
|---|---|
| 1 | Sheetrock with defect-bathroom wall 318 Nyden Farm Rd. |
| 2 | Bullet-bathroom wall 318 Nyden Farm Rd |
| 4 | Metal bullet fragment- 318 Nyden Farm Rd. |

Lake Stevens case #13-1335

| | |
|---|---|
| JW 1 | One possible bullet wrapped in insulation- 790 E. Lakeshore Dr. |
| JW 2 | One piece of drywall with possible bullet damage-790 E. Lakeshore Dr. |

## ITEMS FOR BATCH TWO

SCSO case #13-8940

| | |
|---|---|
| 62 | Victim right shoe-ME Evidence #23 |
| 63 | Victim left shoe-ME Evidence #24 |
| 64 | Victim green T-shirt-ME Evidence #25 |
| 65 | Victim grey sweatshirt-ME Evidence #26 |
| 66 | Victim black pants-ME Evidence #27 |
| 101 | Large green ammo can w/1 box of .45 auto bullets-Room C |
| 102 | Small green ammo can w/2 boxes rifle rounds-Room C |
| 103 | Two empty ammo boxes 9x18 Makarov-Room N |

Lake Stevens case #13-1358

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 3

Snohomish County
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333  Fax(425)3883572

JW 1   Bullet in envelope-1818 114th Ave. NE Lake Stevens
JW 2   One drywall cut out-1818 114th Ave. NE Lake Stevens

Marysville case # 13-3823

1      Bullet-Recovered from back seat of Nissan WA 045 XZM
2      Bullet-Recovered from Chev. Tahoe WA AIE 1441
8      Bullet-Recovered from Pontiac WA AJF 2058
13     Bullet-Recovered from GMC Envoy 097 YQZ
14     Piece of metal from GMC Envoy 097 YQZ


**ITEMS FOR BATCH THREE**

SCSO case # 13-8940

104    Empty ammo boxes (30-06, .44 Magnum)-Room N
106    Small green ammo box containing rifle rounds-Room N
107    Large green ammo box containing .45 & 12 GA shotgun shells-Room N
108    Small green ammo box containing rifle rounds-Room N
113    Cardboard box of rifle ammo .308 & 7.62x51-Room D
122    5 12 GA shotgun shells 2 ¾" Placard 9- Room D
127    2 boxes .45-70 325 grain rounds-Room D
128    2 boxes .308 Winchester rounds Placard 13-Room E
129    10 unknown cal. magazines in green carriers Placard 12-Room E
131    Double barrel shotgun, 12GA Serial #C669810-11 Placard 6-Room D
132    Lever Action 12GA shotgun serial #0800225 Placard 5-Room D
133    .44 magnum revolver Serial #58-79858- Room E
134    Black gun case Placard 14- Room D
138    Green M-1 Bandolier pouches (6) on single belt Placard 17-Room E
141    Semi-auto Rifle 9mm serial #Y000257 Placard 18- Room E
142    Lever action rifle serial #99126083 Placard 19-Room E
143    Rifle 8mm model 98 serial #AVK58 Placard 20-Room E
144    Lever action rifle .45 serial #94209875 Placard 21-Room E
145    Rifle .308 w/magazine serial #A026359 Placard 22-Room E
146    Lever action rifle model 95 serial #unknown Placard 23- Room E
147    Rifle .44 model 94AE serial #6562793 Placard 24- Room E

    5. Defense counsel and Mr. Sweeney agree to return all items of evidence to the

same property room where the items were picked up within 7_____ calendar days of

receiving the items of evidence.  Unless granted permission by this Court during the 7___

**Snohomish County**
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333  Fax(425)3883572

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 4

day period, or by agreement of the parties, Mr. Sweeney will not be permitted to possess the items for more than 7___ calendar days from the time he receives the evidence items from the property room. The expectation is that all 5___ items will be picked up on the same day and that when returned all 5___ items will be returned on the same day. Mr. Sweeney is expected to pick up the first batch within 7 days of the entry of this order and he will follow the property room procedures for release of evidence. Mr. Sweeney is expected to pick up subsequent items within ___ days of Detective Pince notifying Mr. Mestel that the prior batch was returned in compliance with this order.

6. Mr. Sweeney shall keep each of the evidence items in his personal possession in his locked evidence vault for the entire time the item is in his possession except when examining the item. Mr. Sweeney shall keep a log of all individuals who view or examine each individual item of evidence in its unpackaged state. For each batch, defense counsel shall provide a copy of that log to the State no later than five days after that batch is returned.

7. Mr. Sweeney and any other person assisting him shall not damage, destroy, disassemble, or alter the evidence items. All persons who view or examine the evidence items identified above shall wear latex gloves when examining the evidence. The evidence items shall be returned in as similar as possible a condition to when they were received including packaging. Mr. Sweeney and any individual he has assist shall employ forensically accepted procedures to repackage and seal the evidence items he examines.

8. No evidence item identified above, any portion of such items, nor any trace or samples taken from such items shall be consumed or altered without notice to the State and prior approval by this Court. Any testimony about samples or trace that is consumed

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 5

**Snohomish County**
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333  Fax(425)3883572

in violation of this order is inadmissible absent separate stipulation from the State. Any portion, trace, or sample taken from any of the above evidence items shall be returned with the original evidence items to SCSO either packaged within the original evidence item or as a separate evidence item packaged and labeled with detailed documentation as to which original evidence item the separate item was removed from.

9. Defendant's attorney shall provide to the State a detailed written explanation from Mr. Sweeney of any and all alterations or changes in any of the evidence items identified above that occurred while the item was released to Mr. Sweeney. That written explanation shall be provided to the State within five days of the date the evidence item is returned.

10. The defendant waives any objection to the chain of custody from the time the items are released from the property rooms pursuant to this stipulation.

11. The defendant assumes all risk of loss or damage of evidence released to Mr. Sweeney and waives any objection for failure to preserve evidence in the event items are lost or damaged, or returned in a different condition. Further, if any item is lost or damaged while in defense custody, the State shall be permitted to present evidence and testimony regarding the evidence, including an explanation for the absence of the evidence, photographs of the evidence, and expert opinions regarding the evidence at trial just as if the item still existed.

12. If any of the provisions of this Order are not strictly complied with, Mr. Sweeney may be subject to sanctions by this court, as authorized by CrR 4.7(h)(7), including contempt of court, pursuant to RCW 7.21.020 *et seq.*

13. If defendant endorses Mr. Sweeney as an expert witness in this case, Mr.

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 6

**Snohomish County**
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333 Fax(425)3883572

Case 3:13-cr-00008-SLG   Document 294-1   Filed 01/31/14   Page 11 of 79

Sweeney shall timely (minimum 4 weeks prior to trial) submit a report to the State detailing his forensic evaluation of the evidence items identified above. That report shall disclose the forensic testing done, the results, and the expert's opinions and conclusions, pursuant to CrR 4.7(g). This report must be provided to the State at least one week prior to the State's pretrial interview of Mr. Sweeney.

14. A copy of this order shall be served on Mr. Sweeney by defense counsel prior to any evidence being released to Mr. Sweeney.

15. Mr. Sweeney shall maintain a video recording during any and all handling, examination, and testing of each item of evidence that shall be provided to the State if the defense endorses Mr. Sweeney as a witness, or if the defense contests in any way the condition or chain of custody of any item of evidence.

Dated this _____ day of November, 2013.


_____
JUDGE


Presented by:


_____
ED STEMLER, # 19175
Deputy Prosecuting Attorney


_____
MARK MESTEL #8350
Attorney for Defendant

ORDER RELEASING EVIDENCE
AND CONDITIONS RELATED THERETO - 7

**Snohomish County**
Prosecuting Attorney
3000 Rockefeller Ave. MS 504
Everett, WA 98201-4046
(425)388-333 Fax(425)3883572

# Exhibit 2

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| STATE OF WASHINGTON, | ) | No. 06-1-06563-4 SEA |
|---|---|---|
| Plaintiff, | ) | |
| | ) | DECLARATION OF |
| vs. | ) | SHELLEY WARREN |
| CONNER SCHIERMAN. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

I, SHELLEY WARREN, declare as follows:

1.      I am an evidence technician with the Kent Police Department.  I am over the age of 18 and I am competent to testify to the matters set forth herein.

2.      In the course of my duties as an evidence technician, I became familiar with evidence in the case of State v. John Morimoto, King County Case No. 03-1-02704-5.  In that case the defendant was charged with two counts of Aggravated Murder in the First Degree and one count of Attempted Murder in the First Degree.  Kay Sweeney was endorsed by the defense as an expert witness.

3.      Pursuant to court order, Mr. Sweeney was permitted to take custody of evidence in three batches.  The first order was dated September 23, 2005, and provided

DECLARATION OF SHELLEY WARREN - 1

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

EXHIBIT A

that Mr. Sweeney was to return the evidence within 60 days. He took custody of the first batch of evidence on October 4, 2005. He returned it 93 days later, on January 5, 2006.

4.     The second order was dated December 27, 2005, and again provided that Mr. Sweeney was to return the evidence within 60 days. He took custody of the second batch of evidence on January 5, 2006. He returned it 126 days later, on May 11, 2006.

5.     The third order was dated May 8, 2006, and provided that Mr. Sweeney was to return the evidence within 60 days. He took custody of the third batch of evidence on May 11, 2006. He returned it 203 days (i.e., seven months) later, on November 30, 2006.

6.     Each of the court orders permitting Mr. Sweeney to have custody of the evidence also required him to keep a log of all individuals who viewed or examined the evidence in its unpackaged state. In addition, each order included a provision that Mr. Sweeney was to produce a report that disclosed his results, opinions and conclusions if he subsequently was endorsed as a defense-witness. It is my understanding that he was so endorsed.

7.     On March 13, 2007, as trial in State v. Morimoto approached, I received from Don Raz, the trial deputy, an appendix to Mr. Sweeney's report. That appendix contained references to items of trace evidence collected by Mr. Sweeney that were different from the evidence delivered to him. Mr. Raz could not tell whether these trace items referenced in Mr. Sweeney's report had been returned to the Kent Police. He requested that I check to see whether any of the trace evidence collected by Mr. Sweeney had been packaged and returned inside packaged Kent Police evidence. I

DECLARATION OF SHELLEY WARREN - 2

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

subsequently examined a couple of the items and found that the original Kent Police

evidence had been repackaged by Mr. Sweeney. However, I could not locate any of the

items Mr. Sweeney referenced in his report. I told Mr. Raz this and documented my

search in the report that is attached hereto.

    8.    It is my understanding that Mr. Raz subsequently obtained a court order to

compel Mr. Sweeney to return the items of trace evidence to the Kent Police.

    9.    On April 4, 2007, Mr. Sweeney contacted the Kent Police to make

arrangements to return the trace evidence. He wanted to return 80 items of evidence in

one envelope. I told Mr. Sweeney the evidence would not be accepted unless

packaged individually.

    10.    On April 5, 2007, Mr. Sweeney brought in the evidence items. They were

inventoried by me. Seventy-eight of the items were packaged in zip-lock bags. Forty-

six of those items had initials other than Mr. Sweeney's on them, with dates ranging

from 10/26/06 to 12/5/06.

    11.    Mr. Sweeney also altered Kent Police evidence in other ways. For

example, he removed evidence tape identifying bloodstains on bed covers, and marked

them as separate pieces of evidence.

    I declare under penalty of perjury under the laws of the State of Washington that

the foregoing is true and correct to the best of my knowledge.

    Signed this _17_ day of October, 2007 at Seattle, Washington.

            Respectfully submitted,

            By: _____
                 SHELLEY WARREN

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF SHELLEY WARREN - 3

# Exhibit 3

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 06-1-06563-4 SEA |
| Plaintiff, | ) | |
| | ) | DECLARATION OF |
| vs. | ) | DETECTIVE ROLF NORTON |
| | ) | |
| CONNER SCHIERMAN. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

I, ROLF NORTON, declare as follows:

1.      I am a detective with the Seattle Police Department. I am over the age of 18 and I am competent to testify to the matters set forth herein.

2.      I was the lead detective in <u>State v. Troy McCloud</u>, King County Case No. 06-1-00417-1. In that case the defendant is charged with Murder in the Second Degree while armed with a shotgun. Trial is pending.

