Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant James Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>**JAMES WELLS' MOTION FOR NEW EVIDENTIARY HEARING PURSUANT TO D.AK.L.M.R. 6(c)(3) ON DEFENSE MOTION TO SUPPRESS STATEMENTS AND EVIDENCE** |

The defendant James Wells respectfully moves this Court for a new evidentiary hearing on his Motion to Suppress Statements (Fourth and Fifth Amendments) (Docket No. 120).

## I. PROCEDURAL HISTORY

On August 30, 2013, Mr. Wells filed his Motion to Suppress Statements (Fourth and Fifth Amendments), and his Memorandum of Law in Support of Motion to Suppress Statements (Fourth and Fifth Amendment) at Docket Nos. 120 and 121,

respectively. The government filed its Opposition to Defendant's Motion to Suppress Wells' Statements to Law Enforcement at Docket No. 138. Additional briefing followed regarding Mr. Wells' request for an evidentiary hearing on his Motion to Suppress Statements at Docket Nos. 158 and 159, and the Government responded thereto at Docket No. 165.

An evidentiary hearing was conducted on November 18, 2013.

Peter Russell Van Ness and Kirk Oberlander testified on behalf of the government. During the evidentiary hearing, the following government exhibits were admitted: (1) Photo – Communication Station; (2) Sketch of T1 Office Space; and (3) Sketch of Interview Office Diagram. The admitted defense exhibits were the following: (1) Watch Log; and (2) Question Matrix. (Docket No. 178) The Court took the matter under advisement.

On January 16, 2014, this Court issued its Recommendation Regarding Motion to Suppress Statements (Fourth and Fifth Amendments), recommending that Mr. Wells' motion be denied (Docket No. 267).

The deadline to file objections to the proposed finding and recommendation was January 27, 2014. On January 24, 2014, Mr. Wells submitted a request for an extension of the deadline to file objections to the report and recommendation (Docket No. 277). This request was based on the government's recent disclosure of thousands of pages of discovery and the audio recordings of hundreds of witness interviews.

Specifically, on January 3, 2014, the government delivered 131 audio recordings of witness interviews, including an index listing the interviewee name, date of

interview, and identification number. No transcripts of the interviews were provided. In addition, the government produced approximately 40 pages of Bates Stamped discovery.

On January 10, 2014, the government produced an additional 209 audio recordings of witness interviews, which again included an index listing the interviewee name, date of interview, and identification number. No transcripts of the interviews were provided. Additionally, approximately 350 pages of Bates Stamped discovery were produced.

On January 23, 2014, the government produced an additional 11 audio recordings of witness interviews without transcripts, over 1,000 pages of Bates Stamped discovery, and various Excel spreadsheets.

The Court granted the requested extension of the deadline until January 31, 2014 (Docket No. 281). On January 31, 2014, Mr. Wells requested an additional extension of the deadline (Docket No. 291). The request stemmed from the defense's need for additional time to review the overwhelming amount of audio recordings and other discovery recently produced for information bearing on Mr. Wells' motion to suppress his statements. The Court granted the request and extended the deadline until February 7, 2014 (Docket No. 293).

On February 7, 2014, Mr. Wells requested an additional extension of the deadline (Docket No. 306). The request was granted and the deadline extended until February 14, 2014 (Docket No. 310).

On February 11, 2014, after the defense filed a motion to continue the trial, the government produced transcripts of 70 of the 393 audio interviews.

On February 14, 2014, an additional extension was requested (Docket No. 319). The Court granted this request and extended the deadline until February 21, 2014 (Docket No. 322).

On February 21, 2014, an additional extension was requested (Docket No. 324). The Court granted this request and extended the deadline until February 28, 2014 ( Docket No. 325).

Since January 3, 2014, the government has produced 393 audio interviews in discovery. As of today, February 28, 2104, despite its best efforts, the federal defender staff has been able to listen to only 130 of those audio interviews.

II. **THE GOVERNMENT WITHHELD KEY EVIDENCE REGARDING THE CUSTODY ISSUE UNTIL AFTER THE EVIDENTIARY HEARING IN THIS CASE WAS CONCLUDED.**

The key issue in this motion to suppress evidence of statements was whether the Court would conclude that Mr. Wells was "in custody" for purposes of *Miranda* when he was interrogated by government agents on April 12 and April 13, 2012 (Docket No. 120). Although he was not formally arrested on April 12, 2012, since he was not provided *Miranda* warnings prior to his interrogation, the court considers the totality of the circumstances to determine whether a reasonable person in the defendant's position would have felt deprived of his freedom of action in any significant way, such that he would not have felt free to terminate the interrogation. *See, e.g., United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008). The government was well aware that this would be the key issue (Docket No. 138).

