# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>    Defendants. | 3:13-cr-008-RRB-JDR<br><br>**ORDER REGARDING<br>IN LIMINE MOTION RE:<br>DEFENSE EXPERT<br>DR. DANIEL REISBERG**<br><br>(Docket 312) |

    The United States moves to exclude the testimony of defense expert Daniel Reisberg, Docket 312. The motion is opposed by defendant, Docket 326. The government filed a reply at Docket 327. A hearing on the motion was conducted on March 10, 2013. The defendant filed a Notice of Lodging, Docket 340 and a Notice of Filing Declaration of Dr. Reisberg at Docket 343. The government filed a Supplemental Reply at Docket 347. Upon due consideration, the motion is denied as stated below.

## The Issue

    Dr. Daniel Reisberg is a professor of psychology at Reed College in Portland, Oregon. The defendant's Notice of Expert Testimony states that Dr. Reisberg will testify concerning the "increased risk of error if a forensic analysis is

conducted by someone who knows what outcome is expected by the party that has retained the relevant expert." Professor Reisberg intends to testify that a person's perception of low quality visual input can be altered and even destroyed by the person's expectation or knowledge of what the inputs are supposed to show.

He expects to testify that the evaluations of government witnesses, Angelio Toglia and Neil Schmidt have been compromised by "confirmation bias," which Dr. Reisberg describes as "a bias inclination or prejudice that can compromise the quality and accuracy of someone's judgment." *See* Dr. Reisberg's February 2014 Transmittal to Richard Curtner, Docket 312-1, p.7.

Dr. Reisberg also opines that the judge will over estimate the clarity of the raw video which will color his decisions by his mis-perception. Dr. Reisberg should not be permitted to tell the jury that the court has impeded it's ability to decide the case. The fact finder in this case will be the jury, not the judge.

The government cites two conclusions of Dr. Reisberg's that the government contends are logically and legally flawed and thus should be excluded, namely: (1) "that there is a substantial risk that government experts [Schmidt's and Toglia's] evaluations have been compromised by confirmation bias, and at this point, [should be viewed with] caution in interpreting their evidence, and plausibly suggests that the finders of fact should eventually give less weight to their evidence"; and (2) if the jurors are first shown a digitally enhanced video of the vehicles at issue then the jurors "will not be able to set aside the ideas gained from the enhanced video,

2

and . . . this will undermine the juror's ability to see what is actually in the raw video."[1]

## Daubert Standard

In an Order at Docket 303 the magistrate judge set forth the discussion of the application of Daubert v. Merrell Dow Pharamaceticals, Inc, 508 U.S. 579 (1993), Federal Rule of Evidence 702, and Kuhmo Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999), under which expert testimony is be admitted at trial. Some but not all of that discussion is repeated here for purposes of analyzing Reisberg's proposed expert testimony.

In Daubert, the Supreme Court held that the judge, acting as a gatekeeper, determines whether the testimony is both reliable and relevant. Daubert factors which the court may consider in accessing the reliability of expert testimony includes the following: (1) whether the methodology can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the techniques "known or potential rate of error," and the existence and maintenance of standards controlling the technique's operation; and/or (4) whether a theory has gained general acceptance in the relevant scientific community. Daubert, 509 U.S. at 584-87.

---

[1] Dr. Reisberg wrongfully assumes that the government intends to show the jury a digitally enhanced video which could influence their perception and assessment.

3

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, as amended describes the following:

> If scientific, technical or other specialized knowledge will assist the trier or fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliability to the facts of the case.

Some courts described these requirements as "qualifications, reliability, and fit." Elcock v. Kmart Corp., 233 F.3d 734 (3rd Cir. 2000).

