Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
907-646-3400

Peter Offenbecher, Esq.
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, Washington 98101
206-623-6501

Attorneys for Defendant James Wells


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:13-cr-00008-RRB-JDR |
| Plaintiff, | |
| vs. | **JAMES WELLS' TRIAL BRIEF** |
| JAMES MICHAEL WELLS, | |
| Defendant. | |


Defendant, James Michael Wells, by and through counsel, Rich Curtner,

Federal Defender, and Peter Offenbecher, Esq., submits this brief to assist the court at trial

scheduled for March 31, 2014.


I.      STATEMENT OF THE CASE

Mr. Wells is a 63-year old man who has devoted most of his adult working

life to military service.  After graduating from high school, Mr. Wells served in the United

States Navy from 1969 until 1977. When he received his honorable discharge from the Navy, Mr. Wells enlisted with the United States Coast Guard (USCG). He served in the USCG until 1990. In 1990, the USCG discharged Mr. Wells due to a medical condition. Mr. Wells then assumed a civilian post with the USCG. Mr. Wells worked as a civilian for the USCG for 24 years. Mr. Wells has experienced a number of health issues while working at the USCG, including diabetes.

On April 12, 2012, Mr. Wells' coworkers, USCG Electrician's Mate First Class James Hopkins and retired Chief Boatswain's Mate Richard Belisle, were shot and killed shortly after they arrived at work at T2. T2 (the "rigger shop") is a USCG communications station in Kodiak, Alaska. It is a small building where Mr. Hopkins oversaw Mr. Wells and Mr. Belisle and four recently enlisted USCG non-rates. "Non-rates" are coast guard members who have not yet chosen their specialization. The T2 building had a small office area and a work shop where the workers at T2 performed antenna repair work for towers around the state. The T2 building is located off the road leading up to the T1 building, where the local command sits.

While driving to work on April 12, 2012, Mr. Wells discovered he had a tire with low air pressure. He returned home to change his tire. The government has seized Mr. Wells' tire, which had a nail embedded in its tread. The government hypothesizes that Mr. Wells did not have a tire with low air pressure, and that he instead, drove his white truck to the airport on Kodiak. The government alleges that he then parked his car and drove his wife's car to T2 where he killed his coworkers. The government theorizes that

Mr. Wells then drove his wife's car back to the airport, parked, and drove his car home. Mr. Wells arrived at work later that morning.

USCG video footage from the morning of the homicides shows a car appearing around the time of the homicides at T2. The video is very poor quality, and FBI experts have not been able to identify the make or model of the car. However, the government has hired an expert who claims that he can tell that the car in the video in a blue Honda CR-V. The government's expert has never been qualified as an expert in identifying the make and model of a car from a series of blurry images.

Based on this circumstantial evidence, the government has charged Mr. Wells with killing both of his coworkers in violation of 18 U.S.C. §§ 7(3) and 1111(a) & (b); 18 U.S.C. §§ 1114 and 1111; and 18 U.S.C. §§ 924(c)(1)(A) & (B)(ii) and 924(j)(1). Mr. Wells is currently in custody at the Anchorage Correctional Complex. Trial in this matter is scheduled for March 31, 2014.

## II.    THE GOVERNMENT'S CASE

There is no eyewitness to the homicides. There is no confession. There is no murder weapon. As law enforcement continued investigating this case they did not uncover any physical evidence linking Mr. Wells, his vehicles, or any property from his home to the homicides. The government has built its case against Mr. Wells from a series of inferences.

Due to the lack of evidence linking Mr. Wells to the homicides, the government has proposed testimony from over twenty experts for this case. The proposed

expert testimony attempts to fill in the gaps of the government's investigation. A majority of this testimony is neither demonstrably relevant nor reliable. Mr. Wells' arguments to exclude several of the government's proposed experts are detailed below.

