Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Peter Offenbecher
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, WA 98101
(206) 623-6501

Attorneys for Defendant James Wells

UNITED STATES DISTRICT COURT
THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | Case No. 3:13-cr-00008-RRB-JDR<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL TRIAL BRIEF** |

The Court has requested a response to the Government's Supplemental Trial Brief filed on March 27, 2014. Dkt. Np. 401. This is the Defendant's response.

**I.  THE DEFENDANT'S CONSTITUTIONAL RIGHT TO PRESENT OTHER SUSPECT EVIDENCE TO THE JURY**

The Fifth and Sixth amendments to the United States Constitution protect a defendant's fundamental right to present a complete defense. *See United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010). Due process requires "the right to a fair opportunity to defend against the State's

PAGE - 1
United States v. Wells
Case No. 3:13-cr-00008-RRB-JDR

accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  A court must allow a defendant to present a *complete* defense, and to "'put before a jury evidence that might influence the determination of guilt.'"  *Stever*, 603 F.3d at 755 (quoting *Penn. v. Ritchie*, 480 U.S. 39, 56 (1987)).

The admissibility of evidence generally is governed by Federal Rules of Evidence 401 through 403.  Rule 401 provides that evidence is relevant if it "has *any* tendency to make a fact more or less probable than it would be without the evidence" and is "of consequence in determining the action."  (Emphasis added.)  Relevant evidence is admissible unless its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FRE 402, 403.

Excluding relevant evidence is not merely an evidentiary matter where the exclusion operates to prevent a defendant from presenting a complete defense.  *See Stever*, 603 F.3d at 755 n.3.  This Circuit has made clear that "the erroneous exclusion of important evidence will often rise to the level of a constitutional violation."  *Id.* at 754 (citing *United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004); *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992).

Evidence that someone other than the defendant had the opportunity, ability, and motive to commit the crime for which the defendant is charged is relevant.  *See United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996).  Such evidence is especially significant where the case against the defendant is largely circumstantial.  *See id.*; *see also Stever*, 603 F.3d at 754.  In cases where jurors will ask themselves who could have committed the crime, if not the defendant, the Ninth Circuit has found evidence of third-party culpability to be crucial.  In *Crosby*, the court found that

> [b]ecause the assault occurred in a remote place and Crosby was the only other person known to be at the scene of the crime, the jurors would naturally ask themselves, "If the defendant didn't beat Dorothy, who did?" Introduction of the Hoskie evidence would have answered this question, rebutting the inference that Crosby must have committed the assault because no one else was in a position to do so.

75 F.3d at 1347. The court made a similar statement in *United States v. Vallejo*, 237 F.3d 1008, 1023, *amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001), finding that

> [i]n this case, Vallejo claimed he did not know there were drugs in the car, but he was not allowed to provide an answer for the jurors' question: "If defendant did not know there were drugs in the car and did not place them there himself, who did?"

*Cf. U.S. v. Wright*, 625 F.3d 583, 609 (9th Cir. 2010) (finding that, although it was error for the trial court to exclude certain evidence that the defendant sought to introduce to prove a third party's guilt, the error did not prejudice the defendant because he was able present other evidence demonstrating "myriad ways in which [the third party] could have been responsible for the offense").

A court may not exclude evidence that a third party committed the offense on the basis that it is speculative. *Vallejo*, 237 F.3d at 1023. The Ninth Circuit relies upon Professor Wigmore, who stated:

> [I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

*Crosby*, 75 F.3d at 1349 (alteration in original) (*quoting* 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983)); *see also Stever*, 603 F.3d at 754; *Vallejo*, 237 F.3d at 1023.

PAGE - 3
United States v. Wells
Case No. 3:13-cr-00008-RRB-JDR
Case 3:13-cr-00008-SLG   Document 404   Filed 03/28/14   Page 3 of 11

Denying a defendant the right to provide an alternative explanation, and instead allowing him only to poke holes in the government's case and hold the government to its burden, is insufficient to protect a defendant's constitutional right to present a defense. *See Stever*, 603 F.3d at 757; *Crosby*, 75 F.3d at 1348.

The government's leading authority in its supplemental trial brief cites *Chambers v. Mississippi*, 410 U.S. 284 (1973) for the proposition that "[i]n the exercise of this right, the accused, as is required of the state, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Government's Supplemental Trial Brief, Dkt. No. 401 at 2.

The holding of the United States Supreme Court in *Chambers*, however, is precisely to the contrary of the passage quoted in the government's brief. In *Chambers*, the United States Supreme Court reversed the defendant's conviction because application of the hearsay rule prevented the defendant from calling witnesses who could offer exculpatory testimony. Concluding that application of the hearsay rule had denied Mr. Chambers a fair opportunity to present his defense, the Court stated: "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers*, 410 U.S. at 302.

This evidence is also admissible under Fed. R. Evid. 404(b) to show motive, opportunity and intent. As the government has pointed out in its opening brief, Fed. R. Evid. 404(b) is a rule of inclusion:

> The Ninth Circuit has uniformly recognized that Rule 404(b) is one of inclusion and that other acts evidence "is admissible whenever relevant to an issue other than the defendant's criminal propensity." *Chea*, 231 F.3d at 534; *see also United States v. Gibson*, 625 F.2d 887, 888-89 (9th Cir. 1980) (picture of kidnapping not complete unless "all of the relationships of the defendant to the

victims" is shown). "Rule 404(b) does not bar evidence that completes the story of the crime or explains the relationship of parties or the circumstances surrounding a particular event." *United States v. Edwards*, 159 F.3d 1117, 1129 (8th Cir. 1998) (details of defendant's relationships with various women admissible), *quoting United States v. Edwards*, 159 F.3d 1117, 1129 (8th Cir. 1998).

Here, the above evidence is admissible under 404(b) in that it completes the story of the crime, proves motivation, and is not too remote in time.

Government's Trial Brief, Dkt. No. 362 at 57-58.

Just like the government must be able to tell a coherent story, the defense must have a fair opportunity to introduce evidence that "completes the story of the crime or explains the relationship of the parties or circumstances surrounding a particular event." *United States v. Edwards*, quoted in Government's Trial Brief at 57-58.

It is the jury who must decide whether the defendant's proffered evidence provides a legitimate, alternative explanation as to who committed the defense, or whether it presents "'all kinds of fantasy possibilities.'" *See Vallejo*, 237 F.3d at 1023.

The defense expects that its evidence of other suspects will be relevant and admissible pursuant to Fed. R. Evid. 401 and that its probative value will not be substantially outweighed by any dangers set forth in to Fed. R. Evid. 403, as set forth above.

## II. THE RELEVANCE OF EVIDENCE REGARDING THE PERSONAL LIVES OF THE DECEDENTS AND THOSE OF THEIR FAMILIES AND CLOSE ASSOCIATES HAS BEEN ESTABLISHED BY THE GOVERNMENT EXPERTS.

In the case before the Court, there is a second, unique reason that evidence regarding other suspects is relevant and admissible. The government has gone to the extraordinary step of offering four expert witnesses to testify that this is a case of workplace violence; i. e., that this crime was committed by a person who is a co-worker of the decedents, a very limited number of individuals which just happens to include the defendant James Wells. This presents a different ground for the admissibility of this evidence that is not present in any of the "other suspect"

cases cited by the government in its supplemental trial brief. The cases cited in the government's supplemental brief are therefore not applicable as to this ground for the admissibility of this evidence.

At its final pretrial conference on March 24, 2014, the Court indicated that it was permitting the government to introduce the expert testimony of four government experts. Those experts will testify regarding the characteristics of workplace violence. At least three of the experts, including Supervisory Special Agent Robert Morton and William Gifford, will offer an opinion that the Belisle/Hopkins homicides are workplace violence. The factual premise of each of the government experts' conclusions that this was a case of workplace violence (i.e., a homicide perpetrated by a co-worker) is that there was no personal controversy, high-risk behavior, or other facts in the personal lives of the two decedents that might support a different motive for the homicide of either decedent.

For example, among the government experts is Supervisory Special Agent Robert G. Morton with the Federal Bureau of Investigation at Quantico, Virginia. Mr. Morton's expert report is filed with the Court at Dkt. 230-1. In his report, Supervisory Special Agent Morton states:

Victimology

> Complete information about the victim of violent crime is an important part of the crime analysis process. An individual's personality and lifestyle will affect their chance of becoming a victim of a violent crime . . . Both victims were employed, lived unobtrusive lives and had no other factors that would raise their probability of becoming the victims of a violent crime. Neither had substantial debt and they did not participate in any high risk behavior. Both victims would be considered a low risk for becoming the victim of a violent crime.

\* \* \*

> The motive in this case can be discerned through the actions of the offender, as well as the life styles and occupations of the victims. In this particular case, there were no apparent controversies in either victim's personal life . . .

Dkt. No. 230-1 at 8.

Government expert William Gifford also concurs with Mr. Morton that the personal lives of the decedents, their families, and their close associates are important information in making a judgment about whether or not a particular crime is a case of workplace violence (i.e., violence perpetrated by a co-worker). *See, e.g.*, Gifford expert report at Dkt. No. 230-3 at 1 ("[There is] [n]o evidence of illegal drug dealings or use was uncovered for either victim. There is no evidence suggesting this to be any type of sex related crime.").

Defense expert Dr. Mario Scolara indicates that facts surrounding relationship-driven or domestic discord are particularly important in analyzing whether a homicide was a case of co-worker violence, or the result of some other interpersonal dynamics.

> Type 3 workplace violence involves violence resulting from grievances between coworkers. This category involves violence against co-workers, supervisors, or managers by a current or former employee, supervisor, or manager related to work-related difficulties. The motivating factor is often one or a series of interpersonal or work-related disputes.
>
> Type 4 workplace violence involves Personal grievances (e.g., domestic, relationship) that intrude into the work site. This category incorporates violence at the work site by someone who does not work there, but who is known to, or has a personal relationship with, an employee. It may often involve the spillover of domestic violence into the workplace.
>
>               \*           \*           \*
>
> The nature of the personal and relational grievances inherent within Type 3 and 4 cases of workplace violence, though much more rare, require an investigator to explore an array of potential grievances and perpetrators.
>
> It is my understanding that you requested information regarding that nature of potential motives or grievances that would need to be explored and considered when investigating Type 4 incidents. Such areas would include:

<u>Relationship-driven or Domestic Discord</u> for example:

Whether either of the victims had experienced a history of, or were currently experiencing, relational or marital discord.

Whether either of the decedents had experienced a history of, or were currently experiencing, marital or relationship infidelity. Did such infidelity result in concerning behavior such as electronic or physical harassment or stalking behavior from a paramour? Did a spouse/partner upon discovering such infidelity make any threatening or ultimatum driven statements? Did any of the parties express concern of how a separation/divorce might leave them financially, physically or emotionally?

Whether either of the decedents' or their spouses/partners were involved in consensual sexual activity (e.g., sexual exchange activity, "open marriage") that might generate jealousy or negative emotions in one another.

Whether anyone in the decedents' families/relationships appeared to be emotionally unstable and reacted strongly to perceived or potential abandonment/separation.

<u>Financial Motives</u>

Whether anyone stood to gain significantly financially from the death of one of the decedents.

Existing conflict over the decedent's property and how such property may be distributed prior to the decedent's death if no action took place.

Whether either of the decedents or their family members/partners had been experiencing financial problems including anxiety over debt.

<u>Other Potential Personal Grievances</u>

Whether the decedents or associates (e.g., family members, close friends) were involved with violent individuals or other illegal activity.

Whether either of the decedents' and their spouses/partners were experiencing significant problems with a family member (e.g., child) to the point where such problems escalated to potential violence conflict.

</blockquote>

March 24, 2014 Letter from Dr. Scolara at D-4637-38.

FBI Special Agent Daryl Allison, the FBI case agent managing this case, has also stated that complete information about the backgrounds of the victims, their families, and close

PAGE - 8
United States v. Wells
Case No. 3:13-cr-00008-RRB-JDR
Case 3:13-cr-00008-SLG   Document 404   Filed 03/28/14   Page 8 of 11

associates is critical to determining possible motives and the identity of the perpetrator of the homicides. In requesting interviews of the family members of one of the decedents, Allison stated:

> The investigation is now exploring alternatives to the theory that JAMES WELLS was the perpetrator. FBI Anchorage intends to thoroughly investigate the backgrounds of the victims, their families, and close associates with respect to motive and ability to commit the murders.

Bates Stamp 26642-43.

In response to these requests for interviews, the FBI developed extensive information regarding the possible motives of other potential suspects that is relevant to the questions posed by Mr. Morton, Dr. Scolara, and the other government workplace violence experts.

As the government has pointed out in the section of its trial brief entitled "*Reliance on Evidence Not Admitted,*" the government points out that "[e]xpert opinions may be based on facts or data not otherwise admissible into evidence. Fed. R. Evid. 703. . . . The facts relied upon by the expert need not be introduced into evidence in order for the expert to refer to those facts while testifying. *United States v. Castellon*, 135 Fed.Appx 122, 124 (9th Cir. 2005) and that experts may rely on data generated by others." Government's Trial Brief, Dkt. No. 362 at 41-42, 44.

Finally because they acknowledge that this evidence is pertinent to their opinions, the government's experts may be cross-examined about whether they have, or have not, considered evidence of the personal circumstances of the decedents which may give rise to the motivations of other suspects. As Magistrate Judge Roberts stated in ruling on the *Daubert* motions: "The usual way to test the validity of an expert's conclusions is through his cross examination in court as well as any contradictory evidence presented." Dkt. 303 at 25.

PAGE - 9
United States v. Wells
Case No. 3:13-cr-00008-RRB-JDR
Case 3:13-cr-00008-SLG   Document 404   Filed 03/28/14   Page 9 of 11

## III. CONCLUSION

During the March 24, 2014, pretrial conference, the Court correctly ruled that evidence regarding potential other motives and other suspects is generally admissible. This evidence is also admissible pursuant to Fed. R. Evid. 404(b) to show motive, opportunity and intent as set forth above, and the defendant's constitutional right to present a complete defense. *See Stever*, 603 F.3d at 757; *Crosby*, 75 F.3d at 1348. This information and evidence is also admissible to contradict the opinion of the government experts and to subject them to meaningful cross examination.

DATED at Anchorage, Alaska this 28th day of March 2014.

Respectfully submitted,

/s/ Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone: 907-646-3400
Fax: 907-646-3480
E-Mail: rich_curtner@fd.org

/s/ Peter Offenbecher, Esq.
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, Washington 98101
Phone: 206-623-6501
Fax: Fax: 206-447-1973
Email: poffenbecher@skellengerbender.com

<u>Certification</u>:
I certify that on March 28, 2014,
a copy of the ***Defendant's Response to Government's Supplemental Trial Brief***
was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: <u>bryan.schroder@usdoj.gov</u>

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: <u>karen.loeffler@usdoj.gov</u>

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: <u>kathlee.duignan@usdoj.gov</u>

<u>/s/ Rich Curtner</u>