KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: karen.loeffler@usdoj.gov
bryan.schroder@usdoj.gov
kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-00008-RRB-JDR |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S MOTION IN LIMINE REGARDING IMPEACHMENT OF TESTIMONY** |
| vs. | ) | |
| JAMES MICHAEL WELLS, | ) | |
| Defendant. | ) | |

COMES NOW the UNITED STATES OF AMERICA and files its Motion in Limine Regarding Impeachment of Testimony and in support thereof states as follows:

*Basis for Motion*

At numerous intervals throughout the trial, the defense has attempted to elicit testimony from witnesses concerning whether the witnesses had ever heard either Debbie Hopkins or ET1 Jim Hopkins say that ET1 Hopkins intended to divorce Debbie Hopkins. Most of the attempts have involved counsel asking witnesses if they were aware of this as an alleged "fact" and the witnesses saying no they were not aware.

On at least three occasions, counsel has made offers of proof saying that the witness on the stand would testify that either 1) Debbie Hopkins had said ET1 Hopkins told her he was going to divorce her; or 2) ET1 Hopkins had told the witness that he was going to divorce Debbie and that the witness had relayed a statement to that effect to others. To date none of the trial witnesses have supported the defense offers of proof.

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR

2

For example during the direct testimony[1] by defense counsel of MST3 Para Upchurch, counsel stated that MST3 Upchurch would say that Debbie told her in December of 2011 that Jim Hopkins was going to divorce her. MTS3 Upchurch did not support the defense offer of proof and instead testified consistent with her statement given in April of 2012 - that Debbie said she was depressed because of the holidays and recent deaths in the family and her husband had not been very understanding, suggesting she lose some weight.

Then, on day 7 of trial, Wednesday, April 9, 2014, the government called ITC Joshua Sanders to the stand. During the defense's direct examination of ITC Sanders, Sanders was asked whether he remembered an incident at the Rigger Shop involving visits to the shop by Debbie Hopkins, ET1 Hopkins' wife. Sanders recalled the incident and gave some testimony regarding the details of the incident. ITC

---

[1] In order to avoid inconvenience to out-of-town witnesses, prior to trial the parties had generally agreed that the defense would be able to both cross-examine the government employee witnesses and also examine the witness beyond the scope of the government's direct. The parties agreed and the Court ruled that once the defense questioning exceeded the scope of the direct, the witness became a defense witness and the defense was bound by the ordinary rules governing a direct examination (no leading questions, etc.).

UNITED STATES v. WELLS
3:13-cr-00008-RRB-JDR

3

Sanders was then asked if he had formed an opinion of the nature of the relationship between ET1 Hopkins and Debbie Hopkins, based upon his observations of the Hopkins together. Sanders replied that he had and that his opinion was that the relationship was "good."

The defense then attempted to pursue a line of questioning regarding whether Sanders recalled telling people at the Rigger Shop that ET1 Hopkins had told him that ET1 Hopkins intended to divorce Debbie Hopkins in the future. The government objected on hearsay grounds. A lengthy sidebar was held, during which the defense was allowed to attempt to refresh ITC Sanders' recollection with the statements of defense investigators who had interviewed other Rigger Shop employees. ITC Sanders testified that he did not recall any discussions between himself and ET1 Hopkins regarding a divorce, or ITC Sanders telling Rigger Shop employees anything to that effect. ITC Sanders stated that the defense investigator's statements, taken not from Sanders, but from other witnesses, did not refresh his recollection and that he did not recall making any of the statements ascribed to him by the defense.

Based upon the arguments of the defense at the sidebar, the government is concerned that, in its case, the defense may seek to impeach the testimony of witnesses by calling a defense investigator to testify that, during its pre-trial investigation, the defense interviewed witnesses who, according to the investigator, gave statements concerning what they heard about the Hopkins' relationship that differed from what they testified to at trial.

To date, the defense has produced no substantive, admissible evidence that 1) ET1 Hopkins intended to divorce Debbie; or 2) that Debbie was aware of any plans to that effect at or near the time of the murders. The government is concerned that the defense will continue to use the rules governing impeachment of a witness's prior inconsistent statement to bootstrap the contents of the alleged statements or rumors into evidence at trial.

In considering the below arguments, it must be remembered that all that has been proffered to date are assertions by the defense investigator. Importantly, the defense has never shown its investigator's statement to either the government or the Court, but has chosen instead to merely wave a piece of paper around when arguing its

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR

position.

Pursuant to Federal Rule of Evidence (FRE) 613(a), while the defense need not disclose the investigator's statement to any witness, it must allow the government attorneys to see the statement. Therefore, prior to pursuing the alleged statements further at trial, the defense is required to show government attorneys the statements at issue. *United States v. Lawson*, 683 F.2d 688, 694 (2nd Cir. 1982) ("Rule 613(a) does not allow for the exercise of discretion. It flatly commands disclosure of a document such as this to opposing counsel."); *Great West Casualty Co. v. Rodriguez-Salas*, 436 Fed.Appx. 321, 325 (5th Cir. 2011) (requirement of disclosing statement to opposing counsel is a "safeguard against misuse of Rule 613"). Having failed to follow this clear rule during its examination of government witnesses, the defense is now precluded from using that statement to impeach those witnesses. *See Complaint of Nautilus Motor Tanker, Ltd.*, 862 F.Supp. 1251, 1259 (D. N.J. 1994) (excluding inconsistent statement because counsel waited to offer it until after witness testified and was unavailable for recall); *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1523 (11th Cir. 1986) ("one key to the admissibility of the extrinsic evidence of the prior

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR

inconsistent statement is the availability of the witness for recall").

*Argument*

This issue involves the interplay between FRE 801 – Hearsay; FRE 613 – Prior Inconsistent Statements; FRE 607 – Impeachment of Witnesses; and FRE 403 – Exclusion of Evidence.

FRE 403 allows a trial court to exclude even relevant, otherwise admissible evidence if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A trial court retains broad discretion to exclude evidence under FRE 403 which is otherwise admissible under another Rule. *See United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir. 1985) (excluding evidence admissible under FRE 803); *United States v. Young*, 248 F.3d 260, 267 (4th Cir. 2001) (excluding FRE 613 prior inconsistent statements).

The extent to which an act has been proved by a party is a factor which must be considered in any FRE 403 inquiry. *United States v. LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001) (previous admissions by defendant admissible under FRE 403 "based on proven facts . . . not

rumor, innuendo, or prior uncharged acts capable of multiple characterizations"). Workplace rumors regarding the mental state of one spouse cannot be introduced for the jury to infer that the other spouse had the same mental state. *United States v. Worman*, 622 F.3d 969, 975 (8th Cir. 2010) (admission of workplace rumors "were substantially more prejudicial than probative because [wife's] thoughts provided little insight into what [husband] thought or believed, invited unfair bias against him based on his wife's purported animosity, and distracted jurors from evidence that was more probative of [husband's] own mental state and involvement in the offense."); *see also Litton Systems, Inc. v. AT&T*, 700 F.2d 785, 816 (2nd Cir. 1983) ("Gossip does not become reliable merely because it is heard in an office rather than a home.") (*citations omitted*).

A district court retains "broad discretion over whether to admit extrinsic evidence to rebut a witness' direct testimony, particularly on a matter collateral to the case." *United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir. 1993); *United States v. Robert Darryl War Club*, 494 Fed.Appx. 780, 783 (9th Cir. 2012) (testimony that witness heard alternate perpetrator discuss instances where he made defendant angry were

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR

8

"collateral" to defense that a third party committed the crime). Moreover, district courts are entitled to "wide latitude" under Rule 403 to balance the probative value of such evidence against its prejudicial effect. *United States v. Higuera–Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009).

As discussed above, to date the defense has produced no admissible evidence that, at or near the time of the murders, Debbie Hopkins thought ET1 Hopkins intended to divorce her. Given this paucity of evidence, to allow the defense to get into the details of these alleged statements would waste time, confuse issues and mislead the jury.

Should the Court decide that the "statements" clear the FRE 403 hurdle, they are not admissible under either FRE 613 or 801. While a party may impeach its own witness (FRE 607), a party "must not knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony." *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990) (prosecution called witness solely to show witness would lie to protect defendant) (*quotations omitted*). "Impeachment is improper when employed as a guise to present

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR

substantive evidence to the jury that would be otherwise inadmissible." *United States v. Gilbert*, 57 F.3d 709, 711 (9th Cir. 1995). Although under FRE 613 prior inconsistent statements may be used to impeach the credibility of a witness (*United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir. 1991)), FRE 801(d)(1)(A) prohibits such statements from coming in as substantive evidence unless they were given under oath and subject to cross-examination. *United States v. Tran*, 568 F.3d 1156, 1161 (9th Cir. 2009).

A witness's prior inconsistent statements may be used to impeach that witness. *United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir. 1991). However, "[i]t is an entirely different matter to offer one declarant's statement to impeach the credibility of another witness." *United States v. Bao*, 189 F.3d 860, 866 (9th Cir. 1999) (defendant's statement to reporter that he did not know his conduct was illegal not admissible to impeach police detective's testimony that defendant admitted to knowing illegality of conduct); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) (denying use of statement to impeach where statement was by one witness relaying observations of others to 911 operator - "an inconsistent statement by a testifying witness can be

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR

used to impeach that witness's credibility" but not to present an alternative view of the truth).

Here, any testimony from the defense investigator would appear to involve double or triple hearsay and cannot be used to impeach the testimony of witnesses who have already testified to having no knowledge of the defense allegations. *See United States v. Munoz*, 605 F.3d 359, 382 (6th Cir. 2010) (testimony of investigator who spoke to an informant who stated that a cooperating witness had told informant that defendant was innocent inadmissible to impeach credibility of case agents who testified). The fact that the investigator took the statement in the course of her employment is irrelevant. *Litton Systems, Inc. v. AT&T*, 700 F.2d 785, 816 (2nd Cir. 1983) (fact that company attorney summarized what some employees said about other employees in the course of his investigation did not make the summaries admissible under FRE 801(d)(2)(D)). Any arguable impeachment value is far outweighed by its prejudicial effect on the jury. *Thomas v. Hubbard*, 273 F.3d 1164, 1172-73 (9th Cir. 2001) *overruled on other grounds Payton v. Woodford*, 299 F.3d 815 (9th Cir. 2002) (testimony of detective that an informant told him that "a guy" told informant that the day of

the murder, defendant had stated he "was going home to get his knife" inadmissible for any purpose – including motive or impeachment of witnesses).

It should be remembered that it was the defense that sought to elicit ET1 Hopkins' alleged statement during its direct examination of ITC Sanders and that the government had no way of offering any direct evidence (i.e. testimony of ET1 Hopkins himself) to contradict it. The statement was "hearsay of the worst variety, incapable of being countered by direct evidence." *United States v. Ragghianti*, 560 F.2d 1376, 1380 (9th Cir. 1977) (after witness could not recall making statement, it was impermissible to call FBI agent to testify concerning statements made by witness regarding what defendant told witness).

The defense has continually sought to introduce the statement solely for the purpose of showing that Debbie Hopkins had a motive to kill her husband. The defense may not use the guise of impeachment as a subterfuge to get the statements in, either through its investigator or by re-calling the Rigger Shop employees to testify concerning rumors they may have heard from other employees. *See United States v. Crouch*, 731 F.2d 621, 623 (9th Cir. 1984) (after girlfriend of defendant

testified that defendant never told her to get rid of evidence, it was impermissible for government to call FBI agent to testify that girlfriend told agent that defendant told her to get rid of the evidence).

As delineated above, here there is substantial doubt as to whether ET1 Hopkins made such a statement anywhere near the time of the murders and all evidence introduced to date indicates no major marital problems at the time of the murders. The admission of hearsay, whether under an enumerated exception or under the catch-all provision of Rule 803(24), requires the statement to have "circumstantial guarantees of trustworthiness." *See United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) (witness gave detailed facts which were consistent with other evidence in case). The uncertainty of what ET1 Hopkins may or may not have said, coupled with the hearsay problems noted above, render the evidence unreliable and inadmissible for any purpose.

RESPECTFULLY SUBMITTED this April 13, 2014, in Anchorage, Alaska.

>s/ KAREN L. LOEFFLER
>KAREN L. LOEFFLER
>United States Attorney
>
>s/ BRYAN SCHRODER
>BRYAN SCHRODER
>Assistant U.S. Attorney
>United States of America
>
>s/ KATHLEEN A. DUIGNAN
>KATHLEEN A. DUIGNAN
>Special Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2014 a true and correct copy of the foregoing was served electronically via the CM/ECF system, on all counsel of record.

s/ KATHLEEN A. DUIGNAN
Office of the U.S. Attorney

*UNITED STATES v. WELLS*
3:13-cr-00008-RRB-JDR