Rich Curtner
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
907-646-3400

Peter Offenbecher, Esq.
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, Washington 98101
206-623-6501

Attorneys for Defendant James Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>　　　　　　Defendant. | NO. 3:13-cr-00008-RRB-JDR<br><br>**DEFENDANT'S MOTION ON SHORTENED TIME FOR RECONSIDERATION OF RULING ADMITTING EXHIBIT 171 AND MOTION TO STRIKE THE EXHIBIT** |

**I.　MOTION**

　　　　Comes now the defendant James Wells, by his attorneys Rich Curtner, Federal Public Defender, and Peter Offenbecher, Esq., and moves this Court for an Order reconsidering its ruling admitting Exhibit 171 on Thursday, April 10, 2014. The defendant also moves to strike the exhibit.

## II. FACTS PERTAINING TO MOTION

During the evening hours of Wednesday, April 9, 2014, counsel for the government advised Mr. Curtner that she had two CDs available for pickup at her office. The two CDs were represented to contain materials relevant to the testimony of CGIS Special Agent Aaron Woods, who was scheduled to testify the next day, Thursday, April 10, 2014.

At approximately 8:00 p.m., Mr. Curtner retrieved an envelope containing the two CDs, which was taped to the door of the United States Attorney's Office. Accompanying the two CDs was a sticky note, which read: "Rich, audio of Woods driving and short video of part of drive." It was represented to Mr. Curtner that the CDs were for the purpose of illustrating Special Agent Woods' testimony regarding the amount of time it takes to drive from Mr. Wells' residence in Bells Flats to the T2 facility at the COMMSTA. One of the CDs was an audio recording of Woods driving from Mr. Wells' residence at Belles Flats north to the COMMSTA on March 24, 2014, at 8:42 (whether this is a.m or p.m is not announced on the recording). During this recording, Special Agent Woods calls out the time marks and the various geographic points along the drive. At the end of the recording, Special Agent Woods announces the total elapsed time.

The second CD is Exhibit 171.

Prior to Special Agent Woods' testimony, and at the sidebar, defense counsel objected to the admission of Exhibit 171 on the grounds that it was a dramatization of the government's theory of the case and that its prejudicial value outweighed any probative value under Evidence Rule 403. The government responded that the video was offered

solely for the purpose of illustrating Special Agent Woods' testimony about how long it takes to drive the distance from Mr. Wells' house to the COMMSTA. The Court overruled the defendant's objection and indicated it would permit the government to introduce the exhibit to illustrate the agent's testimony about the timing.

Special Agent Woods then testified on direct examination about a timing run that he made on March 24, 2014, from Mr. Wells' house to T2. During his testimony, Woods indicated that he stopped and parked in the parking lot at the airport, "simulated changing cars," and then drove on to finish the timed drive to T2.

The government then offered Exhibit 171 and played it for the jury. Counsel for the government then asked Special Agent Woods some questions regarding the exhibit. One question asked by the government was why Special Agent Woods had driven the wrong way down a one-way parking lane in order to park his car in the video "simulation." Special Agent Woods responded that he was doing this to illustrate the government's theory of how Mr. Wells had purposefully driven his car to avoid being captured on the Alaska Airlines baggage terminal camera.

At this point defense counsel again objected to the admissibility of Exhibit 171.

### III. GROUNDS FOR RELIEF AND ARGUMENT

The Court should reconsider its ruling admitting Exhibit 171. Simply put, the government fooled defense counsel and, we suspect, the Court, by representing to the Court and counsel in argument that the video was offered for the purpose of illustrating

Special Agent Woods' run timing the amount of time it takes to travel between Mr. Wells' house and T2. It was not until the government asked the question of Special Agent Woods regarding the reason he had driven the wrong way down a one-way parking lane that this became apparent to counsel, and, we suspect, apparent to the Court as well.

It is clear that the video was not – as was represented to the court – intended to illustrate the agent's testimony regarding the timing run. This is clear for the following reasons: (1) there is no timestamp whatsoever on the video; there is nothing on the video that has anything to do with timing the run from T2 to Mr. Wells' house or Mr. Wells' house to T2; (2) it is clear that the video does not illustrate Special Agent Woods' timing run because the video shows Woods driving in the opposite direction from the timing run about which he testified; (3) during his direct examination, Special Agent Woods testified that he "simulated" changing cars in the airport parking lot, yet in the video it is clear that he actually did change cars – the video and the timing run are clearly two separate and distinct events; and (4) the video is only a short piece of a supposed driving trip between T2 and Mr. Wells' house – the only part depicted of the drive(and clearly featured) is the imagined car switch in the airport parking lot.

The government's representation that the video was offered to illustrate Special Agent Woods' timing of how long it takes to drive between T2 and Mr. Wells' house was false. It is now clear that the true purpose of offering the video was to advance the government's theory – unsupported by anything but conjecture – that Mr. Wells intentionally drove the wrong way in the parking lot and parked his car in a particular place in order to avoid being captured on the camera at the Alaska Airlines Terminal.

> The Tenth Circuit has observed that
>
>> [d]emonstrative evidence, and in particular, reenactments of events, can be highly persuasive. The opportunity for the jury to see what supposedly happened can accomplish in seconds what might otherwise take days of testimony. By conveying a visual image of what allegedly occurred, one side can imprint on the jury's mind its version of the facts. *See generally Carson v. Polley*, 689 F.2d 562, 579 (5th Cir.1982); McCormick on Evidence § 215 (3d ed. 1984). **Thus the court must take special care to ensure that the demonstration fairly depicts the events at issue.**

*United States v. Wanoskia*, 800 F.2d 235, 237-38 (10th Cir. 1986) (emphasis added); *see also United States v. Williams*, 271 F.R.D. 1, 3 (D.D.C. 2010) ("When a party generates demonstrative evidence based on conditions that may be dissimilar to the actual conditions, the dissimilarities create uncertainty that undermines the probative value of the evidence.")

Unfortunately, because of counsel for the government's misrepresentations about the purpose of the video – and defense counsel's failure to realize the true purpose – the Court's balancing of the probative value against the prejudicial effect was uninformed at the time the Court made the ruling.

As we now understand the true purpose of the video, its probative value in illustrating the agent's testimony about how long it takes to drive from Mr. Wells' house to the COMMSTA is nonexistent. The video does not in any way illustrate the agent's testimony about how long it takes to drive the distance between Mr. Wells' house and T2. Moreover, the prejudicial effect is much greater than we or the Court realized when the Court made its original ruling. As we now understand the government's true purpose, the government specifically instructed Special Agent Woods to drive and park his car in a way

that satisfied the government's theory of what happened, even though there are no facts to support the proposition that the defendant drove his car in this fashion. The video implants upon the jurors' minds – in an unfair way – a particular aspect of the government's theory that is unsupported by the facts.

## IV.   CONCLUSION

Defense counsel should have realized this and articulated it for the Court so that the Court could conduct a fair balancing of the probative value against the prejudicial effect. Simply put, defense counsel was fooled. Because of defense counsel's failure to articulate this to the Court, it seems likely – and from the Court's reaction when the agent testified, highly likely – that the Court also was unaware of the discontinuity between the purported purpose of the video (to illustrate the agent's testimony about the timing run) and the actual purpose of the video (to illustrate a particular aspect of the government's theory – totally speculative – of how and why Mr. Wells acted in the airport parking lot on the day of the homicides). Now that the Court is aware of these facts, the Court should reconsider its earlier ruling admitting Exhibit 171 and strike the exhibit.

DATED at Anchorage, Alaska this 14th day of April 2014.

Respectfully submitted,

/s/ Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone: 907-646-3400
Fax: 907-646-3480
E-Mail: rich_curtner@fd.org

/s/ Peter Offenbecher, Esq.
Skellenger Bender, P.S.
1301 Fifth Avenue, Suite 3401
Seattle, Washington 98101
Phone: 206-623-6501
Fax: Fax: 206-447-1973
Email: poffenbecher@skellengerbender.com

Certification:
I certify that on April 14, 2014,
a copy of **Defendant's Motion on Shortened Time for Reconsideration of Ruling Admitting Exhibit 171 and Motion to Strike the Exhibit** was served electronically on:

Bryan D. Schroder
Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: bryan.schroder@usdoj.gov

Karen L. Loeffler
U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: karen.loeffler@usdoj.gov

Kathleen A. Duignan
Special Assistant U.S. Attorney
222 West 7th Avenue, #9
Anchorage, AK 99513
Email: kathlee.duignan@usdoj.gov

/s/ Rich Curtner

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-RRB-JDR                                                Page 7

Case 3:13-cr-00008-SLG   Document 574   Filed 04/14/14   Page 7 of 7