KAREN L. LOEFFLER
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney

KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov
E-mail: bryan.schroder@usdoj.gov
E-mail: kathleen.duignan@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | No. 3:13-cr-00008-RRB-JDR |
| Plaintiff, | ) ) ) | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE GOVERNMENT EXHIBIT 171** |
| vs. | ) ) ) | |
| JAMES MICHAEL WELLS, | ) ) | |
| Defendant. | ) | |

COMES NOW the United States, by and through undersigned

counsel, and hereby opposes defendants' motion to reconsider the

Court's decision denying defendant's request to preclude the admission of government exhibit 171.

*Facts*

At trial the government called United States Coast Guard Special Agent Aaron Woods. As part of his investigation into the validity of Wells' alibi regarding a flat tire, SA Woods drove the route between Wells' house and COMMSTA on a number of occasions. During these drives, SA Woods calculated the time necessary to accomplish the tasks Wells claimed to have been doing the morning of the murders. As part of this investigation, SA Woods calculated the time for driving from the turn-off to the airport to the place where Nancy Wells' car was found, changing cars and driving back. SA Woods drove this route a number of times and made a detailed recording of the times and locations on March 24, 2012. The recording were captured on two discs: one audio CD which recorded SA woods as he drove the route and recording the times to get to various locations on the route; and one video CD which showed SA Woods changing cars at the airport in a manner consistent

with someone changing cars where Ms. Wells' car was found.  That video also had a running time on the computer to show the amount of time that this segment of the route would take.  This was the one segment that was not easily verifiable by a time distance calculation.

When SA Woods arrived in Anchorage the afternoon before his testimony, he brought both of the CD's with him.  Late that afternoon, counsel for the government called and e-mailed Mr. Curtner to arrange for a time to deliver them to the defense.  Counsel for the government told the defense that it did not intend to play the audio recording at trial, but was turning it over as Jencks.  Mr. Curtner responded that he was teaching a class that night and could he pick them up at 8:00 p.m. Government counsel offered to drop the discs off at the PD's office, but Mr. Curtner said he would be coming back from class and would pick them up at the U.S. Attorney's office.  Not knowing whether anyone would still be at the office when Mr. Curtner came by, government counsel taped an envelope to the USAO door with the two discs.  As it

Case 3:13-cr-00008-SLG   Document 597   Filed 04/15/14   Page 3 of 10

turned out, government counsel was present when Mr. Curtner came to retrieve the CD's and spoke to him.

### *Defendant's Objection at Trial*

As the Court will recall, at trial it was Mr. Offenbecher who objected to the Exhibit 171, arguing that the video should be excluded because: 1) it was clearly made at a different time of year and thus under different road conditions; 2) SA Woods was "obviously speeding"; and 3) the video re-enacted the crime. The government responded that 1) March 24 and April 12 are very close on the calendar and the weather during the making of the video was similar to the day of the murders; 2) the video clearly shows that SA Woods was not speeding, but instead was driving the speed limit of 20 miles per hour; 3) the video did not attempt to re-create the crime, but merely demonstrate a portion of SA Wood's investigation – the car used did not resemble Ms. Wells' car and no attempt was made to make it appear that the person changing cars was Mr. Wells. The government argued that Exhibit 171 was being played to illustrate how SA Woods drove that portion of the

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                Page 4 of 10

route so that the jury could see whether his calculation of the time necessary was reasonable. The court viewed the video and found it was not unfairly prejudicial and a proper demonstrative exhibit to aid the witness's testimony.

### *Defendant's Motion For Reconsideration*

Having failed at trial with its spurious objections, the defense now attempts to mislead the Court into reconsidering its previous correct ruling admitting Exhibit 171. Defendant's motion takes two tacks: 1) the government's method of delivering the CD's was somehow prejudicial; and 2) the defense was surprised to see that, in the video, SA Woods drove "the wrong way" in the airport parking lot, rendering the video unfairly prejudicial. Both arguments must fail.

<u>Delivery of CD's</u>

Contrary to its assertions, the government never attempted to "fool" the defense or the Court as to the contents of the CD's. As noted above, the government notified defense counsel the evening before SA Wood's testimony that it had new Jencks material and a video. Yes, the

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                  Page 5 of 10

two disks were taped to the office door, not because the government was too ashamed to hand them directly to the defense, but because Mr. Curtner stated he was teaching a class and was unavailable to pick up the discs or review them prior to 8 pm. As things worked out, the government spoke to Mr. Curtner when he arrived to get the CD's.

The video (Exhibit 171) was very short and could easily have been viewed by defense counsel anytime that evening or the next morning before court convened. At trial, SA Woods testified completely consistently with what was shown on the video – SA Woods did not reveal any new facts or insights during his testimony that would not be patently obvious to anyone viewing it the night before.

No one was misled about the contents of the video – it was nothing more than an illustration of SA Woods' investigation into the defendant's alibi. SA Woods testified in detail about the time it would take to drive the route between Wells' house and COMMSTA, including the time necessary to drive to the airport where Ms. Wells' car was

Case 3:13-cr-00008-SLG   Document 597   Filed 04/15/14   Page 6 of 10

found and change cars.  It was very evident to all exactly what would be played and why.

<u>Driving the "Wrong Way"</u>

Defendant's second attack is based upon a contention that the defense was surprised at trial to find that the video shows SA Woods driving "the wrong way" in airport parking lot.  This argument strains credulity in that 1) in even the most casual review of the brief video, one cannot help but clearly see how SA Woods entered and drove through the parking lot.  The only way to be surprised by this at trial is to not have viewed the video the night it was received or the morning before trial; 2) the Court need only recall other photos of the Kodiak airport and parking lot already introduced into evidence to realize that the Kodiak airport is a far cry from LAX.  To argue that there is a "wrong way" to drive in that area is inconsistent with photographs already introduced.

The testimony of others familiar with the area confirms the above.  The parking lot at issue was gravel down at the end where Ms. Wells'

*United States. v. Wells*
3:13-cr-00008-RRB-JDR                    Page 7 of 10

car was found.  At least three witnesses have testified that driving "the wrong way" is common.  Trooper Ellis testified that he thought it looked like the Wells' car had also been parked from the "wrong" side – i.e. that it had been driven "the wrong way."  Trooper Dupras, Agent Woods and Agent Sturgis have noted that they have seen people do this and no witness has said that this would be surprising in any way.

The admissibility of demonstrative evidence is "largely within the discretion of the trial judge."  *United States v. Walema*, 194 F.3d 1319, *1 (9th Cir. 1999), *citing United States v. Hernandez*, 109 F.3d 1450, 1452 (9th Cir. 1997).  Here, the government did not misrepresent anything.  SA Woods testified how long it took him to drive the route.  Exhibit 171 was played to depict exactly how he drove so that the jury could see for itself whether the time added for changing cars was reasonable or not, with the video containing a time stamp to assist in verifying SA Woods' calculations.  This type of evidence is well within the Court's discretion to admit.  *See Oberson v. United States*, 311 F.Supp.2d 917, 935 (D. Mont. 2004) (finding government video

demonstrating snowmachines driving on trail at various speeds "highly persuasive"). "The alleged discrepancies between the reconstructed crime site and the conditions as they may have existed [at the time of the crime] reflect, not upon the admissibility of the evidence, but rather upon its credibility, an assessment assigned exclusively to the discretion of the jury." *Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994) (admitting video demonstration offered to show that theft could have occurred within a certain time interval); *United States v. Norris*, 217 F.3d 262, 270 (5th Cir. 2000) ("conditions need not be precisely reproduced, but they must only be so nearly the same as to provide a fair comparison").

Indeed, absent the video, defense counsel would certainly have made these same false claims to the jury - that SA Woods was deliberately speeding and calculated the time to change cars in conditions completely different from the day of the murder. The video gave the jury a proper basis for determining whether the time determinations seem reasonable. Having viewed the video, the jury can

Case 3:13-cr-00008-SLG   Document 597   Filed 04/15/14   Page 9 of 10

now make its own determination whether the defense theories are reasonable. Defense counsel had the opportunity to cross examine the witness about this theory and can argue it during closing. The Court should refuse to reconsider its prior ruling admitting Exhibit 171.

RESPECTFULLY SUBMITTED on April 15, 2014, in Anchorage, Alaska.

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney

s/ Bryan Schroder
BRYAN SCHRODER
Assistant U.S. Attorney
United States of America

s/ Kathleen A. Duignan
KATHLEEN A. DUIGNAN
Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2014,
a copy of the foregoing was served
via the CM/ECF system on all counsel
of record.

s/ Bryan Schroder
Office of the U.S. Attorney

*United States. v. Wells*
3:13-cr-00008-RRB-JDR            Page 10 of 10