1          UNITED STATES DISTRICT COURT
                DISTRICT OF ALASKA
2
   UNITED STATES OF AMERICA,    )      Case No. 3:13-cr-00008-RRB-JDR
3                               )
              Plaintiff,        )      Anchorage, Alaska
4                               )      Friday, April 5, 2013
      vs.                       )      10:00 a.m.
5                               )
   JAMES MICHAEL WELLS,         )      STATUS CONFERENCE RE MOTION
6                               )      TO COMPEL (DKT 36)
              Defendant.        )
7                               )

8               TRANSCRIPT OF PROCEEDINGS
                Pages 1 - 13, inclusive
9
           BEFORE THE HONORABLE JOHN D. ROBERTS
10           UNITED STATES MAGISTRATE JUDGE

11  A P P E A R A N C E S:
    For Plaintiff:    BRYAN D. SCHRODER, ESQ.
12                    DANIEL COOPER, JR., ESQ.
                      U.S. Attorney's Office
13                    222 W. 7th Avenue, #9
                      Anchorage, Alaska 99513
14                    Ph: 907/271-5071

15  For Defendant:    F. RICHARD CURTNER, ESQ.
                      Federal Public Defender's Agency
16                    601 W. 5th Avenue, Suite 800
                      Anchorage, Alaska 99501
17                    Ph: 907/646-3400

18                    PETER OFFENBECHER, ESQ. (Telephonic)
                      Skellenger Bender, P.S.
19                    1301 5th Avenue, Suite 3401
                      Seattle, Washington 98101-2605
20                    Ph: 206/623-6501

21  Court Recorder:   NANCY LEALAISALANOA
                      U.S. District Court
22                    222 W. 7th Avenue, Box 4
                      Anchorage, Alaska 99513
23                    Ph: 907/677-6111

24

25

```
1    A P P E A R A N C E S:  (Continued)

2    Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                        Peninsula Reporting
3                       110 Trading Bay Road, Suite 100
                        Kenai, Alaska 99611
4                       Ph: 907/283-4429

5

     Proceedings recorded by digital sound recording, transcript
6    produced by stenographic transcription service.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

ANCHORAGE, ALASKA - FRIDAY, APRIL 5, 2013

(Log 10:00:39)

    (Defendant present)

            THE CLERK:  All rise.  His Honor the Court, the United
States District Court for the District of Alaska is now in
session with the Honorable John D. Roberts presiding.  Please be
seated.

            And Your Honor, we have Mr. Offenbecher and some
victims on the phone.

            THE COURT:  All right.  This is the Court, can you
hear on the telephone?

            MR. OFFENBECHER:  Yes.  Good morning, Your Honor.
Peter Offenbecher here in Seattle.

            THE COURT:  Good morning.

            MS. RUTLEDGE:  Yes, Your Honor, this is Nancy Rutledge
in San Francisco.

            THE COURT:  Good to hear you.  For the record, this is
a hearing in 3:13-cr-08, U.S. versus Wells.  Let me address the
nature of the hearing first.

            The response to the motion at hand was filed not ex
parte.  The hearing got docketed non ex parte.  I don't see any
reason to proceed with an ex parte proceeding at this point.
Unless anyone wants to be heard, we'll simply go ahead with the
hearing.  I don't think there's going to be any privileged or

**Peninsula Reporting**
**110 Trading Bay Dr., Ste. 100, Kenai, AK 99611 907/283-4429**

1  confidential information solicited or disclosed at the hearing.

2          MR. CURTNER:  I would agree with that, Your Honor.

3          MR. SCHRODER:  Government's fine with that, Your

4  Honor.

5          THE COURT:  All right.  So we'll proceed with the

6  public participating as spectators.

7          The government's motion is at Docket No. 36, it's in

8  two parts.  There's a motion to compel compliance with local

9  rules and unseal ex parte filings; and secondly to reconsider

10  the appointment of CJA counsel.

11          Let me take up the second matter first.  Do counsel in

12  this case agree that at this stage of the case, Mr. Wells is

13  entitled to two court-appointed attorneys, not three but two?

14  Any argument on that?

15          MR. CURTNER:  No, Your Honor.

16          MR. SCHRODER:  Your Honor, we're taking a position

17  that this is -- the key thing for us on this matter was to get

18  this out in the light of day and have the Court consider it

19  based on the proper law and the proper rules.  And we're not

20  taking a position.  We think it's up to the Court to review the

21  status, review the facts, and make that decision.

22          THE COURT:  Well, my review indicates that Mr. Wells

23  is entitled to two court-appointed attorneys at this stage.  He

24  did qualify, and under 18 U.S.C. Section 3005 the Court can

25  assign -- should assign two counsel of whom at least one should

1  be learned in the law applicable to capital cases and who shall

2  have free access to the accused at all reasonable hours, et

3  cetera.

4  Now, the record in this case reflects a little

5  confusion in that area.  I think Mr. Curtner initially appeared

6  and indicated that, when he was asked to designate counsel, that

7  he would be lead counsel.  And I think at the arraignment on the

8  19th of February, Sue Ellen Tatter indicated that Mr. Curtner

9  would be lead counsel and she would be assisting him.  The

10  docket shows, rightly or wrongly, three counsel at this point,

11  Mr. Curtner, Sue Ellen Tatter, and of course the attorney Mr.

12  Offenbecher.

13  So it's up to counsel and the defendant to choose

14  which two of record you want.  And I think one of them,

15  obviously, should be within the Public Defender's Office to

16  assist in the matters that you can, but that's up to the

17  defendant and his attorneys to decide.

18  So Mr. Curtner, or one of you speak to that issue

19  then?  Which two of record would you like to have?

20  MR. CURTNER:  Yes, Your Honor, it would be myself as

21  lead counsel and Mr. Offenbecher as also the second chair

22  counsel.

23  And Ms. Tatter was originally involved early on in

24  this case, but since then with the sequester and everything,

25  she's gone to part time, and she wouldn't be able to devote the

1  time necessary on a part-time basis to this case.  I had her on

2  ECF notice.  It's just sort of the policy in my office to make

3  sure that we don't drop the ball if I'm traveling on business

4  and I'm not in town.

5          And so -- but the crux of the matter is that it will

6  be me and Mr. Offenbecher will be counsel for Mr. Wells.

7          THE COURT:  The record will so reflect, and I'll have

8  that corrected then so that the counsel of record -- and that

9  means that they are the ones who receive notices, orders, and

10  pleadings in the case electronically, and they're responsible

11  for matters that are filed with the court.

12         Behind the scenes, probably both sides have a staff of

13  people who are going to help, and that's up to the individual

14  party.

15         So the reconsider appointment issue, I have

16  reconsidered it just now, and Mr. Offenbecher's appointment will

17  stand, and Ms. Tatter's designation as counsel of record will be

18  stricken or vacated.

19         The other part is to comply with the local rules, and

20  I'll just tell you my thinking.  If counsel want to be heard on

21  it, certainly you may.  But in light of the declaration of Mr.

22  Offenbecher, I think that along with the history of appointments

23  in this district, that no additional filings are necessary to

24  perfect his appointment.  So the government's motion did, in

25  effect, precipitate the filing of the declaration that he made

1  and it is now of record.

2          Anything else the government wants to say on that

3  matter?

4          MR. SCHRODER:  No, Your Honor, that's good.  Thank

5  you.

6          MR. COOPER:  Well, I think that Mr. Curtner was going

7  to make a motion in which we were going to join regarding the

8  status conference on the 12th.

9          MR. CURTNER:  Yes, Your Honor, I know both government

10 counsel are going to be out of town next Friday.  I don't know

11 if Mr. Offenbecher -- we had a status conference in front of you

12 on -- a week from today.  I wonder if we could continue that

13 until the 15th, the following Monday, so that we could all be

14 here in person?

15         THE COURT:  Okay, I have a workshop out of town, so

16 I'm not here.

17         MR. CURTNER:  Anytime that week as far -- I mean, I

18 know Mr. Cooper might have some conflicts, but I'm open anytime

19 that week.

20         MR. COOPER:  We'll be able to cover it.

21         THE COURT:  Well, the -- it would have to go to the

22 week of April the 29th.  It doesn't have to be on a Friday, but

23 for me to participate personally, I hate to give it to somebody

24 else to have to pick up on it.

25         And I would think in light of the timing of the case

1   and where we are with the pretrial matters, probably that won't

2   make a big difference.

3           MR. CURTNER:  May 3rd would be fine with defense

4   counsel.

5           THE COURT:  All right.  Well, I have an executive

6   board meeting in San Francisco then, so I guess Monday, April

7   the 29th is open.  It just happens to be hitting in some travel

8   here.  The following week of May the 6th I have most of those

9   days open.  But April 29th, it looks like it should be on a

10  Monday for that week.

11          MR. CURTNER:  April 29th is a Monday.  We'd be

12  available that day or anytime May 6.  I don't think May 6 would

13  be too -- too far away for a status conference.

14          MR. SCHRODER:  We're available on April 29th.  I think

15  we'd prefer that, Your Honor.

16          MR. CURTNER:  Okay.

17          THE COURT:  All right.  I'll let you choose the time

18  of day.  I have an arraignment at 10 that's on the books,

19  otherwise morning or afternoon, whatever works?

20          MR. CURTNER:  Afternoon, please.

21          THE COURT:  2 o'clock?

22          MR. CURTNER:  That would be fine, thank you.

23          THE COURT:  All right.

24          MR. OFFENBECHER:  That's 2 o'clock?  I'm sorry, Your

25  Honor.

1          THE COURT:  Yes, it is.

2          MR. OFFENBECHER:  2 o'clock on the 29th?

3          THE COURT:  On April the 29th, Monday, yes.  And Mr.

4     Offenbecher, you had made a motion that I denied without

5     prejudice.  If you want to submit it with a new date for your

6     travel, then that will be granted.

7          MR. OFFENBECHER:  Thank you, Your Honor.

8          THE COURT:  Anything else that we might take up?

9          MR. SCHRODER:  Your Honor, the only -- on the issue --

10    kind of the travel reminded me.  The issue of kind of ex parte

11    filings in the case, I mean, can you -- the government certainly

12    understands that there will be issues related to the CJA

13    attorneys and expenses that, you know, could possibly reflect

14    trial strategy, and that would appropriately be filed ex parte.

15    But I mean things like travel memoranda.

16          I mean, generally, as we cited the Seattle Times case,

17    these things should be done in the open unless there is a reason

18    for them to be filed confidentially ex parte.

19          THE COURT:  All right, anyone on the defense want to

20    be heard about the travel requests being filed ex parte?

21          MR. CURTNER:  Well, Your Honor, yes, we'll review

22    that, and maybe Ms. Rutledge could talk to this -- speak to this

23    as well.  But I think that we need to look at -- under the Guide

24    For Judicial Policies and Procedures when it's appropriate under

25    the CJ Act to file certain things under seal.  We won't do it

1  just as a matter of course, but if the -- you know, if it
2  affects -- I think travel of parties on the defense side of the
3  case can reflect the -- our investigation procedures and things
4  of that nature.

5          So, I mean, for court -- for court hearings, it would
6  not be one -- it would be one thing, but if there were other
7  travel that might be -- should be privileged and under seal,
8  then we would just follow the guide on that.

9          THE COURT:  All right.  Ms. Rutledge?

10          MS. RUTLEDGE:  Your Honor, this is Nancy Rutledge.

11          THE COURT:  Yes.

12          MS. RUTLEDGE:  If I may weigh in here.  Are you able
13  to hear me okay?

14          THE COURT:  Yes.

15          MS. RUTLEDGE:  Okay.  I've never ever in all of my
16  budgets seen where that travel information is available to the
17  government.  I think there would have to be a very strong
18  argument for that information.  I think it does reveal things
19  about the case that probably are privileged or shouldn't be part
20  of the government's knowledge.

21          MR. SCHRODER:  Your Honor, we've reviewed the guide,
22  and the guide says -- Section 660.10(b) states that applications
23  for authorization of payment for investigative expert and other
24  services in capital cases should not be ex parte unless the
25  defendant makes a proper showing that confidentiality is

1  required.

2          Now, if Mr. Offenbecher is traveling to Anchorage to

3  go to a scheduled hearing, there is no need for confidentiality

4  of that.  I understand what Ms. Rutledge is saying.  If it's

5  travel for investigative purposes that could reveal defense

6  strategy, we don't have a problem with that.  We just want to

7  see that this is aired out publically, the appropriate documents

8  are filed publically that should be filed publically.

9          THE COURT:  I think Mr. Curtner essentially agreed

10 with that.  He said he would review the policies.  It's been a

11 practice of the Court to follow what Ms. Rutledge has said and

12 that is those matters have been submitted ex parte because it's

13 easier to unseal than it is to put the cat back in the bag, so

14 to speak.

15         I think if there's a concern, that defense could just

16 add its reasons for wanting to file it ex parte, do so, and then

17 we'd go from there and litigate whether something should be

18 unsealed if necessary.  But if the defense will put its reasons

19 in, at least we'll have that of record to consider.

20         MR. CURTNER:  Yes, Your Honor.

21         THE COURT:  All right.  That's all I think I have on

22 the calendar this morning.  So if you have matters that you want

23 put on the status hearing that we have, please submit something

24 ahead of time and we will be prepared for that.

25         MR. CURTNER:  Will do.  Thank you, Your Honor.

1          MR. SCHRODER:  Thank you, Your Honor.

2          THE COURT:  We'll be in recess.

3          THE CLERK:  All rise.  This matter stands adjourned.

4  Court stands in recess until 11:30.

5              (Proceeding adjourned, 10:13:03 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2

3        I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved

4    transcriber, certify that the foregoing is correct transcript

5    from the official digital electronic sound recording of the

6    proceedings in the above-entitled matter.

7

8

9    _____          ___9/9/14____
     Leonard J. DiPaolo, RPR, CRR, CCP              Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25