1              UNITED STATES DISTRICT COURT
                    DISTRICT OF ALASKA
2
   UNITED STATES OF AMERICA,    )      Case No. 3:13-cr-00008-RRB
3                                )
              Plaintiff,         )      Anchorage, Alaska
4                                )      Tuesday, May 14, 2013
      vs.                        )      10:02 a.m.
5                                )
   JAMES MICHAEL WELLS,          )      STATUS CONFERENCE
6                                )
              Defendant.         )
7                                )

8                    TRANSCRIPT OF PROCEEDINGS
                    Pages 1 - 14, inclusive
9
             BEFORE THE HONORABLE RALPH R. BEISTLINE
10               UNITED STATES DISTRICT JUDGE

11  A P P E A R A N C E S:
   For Plaintiff:     KAREN LOEFFLER, ESQ.
12                    DANIEL COOPER, JR., ESQ.
                      BRYAN D. SCHRODER, ESQ.
13                    KATHLEEN ANN DUIGNAN, ESQ.
                      U.S. Attorney's Office
14                    222 W. 7th Avenue, #9
                      Anchorage, Alaska 99513
15                    Ph: 907/271-5071

16  For Defendant:    F. RICHARD CURTNER, ESQ.
                      Federal Public Defender's Agency
17                    601 W. 5th Avenue, Suite 800
                      Anchorage, Alaska 99501
18                    Ph: 907/646-3400

19                    PETER OFFENBECHER, ESQ.
                      Skellenger Bender, P.S.
20                    1301 5th Avenue, Suite 3401
                      Seattle, Washington 98101-2605
21                    Ph: 206/623-6501

22  Court Recorder:   NANCY LEALAISALANOA
                      U.S. District Court
23                    222 W. 7th Avenue, Box 4
                      Anchorage, Alaska 99513
24                    Ph: 907/677-6111

25

1   A P P E A R A N C E S:  (Continued)

2   Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                        Peninsula Reporting
3                       110 Trading Bay Road, Suite 100
                        Kenai, Alaska 99611
4                       Ph: 907/283-4429

5

    Proceedings recorded by digital sound recording, transcript
6   produced by stenographic transcription service.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

ANCHORAGE, ALASKA - TUESDAY, MAY 14, 2013

1  (Log 10:02:09)

2      (Defendant present)

3              THE CLERK:  All rise.  His Honor the Court, the United

4  States District Court for the District of Alaska is now in

5  session with the Honorable Ralph R. Beistline presiding.  Please

6  be seated.

7              THE COURT:  Good morning.

8              MR. CURTNER:  Good morning, Your Honor.

9              MR. COOPER:  Good morning, Your Honor.

10             MR. OFFENBECHER:  Good morning, Your Honor.

11             THE COURT:  You're the new one, right?

12             MR. OFFENBECHER:  Peter Offenbecher, appearing with

13  Mr. Wells and Mr. Curtner.  Good morning, Your Honor.

14             THE COURT:  Good morning.  Okay, we're on the record

15  in United States of America versus James Wells, it's case

16  3:13-8.

17             This is just a status conference to follow up from our

18  last status conference to see how things are doing or going.

19  I've read the file.  It seems like we have some minor issues to

20  talk about.  I can just resolve them myself.  Who wants to go

21  first?

22             MR. COOPER:  If I might, just real quickly, Your

23  Honor.

1          THE COURT:  Okay.

2          MR. COOPER:  First of all, Mr. Offenbecher is not the

3   only new lawyer in the case.  As the Court may be aware, I'm

4   retiring June 30th.

5          THE COURT:  Wow.

6          MR. COOPER:  Yes, I'm joining the physically unable to

7   perform list.  Ms. Loeffler, the United States Attorney, who you

8   know of course, is going to be joining the team in my place.

9          THE COURT:  Okay.

10          MR. COOPER:  I also have with us today Captain

11  Kathleen Duignan of the United States Coast Guard.  She's a

12  lawyer.  She's now a special assistant to the United States

13  Attorney.  And the Coast Guard has loaned her to the prosecution

14  team for the duration of this case, so...

15          THE COURT:  Okay.  Well, welcome to all the new

16  people, and congratulations on your retirement.

17          MR. COOPER:  Thank you.  I think that one of the

18  things that has to be addressed is what's been going on before

19  the magistrate judge.  And the Court has read the file and I --

20  there are two things that concern us.

21          THE COURT:  Well, let me just get right to it.

22          MR. COOPER:  Sure.

23          THE COURT:  It looks to me like everybody's been

24  working on a complicated, complex case and doing a pretty good

25  job of getting it squared away, including the magistrate judge.

1  He's set forth a schedule that -- in his second pretrial

2  scheduling order that I think I can -- I'm comfortable

3  following.

4         I've said before, when we first met, that I'm willing

5  to take directly the motion practice.  That's been my practice

6  in the past in rather complicated cases, and I think that a

7  reasonable resolution would be to have the magistrate handle the

8  matters -- handle everything up through July 26th, handle all

9  the discovery motions, handle any financial issues involving

10  counsel, and then I would take over directly the motions to

11  suppress and those motions thereafter.  That would allow the

12  trial to proceed as scheduled, it would allow the defense all

13  the time in the world they needed, and would keep things on

14  track.

15         MR. COOPER:  And that's certainly a fair and just

16  resolution.

17         The only other thing that we're concerned about is

18  some erroneous findings that the magistrate judge made in his

19  record.  We've addressed those in the pleading that we filed

20  this morning.

21         I think it's important for this Court to know that --

22  I've done something in this case that I've never done in 21, 22

23  years as a prosecutor, and that's sat down with both Mr. Curtner

24  and his team, and then when Mr. Offenbecher joined the team, sat

25  down with him again and did a PowerPoint presentation that took

1 them through the entire government's case.

2        THE COURT:  That was impressive.

3        MR. COOPER:  And, I mean, it's not that we're hiding

4 anything.  The information has always been provided to them, and

5 they had the information on the hard drive that the judge found

6 that we hadn't provided to them.

7        THE COURT:  I don't believe you're hiding anything.

8        MR. COOPER:  Okay, thank you.  I just want to give the

9 Court one other piece of information and then I'll sit down and

10 be quiet, and that is the government has been working on the

11 death penalty memorandum.  We expect that to go back to

12 Washington, D.C. within the next ten days or so.

13        THE COURT:  Okay.  That was -- I had a couple

14 questions, and that was one of them.  What's the status of that?

15 So what does that mean in layman's terms?

16        MR. COOPER:  In layman's terms, as the Court recalls

17 the process, is we prepare a memorandum and the United States

18 Attorney makes a recommendation to the Capital Crimes Unit.

19 They take that recommendation, review it, review all the

20 materials that are submitted, and then ask, once again, the

21 defense for their submissions, if any, on mitigation.

22        The government is often asked to go back and fill in

23 any questions that they may have.  They make a recommendation to

24 the deputy attorney general, and then it goes to the attorney

25 general himself for his final decision on the death penalty.

1          THE COURT:  So it's a complicated and potentially

2    lengthy process?

3          MR. COOPER:  Usually 90 to 180 days.  So we should

4    know something this fall, early fall hopefully.

5          THE COURT:  Well, that could impact the entire

6    schedule.

7          MR. COOPER:  Yes.  That's why we have been working

8    diligently to get it there.

9          THE COURT:  Okay, all right.  Thank you.  Mr. Curtner,

10   are you lead?  Is that --

11         MR. CURTNER:  I am.

12         THE COURT:  Okay.

13         MR. CURTNER:  Well, Judge, I'm glad we got the record

14   straight that nobody is accusing anybody of --

15         THE COURT:  I'm not -- I think -- I know everybody

16   here.  They're all great people.  And so is the magistrate, he's

17   a great magistrate judge.  So I'm -- I think we've got a bunch

18   of great people so far who've touched the case.

19         MR. CURTNER:  Absolutely, and I agree with you.  And I

20   think that we're on schedule now.  We have a reasonable pretrial

21   schedule.  We will work with the magistrate judge.  And now that

22   Ms. Loeffler is on board, we've been working together for 20

23   years, we were going to meet after this and try to resolve all

24   these discovery issues so we can keep on schedule.

25         THE COURT:  Okay.  Well, there don't appear to be any

1   real discovery issues anymore that I can tell.

2           MR. CURTNER:  Well, I don't think so, but, you know,

3   it's almost you have to look at everything you have before you

4   know what you don't have.  So in that vein, if there is anything

5   we think we're missing, we're going to be making written

6   requests to Ms. Loeffler and the government just like, we'd like

7   to see this and that.

8           THE COURT:  Okay.

9           MR. CURTNER:  And then that way we know what we are

10  missing, what we're asking for, what the government may disagree

11  that they should provide us, or can tell us it doesn't exist,

12  and then we'll have all that settled by the end of July.

13          THE COURT:  Okay.  Yeah, we want to keep this thing

14  scheduled for trial in February.  Sometimes people say February

15  17th in their pleadings, sometimes people say February 18th.  I

16  went back and checked the calendar because I couldn't remember

17  which of the two dates.  I know that February 17th is a Monday,

18  February 18th is a Tuesday.  Can you refresh my recollection as

19  to why there is some confusion about that?

20          MR. CURTNER:  Unless there's a holiday there, I don't

21  know.

22          THE COURT:  It's just I couldn't -- and I just

23  looked --

24          MS. LOEFFLER:  Isn't President's Day in February?

25          MR. COOPER:  Yes, the 17th is President's Day, I

1 think.

2          THE COURT:  Okay, so we probably said the week of

3 February 17th, but we all recognize, because Monday is a

4 holiday, we're going to start Tuesday the 18th.  So we cleared

5 that confusion up.

6          MR. COOPER:  Yeah, it's at Docket 35.  The Court set

7 it on the 18th.

8          THE COURT:  Okay, that's why.  Good, thank you.

9          MR. COOPER:  That's all I have.

10          THE COURT:  Trial is only nine months away, so we need

11 to be getting on top of this.  Everybody needs to do their job,

12 get the discovery taken care of.  And when I get the motions, if

13 there are any, I'll deal with them expeditiously and be prepared

14 to do that.

15          Let's see what my notes -- so my notes here, after

16 looking, the government appears to be -- having been candid and

17 cooperative in discovery and the parties are moving in that

18 direction.  I don't see that there's an -- I haven't been able

19 to see that there's been any secrets involved, but remember

20 discovery is a continuing obligation for both sides, and I

21 expect both sides will act in good faith in that regard.

22          The one big question mark is, of course, the death

23 penalty issue, and that will likely, if the parties proceed with

24 the death penalty, that will require additional jurors, as you

25 well know, and much more time will become involved, and a more

1  complex process.  But absent that, I expect to go to trial as
2  scheduled beginning February 18th.
3          I think Mr. Cooper said that you wanted to do it in
4  Courtroom 1; is that still what you want?
5          MR. COOPER:  Yes, Your Honor.  I think that as the
6  defense certainly knows, there is some video that's involved and
7  a lot of photography, and these --
8          THE COURT:  Can't we do that here?
9          MR. COOPER:  Well, the problem that we've experienced
10  in these courtrooms is that the projector on the screen doesn't
11  give the definition, high definition that's going to be
12  necessary.
13          THE COURT:  Have you looked at Courtroom 1 to see if
14  it's any better?
15          MR. COOPER:  Well, I think we're going to be talking
16  with the defense about putting in perhaps some HD TVs for the
17  jury, for the Court, for the witnesses and so forth to actually
18  be able to see.
19          THE COURT:  Okay.
20          MR. COOPER:  My understanding was that Courtroom 1 was
21  supposed to be the high tech courtroom, according to Judge
22  Burgess, but -- and the jury room for Courtroom 1.
23          The issue is, when I spoke with Judge Burgess about
24  it, his capacity as being kind of like the head electronics guru
25  for the District, he said, "We'll get together, we're going to

1  form a committee," and then I think he went to Africa.  And now

2  I'm leaving, so Mr. Schroder is going to have to take over.  But

3  we'll have to work with the defense on this --

4          THE COURT:  It's going to have to be between Mr.

5  Schroder and Mr. Curtner to get that operating right, because

6  I'm not sure that it's ever been operated before.  It has all

7  the technical things that are available, but parties cannot

8  presume on the day trial starts that everything is going to go

9  smoothly.  They've got to come in and practice.  The courtroom

10 will be made available.  And I need to know whether I'm going to

11 have to move my chair down there or not, because I'm not going

12 to use that big chair for that whole trial.

13         MR. COOPER:  Well, that is a large chair.

14         We will be working with him.  I think that early on

15 the commitment was made between the prosecution and the defense

16 to try and get this case tried fairly and truly and get justice

17 done, and that's still the commitment on behalf of the

18 government.  So we will be working with them to accomplish that.

19         THE COURT:  Okay.  Well, so I'm just adopting the

20 second pretrial scheduling order as set forth by the magistrate

21 judge with the modification that I will take the motions to

22 suppress and all the motions filed thereafter as of August the

23 30th, 2013, and we'll get this all done in time.

24         Mr. Curtner, anything else?

25         MR. CURTNER:  No, Your Honor, thank you.

```
 1              THE COURT:  How about if we do another status
 2    conference in 60 days, July 19th, 2013 at 9 o'clock in the
 3    morning.
 4              MS. LOEFFLER:  Your Honor, if I may?
 5              THE COURT:  Yes.
 6              MS. LOEFFLER:  I actually do know I'm not available
 7    July 19th.  I'm gone the 17th through the 21st.  Other than
 8    that, I am here all summer.  You picked the one set of four days
 9    I'm not here.
10              THE COURT:  Okay, well, I just picked 60 days, so
11    let's just go back.  What's the week -- earlier in that week
12    then maybe?
13              MS. LOEFFLER:  I leave the 17th, so I think the 17th
14    is a Wednesday.  So Monday or Tuesday is fine for me.
15              THE COURT:  Well, I think we'll have to do it the next
16    week then.  How about July 20 -- oh, let's see, July 22nd at
17    1:15.
18              MR. CURTNER:  What's that?
19              THE COURT:  That's Monday the 22nd, 1:15.
20              MR. OFFENBECHER:  Monday the 22nd.
21              MR. CURTNER:  Uh-huh, yeah.
22              THE COURT:  Good with everyone?
23              MS. LOEFFLER:  (Indiscernible) time.
24              MR. CURTNER:  Yes, Your Honor.
25              THE COURT:  Okay.  Nancy, did you pick up that date?
```

1           THE CLERK:  Yes.

2           THE COURT:  Okay.  Well, that was easy.  Anything

3  else?  See you in July.

4           MR. COOPER:  Not from the government, Your Honor.

5           THE COURT:  Thank you.

6           MR. OFFENBECHER:  Thank you.

7           MR. CURTNER:  Thank you, Your Honor.

8           THE CLERK:  All rise.  This matter stands adjourned.

9  Court stands subject to call.

10               (Proceeding adjourned, 10:14:03)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                            CERTIFICATION

      I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved

transcriber, certify that the foregoing is correct transcript

from the official digital electronic sound recording of the

proceedings in the above-entitled matter.


_____          ___9/10/14___
Leonard J. DiPaolo, RPR, CRR, CCP          Date