```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF ALASKA

UNITED STATES OF AMERICA,   )    Case No. 3:13-cr-00008-RRB-JDR
                            )
          Plaintiff,        )    Anchorage, Alaska
                            )    Monday, July 29, 2013
   vs.                      )    2:03 p.m.
                            )
JAMES MICHAEL WELLS,        )    STATUS CONFERENCE
                            )
          Defendant.        )
                            )
```

TRANSCRIPT OF PROCEEDINGS
Pages 1 - 12, inclusive

BEFORE THE HONORABLE JOHN D. ROBERTS
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

| | |
|---|---|
| For Plaintiff: | KAREN LOEFFLER, ESQ. |
| | BRYAN D. SCHRODER, ESQ. |
| | U.S. Attorney's Office |
| | 222 W. 7th Avenue, #9 |
| | Anchorage, Alaska 99513 |
| | Ph: 907/271-5071 |
| For Defendant: | F. RICHARD CURTNER, ESQ. |
| | Federal Public Defender's Agency |
| | 601 W. 5th Avenue, Suite 800 |
| | Anchorage, Alaska 99501 |
| | Ph: 907/646-3400 |
| | PETER OFFENBECHER, ESQ. (Telephonic) |
| | Skellenger Bender, P.S. |
| | 1301 5th Avenue, Suite 3401 |
| | Seattle, Washington 98101-2605 |
| | Ph: 206/623-6501 |
| Court Recorder: | DENALI ELMORE |
| | U.S. District Court |
| | 222 W. 7th Avenue, Box 4 |
| | Anchorage, Alaska 99513 |
| | Ph: 907/677-6123 |

```
 1   A P P E A R A N C E S:  (Continued)

 2   Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                        Peninsula Reporting
 3                      110 Trading Bay Road, Suite 100
                        Kenai, Alaska 99611
 4                      Ph: 907/283-4429

 5

     Proceedings recorded by digital sound recording, transcript
 6   produced by stenographic transcription service.
```

```
                         P R O C E E D I N G S
                  ANCHORAGE, ALASKA - JULY 29, 2013
  (Log 2:03:15)
     (Defendant present)
         THE CLERK:  All rise.  His Honor the Court, the United
States District Court for the District of Alaska is now in
session with the Honorable John D. Roberts presiding.  Please be
seated.
         Your Honor, we have Mr. Offenbecher on the phone.
         THE COURT:  Good afternoon.
         MR. OFFENBECHER:  Same to you.
         MR. SCHRODER:  Good afternoon, Your Honor.
         THE COURT:  I'll call Case 13-cr-08, U.S. versus
Wells.  We've set a status conference.  We've been holding these
conferences periodically whether there is anything or not to
take up.
         A couple of questions I might ask.  I'll ask the
government if there has been any change in the U.S. Department
of Justice deciding whether to seek the death penalty.
         MS. LOEFFLER:  Your Honor, I'll answer that one.  It's
still under review back in Washington, but it's -- based on my
experience, it's moving forward and it's moving forward at a
pretty good clip, but I don't have anything to report to the
Court other than it's back there.
         THE COURT:  Thank you.  I have received the motion for
```

order directing the government to provide additional discovery, Docket No. 98. It's not ripe yet. The government's response is not yet due.

I thought in setting the next status conference about 45 days out, that would fall on September 6th. If there is going to be any oral argument on the discovery motion, we would hold it on that date. Ordinarily the Court does not have an argument on discovery, it's just done by a written order, and I haven't read through the motion well enough to know if there is a request for oral argument or if there is a need for it.

My point is that it will become ripe about the end of August, and so if we set a status conference for September 6th, if there is any need for a hearing, we'll just go ahead and build it into that time frame.

MR. OFFENBECHER: Your Honor, for what it's worth -- I'm sorry.

THE COURT: Go ahead.

MR. OFFENBECHER: Your Honor, Peter Offenbecher here. For what it's worth, and I don't know if this would change the Court's scheduling, but I'm scheduled to be in the middle of my annual leave on Friday, September 6th, which is not to say that the Court can't schedule a hearing.

THE COURT: What date around September 6th would work for you for the status conference?

MR. OFFENBECHER: Probably the 16th or the 30th, Your

```
 1  Honor.
 2          THE COURT:  All right.  I'm out of town both of those
 3  dates.
 4          MR. OFFENBECHER:  Well, you're pretty important for
 5  the hearing.  I mean, I'm available the week of the 26th and
 6  then again the week of the 16th of September.
 7          THE COURT:  All right.  You know, unless we have
 8  something to take up, we can always cancel the hearing.  What I
 9  was going to say was I would appreciate if anyone would file a
10  notice if you have something that you want to bring up at these
11  hearings so everybody else knows and is prepared to address
12  that.
13          And in that regard, we'll come back to this scheduling
14  the status conference.  Are there any matters that anybody wants
15  to bring up today?  Government.
16          MR. SCHRODER:  No, Your Honor, not from the -- no
17  matters we want to bring up.  I think we are working
18  cooperatively to try to resolve as many of these issues as we
19  can and narrow the issues.  Those that we can, we'll take of;
20  those that we don't, we'll file appropriate responses to and be
21  ready to go.
22          THE COURT:  Within the time frame set by the Court?
23          MR. SCHRODER:  Within the time frame set by the Court,
24  Your Honor.
25          THE COURT:  All right.  For the defendant, anything to
```

```
 1  come up at this hearing?
 2          MR. CURTNER:  Just a minute, Your Honor.
 3          THE DEFENDANT:  Yeah, I do.
 4          MR. CURTNER:  Your Honor, as far as the status of the
 5  case, no, but I think Mr. Wells wanted to address the Court
 6  about some of the medical conditions at the jail, so...
 7          THE COURT:  Have you talked to him about that, because
 8  normally --
 9          MR. CURTNER:  I did.  I said that this is something
10  that we could look into with the marshals, but I think he wanted
11  to bring it to the Court's attention.
12          THE COURT:  Mr. Wells, keep in mind that anything that
13  you say voluntarily that helps prove the case can be used by the
14  government.  You may want to speak with your attorney first.
15  But if you just simply want to report something about your
16  medical condition or treatment or lack of treatment, I will give
17  you a couple minutes to put something on the record if you would
18  like to do that.
19          THE DEFENDANT:  I would, Your Honor.
20          THE COURT:  Go ahead.
21          THE DEFENDANT:  Do I -- can I sit or do I need to
22  stand up?
23          THE COURT:  Sit.
24          THE DEFENDANT:  Okay, thank you.  I'm not sure the
25  Court's aware of my medical condition.  I'm a diabetic and I
```

```
 1  have a tendency to be hypoglycemic, which means I can go into
 2  low blood sugar.  And today as an instance, I have been held in
 3  the cell for six hours without human contact, okay, no one's
 4  talked to me or done anything -- you know, come in to see if I
 5  was okay.  There is no way for me to contact anybody from that
 6  cell.  There is no buzzer or anything that I can, you know, get
 7  anybody's attention.
 8          The other medical condition I have is I have a
 9  condition called idiopathic anaphylaxis, which means I can go
10  into anaphylactic shock for unknown reasons, it just happens.
11  Okay, again, for the last 23 years I have had either an epi pen
12  or an epinephrine inhaler on my person or available to me since
13  this condition was first diagnosed.
14          Since my incarceration, the Anchorage jail has for
15  some reason not allowed me to have either the inhaler or an epi
16  pen available.  Again, I'm -- and there's not one -- I don't
17  know if there is one available here.
18          And again, today as an example, I was the only one
19  down in the holding cells, and without contact with anybody for
20  the last six hours.  If I do go into an anaphylactic attack,
21  time is very critical as far as that goes.  Sometimes, you know,
22  minutes count.  And being without proper medication, I may not
23  last to even stand trial if I'm in a situation like this again
24  where I haven't had anybody, you know, to contact in six hours.
25          So I just wanted to know what the Court or the U.S.
```

1  Marshal's plan is going to be for my medical care.
2  THE COURT: Mr. Curtner, if you're willing, can you
3  tell me who you've talked to about this matter or if you had a
4  chance to talk to anybody over at the facility?
5  MR. CURTNER: You know, I've talked to the people at
6  the Anchorage jail a number of times. We've been in touch with
7  the staff there with a number of issues. And, you know, it's
8  always an issue with the jail and the medical attention they
9  give to federal prisoners. It's -- with Mr. Wells and others.
10 But we've had a lot of contact with them.
11 With the marshals I have mentioned -- had some
12 discussion with the marshals about court appearances and stuff
13 like that. They haven't been very lengthy to date, and I guess
14 I didn't realize that -- and maybe the marshals can advise us of
15 what type of monitoring they have in the holding cell, but I
16 haven't looked into that.
17 THE COURT: All right. There is a deputy here who can
18 speak.
19 DEPUTY BUNN: Your Honor, Deputy Bunn with marshals.
20 First of all, I'll let my supervisor know. Second of all, there
21 is a form at USM 130 that I'll complete when we leave the Court.
22 When I take him back to the jail tonight, I will have him sign
23 that. I can't positively ensure you there is one already on
24 file, but I will check and make sure that there definitely is
25 one. The jail will sign that receipt making him notified in

writing of issues.  And so I will make sure that is done today. So it will get to medical today.  If he puts in a cop-out, it should be addressed.  I will also follow up with phone calls to the nursing at ACC East and let them know today.

THE COURT:  Do you know if the institution checks on people who may be segregated occasionally?  I mean, is there a peephole or some place where they just look to see if the person appears to be in there and all right?

DEPUTY BUNN:  Your Honor, I do not know exactly how the jail does that.  I'd be misspeaking if I even tried to answer to that.  There is someone in our office I'm sure who does know, but I'm not the right one to answer that.

THE COURT:  Mr. Curtner, I'm going to put the burden on you to go forward with this, and if there needs to be a further report to the Court, then you can make one in writing. Rather than turn this into a civil rights action, a separate action, I think we may be able to solve it here, whatever the answer is going to be.

And so you may want to talk with the government as well and see what can be worked out, if anything, so that we can come to some solution here that he's -- at least the institution can give some assurance that they are aware of his condition and they're satisfied that they're doing all they need to or can to take care of it.

MR. CURTNER:  Yes, Your Honor, I'd be glad to follow

```
 1  up on that.
 2           THE COURT:  Thank you.
 3           THE DEFENDANT:  And, Your Honor, I know the marshals
 4  are aware, because when I -- my initial -- when I was brought in
 5  here on February 18th, they did the initial screening interview,
 6  and I informed them of that.
 7           THE COURT:  Well, what I just heard is there is a form
 8  that goes to the institution so that the institution is made
 9  aware of it, and so that's what we want to follow up and that's
10  where we need to get the solution.
11           Looking then at the calendar, September 6th may not
12  work.  What would be the latest date after that that would work
13  for the defense for the status conference?  Something like the
14  end of August, for example?
15           MR. CURTNER:  You know, I think, Your Honor, it would
16  probably be better to address these issues sooner rather than
17  later.  So I'm available at the end of August.
18           Peter, I don't know, are you available the week of
19  August 26h?  In fact, Your Honor, I thought we had a status
20  conference at one time scheduled in front of Your Honor on
21  August 29th at 10 o'clock.  It may have been vacated once we
22  address some of these issues, but --
23           THE COURT:  Well, actually I do see one set for 10
24  o'clock on Thursday, August 29.  It's written in the book here,
25  and it says status conference.  So maybe that will be what we
```

```
 1  use.
 2           I know Judge Beistline's next status conference is
 3  October 21, but he's monitoring it a little bit differently than
 4  I am.  I'm doing the non-dispositive motions.
 5           And so I would think Thursday, August 29 at 10 a.m.
 6  would work for me.
 7           MR. CURTNER:  Works for the defense.
 8           MR. OFFENBECHER:  Yeah, that's fine for me, thank you,
 9  Your Honor.
10           THE COURT:  All right.  We'll make that the date then
11  for the next conference.  Anything else to take up before we're
12  adjourned?
13           MR. SCHRODER:  Not from the government, Your Honor.
14           MR. OFFENBECHER:  Now, what time again was it?
15           THE COURT:  10 a.m.
16           MR. OFFENBECHER:  Thank you, Your Honor.
17           THE COURT:  Thanks for your participation, and this
18  will conclude the proceeding.
19           THE CLERK:  All rise.  This matter is now adjourned
20  subject to call.
21                  (Proceedings adjourned, 2:15:24)
22
23
24
25
```

```
 1                          CERTIFICATION
 2
 3     I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved
 4   transcriber, certify that the foregoing is correct transcript
 5   from the official digital electronic sound recording of the
 6   proceedings in the above-entitled matter.
 7
 8
 9   _____            ___9/10/14___
     Leonard J. DiPaolo, RPR, CRR, CCP             Date
10
```