```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF ALASKA
 2
     UNITED STATES OF AMERICA,    )      Case No. 3:13-cr-00008-RRB-JDR
 3                                 )
                  Plaintiff,       )      Anchorage, Alaska
 4                                 )      Monday, October 21, 2013
        vs.                        )      10:06 a.m.
 5                                 )
     JAMES MICHAEL WELLS,          )      ORAL ARGUMENT ON OBJECTIONS
 6                                 )      TO MJ ORDER (DKT 140)
                  Defendant.       )
 7                                 )

 8                      TRANSCRIPT OF PROCEEDINGS
                        Pages 1 - 31, inclusive
 9
                    BEFORE THE HONORABLE JOHN D. ROBERTS
10                   UNITED STATES MAGISTRATE JUDGE

11   A P P E A R A N C E S:

12   For Plaintiff:     KAREN LOEFFLER, ESQ.
                        KATHLEEN ANN DUIGNAN, ESQ.
13                      U.S. Attorney's Office
                        222 W. 7th Avenue, #9
14                      Anchorage, Alaska 99513
                        Ph: 907/271-5071
15
     For Defendant:     F. RICHARD CURTNER, ESQ.
16                      Federal Public Defender's Agency
                        601 W. 5th Avenue, Suite 800
17                      Anchorage, Alaska 99501
                        Ph: 907/646-3400
18
     Court Recorder:    CAROLINE EDMISTON
19                      U.S. District Court
                        222 W. 7th Avenue, Box 4
20                      Anchorage, Alaska 99513
                        Ph: 907/677-6103
21

22

23

24

25
```

1    A P P E A R A N C E S:  (Continued)

2    Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                        Peninsula Reporting
3                       110 Trading Bay Road, Suite 100
                        Kenai, Alaska 99611
4                       Ph: 907/283-4429

5

     Proceedings recorded by digital sound recording, transcript
6    produced by stenographic transcription service.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

ANCHORAGE, ALASKA - MONDAY, OCTOBER 21, 2013

1    (Log 10:06:57)

2    (Defendant present)

THE CLERK:  All rise.  His Honor the Court, the United States District Court for the District of Alaska is now in session, the Honorable John D. Roberts presiding.  Please be seated.

THE COURT:  A hearing has been set at this time in case 13-cr-08, U.S. versus Wells.  Defendant and counsel are present.

We finally have some matters of substance to address in spite of the scheduling conferences we've had in the past.

Let me indicate, about the discovery matter, I recognize the content of the documents, the objections wanting to go to the district judge.  The district judge, of course, can affirm, he can reverse, he can remand.  So in a sense, he's asked me to look at the objections, it's kind of like a remand. I'm glad to do that.  I think we can make some adjustments to it.

Also the defense had asked for oral argument on the discovery motion.  There was so much in that motion, I didn't set it for oral argument.  Now that we've kind of boiled it down to some matters that are contentions or at issues on discovery, I think the oral argument is appropriate.  So I'm interested in

1  oral argument on the five points that the government raises, not

2  the entire discovery order.  And we'll take them in order

3  accordingly.

4         Let me say that the Court is empowered to interpret

5  and apply the rule and definition of Brady.  The first objection

6  raises a point of the government's written up policies toward

7  Brady, and the order indicated that the government was directed

8  to follow the policy manual, and the government objects to that.

9  I recognize and agree that the policy (indiscernible - phone

10 dial tone interruption) is not treated as law -- do we still

11 have a --

12        THE CLERK:  I'm sorry, I'm trying to transfer some

13 people on.  Ma'am, are you on the line?

14        UNIDENTIFIED SPEAKER:  Yes, I am.

15        THE COURT:  All right.  So the first issue to discuss

16 is the language of the order where the government is directed to

17 follow their policy, their own policy.  With that I assume the

18 parties are ready to proceed.  And it's the government's

19 objection, so you get to go first.

20        MS. LOEFFLER:  Okay, Your Honor.  I was going to say

21 congratulations or condolences, I understand all the motions are

22 back in front of you, so whichever way you take that, Your

23 Honor, welcome back, until your retirement.

24        THE COURT:  Well, as long as justice is done, we'll

25 all be happy.

1      MS. LOEFFLER: Yeah. Okay. If I can follow this

2 right. On the first one, which is on page, 8, (indiscernible)

3 Section 7, if the Court simply said the government is urged to

4 follow the policies, we would be perfectly happy.

5      And the reason you may think that we were being --

6 making much ado about nothing -- but it isn't much ado about

7 nothing to us for this reason, and that is, and I'm sure you're

8 aware, that we take the orders of the Court very, very

9 seriously. They are law for us, and so to the extent that we

10 had problems with language, we're determined to take it up

11 because of -- I don't want -- you know, we know what the

12 policies are. We're -- you know, we want to follow them and we

13 want to follow the rules, but I don't want to be in a situation

14 where we're litigating and somebody's, you know, career is on

15 the line saying, well, the Court ordered you to do that, and you

16 didn't do it, et cetera. So that's why there's some legal

17 language that we had objection to.

18      THE COURT: Let me see if there's any objection to

19 that modification rather than "directed to follow," "encouraged

20 to follow."

21      MR. CURTNER: No, Your Honor. I mean, our bottom line

22 is we like to have this so we can prepare for trial. So I

23 don't -- I'm not concerned necessarily about the language or how

24 we get it.

25      THE COURT: Well, I'll accept that. I have it written

1  down to make that change.

2        MS. LOEFFLER:  That's great.

3        THE COURT:  So that's No. 1.

4        No. 2, turn over exculpatory information forthwith or

5  seek a protective order.  The ABA model rule was cited as

6  guidance.  Nowhere does the court order, in my opinion, require

7  that the ABA Rule 3.8 be followed, citing the rules of

8  encouragement to turn over Brady material as soon as it comes to

9  the attention of the prosecutor.

10        The Court's order does not change the definition or

11  meaning of materiality as to what information constitutes Brady.

12  Turn over addresses when, not what.

13        So I don't think it's accurate in the objections to

14  say that the government is ordered to turn over all evidence in

15  discovery unless the Court approves otherwise.  It doesn't

16  address all evidence.  The order does not replace a constitution

17  with an ABA rule.

18        What type of exculpatory evidence, other than Giglio

19  impeachment evidence, would the government think might be

20  withheld from immediate production?  I mean, give me an example.

21        MS. LOEFFLER:  Okay, Your Honor, and most of that

22  solves a lot of our problem, because I was going to say on pages

23  6 and 7 of your order, we had no problem with any of that.

24        When it got into 3.8, that was our concern is that

25  somehow we were changing the law.  And to the extent you're not

1 changing the law, the definition of materiality, then we're

2 comfortable. And what you've said just there solves that

3 problem.

4 The only question we have with the -- then with the

5 timing is that -- and this sort of moves into another -- that I

6 believe under United States v. Jones, that, you know, Brady that

7 is within Jencks, in other words statements, is covered by the

8 Jencks Act.

9 Now, what we've told everybody is six weeks before

10 trial we're going to turn over all the statements. We're not

11 going to go through and say, well, this is Brady, is this not

12 Brady. It's going to be, here's the interviews of everybody,

13 you can have it all. And I believe that that's the Court's --

14 that that should govern any statements of witnesses.

15 To the extent, again, so that -- the timing set forth

16 by the Court should be followed. To the extent that there is

17 something that seems, you know, clearly exculpatory, we've

18 already done things and turned it over immediately.

19 For example, we believed we had a witness

20 misidentification of Mrs. Wells' car, and we turned it over, I

21 think it was a month after indictment or close to that.

22 But what I didn't want to get involved in is -- what

23 we do under the policies is, if we're having a discussion of

24 it's exculpatory or not, we turn over. But we want to do it

25 under the Court's -- the schedule that we've done. All

1 statements will go over six weeks in advance.  We have expert
2 witness reports, we've turned over the lab reports.  To the
3 extent expert witness reports might be Brady, we're planning on
4 turning them over on October 25th.  And, in fact, I'm going to
5 meet with Mr. Curtner at 1:30 to try to make that most
6 efficient.

7        To the extent it was meaning something else, you know,
8 we're not withholding anything.  But sometimes you don't know.
9 I mean, we're doing the investigation.  If we're following up on
10 the investigation, as soon as we're followed up, if it excloses
11 [sic] anything that could even be arguably Brady, we'll turn it
12 over.  We're not waiting to do anything like that.  But a court
13 order that says, you know, you must do everything forthwith,
14 seems to be insistent with some of the scheduling orders already
15 set by the Court.

16        THE COURT:  Well, as you know, you can always ask for
17 the Court to review something as to whether you think it's
18 exculpatory or not.

19        MS. LOEFFLER:  We will do that in any instance where
20 we think it's something that, for privacy reasons or something
21 else, needs to be reviewed by the Court.  That, in fact, is our
22 practice to turn over.  If there's a reason not to turn it over,
23 for privacy reasons or whatever, for one thing -- the best
24 example of that, Your Honor, is Henthorn reviews.

25        You know, there are things in agent's personnel -- or

1  officer's personnel files that we don't think are discoverable

2  under Henthorn, but our practice is to turn it over ex parte to

3  the Court so that we're not holding it back.  And that's what we

4  plan on doing with anything that for some reason we think is

5  part of the investigation we don't think should be turned over,

6  but might be possibly exculpatory, we'll turn it in to the

7  Court.

8           THE COURT:  Well, it sounds like you're complying with

9  at least what I intended the "forthwith" to mean.

10         MS. LOEFFLER:  Okay.

11         THE COURT:  It's not changing the production of Jencks

12  Act material.

13         MS. LOEFFLER:  Okay.

14         THE COURT:  Brady contained in that is governed by the

15  Jencks Act.

16         MS. LOEFFLER:  Okay.

17         THE COURT:  That's always been the rule of the Court.

18  With that, Mr. Curtner, is there anything else to argue on that?

19         MR. CURTNER:  No, Your Honor.  I mean, just that, you

20  know, what is Brady is always somewhat of a touchy issue, and

21  it's all -- sometimes it's questionable because we don't have

22  access to it.  But I think that, you know, your order adequately

23  addresses that.  We may have to address it as we go on, but I

24  don't have anything further to say as far as, you know, what

25  you've just described as far as your order concerning this

1   exculpatory information.

2           THE COURT:  All right.  We'll move on to No. 3, an

3   order providing witness statements of witnesses who provided

4   information used in a search warrant.  So let me hear the

5   arguments on that.

6           MS. LOEFFLER:  Let me get -- because I -- there's a

7   little bit of a -- witnesses, okay.

8           In the search warrant itself, what I believe is the --

9   we've turned over, of course, the affidavits, and the motions to

10  suppress has been filed.  The objection we had is -- and under

11  the Jencks Act, if there's a hearing, the testifying agent --

12  any statements of the testifying agent related to the search

13  warrant would have to be turned over.  That's what the Jencks

14  Act says.  26.2 applies to suppression hearings, although we've

15  argued that there is no need for a hearing in this case.

16          To the extent that -- what the order says is, I

17  believe, in the search warrant affidavit, to the extent that the

18  affiant was told anything by somebody else, those portions of

19  those statements should be turned over.

20          And my -- that one is a substantive objection where we

21  believe that Rule 16 doesn't apply to it, there is no Brady or

22  Giglio, the Jencks Act doesn't apply to that, and that the only

23  basis that does apply is if somebody shows a basis for a Franks

24  hearing obviously.  And I know the Court's very aware of the

25  standards for Franks.  You know, if you show that there were,

1  you know, misstatements or false statements, then, you know,
2  things that address that would certainly be my view of Brady and
3  we would turn them over.

4       But what we have right now -- I mean, we've opposed
5  the motion to suppress, which is now in front of you, so this is
6  coordinated, which is actually better, that there is no basis
7  for a Franks hearing.  I mean, defense has filed a motion saying
8  there's no probable cause in all the affidavits signed by
9  everybody.

10      What the -- and that turns on the four corners of what
11  was there.  They haven't produced anything that suggested -- and
12  I'm not aware of anything that suggested -- anybody mislead
13  anything.  And it's kind of like -- what we're saying is it's
14  the cart before the horse.

15      If the defendant -- and that's under the law.  If the
16  defendant makes a showing that there is something omitted, some
17  misstatement, some whatever, then possibly the evidence -- well,
18  not just possibly -- the evidence related to those omissions
19  would become relevant.

20      But I think you're -- I think it's a violation of
21  Franks just to say -- and it's not in the Jencks Act.  I don't
22  think there is any discovery rule that addresses saying
23  everything that's in the affiant that they relied on or any
24  statement from anybody else suddenly becomes discoverable, and
25  nor do I think it's relevant to the motions that they filed.

1          THE COURT:  Mr. Curtner.

2          MR. CURTNER:  Your Honor, this is a unique case in the

3  fact that there are over 20 search warrants and numerous

4  affidavits.  And so we have -- and we're trying to prepare for

5  trial and litigate any pretrial issues as efficiently as

6  possible.

7          But what we want to avoid is if we do, say, for

8  example, get statements of witnesses pursuant to a hearing on

9  the search warrant and find out that from there there may be a

10  basis for a Franks hearing, you know, then we start all over

11  again.

12          And so it would seem to me in terms of preparing the

13  defense it would be material to our pretrial litigation in order

14  to have statements that pertain to the search warrant, and if

15  there were misstatements between statements of witnesses and

16  what was provided to the magistrate judge, then that will be

17  something we could address altogether at one hearing.  That's

18  the reason we asked for it earlier rather than after filing the

19  motions and having a hearing on some of the search warrant

20  issues.

21          THE COURT:  A magistrate judge would include district

22  judge.  I think some of the warrants were issued by a district

23  judge.

24          MR. CURTNER:  Yes.

25          THE COURT:  Well, exculping means evidence tending to

1    establish a criminal defendant's innocence, and the law requires

2    the government to turn over evidence that may be material to the

3    outcome of the case.

4              The objection refers to Section 22 of the order, which

5    is on page 13.  This section does not refer to government

6    witnesses.  A reference to Jencks Act being contradictory -- let

7    me come back to that point.

8              The order does not address all of the witnesses'

9    statements, only those where an agent has used part of a

10   statement to establish probable cause in an application for a

11   search warrant.  So the thought was it would allow the defendant

12   to determine if the statement used in a search warrant affidavit

13   was falsely represented.  The order does not address whether any

14   omitted or false statement made by the affiant was deliberately

15   or recklessly made.

16             And the government acknowledges in its pleadings that

17   variation is not sufficient basis for a Franks hearing.  So it's

18   not setting it up for a Franks hearing, it's setting it up for

19   review for a request for Franks hearing.

20             The order refers to statements of a witness used, not

21   information learned from a witness or contained in an agent's

22   work product.

23             So perhaps if the government is willing to view the

24   entire statement -- if an affiant, an agent, takes a statement

25   from a witness and uses part of it in seeking a search warrant,

1  maybe when the witness testifies, if he does or she does, then

2  Jencks would cover the entire statement taken from that witness

3  related to that subject matter so that the defense at least at

4  that point would have an opportunity to see if a snippet gives a

5  false impression.

6          We all know what the media does because they have

7  limited time on the air, and people will be arguably misquoted

8  because what they said is not given in the full context.  And

9  this is just to avoid that injustice occurring so that if a

10 statement from a witness is used, that the subject matter of

11 that statement is turned over if the government has only used

12 part of it in an affidavit.

13         So if you're willing to view the Jencks as covering

14 that, perhaps that will satisfy my concern here.  And so instead

15 of providing witness statements as it states in the order, just

16 provide that information as Jencks material.

17         MS. LOEFFLER:  I want to be clear, Your Honor.  I'm

18 sorry, I'm listening closely, but I'm a little confused.

19         THE COURT:  Sure.

20         MS. LOEFFLER:  Are you saying that if the witness

21 testifies -- well, if the witness testifies, it is Jencks, and

22 we would turn over, you know, anything related to their

23 testimony.  If you're asking us to review the affidavit and

24 determine if any sentence in the affidavit came from a statement

25 of a witness and turn that over now, I do still have an

1  objection, which I can articulate.  I'm just not quite sure what

2  you're asking me.

3          THE COURT:  Well, on a second point, let's still hear

4  on that.

5          MS. LOEFFLER:  Okay.  Here's a little bit -- here's my

6  concern on this, both practically and legally.  I'm going to

7  start with the practical a little bit, and I may talk to Special

8  Agent Allison, who is the case agent, who is not the affiant,

9  but he is the lead case agent on the case, to make sure that I'm

10  not overstating anything.

11          And that is that when the affiant was listing probable

12  cause, it's a summary of sort of the whole investigation to

13  date.  I'm not -- I mean, part of the reason -- I think the law

14  doesn't ask you to do that, but to break down every sentence and

15  say, "Did this come from this witness' statement, or is this a

16  summary of what we found?" -- for example, you know, in the

17  affidavit when we determined that the white truck that we

18  believe to be Mr. Wells' went by the Coast Guard gate at, I

19  think it was 6:40 a.m., well, we looked at something to

20  determine that.  I mean, was there a witness that said -- it

21  would take quite a bit to parse through that.

22          I think that's a practical reason why -- the law, I

23  mean, requires under Franks that there's a pretty heavy showing

24  that there is a violation.  And I think to do a discovery rule

25  that says, go through every part of the affidavit and sort of

 1   assume there might be, so you turn over all this --

 2            THE COURT:  Let me address this --

 3            MS. LOEFFLER:  Okay, sorry.

 4            THE COURT:  -- point that you're making here.  Well,

 5   just -- one of the problems is, I've not read all the search

 6   warrants.  I didn't issue all of them.

 7            MS. LOEFFLER:  Right.

 8            THE COURT:  And now they're before me, which has just

 9   happened.  So I've not reviewed those.

10            The intent of this when it came out was if a witness

11   was being quoted, you know, here's what the witness said, he

12   said, "I saw," or "I did," or "I observed," whatever, it's not

13   meant to cover the summary view where an agent puts together

14   information from different sources and concludes rightly or

15   wrongly that this is what the agent believes the facts to be.

16            MS. LOEFFLER:  Okay.

17            THE COURT:  So it's more narrow than that.  It's just

18   that if you're going to quote a witness -- you know, "I saw the

19   car pass by me," the witness said, "but it was a different time

20   of day," or it was, you know, whatever else, I think that

21   information should probably be given to the defense because --

22            MS. LOEFFLER:  Well, let me go talk to Special Agent

23   Allison --

24            THE COURT:  All right.

25            MS. LOEFFLER:  -- because that may be something we can

1  resolve.

2          THE COURT:  Sure.

3          MS. LOEFFLER:  If that's what we're doing -- and I was

4  not -- actually, neither Capt. Duignan or I were on the case

5  when the warrants were issued, so of course we've read them all,

6  but I don't have them at the top of my head the way that --

7          THE COURT:  Well, you're ahead of me on that.

8          MS. LOEFFLER:  -- you know?

9          THE COURT:  Okay.

10         MS. LOEFFLER:  So just a second.  Let me talk to

11 Special Agent Allison.

12    (Whispered discussion off record)

13         MS. LOEFFLER:  All right.  I talked to the expert on

14 my team, who actually does -- was involved in all of this.  That

15 can be done.  It just -- it may take us a while because we have

16 to parse through every line of 26 and say, did this person quote

17 something, and then if we -- what you want us to do is cut out

18 that part of a statement if it's quoted and turn it over, we can

19 do that.

20         THE COURT:  All right.

21         MS. LOEFFLER:  But I may need a reasonable time to do

22 that just because we've got to parse through all the affidavits

23 one by one to do that.

24         THE COURT:  We'll be addressing the scheduling of the

25 suppression motions after we address the objections.

1    MS. LOEFFLER:  Okay.

2    THE COURT:  Mr. Curtner, anything else on that?

3    MR. CURTNER:  No, Your Honor.

4    THE COURT:  All right.  The fourth point, an objection

5    to providing defendant a list of evidence that might be subject

6    to a motion to suppress.  That refers to Section 8 on page 3 of

7    the order, which is of course Docket 140.

8    The reference to motion to suppress appears in the

9    sentence addressing notice to the defendant of the government's

10   intent to use tangible evidence at trial that might reasonably

11   be subject to a suppression challenge.  The government objects

12   to creating work product, the government objects to listing its

13   evidence.  This is not what the order says.

14   Federal Criminal Rule 12(b)(4)(B) essentially requires

15   a notice of evidence, but it is limited to what the defendant is

16   entitled to under Rule 16.  The government says it's complied on

17   page 21 of its pleading.

18   So Mr. Curtner, my question for you is what other

19   pretrial challenge to the government'S evidence at trial would

20   you seek a pretrial notice of?

21   MR. CURTNER:  I don't think there were any other

22   particular items.  You know, again, this is making sure we have

23   all the evidence we need in order to litigate any type of

24   motions.  And we've addressed quite a few issues already.  I

25   think we may have addressed everything, but we just want to make

1  sure there's just one round of pretrial litigation.

2          THE COURT:  All right.  I think because this comes

3  after the stage that it does for review, that I'm going to

4  strike the clause "or other pretrial challenge to the lawfulness

5  of its use at trial."  So I'll go ahead and strike that clause,

6  and I think that should address that objection.

7          No. 5, the last one, providing names as contact

8  information for law enforcement witnesses who participated in

9  the search warrant or seized the defendant's property or entered

10  the crime scene on certain dates.

11          Section 23 and 24 of the order, page 13, person's

12  present at the execution of a search warrant.  Section 29

13  identifies persons who have entered the homicide scene April 12

14  and 13.

15          I don't believe the defendant provided any authority

16  for these requests.  And so Mr. Curtner, I'll ask you to show

17  why those objections should not be granted.

18          MR. CURTNER:  And, Your Honor, again, this is in the

19  vein of -- and we didn't object to the Court's discovery order

20  because I think it's based on Rule 16, and it's also --

21  addresses efficiency in preparing for trial.  And I think all

22  this is -- what we've been requesting has been in the -- under

23  the rubric of material to prepare the defense.  And so we didn't

24  object to the Court's order, and I think the Court's order was

25  reasonable on this.  And so I don't have anything else really to

1  address specifically on that issue.

2          THE COURT:  Ms. Loeffler, did you want to add

3  anything?

4          MS. LOEFFLER:  The only thing I wanted to add, Your

5  Honor, was to the extent they're -- and again, what we rely on

6  is what we said, is that it didn't seem to be -- there was no

7  Rule 16 and there was other -- with regard to evidence itself,

8  on the cover of every piece of evidence, which the defense has

9  had access to, it says, you know, there's a chain of custody

10  thing.  And I believe their investigator actually took pictures

11  of some of that.

12          So to the extent it was relative to their motions,

13  that we get it by looking at it.  But the rest of it is just

14  really -- we rely on Rule 16 in the discovery rules.

15          THE COURT:  I've considered the requests that were

16  made initially in the context of bill of particular.  Bill of

17  particular is discretionary.  It's not meant to provide the

18  theory of proof, the government's theory.

19          I guess the short answer is that I don't see that this

20  information that was ordered would meet the definition of bill

21  of particular had it been brought in that vein.  So I think

22  really what was ordered here comes too close to ordering a

23  witness list, the government's witness list.

24          So I'll grant the objection and strike the request to

25  provide names and contact information for the law enforcement

1  witnesses in those three categories.  Again, I think it goes

2  beyond Rule 16, so that's the outcome of that.

3          With respect to scheduling the suppression motions --

4  well, let me take up first -- the government's requested to file

5  an over-length brief and opposition to the motion to suppress

6  physical evidence.  That was Docket 151 filed on the 18th, so

7  it's recently filed.

8          Mr. Curtner, have you had a chance to see if you have

9  any objection to their filing the over-length brief?

10          MR. CURTNER:  No, I think I told Mr. Schroder I did

11  not object to that.

12          THE COURT:  Well, now you're telling me, so I'll go

13  ahead and grant --

14          MR. CURTNER:  Yes.

15          THE COURT:  -- the government's request, and that will

16  be considered filed.

17          Then in scheduling the suppression motions for

18  hearing, the government argues that there is not a sufficient

19  showing for an evidentiary hearing.  And I think it says that

20  there are no facts, no affidavit was submitted.  Certainly legal

21  issues are raised, and the government is not suggesting the

22  Court ignore those, but simply whether there are material facts

23  in dispute that need to be taken in the form of an evidentiary

24  hearing.  Mr. Curtner, would you address that, please.

25          MR. CURTNER:  And we're discussing, first of all, the

1    motion to suppress statements?

2              THE COURT:  Yes.

3              MR. CURTNER:  Yes.  I think the -- we certainly

4    request the evidentiary hearing on that.  And I think one of the

5    primary issues is whether the Court would consider Mr. Wells in

6    custody at the time he was questioned, and I think that there

7    are witnesses that can address that.  That's the kind of factual

8    determination that would depend on an evidentiary hearing and

9    some of the witnesses that we would plan to present at that

10   time.

11             So I think an evidentiary hearing is required in order

12   to address some of the factual issues that's relevant to that

13   motion.

14             THE COURT:  Ms. Loeffler, the motion to suppress

15   statements?

16             MS. LOEFFLER:  Your Honor, I would rely on the case,

17   and I cited it in the motion hearing, I think it's Howell.

18   Unfortunately, I didn't bring in that one, but there is one

19   case, it starts with H, it's Howell, I think, that required them

20   to -- if the issue is in custody, and we address that as well,

21   but he defense provided no affidavit -- I mean, the defendant

22   was there.  They provided absolutely nothing in the form of

23   evidence.

24             And I think the case was directly on point where, in

25   the case that I cited, where they just sort of said, you know,

1  we want to fight custody, give us a hearing.  And the Court

2  said -- in that case the magistrate judge had refused to hold a

3  hearing.  The defense tried to supplement with facts and

4  affidavits, and the magistrate judge said, "No."  The District

5  Court said, "I'm not going to take that either."  And the Ninth

6  Circuit affirmed that.  They came forward with nothing.  And the

7  custody determination requires them -- we have the burden of

8  proof, they have the burden of coming forward, and they came

9  forward with nothing.

10         THE COURT:  Suppose the facts that are contained in

11  Mr. Curtner's brief were averred to by the defendant, in other

12  words that he was taken to T2 and -- well, whatever it says.  I

13  mean, I don't want to summarize it inaccurately --

14         MS. LOEFFLER:  Yeah.

15         THE COURT:  -- that would be a factual basis.

16         I think the idea of having facts is to see what's at

17  issue so that we're not doing it by surprise or ambush.  I mean,

18  if the parties know what we're trying to determine, and Mr.

19  Curtner is saying we need to determine the circumstances -- and

20  it's an unusual situation here where you have an employer who is

21  the government and they're trying to preserve the crime scene,

22  and of course to see what people know, see if there's somebody

23  on the loose that might be committing more crimes or whatever it

24  is.  I mean, there are certain reasons why they did what they

25  did, but did that, in effect, place him in legal custody for

1  Miranda purposes?

2         We probably need a factual context to make that issue,

3  because it -- I haven't researched it.  I don't know if there is

4  much law in that particular setting that we have here.  But I

5  think many times issues are fact specific, and certainly the

6  Court of Appeals and therefore the District Court, the fact

7  finding Court, would want to have a good set of facts so, you

8  know, if it's going to change, the law might change if some

9  facts change.

10        And so I'm inclined to want to have the hearing for

11 that purpose, and so I'm looking for some guidance in terms of,

12 at least on the motion to suppress statements, what else would

13 you think would be needed, what area to address for an

14 affidavit, for example, or -- it doesn't have to be the

15 defendant's, but something that puts the facts in dispute.

16        MS. LOEFFLER:  Okay, here's what I am -- and I guess

17 where the point is where I actually have an answer towards.

18        If there's a hearing on custody, it seems to be the

19 issue is when he was in custody -- was he in custody when he was

20 in that room.  And if what we were going on is saying, you know,

21 here's the people who -- it was all taped, so here's the agents

22 that were there, how did that happen.  That's one thing.

23        But to the extent if the defense is saying, well, I

24 want a hearing where I want the name of, you know, every

25 other -- and subpoena every other Coast Guard officer and ask

1   about, you know, how were they talked to and this and that, then

2   if they do that, I'm going to be filing motions in limine.

3         And what I would like is if the Court says -- I mean,

4   I think an affidavit should say, you know, here's from the

5   defendant, here's what I was told by so and so.  Here's what

6   I -- you know, was the door open, was the door closed?  You

7   know, here's why I felt like I, you know, was controlled.

8         And if he comes forward with an affidavit, we would

9   have put an affidavit in response, and if there were disputes,

10   we would have had a hearing on it.

11         But even if the Court does have a hearing, I think

12   that I would urge the Court to simply look at the law that's

13   recited first and determine that we're not going to just say,

14   well, let's subpoena everybody that, you know, was even in T2.

15         Because the issue for custody is how was he treated

16   objectively when he was being interviewed.  And I think there

17   would have to be an affidavit that said something about, since

18   he was in the place of work -- I mean, there was a homicide that

19   had happened in T1 [sic], I don't think anybody disputes that,

20   and nobody -- I'm sorry, T2, the antenna rigger station.

21         Everybody was brought up to an alternative place of

22   work, and to the extent that -- and there's no dispute about

23   that.  Everybody was interviewed, and there is no dispute about

24   that.

25         To the extent that the defendant says, "Here's

1  disputed facts about how I was treated," then I think he should

2  put something in.  And maybe there is a dispute, I just don't

3  know, because it was kind of a --

4            THE COURT:  I thought one of the disputes was the

5  government involvement and -- or investigative involvement in

6  having people placed in a certain area.  Now, I'm not saying

7  what the outcome would be, but what was the involvement of the

8  FBI, for example, or was it just the Coast Guard as an employer

9  taking certain actions?

10           MS. LOEFFLER:  You mean in terms of who was in --

11           THE COURT:  Of who was sent where and initially

12  questioned and that sort of thing.

13           MS. LOEFFLER:  I mean, I can ask my agent that, but I

14  didn't answer it in the motion because I didn't know that that

15  was being raised.  You know, the point is to me is that if they

16  had come forward with specific, I might have been able to answer

17  them.  But if you want the answer to the question, I have to

18  ask --

19           THE COURT:  Well, no, I don't want the answer now.

20           MS. LOEFFLER:  Okay.

21           THE COURT:  Mr. Curtner, based on what we're saying

22  here, could you come forward with some kind of affidavit that

23  would indicate particularly what the facts are for the hearing?

24           MR. CURTNER:  Yes, Your Honor, I can, and I can

25  probably outline some of what may be factual disputes.

1          And just to give you an example, in reviewing the

2     discovery, we're up through Bates stamps in 17,000 something,

3     and then there is some watch logs that may not on first, you

4     know, look may not be relevant to this, but then there's a small

5     reference in a watch log in the language of, you know, the Coast

6     Guard that says all personnel were ordered to stay at T1 and in

7     a secure setting -- I don't have that language with me, but as

8     an example of something we discovered as a statement that would

9     be relevant to this after we filed the motion, and it should --

10    and the Court should be aware of that, and that's what -- we

11    would perhaps bring that person in as an evidentiary hearing.

12    But I can also outline that in an affidavit for the Court as

13    well.

14          THE COURT:  All right.  I'll give you the opportunity

15    to do that, because keep in mind it's not a discovery hearing,

16    as you know, but I'm just putting that on the record, and so

17    it's not an opportunity to subpoena everybody who might know

18    anything and then see what they know about the custody issues.

19    We're trying to frame the issues and then try those issues in

20    the suppression motion.  So you'll need some time to do that.

21          And I'd like to just set a tentative date for the

22    evidentiary hearing, assuming that we're going to have that.  So

23    why don't we address that part, and then we'll come back to Mr.

24    Curtner's affidavit.

25          MS. LOEFFLER:  Your Honor, from the government, I

1  think we could be probably ready at any time, depending on what

2  the affidavit says.  The only thing I will tell you is that, to

3  the extent that it becomes relevant or somehow that we have to

4  bring in Coast Guard witnesses, I can't today tell you that I

5  can have everybody -- you know, I mean, hopefully they can

6  testify telephonically.  I'm not sure that everybody that was in

7  T1 and COMMSTA -- some of them have been transferred to other

8  places.  So there may be some logistical issues.  We may be

9  litigating the relevance of Coast Guard witnesses just because

10 of my obligation to protect their mission.  And if I have an

11 objection, we'll litigate it.

12        THE COURT:  My view on telephonic testimony is if the

13 parties agree, then I usually allow that.  I realize as a fact

14 finder it's good to view somebody personally if you're going to

15 observe their demeanor and the way they testify and such.  But

16 under circumstances, if the parties agree, I'm likely to allow

17 the telephonic testimony.

18        The tradeoff, I guess, is that Mr. Curtner would know

19 ahead of time the witness that you're going to call because he

20 would be agreeing to that witness to testify telephonically, so

21 he would have a little advanced time to prepare.

22        MS. LOEFFLER:  Yeah, and in suppression I think we

23 always tell them.  I mean, there's never -- about who -- I never

24 have any issue with that in a suppression hearing.

25        THE COURT:  All right.  I'll leave that to counsel to

explore. Mr. Curtner, perhaps we need to set a time for your
showing.

MR. CURTNER: I can have an affidavit by the end of
the week, Your Honor. And I'm looking now. If you're looking
for possible hearing dates, I would say the first two weeks in
November I'm available anytime.

MS. LOEFFLER: Let's do it sooner rather than later.
I'd simply ask that we do it sooner rather than later because
there's a lot on your plate, Judge, and I know you're planning
on retiring, so it's really your call. But I'd rather get
things sooner, as fast as you can.

THE COURT: All right. 25th then for an affidavit,
and the government certainly can file an opposition or an
opposing affidavit if you want to do that. So that gives us
that date.

With respect to -- well, I'm looking at Tuesday,
November 12th. I'd like to start 9:30. If you want, we can
start it earlier, but basically I'll devote the day to that.
There is a Federal Bar Association meeting at noon, appellate
practice and procedure with Judge Christian.

MS. LOEFFLER: I have no problem with the date of
November 12th, Your Honor.

MR. CURTNER: That's fine, Your Honor.

THE COURT: So we can take the lunch break if you want
to do that. All right, 9:30 then Tuesday, November 12. We'll

1  reserve that for the evidentiary hearing.

2         Anything else that we might take up at this time?

3         MS. LOEFFLER:  Not from me, Your Honor.

4         MR. CURTNER:  No, Your Honor, thank you.

5         THE COURT:  Thanks for your participation.

6         THE CLERK:  All rise.  This matter is now adjourned.

7  Court stands in recess until 3:30.

8         (Proceedings adjourned, 10:45:08 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved transcriber, certify that the foregoing is correct transcript from the official digital electronic sound recording of the proceedings in the above-entitled matter.

_____          ___9/10/14___
Leonard J. DiPaolo, RPR, CRR, CCP                 Date