```
 1                UNITED STATES DISTRICT COURT
                      DISTRICT OF ALASKA
 2
     UNITED STATES OF AMERICA,    )   Case No. 3:13-cr-00008-RRB-JDR
 3                                )
              Plaintiff,          )   Anchorage, Alaska
 4                                )   Monday, March 3, 2014
        vs.                       )   1:33 p.m.
 5                                )
     JAMES MICHAEL WELLS,         )   BAIL REVIEW HEARING
 6                                )
              Defendant.          )
 7                                )

 8                    TRANSCRIPT OF PROCEEDINGS
                        Pages 1 - 16, inclusive
 9
                 BEFORE THE HONORABLE JOHN D. ROBERTS
10                  UNITED STATES MAGISTRATE JUDGE

11   A P P E A R A N C E S:
     For Plaintiff:     BRYAN D. SCHRODER, ESQ.
12                      KATHLEEN ANN DUIGNAN, ESQ.
                        U.S. Attorney's Office
13                      222 W. 7th Avenue, #9
                        Anchorage, Alaska 99513
14                      Ph: 907/271-5071

15   For Defendant:     F. RICHARD CURTNER, ESQ.
                        Federal Public Defender's Agency
16                      601 W. 5th Avenue, Suite 800
                        Anchorage, Alaska 99501
17                      Ph: 907/646-3400

18                      CHARLENE HENSEL
                        U.S. Probation Office
19                      222 W. 7th Avenue, Room 48
                        Anchorage, Alaska 99513
20                      Ph: 907/271-5494

21   Court Recorder:    SUZANNETTE DAVID-WATERS
                        U.S. District Court
22                      222 W. 7th Avenue, Box 4
                        Anchorage, Alaska 99513
23                      Ph: 907/677-6102

24

25
```

**Peninsula Reporting**
110 Trading Bay Dr., Ste. 100, Kenai, AK 99611 907/283-4429

```
 1    A P P E A R A N C E S:  (Continued)

 2    Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                         Peninsula Reporting
 3                       110 Trading Bay Road, Suite 100
                         Kenai, Alaska 99611
 4                       Ph: 907/283-4429

 5

      Proceedings recorded by digital sound recording, transcript
 6    produced by stenographic transcription service.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2             ANCHORAGE, ALASKA - MONDAY, MARCH 3, 2014
 3   (Log 1:33:08)
 4      (Defendant present)
 5            THE CLERK:  All rise.  His Honor the Court, the United
 6   States District Court for the District of Alaska is now in
 7   session with the Honorable John D. Roberts presiding.  Please be
 8   seated.
 9            THE COURT:  Convene court at this time for a hearing,
10   U.S. versus James Wells, Case No. 3:13-cr-08.  Defendant and
11   counsel are present.  We may have some people on the telephone;
12   is that correct?
13            THE CLERK:  We do not have everyone on the phone
14   (indiscernible).
15            THE COURT:  All right.  We'll check the Meet Me at the
16   Bridge to see if anyone wants to participate by telephone or
17   listen in.
18            The matter before the Court is a second bail review
19   hearing requested by the defendant.  The request was made, so
20   the hearing was set.
21            I have reviewed the motion, and it indicates
22   essentially what the defense wants to present as a third-party,
23   what it is, a plan?  Why don't you summarize that plan at this
24   time, Mr. Curtner.
25            MR. CURTNER:  Yes, Your Honor.  The proposal we're
```

1  making to the Court, Your Honor, is that Mr. Wells be released
2  basically for the trial and two weeks before the trial in order
3  to -- in order to be able to prepare for trial and to assist in
4  his defense.  And so we would ask -- be asking for an actual
5  release date of March 17th of this year.
6          The proposal would be that Mr. Wells be released, but
7  it would only be in three locations, that would be in the
8  courtroom, in my office, or at his residence.  And my office is
9  willing to provide an escort, transportation, what have you,
10 between those locations to make sure that there aren't any
11 issues that might arise.
12          And in addition, we would present a third-party
13 custodian, Janet Pennington, who has testified before and she --
14 if the Court wanted to hear from her on this, she's prepared to
15 testify again today just on this particular type of release.
16          And, of course, that would include electronic
17 monitoring.  We would anticipate, if the Court were to authorize
18 this release, that we'd have two weeks in order to have a
19 Pretrial Services to visit any type -- any residence that the
20 Wellses would be living in, and that -- so those are the
21 conditions we're providing.
22          I think that since we were here last time on a bail
23 hearing, you know, at that time there was a -- it was a capital
24 case.  It's no longer a death penalty case.
25          Last time the Court considered our bail proposal

release was when we had really an unknown trial date when it was a capital case. Now we have a very known trial date at the end of this month.

It will be in Anchorage. I know one of the concerns the Court had would be, you know, going back to Kodiak where there would be many witnesses, but here there shouldn't be any contact with any witnesses because Mr. Wells would only be in three locations, and he'd always be with a third-party custodian, or if he's in transit anywhere, he'd be with somebody from my staff.

And also the reason we're making this proposal is that, as the Court is aware, we have a great deal of discovery to go through to review. Mr. Wells should have the opportunity to listen. We have over 350 audio tapes.

And what we have set up right now with the jail is that he's had access for some months to one day a week in order to listen to these tapes, and we've actually put in our own computer at the jail to access that so he has -- you know, it's very competitive to get to the law library there, but we have it set up so that he would have one day over the weekend to himself to listen to audio tapes.

Well, it's going to take a long time to listen to 350 or more audio tapes. We now have it to where it's two days a week and a couple evenings, and that's the most we can get out of the jail. But still, for example, this last weekend, there

110 Trading Bay Dr., Ste. 100, Kenai, AK 99611 907/283-4429

Case 3:13-cr-00008-SLG   Document 727   Filed 09/12/14   Page 5 of 16

was a lockdown. There was some kind of trouble with the jail, and everybody was locked down all day Saturday.

Yesterday Mr. Wells was in the law library and he was -- had access to the library for about three hours and then he actually passed out at the jail. He's got some medical issues. He went to the emergency room last night. And so he wasn't obviously able to get back to the library and listen to tapes after that.

So this would allow Mr. Wells to participate in his defense, to listen to audio tapes, to go over discovery, to consult with counsel not only through the trial, but also in prep -- at least two weeks of preparation for trial. So that's the -- that's the proposal we're making to the Court, and of course, any other conditions that the Court would want.

THE COURT: Thank you. Let me hear the government's response.

MR. SCHRODER: Your Honor, the government seeks continued detention of the defendant because he presents a danger to the community as a flight risk. We concur with the recommendation of the probation Pretrial Service officer in that regard.

I guess I'd start off by reminding the Court -- I don't think I need to remind the Court, but I will anyway -- that the presumption of 18 U.S.C. 3142(e)(3)(B) applies in this case because there is a 924(c) charge and --

THE COURT: The Pretrial Service report recognizes that?

MR. SCHRODER: Yes, sir. And this proposal, no more than the one we've seen before, overcomes that -- overcomes that particular presumption.

If anything, Your Honor, I think our point is that what this creates -- this proposal creates is a different set of hazards, and in many ways, hazards that add up to a greater risk. And I think there's obviously two keys, the flight risk and the danger.

Flight risk, wherever the defendant would be, he's going to be minutes from an international airport. I mean, in Kodiak, at least in the Kodiak proposal, he would have to go from Kodiak to Anchorage to get to anywhere else. Now that leg is taken out of it, and he would be able to go to the airport -- and I'd remind the Court, and I think it's also in the Pretrial Services report -- that the defendant has a considerable amount of airline miles as well as, you know, pension money coming in and all those things. He could be to the airport within minutes and on a plane and be gone anywhere out of Anchorage.

Second, and I think this is even -- he'd be even a greater danger to the community here in Anchorage in this particular set of circumstances. And again, the timing I think is important, as Mr. Curtner discussed. While there were witnesses in Kodiak, there's going to be even more witnesses in

Anchorage. They are going to be concentrated here at a time of trial, and they are going to be concentrated in a limited area. There's only a certain number of hotels in the area around downtown Anchorage, and the witnesses, not surprisingly, end up in those places.

So if the defendant were to decide that he wanted to try to threaten or harm one of those key witnesses, he would be able -- he would have much greater access, because not only the witnesses that come from Kodiak, but the witnesses that are not now in Kodiak, or the witnesses that never were, such as the experts, now will be -- all be in one place in Anchorage. So we think it creates even greater risk to have him here.

And even if he starts out with the idea that he's going to go ahead and litigate the case, if things go badly during the trial, and certainly it is our intent to make that happen, Your Honor, that he will be able to continue to evaluate what his situation is and at points during to the trial he may then make the decision that he wants to try to leave. So we think that this proposal has an actually increased set of risks from what there was in Kodiak.

Now, the defendant argues that the electronic monitoring or the third-party custodian will mitigate those risks, and I think our position is that it does not. And the problem is, and it's again stated in the pre -- probation officer's report, is there is a lag time.

                So if the defendant walks out the door one night in --
        well, while he's staying at this apartment and decides he's
        going to the airport, even if everything works as it should, if
        the electronic monitoring triggers, if the third-party custodian
        immediately makes the call, there's still a process that the
        probation officers have to go through in evaluating the
        situation, writing up an arrest report, finding a judicial
        officer to sign the arrest report, before that happens, and
        again, he could be on a plane.  And we've had a case in the last
        year here in the district where that's actually happened.  They
        watched -- airport policed watched somebody get on a plane
        because there was no arrest report.
                So I think the closeness to -- even if everything
        works correctly, there's still great danger that the defendant
        could be out the door, could be on an airplane, or could be out
        the door and attempting to do somebody harm before authorities,
        the probation officer and the other authorities could react in
        time to prevent that.
                There are also some other problematic aspects I think
        we'd like to point out, Your Honor.  One being that if the
        defendant is out for the course of the trial, he then now
        mingles with the rest -- the witnesses.  He -- you know, we've
        seen this commonly in white collar cases.
                Defendant goes outside, the defendant goes to the
        restroom, they're mingling with witnesses, they're mingling with

the victims' families, mingling with jurors at that point. And again, if you -- if you're talking about a case -- Mr. Curtner's pointed out it's not a death penalty case, but it's still a life-in-prison case at this point -- and if things again start going badly, there's nothing to prevent the defendant, if cornered with a juror or cornered with a witness in the bathroom, from making threats against them and trying to turn the course of the trial.

And Mr. Curtner talks about the difficulties in trial preparation, and we certainly understand that, but they do that all the time. I mean, that's how they have to work. And I'm not aware that there's any requirement or that it necessarily happens in many cases where the defendant has to look at every piece of evidence. That's what his defense team is for, in large part. Certainly they're going to identify evidence that he needs to look at, and there's going to be, you know, a decent amount, I expect that. But there's no reason why he has to -- we have to, you know, give him a special set of circumstances increasing the flight risk and increasing danger to witnesses because he has to look at every piece of evidence in the case. I just don't think that's true. And Judge Beistline has given the defense another month to do that preparation that they need.

I think that's it, Your Honor. And our point is just from a risk perspective in a case where it's a life imprisonment case, that there's too much risk of flight and of potentially

```
 1  harming witnesses in this proposal to allow the defendant to be
 2  out during a double homicide trial.
 3          THE COURT:  Do you expect the case to go to trial,
 4  from the government's point of view, when it's now set?
 5          MR. SCHRODER:  Yes, we do, Your Honor.  That's it,
 6  Your Honor.  We, again, concur with recommendation of the
 7  Pretrial Services officer that this motion be denied.
 8          THE COURT:  There are two victims' representatives
 9  statements given at Docket 332, and I believe that was served on
10  the defense.  And it would be my intention to rely upon those
11  statements as they are.  I don't need to hear from the witnesses
12  unless somebody else thinks that some additional fact might be
13  brought out, but their positions are stated in the documents,
14  and I've read those.
15          MR. SCHRODER:  The government thinks they are clearly
16  stated in the document, Your Honor.
17          THE COURT:  So I will consider those statements.  And
18  Mr. Curtner, anything else that you want to say?
19          MR. CURTNER:  Well, Your Honor, I just would point out
20  that, as you recall, Mr. Wells was under investigation for ten
21  months before he was indicted, he was in contact with their
22  office, and he provided his travel plans and arrangements to the
23  government before he did.  He's 63 years old, he has no prior
24  criminal history, he has no prior history of violence.  And so I
25  think, you know, those are also factors that speak in favor of a
```

release, and I think we overcome the presumption with all the factors before the Court.

THE COURT: There is a proposed third-party custodian, and I've reviewed the information on that person, and it appears that the proposed third-party custodian would be an acceptable person in that position for any third-party release. I don't need to hear from the third-party custodian unless somebody wants to bring out any additional facts with respect to what that person might say or do or understands what would be the obligation.

I agree with the government to the extent that the defendant does not need or have the right necessarily to review everything in the case, all the tapes and evidence that the government has produced, that's why he has a counsel and the counsel's expertise, investigators and other people, staff people that helps. So there is a certain amount of it that he might need to listen to and the defense might want him to to get their comments on it.

But as I understand what the government has done is to over-produce discovery in this case, items that are not Brady or exculpatory or impeachment evidence, they're not compelled under Rule 16, case law, or the Constitution, they're just part of the investigation. And the government says, if you want to look at it, here it is, perhaps those interviews and other people who were interviewed about the same time Mr. Wells was, and the

1  government doesn't intend to use those persons as witnesses and
2  doesn't see that the value in it from this case point of view,
3  but nevertheless have given the defense a chance to listen to
4  those tapes.  Is that somewhat an accurate statement of what --
5  where you are with it?
6           MR. SCHRODER:  I think it's accurate, Your Honor, but
7  I'd make one other point, that I think part of it was giving --
8  when you have recorded statements, it give the defense the
9  opportunity to do a Brady review, their own Brady review of the
10 materials.  I think that's why we did that.
11          THE COURT:  All right.  Well, the issue before the
12 Court is whether to release the defendant a couple weeks prior
13 to trial and/or during trial.  I've given thought to this in the
14 motions filed even before the hearing date was set.  The trial
15 has been continued, so additional time has been allowed for the
16 defense to prepare.  And I find that this is not a suitable case
17 for this type of release, third-party release on the conditions
18 proposed.
19          There are six counts with a maximum penalty of life;
20 there are two victims, not just one; the motive for the
21 homicides is not clear-cut; the record of the case suggests
22 meticulous planning to carry out the homicide and then to
23 conceal evidence of the crimes; the indictment establishes
24 probable cause as to this defendant.  There is nothing in the
25 pretrial conduct of this case, to my knowledge in my opinion,

 1  that would change that; pretrial Services doesn't support the
 2  release.  The trial continuance allows the defense more time to
 3  confer with Mr. Wells.  I think there is a significant risk of
 4  danger to the community and the flight risk that remains.  So my
 5  ruling is to deny the motion for bail application.
 6         Now if you want to renew that during the trial, the
 7  district judge can either buck it down here for consideration or
 8  take it upon himself to decide that motion.  But with respect to
 9  pretrial release, I don't see anything that changes this case.
10  We've had many cases where the stakes are a maximum of life, and
11  that the penalties are high where there is extended discovery in
12  the case, a complex case, declared complex under the law by that
13  standard, the defendants remain in jail.  There's a statutory
14  presumption, and I really don't think it's been overcome here.
15         So I understand the need and desire to work with the
16  defendant, but I think you just have to do it under the
17  circumstances of the custody here.  And it looks like you're
18  making every effort to have the jail facility accommodate you as
19  best that they are able to to allow him the opportunity to meet
20  with you and review the discovery.
21         So for those reason, my considered opinion is that the
22  bail application must be denied at this time.  So that's the
23  ruling.
24         I'll be setting other matters in this case for
25  pretrial, and I think I'll just simply set those and hope that

1  counsel can meet those deadlines.  It's my intent to keep the
2  trial date in this case as was previously reset, and so I'll
3  keep that in mind and my scheduling of what we're going to do
4  next to conclude the government's in limine motion and to
5  address the request for a new suppression hearing on the motion
6  to suppress statements.
7       So with those matters in mind, we'll be in recess.
8       MR. SCHRODER:  Thanks, Your Honor.
9       THE CLERK:  All rise.  This matter is now adjourned.
10 This court now stands adjourned subject to call.
11       (Proceedings adjourned, 1:52:23)

```
 1                          CERTIFICATION

 2

 3      I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved

 4   transcriber, certify that the foregoing is correct transcript

 5   from the official digital electronic sound recording of the

 6   proceedings in the above-entitled matter.

 7

 8   [signature]

 9   _____            ___9/10/14___
     Leonard J. DiPaolo, RPR, CRR, CCP              Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```