1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF ALASKA
2
    UNITED STATES OF AMERICA,    )    Case No. 3:13-cr-00008-RRB
3                                )
                 Plaintiff,      )    Anchorage, Alaska
4                                )    Monday, March 31, 2014
      vs.                        )    8:31 a.m.
5                                )
    JAMES MICHAEL WELLS,         )    TRIAL BY JURY - DAY 1
6                                )
                 Defendant.      )
7                                )

8                        TRANSCRIPT OF PROCEEDINGS
                         Pages 1 - 218, inclusive
9
                  BEFORE THE HONORABLE RALPH R. BEISTLINE
10                    UNITED STATES DISTRICT JUDGE

11   A P P E A R A N C E S:
     For Plaintiff:    KAREN LOEFFLER, ESQ.
12                     BRYAN D. SCHRODER, ESQ.
                       KATHLEEN ANN DUIGNAN, ESQ.
13                     U.S. Attorney's Office
                       222 W. 7th Avenue, #9
14                     Anchorage, Alaska 99513
                       Ph: 907/271-5071
15
     For Defendant:    F. RICHARD CURTNER, ESQ.
16                     Federal Public Defender's Agency
                       601 W. 5th Avenue, Suite 800
17                     Anchorage, Alaska 99501
                       Ph: 907/646-3400
18
                       PETER OFFENBECHER, ESQ.
19                     Skellenger Bender, P.S.
                       1301 5th Avenue, Suite 3401
20                     Seattle, Washington 98101-2605
                       Ph: 206/623-6501
21
     Court Recorder:   NANCY LEALAISALANOA
22                     CAROLINE EDMISTON
                       U.S. District Court
23                     222 W. 7th Avenue, Suite 4
                       Anchorage, Alaska 99513
24                     Ph: 907/677-6111
                           907/677-6103
25

**Peninsula Reporting**
**110 Trading Bay Dr., Ste. 100, Kenai, AK 99611 907/283-4429**

1    A P P E A R A N C E S:  (Continued)

2    Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                        Peninsula Reporting
3                       110 Trading Bay Road, Suite 100
                        Kenai, Alaska 99611
4                       Ph: 907/283-4429

5

     Proceedings recorded by digital sound recording, transcript
6    produced by stenographic transcription service

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

ANCHORAGE, ALASKA - MONDAY, MARCH 31, 2014

(Defendant present)

(Prospective jury panel not present)

(Log 8:31:45)

THE CLERK:  All rise.  His Honor the Court, the United States District Court for the District of Alaska is now in session, the Honorable Ralph R. Beistline presiding.  Please be seated.

THE COURT:  Okay.  Good morning.  How is everybody doing?

MS. LOEFFLER:  Good morning, Judge.

MR. CURTNER:  Good, Judge.

MR. SCHRODER:  Good morning, Your Honor.

THE COURT:  Is everybody comfortable?  Looks like that side has got chairs.  This side has got chairs.  Okay, we'll hear first from the government.

MS. LOEFFLER:  Let's see.  I have a couple of very little things, Your Honor.  Just a reminder that we have two stipulations in this case.  I don't know when you want to read them to the jury.  We -- I have the docket numbers and I have extra copies --

THE COURT:  Okay.

MS. LOEFFLER:  -- for your folder, whichever is easier for you.

1     THE COURT:  I'll take those, and I'll read them when

2 you tell me to, or ask me to.

3     MS. LOEFFLER:  Oh, okay.  Can I -- should I give you

4 the copies right now?

5     THE COURT:  Well, we'll get it up here before --

6     MS. LOEFFLER:  Okay.  The second thing is that we

7 neglected -- we should have brought this up last week.  We are

8 going to ask that we be allowed -- and I don't know what the

9 defense position is -- that Joe Sturgis, the case agent from the

10 Coast Guard Investigative Service, also be allowed to sit in in

11 the trial.

12     THE COURT:  Was that him?

13     MS. LOEFFLER:  No.  This is -- Daryl Allison is from

14 the FBI.  We had -- the FBI was the lead, and then in Kodiak, we

15 had a lead from the Coast Guard.

16     THE COURT:  Okay.  Where is this fellow?

17     MS. LOEFFLER:  He is not in right now --

18     THE COURT:  Okay.

19     MS. LOEFFLER:  -- because he's not -- we don't have

20 your order allowing him in, so he is --

21     THE COURT:  Okay.

22     MS. LOEFFLER:  -- not in the courtroom.  And if you

23 need -- we are looking up some law on it.  We haven't had some

24 chance.  We could file some --

25     THE COURT:  He's a -- he's a second case agent,

1  basically?

2           MS. LOEFFLER:  Yes, he is a second case agent.

3           THE COURT:  Okay.

4           MS. LOEFFLER:  He was the Coast Guard guy.

5           THE COURT:  Okay.

6           MS. LOEFFLER:  And the only -- third thing is I didn't

7  read it, but if you saw, there was a -- obviously there was an

8  article in the paper this morning, so I'm assuming you're

9  planning on voir diring for that, and I just --

10          THE COURT:  Okay.

11          MS. LOEFFLER:  -- wanted to bring it up.

12          We have a witness list for you that we just -- and for

13 the defense.

14          THE COURT:  Okay.

15          MS. LOEFFLER:  It's a potential witness order.

16          THE COURT:  Okay.  I'll ask you at some point to read

17 those names.

18          MS. LOEFFLER:  And we'll give you a copy --

19          THE COURT:  Okay.

20          MS. LOEFFLER:  -- just so that you can follow along

21 and to see that the trial is moving, you know, expeditiously.

22          THE COURT:  Good.

23          MS. LOEFFLER:  And we will -- when we get a chance

24 today, we will file an exhibit list --

25          THE COURT:  Good.

1          MS. LOEFFLER:  -- for everybody so you can check

2    things off as they come in.

3          THE COURT:  Good.

4          MS. LOEFFLER:  The only final thing for -- from the

5    government, Your Honor, is that I would ask whether the Court is

6    going to allow the testimony of Dr. Molloy?  And I'm happy to

7    tell you, I want to vaguely reference him in the opening.  I can

8    tell you what I'd exactly like to say.

9          THE COURT:  I thought that -- didn't I already rule on

10   that?

11         MS. LOEFFLER:  I thought you did, but you sort of said

12   something at the end and I wasn't sure, and I'm not going to

13   mention him in the opening unless I have the Court -- you know,

14   I have to be careful.  I obviously need to be careful about

15   that.  And all I'm going to reference is to his testimony to

16   disabuse a few -- some notions about what you see on TV and the

17   fact that the jury will determine characteristics.  I'm not

18   going to go into it in detail.

19         THE COURT:  Okay, that's probably fine.

20         MS. LOEFFLER:  Okay.

21         THE COURT:  Okay.  Heard from the government.  Mr.

22   Curtner.

23         MR. CURTNER:  We don't have any objection to Mr.

24   Sturgis, Officer Sturgis being in the courtroom.

25         THE COURT:  Okay.  Good.  Thank you.  Check that off

1    the list.

2              MS. LOEFFLER:  Oh.  I'm sorry, Your Honor, I forgot

3    something.

4              THE COURT:  Okay.

5              MR. CURTNER:  Maybe I shouldn't have.

6              MS. LOEFFLER:  No, no.  Scott Hopkins is the brother

7    of the decedent, victim Jim Hopkins.

8              THE COURT:  Yes.

9              MS. LOEFFLER:  And he would like to sit in on the

10   opening.  He is our second witness.  And then I think he is -- I

11   don't think he is going to sit in through -- well, anyway, he is

12   our second witness, and he is simply going to talk about his

13   brother.

14             THE COURT:  Okay.  Any objection?

15             MR. CURTNER:  No.

16             THE COURT:  Okay.  Thank you.  Mr. Curtner, your turn.

17             MR. CURTNER:  I don't think we have anything further.

18             THE COURT:  Okay.

19             MR. SCHRODER:  Come on.

20             MR. CURTNER:  Let me -- we're ready to go.

21             THE COURT:  All right.  I am going to -- and I will,

22   of course.  Ask about the newspaper article and any pre-trial

23   publicity.  I don't know why those aren't done the day after we

24   pick the jury instead of the day before, but anyhow, we have to

25   wrestle with that.  The issue there is whether or not it is

1  prejudicial.  I don't -- my brief review of the article, it

2  sounds like -- it looks like it just indicated what the jury is

3  going to know after opening statements.  But we'll see how that

4  goes.

5       MR. CURTNER:  Judge?

6       THE COURT:  Yes.

7       MR. CURTNER:  I understand there might have been a

8  story on K -- on television.

9       THE COURT:  Right.  That's -- right.  I haven't -- I

10  heard rumors of that.  I haven't -- didn't hear that.  So that

11  will apply.  I mean, I'll address that.

12       I think I've ruled on most of the motions.  I think

13  everybody should be comfortable in that regard.  Is there -- let

14  me ask Mr. Curtner, are you -- and you don't have to tell me,

15  but I'll just ask because I was reviewing the jury

16  instructions -- are you asking for a lesser included, or have

17  you decided?

18       MR. CURTNER:  No, we're not asking.

19       THE COURT:  You submitted a -- you submitted a lesser

20  included?

21       MR. CURTNER:  I don't -- right now I don't anticipate

22  asking for a lesser included.

23       THE COURT:  Okay.  Okay.  I'm just trying to get the

24  whole package together.  But at this point, there -- I'm not --

25  I'm planning on there not being a lesser included, but if the

1   parties change their mind, you just have to let me know because
2   we're always working on jury instructions.

3           What else?  I think I indicated in the pre-trial
4   conference that there is going to be a -- the government gets
5   eight preemptive challenges, defense gets 12.  We're going to
6   have to 15 jurors, three of whom will be selected as alternates
7   at the end.  We went over all at the pre-trial conference.
8   Defendant has his appropriate clothing on.  He knows he has the
9   right to testify.  I'm just talking to myself to make sure I
10  covered all the big issues.

11          If there is, as there will be, discussions with
12  potential jurors, defendant will remain at counsel tables, but
13  it's only a few feet from the discussions, and counsel are free
14  to go back and talk to their client at any time during those
15  discussions.

16          Who are all these people?

17          MR. CURTNER:  Judge, I can introduce Ms. Nancy Wells,
18  Mr. Wells' wife --

19          THE COURT:  Okay.

20          MR. CURTNER:  -- and their daughter Elizabeth.

21          THE COURT:  Okay.

22          MR. CURTNER:  And Deatrich Sheffield works in my
23  office.

24          THE COURT:  Okay.

25          MR. CURTNER:  And that's our side of the aisle.

1          THE COURT:  Okay.  We've got two other ladies.

2          UNIDENTIFIED SPEAKER:  I am with Channel 2 News.

3          THE COURT:  Okay.  Did you get the answer, you

4  can't -- about we don't want to hear that?  In other words, if

5  you -- if you can --

6          UNIDENTIFIED SPEAKER:  Hear the sketching or hear the

7  iPad?

8          THE COURT:  iPad.  I mean, I don't have a problem with

9  the iPad as long as I can't hear it.

10          UNIDENTIFIED SPEAKER:  Okay.  Oh, yeah.  It's not like

11  on clicks or anything.

12          THE COURT:  Okay.

13          UNIDENTIFIED SPEAKER:  All right.

14          MS. LOEFFLER:  The only one that -- this is Assistant

15  U.S. Attorney Bryan Wilson.

16          THE COURT:  Okay.

17          MS. LOEFFLER:  He's helped us out in some of the legal

18  work, so he's --

19          THE COURT:  Okay.

20          MS. LOEFFLER:  He won't be doing witnesses, but he's

21  helping us out.

22          THE COURT:  Okay.

23          UNIDENTIFIED SPEAKER:  (Indiscernible) for KTVA.

24          THE COURT:  I've got some crazy sketches of me.  I

25  hope you do better than that.

1          UNIDENTIFIED SPEAKER:  I'll do my best.

2          THE COURT:  Okay.  Doggone it.

3          Listen, my concern is, this room is going to fill up

4  in a second --

5          MS. LOEFFLER:  Yeah.

6          THE COURT:  -- and I don't know what we're going to do

7  with these people.  If we can get chairs in the back, because I

8  think we are going to use every single chair for jurors.  So

9  what's -- what do the parties -- how do the parties want to

10  suggest here?  Can we get some --

11          UNIDENTIFIED SPEAKER:  We can stand.

12          MS. LOEFFLER:  One --

13          THE COURT:  Well, it's going to be a long time.

14          MS. LOEFFLER:  Maybe they have -- maybe you have some

15  movable chairs somewhere that could go along the back walls or

16  something.

17          THE COURT:  Maybe we can get some movable chairs in

18  the back.  Or -- you know, everyone is entitled to kind of be

19  here, but I don't want the jurors standing, I guess that's my

20  concern.  And there will be -- that is the issue.  I'm going to

21  fill every chair here with prospective jurors.  So --

22          MR. CURTNER:  Judge, are you comfortable with using

23  today for jury selection and doing openings tomorrow?  That was

24  the schedule that we --

25          THE COURT:  Well, I'm fairly comfortable with that,

1  unless we get the jury before noon.

2          MR. CURTNER:  Well, I mean, that was the schedule we

3  had discussed.

4          THE COURT:  What do you want?  I mean, I --

5          MS. LOEFFLER:  I would like that, just because we have

6  a bunch of --

7          THE COURT:  Okay.  If that is what the parties are

8  comfortable with, that's what we'll go with, okay?

9          MS. LOEFFLER:  That's great.  Thank you, Your Honor.

10          THE COURT:  But still, my issue really is chairs.  I

11  mean, everybody --

12          MS. LOEFFLER:  Well, I could have somebody from my

13  office bring in some portable ones and you can put them against

14  the wall.

15          THE COURT:  Well, if you're going to have extra

16  people, you should provide chairs for your people.

17          MS. LOEFFLER:  They're not my people.  They're --

18          THE COURT:  Well, I'm just saying that I'm going to --

19  there is one chair here, and figure it out between now and 9

20  o'clock, because all of these chairs are going to be filled with

21  jurors, and otherwise people are going to have to stand, or

22  we'll try to provide some folding chairs.

23          MS. LOEFFLER:  Well, we'll bring in a chair for Joe

24  Sturgis, because he should sit with you on the end.  And we'll

25  go get a chair for that.

1           THE COURT:  So can we maybe -- Denali, do you know, do

2    you think there is any other chairs around so we have at least

3    these two ladies?  The press, I -- they can -- all right.

4           MS. LOEFFLER:  Hey, Your Honor, just one thing for

5    everybody's logistics.  The one I -- at least for me somewhat

6    unique thing in this case is the only witnesses in this whole

7    case that live in Anchorage are the FBI agents.

8           THE COURT:  Yes.

9           MS. LOEFFLER:  So we've brought in extra witness

10   coordination to -- for travel, and I will let the Court know of

11   any -- I think the case will go faster than we predict --

12          THE COURT:  Okay.

13          MS. LOEFFLER:  -- and we will do our best to get

14   everything lined up as fast as we can, and we brought in extra

15   help.  But we'll let you know if we get stuck on travel, because

16   they are all flying from somewhere.

17          THE COURT:  Okay, I'm focusing on chairs right now.

18          MS. LOEFFLER:  Okay.  Well, I just wanted to let you

19   know.  We'll let everybody know as we do our best.

20          THE COURT:  Well, these chairs are going to go to the

21   jurors.  We'll try to get -- we can maybe keep the doors open so

22   we can put some chairs in the whatever.  But I'm going to leave

23   here and come back at 9 o'clock and begin jury selection, unless

24   the parties have something else to talk to me about.

25          MS. LOEFFLER:  I'm just going to hand you the --

```
 1              THE COURT:  Okay, you can get that up here.
 2              MS. LOEFFLER:  -- proposed witness order and the
 3   stipulations, if I may.
 4              THE COURT:  Okay, you can just give those to Denali.
 5              Okay.  We can go off the record.
 6              THE CLERK:  All rise.  This matter stands in brief
 7   recess until 9 a.m.
 8         (Proceedings recessed, 8:42:19 a.m. until 9:11:15 a.m.)
 9                        (Prospective jury panel not present)
10              THE CLERK:  All rise.  His Honor the Court, the United
11   States District Court is reconvened.  Please be seated.
12              THE COURT:  Okay.  We got all the chairs and all the
13   people are gone.  What's going on?
14              MR. CURTNER:  I think they are waiting for the jurors
15   to come in first.
16              THE COURT:  And then see how it goes?
17              Okay.  Well, I'm a little concerned about the -- we
18   have some potential witnesses here.  What's the deal with the
19   exclusionary rule?
20              MS. LOEFFLER:  We have the two case agents here.
21              THE COURT:  I'm talking about the defense.
22              MR. CURTNER:  No, we have -- they are not with us.
23              THE COURT:  Okay.  I'm just -- I just -- with regard
24   to the exclusionary rule, I don't know a witness from a
25   non-witness.  So I expect counsel to tell me if there is a
```

1  witness sitting in the back.  That's not my job.

2          MS. LOEFFLER:  Of course.

3          THE COURT:  Okay.

4          MS. DUIGNAN:  Has it been invoked?

5          THE COURT:  It has been invoked.  Okay.  We okay?

6          MR. CURTNER:  Yes.

7          THE COURT:  I'm going to bring the jury down.  In

8  comes -- okay.  I can't tell from here.  Are those chairs

9  blocking?

10          THE CLERK:  No, they're not.

11          THE COURT:  Okay.  Sure looks like they are.

12          THE CLERK:  Do you want me to call?

13          THE COURT:  Yeah, please.

14          THE CLERK:  Okay.

15          MR. CURTNER:  It's because you're up so high.

16          THE COURT:  Maybe that's it.

17          THE CLERK:  Okay, Sherry.  Bring them on down.  Thank

18  you.

19          THE COURT:  Caroline, do you know if we are going to

20  be able to keep the front row open, or are we going to have to

21  fill the --

22          THE CLERK:  No, no, we should be fine.

23          THE COURT:  Keep the front row open?

24          THE CLERK:  The front row open and then the couple on

25  the back.

         THE COURT:  The blue chairs.  Just tell them to take
the blue chairs.

         THE CLERK:  No.  They'll see pieces of white paper on
the chairs.

         THE COURT:  Yeah.

         THE CLERK:  So it would be the first full -- this row,
and then the second row.

         THE COURT:  They are going to have to fill the second
row.

         THE CLERK:  I'm going to walk back there, and I'll
tell them where not to go.

         THE COURT:  Okay, good.  As long as someone is in
charge.  Okay.

         THE CLERK:  All right.

         THE COURT:  So I'll tell them not to sit in the front
row, and you'll be there helping.

         THE CLERK:  Yeah.  Okay.

         THE COURT:  Okay, good.

         MR. CURTNER:  Your Honor, can I just inquire about the
day?

         THE COURT:  Yep.

         MR. CURTNER:  What will the court day be from?

         THE COURT:  I'll tell them that, but basically 9 to 5.

         MR. CURTNER:  Okay.  Thank you.

                         (Prospective jury panel present)

           THE COURT:  Any seat in the place.  Any blue seat
except for the front row.  Not the front row.  Any seat in the
house -- any blue seat in the house except the front row.

           I'll be saying this for a while, because you're --
this is the right place.  Caroline, you're going to make sure
that -- any blue seat in the house except the front row.  Any
blue seat in the house except the front row.

           Okay, any seat in the house, blue seat, except the
front row.  We're going to try to keep that open.  We're going
to try to keep the front row -- keep on coming.  Any blue seat
in the house except the front row.  Any blue seat in the house
except the front row.  Caroline will kind of direct you.

           We're going to have to take any blue seat in the
house.  Try to keep the front row open for a minute.  Looks like
I see the end of the line.  Looks like we've got it.  Please be
seated.

           Good morning, ladies and gentlemen.  Welcome to the
United States District Court for the District of Alaska.  My
name is Judge Beistline, and you have been summoned as
prospective jurors in this case.  The case is entitled United
States of America versus James Michael Wells.

           We've already taken your roll, so we know who you are.
But I just want to take a moment right off the bat to thank you
for coming.  I know you've got other things you can be doing.  I
know your time is valuable.  I know that, I appreciate that, so

1  we are going to make great efforts to try to accommodate you and

2  to respect your time, et cetera.

3          But frankly, being a juror is an important right and

4  obligation that we all have, and we just appreciate -- we really

5  appreciate your being here today.

6          It is my experience that ultimately jurors, after they

7  have gone through the system, enjoy the experience as well,

8  because it is part of being an American, and it's just a very

9  important part.

10          So you have been summoned, as I said before, as jurors

11  in a criminal case, and it's -- it involves a number of charges.

12  And I'm just going to lay it right out by reading the charges

13  roughly as they are contained in the indictment.

14          The Grand Jury charges that on or about April 12th,

15  2012, in the District of Alaska -- this is located in Kodiak --

16  the defendant, James Michael Wells, willfully, deliberately,

17  maliciously, and with premeditation and malice aforethought did

18  unlawfully kill Richard W. Belisle.  That's Count 1.

19          Count 2, on or about April 12th, 2012, in the District

20  of Alaska, the defendant, James Michael Wells, willfully,

21  deliberately, maliciously, and with premeditation and malice

22  aforethought, did unlawfully kill James A. Hopkins.

23          Count 3, on or about April 12th, 2012, in the District

24  of Alaska, the defendant, James Michael Wells, willfully,

25  deliberately, maliciously, and with premeditation and malice

1    aforethought, did unlawfully kill Richard Belisle, an employee
2    of the United States engaged in or on account of the performance
3    of his official duties.

4           Count 4, on or about April 12th, 2012, in the District
5    of Alaska, the defendant, James Michael Wells, willfully,
6    deliberately, maliciously, and with premeditation and malice
7    aforethought, did unlawfully kill James A. Hopkins, an employee
8    of the United States engaged in or on account of the performance
9    of his official duties.

10          And Count 5, on or about April 12th, 2012, in the
11   district of Alaska, James Michael Wells did knowingly use and
12   carry a firearm, that is a firearm capable of firing .44 caliber
13   ammunition during and in relation to a crime of violence for
14   which he may be prosecuted in a court in the United States, that
15   is murder in violation of Title 18 of the United States Code,
16   with malice aforethought caused the death of a person, that is
17   James Hopkins, through the use of said firearms.  Said killing
18   being a murder in the first degree as defined in Title 18, U.S.
19   Code.

20          And Count 6, on or about April 12th, 2012, in the
21   District of Alaska, defendant James Michael Wells did knowingly
22   use and carry a firearm, that is a firearm capable of firing .44
23   caliber ammunition, during and in relation to a crime of
24   violence for which he may be prosecuted in a court in the United
25   States, that is murder in violation of Title 18 United States

1  Code, who in the course of said violation did thereby cause the

2  death of a person, that is Richard Belisle, through the use of

3  said firearms.  Said killing being a murder in the first degree

4  as defined in Title 18, United States Code, and that said

5  killing was willful, deliberate, malicious, premeditated, and

6  with malice aforethought.

7          Now that's what's charged in the indictment.  The

8  defendant denies these charges and has pled not guilty.  Now

9  that's basically what we are dealing with, so you can tell there

10  are -- it's a serious case and there are serious charges.

11          The trial in this case is expected to take three to

12  four weeks, so it's going to take some time.  The trial day

13  generally begins about 9 o'clock in the morning.  We take a

14  lunch break around noon, and we conclude by 4:30 to 5 in the

15  afternoon.

16          Lead counsel for the government is -- Ms. Loeffler, do

17  you want to introduce those at your table please?

18          MS. LOEFFLER:  Yes, I will.  Ladies and gentlemen, I'm

19  Karen Loeffler, U.S. Attorney.  Next to me is Bryan Schroder,

20  Assistant United States Attorney.  Next to him is Captain

21  Kathleen Duignan, Special Assistant, United States Attorney on

22  billet to our office from the Coast Guard.

23          The case agents in the case are Special Agent Daryl

24  Allison from the FBI, Special Agent Joe Sturgis from the Coast

25  Guard Investigative Service, and also Bryan Wilson, assistant

U.S. Attorney, has been assisting us on the case.

One person that isn't here you'll see is -- we have an information technology person from our office will be helping us with the evidence.  Her name is Kim Dixon and she's not here.

THE COURT:  Okay.  All right, thank you.  And Mr. Curtner is lead counsel for the defense.  And do you want to introduce the defendant and those at your table, please?

MR. CURTNER:  Yes.  Good morning, everybody.  My name is Rich Curtner.  This is -- I represent Jim Wells.  And my co-counsel is Peter Offenbecher.  Here we have Noah Boren (ph), who is an attorney in my office that is assisting us.  Bruce Johnson is our IT person and an investigator in my office, and this is Barb Brink, another investigator that's been working on this case.

THE COURT:  Okay, thank you.  So those are the people that are involved in the case.  There will be a number of witnesses, and we will identify some of those a little bit later.

Ladies and gentlemen, this case, a trial of this nature, is conducted according to rules.  And my job as the judge is kind of like a referee that just makes sure that the rules are applied, what the law is, and that the evidence is admitted appropriately.

The attorneys, their obligation is to present the evidence according to these rules, and it is the function of the

1  jury, ultimately, to determine the facts, the credibility of

2  witnesses, and the weight to be given to witness testimony, and

3  to render a true and just verdict.  It will be the jury's sworn

4  duty to accept the law as given to you by me, and apply the

5  facts as you find them to that law.  And I'll explain this in

6  much more detail as the law proceeds.

7         And we pick jurors in Alaska, whether it be in

8  Anchorage or Juneau or Fairbanks, the same way.  So you'll

9  notice I'm referring to a script.  And I do that to make sure

10 that we use the same general process wherever we are.

11        9:23:31 now in this case, the defendant, Mr. Wells,

12 has been charged by way of an indictment.  I have read the

13 indictment to you.  Those are the charges.  An indictment is

14 only a formal method of accusing a defendant of a crime.  It is

15 not evidence of any kind against the accused, and does not

16 create any presumption of guilt or permit any inference of

17 guilt, it is merely an allegation of the charge or charges

18 against the defendant, and informs the defendant of the specific

19 crimes with which he is charged.

20        The fact that an indictment has been filed against the

21 defendant may not be considered by you for any purpose, and is

22 not evidence in the case, and should not be considered as such

23 by you.

24        As I said before, to the charges contained in the

25 indictment, the defendant has pled not guilty.  This plea of not

1  guilty places on the government the burden of proving beyond a

2  reasonable doubt all of the material allegations and essential

3  elements of the crime charged.

4           So that kind of lays it out, and we've done it real

5  quick right up front to let you know what we're dealing with

6  here today.  We're going to now move to the process of

7  impanelling the jury.  This is a very important process for

8  everyone involved.  It's a crucial stage in a trial since it is

9  important to both sides to obtain a fair and impartial jury.

10          The government and the defendant are entitled to

11  jurors who approach this case with open minds and agree to keep

12  their minds open until a verdict is reached.  Jurors must be as

13  free as humanly possible from bias, prejudice, or sympathy, and

14  must not be influenced by preconceived ideas as to the facts or

15  as to the law.

16          In this case, we will have 12 jurors and three

17  alternates, and that's going to be the process.  So that will be

18  a total of 15 persons will be seated over here, but we're not

19  going to pick the alternates until the very end of the trial,

20  and that will be done randomly.  So all 15 names will be in our

21  spindle, it will be kind of mixed up, three names will be pulled

22  out, and those will be the alternates.  So we don't know who the

23  alternates are until the trial is over.

24          But we need to make sure -- so far, any questions?

25  I've been pretty straightforward, up front.  Have you all been

1   able to hear everything I've said so far?  If you don't hear

2   anything, just raise your hand.  And I'm speaking a little loud,

3   but I want to make sure everyone hears and understands.

4          Okay, I need to ask you some questions.  It has to be

5   done under oath, and it's just purely being asked of you to see

6   if you can be -- if you are the ones to serve as jurors in this

7   case.  So if you will stand, I'll have my clerk administer the

8   juror's oath.

9          THE CLERK:  Please raise your right hand.

10             PROSPECTIVE JURY PANEL SWORN

11         THE CLERK:  Thank you.  You may all have a seat.

12         THE COURT:  Okay.  Now I'm going to ask a series of

13   questions to help determine whether it would be appropriate for

14   you to serve as jurors in this case.  Once that is done, we'll

15   pick 36 names to come forward and have some more specific

16   questions for you.  No stress.  I know, I've been in -- listen,

17   I've been -- I've had to sit out there.  They called me to be a

18   juror over in state court, so I know what you're going through.

19   And they didn't pick me.

20          So I'm going to ask you some questions.  It's under

21   oath.  If there is any reason that -- you won't have to answer

22   these questions up front, that's fine, we do it all the time.

23   But they are pretty simple at first at least, and they are

24   pretty straightforward.  Here is the first question.

25          Is there any one of you who is not a citizen of the

1 United States?

2 Second question. Is there any one of you who is not

3 18 years age -- of age or older?

4 Third question. Is there any one of you who is not in

5 possession of a sound mind?

6 Okay. Turn the page. Fourth question. Is there any

7 one of you who is not in possession of all your natural

8 faculties? That is, the ability to see, hear, taste, and touch.

9 Any one of you having difficulty hearing this morning? So

10 far -- okay. So there is two people that have difficulty

11 hearing. Have you been able to hear me so far? What about the

12 other hand? Okay, we -- Nancy, do we have these devices?

13 Let me just, at some point -- we have these fancy

14 devices that we can, if you can't hear -- if you feel like you

15 can't hear, we'll put this on and that will make you hear, but

16 it won't help you outside the courtroom, okay? You can't take

17 it with you, it will be no good. So we do have devices for

18 anybody who needs any hearing assistance, please let us know.

19 Okay. Anything else, any other concerns along those

20 lines? Okay.

21 Is there any one of you who is unable to either read

22 or speak the English language?

23 Is there any one of you who is currently on probation

24 in either state or federal court?

25 Is there any one of you who currently has criminal

charges pending against you, or is in a dispute with the federal
government?  Okay, now the hands start coming up.  I've done
this before, so I know when the hands start coming up, okay?
And don't worry about it.  This is how we go through the
process.

Number 8.  Have you or anyone close to you ever been a
party in a lawsuit or court proceeding, not counting divorce,
child custody, or traffic-related matters?  So have you or
anyone close to you ever been a party, that means on one side or
the other, and been involved when -- let's see.  Been a party in
a lawsuit or court proceeding, not counting the items I
mentioned.

Now, I'm going to do it this way.  I'm going to first
look to the people on my right.  And I see one hand.

Now, what we do in this situation is we come to the
microphone, you state your name, and you say what the issue is.
Or you say, and pretty soon everybody will be doing it, "Can I
talk to you right here?"  Then we all come up here and you just
talk it into the microphone.  It's not broadcast over the whole
proceedings, it's just we hear it.  Okay?

So sir, in purple, you get to be the guinea pig.  Do
you want to go to this microphone, or do you want to come back
here?

Okay.  What you do is you just -- this microphone?
Okay.  You just state your name.

```
 1              JUROR NUMBER 10:  (Juror states name).
 2              THE COURT:  And what was the nature of your concern?
 3              JUROR NUMBER 10:  My mom sued the Municipality of
 4  Anchorage.
 5              THE COURT:  Okay.  And how long ago was that?
 6              JUROR NUMBER 10:  Ten years?
 7              THE COURT:  Okay.  Were you in -- were you a witness?
 8              JUROR NUMBER 10:  No, sir.
 9              THE COURT:  Did you get involved at all?
10              JUROR NUMBER 10:  Negative.
11              THE COURT:  Is there anything at all about that fact,
12  that process, that event, that would affect your ability to be a
13  fair juror in this case?
14              JUROR NUMBER 10:  No, sir.
15              THE COURT:  You're sure of that?
16              JUROR NUMBER 10:  Positive.
17              THE COURT:  Thank you.  You see how easy that was?
18  I'm still on the right.  Right side, middle.  All right, sir,
19  come to this microphone, or we'll go back here.
20              JUROR NUMBER 39:  This is fine.
21              THE COURT:  That's fine?  Okay.  State your name,
22  please.
23              JUROR NUMBER 39:  (Juror states name).
24              THE COURT:  Okay.  Oh, wait a second.  I said state
25  your name.  I'm having trouble here.  You can state your number.
```

1          JUROR NUMBER 39:  39.

2          THE COURT:  Okay.  Good.

3          JUROR NUMBER 39:  I was a state employee, juvenile

4   justice system, for about 25 years.

5          THE COURT:  Okay.

6          JUROR NUMBER 39:  I've testified in court many, many,

7   many, many times.

8          THE COURT:  Oh, what was your -- what kind of job did

9   you have?

10          JUROR NUMBER 39:  I worked both at McLaughlin Youth

11   Center and at the Nome Youth Facility in Nome, Alaska.

12          THE COURT:  Okay, and what was the title, your job

13   title?

14          JUROR NUMBER 39:  Various titles from youth counselor

15   1 to superintendent.

16          THE COURT:  Okay, at these various facilities?

17          JUROR NUMBER 39:  At these various facilities.

18          THE COURT:  Okay.  Anything about that experience

19   affect your ability to be a fair juror in this case?

20          JUROR NUMBER 39:  No.

21          THE COURT:  It wouldn't affect -- you wouldn't tend to

22   favor the government or the defendant?  You could be neutral to

23   both sides; is that true?

24          JUROR NUMBER 39:  That's true.

25          THE COURT:  Okay.  All right, thank you, sir.

```
 1          All right, we are still in the middle.  Let's kind of
 2   move back.  Okay, on the left, sir -- okay, on the right.  Just
 3   come on to the microphone and give it your, or we can come back
 4   here if you want.
 5          JUROR NUMBER 17:  Yeah, Number 17.
 6          THE COURT:  Good.
 7          JUROR NUMBER 17:  I'm presently involved in a personal
 8   injury lawsuit for an injury that I received just about two
 9   years ago.
10          THE COURT:  Okay.  And that's in state court?
11          JUROR NUMBER 17:  Yes.
12          THE COURT:  You that -- you have a lawyer and there's
13   a --
14          JUROR NUMBER 17:  I have a lawyer --
15          THE COURT:  And there is a lawyer on the other side.
16          JUROR NUMBER 17:  I just don't have a court date yet.
17          THE COURT:  The whole thing.  Anything about that
18   experience affect your ability to be a fair juror in this case?
19          JUROR NUMBER 17:  No.
20          THE COURT:  And if the case you're talking about is a
21   civil case in the state court, personal injury --
22          JUROR NUMBER 17:  Right.
23          THE COURT:  Okay.  And you can be fair to both sides
24   in this case?
25          JUROR NUMBER 17:  Yeah.
```

1          THE COURT:  Great.  Thank you.

2          Next.  Yes, sir.

3          JUROR NUMBER 40:  Juror Number 40.  (Juror states

4  name), and I'm a retired special agent with the Air Force Office

5  of Special Investigations.  And I've previously presented cases

6  to the U.S. Attorney's Office here, and actually went to court

7  here with the U.S. Attorney's Office --

8          THE COURT:  Okay.

9          JUROR NUMBER 40:  -- on a criminal case.

10          THE COURT:  Okay.  Now, I know people are going to

11  have all kinds of questions about that, so could you say that

12  again so I understand what you mean?  Were you a lawyer?

13          JUROR NUMBER 40:  No.

14          THE COURT:  Okay.  What were you?

15          JUROR NUMBER 40:  Retired special agent --

16          THE COURT:  Oh.

17          JUROR NUMBER 40:  -- with the Air Force Office of

18  Special Investigations.

19          THE COURT:  Okay.  So kind of like a police officer?

20          JUROR NUMBER 40:  Yes.

21          THE COURT:  Okay.

22          JUROR NUMBER 40:  Sometimes investigator with the Air

23  Force.

24          THE COURT:  Okay.  All right.  And --

25          JUROR NUMBER 40:  We would run criminal

1  investigations, felony crimes --

2              THE COURT:  Okay.

3              JUROR NUMBER 40:  -- present them to the U.S.

4  Attorney's Office here for consideration.

5              THE COURT:  Have you worked for any of the people here

6  on this table, worked with any of these people?

7              JUROR NUMBER 40:  I have briefed cases to Ms. Loeffler

8  and her staff.

9              THE COURT:  Okay.  Anything about that -- now, you're

10  the judge of this, so let us know.  Anything about that affect

11  your ability to be a fair juror in a case where the United

12  States Attorney is involved?

13              JUROR NUMBER 40:  No.

14              THE COURT:  You can be fair to both sides?

15              JUROR NUMBER 40:  I believe so, yes.

16              THE COURT:  And throughout this process, I'm going to

17  say -- I'm going to use this phrase, "Can you be a fair juror?"

18  That means can you listen to the facts and determine whether or

19  not the government has proven the charges beyond a reasonable

20  doubt, completely unaffected by any other experience that you

21  might have had in your life.  Can you do that?

22              JUROR NUMBER 40:  Yes, sir.

23              THE COURT:  Okay.  So if the government fails to prove

24  the allegations beyond a reasonable doubt, you can say so, is

25  that right?

```
1              JUROR NUMBER 40:  Yes, sir.

2              THE COURT:  Okay.  All right.  Thank you.

3         Ma'am.

4              JUROR NUMBER 23:  Number 23.

5              THE COURT:  23?  Okay.

6              JUROR NUMBER 23:  I was at -- in Wasilla/Palmer area

7    court, it was a dispute between our neighbors and I was a

8    witness for it.

9              THE COURT:  All right.  So it was a civil case

10   involving a property dispute between neighbors.  You were called

11   in to be a witness?

12             JUROR NUMBER 23:  Yes, sir.

13             THE COURT:  Is that the only thing that's on your

14   mind?

15             JUROR NUMBER 23:  Yes.

16             THE COURT:  Anything about that experience affect your

17   jury -- your ability to be a fair juror in this case?

18             JUROR NUMBER 23:  No, sir.

19             THE COURT:  You can be fair to both sides?

20             JUROR NUMBER 23:  Yes.

21             THE COURT:  Okay.  Thank you.  Still working in the

22   center.  Yes, sir.

23             JUROR NUMBER 37:  Number 37.

24             THE COURT:  Gotcha.

25             JUROR NUMBER 37:  I have been involved as a witness in
```

a variety of criminal cases.  I serve as a licensed professional
counselor.  I also run a community health center and a community
mental health center, so I have been involved in numerous Title
47 civil commitment activities.  I have also been involved as
representative of a corporation in at least one lawsuit where
the corporation was sued.  I have been involved in -- personally
in a civil matter, but it was settled out of court.

THE COURT:  So that's a lot of different things over a
period of time.

JUROR NUMBER 37:  Yes, sir.

THE COURT:  Has this all been in Anchorage, or --

JUROR NUMBER 37:  This has been in Illinois, it has
been in Alaska, both out in Wasilla as well as here in
Anchorage.

THE COURT:  Okay.

JUROR NUMBER 37:  It has been over the last 35 years.
Probably numerous times each year.

THE COURT:  Okay.

JUROR NUMBER 37:  And over 35 years I've also served
as an expert witness in both criminal and civil matters.

THE COURT:  On what subject?

JUROR NUMBER 37:  On the subject of mental health.

THE COURT:  Okay.  Anything about that experience, or
all those experiences, affect your ability to be a fair juror in
this case?

```
 1              JUROR NUMBER 37:  I do not believe so.
 2              THE COURT:  So you can be fair to the government, and
 3   you can be fair to the defendant?
 4              JUROR NUMBER 37:  I think so.
 5              THE COURT:  Okay, thank you, sir.  Still in the
 6   center.  Yes, sir.
 7              JUROR NUMBER 42:  Number 42.
 8              THE COURT:  All right.
 9              JUROR NUMBER 42:  I have been a witness for the
10   defense in a federal court in Fairbanks --
11              THE COURT:  Okay.
12              JUROR NUMBER 42:  -- and I've also been a witness for
13   prosecution in district court here in Anchorage.
14              THE COURT:  And what subject matter kind of?
15              JUROR NUMBER 42:  The one in Fairbanks was assault and
16   kidnapping, and the one here in Anchorage was an IRS matter.
17              THE COURT:  So witness, what's your specialty or
18   experience, or what would you be a --
19              JUROR NUMBER 42:  No specialty, I just happened to
20   know the people that were involved.
21              THE COURT:  Oh, you just were a person -- just a
22   witness, not an expert witness?
23              JUROR NUMBER 42:  Just a witness.
24              THE COURT:  Just called to come in and see what you
25   saw.
```

```
 1              JUROR NUMBER 42:  Yes.

 2              THE COURT:  Okay.  All right.  Anything about that

 3   affect you ability to be a fair juror in this case?

 4              JUROR NUMBER 42:  No.

 5              THE COURT:  And you don't know either -- do you know

 6   any of the parties that have been introduced?

 7              JUROR NUMBER 42:  None of them.

 8              THE COURT:  Don't know any of them?  You can -- a fair

 9   juror is someone who can listen to the evidence and determine

10   whether or not the government has proven the allegations beyond

11   a reasonable doubt.  Can you do that?

12              JUROR NUMBER 42:  I can.

13              THE COURT:  Okay.  All right, thank you, sir.

14              Still in the center.  And remember, if you ever want

15   to come back here, we've got a microphone all hooked up ready to

16   go.

17              Yes, sir.

18              JUROR NUMBER 61:  I'm Number 61.

19              THE COURT:  Yes, sir.

20              JUROR NUMBER 61:  I was involved with a very good

21   friend of mine several years back that was murdered in downtown.

22              THE COURT:  Anchorage?

23              JUROR NUMBER 61:  No, it was in Missoula, Montana.

24              THE COURT:  Okay.

25              JUROR NUMBER 61:  And I was involved in the part of it
```

1   where they were doing all the investigation because he worked
2   for my dad.
3           THE COURT:  Okay, was he a witness?  Were you a
4   witness?
5           JUROR NUMBER 61:  I was not a witness to it, but a
6   witness.  I was gathered up in court to do it as a, oh --
7           THE COURT:  You knew him that --
8           JUROR NUMBER 61:  -- a witness for his credibility and
9   that sort of thing.
10          THE COURT:  Okay, okay.  Anything about that
11  experience affect your ability to be a fair juror in this case?
12  Were you -- I've read the charges, you know what we're talking
13  about.
14          JUROR NUMBER 61:  Yeah.  That's why it was similar,
15  but I would like to not think so.
16          THE COURT:  So in other words --
17          JUROR NUMBER 61:  I think I could be a --
18          THE COURT:  I've told you what a fair juror is.  The
19  government has to prove the charges beyond a reasonable doubt,
20  and we need people to decide whether or not they did it,
21  uninfluenced by any past experiences or similarities.  Do you
22  see that?
23          JUROR NUMBER 61:  Uh-huh.
24          THE COURT:  Can you do that?
25          JUROR NUMBER 61:  I think so.

1    THE COURT:  If for any reason you change your mind or
2  get concerned, will you let us know during this process?
3    JUROR NUMBER 61:  Yeah.
4    THE COURT:  Okay.  All right.  Thank you, sir.
5    JUROR NUMBER 13:  Juror Number 13.
6    THE COURT:  All right.
7    JUROR NUMBER 13:  My mother was named on a property
8  zoning case in the Anchorage area, I probably 10, 15 years ago.
9  I was called as a witness because I walked across the property
10 as a youth.
11   THE COURT:  Okay.  Anything about that at all affect
12 your ability to be a fair juror in this case?
13   JUROR NUMBER 13:  No, sir.
14   THE COURT:  Okay.  Thank you.  Still in the center.
15 Yes, ma'am.
16   JUROR NUMBER 6:  I would like to (indiscernible).
17   THE COURT:  Good.  I wanted someone to start us off.
18   (Sidebar conference as follows:)
19   THE COURT:  All you have to do is give us your number.
20   JUROR NUMBER 6:  Number 6.
21   THE COURT:  And tell us what your concern is.
22   JUROR NUMBER 6:  My father was tried in federal court
23 in 2008.
24   THE COURT:  Okay.
25   JUROR NUMBER 6:  I was a witness in that case.

1          THE COURT:  Okay.

2          JUROR NUMBER 6:  And it was dismissed because of

3  prosecutor misconduct.

4          THE COURT:  And what was his name?

5          JUROR NUMBER 6:  Ted Stevens.

6          THE COURT:  Okay.  And so you're -- and your name is?

7          JUROR NUMBER 6:  (Juror states name).

8          THE COURT:  Okay.  Would that -- we're all familiar

9  with all that.

10         JUROR NUMBER 6:  I'm afraid -- I'd like to say that

11  I'd be fair and impartial, but I'm -- I -- I just don't know.

12         THE COURT:  I can understand.

13         JUROR NUMBER 6:  I -- yeah, I do have a bias towards

14  the government.

15         THE COURT:  Bias for or against?

16         JUROR NUMBER 6:  I'm afraid against.

17         THE COURT:  Against.  Okay.  Well, then, I knew Ted.

18  He was a great man.

19         JUROR NUMBER 6:  Thank you very much, sir.

20         THE COURT:  I'm going to have to let you go.

21         JUROR NUMBER 6:  Very good.  Thank you very much.

22         THE COURT:  Yeah.  (Indiscernible).

23         JUROR NUMBER 6:  Thank you very much.  So I can leave

24  the --

25         THE COURT:  You can just go tell the clerk that you've

1 been excused.

2     JUROR NUMBER 6:  Thank you very much.

3     THE COURT:  Okay.

4     JUROR NUMBER 6:  Thank you.

5  (End sidebar)

6     THE COURT:  Okay.  In the center still, I see that

7 hand.  Right down --

8     JUROR:  (Indiscernible).

9     THE COURT:  Okay, come on back.  Come right through

10 that door, come right across the front.  Just come right up

11 front, and come right back here.  Counsel.

12  (Sidebar conference as follows:)

13     JUROR NUMBER 21:  Juror Number 21.

14     THE COURT:  Okay.  Juror Number 21.  All right.

15     JUROR NUMBER 21:  Two things.

16     THE COURT:  Yeah.

17     JUROR NUMBER 21:  One, I'm a federal employee here in

18 this building.

19     THE COURT:  Okay.

20     JUROR NUMBER 21:  I've seen these individuals.

21     THE COURT:  Okay.

22     JUROR NUMBER 21:  Okay.  Knew who they were.

23     THE COURT:  Okay.

24     JUROR NUMBER 21:  Second, I work for the NOAA's

25 National Marine Fisheries Service.  We have a lab in Kodiak.

```
 1              THE COURT:  Okay.
 2              JUROR NUMBER 21:  I heard about the case on -- through
 3    people who live there.
 4              THE COURT:  Right.
 5              JUROR NUMBER 21:  Just talking about it.
 6              THE COURT:  Beforehand?  Not --
 7              JUROR NUMBER 21:  Yeah, yeah.  So, I mean, it's been
 8    something they talk about.
 9              THE COURT:  Sure.
10              JUROR NUMBER 21:  And the other thing is, long before
11    I got called for jury duty, I have a ticket to go to Austin,
12    Texas, for my niece's wedding April 19th.
13              THE COURT:  So I -- are you saying you want to be
14    excused?
15              JUROR NUMBER 21:  Well, it would be really good.  If
16    I -- if it's the lasting that long.  Otherwise, I'd be -- I
17    think I could be partial.  But if it's going to last that
18    long --
19              THE COURT:  Wait a second, let's start from, can you
20    be a fair juror?
21              JUROR NUMBER 21:  Yes.
22              THE COURT:  You've seen all these people.
23              JUROR NUMBER 21:  Yes.
24              THE COURT:  And you could render a verdict one way or
25    the other and not be afraid to see them again; is that true?
```

1          JUROR NUMBER 21:  Yes.

2          THE COURT:  So that's not an issue.

3          JUROR NUMBER 21:  No.

4          THE COURT:  And what about what you heard about

5    Kodiak?  Would that affect your ability to be fair?

6          JUROR NUMBER 21:  No.

7          THE COURT:  Because you know how people talk?

8          JUROR NUMBER 21:  Yes, they just talk.

9          THE COURT:  Yeah.  And we're not going to know what

10   happened till we hear the evidence in the case; right?

11         JUROR NUMBER 21:  That's right.

12         THE COURT:  So that means -- so you could be a juror

13   then, other than the fact you might want to fly to your niece's

14   wedding?

15         JUROR NUMBER 21:  Yes.

16         THE COURT:  What day of the week do you leave?

17         JUROR NUMBER 21:  The tickets are for Thursday, April

18   17th.  And I wouldn't be back till April 24th, the night of

19   April 24th.

20         THE COURT:  So one thing I can do is put your name way

21   down on the list and see where it goes.  But I'll take the

22   advice of counsel.

23         MS. LOEFFLER:  Your Honor, I have to say I've had this

24   come up before, and I think there is a legal issue with

25   unrandomizing the list.

1      THE COURT:  With what?

2      MS. LOEFFLER:  Unrandomizing the list is what I would
3  call it.  I'm not sure you can take somebody and say, I'm going
4  to take them out of the rotational.  I'm not positive on that,
5  I'd have to look at it, but it could create a legal issue.

6      THE COURT:  (Indiscernible).  Okay.  Other than that,
7  what do you think?

8      MS. LOEFFLER:  The only issue -- other than that --

9      THE COURT:  (Indiscernible).

10     MS. LOEFFLER:  -- my only issue is that I, you know,
11 I'm hoping the trial goes faster than you suggested, but I don't
12 think that the 17th of April is a realistic theory of when the
13 case will be over.  Mr. Curtner.

14     MR. CURTNER:  I would not object to her being excused,
15 Judge.

16     THE COURT:  Okay.  Well, if you want to put that on
17 me, I'll think about it. (Indiscernible).

18     MR. SCHRODER:  Do you want to ask the juror what she
19 has heard about the case?

20     JUROR NUMBER 21:  I can't remember specifically,
21 except when it was occurring, that, you know, as federal
22 employees, everybody was -- the guy -- you know, it happened at
23 the Coast Guard station.  They went into the Coast Guard
24 station.  The person, you know, was on duty at the Coast Guard
25 station.  Some people didn't know who the individual was.  This

1    is all, just -- you know, that was it.  And I just know them
2    professionally.
3            THE COURT:  (Indiscernible).
4            JUROR NUMBER 21:  No.
5            THE COURT:  Let me think about 21.
6            JUROR NUMBER 21:  Okay.
7            THE COURT:  We'll discuss it (indiscernible).
8            JUROR NUMBER 21:  And my daughter is coming over from
9    England to be with all of us at the wedding.
10           THE COURT:  Now you're adding more (indiscernible).
11           JUROR NUMBER 21:  And I haven't seen her since
12   September.  So anyway.  Okay.
13           MS. LOEFFLER:  Unless there is a way to allow her to
14   go to the wedding, I don't have a problem with removing her.
15   And I think we're not going to be done by the 17th of April.  I
16   think we'll be close, but not --
17           THE COURT:  I don't know what's going to happen.
18           MS. LOEFFLER:  Well, you're going to have a lot of
19   that, but --
20           THE COURT:  So I'm going to (indiscernible).
21      (End sidebar)
22           THE COURT:  Okay.  Anyone else in the center?  No one
23   else in the center?  Let's go to the left.  Okay, we'll start --
24           JUROR NUMBER 31:  Number 31.  About eight, nine years
25   ago I was in a civil lawsuit over a contractual dispute on a

construction project.

THE COURT:  Anything about that affect your ability to
be a fair juror in this case?

JUROR NUMBER 31:  No.

THE COURT:  Okay.  Thank you.

JUROR NUMBER 54:  54.

THE COURT:  Yes, sir.

JUROR NUMBER 54:  It was about 15 years ago.  It was
just a personal injury lawsuit.

THE COURT:  Okay.  Anything about that affect your
ability to be a fair juror?

JUROR NUMBER 54:  No, sir.

THE COURT:  Okay.  Anyone else on the left?  All
right.  Back here.  Okay.

(Sidebar conference as follows:)

JUROR NUMBER 30:  When you say close to you, are you
talking about any, like, boyfriends?  Because I'm currently --
currently dating someone who --

THE COURT:  Okay, let's start with your number.

JUROR NUMBER 30:  Oh, 30.

THE COURT:  30.  Okay.

JUROR NUMBER 30:  I'm currently dating someone who
was, in my opinion, falsely accused of assault.

THE COURT:  Okay.

JUROR NUMBER 30:  (Indiscernible) kicked his wife out

1   of jail for lying.  But anyway.

2           THE COURT:  Okay, so what you just said is you're

3   currently dating a gentleman who was, in your opinion --

4           JUROR NUMBER 30:  Right.

5           THE COURT:  -- falsely accused of assault.

6           JUROR NUMBER 30:  Sexual assault.

7           THE COURT:  Sexual assault.

8           JUROR NUMBER 30:  In another state.

9           THE COURT:  In another state.  What is his name?

10          JUROR NUMBER 30:  John Pelaez.

11          THE COURT:  Can you spell that last name?

12          JUROR NUMBER 30:  P-a-l-e -- P-e-l-a-e-z.

13          THE COURT:  Okay.  All of this occurred in another

14  state?

15          JUROR NUMBER 30:  Yeah.

16          THE COURT:  Okay.

17          JUROR NUMBER 30:  And it was 15 years ago.

18          THE COURT:  Oh, this was --

19          JUROR NUMBER 30:  Long time ago.

20          THE COURT:  Okay.  And does that affect your ability

21  to be a fair juror in this case?

22          JUROR NUMBER 30:  No.

23          THE COURT:  Okay.  Any questions?

24          MS. LOEFFLER:  No, I don't have any other --

25          MR. CURTNER:  No, Your Honor.

1        THE COURT:  Anything else so we don't have to keep
2    coming back here?  Anything else on your mind why you can't
3    serve?
4        JUROR NUMBER 30:  Not why I can't serve.
5        THE COURT:  You've been dating a fellow -- that fact
6    that you start -- you said falsely charged --
7        JUROR NUMBER 30:  Well, I know the whole story.  And
8    she admitted to falsely accusing him, but he had bad counsel.
9        THE COURT:  Anything about that, anything about that
10   affect your ability to be a fair juror?
11       JUROR NUMBER 30:  No, they called me, and so I
12   (indiscernible) for a reason.
13       THE COURT:  Okay.  What did -- but would you hold that
14   against the government that he was accused?
15       JUROR NUMBER 30:  No, no.  Because that was --
16       THE COURT:  It's not only 15 years in the past, but he
17   had poor counsel.
18       JUROR NUMBER 30:  No.  The circumstances, I know all
19   the -- you know.  So I was able to -- I understand what that
20   whole issue was about, and that was just about his children,
21   so --
22       THE COURT:  So any of the questions for this witness
23   while she's standing here?  What do you do right now?
24       JUROR NUMBER 30:  Me?  I work for the Alaska Railroad.
25       THE COURT:  Okay.  What does he do?

 1          JUROR NUMBER 30:  He is a city operation manager for a

 2   hotel.

 3          THE COURT:  Anything about either of those employments

 4   or anything likely to affect your ability to be a fair juror?

 5          JUROR NUMBER 30:  No.

 6      (End sidebar)

 7          THE COURT:  All right, next.  We had someone else back

 8   here on the left.  Okay, back here?  Okay.

 9      (Sidebar conference as follows:)

10          THE COURT:  Counsel.  You get this spot right here.

11   Okay, and your number is --

12          JUROR NUMBER 49:  49.

13          THE COURT:  49.  Okay, what (indiscernible).

14          JUROR NUMBER 49:  Okay, so roughly five years ago I

15   was charged with a misdemeanor for criminal mischief and

16   trespassing.

17          THE COURT:  Where was that?

18          JUROR NUMBER 49:  Palmer/Wasilla area.

19          THE COURT:  And what happened then?

20          JUROR NUMBER 49:  I ended up doing community service.

21          THE COURT:  Okay.

22          JUROR NUMBER 49:  And I believe the trespassing was

23   dropped, if I remember right.

24          THE COURT:  Did you go to jail?

25          JUROR NUMBER 49:  No.

```
 1              THE COURT:  Were you represented by an attorney?
 2              JUROR NUMBER 49:  Yeah.
 3              THE COURT:  Who represented you?
 4              JUROR NUMBER 49:  Denali Law was the law firm.  I
 5  don't remember the attorney.
 6              THE COURT:  A private law firm?
 7              JUROR NUMBER 49:  Yes.
 8              THE COURT:  It was a state court in -- you said
 9  Wasilla?
10              JUROR NUMBER 49:  Palmer.
11              THE COURT:  Palmer, okay.  And what did you allegedly
12  (indiscernible) apparently did it because you were --
13              JUROR NUMBER 49:  It was a family dispute.  I was
14  defending a little brother.
15              THE COURT:  Family dispute.
16              JUROR NUMBER 49:  Kind of.  And I decided to kick in
17  his roommate's bedroom door.  Yeah.
18              THE COURT:  (Indiscernible) to get something out of
19  there?
20              JUROR NUMBER 49:  It was more just being mean.
21              THE COURT:  Just being mean.  Okay.
22              JUROR NUMBER 49:  Yeah, I don't really know exactly
23  why.
24              THE COURT:  Okay.
25              JUROR NUMBER 49:  Since then I -- I also have
```

```
 1   relationships with Wasilla Police Department.

 2            THE COURT:  What does that mean?

 3            JUROR NUMBER 49:  Well, I've got a baby with one

 4   officer, reserve officer.

 5            THE COURT:  Okay.

 6            JUROR NUMBER 49:  And I've got pretty close family

 7   friends through the police department as well.

 8            THE COURT:  Okay, so you say friends of the police

 9   officers?

10            JUROR NUMBER 49:  Yes.

11            THE COURT:  And you have a child that's a --

12            JUROR NUMBER 49:  Uh-huh.

13            THE COURT:  -- child of a police officer?

14            JUROR NUMBER 49:  Yes.

15            THE COURT:  Not your husband, apparently, is that

16   right?

17            JUROR NUMBER 49:  He's a reserve officer.

18            THE COURT:  Reserve officer.

19            JUROR NUMBER 49:  Yes.

20            THE COURT:  Okay.  But he's not -- you're not married

21   to him?

22            JUROR NUMBER 49:  No.

23            THE COURT:  What else should we know?

24            JUROR NUMBER 49:  Well, my brother, little brother, he

25   over the last few years has gotten felony eludes.  He's had some
```

1  issues with --

2          THE COURT:  Okay, and what's his last name?

3          JUROR NUMBER 49:  (Juror states name), same as mine.

4          THE COURT:  Okay, (Spells name).

5          JUROR NUMBER 49:  (Spells name), yes.

6          THE COURT:  Okay.  Well, there's all kinds of issues

7  here.

8          JUROR NUMBER 49:  Oh, yeah.

9          THE COURT:  Can you be a fair juror?

10         JUROR NUMBER 49:  I would like to say that yes, I

11 could listen to all the evidence and judge accordingly.

12         THE COURT:  Uh-huh.

13         JUROR NUMBER 49:  At the same time, being that I am

14 very biased because of what I do --

15         THE COURT:  What do you do?

16         JUROR NUMBER 49:  I'm a loss prevention agent for

17 Sportsman's Warehouse.

18         THE COURT:  Okay.

19         JUROR NUMBER 49:  So I see criminals every day.

20         THE COURT:  So you watch people shoplifting.

21         JUROR NUMBER 49:  People shoplifting, every day.

22         THE COURT:  It's your job.

23         JUROR NUMBER 49:  Every day.

24         THE COURT:  They do that?

25         JUROR NUMBER 49:  Yep.

1                THE COURT:  Every day?

2                JUROR NUMBER 49:  Oh, yeah.  So that's what I do every

3  day.

4                THE COURT: (Indiscernible) you can be fair to both

5  sides?

6                JUROR NUMBER 49:  I'd like to say yes, but at the same

7  time, it's -- you're in the hot seat for a reason.  Obviously

8  you're here because you have a past, you know.

9                THE COURT:  Can you be fair to both sides, or are you

10 going to carry these biases that will affect your -- it's not a

11 right and wrong answer.

12               JUROR NUMBER 49:  Right, right.  I can -- I can try to

13 be fair.  I can be fair.

14               THE COURT:  You keep saying "try," but --

15               JUROR NUMBER 49:  I know.  I know.  It's --

16               THE COURT:  Let me ask this.  Do you have any

17 questions for this juror?

18               MS. LOEFFLER:  No, I don't.

19               MR. CURTNER:  It sounds like your bias would be in

20 favor of the government, the prosecutor, and against the

21 defendant because of your experience, and would your

22 relationship?

23               JUROR NUMBER 49:  What I've done in the past, you

24 know, and everything, you know, I did it, obviously they knew

25 that I did it.  I wasn't going to deny anything.  I was there

1  for a reason.

2          MR. CURTNER:  Do you think you have (indiscernible)

3  innocence, would somebody -- would the government have to

4  convince you beyond a reasonable doubt of these charges?  They

5  would -- if they just thought he might be guilty, that would be

6  enough?

7          JUROR NUMBER 49:  Yeah, that would be enough.

8          THE COURT:  (Indiscernible) can you go walk out the

9  door here, speak to the clerk, and tell her you're being

10  excused.  Okay?  Thank you.

11      (End sidebar)

12          THE COURT:  All right.  Next.  Next on the left.

13  Okay.

14          All right.  Counsel, back here.

15          MR. CURTNER:  Can I just stay here?

16          THE COURT:  Yeah, that's fine.

17          MS. LOEFFLER:  We should just do that.

18      (Sidebar conference as follows:)

19          THE COURT:  Right here, sir.  And your number is 19.

20  Yes, sir, and what was your concern?

21          JUROR NUMBER 19:  My son was just sentenced to a --

22  proven guilty on a felony for domestic violence.

23          THE COURT:  In state court?

24          JUROR NUMBER 19:  State court.

25          THE COURT:  Where?

```
 1              JUROR NUMBER 19:  Here in Alaska.
 2              THE COURT:  In Anchorage?
 3              JUROR NUMBER 19:  Yes.
 4              THE COURT:  Okay.
 5              JUROR NUMBER 19:  And he is waiting for his sentencing
 6   right now.  And I just, at this time, don't feel that I would be
 7   a good selection for a jury thing at this time.
 8              THE COURT:  You don't think you could be fair to both
 9   sides?
10              JUROR NUMBER 19:  I don't think so, not right now.
11              THE COURT:  Based on your family's experience?
12              JUROR NUMBER 19:  Yes, sir.
13              THE COURT:  Okay, well just go tell the clerk you've
14   been excused then.
15              JUROR NUMBER 19:  All right.  Thank you.
16      (End sidebar)
17              THE COURT:  Let's see what we have here.  Anyone else?
18   No one else back here?  Okay.
19              All right.  Well, don't worry.  You've got plenty more
20   questions and plenty more opportunities to come back here.  Are
21   you ready for the next question?
22              Well, this one is pretty easy.  Have you or anyone
23   close to you ever worked as a law enforcement officer, which
24   would include probation officers or correction officers or
25   investigators for defense organizations, or working for the IRS
```

1  or the Coast Guard or anything else of that nature?

2          I'm sure that there's many of you that have, so if

3  we'll start on the right, and you just come to the microphone

4  and tell us what you do.  Yes, ma'am.

5          JUROR NUMBER 2:  Number 2.  (Juror states name).  I

6  work for the Department of Public Safety --

7          THE COURT:  Okay.

8          JUROR NUMBER 2:  -- as a criminal justice technician.

9          THE COURT:  For -- in Anchorage?

10          JUROR NUMBER 2:  Yes.

11          THE COURT:  And who is your employer?

12          JUROR NUMBER 2:  State of Alaska.

13          THE COURT:  Okay, and so your office is where?

14          JUROR NUMBER 2:  Anchorage.  Tudor.

15          THE COURT:  Okay, over on Tudor.

16          JUROR NUMBER 2:  At the trooper building.

17          THE COURT:  Okay, so you work out there at the

18  troopers place?

19          JUROR NUMBER 2:  Yes.

20          THE COURT:  What do you do?

21          JUROR NUMBER 2:  I enter criminal records all day

22  long.

23          THE COURT:  So you enter -- you're a technician,

24  right?

25          JUROR NUMBER 2:  Uh-huh.

1          THE COURT:  Anything about that employment affect your
2   ability to be a fair juror in this case?
3          JUROR NUMBER 2:  Probably not.
4          THE COURT:  So you can listen to the evidence, and if
5   the government fails to prove the charges beyond a reasonable
6   doubt, you can say not guilty; true?
7          JUROR NUMBER 2:  Uh-huh.
8          THE COURT:  On the other hand, if the government
9   proves the case beyond a reasonable doubt, you can say guilty;
10  is that true?
11         JUROR NUMBER 2:  Uh-huh.
12         THE COURT:  And the fact that you might see troopers
13  all the time, would that be a factor that we should be concerned
14  with?
15         JUROR NUMBER 2:  I don't work with the troopers.  I'm
16  in the same building --
17         THE COURT:  You're in the same building, but --
18         JUROR NUMBER 2:  -- but I don't have, you know, daily
19  contact with them.
20         THE COURT:  You're a -- what do you call this now?
21         JUROR NUMBER 2:  Office data entry, yeah.
22         THE COURT:  Okay.  All right, I see.  So you can be
23  fair to both sides, and if a trooper or a police officer or
24  someone is called to testify, you would give their testimony the
25  same weight that you would any other person?

1          JUROR NUMBER 2:  I don't think so.

2          THE COURT:  What does that mean?

3          JUROR NUMBER 2:  I mean, I wouldn't -- I would be

4    impartial.

5          THE COURT:  Oh, you'd be impartial.  You would treat

6    their testimony just like you would anyone?

7          JUROR NUMBER 2:  Yeah.

8          THE COURT:  Okay.  All right.  Thank you, ma'am.

9          Next on the right.

10          JUROR NUMBER 50:  Juror Number 50.

11          THE COURT:  Yes, sir.

12          JUROR NUMBER 50:  I am an active duty U.S. Public

13    Health Service officer.

14          THE COURT:  What does that mean?

15          JUROR NUMBER 50:  I'm a pharmacist for the Indian

16    Health Service.

17          THE COURT:  Okay.

18          JUROR NUMBER 50:  I just wanted to let you know I'm

19    active duty.  I don't know if that means anything for you.

20          THE COURT:  That doesn't mean anything --

21    congratulations.

22          JUROR NUMBER 50:  Okay.  All right.

23          THE COURT:  But would that affect your ability to be

24    fair?

25          JUROR NUMBER 50:  No.

1          THE COURT:  Because you're a pharmacist, you see all
2     kinds of different people?

3          JUROR NUMBER 50:  Correct.

4          THE COURT:  You happen to be active duty, so it's --
5     and with what organization again?

6          JUROR NUMBER 50:  U.S. Public Health Service.

7          THE COURT:  Okay.  And --

8          JUROR NUMBER 50:  So our sister agency is the Coast
9     Guard.  That is my point.

10          THE COURT:  Okay, that's the connection, okay.

11          JUROR NUMBER 50:  Yes.

12          THE COURT:  But would that affect your ability to be a
13     fair juror in this case?

14          JUROR NUMBER 50:  I don't think so.

15          THE COURT:  What do you mean you don't --

16          JUROR NUMBER 50:  I believe that my duty would be to
17     be fair and honest, so I --

18          THE COURT:  You could do that.

19          JUROR NUMBER 50:  I could do that.

20          THE COURT:  Okay.  Good, thank you.

21          Next on the right.  Yes, sir.  Number 10.  I can see
22     that from here.

23          JUROR NUMBER 10:  I work as a clerk at the Superior
24     Court just up the block.

25          THE COURT:  Okay.  Over across town here?

```
1              JUROR NUMBER 10:  Over across town.

2              THE COURT:  And so you work in the clerk's office?

3              JUROR NUMBER 10:  Correct.

4              THE COURT:  Okay.  So you see lawyers and judges and

5   people all the time.

6              JUROR NUMBER 10:  Some faces in here look familiar.

7              THE COURT:  Some of these faces look familiar?

8              JUROR NUMBER 10:  More on this side than this side.

9              THE COURT:  Okay.  More on your left than your right?

10             JUROR NUMBER 10:  More on my left than my right.

11             THE COURT:  And there's more -- that's the side of the

12  defense.  Well, anything about that affect your ability to be

13  fair?

14             JUROR NUMBER 10:  Not at all.

15             THE COURT:  I mean, regardless of who is sitting on

16  what side of the courtroom, you can be fair to people on both

17  sides on the courtroom; true?

18             JUROR NUMBER 10:  Without a doubt.

19             THE COURT:  And if the government proves its case, you

20  can say guilty; and if it fails to prove its case, you can say

21  not guilty.

22             JUROR NUMBER 10:  Correct.

23             THE COURT:  Okay.  Thank you.

24             Okay.  Still on the right.  Yes, ma'am.

25             JUROR NUMBER 26:  Juror 27.
```

```
 1              THE COURT:  Twenty -- don't tell me 27 when it's 26.
 2              JUROR NUMBER 26:  All right, 26.
 3              THE COURT:  I can see that number.
 4              JUROR NUMBER 26:  My father is a retired Alaska state
 5  trooper.
 6              THE COURT:  Okay.  And what is his name?
 7              JUROR NUMBER 26:  Scott Jones.
 8              THE COURT:  Anything about that affect your ability to
 9  be a fair juror in this case?
10              JUROR NUMBER 26:  No, sir.
11              THE COURT:  How long ago did he retire?
12              JUROR NUMBER 26:  Oh, over ten years.
13              THE COURT:  Okay, so a long time ago he was a state
14  trooper.  He's retired.  What do you do now?
15              JUROR NUMBER 26:  I work as a kennel tech at animal
16  control.  So I guess I work with animal control officers too.  I
17  don't know if that would apply.
18              THE COURT:  Well, tell us, would it, would that affect
19  your ability?
20              JUROR NUMBER 26:  No, sir.
21              THE COURT:  There may be police officers, there may
22  be -- I don't know, who knows what kind of people will testify.
23  And I like jurors who can treat everyone's testimony the same,
24  regardless of what their job might be.  Can you do that?
25              JUROR NUMBER 26:  Yes, sir.
```

1          THE COURT:  And regardless of family history,

2    regardless of the fact that your dad may have been a trooper

3    many years ago, you can be fair to both sides.  And you wouldn't

4    hold that against the defense in any way, would you?

5          JUROR NUMBER 26:  No, sir.

6          THE COURT:  Okay.  Thank you.

7          JUROR NUMBER 22:  Forgot my number.  22.

8          THE COURT:  Yes.

9          JUROR NUMBER 22:  My mom worked with the state

10   troopers when I was in elementary school.  My stepfather has

11   been a cop and a sheriff and a police officer, and retired as a

12   correctional officer about five years ago.

13         THE COURT:  And where did all this occur?

14         JUROR NUMBER 22:  He was a sheriff in Williamsburg,

15   Virginia.  Everything else was in Alaska.

16         THE COURT:  Okay.

17         JUROR NUMBER 22:  Wildwood is where he did 17 or 18

18   years.

19         THE COURT:  Okay, as an officer.

20         JUROR NUMBER 22:  Yeah, correctional officer.

21         THE COURT:  Correction.  Okay, anything about that

22   affect your ability to be a fair juror in this case?

23         JUROR NUMBER 22:  No.

24         THE COURT:  Because that's their experience, that's

25   not your experience.

1          JUROR NUMBER 22:  No.  It taught me more to be fair,

2    actually.

3          THE COURT:  Okay.  So you can be fair to both sides,

4    and I've gone over it again and again.  The fact that you've got

5    relatives that have some law enforcement contact would not

6    affect your ability to be fair.  You could be fair to the

7    defense just as you would to the government?

8          JUROR NUMBER 22:  Yes.

9          THE COURT:  Okay.  All right.  Thank you.

10          Okay, that takes care of everyone on the right.  Now

11    how about the center?  Can we move -- yes, sir.  Well, you've

12    been able to hear pretty well.

13          JUROR NUMBER 39:  39.

14          THE COURT:  Okay.

15          JUROR NUMBER 39:  The same answer as before, except I

16    also subbed as a probation officer, did short periods of duty in

17    Fairbanks --

18          THE COURT:  Okay.

19          JUROR NUMBER 39:  -- Juneau, Anchorage, Nome.

20          THE COURT:  Okay.  So, you know, you know better than

21    I that -- maybe not better -- as well as I, that we are looking

22    for fair jurors.  And the question is can you be fair to both

23    sides?

24          JUROR NUMBER 39:  I can.

25          THE COURT:  Okay.  All right, thank you, sir.  Yes.

```
 1              JUROR NUMBER 5:  Number 5.
 2              THE COURT:  Yes.
 3              JUROR NUMBER 5:  I work for the state of Alaska,
 4   Alaska State Parks.  My direct supervisor is a law enforcement,
 5   park ranger.
 6              THE COURT:  Okay.
 7              JUROR NUMBER 5:  And that's my case.
 8              THE COURT:  What -- what area does your work cover,
 9   geographical?
10              JUROR NUMBER 5:  My work covers back country trails.
11              THE COURT:  Okay.  Back country trails?
12              JUROR NUMBER 5:  Yes.
13              THE COURT:  So you're out -- you don't -- you may live
14   in town, but you don't work in town?
15              JUROR NUMBER 5:  I -- well, I do go home every night.
16              THE COURT:  Okay.
17              JUROR NUMBER 5:  But yeah, I deal with trail crews and
18   work that needs to be done dealing with back country trails in
19   Kachemak Bay State Park.
20              THE COURT:  Okay.  So you're a State of Alaska
21   employee?
22              JUROR NUMBER 5:  Correct.
23              THE COURT:  Anything about that affect your ability to
24   be a fair juror in this case?
25              JUROR NUMBER 5:  No.
```

```
 1            THE COURT:  Okay.  You can be fair to both sides.

 2            JUROR NUMBER 5:  Yes, sir.

 3            THE COURT:  Okay.  Thank you.

 4            Yes, ma'am.  One can take the microphone on the right,

 5  one can take the microphone on the left, and who gets there

 6  first gets to go first.  Yes, ma'am.

 7            JUROR NUMBER 52:  Juror Number 52.

 8            THE COURT:  Yes.

 9            JUROR NUMBER 52:  I served in the United States Coast

10  Guard from 2004 to 2008.

11            THE COURT:  And where were you stationed?

12            JUROR NUMBER 52:  I was stationed on the RUSH outside

13  of Honolulu, Hawaii.

14            THE COURT:  Okay.  You ever been to Kodiak?

15            JUROR NUMBER 52:  Once.

16            THE COURT:  And what were you doing in Kodiak?

17            JUROR NUMBER 52:  Our ship was up here for patrol.

18            THE COURT:  Okay, so did you go into the -- go into

19  town, or were you just on the ship, or did you go to the base,

20  or --

21            JUROR NUMBER 52:  We spent a day in town before we

22  moved on to Dutch Harbor.

23            THE COURT:  That's about it?

24            JUROR NUMBER 52:  Yeah.

25            THE COURT:  So you don't know anything at all about
```

1  the Coast Guard base at Kodiak then.

2           JUROR NUMBER 52:  I do know about it.  I had a friend

3  who was stationed on Kodiak.

4           THE COURT:  Okay.  Anything about what you know affect

5  your ability to be a fair juror in this case?

6           JUROR NUMBER 52:  No.

7           THE COURT:  You can be fair to both sides?

8           JUROR NUMBER 52:  Yes.

9           THE COURT:  So all you're telling us is that you in

10 the past were -- were you a member of the Coast Guard, is that

11 what you --

12          JUROR NUMBER 52:  Yes.

13          THE COURT:  Okay.  And what -- did you have a rank?

14          JUROR NUMBER 52:  I was operations specialist third

15 class.

16          THE COURT:  And you served a, you said, a four-year

17 term?

18          JUROR NUMBER 52:  Yes.

19          THE COURT:  And the fact that people involved in this

20 case might also be involved with the Coast Guard, would that

21 affect your ability to be a fair juror in this case?

22          JUROR NUMBER 52:  No.

23          THE COURT:  Be fair to both sides?

24          JUROR NUMBER 52:  Yes.

25          THE COURT:  Okay.  All right, thank you.

1           Yes, ma'am.

2           JUROR NUMBER 16:  Could I have a sidebar, please?

3           THE COURT:  Yes, absolutely.

4      (Sidebar conference as follows:)

5           THE COURT:  Come right up here.  (Indiscernible).  And

6  you're Number --

7           JUROR NUMBER 16:  Everybody here?

8           THE COURT:  Yes.  Number 16.

9           JUROR NUMBER 16:  Yes, Number 16.  And I think it's my

10 duty and my right to serve fairly on a jury, but I think I don't

11 want to contaminate the jury for either side, and/or the case on

12 either side.  And it's fair to tell you my husband is in your

13 courtroom more than he is home.

14          THE COURT:  In my courtroom?

15          JUROR NUMBER 16:  Yes.  He works with the marshals.

16          THE COURT:  Okay, well --

17          JUROR NUMBER 16:  And I feel like it would be fair --

18          THE COURT:  So your husband is the OCS Marshal?

19          JUROR NUMBER 16:  No, he is -- he works this winter --

20 he is the tie man.

21          THE COURT:  Okay.

22          JUROR NUMBER 16:  So, and he does work with -- he's in

23 here quite a bit with the marshals.  And I don't feel that --

24          THE COURT:  You don't think you could be fair given

25 all of that?

```
 1                JUROR NUMBER 16:  Yes, I could.

 2                THE COURT:  Oh, you could.

 3                JUROR NUMBER 16:  That's what I was going to say.  I

 4  don't feel I would be influenced any by him being in here

 5  anyway.

 6                THE COURT:  Well, is he in here now?

 7                JUROR NUMBER 16:  No, he's not in here today.

 8                THE COURT:  Have you seen him here today?

 9                JUROR NUMBER 16:  No, he's not here today.  He's off

10  today.

11                THE COURT:  Okay.  He might be here tomorrow?

12                JUROR NUMBER 16:  He might.

13                THE COURT:  That would be unique, having a juror and a

14  CSR.

15                JUROR NUMBER 16:  Well, that would be unique.  But I

16  mean, it wouldn't affect my thoughts no matter -- you know, he

17  doesn't have -- he doesn't come home.  We don't talk shop at

18  home.  I don't talk medical and he doesn't talk law.  So we just

19  do our own thing.

20                THE COURT:  What's your job?

21                JUROR NUMBER 16:  I'm a retired medical EMT and a

22  physician's assistant.

23                THE COURT:  See, this is a small town.

24                JUROR NUMBER 16:  Uh-huh.

25                THE COURT:  You should see when I try cases in Ft.
```

1    Yukon.

2              JUROR NUMBER 16:  Well, by the way, they comment on

3    his ties in here, and I pick them out, so I get the credit.

4              THE COURT:  Okay.

5              JUROR NUMBER 16:  But I could be fair on both sides, I

6    think.  With all the -- but I wouldn't want to contaminate the

7    case, that's the problem.

8              THE COURT:  No, I understand.  No.  We've got to think

9    about it.

10             MS. LOEFFLER:  So you didn't have any facts on this

11   case that would -- and you would weigh it as a juror?  Okay.

12   And I'm assuming your husband would know not -- you guys

13   wouldn't talk about the case.  You can follow the judge's

14   instructions on that?

15             JUROR NUMBER 16:  I mean, we live two different lives,

16   you know.  His cases are here, my home is there.  And we talk

17   about our kids and our grandkids and our great grandkids, and we

18   don't talk about his cases.  It's too -- you know, for me it's

19   too depressing sometimes.

20             MS. LOEFFLER:  I don't have any other questions.

21   Thank you.

22             MR. CURTNER:  So you don't think that would affect you

23   being a juror as much as anybody else?  Okay.

24             JUROR NUMBER 16:  It's his job.  He likes it, and it's

25   his job.  So as long as he enjoys it --

1          THE COURT:  If the government failed to prove the
2  charges beyond a reasonable doubt, you would say not guilty?
3          JUROR NUMBER 16:  Yes, I can.
4          THE COURT:  And can you look your husband straight in
5  the eye and tell him that?
6          JUROR NUMBER 16:  I could.
7          THE COURT:  And on the other hand, if they prove the
8  charges, could you say guilty?
9          JUROR NUMBER 16:  Yes, I could.
10     (End sidebar)
11          THE COURT:  Okay, who's next?
12          JUROR NUMBER 40:  Sir, like I said earlier, Juror
13  Number 40.
14          THE COURT:  Yes, sir.
15          JUROR NUMBER 40:  I'm a retired Air Force, spent
16  23-and-a-half years with the Air Force, active duty and
17  reserves.
18          THE COURT:  Okay.
19          JUROR NUMBER 40:  And in that 23-and-a-half years, I
20  was a law enforcement specialist, patrolman, drug detective dog
21  handler, investigator, special agent --
22          THE COURT:  So would you give any -- I'm going to --
23  we're going to have a variety of witnesses.  There's going to be
24  lay witnesses, there's going to be police officers, every --
25  could you treat everyone's testimony the same and evaluate it

1  based on what they said and their demeanor, et cetera, or would

2  you tend to favor one side over the other?

3  JUROR NUMBER 40:  I would not favor one side over the

4  other, but I presently, what I do, sir --

5  THE COURT:  Yes.

6  JUROR NUMBER 40:  -- is I'm a contract background

7  investigator with a lot of different federal agencies.

8  THE COURT:  Yes.

9  JUROR NUMBER 40:  I spent ten years with the FBI BICS

10  unit.

11  THE COURT:  All I need to know is if that would affect

12  your ability to be fair.

13  JUROR NUMBER 40:  If a witness were to testify, and

14  let's say I did their -- their five-year update --

15  THE COURT:  Okay, well, you'll know the potential

16  witnesses.  We're going to name them.  And that's important

17  if -- what if you -- let's presume you don't know any of the

18  witnesses.  Could you treat all their testimony the same?

19  JUROR NUMBER 40:  Yes, sir.

20  THE COURT:  Okay.  But if it's one that you've worked

21  on, that might affect your --

22  JUROR NUMBER 40:  Yes, sir, because I would know their

23  background pretty intimately.

24  THE COURT:  Okay, okay.  Okay, so we'll have to make

25  sure we get the names of all the potential witnesses to you, and

1  we'll do that before we are done here.

2          JUROR NUMBER 40:  Yes, sir.

3          THE COURT:  Yes, ma'am.

4          JUROR NUMBER 47:  I'm Juror Number 47.

5          THE COURT:  Yes.

6          JUROR NUMBER 47:  And I worked with the state court

7  for 31-and-a-half years.

8          THE COURT:  Okay.  In Anchorage?

9          JUROR NUMBER 47:  In Palmer.  I started out in

10  Anchorage, and then I worked in Palmer.

11          THE COURT:  Okay.  What did you do there?

12          JUROR NUMBER 47:  I was the clerk of court.

13          THE COURT:  Okay.  Where do you work now?

14          JUROR NUMBER 47:  I'm retired.

15          THE COURT:  You're retired --

16          JUROR NUMBER 47:  And I love it.

17          THE COURT:  -- congratulations.  So, can you be fair

18  to both sides?

19          JUROR NUMBER 47:  Yes.

20          THE COURT:  I mean, as a clerk of court, you've seen

21  the whole thing, upside down and backwards.

22          JUROR NUMBER 47:  Absolutely.

23          THE COURT:  And you understand the government has to

24  prove its case beyond a reasonable doubt?

25          JUROR NUMBER 47:  Yes.

```
 1            THE COURT:  And the jurors, if they do that, have to
 2   say guilty; and if they fail to do that, they have to say not
 3   guilty.
 4            JUROR NUMBER 47:  Correct.
 5            THE COURT:  And you can do that; right?
 6            JUROR NUMBER 47:  Yes.
 7            THE COURT:  Okay.  Thank you.
 8            JUROR NUMBER 38:  Number 38.
 9            THE COURT:  Yes.
10            JUROR NUMBER 38:  My mother was a municipal judge in
11   our hometown for 19 years.
12            THE COURT:  What -- and that must not have been --
13            JUROR NUMBER 38:  In Oregon.
14            THE COURT:  Where?
15            JUROR NUMBER 38:  In Oregon.
16            THE COURT:  In Oregon.  Okay.  Anything about that
17   affect your ability to be a fair juror?
18            JUROR NUMBER 38:  No.
19            THE COURT:  And so your mother was a municipal court
20   judge.  Sounds like traffic tickets and those kind of things; is
21   that right?
22            JUROR NUMBER 38:  Yes.
23            THE COURT:  And that was in Oregon, that's not in
24   Alaska.  And you can be fair to both sides regardless of that;
25   is that true?
```

```
 1            JUROR NUMBER 38:  Yes.  Yes.

 2            THE COURT:  Okay.  Thank you.

 3            Still in the center, now we'll turn to the left.

 4  Let's go to the left.  All right.

 5            JUROR NUMBER 62:  Good morning.

 6            THE COURT:  Hi.

 7            JUROR NUMBER 62:  Juror 62.

 8            THE COURT:  Yes.

 9            JUROR NUMBER 62:  My current supervisor was the

10  wildlife trooper colonel for years before coming to work at the

11  Park Service.

12            THE COURT:  Okay.  What do you do?

13            JUROR NUMBER 62:  I'm his administrative assistant.

14            THE COURT:  You're the administrative assistant for

15  the --

16            JUROR NUMBER 62:  Deputy regional director.

17            THE COURT:  Deputy regional director.

18            JUROR NUMBER 62:  And he formerly was the --

19            THE COURT:  Of the Park Service.

20            JUROR NUMBER 62:  National Park Service.

21            THE COURT:  Okay.

22            JUROR NUMBER 62:  And we do have some trooper -- some

23  rangers downstairs, law enforcement rangers.

24            THE COURT:  Okay.  Anything about that affect your

25  ability to be a fair juror in this case?
```

```
1              JUROR NUMBER 62:  I don't think so.  No.
2              THE COURT:  So the answer is no, right?  You can be
3    fair to both sides?
4              JUROR NUMBER 62:  The answer is no.  I can be fair to
5    both sides.
6              THE COURT:  The fact that there is some law
7    enforcement kind of tenuous at your work wouldn't cause you to
8    favor the government at all in this case, would it?
9              JUROR NUMBER 62:  Correct.
10             THE COURT:  Okay.  All right.  Thank you.
11             Yes.  Does somebody back there need a drink of water?
12   I heard some coughing.  Let's see.  We need some water.  Let me
13   ask somebody if we can get this water to the bar.  Just get the
14   water to the bar, and let's pass it back.  Don't any -- okay,
15   here we go.  You see how cooperative we are.  All right.  Thank
16   you.
17             THE CLERK:  There's cups and water.
18             THE COURT:  And there's cups and water, and during the
19   trial, we'll give you as much water as you want.
20             Okay.  Yes, sir.
21             JUROR NUMBER 54:  Number 54.  My sister-in-law was a
22   APD.
23             THE COURT:  Okay, Alaska?
24             JUROR NUMBER 54:  Yeah, well --
25             THE COURT:  It was Anchorage?
```

```
 1              JUROR NUMBER 54:  Anchorage.

 2              THE COURT:  Okay.

 3              JUROR NUMBER 54:  Yeah.

 4              THE COURT:  Your sister-in-law --

 5              JUROR NUMBER 54:  Yeah.

 6              THE COURT:  Was an Anchorage --

 7              JUROR NUMBER 54:  She -- she just retired last year.

 8              THE COURT:  So she was married to your brother?

 9              JUROR NUMBER 54:  Yeah.

10              THE COURT:  Your sister-in-law -- okay.  Anything

11  about that affect your ability to be a fair juror in this case?

12              JUROR NUMBER 54:  No.

13              THE COURT:  I mean, would you give police officers or

14  officials' testimony any more weight because of that than you

15  would anyone else?

16              JUROR NUMBER 54:  No.

17              THE COURT:  Be fair to both sides?

18              JUROR NUMBER 54:  Yes.

19              THE COURT:  Okay.  All right, thank you.  Yes.

20              JUROR NUMBER 58:  Number 58.

21              THE COURT:  Yes.

22              JUROR NUMBER 58:  My brother-in-law is a state trooper

23  currently.

24              THE COURT:  Stationed?

25              JUROR NUMBER 58:  Soldotna.
```

THE COURT:  Soldotna.  Okay.  Anything about that
affect your ability to be fair?

JUROR NUMBER 58:  No.

THE COURT:  And can you treat any witness who would
come to testify the same as any other witness, regardless of
their employment?

JUROR NUMBER 58:  Yes.

THE COURT:  Okay.  All right.  Thank you.

Anyone else?  I've got more questions, don't worry.  I
mean, if you want -- here's the next one.

I know, listen, this -- this brings us up front quite
a bit, but the question is:  Have you or anyone close to you
ever been a victim of a crime?  Have you or anyone close to you
ever been a victim of a crime?  Start on my right.  And we come
back here.  Yes, sir.

JUROR NUMBER 51:  Juror Number 51.

THE COURT:  Yes.

JUROR NUMBER 51:  My home was burglarized here in
Anchorage about 15, 20 years ago.

THE COURT:  Okay, and that's it?

JUROR NUMBER 51:  That's it.

THE COURT:  Anything about that experience affect your
ability to be a fair juror in this case?

JUROR NUMBER 51:  No, sir.

THE COURT:  Okay.  Anyone else on the right?  And we

1  come back here.  Okay.

2      (Sidebar conference as follows:)

3          THE COURT:  Your number?  Okay, 45.  Nice spot right

4  here.

5          JUROR NUMBER 45:  Let's see, last week my car was

6  broken into and my purse and wallet and all that kind of stuff

7  was stolen.

8          THE COURT:  Oh, boy.

9          JUROR NUMBER 45:  And approximately 25, maybe 30 years

10  ago, I was raped.

11          THE COURT:  Okay.  In Alaska?

12          JUROR NUMBER 45:  No, that would have been in

13  Colorado.

14          THE COURT:  Okay.  Anything about either one of these

15  experiences affect your ability to be a fair juror in this case?

16          JUROR NUMBER 45:  No, sir.

17          THE COURT:  Would you hold it against the government

18  in any way?

19          JUROR NUMBER 45:  No.

20          THE COURT:  Would you hold it against the defense in

21  any way?

22          JUROR NUMBER 45:  No.

23          THE COURT:  You understand, I've explained it many

24  times, your obligation if you are a juror is to listen and

25  decide whether or not the government has proven the allegations

1   beyond a reasonable doubt; can you do that?

2            JUROR NUMBER 45:  Absolutely.  Thanks.

3            THE COURT:  Okay.  And by the way, if I

4   (indiscernible) questions (indiscernible).

5       (End sidebar)

6            THE COURT:  Anyone else on the right want to come back

7   here?  Want to come back here?

8            JUROR NUMBER 22:  Yes.

9            THE COURT:  Okay.

10      (Sidebar conference as follows:)

11           JUROR NUMBER 22:  Juror Number 22.  Spousal abuse,

12  spousal rape.

13           THE COURT:  Here in Alaska?

14           JUROR NUMBER 22:  Yes, here in Anchorage.

15           THE COURT:  How long ago?

16           JUROR NUMBER 22:  22 years ago.

17           THE COURT:  Anything about that affect your ability to

18  be a fair juror in this case?

19           JUROR NUMBER 22:  No, not at all.

20           THE COURT:  Would you hold it against the government

21  at all?

22           JUROR NUMBER 22:  It wasn't him that did it.

23           THE COURT:  Would you hold it against the defendant at

24  all?

25           JUROR NUMBER 22:  No.

```
1              THE COURT:  He didn't do it either, did he?

2              JUROR NUMBER 22:  Correct.

3              THE COURT:  Okay, so you can be fair to both sides?

4              JUROR NUMBER 22:  Yes.

5              THE COURT:  Anything else you want to tell us while

6    you're here?

7              JUROR NUMBER 22:  Just, twice my house was burglarized

8    in the last two years.

9              THE COURT:  Anything about that affect your ability to

10   be a fair juror in this case?

11             JUROR NUMBER 22:  Only that they couldn't find

12   anybody.

13             THE COURT:  So you won't hold that against the

14   government?

15             JUROR NUMBER 22:  No.

16             THE COURT:  Do you think you can be fair to both

17   sides?

18             JUROR NUMBER 22:  Yeah, I can.

19             THE COURT:  Okay.  (Indiscernible).  Thank you, ma'am.

20             JUROR:  Okay, thank you.

21       (End sidebar)

22             THE COURT:  Okay, anyone else want to come back here

23   in the center now?  We're in the center.  Back here, ma'am?

24             JUROR 33:  Yes, please.

25             THE COURT:  Okay.
```

1    (Sidebar conference as follows:)

2            THE COURT:  I've got a special spot for you right

3  here.

4            JUROR NUMBER 33:  This seems like a huge question.

5  I've been a victim of all kinds of crime, but nothing that I

6  feel would interfere with my ability --

7            THE COURT:  Okay, you're Number 33?

8            JUROR NUMBER 33:  Number 33.

9            THE COURT:  Okay, and the crimes you are talking about

10  were here in Anchorage?

11            JUROR NUMBER 33:  None in Anchorage.

12            THE COURT:  Okay.  What kind of crimes are we talking

13  about here?

14            JUROR NUMBER 33:  Personal crimes.  Rape, vandalism,

15  theft.

16            THE COURT:  How long ago?

17            JUROR NUMBER 33:  The most recent one?  Last year.

18            THE COURT:  Last year.  In Anchorage?

19            JUROR NUMBER 33:  No.  I live in Cordova.

20            THE COURT:  Oh, in Cordova.  (Indiscernible) personal

21  things?

22            JUROR NUMBER 33:  Business and personal, yeah.

23            THE COURT:  Have any of them gone to trial?

24            JUROR NUMBER 33:  No.

25            THE COURT:  Have any of them been prosecuted?  In

1    other words, were there attorneys and depositions?

2              JUROR NUMBER 33:  One.

3              THE COURT:  When was that one?

4              JUROR NUMBER 33:  That one was probably about three or

5    four years ago.

6              THE COURT:  Okay.  In Kodiak -- or I mean in Cordova?

7              JUROR NUMBER 33:  In Cordova, yeah.

8              THE COURT:  I don't need you to go into all the

9    details, but I want to understand if it would affect your

10   ability to be fair in this case?

11             JUROR NUMBER 33:  No, no.  I don't think at all.

12             THE COURT:  Do you hold it against the government that

13   these things happened?

14             JUROR NUMBER 33:  Oh, no, not at all.

15             THE COURT:  I mean, you won't hold it against the

16   defendant here?

17             JUROR NUMBER 33:  Oh, no.  I don't know the defendant,

18   so I think there is no problem.

19             THE COURT:  You're neutral at this time?

20             JUROR NUMBER 33:  I am neutral.

21             THE COURT:  You just want to let us know that, like,

22   (indiscernible).

23             JUROR NUMBER 33:  Just answering the question, yep.

24             MR. CURTNER:  So has that affected your concept of the

25   criminal justice system at all, or how --

1          JUROR NUMBER 33:  It depends how involved with them I

2    get.  This one was quite a bit.  That's always been a very

3    positive experience.

4          MR. CURTNER:  So during these things that happened to

5    you, you were involved with the police, but not so much in

6    court?

7          JUROR NUMBER 33:  Yeah, yeah.  I own a business in

8    Cordova, so I see a lot of streets.

9          MR. CURTNER:  Are you still in Cordova?

10          JUROR NUMBER 33:  Yes.

11          MS. LOEFFLER:  I don't have any other questions.

12          THE COURT:  All right.  Thank you.

13          JUROR NUMBER 33:  Thank you.

14    (End sidebar)

15          THE COURT:  Anyone else back here?  Okay.

16    (Sidebar conference as follows:)

17          THE COURT:  Watch that step.  Number 4.

18          JUROR NUMBER 4:  Number 4.  I have several issues.

19          THE COURT:  Okay.

20          JUROR NUMBER 4:  One is I'm a witness for something

21    that happened on my property in Kodiak.

22          THE COURT:  Okay.  Are you from Kodiak?

23          JUROR NUMBER 4:  I am from Kodiak.

24          THE COURT:  Okay.  So were you (indiscernible)

25    property?

1          JUROR NUMBER 4:  Yeah, right.  And it was somebody
2  was -- well, some -- it's kind of silly.  Somebody had made a
3  lot of damage to a visitor that was at my house --
4          THE COURT:  So wait a minute --
5          JUROR NUMBER 4:  -- to their vehicle.
6          THE COURT:  Oh, okay.  Vehicle.
7          JUROR NUMBER 4:  That someone is the father of my
8  granddaughter.  And --
9          THE COURT:  Okay, let's go slow.
10         JUROR NUMBER 4:  Uh-huh.
11         THE COURT:  The father of your granddaughter damaged a
12 vehicle that was at your house when he was mad.
13         JUROR NUMBER 4:  Yes, exactly.  So in that -- at that
14 time, my daughter was not with the father --
15         THE COURT:  Okay.
16         JUROR NUMBER 4:  So he was -- so it was a jealous
17 rage.
18         THE COURT:  Jealous rage, okay.
19         JUROR NUMBER 4:  Uh-huh.  So then -- so now those two
20 are together.
21         THE COURT:  Now they are together?
22         JUROR NUMBER 4:  And I still need to be a witness --
23         THE COURT:  In that case.
24         JUROR NUMBER 4:  -- in that case.
25         THE COURT:  So?  (Indiscernible).

1          JUROR NUMBER 4:  This is (indiscernible) and it hasn't
2   happened yet.
3          THE COURT:  Oh, it hasn't yet?  Is it scheduled to go
4   the trial in April?
5          JUROR NUMBER 4:  No.
6          THE COURT:  Okay.
7          JUROR NUMBER 4:  No, not in April.  Probably, I think,
8   in October or something, okay?  So in that case, I know I have
9   to do my duty and say what I --
10         THE COURT:  Sure.
11         JUROR NUMBER 4:  -- you know, even though --
12         THE COURT:  Even though they are together now.
13         JUROR NUMBER 4:  Even though they are together now.
14  It's hard, but I know it's my duty.
15         And the second thing is, is I do know Jim Wells.
16         THE COURT:  Well, that wouldn't affect your ability to
17  be fair, would it, one way or the other?
18         JUROR NUMBER 4:  No, not really.  I don't think it
19  would.  We're not close friends, but I know him from, you know,
20  like baseball and stuff like that.
21         THE COURT:  Okay.  Did you know any of the other names
22  that I mentioned?
23         JUROR NUMBER 4:  No, not really.  I know who they are.
24  Kodiak is a small town, very small.  So what I have --
25         THE COURT:  Can you be fair?

1          JUROR NUMBER 4: Well, that's what I'm getting at.

2          THE COURT: Okay.

3          JUROR NUMBER 4: Sorry, sir. Living in a small town

4 and having to do jury duty and be a witness, I mean, you know

5 everybody that is there. And I do know it's my duty that I have

6 to be fair, and I feel I can be fair.

7          THE COURT: Okay. If the government proves the

8 allegations beyond a reasonable doubt, will you say guilty?

9          JUROR NUMBER 4: I've thought about it quite a bit,

10 and I've -- yes.

11          THE COURT: Why did you think about it quite a bit?

12          JUROR NUMBER 4: Because I had to weigh the

13 differences and think, can I be fair? And I can be. Because I

14 do --

15          THE COURT: (Indiscernible) baseball teams?

16          JUROR NUMBER 4: Right. My kid played with his kid on

17 the baseball teams. They weren't close friends, buddies, or

18 anything like that. I know who his wife is, yes. I know Nancy.

19 We don't go have coffee or anything like that.

20          THE COURT: And if the government fails to prove the

21 charges beyond a reasonable doubt, would you say not guilty?

22          JUROR NUMBER 4: Yes.

23          THE COURT: Do you think you can be fair to both

24 sides --

25          JUROR NUMBER 4: I can be fair to both sides.

```
 1              THE COURT:  -- in all this?
 2              JUROR NUMBER 4:  Yes.
 3              THE COURT:  What else do you know?
 4              JUROR NUMBER 4:  I think that's it.  Sorry.
 5              THE COURT:  Questions?
 6              MS. LOEFFLER:  Yes, I do.  Just in terms of the fact
 7   that you know the Wellses, and you may know, because we haven't
 8   read off the list, a whole bunch of other people on the case,
 9   would that give you pause as to sort of like, you know you have
10   a duty as a juror, but is this the case that you think you could
11   be fair -- can you be fair the same way you would be on another
12   case where you don't know anybody?
13              JUROR NUMBER 4:  I just have (indiscernible).
14              MS. LOEFFLER:  Okay.
15              THE COURT:  Yes.
16              MR. CURTNER:  So I know Kodiak.  It's -- there's
17   probably a lot of talk about this case.  Have you heard a lot of
18   things about the case?  Rumors?
19              JUROR NUMBER 4:  I'm just going to keep my ears
20   closed.  (Indiscernible).
21              MR. CURTNER:  So do you have any preconceived ideas
22   about this case from which you've might heard?
23              JUROR NUMBER 4:  No, sir.
24              MR. CURTNER:  And you can be fair to both sides?
25              JUROR NUMBER 4:  I can be fair to both sides.
```

1          MR. CURTNER:  If the government proves the charges,
2   can you say guilty?

3          JUROR NUMBER 4:  I can be fair, yes.  I can say -- I
4   can say guilty if they prove it, yes.

5          MR. CURTNER:  Would they have a higher standard
6   because of your knowledge of Mr. Wells?

7          JUROR NUMBER 4:  Do they have a higher standard?

8          MR. CURTNER:  Does the government have a higher
9   standard of proof beyond a reasonable doubt because of your
10  knowledge of Mr. Wells?

11         JUROR NUMBER 4:  No.

12     (End sidebar)

13         THE COURT:  Next.  Back here.  Back here?

14         JUROR NUMBER 53:  Yeah.

15     (Sidebar conference as follows:)

16         THE COURT:  All right.  Right here.  We've got a
17  special spot right up there in the (indiscernible).

18         JUROR NUMBER 53:  First off, I have to apologize to
19  all of you.  Oh.  I'm Number 53.  Not the name, right?

20         I have to apologize for not coming up before, I should
21  have.  My sister who is closest in age to me is an officer with
22  the Juvenile Justice Department in the southwestern region.

23         THE COURT:  Where?

24         JUROR NUMBER 53:  She lives in Dillingham, we live in
25  Dillingham.

THE COURT:  Dillingham.  Okay.

JUROR NUMBER 53:  Yes.  So she travels all around the southwestern region for her job capacity.

THE COURT:  She is a what now?

JUROR NUMBER 53:  Juvenile justice officer.

THE COURT:  Anything about that affect your ability --

JUROR NUMBER 53:  Not my ability, sir.

THE COURT:  Okay.

JUROR NUMBER 53:  But I was wondering if you guys needed to know that for your own information, or -- okay.  All right.

THE COURT:  (Indiscernible).  We just want to make sure that you can be fair to both sides and not be influenced by relatives' work, et cetera.

JUROR NUMBER 53:  Right.  Okay.  And the other part was, I'm not sure how much of a crime it is to the state or the government, but one of my sisters did die by reason of a self-inflicted gunshot wound to the head.  And we all think it's a crime.  So --

THE COURT:  How long ago was that?

JUROR NUMBER 53:  '95, sir.

THE COURT:  Okay, so it's a while ago.

JUROR NUMBER 53:  Nineteen years.

THE COURT:  Okay.  If it's a crime, do you hold that against any government agency?

1           JUROR NUMBER 53:  No, against her.  That's all.

2           THE COURT:  Oh, you think someone else did it.

3           JUROR NUMBER 53:  No, no, no.  I think it's a crime

4   against her.  I think she --

5           THE COURT:  Oh, she was the criminal?

6           JUROR NUMBER 53:  Yes, she's the criminal.

7           THE COURT:  How would that affect your ability to be a

8   fair juror in this case?

9           JUROR NUMBER 53:  Not to be a fair juror, sir, no.

10          THE COURT:  You could be fair to both sides?

11          JUROR NUMBER 53:  Yes.

12          THE COURT:  If the government proves the case beyond a

13  reasonable doubt, you would say guilty?

14          JUROR NUMBER 53:  Yes, I would.

15          THE COURT:  And if they don't?

16          JUROR NUMBER 53:  If they don't --

17          THE COURT:  (Indiscernible).

18          JUROR NUMBER 53:  Yes, sir.

19          THE COURT:  Anything else you want to tell me?

20          JUROR NUMBER 53:  No, I think that's it.  Thanks for

21  the water, though.

22          THE COURT:  Let us know if you need more.

23   (End sidebar)

24          THE COURT:  Anyone else?  Anyone else?  I'm moving

25  toward the -- I'm going up the hill.  Okay, I don't see anyone

1  else, counsel.

2          Okay.  Do you need to come back here?  Oh, you're just

3  up front.  Okay, good.  Let's see.  Yes, sir.

4          JUROR NUMBER 5:  Number 5.  Just 15 years ago, my car

5  was stolen.

6          THE COURT:  Okay.  Do you hold that against anybody

7  here in this room?

8          JUROR NUMBER 5:  No.

9          THE COURT:  Okay.

10          JUROR NUMBER 5:  Not at all.

11          THE COURT:  Okay.  And can you be fair to both sides?

12          JUROR NUMBER 5:  Yes, I can.

13          THE COURT:  Okay, thank you.

14          JUROR NUMBER 37:  Number 37.

15          THE COURT:  Yes.

16          JUROR NUMBER 37:  I've had a car stolen many years

17  ago, another car broken into, an apartment burglarized, and I've

18  been assaulted once.

19          THE COURT:  Anything about any of those experiences

20  affect your ability to be a fair juror in this case?

21          JUROR NUMBER 37:  I think I can still be fair.

22          THE COURT:  You can be fair to both -- we weren't

23  involved in that, you understand that?

24          JUROR NUMBER 37:  That's right.

25          THE COURT:  Okay.  All right.  Thank you.

1              Yes, sir.

2              JUROR NUMBER 8:  Number 8.

3              THE COURT:  Okay.

4              JUROR NUMBER 8:  And I had a vehicle broken into also.

5              THE COURT:  Anything about that affect your ability to

6      be a fair juror in this case?

7              JUROR NUMBER 8:  No.

8              THE COURT:  Thank you.

9              JUROR NUMBER 24:  Good morning, Your Honor.  JUROR

10     NUMBER 24.  As long as we're mentioning car break-ins, I've had

11     a few of those as well.  But --

12             THE COURT:  Me, too.  Anything about that affect your

13     ability to be a fair juror?

14             JUROR NUMBER 24:  No, sir.

15             THE COURT:  Okay.

16             Did I cover center, left, right?  I don't even

17     remember anymore.  Anyone else, wherever you are seated, have

18     any issues along those lines?  Yes.

19             JUROR NUMBER 31:  Number 31.

20             THE COURT:  Yes.

21             JUROR NUMBER 31:  It was probably 35 years ago, I was

22     sniped at, held up in some rocks in Washington State by a guy

23     for several hours.  And he wasn't caught, and --

24             THE COURT:  Anything -- that's an unusual event.

25     Anything about that affect your ability to be a fair juror in

 1   this particular case?

 2              JUROR NUMBER 31:  No, no, I can still be a fair juror.

 3              THE COURT:  Yeah, but would you hold it against

 4   anybody?  I mean, for instance, he wasn't caught.  Was that

 5   someone's fault that he wasn't caught, or --

 6              JUROR NUMBER 31:  There was no explanation for it at

 7   all.  I was just up in some rim rock, and somebody started

 8   shooting, and --

 9              THE COURT:  That was it.

10              JUROR NUMBER 31:  Every time I tried to get out, I was

11   shot at again.

12              THE COURT:  Hmm.  But you -- that's 30 years ago, part

13   of your past.  You just wanted to let us know that, but you can

14   be fair to both sides?

15              JUROR NUMBER 31:  Yeah.

16              THE COURT:  Okay.  All right.  Thank you.

17              Okay, looks like it's getting quiet.  I'm going to go

18   to the next question.  We've already introduced the parties

19   sitting here at the table.  We generally don't permit people to

20   serve as jurors if they are friends or relatives of the parties,

21   of course.  Are there any of you that are personal -- know

22   personally any of the people that we have introduced so far in

23   any way?  Anyone on the right?  Anyone in the center?  Anyone in

24   the left?

25              So you had a list of witnesses from the government

1  that might testify; is that right?

2          MS. LOEFFLER:  Yes, Your Honor.

3          THE COURT:  Can you read that fairly slowly, with the

4  focus being on those initially that are from Anchorage?  If you

5  can do that, because most of them are not.

6          MS. LOEFFLER:  Most of them are not.  Let me -- it'll

7  take me just a second to check the ones --

8          THE COURT:  Just go down the list.  No, just go to the

9  list.  Tell us --

10          MS. LOEFFLER:  Okay.

11          THE COURT:  Do it as you wanted.  Start from the top

12  and --

13          MS. LOEFFLER:  I can.  The only -- I believe the only

14  witnesses from Anchorage are people that are special agents, and

15  I will try to make sure I hit all those, with the help of

16  Special Agent Allison.

17          THE COURT:  Okay.

18          MS. LOEFFLER:  Because those will be Anchorage people.

19          THE COURT:  So if you can just listen to see if you

20  are familiar with any of these potential witnesses.

21          MS. LOEFFLER:  The potential witnesses are Nicola

22  Belisle, Scott Hopkins, Trooper Dennis Dupras, Special Agent

23  Aaron Coggins, Hernando Acosta, Cody Beauford.  None of these

24  are from Anchorage.  Jason Bullis, Kevin O'Connor, Michael

25  Haselden, Kelly Kolodzik, Kristin Small, Pedro Elizondo, Billy

1  Weth, Andrew DeVries, Robert Mathis, Dan Smith, Dr. Meredith

2  Lann, and Special Agent Vicki Grimes.  Dr. Lann and Special

3  Agent Vicki Grimes live in Anchorage.

4           THE COURT:  Okay.  Number 40, did any of those names

5  ring a bell?

6           JUROR NUMBER 40:  No, sir.

7           THE COURT:  Okay.

8           MS. LOEFFLER:  Steven Cartier, Steve Salus, Tom Eskew,

9  Lyle Phillips, Dave Smith, James Encinas, and Scott Reckner, and

10 I don't believe any of those are from Anchorage.

11          THE COURT:  Okay.  Ring a bell, Number 40?

12          JUROR NUMBER 40:  No, sir.

13          THE COURT:  Okay.

14          MS. LOEFFLER:  Nate Pacheco, Leah Henry, Para

15 Upchurch, William Reed, David Pizzurro, and Peter Van Ness, and

16 none of those are from Anchorage.

17          THE COURT:  Okay.

18          MS. LOEFFLER:  Jere Mills, Dr. Reid Meloy, Special

19 Agent Derek Espeland -- he is from Anchorage.

20          THE COURT:  Okay.  And what was that name again?

21          MS. LOEFFLER:  Special Agent Derek Espeland from the

22 FBI.  He is stationed here.

23          THE COURT:  Okay.

24          THE CLERK:  Jennifer Raymond, Debra Gillis, Jessica

25 Walker, Dr. Constance Fisher, Jeremy Fletcher, Sara Graziano,

1 Bill Gifford, and Bob Morton.  Mr. Gifford was formerly from

2 Anchorage, and I believe Debra Gillis and Sara Graziano are in

3 Anchorage.

4             THE COURT:  Any names, sir?

5             JUROR NUMBER 40:  Can you read the name of the FBI

6 agent, Derek?

7             MS. LOEFFLER:  Derek Espeland is an FBI agent, Your

8 Honor.

9             THE COURT:  Okay.  And you may have -- know him?

10            JUROR NUMBER 40:  I believe I did his periodic

11 reinvestigation.

12            THE COURT:  Okay.  We're not certain that all of these

13 people will be actually called as witnesses, so we'll put our

14 heads together and see, okay?

15            MS. LOEFFLER:  Denise Andersen, Vance Newby, Holly

16 Steeves, Phillip Jordinelli, Ray Anderson, Jacob Gerasimof,

17 Joshua Sanders, Jim Schilbach, Arthur Bors, Aaron Woods.  I

18 believe Holly Steeves is a special agent and is in Anchorage,

19 and Denise Andersen is a special agent with the Coast Guard and

20 is in Anchorage.  The others are not.

21            THE COURT:  Okay.

22            MS. LOEFFLER:  Okay.  Don Rudat, Will Ellis, Alan

23 Jones, Joe Sturgis, Annette Ecret, Charlene Bell, Lynn

24 Concepcion.  Yeah, Ms. Concepcion is our records custodian, and

25 she does -- is from an organization in Anchorage.  The others

1  are not.

2          Gary Bolden, Sean Bottary, Brett Mills, Bob Shem,

3  Jason Weimer (ph), John Stein, and Jim Sine.  Mr. Shem is here

4  in Anchorage.  The others are not.

5          Terry Stein, Bob Pletnikoff, Luke Robinson, Angela

6  Strause, Alex Doran, Amanda Sanford, Richard Vorder Bruegee, and

7  Neil Schmidt.  Special Agents Strause and Doran are based here

8  in Anchorage.

9          Athena Patterson, Steve Penn, Daryl Allison, Angelo

10 Toglia, Theresa Kiele, Donald Kiele, Kirk Oberlander, Doug

11 Klein, and Olivia Terry.  The special agents on that list are

12 Special Agent Daryl Allison, Kirk Oberlander, and Doug Klein,

13 and they are stationed here in Anchorage.  And the others are

14 not from Anchorage.

15         THE COURT:  Any other names, sir?

16         JUROR NUMBER 40:  No, sir.

17         THE COURT:  Okay.

18         MS. LOEFFLER:  That's it, Your Honor.

19         THE COURT:  Okay.  I don't know if the -- Mr. Curtner,

20 if you had anything you wanted to add at this time or not?

21         MS. LOEFFLER:  Oh.

22         MR. CURTNER:  No, Your Honor.

23         THE COURT:  Oh.  What does that mean?

24         MS. LOEFFLER:  Oh.  I was handed a note that Trooper

25 Jim Sine was once stationed in Wasilla as a trooper.

```
 1              THE COURT:  Okay.
 2              MS. LOEFFLER:  He is not now.  That's why I didn't
 3   have him --
 4              THE COURT:  Okay.
 5              MS. LOEFFLER:  -- as Anchorage or this area.
 6              THE COURT:  Okay.  Anyone concerned, familiar with any
 7   of those names mentioned?  I see no hands going up.  Okay, we
 8   have the one we'll look into.
 9              MS. LOEFFLER:  There -- Your Honor, there is somebody
10   with a hand up.
11              THE COURT:  Oh, yes.  All right.  Should we talk back
12   here, or should we talk here?  I don't know what you're going to
13   say.
14              JUROR NUMBER 37:  I don't know what I'm going to say
15   either.
16              THE COURT:  Well, first of all, your number.
17              JUROR NUMBER 37:  Juror Number 37.
18              THE COURT:  37, yes.
19              JUROR NUMBER 37:  I know Jim Sine from his time that
20   he was in Wasilla.  He was a personal friend.  He attended the
21   same church that I did.  I also had encounters with him in his
22   capacity as a law enforcement agent in my professional capacity
23   with community mental health.
24              THE COURT:  Okay.  He's going to likely be a witness;
25   is that right?
```

1          MS. LOEFFLER:  Yes, he is a -- he will be a witness.

2          THE COURT:  Will that affect your ability to be fair?

3   Would you give his -- because you know him, would you give his

4   testimony more weight than any other person?

5          JUROR NUMBER 37:  My experience with law enforcement

6   has generally led me to believe that they are generally credible

7   people.  I think I can set that aside and deal fairly with

8   folks.  But that is true that I have dealt with law enforcement

9   fairly routinely and have developed a respect for them.

10          THE COURT:  Okay.  We'll give that some thought and

11  see where that leads us.  Okay?

12          All right, anyone else know any of these people

13  mentioned?  Okay, yes, ma'am.

14          THE CLERK:  One more.

15          JUROR NUMBER 34:  I think I heard one name.

16          THE COURT:  Just give us -- first give us your number.

17          JUROR NUMBER 34:  Number 34.

18          THE COURT:  Yes.

19          JUROR NUMBER 34:  I hear a name that sticks out.  I

20  don't know if it's the same person that I know.  It's U.S. Army.

21          THE COURT:  Okay, just, the name is who now?

22          MS. LOEFFLER:  Steve Salus?

23          JUROR NUMBER 34:  Steve Salus, yeah.

24          MS. LOEFFLER:  He is a Coast Guard -- a former -- I'm

25  sorry.

1            UNIDENTIFIED SPEAKER:  He's retired.

2            MS. LOEFFLER:  He's a retired Coast Guard person from

3  Kodiak.

4            JUROR NUMBER 34:  All right.  That's a different

5  person then.

6            THE COURT:  Too old for you, is that right?  All

7  right.  Anything -- anyone else?  Okay.  I've got more

8  questions.

9            So I know that there were some reports in the paper

10  this morning about the case, maybe some radio things the other

11  day.  Other than that, let me ask if anyone, other than the

12  person who we talked about from Kodiak, anyone know anything

13  about this case that you've heard of before today?  On the

14  right?  In the center?  Okay.  On the left.

15            So that's -- I'm just kind of getting -- trying to get

16  a sense.  On the right, you haven't heard anything about the

17  case?  And in the center, there was -- that's heard something

18  about the case, I see one, two three, four, five, six.  And then

19  on the left, okay, four or five.

20            So I think we just need to figure this out and take it

21  one at a time.  So we'll just start on the -- we'll come back

22  here counsel, and address this.  Start on the right.  Just kind

23  of like we go before.  First on the right.  No one on the right?

24  Okay.  Yes, sir.

25       (Sidebar conference as follows:)

1          JUROR NUMBER 27:  Number 27.

2          THE COURT:  Number 27.  Okay.

3          JUROR NUMBER 27:  I heard it on the news when it first

4     happened.

5          THE COURT:  Yeah, here in Anchorage?

6          JUROR NUMBER 27:  Yes.

7          THE COURT:  Okay.

8          JUROR NUMBER 27:  And then yesterday I heard the news

9     too, and then I read an article on it in the paper, too.

10          THE COURT:  Okay.  So we know what you know about it.

11     What you know is what was in the news?

12          JUROR NUMBER 27:  Right.

13          THE COURT:  That's it?

14          JUROR NUMBER 27:  Exactly.

15          THE COURT:  You understand that that is not the basis

16     upon which the jury decides?

17          JUROR NUMBER 27:  Exactly.

18          THE COURT:  Could you set that aside and make your

19     decision based on the evidence presented here in court?

20          JUROR NUMBER 27:  I believe I could.

21          THE COURT:  Counsel, want to -- oh.  (Indiscernible).

22          MR. CURTNER:  Reading the paper and hearing about

23     this, did that give you any impression about the case at all,

24     or --

25          JUROR NUMBER 27:  It had mentioned some things about

1 his wife's car was seen on the video at a certain time, and that

2 a nail that was in the tire was put in between the grooves and

3 there was no wear on the nail.

4         THE COURT:  That's what was reported in the paper?

5         JUROR NUMBER 27:  That's what was reported in the

6 paper, yeah.  But, you know, I couldn't really draw any

7 conclusions on that, you know.  And I knew that there was some

8 strife, it said, between the co-workers in the article.  There

9 was some -- I gathered from the article he was being punished,

10 you know, already, disciplinary actions in the workplace, you

11 know.  There was some kind of conflict there, you know, is what

12 I gathered from the article I read.

13         THE COURT:  So you want to follow up on that?

14         MR. SCHRODER:  I would just say, so do you understand

15 that the government has to prove that?  What it says in the

16 paper is not evidence.

17         JUROR NUMBER 27:  Right.  Exactly.

18         MR. CURTNER:  Okay.  So you can put that all aside and

19 just decide on what happens here?

20         THE COURT:  Well, you know he's pled not guilty.  So

21 the burden is on the government to prove he's guilty.

22         JUROR NUMBER 27:  Exactly.  And I also understand that

23 there is not a lot of evidence, from what I gathered reading the

24 paper.

25         THE COURT:  Right.

        1            JUROR NUMBER 27:  Yeah.

        2            THE COURT:  So we don't know if there -- because we

        3   don't know whether there is or isn't because we haven't started

        4   this trial.

        5            JUROR NUMBER 27:  Right, but that's what the paper

        6   said.

        7            THE COURT:  The paper said.

        8            JUROR NUMBER 27:  Right.  Okay, I -- there might be

        9   more evidence, right.  There might be more.

       10            THE COURT:  I can tell you everything about what the

       11   paper said about me.

       12            JUROR NUMBER 27:  Okay.  I'm just trying to be up

       13   front in all this.

       14            THE COURT:  No, you are.  And we've read the article

       15   too.

       16            JUROR NUMBER 27:  Okay.

       17            THE COURT:  And we know that's it's not evidence in

       18   the trial.  We know that the evidence comes in here in the

       19   courtroom, and we have to decide the case based on the evidence.

       20            JUROR NUMBER 27:  Exactly.

       21            THE COURT:  Can you do this?

       22            JUROR NUMBER 27:  I think I can.

       23            THE COURT:  Just set aside what some other person may

       24   think, and listen to what you as a juror would know.

       25            JUROR NUMBER 27:  Yes, I think I could do that.

1          THE COURT:  Okay.  Any other questions?  Okay, thank

2    you, sir.

3      (End sidebar)

4          THE COURT:  Was there a lady?  Is this thing -- let me

5    turn this off for a second.  Was there a lady on the right here?

6    I thought there was a hand on the right.

7      (Sidebar conference as follows:)

8          THE COURT:  Okay.  You can turn that noise on.

9          All right.  Number --

10          JUROR NUMBER 37:  37.

11          THE COURT:  Yes, sir.

12          JUROR NUMBER 37:  I remember the news coverage at the

13   time that it happened, both in terms of the Channel 2 coverage

14   as well as reading it in the paper, and it was a topic that

15   was -- of conversation.  I have several friends who are retired

16   Coast Guard.  I don't know if they knew any of the parties, but

17   it was a conversation piece for a while.

18          And then the more recent coverage, particularly

19   Channel 2 News yesterday evening that announced the trial was

20   going to begin today.

21          THE COURT:  You understand that the evidence presented

22   in the courtroom hasn't been presented yet, and that your

23   decision has to be based solely on the evidence that is

24   presented here --

25          JUROR NUMBER 37:  I do.

 1          THE COURT:  -- without any regard to what you may have
 2     heard (indiscernible).
 3          JUROR NUMBER 37:  And my awareness or memory of the
 4     details are pretty vague in terms of what was covered during the
 5     events.  You know, I knew there were a couple of people killed.
 6     I knew that he was arrested for it.  Beyond that, I really don't
 7     know much or remember much about the coverage.
 8          THE COURT:  Do you think you can be fair to both
 9     sides?
10          JUROR NUMBER 37:  I believe so.
11          THE COURT:  Thank you.
12     (End sidebar)
13          THE COURT:  Okay.  We've taken care of the right, now
14     we are going to do the middle.
15     (Sidebar conference as follows:)
16          JUROR NUMBER 39:  Number 39.
17          THE COURT:  Number 39.  Okay.
18          JUROR NUMBER 39:  Initially I heard about it.  My wife
19     reads the paper or would forward a copy telling me about it.
20          THE COURT:  Yeah.
21          JUROR NUMBER 39:  Several of our neighbors in Homer
22     are Coast Guard.
23          THE COURT:  Uh-huh.
24          JUROR NUMBER 39:  And mowing the lawn and talking to
25     him, and he speculated that it was -- he says, "Well, there's a

lot of wife-swapping goes on with the Coasties over there." Not

that that was what it was about. That's all I --

THE COURT: Yeah.

JUROR NUMBER 39: That's all I know.

THE COURT: And you'd make your decision based on the

evidence presented at the trial and not on any of this other

speculation?

JUROR NUMBER 39: I can.

THE COURT: And you understand that all kinds of

things go in the paper that maybe didn't happen?

JUROR NUMBER 39: Right.

THE COURT: And we're looking for jurors who can set

aside all this. Sometimes things are publicized. So we need

people who will commit to make their decision based solely on

what is presented in the courtroom and not what some other

people may guess.

JUROR NUMBER 39: Right.

THE COURT: Can you do that?

JUROR NUMBER 39: I think I can.

THE COURT: Can you be fair to both sides?

JUROR NUMBER 39: I can.

THE COURT: Thank you.

(End sidebar)

THE COURT: In the center.

(Sidebar conference as follows:)

1           THE COURT:  Yes, sir.

2           JUROR NUMBER 32:  Number 32.

3           THE COURT:  32.  Okay.

4           JUROR NUMBER 32:  I spent a lot of time in Kodiak as a

5    service guy working on forklifts, and I've worked on base.

6           THE COURT:  The Coast Guard base?

7           JUROR NUMBER 32:  Yes.

8           THE COURT:  So you're familiar with it?

9           JUROR NUMBER 32:  Yes, I am.  And I remember when the

10   case first broke, it was a pretty terrible thing.

11          THE COURT:  Okay.  And so -- but have you read

12   anything in the paper or heard about in the paper?

13          JUROR NUMBER 32:  Not till last night on the news.

14          THE COURT:  Yeah, thank you.  Do you understand that

15   the decision of guilt or innocence has to be based solely on the

16   evidence presented here in the courtroom?

17          JUROR NUMBER 32:  Yes.

18          THE COURT:  Can you set aside all the numerous

19   speculation you may have heard and commit to making a decision

20   based solely on the evidence presented here in court?

21          JUROR NUMBER 32:  Yes.

22          THE COURT:  Okay.  Any questions?

23          MR. CURTNER:  I'm sorry, when did you work in Kodiak?

24          JUROR NUMBER 32:  I go down there every three months.

25          MR. CURTNER:  Oh, you still go down on a regular

1 basis?

2          JUROR NUMBER 32:  Yes.  We have a service truck at the

3 airport, so I just fly in, get in the truck.  I stay at the

4 Buskin Inn where the -- it's a Comfort Inn now.  A lot of Coast

5 Guard personnel stays there.

6          MR. CURTNER:  So have you heard discussions or rumors

7 about this case?

8          JUROR NUMBER 32:  A little bit when it first happened.

9 It was just like they thought maybe it was a drinking issue and

10 something got out of hand.

11         MR. CURTNER:  Have you heard anything recently since

12 you've been down there?

13         JUROR NUMBER 32:  No, no.

14         MR. CURTNER:  Nobody has talked about this case?

15         JUROR NUMBER 32:  No.

16         THE COURT:  Thank you, sir.

17         JUROR NUMBER 32:  Uh-huh.

18     (End sidebar)

19         THE COURT:  No one else in -- no one else in the

20 center?  Okay.

21     (Sidebar conference as follows:)

22         THE COURT:  Number 30.

23         JUROR NUMBER 30:  I just remember hearing all the news

24 stories at the time a year or two ago when everything was going

25 on in the investigation, just following the news stories, but

1  that's all.

2         THE COURT:  Well, I could point out, the new stories,

3  the news stories are speculation.  It's some people trying to

4  guess what happened.  We're having a trial where the evidence

5  will come in --

6         JUROR NUMBER 30:  Uh-huh.

7         THE COURT:  -- so that the decision would have to be

8  made based on the evidence and nothing else.

9         JUROR NUMBER 30:  Uh-huh.

10        THE COURT:  We're looking for jurors who can set aside

11 what anyone else may have said --

12        JUROR NUMBER 30:  Uh-huh.

13        THE COURT:  -- and base their decision purely on the

14 evidence presented in court.  Can you do that?

15        JUROR NUMBER 30:  I believe so.

16        THE COURT:  Okay.  If the government proves their

17 case, you have to say guilty; and if they don't prove their

18 case, you have to say not guilty, based purely on the evidence.

19 Can you do that?

20        JUROR NUMBER 30:  Yes.

21        MR. CURTNER:  You haven't heard anything about this

22 other than what's on TV or anything, have you?

23        JUROR NUMBER 30:  Not recently, no.

24        MR. CURTNER:  (Indiscernible).

25        JUROR NUMBER 30:  Just back whenever it was, a year or

1  so ago at the time, but I haven't heard anything recently.

2           MR. CURTNER:  What did you hear back then about the

3  case?

4           JUROR NUMBER 30:  Just seeing all the -- it was pretty

5  well covered at the time.  There were a lot of news stories.

6           THE COURT:  You haven't heard anything other than what

7  you've read in the paper though?  (Indiscernible).

8           JUROR NUMBER 30:  No.  No, no, nothing personal.  Just

9  like Channel 2.

10          THE COURT:  Question?  Can you be fair to both sides?

11          JUROR NUMBER 30:  I believe so.

12          THE COURT:  Well, yes or no?

13          JUROR NUMBER 30:  Yes.

14          THE COURT:  Okay, thank you.

15     (End sidebar)

16     (Sidebar conference as follows:)

17          THE COURT:  Number 47.

18          JUROR NUMBER 47:  Yes.  I was at a clerk's conference

19  the day that the two gentlemen were killed.  I was sitting at

20  this table with the clerk of court of the Kodiak court, so I

21  heard about it, that it happened, but I never heard anything

22  more.  Then I've heard little bits and pieces on the news, but I

23  haven't followed it or anything.

24          THE COURT:  So you understand that what is in the news

25  is not evidence?

1          JUROR NUMBER 47:  Oh, absolutely.

2          THE COURT:  And what is evidence if it comes into

3   court?

4          JUROR NUMBER 47:  Absolutely.  Absolutely.

5          THE COURT:  And your decision has to be made based

6   solely on the evidence and not anything else?

7          JUROR NUMBER 47:  Absolutely.  Yeah, absolutely.

8          THE COURT:  And you can do that?

9          JUROR NUMBER 47:  Yes.

10          MR. CURTNER:  So essentially you heard about this the

11   day it happened when you were at the conference?

12          JUROR NUMBER 47:  Right.  And somebody had called her

13   and said (indiscernible).

14          MR. CURTNER:  And you didn't hear (indiscernible)?

15          JUROR NUMBER 47:  No, just little news blips every now

16   and then.

17          THE COURT:  You can be fair to both sides?

18          JUROR NUMBER 47:  Yes.

19      (End sidebar)

20          THE COURT:  Center?  No more.  Left.  We had three or

21   four from the left.

22      (Sidebar conference as follows:)

23          THE COURT:  Number 15.  Yes, sir.

24          JUROR NUMBER 15:  Yes, Number 15.  I remember reading

25   about the case in the papers quite a few times.  I know that it

took a long time to find a suspect.  Those are the things I know
about the case.  That's really all.

           THE COURT:  That's it?

           JUROR NUMBER 15:  Probably.

           THE COURT:  Just what you've read in the paper?

           JUROR NUMBER 15:  Yes.

           THE COURT:  Do you understand that that is not
evidence?

           JUROR NUMBER 15:  I understand that.

           THE COURT:  And that it may be completely wrong and
speculative?

           JUROR NUMBER 15:  Yes.

           THE COURT:  And that you have to make a decision based
only on the evidence presented here in the courtroom --

           JUROR NUMBER 15:  Right.

           THE COURT:  -- without any regard for what may have
been heard or said about -- by the guessers?

           JUROR NUMBER 15:  I understand that.

           THE COURT:  Can you commit to us that you will base
your decision based solely on the evidence presented here in
court?

           JUROR NUMBER 15:  Yes, I can.

           THE COURT:  And that if the government proves the
case, you can say guilty; and if they don't prove the case, you
can say not guilty.

1          JUROR NUMBER 15:  I can.

2          THE COURT:  Thank you.

3     (End sidebar)

4     (Sidebar conference as follows:)

5          THE COURT:  Good morning.

6          JUROR NUMBER 3:  Good morning.

7          THE COURT:  Number 3.  Yes, sir.

8          JUROR NUMBER 3:  I don't know if I just misunderstood

9  the question, but I remember when the initial news report came

10  out back a couple of years ago, and that's --

11          THE COURT:  That's it?

12          JUROR NUMBER 3:  That's it.

13          THE COURT:  Did you read the paper today?

14          JUROR NUMBER 3:  No.

15          THE COURT:  Okay.  Whatever is in the paper, whatever

16  is in the radio, whatever is in the blogosphere where people

17  might guess or speculate about it is not evidence; you know

18  that?

19          JUROR NUMBER 3:  Yeah, that's just --

20          THE COURT:  And we're looking for jurors who can base

21  their decision solely on what is presented here in the courtroom

22  and nothing else.  Can you do that?

23          JUROR NUMBER 3:  Yes, sir.

24          THE COURT:  You understand the presumption of

25  innocence?

1           JUROR NUMBER 3:  Yeah, yeah.

2           THE COURT:  And the government has to prove the case

3    beyond a reasonable doubt?

4           JUROR NUMBER 3:  Innocent until proven guilty.

5           THE COURT:  You understand all of that?

6           JUROR NUMBER 3:  I do.

7           THE COURT:  And you will not -- you will disregard

8    anything you have heard about the case if selected to serve?

9           JUROR NUMBER 3:  Yeah.

10          THE COURT:  Can you assure us of that?

11          JUROR NUMBER 3:  I can.

12          MR. CURTNER:  When you first heard about the case, did

13   you have any impression of the (indiscernible)?

14          JUROR NUMBER 3:  No, I just thought that's horrible,

15   anytime there is loss life.

16          MR. CURTNER:  No, Your Honor.

17          THE COURT:  Thank you.

18      (End sidebar)

19      (Sidebar conference as follows:)

20          THE COURT:  Yes, sir.

21          JUROR NUMBER 14:  Number 14.  Nothing major.  Just

22   watch the news generally every night, so I heard about the story

23   when it happened a year ago.  Just remember hearing about Coast

24   Guard guys getting killed.

25          THE COURT:  What about the paper this morning?

1          JUROR NUMBER 14:  I didn't read anything about it this

2   morning.

3          THE COURT:  Did you not read it?

4          JUROR NUMBER 14:  Didn't read it this morning.

5          THE COURT:  Okay.  You understand that the -- we're

6   looking for jurors who can ignore all the rumors, all the

7   speculation and can base their decision solely on the matter

8   presented here in the courtroom and nothing else.  Can you do

9   that?

10          JUROR NUMBER 14:  Yep.

11          THE COURT:  Ignore whatever you may have heard or

12   read, and listen to the evidence, see whether or not the

13   government has been able to prove the charges beyond a

14   reasonable doubt.  That's your challenge.  Can you do that?

15          JUROR NUMBER 14:  Yeah.

16          MR. CURTNER:  Nothing further, Your Honor.

17     (End sidebar)

18          THE COURT:  Anybody else on that subject?  Okay.  I'm

19   running out of questions.

20          MS. LOEFFLER:  Your Honor, I'd like to suggest that we

21   might, at 11, since we're almost at 11, take a midmorning break.

22          THE COURT:  Okay.  Well, let's see.  Okay, let me just

23   see.  Okay, everybody wants a break.  I'm drinking water to kind

24   of test the -- oh, we haven't -- you're voting for a break?

25   Okay, can I just see -- let me just see what the next question

1  would be.

2        Can I ask this question?  Other than the one lady who

3  I know lives in Kodiak, anyone else live in Kodiak?  No one on

4  the right.  No one in the center.  No one on the left.  And

5  other than the lady that works in Kodiak and the gentleman that

6  works in Kodiak periodically, anybody else work in Kodiak and

7  travel there periodically?  Well, I'll ask a few more questions

8  after the break.

9        MS. LOEFFLER:  There was one hand in the back.

10       THE COURT:  Where was that?

11       UNIDENTIFIED JUROR:  Can I approach?

12       THE COURT:  Okay, we'll talk to you after the break.

13  Everybody wants a break.  I'm not -- we're here to make people

14  comfortable.  I have an instruction, though, that I'm supposed

15  to -- that I want to make sure I read before we take a break.

16        We are about to take our first break.  Remember, until

17  the trial is over, do not discuss this case with anyone,

18  including your fellow jurors, members of your family, people

19  involved in the trial, or anyone else, and do not allow others

20  to discuss the case with you.  This includes discussing the case

21  in Internet chat rooms or through Internet blogs, Internet

22  bulletin boards, e-mails, or text messaging.  If anyone tries to

23  communicate with you about the case, please let me know about it

24  immediately.

25        Do not read, watch, or listen to any news reports or

1  other accounts about the trial or anyone associated with it,

2  including any online information.  Do not do any research such

3  as consulting dictionaries, searching the Internet, or using

4  other reference materials, and do not make any investigation

5  about the case on your own.

6          Finally, keep an open mind until all the evidence has

7  been presented here in the courtroom and you've heard the

8  arguments of counsel, my instructions on the law, and the views

9  of your fellow jurors.  If you need to speak to me about

10  anything, simply give a note to the bailiff, my clerk, and we'll

11  take care of that.

12          I'm just trying to stress this.  We want to -- this

13  case needs to be resolved based on the evidence presented here

14  in the courtroom, not on rumors, not on anything else of that

15  nature.  So don't listen to the newspaper.  Let's see, don't

16  listen to the radio, read the newspaper.

17          And here is this new age, and I'm the wrong

18  generation, so I don't understand all this texting stuff that

19  you go online and do all kinds of stuff.  That can get us in big

20  time trouble.  Don't go texting about the case.  Don't go

21  looking things up online.  Let's do this case right by having

22  the evidence resolved and the case resolved based on the

23  evidence presented here in the courtroom.  Can you all commit to

24  me that you'll do that, help us in that regard.

25          JURORS (collectively):  Yes.

```
 1              THE COURT:  Yes, ma'am.
 2              JUROR NUMBER 22:  Does that mean you can't tell people
 3    which case you're working on so they don't talk to you about it?
 4              THE COURT:  That means you can do that.
 5              JUROR NUMBER 22:  You can?
 6              THE COURT:  You can say, "I'm working on a federal
 7    case.  I can't talk to you about it," period.
 8              JUROR NUMBER 22:  Can you tell them which case, or
 9    not?
10              THE COURT:  You can probably --
11              JUROR NUMBER 22:  Because how are you going to tell
12    them not to talk to you about it if you --
13              THE COURT:  Okay.  All right.  What are you, a lawyer
14    or something?
15              But I'm trying to get the point across.  I want to
16    keep this clean as can be, and I need you to help me do this.
17    You know, there will be -- there'll be news people running
18    around.  Don't talk to them.  Don't look at what they are doing.
19    Don't listen to what they are saying.  Just help me keep this
20    thing clean as possible, and we'll all work together as a team
21    to get this done.
22              So is 15 minutes enough to keep you comfortable?  Go
23    back to the big room, use the restroom, do whatever you need to
24    do.  Come back and sit roughly where you are, and then we're
25    going to start moving this case along when we get back.  So
```

1  we'll stand in recess for 15 minutes.  Thank you.

2          THE CLERK:  All rise.  Matter stands in a 15-minute

3  recess.

4                          (Prospective jury panel not present)

5          THE CLERK:  Are we still staying on?

6          THE COURT:  What's that?

7          THE CLERK:  Are we still staying?

8          THE COURT:  Yeah, I'm staying.

9   (Pause)

10          THE COURT:  Okay, the --

11          THE CLERK:  Do we still have jurors in here?

12          THE COURT:  Okay.  The jurors need to all leave.

13          THE CLERK:  Yeah, all jurors need to --

14          THE COURT:  Okay.  Could counsel sit down so I can see

15  who's going on -- know what's going on back here.

16          These people are not jurors.  These people are not

17  jurors.  I can say to you two ladies, don't talk to the jurors,

18  okay?  Promise you won't?  All right.

19          I can say to you, don't talk to the jurors.  And those

20  that are -- the lady making the pictures, don't show the

21  pictures to the jurors.  We want to keep this as clean as we

22  possibly can.  So far, going great.  That's my -- that's my

23  admission -- admonition.

24          Government have anything else before we break?

25          MS. LOEFFLER:  No, Your Honor.

1          THE COURT:  Mr. Curtner, anything else before we

2    break?

3          MR. CURTNER:  No, Your Honor.  Thank you.

4          THE COURT:  Okay.  We'll come back in 15 minutes.

5    Thank you.

6          THE CLERK:  All rise.  The matter stands in a

7    15-minute recess.

8        (Proceedings recessed, 10:59:18 a.m. until 11:17:00 a.m.)

9                        (Prospective jury panel not present)

10         THE CLERK:  All rise.  His Honor the Court, the United

11   States District Court is again in session.  Please be seated.

12         THE COURT:  Okay.  We're all here.  Counselor,

13   anything you want to bring to my attention before we bring the

14   jury back in?

15         MS. LOEFFLER:  Not from the government.

16         MR. CURTNER:  No, Your Honor.  Thank you.

17         THE COURT:  Okay.  Bring them in.  Hold it.  I've got

18   to get my notes.  Sit down when I come back, okay?

19                        (Prospective jury panel present)

20         THE COURT:  Okay, just try to find a seat close to

21   where you were.  It doesn't have to be exact.  It should be

22   roughly where you were seated before, but that's not necessary.

23   Just find a seat roughly where you were before.  It doesn't have

24   to be exactly where you were, just the same general area.  Just

25   roughly where you were before is fine.  It doesn't have to be

exactly where you were before.  Looks like we've got the whole
group back.

        Okay, all right.  So when we left off, I was asking
who has lived in Kodiak.  Any of you ever lived in Kodiak?
We've got that squared away.  And then we had a lady who works
there periodically.  Ma'am, could you come forward and give us
your name -- your number.

        JUROR NUMBER 21:  Juror Number 21.  And I work for
NOAA's National Marine Fisheries Service.  We have a lab in
Kodiak.  Periodically we have North Pacific Fishery Management
Council meetings at our station in Kodiak, and --

        THE COURT:  But you've already told us all of this,
haven't you?

        JUROR NUMBER 21:  Yes.  I was going to say, I've told
you that.

        THE COURT:  What do you think, we're getting old and
can't remember anything?

        JUROR NUMBER 21:  You asked the question.  You asked
the question.

        THE COURT:  Good.  You're good.  Counsel, do we need
to pursue this further?  She -- we've --

        MR. CURTNER:  I don't think so.

        MS. LOEFFLER:  No, Your Honor.

        THE COURT:  Okay.  All right.  Good.  Thank you.  Yes,
ma'am.

```
 1              JUROR NUMBER 26:  I don't currently --
 2              THE COURT:  Oh, wait.  What number?  26.  Okay.
 3              JUROR NUMBER 26:  26.  I don't currently live in
 4  Kodiak, but I used to when I was way younger.  I was born there
 5  and lived there until I was about 4.
 6              THE COURT:  Tell us about that.
 7              JUROR NUMBER 26:  I was 3.  Very little.
 8              THE COURT:  Okay.  Vivid recollections?
 9              JUROR NUMBER 26:  Not really.
10              THE COURT:  Okay, so you lived there when you were 3
11  and haven't been back much since, or at all since?
12              JUROR NUMBER 26:  I think I visited once a few years
13  ago, but just for --
14              THE COURT:  But are you familiar with the Coast Guard
15  facility out there?
16              JUROR NUMBER 21:  No.
17              THE COURT:  Okay.  Well, do you have friends and
18  relatives there?
19              JUROR NUMBER 21:  Not there anymore.  I mean, I've had
20  friends there, but again, it's just never had --
21              THE COURT:  Okay.  Counsel, do you have anything
22  further to pursue?
23              MS. LOEFFLER:  No, Your Honor.
24              THE COURT:  Do you have any flashbacks of when you
25  were 3 years old?  Okay, all right.  Thanks.  Yes.
```

1          JUROR NUMBER 34:  I'm number 34.  I used to live in

2    Kodiak too, and I used to work for Coast Guard dentist in

3    Kodiak.

4          THE COURT:  So on the Coast Guard base there?

5          JUROR NUMBER 34:  No, outside.

6          THE COURT:  And how long ago was that?

7          JUROR NUMBER 34:  That was back in '88 till '90.

8          THE COURT:  That was like twenty-some years ago.

9          JUROR NUMBER 34:  Yeah, 24 years.

10         THE COURT:  Okay, so do you have friends and relatives

11   that still live there?

12         JUROR NUMBER 34:  No.  No, sir.

13         THE COURT:  Anything we need to know about your

14   familiarity with Kodiak that --

15         JUROR NUMBER 34:  Well, I -- I was working at the

16   dental office --

17         THE COURT:  You worked at the dental office.

18         JUROR NUMBER 34:  And I was also at the cannery, so I

19   did, like, get to know a lot of people there too.

20         THE COURT:  Okay.  Counsel, do you have anything

21   further you want to ask her about that?

22         MS. LOEFFLER:  No, Your Honor.

23         MR. CURTNER:  No, sir.

24         THE COURT:  All right.  Thank you.

25         Sometimes -- yes.  Sometimes, you know, when you sit

1  quietly like that, people think of things.  Yes, sir.

2          JUROR NUMBER 32:  I'm 32.  I've stated before that I

3  go down to Kodiak every three months.  I've been going down

4  there since the mid-'90s.

5          THE COURT:  Right.  So you're -- and you're a little

6  more familiar with the area?

7          JUROR NUMBER 32:  Yeah.  I've been on base, been all

8  over the city, hunted the west side of the island.

9          THE COURT:  Okay, good.  We pretty well understand

10  that.  Counsel, anything further with regard to 32?  We've

11  covered that.

12          MR. CURTNER:  No.

13          THE COURT:  Okay.  Thank you, sir.  Okay, you know,

14  sometimes just the nature of the case makes it difficult for

15  people to sit as jurors.  I've already explained to you what the

16  allegations are in this case.  Anything just about the nature of

17  the case that would make it difficult for any of you to sit as a

18  juror?  Seeing no hands.  All right.  I still see no hands.

19          Okay, I have a couple of general questions for you.

20  As I indicated previously, it's my job to set forth the law that

21  applies to the case, and I'm going to do that by written

22  instructions that I'll read prior to your deliberations, and

23  you'll have written copies of the instructions in the jury room

24  that we'll get a copy for each one of you.

25          But jurors must be willing to follow the law as I

1  instruct you, and not as you think it should be or as others may

2  have told you.  Is there any one of you that would have any

3  difficulty following the instructions that I provide.

4          Okay.  Let me give you a few examples of this.  The

5  law requires that a defendant is presumed innocent, and that the

6  government must prove the defendant guilty beyond a reasonable

7  doubt before a guilty verdict is rendered.  Does anyone have any

8  difficulty at all applying that legal principle?  Okay.

9          The law does not require a defendant to testify in the

10 criminal case, and requires that the jury cannot hold the fact

11 that a defendant does not testify against him.  That's just a

12 principle of law that is as old as the government is old.  Does

13 anyone have any difficulty following that principle?  Okay.

14         And I'll be instructing you as to the elements of each

15 charge.  And in order to obtain a conviction, the government

16 must prove each of the elements of the charge beyond a

17 reasonable doubt.  Any of you have any difficulty applying that

18 principle?  Okay, good.

19         One of the things about this case that makes it a

20 little unique is it's going to last three to four weeks.  It's a

21 little longer than necessary, but not as long as it could be.

22 Some cases go for years.  Not us.  We'll be out of here in four

23 weeks probably.  And I -- you know, it's going to be a

24 challenge, but it is necessary that we have jurors who can sit

25 attentatively for that entire period.

1          Are there any one of yous, other than anyone who may

2    have mentioned something earlier, who would find that impossible

3    to do?  Looking at the right, no hands on the right.  In the

4    center?  And on the left?

5          Okay.  So let's just kind of take it one by one.

6    Counsel, I want to take this back here if we can.  No one on the

7    right.  Good.  I'm looking at the center.  We'll have a -- talk

8    a little bit about this.

9          Just come forward in the center, whoever raised their

10   hand.  And can someone take this water back.  People are

11   coughing their heads off.  Help yourself to the water.

12      (Sidebar conference as follows:)

13          THE COURT:  Yes, sir.  And state your name.

14          JUROR NUMBER 32:  (Juror states name), Juror Number

15   32.

16          THE COURT:  Yes.

17          JUROR NUMBER 32:  As interesting as this could be, I

18   do have an attention span problem sitting for long periods and

19   paying attention.  I tend to daydream quite a bit.

20          THE COURT:  (Indiscernible) other than that?

21          JUROR NUMBER 32:  I don't see any other reason.

22          THE COURT:  We take breaks from time to time.  So

23   other than your concern about the attention --

24          JUROR NUMBER 32:  Yeah.

25          THE COURT:  Okay.

1         JUROR NUMBER 32:  And jimmy legs.

2         THE COURT:  What's that mean?

3         JUROR NUMBER 32:  I gotta get up and I've got to --

4         THE COURT:  We'll -- we take breaks, and we want you

5    to be as comfortable as possible.  And I ask juries, if you need

6    a break, please raise your hand --

7         JUROR NUMBER 32:  Yeah, okay.

8         THE COURT:  -- and we'll be accommodating.  But we'll

9    make note of that.  Okay, thank you.

10        JUROR NUMBER 32:  Yep.

11   (End sidebar)

12        THE COURT:  Next.

13   (Sidebar conference as follows:)

14        JUROR NUMBER 57:  Number 57.

15        THE COURT:  Yes, sir.

16        JUROR NUMBER 57:  I'm chronically ill.  I do have some

17   illnesses that come and go sometimes --

18        THE COURT:  You know what?  Okay, let's get a little

19   closer here.  You started out by saying you're Number 57.

20        JUROR NUMBER 57:  57, yeah.

21        THE COURT:  Did you say, "I am chronically ill"?

22        JUROR NUMBER 57:  Yeah.  I have some chronic cancers

23   that I deal with.

24        THE COURT:  What are you talking about?  I don't need

25   the gory details, but when you say that to me --

1          JUROR NUMBER 57:  Honestly, nine times out of ten,

2    it's not an issue.  Nine days -- I mean, you know, I'm at work

3    more than I'm not at work.

4          THE COURT:  Do you work full time?

5          JUROR NUMBER 57:  I work full time.  You know, my only

6    thing is that, you know, I have kidney stones every once in a

7    blue moon, hopefully not in a very long time.  I do pass maybe

8    one a year.  You know, I'm -- the only concern is if it is a

9    long trial, that maybe one of those things --

10          THE COURT:  Four weeks.

11          JUROR NUMBER 57:  Right.  Maybe one of those things

12   would happen.

13          THE COURT:  Other than that.

14          JUROR NUMBER 57:  Other than that, the only thing that

15   I was -- I can work around it, I work with my bosses -- is that

16   because of the length of it and the type of project I'm working

17   on, that might cause some problems.  But as far as my civic

18   duty, I have no problem with that.

19          THE COURT:  Maybe we can give you a letter from the

20   court or whatever.

21          JUROR NUMBER 57:  Yeah.  And I have no problems with

22   that.  And I'm not concerned about the health thing, I just -- I

23   figured I should bring it up because it is a chronic thing and

24   it is ongoing.

25          THE COURT:  What -- what is it (indiscernible)?

1          JUROR NUMBER 57:  Basically all I do is I go to the

2   doctor once a month and get a shot, and then they monitor me.

3   And, like I said, unless --

4          THE COURT:  How do you feel today?

5          JUROR NUMBER 57:  Today, not too bad.  And generally

6   I -- generally it's not an issue.  I just, because --

7          THE COURT:  No.  We need to know this.

8          JUROR NUMBER 57:  -- because it is a chronic thing,

9   and it's a longer period of time, I thought I'd let you guys

10  know.

11         THE COURT:  Anything else you want to tell us or

12  advise us?

13         JUROR NUMBER 57:  Happy opening day.

14         THE COURT:  What?

15         JUROR NUMBER 57:  Happy opening day.

16         MR. CURTNER:  Oh, thank you.  Any side effects from

17  the -- once when you go get the shot once a month?

18         JUROR NUMBER 57:  No.  All it is is it's a hormone

19  therapy to keep the tumor from spreading.  It's pretty basic.

20         THE COURT:  Okay.  Perfect.  Thank you.

21  (Indiscernible).

22     (End sidebar)

23     (Sidebar conference as follows:)

24         THE COURT:  Number 2.

25         JUROR NUMBER 2:  I've got a biopsy scheduled in an

1   hour at the hospital. I've been fasting all morning. Depending

2   on the outcome of that, you know, the biopsy.

3         THE COURT: Other than that you're okay?

4         JUROR NUMBER 2: Yeah.

5         THE COURT: And it's scheduled in an hour?

6         JUROR NUMBER 2: Yes.

7         THE COURT: Any objection to (indiscernible)?

8         MR. CURTNER: No.

9         THE COURT: Could you just go tell the clerk that

10  you've been excused. Number 2 is excused.

11         JUROR NUMBER 2: Okay. Thank you.

12         THE COURT: All right.

13    (End sidebar)

14         THE COURT: Next.

15    (Sidebar conference as follows:)

16         THE COURT: Hi.

17         JUROR NUMBER 34: Hi.

18         THE COURT: Let's get your number.

19         JUROR NUMBER 34: Number 34.

20         THE COURT: Yes, ma'am.

21         JUROR NUMBER 34: I really would like to participate

22  in the jury, but then I am an on-call dental assistant, and --

23         THE COURT: Okay, you're on call.

24         JUROR NUMBER 34: A fill-in assistant, dental

25  assistant.

1            THE COURT:  And tell --

2            JUROR NUMBER 34:  Fill-in.  Dental.

3            THE COURT:  Oh, you're a fill-in dental assistant.

4   And maybe someone is going to have a toothache --

5            JUROR NUMBER 34:  I know.  They just filled me in

6   really, and this is the day that -- from the 1st to the 4th and

7   the 10th and the 14th to the 17th of April, so I already

8   committed to them.  And they don't have an assistant if I don't

9   show up tomorrow to work.  So I don't know if I could --

10           THE COURT:  (Indiscernible).

11           JUROR NUMBER 34:  Yeah.  And I'm a single mom, too, so

12  I really need some extra cash.  I mean, who knows.

13           THE COURT:  We'll pay you 40 bucks a day here.

14           JUROR NUMBER 34:  I got more than that much.

15           THE COURT:  You're kidding.  They pay dental

16  assistants that much?

17           JUROR NUMBER 34:  Yeah, I get paid $25 an hour, so

18  it's like, I could have used that.  Whatever.

19           THE COURT:  So you really want to be excused so you

20  can work.  Other than that --

21           JUROR NUMBER 34:  Yes.  I could come in the next time.

22  I will just make sure that I -- I committed to them back in

23  January, and I got the letter, like, some time, you know, for

24  this jury, and like, oh, my gosh, I hope I don't get called.

25           THE COURT:  Okay, let's think about it.  We'll talk

1    later.

2                 JUROR NUMBER 34:  Thank you.  Thank you so much.

3         (End sidebar)

4                 THE COURT:  Yes, sir.

5         (Sidebar conference as follows:)

6                 THE COURT:  We left a spot for you.

7                 JUROR NUMBER 61:  I guess I'll get on this podium.

8                 THE COURT:  Yeah, you do.

9                 JUROR NUMBER 61:  My soapbox.  I'm 61.  I'm older than

10   that, too.  But I have had two surgeries on my back, and they

11   have removed two of the discs.  I haven't had to sit that long

12   for that period of time.  I'm pretty active most of the time,

13   and if I sit much at a desk for any length of time, then it

14   really bothers me.  Sitting in a chair is not so bad, but

15   leaning forward and -- and so I can, you know, I've never tried

16   it for that long since, but you know --

17                THE COURT:  Well, we go for about an hour and a half

18   then take a break, then come back for an hour and a half and

19   then lunch.  That's roughly how it goes.

20                JUROR NUMBER 61:  Because I took off this time and

21   wandered back and forth, and then they said, "Well, you can't.

22   You've got to come down to the jury room and wait."

23                THE COURT:  Well, we strive to accommodate.  Like it

24   wouldn't even bother me if you were in the back row if you stood

25   up.

1        JUROR NUMBER 61:  Okay.

2        THE COURT:  I mean, we can make accommodations.  Is

3  that your concern primarily?

4        JUROR NUMBER 61:  Yeah, basically.  I just -- I've

5  never tried sitting that long, you know.  And I know after a

6  while --

7        THE COURT:  Do you work now?

8        JUROR NUMBER 61:  Huh?

9        THE COURT:  Do you work?

10        JUROR NUMBER 61:  Oh, yeah.

11        THE COURT:  So you can get out and do things, you're

12  just worried about sitting?

13        JUROR NUMBER 61:  Yeah, the sitting part is worse.

14  Sitting at my desk doing my reports and stuff is where it really

15  bothers me now.  But working --

16        THE COURT:  But sitting back in a chair --

17        JUROR NUMBER 61:  Sitting back in a chair where I can

18  lean back, or if I can stand up occasionally and walk around a

19  little bit, I don't think I'd have much problem with that.

20        THE COURT:  We'll see how it goes.  Thank you.

21        JUROR NUMBER 61:  Thank you.

22    (End sidebar)

23    (Sidebar conference as follows:)

24        THE COURT:  Yes, sir.  I've seen you before.  Number

25  37.

1          JUROR NUMBER 37:  I'm Number 37.  I have tickets to
2     leave the state on the 23rd of April.  I have speaking
3     commitments also on the 23rd of April, the 18th of April, and
4     the 11th of April.  I have three federal grant reports to do in
5     the next 10 to 15 days, depending on which grant they are, and I
6     have two grant applications to complete in the next 21 days.
7     I'm down one position administratively, so --
8          THE COURT:  And who did you know?  One of the
9     witnesses (indiscernible).
10          JUROR NUMBER 37:  I know the Trooper Sine, yeah, Jim
11    Sine.
12          THE COURT:  (Indiscernible).
13          JUROR NUMBER 37:  That's my life.
14          THE COURT:  That's your story and you're sticking to
15    it?
16          JUROR NUMBER 37:  Yep.
17          THE COURT:  Okay.  Thank you.
18     (End sidebar)
19          THE COURT:  Yes, ma'am.
20     (Sidebar conference as follows:)
21          THE COURT:  Number 11.
22          JUROR NUMBER 11:  I need to -- I don't know if this is
23    something I need to waste your time with, but I'm a single
24    parent.  I have two children that I have to get off to school in
25    the morning.  I live in Palmer.  I'm having to leave Palmer at 6

o'clock in the morning to get here by 7:30.  My son is
delinquent, and he informed me this morning that if I'm not
there, he is not going to school.

THE COURT:  (Indiscernible).  How old is he?

JUROR NUMBER 11:  Thirteen.

THE COURT:  Oh, a perfect age.

JUROR NUMBER 11:  Perfect.

THE COURT:  What time does he go to school in the
morning?

JUROR NUMBER 11:  School starts at 7:45.

THE COURT:  So if you had to be here at 8:30 it
wouldn't be as bad as 7:30.

JUROR NUMBER 11:  Correct.  If I could, yeah, leave
Palmer at 7:30 I could get here by 8:30, correct, and get --

THE COURT:  And we would try to start at 9 and be done
between 3 and 5.  Can somebody cover the afternoon?

JUROR NUMBER 11:  Afternoon is fine.  I just worry
that he is not going to go to school if I'm not there to get him
off to school.

THE COURT:  Well, we can take care of that, what time
we start --

JUROR NUMBER 11:  Okay.

THE COURT:  -- so 8:30 is the earliest, and probably 9
most mornings.

JUROR NUMBER 11:  That would help big time.

1          Also I manage a vitamin store, and I don't know that I

2    have coverage for four weeks, somebody to cover me, to be able

3    to open the store.  I'm normally there 40 hours a week.

4          THE COURT:  But you have some fill-in, don't you?

5          JUROR NUMBER 11:  I had to pull in people from other

6    stores for this week.  I covered this week, but for four weeks,

7    I had no idea it might last four weeks.  So --

8          THE COURT:  Anything else?

9          JUROR NUMBER 11:  Nothing else, no.

10          THE COURT:  Do you want to serve, or do you want

11    not -- you don't want to serve?

12          JUROR NUMBER 11:  I would prefer not to.

13          THE COURT:  Because of that?

14          JUROR NUMBER 11:  Because it's going to make it

15    extremely --

16          THE COURT:  But you could be a fair juror otherwise?

17          JUROR NUMBER 11:  Yes, sir.

18          THE COURT:  I mean, can you listen to the evidence and

19    apply the law?

20          JUROR NUMBER 11:  Yes, I can.

21          THE COURT:  So if the government proves the case, say

22    guilty; and if they don't prove the case, say not guilty.  Can

23    you be fair to both sides?

24          JUROR NUMBER 11:  Yes, I can.  It's just that it

25    conflicts with my place of employment and me trying to raise my

1   children.

2          THE COURT:  Good luck.

3      (End sidebar)

4          THE COURT:  Yes, ma'am.

5      (Sidebar conference as follows:)

6          THE COURT:  Number 29.

7          JUROR NUMBER 29:  29.  Well, I would like to be

8  excused just for one day.  Next Friday, April 11th, I have prior

9  commitment to go to the Portland.

10         THE COURT:  Okay.  You want to be excused next Friday?

11         JUROR NUMBER 29:  Yes.  Just one day.

12         THE COURT:  Why?

13         JUROR NUMBER 29:  I'm meeting my future

14  daughter-in-law.  And it's coordination of four people.  My --

15  my schedule, my husband, my son, and --

16         THE COURT:  Where are you meeting your future

17  daughter-in-law?

18         JUROR NUMBER 29:  Well, in the Portland.

19         THE COURT:  In Portland?

20         JUROR NUMBER 29:  Yes.  My son is living in Portland.

21         THE COURT:  You want to fly out of here next Friday.

22         JUROR NUMBER 29:  Yes.  Just for the weekend, but --

23         THE COURT:  You have tickets already?

24         JUROR NUMBER 29:  Hmm?

25         THE COURT:  Do you have tickets already?

1          JUROR NUMBER 29:  Yes, I do have tickets.  And we have

2    tickets for few months actually.  So if would be possible.

3          THE COURT:  Would you be back -- you would be back by

4    Monday?

5          JUROR NUMBER 29:  Yeah, I would be back Sunday night,

6    yes.  So just basically one day.

7          THE COURT:  Can you be a fair juror otherwise?  Forget

8    about that issue.

9          JUROR NUMBER 29:  Oh, yes.  I would.

10         THE COURT:  If you listen to all this, can you listen

11   to the evidence and follow the instructions?

12         JUROR NUMBER 29:  Yes.

13         THE COURT:  What do you do for a living?

14         JUROR NUMBER 29:  I'm working as the technical support

15   contractor for the FAA.

16         THE COURT:  You work for the FAA?

17         JUROR NUMBER 29:  No.  I'm contractor for FAA.  I'm

18   not FAA.

19         THE COURT:  What do you do there?

20         JUROR NUMBER 29:  Drafting.  Supervise -- I am

21   drafting supervisor.

22         THE COURT:  So what gives you the skills to draft?

23   Are you an architect or are you --

24         JUROR NUMBER 29:  No, we actually cover a lot of

25   architecturals, structurals --

1          THE COURT:  Do you have a degree that gives you this
2   skill, or --
3          JUROR NUMBER 29:  Technician.
4          THE COURT:  You're a technician?
5          JUROR NUMBER 29:  Technician, yes.
6          THE COURT:  Okay.  You have a regular job, you got off
7   next Friday to go meet your future daughter-in-law?
8          JUROR NUMBER 29:  Yes.
9          THE COURT:  Okay, and what else do you have?  Do you
10  have another excuse?
11          JUROR NUMBER 29:  Nothing else.  Not other excuses,
12  just one thing.
13          THE COURT:  Well, I don't know.  I need to think about
14  it, okay?
15          JUROR NUMBER 29:  All right.  Thank you.
16      (End sidebar)
17          THE COURT:  We have a total of what?
18          THE CLERK:  58 now.
19          THE COURT:  Okay.
20      (Sidebar conference as follows:)
21          JUROR NUMBER 1:  Juror Number 1.
22          THE COURT:  Yes, sir.  You're Number 1.
23  Congratulations.
24          JUROR NUMBER 1:  Your Honor, my father is not well in
25  Michigan, and I may have to go down there at any given time.  I

1  would just hate to have that be a problem.

2          THE COURT:  Well, what -- give me more specifics.  I

3  mean --

4          JUROR NUMBER 1:  He's 83 years old.

5          THE COURT:  Okay.  Do you have a trip planned?

6          JUROR NUMBER 1:  I don't have a trip planned, no, sir.

7          THE COURT:  What would cause you to go down?

8          JUROR NUMBER 1:  If he would take a turn for the

9  worse.

10         THE COURT:  How is he now?

11         JUROR NUMBER 1:  He is not well, sir.

12         THE COURT:  What does that mean?  Is he living by

13  himself?

14         JUROR NUMBER 1:  No, he's in the hospital.

15         THE COURT:  He's in the hospital?

16         JUROR NUMBER 1:  Yeah.

17         THE COURT:  Has he been hospitalized recently?

18         JUROR NUMBER 1:  He has been in the hospital now for

19  about three days.

20         THE COURT:  It sort of sounds like he has taken a turn

21  for the worse.

22         JUROR NUMBER 1:  Well, it could be worse yet.

23         THE COURT:  Do you expect him to be released?

24         JUROR NUMBER 1:  Not really.  He's 83 years old, sir.

25         THE COURT:  Yeah, but that's young.

 1          JUROR NUMBER 1:  Yes, sir.  I understand.  I just
 2  wanted to let you know.
 3          THE COURT:  No, I understand.  That's why we have
 4  alternates, but I'm sure you understand.  How imminent
 5  (indiscernible)?
 6          JUROR NUMBER 1:  Really no way of telling.
 7          THE COURT:  So he's in the hospital.
 8          JUROR NUMBER 1:  Yes.
 9          THE COURT:  He's being treated.  You don't plan to
10  leave unless someone gives you a call and says that it's
11  terminal?
12          JUROR NUMBER 1:  Yes.
13          THE COURT:  But it's not terminal now?
14          JUROR NUMBER 1:  No, sir.
15          THE COURT:  So he may be released?
16          JUROR NUMBER 1:  He may.  He's done this before.  I
17  mean, he turned the corner.  I don't know how to answer it, Your
18  Honor.
19          THE COURT:  Well, our situation is this.  If it's
20  likely you can stay, then we'd keep you; and if something came
21  up and you're (indiscernible), we'd just make you an alternate
22  and you'd fly out.  I mean, that's one of the options we have.
23  We have many options.
24          JUROR NUMBER 1:  I understand.
25          THE COURT:  So we're going to get some advice from you

```
1   to help us -- that's what I'm trying to figure out.  You don't
2   know?
3               JUROR NUMBER 1:  I wish I knew.
4               THE COURT:  Okay.
5               JUROR NUMBER 1:  I wish I knew.
6               THE COURT:  I gotcha.  Do you work here?
7               JUROR NUMBER 1:  I do.  I work down on the Joint Base
8   Elmendorf-Richardson.  I'm a civil servant, a mechanic.
9               THE COURT:  Okay.
10              Hey, listen, counsel, if you have any questions, let
11  me know.  I'm doing all the work here.
12              Okay, (indiscernible), thank you.
13      (End sidebar)
14      (Sidebar conference as follows:)
15              THE COURT:  Number 44.
16              JUROR NUMBER 44:  44.  I don't know if it's relevant
17  or not, but I already have a trip paid for end of April, so the
18  last weekend in April.  Our trip already paid for to leave the
19  state.  So I don't know if it matters or not.
20              THE COURT:  Well, not to me.
21              JUROR NUMBER 44:  But it matters to me.  It would be
22  the 25th.
23              THE COURT:  Is this like a critical thing, or --
24              JUROR NUMBER 44:  No, I would -- if I got selected I'd
25  be -- I would just pick a later flight or whatever.
```

THE COURT: Anything else that we need to know? I mean, it's not like you're eloping, getting married, or anything?

JUROR NUMBER 44: No.

THE COURT: No, it's not like that. It's not surgery you're planning?

JUROR NUMBER 44: No.

THE COURT: Oh, okay. It's a vacation?

JUROR NUMBER 44: Yeah.

THE COURT: Okay. And you're telling us about it, but frankly, if you're on, you're on, unless we get right to the end and we may need an alternate or something like that.

JUROR NUMBER 44: Yeah, okay. Well, no, I wasn't sure, so I said I better -- I better check.

THE COURT: No, (indiscernible), it's an hard question for us because we need jurors --

JUROR NUMBER 44: Yeah.

THE COURT: -- in court. A four-week trial, it's not easy.

JUROR NUMBER 44: Yeah. Okay.

THE COURT: Other than that, can you serve as a juror?

JUROR NUMBER 44: Yeah.

THE COURT: You can listen to the whole trial and not be distracted?

JUROR NUMBER 44: Yeah.

1          THE COURT:  Fair to both sides?

2          JUROR NUMBER 44:  Yeah.

3          THE COURT:  What do you do for a living?

4          JUROR NUMBER 44:  I do mammography.  Radiology.

5          THE COURT:  So you work at the hospital?

6          JUROR NUMBER 44:  At the Native hospital.

7          THE COURT:  Okay.  Thank you.

8     (End sidebar)

9     (Sidebar conference as follows:)

10          THE COURT:  Yes, sir.

11          JUROR NUMBER 31:  Number 31.

12          THE COURT:  Yes, sir.

13          JUROR NUMBER 31:  I've got tickets bought and paid for

14    based around my jury service that start April 26th, returning

15    May 10th.  I'm flying to Washington state for kind of combined

16    medical work and family.  I'm getting some crowns put on my

17    teeth.  And anyway, the dates are chosen.  And when you said,

18    you know, if the thing drags on, I'd be out about $1000 a

19    ticket, so --

20          THE COURT:  Well, were they non-refundable?

21          JUROR NUMBER 31:  Yeah, they are non-refundable.

22          THE COURT:  But you just -- you could leave later.

23    Most non-refundables, maybe you can change the date.

24          JUROR NUMBER 31:  I don't know.  I actually don't know

25    what the policy is from Alaska Airlines.  I fly from Bethel.

          1              THE COURT:  You're from Bethel?

          2              JUROR NUMBER 31:  Yes.

          3              THE COURT:  Okay.  What do you do in Bethel?

          4              JUROR NUMBER 31:  I manage a bunch of resources and

          5     properties for Hooper Bay Native Corporation.

          6              THE COURT:  Okay.  What's tough is that the trial may

          7     be done by then, but we don't know.

          8              JUROR NUMBER 31:  Right, right.  Well, I understand

          9     that.  And it -- I wouldn't have any problem serving.  Like I

         10     said, I chose those dates because --

         11              THE COURT:  I know it was -- everybody has a life.

         12              JUROR NUMBER 31:  Yeah.  Okay.  Thanks.

         13              THE COURT:  All right.  Thank you.

         14         (End sidebar)

         15         (Sidebar conference as follows:)

         16              THE COURT:  Yes, sir.  You're Number 14.

         17              JUROR NUMBER 14:  Yep.  I wouldn't say impossible, but

         18     I'm a project engineer for the City of Soldotna, so our short

         19     construction season is ramping up right now.  I've got several

         20     projects that are in design, out to bid, or will be getting

         21     started in construction in the next month.  So it would just

         22     really impact my department.  And my boss is on vacation next

         23     week as well, so --

         24              THE COURT:  What are you saying?

         25              JUROR NUMBER 14:  I'm saying that it will still happen

1  if I'm not there, but it's just going to severely impact my

2  department and projects.

3          THE COURT:  Can you pay attention to a trial when

4  you're here?

5          JUROR NUMBER 14:  When I'm here, yeah, but I'd be

6  extremely busy at night.

7          THE COURT:  Stay in a fancy hotel?

8          JUROR NUMBER 14:  It would be easier if I was in

9  Soldotna, but --

10         THE COURT:  I understand.  But you understand what

11 we're dealing with here?

12         JUROR NUMBER 14:  I completely understand, so I'm not

13 saying impossible, but --

14         THE COURT:  Because you're not a person

15 (indiscernible) walk out.

16         JUROR NUMBER 14:  That's what I figured, but --

17         THE COURT:  Well, I don't know (indiscernible).

18         JUROR NUMBER 14:  Okay.

19    (End sidebar)

20    (Sidebar conference as follows:)

21         JUROR NUMBER 54:  Plead my case.  54.

22         THE COURT:  Yes, sir.

23         JUROR NUMBER 54:  Yeah, I can't afford to take off one

24 month.

25         THE COURT:  What do you do?

```
 1            JUROR NUMBER 54:  I'm a construction worker.

 2            THE COURT:  Do you have a job now?

 3            JUROR NUMBER 54:  Yes, I do.

 4            THE COURT:  Who do you work for?

 5            JUROR NUMBER 54:  H Watt and Scott.  I have four kids,

 6   and I just finished building our house, and I --

 7            THE COURT:  You have a full-time job now?

 8            JUROR NUMBER 54:  Yes, I do.

 9            THE COURT:  And if you miss four weeks, it might

10   impact you (indiscernible).  You know you get paid $40 a day to

11   do this.

12            JUROR NUMBER 54:  That's a very small fraction.

13            THE COURT:  They're paying more than that nowadays in

14   construction?

15            JUROR NUMBER 54:  Yeah.  I just finished building our

16   house, and I haven't -- we haven't adjusted to the new mortgage

17   yet, so it's a little nervous.

18            THE COURT:  So what kind of -- I mean, what do you do?

19   You go to work, what, 7 to 4 or something like that?

20            JUROR NUMBER 54:  7 to 3:30.

21            THE COURT:  Okay, and is it like a union job?

22            JUROR NUMBER 54:  No, I'm not union.

23            THE COURT:  So who do you work for?

24            JUROR NUMBER 54:  H Watt and Scott.

25            THE COURT:  And what do you do, framing?
```

1          JUROR NUMBER 54:  I do everything, every aspect of

2  construction.

3          THE COURT:  What does your employer do?  Framing?

4          JUROR NUMBER 54:  They are the general contractor.

5          THE COURT:  For what?

6          JUROR NUMBER 54:  Building everything.

7          THE COURT:  I know, but give me a sense of what --

8          JUROR NUMBER 54:  Like right now we're building the

9  PIP's Printing place.

10          THE COURT:  Okay.  And if you worked there, you'd do

11  what?  Framing?

12          JUROR NUMBER 54:  This week I'm working on siding.

13          THE COURT:  Okay.  They could live without you, but

14  you couldn't live without them is what you're saying?

15          JUROR NUMBER 54:  I'd have a really hard time without

16  the paycheck.

17          THE COURT:  That's here in Anchorage?

18          JUROR NUMBER 54:  Yes.  4th and Ingra right now.

19          THE COURT:  Like, we're not going to do any business

20  here Friday.  Could you go work one day and then come back, or

21  no?  Would they take you coming and going?

22          JUROR NUMBER 54:  They might.

23          THE COURT:  Okay.  We'll have to think about this.  I

24  don't know.

25          JUROR NUMBER 54:  I understand.

1      (End sidebar)

2            THE COURT:  Okay.  That's it?

3      (Sidebar conference as follows:)

4      (Whispered conversation - indiscernible)

5            THE COURT:  Is there any ones we can agree -- agree to

6   right off the bat?  We let the one lady go who has a matter,

7   (indiscernible) in an hour.

8            MR. CURTNER:  She's getting a biopsy, yeah.

9            THE COURT:  Biopsy, yeah.  The attention deficit

10  doesn't do much for me.  Chronically ill -- that -- he's okay.

11  I don't know what he means by "chronically ill."  Biopsy, what

12  was that all about?

13           MR. SCHRODER:  She's gone.

14           THE COURT:  She's already gone.  And don't try to read

15  my writing.

16           MS. LOEFFLER:  Oh, I'm sorry.  I wrote down the

17  numbers here.

18           MR. CURTNER:  I have 37, Your Honor.

19           THE COURT:  Yeah, 37 we can let him go.

20           MR. CURTNER:  That's the one that (indiscernible).

21           MS. LOEFFLER:  What's his issue?

22           THE COURT:  Well, he knows Sine kind of, plus he's too

23  busy, plus every time there's an issue, he's up here.

24           MR. CURTNER:  (Indiscernible).  And a bunch of grant

25  applications.

```
 1              THE COURT:  Yeah, and I had him for other reasons
 2   ready to go.  I mean, he knows Sine, he goes to church with him.
 3              MR. CURTNER:  Sine is a fairly (indiscernible), he
 4   knows him.
 5              THE COURT:  Okay.  What about the lady who has the
 6   vitamin store and two children?  But she doesn't know if she has
 7   coverage the second week.
 8              MR. SCHRODER:  Number 34 is the dental assistant, Your
 9   Honor.  I mean, I -- 34 is the dental assistant who really needs
10   the money.
11              THE COURT:  Yeah, I can let her go if you guys are in
12   agreement that -- she's the one that is the dental assistant?
13   She doesn't want to do it because she's just a fill-in, she just
14   got work this week.
15              MS. LOEFFLER:  Is this her first job?
16              MR. SCHRODER:  No, she didn't say that.
17              MR. CURTNER:  Well, maybe I'm thinking the wrong --
18              MR. SCHRODER:  She's a single mom.
19              THE COURT:  The heavyset dark-haired lady.
20              MR. OFFENBECHER:  So she's got some job scheduled.
21              MR. CURTNER:  She's on call.
22              THE COURT:  What about the tickets to Portland, Number
23   29?
24              MR. CURTNER:  That's just one day.
25              THE COURT:  Yeah, we'd have to cancel -- no, is that
```

the --

MR. CURTNER: She just wanted one day off.

THE COURT: She wanted next Friday off.

MR. SCHRODER: It's doable. The thing about that --

MS. LOEFFLER: It's doable. (Indiscernible).

MR. SCHRODER: -- we have some time built into the schedule if we wanted to do it before the witnesses (indiscernible). Do we still have people scheduled?

THE COURT: Yeah. What about this last guy? I mean, the construction worker. I was pretty sympathetic to him.

MR. CURTNER: He had four kids.

THE COURT: Four kids.

MS. LOEFFLER: What number is he?

MR. CURTNER: 54.

MS. LOEFFLER: We still have the woman that -- the woman that was the daughter is (indiscernible) getting married and wanted to fly (indiscernible).

MR. CURTNER: She's NOAA? She's the one --

MS. LOEFFLER: The one who worked for NOAA.

THE COURT: What number was hers?

MS. LOEFFLER: I think it's 21.

THE COURT: You want to let her go too?

MR. SCHRODER: Yeah.

THE COURT: Okay.

MR. CURTNER: Yes.

```
1              MS. LOEFFLER:  That is --

2              MR. CURTNER:  21?

3              MR. SCHRODER:  21.

4              THE COURT:  What about the guy with the two back

5  surgeries?  But he said he could stand up.  He'll be okay.

6              MS. LOEFFLER:  I've done this before.  Do we have

7  footstools?

8              THE COURT:  Yeah, we'll do -- I've got the footstools.

9              MR. CURTNER:  What about the vitamin store lady?  She

10 can't start till 9 in the morning, which is when we start

11 anyhow.  She's good for this week.  But she's not sure who's

12 covering for the weeks that follow.

13             MR. SCHRODER:  She's a single mom, two kids.

14             MR. OFFENBECHER:  And a 13-year-old juvenile

15 delinquent.

16             MR. SCHRODER:  Thirteen-year-old son is staying home

17 from school if she's not there.

18             MS. LOEFFLER:  Why?

19             THE COURT:  Who's running the house?

20             MS. LOEFFLER:  What number is she?

21             MR. SCHRODER:  (Indiscernible) people we're going to

22 have.

23             THE COURT:  What I'm -- I mean, you don't like the

24 idea.  I like the idea of letting these go we've agreed to.  The

25 questionable ones, play them down at the bottom and then address
```

it later, but you don't like that.

MS. LOEFFLER:  Then they don't -- my problem is that we don't -- the legal problem is we did have an appeal.  This is pertinent to this situation.

THE COURT:  But we agreed to it.

MS. LOEFFLER:  Well, we had an appeal previously.  The problem is we are unrandomizing.  If we hadn't yet -- they already randomized the list.  Once you randomize the list, I don't believe you can select people that are random and say, "Okay, Number 13, I'm going to reassign you 73."  That's a problem, because we had an appeal on this previously.

If we hadn't randomized the list, I think you could have said I'm going to stick these at the end.  But now what you're doing is you're rescrambling the list, and I think that is a legal problem.

THE COURT:  So what are we -- I'm going to -- I'm inclined to, the ones we've agreed to up here, be excused.  Then (indiscernible) and then we will reconsider excusing them again.

MR. CURTNER:  That's not -- we're reconsidering.

MS. LOEFFLER:  No.  That's right.  That's no problem. You just can't give them a different number.  I'm sorry, Judge. I know we've had this before.

MR. SCHRODER:  What number was the woman with the vitamin store?

MR. CURTNER:  11.

1           THE COURT:  So we're going to excuse -- everyone take

2    notes.  We're going to excuse 21.  We've already excused Number

3    2.  We're going to excuse Number 37.  Am I going too fast?

4           MS. LOEFFLER:  No, I got them.

5           THE COURT:  I guess Number 29, the tickets to

6    Portland.

7           MS. LOEFFLER:  I thought that was the one that we were

8    talking about only skipping one day.

9           MR. CURTNER:  No, that was the one day.

10          THE COURT:  Oh, the one day?  That's the one-day

11   ticket?  Okay.

12          MR. SCHRODER:  I believe it is.

13          MR. CURTNER:  We can reconsider that one.

14          THE COURT:  Okay.  What about the terminal father?

15   I'm kind of inclined to keep him because we can deal with him

16   later.  If his dad's path gets terminal, he's an alternate, he's

17   gone.

18          MR. SCHRODER:  We could have him be after the second

19   (indiscernible) second to the last one.

20          MS. LOEFFLER:  If they are willing to serve --

21          THE COURT:  Oh, yeah.  They're all willing to serve.

22   A lot of these people are willing to serve as long as we let

23   them go.

24          MS. LOEFFLER:  Just leave it and we'll deal with it if

25   it happens.  And if we have to excuse them, we have an

1  alternate.

2          THE COURT:  What about the project manager from

3  Soldotna?  He's got dental work on the 26th.

4          MR. SCHRODER:  Yeah, that's different.

5          THE COURT:  He's one of the last guys here.

6          MR. SCHRODER:  One guy was the guy from Soldotna who's

7  got all the work (indiscernible).

8          THE COURT:  I think now you're confusing the guys.

9          MR. SCHRODER:  Oh, okay.

10          MS. LOEFFLER:  I just look at them by number, the ones

11  you say.  We also said 54.

12          THE COURT:  Have re reached a decision?

13      (End sidebar)

14          THE COURT:  Okay.  Let me -- can -- all right.  Can we

15  have -- we're trying to put faces to numbers.

16          Could Number 21 stand up?  That's who we thought you

17  were.  Could Number 2 stand up?  No, because she's already gone.

18  How about Number 37?  Okay.  How about -- this is for everyone's

19  benefit so we're putting faces to numbers.

20          MR. SCHRODER:  Oh boy, now I'm confused.

21          MS. LOEFFLER:  Number 11.

22          THE COURT:  11.  Number 11.  We didn't -- did we talk

23  to you up here?  That's -- okay.  The vitamin store?

24          JUROR NUMBER 11:  Yes.

25          THE COURT:  Okay.  All right.  Thanks.

1            MS. LOEFFLER:  54.

2            THE COURT:  54.  Okay.  All those people that I asked

3  to stand up, could you stand up again?  This is exercise.  This

4  is the exercise portion during our -- it's very well worked out.

5  You four people may be excused.  Thank you very much.  Go down,

6  report to the -- where you were, tell them you've been excused.

7  We'll see you for the next trial, okay?

8            Now we're not done excusing people, but we're

9  starting.  Thank you all.  You have to report to the clerk to

10  tell the clerk.

11            THE CLERK:  Number 2 you had already done.

12            THE COURT:  Number 2 is already done.

13            That doesn't mean we've -- we're done with the rest of

14  you.  It just means we're trying to get our breath.

15      (Sidebar conference as follows:)

16            THE COURT:  Is that okay for now?  Do you want to do

17  any others for now.

18            MR. SCHRODER:  I don't think so, no.

19      (End sidebar)

20            THE COURT:  Now, those of you who came up and talked

21  to us, we'll talk to you again later, but we are just trying to

22  clean the paper up a little bit.  So let's go back and get the

23  process going a little further.  Okay, next stage.

24            All right, ladies and gentlemen, I've asked you about

25  every question I can think of to determine whether or not you

1  can serve as jurors in this case.  Is there something that I

2  missed?  Something that you're sitting there thinking, doggone

3  it, I hope he doesn't ask this question or else I'm nailed.  No

4  one?  Have I missed something?

5        Can you -- oh, what did I fail -- forget to ask?  Do

6  you want to come back here?  You're debating that, too.

7        JUROR NUMBER 13:  Not necessarily.  I have a court

8  date at the state courthouse on the 10th of April.  I don't know

9  if that would affect it at all.

10       THE COURT:  As a witness?

11       JUROR NUMBER 13:  No.  Involving me.

12       THE COURT:  Why don't we come back here.

13       MS. LOEFFLER:  Do you want me to take this one?

14    (Sidebar conference as follows:)

15       THE COURT:  Number 13.  So we'll get everybody here.

16  All right, so you're Number 13?  What was this all about?

17       JUROR NUMBER 13:  I have a dissolution appointment at

18  2:30.

19       THE COURT:  Oh.

20       JUROR NUMBER 13:  So I don't know.

21       THE COURT:  What do you mean?  What is that, like a

22  child custody investigation?

23       JUROR NUMBER 13:  Marriage dissolution.

24       THE COURT:  I know what it is, but I mean, what is --

25  is it the hearing?

1    JUROR NUMBER 13:  It's the hearing to sign off on the

2  (indiscernible) for the court.

3    THE COURT:  Well, we can deal with that.

4    JUROR NUMBER 13:  Yeah, I didn't have any problem --

5    THE COURT:  And the judge over there will put it at

6  the end of the day or something.

7    JUROR NUMBER 13:  Yeah, it's at 2:30.

8    THE COURT:  Oh, no problem.

9    JUROR NUMBER 13:  So I don't mind it.  I'm just

10  sitting back there thinking, you guys might need to know, don't

11  want to cause a problem.

12    THE COURT:  You can stay married another week or two,

13  it's not going to kill you.

14    JUROR NUMBER 13:  It doesn't bother me.

15    THE COURT:  Okay.  All right, thanks.

16    (End sidebar)

17    THE COURT:  Okay.  What else did I forget?  Can't

18  think of anything else?  Counsel, what did I forget?  You want

19  me to inquire of anything else?  We're going to have more

20  chances.  Some major area --

21    MS. LOEFFLER:  I think we're good until the next

22  round, Judge.

23    THE COURT:  Next round.  You'll get another chance.

24  Nothing on your mind right now?

25    UNIDENTIFIED JUROR:  No, Your Honor.

THE COURT:  Okay.  All right.  So what we're going to
do is we're going to pick 36 names.  Is that what we decided,
Nancy?  Okay.  When your name is picked, you come up and you
assume a position here in the jury box and in the front row or
so there, and then we've got some more questions.  But we're
just kind of moving the process along.  So Madam Clerk, if you
can do that.

THE CLERK:  Number 43.  Okay, if you can please come
up and sit on the first chair closest.  Or are we doing it that
way?

THE COURT:  That's your call.  Why don't you make your
mind up.

THE CLERK:  All right.  The first chair closest to the
CSO over there.  Come in and around.

THE COURT:  Okay.  You get to come through here,
ma'am, you get to walk all the way, and you get the best seat in
the house.

THE CLERK:  Juror Number 28.  Juror Number 55.  Juror
Number 47.  Juror Number 31.  Juror Number 9.  Juror Number 30.
Juror Number 24.

THE COURT:  Those chairs go up and down, and you'll
have plenty of time to adjust them.

THE CLERK:  Okay.  Juror Number 17.  And sir, you'll
start on the second row all the way in.  Juror Number 39.  Juror
Number 50, 5-0.  Juror Number 14.  Juror Number 34.  Juror

Number 57.  Juror Number 60.  Juror Number 29.  And ma'am,
you'll start on the first row [sic] on the second row.  Yes.

        THE COURT:  No, is that where you want --

        THE CLERK:  The first seat on the --

        THE COURT:  Okay.

        THE CLERK:  Right.  We only have 15 up here, so --

        THE COURT:  I know.  It's just are we starting on left
or right.  But you decided to start on the left, so that's what
we're going to do.

        THE CLERK:  Juror Number 5.  Juror Number 44.  Juror
Number 56.  Juror Number 18.  Juror Number 51.  Juror Number 46.
Juror Number 42.  Juror Number 32.  Juror Number 23.  Juror
Number 10.  Juror Number 4.  Juror Number 1.  Juror Number 58.
Juror Number 33.  Juror Number 53.  Juror Number 48.  Juror
Number 13.

        THE COURT:  Nancy, do you want to give him --

        THE CLERK:  Oh, the second row on that side, sir.  All
the way to the end, please.  Juror Number 15.  Juror Number 22.
Juror Number 25.

        Your Honor, 36 names have been called.

        THE COURT:  Okay.  Ma'am, are you okay?

        JUROR NUMBER 22:  Yeah.  The chair was so hard it
locked my hip up.

        THE COURT:  Okay.  You let us know if you need
anything.

```
 1              So counsel, we have called 36 names.
 2              MR. CURTNER:  Judge, if I count correctly, we want 17.
 3  Do we need 37?
 4              THE COURT:  Let's go for -- let's go 38.  Just get it
 5  out.
 6              THE CLERK:  Okay.  Juror Number 36.  And Juror Number
 7  38.
 8              THE COURT:  Perfect.  So Mr. Curtner, I get 15 plus 20
 9  is 35.
10              MS. LOEFFLER:  Yep.
11              MR. CURTNER:  I didn't bring my calculator.
12              MS. LOEFFLER:  That's --
13              THE COURT:  Okay.  All right.  You get --
14              MS. LOEFFLER:  I was wondering what the other were --
15  what the other four were too.
16              THE COURT:  You -- starting questioning myself.  Okay,
17  38 is good to have.
18              All right, ladies and gentlemen.  Now we get more
19  activity.  Were there papers there?  Okay.  We're still going to
20  be -- we haven't -- we're far from making an ultimate decision,
21  but we need to have -- we're going to hear from these 38 or so,
22  and then we're going to do some more adjusting.  So you in the
23  back will get a shot possibly, we're just not certain.
24              So what I want to do now, we want to ask each of you
25  to answer the -- I think there is 12 questions on that paper.  I
```

1  want to remind you that you are under oath, and you need to

2  answer truthfully.  And then from that, we'll go.

3          And juror number one, you're in the hot seat.  You get

4  to start us off.

5          MS. LOEFFLER:  Your Honor, I think we have to take the

6  microphone and pass it around to the jurors.

7          THE COURT:  We usually have a walking microphone, so

8  we're working on it.

9          Okay.  Thank you.

10          JUROR NUMBER 43:  My residence is here is Anchorage.

11  My first stint, '82 to '90.

12          THE COURT:  What -- give us your number first.

13          JUROR NUMBER 43:  Oh, I'm sorry.  43.

14          THE COURT:  Okay.

15          JUROR NUMBER 43:  Anchorage '82 to '90 and then '95 to

16  present.  The Arc of Anchorage is my employer.  I'm the director

17  of behavioral health services there.  I've been there for

18  four -- four years and four months.

19          Prior to that I was at North Star hospital for six

20  months.  I have a master's degree.  I'm married.  My spouse

21  works for McLaughlin Youth Center.  I have a 21-year-old son, a

22  7-year-old daughter, and an 18-year-old stepson.  My hobbies are

23  softball, basketball, and attending church-related functions.

24  No military service.  And I have not served as a juror.

25          THE COURT:  Thank you.  All right.

1    JUROR NUMBER 28:  Hello.  Number 28.  I live in

2  Anchorage, Alaska.  I've lived here since 2000.  I currently

3  work for LaTouche Pediatrics.  I am a nurse practitioner.  In

4  the past five years I worked for Providence Alaska Medical

5  Center in their neonatal ICU.  I have a master's degree.  I am

6  married.  My husband works as a computer programmer at the

7  Alaska Native Health Consortium.  We do not have children.  I

8  knit, but I am not a member of any formal clubs or

9  organizations.  No military service, and no prior juror service.

10    JUROR NUMBER 55:  I'm Number 55.  I live here in

11  Anchorage, Alaska.  I have lived here for 30 years.  I work for

12  a company called UMIAQ.  I am a document processor.  I have

13  worked for, in the last five years, a company called ARCADIS,

14  and ASRC Energy Services.  I am currently going to school as

15  well.  I'm married.  My husband works on the Slope as a

16  pipefitter.  We have three children, daughters, 17, 8, and 4.

17  No real hobbies, as my schedule is already full.  No military

18  service, and I have not served on any juries.

19    JUROR NUMBER 47:  I'm Juror Number 47, and I live in

20  Wasilla, and I've lived in Alaska since 1979.  My former

21  employer was the State of Alaska, Alaska Court System.  I was

22  the clerk of court there, which is basically like an office

23  manager for the clerk's office.  I worked there for over 30

24  years.  High school diploma.  I am married.  My husband is

25  recently retired.  Also, he was a telephone cable splicer for

1    Matanuska Telephone.  I have three sons.  Their ages are 41, 37,
2    and 35.  And as far as hobbies, clubs, and organizations, right
3    now since I'm retired it's mostly grandkids.  And my husband was
4    former military, but I was never military.  I've been on jury
5    duty or jury service once before and it was in a criminal case,
6    and a verdict was reached.

7              JUROR NUMBER 31:  I'm Juror Number -- or prospective
8    Juror Number 31.  I live in Bethel, Alaska.  I moved there in
9    2010.  I've lived in Fairbanks through the 70's and then in
10   Washington state during that income period.  I'm self-employed,
11   but I'm under contract to Hooper Bay Native Corporation managing
12   their resources in Bethel, and doing some construction, managing
13   some construction out in Aniak and Hooper Bay.  I have a couple
14   of years of college.  I am in the process of being divorced.  My
15   wife works for one of the Native hospitals down in Nikiski.  I
16   have three children, one daughter 38, a son 26, and another
17   daughter 24.  I'm active in the Bethel Actor's Guild and the Boy
18   Scouts, and then the usual Alaska hunting and fishing.  I was
19   never in the military and have never served on a jury.

20             JUROR NUMBER 9:  I'm Juror Number 9.  I live here in
21   Anchorage, I was born and raised here.  I'm retired.  I retired
22   in 2010.  I was a air freight agent working for UPS Supply Chain
23   Solutions, which is the heavyweight division of UPS.  I have two
24   years of college.  I'm single, no children.  I do quilting.  I
25   have never been in the military.  I have been on, I guess, a

civil jury and also a criminal jury, a murder trial.  And a
verdict on that was not reached.

JUROR NUMBER 30:  Juror Number 30.  Born and raised
here in Alaska.  Here from '67 to '86, and then '91 to present.
I work for the Alaska Railroad Corporation.  Real estate
technician, as well as a surplus technician.  High school
graduate and Travel Academy graduate.  Single.  One child, 22.
Cruising is what I do, and Disney World is my place of choice.
I attend church.  And I almost got to serve on a civil jury, but
he pleaded out.

JUROR NUMBER 24:  Number 24.  I live in Anchorage,
Alaska approximately eight years.  I work for Chugach Electric
Association.  I'm a pricing and market analyst.  I've been there
about three years.  Prior to that I was in Bethel working for
the vocational training center there, as well as the Housing
Authority doing weatherization retrofits in the villages.  I
have a master of public administration.  I'm single.  No
children.  I'm involved with Ducks Unlimited, which is a
wetlands and waterfowl conservation organization.  I have no
prior military service.  And I was called for a jury in Bethel
but was not needed as a juror.

THE COURT:  So you -- I didn't catch, are you from
Bethel?

JUROR NUMBER 24:  I'm not from Bethel.  I lived there
for a few years.

1       THE CLERK:  We'll start at the other side of the --

2       JUROR NUMBER 17:  I'm Juror Number 17.  I live in

3  Bethel.  I've lived in Alaska for the past 40 years.  I'm not

4  employed.  I used to work for the postal service, but was sort

5  of retired there for this accident I was in a couple of years

6  ago.  I'm married.  My wife works for UAF.  She's worked there

7  for 26 years.  I have some college.  Four children, ages 34, 33,

8  32, 29.  Hunt, fish, United States Marine Corps, and I was an

9  E-4.  I've served on juries prior, five criminal cases.  Reached

10  a verdict in four of them, and no verdict in one of them.

11       JUROR NUMBER 39:  Juror Number 39.  I live in Homer.

12  I've been in Alaska 40 years.  I'm retired, been retired for a

13  while, ten years actually.  I've had about 18 years of formal

14  education, but never got a degree.  I'm married, I have two

15  children, daughter is 40, son is 38.  I fish, hunt, dabble in

16  gold mining nowadays.  I was in the Army for ten years, I was

17  discharged as a staff sergeant.  I served on a jury up in Nome,

18  it was a criminal case, and we did reach a verdict.

19       JUROR NUMBER 50:  Number 50.  I live in Wasilla,

20  Alaska.  I have lived there for ten years.  I work for the U.S.

21  Public Health Service.  I'm a pharmacist.  I've done that for

22  ten and a half years.  I am a doctor of pharmacy.  I'm married.

23  We have -- my wife is a nurse at Mat-Su Regional.  We have two

24  kids, ages 8 and 10.  No hobbies.  I'm active duty, uniformed

25  services but not military.  I have never served on a jury.

1          JUROR NUMBER 14:  Number 14.  I live in Soldotna.  I
2    have been there about a little over three and a half years.  I
3    work for the City of Soldotna as a project manager.  Before that
4    I worked as a consulting engineer for a private firm, was a
5    student, and worked for Weyerhaeuser Lumber as a design
6    engineer.  I have an MBA.  I'm married.  My wife is a physical
7    therapist for CPGH in Soldotna.  I have a 2-year-old son.  I
8    run, I fish, I golf.  No military service.  And I've been called
9    for a jury service in Kenai but was never selected.

10          JUROR NUMBER 34:  I'm Juror Number 34.  I live in
11   Alaska since -- I live in Alaska since 1988.  My employer name
12   is Dr. Ben Belfiglio and Wrigley.  My kind of job is a certified
13   dental assistant since 1985.  And also a PCA.  I have some
14   college.  And I'm single.  I've got five children, age 34, 22,
15   18, 16, and 12.  Hobbies are my church religions.  No military
16   service.  No prior jury duty.

17          JUROR NUMBER 57:  I'm Juror Number 57.  I've been in
18   Anchorage for ten years.  That's also as long as I've lived in
19   Alaska.  I work for First American Title as a title officer.  I
20   have been there for ten years as well -- actually, 11 years.
21   I'm sorry, 11 years.  I've had some college education, a couple
22   of years, no degrees.  I'm married.  My wife works for The Arc
23   of Anchorage as a case manager.  We have no children.  And
24   hobbies, playing bass guitar, watching baseball, and
25   organizations.  The American Cancer Society, Cancer Action

Network, and Alaska Land Title Association.  No military service
and no prior jury service.

JUROR NUMBER 60:  Juror Number 60.  I live in Kenai.
I've lived in Alaska 25 years.  I'm currently unemployed.  In
the past I've worked for Big G Electrical and Engineering as a
laborer, and Peak Oilfield Services as a roustabout and a clerk.
Some college.  I'm single, I have no kids.  I'm not part of any
clubs or organizations.  No military service and no jury
service.

THE COURT:  Okay.  It goes all the way over here,
right?  No, back over here.

JUROR NUMBER 29:  I'm Juror Number 29.  I live in
Anchorage for the past 23 years.  I'm working for the Parsons
Corporation.  I'm drafting department supervisor.  I working for
this job for last 18 years.  I have 16 years of formal
education.  I am married to -- my husband is GCI technician.
Two children, 26 and 19.  I am fishing, basketball, and reading
is my hobby.  No military service, and about ten years ago I was
on the grand jury.

THE COURT:  Okay.

JUROR NUMBER 5:  Juror Number 5.  I live in Homer,
Alaska.  I have been in this state since 1993.  I work for the
State of Alaska.  I kind of manage trail crews during the
summertime, dealing with trail work in Kachemak Bay State Park.
I've been working with the State of Alaska and Alaska State

Parks probably for the past 18 years.  I have a bachelor's.  I
am single.  No children.  Hobbies, skiing, running, anything
outdoors.  I'm a volunteer DJ with public radio in Homer.  No
military service.  And I was on one jury before in Homer, I
believe it was a civil case, and a verdict was reached.

JUROR NUMBER 44:  Number 44, and I live in Anchorage.
Been here nine years.  Alaska Native Medical is my employer.  I
do mammography.  Been there -- so I have Associate of Science.
I'm married.  I have two children, 34 and 15.  Hobbies, I like
reading, biking, and belong to an organization, International
Leadership Development.  No military service and no prior jury
service.

JUROR NUMBER 56:  Juror Number 56.  I live in Palmer.
I've been in Alaska for 18 years.  Anchorage School District in
the Title I Department is where I work, and I do administrative
work, and I've been there for the last five years.  I've got two
associate's degrees.  I'm single -- or, excuse me, married.  My
husband works up on the Slope for a company called Marsh Creek.
No children.  Snowmachining, four-wheeling, hunting, fishing,
normal Alaska stuff is my hobby.  No military and no jury.

JUROR NUMBER 18:  Juror Number 18.  I live in Wasilla.
I've been a resident for 11 years.  I work for the Federal
Aviation Administration.  I'm an electronics technician.  I've
worked for them for the last 11 or so years.  I have some
college.  I am single.  I've got four daughters.  Hobbies,

clubs, and organizations, I'm a district office union rep. I'm
also very involved with the animal shelters around town with my
daughters. I was in the Air Force for four years. I did serve
on a jury, and there was a verdict reached.

JUROR NUMBER 51: I'm Juror Number 51. I live in
Anchorage, Alaska. I have lived in Alaska since 1957. My
employer is Xerox Corporation. I am the service manager for the
state of Alaska. I've worked for them for 37 years now,
technical work mostly. Some college, and a lot of professional
certifications. I'm single, two children, ages 39 and 36. I am
the volunteer patrol director for the Alyeska Ski Patrol. I've
been there many, many years. I'm also on the board of directors
for the Alaska Sporting Clays Association. Military service, I
was in the Army, discharged as a sergeant, E-5. And no prior
jury service.

JUROR NUMBER 46: Juror Number 46. I live in Chugiak.
Been there for 30 years. My employer is Malone Construction.
Occupation, I'm a general foreman. I've done this for
approximately 39 years. No college. I am married. I have two
children, 29 and 26. My wife is a legal secretary. My hobbies
are hunting, fishing, snowmachining, wrestling. I do help coach
wrestling. No military service. And I was on a civil case and
a verdict was reached.

THE COURT: Excuse me, who does your wife work for?

JUROR NUMBER 46: Call & Hanson.

1          THE COURT:  Is that a civil litigation firm?

2          JUROR NUMBER 46:  No.  Well --

3          THE COURT:  You said she is a legal assistant?

4          JUROR NUMBER 46:  Legal secretary.

5          THE COURT:  Oh, legal secretary.  And she works for --

6          JUROR NUMBER 46:  Call, Hanson --

7          THE COURT:  Is that --

8          JUROR NUMBER 46:  It's in Anchorage here.

9          THE COURT:  What kind of attorney is that?

10          JUROR NUMBER 46:  They are defense attorneys.

11          THE COURT:  Okay.  Civil, though.  I mean, they do --

12     they don't do criminal law, do they?

13          JUROR NUMBER 46:  No.

14          THE COURT:  Oh, okay.

15          JUROR NUMBER 42:  Juror Number 42.  I have been in

16     Alaska since 1979.  I am medically disabled, so I have no

17     employment for over five years.  Highest level of education was

18     two years of college.  I am married.  My wife is self-employed

19     as a housekeeper.  I have three daughters, ages 44, 42, and 41.

20     My hobbies are ham radio, computers, and photography.  I was in

21     the U.S. Navy.  I was discharged as an E-1.  And I have never

22     served on any jury.

23          THE COURT:  Sir, is there anything about your physical

24     situation that would preclude you from serving?

25          JUROR NUMBER 42:  No, sir.

1          THE COURT:  Okay.

2          JUROR NUMBER 32:  Number 32.  I live in Houston.  Been

3   in Alaska for 25 years.  Employer's name is Northwest Handling

4   Systems, install and service warehouse equipment around the

5   state.  I've got an associate's degree.  Married.  Two children

6   from a previous marriage, 20 and 19.  Hobbies, writing,

7   shooting, cooking, brewing, metal fabrication.  No military and

8   no jury.

9          THE COURT:  Okay.

10          JUROR NUMBER 23:  I'm Juror Number 23.  I live in

11   Wasilla, Alaska.  I've been here 18 years.  I am a homemaker,

12   and have been for eight years.  I have a bachelor's.  I'm

13   married.  My husband is an electrical foreman for Alcan

14   Electric.  We have two children, 8 and 5.  Hobbies are

15   black-and-white photography and hiking.  No military service,

16   and no prior jury service.

17          JUROR NUMBER 10:  Number 10.  I live in Anchorage.

18   Lived in Alaska for 30 years.  Currently work for the Alaska

19   Court System in Anchorage.  I'm a Deputy Clerk II.  Before that

20   I worked for Federal Express.  I have a bachelor's in

21   psychology.  I'm currently in graduate school for a master's in

22   psychology.  I am married.  My wife is a stay-at-home homemaker

23   person.  I have no children.  Hobbies, shooting, fishing, you

24   know, hunting and stuff.  No military service.  Was called for a

25   jury but was not selected.

1          JUROR NUMBER 4:  Juror Number 4.  Place of residence,

2     Kodiak.  And I've lived here in Kodiak since 1963.  My

3     employer's name is Kodiak College.  I'm an administrative

4     assistant for the director.  I've been there for ten years.  I

5     have an associate's in general business and one in accounting.

6     I'm married, and my husband works at the harbor office.  He's a

7     harbor officer.  I have five children, 33, 32, 27, 24, and 22.

8     My hobbies, my mother had dementia so she takes up all my time,

9     which I love.  No military service.  And I served on a grand

10    jury.

11         THE COURT:  Okay.

12         JUROR NUMBER 1:  Juror Number 1.  I live in Palmer,

13    Alaska.  I have been a resident since 1977.  I've worked for

14    JBER, Elmendorf and Richardson, as a mechanic.  And I've been

15    doing that for 37 years.  High school education.  I am married.

16    My wife is a schoolteacher in Palmer.  I have three kids, 32,

17    18, and 16.  No real hobbies.  I was four years in the military,

18    and I was discharged as a sergeant.  And I was on a jury and we

19    did get a verdict.

20         JUROR NUMBER 58:  Juror Number 58.  I live in

21    Anchorage and have been here for 24 years.  I work for Khaki

22    (ph).  I am a admin for the maintenance in the JBER hospital.  I

23    have been there for nine years.  I have some college.  I'm

24    married.  I have four and a half kids, I guess.  My son is 7.

25         THE COURT:  Four and a half.  That gives us plenty of

```
 1  time.
 2              JUROR NUMBER 58:  Yes, exactly.
 3              THE COURT:  Okay.
 4              JUROR NUMBER 58:  I draw, am an avid reader,
 5  motocross.  No military.  No prior jury.
 6              JUROR NUMBER 33:  Number 33.  I live in Cordova.  I've
 7  been there since 1978.  I'm self-employed.  I do retail sales
 8  and rentals in every department there.  For the last five years
 9  that's what I've been doing.  I have a high school education.
10  I'm married.  My husband works for TSA.  I have a son who is 32
11  and a daughter who is 30.  I quilt, I knit, and do photography.
12  I donate to several organizations but I am not active in any of
13  them.  No military service.  And I've been on jury service
14  twice, and a verdict was reached both times.  That was criminal
15  cases.
16              JUROR NUMBER 53:  Number 53.  I live in Dillingham.
17  I've lived in Alaska all of my life.  I am currently employed by
18  the Bristol Bay Area Health Corporation as a systems analyst.
19  Before that -- oh, no, it's only for the past four years.
20  Before that I worked at Alaska Native Tribal Health Consortium
21  as a network (indiscernible).  I have a bachelor's degree and
22  didn't apply for a master's.  I was married, so I guess that
23  means I'm single.  I have two children.  They are 32 and 27.  I
24  read voraciously, sew, trying to knit and crochet, I do puzzles.
25  I am a member of the library advisory board in Dillingham and a
```

board member for a recreation center.  I was on a jury in
Dillingham not too long ago, it was a civil case, and we did
reach a verdict.

JUROR 48:  I'm jury number -- Juror Number 48.  I live
in Anchorage.  I've lived in Alaska for about the past ten
years.  I currently work for the Anchorage School District as
the cultural enrichment specialist for Title VII Indian
Education.  Before that I worked for Army lodging in Fort
Belvoir, Virginia, and also for George Mason University's
special collections and archives, and their Krasnow Institute
for Advanced Study.  I have a master's in anthropology.  I am
single.  I have no children.  I volunteer for the Anchorage
Museum.  No military service and no prior jury service.

THE COURT:  Yep.  Is that the right order?  Okay.

JUROR NUMBER 13:  I live in Eagle River, Alaska.

THE COURT:  Number --

JUROR NUMBER 13:  Number 13.

THE COURT:  13.

JUROR NUMBER 13:  Eagle River, Alaska.  Been here 30
years.  I work for the Alaska Railroad.  I'm basically a
mechanic there.  I have an associate's degree from college.
Married.  My spouse is a homemaker.  Five-year-old stepchild,
daughter.  I hunt, I fish, belong to a four-by-four club.  No
military service.  And I served on a grand jury.

JUROR NUMBER 15:  I'm Juror Number 15.  I have lived

in Anchorage for 38 years, three years prior to that in Hope,
Alaska.  My employer is the National Park Service.  I'm an
interpretive park ranger over at the old Federal Building in the
visitors center there.  I've done that for 16 years.  I retired
five years ago from the school district as a teaching assistant,
special ed, elementary.  Let's see, I have a Bachelor of
Science.  I am single, a widower, so my wife is no longer
living.  I have no children.  And my hobbies are cross-country
skiing and hiking and birdwatching.  I'm a member of the
Anchorage Storytellers Guild, and I'm also a member of the
Northern Light Urantia Society, which is a spiritual group.  I
served in the Army, discharged as an E-4.  I have been on two
criminal trials, State of Alaska.  I was an alternate juror on
one and served on the other, and they both did reach a verdict.

JUROR NUMBER 22:  I keep forgetting my number.  I'm
22.  I was born in Anchorage.  I left in the late '70s, came
back in '91.  Been here ever since.  I'm self-employed.  I'm a
nighttime cab driver for Alaska Yellow Cab, been doing that for
11 years.  I am currently a full-time student.  Next year I will
have my bachelor's degree to teach math in middle school.  I am
separated for ten years, and I have no idea what he does because
he hides really well.  I have four daughters, two sons, and a
step-son, age 17, 20, 22, 26, 27, 29, and 31.  I wrote it down
so I could remember.  My hobbies depend on whether it's winter
or summer.  Winter I like to stay warm.  I play Words With

1  Friends and Netflix, procrastinate on the homework.  In the
2  summer I like to get out as much as possible and do the Alaska
3  stuff, fishing and camping and campfires.  I have not been in
4  the military.  I was called for a jury service, but I was not
5  chosen.

6         JUROR NUMBER 25:  Juror 25.  I live in Palmer.  I've
7  been here since 1988.  I work for Lowe's as a shipping and
8  receiving manager.  In the last five years I've worked for
9  Lowe's in a company called ASC Building Products where I was a
10 manufacturing manager.  I have an associate's degree.  I'm
11 married.  My wife works for a company called Northern Adjusters.
12 She is an insurance adjuster.  I have two children.  My son is
13 31 and my daughter is 26.  Hobbies, bowling, motorcycle,
14 hunting, fishing, golf, just about anything.  I was in the
15 United States Army for 12 years, discharged honorably as an E-6.
16 I have served on a prior jury.  It was a criminal trial, and a
17 verdict was reached.

18        JUROR NUMBER 36:  Number 36.  I live in Eagle River.
19 Been in Alaska from '91 to '99, and then came back in 2009.  I
20 work for a company called ARCTEC Alaska out on JBER.  I do
21 logistics for the company.  I've done it for the last four
22 years.  And the year prior to that I worked for Chenega Security
23 as a security guard.  I have a bachelor's degree in business.
24 I'm married.  My husband also works on JBER as a maintenance
25 lead for JL Properties.  I have two children, two girls, age 21

1  and 25.  No real hobbies or organizations or anything right now.

2  I am retired from the Air Force, 24 years as an E-6, and I

3  served on a grand jury in 2011.

4          JUROR NUMBER 38:  Juror Number 38.  Anchorage, Alaska.

5  Lived here for 11 years.  Employer's name is Magic Freight and

6  Transport.  I am a billing and manifest specialist.  I have

7  worked for PIP Printing, receptionist; Anchorage Speech and

8  Hearing receptionist; and health center dentistry, receptionist.

9  And my highest level of education is high school.  I am married.

10 My spouse works as a salesman at Great Northern Guns.  I have no

11 children.  My hobbies are all kinds of crafts and shooting.  I

12 have no military or no prior jury service.

13          THE COURT:  Okay.  That should be fine.  You can just

14 hold the microphone there for a second, and we'll meet with

15 counsel up front, if we could please.

16  (Sidebar conference as follows:)

17          THE COURT:  (Indiscernible).  Okay.  Any other

18 questions you want me to bring up?

19          MS. LOEFFLER:  (Indiscernible).

20          THE COURT:  Okay.  My inclination is to excuse Juror

21 Number 32.  He's the gentleman that travels frequently to Kodiak

22 and has ADD.

23          MS. LOEFFLER:  That's fine.

24          THE COURT:  Any objections?

25          MS. LOEFFLER:  No.

```
 1              MR. CURTNER:  No, sir.
 2              THE COURT:  And Number 4, she is the lady that lives
 3   in Kodiak and knows Mr. Wells.
 4              MS. LOEFFLER:  Yes.  No objection.
 5              THE COURT:  If that's not for cause, I don't know what
 6   is.  She knows him and her kids play baseball with him.
 7              MR. OFFENBECHER:  (Indiscernible).
 8              THE COURT:  I know that, but --
 9              MS. LOEFFLER:  But she also said that (indiscernible).
10              THE COURT:  I understand that.
11              MS. LOEFFLER:  One question, and the other are not the
12   same.
13              THE COURT:  I'm just saying that if you're raising
14   that, that's certainly cause when you know the defendant and
15   your kids have played baseball with him.  And she lives in the
16   middle of all this.  So I'm going to excuse 32 and 34 --
17              MS. LOEFFLER:  You said 32 and Number 4.
18              THE COURT:  I'm sorry, and Number 4, because I think
19   that there is good cause to do so.  Other than that, Number 53
20   appears to be coughing quite a bit, but you guys can make your
21   own judgment about that.  She is the lady from Dillingham.  I
22   think she's been the one doing all the coughing.
23              MS. LOEFFLER:  I have no problem on her, Judge, just
24   which number are you talking about?  Her name is 53, or --
25              THE COURT:  Her number -- no, her name is 53.
```

1          MS. LOEFFLER:  Okay.  I have two sets of numbers

2  (indiscernible).

3          THE COURT:  Now, I'm just telling you she's coughing a

4  lot.  I'm not going to excuse her unless you agree to it.

5          MR. OFFENBECHER:  Who is the first one you were

6  (indiscernible)?

7          THE COURT:  Number 32.  He's the one that travels to

8  Kodiak and has ADD, doesn't think he can pay attention.  And

9  Number 4 is the lady that lives in Kodiak and is a friend of the

10  Wells.  That's the only two I'm doing really for cause, but I'm

11  reminding you that Number 31 is the gentleman from Bethel that

12  is flying out on the 26th for dental work.  He's in the box.

13  And Number 14 is a gentleman that would love to be excused.  He

14  is the engineer from Soldotna.  Number 34 is the dental

15  assistant lady who wants to be excused because she just needs to

16  work.  She is in the box here.  She's Number -- in the back row.

17  She just said, "I want -- I'm a dental assistant, I just got

18  called in, I would like to be excused."  I'm just throwing this

19  out.  If you agree on any of these, I will excuse them.

20          MS. LOEFFLER:  (Indiscernible).

21          THE COURT:  Do you remember who I'm talking about?

22          MR. CURTNER:  I certainly -- I think the guy from

23  Soldotna that has a project, I wouldn't be opposed to his being

24  released.

25          THE COURT:  Well, you guys have got to negotiate in

1  this part.  I'm just reminding you.

2          MR. CURTNER:  Okay.

3          MS. LOEFFLER:  Okay.  We're okay with Number 14.  The

4  guy from Soldotna.  Is that Number 14?

5          THE COURT:  Yes.  He's the tall guy in the back.

6          MS. LOEFFLER:  Okay.

7          THE COURT:  What about the lady, the dental assistant?

8          MS. LOEFFLER:  I'm okay with --

9          THE COURT:  She wants out because she just doesn't

10  want to miss a month of work.  She is Number 34.

11          MR. SCHRODER:  If you release three, I think we are to

12  the right number, right?

13          THE COURT:  Yeah.  If I release three, then I'm going

14  to have to call one more.  I can keep her in.  I can keep her

15  in, and you guys can use your peremptory challenges.  How about

16  that?

17          MR. SCHRODER:  That's good.

18          THE COURT:  Okay.  So is everybody clear what we've

19  done?

20          MS. LOEFFLER:  I need -- I just -- I need the juror

21  numbers of the three who just --

22          THE COURT:  32, 4, and 14.

23          MS. LOEFFLER:  Okay.  Thank you.

24          THE COURT:  So, now so that you can clear what I'm

25  going to do, is I'm going to excuse this whole panel to go back

1  to the big room.  We all know that 32, 4, have been excused.  So

2  you've got to exercise you peremptory challenges out of the

3  remaining 35.  You have 12 and you have 8.  That will give us 15

4  remaining jurors.

5      MS. LOEFFLER:  So you're not calling any more?  You're

6  just telling us --

7      THE COURT:  I'm not calling any more.  And you can use

8  your peremptory challenge on the dental assistant if you want,

9  if you want to be nice to her, okay?

10     MS. LOEFFLER:  Okay.

11     THE COURT:  Everybody is saying they are happy with

12  all my rulings, and that they are going to --

13     MR. CURTNER:  I wouldn't go that far.

14     THE COURT:  Okay, well, they're satisfied.

15     MS. LOEFFLER:  I'm (indiscernible).

16     THE COURT:  Okay.  But I think it's -- do you have any

17  more -- I mean, I'm looking, it looks like a good panel.  It

18  looks like we are doing all right.  I can't think of any more

19  questions.  So I'm going to excuse them, tell them to go to the

20  big room, and when we come back -- then we can take a comfort

21  recess.  Come back, you excuse yours, you excuse yours, Nancy

22  will create -- the remaining 15 will be the jury.

23     MS. LOEFFLER:  We -- two things, Your Honor.  It's

24  kind of a lot.  I'd like the jurors (indiscernible) to be able

25  to take a short break and then (indiscernible) --

1          THE COURT:  Yes.  No, of course.  You can -- I said a

2    comfort break.

3          MS. LOEFFLER:  Okay.

4          THE COURT:  That means short break.

5          MS. LOEFFLER:  Then we come back and work on it?

6          THE COURT:  Yeah, then you come back and work on it.

7    Is everybody in agreement with that procedure, that plan?

8          MR. CURTNER:  I think we might need -- I'm going to

9    consult with my client.  We might need about 20 minutes?

10         THE COURT:  However you take.  I mean, there's no

11   rush.  You guys talked me into, against my better judgement, not

12   doing openings today.  I really think we should have.  But

13   anyhow --

14     (End sidebar)

15         THE COURT:  Okay.  When I was in state court, it used

16   to take two days to pick a jury.  We're getting close to the end

17   here.

18         Here is what we are going to do.  We are going to

19   stand, take a recess.  You go back to the big room, just get

20   comfortable.  Be -- I don't know, could be 20 or 30 minutes.

21   We'll come back in, everybody goes to -- sits back here, and we

22   will then announce the jury.  How about that?

23         So we'll stand in recess for, I don't know how long

24   it'll take.  Twenty, 25 minutes.  And you go to the big room.

25                         (Prospective jury panel not present)

```
 1              THE COURT:  Okay, it looks like -- it looks like the
 2    jury is gone, but I'd be more comfortable if the door was
 3    closed.
 4              Okay.  Jurors are gone.  Please be seated.  Okay,
 5    things have gone extremely smoothly.  We are going to take a
 6    ten-minute comfort break, then people will come back.  The
 7    government will exercise its eight preempts, defendant will
 8    exercise 12 preempts.  The remaining 15 will be the jurors.  We
 9    will later pick three of them as alternates.  About as smooth as
10    it could possibly go given the circumstances.  Any questions
11    from the government?
12              MS. LOEFFLER:  No, Your Honor.
13              THE COURT:  Any questions from the defense?
14              MR. CURTNER:  Did you say 10 or 20 minutes?
15              THE COURT:  I said 10 minutes comfort break, and then
16    it would be about 20 minutes or so, whatever you need after that
17    to pick the jury.
18              MS. LOEFFLER:  So someone will let us back in?
19              THE COURT:  Oh, yes, yeah, someone will let you back
20    in.  There was one other thing I wanted to say, but I think
21    we've got it -- everything is -- everything else is under -- oh,
22    yes.  Have you changed your mind about opening statements?
23              MS. LOEFFLER:  No, Your Honor.  I'd like to be able to
24    bring the -- we have family members who would like to see what
25    the courtroom looks like.
```

1          THE COURT:  That's fine, I'm just asking if you

2    changed your mind.  A yes or no question --

3          MS. LOEFFLER:  No.

4          THE COURT:  -- because I can -- I'm ready to go.

5    Otherwise we'll do openings tomorrow at 9 o'clock.  Thank you.

6          THE CLERK:  All rise.  This matter stands in a

7    20-minute recess.

8       (Proceedings recessed, 12:54:18 p.m. until 1:47:30 p.m.)

9                    (Prospective jury panel not present)

10         THE CLERK:  Are the parties ready?

11         MS. LOEFFLER:  Okay, we're ready.

12         THE CLERK:  All rise.  His Honor the Court, the United

13   States District Court is again in session.  Please be seated.

14         THE COURT:  Okay.  Where is the jury list?  You got

15   it?

16         MR. CURTNER:  Yep.  All right, counsel and the

17   government, have you looked at the panel final list?

18         MS. LOEFFLER:  No, we only have ours.

19         THE COURT:  Okay.  Why don't we pass it around so

20   everybody knows exactly who the jury is going to be.  If you

21   could share that?

22         MS. LOEFFLER:  We just have one copy?

23         THE COURT:  I haven't -- don't have a copy.  Make sure

24   that it is consistent, Mr. Curtner, with your understanding of

25   who the final jury will be.

```
1              THE CLERK:  I have the numbers that are circled, 1
2  through 15.
3              THE COURT:  Yeah, those are -- the jurors are circled?
4              THE CLERK:  It's not going to --
5              MR. CURTNER:  The government will need theirs too.
6              THE CLERK:  He said it's a master.
7              THE COURT:  Okay.
8              THE CLERK:  Copy.
9              THE COURT:  Okay, while you're standing by the
10 microphone, Mr. Curtner, have you looked at the list?
11             MR. CURTNER:  I have, Your Honor.
12             THE COURT:  Are you satisfied that that is the final
13 panel?
14             MR. CURTNER:  Yes.
15             THE COURT:  Okay.  The government now can look at the
16 same list so that when we read the jurors' names, I want it to
17 be the right jurors, okay.
18             MR. SCHRODER:  Is that Ted Stevens' daughter?
19             MS. DUIGNAN:  No, Stevens' daughter has a different
20 name.
21             MR. SCHRODER:  Oh, okay.
22             MS. LOEFFLER:  Okay.
23             MR. OFFENBECHER:  This is ours.  This is the one that
24 I gave her.  So if it's wrong, it's (indiscernible).
25             MS. LOEFFLER:  Okay.  Because -- so she put cause
```

1   down.

2          MR. SCHRODER:  For who?

3          MS. LOEFFLER:  Well, because some of these she's got

4   cause, and we had already taken them out.

5          MR. SCHRODER:  Okay.  All right.

6          MS. DUIGNAN:  At least ours are correct, so we

7   wouldn't have this situation.

8          MR. SCHRODER:  (Indiscernible).

9          MS. DUIGNAN:  All right.  Should I write it down?

10          MR. SCHRODER:  No.

11          MS. LOEFFLER:  Oh.  I keep trying, and I can't get

12  through that way.  There is only one alley in this room.

13          THE COURT:  Okay.  And when you get to the microphone,

14  Ms. Loeffler, you can tell me whether or not the juror list is

15  right from your perspective.

16          MS. LOEFFLER:  It is, Your Honor, from ours.  I think

17  that was the one that we had marked that the other marks were

18  on.  Am I correct, Nancy?

19          THE CLERK:  Yes.

20          THE COURT:  Okay, so that I understand, first juror

21  will be Number 28, second juror will be Number 55, third juror

22  will be Number 47.  Should I go slower?  28, 55, 47, 31, 24, 39,

23  34, 57, 29, 5, 44, 46, 23, 10, and 53.

24          Do you want me to go over that again?  Somebody said

25  yes?

1          MR. CURTNER:  Yes, please.

2          MS. LOEFFLER:  Okay.

3          THE COURT:  Should I do it faster, or should I do it

4   slower?

5          MS. LOEFFLER:  No, I was just going to say, we could

6   have -- you know, if we just get a copy of them later, that will

7   be fine.

8          THE COURT:  Well, let me just say it one more time.

9          MR. SCHRODER:  We've got it.

10         MS. LOEFFLER:  Okay, we got it.

11         MR. SCHRODER:  We wrote them down.

12         MS. LOEFFLER:  Okay.  All right, we got it.

13         THE COURT:  Well, somebody over here said yes.  Okay.

14  28, 25, 47, 31, 24, 39, 34, 57, 29, 5, 44, 46, 23, 10, and 53.

15         MR. CURTNER:  Judge?  I have one issue.

16         THE COURT:  What?

17         MR. CURTNER:  I think that there were two African

18  American women on the jury that were both struck by the

19  government, and I think that's -- raises an issue.

20         THE COURT:  Did I read it right?

21         MR. CURTNER:  If I --

22         THE COURT:  I read it right.

23         MS. DUIGNAN:  He mixed up 25 and 55.

24         MS. LOEFFLER:  I'm sorry, what?

25         MS. DUIGNAN:  He said 55 -- yeah, 25, 55?

```
 1            MS. LOEFFLER:  Is that right?

 2            MR. CURTNER:  Well, let's just ask.  Judge, when we

 3   wrote it down the first time, the second one you had was -- we

 4   all wrote 55 down.  And the second time you said it, you said

 5   25.

 6            THE CLERK:  55 on Juror Number 2.

 7            THE COURT:  Okay.  28, 55 is a juror.

 8            MS. LOEFFLER:  That's right.

 9            MR. CURTNER:  That's right.  That's what we had the

10   first time.

11            THE COURT:  I don't know who is African American and

12   who's not.

13            MS. LOEFFLER:  Well, we just -- we just had this

14   discussion a minute ago, and it ends up they are right.

15            THE COURT:  Okay.

16            MS. LOEFFLER:  So I do -- it -- they are right.  We

17   just -- because we just figured that out.  So let's see, there

18   were two jurors.  There was Juror Number 1 that we struck, and I

19   think the other one was the fourth juror.  I've got to look at

20   the numbers to remember, because I, you know --

21            THE COURT:  Can we make copies of this?  Would this

22   help her?  I don't know what the --

23            MR. CURTNER:  Well, it's these two.  Juror Number 1

24   and Juror Number 7.

25            MS. LOEFFLER:  Juror Number 1 and Juror Number 7.  No,
```

1  wait.

2          MR. CURTNER:  It would be 43 and 30.

3          MS. LOEFFLER:  43 and 30.  I can address 30, because I
4  do think the law requires me to address that.

5          THE COURT:  Absolutely.

6          MS. LOEFFLER:  Address -- 30 was the young woman,
7  worked for the Alaska Railroad, and we had -- the only thing,
8  I'm hesitating a little bit because one of the discussions was
9  at sidebar, and --

10          THE COURT:  Let's do it at sidebar, then.

11          MS. LOEFFLER:  Do you want me to do it openly?  I
12  mean, I --

13          THE COURT:  No, it was sidebar, because it was -- I
14  remember the issue now.

15          MS. LOEFFLER:  Okay.

16          THE COURT:  Let's do it sidebar.

17          MS. LOEFFLER:  Okay.  I just -- there aren't a lot of
18  people in here, but she did --

19          THE COURT:  She came up to the sidebar.

20      (Sidebar conference as follows:)

21          MS. LOEFFLER:  I don't have the list with me.

22          MR. CURTNER:  43 and 30.  We're talking about 30 now,
23  then.

24          MS. LOEFFLER:  That was the -- I called it as it was a
25  (indiscernible) proceeding --

```
 1              THE COURT:  Okay, I know who it was.  She had the
 2   boyfriend who was -- had issues.
 3              MS. LOEFFLER:  She had a boyfriend who she said was
 4   wrongly accused of sexual assault.
 5              THE COURT:  Of sexual assault, okay.
 6              MS. LOEFFLER:  And then -- and so that -- certainly we
 7   would be uncomfortable if, you know, she thinks that he was
 8   wrongly accused.
 9              THE COURT:  Okay.
10              MS. LOEFFLER:  And then she also just seemed, both
11   when she first came in and in her address, very unhappy to be
12   here.  And, you know, sort of just -- sort of rolling her eyes a
13   little bit --
14              THE COURT:  Okay.
15              MS. LOEFFLER:  -- and not happy to be here.  So those
16   are the two reasons why I (indiscernible).
17              THE COURT:  What about the first one?
18              MS. LOEFFLER:  The first one --
19              MR. SCHRODER:  The first one, she works for The Arc of
20   Anchorage, said she was a behavioral health counselor.  Her
21   husband works at McLaughlin Youth Center.  So I mean, just as a
22   general principle from the prosecution perspective, social, you
23   know, kind of social worker type --
24              THE COURT:  I don't know what her husband does at
25   McLaughlin.
```

 1          MR. SCHRODER:  Yeah, I don't either, but she indicated

 2     that she was in a behavioral health function at Arc of

 3     Anchorage.  So as a general principle, we just said social

 4     workers are not our preference on juries.

 5          MR. CURTNER:  Well, Judge, I don't remember either one

 6     of them saying anything that would possibly disqualify them as a

 7     juror.  And, you know, given the minority population of

 8     Anchorage, we only have -- the record should reflect we only

 9     have two African Americans that I can recall in the whole pool.

10     And for them both to be in the box and both to be excused, I

11     think that is a problem.  And it -- then we'd raise a Batson

12     challenge.

13          THE COURT:  It seems tough at this juncture,

14     (indiscernible) to call back and talk (indiscernible).

15          MS. LOEFFLER:  Can I consult?

16          THE COURT:  Yes.  I'm -- I'll be honest with you, I'm

17     more concerned about the first lady.  If I were to choose, I

18     understand your thinking about the second lady.  But I'm not

19     sure I readily agree on -- with regard to the first lady.

20          MS. LOEFFLER:  May I reconsult with my team and see?

21        (Sidebar ends)

22          THE COURT:  Did you have a copy for them too?  Okay.

23     Thank you.  So do you want to re --

24          MS. LOEFFLER:  Yeah, Your Honor, we'll withdraw our

25     challenge to Juror Number 1.

           THE COURT:  Well, I know, but doesn't that re -- well,
1

2    how does that leave us?  Does that leave --

3           MS. LOEFFLER:  I think that leaves us with one more

4    preempt, I think.

5           THE COURT:  Yes.  Do you want to take another preempt?

6           MS. LOEFFLER:  Well, let me just take a -- can I talk

7    to my people for a few minutes?

8           THE COURT:  Okay.  Call me when you're ready.

9           So there is a -- basically, so the record is clear,

10   I'm familiar with both jurors.  I accepted the government's

11   explanation with regard to Juror Number 7, and had similar

12   concerns.  The government, after reconsidering, has withdrawn

13   their challenge to Juror Number --

14          MS. LOEFFLER:  1.

15          THE COURT:  -- 1, and is now going to take a few

16   moments to determine whether or not -- what they want to do now.

17          MS. LOEFFLER:  Okay.

18          THE COURT:  Mr. Curtner, any questions or issues?

19          MR. CURTNER:  No.

20          THE COURT:  Stand and recess for five minutes.

21   Shouldn't take more than five minutes.

22          MR. CURTNER:  We're not going anywhere.

23          THE COURT:  You're not going anywhere.  Okay, good.

24          THE CLERK:  All rise.  The matter stands in a

25   five-minute recess.

1       (Proceedings recessed, 1:59:16 p.m. until 2:01:25 p.m.)

2                       (Prospective jury panel not present)

3            THE CLERK:  All rise.  His Honor the Court, the United

4     States District Court is again in session.  Please be seated.

5            MS. LOEFFLER:  Your Honor.

6            THE COURT:  Yes.

7            MS. LOEFFLER:  Oh, I'm sorry.  You go first.  I --

8            THE COURT:  No.  Ms. Loeffler.

9            MS. LOEFFLER:  Having withdrawn our challenge to Juror

10    Number 1, we would actually like to exercise it for Juror Number

11    13, who is presently the seventh on the list and was formerly

12    Number 34.  I can make an X in this copy that I have so that we

13    can make that clear, under plaintiff.

14           THE COURT:  Okay.  You following this, Mr. Curtner?

15           MR. CURTNER:  I'm sorry.  Oh.

16           MS. LOEFFLER:  Juror Number 13, which is Ms. --

17           THE COURT:  Don't.

18           MS. LOEFFLER:  Yeah, I'm not going to name.  The woman

19    that had recent job -- that was concerned about her job.

20           THE COURT:  Okay, that makes sense.  The dental

21    hygienist?

22           MS. LOEFFLER:  Okay.

23           MR. SCHRODER:  Yes.

24           MS. LOEFFLER:  Yeah.  Yes.

25           THE COURT:  I almost was going to excuse her for cause

1  anyhow.

2          MR. CURTNER:  Well, Judge, I think I just want to

3  point out that's another woman of color on the jury that they

4  are selecting.  I mean, I understand some of the issues that

5  were there, but I guess I would, again, question that choice

6  when we have very few minority on the jury as it is.

7          THE COURT:  Ms. Loeffler, your response.

8          MS. LOEFFLER:  Your Honor, I will tell you that I

9  actually don't know what race she is.  She is probably some

10  ethnic minority, I don't know what.  And we all had a discussion

11  at the beginning with this individual about her need to support

12  her family.

13          THE COURT:  Uh-huh.  She didn't want to be on the

14  jury.

15          MS. LOEFFLER:  She didn't want to be on the jury.  We

16  held off.  I thought they might preempt her.  We had some

17  others, you know, and so it made sense to get her off.  But

18  there are other people on the jury list that at least have names

19  that would be minorities.  I don't know what race people are.

20          THE COURT:  Yep.

21          MS. LOEFFLER:  So anyway, that was why.  It seemed

22  like it was a good thing, if we had an extra one, to let her go

23  home.

24          MR. CURTNER:  Your Honor, I just have to question, I

25  guess, thinking about it, giving them a second shot after we

1   have all submitted our --

2           THE COURT:  Well, we -- what -- you raised the Batson

3   issue.

4           MR. CURTNER:  I know, but then they get to -- you

5   know, I -- they avoided any kind of a penalty or --

6           THE COURT:  So what do you -- what is your

7   recommendation?  We -- we've only --

8           MR. CURTNER:  They shouldn't get another bump.  They

9   exercise --

10          THE COURT:  Well, how many jurors do you want to have,

11  then?

12          MR. CURTNER:  Uh --

13          THE COURT:  They only get 15 jurors.

14          MR. CURTNER:  You could just take the last one on the

15  list off.  Which is what we have been doing anyway, because we

16  didn't get down to, I think 36, 37, 38 as it is.  So I would say

17  just go randomly from the bottom.  That would be fair.

18          THE COURT:  Well, I think I agree, in an abundance of

19  caution.  Although I really would like to excuse that lady, she

20  doesn't want to be here.

21          MR. CURTNER:  I understand.

22          MS. LOEFFLER:  Well, you can -- I can move to remove

23  her for cause again, Judge, Your Honor.  I mean, she doesn't

24  want to be here, and she's got economic issues.

25          MR. CURTNER:  That -- we've already -- I think we

1  litigated that, Your Honor.

2          THE COURT:  Well, but she still could be made an
3  alternate if it still gets to be that.  Or do you want to
4  question her again?  I mean, she was really concerned that she
5  didn't want to serve.

6          MR. CURTNER:  Yeah, we've already, I think we've
7  already examined her for cause.  I think we should go with the
8  selection we have.  And we've got three alternates if there is a
9  problem.

10         THE COURT:  I think ultimately the fairest thing to do
11 is just strike Number 53, and then we'll deal with this lady.  I
12 hate doing that for her sake, but I'm trying to make -- keep the
13 record as clean as possible.

14         MR. CURTNER:  Thank you, Your Honor.

15         THE COURT:  Okay, Nancy.  Have we got the new list
16 then?  I don't want to read it wrong, so let's get it.

17         MS. LOEFFLER:  I don't know where we are.  I'm
18 confused.

19         THE COURT:  Well, make sure everybody knows where we
20 are.  I can tell you who the jury is going to be.  Nancy just
21 re -- it's everybody that it was before, except for we've added
22 one and we've taken away one.  And the one we've taken away is
23 the last one, which is Number -- now I am confused.  This list
24 is -- oh, I see, it's Number --

25         THE CLERK:  They are in red now.

1      THE COURT:  They're in red now.  Gotcha.  Okay, I'll
2  just --
3      MS. LOEFFLER:  Your Honor, let me just mention that I
4  think what you did is just -- what we ended up doing was leaving
5  on one woman of color and removing a Native woman.
6      THE COURT:  Yes, I think that's what happened.  No.
7      MS. LOEFFLER:  Well, I think that's what you did when
8  you removed 53, I think.
9      THE COURT:  No.  Why?  Are you telling that -- is
10  Number 15 a Native woman?
11      MS. LOEFFLER:  I think Number 15 is a Native woman.
12  So I don't think that works as a switching one minority for
13  another on their challenge.
14      THE COURT:  I agree.  I agree.  I agree.  You didn't
15  tell me that, Mr. Curtner.
16      MR. CURTNER:  Now, wait a minute.  I --
17      THE CLERK:  I'm assuming we're -- she withdrew number
18  1, so we're starting with Juror Number 1 as Number 1, or --
19      MS. LOEFFLER:  Yes.  We withdrew our challenge to
20  Juror Number 1.
21      THE CLERK:  Okay.
22      MS. LOEFFLER:  But now I just think this theory of you
23  can't strike this person and then what -- what they did is then
24  strike a Native person.
25      THE COURT:  Yes.  So basically, Mr. Curtner, you're

1  struck a Native person.

2      MS. LOEFFLER:  And now I'm going to make a Batson

3  challenge to that if they want to do that.

4      MR. CURTNER:  I'm sorry, who was Number 15 then?  I

5  mean, it would be Number -- would it be Number 53 is the one

6  we're talking about?

7      THE COURT:  Yes.

8      MR. CURTNER:  And that's (states name)?

9      THE COURT:  That's a Native lady.

10     MS. LOEFFLER:  So that's my problem.

11     MR. CURTNER:  Well, Judge, I never want to be accused

12  of -- with a Batson challenge.  So why don't we excuse -- give

13  them their last preempt and we have our jury.

14     THE COURT:  All right.  I want to read this very

15  slowly.

16     MS. LOEFFLER:  Okay.  Yeah.  That's --

17     MR. CURTNER:  Because I couldn't live with a Batson

18  challenge in my record.

19     THE COURT:  I understand.  It goes on forever.

20     MS. LOEFFLER:  Just saying.

21     THE COURT:  You ready?  I'm going to go slow.

22     MS. LOEFFLER:  Right.

23     MR. CURTNER:  Okay.

24     THE COURT:  12.  No, I'm sorry, strike that.

25     MS. LOEFFLER:  Now, whoa, whoa, whoa.  You completely

```
 1   lost me there.

 2            THE COURT:  43, 28, 55, 47, 31, 24, 39, 34.

 3            MS. LOEFFLER:  34 is the one you just -- we just

 4   struck, Your Honor, that they just agreed was okay.

 5            THE COURT:  Okay.  57, 29, 5, 44, 13.  I'm sorry.

 6            THE CLERK:  No, not 13.

 7            MS. LOEFFLER:  No, 46.

 8            THE COURT:  46 -- 46, 23, 10, and 53.

 9            MS. LOEFFLER:  That is correct.

10            MR. CURTNER:  Yes.

11            THE COURT:  Do you understand that, because you're

12   going to have to change what you gave me.

13            THE CLERK:  Correct.

14            THE COURT:  You see why I like everyone to look at the

15   list before we read them to the jury?  Now unless I hear from

16   anyone else, that list that I just read, Nancy is going to read.

17   Would you like to look at it, what she is going to read?

18            MS. LOEFFLER:  I wrote it down, so I think I'm okay.

19   If it's what you just read, I'm -- I'm good with it.

20            THE COURT:  Is -- Nancy, is that what I just read?

21            THE CLERK:  Uh-huh.

22            THE COURT:  Okay.  All right.  Let's call the jury in.

23            Do you want this back?  Is this what you are going to

24   read to them?

25            THE CLERK:  Just tell them they can sit in the main
```

1  gallery.

2          THE COURT:  So both -- government, are you satisfied

3  with the jury list that we have now arrived upon?

4          MS. LOEFFLER:  Yes, as long as the one we read is the

5  one you just read.

6          THE COURT:  Okay.  Mr. Curtner, are you satisfied with

7  the jurors selected?

8          MR. CURTNER:  Yes, Your Honor.

9          THE COURT:  Pardon?

10          MR. CURTNER:  Yes, Your Honor.

11          THE COURT:  Okay.  Mr. Wells, do you have any question

12  about what we just did?

13          MR. WELLS:  No, Your Honor.

14          THE COURT:  And you're satisfied as well?

15          MR. WELLS:  Yes.

16          THE COURT:  Okay.

17                    (Prospective jury panel present)

18          THE COURT:  You can sit anywhere, even in the front

19  row now.  Sit anywhere in the room.  We are just about done

20  here, so any seat is fine, including the front row.  Okay, you

21  can use the front row now, too.  Front row is -- any seats --

22  any seat in the room is fine.  Okay.  Just any seat is fine, in

23  front row, back row, in between.

24          Okay, well, thank you, ladies and gentlemen, for being

25  so patient and so cooperative with us today.  We have now

1  selected a jury.  I am going to ask the clerk to read the names

2  of the jurors.  As your name is read, you just need to come and

3  assume your spot in the jury box.  Madam Clerk.

4              THE CLERK:  Okay.  Juror Number 43, come back up and

5  sit in the same spot you were before.  Juror Number 28.  Juror

6  Number 55.  Juror Number 47.  Juror Number 24.  Juror Number 39.

7              MS. LOEFFLER:  Your Honor, I think we skipped a juror.

8  I think Juror Number 31 is the fifth juror.

9              THE CLERK:  Oh, I am sorry.

10             THE COURT:  Okay.

11             THE CLERK:  After Juror Number 47, we have Juror

12 Number 31.

13             MS. LOEFFLER:  Okay.

14             THE CLERK:  And then Juror Number 24.  I apologize.

15 Juror Number 39.  Juror Number 57.  Juror Number 29.  Ma'am, if

16 you can sit -- sir, there is still one more chair in the front.

17 Sorry.  And ma'am, if you can sit on the first seat at the far

18 end.  Juror Number 5.  Juror Number 44.  Juror Number 46.  Juror

19 Number 23.  Juror Number 10.  Juror Number 53.

20             Your Honor, 15 numbers have been called.

21             THE COURT:  1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,

22 14, 15.  I agree with you.

23             Okay.  How do you feel, ladies and gentlemen?

24             Ladies and gentlemen, thank you all very, very much.

25 You are going to be excused.  You are free to go or come or

1    whatever, but this is going to be the jury in this trial.  And

2    so we can stand to recess for about one minute so that those of

3    you who would like to leave can leave.  Not you.

4        (Pause)

5            THE COURT:  We are not going to stay the full day

6    today because today is getting to the end, but I do have some

7    instructions I have to read you, and then we'll answer any

8    questions you have and go from there, okay?  I'm going to go

9    right to these written instructions.

10            Fifteen of you have been chosen as jurors in this

11   case.  Three of you will be selected randomly as the alternates

12   at the conclusion of the case.  The law only permits 12 jurors

13   to decide this matter.

14            Before you take the juror's oath, I want to impress

15   upon you the seriousness and importance of being a member of the

16   jury.  Trial by jury is a fundamental right in the United States

17   of America.  It assures that each case will be decided by

18   citizens who are fairly selected, who come to a case without

19   bias, and who will attempt to render a fair verdict upon the

20   evidence presented.

21            You took an oath before you were examined as to your

22   qualifications to be jurors.  Now you are called upon to take a

23   second oath.  By this oath you will swear or affirm that you

24   will decide the case on the evidence presented according to the

25   law that I will give you.

1    When you take the oath, you accept serious and

2 important obligations.  The jury system depends on the honesty

3 and the integrity of individual jurors.  You affirm that you are

4 truly impartial in this case.  You affirm that there is nothing

5 to your knowledge that the parties or I should know about your

6 ability to sit as a juror in the case.

7    So I will -- if you'll stand, I'll have my clerk

8 administer the juror's oath.  Madam Clerk.

9    THE CLERK:  Okay.  All stand.  Raise your right hand.

10    JURY PANEL SWORN

11    THE COURT:  Ladies and gentlemen, you are now the jury

12 in the case.  I want to take a few minutes and tell you

13 something about your duties as jurors and to give you some

14 preliminary instructions.  At the end of the trial, I will give

15 you more detailed written instructions that will control your

16 deliberations.

17    When you deliberate, it will be your duty to weigh and

18 to evaluate all the evidence received in the case and in that

19 process, to decide the facts.  To the facts as you find them,

20 you will apply the law as I give it to you whether you agree

21 with the law or not.

22    You must decide the case solely on the evidence and

23 the law before you, and must not be influenced by any personal

24 likes or dislikes, opinions, prejudices, or sympathy.  Please do

25 not take anything I may say or do during the trial as indicating

what I think of the evidence or what your verdict should be,
that is entirely up to you.

This is a criminal case brought by the United States
government.  The government charges the defendant with murder in
the first degree in Counts 1 and 2 in violation of 18 U.S.C.
Section 33 and 1111(a) and (b), murder of an officer or employee
of the United States.  In Counts 3 and 4, in violation of 18
U.S.C. Section 1114 and 1011, and possession and use of a
firearm in relation to a crime of violence.  In Counts 5 and 6,
in violation of 18 U.S.C. Section 924(c) and (j).

The charges against the defendant are contained in the
indictment.  The indictment simply describes the charges the
government brings against the defendant.  The indictment is not
evidence and does not prove anything.  The defendant has pled
not guilty to the charges and is presumed innocent unless and
until the government proves the defendant guilty beyond a
reasonable doubt.

In addition, the defendant has the right to remain
silent, and never have to prove innocence or present any
evidence.  You are here only to determine whether the defendant
is guilty or not guilty of the charges in the indictment.
Defendant is not on trial for any conduct or offense not charged
in the indictment.

Proof beyond a reasonable doubt is proof that leaves
you firmly convinced that the defendant is guilty.  It is not

1   required that the government prove guilt beyond all possible

2   doubt.  A reasonable doubt is doubt based upon reason and common

3   sense, and is not based purely on speculation.  It may arise

4   from a careful and impartial consideration of all the evidence

5   or from a lack of evidence.  If after a careful and impartial

6   consideration of all the evidence you are not convinced beyond a

7   reasonable doubt that the defendant is guilty, it is your duty

8   to find the defendant not guilty.

9           On the other hand, if after a careful and impartial

10  consideration of all the evidence you are convinced beyond a

11  reasonable doubt that the defendant is guilty, it is your duty

12  to find the defendant guilty.

13          The evidence you are to consider in deciding what the

14  facts are consists of the sworn testimony of any witness, the

15  exhibits which are received in evidence, and any facts to which

16  the parties agree.

17          The following things are not evidence, and you must

18  not consider them as evidence in deciding the facts of this

19  case.  Number one, statements and arguments of the attorneys are

20  not evidence.  Questions and objections of the attorneys are not

21  evidence.  Testimony that I instruct you to disregard is not

22  evidence, and anything you may see or hear when the court is not

23  in session, even if what you see or hear is done or said by one

24  of the parties or by one of the witnesses.

25          Evidence may be direct or circumstantial.  Direct

evidence is direct proof of a fact, such as testimony by a
witness about what the witness personally saw or heard or did.
Circumstantial evidence is indirect evidence.  That is, it is
proof of one or more facts from which one can find another fact.
Let me give you an example.

If before you go to bed on a winter night, you look
out your window and you see it snowing, and you reach out the
window and feel it on your hand, you have personal knowledge
that it is snowing.  This is direct evidence.

But if when you go to sleep the sky and the ground are
clear, and you later awaken and the ground is white and covered
with snow, you conclude that it snowed even though you did not
see the snow fall.  This is circumstantial evidence.

You are to consider both direct and circumstantial
evidence.  Either can be used to prove any fact.  The law makes
no distinction between the weight to be given to either direct
or circumstantial evidence.  It is for you to decide how much
weight to give to any evidence.

In deciding the facts in this case, you may have to
decide which testimony to believe and which testimony not to
believe.  You may believe everything a witness says or part of
it or none of it.  In considering the testimony of any witness,
you may take into account a number of things:  the witness'
opportunity and ability to see or hear or know the things
testified to; the witness' memory; the witness' manner while

1  testifying; the witness' interest in the outcome of the case, if
2  any; the witness' bias or prejudice, if any; whether other
3  evidence contradicted the witness' testimony; the reasonableness
4  of the witness' testimony in light of all the evidence; and any
5  other factors that bear on believability.  The weight of the
6  evidence as to a fact does not necessarily depend on the number
7  of witnesses who testify about it.

8       You may hear testimony from persons who believe of --
9  who, because of education or experience, are permitted to state
10 opinions and the reasons for their opinions.  Such opinion
11 testimony should be judged like any other testimony.  You may
12 accept it or reject it and give it as much weight as you think
13 it deserves considering the witness' education and experience,
14 the reasons given for the opinion, and all the other evidence in
15 the case.

16      We have water.  Water?  We need some water.

17      MS. LOEFFLER:  It's right next to you.

18      THE COURT:  Where'd it go?  Okay, that's the witness'
19 water.  And also a throat lozenge here if you want it.

20      UNIDENTIFIED JUROR:  I have one.

21      THE COURT:  Good.  Okay, I was just telling -- I just
22 read you Instruction 10.  I will read it again.

23      You may hear testimony from persons who, because of
24 education or experience, are permitted to state opinions and the
25 reason for their opinions.  Such opinion testimony should be

judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

From time to time during the trial, it may be necessary for me to take up legal matters with the attorneys privately either by having a conference at the bench, or when necessary, by calling a recess.  We will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.

There are rules of evidence that control what can be received in evidence.  When a lawyer asks a question or offers an exhibit in evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, the lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered or the exhibit cannot be received.

Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer would have been.  Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

At the end of the trial, you will have to make your

decision based on what you recall of the evidence. You will not

have a written transcript of the evidence. I urge you to pay

close attention to the testimony as it is given. If you wish,

you may take notes to help you remember the evidence. If you do

take notes, please keep them to yourself until you and your

fellow jurors go to the jury room to decide the case. Do not

let note-taking distract you from being attentive. When you

leave court for recesses, your notes should be left in the jury

box on your chair. No one will read your notes. Whether or not

you take notes, you should rely on your own memory of the

evidence. Notes are only to assist your memory. You should not

be overly influenced by your notes or those of your fellow

jurors.

I now want to say a few words about your conduct as

jurors. First, keep an open mind throughout the trial and do

not decide what the verdict should be until you and your fellow

jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the

evidence received in the case and on my instructions as to the

law that applies, you must not be exposed to any other

information about the case or to the issues it involves during

the course of your jury duty.

Thus, until the end of the case, or unless I instruct

you otherwise, do not communicate with anyone in any way, and do

not let anyone else communicate with you in any way about the

merits of the case or anything having to do with it.  This
includes discussing the case in person, in writing, by telephone
or electronic means, via e-mail, text messaging, or any Internet
chat room, blog, website, or other feature.

This applies to communicating with your fellow jurors
until I give you the case for deliberation, and it applies to
communicating with everyone else, including your family members,
your employer, the media or press, and the people involved in
the trial, although you may notify your family and your employer
that you have been seated as a juror in the case.  But if you
are asked or approached in any way about your jury service or
anything about the case, you must respond that you have been
ordered not to discuss the case -- discuss the matter, and to
report the contact to the court.

Because you will receive all the evidence and legal
instructions you properly may consider to return a verdict, do
not read, watch, or listen to any news or media accounts or
commentary about the case or anything to do with it.  Do not do
any research such as consulting dictionaries, searching the
Internet, or using other reference materials, and do not make
any investigation or in any other way try to learn about the
case on your own.  The law requires these restrictions to ensure
the parties have a fair trial based on the same evidence that
each party has had an opportunity to address.

A juror who violates these restrictions jeopardizes

1 the fairness of these proceedings. Any jurors exposed to any

2 outside information, please notify the Court immediately.

3          We are about to take our second break. Remember,

4 until the trial is over, do not discuss the case with anyone,

5 including your fellow jurors, members of your family, people

6 involved in the trial, or anyone else, and do not allow others

7 to discuss the case with you. This includes discussing the case

8 in Internet chat rooms or through Internet blogs, Internet

9 bulletin boards, e-mails, or text messaging. If anyone tries to

10 communicate with you about the case, please let me know

11 immediately.

12          Do not read, watch, or listen to any news reports or

13 other accounts about the trial or anyone else associated with

14 it, including any online information. Do not do any research,

15 such as consulting dictionaries, searching the Internet, or

16 using other reference materials, and do not make any

17 investigation about the case on your own.

18          Finally, keep an open mind until all the evidence has

19 been presented and you have heard the arguments of counsel, my

20 instruction on the law, and the views of your fellow jurors. If

21 you need to speak with me about anything, simply give a signed

22 note to the bailiff.

23          Should I read that again? How many times have I said

24 that already today? I can read it to you again.

25          I read it a lot because it is so important. We'd like

1   to do trials one time, not more than one time.  We like jurors

2   to do what they are asked to do.  And I, you know, I've been

3   doing this for 20-plus years, and so it's so important that you

4   abide by this instruction for many, many, many reasons.

5           There is an article in the paper this morning about

6   the case.  Don't go look for it.  It's probably going to be in

7   your hotel room or at your doorstep.  Don't read about it.  You

8   are going to know so much more about this case than any

9   newspaper reporter.  You're going to know more about this case

10  because you're going to see the evidence that's admissible and

11  before you.  That's what the case has to be decided upon, the

12  admissible evidence.

13          People that come in and stay here for 15 seconds, go

14  out and write a news story, that's not what the case is decided

15  on.  It is decided on the evidence presented during the course

16  of the trial, all of it, having seen and heard the evidence and

17  the witnesses.  Want me to read it again?  How can I make this

18  any clearer?  I'm trying so hard to make this clear.  Counsel,

19  can I make it any clearer?

20          MR. CURTNER:  I think it's pretty clear.

21          MS. LOEFFLER:  I think everybody has the message, Your

22  Honor, and I trust they'll follow it.

23          THE COURT:  And that applies to -- and also, let me

24  tell you.  We take a break and you happen to run into some of

25  these people out here.  They can't talk to you.  So if they are

1    not talking to you, don't go say, "Well, they are the rude ones.

2    They didn't even say hi to me."  Because they don't want to get

3    in trouble with me.  So remember, they can't talk to you.  They

4    are not being rude.  They are just doing their duty.  Everybody

5    has obligations, responsibilities.  We all do.

6           Now here's a unique thing.  We are going to adjourn

7    for today.  If you could be back in the big room tomorrow by ten

8    minutes to 9, we'll try to start right at 9 tomorrow.  Then

9    we're going to go all day tomorrow, which is what, Tuesday, all

10   day Wednesday, all day Thursday, Friday off because we've got

11   other commitment.  So you've got Friday off.  So those that are

12   traveling, you'll have a long weekend.  I don't know who is

13   traveling and who is not traveling.  I think we've got

14   Dillingham, and who else, Bethel, so that gives you an

15   opportunity to know that.  You can make plans on that now.

16          The following week I don't know.  I know there are

17   some issues about the following week, right?  Who was -- was

18   that you?  I don't know.  I'll cross that bridge when we get to

19   it.  I can only look ahead one week at a time.

20          We are here to accommodate you.  We don't want to make

21   you uncomfortable.  Those chairs go up and down.  There's little

22   things so that you can put your feet on.  If you get

23   uncomfortable, tell us.  If you need to use -- if we're going

24   too long, and you'll see there's a little room here, you have

25   your own room where there will be soft drinks in there and

water.  And there's a men's restroom and a female restroom
that's right across the hall, so you'll be reasonably
comfortable.  We'll try not to go longer than two hours at a
shot before we take a break, but if we go too long and you're
getting uncomfortable, just tell us, okay?  Because you are the
ones we want to be comfortable throughout and comprehend and
understand what we are doing.

Questions.  Yes, ma'am.

JUROR NUMBER 2:  So I'm sure everybody has the same
question.  But so for work, are we allowed to say that we're
serving on a murder trial and it's going to take three to four
weeks?  Is this all appropriate information?

THE COURT:  What you have just said is okay, and if
they have any questions--

JUROR NUMBER 2:  And is it kind of standard to be off
on Friday, or is it just --

THE COURT:  No, it's not standard.  It's unusual this
Friday, and it might be unusual next Friday.  I mean, there is
one of you who is really hoping that we're off next Friday as
well.

JUROR NUMBER 2:  But we are off Friday this week?

THE COURT:  This Friday for sure.  It's not a pattern.
I don't want to spoil you.  I mean, I've been trying -- I've
been trying cases for over 22 years.  This is the first time
I've taken a Friday off, and if I do it two weeks in a row,

```
 1   it'll be unusual, but I know people are rooting for that.

 2            Because we want to get it done quickly, right?  But we

 3   don't want to get it done so quickly that we go too fast or

 4   people miss important obligations.  And I know that there'll be

 5   sometimes we stop a little early just because of other issues.

 6   But we are going to basically go from 9 till noon, take a lunch

 7   break from 1 to 1:15 -- from 12 to 1:15, and then go till

 8   12:30 -- I mean, sorry, 4:30 or 5.  We seldom will ever go

 9   beyond 5.  We generally stop between 4:30 and 5.  Good question.

10   Anything else?

11            So do they go to the big room now, or do they go to

12   the little room now?  Okay, so we'll stand in recess.  Someone

13   will open this door for you.  You can go into the jury room, and

14   then they'll take you to the big room.

15            Thank you all.  I look forward to seeing you quite a

16   bit in the next few weeks.  Remember, ten to 9 tomorrow in the

17   big room.

18            He's going to unlock the door for you.  I think it's

19   locked.

20                                      (Jury not present)

21            THE COURT:  Okay, for the record, the jury has left,

22   and please be seated.  I think we are still on the record.  Why

23   don't you go unlock the door there.

24            What issue does the government have?

25            MS. LOEFFLER:  We don't have any, Your Honor.  We just
```

1  wanted -- if the Court or somebody can let us in so -- we have a

2  few witnesses --

3         THE COURT:  That's fine.

4         MS. LOEFFLER:  -- who want to see the room, and we can

5  make sure that the opening is ready to go exactly when you want

6  it at 9.

7         THE COURT:  I'd like you to go at 9 o'clock.  Is 15

8  minutes long enough?

9         MS. LOEFFLER:  For the opening?

10        THE COURT:  Yeah.

11        MS. LOEFFLER:  No.

12        THE COURT:  Okay.  That was just a yes or no answer.

13        MS. LOEFFLER:  I just gave you a yes or no answer.

14  No.

15        THE COURT:  That's right.  So it's going to be less

16  than an hour?

17        MS. LOEFFLER:  Excuse me?  I think it'll be less than

18  an hour.

19        THE COURT:  Okay.  And then so you'll have your first

20  witness ready to go by what, 11 o'clock?

21        MS. LOEFFLER:  Before that.

22        THE COURT:  An hour and an hour, or an hour and half

23  hour, whatever.  So we should have the first witness go, we'll

24  stop at noon.  And then we'll go heavy this week until Thursday.

25        And, you know, we've got the juror that wants to leave

1  next Friday; so keep that in the back of your mind.  We could

2  make her an alternate, or we can do it -- we also have a juror

3  that's coughing a lot; keep that in the back of your mind.  I

4  only have a limited amount of throat lozenges here, and I don't

5  want everybody to get sick.

6          Mr. Curtner, what else?  Oh, yes.

7          MR. OFFENBECHER:  Your Honor, can I consult with Ms.

8  Loeffler for just one second?

9          THE COURT:  Sure.

10     (Whispered discussion off record)

11         MR. OFFENBECHER:  Your Honor, counsel -- we have just

12  discussed and wanted to approach the Court with the idea that

13  some of these witnesses we may want to examine beyond the scope

14  of the direct examination so that they don't have to be called

15  back.

16         THE COURT:  Sure.

17         MR. OFFENBECHER:  And I think we are in agreement that

18  that's okay if it's okay with the Court.

19         THE COURT:  It's fine with me as long as the parties

20  agree.  And there will be times that -- most times that's

21  appropriate.  Sometimes they -- it's not.  In that case, I'm

22  sure the government will --

23         MS. LOEFFLER:  Yeah.

24         THE COURT:  That will save us some time.  All right,

25  Mr. Curtner, what do you have to say?

1           MR. CURTNER:  I'm done.

2           THE COURT:  Now let me just say -- jurors, have they

3    come?

4           THE CLERK:  Jury -- jurors are back there.

5           THE COURT:  I know, but they are not back there.

6           THE CLERK:  They shouldn't be.  We'll check before we

7    go out.

8           THE COURT:  Okay.  That's my point.  Okay, we'll stand

9    to recess until ten to 9 tomorrow morning.

10          MS. LOEFFLER:  Thank you.

11          THE CLERK:  All rise.  This matter stands adjourned,

12   and to recess till tomorrow at 9 a.m.

13              (Proceedings recessed at 2:39:16 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2

3        I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved

4    transcriber, certify that the foregoing is correct transcript

5    from the official digital electronic sound recording of the

6    proceedings in the above-entitled matter.

7

8

9    _____          ___9/2/14_____

10   Leonard J. DiPaolo, RPR, CRR, CCP              Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25