1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF ALASKA
2
    UNITED STATES OF AMERICA,    )      Case No. 3:13-cr-00008-RRB-JDR
3                                )
              Plaintiff,         )      Anchorage, Alaska
4                                )      Tuesday, February 19, 2013
        vs.                      )      3:34 p.m.
5                                )
    JAMES MICHAEL WELLS,         )      ARRAIGNMENT ON INDICTMENT
6                                )
              Defendant.         )
7                                )

8                      TRANSCRIPT OF PROCEEDINGS
                        Pages 1 - 22, inclusive
9
                   BEFORE THE HONORABLE JOHN D. ROBERTS,
10                   UNITED STATES MAGISTRATE JUDGE

11   A P P E A R A N C E S:
     For Plaintiff:    DANIEL COOPER, JR., ESQ.
12                     BRYAN D. SCHRODER, ESQ.
                       U.S. Attorney's Office
13                     222 W. 7th Avenue, #9
                       Anchorage, Alaska 99513
14                     Ph: 907/271-5071

15   For Defendant:    SUE ELLEN TATTER, ESQ.
                       NOA OREN, ESQ.
16                     Federal Public Defender's Agency
                       601 W. 5th Avenue, Suite 800
17                     Anchorage, Alaska 99501
                       Ph: 907/646-3400
18
     For Probation:    ERIC ODEGARD
19                     U.S. Probation Office
                       222 W. 7th Avenue, Room 48
20                     Anchorage, Alaska 99513
                       Ph: 907/271-5494
21
     Court Recorder:   BRENDA McGURN
22                     U.S. District Court
                       222 W. 7th Avenue, Box 4
23                     Anchorage, Alaska 99513
                       Ph: 907/677-6154
24

25

1   A P P E A R A N C E S:  (Continued)

2   Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                       Peninsula Reporting
3                      110 Trading Bay Road, Suite 100
                       Kenai, Alaska 99611
4                      Ph: 907/283-4429

5

    Proceedings recorded by digital sound recording, transcript
6   produced by stenographic transcription service.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    P R O C E E D I N G S

1          ANCHORAGE, ALASKA - TUESDAY, FEBRUARY 19, 2013

2    (Log 3:34:04)

3      (Defendant present)

4          THE CLERK:  All rise.  His Honor the Court, the United

5    States District Court for the District of Alaska is now in

6    session, the Honorable John D. Robert presiding.  Please be

7    seated.

8          THE COURT:  We begin the court proceedings in the case

9    of U.S. versus James Wells, and we ask the defendant, is your

10   name James Michael Wells, sir?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Your name appears in an indictment in six

13   counts.  Do you have a copy of that document in front of you?

14         THE DEFENDANT:  Yes.

15         THE COURT:  That is a charging instrument.  It is not

16   evidence, but a way the government has of informing you of what

17   they have alleged.

18         Now, there are certain basic rights that you have.

19   You are presumed to be innocent of all charges.  You have the

20   right to a trial by jury.  You have the right to avoid

21   incriminating yourself.  Anything that you say voluntarily may,

22   in most instances, be used as evidence against you.  Your

23   statements could become evidence.  The government could call a

24   witness to testify what you said if it helps prove any of the

1  facts or allegations in the case.  So you may want to talk to an
2  attorney before you talk with anyone else about the case; do you
3  understand that, sir?
4            THE DEFENDANT:  Yes.
5            THE COURT:  You have the right to be represented by an
6  attorney.  You may chose your own if you can afford one.  You
7  may represent yourself if you do not want an attorney; not
8  usually a good choice.  You may as the court to appoint an
9  attorney for you at government expense if you cannot afford one.
10           Would you like to be represented by an attorney?
11           THE DEFENDANT:  Yes.
12           THE COURT:  Do you think you have enough monies or
13 property to pay for one?
14           THE DEFENDANT:  No.
15           THE COURT:  I'll ask some questions then to verify
16 that.  I have a financial affidavit I've been presented.
17           MS. TATTER:  He'll ask you a few questions.
18           THE COURT:  I'll have the clerk administer an oath to
19 you, please.  Please stand.
20               JAMES MICHAEL WELLS, DEFENDANT, SWORN
21           THE CLERK:  Thank you, sir, please be seated.
22           If you could please state your full name and then
23 spell your full name, please.
24    A.  James Michael Wells, J-a-m-e-s M-i-c-h-a-e-l W-e-l-l-s.
25           THE CLERK:  Thank you.

1                    VOIR DIRE EXAMINATION

2    BY THE COURT:

3       Q.  Mr. Wells, did you sign the affidavit I'm holding up?

4    And if you need to see it closer, we'll bring it to you.

5       A.  Yes, I did.

6       Q.  Did you fill out the answers with an ink pen, or did

7    someone do it for you?

8       A.  Sue Ellen did -- or my attorney.

9       Q.  You provided information to the attorney?

10      A.  Yes.

11           THE COURT:  Do either counsel have any problem with

12   this hearing being conducted in open court?

13           MR. COOPER:  No, Your Honor.

14           MS. TATTER:  No, Judge.

15   BY THE COURT:

16      Q.  All right, Mr. Wells, keep in mind you need to be

17   truthful.  You could be prosecuted for false information, so if

18   you don't understand my question, then please let me know.  My

19   questions are designed to see if you can afford counsel.  It has

20   nothing to do with the facts or the charges.

21           This indicates that you're presently employed.  Do you

22   expect, if you're released and available to continue your

23   employment, that it will continue, or do you know?

24      A.  I don't know.  I'm on administrative leave at the

25   moment.

1    Q.  Do you expect that pay -- I believe you're being paid?

2    A.  Yes.

3    Q.  Any reason to believe that that would cease until this

4  case is decided?

5    A.  I don't know.

6    Q.  Indicates you're married.  Does your wife work or have

7  income?

8    A.  Yes.

9    Q.  Where does she work?

10    A.  She works for the Kodiak Area Native Association in

11  Kodiak, Alaska.

12    Q.  There is a question on here about owning property.

13  I'll ask about real estate first.

14        Do you own any land or real estate anywhere?

15    A.  Yes.

16    Q.  Do you own a home?  Is that the --

17    A.  It's a home.

18    Q.  I see the value that's been put on it here on the

19  affidavit.  How close are you to paying off the mortgage?

20    A.  I think there's about $54,000 left.

21    Q.  Do you have any other interest in land or real estate

22  anywhere else?

23    A.  No.

24    Q.  And is that a jointly held property?

25    A.  Yes.

1      Q.   Describe any vehicles that you own, make, model, year?

2      A.   A 2002 Dodge Ram 2500 pickup truck.  And then I

3  co-signed on my wife's Honda 2001 CR-V.

4      Q.   Do you owe any monies on either vehicle?

5      A.   No.

6      Q.   Do you own any bank accounts?

7      A.   Yes.

8      Q.   How much on deposit, approximately?

9      A.   Well, I think around $3,000.

10     Q.   Do you own any credit cards in your name?

11     A.   Yes.

12     Q.   Do you have any outstanding debts on those cards?

13     A.   Yes.

14     Q.   Is anything past due that is maybe more than 30 days

15  past due?

16     A.   No.

17     Q.   Other than the income that you've mentioned, do you

18  have any other source of income?  PFD is listed here.  Is that

19  reflected in your accounts already, or spent, one of the two?

20     A.   Yeah, yeah, they're -- it's -- it's gone.

21     Q.   Do you have any other benefits from federal, state, or

22  local government?

23     A.   Yes.  I am retired from the Coast Guard, so I'm

24  receiving retirement pay as listed.  And I'm also a disabled

25  veteran, so I'm receiving a benefit from the VA.

1      Q.  Have you asked anyone to safe keep any monies or

2   property for you in the last year?

3      A.  No.

4      Q.  How much cash do you have?  I'm not asking you where it

5   came from or where it's located.  How much cash that you could

6   spend as you choose?

7      A.  Whatever is in my checking account.

8      Q.  And that's basically what's listed here on this

9   affidavit?

10     A.  Yes.

11     Q.  Have you attempted to retain counsel at all?  Have you

12  made any efforts to retain your own attorney?

13     A.  No.

14         THE COURT:  Does the government have any evidence you

15  want to offer on that issue of eligibility for counsel?

16         MR. COOPER:  No, Your Honor.

17         THE COURT:  Would the government agree the defendant

18  is entitled to two attorneys because of the capital offense

19  charge at this time?

20         MR. COOPER:  At this time, no, Your Honor, because as

21  the indictment is currently drafted, special findings are not

22  included, and so it's not at this time a capital case.

23         THE COURT:  What I'm inclined to do is to appoint

24  counsel with the provision that the defendant pay up to the

25  first $30,000 of court costs.  Now, that may be reviewed.  I

don't know how the bail issue is going to play into monetary
figures at all, but addressing this issue, it appears that he
has some resources, particularly his savings account, and so I
would cap it at 30,000 so he wouldn't pay over that.  If for
some reason the fees turn out less than that, then of course he
would pay the lesser amount at the rate that's provided by
statute for CJ attorneys.

Will the Public Defender's Office be keeping the case?

MS. TATTER:  Yes, Your Honor.

THE COURT:  All right.  What I want is a document that
indicates he's willing to agree to that, and I'll ask the
defense to prepare that for me and present it.

Mr. Wells, what I've ruled is that you're not entitled
to a hundred percent free attorney, but basically you're
entitled to a court-appointed attorney with some financial help
by you.  Do you agree to accept an attorney on that basis.

THE DEFENDANT:  Yes.

THE COURT:  I'll give the clerk the financial
affidavit, which may be filed as part of the record.  So we'll
move on to other matters.

Now, at the arraignment you have the right to have the
indictment read.  The purpose of the reading is to inform you of
the nature of the charges so you know what pleas, guilty or not
guilty, to offer.

I'll be glad to have it read to you, or if you've read

1    it for yourself and you choose, you may waive the reading.

2                THE DEFENDANT:  I'll waive the reading.

3                THE COURT:  Ms. Tatter, I realize you're just now

4    being appointed to the case, but I know that you've probably

5    worked with him before this.  Have you had a chance to review

6    the indictment content with him?

7                MS. TATTER:  Yes, and I advised him to plead not

8    guilty.

9                THE COURT:  Well, I haven't asked that question yet.

10   Counts 1 and 2 charge murder in the first degree within the

11   Special Maritime Jurisdiction; Counts 3 and 4, murder of an

12   officer or employee of the United States; Counts 5 and 6,

13   possession and use of a firearm in relation to a crime of

14   violence.  So there are two victims who are named each in Counts

15   1 and 2 and Counts 3 and 4 and 5 and 6.

16               Would the government state the penalty provision for

17   the offense alleged, please.

18               MR. COOPER:  Thank you, Your Honor.  On the indictment

19   as charged without special findings with respect to Counts 1 and

20   2, murder in the first degree in the Special Maritime

21   Jurisdiction of the United States, life in prison, special

22   assessment of $100,000, a fine of $250,000, and restitution as

23   ordered by the Court under this statute as to each count.

24               With respect to Counts 3 and 4, the violation of 18

25   United States Code Section 1114 and 111 [sic], murder in the

first degree of officers or employees of the United States in
the performance or on account of the performance of their
official duties, life in prison, a special assessment of $100, a
fine of $250,000 and restitution as ordered by the Court with
respect to each count.

    With respect to Counts 5 and 6 alleging violations of
18 United States Code Section 924(c) and (j), possession and use
of a firearm in connection with a crime of violence,
specifically murder in the first degree, under 18 United States
Code Section 111(a) [sic], any term of imprisonment to life,
including life, a special assessment of $100, a fine of
$250,000.  If the sentence that is imposed is less than life in
prison, supervised release no more than five years, and
restitution as ordered by the Court under Section -- 18 United
States Code Section 3663.

    THE COURT:  Thank you.  Mr. Wells, you don't have to
remember all of that information, your attorney will go over it
with you.  The purpose of providing that is to show you these
are serious charges and will give you some idea of the exposure
that you have based on the nature of the felony charges.

    I have indicated that you have certain basic rights.
Let me expand on the right to avoid incriminating yourself.  You
don't have to subject yourself to any interrogation by a law
enforcement officer.  If you're willing to talk to one, you may
have your attorney present.  You may stop the questioning at any

1  time if you decide to answer no further questions.

2          There are additional rights that apply, and I'll be

3  glad to mention those to you, or if you choose for purposes of

4  arraignment, you may waive the advisement of the rights.  If you

5  waive the advisement, what you're giving up was my stating the

6  rights at this time, you're not giving up the rights themselves.

7  And I'll be more than happy to state those for you, or to move

8  the hearing along, you may waive the advisement if you choose.

9  Your attorney can advise you.

10          THE DEFENDANT:  I'll waive that, Your Honor.

11          THE COURT:  The advisement of rights is waived.  How

12  do you now plead, sir, to Count 1, murder in the first degree,

13  guilty or not guilty?

14          THE DEFENDANT:  Not guilty.

15          THE COURT:  And let me ask the government to state or

16  pronounce the name of the victim, if you will, Richard W. --

17          MR. COOPER:  It's Richard W. Belisle, Your Honor.

18          THE COURT:  Thank you.  Under Count 2, the victim

19  addressed as James A. Hopkins, murder in the first degree, Count

20  2, guilty or not guilty?

21          THE DEFENDANT:  Not guilty.

22          THE COURT:  Count 3, and all these charged, the

23  language that you should pay particular attention to with your

24  attorney, which is willfully, deliberately, and maliciously, and

25  premeditated and malice of forethought.

1          So Count 3 is murder of an officer or employee of the

2    United States engaged in or in account of the performance of his

3    official duties, referring to James -- Count 3, Richard Belisle,

4    guilty or not guilty of murder of the officer as charged in

5    Count 3?

6          THE DEFENDANT:  Not guilty.

7          THE COURT:  Count 4, a similar offense alleging the

8    victim, James A. Hopkins, as an employee of the United States,

9    guilty or not guilty?

10         THE DEFENDANT:  Not guilty.

11         THE COURT:  Count 5, possession and use of a firearm

12   in relation to a crime of violence that addresses that firearm

13   as a .44 caliber -- well, let me just back up.

14         A firearm capable of firing .44 caliber ammunition for

15   the victim James Hopkins, guilty or not guilty of possession and

16   use of a firearm in relation to a crime of violence charged in

17   Count 5?

18         THE DEFENDANT:  Not guilty.

19         THE COURT:  Count 6, a similar offense to 5 with the

20   other victim, Richard Belisle, guilty or not guilty of

21   possession and use of a firearm in relation to that crime of

22   violence?

23         THE DEFENDANT:  Not guilty.

24         THE COURT:  The clerk will record not guilty pleas as

25   to all counts.

1    This case has been assigned to Judge Ralph Beistline,

2   U.S. District Judge, so he will be the trial Judge in your case.

3    I've received a memo that indicates a trial date, and

4   I know that that's not going to stick.  It's certainly not a

5   realistic date.  I think it was April the 15th.  I would think

6   this case would take longer than that to run its course.

7    Let me begin by asking the government the time frame

8   on gathering evidence and having a meaningful meeting to confer

9   with defense counsel.

10    MR. COOPER:  Thank you, Your Honor.  We do have some

11  materials such as the search warrants, items seized pursuant to

12  the warrants, the statements of Mr. Wells, things that would be

13  subject to suppression motions ready to go, and we could provide

14  those tomorrow.

15    We would like the opportunity to sit down with defense

16  counsel and develop a meaningful plan for discovery to present

17  to the Court and do that.

18    I believe that Mr. Curtner, the federal defender

19  himself, wishes to participate, and my understanding is he is

20  out of the state this week.  So perhaps we could get together

21  first part of next week and make a presentation to the Court by

22  a week from tomorrow.

23    THE COURT:  Is Mr. Curtner going to be the lead

24  counsel in this case?

25    MS. TATTER:  I imagine so, yes, and besides me from

1   the Federal Defender Office, that we'll be assisted by a staff

2   attorney Noa Oren.

3           THE COURT:  What I'd like to do is to require counsel

4   to meet and confer toward addressing the pretrial scheduling

5   order, and I can set a time we can meet in court.  If you want

6   to file something, that's fine too.  We've had capital cases.  I

7   realize the status of this is -- we're not there yet, but -- and

8   may not get there, but it will follow a similar format in the

9   way of scheduling that we've done.

10          And the government probably will have a time set by

11  which to present the case to the Attorney General for a decision

12  on whether the death penalty is sought.  Maybe the U.S.

13  Attorney's office here has to make that decision first to pursue

14  it or it doesn't go to the Attorney General.  Is that the way it

15  works?

16          MR. COOPER:  Yes, Your Honor.  First the United States

17  Attorney's Office has to make a recommendation, and then it goes

18  to the capital crimes committee, and then to the Attorney

19  General for a recommendation.

20          THE COURT:  Well, I know those things take time.  And

21  so the Judge puts out the trial order formally, then you can

22  move to continue it and move to have it declared complex or

23  extended as appropriate.

24          So my question now is when would the parties like to

25  have a planning conference, and would you want one done in

1  court, or would you want to just submit something in paper and
2  either both sides agree, or submit separately and the Court will
3  enter an order and publish it?

4           MR. COOPER:  Your Honor, I believe based on
5  indications from Ms. Tatter, that we would like the opportunity
6  to meet and confer at the early part of the week and come to the
7  Court if we have problems and make any filings necessary on
8  Wednesday, a week from tomorrow.

9           THE COURT:  So something would be submitted in writing
10 to the Court then that indicates what you agreed to and anything
11 else that you want to advise the Court in setting days?

12          MR. COOPER:  Right, and submit any disputes to the
13 Court --

14          THE COURT:  Certainly.

15          MR. COOPER:  -- for the Court's resolution.

16          THE COURT:  All right.  Ms. Tatter, does that sound
17 like a reasonable time frame?

18          MS. TATTER:  Yes.

19          THE COURT:  All right, I'll adopt that then.  So I'm
20 not setting motion practice now.  Of course that means motions
21 can be filed at any time.  Once we get the discovery exchanged
22 and the discovery conference certificate filed by the government
23 and a scheduling order, then we'll have a plan to file it for
24 pretrial motions.

25          Let's address the bail status.  I'll begin by asking

1  the government, from your point of view, is this a presumption

2  case?

3          MR. COOPER:  Yes, Your Honor, because of the 924(c)

4  counts, the rebuttable presumption does apply.

5          THE COURT:  That's the way I read it.  Unless the

6  defense disagrees, we'll treat it as a presumption for

7  detention.  I'll ask the government for its position today,

8  please.

9          MR. COOPER:  Thank you, Your Honor.  We would ask that

10  the Court continue the detention hearing for three days as

11  allowed by the statute.

12          THE COURT:  Ms. Tatter.

13          MS. TATTER:  That would be agreeable to us.

14      (Whispered discussion off the record)

15          THE COURT:  All right.  Do you want it on Friday, or

16  do you want it Monday?

17          MS. TATTER:  We would like it Monday.

18          THE COURT:  Monday the 25th.  Why don't you suggest a

19  time we need to be ready and I'll see if that is open.

20          MS. TATTER:  11.

21          THE COURT:  How about 10:30?

22          MS. TATTER:  Okay.

23          MR. COOPER:  That's fine, Your Honor, thank you.

24          THE COURT:  All right.  10:30 on Monday.  So Mr.

25  Wells, what I'm doing today is entering a temporary detention

1   order.  We'll address the bail in more detail on Monday at that

2   hearing.  The parties may present evidence and arguments.  Your

3   attorney can discuss that with you in advance, and I'll decide

4   whether or not you should be admitted to bail, if so, what the

5   conditions should be, or whether a detention order should

6   continue.  So the parties should prepare their witnesses and

7   evidence accordingly if you decide to pursue it that way.

8          I think because there is some time in here, the

9   parties might want to confer.  You may agree to disagree, but

10  maybe there is something you can agree on, some set of

11  conditions, at least approach it that way and see if that's the

12  case.

13         So we've got the bail issue addressed today.  Anything

14  else?

15         MR. COOPER:  Not from United States, Your Honor.

16  Thank you.

17         MS. TATTER:  Judge, I wonder if you can assist us, or

18  perhaps the marshal, with the direction of the Court.

19         My client is in jail with no ability to read because

20  he doesn't have reading glasses.  The parties let him use some

21  drugstore glasses here in court today.  But I wonder if there is

22  some way that the marshal or the FBI can take the glasses back

23  to the jail with him so he can read our documents in the court.

24         THE COURT:  Where are the glasses located now?

25         MS. TATTER:  They are right on him.

1          THE COURT:  His own glasses?

2          MS. TATTER:  These are -- these are drugstore glasses

3  that we got.

4          THE COURT:  But he wants to acquire his own glasses,

5  is that --

6          MS. TATTER:  No.  He paid --

7          THE DEFENDANT:  These are -- these are sufficient.

8          THE COURT:  Those work?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Okay.  Well, Mr. Wells, you have an

11  attorney who can assist you.  They have staff people,

12  investigators and all.  If there is some family member or

13  somebody who can bring your own glasses to the jail facility or

14  to Ms. Tatter, she can get them to you.

15          MS. TATTER:  That's a problem, Your Honor, because his

16  wife is from Kodiak.  And the marshal just indicated that he can

17  take these back and that they're the right -- then he can read

18  tonight.

19          THE COURT:  All right.  Is there any reason from

20  security or a marshal's point of view why he should not retain

21  these glasses?  All right, that doesn't appear to be a problem,

22  so he can hang on to those for use.

23          MS. TATTER:  Thank you, and thanks to the marshal.

24          THE COURT:  And if he wants his own, you can make

25  arrangements so that they can be sent over.  Anything else?

1        MR. COOPER: No, Your Honor. Thank you.

2        MS. TATTER: Nothing further.

3        THE COURT: Mr. Wells, you have an attorney, they have

4 other cases, so they can't just come at your beck and call. I

5 suggest you have in mind what you want to discuss with them so

6 when they do come, you don't forget to ask those questions.

7        If you have thoughts about a defense or defenses,

8 share those as early as you can with your attorney so they have

9 ample time to explore the factual basis and legal support for

10 those defenses.

11        So this case is predicated on a probable cause

12 finding, that's what the Grand Jury found, probable cause. The

13 jury will decide whether or not there is enough evidence to

14 warrant finding that you're guilty to one or more counts.

15 That's a different issue. The standard for the jury is beyond a

16 reasonable doubt. It's a higher standard than the grand jury

17 used in their findings.

18        So discuss it fully with your attorney. Don't

19 hesitate to ask her to explain something. If she's done it once

20 and you're not clear on it, she'll do it again.

21        THE DEFENDANT: Yes, sir.

22        THE COURT: This will complete this hearing.

23        THE CLERK: All rise. This matter is now adjourned.

24 This court now stands adjourned subject to call.

25        (Proceedings adjourned, 3:57:03 p.m.)

1                          CERTIFICATION

2

3       I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved

4   transcriber, certify that the foregoing is correct transcript

5   from the official digital electronic sound recording of the

6   proceedings in the above-entitled matter.

7

8

9   _____          ___9/8/14____

    Leonard J. DiPaolo, RPR, CRR, CCP              Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I-N-D-E-X

 2    WITNESSES:              VOIR DIRE   CROSS   REDIRECT   RECROSS

 3    JAMES MICHAEL WELLS         5          -         -          -

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```