1          UNITED STATES DISTRICT COURT
              DISTRICT OF ALASKA
2
    UNITED STATES OF AMERICA,    )      Case No. 3:13-cr-00008-RRB
3                                )
               Plaintiff,        )      Anchorage, Alaska
4                                )      Monday, March 24, 2014
       vs.                       )      10:06 a.m.
5                                )
    JAMES MICHAEL WELLS,         )      FINAL PRE-TRIAL CONFERENCE
6                                )
               Defendant.        )
7                                )

8               TRANSCRIPT OF PROCEEDINGS
                 Pages 1 - 40, inclusive
9
            BEFORE THE HONORABLE RALPH R. BEISTLINE
10               UNITED STATES DISTRICT JUDGE

11   A P P E A R A N C E S:
    For Plaintiff:    KAREN LOEFFLER, ESQ.
12                    BRYAN D. SCHRODER, ESQ.
                      KATHLEEN ANN DUIGNAN, ESQ.
13                    U.S. Attorney's Office
                      222 W. 7th Avenue, #9
14                    Anchorage, Alaska 99513
                      Ph: 907/271-5071
15
    For Defendant:    F. RICHARD CURTNER, ESQ.
16                    Federal Public Defender's Agency
                      601 W. 5th Avenue, Suite 800
17                    Anchorage, Alaska 99501
                      Ph: 907/646-3400
18
                      PETER OFFENBECHER, ESQ.
19                    Skellenger Bender, P.S.
                      1301 5th Avenue, Suite 3401
20                    Seattle, Washington 98101-2605
                      Ph: 206/623-6501
21
    Court Recorder:   NANCY LEALAISALANOA
22                    U.S. District Court
                      222 W. 7th Avenue, Box 4
23                    Anchorage, Alaska 99513
                      Ph: 907/677-6111
24

25

```
1    A P P E A R A N C E S:  (Continued)

2    Transcribed by:    LEONARD J. DIPAOLO, RPR, CRR, CCP
                        Peninsula Reporting
3                       110 Trading Bay Road, Suite 100
                        Kenai, Alaska 99611
4                       Ph: 907/283-4429

5

     Proceedings recorded by digital sound recording, transcript
6    produced by stenographic transcription service.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

ANCHORAGE, ALASKA - MONDAY, MARCH 24, 2014

(Log 10:06:32)

   (Defendant present)

          THE CLERK:  All rise.  His Honor the Court, the United
States District Court for the District of Alaska is now in
session with the Honorable Ralph R. Beistline presiding.  Please
be seated.

          THE COURT:  Good morning.

          MR. SCHRODER:  Good morning, Your Honor.

          MR. CURTNER:  Good morning, Judge.

          THE COURT:  Are we ready to go?

          MS. LOEFFLER:  Yep.  Well, we're -- we're close.

          THE COURT:  What does that mean?

          MS. LOEFFLER:  Oh, it means we're all -- I suspect it
means that both sides are working hard and, you know, getting
ready to do our trial.

          THE COURT:  Okay.  Okay, let's just go through any
issues the parties want to bring to my attention before I go
through my list.

          MS. LOEFFLER:  Does it matter or should we go through
his list first?

          MR. SCHRODER:  I don't think it matters.

          MS. LOEFFLER:  You know, Judge --

          MR. SCHRODER:  I think they're going to overlap.

1      MS. LOEFFLER:  -- I have a few little things.  You can

2  go first, or we can bring them up at the end.

3      THE COURT:  Okay.

4      MS. LOEFFLER:  Whichever way you want to do it.

5      THE COURT:  Mr. Curtner.

6      MR. CURTNER:  I have a few things to bring up, Judge,

7  but you may be addressing them.  It's up to you.

8      THE COURT:  Okay.  Let's start at the top.  Everybody

9  got notepads, a pen and pencil?

10      MR. CURTNER:  Yes.

11      MS. LOEFFLER:  Yes.

12      THE COURT:  I don't see the marshal.  What's the

13  position of the government and of the marshal with regard to

14  shackling during trial?

15      UNIDENTIFIED SPEAKER:  Sir, we don't -- we don't do

16  that unless it's requested.

17      THE COURT:  Okay.  So that will not become -- that

18  will not be an issue then at this point?

19      UNIDENTIFIED SPEAKER:  No.

20      MS. LOEFFLER:  No.

21      UNIDENTIFIED SPEAKER:  No.

22      THE COURT:  If everything goes smoothly --

23      UNIDENTIFIED SPEAKER:  Right.

24      THE COURT:  -- there will be no shackles during trial,

25  okay.

1           I'm still wrestling with the number of alternates.

2    I've set the chairs up with the idea that there would be four

3    alternates.  I'm leaning towards three alternates just to make

4    it more comfortable, and we wouldn't need the chair on the far

5    left.  In 22 years of trying cases, I've never used more than

6    one alternate.

7           MS. LOEFFLER:  We're fine with three alternates, Your

8    Honor.

9           MR. OFFENBECHER:  We are too, Your Honor.

10          THE COURT:  Okay.  So there will be three alternates.

11    That means I'll eliminate that chair from the left and you'll

12    see how that now is 15 chairs set there.  That means the

13    government will have eight preemptory challenges and the

14    defendant will have 12 preemptory challenges pursuant to Rule

15    24.

16          I have previously addressed the issue of selection of

17    alternates, and we have agreed that they will be randomly

18    selected at the end of the trial.  I have considered the

19    questions submitted by counsel during the voir dire process.  I

20    will use many of them, not all of them.  I do the questioning.

21    I expect the parties to alert me if I overlook something of

22    significance.

23          I've explained to the defendant previously that he has

24    a right to testify at trial.  That ultimately is defendant's

25    right and choice as to whether or not he will testify.  He needs

1  to consult with counsel on that issue, but ultimately whether or

2  not defendant testifies at trial is his decision.  Do you

3  understand that, Mr. Wells?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Best practice during voir dire is

6  for the defendant to remain at counsel table during any

7  questioning of jurors.  And I think that given the closeness of

8  counsel table to where we will be doing the questioning, that's

9  probably the best practice.  It will eliminate the need of the

10  marshal having to come.

11         But if defense counsel for any reason wants to confer

12  with the client during this up-front questioning, just let me

13  know, and that will be -- that will be available.  Any issues

14  with regard to that?

15         MR. CURTNER:  No, Your Honor.  You're going to be

16  doing sidebar with the jurors on this side?

17         THE COURT:  Right, right.

18         MR. CURTNER:  Okay.

19         THE COURT:  I usually do it right here.  So you can

20  see it's, what, 15 feet away, so it's not a great distance away.

21  And I'm very open to going back and talking with

22  (indiscernible).  It just makes things a little smoother.

23         MR. CURTNER:  And, Judge, just a question on voir

24  dire.

25         THE COURT:  Yes.

 1          MR. CURTNER:  I think we had asked for attorney voir

 2    dire, but you're suggesting that if there is an issue that comes

 3    up, that we can --

 4          THE COURT:  Sure.

 5          MR. CURTNER:  -- bring it to your attention, or how do

 6    you --

 7          THE COURT:  Well, you'll see as we get into it it goes

 8    pretty smoothly.  I do most of the questioning, and by the time

 9    I'm through, counsel realize I've ask everything they would have

10    asked anyhow.

11          But sometimes, for instance just as an example,

12    counsel have said to me, "Judge, it appears that Juror No. 7 and

13    Juror No. 12 work at the -- for the same employer.  Maybe we

14    should inquire as to whether that would be an issue."  "Oh,

15    thank you, counsel."  Then I say -- then I will address that

16    issue with them.  Or something of that nature, you just bring it

17    to my attention.

18          MR. CURTNER:  Okay.

19          THE COURT:  Or you can -- if it's something you think

20    we can just step -- have a sidebar, we can do it.

21          MR. CURTNER:  But the attorneys will not be asking

22    jurors questions?

23          THE COURT:  Attorneys will not be asking questions.

24          MR. CURTNER:  Okay.

25          THE COURT:  But it's very open.  And frankly, jurors

1  prefer it that way.  I prefer it that way having spent decades

2  doing both ways.

3        MR. CURTNER:  Uh-huh, okay.

4        THE COURT:  But it's very comfortable.  It's not a

5  situation where you're precluded from bringing an issue up to

6  me, and we can get it squared away.

7        Given the length of trial, I will announce fairly

8  early on that we're anticipating a trial of roughly four weeks.

9  That may generate some shuffling among the jurors sitting back

10  here and a number of concerns, and they will express those

11  concerns.  But unless it's clearly significant, I will probably

12  not rule on those at the moment, because I don't want to start a

13  series of everybody all of a sudden realizing they have a reason

14  to be excused, but I will refer to Nancy.  I'll just make a

15  comment to Nancy and she will highlight that person, maybe move

16  them lower to the -- lower on the list so that we aren't letting

17  everybody go who thinks four weeks is too long.  But we're aware

18  of it, and we're considering that as we determine what kind

19  of -- who will serve on the jury.

20        And counsel, this is not going to be secretive, it's

21  going to be pretty obvious.  Nancy, I'll have to talk to you

22  about that, and you'll have to make a note of that.

23        Do we have media people here?  I don't know.  The

24  media has asked that they be able to take notes on their

25  computers.  We've been allowing that, but I want to caution the

1   media that pursuant to Rule 53, they cannot take photographs

2   during the proceedings, nor can they broadcast the proceedings.

3           And Judge Gleason has notified me that she recently

4   permitted note taking on the computer by the media.  It became

5   loud, so loud that it was distractive to her and the in-court.

6   So any media use of notes will have to be done in a way that is

7   not distractive in any way to the proceedings.

8           How are we doing so far on turning the page?  We've

9   got two attorneys on both sides, is that right?

10          MS. LOEFFLER:  Three, Your Honor.

11          THE COURT:  Three.

12          MR. CURTNER:  On that side, two on our side.

13          MS. LOEFFLER:  On our side we have three.

14          THE COURT:  That's right.  You've got three; you've

15  got two, okay.  Do you have a case agent that's going to be

16  here?

17          MS. LOEFFLER:  Yes.  The case agent is Daryl Allison,

18  and he is sitting right there.

19          THE COURT:  Okay, at trial where's he going to sit?

20          MS. LOEFFLER:  Let's see.  In this courtroom.  We'll

21  squeeze over and we're going to put a chair.

22          THE COURT:  Okay.  What I will do is I will refer to

23  lead counsel when the jury is in here.  I'll ask you to

24  introduce each person.  I'll introduce counsel for the

25  government, I'll introduce Mr. Curtner and Mr. Wells, and then

1   whoever you're going to have sitting over here.  Are you going

2   to have to --

3           MR. CURTNER:  Yes, Judge.  And just to let you know,

4   I'll probably have Bruce Johnson and maybe another investigator

5   back here.

6           THE COURT:  Well, you'll have to introduce them.

7           MR. CURTNER:  Yes, yes.

8           THE COURT:  Okay.

9           MR. CURTNER:  And we -- you missed the militia trial

10  we had here, but it worked out pretty well for the defense to

11  have a --

12          THE COURT:  No, I wasn't here for that.

13          MR. CURTNER:  Yes, I know.  But it was -- it really

14  was -- it worked out well in this courtroom to have that.

15          THE COURT:  Good.

16          MS. LOEFFLER:  Yeah, that's because your guys get

17  tables and our guys don't.

18          THE COURT:  Yeah, I noticed that was quite comfortable

19  for the defense.

20          MS. LOEFFLER:  Yeah.

21          THE COURT:  Okay.  I've gone over the parties' trial

22  briefs, and I can respond to the various issues raised.

23          First, with regard to the Wells trial brief, Mr. Wells

24  is concerned that the government wants to introduce other

25  misconduct, prior acts, and I think there has been six specific

1  incidents that the government has referred to in its briefing.

2       In my view, it's inextricably intwined with the events

3  such that those items are admissible.  They're relevant to

4  motive, help paint a picture of the work environment, and are

5  truly admissible, especially in a situation where you have two

6  co-workers who are killed and a third charged with murder.  And

7  I think the events in question that are suggested are not too

8  remote and are relevant and therefore are admissible.

9       There are some matters that the magistrate judge

10  excluded with regard to property taken from the United States

11  Coast Guard property, and that -- those items I will continue to

12  support the magistrate judge's conclusion in that regard.  They

13  can't be presented to the jury, those materials, without prior

14  Court approval.

15       No evidence of any extramarital relationships admitted

16  without prior Court approval.

17       Generally, evidence that someone other than the

18  defendant committed the crime is admissible.  I don't know

19  what's behind all that, but at this point it appears to be

20  relevant to a defense.

21       I don't know what the parties are talking about in

22  terms of these non-disclosure forms with regard to Leah Henry

23  and Aaron Coggins.  Is that something I have to address?  I

24  didn't see it addressed at all in the government's briefing.

25       MS. LOEFFLER:  Wouldn't want to answer that, Judge,

1  until -- Mr. Schroder can answer that.

2          THE COURT:  Well, good.

3          MR. SCHRODER:  Your Honor, there were a couple of --

4          THE COURT:  First of all, are they going to be called

5  as witnesses?

6          MR. SCHRODER:  Yes.

7          MS. LOEFFLER:  Yes.

8          MR. SCHRODER:  They will be called as witnesses.

9          THE COURT:  Okay.  Now there's an objection to that

10 based on the government wants -- I mean the defense wants to

11 interview them before they testify.

12         MR. SCHRODER:  Your Honor, they -- we've talked to the

13 witnesses.  The witnesses say -- the form is a form that some

14 CGIS agents use in kind of a court martial context to prevent

15 shipboard scuttlebutt.

16         The form that's actually read to them says they are

17 not to speak to people other than CGIS or appropriate counsel,

18 so it does not tell them they can't speak to the defense.

19         THE COURT:  Well, why can't they -- I think the

20 defense is saying, "Can we speak to them?"

21         MR. SCHRODER:  The defense, we -- they can if they

22 are -- if they want to be interviewed, but it's -- they don't

23 have to -- we're not going to force them to be interviewed.

24         THE COURT:  It seems to me that --

25         MR. SCHRODER:  That's the issue.

1           THE COURT:  It seems to me they should be available

2     for an interview.  Are they in Anchorage?

3           MR. SCHRODER:  No.

4           THE COURT:  Do they have telephones where they are?

5           MR. SCHRODER:  They do.  I mean, we have contacted

6     them and checked to see if they thought they were restricted in

7     any way by those forms.  They have indicated they remember the

8     forms, but did not feel they were restricted from talking to the

9     defense, but they -- they didn't -- they don't want to talk to

10    the defense.

11          THE COURT:  Well, I think in all fairness, you should

12    contact them and tell them that they probably should talk to the

13    defense so that it's a fair -- defense has a fair shot just

14    knowing what's going on.  Just basic fairness.  I don't know if

15    I'm going so far as to order it, but I don't want them to think

16    there is any reason they should not.

17          MR. SCHRODER:  Well, we've always --

18          THE COURT:  Otherwise it's going to occur -- it's

19    going to slow our trial down.

20          MR. SCHRODER:  Well, we've always made it clear, Your

21    Honor.  I mean, we understand what our position is, and we've

22    always made it clear to our witnesses that they have options,

23    and we never suggest any of those options to them.  We make it

24    clear that they have to make that decision.

25          THE COURT:  I understand.

1          MR. SCHRODER:  I mean, we could contact them.  I think
2   it would -- we would also -- I think they should have the option
3   of having one of us on the line if they choose that.
4          THE COURT:  Well, all I'm saying is that defense
5   should be able to interview these people, that's just in
6   fairness.
7          MR. SCHRODER:  Well, we'll make some kind of
8   arrangement, Your Honor.
9          THE COURT:  Okay.
10         MR. SCHRODER:  All right.
11         MR. OFFENBECHER:  So you are going to make
12  arrangements for an interview?
13         MR. SCHRODER:  We will, but I intend to give them the
14  option of having one of us available if they want that.  I mean,
15  the three options we give them --
16         THE COURT:  Okay.
17         MR. SCHRODER:  -- when we talk to them is --
18         THE COURT:  Okay, well, in that case, if you're going
19  to be available, I'm going to order that they make themselves
20  available with you on the line.
21         MR. SCHRODER:  Okay.
22         THE COURT:  How's that?
23         MR. SCHRODER:  Yes, Your Honor.
24         THE COURT:  Fair compromise.
25         MR. SCHRODER:  All right.

1          THE COURT:  They have to speak with defense counsel,

2   you're entitled to be there.

3          MR. SCHRODER:  Okay.

4          THE COURT:  Okay, fair.  Yes, sir.

5          MR. OFFENBECHER:  And, Your Honor, this would be all

6   of the witnesses who --

7          THE COURT:  This is Leah Henry and Aaron Coggins.

8          MR. OFFENBECHER:  Very well.  Thank you, Your Honor.

9          THE COURT:  I'm still going.  Everybody caught their

10  breath?

11         The Court denies the request for a new hearing with

12  regard to defendant's statements.  I think the magistrate judge

13  handled that very well, and he issued an order at Docket 267.

14  The Court concludes that the statements of Chief Reckner and

15  Senior Chief Reed wouldn't change the result of the order

16  denying the motion to suppress.

17         No reason to mention prostitution without prior

18  approval of the Court.

19         Now let's turn to the Daubert issues.  I think Judge

20  Roberts did an excellent job of addressing these issues.  Very

21  thorough, held hearings, considered the appropriate case law and

22  the parties.  So we have a number of -- and I think what really

23  I see on the defense brief is a motion to reconsider.

24         With regard to Gary Bolden and the tire, Judge Roberts

25  ruled the testimony admissible at Docket 303.  I've already

1  accepted that and that ruling, and for the reasons he set forth

2  have concluded that that's admissible.  After having looked at

3  the issue again, I continue to believe that that testimony is

4  admissible, that the Daubert has been addressed, that the

5  party -- that Mr. Bolden is qualified and can render an opinion.

6        Neil Schmidt, he is the Honda engineer.  He

7  concludes -- he has made some opinions that the parties don't

8  necessarily agree with, but I think his opinion satisfies

9  Daubert and can be presented to the jury.  The fact that the

10  video was blurry certainly goes to the weight and is something

11  that defense can bring out on cross-examination.

12        With regard to Angelo Toglia, automotive testing and

13  engineer, he's created a model of the crime scene using a wire

14  frame model that he generated using 3-D modeling animation, and

15  Judge Roberts initially ruled that testimony admissible.  I

16  concurred with his ruling.  I had a look at it again after

17  seeing the briefing of the parties.  I understand the issue, I

18  understand the concerns raised by defendant with regard to the

19  potential subconscious perception of the images, but I think the

20  testimony is admissible.  The issues that defense raise go to

21  weight.  I can give a cautionary instruction if an appropriate

22  one is submitted to me with regard to the vehicle.

23        And I'm going to permit the use of Dr. Reisberg's

24  testimony by the defense to address the concerns of confirmation

25  bias the defendants have presented.  So I think we're going to

1   have a number of experts testify, each for their own perception.

2   Their testimony, I think, looked at as a whole, will assist the

3   jury in addressing the factual disputes that they have to

4   resolve.

5           Again, I'm going to permit the testimony of Daniel

6   Reisberg with regard to confirmation bias.  I know the

7   government opposes that, but they can raise their issues on

8   cross-examination.  That would go to the weight of his

9   testimony.

10          And the opportunity to voir dire, the defense has

11  asked for an opportunity to voir dire the expert.  That's

12  generally permitted.  If you want to -- in front of the jury, I

13  presume that's what you mean?  If you have a few questions of

14  voir dire, that's appropriate.  It goes to both sides.

15          So I think that deals with those issues.  And I think

16  that it's already clear that the government is not going to call

17  it Mr. Wells' car.  I think that was acknowledged in the

18  briefing; isn't that right?

19          MS. LOEFFLER:  I mean, yeah, we're going to call it --

20  I mean, if you're asking in the opening, the small blue SUV?  I

21  mean, obviously we're going to --

22          THE COURT:  I'm talking about this concern over this

23  video presentation that you're going to make.

24          MS. LOEFFLER:  No, no, no, we're not calling it Wells'

25  car, absolutely not.

```
 1              THE COURT:  Okay, okay.  I think you've said that in
 2    your briefing.
 3              MS. LOEFFLER:  Yes.
 4              MR. CURTNER:  Judge, if I can address that?
 5              THE COURT:  Okay.
 6              MR. CURTNER:  I think part of the trial exhibits
 7    include photographs of Mrs. Wells' car.
 8              THE COURT:  That is Mrs. Wells' car.  That's not
 9    disputed.
10              MR. CURTNER:  Right.  No, so I mean, that was one of
11    the things we wanted to raise is having -- so, I mean, I imagine
12    they did a separate run-through on April 19th, that that would
13    be -- and I imagine then they're going to call it Mrs. Wells'
14    car.  That's what I was saying.
15              MS. LOEFFLER:  That is her car.
16              MR. CURTNER:  Unless they're just going to say it's
17    a -- that is a --
18              THE COURT:  Well, I just go by the briefing that I got
19    and wherein they said they weren't going to refer to it as Mrs.
20    Wells' car.
21              MR. CURTNER:  Even on the 19th?
22              MS. LOEFFLER:  Well, Your Honor, the 19th is her car.
23    So of course it's Mrs. Wells' car.
24              THE COURT:  Okay.
25              MS. LOEFFLER:  But they took -- they took the car with
```

1  a search warrant, and on the 19th that car is her car.

2          THE COURT:  Okay, okay.

3          MS. LOEFFLER:  So, I mean, what we're not doing is

4  we're not calling the disputed vehicle in the presentations

5  Wells' car, and none of our --

6          THE COURT:  Okay.

7          MS. LOEFFLER:  -- experts are going to say, "That one

8  is."  But I think it's sort of absurd to take something that

9  nobody disputes as Nancy Wells' car and say it isn't Nancy

10 Wells' car.

11         THE COURT:  I think I understand that.

12         MS. LOEFFLER:  Okay.

13         THE COURT:  Then we get crime scene experts Gifford

14 and Morton.  I think everybody understands, I just have to

15 reassert it, that these experts can't testify as to the ultimate

16 question, but they can set forth their observations.

17         And I guess the dispute is whether or not they can

18 testify as to what they think are characteristics of persons

19 involved in workplace violence.  I think that their expertise

20 has been already established by the magistrate judge.

21         And as I understand, the questions that the government

22 intends to ask, I think they're appropriate, but they can't ask,

23 "Do you believe Mr. Wells, blah, blah, blah, blah, blah?"  Do

24 you understand what I'm saying?

25         MS. LOEFFLER:  Absolutely.  I'm not intending to do

1  that, Your Honor.

2          THE COURT:  Okay.

3          MR. OFFENBECHER:  Your Honor, can I address that

4  issue?

5          THE COURT:  Yes.

6          MR. OFFENBECHER:  The problem comes where the experts

7  are permitted to testify that a person who commits workplace

8  violence has these characteristics, X, Y, and Z, and then --

9  although they don't ask the expert to connect the dots, they

10  then -- the next witness testifies that the defendant has these

11  characteristics, X, Y, and Z.

12          And what they're ending up doing is having the

13  expert -- they don't connect the dots in court, but certainly

14  the jury knows, and you end up with impermissible character

15  evidence because they're saying the characteristics of a person

16  who commits this crime, and then are these -- you know, these

17  particular things, and then they just line them up and they try

18  to prove that the defendant has those characteristics.

19          So it's just a way around the rule that you cannot

20  permit the government to introduce character evidence or make an

21  opinion that the defendant is the person who commits the crime.

22          THE COURT:  Okay, your response.

23          MS. LOEFFLER:  Your Honor, I think there's -- first of

24  all, the crime scene experts, which are Mr. Morton and Mr.

25  Gifford, are not talking about, "Here's the characteristics of

1  whatever."  They're going to talk about, you know, "Looking at

2  this looks like workplace violence," and they're going to go

3  through one on the crime scene.

4         THE COURT:  See, I wrote on my notes, "What kind of

5  questions are they going to ask?"  Because I can't tell.  You

6  give me generalities, and I --

7         MS. LOEFFLER:  Yeah, I mean, the crime scene --

8  there's two different -- there is the crime scene experts, which

9  are Mr. Gifford, Mr. Morton, and then Dennis Dupras, the

10  trooper.  They're talking about what they saw on the crime

11  scene --

12         THE COURT:  Right.

13         MS. LOEFFLER:  -- what they reviewed, and what that

14  demonstrated to them.

15         Then there's Dr. Meloy.  Dr. Meloy is a forensic

16  psychologist.

17         THE COURT:  Okay.

18         MS. LOEFFLER:  Dr. Meloy -- we provided them the

19  report -- he's going to talk about characteristics on, you know,

20  targeted individual multiple homicide workplace violences.  He's

21  got a long career in it, you know.

22         THE COURT:  Okay.

23         MS. LOEFFLER:  And Judge Roberts found he was

24  eminently qualified for this.

25         THE COURT:  Okay, I saw that.

1          MS. LOEFFLER:  He is not going to talk about Mr. Wells

2    because he hasn't examined him, and it's not ethically

3    appropriate.

4          What he did -- and we put in cases in our Daubert,

5    which is why Roberts found that it qualified for this -- we put

6    in cases showing exactly what we're doing is appropriate.

7          What he's going to do is he is going to -- you know,

8    based on, like TV, people think somebody that commits a

9    workplace violence snaps, and he's going to point out that

10   that's not really the case.  He's going to talk about some

11   characteristics that do not apply to Mr. Wells.  The jury will

12   hear from people who knew him in the workplace, and then they

13   will make the determination whether this fits.

14         But some of what he's going to do is disabuse the jury

15   of basically, unfortunately, notions that the TV puts out, that

16   somebody snapped, that threats would be conveyed.  I mean, he's

17   done long studies of that, which Judge Roberts found were

18   appropriate.

19         And what we did is we put in cases and the Advisory

20   Committee notes to Rule 702, which we pointed out specifically

21   note that that type of stuff is appropriate.  You talk about

22   characteristics, then the jury determines the evidence.

23         It's not improper character evidence.  The jury looks

24   at it and they say, does it fit, does it not fit?  And what we

25   do is we use him to disabuse the jury of commonly held notions

1 that basically come from TV.

2          MR. OFFENBECHER:  Your Honor, can I just respond
3 briefly?

4          THE COURT:  You can respond, although I think that the
5 government's right on this issue, unless you convince me
6 otherwise.  It's done all the time.

7          MR. OFFENBECHER:  Well, I understood the Court to be
8 going with Judge Roberts' opinion, and here's what Judge Roberts
9 said about Dr. Meloy.  "The probative value of Dr. Meloy's
10 proposed testimony may or may not outweigh the danger of unfair
11 prejudice, confusion of the issues, or misleading evidence that
12 would be placed before the jury.  At this stage of the
13 proceedings," says Judge Roberts, "Dr. Meloy's analysis and
14 theories, based upon his experience and training, are not
15 sufficiently relevant to the case at hand to be ruled admissible
16 at trial."

17          So Judge Roberts has stated that this analysis is not
18 correct, and that's at Docket 303, page 31.  So I think counsel
19 is mistaken when she indicates that Judge Roberts has, you know,
20 said -- she said that he's -- Judge Roberts said that he's
21 qualified, but that it's not relevant to this case, and that's
22 what we're saying.

23          But what counsel has just articulated for the Court is
24 exactly what the problem was.  And the problem is you line up a
25 bunch of characteristics and you say, "This is workplace

1   violence." And the other problem is, of course, there is only
2   seven people who work in that workplace, and two of them are
3   deceased.

4           So, in effect, you're permitting Dr. Meloy to testify
5   that Jim Wells is the person who committed the crime, even
6   though that's impermissible because it goes to the ultimate fact
7   in the case. And also it's an attempt to get around the rule
8   prohibiting character evidence. We're asking the Court just to
9   abide by Judge Roberts' ruling on Dr. Meloy.

10          THE COURT: Well, ultimately it's my decision, and all
11  I need is the questions -- the note I made is: What questions
12  are going to be asked specifically?

13          If I have the questions, then I can make a specific
14  ruling. But it seems to me generally the type of -- the proffer
15  that the government has made is appropriate, but I -- again,
16  here's my note: What questions are they going to ask?

17          And I'm just having to imagine. And I think that
18  they're probably permissible. But, you know, you're going to
19  have to give me in advance the questions you're going to ask
20  and -- so the record is clear. And then I'll have to just rule
21  question by question.

22          MS. LOEFFLER: Okay.

23          THE COURT: Okay? I need the questions in advance.

24          MS. LOEFFLER: Yes, Your Honor. I think what I'm
25  thinking of doing is sending -- I can file with the Court -- I

1　can't file, you know, word for word obviously --

2　　　　　THE COURT:  I know.

3　　　　　MS. LOEFFLER:  -- Dr. Meloy isn't here, but I can file

4　what I'm -- exactly what I'm trying to do with him, sure.

5　　　　　THE COURT:  We do drug cases all the time, and we ask

6　them, experts to testify about characteristics that are -- you

7　know, this doesn't shock me what you're talking about, but I'll

8　look again to make sure that I understand the concerns of the

9　defendant.

10　　　　　MS. LOEFFLER:  Okay.

11　　　　　THE COURT:  But again, no matter what we've already

12　decided, we can't go to the -- none of these witnesses can

13　testify as to the ultimate question and ask, "Do you believe Mr.

14　Wells did this?"

15　　　　　MS. LOEFFLER:  Right.

16　　　　　THE COURT:  You understand that?

17　　　　　MS. LOEFFLER:  Yes, nobody's --

18　　　　　THE COURT:  Okay.

19　　　　　MS. LOEFFLER:  -- going to testify to that, Your

20　Honor, not from the government's side.

21　　　　　THE COURT:  Okay.  So here we go.  I think that covers

22　that.  Okay, that takes care of the Daubert ones, as far as I

23　can tell.

24　　　　　What about this alibi defense, Rule 12.1 that the

25　government is concerned about?

1          MS. LOEFFLER:  Excuse me, Your Honor, I'm not -- you
2     know, what we tried to do -- I'm sorry.

3          What we tried to do in our trial brief is lay out any
4     potential issues, because we won't know what -- that they come
5     up.

6          THE COURT:  Right.

7          MS. LOEFFLER:  So it just depends on -- I think what
8     we -- if I can recall, I think this was a part I put in.

9          I think what we pointed out was that if -- and we
10    don't know whether the defendant's going to take the stand or
11    not, and if he takes the stand, we will cross-examine him on the
12    alibi that not only he has stated -- it's not really an alibi
13    under Rule 12.1, because it's only his statement.  We would --
14    and the statements that were put in by his counsel repeatedly, I
15    would cross-examine him on that if the story is different.
16    That's all we put in.  We put in the law on that.

17         THE COURT:  Okay.

18         MS. LOEFFLER:  It all turns on whether he takes the
19    stand or not.

20         THE COURT:  Okay.  I haven't heard anybody say
21    anything about the exclusionary rule in terms of witnesses who
22    might testify.  What's the parties' request in that regard?

23         MR. CURTNER:  Yeah, we would -- we would --

24         THE COURT:  Invoke it?

25         MR. CURTNER:  -- want the exclusionary rule, yes.

1          MS. LOEFFLER:  Yeah.  Our only issue is that victims,

2    families, and what we're planning on doing is putting them on

3    first.  Because I know that Mrs. Belisle, she's our first

4    witness --

5          THE COURT:  Well, it will take care of that.

6          MS. LOEFFLER:  -- because she does want to sit through

7    the trial.

8          THE COURT:  Okay.  Well, that will take care of that

9    issue then.

10         MS. LOEFFLER:  Yeah, and with regard to --

11      (Whispered discussion off the record.)

12         MS. LOEFFLER:  Excuse me a second, I've got my --

13         THE COURT:  Sure.

14         MS. LOEFFLER:  -- one of my counsel has an issue that

15    I'm not --

16         THE COURT:  That's all right.

17      (Whispered discussion off the record.)

18         MS. LOEFFLER:  So the only other thing is, Your Honor,

19    that -- and I have to talk to Mr. Curtner -- the defense has

20    subpoenaed Debby Hopkins, and I'm not sure at this point whether

21    we're calling her or not.  And I suspect if we do not, she may

22    want to sit through part of the trial.  So I would -- I'm asking

23    through you as the appropriate procedure to see what the

24    defense's position is on that.

25         THE COURT:  I'm looking at Mr. Curtner.  I'm going to

 1    look at Mr. Curtner because you're the lead counsel, right?

 2              MR. CURTNER:  I understand.

 3              THE COURT:  Okay.

 4              MR. CURTNER:  Well, whether she -- she can stay after

 5    she testifies, but I don't know if she can -- we would want her

 6    excluded during other peoples' testimony before she testifies.

 7              THE COURT:  Okay, but you subpoenaed her.

 8              MR. CURTNER:  Yes.

 9              THE COURT:  So you're saying she can't sit through the

10    trial?

11              MR. CURTNER:  Yes.

12              THE COURT:  Okay.

13        (Whispered discussion off the record.)

14              MS. LOEFFLER:  Yeah, Your Honor, I need to look up the

15    law on this, because I'm not -- there may be an exclusion for --

16              THE COURT:  If there is for victims?

17              MS. LOEFFLER:  -- the victims, and I'm not positive of

18    the law on that.

19              THE COURT:  I'm not -- okay.

20              MS. LOEFFLER:  So we'll file something if we believe

21    that she has a right to watch the trial, how's that?

22              THE COURT:  That's an interesting issue, isn't it?

23              MS. LOEFFLER:  It is.  And we thought about it, but it

24    was one of the sort of legal issues that fell off the list, and

25    we haven't -- we're not prepared today.

|   |   |
|---|---|
| 1 | THE COURT:  Okay. |
| 2 | MS. LOEFFLER:  So we'll look it up. |
| 3 | THE COURT:  Okay.  And defendant has a right to |
| 4 | civilian clothing, is that being taken care of? |
| 5 | MR. CURTNER:  Yes. |
| 6 | THE COURT:  Okay.  I've gone through my list.  What |
| 7 | did I forget?  Nancy?  Does the government have anything else on |
| 8 | your mind? |
| 9 | MS. LOEFFLER:  Two things, Your Honor. |
| 10 | THE COURT:  Okay. |
| 11 | MS. LOEFFLER:  One is we had filed actually a joint |
| 12 | motion on Mr. Reed, William Reed, because he's a -- his wife is |
| 13 | dying. |
| 14 | THE COURT:  Okay. |
| 15 | MS. LOEFFLER:  And so instead of a Rule 15 deposition |
| 16 | in which the defendant would have to be transported to Arkansas, |
| 17 | the parties agreed to allow video testimony in the courtroom. |
| 18 | THE COURT:  Okay. |
| 19 | MS. LOEFFLER:  And I contacted the clerk's office |
| 20 | first to make sure that it was possible. |
| 21 | THE COURT:  Okay. |
| 22 | MS. LOEFFLER:  And the one thing we ask, just out of |
| 23 | an abundance of caution, one, I have to get a Court order that |
| 24 | says we can do this; and secondly, out of an abundance of |
| 25 | caution, I ask the Judge simply to address Mr. Wells directly. |

1          Because it's a Sixth Amendment waiver, he obviously
2    would have a right to be present physically with Mr. Wells,
3    either in a Rule 15 -- with Mr. Reed in a Rule 15 deposition, or
4    Mr. Reed would have to be here.
5          And Judge Roberts set a hearing on that after this,
6    but I would think you could take care of it really quickly here.
7          THE COURT:  Well, if the parties agree to it, then I
8    don't have an issue with it.
9          MS. LOEFFLER:  I just ask that because I --
10         THE COURT:  Well, let me understand what you're
11   saying.
12         MS. LOEFFLER:  Yeah.
13         THE COURT:  You want to have him testify by video
14   deposition -- by video --
15         MS. LOEFFLER:  Uh-huh, conference.
16         THE COURT:  -- conference, not by deposition?
17         MS. LOEFFLER:  Right.
18         THE COURT:  You used the word "deposition."
19         MS. LOEFFLER:  I meant -- I'm wrong.  By
20   videoconference, live testimony, but he will be in Little Rock,
21   Arkansas --
22         THE COURT:  Okay.
23         MS. LOEFFLER:  -- so that he doesn't have to leave his
24   wife.
25         THE COURT:  Okay.  So what's the defense position?

1          MR. CURTNER:  We don't object to that, Your Honor.

2          THE COURT:  Mr. Wells, do you object?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Okay.

5          MS. LOEFFLER:  Okay, that's fine.

6          THE COURT:  That takes care of that.

7          MS. LOEFFLER:  That takes care of that.

8          THE COURT:  Next issue.

9          MS. LOEFFLER:  The only other issue is, Your Honor, I

10  have an -- I just -- because I haven't tried a case in front of

11  you in a while, I have a draft opening, and what I'm planning in

12  my opening, other than my PowerPoint, is I have a couple of

13  photos and some maps that I put in, because they were a lot

14  easier than diagrams.

15          THE COURT:  Are they disputed?

16          MS. LOEFFLER:  They all have them all.

17          THE COURT:  Okay.

18          MS. LOEFFLER:  They're just photos.  There's no

19  question they're going to come in.

20          THE COURT:  Okay.

21          MS. LOEFFLER:  They are photos we've been discussing.

22          THE COURT:  Okay, all right.

23          MS. LOEFFLER:  But I wanted to bring it up in case it

24  was for some reason an issue with you.

25          THE COURT:  It sounds reasonable.  Remember the

1  purpose of the opening is to set forth what you expect the
2  evidence will establish, not to argue the case.
3          MS. LOEFFLER:  No, right.  It's just -- it's hard to
4  explain it.  It's a lot easier to explain --
5          THE COURT:  I understand.
6          MS. LOEFFLER:  -- it if you have diagrams and maps,
7  okay?
8          THE COURT:  I don't have a problem with that for both
9  sides.
10          MS. LOEFFLER:  Okay.
11          THE COURT:  Okay, does that take care of all your
12  issues?
13          MS. LOEFFLER:  It does, Your Honor.
14          THE COURT:  Okay, Mr. Curtner.
15      (Whispered discussion off the record.)
16          MR. CURTNER:  Two things, Your Honor.  First of all,
17  as far as the protective order and Mrs. Hopkins, you know, I
18  guess we probably would want to provide some information to the
19  Court on that before -- so we know if we can use that in opening
20  statement or not.
21          THE COURT:  Okay, protective, I got it.  I don't know
22  what you're talking about.
23          MR. CURTNER:  Well, that's why we want to file
24  something, so you know what we're talking about.
25          THE COURT:  Okay.

1          MR. CURTNER:  Can we file basically a proffer of what

2   the testimony we might offer just so we can -- so you can decide

3   before Monday if we're going to use it in opening statement or

4   not?

5          THE COURT:  Do you want to file it just to me?

6          MR. CURTNER:  Yes, yes.

7          THE COURT:  So it will be sealed?

8          MR. CURTNER:  Yes.

9          THE COURT:  Interesting.  The answer is, yes, you can

10  file anything you want.

11         MR. CURTNER:  All right.

12         THE COURT:  But I'm still trying to figure out what

13  you're talking about, but I guess I'll find out when you file

14  it.

15         MR. CURTNER:  You will, yes.  And just one question.

16         THE COURT:  Remember the guideline.  I'm still

17  thinking here.  The guidelines, opening statements are for the

18  purpose of telling the jury what you expect the evidence will

19  show.

20         MR. CURTNER:  Yes.

21         THE COURT:  That's my guideline.

22         MR. CURTNER:  Yes.

23         THE COURT:  Okay.

24     (Whispered discussion off the record.)

25         THE COURT:  Let's go off the record.

1    (Proceedings recessed, 10:41:23 a.m. until 10:41:34 a.m.)

2        THE COURT:  We're back on the record.

3        MR. CURTNER:  There is one other evidentiary issue.  I

4    don't -- this is one discovery issue that we may not be able to

5    agree on, but, you know, in giving Jencks, we have -- there is

6    one government witness which in our Jencks I can just -- we can

7    file this with the Court, too, but as you can see, it's a lot of

8    redaction, and there's, like, one sentence that's not redacted.

9        So I think it's pertinent to our preparation of this

10   witness, and I think if you -- if we file this also with you,

11   you can -- I guess we'll be filing a motion to compel discovery

12   of what's been redacted from this statement because I think it's

13   an important witness, and it basically -- what we get in Jencks

14   is one question, and there's three pages of redacted notes about

15   this interview.

16       Also there is two audio interviews with this witness

17   that are just -- they're not complete.  They are just partial

18   audio, and so -- and I think that's important.  And if you -- I

19   think you'll understand better if we can file that with the

20   Court as well.

21       THE COURT:  What's the government's response?

22    (Whispered discussion off the record.)

23       THE COURT:  I'd like to avoid the problems in the

24   last --

25       MR. SCHRODER:  The issue is, Your Honor, Jencks

1  requires us to turn over statements based upon what the witness

2  will testify to.

3          THE COURT:  Okay.

4          MR. SCHRODER:  What we've given the defense, the

5  unredacted portion is what the witness is going to testify to.

6          THE COURT:  So how will I be able to respond to their

7  request without knowing what's redacted?

8          MR. SCHRODER:  I mean, we could provide in camera to

9  you a copy of the statement so you could look at it.

10          THE COURT:  Okay.  That's the only way to do it.

11          MS. LOEFFLER:  Right.

12          THE COURT:  And it would be good if you could do it by

13  the end of the day so I can have this.

14          MS. LOEFFLER:  Okay.

15          MR. SCHRODER:  We can probably -- I think we could

16  probably do that.

17          THE COURT:  Okay.  The more you do today, the better,

18  okay?

19          MR. SCHRODER:  Yes, sir.  We'll do that.

20          THE COURT:  Both sides.  Okay.  Anything else?

21          MR. SCHRODER:  The only question is do you want the

22  audio too, or do you want -- there are different --

23          THE COURT:  Is it transcribed?

24          MR. SCHRODER:  No.  They are different interviews,

25  although in essence the discussion is much the same.  If the

1  Court looks at the unredacted paper, I think you'll get an idea
2  of what we're talking about.  That's what I would recommend.
3            THE COURT:  Okay.
4            MR. SCHRODER:  We give you the unredacted statement,
5  and then if you want, there's about five or six hours of
6  recordings.
7            THE COURT:  Okay.
8            MR. SCHRODER:  I mean, if you want those to listen to,
9  we'd be happy to provide them.
10           THE COURT:  So your position is that you've satisfied
11 Jencks because you've addressed information relative -- or
12 relevant to what the person's actually going to testify about?
13           MR. SCHRODER:  Correct.
14           THE COURT:  And defense position is?
15           MR. CURTNER:  Well, Judge, I think if you look at
16 this, you'll see that the introduction, "Okay, we're going to
17 interview this person," and then there is three pages redacted,
18 and then there is three sentences at the end, this is what the
19 person said.  Now, what's important when you read that --
20           THE COURT:  Yeah.
21           MR. CURTNER:  -- is what kind of information may have
22 prompted this witness to make these statements, and whether that
23 witness then, because of what's in here, may have contacted
24 other witnesses.  And so that's what I can only assume this is
25 redacted.

1          THE COURT:  Okay.

2          MR. CURTNER:  But I think if you -- if the government

3    does give you both recordings, they're short, and if you look at

4    what's been redacted, then you can make the call.

5          THE COURT:  Okay, okay.  So now because we have all

6    these great attorney's here, how am I -- I am going to always

7    look to the lead attorney, but I don't know who is going to

8    respond, because it sounds like you're going to use different

9    attorneys to question, cross-examine different witnesses.  Can

10   you give me any guidance of what your plans are?

11         MS. LOEFFLER:  Yes, Your Honor.  We've obviously

12   divided up the witnesses among the three of us.  And the reason

13   I asked Mr. Schroder is because he's the one who has physically

14   talked to the Kieles, and so he -- I mean, I've read the stuff,

15   but he's --

16         THE COURT:  Okay.

17         MS. LOEFFLER:  -- you know, listened -- you know,

18   listened to it.  So I wanted you to have the response from the

19   person most knowledgeable about the people.

20         THE COURT:  Okay.  Oh, that's good, but whoever has

21   that witness goes from beginning to end.  You can't switch

22   attorneys in the middle of a cross-examination.

23         MS. LOEFFLER:  We don't plan on that.

24         THE COURT:  Okay.  All right.  There's got to be more

25   issues than this.

1      MR. CURTNER:  Well, we'll find something.

2      THE COURT:  I want a smooth, clean trial, which it

3  looks like the parties are preparing for.

4      Mr. Wells, any questions?

5   (Whispered conversation off the record.)

6      THE DEFENDANT:  No, Your Honor.

7      THE COURT:  Okay.  We have a new system now.  It's a

8  relatively new system.  We pick jurors by -- they just have

9  numbers.  In other words, they don't -- their names, we don't

10  have their names.  It would be Juror No. 1, 2, 3, 4, et cetera.

11      Nancy, are you familiar with that?  Okay.  It's going

12  to be the second time I've tried a case with the numbers as

13  opposed to the names.  It seems to work very well.

14      Parties are free -- the counsel are free to stay in

15  the courtroom to look at it, count the chairs, figure out where

16  the podium is going to be, how you are going to place things.

17      I don't have another hearing for another, what, ten

18  minutes, so you can do -- you've got ten minutes to walk around.

19  I think we've covered everything.  Any questions at all?

20      I want to make sure Nancy doesn't have any questions,

21  because she's going to be running this show here for four weeks.

22      THE CLERK:  No, I'm good.

23      THE COURT:  Is four weeks still a reasonable time?

24      MS. LOEFFLER:  That's our prediction, yes.

25      THE COURT:  Okay.  Remember -- and Friday, we're going

1    to be off next Friday.

2          MS. LOEFFLER:  We know that, yes.  Thank you, Your

3    Honor.

4          THE CLERK:  All rise.  This matter stands adjourned.

5    Court stands in recess until our 11:30 matter.

6                (Proceedings adjourned, 10:47:17)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2

3        I, LEONARD J. DiPAOLO, RPR, CRR, CCP, court-approved

4    transcriber, certify that the foregoing is correct transcript

5    from the official digital electronic sound recording of the

6    proceedings in the above-entitled matter.

7

8

9    _____              ___9/10/14___

     Leonard J. DiPaolo, RPR, CRR, CCP             Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25