**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 19 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> JAMES MICHAEL WELLS, <br><br> Defendant-Appellant. | Nos. 14-30146 <br>    15-30036 <br><br> D.C. No. <br> 3:13-cr-00008-RRB-1 (JDR) <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted July 10, 2017
Seattle, Washington

Before: TASHIMA and NGUYEN, Circuit Judges, and WALTER,** District Judge.

This memorandum disposition, filed concurrently with our opinion in this case, is limited to addressing Defendant-Appellant James Michael Wells' challenge to the denial of his motion to suppress statements made during

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    ** The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

investigative interviews on April 12 and 13, 2012. At trial, the Government introduced two excerpts extracted from the first interview, conducted on April 12, and five excerpts extracted from the fifth interview, conducted after Wells had been *Mirandized* on April 13. We apply *de novo* review to Wells' challenges under the Fourth and Fifth Amendments and find no error. *See United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008); *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009).[1]

**1.** "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *Mendenhall* set forth "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave[:]" (1) threatening presence of officers; (2) display of a weapon; (3) physical touching; or (4) the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Id.* at 554.

Wells argues that the following factors contributed to the unreasonableness of his seizure on April 12, 2012: USCG command had directed Wells and other COMMSTA employees to be available for interrogation; Wells was kept under

---

[1] Because it was raised for the first time on appeal, we decline to address Wells' argument that his statements were involuntary under *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967).

USCG command at T1, from approximately 8:23 a.m. until 9:30 p.m.; and the USCG base was on lockdown, preventing Wells and others from leaving. To the contrary, and using the *Mendenhall* factors as our guide, the record reflects that Wells voluntarily reported to his workplace, which had, by then, been converted into a crime scene and active investigation site. He was interviewed, in the same manner as all other COMMSTA employees, by two agents in plain clothes, with their weapons concealed. Wells was never touched, much less physically restrained or handcuffed and, at least on April 12, the interviews were not aggressive or accusatory.

As we have recognized, "[t]he application of the Fourth Amendment to the employment context presents special issues." *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007). In a Coast Guard situation, much like that of the paramilitary law enforcement agency in *Aguilera*, "we must glean from the circumstances whether the subordinate's decision to heed his superior's order to remain at a designated location stemmed from a fear, if he tried to leave, of physical detention, or merely adverse employment consequences." *Aguilera*, 510 F.3d at 1167–68. "A seizure occurs when an individual submits to a show of lawful authority or an application of physical force by a law enforcement agent." *Id.* at 1167 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Here, any show of authority derived from the military nature of Wells' employment and the fact that USCG

3                                                                                      14-30146

command had locked down the base and asked all employees to remain on site to assist in the investigation. *See United States v. Baird*, 851 F.2d 376, 380–82 (D.C. Cir. 1988) (finding no seizure when on-duty Coast Guard officer was ordered to report for interview with intelligence officer). Furthermore, "[a]n encounter between an officer and an individual 'will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.'" *Aguilera*, 510 F.3d at 1167 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). The record reflects that all COMMSTA employees, including Wells, cooperated with the investigation and were interviewed without complaint.

We conclude that Wells was not seized on April 12, 2012. However, even if Wells was seized, "[t]he touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). *Hawkins'* reasonableness analysis depends on a balancing of interests:

> The reasonableness of seizures that are less intrusive than a traditional arrest depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

249 F.3d at 872–73 (quoting *Brown v. Texas*, 443 U.S. 47, 50–51 (1979)). Here, there were strong interests on behalf of USCG in controlling its base and law enforcement in securing and controlling the crime scene. Any seizure was minimally intrusive, supported by a substantial governmental interest, and reasonable.

**2.** As principally argued in the district court, Wells also challenges his statements under the Fifth Amendment, contending that all statements given prior to the April 13, 2012, issuance of *Miranda* warnings should have been suppressed.

*Miranda*'s holding explicitly does not affect "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." *Miranda v. Arizona*, 384 U.S. 436, 477 (1966). "An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is 'in custody.'" *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). "To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (internal quotation marks omitted) (alteration in original). "The custody determination is objective and is not based upon 'the subjective views of the officers or the individual being

questioned.'" *Bassignani*, 575 F.3d at 883 (quoting *Kim*, 292 F.3d at 973). Specifically, custody requires that a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112.

This Court has previously "identified five factors relevant to the custody determination: '(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.'" *Bassignani*, 575 F.3d at 883 (quoting *Kim*, 292 F.3d at 974). "These considerations are not exhaustive; '[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators.'" *Id*. at 883–84 (quoting *Kim*, 292 F.3d at 974).

Our review of the evidence, tracking the *Bassignani* analysis and applying the *Kim* factors, supports the district court's finding that Wells was not in custody, and therefore no *Miranda* warnings were required, on April 12, 2012.

All COMMSTA employees were ordered to be available for interrogation; however, no employee expressed any concern about being interviewed, the agents remained cordial throughout the April 12 interviews, and Wells was never singled out or made to feel like a target of the investigation. Thus, Wells "agreed to

accompany" officers to an interrogation room. *See United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc).

Wells was never confronted with his guilt nor was he pressured to confess to anything, until after being *Mirandized*. Instead, throughout April 12, the agents were engaged in fact-finding only, and the questioning was non-accusatory. Thus, interrogators did not "adopt[] an aggressive, coercive, and deceptive tone" or "'attempt to challenge [his] statements with other 'known facts' suggesting his guilt, they merely asked [him] about the allegations.'" *Bassignani,* 575 F.3d at 884 (quoting *United States v. Norris*, 428 F.3d 907, 913 (9th Cir. 2005)).

Wells and his co-workers were gathered together in a T1 conference room, "plainly a familiar environment[;]" not "prevented from contacting others[;]" allowed to talk to each other between interviews; and questioned in an unlocked office at their workplace. *See Bassignani*, 575 F.3d at 885.

In the immediate aftermath of horrific murders at his workplace, with agents acting quickly to gather as much fresh information as possible, Wells was intermittently interviewed for less than one hour. This is akin to the two-and-a-half hour interrogation in *Bassignani*, which the court found to be "at the high end" but not a "marathon session designed to force a confession," and therefore not unreasonable overall. 575 F.3d at 886 (internal quotation marks omitted).

Though the agents "never explicitly said that [Wells] was free to leave," he was never physically restrained. *See Bassignani*, 575 F.3d at 886. Upon conclusion of the interviews, Wells was allowed to leave the base on his own at the end of the day. *Cf. United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).

In contrast to the custodial interrogation in *Kim*, Wells was neither restrained nor threatened; he was interviewed at his workplace and allowed to talk to other COMMSTA employees between interviews; he was not deprived of restroom facilities, food or water; there was no display of weapons from either of the two, plain-clothes agents conducting the interviews; and, as found by the district court, the interviews on April 12 were "essentially amicable." Wells was not in custody.

**AFFIRMED.**