BRYAN SCHRODER
United States Attorney

KIMBERLY R. SAYERS-FAY
JONAS M. WALKER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: kim.sayers-fay@usdoj.gov
Email: Jonas.walker@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-00008-SLG |
|---|---|---|
| Plaintiff, | ) ) | SUPPLEMENTAL BRIEFING ON THE ISSUE OF JENKS ACT APPLICABILITY |
| vs. | ) ) ) | |
| JAMES MICHAEL WELLS, | ) ) | |
| Defendant. | ) ) | |

The United States of America, through the undersigned Assistant United States Attorney, files this supplemental briefing on the matter of Jencks Act applicability pursuant to the Court's order.

//

## I. INTRODUCTION

During the June 2018 status conference, the United States advised that it is aware of statements by a third party witness who reports having heard *inculpatory* oral statements made by defendant. The Court thus ordered the parties to brief whether Federal Rule of Criminal Procedure 16, the Jencks Act, and/or Brady obligations control the timing of the disclosure of such statements of prospective government witnesses.

The United States submits that the answer to the Court's question is straight forward: the Jencks Act's statutory provisions control the timing of disclosures concerning statements by a prospective government witness. The statute, the text of Federal Rule of Criminal Procedure 16, and Ninth Circuit case law all make this point pellucid. Courts appropriately enjoy significant authority "to effectuate the speedy and orderly administration of justice." *United States v. W.R. Grace*, 526 F.3d 499 (2008). However, it does not appear that such authority includes the ability to compel production of third party witness statements prior to their testimony at trial.

In this case, however, the question is largely mooted by the United States' decision to voluntarily produce such documents pursuant to a protective order that comprises Docket 846, so long as there is scrupulous adherence to that order, which is critical for witness safety. Because this is a retrial, defendant has long had the vast majority of the discovery relevant to his case. Presuming defense adherence to the protective order at Docket 846, the United States anticipates producing the key cooperating inmate statement within the next week, and Giglio materials relating to that

witness on a rolling basis after they are appropriately redacted.

II. LEGAL ANALYSIS

> **A. The Jencks Act, codified at 18 U.S.C. § 3500, governs "Demands for Production of Statements and Reports of Witnesses," which Need Not Be Produced Before Trial.**

The Jencks Act, codified at 18 U.S.C. § 3500, was specifically designed to protect witness' identities, both for safety reasons, *see, e.g., United States v. Wills*, 88 F.3d 704, 709-11 (9th Cir. 1996); *United States v. Gomez*, No. CR 13-00282 PJH (DMR), 2014 WL 231984, at *18 (N.D. Cal. Jan. 21, 2014), and because if the government elects not to utilize that witness at trial, his or her inculpatory allegations against defendant become irrelevant statements as to which the Government has no disclosure obligation at all. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably"); *United States v. Mills*, 641 F.2d 785, 790 (9th Cir. 1981) (reversing district court order to produce statements by witnesses not called to testify reasoning that the Jencks Act, not Rule 16, controlled such statements and that protection of such statements was necessary to "protect the witnesses from threats, bribery, and perjury . . . the need to protect those who cooperate with the government is especially compelling" where the witnesses live in fear of retaliation); *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) ("[G]eneral description[s] of the information sought [or] conclusory allegations of materiality" are not sufficient to compel discovery pursuant to Rule 16).

The United States notes that witness safety issues are a critical concern in this case. Incarcerated witnesses cooperate with law enforcement at great peril. As the Bureau of Prisons is keenly aware, the danger to cooperating inmate witnesses does not just emanate from the target against whom they may testify. Even where, as here, the target and potential government witness are separated by thousands of miles, the danger to the latter remains because even a suspicion or rumor of purported cooperation by an inmate can cause others entirely unrelated to defendant or defendant's cause to do the witness tremendous harm. Thus, once the identity of a cooperating inmate witness is divulged – or even suspected by any prison population -- the operational and security concerns for BOP and the danger to the cooperator increases substantially. Often, BOP has to mitigate such concerns by housing cooperating inmates in administrative segregation, which limits their privileges, or by moving them to another prison location. While the latter option sounds simple, in fact it is not, because with the volume of inmate transfers within institutions, moving inmates from one prison to another often proves to be only a temporary solution to a very difficult problem. Thus, there are very good reasons for not disclosing cooperating inmate statements unless and until they testify, which is what the Jencks Act contemplates.

The very first line of the Jencks Act states as follows:

> **(a)** In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

Thus, the Jencks Act itself makes it clear that "no statement" made by a prospective government witness can be the subject of discovery or inspection until trial. There simply is no caveat for statements by prospective government witnesses that allege inculpatory statements by defendant.

### B. Federal Rule of Criminal Procedure 16 Explicitly Incorporates Jencks Act Timing.

By its plain language, Rule 16 applies to *defendant's* oral statements made to a government agent and to certain written or recorded statements "*by the defendant*." See Fed. R. Crim. Proc. 16(a)(1) (A) & (B). One could perhaps conjure an argument that any statement attributed to a defendant is a statement "by the defendant," but the plain language of Rule 16(A)(2) disallows such an expansive and counter-textual interpretation, which would effectively eviscerate the Jencks Act. Specifically, Rule (16)(a)(2) makes it clear that a defendant's statement means one that he personally made, not one that a prospective government witness alleged he made. Rule 16(a)(2) states as follows:

> Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Thus, Rule 16 explicitly states that the Jencks Act, codified at U.S.C. § 3500, controls the discovery or inspection of statements made by prospective government witnesses. The Ninth Circuit has underscored this point on multiple occasions, noting that "Federal Rule of Criminal Procedure 16(a)(2) bars discovery of statements by government witnesses or prospective government witnesses except as provided in the

Jencks Act, 18 U.S.C. § 3500." *United States v. Mills*, 810 F.2d 907, 910 (9th Cir. 1987).

    C.  **Jencks Trumps Brady**.

The only question that remains, then, is whether *Brady* obligations to disclose exculpatory information somehow trump the Jencks Act's plain language. Again, the law is unambiguous: they do not. As the Ninth Circuit held in *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004), "When the defense seeks evidence which qualifies as both Jencks Act and Brady material, the Jencks Act standards control." (citing *United States v. Jones*, 612 F.3d 453, 455 (9th Cir. 1979); *see also See, e.g., United States v. Davis*, 306 F.3d 398, 420 (9th Cir. 2002) ("When Brady material sought by a defendant is covered by the Jencks Act…the terms of that Act govern the timing of the government's disclosure."); *United States v. Griffin*, 659 F.2d 932, 936 (9th Cir. 1981).

Other circuits are in accord. *See, e.g., United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) ("If impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence….Neither Giglio nor Bagley alter the statutory mandate that any 'statement' in the government's possession related to the subject matter of a government witness's testimony shall not 'be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.")

Thus, the United States finds no support for the proposition that statements by a prospective government witness that include allegations that defendant made inculpatory

statements to the witness are an unwritten exception to the plain language of the Jencks Act.

## III. THE UNITED STATES' VOLUNTARY PRODUCTION PLAN

The law permits the United States to withhold statements by prospective government witnesses until they have testified, and prohibits judicial orders to the contrary. Indeed, efforts to override the clear mandate of the Jencks Act as to the timing of the production of statements have been systematically rejected. *See United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (noting that a court order mandating early discovery of Jencks materials was "unenforceable"); *United States v. Grandmont*, 680 F.2d 867, 874 (1st Cir. 1982); *United States v. Carter*, 621 F.2d 238, 240 (6th Cir. 1980); *United States v. McMillen*, 489 F.2d 229 (7th Cir. 1972); *United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979).

As a matter of principle, the United States opposes any court order that would effectively abrogate the Jenks Act or elide the separation of powers. *See, e.g., United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991) ("By penalizing executive conduct that violates neither the Constitution nor a federal statute, the court invaded the domain of the legislature, whose role it is to establish limits on such conduct by law; and it invaded the province of the executive, whose function it is, within legal limits, to decide how to enforce the law."

At the same time, the United States also recognizes that in certain circumstances, exercising the full extent of its prerogatives under the Jencks Act may wreak havoc on

trial proceedings and scheduling, greatly inconvenience a jury, and/or compromise the fairness of trial. Thus, with these concerns in mind – and despite the Bureau of Prison's opposition and legitimate concerns about maintaining inmate safety -- the United States intends to immediately begin voluntary, early production of statements of one key prospective government witnesses subject to protective orders in July 2018 for two reasons: (1) this witness attributes inculpatory statements to defendant James Wells; and (2) there will be a significant volume of Giglio materials relating to this witness, and (3) the government wishes to avoid interruptions during trial. For both ethical and practical reasons, the United States aims exceed its obligations under the Jencks Act by providing early disclosure of these Jencks materials.

The United States notes that by beginning an early voluntary production of some Jencks materials, it is not waiving its rights under the Jencks Act. The witness safety concerns that motivated Congress to pass the Jencks Act remain of critical concern to the United States. Thus, should the protective orders not prove effective, or should information disclosed compromise or complicate the safety or security of any incarcerated witness, the United States may have to reconsider its position as to this one incarcerated inmate or any others.

RESPECTFULLY SUBMITTED July 19, 2018, at Anchorage, Alaska.

> BRYAN SCHRODER
> United States Attorney
>
> s/ Kimberly R. Sayers-Fay
> KIMBERLY R. SAYERS-FAY

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2018, a
true and correct copy of the foregoing was
served electronically on the following:

Gary Colbath, Esq.
Richard Curtner, Esq.

s/ Kimberly R. Sayers-Fay
Assistant United States Attorney

U.S. v. Wells
3:13-cr-00008-SLG            Page 9 of 9