BRYAN SCHRODER
United States Attorney

KIMBERLY R. SAYERS-FAY
JONAS M. WALKER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: kim.sayers-fay@usdoj.gov
Email: Jonas.walker@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 3:13-cr-00008-SLG |
| ) | |
| Plaintiff, ) | UNITED STATES' LIMITED |
| ) | OPPOSITION TO DEFENDANT'S |
| vs. ) | THIRD MOTION TO CONTINUE |
| ) | TRIAL |
| JAMES MICHAEL WELLS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I.   INTRODUCTION

At the August 20, 2018, status conference concerning pretrial deadlines, defense counsel Gary Colbath advised the Court that defense would seek a further continuance of the retrial, presently set for February 19, 2019, due to concern regarding adequate time to prepare. The Court ordered Mr. Colbath to file his motion by no later than Thursday,

August 23, 2018, and scheduled an expedited hearing on the motion for Friday, August 24, 2018.

The United States opposes continuing the retrial until July 2018. Given the recent substitution of counsel, the United States does not oppose a more modest continuance until April 29, 2019, despite the victims' understandable opposition to prolonging resolution of this matter further.

## II. LEGAL CONSIDERATIONS & PROCEDURAL HISTORY

### A. Speedy Trial Considerations Under 18 U.S.C. § 3161

Title 18, United States Code, Section 3161(e) controls the timing of a retrial following an appeal. That section provides that a retrial should commence within 70 days of "the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period of retrial not to exceed one hundred and eighty dates" from the issuance of the mandate. *Id.*

The mandate issued in this case on February 9, 2018. Docket 818. Thus, under Section 3161's speedy trial provision, the retrial should have commenced within 170 days, or no later than July 29, 2018. Prior to that date, however, this Court held a trial setting status conference at which Mr. Colbath's predecessor, Matt Scoble, made an oral motion to continue trial into 2019 in light of the complexity of the case and his recent assignment to it. The Court granted Mr. Scoble's defense motion to continue, in part, and continued the trial to November 5, 2019. Docket 836.

Given Mr. Scoble's departure from the Federal Public Defender's Office, Mr. Colbath officially assumed defense responsibility for this case on June 21, 2019. Mr. Colbath joins the Federal Public Defender, Rich Curtner, who previously entered his appearance and appeared at most court hearings.

At the June 21, 2018 status conference, Mr. Colbath made a second oral defense motion to continue trial, again so that the defense could have adequate time to prepare. The Court continued the retrial to February 19, 2018. Docket No. 843.

The same exclusions of time apply to both trials and retrials. *See* 18 U.S.C. § 3161 (e). Thus, much excludable delay has accumulated by virtue of defendant's two oral motions to continue. However, given the severity of the sanctions for violation of Speedy Trial set forth in 18 U.S.C. § 3162, going forward, the United States respectfully requests that the defense present continuance motions via a formal motion. Written motions minimize the possibility of an ambiguous record and/or miscalculation of Speedy Trial time. They also permit the Court to make the factual findings necessary to avoid dismissal of the indictment for failure to proceed promptly and permit the United States a fair opportunity to respond and protect victims' rights.

Given the two prior defense oral motions to continue, the United States further requests that determination of the Speed Trial deadlines precede and inform determination of defense's third motion to continue. In addition to clarifying the record, such a determination may also afford an opportunity for the Court to consider deeming the case complex within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii).

## B. The Crime Victims' Rights Act

Just as defendant's right to adequate representation must inform consideration of continuance motions, so too must the victims' right to proceedings free of unreasonable delay. The Crime Victims' Rights Act, codified at 18 U.S.C.A. § 3771(a)(7), affords Mrs. Belisle, Mrs. Hopkins, the five children of the murdered men, and other surviving family members the "right to proceedings free from unreasonable delay." *Id.; see also United States v. Sampson*, 68 F. Supp. 3d 233 (D. Mass. 2014) (recognizing that family members of a persons who has been murder have both a right to proceedings free from unreasonable delay and the right to be treated with fairness and respect for their dignity and privacy").

Although victims' rights have often been illusory, in the post-CVRA context, courts have denied continuances based upon them. For example, in *United States v. Abrams*, 2016 Westlaw 107945 (D. Nev. Jan. 8, 2016), the district court denied a kidnapping defendant's further motion for a continuance after granting prior requests, including a request based upon substitution of new counsel, that delayed trial for more than a year. The *Abrams* court properly recognized the deleterious "impact of the delay on the victims involved in the trial," *id.* at *2, which should be a salient consideration here as well. *See also United States v. Biggs*, 2018 WL 785864 (D. Or. Feb. 7, 2018) (refusing a continuance in order to minimize the length of time that children must endure the stress of involvement in the criminal process).

## III. ARGUMENT AND PROPOSAL FOR APRIL 2019 TRIAL

### A. Defendant's July 15, 2019 Proposed Trial Date is Impractical and Entails Unnecessary Delay that Violates Victims' Rights.

The United States opposes defendant's motion to continue trial until July 2019. Richard Belisle and Jim Hopkins were murdered on April 12, 2012. Their families waited months for defendant's arrest in February 2013, and then for more than thirteen months before trial started on March 31, 2014. Due regard must be given to the fact that every continuance postpones whatever closure the Belisle and Hopkins families may be able to salvage from a trial verdict concerning the execution of their loved ones.

The United States also notes that scheduling a major trial for summer in Alaska is impractical for several reasons. First, the first trial of this matter involved more than two dozen Coast Guard witnesses. Late May through August is the time of year during which Coast Guard personnel undertake their permanent change of station (PCS) moves. A summer trial would be a great imposition on service members who are obliged to relocate their families during this time.

Additionally, July is the peak of Alaska's tourist season. Getting flights – much less hotel rooms – for 100+ witnesses, many of whom have to separated from each other, plus a venire pool of several dozen jurors and the resultant 14-person jury for a two to three week trial in the height of tourist season would be nearly impossible. Defendant's proposal fails to take into account that many Anchorage hotels are already booked for July 2019 with blocks of cruise ship passengers and package tours, and that flights for both witnesses and jurors will be premium priced.

U.S. v. Wells
3:13-cr-00008-SLG                    Page 5 of 9

Recognizing that this is a complex case, the United States does not oppose a reasonable, shorter continuance to late April 2019. However, if the first trial could begin thirteen months after defendant's arrest, surely Mr. Colbath can adequately prepare himself for a retrial in ten months.

Mr. Colbath has the benefit of a trial transcript and audio that highlights the government's most damaging evidence against defendant, as well as a thorough Ninth Circuit opinion that recounts much of the same. Additionally, Mr. Colbath has the government's prior expert reports, the government's experts' testimony, and all the government's prior exhibits. Thus, although the discovery materials are indeed voluminous, Mr. Colbath has a very elaborate, detailed roadmap to that evidence within it that the United States deems most damning to the defense. Certainly that is an advantage that the first trial team did not have, and as noted, that team prepared in thirteen months.

With the benefit of a roadmap to the prosecution's case, it is reasonable to conclude that Mr. Colbath can adequately prepare for the retrial in ten months. The United States does not fault Mr. Colbath for wanting more time – any defense lawyer would. However, the law does not contemplate provision of optimal preparation time. Rather, it requires an adequate preparation period that simultaneously strives to respect victims' rights to a timely resolution.

**B. An April 29, 2019 Trial Date Is Fair, Reasonable and Practical.**

A late April 2019 trial date strikes this balance. That date affords Mr. Colbath ten months to personally prepare, which should be adequate. Mr. Colbath works side-by-

side with Mr. Curtner, the Federal Public Defender who represented defendant the first time around, and who thus has deep knowledge of the facts of the case, the evidence, and both the defense and government strategies in round one. Moreover, Mr. Colbath enjoys the investigatory support of the same team that supported the original trial. The government notes that just last week, Mr. Colbath proffered the testimony of Deitrich Sheffield, an investigator who was present for the first trial and facilitated presentation of the defense exhibits at that time, and who is assisting this time around as well. Bruce Johnson also remains a fixture of the defense team. Thus, while it is likely true that Mr. Colbath's personal knowledge of the case and evidence may be evolving, the fact is that his office's and investigators' familiarity with the case is deep and extensive.

Moreover, Mr. Colbath represents that he has been working diligently since June 2018 to come up to speed. With diligence, access to Mr. Curtner, the assistance of a well-versed investigators from the original trial team, and the aid of the prior government exhibits, prior expert witness reports, and prior trial transcript and audio, and the eleven or so expert reports that the defense commissioned last time, Mr. Colbath should be able to hone in on relevant issues significantly more quickly than the first trial team. Ten months preparation time should suffice.

Accordingly, the United States suggests a trial date of April 29, 2019. The government notes that this date will not leave anyone happy or satisfied. Defendant prefers a trial a year and a half after the appellate reversal, while the Hopkins and Belisle families strongly prefer closure sooner rather than later, especially since trial has already

been continued twice and their loved ones were murdered over six years ago. Perhaps, however, the mutual dissatisfaction is an indication of the balance that the law requires. No one will get what they want, but an April 29, 2019 trial date affords defense counsel adequate time to prepare for this reprise trial while also giving the victims a modicum of consideration for their ongoing agony.

Attached hereto as Exhibit A is a schedule of deadlines consistent with the government's proposed April 29, 2019, trial date. This is the same document that the United States previously filed as a Notice of Revised Proposed Deadlines (Docket 859).

RESPECTFULLY SUBMITTED August 23, 2018, at Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ Kimberly R. Sayers-Fay
KIMBERLY R. SAYERS-FAY

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2018, a true and correct copy of the foregoing was served electronically on the following:

Gary Colbath, Esq.
Richard Curtner, Esq.

s/ Kimberly R. Sayers-Fay
Assistant United States Attorney