Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Counsel for Defendant James Michael Wells

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, Plaintiff, vs. JAMES MICHAEL WELLS, Defendant. | Case No. 3:13-cr-00008-SLG  DECLARATION OF COUNSEL IN SUPPORT OF MOTION TO CONTINUE TRIAL |
|---|---|

I, Gary Colbath, declare under penalty of perjury that the following is true and accurate to the best of my belief and knowledge:

1. I am an Assistant Federal Defender for the District of Alaska.

2. I represent James Michael Wells as lead defense counsel in this matter. I became counsel as of June 21, 2018.

3. The motion to continue trial requested in the accompanying motion is necessary from the Defense perspective because proper

preparation for trial will require a thorough review of all new discovery recently received, as well as additional discovery that was discovered in the first trial that has not been re-discovered. All discovery will need to be sorted into relevant subject categories and witness folders before it can be reviewed in order to ensure a complete and thorough review of each category and/or potential witness. Once the defense has completed the review of all new re-bates numbered discovery it will then need to cross check it with the old (original bates numbered discovery) to ensure that the defense has received everything.

4. With these above tasks in mind the Defense has over 44,350 PDF files, 1170 audio files comprising more than 255 hours, 316 video files comprising over 17 hours, and 78 excel spreadsheets. Each excel spreadsheet is listed as a single bate number, although one excel spreadsheet is over 165,000 pages. The 78 spreadsheets total an estimated 500,000 pages alone. There are more than 400 files that are unable to be opened based on either proprietary ownership and/or special programs which are required in order to access these file.

5. Additionally, in the original discovery received during the prior proceedings there were three (3) laptop computers, seven (7) desktop computers, four (4) cell phones, and 13 portable or external hard drives that the government has advised should still be considered relevant discovery, but because of their nature, will not be "re-discovered." Thus, these vast items will need to be reviewed as well.

6. The Government provided with the new discovery disclosure an 880 page discovery log to go along with the re-bate numbered discovery, however, due to the following reasons it is unusable as a searchable document. Instead, the defense will be required to go through each page of discovery and re-write the description for each bate number in order to use the log as a searchable tool.

7. Moreover, there are 100's of pages in the discovery log that are labeled incorrectly. (See Exhibit A)

8. There are 1000's of pages where the file name gives no identifiable description of the document. (See Exhibit B)

9. There are numerous hand written officer field notes where the file name gives no description the document, and no identification of which officer drafted the field note. (See Exhibit C)

10. There are 1000's of digitally pixelated photographs that are not viewable, and the file name gives no identifiable description of where these photos were taken or by whom. Each must be reviewed and identified in order to request a new copy from the government. (See Exhibit D)

11. There are 1000's of pages of duplicated items that not only give no identifiable description of the document, but the duplicate of that particular document has a different bates number and very often a different file name each time listed. Thus each must be carefully inspected to determine whether they are in fact

duplicates that are mislabeled or actually slightly substantively different documents. (See Exhibit E)

12. Listed above are just a few examples of the numerous issues that have arisen so far, and as of this filing the defense <u>has only done a cursory review of about **half** the PDF files, and has **not even started** reviewing the audio, video, and Excel files.</u>

13. In addition to the discovery issues listed above related to the re-disclosure of the "previous" discovery from the first trial of this matter, the government has, to date, provided the defense with hundreds of new items of discovery. One batch of items included over 400 audio phone calls made by Defendant while in custody dating back from his time in Anchorage jail during the prior trial proceedings, through some of his time in BOP facilities and through his present continued incarceration again in Anchorage jail. Review of these critical statements by the Defendant is on-going but has consumed days of the defense team's time.

14. In addition to the new jail call discovery, the government provided discovery relating to a newly identified prison snitch who claims that Defendant confessed to the crimes alleged here while in prison. This game-changing disclosure by the government was made principally through disclosure of a two day long recorded interview apparently done by government counsel, its case agent and others, of the snitch in May of this year. The need to fully investigate the circumstances of this alleged confession and the snitch-source of the same cannot be

overstated. A brief overview of which is described in the declaration of the lead investigator filed with this motion.

15. In addition to the overwhelming discovery issues and investigation identified above, counsel has substantial legal work by way of expert disclosures and motions practice to complete to effectively represent Defendant. The case, to date has had over 30 substantive motions filed, which generated over 1000 pages of briefing, Magistrate reports and court orders. The Ninth Circuit opinion itself was 74 pages not counting the supplemental memorandum decision related to the suppression of Defendant's statement. To begin, each of these past filings has to be reviewed and compared to the Ninth Circuit ruling in order for counsel to understand the present state of the "law of the case," as well as understand how any and all past rulings are affected by the appellate decision.

16. After initial review, counsel will have several new motions challenging past rulings in the case that must be reconsidered in light of the decision by the Ninth Circuit. Additionally, numerous issues identified during the appeal process as "not having been raised below" will now be raised and argued. Finally, counsel has identified numerous evidentiary issues and arguments that prior counsel failed to raise in any fashion that should rightfully be presented to the Court prior to trial.

17. Because the Ninth Circuit decision rested in significant part on the presentation of improper expert testimony by one of the government

experts, counsel must now evaluate how that testimony related to the testimony of other experts and witnesses and determine whether exclusion of the profile testimony by the Ninth Circuit impacts the admissibility of other proposed testimony. These determinations also necessarily affect what experts the defense will now need to call in response to a forced change in government experts.

18. All of the above motions work and expert evaluations can only be effectively done as counsel comes to understand and know the factual underpinnings of the evidence that supports such determinations. This means first spending an enormous amount of time with the extensive discovery described above before much of the "legal" work in the case can be completed. It is not enough for defense investigators to simply know and understand the evidence.

19. The next severely compounding difficulty impeding the defense's ability to prepare for trial relates to Defendant's personal access to discovery, which directly effects his ability to meaningfully assist counsel with preparation of his defense. It is axiomatic that Defendant has a right to see and confront his accusers. However, although Defendant has been back in Alaska for over five months, he has yet to be provided access to any digital discovery at the jail. Moreover, he is limited a finite number of hard copy pages of material in his cell, which is less than even his notes from the case thus far, exclusive of any discovery. The jail claims that all of its computers are broken, even though the Defender's Office

has recently provided new computers, acquired with this Court's assistance, to the jail for defendants use for this very purpose.

20. Further, in light of the extremely limiting nature of the protective order insisted upon by the government herein related to the prison snitch witness material, one of the defense team has to print such material when received, hand carry it to the jail and sit with Defendant while he reviews the same. This must be done at the whim of the jail schedules, and shuffled around the hours and limited time blocks set by Anchorage jail for professional visits. This disruptive and cumbersome process alone has tied up dozens of hours of the defense team's time over the last 30 days, all of which is necessary for proper preparation. Rather than dissipate, this problem will only get worse in the future as the government has indicated that it still has extensive further discovery related to this witness which is "processing" right now, and will soon be disclosed to the defense.

21. The defense team consists primarily of three people (motions for more have been heretofore denied) as well as Defendant. Defendant is entitled to effective representation and counsel only has so much time available to provide that representation. Defendant fully supports this motion to continue and feels he has no other means to receive a fair trial than to have time with and for counsel to adequately prepare.

22. The undersigned has communicated with government counsel, who has indicated that the government opposes any continuance of trial beyond April 29, 2019.

DATED at Anchorage, Alaska this 23rd day of August, 2018.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender

Declarations have the same legal force as affidavits. 28 U.S.C. § 1746.

Certification:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on August 23, 2018. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*