BRYAN SCHRODER
United States Attorney

KIMBERLY R. SAYERS-FAY
JONAS M. WALKER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: kim.sayers-fay@usdoj.gov
Email: Jonas.walker@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:13-cr-00008-SLG |
| Plaintiff, | UNITED STATES' LIMITED OPPOSITION TO DEFENDANT'S MOTION TO MODIFY PROTECTIVE ORDER ENTERED AT DOCKET NO. 846 |
| vs. | |
| JAMES MICHAEL WELLS, | |
| Defendant. | |

I. INTRODUCTION

At Docket 883, Defendant Wells moves to modify the Protective Order entered at Docket No. 846. This is a motion in search of a controversy.

In a letter dated August 15, 2018, the undersigned advised Mr. Colbath that with regard to "Relief from Inmate Records Protective Order":

//

I expect we can come to a reasonable compromise that permits a defense investigation while also preserving witness integrity and safeguarding informant confidentiality.

Counsel appears unfamiliar with this pertinent correspondence. Counsel also opted not to confer in advance of filing his motion, although there was an opportunity to do so. On October 22, 2018, the government advised Mr. Camiel of the existence and substance of the Inmate Records Protective Order. He then supplied his signature on the order, which facilitated his first lawful access to the protected materials. Docket 846, ¶ 5. Proposing a modification then may have obviated the need for court involvement.

II.  GOVERNMENT'S PROPOSED MODIFICATIONS TO THE PROTECTIVE ORDER

Defense suggests adding the following language to the protective order:

The defense team is not prohibited from conducting an investigation of any cooperating witness and questioning others about any cooperating witness as well as any information gleaned from a review of protected inmate records as long as the defense does not disclose the protected materials to anyone outside the defense team, and as long as any reference to the cooperating witness does not disclose that the witness is cooperating with the government in Mr. Wells case.

The United States does not oppose defendant's suggested modification, with following two caveats:

1. The following language should be appended to the end of the defense's proposed language: "or in any other case, unless government records demonstrate that CW1 cooperated or attempted to cooperate with the government against that particular person."

2. The protective order should also be amended to state as follows:

> Not less than 48 hours prior to initiating any contact with a current BOP inmate that will mention CW1, defense shall notify the Bureau of Prisons Legal Counsel assigned to this case, via email, of the name, inmate number, and location of such inmate in order to enable BOP to assess and address any risks presented thereby.

III. ARGUMENT

The United States' unusual decision to voluntarily disclose CW1's existence, identity, prior statements, and prior record many months before trial demonstrates that the government is facilitating defendant's investigation of CW1's veracity. This facilitation is extraordinary and not required by law.

Indeed, both the Jencks Act, 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2 oblige such disclosures only *after* a cooperating witness testifies at trial, because unless and until a cooperator testifies, impeachment materials are irrelevant. "District Courts in this circuit have no authority to override strict observance of the Jencks Act." *United States v. Cerna*, 633 F. Supp. 2d 1053, 1055 (N.D. Cal. 2009).[1]

---

[1] In light of Mr. Camiel's promise to "move[] for an order directing the government to provide more complete discovery about CW[1]'s prison history and …history of attempted cooperation," Docket 884, the United States commends counsel's attention to Rule 26.2 and *United States v. Alvarez*, 358 F.3d 1194, 1210 (9th Cir. 2004) ( "When the defense seeks evidence which qualifies as both Jencks Act and Brady material, the Jencks Act standards control."), as well as to Docket 849, wherein this issue was thoroughly briefed.

Where defense has no right to materials unless and until a cooperating defendant testifies, a motion to compel would be an improvident invitation to error. A district court order in contravention of the Jencks Act is subject to interlocutory appeal and/or a writ of mandamus. *See, e.g., United States v. Taratino*, 846 F.3d 1384, 1417 (D.C. Cir. 1988); *United States. v. Coppa*, 267 F.3d 132, 137-39 (2nd Cir. 2001).

US v. Wells
3:13-cr-00008-SLG  Page 3

The United States may thus postpone disclosures regarding CW1 until after the government decides to and actually does call CW1 to testify at trial, although such timing would necessitate a mid-trial recess. *See* 18 U.S.C. § 3500; Fed. R. Crim. Proc. 26.2(d). The Ninth Circuit has found this method consistent with defendant's constitutional right to due process. *See*, *e.g.*, *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979).

Defense thus has a highly unusual, months-long opportunity to investigate the credibility of CW1 and CW1's statement. Because of the United States' courtesy early disclosures, that investigation will be more exhaustive than otherwise would have been the case. Indeed, the detail Docket 884 illustrates that point well. It is rare for defense to have such a wealth of information on a potential cooperator during trial, much less a full six months before it. Defense enjoys that wealth of information because the government's voluntary early disclosures.

The defense investigation of CW1 need not entail gratuitously informing an incarcerated population – whether implicitly or explicitly– that CW1 is or has cooperated with the United States in *any* matter. Where such information is not relevant, circulation of it only serves to imperil CW1's safety and availability for trial, rather than advance a legitimate investigative aim. It is noteworthy that Rule 4.4 of both Alaska's and Washington's Rules of Professional Conduct, concerning "Respect for the Rights of Third Persons," require the defense to eschew "means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Such means would include

publicizing a witness' status as a government cooperator in any case, including the case counsel noted at Docket 884, p.5. Thus, defendant's proposed modification to the protective order should be rephrased to prohibit the defense from communicating to current or former prisoners that CW1 is or has cooperated in any case unless government disclosures document that CW1 cooperated or attempted to cooperate against that particular person.

Even if the defense interviews inmates with discretion, defense attempts to interview inmates about CW1's history or veracity and/ or CW1's contact with Wells will increase risk for CW1 and compound operational security concerns within BOP. Given this, the United States proposes that the Court take a reasonable steps to ensure that further investigatory efforts related to CW1 are as discreet as possible by requiring defense to notify BOP in writing not less than 48 hours before contacting any inmate with regard to CW1 so that BOP can take steps to protect CW1 from retribution for cooperation. Even if the inmates are not at the same federal facility, BOP may nonetheless need to evaluate the risk to CW1's safety and feasibility of his current placement once defense begins outing as a cooperator in a prison environment. As recent events demonstrate, word travels fast within the BOP community and the safety implications of that can be grave.

IV. CONCLUSION

The United States has voluntarily provided early Jencks disclosures in this case in order to afford defendant an unusually lengthy opportunity to review and evaluate CW1's statement against him. Now, as in August 2018, the United States remains amenable to

modification of the Inmate Records Protective Order that would "permit[] a defense investigation while also preserving witness integrity and safeguarding informant confidentiality." Modification should include rephrasing the final clause of defendant's suggested language to preclude outing CW1 as a cooperator in *any* case and to require defense to give BOP 48 hours' notice of interviews of inmates that could impact CW1's security.

Finally, the United States notes that it audio recorded its interviews with CW1, and that by doing so, it was able to produce to defense an accurate record of what transpired in that jailhouse interview. Given the unique safety implications of broad based interviewing of inmates concerning CW1, the related terms of the protective order, and ethical obligations noted above, the United States presumes that defense will also utilize modern conveniences, such as a mobile phone recording device, to capture the entirety of its conversations with any inmate interviewed with respect to CW1.

Defense recording of inmate interviews will avoid any controversy concerning what inmate witnesses said and also about what defense counsel said or disclosed in the process their due diligence inquiry. The former may be of keen interest to BOP, given its obligation to protect CW1, while the latter will have the salutary effect of promoting adherence to this Court's order. Moreover, to the extent defense intends to call any of inmate witnesses at trial, the inmates' prior statements will be Jencks materials for which reciprocal production will be obliged pursuant to Rule 26.2. Furthermore, defense jailhouse snitches will be similarly situated to CW1 with regard to the rule defense highlighted, Ninth Circuit Model Jury Instruction 4.9, and many of the concerns raised in

the "Snitch System" article. Given these facts, the United States assumes that defense will make arrangements to have all inmate interviews audio recorded and preserved, just as the United States did for its incarcerated prospective witness. To bring their mobile phones or an audio recording device to an interview at a BOP facility, defense will need to make arrangements with BOP beforehand.

RESPECTFULLY SUBMITTED November 2, 2018, at Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

*s/Kimberly R. Sayers-Fay*
KIMBERLY R. SAYERS-FAY

**CERTIFICATE OF SERVICE**
I hereby certify that on November 2, 2018,
a copy of the foregoing was served
electronically via CM/ECF system on:

Counsel of Record

s/ Kimberly R. Sayers-Fay
Office of the US Attorney