BRYAN SCHRODER
United States Attorney

KIMBERLY R. SAYERS-FAY
JONAS M. WALKER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: kim.sayers-fay@usdoj.gov
Email: Jonas.walker@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:13-cr-00008-SLG |
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER SCHEDULING ORDER AT DOCKET 881 & ACCELERATE FURTHER DISCOVERY REGARDING CW1 |
| vs. | |
| JAMES MICHAEL WELLS, | |
| Defendant. | |

**I.   BACKGROUND**

In August 2018, following defendant's Motion to Continue Trial, the Court ordered the parties to work together to devise a scheduling order consistent with the April 29, 2019, trial date.  Dkt. 856.  Toward that end, the government provided defense counsel a proposed schedule of deadlines consistent with that date.

In a good faith and in the interest of compromise, the United States modified its initial proposal to accommodate the defense request for production of *Giglio* materials significantly in advance of trial. Thus, the United States proposed – and this Court subsequently ordered – the government to produce Giglio impeachment materials by February 22, 2019. Docket 881.1. Defendant did not oppose this Giglio disclosure date, which is a reasonable one that is more than two months before the April 29, 2019 start of his retrial.

Defendant now moves this Court to revise its order and require the United States to produce all Giglio materials relating to CW1 in the next two weeks, rather than within the next two months. The defense request is unreasonable and unjustified, under both the facts of this case and the law of this Circuit.

## II. ARGUMENT

### 1. CW1's Jencks Statements Have Been Produced.

Although the Court cannot order early disclosures of Jencks materials, *see United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004), that point is now moot. The United States has produced all of CW1's statements that "relate to the subject matter as to which the witness [may] testify." 18 U.S.C. § 3500. Of course, if more such statements materialize, the United States will honor its obligation to produce them. But defendant's motion is not really about "accelerating" Jencks disclosures; it primarily seeks to advance the required disclosure of additional impeachment materials that are subject to the February 22, 2019 disclosure deadline.

U.S. v. Wells
3:13-cr-00008-SLG                Page 2 of 9

Case 3:13-cr-00008-SLG   Document 908   Filed 12/15/18   Page 2 of 9

## 2. There is No Justification for Requiring the United States to Complete Its Disclosure of Impeachment Information on CW1 in two weeks rather than in two months.

After it produced CW1's statements, the government followed up by promptly producing, in August and September 2019, a plethora of Gilgio impeachment information concerning CW1, even though then —as now —the United States considers CW1 only a prospective witness who is unlikely to feature in its case-in-chief.

The fact remains, however, that at the time the parties were before the Court and were working to devise a reasonable discovery schedule, defense was in the unusual position of knowing exactly who CW1 was and exactly what inculpatory statements CW1 would attribute to Wells. Indeed, by then defense had received CW1's disciplinary record, some prison assignment records, and two the three volumes of CW1's BOP Central File, all of which the United States produced prior to September 21, 2019.

What defendant is seeking is an order from this Court requiring the United States, which took the fairly unprecedented step of producing a few thousand pages pertaining to possible witness months before the Giglio deadline, to dedicate the remaining couple weeks of 2018 to producing further impeachment materials that defendant speculates exists, speculates are material, and insists he must have right away. There is case law suggesting that the Court can enter such an order as a discretionary exercise of its inherent authority to manage its docket. *See, e.g., United States v. Cerna*, 663 F. Supp. 2d 1053, 1055-56 (N.D. Cal. 2009). Here, however, the Court should decline to exercise its discretion in the manner defendant seeks, because the only thing that has changed since the Court issued

its October 2019 order is that Mr. Camiel officially entered the case and the government has continued to voluntarily produce documents ahead of schedule. Here, docket management is not at issue and the smooth progression of this retrial is in no way imperiled by adherence to the February 22, 2019, Giglio deadline.

In this regard, it is noteworthy that *Cerna*, the above-noted district court case that emphasized the Court's ability to set Giglio discovery deadlines, was a RICO gang case involving 31 defendants and 53 counts arising from the alleged actions of the LaMara Salvatrucha street gang, known as MS-13. *Id.* at 1062. Despite the magnitude and complexity of that case, in *Cerna*, the district court found that it would suffice for the government to turn over non-Jencks Brady materials *seven calendar days* before trial. *Id.*

The Wells case is not a 53-count RICO case against 31 defendants. To the contrary, it a retrial where the sole issue is whether Wells executed his colleagues on April 12, 2012.

Because this case was tried before, defendant has had the Giglio materials on the prior witnesses for years. Thus, this is not a case where defense will be scrambling to digest the prior statements of witnesses or large quantities of impeachment information shortly before trial. To the contrary, it is the rare case where defense has few new witnesses with which to contend, and although trial is still more than 4 ½ months away and the Gilgio disclosure deadline is more than two months hence, the government has already provided CW1's Jencks statements, BOP central file, pardon application and a panoply of other information concerning CW1'w life and activities over the past twenty years.

Of course, there are circumstances in which it sensible for the district court to exercise its inherent authority to set Giglio production deadlines. Indeed, the United States tacitly recognized this reality when it initiated discussions with defendant about discovery deadlines, and when it suggested the then-mutually satisfactory schedule this Court adopted in Docket 881.1.

However, as *Cerna* shows, *Kyles v. Whitley*, 514 U.S. 419 (1995), and *United States v. Bagley*, 473 U.S. 667 (1985), support the current Gilgio discovery deadline, not defendant's proposed "accelerated" one. *Kyles* and *Bagley* oblige the government to disclose impeachment information sufficiently in advance of trial so that it can be effectively used. *Kyles*, 514 U.S. at 433, 437; *Bagley*, 473 U.S. at 682. If seven *days* suffices in a 31-defendant RICO case, then a *nine weeks* will surely suffice here, especially since the vast majority of the Giglio materials on CW1 were produced months ago.

To avoid this conclusion, defendant repeatedly speculates that the few thousand pages of impeachment material the United States has already produced are just the "tip of the iceberg." Defendant's motion is replete with such hyperbole, speculation, and indignation, but devoid of any substantiation for his contentions. Defendant's conclusory statements and speculative assertions are an inadequate foundation for a request for relief. *Cf. United States v. K*err, 709 Fed. Appx. 431, 434 (9th Cir. 2017) (denying relief where defendant's "conclusory and speculative assertions" failed to make out a Napue claim and where defendants "merely speculate about the possibility of an undisclosed agreement.").

The law does not require the United States to indulge "fishing expeditions" exemplified by defendant's demands for a list of all CW1's prison visitors, a list of all books and publications CW1 received, and CW1's bank deposits:

> While a prosecutor has a duty to learn of any favorable evidence known to others acting on behalf of the government, *Brady* does not require a prosecutor to unearth from an agency, even an agency involved in the investigation, every random scrap of paper of possible defense use. Given their enormity, it would be impractical to scour all files and desks and lockers looking for all nuggets, large and small. *Fishing expeditions are not required*. Instead, a prosecutor is required to use due diligence—affirmative due diligence—to gather *Brady* material from known and plausible sources of exculpatory information and then to turn over any *Brady* material that is found.

*Cerna*, 633 F. Supp. 2d 1053, 1061 (N.D. Cal. 2009)(italics added).

Likewise, Brady does not impose on federal prosecutors the obligation to obtain and disclose information that is not already in the actual or constructive possession of the Government, but rather in the hands of non-federal-agency third parties. *See United States v. Flores*, 540 F.2d 432, 437 (9th Cir.1976) (noting that the Government is under no obligation to sift through public records to which the defense has equal access); *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir.2001)(explaining that Brady does not compel the government to obtain evidence from third parties that are not also federal government agencies).

Furthermore, the law also recognizes that even with the exercise of due diligence, some Brady and Giglio materials may nonetheless not be discovered and produced. In such cases, the harmless error rule applies, and there is no Brady violation where the suppressed information is "merely cumulative." *United States v. Wilkes*, 662 F.3d 524,

535 (9th Cir. 2011); *see also e.g., United States v. Hollis*, 610 Fed. Appx. 613 (9th Cir. 2015)(unpublished memorandum disposition)(" [W]e conclude that Hollis was not prejudiced by the government's failure to produce *Brady/Giglio* materials that provided additional information about CS's unreliability…. Although the September 1, 2004, memo about CS's continued unauthorized drug dealing should have been, but was not, disclosed, it is clear from the record that defense counsel was aware of-and elicited testimony regarding-the problems described in the memo. Similarly, the other undisclosed evidence about which Hollis complains would have done nothing more than recapitulate the already well-established fact that CS was a dishonest drug dealer who testified against Hollis in hopes of getting a better deal for himself."); *United States v. Kohring,* 637 F.3d 895, 908 (9th Cir.2011) ("We have previously held that when defense counsel sufficiently impeaches a government witness in cross-examination and closing argument, the defendant cannot later claim a *Brady/Giglio* violation on account of additional undisclosed evidence supporting the impeachment. In such circumstances, the evidence is cumulative because the grounds for impeachment are no secret to the jury.").

### 3. Redaction Compromise

Throughout its production pertaining to CW1, the United States redacted the names and BOP prisoner numbers of other inmates. The United States did so at the urging of BOP, which noted that names of other inmates are rarely relevant and that their provision, particularly in printed documents, compounds security and operational concerns.

Defense points out, however, that sometimes, the names of other inmates are relevant, as these inmates may be sources of information concerning CW1's credibility. Accordingly, with prior arrangement, the United States is willing to make a digital version of the documents available for defense to review within the USAO so that defense may note the names and BOP ID numbers of any inmates they believe it may be important to interview.

## III. CONCLUSION

The United States' early production of materials on its potential cooperating witness included CW1's BOP Central File, disciplinary history, criminal record, SIS investigation details, prior cooperation efforts, as well as documentation obtained from the Office of the Pardon Attorney, another district with which CW1 cooperated nearly twenty years ago, and FBI files throughout the years. To suggest that these materials are only the "tip of the iceberg" suggests a lack of familiarity with their content, and/or an overzealous interpretation of materiality and the United States' disclosure obligations. But that is largely a dispute for another day. The Court set a reasonable Giglio disclosure deadlines after eliciting input from both parties. The United States has honored and exceeded its obligations under that scheduling order. That is hardly a reason to revamp the order now. Defendant's motion for reconsideration of this Court's scheduling order should be DENIED.

.

RESPECTFULLY SUBMITTED December 15, 2018, at Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ Kimberly R. Sayers-Fay
KIMBERLY R. SAYERS-FAY

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2018, a
true and correct copy of the foregoing was
served electronically on the following:

Gary Colbath, Esq.
Richard Curtner, Esq.
Peter Camiel, Esq.

s/ Kimberly R. Sayers-Fay
Assistant United States Attorney