BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
       christina.sherman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:13-cr-00008-SLG |
| ) | |
| JIM MICHAEL WELLS ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPPOSITION OF THE UNITED STATES TO DEFENDANT JIM WELLS'
REQUEST FOR BAIL**

COMES NOW United States of America, by and through undersigned counsel,

and files with the court an opposition to defendant Jim Wells' motion for bail pending

retrial. Given that the facts of the prior trial amounted to overwhelming evidence of guilt,

the unusual posture of a re-trial after conviction, along with the inadequacy and unfitness of the proposed third-party custodian, the motion must be denied.

### 1. Procedural Overview

On January 23, 2015, after a lengthy trial, and by Amended Judgment, defendant Wells was sentenced to four consecutive life sentences. The respective counts of conviction involved the pre-meditated and cold-blooded murder of two of Wells' co-employees, Richard Belisle, and Jim Hopkins. The charges levied against Wells, and which he again faces at retrial are two counts of Murder in the First Degree, in violation of 18 U.S.C. § 7(3) and 1111(a) and (b), two counts of Murder of an Officer or Employee of the United States, in violation of 18 U.S.C. § 1114 and 1111, and two counts of Possession and Use of a Firearm in Relation to a Crime of Violence in violation of 18 U.S.C. § § 924(c) and (j). (Docket 778, pg. 2) Trial lasted several weeks and included an overwhelming presentation of circumstantial, physical, forensic and witness testimony by over 90 witnesses. The evidence, and quick jury verdict, conclusively proved Wells as the murderer of Messrs. Belisle and Hopkins. Indeed, at the conclusion of the sentencing hearing, Judge Ralph R. Beistline endorsed the jury's verdict and made the following observation at imposition of sentence:

> *"[T]here's one thing that's absolutely clear to me beyond a reasonable doubt, and that is that Jim Wells is a cold-blooded murderer"; "You can fight for your innocence, but that won't make you innocent, because you're guilty" ; and "Two*

*men cut down in their prime by an angry, selfish, jealous, narcissistic, and envious man."*

*See, United States v. Wells, 879 F.3d 900, 940 (9th Cir.2018)*

As this court is aware, Wells' convictions were reversed by the Ninth Circuit Court in December 2017. The reversal, though, was not couched in sufficiency of the evidence but upon a lengthy examination of the government's use of expert witness testimony in the area of workplace violence and 'other act evidence from an event in 2003.' As stated by the 9th Circuit:

*We do not discuss Wells' challenge to the sufficiency of the evidence, as we explicitly do not vacate the conviction on the basis of insufficiency of evidence and therefore do not risk offending the Double Jeopardy Clause in remanding for a new trial. See Burks v. United States, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case[;] it implies nothing with respect to the guilt or innocence of the defendant.").*

*See, United States v. Wells, 879 F.3d at 911*

The 9th Circuit, therefore, was careful not to comment on the defendant's sufficiency argument and did, on almost all grounds, ratify the admission of expert testimony. The court, more importantly, ratified the admission of Wells' other motives

for murdering Mr. Belisle and Mr. Hopkins. *See, United States v. Wells, 879 F.3d at 924-930*.

### a. This is Wells' Third Motion for Bail Pending Trial But This Circumstance- Post-Conviction for Double Murder- is Different

At Docket 60, Wells first applied to this court for bail pending trial. That application was denied by the court after an evidentiary hearing and where two third-party custodians were proposed. Wells claimed many of the same reasons for bail as he does in this application. No criminal record, length of marriage, three children, longstanding ties to Kodiak and other reasons. (*See, Docket 60,* pgs. 1-4) A hearing was held on May 20, 2013, before the Hon. John D. Roberts, United States Magistrate Judge. (*See Docket 715*)[1]

During that hearing, Wells proposed two third party custodians. Neither custodian knew the defendant well. Neither knew that Wells frequented prostitutes when asked by the prosecution. *(Ibid*, pgs. 15, and 28) One of the proposed third party-custodians stated Nancy Wells advised them of Wells' prostitutional proclivities-eliciting sex in exchange for money, the morning of the hearing. The witnesses testified that Nancy Wells characterized it as consensual and that Nancy Wells knew about it evidencing Nancy Wells' ratification and approval of this blatant and widespread illegal behavior. (*Ibid.,* at

---

[1] Neither Jim Wells nor Nancy Wells have any ties to Southcentral Alaska. What little ties they do have are in Kodiak, some 290 miles from here. In addition, it is the government's understanding that Nancy Wells has been living in Oregon with her son for some time. Neither has spent any time in the Anchorage area.

15) Neither witness knew of the list of female names and phone numbers, which, incidentally, was discovered by investigators on Wells' desk in the rigger shop. The consort list, nine pages in length, was verified by the investigation to consist of phone numbers of erotic dancers, companions, or women selling their time. Some of the women on the list were contacted by the investigation and admitted to meeting with Wells for money. One in particular informed the investigation that she knew Wells was in town (i.e., Anchorage) for VA appointments. One met with Wells three or four times. (*See Docket 715* at pg. 40-44)  Another woman, interviewed by the investigation, stated she had seen Wells three or four days prior to the interview when Wells was in Anchorage for a health care related trip to the VA in Anchorage. *(Ibid.,* at pgs. 58-64) To the investigation's knowledge, Wells made these trips to Anchorage alone. The consort list also included area codes for Las Vegas, Portland and the Bay Area, locales where Wells traveled to for work-related reasons.

In addition to the foregoing, the investigation revealed that Wells hoarded quantities of Coast Guard property at his personal residence. This property took the form of, *inter alia*, multiple snow blowers, fluorescent lighting, power tools, and survival suits, all marked with Coast Guard property labelling. (*Ibid*, pgs. 45-50)

In summary, then, the government argued, and it does now, that Wells was certainly not a 'law abiding' citizen worthy of being provided the trust necessary for

pretrial release. The bail application was denied for these and a myriad of other reasons; including the fact that Kodiak was too problematic for monitoring. (*Ibid.,*, at 82-84)

Thereafter, at Docket 283, Wells again moved for bail pending trial. In that application, Wells argued that release was necessary for discovery review, consultation with counsel and to participate in his defense. (See Docket 283) In essence, it mirrors the arguments and provides virtually the same proposal as the one currently before this court save for offering Nancy Wells as a third-party custodian. Despite the presence of third party custodians available to testify, the court denied the motion for bail without taking evidence and commented that individuals facing lengthy trials often are able to prepare while incarcerated. [2]

Wells' current proposal for bail is one that is very similar to the second proposal, that being an apartment close to the courthouse, within a five-mile radius, electronic monitoring, with his spouse Nancy Wells as third-party custodian.

The government opposes. Due to the nature of the charges, Wells' convictions, maximum sentence exposure of life imprisonment and, most importantly, that Wells' convictions were reversed for constitutionally based trial errors, and not sufficiency of evidence, his application for bail should be denied.

//

---

[2] The government is of the same opinion here, especially in light of a proposed continuance.

## B. This Application is Not Before This Court on a Usual 'Pretrial' Scenario, But is Before the Court After Conviction

Under 18 U.S.C. 3142(e), in a typical pre-trial bail application issue, the government must show by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure ... the safety of ... the community," 18 U.S.C. § 3142(e), and that the applicant therefore poses a danger to the community. *See, United States v. Hir*, 517 F.3d 1081, 1094 (9th Cir. 2008)

The government's overall burden, again, pre-trial, is one of showing, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the [defendant's] appearance," under 18 U.S.C. § 3142(e), and that appellant therefore poses a risk of flight. *See, United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). In cases of sentences of life and crimes of violence, a rebuttable presumption exists that no condition or combination of conditions will assure the safety of the community or prevent the defendant from fleeing. See, 18 U.S.C. § 3142(e). Ordinarily, the government will be relying on the rebuttable presumption at any bail hearing pre-trial, and does so here. However, for all relevant purposes, while the case law cited by Wells and the United States provides some meaningful framework, the court has before it a different legal and factual posture, one of conviction, and thereafter a reversal on constitutional and other legal grounds. For these reasons, and while that framework is helpful, the court must instead emphasize the merits of the conviction, the

facts supporting it, the comments of the district court judge at sentencing, and the veracity and fitness of the third-party custodian to discharge an incredibly important and weighty responsibility, along with the merits of the proposal itself.

In terms of the facts of conviction, the government need not belabor the avalanche of facts established at trial that proved beyond a reasonable doubt that Jim Wells murdered his co-employees the morning of April 12, 2012, as they started their workday, with a .44 magnum pistol at close range. Mr. Belisle was shot 3 times. Mr. Hopkins was shot 2 times. As the court knows, the murder weapon has never been located and it remains at-large. As the court also knows, Wells' wife, and proposed third-party custodian, Nancy Wells, was out of town in Anchorage, having left Kodiak the day before. Since Wells 'saw her off' at the airport (*See, Exhibit 2*, *pgs. 2 and 3*) Wells knew where she had parked her blue Honda-CRV, which was the car caught in the video heading toward, and away from the rigger shop before and after the murders of Mr. Belisle and Mr. Hopkins occurred. The evidence at trial established that the 'flat tire/nail in the tire' story and the nail insertion itself was fabricated by Wells in order to form an alibi as to why he was not present in the rigger shop, like he should have been, when the murders occurred. In this regard, two experts testified that the nail in Wells' tire was inserted manually via a nail gun for a variety of very clear factually apparent reasons. As to the remainder of the facts of the case, the United States would rely upon the factual statements contained in the ruling of the 9th Circuit, wherein it outlined the facts

established at trial in some detail. (*See, United States v Wells*, 879 F.3d at 908-909 and 930 *Section A, The Crime and the Investigation, and The District Court Erred in Admitting 'Other Act Evidence' et seq.)*

Due to the prior convictions, and Judge Beistline's sentencing comments, the landscape of this case is simply not a mechanical *pro forma* bail application pre-trial. In fact, most of the authorities relied upon by Wells deal with pre-trial bail scenarios. The defendant was convicted at trial, quite speedily, and the trial and sentencing judge commented, quite strongly, that Jim Wells is a 'cold-blooded murder.' For these reasons alone the application should be denied as Wells remains a present danger to the community. However, given that the defendant is proposing his wife Nancy Wells as a third party custodian, the government now turns to the appropriateness of Nancy Wells as a third party custodian.

**C.   Due to Her Allegiance to Her Husband, Hostility to the Government, Belief That the Government Manipulated Evidence, and Belief In Her Husband's Innocence, Nancy Wells is Not An Appropriate Third Party Custodian**

As an initial matter, spouses are not ideal third-party custodians. Marital binds can be and are strong, and despite a spouse's best of intentions, there will always remain love and loyalty to such an extent that objectivity and duty to the court as a custodian could come into conflict. Moreover, there could certainly exist a degree of ignorance or willful blindness between spouses, where a custodian spouse would subordinate a duty of

inquiry, candor, suspicion, or reporting on the activities or plans of the one monitored. Most certainly deception is also possible between one spouse and the other as to true intentions. The other concern is harm coming between spouses if there comes to pass an occasion where the third party spouse would be required to report a violation, and the other spouse objected.

There is, however, other information which makes Nancy Wells unsuitable factually as a third party custodian. That information is as follows and is provided to the court by various documentary exhibits from the investigation:

-Nancy Wells has told a family friend, Para Upchurch, that the investigation was not solely related to Jim Wells and that she projected blame or involvement of the murders at both victims' family members, i.e. the Belisle and Hopkins families. *(See Exhibit 1, report of audio recorded statement of Para Upchurch)*[3]

-In Exhibit 2, in an interview with FBI, Nancy Wells also stated that her husband had problems with a tire and had diarrhea which explained his tardiness for work the morning of the murders. She was also in fear for safety because she believed the 'real killer' is still out there.

In the same interview, the day after the murders of Messrs. Belisle and Hopkins, Nancy Wells stated she was told by Jim Wells that he had a flat tire and had not made it to work yet. There was no mention of diarrhea made by Nancy Wells to investigators the

---

[3] Each of the attached exhibits were provided in discovery before the first trial and have been provided again for this retrial.

day after the murders. Nancy Wells stated that due to her flight being late Jim Wells came to the airport to see her off the day before the murders and she 'thinks' Jim moved the car to a different parking area after her flight left.  (*See, Exhibit 2, pg. 2*) (Said fact establishes Jim Wells knew the parked location of Nancy Wells blue Honda CR-V).

-Exhibit 3 is a report of a recorded interview with a co-worker of Nancy Wells. This interview occurred on November 16, 2012. The co-worker stated that Nancy Wells informed co-workers that Wells failed to tell investigators that the actual reason Wells was late was that he defecated in his pants due to recent gall bladder surgery and was embarrassed to tell investigators. Nancy Wells further explained that Wells stopped at the Kodiak airport to clean himself.[4] Further in the interview Nancy Wells is reported to have stated that Mrs. Nicola Belisle should be considered a suspect. The witness being interviewed advised the investigator that she believed Jim Wells was providing information to Nancy wells to intentionally disseminate false information.

---

[4] This issue is of import. As stated in the 9th Circuit opinion, Wells was captured by the main gate camera passing the main gate of the Coast Guard base in his white Dodge truck at roughly 6:38 a.m. Some 34 minutes later, and after murdering Messrs. Belisle and Hopkins, Wells truck was observed by the main gate camera going the other way, back to his home. Obviously, as noted by the 9th Circuit, Wells switched vehicles and since he took or met his wife at the airport to 'see her off' two days earlier, (see Exhibit 2, pg. 2) he used his wife's car to drive to the rigger shop where he murdered his co-workers and made his escape. When confronted by investigators as to what he was doing for those 34 minutes beyond the main gate Wells hesitated for a long time and said, "I have no reasonable explanation for it[and] I don't have a theory at the moment." Obviously, Wells, through his spouse, is seeding an alternative fact-diarrhea based story throughout Kodiak. Wells, a suspect in a murder, had ample opportunity to explain his medical issue but did not, and still hasn't to this day. He needs these new theories as he hadn't thought about being caught by the main gate cameras and having to explain those 34 minutes to investigators. The diarrhea story, falsified video footage of the main gate video all fall within an expanding and failed alibi attempt.

-Exhibit 4 documents interaction with Nancy Wells during execution of a search warrant on June 25, 2013. During execution of the warrant Nancy Wells was asked by an agent, prior to her departing the residence, if agents needed to move their cars to make it easier for her to leave. Nancy Wells responded, *"No, don't bother. If any cars are in my way I'll just hit them and you can send me the bill."* During the same search Nancy Wells accused agents of planting evidence, of taking keys from Jim Wells the day of arrest and surreptitiously entering the residence for unknown purposes. She blamed several agents of that activity. Nancy Wells also accused agents of *'tapping'* her phones, *'lying on search warrant affidavits,'* and attempting to kill her husband by forgetting to take him medicine. Nancy Wells then added, *"No matter what the outcome, I know he didn't do this. There is a God in heaven and there is truth and it is powerful. I feel sorry for you."* (Exhibit 4, pg. 5)

-Exhibit 5 is an email between Wells and Nancy Wells dated October 27, 2017. In said email Nancy Wells expresses her *'distrust and disgust with the feds.'*

-Exhibit 6 is an email from December 1, 2017. In said email Nancy Wells states, *"Any doubts about suing are quickly resolving. I will spend the rest of the days asking the Lord to help me with my anger and desire for revenge.'*

-Exhibit 7 is a report of a recorded interview with a co-worker of Nancy Wells who was with Nancy Wells in Anchorage at the time Mr. Belisle and Mr. Hopkins were murdered. The co-worker stated that she and another employee tried for two days to get

Nancy Wells to leave Anchorage and return to Kodiak in light of the situation. Nancy Wells refused. (Exhibit 7, pg. 1) Additionally, this witness stated that Nancy Wells had said initially that Jim Wells had a flat, then didn't, and that Jim Wells stopped at the Comfort Inn to use the restroom. The witness stated that Nancy Wells began circulating rumors that a scary man with an odd tattoo was a suspect in the murders.[5]

Exhibit 8 is a report from execution of a search warrant from February 2013. During execution of that warrant Nancy Wells stated that if agents left an iPhone in the residence she would '*smash it or put it in a shredder*.' When agents offered to assist Nancy Wells with loading firewood for her home, Wells responded that if she accepted help from '*people like you*' she would probably end up paralyzed. She also commented, as to one agent in particular, *"it would be nice if a piece of wood would fall and hit him in the head."* (Exhibit 1, pgs. 1-2) When an electrical issue involving an area to be searched occurred, Nancy Wells stated to an agent, *"You know what I should do? I should let you get electrocuted. That would be hilarious."*

-Exhibit 9 is an email from Nancy Wells to Jim Wells. In that email, at the end, Nancy Wells states and appears to believe the government is withholding or has manipulated evidence as to the main gate video, which could exonerate Jim Wells. (*see*, footnote 4)

---

[5] This would be Jason Barnum, whom the defense floated as a possible suspect/murderer in the first trial. Barnum has one eyeball inked black, and scores of tattoos all over his face. Judge Beistline denied application of evidence as to Barnum at trial. The 9th Circuit affirmed Judge Beistline's exclusion of this testimony at trial. *See U.S. v. Wells,* 879 F. 3d at 937-938

-Exhibit 10 is an email from Nancy Wells to Jim Wells where, in the context of filing a civil lawsuit Nancy Wells states that Jim Wells *'fully expect(s) to be proven innocent of all charges.'*

- Due to the shortness of time, the government proffers Exhibit 11, not filed herewith, but which is an audio recording of a jail house call on March 18, 2018 between Wells and Nancy Wells whereby Wells complains about not having a direct line to his defense counsel and he is tired of being ignored. Nancy Wells responds, "Want me to go crazy, I will!" [File name: 3b5bcc5f0a5d00154714fa0b91d639ba]

- Exhibit 12 is a proffered audio recording of a jail house call on April 4, 2018 between Wells and Nancy Wells whereby they discuss the same theory of the government hiding exculpatory evidence and other "collusion" and "conspiracy" at play. [file name: 88c3f0000a5f0015632929468b7622ff] With respect to Exhibits 11 and 12 the government will have said exhibits for the court come the Tuesday hearing.

Based on the foregoing, the court can see shifts in stories, explanations, and facts from Nancy Wells as to her husband's alibi. She was out of town the day before and for two days after the murders of Messrs. Belisle and Hopkins and could not possibly know her husband's actions from the time of her departure to the time of her return. Just as importantly, it is clear that she possesses a strong and articulated hostility toward the government, a belief in an overall government conspiracy against her and her husband, and a blind disregard and utter lack of concern surrounding her husband's repeated

unlawful engagement in soliciting sex for money. In addition to that, she possesses a clear belief, despite overwhelming evidence, that his not a cold-blooded murderer. While some of that, under the circumstances, would be understandable to some extent, in this situation there is clear bias, hostility, anger and distrust/disgust with the government, its investigation, the strength of the facts gleaned from the investigation, and claimed withholding of evidence. She has, undoubtedly, bought her husband's story and is keen to exonerate him.

This should send a clear picture to the court as to Nancy Wells' bias, which directly impacts her ability and fitness to be a third-party custodian that the court can feel comfortable it can trust under these very critical and dangerous circumstances. In effect, the defense is requesting that the court roll the proverbial dice that not only will Jim Wells not jeopardize the safety of the community, but also whether he will abide by the court's order. That's a question entirely separate but still relevant to this decision, but whether his spouse, who seems to be his alibi-spokesperson and revised-alibi-disseminator, along with her hostility to the investigation, is of sufficient mettle and character to ensure that Jim Wells complies with the court's orders, and, more importantly, ensures compliance with the law, that he doesn't flee, or get a head start. In addition to all of that, with this record this court cannot be assured that Nancy Wells will not, in one way or another, facilitate or assist her husband with escape, flight, or in an action dangerous to the community given all of the foregoing evidence. Her hostility and

belief in the government's attempts to frame him, and his actual innocence, effectively leaves the court and Wells with no actual and effective third-party custodian. In effect then, Wells will be on something close to OR. That, coupled with his conviction, and the facts provided therein, do not permit release.

One additional fact requires mention. Jim Wells is by all accounts a skilled technician and a man good with electronics, possessing a greater than normal technical and workman ability. Given that, there is the concern that the removal of an electronic monitoring device will not be that great of an impediment to the defendant. While not the most powerful of facts in opposition to the motion, it is a solid fact for the court to allocate some weight.

### D. Filing on Shortened Time and Victim Position

Given that the hearing on this motion will occur on Tuesday, January 22, 2019, the United States files its response on shortened time in order for the court to have the government's opposition prior to the hearing and with sufficient time for review. One victim to this case, a spouse of one of the decedents, was contacted about the general nature of the filing. Said victim is vehemently opposed to any release of the defendant on bail under any circumstances and the government adopts her prior position on bail as was articulated in the other proceedings.

**Conclusion**

In considering Wells' motion, the court may be considering whether there are any set of conditions sufficient to warrant releasing Jim Wells prior to retrial. In the government's view the answer is in the negative. The basis for this is not due to a government 'no bail rule' for all, but instead is based on the calculated and pre-mediated plan put into ruthless execution by Jim Wells in April, 2012. On that day, he was able to, within the space of four minutes, execute two of his co-employees as they began their workday and escape vaporously undetected—save for mistakes made as to security camera coverage and other circumstantial evidence. Due to her absence from Kodiak during the days of the murders, all Nancy Wells knows about his activities during that period is what Jim Wells has told her. When viewed by virtually anybody else but Nancy Wells, Jim Wells' double murder was a thoroughly planned and calculated execution, which left little direct, but large volumes of circumstantial evidence. A trial jury appeared to have little trouble in concluding Wells the triggerman, as, indeed, he was the sole individual able to maneuver amongst the detection devices undetected.

The court can, and should weigh the prior conviction heavily in determining the merits of Wells' application, along with facts listed by the Ninth Circuit. As shown above, the usual pretrial standards shouldn't control the court's analysis, but it does provide some structure. And with respect to those frameworks of guaranteeing appearances, and the general safety of the community, it is glaringly apparent that Nancy

Wells is unfit as a third-party custodian and, it can be argued, possibly complicit after the fact by aiding in a cover up of his crime. Jim Wells' calculated and pitiless execution of Mr. Belisle and Mr. Hopkins, along with the changing and adapting of alibis being spun by his wife, reveals that anything can and will be done in this case to escape responsibility and justice for double murder. Approving bail for this defendant under these or any other set of circumstances cannot adequately assure the safety of the community or appearance for trial.[6]

The motion for bail pending re-trial should be denied.

RESPECTFULLY SUBMITTED this 18th day of January, 2018, at Anchorage, Alaska.

        BRYAN SCHRODER
        United States Attorney

        s/ Steven E. Skrocki
        STEVEN E. SKROCKI
        Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**
I hereby certify that on January 18, 2019,
a copy of the foregoing was served
electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the US Attorney

---

[6] Wells also notes other concerns about incarceration. It is hoped the U.S. Marshal may be able to address some of those concerns at the hearing on Tuesday or at some other appropriate time.

United States' Opposition      Page **18** of **18**
US v. Wells
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 932   Filed 01/18/19   Page 18 of 18