Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA 98121
(206) 624-1551
petercamiel@yahoo.com

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3: 13-cr-00008-SLG |
| Plaintiff, | ) ) ) | MEMORANDUM IN SUPPORT OF MOTION TO PROHIBIT IRRELEVANT CHARACTER EVIDENCE |
| vs. | ) ) | |
| JAMES MICHAEL WELLS, | ) ) | |
| Defendant. | ) ) ) | |

Defendant Wells has moved for an order prohibiting the government from introducing "bad character" evidence that is irrelevant to the issues before the jury, and probative value is substantially outweighed by the unfair prejudicial effect of such evidence. This motion is a separate motion from defendant's motion to exclude 404(b) other bad act evidence. At issue here is an array of pure character evidence that was previously introduced through several witnesses to paint a picture of Wells as a bad employee and bad person. Witnesses were improperly asked to give their opinions about Wells' various character traits. At the retrial such evidence should be excluded.

Memorandum in Support of Motion
Exclude Character Evidence
(*United State v. James Wells,* 3:13-cr-0008-SLG)

Case 3:13-cr-00008-SLG   Document 946   Filed 03/19/19   Page 1 of 6

# THE IMPROPER USE OF CHARACTER EVIDENCE

Witnesses were permitted to describe Wells as "having a poor attitude" (RT 488)[1] "quite conceited at times" (RT 832)[2], "only receptive to change if he had played a part in coming up with the change" (*Id*.), not "known to be [the] kind of person" who did "as you're told" (RT 868)[3], "view[ing] himself as extremely knowledgeable" (RT 889)[4], taking "pride in his role" in the tower community as shown by his "strut[ting]" at conferences (RT 920)[5] ; "just set in the way he would do things"[6] (RT 1020); "difficult at times" (RT 1251)[7]; and "not real good at sharing the information he had" (RT 1334).[8] Wells was also described as "difficult" and "set in the ways he would do things" (RT 1020), that he was "more difficult to work with than the other [employees]" (RT 488), and a "narcissist" (RT 3742, 3746)

When the defense objected to a question soliciting Wells' view of his own knowledge, the government responded, "it's directly relevant to the *character* that we're going to be discussing throughout this trial." (RT 831) (emphasis added). The objection was overruled. (RT 832).

Over Wells' objection at the first trial (CR 211-212, 258, 365), the government was permitted to introduce character evidence by way of witness' opinions about Wells to argue that

---

[1] Cody Beauford: "Overall, he was more difficult to work with than the others. There was a wealth of knowledge, but he had a poor attitude."

[2] Thomas Eskey: "I thought he was quite conceited at times, actually.." " He was only receptive to change if he had played a part in coming up with that change; otherwise, he was resistant and would protest it."

[3] James Encinas: "Q: Petty Officer Encinas, you testified that as far as the chain of command, you do as you're told. Was Mr. Wells known to be that kind of person? A. No, ma'am."

[4] Scott Reckner: "I believe he viewed himself as extremely knowledgeable."

[5] Scott Reckner: "You know, he would -- Rich and I called it strut. He would go strut through the exhibition area talking to people and vendors…"

[6] Nathaniel Pacheco: "And at times it could be more difficult, because things were just set in the way he would do things."

[7] Commander Van Ness: "Q: In terms of an employee, how easy was he? A: It could be difficult at times."

[8] William Reed: "he was not real good at sharing the information he had."

Wells had both the narcissistic character traits and the accumulation of humiliations Dr. Meloy described in his profile of the perpetrator. The court previously, erroneously permitted the evidence as inextricably intertwined with the crime and as motive evidence. (3/24/2014 RT 11). The Ninth Circuit found the evidence was not inextricably intertwined with the crime. Dr. Meloy will not be testifying at the retrial. Any such character evidence should be excluded.

## ARGUMENT

At the first trial, character evidence was impermissibly admitted to prove propensity in direct violation of the Rules of Evidence. Federal Rule of Evidence 404 twice forbids evidence of a person's character, character traits, or acts to prove character to show that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1), (b)(1). "The gravamen of the historic attempt to exclude such character evidence is to force the jury, as much as humanly possible, to put aside evidence" going only to a defendant's character, "and consider the body of evidence, both testimonial and physical before them, in order to decide if the prosecution has convinced them, beyond a reasonable doubt, that the defendant is guilty of the crime charged." *McKinney*, 993 F.2d at 1385 (granting habeas relief in murder prosecution on basis of admission of evidence of defendant's fascination with knives); *see also Old Chief v. United States*, 519 U.S. 172, 182 (1997) ("There is . . no question that propensity would be an 'improper basis' for conviction"); *Michelson*, 335 U.S. at 475-76 ("The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime").

The Advisory Committee Notes to the 1972 Proposed Rules of Evidence illustrate the discrete purpose of Rule 404:

Memorandum in Support of Motion to
Prohibit Character Evidence-3

Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Under Rule of Evidence 404(a), evidence of a defendant's bad character may not be introduced by the prosecution unless the defendant has put it in issue. A defendant's mere denial of guilt is not evidence of good character subject to bad character rebuttal. See *United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988).

And yet, the government was permitted to put on volumes of such evidence in its' case in chief specifically to prove "the character that we're going to be discussing throughout this trial." (RT 831). In its closing, the government referred repeatedly to this evidence as showing Wells' "narcissistic traits," his "strong sense of self," his "sense of entitlement," "his pride and his belief that he was at the top of his profession." (RT 3742-43). The only purpose of this character evidence was to prove that Wells was a bad employee and therefore had the propensity to commit an otherwise illogical, irrational murder. It was, therefore, classic propensity evidence that should have been excluded.

To determine whether any evidence is relevant, the court needs to start with the charges. Wells is charged with the intentional killing of two specific coworkers. It appears that the government theory as to motive is that Wells became frustrated following a 2011 change in COMMSTA command which put more pressure on him to conform to the chain of command."

The Ninth Circuit determined the government's motive theory as follows:

> The Government's motive theory unfolded in the following basic sequence: Wells' frustrations began with a 2011 change in COMMSTA command, which placed unwelcome pressure on him to conform to the chain of command. Due to personal illness and his resulting absences from work, Wells became increasingly frustrated by a loss of professional independence and importance. His frustration turned to anger and culminated in the murders of his co-workers, whom he deemed threats to maintaining his station within the rigger shop.

The Ninth Circuit also stated: While it is reasonable to grant some flexibility to a prosecution tasked with constructing a motive theory to prove a double workplace homicide, we must also insure that reasonable limits are employed."

The government relied extensively on this character evidence in their closing argument.

> Dr. Meloy talked about, especially with someone with narcissistic traits, someone who has a sense of self–strong sense of self, a sense of entitlement, and you saw this in a number of witnesses about Jim Wells. You heard people talk about his pride and his belief that he was at the top of his profession. And you also some–saw some concrete examples of these narcissistic traits (RT 3742-43).
>
> [H]e said those humiliations are even worse for someone with these narcissistic traits. And that's exactly what happened in this case. (RT 3746).
>
> And now you can envision how this chain of humiliations to the defendant's ego started him down this path, the path to this attack. (RT 3751).
>
> What Dr. Meloy gave you is a picture of lots of different kinds of murders. But what he told you is about one kind of murder that fits Mr. Wells to a T. (RT 3917)
>
> [W]hat Dr. Meloy said, there are people who have this very hypersensitive view of their work importance. Called it narcissistic sensitivity . . . . Here's characteristics of those that do [act] when it's a planned, thoughtful, prepared, you know, workplace murder, in this case a co-worker murder. Here's characteristics you will see: Hyper-view of their own value. Hyper-humiliation. That's people –thing would call run-of-the-mill insults. 80 percent of those don't communicate their threats, and they become isolated and withdrawn before the murder. And then when they make the decision, their mood may go up. And that fits Mr. Wells to a T. (RT 3918).

Indeed, the *only* purpose of the character evidence was to support the argument that was presented through the profile testimony of Dr. Meloy that Wells had the propensity to commit this murder. As Dr. Meloy will not be testifying at this trial, the character evidence has no relevance whatsoever.

In *United States v. Curtin*, 443 F.3d 1084, 1094 (9th Cir. 2006) the court stated regarding the use of bad character evidence, "Good prosecution proves that the defendant committed the crime. Bad prosecution proves that the defendant is so repulsive he ought to be convicted whether he committed it or not. Rule 404(a) prevents this sort of bad prosecution."

## Conclusion

Having no direct or forensic evidence to support the theory that Wells killed Hopkins and Belisle, the government constructed its case around character evidence. The government premise was that Wells was a bad employee and that bad employees are more likely to commit the murder of other employees. Inadmissible character evidence cannot be used as a substitute for actual evidence that the defendant committed the charged crimes. Character evidence is inadmissible to prove an individual acted in conformity with that character. And yet this evidence served as the framework for the government's case in the first trial. This should not be allowed in this retrial.

Dated this 19th day of March, 2019.

*Peter A. Camiel*
Peter A. Camiel
Attorney for Defendant Wells

I hereby certify that on the 19th day of March, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

/*s*/*Peter A. Camiel*
Peter A. Camiel