BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:   steven.skrocki@usdoj.gov
         christina.sherman@usdoj.gov
         Kelley.L.Stevens@uscg.mil

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAMES MICHAEL WELLS<br><br>　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 3:13-cr-00008-SLG<br>)<br>)<br>)<br>)<br>) |

**UNITED STATES' NOTICE OF INTENT TO INTRODUCE
OTHER ACTS PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

COMES NOW the United States of America, by and through the above-named

counsel, and files with the court this notice of intent to introduce evidence of certain acts

of the defendant pursuant to Federal Rule of Evidence 404(b).

**I.     Other Conduct by the Defendant, and His Response During and To Those Events, are Relevant and Admissible at His Trial and are FRE 404(b)(2) Evidence that Establish Motive.**

The United States provides notice to the defendant of its intention to use prior act evidence as proof of motive.  Said notice, for purpose of this filing, is provided for under FRE 404(b)(2).  In general, FRE 402(b)(2) provides an appropriate mechanism for the inclusion of this evidence upon proper notice, which is provided here. It states as follows:

(2) Permitted Uses; Notice in a Criminal Case. *This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.* On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial.

In making this notice, the information the government seeks to admit is not Rule 404(b) evidence.  Federal Rule of Evidence 404(b)(1) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show on a particular occasion the person acted in accordance with that character."  Essentially 404(b)(1) prohibits propensity evidence. By his motions addressed by separate pleadings, Wells is attempting to pigeon-hole evidence of motive as 'bad character' or 'propensity' evidence in order to exclude its introduction at trial. The clear reading of the rule shows that relevant evidence of motive and intent falls outside the prohibitions of Rule 404(b), and is therefore

U.S. v. James Michael Wells
3:13-cr-00008-SLG                                  2

not evidence of propensity.

As set out in *United States v. Heine, 2017 WL 4423408* (D.Ct.Ore) Rule 404(b) does not apply where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011) (citation omitted). "Other act" evidence is considered to be inextricably intertwined when: (1) it is part of a transaction that forms the basis for the charge; or (2) the evidence is necessary to make the case comprehensible or explain the circumstances surrounding the crime. *Citing, United States v. Loftis*, 843 F.3d 1173, 1177–78 (9th Cir. 2016); *United States v. Rrapi*, 175 F.3d 742, 748–49 (9th Cir. 1999) ("Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves as a basis for the criminal charge,' or 'was necessary to ... permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.' ") (citation omitted).

In addition, "[a] jury is entitled to know the circumstances and background of a criminal charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (internal quotations omitted). "It cannot be expected to makes its decision in a void–without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *Id. See also United States v. Senffner*, 280 F.3d 755, 764–67 (7th Cir. 2002) (holding that, in mail fraud prosecution, evidence of other acts is inextricably intertwined where it: (1) completes the story of the crime on trial, (2) its absence would create a chronological or conceptual void in the story of the crime, or (3) it is so "blended or

U.S. v. James Michael Wells
3:13-cr-00008-SLG                                3

connected" that it "incidentally involve[s], explain[s] the circumstances surrounding, or tend[s] to prove any element of, the charged crime."). *See, Heines*, 2017 WL 4423408, at 14.

Thus, FRE 404(b)(2) allows other act evidence that may prove another act for other permissible purposes, including motive and intent, so long as the prosecutor provides "reasonable notice of the general nature of any such evidence the prosecutor intends to offer at trial." FRE 404(b)(2)(A). The government hereby provides said notice as well as the basis for its admission below.

Here, the government's theory of motive and/or intent forms the very foundation for its admissibility. The government submits that this Court may appropriately admit these facts as the Ninth Circuit succinctly described the government's theory surrounding Wells' motive during its first case-in-chief summarizing it as follows:

> Wells' frustrations began with a 2011 change in COMMSTA command, which placed unwelcome pressure on him to conform to the change in command. Due to personal illness and his resulting absences from work, Wells became increasingly frustrated by loss of professional independence and importance. His frustrations turned to anger and culminated in the murder of his co-workers, whom he deemed threats to maintaining his station with the rigger shop.

*United States v. Wells*, 879 F.3d 900, 929 (9th Cir. 2018). The Ninth Circuit readily accepted the government's motive for murder theory and imposed a time limitation of facts in support of that the theory beginning as early as 2011.

As stated by the Ninth Circuit in *Wells* on this very issue:

> *Other acts evidence is admissible under Rule 404(b) if it (1) tends to*

> *prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged." Beckman, 298 F.3d at 794. "Of course, the probative value of the evidence must not be 'substantially outweighed by the danger of unfair prejudice.' " United States v. Blitz, 151 F.3d 1002, 1008 (9th Cir. 1998) (quoting Fed. R. Evid. 403).*
>
> *Applying this four-part test to evidence surrounding the 2012 letter of caution, Wells' tree collaring instances, and our catch-all category of Wells' disagreements with co-workers, we are satisfied that the district court properly admitted this evidence under Rule 404(b)(2). This evidence, as a whole, was relevant to Wells' work environment, including his relationships with relevant co-workers and supervisors; was not too remote in time and fits within a reasonably tailored version of the Government's motive theory; and was proven through both the admission, without objection, of Wells' personnel file, as well as the testimony of the co-workers and supervisors involved in the underlying acts. On balance, the probative value of this evidence is unique in a workplace homicide trial, and we do not find that it is substantially outweighed by any danger of unfair prejudice.*

*United States v. Wells*, 879 F.3d 900, 930 (9th Cir. 2018).(emphasis added)

Of import here is that the Ninth Circuit, while reversing admission of Dr. Meloy's testimony and the circumstances of a 2003 Attu Island dispute, found admissible under both 404(b)(2) and FRE 403 balancing, all of the various other act evidence introduced in the prior trial and which the government now seeks to introduce here. While Wells may wish that the Court inquire further on both the 404 analysis and the 403 balancing test, it need not do so as the Ninth Circuit previously affirmed the admission of this evidence on appeal.[1]

---

[1] As set out herein, the government is not seeking to introduce the 2003 Attu incident, nor is it seeking to introduce the defendant's more recent actions in visiting prostitutes while in Anchorage, or while on official work travel outside of Kodiak, AK.

Each of the following events set forth below are background information, and provided to the court to explain the government's motive theory. They support, and are probative evidence of motive, which substantially, if not totally, outweighs any unfair prejudice to the defendant. Accordingly, they should be admissible at the defendant's trial. The government has provided all evidence relating to these events as outlined below to the defense in discovery.

### A. General Work Behavior from 2011 to the Date of the Murders

Defendant Wells had been counseled on several occasions by his U.S. Coast Guard supervisors for failing to obey orders, ignoring his supervisors, his diminished work performance, his failure to participate as a fully functioning team member, and his unexcused absences.

### B. The Fuel Card Investigation and 2012 Letter of Caution

Wells' supervisors confronted him about misuse of a U.S. government credit card that had gone missing and then improperly used to buy fuel on the U.S. Coast Guard base during a time when all of the other crewmembers were traveling out of town for work, and when the government vehicles did not require fuel. The missing fuel card was initially reported by James Hopkin. Wells, Hopkins, and Belisle provided statements during the investigation. While the investigation was ultimately inconclusive, the investigation found that, "Wells statement does not match the findings of the surveillance video" which showed Wells entering the base minutes before the fuel card was improperly used. After the investigation, Wells received a letter of caution from his Commanding Officer regarding

the misuse of the fuel card. During the meeting with his supervisors, Wells refused to leave the Commander's office and stared at his superiors. He refused to sign the letter or speak for quite some time.

### C. 2011 Tree Collaring

Wells had been counseled on past occasions about removing trees from Coast Guard property, in order to obtain firewood at no cost to the defendant. This included improperly "collaring" trees to cause their premature death.

### D. Wells Travel Limited

In years past, Wells traveled frequently for work and enjoyed opportunities to attend conferences as a subject matter expert where he was noted to take great pride in his attendance. A few months prior to the murders, the command canceled Wells' travel orders to a professional conference because of his diminished professional performance, and the command's desire to increase the responsibility and opportunities for others in the office, including one of the victims who ultimately attended in his place.

### E. General Disagreements with Co-Workers

Generally, Wells' professional performance had diminished in the years leading up to the murders, and newly reported senior Coast Guard members began holding the defendant accountable for his actions, when in the past, he had been able to "fly under the radar." These general disagreements include Wells reacted negatively when a warehouse was cleaned out and other employees were throwing out things that Wells wanted to save. It also included Wells' resistance and lack of cooperation in developing a comprehensive

antenna manual that encompassed specific information related to each antennae the rigger shop serviced. Other members in the command, including one of the victims worked to develop the quick reference manual, which allowed for other workers to have ready access to antenna specific information previously hoarded by Wells.

### F. Wells' Ideas Were Rejected

The day prior to the murders, Wells and Richard Belisle both made a suggestion on how a cable should be for a particular project. Wells' idea was rejected and Belisle's idea was selected.

Based on the foregoing, the government's theory on motive remains reasonably tailored. Each of the above described events is extrinsic evidence that goes to prove motive pursuant to 404(b)(2). The evidence will be limited and presented in an expeditious manner. Further, the Ninth Circuit has already reviewed this evidence in the context of the first trial and found it admissible under both Federal Rules of Evidence 404(b) and 403. As decided in *Wells*, '[s]uch evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Thus, "Rule 404(b) is a rule of inclusion—not exclusion—which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *Wells*, 879 F.3d 900, 928, and 930 *Citing, United States v. Curtin*, 489 F.3d 935, at 944, (9th Cir.2007) Indeed, other 9th Circuit authorities similarly conclude other act evidence as admissible with a limiting instruction to prove motive. *See also United*

*States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000) (explaining that Rule 404(b) is "one of inclusion" in that "other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity" (*quoting United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982)).

## II.   The Government is Not Seeking to Introduce Evidence that is Remote in Time or Unduly Prejudicial.

The government is not seeking to introduce the 2003 Attu incident that was found to be inadmissible by the Ninth Circuit. *Id.* at 928.

There is also evidence that the defendant would seek out prostitutes for traveling for work. The defendant not being permitted to travel for work would necessarily impede his ability to leave Alaska and meet with prostitutes which fits into the United States' motive theory in this case and within the confines of 404(b). However, out of an abundance of caution of the prejudicial nature of this evidence, the government is not seeking to introduce this evidence in its case-in-chief.

## III.   The Government Will Seek a Limiting Instruction

The United States will seek that the Court instruct the jury, both during and at the end of trial, that this evidence be "admitted only for the limited purpose of proving intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or absence of accident, and thus the jury can consider that evidence for that limited purpose and not for any other purpose." Such an instruction would be in accord with Fed. R. Evid. 403, and 404(b)(2). Indeed, once the government establishes that the evidence is properly admitted under 404(b)(2), the only mechanism justifying exclusion lies under FRE 403.

U.S. v. James Michael Wells
3:13-cr-00008-SLG                                9

Under that rule, there is no basis to exclude the evidence proffered by the government, and a limiting instruction will direct the jury as to the proper utilization of this evidence as to motive and intent.

**IV. Conclusion**

The government should be permitted to introduce evidence of the above described other acts during its case-in-chief at trial in this matter. Each of these acts is relevant and admissible and goes directly to the defendant's motive to commit these murders.

RESPECTFULLY SUBMITTED April 8, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Christina Sherman
CHRISTINA SHERMAN
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2019, a
true and correct copy of the foregoing was
served electronically on:

Counsel of Record

s/ Christina Sherman
Office of the U.S. Attorney