Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA 98121
(206) 624-1551
petercamiel@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-0008-SLG |
| | ) | |
| Plaintiff, | ) | DEFENSE REPLY TO |
| | ) | GOVERNMENT RESPONSE RE: |
| vs. | ) | MOTION TO EXCLUDE 404(b) |
| | ) | EVIDENCE [DOC 956/957] |
| JAMES MICHAEL WELLS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Prior to the first trial and once again, the government has argued that the other act evidence did not fall under F.R.E. 404(b) because it was inextricably intertwined with, the crime charged. [Govt. Notice of Intent re 404(b) doc. 956 p. 3] The Ninth Circuit rejected that as a basis for admission of any of the other act evidence. The Court stated:

> Here, none of the other acts evidence bears "directly" on the charged crimes, or has the requisite "contextual or substantive connection" to be categorized as inextricably intertwined. It was error for the district court to admit it as such, but the alternative admission under Rule 404(b)(2) saves all but the 2003 incident. *United States v Wells*, 879 F.3d 900, 929 (9th Cir. 2018)

DEFENDANT'S REPLY TO GOVERNMENT
RESPONSE RE CHARACTER EVIDENCE
(United States v. Wells, 3:13-cr-0008-SLG)

The government also argued that the evidence is admissible under 404(b) in that it completes the story of the crime, proves motivation, and is not too remote in time. The Ninth Circuit found that the 2003 Attu Island incident was too remote in time. The rest of the other act evidence, while not remote in time is not relevant because it does not bear on the crime charged or complete the story but instead involve discrete isolated events having nothing to do with either victim.

A summary of the other act evidence in the government's "Notice of Intent to Introduce Other Acts" and "Response in Opposition" [Docs 956/957] clearly demonstrates why this evidence is irrelevant. The government's summary of incidents describes ten other act topics.[1] There is barely any mention of Belisle or Hopkins. The Government summary demonstrates that the incidents each involved being disciplined by or disagreeing with supervisors other than Hopkins or Belisle. Not one of these prior incidents "completes the story of the crime" because not one involved a dispute with, or conflict with either victim. Not one involves a threat of violence. Moreover, none of these instances involve the 'time, place, and circumstances of the acts which form the basis of the charge." *United States v. Senffner*, 280 F.3d 755, 764-67 (7th Cir. 2002) The charged crimes took place during the morning hours of April 12, 2012 at the COMMSTA T-2 building.

---

[1] A. 2003 Attu Incident (Govt. says will not seek to introduce), B. Fuel Card Investigation and Letter of Caution, C. Tree Collaring, D. NATE Convention, E. Allegations of Stolen Property (Govt. says will not seek to introduce in case in chief), F. Work Place Disagreements, F.1. Warehouse Cleaning Project, F.2. Antenna Book, F. 3. Satellite Antenna Wire, F.4. Bird Diverters, F.5. Failure to Inform Superiors and Abuse of Sick Leave

Defendant's Reply Re Other Act Evidence-2

*Huddleston v. United States,* 485 U.S. 681 (1988) relied upon by the government offers no support for admission of the other acts, as *Huddleston* involves the use of extrinsic evidence to establish an actors state of mind. The defendant, Huddleston was charged with the knowing possession of stolen videocassette tapes and claimed he didn't know they were stolen. The Government introduced similar acts evidence that connected defendant to a series of sales of stolen appliances from the same store as the tapes. The Court concluded that the evidence was relevant to the fact that defendant had knowledge that the tapes were stolen, an element of the crime charged. Indeed, not one case cited by the government involves the use of the type of evidence at issue herein in a murder case.[2]

In *United States v Brown*, 880 F. 2d 1012 (9th Cir. 1989) the court reversed a first degree murder conviction of a postal employee in part because the trial judge allowed the introduction of prior bad acts including an allegation that the defendant had shot into a women's home three months before and some years before had confronted a man with a loaded rifle. At trial the defense had argued that the defendant had no motive to shoot the postal carrier. The government argued that the prior acts were admissible to show that

---

[2] *United States v. Heine*, 2017 WL 4423408 (Dt. Ore) (bank fraud), *United States v. Rizk* 660 F.3d 1125 (9th Cir 2011)(bank fraud conspiracy) *United States v. Daly,* 974 F.2d 1215 (9th Cir. 1992)(felon in possession), *United States v. Senffner*, 280 F.3d 755 (7th Cir. 2002)(Contempt and Obstruction of SEC investigation), *United States v. Loftis,* 843, F.3d 1173 (9th Cir 2016)(wire fraud), *United States v. Rrapi,* 175 F.3d 742 (9th Cir. 1999)(bank robbery), *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007)(traveling across state lines to have sex with minor), *United States v. Chea*, 231 F.3d 531 (9th Cir. 2000)(conspiracy to commit and committing armed robbery), *United States v. Mehramanesh*, 689 F. 2d 822 (9th Cir. 1982)(importation and possession of heroin)

Defendant's Reply Re Other Act Evidence-3

Brown derived a thrill from creating violence and that the motive behind the killing was the desire to obtain a thrill. As to this the Court stated:

> The only disputed material issue in this case was whether Brown had the specific intent required to commit first degree murder. The evidence of Brown's prior acts is therefore admissible to show motive only if relevant to show Brown's specific intent. We conclude the prior bad act evidence fails to show any motive which would in turn be relevant to show the required intent. The prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to engage in criminal activity. See *United States v. Feldman*, 788 F.2d 544, 556-57 (9th Cir. 1986), cert. denied, 479 U.S. 1067, 93 L. Ed. 2d 1003, 107 S. Ct. 955 (1987) (evidence of substantial debt admitted to show motive for bank robbery); *Bowman*, 720 F.2d 1103, 1104-05 (evidence of prior conviction admitted to show motive of revenge); *Bradshaw,* 690 F.2d 704, 708-09 (evidence of prior sexual acts between victim and defendant admitted to show motive for kidnapping). *Brown* at 880 F.2d 1012, 1014-1015 (9th Cir, 1989)

### At the First Trial, Defendant Failed to Object to Much of the 404(b) Evidence- Defendant Now Does Object

The Ninth Circuit found that much of the 404(b) evidence was admitted at the first trial without objection.

> More persuasive is the Government's argument that much of the other act testimony concerned actions which were detailed in Wells' USCG personnel folder, referred to during defense counsel's opening statement and admitted without objection at trial. *United States v. Wells*, 879 F.3d 900, 925 (9th Cir. 2018)

Therefore, the context within which the Ninth Circuit found that it was not error to admit the post-2011 other act evidence was that this evidence was not objected to at trial, and further was documented in Wells' personnel file that Wells sought to have admitted as an exhibit. That context has now changed. Wells objects to this evidence pursuant to F.R.E. 401 as irrelevant and objects under 403 because it is unfairly prejudicial, confuses

Defendant's Reply Re Other Act Evidence-4

the issues before the jury, will mislead the jury, will cause undue delay and will waste time.

This evidence is unfairly prejudicial because it paints Wells generally as a bad employee but lacks relevance because it fails to show any animus between Wells and the victims. This evidence confuses the issues because the admission of this evidence will necessitate Wells having to counter with witnesses and exhibits to explain each event which creates trials within the trial on issues such as "who misused the fuel card," whether Wells abused his sick leave, why Wells disagreed with placing bird diverters, or whether Wells was involved in unauthorized collaring of trees. It will likewise mislead the jury by placing the jury in the position of having to decide disputed issues about employment disciplinary matters or disagreements rather than focusing of the actual murder charge. Finally, such evidence will take up a significant portion of the trial. The 404(b) evidence took up about two full trial days at the first trial.

On appeal the government's alternative justification for the admission of the 404(b) evidence was that Wells had opened the door to this evidence in opening statement and by having Wells' personnel file admitted as an exhibit.[3] At the upcoming trial the defense will not seek to have the personnel file admitted nor will the defense be eliciting evidence about Wells character or job performance. That position would only

---

[3] In their brief on appeal the government wrote: "Wells complains only about the testimony of a few witnesses who described his history of misconduct and discipline in the workplace. Even if there were an issue with their testimony, any error was harmless because Wells' entire personnel file, which detailed almost all of these events, was admitted without objection. Moreover, the personnel file was an exhibit the defendant wanted in evidence, and cited in his opening statement." (Govt. Brief p. 123)

Defendant's Reply Re Other Act Evidence-5

change if the court allows the government to introduce evidence about job related disciplinary issues.

The Government argues that the evidence was relevant to Wells' work environment, including his relationships with relevant coworkers and supervisors. But the relevant coworkers in this case were Hopkins and Belisle, not Chief Reckner or Commander Van Ness. It was Commander Van Ness who issued the letter of caution regarding the fuel card investigation. It was Chief Reckner who confronted Wells about tree collaring, it was Reckner who decided Wells could not attend the NATE convention, Reckner who overruled Wells as to the bird diverters, and Reckner who decided the method of running the wire to the satellite on the T-2 roof. The decision to clean out the storage warehouse was made when Wells was not even present.

As to the "Wells was being pushed out" motive theory, Hopkins was set to retire (RT 514, 802, 1001-1002, 1065, 1117, 2842) He'd already prepared the papers to do so. The other act incidents do not bear on Wells being pushed out of his job, but only on creating an appearance that Wells was a difficult employee. Indeed, there is no evidence that Wells had any concern about being pushed out or at risk of losing his job. This is only an unsupported Government theory.

## Conclusion

The government has no eyewitnesses, no murder weapon, no forensic evidence, and no confession connecting Wells to the murder of Hopkins and Belisle. They also have no threats, altercations or verbal disagreements between Wells and either victim. They have no evidence Wells was ever violent toward another person at work or

Defendant's Reply Re Other Act Evidence-6

anywhere else. Instead, they have combed through Wells personnel file and pulled every possible negative event, even though none involved the victims, called it other act evidence, and suggested it is admissible as going to motive. The other act evidence should be excluded.

Dated this 15th day of April, 2019.

/s/Peter A. Camiel
Peter A. Camiel
Attorney for Defendant Wells

### Certificate of Service

I hereby certify that on the day 15th of April 2019, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

/s/Peter A. Camiel
Peter A. Camiel

Defendant's Reply Re Other Act Evidence-7