BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska   99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
       christina.sherman@usdoj.gov
       kelley.l.stevens@uscg.mil

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) No.   3:13-cr-00008-SLG |
|---|---|
| Plaintiff, | ) |
| vs. | ) **MOTION IN LIMINE OF THE UNITED STATES AS TO INADMISSIBLE HEARSAY NOT SUBJECT TO EXCEPTION DURING OPENING STATEMENT OR TRIAL** |
| JAMES MICHAEL WELLS, | ) |
| Defendants. | ) |

The United States submits the following Motion in Limine with respect to

inadmissible defendant hearsay sought to be introduced, as it was in the prior trial, to

repair a "gap in alibi." Said motion is directed to an additional alibi of 'I had diarrhea and had to stop at a bathroom' concocted by the defendant when he realized-far too late-and after questioning by investigators, that his plans to escape suspicion as a multiple murderer were defeated by his personal vehicle, a white Dodge pickup, being captured on video by the United States Coast Guard main base surveillance cameras in a timeframe which defeated the 'I had a nail in my tire' alibi pitched to investigators during questioning. During the first trial, defense made many attempts to introduce hearsay statements or other collateral and unsubstantiated speculation as to defendant's use of restroom facilities prior to returning to his home; medication use which caused diarrhea, surgery which caused diarrhea, or other self-serving statements in an attempt to elicit and enter into evidence, non-permissible hearsay that the defendant was somehow suffering from diarrhea and had to make an emergency restroom stop at some heretofore unknown location.

Per disclosure by defense, that location is now known, and it appears likely the defendant will argue he stopped at the Servant Air terminal on his route, home, thus filling in the gap in time in his original alibi.

The *only* person who could testify to this fact is Wells himself, and only by taking the stand. Accordingly, the court should deny any defendant statements offered by any witness and any mention of this alleged stopover in opening statement. For these reasons, the government's motion in limine should be granted.

//

**INTRODUCTION**

During the first trial of this case, counsel for defendant Wells went to great lengths to elicit testimony from government witnesses as to the defendant's use of restroom facilities, issues with diarrhea or the impact of certain medications taken by the defendant which may have caused diarrhea and other related matters. Said information was primarily elicited on cross-examination of government witnesses as to whether the defendant either spent significant time in a bathroom, or suffered from diarrhea-like gastro-intestinal issues, which would explain a stop on the way back to his home during the morning of the murders.[1]

This issue will be significant at trial as it relates to the defendant's attempted alibi as to his whereabouts the morning of the murder, and why his accounting of the timing of his activities the morning of the murders differed from that put together by investigators. Given the numerous mentions of the defendant's medical condition during the prior trial, the government requested, and the defense provided an additional alibi response on the 'diarrhea issue,' attached hereto as Exhibit 1. The following alibi information was provided by the defense with respect to this issue:

*Be advised that on April 12, 2012, between 6:48 a.m. and 7:22 a.m., Mr. Wells was at his residence at 365 Pavlov Circle, Kodiak, Alaska, and in transit from his residence to the vicinity of the Kodiak Airport, <u>to include the offices of Servant Air,</u> and*

---

[1] While Wells complained of nausea, and there was testimony that a drug used by Wells could have caused diarrhea, none of the defendant's medical records reflected any report of the defendant to a physician about any gastro-intestinal issue similar to and or including diarrhea. TR 2728-2731

*back to his residence. …*

*Further, be advised that of course nothing in this notice is intended to limit or waive in any fashion, Mr. Wells right to testify at trial himself as to his whereabouts during the identified timeframe.*

While the government respects the right of the defendant to testify in his own defense as to his whereabouts' during the time in question, there is no right to solicit from government or defense witnesses *statements of the defendant* as to his medical condition, physical condition, location, reason for being in one place or another, whether he was at Servant Air or elsewhere, or other statements of the defendant.

The basis for this preclusion lies upon the rule that the statements of the defendant, not admitted by the government under FRE 801(d)(2)(A), admission of a party opponent, are non-hearsay and not admissible under any exception including but not limited to FRE 106, the rule of completeness. For this reason, any application by the defense for admission of these statements—or mention of them—especially with respect to attempting to introduce hearsay evidence to support and or corroborate anticipated defendant testimony, should be denied.

### A. BACKGROUND

During the investigation, the defendant was interviewed extensively by the FBI and the United States Coast Guard about his actions the morning of the murders of Messrs. Hopkins and Belisle. (TR 2577-2617) During the interview, Wells was asked about a 34-minute gap in time between the times his white Dodge truck passed the Coast

Guard base gate camera heading toward his place of work at the Rigger Shop/T2, and the time his vehicle was captured by the base cameras headed the other way, toward his home. When asked about that 34-minute gap, which was not covered by his earlier alibi/explanation, Wells waited close to 15 seconds before responding as follows, *"I have no reasonable explanation for it…I don't have a theory at the moment."* Immediately afterwards, when given an opportunity to add more to this statement by investigators, and if he had anything else to offer, Wells responded quite succinctly with:

*'Nope.'*

(Exhibit 24D-1, and TR 3786-3788, Government's closing summation of the diarrhea theory).

Wells obviously did not foresee this question coming, and had not prepared any answer. Recognizing this vulnerability to his alibi, Wells concocted yet another alibi to fill in the gap of missing time of his original alibi when the base cameras debunked it. Now, for a second time, the government seeks a motion in limine to preclude hearsay as it anticipates a significant push by Wells to build the case that he stopped at Servant Air to use the facilities, along with similar attempts with other witnesses to support or corroborate this alibi. As of this writing, there is no evidence directly from the defendant, or anyone else to support that Wells did anything other than commit the murders and drive directly home, like he had planned to do all along. The Servant Air stop is a fiction.

//

## B. ALIBI EVIDENCE FROM THE DEFENDANT OR ANYONE ELSE BASED ON STATEMENTS OF THE DEFENDANT ARE INADMISSIBLE HEARSAY

It is the law that prior statements of a defendant are admissible as substantive evidence when introduced by the United States. A defendant's prior exculpatory statements, or any statements whatsoever, are, however, hearsay and are not admissible. Self-serving and non-self-exculpatory statements of a defendant are not admissible through other witnesses, and are not exempted from the hearsay rule by Federal Rule of Evidence 801(d)(2)(A) or any other exception. Moreover, the Rule of Completeness does not compel admission of otherwise inadmissible hearsay evidence. *United States v. Caldicott*, 92 F.3d 973, 983 (9th Cir.1996)

It is also the rule that the defendant cannot elicit self-serving defense statements on cross-examination of government witnesses. See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000). While it may appear so to some, an admission of a party opponent doesn't work both ways. The defendant's own statements, sought to be introduced by his own attorney, is not an "admission of a party opponent." In *Ortega*, the 9th Circuit affirmed exclusion of the defendant's non-self-exculpatory statements under both a hearsay argument, and under FRE Rule 106 or the Rule of Completeness. As found in *Ortega*:

> For the following reasons, we affirm the exclusion of Ortega's non-self-inculpatory statements. First, Ortega's non-self-inculpatory statements are inadmissible even if they were made contemporaneously with other self-inculpatory statements. See Williamson v. United States, 512 U.S. 594, 599, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The self-inculpatory

U.S. v. Wells  Page 6 of 11
3:13-cr-00008-SLG

statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, *see* Fed.R.Evid. 801(d)(2), but the non-self-inculpatory statements are inadmissible hearsay. *See Williamson,* 512 U.S. at 599, 114 S.Ct. 2431 (finding that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts [which are hearsay]"). If the district court were to have ruled in his favor, Ortega would have been able to place his exculpatory statements "before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids." *United States v. Fernandez,* 839 F.2d 639, 640 (9th Cir.1988). Thus the district court did not abuse its discretion when it limited Ortega's ability to elicit his exculpatory hearsay statements on cross-examination.

Second, the rule of completeness, *see* Fed.R.Evid. 106 (requiring that the redacted version of a statement not distort the meaning of the statement), applies only to written and recorded statements. *See United States v. Collicott,* 92 F.3d 973, 983 (9th Cir.1996) (finding that "rule 106 'does not compel admission of otherwise inadmissible hearsay evidence' ") (quoting *Phoenix Associates III v. Stone,* 60 F.3d 95, 103 (2d Cir.1995)). Because the officer's testimony concerned an unrecorded oral confession, the rule of completeness does not apply. Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay. *See Collicott,* 92 F.3d at 983.

Third, a court may impose reasonable limits on cross-examination without violating the Confrontation Clause. *See United States v. Dees,* 34 F.3d 838, 843 (9th Cir.1994). Precluding Ortega from eliciting inadmissible hearsay on cross-examination, given that he testified to the statements himself, is not the type of severe limitation on cross-examination that violates the Confrontation Clause. *See id.; see also Fernandez,* 839 F.2d at 640 (finding that due process does not require that the defendant be allowed to present exculpatory hearsay statements). The officer's testimony did not distort the meaning of Ortega's statements because Ortega testified to the statements not mentioned by the officer: that his cousin supplied Ortega with the pistol and that the same cousin

> gave Ortega the methamphetamine. Furthermore, Ortega's testimony did not infringe upon his Fifth Amendment right not to testify because he had already testified prior to the officer's testimony. Ortega should not be allowed to use the Confrontation Clause as a means of admitting hearsay testimony through the "back door" without subjecting himself to cross-examination. *See* Fernandez, 839 F.2d at 640.

*Ortega*, 203 F.3d at 682

In this case, the defendant should be precluded from eliciting testimony from witnesses as to hearsay statements of the defendant or others, along with sections of his interview the government does not elect to publish for the jury.

One concern the government has, by way of example, is that the defendant's spouse has informed citizens of Kodiak that her spouse, besides being innocent, had a diarrhea episode the morning of the murders, and soiled himself, after allegedly locating a nail in his right front tire. Nancy Wells further stated her husband was 'too embarrassed' to inform investigating agents of this fact during his interview with them. (See Exhibits 2 and 3)

Exhibit 3, is a co-worker of Nancy Wells who was interviewed as part of the investigation. This individual stated as follows during her recorded interview:
Nancy Wells has been openly discussing the murder investigation in their workplace at Kodiak Area Native Association…in August 2012, N. WELLS informed co-workers that J. WELLS had failed to tell investigators the actual reason he was later for work on 12 April 2012 was because he had defecated in his pants due to his recent gall bladder surgery. N. WELLS added that J. WELLS stopped at the Kodiak Airport to clean himself. N.WELLS asserted J. WELLS was too embarrassed to tell FBI and CGIS agents.

As mentioned earlier this new fabrication as to stopping at the Kodiak Airport would include the newly provided alibi evidence to 'include the offices of Servant Air', which are located at the Kodiak Airport. (See, Exhibit 1)

Given that this court knows Nancy Wells was in Anchorage the day of the murders, this information could only come from her husband.

This information as to the defendant's physical condition, actions, 'feeling embarrassed' or otherwise is therefore hearsay, without exception. At the prior trial, counsel for Wells referenced this information during questioning of government witnesses at least eight times. It also included clear references to the condition in opening statement in an effort to explain, without the defendant taking the stand, where the defendant was during the time of the murders. (See, TR 265, 268-opening statements by the defendant, 2721, 2726-28, 2731-medicine caused 'severe diarrhea', 3111, and 3006.)

In between the timeframe listed by the defense for Wells' whereabouts the morning of the murder, there are no witnesses who can say what Wells was doing, save for him. There are no witnesses who can testify about what happened to Wells in his truck, nor how he felt. Any testimony about what Wells was doing, absent eyewitness testimony, can only be offered for the truth of the matter asserted, that being that he stopped in Servant Air on the way home to use the restroom, or that he had a diarrhea episode, thus explaining a significant segment of time for which he had no accounting. The claim is clearly inadmissible as the only way anyone could be aware of that

information would have been from the defendant's own mouth. [2] *See* <u>Collicott,</u> 92 F.3d at 983; *see also* <u>United States v. Ortega,</u> 203 F.3d 675, 682 (9th Cir.2000) (holding that, notwithstanding the rule of completeness, "exclusion of [the defendant's] exculpatory statements was proper because these statements would still have constituted inadmissible hearsay"). <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir.1988)(per curiam)(Denial of admission of self-exculpatory statements during post-arrest interview, constitution does not mandate that a court allow defendant his inadmissible statements "before the jury without subjecting [himself] to cross-examination."

**CONCLUSION**

Case law is clear that Wells cannot admit, through cross-examination of government witnesses, or any other witness, self-serving or other statements made by them. Such statements are hearsay without any exception. Wells should be precluded from mentioning this alleged fact in opening statement, if he elects to make one, without first making an offer of proof as to the evidence in support of the claim, nor should he be permitted to elicit clearly hearsay evidence from witnesses which either came from him as hearsay, or via tales spun by his spouse to others on Kodiak.

//

//

---

[2] It is the belief of the government that the defendant spun this tale to his spouse who in turn spread it out to the community at large at every opportunity. This is the only possible way this could have occurred given her absence from Kodiak the day before and day after the murders. As this court observed at the defendant's bail hearing, Nancy Wells believes her husband James Wells innocent, and the investigation lacking.

RESPECTFULLY SUBMITTED April 24, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2019, a true and correct copy of the foregoing was served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney

U.S. v. Wells	Page 11 of 11
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 971   Filed 04/24/19   Page 11 of 11