BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
   christina.sherman@usdoj.gov
   kelley.l.stevens@uscg.mil

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:13-cr-00008-SLG |
| | ) |
| Plaintiff, | ) |
| | ) **MOTION TO PRECLUDE DEFENSE** |
| vs. | ) **EXPERT PARK DIETZ FROM** |
| | ) **TESTIFYING ON 'WORKPLACE** |
| JAMES MICHAEL WELLS, | ) **VIOLENCE'** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

The United States submits the following Motion to Preclude the Trial Testimony

of Defense Expert Park Dietz on the issue of 'workplace violence'. Pursuant to expert

discovery provided by the defense, Dr. Dietz's testimony is irrelevant in light of the United States electing not to call Dr. Meloy. Moreover, said testimony does not meet the standards of FRE 702 nor does it provide any opinion or other evidence which would assist the trier of fact as the concept of workplace violence is not relevant to this case. While the government recognizes the right of the defense to rebut the testimony of Mr. Morton, the workplace violence evidence/discussion has the very real possibility of confusing the jury, providing irrelevant facts and concepts, and would require the United States to rebut that evidence in its rebuttal case calling Dr. Meloy to rebut Dr. Dietz's testimony. For these reasons, the testimony by Dr. Dietz on workplace violence should be precluded.

FACTS

Dr. Park Dietz, a forensic psychiatrist, was hired by the defense in 2018 to provide rebuttal testimony to Dr. Meloy, who will not be called by the government, and in rebuttal of the testimony of Robert J. Morton, now a retired FBI agent. Dr. Deitz' report and C.V. is attached hereto as Exhibit 1.

In preparing his report, Dr. Deitz was provided, by the defense, and relied upon the following items:

- Referral to BAU, 4/17/12 (047251 - 047254)
- Robert J. Morton Summary of Assistance Provided, 5/23/12 (Wells1800047350 - Wells1800047352)

- Crime scene and autopsy photographs and diagrams reviewed by Mr. Morton (064477 - 064512)

- Robert J. Morton Criminal Investigative Analysis, 10/11/13 (19284 - 19291)

- Robert J. Morton resume (19276 - 19283)

- E-mails regarding Mr. Morton's analysis (079360, 079389, and 079397)

- Letter from US Attorney Karen Loeffler to Dr. Meloy, 4/19/13

- Report of Dr. Meloy, 11/22/13

- Dr. Meloy's CV

- Expert disclosure re. Dr. Meloy (19271-19275)

- List of materials reviewed by Dr. Meloy (21031-21032)

- Trial transcript, pp. 1607-1657 (Testimony of Mr. Morton)

- Trial transcript, pp. 1365-1449 (Testimony of Dr. Meloy)

- Dr. Meloy's PowerPoint (D-6556 - D6584)

- Govt. Exh. 392 (Building diagram)

- Trial transcript, pp. 3724-3796 (Closing Argument of Plaintiff)

- Trial transcript, pp. 3893-3957 (Final Argument of Plaintiff and Jury Instructions)

- US v. Wells, 879 F. 3d 900 - Court of Appeals, 9th Circuit 2018

- Letter from Dr. Meloy to AUSA Walker, 9/20/18

- Morton Supplemental Report, 11/30/18

Of the items listed above, seven (7) relate only to Dr. Meloy.

An evaluation of Dr. Dietz's curriculum vitae (C.V.), and provided resume, attached as Exhibit 1, establishes that Dr. Dietz is a forensic psychologist, which makes up the bulk of his C.V. He has also apparently expanded his business offerings to include trainings and consultation on violence in the workplace. The following is a summary of the specialties of Dr. Dietz's firm, Dr. Dietz's written works, lectures/trainings, and testimonies.

At pg. 1 of the report dated January 9, 2019, the 'Specialties of the firm' are listed as: Forensic Psychiatry, Forensic Pathology, Forensic Neurology, Forensic Psychology, Forensic Social Work, Forensic Science, Criminology, and Security. None of these listed specialties are in any way connected with murder in the workplace as a science.

A review of the Dr. Dietz's C.V. indicates the vast majority of his educational training, postgraduate training, full-time academic appointments, visiting and adjunct appointments, hospital and administrative appointments, institutional committee assignments, Licensure (certification in psychiatry), and other listings are primarily if not exclusively in the field of Forensic Psychiatry with some listings for 'threat assessment." (See Exhibit 1, pages 1-11)   In the 'Selected Notable Cases that Are Public Information" Dr. Dietz lists consultations ranging from the attempted assassination of President Reagan in 1981, at pg. 12, to consulting with the NCAA in a civil matter of coach Joe Paterno v. NCAA, an alleged defamation case. (See, pgs. 11-19) None of these matters referenced pertain to or relate to the subject matter of Dr. Dietz's report for the defense in

this case.

From April 1990, to 2014, some 5 years ago, Dr. Dietz testified, as listed at pages 21-34, in roughly 91 civil cases, and 86 criminal cases. As to the 65 publications listed at pages 34-40, none of those publications reflect on the current subject matter of testimony, though there is one publication on threat assessment in the workplace. Of the book chapters and/or publications, Dr. Dietz list more than 80. None relate to the subject matter of his report/testimony. (See pgs. 41-47) Indeed, as to speaking engagements, those track historical trends in crime, from 'Product Tampering: Who Does It?' in 1987 (see pg. 53) to workplace violence in the mid-90's, See pg. 57) to Sexual Sadism in 2014 and others. As recently as 2018, Dr. Dietz did speak at a workplace violence roundtable in San Francisco. (See, pg. 63)

Over the course of his career, Dr. Dietz has presented as a panelist at national meetings on such wide-ranging topics as rapists, the psychiatrist role in investigation, and as an expert witness, insanity defense, media relations for the forensic scientist, the psychopathic sexual sadist, workplace violence, juvenile murders, school mass shootings, and other topics. (See, pgs. 63-69)

Of the 38 teaching experiences listings at pgs. 72-38, none reference the subject matter of this his report or testimony, save for possibly one, 'Forensic Evaluation and Expert Testimony in Criminal Cases' given to the Atlanta Federal Penitentiary in 2005.

The C.V. does list Workplace Violence Prevention Training Packages and Videos 'Scripted by Dr. Dietz.' Of those listed at pages 76-78, 22 are not relevant as they deal

with such topics as 'Mental Illness and Suicide Prevention' or 'Cyberstalking and Related Misconduct' while approximately 25 concern workplace violence or managing troubled people. Pages 78 to 92 reference workplace violence instruction and prevention. None appear to relate to the subject matter testimony of Dr. Dietz's provided report.

The report provides several headings as to the proposed subject matter of the Dr.'s testimony. Under '*Rebuttal of Government Experts*' Dietz alleges that Mr. Morton, a government expert, was biased before his work began as he was told Wells was a suspect. Dietz also takes issue with Morton's prior testimony, although that is not relevant at this stage pending retrial.

Dietz then lists out and criticizes Mr. Morton's testimony under the following headings:

>-*Focus on a Single Theory of the Case*

>-*Personal Cause vs. Impersonal Cause*

>-*Sequence of Shots*

>-*Whether There Was Verbal Interaction Between Killer and Victims*

>-*Conflation of Mass Murder in All Settings with Double Murder in the Workplace*

>-*Conflation of the Concepts Intended, Targeted, Predatory, and Instrumental*

>-*The False Dichotomy of "Workplace Violence" vs. "Random Violence*"

The focus on the single theory of the case is broken up into 5 subcategories of 'alternative hypotheses which include but are not limited to' the following: Targeting of the Coast Guard, personal motive toward one of the victims, murder for hire of one of the victims, random psychopathic homicide, and psychotic homicide. Aside from an unsubstantiated 'I am informed that someone made a bomb threat to the Coast Guard proximal to these murders' none of the other hypothesis have any factual support or backing whatsoever. Indeed, even the bomb threat to the Coast Guard is support only by what appears to be a report, made at 3pm the day of the murders by an unknown source. (See, Exhibit 2, pg. 1) As to that source, the 'bomb threat' is beyond innocuous, as it states:

*On 4/12/12 15:31L21-RCVD a call from a LTCDR Fitzgerald at the Airstation stating his YNI Dean, Jaclyn informed him that she was in conversation on myspace with a ET3 who stated he wanted to blow some stuff up…*

See, Exhibit 2, pg. 1.

As to this 'bomb threat' there is no identity or location of the 'ET3', nor a date, nor any follow-up. No time, location, or even if the Coast Guard was a target. The United States queried the defense team of the source of this information given its unsupported appearance in Dietz' first report.

On Friday, April 26, the defense provided a second report by Dr. Dietz.(Exhibit 3) At page 2 of the second report, Dr. Dietz, he states:

*With respect to the alleged bomb threat, my best recollection is that I was given*

*this information in a conference call with the defense team, which has provided me the attached document…as their source for that representation.*

It appears, then, that Dr. Dietz never laid eyes on the supporting data of the "blow some stuff up" threat report as shown in Government Exhibit 2.

The supplemental report also references 'open source' statistics and other military installation murders which were revealed by searching the Internet. (See, Exhibit 3, pg. 1, at bottom, and pg. 2, at top) This is far from an exhaustive and thorough examination of such incidents. While Dr. Dietz appears to have experience/expertise in workplace violence, the government is not pursuing that line of inquiry given the mandate of the 9th Circuit on appeal. If the defense does so, the door will be open for the government to rebut said testimony in a legally permissible manner. However, the court need not 'go there' given the fact the government is not introducing this evidence in its case in chief. Given that, Dr. Dietz testimony on that issue must be precluded.

A. ARGUMENT

1. **Dr. Dietz is a Forensic Psychologist Whose Testimony Is Not Directed Toward His Expertise, Which Criticizes the Work of a Government Witness Whom the Government is not Calling and Places Undue Emphasis on the Workplace Violence Construct Without Any Facts to Support Postulated "Theories"**

Dietz' report in preparation for trial is confusing. On the one hand, it attempts to rebut the testimony of two witnesses who both testified at the prior trial. One of those

U.S. v. Wells  Page 8 of 16
3:13-cr-00008-SLG

witnesses, Dr. Meloy, will not be called by the government. On the other hand, the report spends a significant amount of time postulating various other 'theories,' without any supporting evidence. In addition, the report spends a significant amount of time discussing 'workplace violence' including statistics of same, which is an inappropriate moniker for the murders which occurred in this case.[1]

FRE 702 governs admission of expert testimony in the federal courts. It provides as follows:

*If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.*

Here, given that Dr. Dietz' educational and professional degrees are in the fields of Forensic psychiatry; it appears that he will testify under the 'other specialized knowledge' prong of the rule. However, what that specialized knowledge is remains unclear. If it is offered to rebut Dr. Meloy, the issue is moot as Meloy will not be testifying. If it is offered to rebut Mr. Moore's testimony, the report offers nothing but speculative theories not based, nor supported, by any evidence.

---

[1] The United States will not be eliciting the phrase 'workplace violence' during its case from any witness. While the inescapable fact is that the murder occurred at the place of employment for Messrs, Hopkins, Belisle, and the defendant, the location and timing of the murders are relevant as to proving Wells as the murderer and that the murders were the result of facts occurring in the workplace. "Workplace violence' is an unnecessary and inaccurate label when all is said and done and the report attempts to use that catch-phrase to bootstrap other unsupported, and self-described 'theories.' The government would note that Dr. Dietz' organization produces and lists scores of 'workplace violence' seminars exceeding more than a 177 listings from 1995 to 2018, more than 21 years worth. Without Dr. Meloy's testimony 'workplace violence' and testimony thereon has no place in this trial.

The Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), concluded that the *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (1923), "general acceptance" test had been superseded by the 1975 enactment of Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), established that the trial judge's role as gatekeeper applies to all expert testimony, not just the scientific ones. Thus, the court holds the gatekeeping function for any type of expert evidence.

The trial judge applies these principles in ruling on admissibility, acting as a "gatekeeper." The rules as to the gatekeeping function are corralled by *Kumho*, which states that Rule 702 admits "any evidence created or validated by expert methods and presented by an expert witness that is shown to be reliable" even if it is not "'scientific' evidence, however such evidence might be defined." *United States v. Herrera*, 704 F.3d 480, 486 (7th Cir. 2013) (fingerprints). "[A] witness need not have formal education as a scientist if his other training and experience otherwise qualifies him to testify as an expert." *United States v. Williams*, 2017 WL 3254895 (11th Cir. Aug. 1, 2017).

As to the elements guiding admission of expert testimony under FRE 702, each is discussed in turn. None of the factors meet any of the elements of the rule, and in fact exceed the scope of this trial as a significant amount of the report/anticipated testimony concerns itself with one topic of discussion: 'workplace violence.' Just as the government is not seeking, by ruling of the 9th Circuit, to introduce evidence of 'workplace violence', or defendant's likelihood to commit workplace violence, the defense should be precluded from offering or arguing that, by this expert, that Wells could not have committed the

crime due to characterizing workplace violence "theories" not supported by the evidence.

> **2. Dr. Dietz' Specialized Knowledge, Apparently in the Field of Workplace Violence Will Not Assist the Trier of Fact to Understand the 'Other Killers' Evidence or Determine a Fact in Issue as it is based on Speculation and Lacks Evidentiary Foundation**

The summary of Deitz' testimony, if it is any indicator of his testimony, spends a significant amount of time discussing workplace violence. Indeed, it references "workplace violence" or connotations of violence in the workplace more than 7 times in his report. To the contrary, Mr. Morton's testimony, See TR 1608 to 1657, discusses the facts of the murders alone and renders a simple and clear conclusion. In fact, a reading of Morton's testimony reveals not one utterance of the workplace violence phrase, instead, Morton finds as the most important fact that *"both victims were at work at their usual time, and the offender chose at that time to walk into the building and basically shoot both of them to death."* (Morton testimony at TR 1654). Neither after nor before this statement is there any discussion as to workplace violence, statistics of same or otherwise.

The Dietz report on the other hand spends a significant amount of time discussing Dr. Meloy, when the government has made clear it is not calling Dr. Meloy. A significant part of the Dietz report, under the title of 'The False Dichotomy of "Workplace Violence" vs. "Random Violence" is of no assistance to the trier of fact as it deals with an irrelevant area, 'workplace violence.' (See Deitz report at pgs.6-8)

U.S. v. Wells                                                                Page 11 of 16
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 975   Filed 05/01/19   Page 11 of 16

### 3. The Report and Presumed Testimony of Dr. Dietz is based on limited Facts and Data from the Investigation

Dr. Dietz's proposed testimony, if it mirrors his report, falls far short of a comprehensive review of the investigation in this case and is limited to only 20 topics, most of them summary in nature, and most concerning Dr. Meloy. It includes:

-Two pages of Mr. Meloy's summary

-One referral letter from the to the FBI's Behavioral Analysis Unit

-35 Crime scene and autopsy photographs

-Morton's crime scene analysis consisting of 7 pages

-Emails of Morton's analysis, 3 pages.

-One letter from the U.S. Attorney

-6 pages of Morton's C.V. and list of materials

-Morton's trial testimony

-Dr. Meloy's trial testimony and PowerPoint (now irrelevant)

-A diagram of the building

-The government's closing argument, rebuttal and jury instructions

-The 9th Circuit opinion on this case.

-A letter from Dr. Meloy to AUSA Walker (now irrelevant)

-And Mr. Morton's supplemental report.

In summary, the amount of information reviewed by Dr. Dietz in framing these opinions comprise less than 200 pages. Any information read on Dr. Meloy is irrelevant inasmuch as Dr. Meloy will not be called by the government at trial. As to the 'other killer' theories, there is no evidence in the report or other supporting information on these themes. If Dietz was postulationg these theories based on his experience, he should so state and provide the appropriate supporting evidence.

## 4. The testimony of Dr. Dietz is Not the Product of a Reliable Principle and Method

As of this writing, there is no methodology as to either the rebuttal testimony against Mr. Morton, or Meloy. Only a superficial internet review of multiple deaths at military installations. Why that limitation was made into the search terms is unknown to the government, certainly there are other non-military multiple homicides in the private or governmental sector, which could have been included. Nevertheless, this was not included and the government can discern no reliable principles nor methodology in these reports.

## 5. No Principles and Methods are Reliably Applied to the Facts of the Case: Only Speculation.

The Advisory Committee Note to Rule 702, 2000 identifies several additional factors to consider when applying Rule 702. Specifically, notes (5) through (9) are applicable here: Note (5),whether the expert is proposing to testify about matters growing naturally and directly out of research the expert has conducted independent of the

litigation. Such is not the case here. Note (6), whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, this would be the case as to postulating on 'other killers' without evidence, Note (7) whether the expert adequately accounted for alternative explanations. Here, there is no accounting, only explanations. Note (8) whether the expert is being as careful as she would be in her regular professional work outside of paid litigation support. The government is neutral on this factor. And, lastly, Note (9) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinions the expert would give. There are no reliable results to give as the testimony has not produced any results, only opinion testimony. .

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." Daubert, 509 U.S. at 595 (internal quotations omitted). The judge, therefore, must also weigh the probative value and possible prejudice of the testimony under Rule 403. Id.

Here, what has been provided to the government is nothing more than information which can be covered on cross-examination. The probative value/prejudice prong is an issue however, for injecting the concept of workplace violence in the defense case, where the government won't be mentioning it, will force the government to rebut the claim in its rebuttal case. No expert is required, especially one prepared to discuss violence in the workplace absent government introduction of the concept, as to other alternative theories of who was murdered and why. As put so succinctly by Mr. Morton, *both victims were at*

*work at their usual time, and the offender chose at that time to walk into the building and basically shoot both of them to death.* Note that Morton stated, 'the offender,' chose to shoot both victims, and no more. Dietz's testimony on alternatives to that statement are offered for trial. Yet, Dietz, provides no principles or methods, nor specific experience to support that he is an expert sufficient to opine on the alternatives he lists in his report.

His testimony based on this prong of FRE 702 should fail as well.

## CONCLUSION

The defense seeks to call an expert who, by design, seems to be called for the purpose of dispelling that this was a 'workplace violence' homicide when such a claim will be absent from the government's case in chief. In that respect, such testimony should be precluded. In addition, the speculative 'other theories' provided by Dr. Dietz lack foundation, methodology, or other scientific basis and the professional foundation for these opinions are not supported by the C.V. provided to the government. To this extent, as well, Dr. Dietz should be precluded from testifying at trial.

RESPECTFULLY SUBMITTED May 1, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2019, a
true and correct copy of the foregoing was
served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney