BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:   steven.skrocki@usdoj.gov
         christina.sherman@usdoj.gov
         kelley.stevens@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 3:13-cr-00008-SLG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAMES MICHAEL WELLS ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PROPOSED DEFENSE EXPERT, DR. DANIEL REISBERG**

COMES NOW the United States of America, by and through the above-named counsel, and files with the court this motion to preclude the testimony of the proposed defense expert Dr. Daniel Reisberg, whose anticipated testimony runs afoul of Federal Rule of Evidence (Fed.R.Evid) 702.

## I. BACKGROUND

On January 11, 2019, the defendant notified the United States of their intent to call Dr. Daniel Reisberg as an expert during trial. *See* "Defense Notice of Expert Witnesses", attached herein as Exhibit 1. They mirrored their same request from the first trial and provided counsel for the government with Dr. Reisberg's initial report, where he asserts in pertinent part, that two of the government's proposed experts, Neil Schmidt and Angelo Toglia (who will provide testimony on a vehicle seen in a raw video), will render opinions that run an increased risk of error. The defense advised that Dr. Reisberg will question their credibility by alleging that they knew what outcome was expected by the United States and adjusted their opinions accordingly in order to conform to that outcome. *See* "Reisberg Report" at 10, attached herein as Exhibit 2. Further, Dr. Reisberg will testify that an individual's perception of low-quality visual inputs is also susceptible to these same biases and that a person's expectations or knowledge about what the inputs are supposed to show lead to a risk that the viewer cannot remain objective. *Id.* at 11.

As a result of the proposed testimony of their expert witness, the defense makes the ultimate argument that if the judge and jurors are first shown a digitally enhanced video of the vehicle at issue before being shown the raw video, then the jurors "will not be able to

set aside the ideas gained from the enhanced video, and . . . this will undermine the juror's ability to see what is actually in the raw video" and the judge will "over-estimate the clarity" of the raw video and his decisions will be guided by that misperception. *Id.* at 9-11, 15. In turn, the defense, "demand[s]" caution in interpreting Schmidt and Toglia's opinions and suggests that the finders of fact should eventually give less weight to their evidence. *Id*. at 10.

The United States previously moved to exclude Dr. Reisberg and subsequent motions practice ensued. *See* Dockets 312, 326, 327, 343, & 347. Following a motions hearing on March 10, 2013, the magistrate court issued an order found at Docket 354. The court found that Dr. Reisberg was qualified in his field as long as his opinion falls within his expertise but that he was not qualified in the areas of:

> work place violence, crime scene analysis, tire characteristics, film and video analysis, identification of a particular vehicle make and model, or any other area of specialty similar to experts retained by the government (specifically Schmidt and Toglia). Dr. Reisberg readily admits that he is not an expert in Honda CR-V model shapes, although he does own a CRV, nor is he an expert in accident reconstruction. He is not qualified to testify as to the proper techniques for conducting such analysis.

Docket 354 at 5. For the reasons set forth below, this Court should not permit Dr. Reisberg to testify because his opinions are not reliable, his testimony is irrelevant as it will not assist the trier of fact in deciding a fact or consequence at issue, and his testimony will undoubtedly confuse the jury, result in undue delay, and result in a trial within a trial.

//

Page 3 of 9                       3:13-cr-00008-SLG
                                  U.S. v. James Michael Wells

Case 3:13-cr-00008-SLG   Document 977   Filed 05/02/19   Page 3 of 9

## II. ARGUMENT

### a. Reisberg's Opinion Regarding Schmidt and Toglia's Ability to Render an Expert Opinion Free from the Effects of Confirmation Bias Remains <u>Unreliable</u>.

The admissibility of expert testimony is governed by Fed.R.Evid. 702. Upon qualifying a witness as an expert in a specific field, and before allowing an expert to attack the credentials, assumptions, methodology, and conclusions of another expert witness, the trial judge must resolve whether:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148–49 (1999). The trial court must determine whether the reasoning or methodology employed by the expert is reliable—that is, whether it is "scientifically valid." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-593 (1993). To make this last assessment, the trial court should consider the following nonexclusive factors, commonly referred to as the "Daubert factors:"

> (1) Whether the scientific theory or technique can be or has been tested;
> (2) Whether the theory or technique has been subject to peer review or publication;
> (3) The known or potential rate of error; and
> (4) The general acceptance of the theory or technique in the scientific community.

*Id*. at 594-595. The court emphasized that this test is "a flexible one" that focuses on scientific validity and the principles and methodology, rather than the conclusions they generate. *Id*. The defense bears the burden of establishing by a preponderance of the evidence, that Dr. Reisberg's testimony meets these requirements for admissibility.

*Daubert,* 509 U.S. at 592.

> As addressed by the magistrate court in the first trial,
>
> Dr. Reisberg basis his expertise for the purpose of this case on his knowledge and study of perception and identification procedure generally.

Docket 354 at 6. The Court further found that Dr. Reisberg,

> assumes that the government's experts were expected to reach a particular conclusion in their forensic analysis of evidence without knowing this to be the fact.

*Id*. at 8. To date, the defense has not demonstrated that Dr. Reisberg has considered any facts surrounding the methodology undertaken by the government's experts during the analysis of the video. Nor must they wait for the government to put on their case in chief to do so as both experts have testified previously during the first trial regarding the methods they employed. Problematically, despite the road map presented from the first trial, Dr. Reisberg has nonetheless failed to apply the specific facts of Toglia and Schmidt's analysis to his proposed methodology. *See United States v. Garrido-Hernandez*, 16 Fed.Appx. 630, 631 (9th Cir. 2001) (defendant "never presented sufficient evidence to establish a foundation that the proposed testimony would, in fact, constitute 'scientific knowledge.'") This decision surmises that Dr. Reisberg could not pin point specific facts during Toglia and Schmidt's testimony that would fit into his methodology and lend to his argument that their respective analyses were misguided through "confirmation bias". As such, this Court can appropriately exclude his proposed testimony as it lacks a basis stemming from sufficient facts or data.

Further, if in fact Dr. Reisberg has reviewed this first trial transcript outlining their respective processes, then the defense must provide the United States with a supplemental report. To date, the United States has received no such supplemental report and the defense has advised the United States that "[n]o supplemental report will be developed." Ex.1 at 4.

### b. Dr. Reisberg's Proposed Expert Testimony Remains Equally <u>Irrelevant</u> and Has No Bearing on Any Fact at Issue.

The opinion offered by the expert "must be sufficiently related to the facts of the case such that it will aid the jury in resolving the factual dispute." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001) (*citing Daubert*, 509 U.S. at 591. *See also Bogosian v. Mercedes-Benz of N. America, Inc.*, 104 F.3d 472, 479 (1st Cir. 1997) (finding testimony of the expert and the plaintiff must be sufficiently related). "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. It is fundamental that "evidence which is not relevant is not admissible." Fed. R.Evid. 402.

In analyzing whether an expert's opinion is sufficiently related to the facts of the case, instead of being a mere assertion without proof, the *Joiner* court observed:

> nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.

*General Elec. v. Joiner*, 522 U.S. 136, 146 (1997). Similar to the analysis for determining if Dr. Reisberg's anticipated testimony is reliable, the Court, as gatekeeper, must assess

whether his proposed testimony would make a fact in consequence more or less probable. This similarly requires application of specific facts of the case and surrounding circumstances.

To date, Dr. Reisberg's opinions are not sufficiently related to the facts of this case and lack any tendency to make the existence of a fact of consequence, to wit, whether or not the video shows the defendant's vehicle, more or less probable than it would be without the evidence. Furthermore, both experts have indicated that they based their opinions on:

> 1) "viewing the video and my familiarity with the video" and that 2) "I go through the exact same procedure whether I know what the vehicle is or not."

*See* Dockets 747 at 119 and 748 at 48. Since the defense has not provided the United States with a supplemental report, then the United States submits that Dr. Reisberg continues to rely solely on data points provided to him by the defense back in 2014. His proposed testimony speculates at Schmidt and Toglia's abilities to render their expert opinion related to topics that they, unlike Dr. Reisberg, hold specific knowledge and expertise in, and leaves a gaping hole between the data he reviewed and the opinion he offers. *See Joiner*, 522 U.S. at 146 ("[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") *See also United States v. Dotson*, 799 F.2d 189, 192–93 (5th Cir.1986) (noting that opinion testimony of "meaningless assertions" may be excluded for lack of helpfulness).

The more appropriate method for addressing potential shortfalls in the analyses conducted by the government's expert witnesses, as discussed in the magistrate Court's order at Docket 354, is through cross-examination and proper jury instruction. *See e.g.*,

*Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 471 (D. Md. 2000), aff'd, 95 Fed. Appx. 520, Prod. Liab. Rep. (CCH) P 16993 (4th Cir. 2004) (defendant can attack the credibility of the expert, and the weight of his or her opinion, intrinsically, through cross-examining the expert to expose deficiencies in his or her credibility, or in the factual bases or methodology supporting his or her opinions. It also may be done through the introduction of extrinsic evidence, either documentary or testimonial, that contradicts the expert's opinion.)

At this stage, allowing Dr. Reisberg to attack the testing methodologies employed by Toglia and Schmidt through testimony surrounding psychological principles, runs the risk of substituting the expert's credibility assessment for the jury's own common sense determination and improperly buttresses the credibility of their own expert witness charged with analyzing the video data. *See, e.g., United States v. Garcia–Ortiz,* 528 F.3d 74, 79–80 (1st Cir.2008) (Court specifically considered the "bolstering" effect of testimony by law enforcement witnesses under similar circumstances, finding error where law enforcement officer's testimony improperly bolstered testimony of another witness). In short, this would substantially outweigh any probative value by confusing the jury, causing undue delay, and resulting in a trial within a trial, in violation of Fed.R.Evid. 403.

### III. CONCLUSION

Dr. Reisberg's testimony, grounded through studies having no bearing on the instant facts of this case and articulated by way of meaningless assertions, would not assist the jury in its efforts to understand the evidence from the video or to determine a fact in issue.

Without analysis of the specific facts of this case or cases identical in nature, his testimony is simply not reliable. Further, because his meaningless assertions that Toglia and Schmidt's analyses resulted in error are not helpful to the finders of fact, serve the contrary purpose of confusing the issue, and create a trial within a trial, this Court should rule his statements inadmissible under Fed.R.Evid. 702 and 403 and exclude him from testifying at trial.

RESPECTFULLY SUBMITTED May 2, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Kelley Stevens
KELLEY STEVENS
Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2019, a
true and correct copy of the foregoing was
served electronically on:

Counsel of Record

s/ Kelley Stevens
Office of the U.S. Attorney