Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Counsel for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | Case No. 3:13-cr-00008-SLG<br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE RE: HEARSAY [971]** |

Defendant James Michael Wells, through counsel, Gary G. Colbath and Peter A. Camiel, files this response to Docket No. 971, the government's motion in limine as to inadmissible hearsay not subject to exception during opening or trial.

As an initial matter, Wells objects to the government's motion in total, save for the simple proposition that the Court should not allow either party to admit hearsay testimony at trial, unless a valid exception to the hearsay rule is applicable. The defense does not intend to violate the hearsay rule at trial and fully expects the Court to require the same of the government. For the Court to rule further at this point to the prospective offer of any particular testimony is premature and unwarranted. Defense counsel are aware of the rules and intend to follow them. Counsel would

note that it was the government and government attorneys who have been found to have engaged in misconduct and improper tactics at the prior trial that resulted in fundamentally unfair proceedings. The Ninth Circuit found no fault with the actions of defense counsel before, save for maybe not objecting enough to the egregious government tactics used to obtain an illegal conviction.

It is also noteworthy here that although the government alleges that "defense made many attempts to introduce hearsay statements or other collateral and unsubstantiated speculation as to" [a listing of various non-testimonial areas of evidence], it fails to cite the Court to a single citation from the prior record where counsel improperly elicited hearsay. It's apparent that the government would like Wells to not have an alibi, or in fact not put on any defense whatsoever, but neither of those things are going to happen at the next trial.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636. Moreover, counsel should not be limited whatsoever in opening statement beyond the normal rules of evidence and substantive pretrial rulings of the Court. The Court routinely instructs the jury in preliminary instructions before trial that what counsel says during the trial (in opening and otherwise) is not evidence. The controlling question should be the good faith or lack

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                                                      Page 2

of good faith of counsel in saying what he [says] in his opening statement and the likelihood that the opening statement was unfairly prejudicial to the [opposing party]. *Douglas v. State of Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934; *Namet v. United States*, 373 U.S. 179, 180-190, 83 S.Ct. 1151, 10 L.Ed.2d 278.

In this case, the defense will not seek to elicit out of court <u>statements</u> made by Wells through either its own witnesses, or on cross-examination, unless an evidentiary exception applicable to the particular statement exists. However, other admissible evidence, including information about Wells, his physical condition, his whereabouts at any given time, his behaviors, witnesses' perceptions of him at any relevant time, etc., all of which may directly or indirectly establish or corroborate relevant information for the jury will undoubtedly be offered.

In a prosecution brought on paper-thin evidence, replete with speculation and innuendo, the irony of this motion by the government should not be lost on the Court. Indeed, in the notice of 404(b) evidence the government has provided and throughout the briefing filed by the government regarding the same now pending before the Court, the government seeks to admit a plethora of evidence from witnesses about statements made by Wells, observations of his behaviors, "impressions" about his emotions or emotional state, and the like. Now, at the same time it seeks widespread permission for it to use such information in its case in chief, it seeks a pretrial, blanket bar on the defense from not only offering hearsay, but also, limiting opening statements, and estopping the presentation of evidence about Wells' behaviors,

travels, physical condition, others' observations of him (only the ones detrimental to the government though) and similar types of evidence that has any tendency to help in the defense. The Court should reject this motion and reserve ruling on all these matters if and when they come into existence at trial. Only then will the Court have the context and understanding to rule on the admissibility of any given piece of evidence or testimony.

The inappropriateness of this motion is perhaps best illustrated by the government's apparent fixation on Wells' wife, Nancy. In its motion, the government attributes a number of statements and information to Nancy Wells that it apparently obtained through interviews with yet other witnesses who were not called at trial. The government asserts its "concern" about Nancy's alleged statements.

First off, the Court should be aware that Nancy Wells did not testify at the prior trial, much less was there any attempt by the defense to get in statements of Wells' through his wife. Moreover, the defense did not call any witness to elicit statements made by Nancy Wells to others about the day of the murders or her husband.

The government's unfounded "concerns" about Nancy Wells are undoubtedly real, however, given its inappropriate and ethically-questionable investigative conduct relative to her. Despite the fact that she was not a witness at the first trial and had been interviewed by law enforcement previously on at least two occasions (May 7, 2012 and May 28, 2013) as well as had been present and cooperative during

the execution of several search warrants at her home during the investigation, the government has continued to try to obtain information from her to use against her husband.

To that end, on August 17, 2018, following a hearing before this Court at which Nancy Wells was in attendance, the government staged an undercover FBI agent in or near the courtroom to observe and interact with Nancy Wells. Following recess of the hearing, the agent approached Nancy and engaged her in conversation about her personal well-being and made comments about how hard it must be to "go through all this." The agent asked Nancy if she had someone she could talk to about things, and if she was in fact talking to someone about her husband's situation and the case. The agent lied to Nancy and represented herself to be some sort of victim's assistance or witness assistance person (leaving the impression she worked for the court) who was available to visit with and console her. The agent took several minutes to prod Nancy for specifics and details about who she might be talking to about the case, her husband and her feelings. It was not until Nancy indicated she was not comfortable sharing any information with this person and terminated the conversation by walking away that the encounter ended.

It's fine for the government to monitor and listen to the daily jail phone calls between Wells and his wife, and they do. The defense has received copies of hundreds of such recordings in discovery. However, accosting Wells' wife in the courthouse through the staging of a deceptive interview that leads her to believe an agent was

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG  Page 5

either an officer of the court system or witness provider smacks of "overstepping the bounds of fair play" the government crossed in the first trial. The FBI 302 documenting the incident is attached as Exhibit A to this response. Not surprisingly, whereas almost all FBI reports of interview contain the circumstances surrounding and substance of the interview being conducted, this particular document describes the entire encounter as "Non-custodial Surreptitious interview between SA Jessica Hais and Nancy Jean Wells 08/17/18." Shockingly, when this 302 was disclosed to the defense the discovery log received with the document also contained a place marker indicating the recording of the interview was "missing." The defense can only wonder why the details of the conversation went "missing" as soon as the defense requested them. The court should too.

Less no one forget the opening words of the Ninth Circuit's opinion remanding this case:

> As Justice Louis D. Brandeis warned many years ago: "The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." *Olmstead v. United States*, 277 U.S. 438, 479, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). After all, United States prosecutors are bound to appear in the name of Justice. We are of the opinion that the Government overstepped its bounds early in the pretrial process and continued to overreach during trial. The Government's actions, unchecked by the district court at critical points, so tipped the scales of justice as to render Wells' trial fundamentally unfair. Therefore, we reverse and remand for a new trial.
>     *United States v. Wells*, 879 F.3d. 900, 908 (9th Cir. 2018).

The government's "concern" about the defense following the Federal Rules of Evidence should not warrant a pretrial order by the Court, nor should its fear about

what it thinks might happen at trial that will damage its ever-so-fragile case. It won the first trial by playing unfairly, this Court should not assist it in doing so again. The motion at docket 971 should be denied.

DATED at Anchorage, Alaska this 3rd day of May, 2019.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender
*Counsel for James Michael Wells*

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on May 3, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*