Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Counsel for Defendant James Michael Wells*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAMES MICHAEL WELLS,<br><br>　　　　　　　Defendant. | Case No. 3:13-cr-00008-SLG<br><br>**MOTION TO SUPPRESS EVIDENCE DERIVED FROM INTERROGATION CONDUCTED IN VIOLATION OF FIFTH AMENDMENT** |

Defendant, James Michael Wells, by and through counsel Gary George Colbath, Assistant Federal Defender, moves this Court for an order suppressing involuntary statements obtained by the government in violation of the Fifth Amendment under *Garrity v. State of New Jersey*, 87 S.Ct. 616 (1967).

## I. FACTS OF THE INTERROGATION OF MR. WELLS

As of April 12, 2012, Jim Wells had worked for the United States Coast Guard as both an enlisted individual and in a civilian capacity for years. As such, he was subject to all of the rights and entitlements of an employee on April 12, 2012.

When Wells arrived at work at the COMMSTA sometime after 8:00 a.m. on April 12, he was directed to report to T1 so he could be interviewed by law enforcement agents. The base was placed on "lock down," and employees could not leave the building during the interviews. These

orders were given by U.S. Coast Guard command in coordination with police and investigators. Although employees would generally leave the base for lunch, they could not do so on April 12. Instead, U.S. Coast Guard command brought in box lunches and dinner. Wells and other employees were not allowed to leave the base on April 12 because of actions taken by the U.S. Coast Guard investigators to secure the crime scene at Building T2 and to interview U.S. Coast Guard workers who might have information relevant to the homicides.

Employees could leave only when the investigators—comprised of FBI and CGIS—allowed them to leave. Wells' interviews began at 7:20 p.m. He had been on lock-down at T1 for about eleven hours, since 8:20 a.m., for the express purpose of ensuring his availability for questioning. The U.S. Coast Guard regulations prohibit refusing to comply with authorities, refusing to cooperate with official inquiries, investigations, or proceedings, and refusing to testify or give oral and written statements in these proceedings. Wells had previously been advised that failure to comply with the command orders and U.S. Coast Guard regulations could result in disciplinary action, including removal from federal service.

Wells was interviewed by FBI agent Kirk Oberlander and CGIS Agent Sean Bottary. He was interviewed in a small office that resembled an interrogation room, both in size and configuration, with the door closed. He was not given an opportunity to decline to participate in the interviews. He was not advised he could leave. He was not Mirandized, nor was he advised that declining to participate in the interviews would have no adverse employment consequences. He was interviewed four times on April 12, and then directed to return the next day for further interviews, when fifth and sixth interviews were conducted. No other personnel were ordered to submit to further interviews.

During the third interview on April 12, which started around 9:05 p.m., the agents expressed concern that Wells had been in their "care" for so long and had not taken his medication. They did not offer to let him leave, though. Instead, they told him they were "wanting to cut [him] loose," but still needed to do "some follow up questions." Therefore, they offered to drive him home, go with him into his house to make sure he got his medicine, and then bring him back for further questioning. Ultimately, they finished the interviews without taking him home, but he was ordered to return the next day.

When he returned as ordered the next day for the fifth and sixth interviews, he was finally Mirandized. Even after he invoked his right to silence during the fifth interview by asking to terminate the interview, the agents required him to come back for a sixth interview. Although Wells repeatedly invoked his right to silence during the sixth interview, the agents continued to question him until he requested a lawyer. At no time during these final two interviews was Wells told that his refusal to answer questions or cooperate would not affect his employment status with the U.S. Coast Guard.

## II. ARGUMENT

The Fifth Amendment protects against compelled self-incrimination prohibiting the use of statements obtained under threat of loss of government employment in criminal proceedings. *Garrity*, 87 S.Ct. at 620; *see also, Minnesota v. Murphy*, 465 U.S. 420, 434 (1988); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of N.Y.*, 392 U.S. 280, 284 (1968); *Gardner v. Broderick*, 393 U.S. 273, 278 (1968). There are two choices for a government employer when questioning an employee about potentially criminal conduct. First the government employer can require participation as an obligation of being an employee, but then the employer cannot use the employee's statements or their fruits against him in a criminal prosecution. *Kalkines v. United*

*States*, 200 Ct. Cl. 570, 463 F.2d 1391 (Ct. Cl. 1973). Alternatively, for the government employer to preserve its ability to use any statements in a criminal prosecution it must advise the employee that the interview is voluntary and that he will not be disciplined for refusing to answer questions. *Garrity*, 385 U.S. at 500.

If the government employer does not provide that advisement, "the *Garrity* warning," any statements the employee makes are automatically immunized from use in criminal proceedings. *United States v. Saechao*, 418 F.3d 1073, 1077 (9th Cir. 2005) (citing *Murphy*, 465 U.S. at 435); *Garrity*, 385 U.S. at 498-99. The Fifth Amendment is self-executing in this context; that is, where an individual faces a penalty for exercising the privilege, he does not waive the privilege by responding to questions rather than standing on his right to remain silent. *Saechao*, 418 F.3d at 1077; *Garrity*, 385 U.S. at 498-99.

Wells was ordered by his Command to participate in the interviews with the FBI and the USCGIS. He could not leave until the investigators were done with him. He was never advised he would not be disciplined for asserting his Fifth Amendment privilege. Because all his statements were given under threat of disciplinary action up to and including the removal from federal service, they were involuntary and should be suppressed.

Government employers are subject to the Fourth Amendment and, when they search or seize an individual for the purpose of criminal investigation, the same rules apply to them as to law enforcement officers. This Court should consider whether the Miranda warnings provided after the first set of interrogations were ineffective. Wells' Fifth Amendment privilege against compelled self-incrimination was self-executing, as his statements were given under threat of discharge. Although somewhat addressed by the Ninth Circuit's addendum opinion, *United States v. James Wells*, 719 Fed. Appx. 587 (9th Cir. 2018), Wells' specific claim under *Garrity* was NOT

ruled on or considered by the Court as the government argued, and the Court apparently found, that it was not previously raised. Wells does so now.

The government must show Wells' submission to questioning was voluntary, "a burden that is not satisfied by showing a mere submission to a claim of lawful authority.'" *United States v. Cuevas-Ceja*, 58 F.Supp.2d 1175, 1186 (D.Or. May 14, 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)). The government has the burden to persuade the Court the seizure came under one of a few specifically-delineated exceptions to the warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). And the government has the burden to prove Wells' statements were not the fruit of an unlawful seizure. *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011).

United States Coast Guard regulations required cooperation in investigations and that failure to comply is an offense punishable by removal from federal service. Prior to the time of the interviews Wells had been specifically cautioned future instances of misconduct could lead to his removal from federal service. If, in addition, his statements were admissible in a criminal prosecution, then he faced the forbidden choice "between self-incrimination and job forfeiture." *Garrity*, 385 U.S. at 496. This crossroads is precisely where his employer, the U.S. Coast Guard, and the FBI put him. That is, the very fact he could have been fired for refusing to cooperate is what made his Fifth Amendment right self-executing. For this reason his statements should be suppressed.

## CONCLUSION

Wells' claim under *Garrity* was not raised below, nor is it precluded by the Ninth Circuit opinions here. His employer compelled him to participate in interviews long after he had been warned that any future failures to follows orders could result in termination. Neither his employer,

nor law enforcement warned Wells, before, during, or after the interviews, that assertion of his Fifth Amendment right would not subject to him to adverse employment consequences. Thus, Wells suffered the very harm *Garrity* seeks to avoid. Therefore his statements made during employer-ordered, criminal investigation interrogations should be suppressed.

DATED this 7th day of May, 2019.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender
(907) 646-3414
gary_colbath@fd.org

Certificate of Service:

I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on May 8, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.

/s/ Gary G. Colbath