Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA  98101
(206) 624-1551
petercamiel@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-CR-00008-SLG |
| Plaintiff, | ) ) | RESPONSE IN OPPOSITION TO |
| v. | ) ) ) | MOTION TO PRECLUDE TESTIMONY OF DR. DANIEL REISBERG DOC. 977 |
| JAMES MICHAEL WELLS, | ) ) | |
| Defendant. | ) ) | |

Defendant Wells through counsel Peter A. Camiel and Gary Colbath file this response to the government motion to preclude the testimony of Dr. Daniel Reisberg. The government has moved to preclude the testimony of Dr. Reisberg, a Professor of Psychology and Department Chair at Reed College.

If called to testify in this case, Professor Reisberg will testify, first, about the broad phenomenon of confirmation bias, and, specifically, about the role of confirmation bias in forensic analyses, and, with that, the increased risk of error if

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--1*

a forensic analysis is conducted by someone who knows what outcome is expected by the party that has retained the relevant expert. Professor Reisberg will also discuss the steps one can take to avoid confirmation bias, and thus the types of investigation that are less vulnerable to confirmation bias.

Second, Professor Reisberg will also testify about how someone's perception of low-quality visual inputs can be altered (and in some cases, distorted) by the person's expectations or knowledge about what the inputs are 'supposed to' show. This testimony is particularly relevant in this case where the government intends to use reenactment videos using the Wells Honda CRV to convince the jury that the vehicle seen in the low resolution blurry T-1 video is the Wells vehicle.

Here, Professor Reisberg will focus on so-called "top-down" influences on perception, a term referring to the processes in which knowledge and expectations can powerfully shape what we see. He will also discuss issues related to these "top-down" effects, including (a) the degree to which one cannot reverse these effects (and so cannot return to a 'neutral' perception, once one has learned what a display supposedly shows); (b) the degree to which an initial (top-down) perception of a display can undermine perceptual accuracy, making it more difficult to perceive what is actually present; (c) the evidence that someone, knowing what a display is "supposed to show," will mistakenly believe that others, viewing the display 'naively' *(i.e.,* without foreknowledge), would see the same patterns.

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--2

In the previously issued order regarding the government's motion *in limine* as to Dr. Reisberg [doc. 354] the court *did not* prohibit Dr. Reisberg's testimony but held that "the defense must present or rely upon admitted evidence to establish a foundation that Dr. Reisberg's testimony would be helpful to the jury." The Court further determined that Dr. Reisberg's theory about confirmation bias "has been sufficiently tested and subjected to peer review." The Court's caveat was that "At present, it has not been established that he has sufficient knowledge of the relevant facts to testify that the procedures used by messieurs Schmidt and Toglia were overly suggestive of an outcome or unreliable." The defense did not seek to have Dr. Reisberg testify at the first trial and therefore there was no final ruling on Dr. Reisberg's testimony.

Since the first trial, Dr. Reisberg now has the benefit of the first trial transcripts including the testimony of government experts Toglia, Schmidt and others. He also has the benefit of research that has been conducted since 2014 on the topic of confirmation bias in forensic settings that further confirms his previous opinions.

In the previous court order at footnote 1, the court found that "Dr. Reisberg wrongfully assumes that the government intends to show the jury a digitally enhanced video which could influence their perception and assessment." In fact, at the trial that is exactly what occurred when the government showed the jury a video reenactment using only the Wells' Honda CRV and when the government used a computer-generated model- overlay which placed the Wells Honda CRV over the image of the blurry blue vehicle in the original video. Thus, as a starting point in evaluating the

admissibility of Dr. Reisberg's testimony the Court should be on notice that the original order was based on incorrect information and still the Court found that Dr. Reisberg was well qualified and that his testimony may be admissible.

### Dr. Reisberg's Qualifications

The Court found that Dr. Reisberg has extensive experience and expertise in witness memory and confirmation bias.

> Dr. Reisberg is a research psychologist with a Ph.D., in experimental psychology from the University of Pennsylvania in 1980. He is presently the chair of the Psychology Department at Reed College in Portland, Oregon. For more than two decades he has focused on the completeness and accuracy of human memory by means of laboratory experiments and field studies. He has done extensive writing about memory including the psychological processes involved whenever someone is making a judgment about evidence. He teaches courses that cover such material. In addition, he has consulted extensively with attorneys and law enforcement, and provided seminars with and for attorneys in the Oregon State Bar as well as training sessions for detectives in the state of Oregon. He has frequently testified on the issues of witness memory and confirmation bias in federal court and state courts in Oregon, California, and Washington. Docket 343-1, p.2. In one case the issue focused on a low-quality surveillance tape. The topic of confirmation bias is covered in a book Dr. Reisberg has written and in press to be published by Oxford University Press. *Id.* p.2. In light of the general acceptability by courts of personal experience, training, interviews and research for becoming an expert in one's field, this court finds Dr. Reisberg's methodology acceptable as long as his opinions fall within his expertise. (Doc. 354 p. 5)

The Court held that Dr. Reisberg has no expertise in work place violence, crime scene analysis, tire characteristics, film and video analysis, identification of particular vehicle make and model, or any other are of specialty similar to expert retained by the government and thus he is not qualified to testifying as to the proper techniques for conducting such analysis. The defense is not proffering Dr. Reisberg as an expert in

any of these areas and is not intending that he testify in those areas. Instead, his testimony will cover the general topic of confirmation bias in the area of forensic science, and the suggestibility of photo identification and he will offer testimony, based on the evidence introduced by the government experts regarding factors that may bias those expert's analysis.

Dr. Reisberg has previously testified in *State v. Almaraz*, 301 P.3d 242, 257-59 (Idaho, 2013) about the suggestibility of photo displays to witnesses. Dr. Reisberg also testified in *United States v. Beck,* 418 F.3d 1008 (9th Cir. 2005) about the suggestibility of the methodology used in a photo spread. In *Almaraz,* the appellate court found it was error to preclude Dr. Reisberg from providing testimony about the suggestiveness of a police interview that preceded a photo display. The Idaho Supreme Court stated:

> Here, the district court abused its discretion when it ruled that Dr. Reisberg could not testify about the specific procedures used in Hust's interview. In making its ruling, the court excluded the testimony as invading the province of the jury without making a determination as to whether it would have assisted the jury. The district court was correct that expert opinion testimony as to the accuracy of Hust's identification would invade the province of the jury, but Dr. Reisberg's testimony was not an opinion as to Hust's credibility. Rather, Dr. Reisberg would have testified about the specific instances of police suggestiveness, which would have been helpful to the average juror's understanding of whether the interview was conducted in an overly suggestive way. Courts should not overly restrict expert testimony that assists the jury. *Id* at 301 P.3d at 258

There is substantial literature on confirmation bias. See R. Nickerson (1998), "Confirmation Bias: A Ubiquitous Phenomenon in Many Guises," 2 *Rev. of Gen. Psych.*, 175, 177. Kassin, S. M., I.E. & Kukucka, J. (2013) The forensic

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--5

confirmation bias: Problems, Perspectives, and Proposed Solutions. JOURNAL OF APPLIED RESEARCH IN MEMORY AND COGNITION, 2, 42-52. Kassin, S. M., Goldstein, CJ., & Savitsky, K. (2003). Behavioral confirmation in the interrogation room: On the dangers of presuming guilt. LAW AND HUMAN BEHAVIOR, 27, 187-203. Dr. Reisberg has also published a book "The Oxford Handbook of Cognitive Psychology," Oxford Press, (2013) that extensively covers the topic of confirmation bias.

Dr. Reisberg's testimony is particularly relevant to the way in which the government sought to have the vehicle in the T-1 video identified. In this case, the government first went to photo/video experts asking them if the they could identify the vehicle in the surveillance video without telling the expert they suspected the vehicle to be the Wells Honda CRV. Three experts advised that the quality of the video was so poor that they could not determine the make, model or characteristics of the vehicle. (Iber, Richards, Vorder Brugge) The government then went to another group of experts who the government will be calling at trial and asked them if they could determine whether the vehicle in the video was the Wells CRV. With that different question posed, making clear who the government's suspect was, those experts gave the government the answer they were seeking.

This methodology used by the government is strikingly similar to using a one-person photo display with an eyewitness. For example, if there were a blurry bank robbery photograph of a bank robber in the bank lobby, and the police asked a robbery witness to view a photo of a single suspect placed in the bank lobby in the same

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--6

position as the robber in the actual robbery, such would clearly be deemed impermissibly suggestible. That is what happened here.

In this case, government expert Vorder Brugge testified that he was provided with the April 12, 2012 T-1 video of the suspect vehicle, but at the same time was provided with the April 19, 2012 reenactment video that used the Wells CRV. RP 2342 He was specifically asked if the known vehicle could be identified as the questioned vehicle. RP 2346 Government expert Toglia was also sent video from not only April 12, but also the April 19 reenactment video. RP 2481 Toglia created his computer-generated models using what he was told was the suspect vehicle in the April 19 video reenactment video. RP 2350 Similarly, government expert Schmidt who works for Honda was approached by the government and asked if he could identify the vehicle in the April 12 video. RP 2365 At the time Dr. Reisberg issued his report, he did not have the benefit of Schmidt's testimony and therefore he wrote:

> We do know that Schmidt was interviewed over and over, and we know that he was told the "purpose of the interview," but have no details about what exactly he was told. Given that his position ~ at Honda (as a Technical Specialist), he surely knew that the FBI suspected that the SUV might be a Honda (why else would they be approaching him?), and the FBI's multiple returns to him (I count at least four interviews) must have made it clear to Schmidt that the FBI thought it reasonably likely that this notion (that the SUV was a Honda) was a promising option within their investigation (Reisgberg report p. 7)

Schmidt's trial testimony confirms Dr. Reisberg's opinion. Schmidt was asked:

> Q: And it was clear that they were looking to identify this blurred image as a Honda CR-V. Is that correct? That was your -- that's what they asked you to do?
> A: They wanted -- yeah, if I could determine if the vehicle in the video was a Honda CR-V. Correct. (RP 2374)

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--7*

As for government expert Toglia, Dr. Reisberg wrote:

> Toglia's report makes it clear that he understood the FBI to be especially interested in the possibility that the unknown car was a Honda. In other words, his report makes it clear that the FBI did not approach him asking, in a neutral, open-ended way: "Can you figure out what car this might be?" Instead, they apparently put a possibility in front of him from the start: "Is the car a CR-V?"

Toglia's report in fact states that among the items he was provided by the government before he started his analysis was not only the T-1 April 12 video but also the April 19 re-enactment video and still photographs of the Wells' Honda CRV.

The government has now added two new experts, Lalit Mestha, and Steven Becker. Mestha has issued a report entitled "Color Analysis of Suspect and Known Vehicles" where he was also provided with the April 12 T-1 video and the April 19 reenactment video that only used the Wells Honda CRV and still photographs of the Wells Honda. Becker's report begins with what he believed to be his role:

> The purpose of my investigation is to analyze the surveillance videos to determine the make and model of a vehicle of interest and if it is consistent with Wells' 2001 Honda CRV. (Becker Report p. 1)

It is clear that each of the government experts being called to give opinions about the T-1 video were shown the Wells vehicle before they had even begun their analysis.

Dr. Reisberg's testimony will not invade the province of the jury on credibility but will educate the jury about the phenomenon of confirmation bias in forensic setting

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--8

and factors that could lead to confirmation bias. Dr. Reisberg clearly indicates that he is not opining the government experts are mistaken. He writes that "My evaluation here is simply that there is a substantial risk that their evaluations have been compromised by confirmation bias, and this point I believe, demands caution in interpreting their evidence…"

The government complains that Dr. Reisberg has not considered any facts surrounding the methodology untaken by the government experts during analysis of the video. That is not true. Dr. Reisberg has received the reports prepared by the government experts and now he has also received transcripts of the trial testimony of the government experts. The government also cites to Toglia's and Schmidt's testimony that whether they know what the suspect vehicle is does not impact their decisions. This is precisely why Dr. Reisberg's testimony is needed. Just because the expert now claims that having knowledge of the suspect vehicle before they performed their analysis did not impact them does not make those claims true. This is because confirmation bias is often not recognized by forensic experts.

The Court noted in the previous order that:

> Although Dr. Reisberg's proposed testimony in the instant case would not address eye witness testimony of the defendant, it would address factors that have an adverse effect on the reliability of the government witness's identification of a vehicle closely associated with the defendant and his alibi defense. (doc. 354 p. 9)

Ultimately, the Court ruled that:

> The extent of Dr. Reisberg's testimony can be addressed by the court if and when it arises during trial. Courts should not overly restrict testimony that assists the jury. (doc. 354 p. 11)

All of the government's challenges to Dr. Reisberg go to impeachment, not to admissibility of his testimony. Dr. Reisberg's testimony is relevant to a defense attack on the government investigation, will assist the jury in understanding a fact in issue- whether the investigation in this case was biased, and is reliable.

## DAUBERT AND F.R.E. 702

The Ninth Circuit Court of Appeals recently summed up *Daubert* and its progeny in *Murray v. Southern Route Maritime SA,* 870 F.3d 915, 922-23 (9th Cir. 2017):

The Court in *Daubert* . . . constructed a flexible test examining the "reliability" and "fit" of the offered expert testimony. See *Id.* at 589-92, 113 S.Ct. at 2786. The question of reliability probes "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93, 113 S.Ct. 2786. To give shape to the inquiry, the court identified four' factors that may bear on the analysis: (1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community. See *Id.* at 593-94, 113 S. Ct. 2786. But the Court was quick to emphasize that the factors are not "a definitive checklist or test" and that the reliability analysis remains a malleable one tied to the facts of each case. *Id.* at 591, 593, 113 S.Ct. 2786. Later cases have reiterated that the *Daubert* factors are exemplary, not constraining. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Id.* at 159, 119 S.Ct. 1167 (Scalia, J., concurring) ("[T]he *Daubert* factors are not holy writ...").

The *Daubert* factors are not "equally applicable (or applicable at all) in every case." *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 13176 (9th Cir. 1995). Applicability "depend[s] on the nature of the issue, the expert's particular

expertise, and the subject of his testimony," *Kumho Tire Co.,* 526 U.S. at 150, 119 S. Ct. 1167 (citation omitted). A district court may permissibly choose not to examine factors that are not "reasonable measures of reliability in a particular case." *Id.* at 153, 119 S. Ct. 1167

A court has broad discretion to admit expert testimony if it meets the requirements of Federal Rule of Evidence 702. *See United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001) (noting the court's broad discretion to assess the relevance and reliability of expert testimony); Fed R. Evid. 702. Under Rule 702, a witness who "is qualified as an expert by knowledge, skill, experience, training, or education" may testify as an expert if: (1) "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) the witness "has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702.

At issue in this case is whether, because of the way the government approached and informed its experts regarding the T-1 video, the expert analysis is vulnerable to confirmation bias. Testimony of this issue is thus relevant and helpful to the jury's understanding of the evidence.

## CONCLUSION

A review of Dr. Reisberg's qualifications and report demonstrates that he is a qualified expert in his field, that the materials underlying his opinions are reliable, and his methodology in formulating his opinions here is sound. His

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--11

conclusions will be helpful to the jury in determining the whether the government investigation and the testimony and evidence presented at trial may be infected by confirmation bias. Dr. Reisberg's testimony highly relevant testimony should be admitted.

DATED this 14th day of May, 2019.

/s/Peter A. Camiel
Peter A. Camiel WSBA 12596
Attorney for Defendant Wells

/s/ Gary Colbath
Gary Colbath
Assistant Federal Public Defender

**Certificate of Service**

I hereby certify that on the 14th day of May, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

/s/Peter A. Camiel
Peter A. Camiel

RESPONSE IN OPPOSITION TO MOTION TO PRECLUDE DR. REISBERG
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--12*

Case 3:13-cr-00008-SLG   Document 993   Filed 05/14/19   Page 12 of 12