BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:  steven.skrocki@usdoj.gov
        christina.sherman@usdoj.gov
        kelley.l.stevens@uscg.mil

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>   vs.<br><br>JAMES MICHAEL WELLS,<br><br>                  Defendants. | )<br>)<br>)<br>) No. 3:13-cr-00008-SLG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY OF THE UNITED STATES TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE RE: HEARSAY NOT SUBJECT TO EXCEPTION**

The United States submits the following Reply to the Defendant's Response to the Government's Motion in Limine Re: Hearsay Not Subject to Exception.

A. **Overview**

The defense response to the government's motion in limine attempts to limit the government's motion to instances of improper hearsay. The motion filed by the United States was broader in scope, and for good reason, as by force of sheer repetition, beginning in the defense opening statement itself, the defense attempted to plant the fact, without any substantive and/or admissible evidence in support of it, that Wells used the bathroom at Servant Air, Kodiak Airport, for 25 to 30 minutes as an alibi the morning he committed the murders or Richard Belisle and Jim Hopkins. As stated in the United States' Motion in Limine.[1]

> *During the first trial, defense made many attempts to introduce hearsay statements **or other collateral and unsubstantiated speculation** as to defendant's use of restroom facilities prior to returning to his home, medication use which caused diarrhea, surgery which caused diarrhea, or other self-serving statements in an attempt to elicit and enter into evidence, non-permissible hearsay that the defendant was somehow suffering from diarrhea and had to make an emergency restroom stop at some heretofore unknown location.*

(Docket 971, pg. 2)

While the government, as it said earlier, thoroughly respects the right of the defendant to mount a vigorous defense, there are rules which both parties must abide. Claiming as fact, as was done in the defense opening statement in the prior trial, that the

---

[1] The United States incorporates the facts and authorities provided in its opening brief at Docket 971, et. seq., as if fully incorporated herein.

U.S. v. Wells  Page 2 of 9
3:13-cr-00008-SLG

defendant stopped to use the restroom at Servant Air for half an hour, with no evidence to support that alibi, is one of those situations which requires monitoring during a trial. It is possible that Mr. Wells, for the first time ever, will publicly state this alibi to be the case. To date, he has not done so and until now, there is only hearsay from Nancy Wells and a trial record where prior counsel tried and tried again to insert the diarrhea/Servant Air stop as an alibi. It appears that the Servant Air alibi is also part of this case, and in light of the defense claims in opposition of a lack of trial record citations, the United States provides the following examples establishing how that could be the case.

B. Supplemental Facts on the Diarrhea Defense

In the defense opening statement, not much time passed before counsel claimed, as an alibi, that the defendant had gall bladder surgery with a:

> '*different problem that's not uncommon when you have a gall bladder removed, and that is chronic diarrhea, and it may last for a couple of months. Not everybody gets it, but Jim suffered from that. For the first few months after his operation, he had to deal with chronic diarrhea.*'

(Docket 730, pg. 47, T.R. 265).

The opening continued with an alibi just like the one postured for this trial: That Mr. Wells had an attack of diarrhea and used the restroom at Servant Air that morning. Counsel stated:

> *He's on his way to the airport. We can show that No. 6 again. As he's going to the airport and he goes by—probably just after you see him go by the main gate at 6:48, he notices his tire is low, it's not handling just right. So instead of coming this way to work, he's going to check his tire. He pulls right in here to the Comfort Inn parking lot.*

> *He see—he gets out of his car. He that there is---the tire is low.* **But the other thing he is experiencing at that time is chronic diarrhea, and when it hits, he's got to find a restroom.**
>
> *Well, he's – up here is Servant Air. Servant Air is a more local air taxi…*
>
> *Jim has been there a number of times mainly because his wife, who works with the Kodiak Area Native Association, would fly out of there many times to different places in her work. So he knew that. He knew that at 7 o'clock in the morning it was wasn't going to be busy. He knew there was a restroom in there, and he had to use the restroom.*
>
> *And with the diarrhea he had, the effects he had from the gall bladder surgery, he was there maybe 20 or 25 minutes in the restroom, and got back, drove back toward his house.*

Opening Statement by Defendant: Docket 730, pgs. 50-51, T.R. 268-269.

As noticed in the government's motion, Servant Air is included as an alibi to the defendant's location the morning of the murders. (See, Docket 971, Exhibit 1, whereabouts up to 7:22 a.m. "to include the offices of Servant Air")

In addition, during trial the defense also elicited from the defendant's physician that the defendant was allegedly suffering from 'well-known' side effect(s) of the medication.' Docket 750, pg. 14 T.R. 2721. Still later, defense counsel directly asked the physician about the prescription Metformin, which was being prescribed to the defendant. The exchange went as follows:

Defense: How about Metformin? Do you recall back in 2012, were you still prescribing him Metformin?

Dr. Gan: Yes

Defense: And was that still a potential cause of diarrhea that he complained about?

Dr. Gan: Yes, I remember seeing records that he was taking it.

Defense: And all through the first part of 2012?

Dr. Gan: Yes.

On redirect examination, Mr. Curtner asked the following question on direct examination: *And do you recall in those records that he indicated that Metformin caused severe diarrhea, and that was in 2012, sometime in 2012. Wasn't that right?*

Dr.Gan: Yes.

Docket 750, pg. 14 T.R. 2721.

This witness, the defendant's physician, Dr. Gan, was the defense's first witness in their case.

With another witness, Mr. Hank Penington, the defense elicited that the defendant was having medical issues, to which Mr. Pennington stated '*diarrhea*' (Docket 753, pg. 20, T.R. 3110). including that diarrhea was the reason of cancelling a holiday dinner party. (Ibid) As it turned out, on cross-examination, Mr. Pennington's information about the defendant's diarrhea was hearsay. (Docket 753, pg. 27, T.R. 3117).

In fact, the diarrhea issue became so great in the first trial that extensive argument was undertaken before the government's rebuttal case. This was so because the defendant made mention of it in opening statement, and during the trial through other witnesses. (Docket 75, pg. 69-86, T.R. 3582-3599). Judge Beistline commented on it several times, stating, *"I know we've been talking about diarrhea a lot, there's no question about that."*

(Docket 753, pg. 72, T.R. 3585). "*Diarrhea everywhere. I agree with that*. (Docket 753, pg. 75, T.R. 3588).

As the court can see, the diarrhea alibi to account for the missing half hour of time loomed large in the first trial. Apparently, it will again due to the notice of the stop at Servant Air. It is no accident that the Wells selected this facility as this facility did not have any video recording system, and was the only alibi-filling excuse available for the defendant's lack of an answer to questioning by investigators about his whereabouts once he traveled beyond the main gate.

What is notable here, however, is there was absolutely no evidence the defendant stopped at Servant Air, Island Air, Alaska Airlines or anywhere else the morning he committed double murder to use a restroom. There is, similarly, no evidence of diarrhea 'hitting' him to force him to stop to use a restroom that morning. Ironically, after all the evidence and argument about diarrhea and planting that seed, including making clear and specific statements in opening statement, there was no mention of it in closing argument despite the repeated attempts to enter it into evidence. (See defense closing argument, Docket 756, 77-172, T.R. 3796 to 3891).

C. **Argument**

There are no direct nor circumstantial facts that the defendant was suffering a diarrhea episode the morning he committed the murders, no evidence he stopped anywhere that morning to use a restroom at Servant Air, or any other place, and, when given the opportunity to explain by investigators, despite several interviews, he failed to

U.S. v. Wells   Page 6 of 9
3:13-cr-00008-SLG

mention stopping at any restroom. What is in evidence is the defendant's efforts the day *after* the murder to locate a restroom at the Kodiak Airport without surveillance videos as those with surveillance cameras which disprove his story. Of course, the only business without surveillance cameras in use at that time was Servant Air.

As mentioned in the government's prior brief, Nancy Wells is credited with spreading the diarrhea defense, and more, around Kodiak, and nobody else. The whole point of the government's motion is to highlight that the only person who can at trial state factually anything about diarrhea 'hitting him' and forcing him to use the Servant Air facilities is the defendant himself. As of now, the defense have not produced any witness who states he or she saw Wells that morning using the facilities, entering or exiting Servant Air or otherwise at the time of the murders. There is no foundation for this argument absent more.[2]

### D. Conclusion

The government is completely comfortable with the factual strength of this case. It need not respond to defense characterizations of it, or cast aspersions upon actions of the prior trial teams or this trial team. Facts, however, are facts. Defense counsel assigned to this case are seasoned, vigorous, and respected by the United States. It is abundantly clear Mr. Wells has competent and strong counsel to represent him who are utilizing their

---

[2] The defense segues after 3 pages into a launch on government activity as it concerned Nancy Wells. If the defense wishes to file a motion on that activity seeking some type of remedy it is free to do so. The Nancy Wells complaint consumes the other half of the 7 page brief, with no relevance to the issue of alibi. Moreover, the defense brief fails to include that as soon as this trial team was noticed on the missing recording, it immediately provided a recording to the defense.

commendable skills in defending their client. The United States is just as respectful of the rights guaranteed to any defendant in a criminal case to mount a vigorous defense as enshrined in the United States Constitution. Still, it is the obligation of the United States to protect its own trial interests, the interests of the victims and of the citizenry by alerting this court to possible issues with the attempted submission of evidence, argument or possible defenses which have no foundation, however assertively promoted. The defense would do no less.

In this circumstance, Mr. Wells is in desperate need to plug a 34 minute gap explaining where he was from the time his white Dodge truck passed the USCG main gate camera as he drove it toward the rigger shop, to the time his white Dodge truck was captured by the camera as James Wells drove toward home after murdering Messrs. Belisle and Hopkins. During that 34 minute timeframe, Richard Belisle and James Hopkins were quickly murdered in cold blood by James Wells at close quarters with a .44 caliber pistol. If Mr. Wells has an alibi as to where he was during that 34 minute time, said alibi can only be admitted in accordance with the Federal Rules of Evidence. It cannot come from hearsay, it cannot come from his wife, and it cannot come from remote inference built upon remote inference without foundation in fact. That is the basis of the government's motion, nothing more.

//

//

U.S. v. Wells									Page 8 of 9
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 997   Filed 05/14/19   Page 8 of 9

RESPECTFULLY SUBMITTED May 14, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2019, a true and correct copy of the foregoing was served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney

U.S. v. Wells     Page 9 of 9
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 997   Filed 05/14/19   Page 9 of 9