Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA 98101
(206) 624-1551

petercamiel@yahoo.com


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-CR-00008-SLG |
| | ) | |
| Plaintiff, | ) | MOTION TO PRECLUDE |
| | ) | TESTIMONY OF NEIL SCHMIDT |
| v. | ) | |
| | ) | |
| JAMES MICHAEL WELLS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SPEEDY TRIAL STATUS**

A period of additional excludable delay under 18 U.S.C. § 3161(h) will NOT occur as a result of the filing this motion as this motion will not result in any delay of trial as the Court has ruled this a complex case and has set trial for September 9, 2019, taking into account any pretrial motions that will be filed in this case.

# MOTION

James Michael Wells, through counsel Peter A. Camiel and Gary Colbath moves to preclude government expert Neil Schmidt from giving testimony as to his opinion about the vehicle depicted in the T-1 surveillance video. Schmidt is not qualified under F.R.E. 702 to provide such testimony, his testimony is not reliable and does not meet the requirements of *Daubert v. Merrill Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993).

## Background Facts

The government's hypothesis placed Wells in his wife's car, a Honda CR-V driving up Anton Larson road near the T-2 rigger shop just after 7:00am on April 12, 2012 at about the time of shift change. Yet, no one saw him. Even after the government posted photos of both Wells' and his wife's cars in the local paper, no one reported having seen him between the airport and the T-2 building near the time in question. Nor were multiple expert forensic image examiners able to confirm that the blurry surveillance video depicted a Honda CR-V. (RT 2339-2362, 2539-2533, 3307- 3344). Instead, the government turned to a Honda "technical specialist" and "automotive enthusiast" to testify that there was a 70 percent chance the vehicle was an early model Honda CR-V like Nancy Wells'. (RT 2367-2368).

The government's expert witness disclosure lists "Neil Schmidt: Technical Specialist, Honda" Schmidt has an engineering degree. He has worked for Honda

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--2*

for over twenty years. His experience at Honda includes close to 10 years in service engineering, helping dealers fix cars, writing service bulletins, and analyzing broken parts. More recently he began working with the Honda legal department. (RP 2363) At the time of the first trial he worked as a technical specialist investigating lawsuits against Honda products. (RP 2364) Most of his work in the Honda legal department involved warranty and lemon law issues. (RP 2373) Schmidt also claimed to be an automobile enthusiast. He was proffered at the first trial by the government "as an expert in Hondas, and with his associated knowledge of related vehicles."(RP 2365)

The FBI sent Schmidt the T-1 surveillance video and also the government manufactured April 19, 2012 video using the Wells' Honda CR-V. They also provided him with the VIN number of the Wells' Honda. From those materials, Schmidt was asked if the vehicle in the T-1 video was a Honda CR-V. (RP 2374)

Schmidt testified that he was "70 percent certain" that the vehicle in the T-1 video was a Honda CR-V. (RP 2367, 68, 72) He was never able to explain how he arrived at the 70 percent number. He did testify that he could not be 100 percent certain that the vehicle was a Honda CR-V (RP 2368) He also testified that if he included the Ford Escape, Toyota Rav 4, or Hyundai Santa Fe his estimate would be in the 90 percent range. (RP 2372) He based his conclusion on the size, shape, proportion and color of the vehicle in the T-1 video. (RP 2367)

Schmidt had never testified as an expert before in trying to identify a

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--3

vehicle from a blurred image.  (RP 2373) There is no evidence that Schmidt has

ever testified as to a vehicle's identification in any case outside of this case. There

is no evidence that Schmidt has ever even consulted in law enforcement

investigations or litigation involving the identification of a vehicle.

Schmidt's first trial testimony made clear that he understood from his very

first interview with the FBI that they wanted him to determine if the vehicle in the

T-1 video was a Honda CR-V.  (RP 2374) The FBI provided him with the Wells'

Honda VIN number from which he looked up the color of the vehicle with that

VIN. (RP 2375) At his first interview with the FBI he told them he could not be

sure what the vehicle was. (RP 2374)  At the second interview he told them it

could be a Honda CR-V, but also could be a Rav 4, Santa Fe, or Escape. (RP

2376) At his third interview, the FBI showed him the government-created April 19

video which used the Wells' Honda CR-V.  (RP 2376) Schmidt confirmed that the

April 19 video was of better quality in that "it was easier to see" the vehicle in the

recording. (RP 2377)  It was at this point that Schmidt came up with the 70%

certainty number. (RP 2377)  Schmidt also indicated there were 22 models of

vehicle that had similar size, shape and proportions.  (RP 2377)

Wells objected to Schmidt in a pretrial motion but did not renew his motion

challenging Schmidt at trial.  The Ninth Circuit found that the Magistrate Judge

did not abuse his discretion in allowing Schmidt to testify. *United States v. Wells,*

879 F.3d 900, 934 (9th Cir. 2017)  The defense challenge to Schmidt in the first

trial only went to his qualifications to identify the Honda CR-V and not to the methodology in reaching his 70 percent certainty opinion.

## ARGUMENT & AUTHORITIES

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court held that trial judges are required to act as gatekeepers to exclude unreliable expert testimony. Six years later, the Court held that those principles apply to all expert testimony, not just scientific expertise. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Federal Rule of Evidence 702 was amended in 2000, after *Daubert* and *Kumho*.

Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

If an expert witness is relying solely or primarily on experience, then the witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

Neil Schmidt is not a percipient witness to anything in this case and

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--5*

therefore, his testimony must meet the requirements of F.R.E. 702 and *Daubert.*

Schmidt appears to be relying exclusively on his experience in working at Honda,

but that work was not in the field of vehicle identification but in the area of

product liability, warranty issues and lemon law issues. Moreover, Schmidt has

yet to explain why that experience is a sufficient basis for his 70 percent certainty

opinion on the identification of the vehicle in the T-1 video, and how he went

about reaching that numerical conclusion.

Schmidt did not prepare a report. Instead the defense was provided with

FBI 302's of interviews with Schmidt. Neither in those interviews, nor at trial,

was Schmidt able to provide foundation, scientific methodology, or research based

analysis to support his opinions that he is 70% certain the vehicle in the T-1 video

is a Honda CR-V.

**Schmidt's Opinions Are Not the Product of Reliable Principles and Methods**

Schmidt's testimony contains no explanation of the principles or

methodology that allows him to reach the opinions set forth above. He gives no

explanation as to how he came up with the numerical percentage of 70 as opposed

to any other percentage. All he could say was that his opinion was based on

"viewing the video and my familiarity with the vehicle." (RP 2378) Second,

Schmidt's conclusion—there was about 70 percent chance the depicted vehicle

was an early generation Honda CR-V—was purely subjective, rather than being

based on any identifiable, much less reliable, principles and methods.

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--6*

Schmidt's 70 percent testimony involves the use of a statistical probability. But Schmidt is unable to explain this statistical calculation. Testimony regarding the probability that the vehicle in the T-1 April 12 video was a Honda CR-V lacked a proper foundation. Expert testimony regarding identification based upon a statistical analysis requires a proper foundation. To make a statistical evaluation it is necessary to know the frequency of a particular characteristic in the relevant population. The probability of any combination of known characteristics is equal to the product of the frequency of each. In this case there was no evidence offered to support Schmidt's conclusion regarding the probability that the vehicle in the April 12 T-1 video was 70% likely to be a Honda CR-V. [1]

Rule 702 requires testimony by an expert witness to be based on sufficient facts or data and the product of reliable principles or methods, and the expert to have reliably applied the principles and methods to the facts of the case. F.R.E. 702 "assigns to the district court the role of gatekeeper and charges the court with assuring that expert testimony 'relied on a reliable foundation and is relevant to the task at hand.'" *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (quoting *Daubert*, 509 U.S. at 597).

The only principle or methodology Schmidt described for reaching his

---

[1] In *Ege v. Yukins,* 485 F.3d 364 (6th Cir. 04/24/2007) the federal court granted a habeas petition in a murder case based on improper statistical probability testimony that a bite mark on the victim came from the defendant. The Court found there was no foundation for the statistical probability testimony from the State's expert that no one else in the Detroit Metropolitan area would match the bite mark.

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--7*

conclusion there was a 70 percent chance the vehicle was an early model Honda CR-V was his familiarity with Honda CR-Vs. When asked to break down his methodology how he reached the 70 percent figure, his bottom line was he was familiar with CR-Vs: "It's just—you know, familiarity with the vehicle is what—you know, that's how you can identify cars." (RT 2369). When asked to explain what his 70 percent conclusion was based on, "Again, it was based on viewing the video and my familiarity with the vehicle." (RT 2378). Because there was no principle or method underlying Schmidt's conclusions, much a less reliable principle or method, the admission of his testimony was error. *Hermanek*, 289 F.3d at 1096.

Moreover, Schmidt simply does not have the experience, educational background, specialized training, or knowledge as to the identification of a vehicle from a low-resolution surveillance video.  The fact that he testified that the vehicle in the April 19 video, which he knew to be a Honda CR-V, was "easier to see" calls into question the reliability of his opinion about the vehicle in the April 12 video.  His experience is working with known Honda vehicles in the area of product liability involving known Honda products and parts, warranty issues involving known Honda vehicles, and lemon law issues. His work never involves trying to determine the make and model of a vehicle and especially never involves trying to do so from a low-resolution surveillance video.  In his work, he is always aware of the make and model of the vehicle involved. He has never testified in

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--8*

the area of identifying a vehicle from a video surveillance recording before his

testimony in this case.  He has never conducted research or published in this area.

His education and training are not in this area.

Finally, Schmidt's testimony is unreliable because of the manner in which

the FBI approached Schmidt by asking him if the vehicle in the video was a

Honda CR-V.  Schmidt testified:

> Q: And it was clear that they were looking to identify this blurred image as
> a Honda CR-V. Is that correct? That was your -- that's what they asked you
> to do?
> A: They wanted -- yeah, if I could determine if the vehicle in the video was
> a Honda CR-V. Correct.
> (RP 2374)

Schmidt was given the VIN number of the Wells' Honda.  From this he

learned the color of the Wells' vehicle (RP 2375)

Schmidt was then shown another video, the April 19 government-created

video.  When shown this video he was told the vehicle in that video was a Honda

CR-V.  (RP 2376)

> Q: And you've seen also a video of a -- what they told you was a CR-V that
> they took at a later date?
> A: Yes.

In essence, the government is proffering Schmidt as an expert in the field of

vehicle identification, but he uses none of the methodology of experts in that field.

For example, experts in this field begin by determining if they can identify the

class characteristics of the vehicle in question.  Schmidt makes no reference to this

methodology.  He did not use photogrammetry to try to measure aspects of the

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--9*

vehicle in the T-1 video.  He did not break down the images in the video into pixels. He is not able to provide an error rate as to his calculation. Instead he gave his best guess.

## CONCLUSION

Mr. Schmidt may be familiar with Honda vehicles, but he lacks expert qualification in the field of making a vehicle identification from a low-resolution blurry surveillance video. In addition, his testimony as to his opinion about the vehicle in the T-1 video is not reliable.  His testimony is not based on the practices of an expert in the relevant field of vehicle identification from video surveillance. He provides virtually no analysis as to how he came to his 70 percent conclusion. Applying the gatekeeping function required by *Daubert*, his testimony should be excluded.

Dated this 29th day of May , 2019.

Respectfully submitted,

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596

### Certificate of Service

I hereby certify that on the 29th day of May, 2019,  I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

*/s/Peter A. Camiel*
Peter A. Camiel

MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--10*