Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA  98101
(206) 624-1551
petercamiel@yahoo.com

Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Attorneys for Defendant James Michael Wells*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-CR-00008-SLG |
| | ) | |
| Plaintiff, | ) | MOTION TO EXCLUDE |
| | ) | INADMISSIBLE SPOUSAL |
| v. | ) | NOTIFICATION TESTIMONY |
| | ) | |
| JAMES MICHAEL WELLS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SPEEDY TRIAL STATUS

A period of additional excludable delay under 18 U.S.C. § 3161(h) will NOT occur as a result of the filing this motion as this motion will not result in any delay of trial as the Court has ruled this a complex case and has set trial for September 9, 2019, taking into account any pretrial motions that will be filed in this case.

## MOTION

James Michael Wells, through counsel Peter A. Camiel and Gary Colbath moves to preclude spousal notification testimony that is irrelevant, elicits inadmissible hearsay, and at the previous trial involved government misconduct. In the first trial, this testimony came in through Commander Van Ness concerning the spousal notification of Nicola Belisle, the wife of Rich Belisle. The testimony about the spousal notification has no relevance to the issues at trial, and led to both a mistrial motion and later to a finding by the Ninth Circuit of prosecutorial misconduct.

## BACKGROUND FACTS

Peter Van Ness was the commanding officer of COMMSTA. Near the end of his testimony, he was asked about his responsibility to notify Debbie Hopkins and Nicola Belisle of the deaths of their husbands. (TR 1257). He testimony about the Belisle notification went as follows:

> Q: What was her reaction?
>
> A: She was hysterical, very, very upset. In fact, I – I don't know that we even had to say anything. When we walked in in uniform – she had already heard. Kodiak's a small town. They were aware something

MOTION TO PRECLUDE SPOUSAL NOTIFICATION TESTIMONY
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--2*

> was going on at the communication station by that point. I think – I don't remember the exact time, but I believe it was around 10 o'clock in the morning, so it had been, you know, two hours or so. Word gets out. And so when we walked in in uniform –
>
> Q: Did she blurt out a name?
>
> A: Yes.
>
> Q: What was that name?
>
> A: Jim Wells.

(TR 1258-1259). The defense immediately objected that Mrs. Belisle's accusation was hearsay, irrelevant, and extraordinarily prejudicial; moved to strike the testimony; and asked for a mistrial. (TR 1259-1260, 1293-1294).

The government argued the statement was admissible as an excited utterance to show Mrs. Belisle's state of mind and the effect of her statement on the listeners. (TR 1259). The defense reiterated the statement, even if an excited utterance, was irrelevant and prejudicial. (TR 1259-1260). The court initially concluded Mrs. Belisle's statement was admissible as an "excited utterance," and instructed the jury it could be considered to explain "her personal impression of the relationship between her husband and Mr. Wells and the information she conveyed at the time to the commander and those there." (TR 1299). The court further stated Mrs. Belisle's statement was not

evidence who committed the crime, because she didn't know, but "[i]t's an emotional reaction." (*Id.*).

Later, the defense submitted a transcript of the encounter, which not only undermined the court's conclusion the statement was "an excited utterance," but belied the government's contention Mrs. Belisle had spontaneously accused Wells of the crime. As reflected in the transcript, Mrs. Belisle did not mention Wells until over ten minutes into the meeting, when a state trooper asked her whether her husband had any problems with anybody. Mrs. Belisle answered, "just Jim," and later elaborated that her husband had complained Jim didn't do his job. She then stated, however, "Jim wouldn't hurt Rich. He doesn't, he spends all his life on the toilet." When asked which Jim she was referring to, Mrs. Belisle clarified she was referring to Jim Wells. (*Id.*).

The following day, having reviewed the transcript, the court was inclined to instruct the jury to ignore the statement. (TR 1310). The government opposed this relief, and the defense reiterated its request for a mistrial. (TR 1310, 1318, 1351). The court denied the request for a mistrial, but allowed the defense the opportunity to elicit from Van Ness how Jim Wells' name actually came to be mentioned—only after a trooper asked if her husband had had problems with anybody, and immediately followed by

the statement Jim would not hurt Rich. (TR 1352-1358). Van Ness testified he did not recall the conversation and may not have been present for it, but the government stipulated that's what the transcript documented. (TR 1358).

### The Testimony is Irrelevant and Hearsay

Nicola Belisle's reaction to being notified of her husband's death was not relevant to any issue. She had been the government's first witness, and she had already testified about difficulties her husband had been having at work, although she could not testify with whom because she had no personal knowledge. The government's sole purpose in asking Van Ness about notifying Mrs. Belisle of her husband's death was to elicit the false impression that, on seeing him enter her office in uniform, she blurted out a single name: Jim Wells. Even if true, which it was not, the purposeful elicitation of irrelevant prejudicial hearsay in the form of the decedent's widow's accusation would constitute prosecutorial misconduct. But it was not true. Mrs. Belisle did not mention Jim Wells until ten minutes into the conversation and then only in response to a question and in that context, to say Jim Wells would never hurt her husband.

The government's purposeful elicitation, in the first trial, of false evidence which suggested she had blurted out Jim Wells' name as the

perpetrator of her husband's murder violated due process. The government commits misconduct when it purposefully elicits inadmissible evidence. *United States v. Escalante*, 637 F.2d 1197, 1203 (9th Cir. 1980). The testimony about Mrs. Belisle being notified as to her husband's death was irrelevant and prejudicial. No one contends Mrs. Belisle had any personal knowledge who killed her husband. Her accusation, had it been one, would have been irrelevant. As defense counsel argued at the first trial, there was no vote being taken on everyone's gut reaction on the perpetrator. (TR 1290, 1293). It was misconduct for the government to elicit the widow's purported spontaneous accusation into evidence and it should not be repeated at this trial.

The government commits gross misconduct when it purposefully elicits false evidence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). It is "implicit in any concept of ordered liberty" that the government may not "knowingly use false evidence, including false testimony, to obtain a conviction." *Id.* The "prosecutor has a special duty commensurate with a prosecutor's unique power, to assure that defendants receive fair trials." *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000). "It is as much his duty to refrain from improper methods calculated to produce a wrongful

conviction as it is to use every legitimate method to bring about a just one."

*Berger v. United States*, 295 U.S. 78, 88 (1935). Here, the government intentionally elicited evidence that Mrs. Belisle, upon seeing Van Ness in his uniform, blurted out the name "Jim Wells." She did not.

### The Ninth Circuit Determined that in Eliciting this Testimony the Government Engaged in Misconduct

The Ninth Circuit found intentional misconduct by the government in eliciting this testimony.

> Here, we find that the prosecutor committed misconduct for several reasons. First, the prosecutor's question interrupted Commander Van Ness describing what happened when the two officers " walked in in uniform." This mischaracterized the timing of Ms. Belisle's statement, by giving the jury the false impression that it was immediately uttered upon seeing the uniformed officers. Second, the prosecutor's phrasing, inquiring whether the widow " blurt[ed] out a name," again mischaracterizes the statement as being made suddenly and without considered thought. In reality, the statement was made approximately ten minutes after the officers approached Ms. Belisle, and in response to direct questions which required consideration of possible suspects. The phrase " blurt out" plainly ignores the role played by the officers in eliciting Wells' name as a possible suspect. Third, not only did the prosecutor choose not to bring this sensitive issue to the district court's attention prior to questioning Commander Van Ness, but upon verbalizing the mischaracterization and being confronted with the ramifications, the prosecutor failed to assist in mitigation thereof. Although this constitutes misconduct, we find no prejudice.

*United States v. Wells*, 879 F.3d 900, 936-937 (9th Cir. 2017)

The spousal notification testimony is simply not relevant. At a minimum such testimony is only being elicited to evoke sympathy from the jury. Neither Mrs. Belisle nor Mrs. Hopkins were witnesses to anything at issue in this case.

MOTION TO PRECLUDE SPOUSAL NOTIFICATION TESTIMONY
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--7

Moreover, Mrs. Belisle's response to a very specific question, ten minutes into her meeting with Van Ness is hardly a spontaneous utterance. Finally, the manner in which the testimony was presented was not just misleading, it was false.

## Conclusion

For the foregoing reasons, the Court should direct that the government may not introduce any testimony about spousal notification or the reaction of either spouse to being notified of the murders in order to prevent a recurrence of what occurred at the first trial.

Dated this 10th day of June, 2019.

Respectfully submitted,

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596

*/s/Gary Colbath*
Assistant Federal Public Defender
Attorney for Defendant Wells

## Certificate of Service

I hereby certify that on the 10th day of June, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

/*s/Peter A. Camiel*
Peter A. Camiel