BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:steven.skrocki@usdoj.gov
　　　christina.sherman@usdoj.gov
　　　kelley.l.stevens@uscg.mil

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:13-cr-00008-SLG |
| | ) |
| JAMES MICHAEL WELLS, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

**OPPOSITION OF THE UNITED STATES TO DEFENSE MOTION TO PRECLUDE TESTIMONY OF NEIL SCHMIDT**

The United States submits the following Opposition to the Defense Motion to Exclude the Testimony of Government witness Neil Schmidt. Mr. Schmidt's qualifications and testimony have already been approved by the magistrate judge, district court judge, and the United States Court of Appeals. In this brief, the defendant yet again raises the 'lack of methodology argument' under FRE 702. Said argument was unequivocally raised below prior to the first trial, despite the defense stating to the contrary, and was denied there and thereafter denied by the trial court and the appellate court. This motion adds nothing to the calculus. Accordingly, it should be denied.

## A. FACTS

The present motion claims that the challenge to Schmidt was not based on methodology. In their present brief on this issue, Docket 1006, the defense states: 'The defense challenge to Schmidt in the first trial only went to his qualifications to identify the Honda CR-V and *not to the methodology* in reaching his 70 percent certainty opinion. (Emphasis added, Docket 1006. pg. 5). This is not true.

At Docket 223, filed before the first trial, the defense by declaration did explicitly and directly seek to exclude the testimony of Neil Schmidt based on methodology. (See Docket 223). In that motion, by declaration of counsel, it was argued unambiguously that Schmidt's testimony should be excluded because it was 'neither reliable, relevant, nor probative. (*Ibd.* pg. 1) At page 2, ¶ 5 of the motion, one gets to the precise claim whereby the defense raises a methodology argument against all of Schmidt's entire proposed testimony. In the declaration, counsel stated: '*Mr. Schmidt provides no methodology for reaching his general opinions.* See Exhibit A. Mr. Schmidt's testimony is not reliable

because he has provided *no methodology* for arriving at his proposed testimony.' (*Ibd*. ¶5). In paragraph 7 the defense again states the government provided no discovery '*demonstrating that Mr. Schmidt's opinions are based on a reliable methodology*.' By the government's count, those are three separate and distinct references to Schmidt's testimony not be permissible due a failure to utilize methodology. It bears noting that in the prior pleading at Docket 223, the defense sought to preclude *all* of Schmidt's testimony prior to trial based on improper or no methodology, not just one or two aspects of it.

In the most current pleading, Docket 1006, the defense completely contradicts itself by arguing that the prior motion to preclude was not directed at the *'methodology in reaching his 70% opinion.'* Certainly, though, that is very much the case as Docket 223 was filed to preclude all of Schmidt's testimony. There is no showing proving how this is a different argument. (See Docket 1006, pg. 5). Docket 223 sought exclusion of all of Schmidt's testimony, which necessarily includes the testimony concerning the 70% opinion as it was then part of Schmidt's opinion and testimony. To state that it wasn't argued before merely provides coverage for another opportunity to revisit now what has already been ruled upon.

Moreover, there is another repeat argument. Defense claims at Docket 1006, that Schmidt's findings are inconsistent and should be excluded. This too was raised in the Declaration at Docket 223. "*Mr. Schmidt's proffered testimony seems to contain contradictions that undermine the relevance of any statements he made regarding the proportions of the vehicle*. (See, Docket 223, ¶ 6, pg. 2). Therefore, the defense is re-

U.S. v. Wells                                                                 Page 3 of 16
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 1022   Filed 06/12/19   Page 3 of 16

arguing not one, but two arguments already raised, and denied, prior to the first trial.
(See, also, Docket 199, Memorandum of Law in Support of Motion for a Daubert
Hearing Re: Identification of Blue Vehicle Which is in USCG Video Footage, pg. 1, "
*Mr. Schmidt does not explain the methodology he used to deduce that the image in the
video is more than likely a Honda CR-V*) This would be yet again another methodology
reference.

## B. ARGUMENT

### 1. The Ninth Circuit Court of Appeals and Two other Independent Judicial Reviews Have Approved All of Neil Schmidt's Testimony for Trial Based on His Specialized Knowledge, Education, Training and Experience as an Engineer With Honda Motor Company

#### a. The Law of the Case Doctrine Controls

The defense files yet another 'methodology challenge' with this court against government witness Neil Schmidt, an engineer with Honda Motor Company for more than 20 years. The motion is an attempt to reargue an unsuccessful motion to preclude and fails to prevail factually, legally, and under the law of the case doctrine. Nothing is new here. Given that Wells raised the methodology argument and not one but three rulings were made approving admissibility of Schmidt's testimony, this latest attempt should similarly be denied under the law of the case and on the merits.

The law of the case doctrine generally precludes reconsideration of "an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible,* 983 F.2d

152, 154 (9th Cir. 1993)). In a circumstance like this, "a judgment of reversal by an appellate court is an adjudication only of matters expressly discussed and decided, which become the law of the case in further proceedings on remand and re-appeal." *Hansen & Rowland v. C.F. Lytle Co.,* 167 F.2d 998, 999 (9th Cir. 1948). To show that an issue is not controlled by the law of the case, parties must show that it was not "decided explicitly or by necessary implication" by a prior decision. *United States v. Garcia-Beltran*, 443 F.3d 1126, 1129 (9th Cir. 2006) (*quoting Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)). As a prudential rather than jurisdictional doctrine, the law of the case doctrine does not apply "if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice." *Pepper v. United States*, 562 U.S. 476, 506–07, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) (internal quotation marks and brackets omitted) (quoting *Agostini v. Felton*, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)), *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019)

Here, the defense totally ignores the law of the case doctrine, and fails to provide the court with any fact that the issue concerning Schmidt's testimony was not decided 'explicitly or by necessary implication.' Moreover, the ruling of the 9th Circuit is so clear that their decision on this matter is not clearly erroneous nor would work a manifest injustice. Clearly, based on this submission, Schmidt's testimony was resolved by the magistrate judge, the district court judge at trial, raised or not, and by the 9th Circuit Court of Appeals. Under the law of the case doctrine, the court can end its analysis of this claim here.

U.S. v. Wells
3:13-cr-00008-SLG

Page 5 of 16

Case 3:13-cr-00008-SLG   Document 1022   Filed 06/12/19   Page 5 of 16

### b. The Decision of the Ninth Circuit Court of Appeals Affirmed Schmidt's Testimony Including the 70% Opinion:

The following is a verbatim quote from the 9th Circuit Wells Opinion:[1]

> *Neil Schmidt is an engineer and "technical specialist," with twenty years' experience at Honda, including seven years as an engineer responsible for the Honda CR–V, which was the make and model of Nancy Wells' vehicle. At trial, Schmidt was tendered as "an expert in Hondas, [with an] associated knowledge of related vehicles."* **Schmidt's expertise was used to identify what appeared to be a blurry image of a small blue SUV, caught on surveillance footage on April 12, 2012**.
>
> *His testimony was relevant, in order to place Wells in Nancy Wells' 2001 blue Honda CR–V, on the morning of the murders.* **Schmidt testified that he was 70% certain that the depicted vehicle was an early model Honda CR–V.** *On direct examination, the Government inquired of Schmidt whether he was able to identify other automobiles that could be consistent with the vehicle in the surveillance image and which might raise his level of certainty regarding his identification. Schmidt testified that he had identified three makes and models, other than the Honda CR–V but significantly similar thereto. During the investigation, these comparators were then used by photogrammetry comparison experts and law enforcement agents, in*

---

[1] Ordinarily the United States would refrain from long quotations. However, in order to save the court time the entire passage of each cited ruling is provided for the court's convenience given their relative brevity.

*ruling out other vehicles with possible connections to the murders.*

*Wells did not renew his objection to Schmidt's qualifications at trial. On appeal, Wells accepts Schmidt's knowledge of the Honda CR–V but challenges his qualifications to reliably testify to the likelihood that the car was a Honda, due to his lack of specialized knowledge in ruling out other vehicles. Federal Rule of Evidence 702's reliability requirement asks whether an expert's testimony has "a reliable basis in the knowledge and experience of the relevant discipline." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (alteration omitted). The inquiry is "a flexible one." Id. at 150, 119 S.Ct. 1167 (quoting Daubert, 509 U.S. at 594, 113 S.Ct. 2786). Courts have broad latitude in determining the appropriate form of the inquiry. See United States v. Alatorre, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere ... does the Supreme Court mandate the form that the inquiry into relevance and reliability must take.").*

***Here, the magistrate judge conducted a pretrial Daubert hearing and determined that Schmidt's 20 years' experience as a Honda engineer qualified him to opine as to the likelihood that the vehicle in the image was the same make and model on which he had worked directly for seven years.*** *At the final pretrial conference, the district judge reaffirmed that the blurry quality of the video might affect the weight of the testimony, rather than its admissibility, and could be explored on cross-examination. See Daubert, 509*

> U.S. at 596, 113 S.Ct. 2786; see also *United States v. Ford*, 481 F.3d 215, 220 (3rd Cir. 2007) (expert could testify that characteristics of shoe print were similar to defendant's shoe despite inability to rule out other shoes due to lack of clarity in the print). We find no abuse of discretion in allowing Schmidt to opine and testify.

*United States v. Wells*, 879 F.3d 900, 933–34 (9th Cir. 2018).

### c. The Magistrate Judge and District Court Approved Schmidt's Testimony Including Dismissing an Argument That Schmidt's Testimony Was Based on Unduly Suggestive Prompts by the United States and an Argument Against Schmidt's Estimate of 70% Certainty

Prior to the first trial, the issue of Mr. Neil Schmidt's testimony was raised by the defense, including that of methodology as shown above. They also raised the issue of Schmidt being objectively biased, of Schmidt opining by percentage of certainty, along with the failure to provide a methodology or principle for his opinion. Each was denied by order of the magistrate judge, set out below, along with being denied by the Ninth Circuit Court of Appeals.

As determined by the magistrate judge:

> *The government intends to elicit testimony from Neil Schmidt regarding his expertise to identify a blue vehicle in the United States Coast Guard video footage of COMMSTA taken at the approximate time of the homicides as a Honda similar to that owned by the Wellses. Mr. Schmidt is a mechanical engineer who worked with the Honda North America*

*Corporation since 1997. During this employment, Honda was manufacturing the Honda CRV Sport Utility Vehicle. Schmidt is familiar with its body style and its exterior paint colors. Defendant James Wells and his wife owned a blue 2001 Honda CRV at the time of the homicides. The government contends that Wells used the CRV to drive to the rigger shop where the murders were committed.*

*As a technical specialist for Honda North America, Schmidt conducted product and scene inspections; provided technical assistance to in-house and out-side counsel, experts and other parties; performed interpretations of SRS download data; and served as a corporate representative during trials for product liability matters relating to Hondas. In 2007 he completed a course in traffic accident reconstruction at Northwestern University. As a senior coordinator/engineer for Honda he worked in the development process of Honda, investigated vehicle quality concerns for multiple factories at Honda and Acura products, and developed diagnostic repair and service procedures for distribution to dealerships. As model engineer and senior coordinator/engineer, he has conducted quality products of production vehicles at port and factory facilities, and participated in vehicle disassembly for documentation validation.*

*Mr. Schmidt holds a BS degree in mechanical engineering from the University of California, Irvine. From 1980 to 1985, he was an engineering assistance with Electro-Optical Industries, and from 1986 to 1994 was an*

*engineer/scientist specialist for Douglas Aircraft Company where he supervised teams of engineers, scheduled work packages, and prepared and presented change proposals to a review board.*

*Mr. Schmidt viewed video footage that captured the movements of a vehicle on April 12, 2012 and was asked if he could identify the vehicle. Although he states that he cannot be one hundred percent certain, he concluded that the vehicle is the correct size and proportion as that of a Honda CRV first generation vehicle. These vehicles were made in the United States between 1997 and 2001. He adds that the vehicle head lights and position of the vehicle tail lights and the off-center, rear mounted spare tire are consistent with the first generation Honda CRVs. According to Schmidt, the Honda has a relatively unique tail light location. The tail lights run up to the roof line from about the mid-line of the CRV. The tail lights are also on the rear corners of the CRVs. Schmidt is familiar with similar vehicles such as the Toyota RAV4 and the Volvo XC-90. The tail lights for those vehicles are similar to the CRVs.*

*He determined that the vehicle in the video was a 2001 Honda CRV S LX 4WD. The paint code for this vehicle (Electron Blue Pearl) was only available on the Honda Prelude and CRV in 2001. Based on his knowledge and experience, he is able to talk about the video depiction of the vehicle and state why he believes other so called similar vehicles are different in appearance or shape. He concludes that the vehicle depicted in the video is*

*more likely than not a Honda CRV and consistent in size, shape, proportion, and tail light position to the Wellses' Honda CRV.*

*To testify as an expert under Daubert and Kumho Tire, the expert may not always perform scientific tests. He may draw from part of his education, training and experience to reach his conclusions. See Precision Seed Cleaners v. County Mut. Ins., 2013 WL 943571, \*15 (D. Or. 2013) (expert who had worked in seed equipment business for 27 years competent to opine on equipment values). The Advisory Committee notes (2002) to Federal Rule of Civil Procedure 702 states that the expert need only explain "how that experience leads to the conclusion reached, why that experience is a sufficient bases for the opinion, and how that experience is reliability applied to the facts." Mr. Schmidt's testimony is admissible regarding the unique shape of the CRV body panels, the CRV's unique roof line, the unique placement of tail lights on the CRV, the unique location of CRV's spare tire, and methods for excluding other makes and models similar to the Honda CRV. That the video of the vehicle shown to Mr. Schmidt is "quite blurry" is a matter going to the weight of the evidence and illustrates the need for an expert to assist the fact-finder in assessing the photograph. See Kennedy v. Collagen Corp, 161 F3d 1226, 1231 (9th Cir. 1998).*

*The defense argues that because FBI experts could not identify the vehicle in the video as belonging to the Wellses, because of the video's poor quality, this means Mr. Schmidt went beyond his expertise in identifying the*

*type of car. To the contrary, Mr. Schmidt is an expert on Hondas, and, even though he has not testified as an expert previously, he does have the experience and knowledge to assist the jury in deciding whether the car depicted in the video is a Honda CRV.*

*The defense suggest that once Mr. Schmidt was advised that the investigators thought that the video depicted a Honda, Schmidt's testimony would necessarily be based on an unduly suggestive process. The government disputes that Schmidt was given any such bias and that issue can be probed during cross-examination.*

*The defense questions whether Schmidt should be allowed to testify as to the percentage of how sure he is that the video vehicle is a Honda. When an expert testifies in an unscientific area a logical and appropriate question for the witness is how sure he is of his testimony. That the expert witness may choose to testify as to a percentage of his assurance goes to the manner and means of expressing his opinion not to whether his testimony and opinion are admissible.*

*Testimony and expert opinion attempting to identify the vehicle is pertinent to the government's case in placing the defendant at the crime scene. Thus, the testimony is relevant. The court is satisfied that Ms. Schmidt's testimony is sufficiently reliable to be admitted under Daubert and that his testimony is relevant and more probative than prejudicial.*

*United States v. Wells, No. 313CR00008RRBJDR, 2014 WL*

*12795579, at \*12–14 (D. Alaska Feb. 5, 2014), rev'd and remanded, 879 F.3d 900 (9th Cir. 2018), Docket 30.*

As noted above in the passage from the 9th Circuit opinion, the Ninth Circuit upheld the magistrate judge's conclusions in admitting Schmidt's testimony on the basis of not only vehicle identification, but also that Schmidt was 70% sure the vehicle was a Honda CRV.

### d. The Methodology on Schmidt's Conclusions Have Been Provided

The government has disclosed all images upon which Mr. Schmidt relies, and his methodology is clearly stated in the FBI Reports provided to the defendant.

In those reports, Mr. Schmidt details the basis for his familiarity with the Honda CRV and explains the criteria used to determine that the vehicle in the photographs and video is a CRV, including:

- The unique shape of the CRV body panels;
- The CRV's unique roof line;
- The unique placement of tail lights on the CRV;
- The unique location of the CRV's exterior spare tire;
- Methods for excluding other makes and models similar to the Honda CRV.

(See Docket 228-11, Ex. 9 pg. 1, 3, 4, 5 and 6, Sealed)

Any flaws that the defendant may assert regarding Mr. Schmidt's methodology go to the weight, not admissibility of his testimony.

U.S. v. Wells
3:13-cr-00008-SLG
Page 13 of 16

Case 3:13-cr-00008-SLG   Document 1022   Filed 06/12/19   Page 13 of 16

*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Mr. Schmidt's testimony is sufficiently reliable to be admitted under *Daubert*. In addition, Mr. Schmidt's testimony will assist the trier of fact, especially if the details of the images are not clear. See United States v. Pollard, 128 F.Supp.2d 1104, 1125 (E.D. Tenn. 2001) (expert testimony regarding age of child in video of "substantial assistance" to jury given poor condition of video).

### e. 702 Permits the Introduction of Schmidt's Testimony and the Court is Free to Have the Witness Examined Prior to Him or Her Taking the Stand

Under Federal Rule of Evidence 702, an expert may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Such evidence must also be relevant pursuant to Federal Rule of Evidence 401 and may be excluded pursuant to Rule 403.

Trial judges are charged with the responsibility of acting as gatekeepers to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. See *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). In order to fulfill this function as to scientific testimony, the trial court "must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue." *Daubert,* 509 U.S. at 580. However, the court has the "discretionary authority ... both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require

U.S. v. Wells  
3:13-cr-00008-SLG  
Page 14 of 16

Case 3:13-cr-00008-SLG   Document 1022   Filed 06/12/19   Page 14 of 16

appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). Thus, while "a separate, pretrial hearing, outside the presence of the jury" may be advisable in certain circumstances, "trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function." *United States v. Alatorre,* 222 F.3d 1098, 1100 (9th Cir.2000). *United States v. Sleugh*, No. 14-CR-00168-YGR-2, 2015 WL 3866270, at *1 (N.D. Cal. June 22, 2015)

Here, the court, if it harbors any concern with respect to Mr. Schmidt's testimony, can either rule on the motions in limine or reserve ruling pending foundational testimony outside of the presence of the jury, either as to expert opinion or regarding specific evidence.

In this case, the law of the case is clear, but the court possesses this option nonetheless.

## C. CONCLUSION

The defense here is without any doubt attempting to resurrect an unsuccessful methodology argument previously filed. The concrete fact that the methodology was raised below operates under the law of the case to bar any further filing. If not, the opinions of the magistrate judge, the district court, and the Ninth Circuit Court of Appeals all provide for admissibility of Schmidt's testimony. This argument was raised previously and should be stricken. Despite that, it has no merit either factually or legally and should be denied under the law of the case as having been previously litigated and ruled upon.

RESPECTFULLY SUBMITTED June 12, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2019, a true and correct copy of the foregoing was served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney