Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
5200 Pike Street, Suite 2500
Seattle, WA 98101
Phone: (206) 624-1551
Email: petercamiel@yahoo.com

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:13-CR-00008-SLG |
| Plaintiff, | ) |
| | ) |
| v. | ) MOTION TO EXCLUDE THE |
| | ) GOVERNMENT VEHICLE |
| JAMES MICHAEL WELLS, | ) SWAPPING EXPERIMENT VIDEO |
| Defendant. | ) |
| | ) EVIDENTIARY HEARING |
| | ) REQUESTED |
| | ) |

**SPEEDY TRIAL STATUS**

A period of additional excludable delay under 18 U.S.C. § 3161(h) will NOT occur as a result of the filing this motion as this motion will not result in any delay of trial as the Court has ruled this a complex case and has set trial for September 9, 2019, taking into account any pretrial motions that will be filed in this case.

## I.  INTRODUCTION

Defendant Wells though counsel Peter A. Camiel and Gary Colbath

moves this Court to exclude the government's vehicle swapping experiment

video exhibit.  As will be described more fully below, the government's prior

trial exhibit 171 involved a video recording of government agents conducting an uncontrolled vehicle swapping experiment at the Kodiak Airport, ostensibly purporting to demonstrate Jim Wells driving to the airport on the morning of April 12, 2012, parking his wife's Honda CR-V, transferring to his white Dodge truck, and driving from the airport.[1]  The government first revealed the existence of the airport vehicle swapping video at approximately 8:30pm after the seventh day of the prior trial.  (Tr. 1944).  Thus, the defense never got a chance, pretrial, to litigate the admission of the video.  This exhibit is extraordinarily misleading and confusing, not based on actual evidence, argumentative, unfairly prejudicial, will cause confusion of the issues, and will mislead the jury. It should be excluded pursuant to F.R.E. 401 and 403.

## II.   FACTS
### A. The Government Vehicle Swapping Experiment Video

The government conjectures that Mr. Wells drove to the Kodiak airport in his Dodge truck, transferred to his wife's Honda CR-V which was parked there, drove to the COMMSTA T-2 building and committed the murders of Mr. Belisle and Mr. Hopkins. The government next conjectures that Mr. Wells returned to the airport in his wife's Honda CR-V, transferred back to his Dodge truck, and drove to his home. There is no evidence that any of this occurred,

---

[1] The CGIS conducted numerous vehicle swapping experiments, "probably between six or twelve times," (Tr. 1970 at 20) which may or may not have been recorded. Although the government introduced only one of these recorded experiments at trial, all of the arguments and authorities cited herein apply to all of the government's vehicle swapping experiments.

and conspicuously absent are any surveillance video recordings from the numerous cameras at the Kodiak airport capturing either the Wells' Dodge truck or the Honda CR-V. To validate their theory, the government speculated that Wells was somehow aware of the camera located in the Alaska Airlines cargo office,[2] purposefully drove his Dodge truck against the long-established traffic flow pattern in full view of hundreds of airport patrons and workers to reach the far end of the parking lot without being captured by the camera, transferred to his wife's Honda CR-V, drove to the T-2 building undetected, committed the murders, returned to the airport undetected, again drove against the long-established traffic flow pattern in full view of hundreds of airport patrons and workers to reach the far end of the parking lot without being captured by the camera, transferred back to his Dodge truck, and drove away.

In an attempt to illustrate this complicated, confusing, and highly unusual and noticeable series of maneuvers, the government conducted at least one experiment using three vehicles: one to replicate the Wells Dodge truck; one to replicate the Wells' Honda CR-V; and one to follow behind and record the experiment. The government then used this fabricated video at trial

---

[2] This camera was installed and setup to capture activities within the office, and just by chance happens to have a field of view that extends out through the office door and into the parking lot, where it captures the vehicular traffic flow in front of the airport terminal buildings.

as a demonstrative or illustrative exhibit. (See Attachment A).[3] This exhibit was introduced through the agent involved in creating the video in a concerted attempt to convince the jury what was accomplished within the government's speculative timeline to bolster their theory of how the murders occurred.

There are no witnesses who claim to have seen the Wells' Honda CR-V anywhere along the route from the airport to the T-2 building, either coming or going, on April 12, 2012. The roads in this area are heavily-travelled at this time of the morning, especially as the shift was changing at COMMSTA. There were employees leaving from the T-1 building and others arriving for work at the T-1 building. There were people sitting in cars waiting outside the T-1 building to pick up people ending their shifts. None of these people saw the Wells' Honda CR-V, that morning. There was one witness, Don Rudat, who walked both up and down Anton Larsen Road past the T-2 building shortly after 7:00am, at the time the government says the murders occurred. He did not see the Wells' Honda CR-V.

## B. Introduction of the Vehicle Swapping Experiment Video at the First Trial

On an unknown date and at an unknown time, Coast Guard Investigative Service (CGIS) Agent Aaron Woods drove a silver SUV to the airport and, going the wrong direction, pulled into a parking space in front of the terminal buildings next to a Ford Expedition that had been previously

---

[3] All attachments to this motion are items of discovery subject to a protective order in this case and will be filed separately and under seal.

staged there, exited the silver SUV he had been driving, entered the Ford Expedition, and drove out of the airport. This entire series of events was captured and recorded by a dash camera mounted on a third vehicle that followed behind. (Tr. 1959-1983).[4]

The resultant video was introduced at the first trial, over repeated objection by defense counsel, as government exhibit 171. The process of its introduction was extremely confusing and misleading.

Following Agent Woods' testimony that he had driven the speculative route from the Wells' house to COMMSTA many times (Tr. 1970 at 20), he was asked during direct examination if he had recently redone this in preparation for trial. Woods responded in the affirmative, stating that he had done this most recently on March 24, 2014. (Tr. 1971 at 1). Woods went on to testify that:

> [O]n the 24th of March, I started at the bottom of the driveway at Pavloff Circle, which is in Bells Flats, which is the defendant's residence, and I drove from there to the state airport. I entered the state airport. I simulated changing vehicles and then drove from the state airport to building T2 at COMMSTA Kodiak. (Tr. 1971).

When asked what his purpose was for doing this drive, Woods replied "I was trying to calculate the time that it would take to drive from Mr. Wells's residence to the airport, change vehicles, and then drive to the COMMSTA and building T2." (Tr. 1976 at 21). Woods was then asked if he did "a video clip of the part into the airport" and after responding affirmatively was asked "what was the purpose of doing that?" (Tr. 1976-1977). Woods related that the "The

---

[4] Transcript excerpts cited herein will be provided to chambers for convenience.

purpose was to – was to show how one – if you wanted to, how you could circumvent the video at the – bless you – at the Alaska Airlines terminal." (Tr. 1977). Anyone listening to this exchange would presume that government exhibit 171 was produced on March 24, 2014.

Following this, the video was played for the jury, accompanied by narration by Agent Woods. At the end, Woods was asked "did you time all parts of that trip?" He responded "not on that trip, ma'am, no. … [B]ecause *I was not timing it the same way that I did on the – the day of the 24th.*" (Tr. 1981 at 10, emphasis added). Woods then elaborated that "On the 24th, I drove from Pavloff Circle to the state airport, from the state airport to building T2 at the COMMSTA. *Essentially, the exact opposite of what you saw in the video.*" (Tr. 1981 at 18, emphasis added). This revelation, that government exhibit 171 was actually NOT recorded on March 24, 2014 as presumed from the manner it was introduced, illustrates the unsubstantiated basis from which the government's vehicle swapping experiment video was constructed. The provenance for this video rests solely on Agent Woods' anecdotal testimony.

### C. The Vehicle Swapping Experiment Video is Based Solely on Conjecture, not Factual Knowledge

Agent Woods described in great detail how the staging of vehicles for the production of the vehicle swapping experiment video was accomplished. Woods was shown government prior trial exhibit 103 (See Attachment C), a picture of the Wells' Honda CR-V parked at the Kodiak airport that had previously been

*MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO*
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 6

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 6 of 27

admitted. Woods elaborated on the video setup when he stated "we used several images of the same profile of the vehicle to *try to replicate* the location of where that – where that vehicle was." (Tr. 1967 at 17, emphasis added). The Wells' CR-V was towed from the airport pursuant to a search warrant issued on April 13, 2012 (see Attachment B), and Woods' statement makes it clear that government investigators did not know where the Wells' Honda CR-V had originally been parked. Nonetheless, Agent Woods went on to detail, during the playing of the government's vehicle swapping experiment video, that an orange traffic cone had been previously placed in the airport parking lot "depicting what is *the approximate location* where the – the vehicle was parked on April 12th, 2012." (Tr. 1980 at 5, emphasis added). Woods was then asked by the prosecutor "Did you pick up the cone and put it back, or was it there the whole time?" He responded "No, it's – it's *not changed location. We set it up there from that day and it hasn't moved an inch.*" (Tr. 1980 at 7, emphasis added).

Aside from the gross implausibility that a traffic cone could actually remain in the same location in the middle of the busy Kodiak airport parking lot for two years, surviving a major construction project and multiple winters of heavy snow fall and plowing operations, this statement is simply false, since Woods had previously testified that agents needed to use pictures of the Wells' Honda CR-V in an attempt to replicate the actual location of the vehicle.

Clearly, the location of the orange cone at the airport was not constantly monitored for two years.

There is no evidence that the events in the vehicle swapping experiment video occurred in any fashion whatsoever, much less in the way that they are depicted in the video. According to Agents Woods' testimony, the orange cone in the video established the position of the Wells' Honda CR-V as it was when located at the airport on April 12, 2012. However, the position of the vehicle present in this location that was used by investigators to make this video grossly misrepresents the actual positioning of the Wells' Honda CR-V as shown on government prior trial exhibit 103, which is an actual picture of the Wells' Honda CR-V taken by Alaska Wildlife Trooper Ellis on April 12, 2012. (See Attachment C).

In the vehicle swapping experiment video, the front tires of the vehicle behind the orange cone are turned in the way they would be had the vehicle been driving into the parking space against traffic as the government speculates. In the actual picture of the Wells' Honda CR-V, the wheels are turned slightly to the left, as they would naturally be had the vehicle entered the parking lot from the direction of normal traffic flow.

Additionally, the staged Ford Expedition behind the cone in the vehicle swapping experiment video is not parallel to the parking space lines and actually straddles them, perhaps in an effort to show that it was parked in a hurry. There are no parking lines present on trial exhibit 103, and there is

nothing else in this exhibit establishing that the Wells' Honda CR-V was parked in any other than a normal manner.

In fact, government investigators make a broad and unfounded assumption with their conjecture that it was even possible to park another vehicle adjacent to the Wells' Honda CR-V, as they have no way of knowing if other vehicles were already parked around it. Attachment E, another picture of the Wells' Honda CR-V taken while it was at the airport (Bates 67189), shows an unknown vehicle parked next to the Wells' Honda CR-V.

The speculations regarding the location and position of the Wells' Honda CR-V as represented by the government in the vehicle swapping experiment video have no relationship to the known situation of the Wells' Honda CR-V, thus negating the entire conjecture upon which the government has based their vehicle swapping experiment video.

### D. The Vehicle Swapping Experiment Video is Confounded by the Actual Conditions at the Kodiak Airport on April 12, 2012

Whereas the vehicle swapping experiment video depicts a peaceful and unhindered drive to and from the Kodiak airport, the exact opposite would have been true on the morning of April 12, 2012. Several hundred people were driving and otherwise moving about the airport, with the majority of this activity located in and around the parking lot precisely where the government speculates that Wells swapped vehicles. Additionally, the parking lot was in terrible condition after years of deterioration, making for slow progress throughout the area as drivers negotiated these hazards.

### 1. The Time of Day when the Government Speculates that Wells Swapped Vehicles is also when the Airport is Busiest

Unlike the nonexistent activity depicted in the government's vehicle swapping experiment video, the Kodiak airport was a bustling place on the morning of April 12, 2012, as it is every morning throughout the year. Federal Aviation Administration airport usage statistics show that in 2012 there were nearly 80,000 enplanements (an average of 219 per day), and over 34,000 aircraft operations (an average of 93 per day). (See Attachment F).

The basis of the government's vehicle swapping experiment video is that Wells circumvented the camera in the Alaska Air Cargo office by driving his large Dodge truck against the long-established traffic flow pattern at the airport and entered the parking lot from the opposite end. Attachments G and H are aerial views of the airport terminal parking lot taken on April 21, 2012 (previous government trial exhibit 51 and Bates 52313, respectively), and show a vehicle proceeding in front of the terminal in the normal and established manner.

On the morning of April 12, 2012, there were 51 passengers arriving on Alaska Airlines flight 47 from Anchorage, and 48 passengers subsequently departing on the turnaround flight back to Anchorage, Alaska Airlines flight 48. (See Attachment I, Bates 70671-70678 and 70712-70719). ERA Airlines, a regional carrier, had 38 passengers on their incoming and outgoing flights that morning (Attachment J, Bates 48089) and Servant Air, another regional carrier, had four passengers on their flights. (See Attachment K, Bates 44037-

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                Page 10

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 10 of 27

44038). This totals 132 passengers passing through the airport on the morning of April 12, 2012. The FBI showed these people pictures of the Wells' Dodge truck and the Wells' Honda CR-V, along with a photograph of Jim Wells, and none of the passengers saw Wells or either one of the Wells' vehicles. (See, e.g., Attachment L, Bates 47312).

Most of these passengers would have been dropped off or picked up by others, and indeed the video camera recording from the Alaska Airlines cargo office shows at least 49 distinct vehicles arriving, carrying a minimum of 49 drivers and most likely some additional passengers, at the airport that morning around the times the government conjectures that Wells performed this blatantly obvious traffic maneuver. (See Attachment M). These vehicles would have parked in the lot while their drivers and passengers awaited the incoming and outgoing flights and then subsequently departed the airport when their business was completed, presenting multiple opportunities for the occupants to observe someone performing the government's conjectured traffic maneuvers. None of these people reported seeing either Jim Wells or the movement of either the Wells' Dodge truck or the Honda CR-V.

While the above activities were occurring at the airport, many other people were also arriving to work there for the day, including construction workers, Alaska DOT personnel, maintenance workers, pilots, and other local business employees. In addition, the nearby Comfort Inn had 52 lodgers

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)* Page 11

Case 3:13-cr-00008-SLG Document 1028 Filed 06/14/19 Page 11 of 27

staying over the previous night (Attachment N, Bates 76507-76512), and some of these people were most likely using airport facilities as well.

None of these factual activities are depicted in the government's vehicle swapping experiment video. It is as if the government purposefully chose the least busy time of day to conduct their experiment, a tactic that would have certainly aided the jury in accepting the plausibility of the swapping experiment. Under these circumstances the government could dramatize whatever speculations it chose to. One conspicuous example of this can clearly be seen in the vehicle swapping experiment video, when Agent Woods, driving the staged Ford Expedition out from behind the orange cone, cannot smoothly complete the against-traffic-flow maneuver as he backs it out of the space, so the vehicle ends up awkwardly blocking the roadway while Agent Woods completes a series of additional maneuvers to reposition it and drive away. There is no evidence that any of this actually occurred, and the government's depiction of it is only self-serving.

Had Wells driven either his Dodge truck or his wife's Honda CR-V against traffic at the busiest time of the day in front of the observant eyes of the several hundred people present at the airport and parked in the lot on the morning of April 12, 2012, he would have been noticed and commented upon, and more significantly, remembered, especially considering that many Kodiak residents know the Wells and both them and their vehicles would be readily identifiable. Not only would the awkward maneuvers depicted by the

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 12

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 12 of 27

government in the vehicle swapping experiment video have drawn considerable attention, performing them against traffic at the height of activity in the parking lot would likely have resulted in an accident or at best a near miss.

However, despite the extremely high probability of anyone performing these flagrant and hazardous maneuvers being observed and remembered by the hundreds of people at the airport that morning, and despite the extensive government investigation focused on locating a witness to support their conjecture, not one of the people present at the airport saw Jim Wells in person that day or witnessed the movement of either the Wells' Dodge truck or the Wells' Honda CR-V.

### 2. The Physical Conditions of the Parking Lot Surface

A major renovation project had begun at the Kodiak airport just prior to April 12, 2012, and included the replacement of the badly deteriorated terminal parking lot, which was comprised primarily of dirt interspersed with chunks of broken asphalt and gravel aggregate, all of which was scattered throughout a veritable minefield of potholes and depressions. This can be seen in Attachments C and D, where the degraded surface is visible underneath the Wells' Honda CR-V. Also note the large concrete barrier used to control traffic flow in the background of Attachment D with the word DEMO written on it.

CGIS Agent Woods confirmed the severely deteriorated condition of this parking lot and testified that "during the time of the – the crime it was under

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)* Page 13

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 13 of 27

construction. They had just began construction. It was – it was dirt. There was not parking lot dividers in there." (Tr. 1961 at 2).

Drivers would have been going slow and proceeding with great caution when negotiating the actual conditions of the airport parking lot on April 12, 2012. The uneven surface would have caused traction problems along with concern over potential damage to their vehicles.

Conversely, the government's vehicle swapping experiment video was produced under completely different circumstances. The parking lot restoration project had long been finished, the roadways and parking lots were smooth and solid, and government agents were not hindered by concerns over obstacles and vehicle damage. They drove fast and recklessly in their video experiment, just as they wanted it to appear to the jury that Wells did.

### E. Summary of Dissimilar Factors

There is little in the government's vehicle swapping experiment video that comports to the actual conditions as existed at the Kodiak airport on the morning of April 12, 2012. There is no evidence that the events depicted in the government's experiment occurred and no witness to support the speculations represented, so the government's dramatization is purely fictional. Hundreds of people were entering, parking, and leaving the airport and terminal area – none of this activity was depicted in the government's experiment. The parking lot was physically degraded to the point where driving through it was

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 14

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 14 of 27

hazardous and potentially dangerous – these significant factors were not depicted in the government's video.

# III.   ARGUMENT AND AUTHORITIES

## A. There Is No Foundation for the Government's Vehicle Swapping Experiment Video

To support admission of the vehicle swapping experiment video as a demonstrative exhibit, the government must show that there is foundation for the content of the video.  In this case, none exists. There are no witnesses to or camera recordings of Wells driving his Dodge truck on the airport grounds on the morning of April 12, 2012. There are no witnesses to or camera recordings of Wells driving his wife's Honda CR-V at any time on the morning of April 12, 2012. There are no witnesses to or camera recordings of Wells being present near or about the Kodiak airport on the morning of April 12, 2012.

Absent any type of foundation, the vehicle swapping experiment video only serves to dramatize the government's unsupported theory.

## B. The Government's Vehicle Swapping Experiment Video is not Demonstrative

To use this video as a demonstrative aid, the government must offer the video to demonstrate some other admissible evidence.  In the context of this case, the government cannot do this. Here, as Agent Woods explained, the video was made solely to "show how one … *if you wanted to*, how you *could* circumvent the video camera …." This was nothing more than a demonstrative aid used to bolster Woods' testimony relating to the government's theory about

how this part of the crime *could* have happened. There is no evidence, testimonial or otherwise, that established that any vehicle swap ever occurred at the Kodiak airport on the morning of April 12, 2012. Moreover, the vehicle swapping experiment video was made under completely different circumstances than what actually existed at the airport on April 12, 2012. There is nothing in the government's vehicle swapping experiment video that comports to the actual conditions as existed at the Kodiak airport on the morning of April 12, 2012.

Hundreds of people were entering, parking, and leaving the airport and terminal area on the morning of April 12, 2012. They are completely and conspicuously absent from the government's vehicle swapping experiment video. The physical conditions of the parking lot on the morning of April 12, 2012 would have impeded the government's conjectured traffic maneuvers. These significant impediments to the government's conjecture were ignored in the vehicle swapping experiment video.

The sole purpose for the government's vehicle swapping experiment video is to dramatize the government's unfounded theory that Jim Wells was able to commit the murders of Mr. Belisle and Mr. Hopkins because he obtained his wife's Honda CR-V from the airport and used it to drive to the T-2 building at COMMSTA. Whether this may have occurred is a question for the jury to decide based upon evidence, not upon dramatized government conjecture.

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                              Page 16

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 16 of 27

The government does not have an expert to opine on the accuracy of the vehicle swapping experiment video, and so it used a government agent who is neither an expert nor a percipient witness to anything relevant to introduce it. Without evidentiary foundation to support its admission in the first instance, the government cannot conduct an experiment, manufacture a video that shows exactly what it wants to depict from that experiment, introduce the video through an irrelevant party, and then somehow claim that the events depicted in the video are factual and the use of the video is necessary to demonstrate the testimony it has asked the irrelevant party to give. Because there is no foundation for the vehicle swapping experiment video and because it does not properly demonstrate the testimony of any witness, the court should exclude this video.

### C. Governing Law Regarding Video Experiment Evidence

Demonstrative or illustrative exhibits are properly used to demonstrate or illustrate admitted evidence such as testimony in order to help explain that evidence. In the previous trial, the government stated, over strenuous defense objection, that it was using its exhibit 171, the vehicle swapping experiment video, only to illustrate Agent Woods' testimony (Tr. 1970-1979). Despite this, the conjecture involved in establishing the presumed vehicle positions and movements underlie a deeper goal – that of providing a way for the jury to visualize and accept their conjectured series of events. Indeed, by Woods own description, that is what he was trying to show: "how one … could" do what

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 17

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 17 of 27

was depicted. This was clearly not at all a demonstration of evidentiary based testimony, but instead a demonstration of the government agent's theory of what may have happened.

This is an impermissible use of demonstrative or illustrative exhibits. There are no witnesses who saw Jim Wells or either the Wells' Dodge truck or the Wells' Honda CR-V being moved at the Kodiak airport on the morning of April 12, 2012.  The jury should only be allowed to take into account actual evidence, and then must decide for themselves whether Jim Wells went to the airport and swapped vehicles. They cannot be swayed by a government dramatization video that is based solely on conjecture, the foundation for which can only be established through the anecdotal testimony of the government investigator who created it.

The introduction of the vehicle swapping experiment video as a demonstrative exhibit requires a proper foundation by the government. The required foundation is similar to requirements of Rules 401 and 403. Because the government wants to use the video, it has the burden of laying a foundation of accuracy and fairness for the exhibit. *Sanchez v. Denver & Rio Grande Western Railroad Co., 538 F.2d304, 306 n.1 (10th Cir. 1976)*. The government must also show that this video is not more prejudicial than probative.

The government's vehicle swapping experiment video exhibit is not demonstrative evidence. Demonstrative evidence has been defined as "any display that is principally used to illustrate or explain other testimonial,

*Motion To Exclude Government Vehicle Swapping Experiment Video*
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 18

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 18 of 27

documentary, or real proof." [5] The government exhibit at issue here is not "demonstrative" or "illustrative" of any factual testimony or real proof. There is no testimony that Jim Wells was present at the airport terminal parking lot on April 12, 2012. There is no testimony that the Wells Honda CR-V ever moved from the airport parking lot on April 12, 2012. There is no testimony that the Wells' Honda CR-V returned to the airport parking lot after leaving the grounds on April 12, 2012. There is no testimony that Jim Wells ever accessed or drove his wife's Honda CR-V whatsoever on April 12, 2012. There is no evidence of any vehicle swap, much less how it "could" have happened on April 12, 2012.

A number of courts have held that the standard for admission into evidence is different for a reenactment and an illustration. Reenactments, like experiments, are held to a higher standard. "Experimental evidence is admissible so long as it is relevant and probative, and such evidence has probative value if the conditions of the experiment are identical with or similar to the conditions of the transactions in litigation." *Glick v. White* Motor Co., 458 F.2d 1287, 1294-95 (3d Cir. 1972) (citing *Crown Cork & Seal Co. v. Morton Pharms.*, Inc., 417 F.2d 921 (6th Cir. 1969)) (affirming the trial court's ruling that proffered experimental evidence was not sufficiently probative to be

---

[5] Robert D. Brain & Daniel J. Broderick, The Derivative Relevance of Demonstrative Evidence: Charting Its Proper Evidentiary Status, 25 U.C.DAVIS L.REV. 957, 968-69, (1992) (footnotes omitted). Brain and Broderick note that demonstrative evidence "is, in short, a visual (or other sensory) aid." *Id.* at 969.

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 19

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 19 of 27

admissible). "When confronted with photographs, films, and videotapes of experiments or demonstrations that purport to replicate actual events, courts require the party seeking to admit the evidence to prove that the experiment or demonstration was conducted under substantially similar circumstances as the actual event." *Russo v. Mazda Motor Corp.*, Civ. A. No. 89-7955, 1992 WL 309630, at *2, *3 (E.D. Pa. Oct. 19, 1992) (Huyett, J.) (citing John W. Strong, et. al., McCormick on Evidence § 214, at 19-20 (4th ed.1992)) (photographs purporting to replicate an accident were admissible "to demonstrate mechanical principles relative to the vehicle and as a visual summary of the expert's opinion").

Most case law on the subject of the admissibility of video reenactment has arisen in the civil context, such as cases involving accident reconstruction. But both civil and criminal courts have consistently held that to be admissible, an expert's reenactment of an accident generally must be "conducted under substantially similar conditions" as the accident itself. See *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1336 (11th Cir. 2011) (quoting *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977)).

In *Espinoza v. Dunn,* WL 21601 (9th Cir. 01/18/1995), an unpublished opinion, the Ninth Circuit rejected a demonstration on dissimilarity grounds in an excessive force case. In that case, there was a factual dispute as to whether the plaintiff had hit his head against the window of a car. *Espinoza,* at *1. During trial, the jury saw a demonstration where the law clerk-in place

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)* Page 20

Case 3:13-cr-00008-SLG Document 1028 Filed 06/14/19 Page 20 of 27

of the plaintiff-sat in the car and was unable to hit her head against the rear window. *Id.* at *2. However, the law clerk was told not to move, whereas the plaintiff was allegedly kicking and thrashing. *Id.* at *4. The Ninth Circuit concluded that this dissimilarity "was of such a nature as to create a discernible risk that the demonstration was seriously misleading." *Id.* Indeed, "[t]he very physical possibilities the court wished to test may have depended upon the element excluded from the demonstrations." *Id.*

In *United States v. Jackson,* 479 F.3d 485, 489 (7th Cir. 2007), the court found no error in the admission of a drive time demonstration to see how long it would take to get from the scene of a shooting to defendant's girlfriend's residence. The Court there found no error in the admission of this demonstration for two reasons. First, it was offered in rebuttal to rebut the defendant' alibi, and second, the Court found that the test was conducted under substantially similar circumstances. The Court drew a distinction as to the admissibility of such evidence based on the purpose for which it was being offered:

> Whether in a criminal case or a civil one, however, the requirement's application always depends on the purpose for which the experiment is introduced. *See Jones v. Ralls,* 187 F.3d 848, 853 (8th Cir.1999). So, if the purpose is to recreate an event, the timing and physics of which are critical, courts will only admit evidence of experiments that are conducted under nearly identical conditions as the actual event. *Broun, McCormick* § 202. For instance, in *Jackson v. Fletcher,* 647 F.2d 1020, 1026-28 (10th Cir.1981), the district court erred by admitting evidence of an experiment purporting to recreate an accident between a car and a truck in order to determine the precise speed of the truck at the time of collision. The court held that since the simulation truck was empty whereas the actual truck carried a full load

(creating a weight differential of 37,000 pounds), and the two trucks were different model years, the experimental conditions were not substantially similar to the actual ones. *Id.*

When events portrayed in the recreation are inconsistent with the testimony to which it relates, the recreation should be excluded as unduly prejudicial. Furthermore, the reenactment must also "fairly and accurately" represent the evidence in the case. In this case, the vehicle swapping experiment video is significantly dissimilar to the conditions that were present on the morning of April 12, 2012. These dissimilarities include the position and movement of the Wells' Honda CR-V, the physical conditions of the parking lot, the presence of several hundred people at or near the airport terminal, and the rank speculation that Jim Wells and the Wells' Dodge truck entered the parking lot at all.

> When a party generates demonstrative evidence based on conditions that may be dissimilar to the actual conditions, the dissimilarities create uncertainty that undermines the probative value of the evidence. *United States v. Baldwin*, 418 F.3d 575, 579-80 (6th Cir. 2005) (affirming trial court's refusal to admit a defendant's videotaped reenactment of his alleged kidnapping when the car used in the demonstration was not identical to that present during the alleged kidnapping, the defendant was in a different position during the demonstration than during the alleged kidnapping, and the rope used in the demonstration was knotted less than the one with which the defendant was supposedly bound). In this case, even if the videotape might inform jurors, the risk of inaccuracy both limits the videotape's probative value and increases the possibility of unfair prejudice. *United States v. Williams,* No. 09-0026 Doc. 93 (D.D.C. 10/18/2010)

There are several cases in which a videotaped reenactment of a crime was held inadmissible due to the failure to establish that the video was substantially similar to the actual events and the risk of prejudice from

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 22

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 22 of 27

inflammatory images. *See, e.g.*, *State v. Stockmyer*, 83 Wn.App. 77, 920 P.2d 1201 (1996); *Dunkle v. State of Oklahoma*, 2006 OK CR 29, 139 P.3d 228 (2006); *Eiland v. State*, 130 Ga. App. 428, 203 S.E. 2d 619 (1973)). *State v. Trahan*, 543 So. 2d 984, 997 (La. Ct. App. 1989). ([The videotaped reenactment] was inadmissible because the reconstruction did not accurately depict the condition or the position of the parties."), *State v. Hopperstad,* 367 N.W. 2d 546, 549 (Minn. Ct. App. 1985), (overruling the trial court's admission of a video reenactment depicting the events surrounding defendant's arrest); *State v. Caudill*, 789 S.W. 2d 213, 216 (Mo. Ct. App. 1990).

("A videotape reenactment of a crime ... where the victim reenacts the crime with a third party playing the role of the defendant, should be and is hereby declared inadmissible in Missouri."); *Lopez v. State,* 651 S.W. 2d 413, 416, (Tex. Ct. App. 1983) ("We find that any staged, re-enacted criminal acts ... involving human beings are impossible to duplicate in every minute detail and are therefore inherently dangerous, offer little in substance and the impact of re-enactments is too highly prejudicial to insure the State or the defendant a fair trial."). *Bowden v. State,* 297 Ark. 160, 7761 S.W. 2d 148 (When a test or experiment is an attempt to reenact the original happening, the essential elements of the experiment must be substantially similar to those existing at the time of the original occurrence).

In *Borough v. Duluth, Missabe & Iron Range Railway Co.*, 762 F.2d 66 (8th Cir. 1985) the Eighth Circuit upheld the trial judge's decision to exclude

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 23

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 23 of 27

the railroad's video exhibit in a case where the plaintiff employee was injured when he stepped from a moving locomotive. Preparing for trial, the defendant produced a video that showed the proper method for stepping off a moving locomotive. Sustaining the plaintiff's objection, the trial judge refused to admit the video reenactment into evidence and the Eighth Circuit agreed that the video was properly excluded under Rule 403. The Court held that the video was carefully staged by the railroad for the purpose of this litigation.

In *Eiland v. State,* 130 Ga.App. 428, 203 S.E.2d 619 (Court of App. 1973), the Court stated:

> However, photographs and especially movies which are posed, which are substantially different from the facts of the case, and which because of the differences might well be prejudicial and misleading to the jury, should not be used, and this is especially true where the situation or event sought to be depicted is simple, the testimony adequate, and the picture adds nothing except the visual image to the mental image already produced.

The Sixth Circuit has held that "[e]xperimental evidence is admissible so long as the evidence is relevant and probative, and experimental evidence is deemed to have probative value if the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation." *United States v. Baldwin*, 418 F.3d 575, 579-80 (6th Cir. 2005) (quoting *Crown Cork & Seal Co. v. Morton Pharm., Inc.*, 417 F.2d 921, 926 (6th Cir. 1969)). Courts can properly admit experimental evidence if "the tests were conducted under conditions substantially similar to the actual conditions." *Persian*

*Motion To Exclude Government Vehicle Swapping Experiment Video*
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                                    Page 24

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 24 of 27

*Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994) (citing *Randall v. Warnaco, Inc.,* 677 F.2d 1226, 1233-34 (8th Cir. 1982)).

In *United States v. Mayfield,* (E. Dt. Mich. No. 17-20060, 8/23/17) a defendant charged with being a felon in possession of a firearm objected to a government video where the government recorded a demonstration of how the defendant could have thrown a firearm they had recovered on the street, from his moving car. In disallowing the video because it was not "substantially similar," the court noted:

> Defendant notes there are a number of differences between the video, and the facts from the police report and affidavit discussing the events. First, the demonstrative video was filmed during the daytime when it was not snowing. Second, the car that is driven in the demonstrative is not a Cadillac. Third, the car that is driven by the individual portraying Plaintiff and the car that is driven by the individual recording the video appear to be following the 25 mph speed limit. Defendant does acknowledge at least one similarity: the cars in the demonstrative video follow the route that Plaintiff is claimed to have followed.

The government's approach in Wells is even more nebulous than in *Mayfield*, where at least the government had a recovered firearm. In the Wells case, the government has only conjecture about what it is trying to show. Because the government's vehicle swapping experiment video does not properly demonstrate or illustrate the testimony of any witness, the court should exclude this video.

## D. The Vehicle Swapping Experiment Video is Misleading

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                     Page 25

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 25 of 27

Even with a limiting instruction and cross examination, the use of the government-manufactured vehicle swapping experiment video is misleading to the jury. The government's introduction of this video at the first trial was confusing and misleading. The government had to rely solely on the government agent who created it to explain what it depicts. There was no evidentiary basis for the video. Finally, the circumstances under which it was made, were nothing like what the actual conditions were at the Kodiak airport two years prior on the morning of April 12, 2012.

Allowing the government to use the **vehicle swapping experiment video** serves only to support the theory of prosecution while misleading and confusing the jury.

### E. The Vehicle Swapping Experiment Video is not Helpful to the Jury

The use of the government-manufactured video will not "help the trier of fact to understand the evidence." F.R.E. 702. Clearly, the **vehicle swapping experiment video** is not substantive evidence. Rather, it was completely manufactured by the government. Allowing the government to show this video to the jury creates the illusion that the depicted events actually occurred and persuades the jurors to accept the vehicle swapping experiment video as fact. Because the vehicle swapping experiment video is not demonstrative evidence related to any admissible testimony about actual events from April 12, 2012, it in no way helps the jury to decide a material issue at trial.

MOTION TO EXCLUDE GOVERNMENT VEHICLE SWAPPING EXPERIMENT VIDEO
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*                    Page 26

Case 3:13-cr-00008-SLG   Document 1028   Filed 06/14/19   Page 26 of 27

# IV. CONCLUSION

The government should not be allowed to argue their theory of the case during the evidentiary part of the trial by way of exhibits that are unfounded and based solely on speculation and not fact. Argument about the theory of the case should be restricted to closing argument. Moreover, this dramatization of the government's conjectured events will only serve to mislead and confuse the jury. For the reasons stated herein the government's vehicle swapping experiment video should be excluded.

DATED this 14th day of June, 2019.

Respectfully submitted,

/s/Peter A. Camiel
Peter A. Camiel WSBA 12596
Attorney for Defendant Wells

/s/Gary Colbath
Assistant Federal Defender
Attorney for Defendant Wells

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on June 14, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
/s/ Gary G. Colbath