Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
5200 Pike Street, Suite 2500
Seattle, WA 98101
Phone: (206) 624-1551
Email: petercamiel@yahoo.com

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-CR-00008-SLG |
| Plaintiff, | ) | |
| | ) | MOTION TO EXCLUDE |
| v. | ) | TESTIMONY OF GOVERNMENT |
| | ) | WITNESSES JOHN & TERRY STEIN |
| JAMES MICHAEL WELLS, | ) | |
| Defendant. | ) | EVIDENTIARY HEARING |
| | ) | REQUESTED |
| | ) | |

## SPEEDY TRIAL STATUS

A period of additional excludable delay under 18 U.S.C. § 3161(h) will NOT occur as a result of the filing this motion as this motion will not result in any delay of trial as the Court has ruled this a complex case and has set trial for September 9, 2019, taking into account any pretrial motions that will be filed in this case.

## I.    INTRODUCTION

Defendant Wells though counsel Peter A. Camiel and Gary Colbath moves this Court to exclude the testimony of government witnesses John and Terry Stein and the evidence related to John Stein's prior loss of a .44 caliber

handgun and decorative swords.  The testimony is irrelevant, speculative, argumentative, unfairly prejudicial, will cause confusion of the issues for the jury.  It should be excluded pursuant to F.R.E. 401, 403, 404.

## II.  FACTS

### A. John Stein's Testimony

At trial, the government called John Stein, a former friend of Jim Wells, to testify about Stein's loss of a .44 caliber Smith & Wesson handgun almost fifteen (15) years prior to the murders.  A transcript of Stein's entire testimony is attached for convenience as Attachment A.

Stein was in the U.S. Coast Guard stationed at Kodiak where he met and supervised Jim Wells.  He and Wells also became personal friends; they hunted and fished together.  Stein retired from the U.S. Coast Guard in 1989.  In 1996, he decided to leave, and ultimately sell, his home in Kodiak.  Before leaving he placed most of his belongings in storage and rented out his home.  At the time, he took a large gun safe containing a number of firearms and optics to Wells' house for safe keeping until he returned from traveling.  The Wellses later helped Stein liquidate and dispose of his personal property, and clean and sell his house.

In approximately January of 1997, after having been gone from Kodiak from several months, Stein returned to the island and stayed with the Wellses for a period of time.  Upon his return, he discovered that the door to his safe was open and that a handgun and a rifle scope were missing.  The handgun

was a .44 caliber Smith & Wesson Model 629 (Stein actually had two such guns) and the scope was a Leupold M8-12X. Stein asked Jim Wells about each item, but Wells knew nothing about either. In fact no one in the household knew about the items, nor could Stein say for sure when he last saw them.

Stein was a life member of the National Rifle Association (NRA). He had also held a federal firearms license for many years which he used to buy personal guns at wholesale cost. He also used the license to sell guns.[1] Through the NRA, Stein had firearm insurance for his large personal gun collection. After his handgun was discovered missing, Stein attempted to obtain insurance payment for the gun through his policy. However, in order to submit a claim, Stein was told he need a police report to submit as documentation.

On August 21, 1997, Stein filed a "missing firearm" report with the Alaska State Trooper's Kodiak office. (Attachment B, Government Trial Exhibit 232A.) Stein reported as follows:

> In June of 1996 1 rented out my house. I put most of my household goods in storage at Kodiak Transfer. I decided to leave my gunsafe and the guns with a friend. He was provided the combination to the safe.
> I then left the U.S. for a period of six months. When I returned to Kodiak in January of 1997 1 noticed that one revolver was missing. A telescopic sight was also missing.
> I thought that I might have sent these items to my brother in Milwaukee. I arrived in Milwaukee recently and carefully inventoried the items (including some firearms) that I had sent to him. We determined that the gun had never been sent to him and had indeed been left in Kodiak with the remaining guns.

---

[1] Stein testified that during their friendship, he had sold Jim Wells a Ruger Super Blackhawk .44 caliber handgun.

MOTION TO EXCLUDE VIDEO EXPERIMENT EVIDENCE
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)* Page 3

> The lost firearm is a Smith & Wesson Model 629. This is a stainless steel 44 magnum with 6-inch barrel. The serial number is AJL2172.
> For your general information, the missing scope sight is a Leupold M8-12X. This is a 12-power rifle sight. The serial number is N157250.
> For further information you may contact Mr. Jim Wells on Pavlof Lane in Bells Flats. His phone number is 487-2415.

Stein never received insurance coverage for the firearm, nor was it ever recovered or seen again. Stein also testified that he thought he had lost a U.S. Coast Guard ceremonial sword and some other souvenir swords. However, later during the investigation of the murders, an FBI agent called to tell him that his U.S. Coast Guard sword had been found at Wells' house. Stein testified he had not given the sword to Jim Wells or told him he could keep it.

**B. Terry Stein's Testimony**

The government called Terry Stein, John Stein's younger brother, to testify about his knowledge of John's lost gun. Terry testified that back in 1996, "I needed a safe at the time, and he was willing to ship it to me. If I paid the shipping costs, I could have it. So it also came with his weapons that he didn't want to leave behind when he went to Nicaragua." Terry explained that upon receipt of the safe he inventoried the contents and wrote down the serial numbers of the guns that belonged to his brother so there would be an accurate record of what he received.

Terry testified that during a later visit to Terry's home in Wisconsin by John, that he and John compared a list John had of items he inventoried as missing from Alaska with the list Terry had made upon receipt of the gun safe

and its contents. Terry testified that John was missing a Smith & Wesson Model 629 handgun according to the records he was shown. Terry had no knowledge of the circumstances surrounding the loss of the firearm. He testified he believed that when his brother compared the lists and noted the missing gun, John went to the local Wisconsin police department to file a missing gun report. He noted the incident he was describing "was eighteen years ago" so he could not remember the exact date his brother made the report.

## III. ARGUMENT AND AUTHORITIES

### A. John Stein's Firearm Loss is Irrelevant & Prejudicial

The evidence in this case is very limited as respects the firearm used to murder the victims. No murder weapon was ever found. However, law enforcement recovered pieces of some of the bullets used in the shooting. From these, testing determined that they were fired from a .44 caliber firearm that had been manufactured by either Smith & Wesson, Taurus, or Llama. No other specific information regarding the firearm or ammunition used was ever determined.

However, numerous handguns and handgun ammunition were seized from Jim Wells. Pieces of fired bullets were excavated from Wells' back yard. Other guns were seized from people who knew Wells or that were found during investigation related searches. All of Wells' guns and ammunition, and indeed,

everything found and tested by law enforcement during its investigation was excluded as being involved in the murders.

No witness at trial testified they ever saw Jim Wells, or anyone else associated with Wells, in possession of John Stein's lost .44 caliber handgun. Although others had seen Jim Wells with handguns in the past, it was no secret he owned handguns, including a .44 caliber that Stein himself had sold to Wells. All of these guns, however, were excluded as the murder weapon. Thus, no witness, no expert and no physical evidence could tie Stein's lost gun to the murders that occurred some 15 plus years after it was lost.

Despite these uncontroverted facts, the government used Stein's testimony, which did not allege that Jim Wells had taken his lost .44 caliber handgun, to argue that this must have been the gun Wells secreted for years, used in the murders, and then disposed of without a trace. To bolster its speculative theory, the government introduced the completely irrelevant information regarding Wells' possession of Stein's ceremonial sword following the murders, to suggest first that Wells had wrongfully taken the sword, and second, that it was then reasonable to believe that he also had stolen Stein's gun. Again, arguments unsupported by evidence and wholly irrelevant to the murders that happened some fifteen years later.

Under F.R.E. 401, proffered evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." F.R.E. 402 provides that "all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." F.R.E. 403 articulates the judicial power to exclude relevant evidence because of prejudicial dangers or considerations. Relevant evidence may be excluded under F.R.E. 403 if its probative value is substantially outweighed by one or more of the articulated dangers or considerations. Those include unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

In this case, the government simply has no evidence whatsoever that ties John Stein's lost .44 caliber handgun to the crimes Jim Wells is charged with. The fact that the gun was the same caliber as the one used in the murders is unavailing. Indeed, the .44 caliber is one of the most popular calibers of handguns made, and is especially popular in Alaska. The bullets used in the murder were fired by a gun manufactured by one of three worldwide distributors of firearms: Smith & Wesson, Taurus and Llama. These companies have produced and sold tens of thousands of .44 caliber pistols and there are literally hundreds of thousands of them in circulation. Stein's lost gun is one of them, but may be excludable just based on manufacturer alone as it has only a 1 and 3 chance of being in the class of gun that fits the murder weapon.

All of the physical and ballistic evidence collected by law enforcement and tied to Jim Wells in any fashion was excluded from involvement in the murders. Indeed, even Stein did not allege Jim Wells took or had his missing gun. Stein could not even be sure when he last saw it or whether he might have shipped it to his brother until he checked with his brother in Wisconsin. A rifle scope was missing as well as the .44 caliber handgun, and neither were ever seen or discovered in Wells' possession. Stein thought these items were in the safe he took to Wells' house but could not testify that he saw them there at the time the safe was delivered. He only discovered they were lost after being gone from Kodiak for months. Then, he tried to collect insurance for the items as lost. When he needed a police report for such purposes several months later, he not only filed a "missing weapon report" with the Kodiak Troopers, but instead of implicating Jim Wells, Stein told the Troopers that "For further information you may contact Mr. Jim Wells on Pavlof Lane in Bells Flats. His phone number is 487-2415." Knowing Wells would assist in the investigation, rather than be a suspect. However, the lost gun was never seen again.

Over fifteen years later, with no evidence to relate the long-lost gun to the T2 murders, the government used Stein's testimony argue that this lost gun was the murder weapon. They bolstered this with admission of the fact that a missing U.S. Coast Guard sword that once belonged to Stein was found at Wells' house during the investigation. Of course this was true because Wells had cleaned out Stein's home after Stein fled the state and abandoned his

property, leaving the Wellses to liquidate his things and sell his home, not because Wells had wrongfully taken anything from Stein. The government used the "evidence" of the missing sword to make Wells look like someone who stole from his friend and in order to argue the inference that Wells must also have stolen the missing .44 caliber handgun. The government then boot-strapped this inference into an argument that the jury should then believe that Wells kept Stein's .44 caliber handgun secreted and unknown to all others for some fifteen years, before then using it commit these murders. These layers of speculation and inference building should not be permitted again by this Court.

To begin with, the evidence of Stein's gun and sword turning up missing in 1996 is irrelevant as respects these murders in 2012. The Ninth Circuit's ruling when discussing the use of the 2003 Attu Island incident under Rule 404(b) are illustrative: "There is, however, no logical basis to explain how a 2003 incident, marked by a different supervisor and bearing no connection to either victim, might provide motive for a double homicide nearly one decade later. It is an unexplainable outlier. The only possible purpose of this testimony would be to show Wells' propensity." *United States v. Wells,* 879 F.3d 900, 929 (9th Cr. 2018).

Neither of these items could have had anything to do with the murders in 2012. In 1996, neither Hopkins nor Belisle worked at T2 or with Jim Wells. From 1996 and through 2012, these items were never seen or tied to Jim Wells until the sword was discovered after, but unrelated to, the murders. His

possession of the sword was offered as nothing more than propensity evidence which the government then used to tie in its argument about the missing gun. However, without any evidence that the gun was actually involved in the murders, Stein's testimony has no relevance at trial and should be excluded.

**B. Terry Stein's Testimony**

Terry Stein verified only that his brother said he was missing a .44 caliber handgun in 1996 after leaving Alaska. Terry knew nothing about the circumstances of how the gun went missing and certainly knew nothing about Jim Wells having the gun. His testimony was simply used to bolster the testimony of John Stein and is irrelevant if John Stein's testimony is not admitted. As such this testimony should be excluded as well.

**C. Rule 404 and 403 Considerations**

In its prior decision in this case, the Ninth Circuit set out the general analysis for evaluating the admissibility of evidence under Rules 404(b) and 403. "Other acts evidence is admissible under Rule 404(b) if it (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged." *Beckman*, 298 F.3d at 794. "Of course, the probative value of the evidence must not be 'substantially outweighed by the danger of unfair prejudice.'" *United States v. Wells*, 879 F.3d 900, 930 (9th Cir. 2018) citing *United States v. Blitz,* 151 F.3d 1002, 1008 (9th Cir. 1998) (quoting Fed. R. Evid. 403).

"The gravamen of the historic attempt to exclude such character evidence is to force the jury, as much as humanly possible, to put aside evidence" going only to a defendant's character, "and consider the body of evidence, both testimonial and physical before them, in order to decide if the prosecution has convinced them, beyond a reasonable doubt, that the defendant is guilty of the crime charged." *McKinney*, 993 F.2d at 1385 (granting habeas relief in murder prosecution on basis of admission of evidence of defendant's fascination with knives); see also *Old Chief v. United States*, 519 U.S. 172, 182 (1997) ("There is no question that propensity would be an 'improper basis' for conviction"); *Michelson*, 335 U.S. at 475-76 ("The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime").

Wells objects to this testimony under Rules 404(b) and 403 because it lacks probative value and it is unfairly prejudicial, confuses the issues before the jury, will mislead the jury, will cause undue delay and will waste time. First, under the 404(b) factors, which are proper to look at as this evidence is really alleging prior bad acts of Wells, the evidence does not tend to prove a material issue. Indeed, because Stein's lost gun cannot be matched in any fashion to the potential murder weapon, even by class, the facts surrounding its loss prove nothing. Most significantly, the evidence is remote. Terry Stein

summed it up best when asked about when the report of the lost firearm was made at the last trial by noting, "that was eighteen years ago, I cannot remember that." Next, nothing about the loss of John Stein's gun is proven with sufficient evidence to establish that Jim Wells was responsible for even taking the gun, much less possessing it for all those years and ultimately using it to commit murder. John Stein himself does not know how the gun was lost and has never accused Jim Wells of taking it. Finally, the testimony is not admitted to prove intent. This testimony does not meet the criteria for admission under 404(b) related to the lost firearm. For the same reasons, the evidence about the swords is even less probative.

Should even a shred of probative value be found related to this evidence, it must be excluded under Rule 403. This evidence is unfairly prejudicial because it paints Wells first, as a thief who stole his friend's property, and second, as the possessor of an unaccounted for weapon when neither of these things is true, nor proven. This evidence confuses the issues before the jury as it relates to events that took place over fifteen years ago that cannot be tied at all to the crimes charged. It invites speculation and will result in the jury deciding the case based on unproven, propensity testimony about Wells. The evidence creates a high level of unfair prejudice to Wells which creates an undue tendency to suggest decision on an improper basis, including an emotional one. The prejudicial effect of this non-probative evidence

substantially outweighs all value it has in this case for helping the jury properly decide the issues before it, and must be excluded.

## IV. CONCLUSION

The government should not be allowed to prove its case with remote, speculative, propensity evidence. For all the reasons stated herein above, the testimony of John and Terry Stein, and all evidence related to John Stein's lost .44 caliber handgun should be excluded.

DATED this 14th day of June, 2019.

Respectfully submitted,

*/s/Gary Colbath*
Assistant Federal Defender
Attorney for Defendant Wells

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596
Attorney for Defendant Wells

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on June 14, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*