Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
5200 Pike Street, Suite 2500
Seattle, WA 98101
Phone: (206) 624-1551
Email: petercamiel@yahoo.com

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | Case No. 3:13-cr-00008-SLG<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION [1008] TO DEFENDANT'S MOTION TO LIMIT THE TESTIMONY OF GOVERNMENT EXPERT ROBERT MORTON [1004]** |

Defendant James Michael Wells, through counsel Gary G. Colbath and Peter A. Camiel, files this reply in further support of Docket No. 1004, Defendant's motion to limit the testimony of government expert Robert Morton, and to address issues and misrepresentations contained in the government's opposition, Docket No. 1008.

### INTRODUCTION

In Docket No. 1004, Wells moved to limit the government-noticed expert testimony of witness Robert Morton. Morton testified at the first trial. Wells' motion

seeks to have the Court limit Morton's opinions and testimony, not wholly exclude it. The government asserts that the defense's assertion that Morton's testimony will be similar to his testimony from the prior trial is "mistaken," and that the defense "should cease living in the past and speculating that things will be posed the same and answered the same." It asks that the motion be denied as premature.

The government's position regarding this motion is disingenuous given prior statements by counsel that its case will be very similar to the prior trial and its notice of experts given to the defense on retrial with respect to Morton. On December 14, 2018, the government gave the defense notice of its intent to again call Morton as an expert at retrial and had this to say:

> **Robert Morton**: (Retired) Supervisory Special Agent, F.B.I. <u>In addition to the information already disclosed</u> regarding Mr. Morton's crime-scene analysis, the government brings to your attention his supplemental report dated November 30, 2018, attached hereto. [Emphasis added.]

In his supplemental report (Attachment A hereto), prepared by Morton for retrial, he first notes that the information contained in the supplement is "based upon a second review of case materials developed during this investigation, a review of the transcript of the original trial of James Wells, which took place in 2014, in which the author provided testimony, and the appeal transcript from the United States Ninth Circuit Court of Appeals." Morton then indicates that he testified previously and "opined that based upon the analysis of the shooting scene, both James Hopkins and Richard Belisle were targeted based upon the actions of the offender." After listing

the factors upon which his prior opinion was based, he concludes his supplemental report with this: "The author <u>has not been provided any additional information</u>, which would change his opinion that this was a personal cause motivated double murder." [Emphasis added.]

From the government's own disclosure, and its expert's own supplemental report, the defense can only conclude one thing: Morton's ultimate opinion, and the reasons supporting it, are identical to what he testified to in the first trial. Indeed, his report says just that. Either the government's notice is completely inaccurate and it is hiding the ball about the true nature of what Morton intends to present, or the government's representation in Docket No. 1008 that the testimony will NOT be "posed the same and answered the same" is not true.

## FACTS

The "facts" recited by the government in its brief largely just restate its case theory and the inferences it would like to draw from disputed or non-existent fabrications. Most are meaningless here, or offered only to prejudice the Court. The Court need only decide this motion based on the four corners of Morton's report and supplemental report, coupled with his prior testimony at trial.

## ARGUMENT & AUTHORITIES

The government spends the bulk of its opposition arguing that Morton is qualified to give his opinions. Wells agrees that Morton is a qualified expert. He is qualified to give all of the opinions he gave, however, most just happen to be

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                 Page 3

inadmissible under the Rules of Evidence and the Ninth Circuit's prior decision as respects this case. The government says Morton provided a "clinical analysis of the facts of the murders and the acts of the murderer and the victims." This is perhaps its most honest description of the testimony and demonstrates the proffer is far more about developing a profile than crime scene analysis.

The government admits Morton was assigned to the Behavioral Analysis Unit of the FBI. Within four days of the murders he was tasked to do "a behavioral assessment" of Jim Wells, the only suspect in the case. Morton's specialty included "development of unknown offender characteristics [a profile], the development of interview designs for suspects, and . . . providing assistance with strategies for prosecution." His past research focused on "the characteristics [profiling] of serial murders, the search methodologies for abducted children, and characteristics [profiles] of sexually motivated murder." Morton is a profiler. Indeed, he taught profiling to other FBI agents for years.

Morton's testimony is offered by the government to "provide contextual analysis of . . . facts . . . designed to assist the jury as to the circumstances of the murders." The government places stock in the fact that Morton "does not even opine that Wells is the murderer." The government says one thing, but Morton's stated opinions and the purpose underlying them says something completely different.

Morton's ultimate opinion, as he describes it, provides a "classification" for the **type** of murders committed here. He calls them "personal cause homicides." Motive

determination is at the heart of the entire classification system developed by FBI profilers. See, <u>Crime Classification Manual</u>, *Douglas, Burgess, Burgess, Ressler,* Third Ed. 1992. The "identification" of motive, however, is not an objective process. Nevertheless, Morton's report tracks directly through the line of classic stage development in determining a profile: forensic evidence review, victimology, crime scene analysis, motive "discernment;" and concludes with a classification determination of "personal cause homicide" which he further defines for this case as a conflict murder.[1]

Thus, he starts with a characterization of the murders, and then lays out the characteristics (profile) of that type of crime. Then, he purports to apply some of the facts of the case (although many are speculative, assumptive or completely unknown) to those characteristics to explain why these homicides could fit the profile or classification of crime he has decided occurred here. This is classic profiling.

Morton then jumps his classification of the crime and offers a speculative opinion about the motive for the murder based upon the classification (profile) of the type of crime he describes. The motive opinion describes the profile or "typical" justification for the type of crimes Morton says occurred here, which of course provides the basis for the government's entire onslaught of 404(b) motive evidence it

---

[1] Not surprisingly, Morton fails to note that "conflict murder" which is the *class* he says these murders fit, is just one of the many types of categories of Personal Cause Homicide, which includes erotomania-motivated murder, domestic homicide, conflict homicide, authority murder, revenge murder, and non-specific motive murder (including religion-inspired murder). *Id.* at 165.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                 Page 5

seeks to admit. Morton lays out the scenario that the murderer had to be "familiar with the . . . location, . . .the victim's time schedule, . . . targeted [them only], . . . [had] a singular purpose, to kill both victims, . . . brought a large caliber weapon and fired multiple times to ensure the death of the victims, . . . and killed the victims for some personal reason." This opinion unequivocally describes the **profile** that law enforcement would expect to see for an offender in a personal cause homicide as defined by Morton. All that is left, if the testimony is admitted, is for the government to say Jim Wells fits the characterization (or profile) described by Morton. They did so the first trial and obviously, based on their notice and Morton's supplemental report, plan to do it again.

This Court should not permit the cardinal error that caused reversal at trial before, to happen again. Morton's testimony should be limited to testifying only about crime scene facts and physical evidence analysis, nothing more.

DATED at Anchorage, Alaska this 18th day of June, 2019.

Respectfully submitted,

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender

*/s/ Peter A. Camiel*
Peter A. Camiel WSBA 12596
Attorney for Defendant

*Attorneys for James Michael Wells*

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on June 18, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*