Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Attorney for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>Defendant. | Case No. 3:13-cr-00008-SLG<br><br>**DEFENDANT'S REPLY BRIEF TO GOVERNMENT OPPOSITION [1039] REGARDING MOTION TO EXCLUDE TESTIMONY OF JOHN & TERRY STEIN [1031]** |

Defendant James Michael Wells, through counsel Gary G. Colbath and Peter A. Camiel, files this reply in further support of Docket No. 1031, Defendant's motion to exclude the testimony of government witnesses John & Terry Stein, and to address issues raised in the government's opposition, Docket No. 1039.

## INTRODUCTION

In Docket No. 1031, Wells moved to exclude the testimony of John and Terry Stein as it relates to irrelevant, speculative matters, and implicates character evidence concerns under the Rules of Evidence. As has been the case throughout this prosecution, and continuously throughout the recent motion practice before this Court, the government's response here puts forth its false narrative about the nature

of the evidence in the case in order to support its attempt to admit inadmissible testimony that supports its prosecution theory, rather than the truth.

## ARUGMENT & AUTHORITIES

Citing *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir.1995), the government argues that the Steins' testimony about John's lost .44 caliber handgun is "necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime...." *Id*. at 1012–13. The government's "*story,*" which is aptly characterized, is best stated on page three of its opposition and boils down to these salient assertions: "Wells had custody and control over the exact same make and model of revolver identified as the (sic) likely murder weapon . . . which was not readily traceable to him . . . the testimony of John . . .and Terry Stein, provide background of how Wells came into possession of the suspected murder weapon."

The representations made in the government's *story* are beyond inaccurate, they are false and disingenuous. The actual evidence about the gun and bullets used in the murder is very limited. It is uncontroverted that a .44 caliber weapon was used to murder the victims. It was further determined that a list of firearms that could have fired the bullets used in the murder would include revolvers manufactured by Smith & Wesson, Taurus, and Llama, and any other firearm with comparable rifling characteristics. It is also uncontroverted that the bullets used were jacketed and had markings on them from the weapon showing five lands and groves with a right hand

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG  Page 2

twist.  These are the only facts that are factually and scientifically known about the gun and bullets used to commit the murders.

Breaking down the government's *story,* built using the Steins' testimony, demonstrates the inadmissibility and impropriety of the proffer.  The whole initial premise, that Stein's gun is the "suspected murder weapon" is purely speculative.  The truth is, the Stein .44 caliber handgun has not been seen by anyone since sometime in 1996, almost 23 years ago.  No one, nowhere, ever since that time has seen the gun, much less placed it with Jim Wells.  As important, is the truth that Alaska is replete with .44 caliber handguns, thousands of them, as it is one of the most popular bear and home defense firearms made.  More significant is the fact that three major firearm manufactures were identified (plus an unknown list of smaller and custom gun makers) to have made guns that fit the limited characteristics known about the actual murder weapon.  This means hundreds of thousands of such firearms were produced and in circulation prior to the 2012 murders.[1]  Of these thousands of possible guns used in the murders there is simply no evidence that supports a theory that Stein's gun is the "suspected" murder weapon.  The statistics on this make it almost impossible.

---

[1] Stein's gun, a Smith & Wesson Model 629, began production in the 1950's and remained the province of handgun enthusiasts, law enforcement and hunters until 1971, when Clint Eastwood made it famous as "the most powerful handgun in the world" in the movie Dirty Harry. After the movie's release, retailers had trouble keeping it in stock.  In the 1990s, Smith & Wesson discontinued production of the 'basic' Model 629; since however, the model, in limited or 'custom' configurations, has been manufactured in as many as 10 evolutions.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                                     Page 3

Continuing to analyze the *story*, one must consider the government's representation that Stein's gun is "the exact same make and model of revolver identified as the (sic) likely murder weapon." This is a lie. The murder weapon has never been identified. The make of the weapon has been narrowed to no less than three major manufactures and several smaller gun makers. And absolutely nothing is known about the model of the weapon. Yet the government espouses these falsities knowing that its own team of experts determined that the make of the .44 caliber used in the murders could only be narrowed down to guns made by Smith & Wesson, Taurus, and Llama, as well as "any other firearm with comparable rifling characteristics,"[2] and knowing that because of this, nothing could be determined about model type.

The conclusion of the *story* and false narrative, gets worse. The government argues that the Steinses testimony is ultimately necessary to show the jury how Wells had access to a gun "which was not readily traceable to him." This argument is unequivocally contradicted by John Stein's own testimony and the evidence he gave the government to support it. After the gun was discovered missing, Stein filed a police report with the Troopers on Kodiak in furtherance of supporting an insurance claim he was making on the gun with the NRA. When the report of the <u>lost firearm</u> was sent to the Trooper post, Stein sent Jim Wells a copy. In the report, Stein

---

[2] See Attachment A filed herewith.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                                                                Page 4

identifies the gun by serial number and description, explains it was lost after delivery to Wells' home and informs the police that "[f]or further information you may contact Mr. Jim Wells on Pavlof Lane in Bells Flats. His phone number is 487-2415." [3] Stein even gave Wells a power of attorney to perform on his behalf "all matters relating to the loss of Smith & Wesson revolver #AJL2172." *Id.* These documents conclusively show that as of August 21, 1997, not only was the lost firearm traceable to Jim Wells, it was traceable ONLY to him. Rather than support some wild theory that these circumstances created a scenario where Wells would use this gun in a later murder, the only reasonable inference this evidence and Stein's testimony supports is that the lost gun (assuming Wells had it) would be the LAST gun he would ever use to commit a crime. It was basically registered to him at that point and the police knew it.

The government knows the truth about the murder weapon. The gun was never found and the paucity of evidence the government has about it is not helpful in solving *who* committed the murders. Nevertheless, the government resorts to offering testimony about events occurring over fifteen years prior to the murders, misrepresents how the evidence its experts have found might apply to that testimony, and then characterizes the ultimate point of the testimony it wants the jury to believe in a manner completely contrary to what the government knows the evidence shows.

There is <u>no evidence</u> that Jim Wells possessed John Stein's .44 caliber Smith

---

[3] See Attachment B filed herewith.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG          Page 5

& Wesson handgun after 1996. There is no evidence Stein's gun was used eighteen years later by anyone to commit the murders in 2012. The government's own experts make it almost a statistical impossibility that Stein's gun was the murder weapon. And the gun by all accounts was traceable only to Jim Wells after it became lost making it a "last choice" for use in committing a crime. For all these reasons, as well as those set forth in Wells' original motion at Docket 1031, the Court should exclude the testimony of government proposed witnesses, John & Terry Stein, as irrelevant, inviting speculation, more prejudicial than probative, and in violation of Rule 404(b).

DATED at Anchorage, Alaska this 28th day of June, 2019.

Respectfully submitted,

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender

*/s/ Peter A. Camiel*
Peter A. Camiel WSBA 12596
Attorney for Defendant

*Attorneys for James Michael Wells*

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on June 28, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*