# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>JAMES MICHAEL WELLS,<br><br>                    Defendant. | Case No. 3:13-cr-00008-SLG |

## ORDER REGARDING MOTION TO SUPPRESS

Before the Court at Docket 984 is Defendant James Michael Wells' Motion to Suppress Evidence Derived from Interrogation Conducted in Violation of the Fifth Amendment. Mr. Wells filed a declaration of counsel and one exhibit.[1] The Government filed an opposition and exhibits.[2] Mr. Wells did not file a reply, and neither party requested an evidentiary hearing or oral argument on this motion.[3]

### I. Relevant facts

On the morning of April 12, 2012, two deceased Coast Guard employees were found in the T-2 building at the Coast Guard communication station on Kodiak Island.[4]

---

[1] Docket 1010 (Declaration of defense counsel Gary Colbath); Docket 1017 (Defense exhibit 1) (under seal).

[2] Docket 995 (Government's opposition); Docket 1000 (Government exhibits 1–7) (under seal).

[3] Prior to the first trial of this case, Mr. Wells filed a motion to suppress his statements but did not raise a *Garrity* claim. The motion was heard by a magistrate judge, and the trial judge adopted the magistrate judge's final recommendation to deny the motion. *See* Docket 187 (transcript of evidentiary hearing on motion to suppress); Docket 267 (Recommendation); Docket 357 (Final Recommendation); Docket 366 (order regarding motion to suppress).

[4] The parties interchangeably refer to the communication station as a Coast Guard "facility," a "base," or "COMMSTA," which is an abbreviation of "communication station."

People at the station were directed to another building—the T-1 building—and the station was placed on lockdown. No one could leave the T-1 building unless given permission by the FBI or Coast Guard investigators. This order came from either Coast Guard command, Coast Guard investigators, or local police. The Coast Guard command directed those assembled in the T-1 building to be available to participate in interviews with the FBI and the Coast Guard Investigative Service (CGIP).[5] The "[COMMSTA] Command did not order the crew to submit to questioning."[6] There is no indication that Command instructed the crew that failure to participate in the investigation could result in termination of employment or other employment sanctions.

When Mr. Wells reported to work sometime around 8:20 a.m. that morning, he was directed to report to the T-1 building along with everyone else. Beginning at 7:21 p.m., Mr. Wells was interviewed by two agents, one from the FBI and one from the CGIP. In total, Mr. Wells was interviewed four times on April 12, 2012: Starting at 7:21 p.m., starting at 8:04 p.m., starting at 9:05 p.m., and starting at 9:22 p.m.[7] None of the interviews on that date were "aggressive or accusatory."[8] It appears that Mr. Wells "was

---

[5] Docket 1000-2 (under seal); *see also* Docket 267 at 5 (Magistrate Judge John Robert's 2014 Recommendation Regarding Motion to Suppress Statements).

The Coast Guard uses "CGIP" as the acronym for its Investigative Services (likely to prevent confusion with the Coast Guard Intelligence Service—"CGIS"), and the Court adopts the same. *See* www.dcms.uscg.mil/Portals/10/CG-1/PPC/Docs/ACRONYMS.pdf (listing correct Coast Guard acronyms).

[6] Docket 267 at 7 (Magistrate Judge's 2014 Recommendation Regarding Motion to Suppress Statements).

[7] Docket 1000-2 through 1000-5 (under seal). The interviews lasted for 32 minutes, 11 minutes, 4 minutes, and 7 minutes, respectively. Docket 267 at 5 (Magistrate Judge's 2014 Recommendation Regarding Motion to Suppress Statements).

[8] *United States v. Wells*, 719 Fed. Appx. 587, 589 (9th Cir. 2017).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 2 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 2 of 19

interviewed, in the same manner as all other COMMSTA employees, by two agents in plain clothes, with their weapons concealed."[9] The agents never explicitly told Mr. Wells that he was free to leave, but they did not restrain Mr. Wells in any way.[10] During the 9:05 p.m. interview, the investigators expressed concern that Mr. Wells may need his medication that was at his house. Since they still needed to ask him follow-up questions, they offered to drive him home, escort him into the house to get the medication, and then return for more questioning.[11] Mr. Wells declined this offer.[12] He was later directed to return the following day.[13]

Throughout the four April 12, 2012 interviews, neither agent gave Mr. Wells *Miranda* warnings. Neither agent advised him that he had an obligation to cooperate, and neither agent told him that he could face employment sanctions for failing to cooperate. And yet, neither agent advised him that declining to participate in the interview would have no adverse employment consequences and neither agent offered Mr. Wells immunity for what was said in the interview.[14]

The next day, April 13, 2012, Mr. Wells was given *Miranda* warnings but again he was not told whether his refusal to answer questions or cooperate would affect his

---

[9] *Id.*

[10] *Id.* at 591.

[11] Docket 1000-4 (under seal).

[12] Docket 267 at 10 (Magistrate Judge's 2014 Recommendation Regarding Motion to Suppress Statements).

[13] Docket 267 at 5 (Magistrate Judge's 2014 Recommendation Regarding Motion to Suppress Statements).

[14] *See* Docket 1000-2, 1000-3, 1000-4, 1000-5, 1000-6, and 1000-7 (under seal) (transcripts of Mr. Wells' interviews).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 3 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 3 of 19

employment with the Coast Guard.[15] That day, Mr. Wells was interviewed twice. The second April 13, 2012 interview ended when Mr. Wells asked to terminate the interview, invoked his right to remain silent, and asked for an attorney.[16]

As of April 2012, Mr. Wells had worked for the Coast Guard for approximately 40 years, first as an enlisted member and later as a civilian.[17] At all times relevant to this motion, he was a civilian Coast Guard employee.

Mr. Wells asserts two additional points: First, he maintains that "U.S. Coast Guard regulations prohibit refusing to comply with authorities, refusing to cooperate with official inquires, investigations, or proceedings, and refusing to testify or give oral and written statements in these proceedings."[18] Second, he asserts that he "had previously been advised that failure to comply with the command orders and U.S. Coast Guard regulations could result in disciplinary actions, including removal from federal service."[19] Mr. Wells maintains that the government created an unconstitutional penalty situation by threatening him with job loss if he did not participate in the interviews, and therefore, his statements to investigators should be suppressed.

---

[15] Docket 1000-6, 1000-7 (under seal).

[16] Docket 1000-7 at 2 (under seal).

[17] Docket 1000-2 at 3.

[18] Docket 984 at 2. Mr. Wells does not cite to any specific U.S. Coast Guard regulation that contains such a prohibition for civilian employees. *See* discussion *infra* Section VI.

[19] Docket 984 at 2. Mr. Wells cites to a warning letter he received in 2012 regarding unauthorized use of a fuel card. Docket 1017-1 (under seal). *See* discussion *infra* Section VI.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 4 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 4 of 19

## II.     Relevant Supreme Court decisions:  *Garrity*, *Gardner,* and *Murphy*

In *Garrity v. State of New Jersey*, the Supreme Court considered whether statements made under threat of a loss of state employment were involuntary under the Fourteenth Amendment.[20]  There, police officers were being investigated by the state attorney general for allegedly fixing traffic tickets.  Before questioning, each officer was "warned (1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office."[21]  The officers participated in the questioning, and their answers were subsequently introduced in their prosecutions for conspiracy.[22]

The Supreme Court framed the issue as "whether a State, contrary to the requirement of the Fourteenth Amendment, can use the threat of discharge to secure incriminatory evidence against an employee."[23]  The Court reasoned that "[t]he choice given petitioners was either to forfeit their jobs or to incriminate themselves.  The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent."[24]  Accordingly, the Court held that the protection "against coerced statements prohibits the use in subsequent criminal

---

[20] 385 U.S. 493 (1967).

[21] *Garrity*, 385 U.S. at 494.

[22] *Id.* at 495.  A New Jersey state statute provided that any person holding public employment who refused to testify in a criminal proceeding about matters relating to their employment would forfeit his or her employment.  *Id.* at 494 n. 1.

[23] *Id.* at 499.

[24] *Id.* at 497.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 5 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 5 of 19

proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."[25]

When the government conditions continued employment on participation in questioning, the government creates a "classic penalty situation," and the answers given by the employee-suspect are inadmissible in a criminal prosecution.[26] This *Garrity* problem arises because the government has dual roles: The government is the suspect's employer and is also the suspect's interrogator. These dual roles enable the government to "apply additional pressure to cooperate" because the government's "role as employer provides it with a means to penalize the exercise of the constitutional privilege against self-incrimination—a deed forbidden to it in its role as law enforcer."[27] In these situations, the right to remain silent is not waived if the person answers questions; the right is self-executing and the employee need not assert the privilege at the time of questioning.[28]

Following *Garrity*, in *Gardner v. Broderick* the Supreme Court considered the effect of conferring immunity on a government employee during questioning about his employment duties. *Gardner* held that when a government employee is questioned under

---

[25] *Id.* at 500.

[26] *Cf. Minnesota v. Murphy*, 465 U.S. 420, 435 (1984) ("[I]f the state, either expressly or by implication, asserts that invocation of the privilege [against self-incrimination] would lead to revocation of probation, it would have created the classic penalty situation . . . .").

[27] *United States v. Goodpaster*, 65 F. Supp. 3d 1016, 1024–25 (D. Or. 2014); *see also United States v. Frierson*, 945 F.2d 650, 658 (3d Cir. 1991) ("[L]oss of job, loss of state contracts, loss of future contracting privileges with the state, loss of political office, loss of the right to run for political office in the future, and revocation of probation are all 'penalties' that cannot be imposed on the exercise of the privilege.").

[28] *Murphy*, 465 U.S. at 434–35 (citing *Garrity*, 385 U.S. at 498–99); *United States v. Bahr*, 730 F.3d 963, 966 (9th Cir. 2013).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 6 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 6 of 19

threat of job loss, that employee is entitled to immunity[29]; it also held that if the government grants the employee immunity, it may then compel cooperation by threatening job loss.[30]

Sixteen years after *Gardner*, the Supreme Court considered the type of government threat sufficient to trigger the *Garrity* rule. *Minnesota v. Murphy* involved a probation condition that required Murphy to be truthful with his probation officer. If he was not truthful, his probation could be revoked. After Murphy's answers to his probation officer's questions led to his prosecution for a new crime, he moved to suppress his statements on the ground that the threat to revoke his probation created a penalty situation. On review, the Supreme Court emphasized that if the government "*either expressly or by implication*, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution."[31]

The Supreme Court used two different analyses in holding that the probation condition in *Murphy* did not create a penalty situation. First, it determined that Murphy

---

[29] *Gardner v. Broderick*, 392 U.S. 273, 278 (1968) (citing *Garrity*, 385 U.S. at 500).

[30] *Gardner*, 392 U.S. at 278; *see also Goodpaster*, 65 F. Supp. 3d at 1026 ("Taken together, *Garrity* and *Gardner* stand for two related propositions: When the government threatens to punish an employee for silence, it has in effect elected to inhabit its role as employer. Thus, for any testimony it thereby secures, the employee has use and derivative-use immunity ('*Garrity* immunity') against the government as prosecutor. When, however, the employee receives or becomes entitled to use and derivative-use immunity against the government *as prosecutor*, he may not also claim immunity against the government *as employer*. Thus, if he keeps his silence, the government may carry out its prior threat.") (footnote omitted, emphases in original).

[31] *Murphy*, 465 U.S. at 435 (emphasis added, footnote omitted).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 7 of 19

did not subjectively believe that his probation would be revoked if he did not answer the questions: There was no direct evidence that he confessed out of fear his probation would be revoked if he remained silent; he had not been expressly told in person that his probation would be revoked if he remained silent; and he had not been entirely truthful during the probation meeting, which undercut his assertion that he was compelled to tell the truth.[32] Second, although the probation condition required truthfulness, it did not take the "extra, impermissible step" of requiring that the probationer actually answer all questions.[33] Thus, under an objective standard, "[i]f [the defendant] did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, that belief would not have been reasonable."[34] Accordingly, the Supreme Court held that the probation condition did not "either expressly or by implication" create a penalty situation.[35] Therefore, Murphy's incriminating statements to his probation officer were not suppressed.

### III.     Relevant Ninth Circuit caselaw: *Saechao* and *Bahr*

In *United States v. Saechao*, the Ninth Circuit considered a situation similar to that in *Murphy*: The probationer-defendant answered questions from his Oregon probation officer that constituted a confession to a new crime and later moved to suppress his statements as being compelled by his conditions of probation. Unlike the Minnesota probation term in *Murphy* requiring truthfulness, the Oregon probation condition required

---

[32] *Id.* at 437–38.

[33] *Id.* at 436–37.

[34] *Id.* at 438.

[35] *Id.* at 436–39.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 8 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 8 of 19

both truthfulness and that the probationer "*answer all* reasonable inquires."[36] This difference led the Ninth Circuit to hold that the state had created an impermissible penalty situation, because the "[f]ailure to answer a relevant inquiry regarding the conditions of probation would have justified the revocation of [the defendant's] probation."[37] The Ninth Circuit rejected the government's argument that no penalty situation existed because the state had not explicitly told Saechao that it would impose a penalty (*i.e.*, revocation of probation) if he invoked his right to remain silent.[38] The Ninth Circuit relied on *Murphy*'s pronouncement that "a state creates a classic penalty situation if it 'expressly *or by implication*' suggests 'that invocation of the privilege would lead to revocation of probation.'"[39] Although the Supreme Court in *Murphy* conducted both a subjective and objective analysis in determining whether the probation condition created a penalty situation, the *Saechao* Court focused primarily on an objective analysis.[40] The Court held that "[i]n light of the particular conditions applicable to Oregon probationers, there is certainly a reasonable basis under *Murphy* for a probationer to conclude that, although the invocation of the Fifth Amendment is not explicitly prohibited, an exercise of that right

---

[36] *United States v. Saechao*, 418 F.3d 1073, 1078 (9th Cir. 2005) (emphasis in original).

[37] *Id.*

[38] *Id.* at 1079.

[39] *Id.* (emphasis in *Saechao*).

[40] *But see id..* at 1081 ("Saechao was indeed 'compelled' to incriminate himself under threat of probation revocation. He was instructed on two occasions that his probation conditions required him, *inter alia*, to 'promptly and truthfully answer all reasonable inquiries' and the terms of his probation provided that a failure to comply could result in its revocation.").

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 9 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 9 of 19

by invoking the privilege or simply by remaining silent would constitute grounds for revocation of probation."[41]

In *United States v. Bahr*, the defendant's supervised release condition required him to complete a sex-offender treatment program and "adher[e] to all rules and conditions of the program." As part of the treatment program, he completed a full-disclosure polygraph and filled out a workbook. In both the polygraph and the workbook, he admitted to sexual contact with several minors. Years later, those admissions were included in the presentence report used at the defendant's sentencing for unrelated child pornography convictions. The defendant appealed the sentence, arguing that the sentencing court should not have considered these compelled admissions. The Ninth Circuit agreed; it reasoned that because the supervised release condition "mandated his successful completion of a treatment program[, a] refusal or failure to complete the program would in fact subject him to revocation and further incarceration."[42] Thus, the defendant "had no choice but to answer the questions posed during the polygraph examination."[43] *Bahr* reaffirmed *Saechao*'s holding that a *guaranteed* punishment is not necessary to trigger a penalty situation; rather, a concrete threat of future punishment may be sufficiently compelling.[44]

---

[41] *Id.* at 1079.

[42] *United States v. Bahr*, 730 F.3d 963, 966 (9th Cir. 2013).

[43] *Id.* at 967.

[44] *Id.* at 967 n. 4 ("To the extent that [*United States v. Ramos*, 685 F.3d 120 (2d. Cir. 2012)] stands for the proposition that words that only threaten, rather than guarantee, revocation—such as 'could' or 'may'—are insufficiently compelling, it would conflict with our own circuit law.").

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 10 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 10 of 19

### IV. Ninth Circuit District Court cases

In *United States v. Goodpaster*,[45] the defendant, an employee of the U.S. Postal Service ("USPS"), had signed a statement certifying that he had read an employee manual and understood that employees who failed to "cooperate" in USPS Office of Inspector General investigations could be subject to "administrative discipline." "Administrative discipline" could include being fired from USPS employment.

Approximately five years after the defendant had reviewed the employee manual, he was investigated for mail theft. USPS Office of Inspector General agents interviewed the defendant in the defendant's office. Near the beginning of the interview, shortly after receiving *Miranda* warnings, the defendant indicated that he wanted "to take [the matter] to [the] MSPB board," which is an independent agency "to which federal civil servants can appeal disciplinary actions and adverse employment decisions."[46] The agents did not give the defendant *Garrity* warnings during the interview.[47] But the agents also did not tell the defendant that he "had an obligation to cooperate, remind him of the possibility of sanctions for failing to cooperate, or in any other way threaten him with penalties for refusing to answer questions."[48] During the interview that followed, the defendant made incriminating statements, which he later moved to suppress.[49]

---

[45] 65 F. Supp. 3d 1016 (D. Or. 2014).

[46] *Id.* at 1020 (brackets in original).

[47] *Id.* at 1021. The defendant's wife, who was being interviewed separately, was given a written copy of her *Garrity* rights.

[48] *Id.*

[49] *Id.* at 1018.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 11 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 11 of 19

The district court suppressed the statements under *Garrity*. It determined that the defendant was subject to 39 C.F.R. § 230.3(a)[50] and the workplace policy manual, both of which required him to "cooperate" with investigations and provided that a failure to cooperate could result in disciplinary action. The district court relied on *Murphy* to find that "[a]n order to 'cooperate' demands more of the reasonable employee than an order merely to be 'truthful.'"[51] The district court disagreed with the government's argument that there was no penalty situation because the defendant had not been explicitly told that non-cooperation could jeopardize his employment. Instead, the district court reasoned that "the Supreme Court in *Murphy* did not find dispositive the fact that Murphy had not been explicitly threatened in person; rather, the Court considered it as only one of three factors in the subjective analysis, which itself was one of two alternative rationales for the holding."[52] The Court suppressed the defendant's statements, after finding that the threatened penalty for remaining silent was "sufficiently coercive" under *Garrity*.[53]

In contrast to *Goodpaster*, other Ninth Circuit district courts have required that the defendant show that he or she subjectively knew of the threat to their employment and reasonably believed that their employment was in jeopardy if they refused to cooperate. One month before the Ninth Circuit decided *Bahr* but after *Saechao* was issued, the

---

[50] "All Postal Service employees shall cooperate with all audits, reviews, and investigations conducted by the Office of Inspector General. Deliberately submitting information known to be false or misleading to the Office of Inspector General or failing to cooperate with all audits, reviews, and investigations conducted by the Office of Inspector General may be grounds for disciplinary or other legal action."

[51] *Goodpaster*, 65 F. Supp. 3d at 1029.

[52] *Id.* at 1031 (citing *Murphy*, 465 U.S. at 437–38).

[53] *Id.* (citing *United States v. Antelope*, 395 F.3d 1128, 1138 (9th Cir. 2005).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 12 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 12 of 19

Arizona district court found that *Garrity* "relief turns on [defendants'] subjective beliefs and the objective reasonableness of those beliefs . . . . Defendants bear the burden of showing coercion—that they believed their statements to be compelled on threat of job loss and that their belief was objectively reasonable."[54]

Recently, the Hawaii district court reasoned that the "voluntariness inquiry *must focus on what information was imparted to the [defendants]*, and, in particular, whether they were required to waive their privilege against self-incrimination."[55] The defendants there, both public employees, were arguably subject to certain statutes, rules, and regulations that required their cooperation in an investigation. During an investigation, they made statements to the Honolulu Ethics Commission and later moved to exclude those statements from being introduced against them in a criminal prosecution. The district court found that "the mere existence of those statutes, regulations, and rules without more is not enough to convert voluntary statements into coerced ones."[56] "This voluntariness inquiry must focus on what information was imparted to the [defendants], and, in particular, whether they were required to waive their privilege against self-incrimination."[57] Because the defendants presented no evidence that they were

---

[54] *United States v. Dellinger*, 2013 WL 4177400 at *1, No. CR-13-00065-PHX-DGC (D. Ariz. Aug. 15, 2013) (citing and adopting the test from *United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir. 1988)); *see also United States v. Mixon*, No. CR1400631001TUCJGZ, 2015 WL 6348732, at *3 (D. Ariz. Oct. 22, 2015) ("The Court finds that Defendant's statements . . . were voluntary and were not obtained under threat of removal from office. Any belief that Defendant may have held that she would be fired for failing to answer all questions was not subjectively or objectively reasonable.").

[55] *United States v. Kealoha*, 2019 WL 573408 at *2, Cr. No. 17-00582-JMS-RLP (D. Haw. Feb. 12, 2019) (emphasis added).

[56] *Id.*

[57] *Id.*

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 13 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 13 of 19

threatened with job loss or thought they would lose their jobs, the district court denied the motion to suppress the statements.

## V. Prior decisions in this case

Prior to the first trial of this case, the defense filed a motion to suppress Mr. Wells' statements to investigators, asserting that he had been unreasonably seized on April 12, 2012, and that he was in custody on April 13, 2012, prior to when investigators Mirandized him.[58] The motion did not raise a *Garrity* challenge.[59] The Magistrate Judge recommended denial, and the District Judge adopted that recommendation.[60] The Ninth Circuit affirmed, holding that Mr. Wells was not seized on April 12, 2012, that even if he was seized any seizure of him was reasonable, and that he was not in custody on April 13, 2012.[61] On appeal, Mr. Wells argued that his statements were involuntary under *Garrity*, but the Ninth Circuit declined to consider this argument because it was raised for the first time on appeal.[62]

## VI. Analysis

Mr. Wells' *Garrity* claim turns on whether one prerequisite fact has been established: That the government either explicitly or implicitly threatened that Mr. Wells' Coast Guard employment would be compromised if he did not participate in the

---

[58] Docket 120.

[59] *Wells*, 719 Fed. Appx. at 591 n. 1.

[60] Docket 267 (Magistrate Judge's Recommendation Regarding Motion to Suppress Statements); Docket 358 (Magistrate Judge's Final Recommendation Regarding Motion to Suppress Statements); Docket 366 (District Judge's Order Regarding Motions at Docket 120, 122, and 142).

[61] *Wells*, 719 Fed. Appx. at 589, 591.

[62] *Id.* at 591 n. 1.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 14 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 14 of 19

interviews. Review of the transcripts of the six interviews of Mr. Wells reveals that the agents made no explicit threat to his job security—he was not threatened with the loss of his employment nor was he told that his employment would be compromised if he refused to participate. When the investigators informed Mr. Wells during the fifth interview that "you don't have to answer [questions]. You can invoke the right to remain silent at anytime [sic]"; "[y]ou understand that you don't have to talk to us, right?"; and "you still have the right to stop the answering [sic] questions at any time"; they did not qualify the exercise of those rights by threatening his employment.[63]

Instead, Mr. Wells relies on the implicit threat he posits can be found in the U.S. Coast Guard regulations, asserting that there are regulations that "prohibit refusing to comply with authorities, refusing to cooperate with official inquiries, investigations, or proceedings, and refusing to testify or give oral and written statements in these proceedings."[64] However, Mr. Wells has not provided citations to any Coast Guard regulation that includes such prohibitions.[65] In his briefing to the Ninth Circuit, Mr. Wells cited the Coast Guard manual *Civilian Personnel Actions: Disciplinary, Adverse and Performance Based Actions.*[66] This manual has not been cited to or filed with this Court

---

[63] Docket 1000-6 at 7–9 (under seal).

[64] Docket 984 at 2.

[65] *C.f. United States v. Seaux*, No. 11CR5849 WQH, 2012 WL 3647742, at *4 (S.D. Cal. Aug. 23, 2012) ("In this case, there is no evidence of the existence of a departmental rule or statute mandating termination of employment for refusal to answer questions. *** Defendant testified that he believed he could be disciplined for refusing to answer a postal inspector's questions based upon what he was told during training approximately thirteen years ago. However, Defendant's subjective fears of termination are not sufficient to require suppression under *Garrity*.").

[66] *United States v. Wells*, 2016 WL 929803 at *37 (Appellant's Opening Brief).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 15 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 15 of 19

for consideration.  Mr. Wells has also not submitted any evidence that he reviewed or was otherwise familiar with this manual or any applicable Coast Guard regulation.[67]

Mr. Wells also asserts that he "had previously been advised that failure to comply with the command orders and U.S. Coast Guard regulations could result in disciplinary actions, including removal from federal service."[68]  In support of this claim, he filed a declaration of counsel and an exhibit.  The declaration asserts that Mr. Wells "was illegally seized and/or in the compelled custody of law enforcement through actions of his employer on April 12 and 13, 2012," that he was "ordered, by supervisory officers . . . to report to a secure area," and that he was "ordered not to leave the T1 building."[69]  The assertion that Mr. Wells could not leave the T-1 building is supported by the exhibit referenced in paragraph four of the declaration.[70]  However, the *Garrity* analysis does not turn on whether Mr. Wells was seized.  Instead, it focuses on the voluntariness of the waiver of the right to silence when one's employment has been threatened.  Even if Mr. Wells' custody status were relevant, the Ninth Circuit has held that Mr. Wells was not seized on April 12, 2012, and that he was not in custody on April 13, 2012.[71]

---

[67] *See Goodpaster*, 65 F. Supp. 3d at 1030 n. 15 (noting that there was evidence that the defendant was aware of the threat at least at the time he affirmed that he had read and understood the employee manual).

[68] Docket 984 at 2.

[69] Docket 1010 at 2.

[70] The exhibit is a log of events that occurred on April 12, 2012, at the Coast Guard station.  The log has entries that read: "All hands briefed that no one allowed to enter/depart T1 without prior knowledge of CWO/CSO due to active crime scene at T2" and "All personnel currently at T1 have been ordered not to leave the building due to the active crime scene at T2.  Gate remains secured."  Docket 158-1.

[71] *Wells*, 719 Fed. Appx. at 589, 591.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 16 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 16 of 19

Counsel's declaration also asserts that "Mr. Wells was ordered to participate in law enforcement interviews and investigation on April 12 and 13, 2012, by his employer (the U.S. Coast Guard) . . . ." and that "at no time was Mr. Wells told he could . . . refuse to participate in the requested interrogations until late in the evening when he had been questioned four times."[72] Apart from counsel's assertion, Mr. Wells has submitted no admissible evidence based on personal knowledge to support the declarant's assertions that Mr. Wells was ordered to participate in the interviews or that Mr. Wells was not told that he could refuse to participate in the interviews until late in the evening.

Finally, the declaration asserts that Mr. Wells had "previously, directly and individually, [been] warned that any non-compliance with orders of command could result in separation from employment."[73] In support of this assertion, Mr. Wells filed Exhibit 1, which is a "Letter of Caution" Coast Guard Commander Peter Van Ness gave to Mr. Wells earlier in 2012.[74] This letter reprimands Mr. Wells for misuse of a government fuel card. In it, Commander Van Ness outlines the facts determined by the administrative investigation, states his concerns and lack of confidence in Mr. Wells due to this incident, and highlights Mr. Wells' responsibility to use government property in a proper manner.[75] The letter includes the following sentence: "Any further misuse of government charge cards under your control or any future instances of misconduct may result in disciplinary

---

[72] Docket 1010 at 2.

[73] Docket 1010 at 2.

[74] Docket 1017-1 (under seal).

[75] Docket 1017-1 (under seal).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 17 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 17 of 19

action being taken against you, up to and including removal from Federal service."[76] This passage expressly conditions the risk of job loss on misuse of charge cards or other misconduct. There is no indication that a refusal to participate in a criminal investigation absent immunity or invoking one's right to remain silent during an interview would constitute misconduct. The Court finds that this sentence would not cause a reasonable person in Mr. Wells' position to believe that his employment could be in jeopardy if he refused to cooperate in the investigation in April 2012.

Although the Ninth Circuit has not recently employed the subjective inquiry when determining if the government has created a penalty situation, the Court also finds no evidence that Mr. Wells was aware of Coast Guard regulations or manuals that required his cooperation in an investigation as a condition of his employment. The record contains no evidence that Mr. Wells was subjectively concerned about his employment status in April 2012. Throughout the six interviews, Mr. Wells never expressed concern that his employment would be affected if he did not participate, even when he and the investigators discussed his long service with the Coast Guard.[77] Although in the fifth interview Mr. Wells at one point stated, "Well, I'm a little concerned now," he did not indicate that his concern was about his continued employment; he made the statement in the middle of being told his *Miranda* rights.[78] The Court finds that this expression of concern most likely related to concern over becoming a suspect in the homicides, not a concern about losing his job.

---

[76] Docket 1017-1 at 2, ¶ 4 (under seal).

[77] Docket 1000-2 at 3–4 (under seal).

[78] Docket 1000-6 at 7 (under seal).

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 18 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 18 of 19

## VII. Conclusion

In *Garrity*, the state employees had expressly been told that the refusal to answer questions would subject them to losing their employment.[79] Here, Mr. Wells was not explicitly threatened with employment sanctions if he did not participate in the interviews. Mr. Wells has also failed to demonstrate that his government employer implicitly threatened to terminate his employment if he did not participate in the interviews. Thus, on the record before the Court, "there is no reasonable basis for concluding that [the Coast Guard] attempted to attach an impermissible penalty to the exercise of the privilege against self-incrimination."[80] Mr. Wells has not demonstrated that the Government created a penalty situation that rendered his statements involuntary; therefore, Mr. Wells is not entitled to suppression of his statements under *Garrity* and its progeny.

In light of the foregoing, IT IS ORDERED that the motion to suppress at Docket 984 is DENIED.

DATED this 11th day of July, 2019, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[79] 385 U.S. 493 at 494 (1967).

[80] *Murphy*, 465 U.S. at 437.

Case No. Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Suppress
Page 19 of 19
Case 3:13-cr-00008-SLG   Document 1065   Filed 07/11/19   Page 19 of 19