3.      Kay Sweeney was endorsed by the defense as an expert witness. A number of evidence items, 28 in total, were delivered to Mr. Sweeney. The evidence consisted of a shotgun, multiple casings and other ballistics evidence, the suspect's

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF DETECTIVE ROLF NORTON - 1

**EXHIBIT B**

clothing, the victim's clothing, and other items from King County Medical Examiner's Office.

    4.    The evidence was delivered to Mr. Sweeney in two batches; one on September 28, 2006, and a second on November 7, 2006, pursuant to a court order. My understanding was that the items would be returned by the end of November 2006 and certainly by the end of the year (2006), as evidenced in the attached Order on Criminal Motion Transferring Evidence.

    5.    As of today's date, October 15, 2007, Mr. Sweeney has not returned a single item of evidence. He has had some of the evidence in this murder case for more than a year, and the remainder of the evidence for almost a year, without returning it. In addition to the delay, as the lead detective I am concerned about the condition of the evidence items when they are eventually returned.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.

Signed this __15__ day of October, 2007 at Seattle, Washington.

Respectfully submitted,

By: _____
ROLF NORTON

**Norm Maleng**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF DETECTIVE ROLF NORTON - 2

# Exhibit 4

```
 1

 2

 3

 4

 5

 6
              SUPERIOR COURT OF WASHINGTON FOR KING COUNTY
 7
      STATE OF WASHINGTON,                )
 8                                        )   No. 06-1-06563-4 SEA
                               Plaintiff, )
 9                                        )   DECLARATION OF
              vs.                         )   CRAIG PETERSON
10                                        )
      CONNER SCHIERMAN,                   )
11                                        )
                               Defendant. )
12                                        )
                                          )
13                                        )
```

I, CRAIG PETERSON, declare as follows:

    1.    I am over the age of 18 and I am competent to testify to the matters set forth herein.

    2.    I am a Senior Deputy Prosecuting Attorney assigned to try the case of State v. Troy McLeod, King County Case No. 06-1-00417-1. In that case the defendant is charged with Murder in the Second Degree. Kay Sweeney has been endorsed by the defense as an expert witness.

    3.    As detailed in the Declaration of Rolf Norton, a total of 28 evidence items were delivered to Mr. Sweeney, consisting of a shotgun, multiple casings, other

**Norm Maleng**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF CRAIG PETERSON - 1

## EXHIBIT C

ballistics evidence, the suspect's clothing, the victim's clothing, and other items from King County Medical Examiner's Office.

4.    The evidence was delivered to Mr. Sweeney on September 28, 2006, and November 7, 2006, pursuant to a court order. The items were to be returned by the end of November 2006 and certainly by the end of the year (2006).

5.    As of today's date, October 15, 2007, Mr. Sweeney has not returned any of the evidence.

6.    On June 5, 2007, I spoke by telephone with Al Kitching, the defense attorney in State v. McLeod, in order to obtain the return of the evidence items from Mr. Sweeney. Mr. Kitching has advised me that he, too, has attempted to secure the return of evidence from Mr. Sweeney, but has been unable to obtain even a response from his own expert witness.

7.    As of this date, October 15, 2007, Mr. Sweeney has had evidence in the McLeod case for more than a year, and the remainder of the evidence for almost a year, without returning it.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge.

Signed this ___16___ day of October, 2007 at Seattle, Washington.

Respectfully submitted,

By: _Craig Pex_____
CRAIG PETERSON

DECLARATION OF CRAIG PETERSON - 2

**Norm Maleng**, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

# Exhibit 5

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Plaintiff, | ) | No. 06-1-06563-4 SEA |
| | ) | |
| | ) | DECLARATION OF |
| vs. | ) | Christopher Anderson |
| | ) | Deputy Prosecuting Attorney |
| CONNER SCHIERMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Christopher Anderson declares and states the following:

1.    I am over 18 years of age, I am a Deputy Prosecutor in King County and have personal knowledge of and am competent to testify concerning the following:

2.    In the course of my duties as a Deputy Prosecutor on the case number 02-1-07940-3, State v. Bobby Joe Lyons I arranged for the transfer of the bullets recovered from the victim's body and evidence from another homicide in Clallum County. The evidence consisted of two .38 or .357 caliber bullets recovered from the victim and the victim clothing in the State v. Bobby Joe Lyons, King County Case No. 02-1-07940-3; and the Clallum County evidence consisted of a Ruger .357 handgun, fired and unfired bullets from that gun, test targets and the victim's clothing.

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF DEPUTY PROSECUTOR

## EXHIBIT D

1     3.     The evidence in the State v. Bobby Joe Lyons was returned without incident, but the Clallum County evidence that Mr. Sweeney received on July 12, 2007 was scheduled to be returned by the end of July and Mr. Sweeney failed to meet that deadline.

4.     I called Mr. Sweeney on July 20th and left a message to find out when he intended to return the evidence from the Clallum County case. Mr. Sweeney did not return my call.

5.     On Friday, July 27, 2007 8:04 AM I e-mailed Mr. Sweeney requesting the return of the Clallum County evidence because we needed to re-test the bullets and firearm. Mr. Sweeney did not respond to the e-mail. The Trial date was scheduled for August 21, 2007.

6.     July 30, 2007 I called Mr. Sweeney and left a message he did not return my call.

7.     On Tuesday, July 31, 2007 at 10:15 AM, I e-mailed Mr. Sweeney and defense counsel Pete Connick requesting that the evidence be returned. Mr. Sweeney did not respond to the e-mail.

8.     I called Mr. Sweeney on August 6 and 8th of 2007 and left messages. Mr. Sweeney never answered his phone nor did he return any of my calls.

9.     On August 10, 2007 an order was issued by Judge Canova compelling Mr. Sweeney to return the Clallum County Evidence by August 16, 2007. Mr. Sweeney failed to return the evidence by the court ordered deadline.

10.     On August 21, 2007 the trial date was moved to September 12, 2007.

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF DEPUTY PROSECUTOR

11. On August 29, 2007 Mr. Sweeney finally returned the evidence. The court accelerated the trial date to September 3, 2007 because Mr. Connick finished a pending trial sooner than expected.

12. At the time the trial commenced on September 3, 2007 we did not have a report from Mr. Sweeney and due to his delay we were not able to get results from the re-test, until we were two weeks into the trial.

13. I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 16, day of October, 2007, at Seattle, Washington.


Christopher L. Anderson
Deputy Prosecuting Attorney

DECLARATION OF DEPUTY PROSECUTOR

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

# Exhibit 6

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 06-1-06563-4 SEA |
| Plaintiff, | ) | |
| | ) | DECLARATION OF |
| vs. | ) | RICHARD WYANT |
| | ) | |
| CONNER SCHIERMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

RICHARD WYANT declares and states the following:

1.    I am over 18 years of age, have personal knowledge of and am competent to testify concerning the following:

2.    I am a forensic scientist employed by the Washington State Patrol Laboratory, as a ballistics examiner.

In the course of my duties at the Crime Lab I examined evidence in the case of State v. Dimitri Sidorchuk, King County Case No. 06-1-06572-3; specifically, evidence item KMD-1, a S.W.D. (Cobray), model M-11/NINE mm, 9mm Luger caliber semiautomatic pistol that I understood was part of a homicide investigation.  KMD-1 was to be tested for operability and functionality.

3.    On December 17, 2006, I completed my testing of KMD-1.  My report concluded that the 9mm Luger pistol was operable ("functional as received").  A copy of

DECLARATION OF RICHARD WYANT - 1

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296 0955

EXHIBIT E

1  my lab report, 106-002863, Request No. 0001,0002, 0004, dated December 17, 2006, is

2  attached hereto.

3      4.    KMD-1 subsequently was resubmitted for retesting by the Crime Lab. In

4  examining the weapon, I discovered that it was inoperable with a shifted hammer pin and

5  missing retainer clip. A copy of my report dated October 3, 2007, is attached hereto. A

6  copy of my lab report, 106-002863, Request No. 0007, is attached hereto.

7      I declare under penalty of perjury under the laws of the State of Washington that

8  the foregoing is true and correct.

9

10     Dated this  16th day of October, 2007, at Seattle, Washington.

11

12  RICHARD WYANT

13

14

15

16

17

18

19

20

21

22

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF RICHARD WYANT - 2



STATE OF WASHINGTON
# WASHINGTON STATE PATROL
2203 Airport Way South, Suite 250 • Seattle, Washington 98134-2028 • (206) 262-6020

## CRIME LABORATORY REPORT

| | | | |
|---|---|---|---|
| **Agency:** | King County Sheriff's Office | **Laboratory Number:** | I06-002864 |
| **Detective:** | J.K. Pavlovich | **Request Numbers:** | 0001,0002, |
| **Victims:** | Sun, Sophea | | 0004 |
| | Nhem, Savantha | **Agency Case Number:** | 06-213688 |
| | Belk, William S. | | |
| **Suspect:** | Sidorchuk, Dimitri V. | | |

**Evidence Submitted:**

RECOVERED FROM → **Items #JKP-17, #JKP-18:** Two sealed manila envelopes each containing one fired
(V) SUN AT AUTOPSY     bullet in a KCME envelope. M-11 PISTOL

RECOVERED FROM → **Item #JKP-37:** One sealed white envelope containing one fired bullet in a KCME
(V) NHEM AT AUTOPSY     envelope. M-11 PISTOL

RECOVERED FROM → **Item #JKP-54:** One sealed white envelope containing one fired bullet in a manila
(V) VEHICLE     envelope. M-11 PISTOL

**Item #KMD-1:** One sealed white pistol box containing one S.W.D.(Cobray), model
M-11/NINE mm, *9mm Luger* caliber semi-automatic pistol, serial number
**86-0021007.**

**Item #KMD-27:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (WINCHESTER brand).

**Item #KMD-28:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (WINCHESTER brand).

**Item #KMD-29:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (G.F.L. brand).

**Item #KMD-30:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (WINCHESTER brand).

**Item #KMD-31:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (WINCHESTER brand).

**Item #KMD-32:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (WINCHESTER brand).

**Item #KMD-33:** One sealed brown paper bag containing one fired *40 S&W* cartridge
case (WIN NT brand).

**Item #KMD-34:** One sealed brown paper bag containing one fired *9mm Luger* cartridge
case (WIN brand).

R.T. Wyant, Forensic Scientist, Firearm and Toolmark Section          12/19/06
                                                                       Date

Page 1 of 5 RTW

ATTACHMENT A

# CRIME LABORATORY REPORT

| | | | |
|---|---|---|---|
| **Agency:** | King County Sheriff's Office | **Laboratory Number:** | 106-002864 |
| **Detective:** | J.K. Pavlovich | **Request Numbers:** | 0001,0002, |
| **Victims:** | Sun, Sophea | | 0004 |
| | Nhem, Savantha | **Agency Case Number:** | 06-213688 |
| | Belk, William S. | | |
| **Suspect:** | Sidorchuk, Dimitri V. | | |

**Evidence Submitted (continued):**

**Item #KMD-35:** One sealed brown paper bag containing one fired *9mm Luger* cartridge case (WIN brand).

**Item #KMD-36:** One sealed brown paper bag containing one fired *9mm Luger* cartridge case (SPEER brand).

**Item #KMD-37:** One sealed brown paper bag containing one fired *9mm Luger* cartridge case (WIN brand).

**Item #KMD-38:** One sealed brown paper bag containing one fired *9mm Luger* cartridge case (WIN brand).

**Item #KMD-39, #KMD-40, #KMD-41:** Three sealed brown paper bags each containing one fired *40 S&W* cartridge case (WIN brand).

**Item #KMD-42, #KMD-43, #KMD-44, #KMD-45:** Four sealed brown paper bags each containing one fired *9mm Luger* cartridge case (WIN brand).

**Item #KMD-46:** One sealed brown paper bag containing two fired *9mm Luger* cartridge cases (WIN brand).

**Item #MMM-1, #MMM-2, #MMM-3, #MMM-4, #MMM-5, #MMM-6, #MMM-7:** Seven sealed white envelopes each containing one fired *9mm Luger* cartridge case (WIN brand) in a coin envelope.

**Item #MMM-8, #MMM-9:** Two sealed brown paper bags each containing one fired *9mm Luger* cartridge case (WIN brand).

**Item #MMM-25:** One sealed brown paper bag containing one fired *9mm Luger* cartridge case (WIN brand).

*REAR DRIVER SIDE FLOOR →* **Item #SMP-2:** One sealed manila envelope containing one fired bullet. *N-11 PISTOL*

*REAR PASS. SIDE FLOOR →* **Item #SMP-16:** One sealed manila envelope containing one fired bullet. *N-11 PISTOL*

*REAR PASS. SIDE SEAT →* **Item #SMP-17:** One sealed manila envelope containing one fired bullet fragment. *LIKELY N-11 PISTO*

*REAR PASS. SIDE SEAT →* **Item #SMP-18:** One sealed manila envelope containing one fired lead bullet fragment. *?*

*REAR PASS. SIDE SEAT →* **Item #SMP-19:** One sealed manila envelope containing one fired bullet. *N-11 PISTOL*

*DRIVER SIDE UNI- BODY →* **Item #SMP-27:** One sealed manila envelope containing fired bullet fragments. *LIKELY .40 TAURUS.*

**Item #SMP-29:** One sealed white pistol box containing one TAURUS, model PT140 PRO, *40 S&W* caliber semi-automatic pistol, serial number SZC99170. One compatible magazine.

**Other:** Drawings and digital photos (CDRx2) from KCSO of scene and vehicle

R.T. Wyant, Forensic Scientist, Firearm and Toolmark Section          12/17/06
                                                                    Date

Page 2 of 5 R&W



# CRIME LABORATORY REPORT

|  |  |  |  |
|---|---|---|---|
| **Agency:** | King County Sheriff's Office | **Laboratory Number:** | 106-002864 |
| **Detective:** | J.K. Pavlovich | **Request Numbers:** | 0001,0002, |
| **Victims:** | Sun, Sophea |  | 0004 |
|  | Nhem, Savantha | **Agency Case Number:** | 06-213688 |
|  | Belk, William S. |  |  |
| **Suspect:** | Sidorchuk, Dimitri V. |  |  |

## Procedures, Results and Conclusions:

### Firearms Examination:

The SWD M-11 pistol, **Item #KMD-1**, was examined, test fired and determined to be functional as received. The trigger pull was measured and determined to be approximately 5-6 pounds.

The TAURUS pistol, **Item #SMP-29**, was examined, test fired and determined to be functional as received. The trigger pull was measured and determined to be approximately 5-6 pounds

### Bullet Examination:

The submitted bullets were examined and microscopically compared to tests fired in the submitted firearms.

It was determined that the bullets in Items **#JKP-17, #JKP-18, #JKP-37, #JKP-54, #SMP-2, #SMP-16, #SMP-19** were fired from the SWD M-11 pistol, **Item #KMD-1**.

Although class characteristics were similar, sufficient microscopic markings on Item **#SMP-17** were not observed for identification to the SWD M-11 pistol, **Item #KMD-1**.

Item **#SMP-18** is not identifiable to a particular firearm.

Although class characteristics were similar, sufficient microscopic markings on Item **#SMP-27** were not observed for identification to the TAURUS pistol, **Item #SMP-29**.

### Cartridge Case Examination:

The submitted cartridge cases were examined and microscopically compared to tests fired in the submitted firearms.

It was determined that all 10 of the *40 S&W* cartridge cases in Items **#KMD-27, #KMD-28 , #KMD-29, #KMD-30, #KMD-31, #KMD-32, #KMD-33, #KMD-39, #KMD-40,** and **#KMD-41** were fired in the TAURUS pistol, **Item #SMP-29**.

R.T. Wyant, Forensic Scientist, Firearm and Toolmark Section

12/17/06
Date

Page 3 of 5 RfW

# CRIME LABORATORY REPORT

| | | | |
|---|---|---|---|
| **Agency:** | King County Sheriff's Office | **Laboratory Number:** | 106-002864 |
| **Detective:** | J.K. Pavlovich | **Request Numbers:** | 0001,0002, |
| **Victims:** | Sun, Sophea | | 0004 |
| | Nhem, Savantha | **Agency Case Number:** | 06-213688 |
| | Belk, William S. | | |
| **Suspect:** | Sidorchuk, Dimitri V. | | |

*Procedures, Results and Conclusions:*

## Cartridge Case Examination (continued):

It was determined that all 21 of the *9mm Luger* cartridge cases in Items #KMD-34, #KMD-35, #KMD-36, #KMD-37, #KMD-38, #KMD-42, #KMD-43, #KMD-44, #KMD-45, #KMD-46 (2 casings), #MMM-1, #MMM-2, #MMM-3, #MMM-4, #MMM-5, #MMM-6, #MMM-7, #MMM-8, #MMM-9, and #MMM-25 were fired in the SWD M-11 pistol, Item #KMD-1.

## Field Examination:

On July 23, 2006, assistance was provided to the King County Sheriff's Office in the examination of a blue Toyota Corolla, Washington license 843-NRQ, VIN 1NXAE91A3LZ137041. The examination took place at the Seattle Police Department impound garage located on Airport Way S. My role was limited to the placement of trajectory rods for the purposes of documentation of apparent bullet paths for the case detective and the major accident reconstruction team. The vehicle had two flat tires at the time of examination.

The observed bullet defects were numbered clockwise from the VIN plate on the dash of the vehicle with a total of sixteen defects. During the placement of the trajectory rods, some additional bullets were observed in the vehicle and were recovered by the case detective.

The Total Station drawings were submitted from the data obtained during the examination of the vehicle. The trajectory angles in the drawings, which are approximate, are consistent to measurements taken and are an accurate representation of what I observed during my examination.

The drawings document eleven bullet defects/paths entering the vehicle, with seven originating forward of the vehicle and entering the front passenger door. One originating slightly rear of the vehicle, entering the front passenger door. Two originating from the rear passenger side of the vehicle, entering the trunk area. One defect (Hole #11) originated from the rear driver side of the vehicle and entered in the lower inside frame of the rear driver side door. The bullet recovered (**Item #SMP-27**) from the rear driver side uni-body was consistent to being fired from the TAURUS pistol, **Item #SMP-29**. The rear driver side door was open when this shot was fired. All other bullets recovered from the vehicle were identified to the SWD (Cobray) pistol, **Item #KMD-1**.

R.T. Wyant, Forensic Scientist, Firearm and Toolmark Section      12/17/06   Date

# CRIME LABORATORY REPORT

| | | | |
|---|---|---|---|
| **Agency:** | King County Sheriff's Office | **Laboratory Number:** | 106-002864 |
| **Detective:** | J.K. Pavlovich | **Request Numbers:** | 0001,0002,0004 |
| **Victims:** | Sun, Sophea | **Agency Case Number:** | 06-213688 |
| | Nhem, Savantha | | |
| | Belk, William S. | | |
| **Suspect:** | Sidorchuk, Dimitri V. | | |

## Field Examination(continued):

There were four additional bullet defects/paths observed during this examination that were not included in the submitted total station drawings:

○ Bullet strike on the rear driver wheel. The non-penetrating graze field tested positive for the presence of copper and lead. The trajectory of this bullet strike could not be determined.

○ Defect consistent to a non-perforating bullet strike on the rear driver side wheel well. The trajectory of this possible bullet strike could not be determined, although it originated from the rear driver side of the vehicle.

○ Defect consistent to an exiting perforating bullet strike on the driver side windshield and was not examined further, although it likely originated from the passenger side of the vehicle along with the other bullet paths.

○ A possible bullet path entering the front passenger side door window area and traveling through the passenger seat back. Trajectory angles could not be determined due to the pliability of the seat material. The bullet was not recovered during the examination.

Evidence in connection with this case (fired cartridge cases) will be entered into the Washington State ballistic imaging system (IBIS/NIBIN). In the event of a possible match, the submitting agency will be notified.

_____
R.T. Wyatt, Forensic Scientist, Firearm and Toolmark Section

12/17/06
Date





STATE OF WASHINGTON
# WASHINGTON STATE PATROL
2203 Airport Way South, Suite 250 • Seattle, Washington 98134-2045 • (206) 262-6020

## CRIME LABORATORY REPORT

**Agency:** King County Sheriff's Office
**Detective:** J.K. Pavlovich
**Victims:** Sun, Sophea
Nhem, Savantha
Belk, William S.
**Suspect:** Sidorchuk, Dimitri V.

**Laboratory Number:** 106-002864
**Request Number:** 0007

**Agency Case Number:** 06-213688

## Evidence Submitted:

**Item #KMD-5:** One sealed white pistol box containing one S.W.D. magazine.
**Item #KMD-11:** One sealed brown paper sack containing one fired bullet fragment.
**Item #KMD-14:** One sealed brown paper sack containing one fired bullet fragment.
**Item #KMD-15:** One sealed brown paper sack containing one fired bullet fragment.
**Item #KMD-16:** One sealed brown paper sack containing one fired bullet.
**Item #KMD-17:** One sealed brown paper sack containing four fired bullet fragments.
**Item #KMD-18:** One sealed brown paper sack containing one fired bullet fragment.
**Item #KMD-19:** One sealed brown paper sack containing one fired bullet fragment.
**Item #KMD-23:** One sealed white envelope containing one lead fragment.
**Item #KMD-25:** One sealed manila envelope containing one fired bullet fragment.
**Item #KMD-26:** One sealed manila envelope containing one fired bullet fragment.
**Item #MMM-26:** One sealed brown paper sack containing one fired bullet jacket.
**Item #MMM-27:** One sealed manila envelope containing one fired bullet fragment.

## Previously examined items:

**Item #KMD-1:** One sealed white pistol box containing one S.W.D.(Cobray), model M-11/NINE mm, *9mm Luger* caliber semi-automatic pistol, serial number 86-0021007.

**Item #SMP-29:** One sealed white pistol box containing one TAURUS, model PT140 PRO, *40 S&W* caliber semi-automatic pistol, serial number SZC99170. One compatible magazine.

_____                                    10/3/07
R.T. Wyant, Forensic Scientist, Firearm and Toolmark Section          Date

Page 1 of 2 RtW

ATTACHMENT B

# CRIME LABORATORY REPORT

**Agency:** King County Sheriff's Office
**Detective:** J.K. Pavlovich
**Victims:** Sun, Sophea
Nhem, Savantha
Belk, William S.
**Suspect:** Sidorchuk, Dimitri V.

**Laboratory Number:** 106-002864
**Request Number:** 0007

**Agency Case Number:** 06-213688

## Procedures, Results and Conclusions:

The S.W.D.(Cobray), **Item #KMD-1**, was received inoperable with a shifted hammer pin and missing retainer clip. The pin was realigned and the firearm was test fired. The submitted bullets were examined and microscopically compared to tests fired in the submitted firearms.

It was determined that the bullet and bullet fragment in Items **#KMD-16**, **#MMM-26**, were fired from the S.W.D. M-11 pistol, **Item #KMD-1**.

Although class characteristics were similar, sufficient microscopic markings on Item **#KMD-17** were not observed for identification to the SWD M-11 pistol, **Item #KMD-1**.

Although class characteristics were similar, sufficient microscopic markings on Items **#KMD-14**, **#KMD-15 #KMD-18**, **#KMD-19, and #MMM-27**, were not observed for identification to the TAURUS pistol, **Item #SMP-29**.

Items **#KMD-11**, **#KMD-23**, **#KMD-25**, and **#KMD-26**, are not identifiable to a particular firearm.

R.T. Wyant, Forensic Scientist, Firearm and Toolmark Section

10/3/07
Date

Page 2 of 2 RIW

# Exhibit 7

```
 1
 2
 3
 4
 5
 6
 7                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY
 8   STATE OF WASHINGTON,              )
                                       )  No. 06-1-06563-4 SEA
 9                     Plaintiff,      )
                                       )  DECLARATION OF
10        vs.                          )  DETECTIVE JOHN PAVLOVICH
                                       )
11   CONNER SCHIERMAN.                 )
                                       )
12                     Defendant.      )
                                       )
13                                     )
```

I, JOHN PAVLOVICH, declare as follows:

    1.     I am a detective with the King County Sheriff's Office. I am over the age of 18 and I am competent to testify to the matters set forth herein.

    2.     I am the lead detective in <u>State v. Dimitri Sidorchuk</u>, King County Case No. 06-1-06572-3. In that case the defendant is charged with Murder in the 2nd Degree and Manslaughter in the 1st Degree. Kay Sweeney has been endorsed by the defense as an expert witness.

    3.     On July 20, 2006, the King County Sheriff's Office seized a number of evidence items in this case, including KMD-1, a S.W.D. (Cobray), model M-11 9mm Luger caliber semiautomatic pistol. KMD-1, along with several bullets, fragments and

DECLARATION OF DETECTIVE JOHN PAVLOVICH - 1

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

## EXHIBIT F

1    cartridges, were sent to the Washington State Patrol Crime Lab for examination later

2    that same day. KMD-1 was to be tested for operability and functionality.

3         4.    On December 19, 2006, Crime Lab forensic scientist Rick Wyant

4    completed his testing of KMD-1. His report concluded that the 9mm Luger pistol was

5    operable ("functional as received"). A copy of Rick Wyant's report dated December 19,

6    2006, is attached hereto.

7         5.    On June 18, 2007, KMD-1 was delivered to Kay Sweeney at the King

8    County Sheriff's Office Property Management Unit, per court order.

9         6.    KMD-1 subsequently was retuned to the PMU by Mr. Sweeney on June

10    28th 2007. He wrote no report regarding his examination or handling of the evidence.

11         7.    When KMD-1 was resubmitted for testing by the Crime Lab, Mr. Wyant

12    discovered that the weapon "was received inoperable with a shifted hammer pin and

13    missing retainer clip." A copy of Mr. Wyant's report dated October 3, 2007, is attached

14    hereto.

15         8.    In summary, evidence item KMD-1, the 9mm Luger, was delivered to Mr.

16    Sweeney fully operable and functioning. It was received back from in an inoperable and

17    altered condition.

18         I declare under penalty of perjury under the laws of the State of Washington that

19    the foregoing is true and correct to the best of my knowledge.

20         Signed this __17__ day of October, 2007 at Seattle, Washington.

21         Respectfully submitted,

22

23         By: _J. K. P.___ #01252_
           JOHN PAVLOVICH

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

DECLARATION OF DETECTIVE JOHN PAVLOVICH - 2

# Exhibit 8

```
 1
 2
 3
 4
 5
 6
 7              SUPERIOR COURT OF WASHINGTON FOR KING COUNTY
 8    STATE OF WASHINGTON,              )
                                       )    No. 06-1-06563-4 SEA
 9                        Plaintiff,   )
                                       )    DECLARATION OF
10        vs.                          )    DETECTIVE DAVID DEVAULT
                                       )
11    CONNER SCHIERMAN,                )
                                       )
12                        Defendant.   )
                                       )
13                                     )
                                       )
14
```

I, DAVID DEVAULT, declare as follows:

1.       I am a detective with the Tacoma Police Department.  I am over the age of 18 and I am competent to testify to the matters set forth herein.

2.       I was the lead detective in State v. Nathan Brightman, Pierce County Case No. 98-1-04401-4.  In that case the defendant was charged with Murder in the First Degree.   Kay Sweeney was endorsed by the defense as an expert witness.

3.       Earlier this year, in January 2007, the defendant sought to have Mr. Sweeney examine evidence item No. 5, a hat, pursuant to court order.  The trial court directed that the hat was to remain in my custody at all times and that the hat would not

DECLARATION OF DETECTIVE DAVID DEVAULT - 1

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
fAX (206) 296-0955

EXHIBIT J

be examined or tested in a manner that would alter the item.  The order, which is dated

January 24, 2007 and attached hereto, stated as follows:

> It is hereby ordered that Exhibit #5 is to be released to Detective Devault
> and to remain at all times in his custody to be delivered to KMS Forensics
> in Kirkland, Washington, where it may be examined.  The Exhibit is not to
> be tested or examined in any way that alters the Exhibit without further
> order of the court.[1]

4.     On January 28, 2007, I traveled to KMS Forensics as arranged by Mr.
Sweeney.  I met Mr. Sweeney at the door to his business.  He asked if I had the hat for
him, and I answered that I did.  Mr. Sweeney told me that I could come back in a couple
of hours, indicating that I could excuse myself and relinquish control of the hat.  I
advised Mr. Sweeney that pursuant to the court's order I would stay for the examination,
as the hat was to remain at all times in my custody.  Mr. Sweeney stated that he would
not allow me inside his laboratory because of the confidential and sensitive nature of his
work.  I assured him that I would not surreptitiously examine anything inside.

5.     As I spoke with Mr. Sweeney, he read the court order and stated "Who
cares if it's altered, it's been examined by the State, who's going to care, it's not going
to matter if it's altered.  They already examined it."  Mr. Sweeney stated that he would
only examine the hat if it was left with him.  I told him that in that case the hat would not
be examined.

6.     A copy of my Supplemental Report regarding my contact with Mr.
Sweeney is attached as Attachment B hereto.

I declare under penalty of perjury under the laws of the State of Washington that
the foregoing is true and correct to the best of my knowledge.

DECLARATION OF DETECTIVE DAVID DEVAULT - 2

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

Per telephonic
authorization
10/17/07 (7:28 mm)
Suo

Signed this __17__ day of October, 2007 at Seattle, Washington.

Respectfully submitted,

By: _David M. DeVault_
DAVID DEVAULT

See Attachment A hereto.

DECLARATION OF DETECTIVE DAVID DEVAULT - 3

Norm Maleng, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

FILED
IN OPEN COURT
DEPT 21

JAN 2 4 2007

PIERCE COUNTY, Clerk

By _____
DEPUTY

98-1-04401-4  27018903  ORRL  02-22-07

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| Plaintiff, | ) |
| vs. | ) NO. 98-1-04401-4 |
| | ) |
| NATHAN BRIGHTMAN, | ) MOTION, DECLARATION |
| | ) AND ORDER TO RELEASE |
| Defendant. | ) EVIDENCE |
| | ) |

## MOTION

COMES NOW the defendant, NATHAN BRIGHTMAN, by and through his attorney,

JOHN MCNEISH, and moves the court to allow evidence in the matter to be released to be tested

and examined by KMS Forensics. This Motion and Order is based on the attached declaration of

counsel.

JOHN MCNEISH, WSBA# 16912
Attorney for Defendant

MOTION AND AFFIDAVIT FOR
ACQUITTAL BY REASON OF INSANITY-1

Department of Assigned Counsel
949 Market Street, Suite 334
Tacoma, Washington 98402-3696
Telephone: (253) 798-6062

ATTACHMENT A

1

<u>DECLARATION</u>

2

JOHN MCNEISH, being first duly sworn on oath, deposes and says:

3

I am the attorney appointed to represent the defendant in this action.

4

I have discussed this case with the defendant's previous attorneys.

5

6

His previous attorneys had contacted Kay Sweeney in the past about possibly reviewing the

7 evidence in this case, depending on the testimony of the State's expert. After his testimony they

8 decided not to retain Mr. Sweeney.

9

Mr. Sweeney is an extremely experienced Forensic Scientist with over 30 years experience

10 both working for the State of Washington and in private practice.

11

12 Mr. Sweeney indicated that he could review and examine the evidence if I could get the

13 evidence released to him.

14 I believe his testimony is necessary because the distance between the gun firing and the

15 head wound is crucial to the defense's case.

16

17 The State's witness is expected to testify the distance is 3 inches to 24 inches. The defense

believes that the actual distance was between 1 inch to 3 inches.

18

19 I believe the State's expert has already performed all the tests necessary for his testimony.

20 Mr. Sweeney has indicated that he would like to examine and possibly test the hat in

21 addition to reviewing the State's expert's findings if he would be called to testify.

22

The defense is prepared to retain Mr. Sweeney as an expert and may call him as a witness to

23 rebut the State's expert.

24

25 JOHN MCNEISH, WSBA# 16912

26 Attorney for Defendant

27 MOTION AND AFFIDAVIT FOR
ACQUITTAL BY REASON OF INSANITY-2

28

Department of Assigned Counsel
949 Market Street. Suite 334
Tacoma, Washington 98402-3696
Telephone: (253) 798-6062

## ORDER

The Court, having reviewed the records and files herein, and being in this matter fully advised; Now, Therefore,

IT IS HEREBY ORDERED that Exhibit #5 is to be released to Detective Devault and to remain at all times in his custody to be delivered to KMS Forensics in Kirkland, Washington where it may be examined. The Exhibit is not to be tested or examined in any way that alters the Exhibit without further order of the court.

The examination of the Exhibit is to be completed no later than February 2, 2007 and the Exhibit is to be returned to this Court on or before Friday, February 2, 2007.

DATED THIS ___ day of January, 2007.

_____
JUDGE

_____
JOHN A. MCNEISH, WSBA #16912
Attorney for Defendant

_____
JAMES SCHACHT, WSBA # 17298
Deputy Prosecuting Attorney

FILED
IN OPEN COURT
DEPT 21

JAN 2 4 2007

PIERCE COUNTY, Clerk
By _____
DEPUTY

I, Det. David Devault, have received exhibit #5
on 1-24-07 @ 1645 hrs

Det. Dave M Devault

MOTION AND AFFIDAVIT FOR
ACQUITTAL BY REASON OF INSANITY-3

Department of Assigned Counsel
949 Market Street, Suite 334
Tacoma, Washington 98402-3696
Telephone: (253) 798-6062

## Drug Information:

| | |
|---|---|
| Drug Type: | |
| Drug Quantity: | Drug Measure: |
| | Drug Measure Type: |

## Jewelry Information:

| | |
|---|---|
| Metal Color: | |
| Metal Type: | Total # of Stones: |
| Stone Color: | Inscription: |
| | Generally Worn By: |

## Firearm Information:

| | |
|---|---|
| Caliber: | |
| Gauge: | Length: |
| Action: | Finish: |
| Importer: | Grips: |
| | Stock: |

Property Notes: Hat is exhibit #5. The hat Dexter Villa wore.

| Enter | Date | Time | WACIC | LESA | Initial | Release Info. | Date | Time | Release No. | Release Authority |
|---|---|---|---|---|---|---|---|---|---|---|
| Clear | | | | | | Owner Notified | | | Operators Name | |

## Investigative Information

| | |
|---|---|
| Means: | |
| Vehicle Activity: | Motive: |
| | Direction Vehicle Traveling: |
| Synopsis: | |

Narrative:

In regards to the re trial of Nathan Brightman, Tacoma Police Department investigation 98 274 0629. He is accused of murdering Dexter Villa on October 1st, 1998.

On January 24th, 2007 I took custody of exhibit # 5, a hat, pursuant to a court order approved by the honorable Pierce County Superior Court Judge F. Cuthbertson.

The purpose was to have the hat examined by Kay Sweeney of KMS Forensics per the defense counsel, John Mcneish's, request. The court order specified the hat would remain in my custody at all times and that the hat would not be examined or tested in a manner that would alter the item.

On January 28th 2007, a Sunday, I traveled to KMS Forensics as arranged with Mr. Sweeney. The distance is approximately fifty miles from Tacoma. Upon my arrival at 10 AM. I contacted Mr. Sweeney at the door of the business. He asked if I had a hat for him. I stated I did and he replied I could come back in a couple of hours, indicating I would excuse myself from his laboratory and relinquish custody of the hat. I explained to Mr. Sweeney I would stay for the examination and produced a copy of the court order that stated the hat was released into my custody, as to ensure it was not examined or tested in a manner that would alter the item. Mr. Sweeney stated he could not let me in his laboratory as he had confidential and sensitive items inside and if I observed what was inside I would compromise the integrity of his work. I explained I was only concerned with the hat and would not surreptitiously examine anything inside. Mr. Sweeney said his position was that if I entered his lab I would follow him about if I were to keep watch of what he was doing and that doing so was not acceptable. He asked why I had to accompany the hat and I again referred to the court order, in particular where it stated the item would not be altered. I advised Mr. Sweeney it would be best for him as well if I were to accompany the hat as it would quell any possibly accusations that may come up at a later time. As I was explaining this Mr. Sweeney was reading the court order and commented that altering the hat was of no consequence. He stated "who cares if it's altered, it's been examined by the state, who's going to care, it's not going to matter if it's altered. They already examined it". I was surprised and concerned he made that statement as I knew the hat was an essential item of evidence in the investigation. I replied " I think the judge would care if gets altered and that's why he put that

r Law Enforcement Use Only – No Secondary Dissemination Allowed

Printed: January 31, 2007 - 7:23 AM
Printed By: Devault, David

language in the order". Mr. Sweeney stated he would examine the hat only if I left it with him. I stated " I guess it won't get examined then". I also said I thought he was being unreasonable and that he takes this position every time a situation like this comes up. He replied that I was being unreasonable adding he understood that I was a "pawn" within the court system adding he was too. I stated that until different arrangement were authorized by the court I would not release the hat to him whereas Mr. Sweeney commented "I could review Nodell's notes but I hate to testify when I didn't examine". I stated that was up to him and left.

I drove one block away and stopped and made notes to what occurred, specifically the statement made by Mr. Sweeney that it wouldn't matter if the hat was altered during examination. I then drove back to the Tacoma Police Department and secured the hat in a storage area. On Monday January 29th, 2007 @ approximately 0920 hrs. I returned the hat to the judicial assistant of Judge Cuthbertson.

| Reviewed By: | | Reviewed Date: | |

# Exhibit 9

13804810

# FILED

KING COUNTY WASHINGTON

OCT 1 9 2007

SUPERIOR COURT CLERK

BY DAWN TUBBS
DEPUTY

HON. GREGORY CANOVA
Hearing Date: October 19, 2007 (9:00AM)

1

2

3

4

5

6 SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

7 STATE OF WASHINGTON, )
Plaintiff, )  NO. 06-1-06563-4 SEA
8 )
vs. )  STATE'S MEMORANDUM IN
9 )  OPPOSITION TO DEFENDANT'S
CONNER MICHAEL SCHIERMAN, )  MOTION TO ALLOW
10 )  DEFENDANT'S EXPERT TO
Defendant. )  INDEPENDENTLY TEST AND
11 )  EXAMINE FORENSIC EVIDENCE
)
12 )
_____ )

13                    I.    INTRODUCTION

14        On September 12, 2007, the defendant, Conner Schierman, advised this Court that

15 he sought release for "visual examination" by his expert, Kay Sweeney, one of the

16 probable murder weapons in this case.[1] That evidence, item number 333-116, is a

17 Humvee knife found by Leonid Milkin on his property on September 6, 2006, when what

18 remains of his home was returned to him by the Kirkland Police.[2] By declaration under

19 penalty of perjury, Mr. Sweeney stated that it is a "common practice" for him "to retain

20

21 [1] Defendant's Fifth Motion to Compel DNA/General Discovery and Motion to Dismiss Notice of Special
Sentencing Proceeding, dated 9/12/07, Attachment E, at 5.
22 [2] Contrary to the statement in the Defendant's statement, the Humvee knife was not found by Mr. Milkin on
September 6, 2007. See Defendant's Sixth Motion to Compel Discovery and Motion to Dismiss Notice of
Special Sentencing Proceeding, dated 10/11/07, at 2.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 1

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13804810

1   evidence for examination for two months or longer."[3]  Defense counsel made the same

2   representation at the hearing on September 21, 2007.[4]

3          The State previously declined to make the Humvee knife available to Mr.

4   Sweeney's exclusive custody.  Rather, the State offered to make the knife available to Mr.

5   Sweeney under controlled supervision at the Washington State Patrol Crime Lab.[5]

6          At the hearing on September 21, the Court expressed concern regarding Mr.

7   Sweeney's intention to keep evidence "for examination for two months or longer" and

8   communication with Mr. Sweeney.[6]  The State expressed similar concerns and raised the

9   additional issue of the condition of evidence returned by Mr. Sweeney's following his

10  examination in other cases.

11         The defendant now comes before this Court and requests that it issue an order

12  compelling the release of the Humvee knife to Mr. Sweeney not merely for a visual

13  examination, but "for an independent review and testing."  He provides no details of the

14  review to be conducted by Mr. Sweeney and identifies no specific testing to be performed.

15         This Court was correct to question the timing and circumstances of Mr. Sweeney's

16  handling of evidence.  His involvement in other serious criminal cases has been marked

17  by extraordinary delay in returning evidence, mishandling evidence and ignoring court

18  orders.  These concerns have led other courts to severely restrict Mr. Sweeney's handling

19  of evidence.  This Court should do the same in this case.  The defendant's motion to allow

20  Mr. Sweeney unfettered access to the probable murder weapon should be denied.

21  _____
    [3] Declaration of Kay Sweeney, dated 9/20/07, at ¶ 6.
    [4] RP 9/21/07, at 16-17.
22  [5] See Correspondence from Scott O'Toole to James Conroy and Debra Redford, dated 9/7/07, at 5 (copy
    attached as Exhibit 1).
    [6] RP 9/21/07, at 16.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 2

**Norm Maleng**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

## II. COUNTERSTATEMENT OF THE FACTS AND ARGUMENT

### A. KAY SWEENEY'S INVOLVEMENT IN PAST CASES HAS BEEN MARKED BY EXTRAORDINARY DELAYS IN RETURNING EVIDENCE TO THE STATE.

Past experience has shown that Mr. Sweeney's involvement in cases has been marked by extreme delays in returning evidence to the State, and that these delays have impacted trials. In State v. Michael Paul Davis, King County Case No. 02-C-02791-8, the defendant was charged with Burglary in the First Degree, while armed with a shotgun, Felony Harassment and Bail Jumping. Mr. Sweeney was endorsed by the defense as an expert witness. Kent Police Detective Wayne Himple reports that a number of evidence items were delivered to Mr. Sweeney, including a Mossberg Shotgun, a Winchester shotgun, shotgun wadding, shotgun shells, and a number of pieces of ammunition. The evidence was signed out to Mr. Sweeney on November 2, 2002. He did not return it to the Kent Police until April 13, 2004, a period of more than 17 months, despite requests from the Kent Police that he return it earlier.[7] The evidence was returned almost a year after the defendant pleaded guilty to Rendering Criminal Assistance in the Second Degree.

In State v. John Morimoto, King County Case No. 03-1-02704-5, the defendant was charged with two counts of Aggravated Murder in the First Degree and one count of Attempted Murder in the First Degree. Pursuant to court order, Mr. Sweeney was permitted to take custody of certain evidence in three batches. Each order provided that he was to return the evidence within 60 days. Mr. Sweeney took custody of the first batch of evidence on October 4, 2005, and returned it 93 days later, on January 5, 2006. He took custody of the second batch of evidence on January 5, 2006, and returned it 126

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 3

**Norm Maleng,** Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13B04810

1   days later, on May 11, 2006. Finally, he took custody of the third batch of evidence on

2   May 11, 2006, and returned it 203 days (i.e., seven months) later, on November 30, 2006.[8]

3      In State v. Troy McLeod, King County Case No. 06-1-00417-1, a pending case, the

4   defendant is charged with Murder in the Second Degree. Mr. Sweeney has been

5   endorsed by the defense as an expert witness. Seattle Police Detective Rolf Norton

6   reports that a number of evidence items, 28 in total, have been delivered to Mr. Sweeney.

7   That evidence consists of a shotgun, multiple casings, other ballistics evidence, the

8   suspect's clothing, the victim's clothing, and other items from King County Medical

9   Examiner's Office. The evidence was delivered to Mr. Sweeney in two batches; one on

10  September 28, 2006, and a second on November 7, 2006, pursuant to a court order. The

11  items were be returned by the end of November 2006, and certainly by the end of 2006.

12     As of October 15, 2007, Mr. Sweeney had not returned a single item of evidence in

13  State v. McLeod. Mr. Sweeney has had some of the evidence for more than a year, and

14  the remainder of the evidence for almost a year, without returning it. In addition to the

15  delay, Detective Norton is concerned about the condition of the evidence items when they

16  are eventually returned.[9]

17     Even more disturbing, Mr. Sweeney has been unresponsive even to the efforts of

18  defense counsel to secure the return of evidence. Craig Peterson, the assigned deputy

19  prosecutor in State v. McLeod, reports that on June 5, 2007, he spoke with Al Kitching, the

20  defense attorney in State v. McLeod, in order to obtain the return of the evidence from Mr.

21  Sweeney. Mr. Kitching advised the prosecutor that he, too, has attempted to secure the

22

---

[7] Declaration of Detective Wayne Himple, dated 10/16/07, attached hereto as Exhibit 2.
[8] Declaration of Shelly Warren, dated 10/17/07, attached hereto as Exhibit 3.
[9] Declaration of Detective Rolf Norton, dated 10/15/07, attached hereto as Exhibit 4.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 4

**Norm Maleng**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13804810

1  return of evidence from Mr. Sweeney, but has been unable to obtain even a response

2  from his own expert witness.[10]

3       More recently, in State v. Bobby Joe Lyons, King County Case No. 02-1-07940-3,

4  Mr. Sweeney failed to return evidence for an extended period of time. In Lyons, the

5  defendant was charged with Murder in the First Degree. Chris Anderson, one of the

6  assigned deputy prosecutors, reports that on July 12, 2007, Mr. Sweeney obtained a

7  Ruger .357 handgun, fired and unfired bullets from that gun, test targets and the victim's

8  clothing in a case from Clallam County. The evidence was to be returned by the end of

9  July. Trial was scheduled for August 21, 2007. Beginning in late-July and continuing into

10  August, Mr. Sweeney did not respond to repeated telephone calls and emails regarding

11  the return of the evidence. On August 10, 2007, the trial court issued an order directing

12  the return of the evidence by August 16. Mr. Sweeney failed to meet that deadline.

13       Eventually, the trial date in Lyons was moved to September 3. Mr. Sweeney did not

14  return the evidence until August 29. At the time trial commenced on September 3, the

15  State did not have a report from Mr. Sweeney and was unable to get results from retesting

16  the weapon until two weeks into trial. Mr. Sweeney's delay called into question the

17  State's ability to conduct follow-up forensic testing.[11]

18       All of these cases detail Mr. Sweeney's history of extreme delay in returning

19  evidence. He should not be given unrestricted access to the probable murder weapon in

20  this case.

21

22

---

[10] Declaration of Craig Peterson, dated 10/16/07, attached hereto as Exhibit 5.
[11] Declaration of Christopher Anderson, dated 10/16/07, attached hereto as Exhibit 6.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 5

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13804810

B.  KAY SWEENEY'S INVOLVEMENT IN PAST CASES HAS BEEN MARKED BY THE MISHANDLING OF EVIDENCE.

In addition to delay, Mr. Sweeney's handling of evidence is a source of concern. He has in the past altered and mishandled evidence.

In Morimoto, discussed above, Mr. Sweeney received evidence from the Kent Police and created 80 items of trace evidence. He repackaged the Kent Police evidence, failed to return the trace evidence created by him, and failed to follow the court's order to maintain a log identifying those who had contact with the evidence. When Mr. Sweeney attempted to return the 80 items in one envelope, the Kent Police refused to take them without being properly packaged. Finally, forty-six of the items packaged in zip-lock bags had on them initials other than Mr. Sweeney's, with dates ranging from October 26, 2006 to December 5, 2006.[12]

More recently, in State v. Dimitri Sidorchuk, King County Case No. 06-1-06572-3, Mr. Sweeney grossly mishandled firearms evidence. In that pending case the defendant is charged with Murder in the First Degree. On July 20, 2006, the King County Sheriff's Office seized a number of evidence items, including KMD-1, a 9mm Luger semiautomatic pistol. KMD-1, along with several bullets, fragments and cartridges, were sent to the Washington State Patrol Crime Lab for examination later that same day. On December 19, 2006, the Crime Lab determined that KMD-1 was operable ("functional as received").

On June 18, 2007, KMD-1 was delivered to Mr. Sweeney, per court order. KMD-1 subsequently was retuned by Mr. Sweeney, who wrote no report regarding his examination or handling of the evidence. When KMD-1 was resubmitted for testing by the

---

[12] Warren Declaration, Exhibit 3, at 3.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST AND EXAMINE FORENSIC EVIDENCE - 6

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13804810

1    Crime Lab, Rick Wyant, the forensic examiner, discovered that the weapon was

2    "inoperable with a shifted hammer pin and missing retainer clip." Mr. Wyant memorialized

3    his findings in a report dated October 3, 2007.[13] In summary, evidence item KMD-1, the

4    9mm Luger, was delivered to Mr. Sweeney fully operable and functioning. It was received

5    back from him in an inoperable and altered condition.[14]

6        These cases detail Mr. Sweeney's history of mishandling evidence entrusted to his

7    care. He should not be given unrestricted access to the probable murder weapon in this

8    case.

9        C.    KAY SWEENEY'S INVOLVEMENT IN PAST CASES HAS BEEN SUBJECT
              TO SEVERE RESTRICTIONS BY THE TRIAL COURT.

10       The defendant argues that "Mr. Sweeney has in the past, and continues to have

11   evidence in his possession that he examines forensically from cases both in the State of

12   Washington and from outside Washington."[15] What the defendant fails to mention is that

13   concerns for delay and mishandling of evidence have led courts to severely restrict Mr.

14   Sweeney's access to evidence.

15       In State v. Smith, discussed above, "[s]pecific conditions regarding the timely return

16   and maintaining the original condition of the evidence were incorporated into a court order

17   signed by the Honorable George Mattson on April 11, 2005, and prior to the release of

18   evidence in that case to Kay Sweeney."[16]

19       In State v. McLeod, also discussed above, the Honorable Brian Gain ordered that

20   "Mr. Sweeney may not transfer [evidence items] to any other person other than Detectives

21   _____

22   [13] Declaration of Richard Wyant, dated 10/16/07, attached hereto as Exhibit 7.
     [14] Declaration of John Pavlovich, dated 10/17/07, attached hereto as Exhibit 8.
     [15] Defendant's Motion to Allow Defendant's Expert to Independently Test and Examine Forensic Evidence, at
     4.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 7

**Norm Maleng**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

1  Norton or Kilberg without the express written permission of Detectives Norton or Kilberg or

2  by order of the court.  The items set out in Section I may not be consumed or altered in

3  any manner without the express written permission of Detectives Norton or Kilberg or by

4  order of the court."[17]  In that pending case, the detectives, the prosecutor and defense

5  counsel have been unable to obtain from Mr. Sweeney the return of evidence held by him

6  for a year.

7      Earlier this year, in January 2007, in State v. Nathan Brightman, Pierce County

8  Case No. 98-1-04401-4, the defendant sought to have Mr. Sweeney examine Exhibit 5, a

9  hat that was evidence in an alleged Murder in the First Degree.  The trial court placed

10  restrictions on Mr. Sweeney's access to the evidence:

11          It is hereby ordered that Exhibit #5 is to be released to Detective Devault and
          to remain at all times in his custody to be delivered to KMS Forensics in
12          Kirkland, Washington, where it may be examined.  The Exhibit is not to be
          tested or examined in any way that alters the Exhibit without further order of
13          the court.[18]

14      Tacoma Police Detective David Devault reports that Mr. Sweeney refused to

15  comply with the trial court's order.  On January 28, 2007, Detective Devault traveled to

16  KMS Forensics as arranged by Mr. Sweeney and met him at the door of his business.  Mr.

17  Sweeney asked the detective if he had the hat for him, and the detective answered that he

18  did.  Mr. Sweeney told him that he could come back in a couple of hours, indicating that

19  the detective could excuse himself and relinquish control of the hat.  The detective advised

20  Mr. Sweeney that pursuant to the court's order he would stay for the examination, as the

21  hat was to remain at all times in his custody.  Mr. Sweeney stated that he would not allow

22

---

[16] Himple Declaraton, Exhibit 2, at 2.
[17] See Order on Criminal Motion, Attachment A to the Norton Declaration, attached hereto as Exhibit 3.
[18] See Motion, Declaration and Order to Release Evidence (emphasis added), Attachment A to the

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 8

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

1  Detective Devault inside his laboratory because of the confidential and sensitive nature of

2  his work. The detective assured him that he would not surreptitiously examine anything

3  inside.

4        Detective Devault reports that when he spoke with Mr. Sweeney, the latter read the

5  court order and stated "Who cares if it's altered, it's been examined by the State, who's

6  going to care, it's not going to matter if it's altered. They already examined it." Mr.

7  Sweeney stated that he would only examine the hat if it was left with him. Detective

8  Devault told him that in that case the hat would not be examined.[19]

9        The cases highlighted above justify the concerns raised by the Court at the hearing

10 on September 21. Mr. Sweeney has a history of delay in returning evidence, mishandling

11 evidence and ignoring court orders. His examination of the evidence in this case should

12 be subject to severe restrictions. He should not be given unrestricted access to the

13 probable murder weapon in this case.

14        **D.  ANY EVIDENCE TO BE EXAMINED BY KAY SWEENEY SHOULD BE
       DONE IN A MANNER CONSISTENT WITH PAST RESTRICTIONS IN
15        ORDER TO GUARANTEE THE SPEEDY RETURN OF THE EVIDENCDE
       AND ITS INTEGRITY.**

16        Any evidence examined by Mr. Sweeney should be done in a manner consistent

17 with past restrictions, along the lines of the Order to Release Evidence in State v.

18 Brightman, discussed above. Such an order would provide for the following:

19     • The Humvee knife, evidence item 333-116, would be checked out of the
        Kirkland Police property room by Kirkland Police Detective Brad Porter
20     • Detective Porter and his designee would transport the Humvee knife to KMS
        Forensics in Kirkland for examination
21     • The Humvee knife would at all times remain in the custody of Detective

22

---

Declaration of Detective David Devault, dated 10/17/07, attached hereto as Exhibit 9.
[19] Devault Declaration, at 2.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 9

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13804810

Porter
- Mr. Sweeney would not test or examine the Humvee knife in any way that alters the evidence without further order from this Court
- The examination by Mr. Sweeney would occur at a mutually agreeable time for him and Detective Porter, and in any event by a date certain
- Mr. Sweeney shall produce a report that discloses his results, opinions and conclusions if he subsequently is endorsed as a defense witness

Such an order would preserve the defendant's right to adequately prepare for trial while at the same time preserving the State's right to ensure that the evidence is available for trial.

E.     IN THE ALTERNATIVE, THE STATE HAS AGREED TO PERMIT KAY SWEENEY EXTRAORDINARY ACCESS TO FACILITIES AT THE STATE PATROL CRIME LAB IN ORDER TO EXAMINE THE HUMVEE KNIFE.

As an alternative to an Order to Release Evidence similar to that in State v. Brightman, the State has offered to make the Humvee knife available to Mr. Sweeney under controlled supervision at the Washington State Patrol Crime Lab.[20] Although this is an unusual step, the Crime Lab is willing to make this accommodation out of concern for delays and the handling of evidence by Mr. Sweeney, particularly an item of evidence as potentially important as the Humvee knife. Laboratory Manager Jim Tarver has stated that Mr. Sweeney will be given access to an area of the lab where he may examine the evidence, under the supervision of Crime Lab personnel.[21]

F.     THE DEFENDANT'S EXPERT SHOULD NOT BE GIVEN UNRESTRICTED ACCESS TO CRITICAL ITEMS OF EVIDENCE IN THIS CASE.

Although Due Process permits a defendant to adequately prepare for trial, there is no requirement that the defendant or his expert be given unrestricted access to evidence. This is true for a variety of reasons. First, the criminal justice system remains an

---

[20] See Exhibit 1, at 5.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 10

Norm Maleng, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

13904810

1  adversarial system of justice. <u>State v. Yates</u>, 111 Wn.2d 793, 799, 765 P.2d 291 (1988).

2  Second, in an adversarial system of justice, vastly different roles are assumed by the

3  prosecutor and defense counsel. The prosecutor's duty remains one of seeking justice.

4  <u>Callahan v. Jones</u>, 200 Wash. 241, 248-249, 93 P.2d 326 (1939). The role of defense

5  counsel, on the other hand, is that of "zealous advocate." <u>State v. James</u>, 48 Wn.App.

6  353, 367, 739 P.2d 1161 (1987). In that role, defense counsel "has no comparable

7  obligation to ascertain or present the truth. Our system assigns him a different mission."

8  <u>U.S. v. Wade</u>, 388 U.S. 218, 256, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (White, J.,

9  dissenting in part).

10      These vastly different roles result in unequal burdens placed on the State and the

11  defendant. Those unequal burdens lead to different requirements in preparing for trial.

12      Neither the period of time that the Government spent investigating the case, nor the
number of documents that its agents reviewed during that investigation, is

13  necessarily relevant to the question whether a competent lawyer could prepare to
defend the case in [the time available]. <u>The Government's task of finding and</u>

14  <u>assembling admissible evidence that will carry its burden of proving guilt beyond a</u>
<u>reasonable doubt is entirely different from the defendant's task in preparing to deny</u>

15  <u>or rebut a criminal charge.</u>

16  <u>U.S. v. Cronic</u>, 466 U.S. 648, 663, 104 S.Ct. 2039, 2049, 80 L.Ed.2d 657 (1984)

17  (emphasis added).

18      There is no meaningful sanction that can be imposed on the defendant regarding

19  the examination of evidence. The same caution that must guide a prosecutor's or

20  detective's decisions regarding the handling of evidence are not present when evidence is

21  delivered to a defense expert. Losing, damaging, altering, mishandling or simply refusing

22  to return items of evidence carries no meaningful penalty for the defendant or his expert.

---

[21] Third Declaration of Jim Tarver, dated 10/17/07, attached as Exhibit 10.

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 11

**Norm Maleng**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

1   For present purposes, Mr. Sweeney has established a history of delay in returning

2   evidence, mishandling evidence and ignoring court orders.  As a result, he should not be

3   permitted unrestricted access to the evidence in this case.  The right of the defendant to

4   adequately prepare for trial can be met while at the same time preserving the State's right

5   to ensure that the evidence is available for trial.  Permitting Mr. Sweeney to examine the

6   Humvee knife in his own lab while the evidence remains in the custody of the Kirkland

7   Police accomplishes both goals, as does permitting Mr. Sweeney, in the alternative, to

8   conduct his examination under the supervision of the Washington State Patrol Crime Lab.

9                           III.    CONCLUSION

10      Based on the foregoing, the State requests that this court deny the defendant's

11  Motion to Allow Defendant's Expert to Independently Test and Examine Forensic

12  Evidence.

13      DATED this __17__ day of October, 2007.

14                          For NORM MALENG,
                            King County Prosecuting Attorney
15
16                          SCOTT O'TOOLE, WSBA #13024
                            Senior Deputy Prosecuting Attorney
17                          Office WSBA #91002

18

19

20

21

22

STATE'S MEMO IN OPPOSITION TO DEFENDANT'S MOTION
TO ALLOW DEFENDANT'S EXPERT TO INDEPENDENTLY TEST
AND EXAMINE FORENSIC EVIDENCE - 12

**Norm Maleng**, Prosecuting Attorney
W554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9000
FAX (206) 296-0955

# Exhibit 10



FILED

08 AUG 21 AM 10: 46

SONYA KRASKI
COUNTY CLERK
SNOHOMISH CO. WASH

## SUPERIOR COURT FOR THE STATE OF WASHINGTON

### IN AND FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>       Plaintiff,<br><br>         v.<br><br>NIX, CASEY A.,<br><br>       Defendant. | NO. 08-1-00630-6<br><br>ORDER TO RELEASE DISCOVERY FOR DEFENSE REVIEW<br><br>**CLERKS ACTION REQUIRED** |

### ORDER

This matter having come on this date before the Court on the defendant's motion and the Court having considered the moving papers of both parties and the Affidavits, Declarations and Exhibits submitted and the arguments of counsel, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1) The State shall make the following evidence available to defense expert Kay Sweeney for examination:

    1.a cane identified as item B seized and recorded on page 28 of the State's

    discovery (Edmonds Police Department Evidence Report) under this cause of

AGREED ORDER TO RELEASE
EVIDENCE TO DEFENSE

ORIGINAL

A3
39

action:

2. a bag of glass parts identified as item C seized and recorded on page 28 of the State's discovery (Edmonds Police Department Evidence Report) under this cause of action:

3. a knife identified as item F seized and recorded on page 28 of the State's discovery (Edmonds Police Department Evidence Report) under this cause of action:

2. Mr. Sweeney shall collect one item at a time, in whatever order he prefers. He may be given access to only one item at a time.

3. The first item is to be collected at the Edmonds Police Department at a time arranged with Edmonds Police Evidence supervisor Lynn Mandeville. (THIS STATE HAS PROVIDED CONTACT INFORMATION TO DEFENSE COUNSEL).

4. Mr. Sweeney is Ordered to exercise great care when examining the evidence listed above. Mr. Sweeney shall not damage, destroy, alter, tamper with or manipulate the evidence. Mr. Sweeney shall not pick, scrape, or wash any of these items. He shall fully document the nature of his examination.

5. Mr. Sweeney shall return the item taken within _7_ days of the date he collected it. Upon its return it shall be examined by the Edmonds Police. If they determine it has not been altered or tampered with, Mr. Sweeney may collect a second item. He may have that item under the same conditions, and shall return it within _7_ days. The same procedure and time restrictions will covered the transfer of the third item.

6. The Defense waives any objection regarding chain of custody ~~resulting from the~~ commencing upon transfer of the items to Mr. Sweeney.


AGREED ORDER TO RELEASE
EVIDENCE TO DEFENSE

7. If Mr. Sweeney is going to be listed an a defense witness, he shall provide a written report of his examination, and that is to be filed not later than Sept. 22, 2008

8. Violation of this Order ~~shall~~ *may* subject Mr. Sweeney to contempt sanctions.

Signed on this 21st day of August, 2008.

_____
Honorable Linda Krese.

_____
Jason Weiss, WSBA# 33202
Defense Attorney

_____
Paul Stern, WSBA# 14144
Prosecuting Attorney

**AGREED ORDER TO RELEASE
EVIDENCE TO DEFENSE**

# Exhibit 11

FILED

2012 MAR 13 AM 10: 44

SCOTT G. WEBER, CLERK
CLARK COUNTY

ORIGINAL

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| STATE OF WASHINGTON, | No. 11-1-01584-0 |
| Plaintiff, | |
| v. | ORDER AUTHORIZING TRANSPORTATION OF EVIDENCE FOR EXAMINATION BY DEFENDANT'S EXPERTS |
| MICHELE R. GRAMCKOW, | |
| Defendant. | |

THIS MATTER having come on regularly before the Court upon motion of the Defendant

to allow transportation of physical evidence by Gary Rice, defense counsel's investigator, for the

purpose of examining physical evidence by defendant's expert witness, KMS FORENSICS, and the

Court being fully advised in the premises, now, therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      Gary Rice shall transport the following evidence located in the Battle Ground

Police's evidence department to Kay Sweeney at KMS Forensics and return said evidence back to

the Battle Ground Police Station upon the completion of Kay Sweeney's examination:

    a.   ID # 3 – 1 high standard Hombre .22 revolver.

    b.   ID # 6 – 1 spent casing.

ORDER AUTHORIZING TRANSPORTATION
OF EVIDENCE FOR EXAMINATION BY
DEFENDANT'S EXPERTS- 1

Robert M. Vukanovich
Attorney at Law
211 E. McLoughlin Blvd.
Vancouver, WA 98663
(360) 993-0389



c. ID # 14 – 12 photo paper. 12 pieces of Photo Paper w/various gunshot powder distance patterns .

2. Defendant stipulates to the continuous and uninterrupted chain of custody of all items of evidence in regard to the period of time during which said evidence items are in the possession of defendant's experts, until said items are returned to the custody of the Battle Ground Police Department. Defendant also stipulates to the authenticity of said evidence for purposes of trial. Defendant's experts shall maintain a written record of the location of said evidence; of those persons having physical custody of or access to said evidence; the dates and times of said custody or access; and the date, time, location, and exact nature of any and all testing or analysis of said evidence. A copy of said written record shall be furnished to the Clark County Prosecuting Attorney upon completion of the examination by Defendant's experts. Defendant's expert shall also maintain a video recording during any and all handling and analyzing of said evidence. A copy of said video recording shall also be furnished to the Clark County Prosecuting Attorney upon completion of the examination by Defendant's experts. All items of evidence while in the possession of defendant's experts shall be kept in a secure location with access restricted only to those persons for whom access is necessary to conduct the required testing or analysis.

DONE IN OPEN COURT this _13_ day of ~~February~~ March, 2012.

_____
Judge of the Superior Court

Presented by:

_____
Robert Vukanovich, WSBA# 28847
Attorney for Defendant

ORDER AUTHORIZING TRANSPORTATION
OF EVIDENCE FOR EXAMINATION BY
DEFENDANT'S EXPERTS- 2

Robert M. Vukanovich
Attorney at Law
211 E. McLoughlin Blvd.
Vancouver, WA 98663
(360) 993-0389

Approved for entry:

_____

Daniel Gasperino, WSBA#
Deputy Prosecuting Attorney

ORDER AUTHORIZING TRANSPORTATION
OF EVIDENCE FOR EXAMINATION BY
DEFENDANT'S EXPERTS- 3

Robert M. Vukanovich
Attorney at Law
211 E. McLoughlin Blvd.
Vancouver, WA 98663
(360) 993-0389

# Exhibit 12

IN THE SUPERIOR COURT OF WASHINGTON FOR CLALLAM COUNTY

| STATE OF WASHINGTON, | No. 93-1-00039-1 |
|---|---|
| Plaintiff, | RESPONSE TO PETITIONER'S MOTION TO COMPEL PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91 |
| vs. | |
| DAROLD RAY STENSON, | Noted for: Mar. 8, 2010, at 10:00 a.m. |
| Defendant. | |

The State of Washington, by and through its attorney, Pamela B. Loginsky, Special Deputy Prosecuting Attorney for Clallam County, submits this memorandum in response to Darold Stenson's motion to compel primer removal at the Washington State Crime Laboratory.

## QUESTION PRESENTED

Whether the motion for further DNA testing should be denied where this court's previously ordered protections have proven insufficient to protect the integrity of the State's evidence?

## RELEVANT FACTS

Exhibit 91, FBI Q numbers 8, 9, and 10, were the three bullets recovered from exhibit 89, the .357 revolver. RP 556, 555-57, 1071. The copper jacket of these bullets were removed for purposes of forensic testing. RP 1024, 1069-70.

This Court ordered DNA testing of Exhibit 91 in January of 2009. Pursuant to that order, the Washington State Patrol Crime Laboratory (hereinafter "Crime Lab") examined the exhibits that the Washington Supreme Court sent.[1] With respect to Exhibit 91, the Crime Lab focused on that

---

[1] Robert Gombiner, Stenson's counsel, was present at the Washington Supreme Court for the photographing and initial transfer of exhibits to the Washington State Patrol Crime Laboratory. He personally approved the items that were sent.

RESPONSE TO PETITIONER'S MOTION TO COMPEL
PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91-- 1

WASHINGTON ASSOCIATION OF PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175 FAX (360) 753-3943

1     portion of the bullet that Sheryl McCloud specified. The testing resulted in no identifiable DNA.[2]

2        Stenson subsequently brought a motion to have the primer cap that was lodged in one of the

3 bullets removed and tested, despite the danger of explosion. 7RP 14-15. This Court denied that

4 motion, stating as follows:

5       Sample No. 236-2 is a hollow tip bullet with a primer embedded in the tip. The
      Crime Lab attempted to swab as best they could with the primer still embedded in the
6       tip and got no DNA results. Petitioner seeks to have the primer removed and to swab
      the underneath side of the primer where it was embedded into the hollow point. The
7       Washington State Patrol Crime Lab indicates that they have no facilities with which
      to remove the primer as it is an explosive item and would subject employees to risk.
8       The Petitioner's attorney indicate they have a private lab who indicates it is willing
      to remove the primer and provide the swab necessary for DNA testing. The statute
9       under which this Court has jurisdiction limits authority to order testing to the
      Washington State Patrol Crime Lab. Pursuant to their declarations the Crime lab
10       does not have ability to perform further testing on this particular item. The Court
      does not have authority to require the exhibit to be released to other than to the
11       Washington State Patrol Crime Lab for testing under the statute. Nor is the Court
      able to direct the Washington State Patrol Crime Lab to change their operations so
12       that they might perform a test which other labs perform and which they do not.
      Accordingly no further testing on Exhibit 236-2 will be ordered.
13

14 Memorandum Opinion, at 2-3 (May 15, 2009).

15        Stenson responded to this ruling by noting a new motion. In this new motion, Stenson

16 requested that his expert, Kay Sweeney, be allowed to remove the primer cap inside the Crime Lab.

17 9RP 3. In making this motion, Stenson tendered a declaration from Sweeney which included the

18 following information:

19         7. There is, indeed, some risk involved with extracting that primer cap from
      the bullet.

20         8. The extraction can, however, be accomplished without significant time or
21       expense. The reason is that the same amount of pressure that was applied to the
      primer cap to wedge it into the bullet, without causing the primer cap to explode, can
22       be applied to the primer cap to extract it from the bullet without causing the primer
      cap to explode.

23

24     [2]Initial testing resulted in amplified quantities of DNA that were below the Crime Lab's testing
25 threshold. The Court, nonetheless, ordered the Crime Lab to perform testing on the sub-par aliquots. The
results were as follows:

26       No DNA typing results or no interpretable DNA typing results were obtained from the
27       extracts from item 16235 (revolver), item 20454 (cartridge case), or item 20468 (possible
      bullet fragments and cartridge case).

28 Crime Laboratory Report, at 2 (June 16, 2009).

RESPONSE TO PETITIONER'S MOTION TO COMPEL
PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91-- 2

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175 FAX (360) 753-3943

1  Declaration of Kay Sweeney (June 10, 2009). No where in Sweeney's declaration or in Stenson's

2  motion is there an indication that the bullet would be sawn open, instead of Sweeney pulling the

3  primer cap out of the same orifice it was inserted into.

4      This Court responded to Stenson's new motion, not by granting it, but by ordering that the

5  Crime Lab would be required to release Exhibit 91 to Sweeney at Sweeney's laboratory so Sweeney

6  could extract the primer cap. The Court's memorandum opinion on this matter indicated that

7  Stenson had the burden of establishing that a chain of custody was fully maintained:

8          Allowing removal of the primer elsewhere would eliminate the State Crime
   Lab's concerns but would raise issues of contamination and chain of custody. Chain
9  of custody issues are generally the prerogative of the State in criminal cases. This is
   because the State must prove that the evidence is reliable when it presents it in
10 prosecution of a defendant. Here, however, in this proceeding, the burden has shifted
   to the Defendant to prove the reliability of any evidence which he intends to present.
11 Chain of custody issues are such that it will be the defendant that necessarily must
   prove that the chain [of] custody was appropriate and that there was no opportunity
12 for contamination.

13         The Court orders the following: The parties may petition the Supreme Court
   to release the exhibit to the Washington State Patrol Crime Laboratory. The Crime
14 Laboratory shall deliver the item to the expert of the defendant in any manner they
   deem appropriate. The State Crime Lab shall be entitled to personally deliver the
15 exhibit, and also to personally examine the location under which the extraction will
   occur to ensure that there is a minimal possibility for contamination. The State's
16 attorney has indicated that the Lab could not ensure a lack of contamination unless
   a person was actually present to observe the extraction and that such would pose an
17 unreasonable risk. The Court does not believe that such a process is absolutely
   necessary[;] chain of custody and contamination proceedings always bear some
18 degree of risk and proof. The parties, upon completion of the State's lab examination
   of the location for the extraction shall require that the handling of the material and
19 the extraction of the items and the items being secure din appropriate evidentiary
   bags and/or the like, be filmed. The filming may occur both independently by the
20 third party Laboratory personnel, and/or by the use of a camera provided by the Staet
   Crime Lab which shall be returned to them immediately for processing of the film.
21 That should avoid any suggestion that the film was tampered with.

22 Memorandum Opinion, at 3 (Aug. 18, 2009).[3]

23     On August 21, 2009, this Court entered an order that once again indicated that the Crime Lab

24 was to be given access to the location where Sweeney would conduct the extraction:

25         4. The Crime Laboratory shall deliver Exhibit 130A (sic) to Kay Sweeney
   in the manner it chooses. If the Crime Laboratory chooses to personally deliver
26 Exhibit 130A (sic) to Kay Sweeney, a representative of the Crime Laboratory shall
   be entitled to personally examine the location where the extraction of the primer cap
27 will occur to ascertain the potential for contamination.

28

---

[3] A copy of this document is attached to this response.

RESPONSE TO PETITIONER'S MOTION TO COMPEL
PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91– 3

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175 FAX (360) 753-3943

1   Order Re DNA Testing of Primer Cap, at 2 (Aug. 21, 2009).

2         The Supreme Court's Stipulation and Order Re Release of Exhibit 91 also included a

3   provision guaranteeing access by the State's representative to the area where the extraction was to

4   occur:

5         Prior to turning over custody of Exhibit 91 and the performance of any testing, Mr.
          Tarver or his designee will inspect the counter space in the laboratory where the
6         testing/extraction will occur and its immediate surroundings.  Once the inspection
          has occurred, he will leave and wait nearby for completion of the extraction/testing.
7         Mr. Sweeney shall perform the testing, in the following way: (a) Mr. Sweeney will
          remove the primer from the hollow-point of Exhibit 91; (b) all resulting portions of
8         Exhibit 91 will be secured in secure, sealed evidentiary containers; (c) Mr. Sweeney
          or his designee shall film or photograph this process of extracting the primer.
9         Immediately upon completing the extraction all resulting portions of Exhibit 91 as
          well as the original packaging shall be returned to Mr. Traver or his designee for
10        transport back to the WSP Crime Laboratory facilities.

11  Stipulation and Order Re Release of Exhibit 91, at 2.

12        Stenson, who was responsible for transporting the correct exhibit from the Washington

13  Supreme Court to the Crime Lab, failed to collect Q10 from the Court.  Thus, Stenson failed to

14  provide the Crime Lab with the correct exhibit.

15        The Crime Lab transported the exhibit it received from Stenson's courier (Q 5-9) to

16  Sweeney's laboratory.  Once at Sweeney's laboratory, Sweeney exited one locked door and led the

17  Crime Lab's representatives into a mostly empty room.  *See* Declaration of Rick Wyant, at 3.  The

18  furnishings observed in this room did not include a clamp, photography equipment, or a high speed

19  rotary tool.  *Id.*  Sweeney advised the Crime Lab's representatives that he would be performing the

20  examination in this bare room.  *Id.*

21        At Sweeney's request, the Crime Lab's representatives exited the room and went to their

22  parked car.  Forty-five minutes later, Sweeney was recontacted by the Crime Lab's representative.

23  During this contact, Sweeney acknowledged that he had the State's evidence in a room other than

24  the one he had allowed to be inspected by the Crime Lab's representatives.  *Id.*, at 4.  Sweeney

25  refused to allow the Crime Lab's representatives to inspect this work area as authorized by both this

26  Court's and the Supreme Court's order, on the grounds that there was evidence from "other cases

27  lying around that are confidential."  *Id.*, at 5 (quoting Sweeney).

28

RESPONSE TO PETITIONER'S MOTION TO COMPEL
PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91– 4

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175 FAX (360) 753-3943

1  Sweeney ultimately sliced open the State's evidence in an uninspected location, using
2  unexamined tools, and in the presence of evidence from unrelated cases. Sweeney provided no
3  advance notice of his intention to saw open the State's exhibit, rather than pulling the primer cap out
4  through the back.

5  Sweeney completed a report of his examination. This report, however, ends with the
6  following cryptic note: "Other items were received and examined but are not reported at this time."
7  This "non-report" is contrary to the Washington Supreme Court's Order releasing Exhibit 91 which
8  expressly required a written report stating "the nature, scope, duration and extent of any analysis
9  performed on the item(s) of evidence." Stipulation and Order re :Release of Exhibit 91, at 3.

10  Sweeney returned the unassembled fragments of Q 5 to 9 to the Crime Lab's representatives
11  the next day. The Crime Lab examined the items, but did not perform DNA testing, as this Court's
12  order directed testing of the primer cap that had been lodged in the previously tested Q10.
13  Ultimately, the Crime Lab returned the fragments it received from Sweeney to the Washington
14  Supreme Court in the same condition it received them from Sweeney.

15  Stenson now makes a motion in this Court to compel testing of the Sweeney fragments,
16  claiming that "Stenson carried out all of his duties under that stipulation." Motion to Compel
17  Previously Ordered DNA Testing of Exhibit 91, at 2.

18  ARGUMENT

19  **Stenson Has Irrevocably Compromised the Integrity of Exhibit 91**

20  The post-conviction DNA mandates that all DNA testing will be performed at the
21  Washington State Patrol. *See* RCW 10.73.170(5). The Washington State Patrol's laboratories are
22  all subject to the supervision of the legislatively created Forensic Investigation Council. *See* Chapter
23  43.103 RCW. All of Washington State Patrol's laboratories, moreover, are accredited through the
24  American Society of Crime Laboratory Directors (ASCLD). *See*
25  http://www.wsp.wa.gov/forensics/flsbhome.htm (last visited Mar. 3, 2010).

26  Sweeney's laboratory, unlike that of the Washington State Patrol, is uninspected and
27  unaccredited by any oversight organization. *See* Curriculum Vitae Kay M. Sweeney.[4] Sweeney's

28  ───────────────────────
[4]This curriculum vitae was attached to Sweeney's March 4, 2009, declaration.

RESPONSE TO PETITIONER'S MOTION TO COMPEL
PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91-- 5

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175 FAX (360) 753-3943

1     laboratory procedures and reports are not peer reviewed.

2          This Court placed specific safeguards in place regarding Sweeney's handling of State's

3     exhibit 91. Included in those safeguards was the right of the Crime Laboratory Personnel to examine

4     those portions of Sweeney's laboratory where Sweeney would take State's exhibit 91 for processing.

5     In a classic "bait and switch" fraud, Sweeney invited the Crime Lab's representatives to examine a

6     nearly empty room that lacked all of the equipment Sweeney ultimately utilized in slicing open

7     State's exhibit 91. Sweeney refused access to the location where Sweeney photographed State's

8     exhibit 91, and where Sweeney sawed the exterior casing into multiple pieces. Sweeney's only

9     rationale for his non-compliance with this Court's order was the presence of evidence from other

10    cases.

11         Stenson's agent's failure to comply with this Court's order renders it impossible to determine

12    whether any DNA that may be found on the remaining fragments of Q9 came from Sweeney, the

13    uninspected work surfaces, the uninspected vise, the uninspected rotary blade, the evidence from the

14    other unidentified cases, from Sweeney's unidentified assistant, or from any other unidentified

15    sources. Stenson's motion for DNA testing of the mishandled fragments of Q9 should, therefore,

16    be denied.

17         Respectfully Submitted this 4th day of March, 2010.

18

19

20    *Pamela Beth Loginsky* (signature)

21    PAMELA B. LOGINSKY
      WSBA NO. 18096

22    Special Deputy Prosecuting Attorney

23

24

25

26

27

28

RESPONSE TO PETITIONER'S MOTION TO COMPEL
PREVIOUSLY ORDERED DNA TESTING ON EXHIBIT 91-- 6

WASHINGTON ASSOCIATION OF
PROSECUTING ATTORNEYS
206 10TH Ave. S.E.
Olympia, WA 98501
(360) 753-2175  FAX (360) 753-3943



# KMS FORENSICS INC

PO Box 8580 - KIRKLAND, WA 98034
phone & fax = (425) 814-3244

Sheryl Gordon Mc Cloud, Attorney at Law
710 Cherry Street
Seattle, WA 98104

*Re: State v. Darold Stenson; Laboratory #2k9-001*

## LABORATORY REPORT

### Introduction:

The subject case was originally investigated by law enforcement personnel some time in 1993. A .38 caliber cartridge, fitted with a hollow point bullet that contained a primer cap embedded in the nose, was reportedly collected as part of the evidence during that investigation. Crime Laboratory personnel declined to remove that primer cap citing the dangerous if not impossible, in-tact success of such removal attempt. I was asked to examine the pertinent item of evidence and remove the primer cap from the hollow point nose of subject bullet if it was feasible.

### Receipt of Evidence:

On Friday, December 18, 2009, at about 2:00Pm, Mr. Rick Wyant of the Washington State Crime Laboratory in Seattle called me and asked if they could submit the pertinent evidence item before Christmas. He indicated that they had miscalculated the deadline end date and so were prevailing on me to fit it in. At 10:00 am December 23, 2009, Mr. Wyant and Kathy Geil brought three evidence items to my laboratory. They entered a work area of my laboratory and inspected the space while the evidence was being transferred to my custody on paperwork that they supplied. Neither Mr. Wyant or Ms. Geil could provide information as to which item they brought was the pertinent item for my examination. Mr. Wyant and Ms. Geil then left my laboratory workspace and waited in the parking lot for me to complete my work. They interrupted my work at 10:45 am and 12:03 pm to inquire as to how much longer it would be. Both times I could not tell them because I had not found the item of evidence of interest and once I did I was not sure what to expect as I had never seen the item in person nor had I ever seen a photograph of it. At 12:10 pm Mr. Wyant called saying that it was silly for them to wait any longer; that he had called a supervisor and had been told to return to their office. He asked that I call when I was finished with the evidence whether it be today, tomorrow (only around until noon on 12.24.09) or what ever, and they would come pick it up. Several calls were also received during my laboratory examination of the evidence from attorney Robert Gombeiner relating to inquiries by the Clallam County Prosecuting Attorney's Office.

### Evidence Examination:

Items received;
Item #CF-1, Shell casings
Item #CF-2, Bullets
Item #CF-3, Bullets

US v. Stenson           1           Laboratory #2k9-001

All items were received in an open, large white envelope with Washington State Supreme Court return address on it.

*Item #CF-3*, consisted of a clear plastic envelope with clear tape along all edges marked "CF 12/9/09" and marked "#G1965-4, Supreme Court of Washington, CF #3" on one side. This plastic envelope held a padding of clear plastic bubble wrap and two heat sealed plastic bags that were attached to one another.

One of the heat sealed plastic bags, marked "30412056, VZ" was found to have a heat sealed ridge between the two ends. One end was open and it contained a rolled plastic bag marked "30412056, Q9, VZ that in turn held a deformed bullet jacket. Deformation appears to have been caused by tool use. The closed end of the plastic bag held an apparent lead mass typical of a bullet core that is deformed, again apparently by tool use.

The other heat sealed plastic bag also had a heat sealed ridge between the two ends; one end was open and one was closed. The open end held one coin envelope with red tape on one side and "FBI" tape over the flap. No marks were noted on either tape. The envelope was marked "Q9, (initials), 30412056, VZ, 3, (initials)". The envelope held one small pink cardboard box with unsecured "FBI" tape, and was found to hold one unfired "R-P 38 SPL" cartridge case (without bullet) and loose gunpowder particles. The closed end of the plastic bag was found to hold one jacketed bullet with a deformed base caused by a cutting action (see Figures #1 and 2) and with a flat, nickel colored metal object in the apparent hollow point nose (see Figure #3). The rim of the open nose of the bullet jacket was clearly over the edge of the metallic object in the nose of the bullet so it was not possible to pry the object out of the nose cavity (see Figure #3). The bullet was marked "Q9, 30412056, VZ, (and other initials)". The bullet was noted to have a white residue coating on the surface of the jacket which is typical of cyanoacrylate fuming, used for the development of fingerprints (see Figure #1).

This bullet was positioned in a vise and a high speed rotary tool fitted with a cutting wheel was used to cut around the circumference of the bullet jacket at shoulder of the ogive (see Figures #4, 5, and 6). The nose section of the jacket was then removed exposing the lead bullet core. The nose of the bullet core had been smoothly formed in a manner that snuggly fit the interior of the bullet jacket and the nose of the hollow point opening had been formed over the nickel metallic object in the nose cavity (see Figure #7). A scalpel was used to create longitudinal scoring along the nose of the lead core up to the nose opening. The scored lines were pried in a manner to spread the nose opening and the nickel object was removed from the nose cavity. The nickel, metallic object was found to be an unfired primer cap (see Figures #8, 9 and 10). The now exposed nose cavity of the hollow point bullet was found to be packed full of glossy, irregularly sized (but tiny) particles, not typical of common gunpowder (see Figures # 10 and 11). No testing of these particles was conducted since such testing was strictly forbidden by court order.

The successfully removed primer cap was placed into a plastic, snap cap micro-centrifuge tube, labeled, marked and resealed into the original plastic bag section along with the original bullet parts.

**Evidence Release:**

My examination was completed at 4:00 pm, December 23, 2009, and at that time I called the Crime Laboratory and talked with Kathy Geil. Ms. Geil related that they were very busy and would not be able to pick up the evidence until the next day. Mr. Wyant picked up the evidence at 11:04 on December 24, 2009,

and this transaction was documented on the original release paperwork.

**Note:**

Other items were received and examined but are not reported at this time

Kay M. Sweeney, D-ABC
Forensic Scientist

February 8, 2010