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR                                                                                         Page 4

Case 3:13-cr-00008-SLG   Document 330   Filed 02/28/14   Page 4 of 12

The evidentiary hearing in this case was held on November 18, 2012. It was not until January 2014 that the government disclosed to the defense the existence of a number of statements of important witnesses which strongly support the defense position on the "custody issue." These witnesses include at least the following:

### A. Scott Reckner

Chief Scott Reckner was in charge of COMMSTA and was Mr. Wells' direct supervisor at COMMSTA. Mr. Reckner was the person from whom Mr. Wells received his daily orders. On April 12, 2012, Mr. Reckner arrived at the COMMSTA site at approximately the same time as Mr. Wells, and was present at COMMSTA throughout the rest of the day. Defense counsel have now become aware that, in an interview conducted by government agents on May 9, 2012, Mr. Reckner stated that COMMSTA "was on lockdown" on April 12, 2012:

| | |
|---|---|
| Investigator | What was his demeanor like at the time? |
| Scott Reckner | He was quiet. He was-he was saying that he's, uh, he's diabetic. Um, he was talking about he needed to get something to eat soon. Um, and so then I said well we can get you something to eat. You know, we can get you … Because **we were all on lockdown. Nobody could come or go**. |
| Investigator | Right. |

Exhibit A, Bates No. 26102 (emphasis added).

Defense counsel and his investigators have attempted to interview Mr. Reckner during the past year, but he has repeatedly declined to be interviewed. This may be because Mr. Reckner was instructed not to discuss the investigation with anyone except for the Coast Guard investigators. A review of other taped interviews of important

government witnesses reveals that government investigators concluded at least some of the government interviews by requiring the witnesses to promise not to discuss the investigation with anyone other than the government investigators. *See, e.g.*, the August 6, 2012 interview of Leah Henry:

> LH: I, Leah J. Henry have been advised by Special Agent Jerry Pr--
>
> JP: Prichard.
>
> LH: --Prichard of the Coast Guard investigative service of an ongoing investigation concerning the following matters. Interview regarding deaths of ET1 Hopkins and Rich Belisle. I've been advised and understand the following. This is an ongoing investigation. As such I understand that I am not to discuss this investigation with any other, or any other information regarding aspects of this investigation with any persons outside of the Coast Guard investigative service and appropriate legal counsel.
>
> JP: Do you understand that?
>
> LH: Yes.
>
> JP: Go ahead and initial there. Okay. Allright, and you understand this statement as well?
>
> LH: Mm-hmm.
>
> JP: Okay. And this says I have carefully read the above statements and any questions I have asked concerning these statements have been answered in my complete satisfaction.
>
> LH: Mm-hmm.
>
> JP: Is that correct?
>
> LH: Yes.

Exhibit B, Bates Nos. 25984-25985.

If the defense had been aware of this statement by Mr. Reckner, then the defense would have called Mr. Reckner as a witness to testify at the evidentiary hearing on November 18, 2013.

### B. USCG Member Acosta

USCG Member Acosta is one of the individuals who was stationed at T1 on April 12, 2012. Defense counsel have just now become aware that, in an interview conducted by government agents on April 13, 2012, Coast Guardsman Acosta stated that all of the COMMSTA workers "had to stay" at T1 for 15 to 16 hours on April 12, 2012. If the defense had been aware of this statement by Acosta, then the defense would have called Acosta as a witness to testify at the evidentiary hearing on November 18, 2013.

### C. William Reed

Senior Chief William Reed was an Electronics Technician and the Department Head at COMMSTA on April 12, 2012. Defense counsel have just now become aware that, in an interview conducted by government agents on April 14, 2012, Mr. Reed stated that there was a concerted effort by the United States Coast Guard command to keep all of the key workers in a fixed location at T1 so that they could be interviewed by the law enforcement agents. If the defense had been aware of this statement by Mr. Reed, then the defense would have called Mr. Reed as a witness to testify at the evidentiary hearing on November 18, 2013.

### D. Other Witnesses

As indicated above, the prosecution has dumped over 350 tape recordings on defense counsel in the past few weeks. Although transcripts of these recordings

apparently exist, the government has refused to provide transcripts for all but a handful of the interviews. Because the defense team is still attempting to listen to all the interviews, the defense cannot be sure that all of the witnesses who had important evidence on the custody issue, which is critical to the motion to suppress evidence, have been identified in this pleading. As the interviews are listened to by defense counsel's staff, there may very well be other witnesses who would be important to call at a further evidentiary hearing on the motion to suppress statements. The defense simply will not know until all the tape recordings are listened to.

## III. FAILURE TO PRODUCE THIS EVIDENCE UNTIL AFTER THE EVIDENTIARY HEARING VIOLATES THE GOVERNMENT'S OBLIGATIONS UNDER FED.R.CRIM.P. 16(A)(1)(E)(I).

The government's failure to produce the interviews until after the evidentiary hearing clearly violates the government's obligations under Fed.R.Crim.P. 16(a)(1)(E)(i). Rule 16(a)(1)(E)(i) requires the government to produce anything that is "material to the preparation of the defense."

> (E) *Documents and Objects*. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> ***(i) the item is material to preparing the defense***;

Fed.R.Crim.P. 16 (a)(1)(E) (emphasis supplied). The defense has previously fully briefed the government's obligations under this rule (Docket Nos. 105 and 127).

Recent Ninth Circuit authority has clarified how prosecutors should view their discovery obligations under Rule 16(a)(1)(E)(i), and what constitutes "item[s] . . . material to preparing the defense" that must be disclosed under that rule. In reversing two recent convictions, the Ninth Circuit demonstrated zero tolerance for prosecutors' withholding of information from a defendant that relates to preparing the defense or even a potential defense. In *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013), the Ninth Circuit vacated and remanded a conviction, stating "[i]t . . . behooves the government to interpret the disclosure requirement [of Rule 16(a)(1)(E)(i)] broadly and turn over whatever evidence it has pertaining to the case." The court held that Rule 16(a)(1)(E)(i) "[m]ateriality is a low threshold" and is satisfied so long as the information sought could help the defendant prepare a defense. *Hernandez-Meza*, 720 F.3d at 768.

In *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183-84 (9th Cir. 2013), the court held that Rule 16(a)(1)(E)(i) permits discovery of information "relevant to the development of a possible defense." (Quotation marks and citation omitted) (vacating and remanding conviction where district court abused its discretion by not requiring disclosure of information material to preparation of the defense.) Explaining that favorable or exculpatory information is discoverable not only under a *Brady* standard, but also under Rule 16(a)(1)(E)(i), the court noted that "materiality" under Rule 16(a)(1)(E)(i) is "broader than *Brady* . . . because [i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Id.* at 1183.

Chief Judge Kozinski recently explicated the government's obligations under Fed.R.Crim.P. 16(a)(1)(E)(i):

> A defendant needn't spell out his theory of the case in order to obtain discovery. Nor is the government entitled to know in advance specifically what the defense is going to be. The relevant subsection of Rule 16 is written in categorical terms: Upon defendant's request, the government must disclose any documents or other objects within its possession, custody or control that are "material to preparing the defense." Fed.R.Crim.P.16(a)(1)(E)(i). Unlike the preceding and subsequent subsections, which both require that "the government knows – or through due diligence could know – that the" item exists, see Fed.R.Crim.P. 16(a)(1)(D), (F), subsection (E) is unconditional. Lack of knowledge or even a showing of due diligence won't excuse non-compliance.

*Hernandez-Meza*, 720 F.3d at 768-69.

Here, it is patently obvious that statements of important witnesses (such as Mr. Wells' supervisor at COMMSTA – Mr. Reckner) indicating that the base was "on lockdown – that no one could come or go"; that the Coast Guard members (Acosta) had no choice but to stay at T1; and that the Coast Guard command made a concerted effort to keep all the key workers in fixed place (Chief William Reed); were statements that were "material to preparing the defense." Failure to provide them in time for use at the evidentiary hearing violates the government's obligations under Rule 16(a)(1)(E)(i). It also violates the government's obligations under *Brady v. Maryland*. *See* briefing at Docket Nos. 105 and 127.

## IV. CONCLUSION

D.AK.L.M.R. 6(c)(3) provides that "[t]he court may, . . . on the motion of any party, set the matter for a further evidentiary hearing . . . to take such further evidence as the district judge may deem necessary." In this case, the magistrate judge was deprived

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR                                                                                             Page 10

Case 3:13-cr-00008-SLG   Document 330   Filed 02/28/14   Page 10 of 12

of important evidence – as set forth above – regarding whether Mr. Wells was "in custody" when he was being interrogated on April 12 and April 13, 2012. The reason that this evidence could not be presented to the magistrate judge is because the government suppressed this evidence until after the evidentiary hearing had occurred.

With respect to Mr. Reckner, Mr. Acosta, and Mr. Reed, defense counsel was unaware that these witnesses had important evidence to present until the government recently disclosed the interviews. This clearly constitutes good cause to reopen the hearing.

DATED at Anchorage, Alaska this 28th day of February 2014.

Respectfully submitted,

/s/ Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone: 907-646-3400
Fax: 907-646-3480
E-Mail: rich_curtner@fd.org

<u>Certification:</u>
I certify that on February 28, 2014,
a copy of ***James Wells' Motion for
New Evidentiary Hearing Pursuant to
D.Ak.L.M.R. 6(c)(3) on Defense Motion
to Suppress Statements and Evidence***
was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: karen.loeffler@usdoj.gov

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: kathlee.duignan@usdoj.gov

/s/ Rich Curtner

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR                                                                                    Page 12

Case 3:13-cr-00008-SLG   Document 330   Filed 02/28/14   Page 12 of 12