## I.  QUALIFICATIONS

Dr. Reisberg is a research psychologist with a Ph.D., in experimental psychology from the University of Pennsylvania in 1980. He is presently the chair of the Psychology Department at Reed College in Portland, Oregon. For more than two decades he has focused on the completeness and accuracy of human memory by means of laboratory experiments and field studies. He has done extensive writing about memory including the psychological processes involved whenever someone is making a judgment about evidence. He teaches courses that cover

such material. In addition, he has consulted extensively with attorneys and law enforcement, and provided seminars with and for attorneys in the Oregon State Bar as well as training sessions for detectives in the state of Oregon. He has frequently testified on the issues of witness memory and confirmation bias in federal court and state courts in Oregon, California, and Washington. Docket 343-1, p.2.

In one case the issue focused on a low quality surveillance tape. The topic of confirmation bias is covered in a book Dr. Reisberg has written and in press to be published by Oxford University Press. *Id.* p.2. In light of the general acceptability by courts of personal experience, training, interviews and research for becoming an expert in one's field, this court finds Dr. Reisberg's methodology acceptable as long as his opinions fall within his expertise.

Dr. Reisberg has no expertise in work place violence, crime scene analysis, tire characteristics, film and video analysis, identification of a particular vehicle make and model, or any other area of speciality similar to experts retained by the government (specifically Schmidt and Toglia). Dr. Reisberg readily admits that he is not an expert in Honda CR-V model shapes, although he does own a CR-V, nor is he an expert in accident reconstruction. He is not qualified to testify as to the proper techniques for conducting such analysis.

II. **Reliability**

The Daubert factors assist the judge in accessing the reliability of the expert testimony. To be qualified to testify, an expert must be well be versed in the particular discipline relevant to his testimony. Zaremba v. General Motors Corp, 360 F.3d 355, 360

5

(2nd Cir. 2004); Smith v. Rasmussen, 249 F.3d 755, 759 (8th Cir. 2001). In the case at bar, the particular discipline at issue is perception of facts by the government's experts, not the expert's knowledge of their field or theories themselves. Dr. Reisberg bases his expertise for the purpose of this case on his knowledge and study of perception and identification procedures generally. He acknowledges that he has little information about what the FBI told Neil Schmidt in their request for his expertise. Expert testimony must be based on sufficient facts or data. Kumho Tire v. Carmichael, 526 U.S. 137, 141, 148-49 (1999). Dr. Reisberg finds Mr. Toglia's claim that he can identify various structures in the vehicle depicted in the blurry video "impressive" since other persons using the video gave more cautious assessments. Docket 312-1, p.5. Dr. Reisberg acknowledges that "there is no scientific research examining whether (or to what extent) car identification from low-quality video is influenced by confirmation bias." Docket 312-1, p.8.

  Dr. Reisberg's transmittal to Mr. Curtner (Docket 340) cites a paper about fingerprint experts (Dror and Charlton in 2008), and a paper on eye witness identification (Hasel and Kassin in 2009) illustrating the affect of confirmation bias. He also cites studies by Kassin, Bogart & Kerver (2012) scrutinizing records from DNA examination cases and a papers by Kassin, Dror, and Kukucka entitled: The Forensic Confirmation Bias: Problems, Perceptions, and Proposed Solutions[2], as evidence that polygraphers are likely to obtain results in line with their expectations. From this review, Dr. Reisberg concludes that it is reasonable that the video analysis at issue would be susceptible to the same sort of bias.

---

[2] Published in 2013 by the Journal of Applied Research in Memory and Cognition.

6

The government acknowledges that Dr. Reisberg has previously testified in another case regarding suggestibility of photo displays to lay witnesses. As the government notes in State v. Almaraz, 301 P.3d 242, 257-59 (Idaho, 2013), Dr. Reisberg was not permitted to opine on the accuracy of a witness's identification; his testimony was limited to proper techniques for conducting a non-suggestive interview or photo spread.

In United States v. Beck, 418 F.3d 1008 (9th Cir. 2005), the appellate court addressed the consequences of the defense relying on testimony of a defense expert, Dr. Reisberg, that the methodology used made the photo spread impermissibly suggestive. The court held that such testimony opened the door allowing rebuttal testimony from the federal agent regarding the procedures he used in creating the photo spread.

In the instant case, Dr. Reisberg is essentially challenging the methodology used by the government's experts to identify the make and model of a vehicle. Determining whether an out-of-court identification procedure was overly suggestive includes consideration of whether the risk of mis-identification is acceptable. The defendant is entitled to assert that the law officers have used overly suggestive procedures in identifying evidence connected to the defendant.

Expert testimony that only vouches for the credibility or lack of credibility of another witness encroaches upon the jury's exclusive function to make credibility determinations. State v. Almaraz, 301 P.3d 242, 257 (Idaho, 2013). *See* United States v. Filler, 210 F.3d 386, *1 (9th Cir.) 2000 WL 123446)) "([E]xperts may not opine on credibility. Credibility is an issue for the jury."; United States v. Barnard, 490 F.2d 907, 912-13 (9th Cir. 1973); United States v. Poole, 794 F.2d 462, 468 (9th Cir. 1986) (holding that

7

testimony that perceptions may be distorted by "mental organization . . . motivation to observe . . . and witnesses' desire for conformity" was properly excluded).

The jury should readily be able to assess the possible bias on the part of an expert witness based on who hired the expert if they are made aware of the total percentage of the expert's income earned from providing expert witness services. Rogers v. U.S. Navy, 223 F.R.D. 533, 535 (S.D. Cal., 2004). The usual means for attacking evidence at trial is through cross-examination and proper jury instruction.

Dr. Reisberg assumes that the government's experts were expected to reach a particular conclusion in their forensic analysis of evidence without knowing this to be the fact. What a person expects the outcome of testing to show may be entirely independent of the testing itself, depending on how the experiment is conducted. Before Dr. Reisberg is allowed to testify about the methodology the government experts used in their tests, he must first know how those tests were conducted. Expert testimony relating to the accuracy or reliability of the methodology used by an expert witness may assist the trier of fact without encroaching on the fact finder's role to make credibility determinations. In Idaho v, Almaraz, 301 P.3d 242 (Idaho, 2013) the Idaho Supreme Court ruled that cognitive psychologist's proffered expert opinion testimony about specific instances of police suggestiveness during eye witnesses' out-of-court identification of the defendant did not invade the province of the jury in a first degree murder prosecution. The expert testimony was admissible to help the jury understand whether the interview of the eye witness was conducted in an overly suggestive way.

An issue on appeal in that case was whether the trial court had abused its discretion by preventing the defense expert, Dr. Reisberg, from testifying about the specific interview procedures used by the police during an eye witness identification. The state moved in limine to exclude or limit Dr. Reisberg's expert testimony on eye witness identification. Dr. Reisberg offered testimony on how eye witness memory can be affected by many factors including suggestiveness during police questioning. The trial court ruled that the defense would be allowed to present testimony from Dr. Reisberg although the extent of his testimony would be determined during trial outside the presence of the jury.

The Idaho Supreme Court ruled that the trial court had abused its discretion when it ruled that Dr. Reisberg could not testify about the specific procedures used in a particular interview. The Supreme Court agreed with the trial court that expert opinion testimony as to accuracy of the witness's identification would invade the province of the jury but ruled that Dr. Reisberg's testimony was not an opinion as to the witness's credibility. Rather, Dr. Reisberg's would have testified about the specific instances of police suggestiveness, which would have been helpful to the jury in understanding whether the interview was conducted in an overly suggestive way. The court ruled that an expert witness may testify to specific instances of police suggestiveness that may call into question the reliability of eye witness testimony,

Although Dr. Reisberg's proposed testimony in the instant case would not address eye witness testimony of the defendant, it would address factors that have an adverse effect on the reliability of the government witness's identification of a vehicle closely associated with the defendant and his alibi defense.

9

In United States v. Poole, the defendant was indicted and tried on three counts of bank robbery. The appellate court decided whether the district court had abused its discretion in excluding expert testimony on the alleged unreliability of eye witness identification. Before trial, the government filed a motion *in limine* to exclude the expert testimony of Dr. Robert Shomer who would have testified that stress, weapon focus, cross-gender identification, the interval between memory and recall, the suggestibility of a photo spread, and the witnesses' tendency to exaggerate the period of observation and witnesses' desire for conformity all could have affected the eye witness identification. The trial court granted the motion *in limine*. In ruling on the motion *in limine*, the district court questioned the scientific basis for the proffered testimony. The district court commented that the proffered testimony was general and suggested that Dr. Shomer could not testify about the case without dealing with the actual testimony of the witnesses which Dr. Shomer proposed not to do.

The Ninth Circuit in Poole upheld the district court's ruling citing United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir. 1973). Poole, 794 F.2d at 468. In Poole, the expert testimony was properly excluded because it did not deal with actual testimony of the witnesses. That link is not missing in the instant case if a proper foundation is made at trial before Dr. Reisberg testifies. The court in Poole recognized that other federal courts and state courts are beginning to accept expert testimony on the psychological factors affecting eye witnesses identifications in some circumstances. *Id.*

//

### III. THE FIT REQUIREMENT

To meet the "fit" requirement of relevancy the evidence must logically advance the material aspect of the opposing party's case. This court's determination of relevancy "must be 'tied to the facts' of [the] particular case.'" <u>Cooper v. Brown</u>, 510 F.3d 870, 942 (9th Cir. 2007) (quoting <u>Kuhmo Tire</u>, 526 U.S. at 150).

The "fit" requirement is directed primarily to relevance. <u>Daubert</u>, 509 U.S. at 591. The expert testimony must relate to an issue in the case. The court must exclude proffered evidence under Rule 702 and 403 unless the evidence speaks clearly and directly to an issue in dispute in the case and will not mislead the jury. <u>Daubert II</u>, 43 F.3d at 1321, n.,17. The Supreme Court emphasized in <u>Kuhmo Tire Co.</u> that, with respect to expert testimony, the test for reliability is flexible and the trial court has broad discretion in deciding how to determine reliability.

A vigorous cross-examination, presentation of contrary evidence and instruction on the burden of proof are the traditional means of attacking bias and weak or questionable admissible evidence. <u>Daubert</u>, 509 U.S. at 596. The extent of Dr. Reisberg's testimony can be addressed by the court if and when it arises during trial. Courts should not overly restrict expert testimony that assists the jury.

### CONCLUSION

The defense must present or rely upon admitted evidence to establish a foundation that Dr. Reisberg's testimony would be helpful to the jury. For expert witness testimony to satisfy the "fit" requirement the testimony must have a valid connection to the pertinent inquiry and be sufficiently tied to the facts of the case so that it will aid the jury in

11

resolving a factual dispute. Dr. Reisberg's theory about bias has been sufficiently tested and subjected to peer review.

At present, it has not been established that he has sufficient knowledge of the relevant facts to testify that the procedures used by Messieurs Schmidt and Toglia were overly suggestive of an outcome, or unreliable. Dr. Reisberg's testimony should be limited to challenging a government's expert's methodology to the extent allowed by the trial judge at trial.

Federal Rule of Evidence 702 requires testimony to be helpful to the trier of fact in understanding the evidence or determining a fact in issue. This requires that the testimony be relevant. *See* Daubert 509 U.S. at 591. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed.R.Evid. 401. Notwithstanding its relevance, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed.R.Evid. 403. The balancing of probativeness versus prejudice will be done at trial.

DATED this 13th day of March, 2014, at Anchorage, Alaska.

*/s/ John D. Roberts*
JOHN D. ROBERTS
United States Magistrate Judge