It appears that the government may seek to introduce evidence of a number of Mr. Wells' prior acts at the USCG, as well as possession of USCG property. The government did not sufficiently describe which acts it would introduce, nor why those acts would be relevant in its notice of 404(b). The court should not admit these prior acts because Mr. Wells has not received proper notice.

The court has suppressed the USCG property items. The court should not admit those items. Also, the government may seek to introduce evidence of alleged extramarital relationships if it becomes relevant. Mr. Wells asks the court to bar this evidence as irrelevant and more prejudicial than probative.

The government is seeking to exclude evidence of other suspects, specifically Mr. Hopkins' wife, Debby Hopkins. Evidence that someone other than a defendant had the opportunity, ability, and motive to commit the crime for which a defendant is charged is relevant. Mr. Wells should be allowed to present evidence of other suspects, as outlined below.

Finally, the evidence admitted at trial should be relevant and necessary to allow the parties to advance their theories of the case. This trial brief attempts to alert the court to outstanding legal issues, focus the court on the relevant evidence, and urge the court to fulfill its role as a gatekeeper in admitting relevant evidence and excluding evidence that is irrelevant and unreliable.

### III. OUTSTANDING LEGAL ISSUES

#### A. The Court Should Exclude Government Witnesses Leah Henry and Aaron Coggins Because the Government has Denied the Defense Access to those Witnesses.

In the discovery provided within the last six weeks, the government has disclosed two interviews wherein government agents asked witnesses Leah Henry and Aaron Coggins to sign non-disclosure forms. These witnesses are two of the non-rates who worked with Mr. Wells, Mr. Belisle, and Mr. Hopkins at T2. These witnesses' insights into the workplace dynamics of T2 are critical to the government's case and Mr. Wells' defense. Defense investigators have attempted to contact Ms. Henry at least three times with no success.

By telling these witnesses not to discuss the homicide with anyone other than government agents, the government has denied defense access to these witnesses. This violates Mr. Wells' right to Due Process of Law protected by the Fifth Amendment to the Constitution. Mr. Wells asks this court to exclude the witnesses or to provide Mr. Wells access to the witnesses for interviews before trial.

Due process requires that the defense be given access to witnesses equal or similar to the prosecution's access. *See Gregory v. United States*, 369 F.2d 185, 143 (D.C. Cir. 1966) (cited in *Fenenbock v. Dir. of Corr. for California*, 692 F.3d 910, 916–17 n. 5 (9th Cir. 2012)). It is fundamental that "[t]he prosecution may not interfere with a witness's free choice to speak with defense" prior to trial. *United States v. Black*, 767 F.2d 1334, 1338 (9th Cir. 1985).

This right of access is necessarily implied by right to a "meaningful opportunity to present a complete defense," *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006). The Fifth Amendment right to Due Process and the Sixth Amendment right to Compulsory Process guarantee this right of access. *Fenenbock*, 692 F.3d 910, 916–17 n. 5. The Ninth Circuit has expressed its disapproval of "*any* governmental conduct that has the purpose or effect of discouraging witnesses from cooperating with the counsel of an accused." *United States v. Rich*, 580 F.2d 929, 934 (9th Cir. 1978) (emphasis added).

Moreover, this Circuit has held that, under certain circumstances, it is improper for a government official to even advise a witness that she has a choice to decline pretrial access. In *Rich*, the court stated:

> [W]e recognize that abuses can easily result when officials elect to inform potential witnesses of their right not to speak with defense counsel. **An accused and his counsel have rights of access to potential witnesses that are no less than the accessibility to the potential prosecutors and their investigatory agents.** It is imperative that **prosecutors and other officials** maintain a posture of **strict neutrality** when advising witnesses of their duties and rights. **Their role as public servants and as protectors of the integrity of the judicial process permits nothing less.**

580 F.2d at 934 (emphasis added).

Here, government officials did not merely inform witnesses of the right to decline pretrial access. Here, governmental officials ordered witnesses to speak with no one at all outside of Coast Guard investigative services. (These interviews are recorded audio files that can be made available to the court upon request.)

When the government was asked for a written copy of the disclosure forms that the investigators were having the witness recite and sign, the government responded that it was unaware of any such disclosure recitation, stating:

> The government is not aware of any "non-disclosure forms" used in this matter. If you have additional information, we will follow-up on any information you provide.

(Excerpt from Government's Letter dated February 21, 2014, p. 2.)

It is difficult to imagine that not even one of the three government lawyers who signed this letter – one Assistant United States Attorney who has been on this case since the first day; one Special Assistant United States Attorney who is also Coast Guard Captain JAG Officer; and the United States Attorney for this District – had not seen in transcripts or heard in audio recordings, even once, this non-disclosure admonition being read to the witnesses.[1]

The government intentionally and expressly advised witnesses not to speak with anyone other than Coast Guard officials, thus demonstrating – at best – a reckless disregard for the defense's right of access to these witnesses. By obstructing Mr. Wells' access to these witnesses, the government has severely and irreparably harmed Mr. Wells' ability to effectively prepare for trial. The court should exclude these witnesses. Barring exclusion, the court should order the government to make the witnesses available for defense interviews.

---

[1] In the event that the U.S. Attorney's Office was aware of these admonitions, the Alaska Rule of Professional Conduct 3.4(f) would apply.

**B.** **The Court Should Order the Government to Disclose Outstanding Discovery.**

There are a number of discovery items that are still outstanding. Attached to the trial brief are two letters from the defense that outline some of the items of discovery that are still missing (Exhibit A):

- Letter from March 12, 2014
- Letter from February 18, 2014

**C.** **The Court Should Order a New Hearing On Suppression of Mr. Wells' Statements Based on Recently Disclosed Material Evidence.**

Mr. Wells made a number of statements without receiving *Miranda* warnings on April 12, 2012. On August 30, 2013, Mr. Wells filed his Motion to Suppress Statements (Fourth and Fifth Amendments), and his Memorandum of Law in Support of Motion to Suppress Statements (Fourth and Fifth Amendment) (Docket Nos. 120 and 121).

The key issue in the motion to suppress statements was whether Mr. Wells was "in custody" for purposes of *Miranda* when he was interrogated by government agents on April 12, 2012 (Docket No. 120). Mr. Wells was not formally arrested on April 12, 2012. Mr. Wells was held for over twelve hours in a secure facility on April 12, 2012. He was questioned by law enforcement officers. He was not provided *Miranda* warnings prior to his interrogation. The court considers the totality of the circumstances to determine whether a reasonable person in Mr. Wells' position would have not have felt free to leave and end the interrogation. *See, e.g., United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008).

The government filed its Opposition to Defendant's Motion to Suppress Wells' Statements to Law Enforcement (Docket No. 138). Additional briefing followed regarding

Mr. Wells' request for an evidentiary hearing on his Motion to Suppress Statements (Docket Nos. 158 and 159). The government opposed Mr. Wells' request (Docket No. 165).

The court held an evidentiary hearing on November 18, 2013.

Peter Russell Van Ness and Kirk Oberlander testified on behalf of the government. During the evidentiary hearing, the court admitted the following government exhibits: (1) Photo – Communication Station; (2) Sketch of T1 Office Space; and (3) Sketch of Interview Office Diagram. The admitted defense exhibits were the following: (A) Watch Log; and (B) Question Matrix (Docket No. 178). The Court took the matter under advisement.

On January 16, 2014, the court recommended that Mr. Wells' motion be denied (Docket No. 267). During January 2014, the government disclosed a number of statements of important witnesses which strongly support the defense position on the "custody issue." These witnesses include:

- **Chief Scott Reckner** – Reckner was in charge of COMMSTA. He was Mr. Wells' direct supervisor at COMMSTA. Mr. Reckner was the person from whom Mr. Wells received his daily orders. On April 12, 2012, Mr. Reckner arrived at the COMMSTA site at approximately the same time as Mr. Wells. He was present at COMMSTA the rest of the day. In an interview conducted by government agents on May 9, 2012, Mr. Reckner stated that COMMSTA "was on lockdown" on April 12, 2012:

| Investigator | What was his demeanor like at the time? |
|---|---|
| Scott Reckner | He was quiet. He was-he was saying that he's, uh, he's diabetic. Um, he was talking about he needed to get something to eat soon. Um, and so then I said well we can get you something to eat. You know, we can get you … Because **we were all on lockdown. Nobody could come or go**. |

- **Senior Chief William Reed**, who was an Electronics Technician. He was also the Department Head at COMMSTA on April 12, 2012. Mr. Reed made statements with direct bearing on the issue of custody in an interview conducted by government agents on April 14, 2012. In that interview Mr. Reed stated that there was a concerted effort by the United States Coast Guard command to keep all of the key workers in a fixed location at T1 so that they could be interviewed by the law enforcement agents.

If the defense had been aware of these statements by Mr. Reckner and Mr. Reed, then the defense would have called them as witnesses to testify at the evidentiary hearing on November 18, 2013. Mr. Wells requested that the court grant a new evidentiary hearing on the motion to suppress his statements based on this recently discovered information (Docket No. 330). The government opposed (Docket No. 334). The court denied Mr. Wells' motion (Docket No. 355).

## IV.    MOTIONS IN LIMINE AND OTHER LEGAL ISSUES THAT MAY ARISE

### A.    <u>The Court Should Bar Use of Evidence Regarding Use of Prostitution</u>.

The government has indicated that it may seek to admit evidence regarding alleged use of prostitution by Mr. Wells. The government has also explicitly stated that it is not intending to introduce this evidence pursuant to Fed.R.Evid. 404(b) (Docket No. 181). The government appears to concede that this information is not relevant.

> Other acts evidence is admissible under Rule 404(b) if it (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged. The court must then assess the evidence under Fed.R.Evid. 403. (Citations omitted.)

*United States v. Beckman*, 298 F.3d 788, 794 (9th Cir.2002).

The proposed acts of prostitution are not material to this homicide case. The government has not provided any information about when such acts occurred. The government has not provided any evidence that any acts of prostitution actually occurred. Such acts would be highly prejudicial and offensive to a person in this community. Such acts would have no tendency to make a fact at issue in the homicides more likely. Mr. Wells cannot find any Ninth Circuit cases authorizing admission of this type of testimony in a homicide case unrelated to any incidents of prostitution. Mr. Wells requests the court bar the government from introducing any evidence on this topic. Further, Mr. Wells requests the court bar the government from using this evidence in the event that Mr. Wells testifies. The evidence is not relevant and would have a chilling effect on Mr. Wells' right to testify.

**B.** **The Court Should Exclude Expert Testimony from Proposed Experts Whose Testimony is Irrelevant and/or Unreliable.**

The government has proposed over twenty experts to testify in this case. Mr. Wells has moved to exclude six of the government's proposed experts in this case. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), require the trial court act as a "gatekeeper" to ensure the reliability of expert opinions. The court in *Daubert* set forth five factors for the determination of admissibility:

1. Whether the expert's theory opinion has been subjected to objective testing;

2. Whether the expert's opinion has been subjected to formal peer review;

3. Whether there is a known or potential error rate for the opinion;

4.     Whether standards are in place for controlling the technique or opinion; and

5.     Whether the theory or technique at issue enjoys general acceptance.

Fed.R.Evid. 702 requires the court to exclude testimony from an "expert" unless (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. The district court must assess or make findings regarding the scientific validity or methodology of experts in order to fulfill its role as gatekeeper. *See Estate of Barabin v. AstenJohnson, Inc.*, ---- F.3d ----, 2014 WL 129884 (9th Cir. 2014) (the district court's failure to make a determination of the relevancy and reliability of an expert was an abandonment of its role as gatekeeper requiring a remand for a new trial).

Mr. Wells renews his motion to exclude the testimony of the following experts:

• **Dr. J. Reid Meloy** – Dr. Meloy is a psychologist. The government seeks to admit his testimony about general characteristics of workplace violence and targeted violence. Incidents of workplace violence are so common in our culture, that jurors will be able to apply their own common sense to understand this evidence without any need for expert interpretation. This type of information does not merit an expert's explanation. The government has not cited a single case in support of admitting an expert to testify about workplace violence. The court should exclude this testimony

• **Gary Bolden** – Mr. Bolden works with tires. The government seeks to admit his testimony about the rate of air loss to Mr. Wells' tire on the morning of the homicides. Mr. Bolden also claims that he can tell that Mr. Wells put the nail in the tire. He argues the nail could not have gotten stuck in the tire by driving over the nail. Mr. Bolden took the nail out of the tire after he did his tests. This changed the size of the hole in the tire. Mr. Wells' expert cannot re-test the tire because the hole is larger now. Mr. Wells renews his request that the court exclude this evidence because the government expert changed the evidence. This information is necessary for Mr. Wells' defense because it provides his explanation for why he was not at work on the morning of the

homicides. There is no way for Mr. Wells to have access to any evidence that is equal to this evidence. Mr. Wells cannot effectively refute this evidence without access to the tire and nail in their original condition. The court has the power to exclude evidence, which would make a full defense impossible, pursuant to *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). Mr. Wells renews his request that the court exclude this information. It would be unfair for the court to admit evidence that Mr. Wells cannot access.

• **Angelo Toglia** – Mr. Toglia has made a three-dimensional video animation rendering a car that is the same make and model as Mr. Wells' wife's car. Her car is a blue Honda CR-V. That video depicts a blue Honda CR-V driving to the scene of the crime, T2. The court should not admit this evidence because it creates evidence where none exists. This evidence is not relevant under Fed.R.Evid. 401 because it is animation of how the crime occurred. It is not grounded in reality. The government claims that their expert used photogrammetry to create the proportions in the video. Mr. Wells has no objections to the use of photogrammetry. However, the video contains animation that is independent of the photogrammetry. The court should exclude the evidence pursuant to Fed.R.Evid. 403. There is no basis to admit the evidence. The animation is also going to mislead jurors by planting an image in their mind of how the crime occurred with a "virtual car" that is identical to the Wells' Honda CR-V. It is not clear how the crime occurred. Watching the animation will be very suggestive and confusing to jurors.

• **Neil Schmidt** – Mr. Schmidt is an engineer at Honda. The government wants him to testify that the car in the blurry USCG video is the same make and model as Mrs. Wells' blue Honda CR-V. None of the FBI experts could testify to this information. It is not clear how Mr. Schmidt is qualified to identify the type of a car from a blurry image. He has never been qualified as an expert. Mr. Wells renews his request that the court exclude his testimony.

• **Robert Morton and William Gifford** – Mr. Morton and Mr. Gifford are offered as crime scene experts. The government wants them to assist the jury in understanding the order and manner of the homicides. These experts believe that the homicides happened in the opposite order. They agree about the type of weapon used, although Mr. Gifford believes the assailant may have used a homemade silencer. Based on the real differences in their testimony, their methodologies do not appear to be based on any actual, replicable method. Mr. Wells moves again to exclude them on the basis that their testimony does not appear reliable. Additionally, both experts opine about victimology. It seems that victimology is the name given to speculation

about psychological factors that may have motivated the murder. If the court admits the testimony of these experts, the court should limit them to discussing the crime scene. They should not be allowed to talk about what they believe to be the psychology behind the crime. It is the role of the jury the determine what may have motivated the murders.

**C.** **The Court Should Exclude Evidence of Other Misconduct Pursuant to Fed. R. Evid. 404(b).**

The government has sought to introduce general information about six categories of alleged acts that Mr. Wells committed as 404(b) evidence. They are:

1. Mr. Wells has received counseling on several occasions by his USCG supervisors for failing to obey orders, ignoring his supervisors, significant ethical contracting violations, diminished work performance, failure to participate as a fully functioning team member, and unexcused absences.

2. Mr. Wells had been confronted about misuse of a U.S. Government credit card that had been improperly used to buy gasoline on the USCG base during a time when the other crew members were traveling out of town for work, and when the government vehicles did not require fuel.

3. Mr. Wells was counseled for taking USCG property for his personal use, yet possessed various items of USCG property in his home, and these items were later identified by USCG supervisors as being U.S. Government property.

4. Mr. Wells had been counseled on past occasions about removing trees from USCG property, in order to obtain firewood at no cost to the defendant. This included improperly "collaring" trees to cause their premature death.

5. Mr. Wells had his travel orders to a professional conference cancelled a few months prior to the murders because of his diminished professional performance, and one of the victims was substituted to attend in his place.

6. Generally, Mr. Wells' professional performance had diminished in the years leading up to the murders, and newly reported USCG command members were holding Mr. Wells accountable for his actions, when in the past, Mr. Wells had been able to "fly under the radar."

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR

Page 14

Item No. 3 is inadmissible because the court has suppressed the items to which the government refers.

With respect to the other items, the court should not admit the general acts mentioned by the government because the government appears to be seeking admission of general character evidence to establish Mr. Wells' persona in the work place. The government does not specify how the precise nature of each act, the date of the act, nor the individuals involved in each act relate to the homicides. Without this information, it is unclear why the acts would be probative on any material issues under Fed.R.Evid. 404(b) in a homicide case.

Evidence of prior bad acts may be admitted only if (1) the evidence tends to prove a material point; (2) the prior bad act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) in cases where knowledge and intent are at issue, the act is similar to the offense charged. *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999).

The government argues that these acts are admissible under 404(b) to prove motive in a murder case, citing *People of Territory of Guam v. Turner*, 33 F.3d 59, p.1 (Table) (9th Cir. 1994) (Docket No. 239, p. 6). In *Turner*, the government offered evidence of a previous robbery, a violent act, as evidence of premeditation and motive in a murder. This is not remotely similar to the types of acts alleged by the government here. Alleged misuse of a fuel card is not a violent act. None of the government's proposed acts in this case are violent, nor do they show a financial motive or any motive to engage in violence.

A number of the government's proposed acts detail Mr. Well's receipt of counseling for alleged workplace incidents. Receipt of counseling about misuse of government property or taking property for personal use establishes neither premeditation nor motive to kill a coworker. The government has offered no evidence to show what effect any counseling had on Mr. Wells, through interviews or statements, nor has it shown how any of these minor incidents, relating primarily to U.S. Government property, would have any bearing on the homicides. If the government is surmising that Mr. Wells had certain thoughts or feelings about the counseling that would lead him to commit murders, that is speculative, as noted above. The court should find this evidence inadmissible because no evidence has been provided on the issue.

Similarly, Mr. Wells' inability to attend a conference does not demonstrate a resort to violent acts or the threat of violence. The government cites no cases that support admission of evidence that is so far removed from any sign of violence. Indeed, the government relies on a number of cases from other circuits because there is no support for admission of these acts within the Ninth Circuit. (*See* Docket No. 239, p. 9.) Even the cases the government cites from other circuits do not support admission of this type of evidence. A defendant's inability to participate in a professional education opportunity, unaccompanied by any threat of violence or actual violence, should not be admissible in a homicide case where the victims did not make the decision or have any input into the decision about whether he should attend the conference. The issues are simply too attenuated.

The government argues for the admission of all the proposed bad acts, claiming that the incidents are not too remote in time. One of the cases cited by the government, *United States v. Hadley*, 918 F.2d 848 (9th Cir. 1990), provided that old acts were admissible only because the similarity of the act to the charged offense was so strong that it outweighed remoteness in time issues. Since the government conceded that the acts are not similar (Docket No. 239, p. 8, fn. 1), that argument is unavailing here.

The general evidence proposed here is not admissible under Fed.R.Evid. 404(b) because it is not probative of a material issue in the case. Mr. Wells' actual work performance and imagined personal resentments are not at issue in this trial. These issues are not material because they do not demonstrate any actual violence or threat thereof. They also do not illustrate any retaliation or threatening behavior on Mr. Wells' part when faced with discipline.

The government has provided no explanation for why these alleged acts are relevant, material, or intrinsic; when the acts occurred; that Mr. Wells committed these alleged incidents; and that the acts are similar to the offense charged.

General claims that Mr. Wells ignored his supervisors, misused government property, or performed at a diminished capacity at work are not material or probative to show violence or capacity for violence. Critically, the government accuses Mr. Wells of violence against his coworkers, who were not involved in these incidents. The government does not even allege that they were involved in the proposed bad acts. None of the government's proposed bad acts are similar to a homicide. None of the proposed bad acts

indicate that Mr. Wells engaged in violence or a threat of violence in the time frame preceding the homicides.

The government also argues that the proposed bad acts evidence is intrinsic. Other act evidence is "intrinsic" if it constitutes "a part of the transaction that serves as the basis for the criminal charge[,]" or if it is "necessary... to permit a prosecutor to offer a coherent and comprehensible story regarding the commission of a crime." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (internal citations and quotations omitted).

These acts are completely different from the crimes alleged. The government provides no legal authority where a court has admitted such general evidence of a person's inability to follow an employer's order, misuse of government property, and/or inability to attend a conference, in order to explain the likelihood of a defendant's proclivity to kill in a homicide case. That is because the proposed acts are not truly probative or material to explain the circumstances surrounding a homicide case.

The government claims the acts are admissible as "intrinsic" evidence in order to "understand the relationship between the victims and the defendant." The government has not provided the details of these incidents. For example, a claim that Mr. Wells improperly used a fuel card to obtain gas on base is not relevant to show an intentional killing. It is unclear how this evidence would be intrinsic since use of the fuel card or the fuel is not alleged to be connected to the homicides in any way. Misuse of a fuel card does not illustrate Mr. Wells' relationship to his coworkers or his status in the workplace.

Case 3:13-cr-00008-SLG   Document 365   Filed 03/17/14   Page 18 of 23

Additionally, the court should not admit prior bad act evidence as to Mr. Wells' intent when faced with these incidents absent some evidence that he displayed certain reactions, *e.g.*, a violent or angry response to these events, especially since he was not prosecuted for these events. *See United States v. Greyeyes*, 931 F.2d 898 (Table) (9th Cir. 1991) (Ninth Circuit reverses murder conviction because of improper admission of defendant's prior attempt to kill husband to prove defendant's intent to kill because defendant's intent during initial incident could not be inferred by the court). The government should not be permitted to back door character evidence that Mr. Wells was not a model employee or misused government property by labeling it "intrinsic" evidence.

## D. The Court Must Allow Mr. Wells to Admit Evidence that Another Person Committed the Homicides.

The government has moved to stop Mr. Wells from admitting evidence of other suspects.

It is a fundamental that, under the Fifth and Sixth Amendments to the United States Constitution, a defendant has a right to put on a defense. *See United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010). Due process requires "in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). A court must allow a defendant to present a *complete* defense, and to "'put before a jury evidence that might influence the determination of guilt.'" *Stever*, 603 F.3d at 755 (quoting *Penn. v. Ritchie*, 480 U.S. 39, 56 (1987)).

The admissibility of evidence generally is governed by Federal Rules of Evidence 401 through 403. Rule 401 provides that evidence is relevant if it "has *any* tendency to make a fact more or less probable than it would be without the evidence" and

is "of consequence in determining the action." (Emphasis added.) Relevant evidence is admissible unless its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 402, 403.

Excluding relevant evidence is not merely an evidentiary matter where the exclusion operates to prevent a defendant from presenting a complete defense. *See Stever*, 603 F.3d at 755 n. 3. This Circuit has made clear that "the erroneous exclusion of important evidence will often rise to the level of a constitutional violation." *Id.* at 754 (citing *United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004); *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992).

Evidence that someone other than the defendant had the opportunity, ability, and motive to commit the crime for which the defendant is charged is relevant. *See United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996). Such evidence is especially significant where the case against the defendant is largely circumstantial. *See id.*; *see also Stever*, 603 F.3d at 754. In cases where jurors will ask themselves who could have committed the crime, if not the defendant, the Ninth Circuit has found evidence of third-party culpability to be crucial. In *Crosby*, the court found that

> [b]ecause the assault occurred in a remote place and Crosby was the only other person known to be at the scene of the crime, the jurors would naturally ask themselves, "If the defendant didn't beat Dorothy, who did?" Introduction of the Hoskie evidence would have answered this question, rebutting the inference that Crosby must have committed the assault because no one else was in a position to do so.

75 F.3d at 1347.  The court made a similar statement in *United States v. Vallejo*, 237 F.3d 1008, 1023, *amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001), finding that

> [i]n this case, Vallejo claimed he did not know there were drugs in the car, but he was not allowed to provide an answer for the jurors' question: "If defendant did not know there were drugs in the car and did not place them there himself, who did?"

*Cf. U.S. v. Wright*, 625 F.3d 583, 609 (9th Cir. 2010) (finding that, although it was error for the trial court to exclude certain evidence that the defendant sought to introduce to prove a third party's guilt, the error did not prejudice the defendant because he was able to present other evidence demonstrating "myriad ways in which [the third party] could have been responsible for the offense").

A court may not exclude evidence that a third party committed the offense on the basis that it is speculative.  *Vallejo*, 237 F.3d at 1023.  The Ninth Circuit relies upon Professor Wigmore, who stated:

> [I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

*Crosby*, 75 F.3d at 1349 (alteration in original) (*quoting* 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983)); *see also Stever*, 603 F.3d at 754; *Vallejo*, 237 F.3d at 1023.  It is the jury who must decide whether the defendant's proffered evidence provides a legitimate, alternative explanation as to who committed the defense, or whether it presents "'all kinds of fantasy possibilities.'"  *See Vallejo*, 237 F.3d at 1023.

Denying a defendant the right to provide an alternative explanation, and instead allowing him only to poke holes in the government's case and hold the government

to its burden, is insufficient to protect a defendant's constitutional right to present a defense. *See Stever*, 603 F.3d at 757; *Crosby*, 75 F.3d at 1348.

Mr. Wells will proffer evidence to the court on specific individuals for the court to review.

## V.    MR. WELLS' EXPERTS.

Mr. Wells has hired a number of experts who will be traveling to Anchorage to testify in his case April 21 through April 30, 2014.

DATED at Anchorage, Alaska this 17th day of March 2014.

Respectfully submitted,

/s/ Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:      907-646-3400
Fax:        907-646-3480
E-Mail:     rich_curtner@fd.org

/s/ Peter Offenbecher, Esq.
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, Washington 98101
Phone:      206-623-6501
Fax:        Fax:   206-447-1973
Email:      poffenbecher@skellengerbender.com

Certification:
I certify that on March 17, 2014,
a copy of **James Wells' Trial Brief**
was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: karen.loeffler@usdoj.gov

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: kathlee.duignan@usdoj.gov

/s/ Rich Curtner _____

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR