# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>         v.<br><br>JAMES MICHAEL WELLS,<br><br>             Defendant. | Case No. 3:13-cr-00008-SLG |

## **ORDER RE: MOTIONS *IN LIMINE* TO EXCLUDE GOVERNMENT EXPERT WITNESSES**

Before the Court are three motions *in limine* filed by the defendant James Michael Wells seeking exclusion of proposed government expert witnesses.[1] The motions relate to Neil Schmidt, Rick Wyant, and Robert Morton. The government filed an opposition to each motion.[2] With leave of the Court, Mr. Wells filed a reply regarding Robert Morton.[3] On July 2, 2019, the Court heard argument from the parties as to Robert Morton.[4]

The Court has previously set forth the rules governing the standards of admissibility for expert witnesses in its Order Re: Motions *In Limine* to Exclude Defense Expert Witnesses. The Court applies the same standards here.

---

[1] Dockets 1004, 1006, and 1007.

[2] Docket 1008 (opposing Docket 1004); Docket 1022 (opposing Docket 1006); and Docket 1023 (opposing Docket 1007).

[3] Docket 1035.

[4] Docket 1058 at 2 (minutes of July 2, 2019 status conference).

**I.     Analysis**

   **A.  Neil Schmidt (Docket 1006; opposition at Docket 1022)**

The government seeks to have Neil Schmidt, an engineer and technical specialist at Honda,[5] opine that the vehicle seen in the T-1 video was an early model Honda CR-V that matches the vehicle owned by Mr. Wells at the time of the homicides.  The defense objects to Mr. Schmidt's testimony on the grounds that he is not qualified to provide this testimony and that his testimony is not reliable.[6]

During the first trial of this case, Mr. Schmidt testified that he believed there was a 70% chance that the vehicle in the T-1 video was the same make and model as Mr. Wells' vehicle.[7]  The admissibility of Mr. Schmidt's testimony was challenged prior to the first trial based on qualification and reliability.  Magistrate Judge John Roberts reviewed Mr. Schmidt's professional background and the methodology Mr. Schmidt used to formulate his opinion about whether the vehicle on the T-1 video was the same make and model as Mr. Wells' Honda.[8]  The Magistrate Judge found that Mr. Schmidt's testimony was "admissible regarding the unique shape of the [Honda] CRV body panels, the CRV's unique roof line, the unique placement of tail lights on the CRV, the unique location of the CRV's spare time, and methods for excluding other makes and models similar the Honda

---

[5] *United States v. Wells*, 879 F.3d 900, 933 (9th Cir. 2018).

[6] Docket 1006 at 2.  Although the defense does not challenge the relevance or fit of Mr. Schmidt's testimony, the Court finds that his proposed testimony fits the facts at issue in this case.  *See* Order Re: Motions *in Limine* to Exclude Defense Expert Witnesses at § (B)(i) as to why testimony about the vehicle in the T-1 video is relevant.

[7] *Wells*, 879 F.3d at 933.

[8] Docket 303 at 32–34

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 2 of 14

CRV."[9] The district judge adopted this finding at a pretrial conference, and Mr. Wells did not object to Mr. Schmidt's testimony at trial.[10]

After his conviction, Mr. Wells appealed and challenged among other issues the trial court's ruling that Mr. Schmidt had the "qualifications to *reliably* testify" that the vehicle was a Honda.[11] Reviewing for an abuse of discretion, the Ninth Circuit summarily concluded that the trial court did not abuse its discretion in allowing Mr. Schmidt to testify.[12]

### i. Law of the case

As a preliminary matter, the government maintains that the law of the case doctrine requires this Court to admit Mr. Schmidt's expert testimony.[13] "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case. For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'"[14] "The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. All rulings

---

[9] Docket 303 at 34.

[10] *Wells*, 879 F.3d at 933.

[11] *Id.* (emphasis in original).

[12] *Id.* at 934.

[13] Docket 1022 at 4–13.

[14] *United States v. Jingles*, 702 F.3d 494, 499–500 (9th Cir. 2012) (internal citations omitted).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 3 of 14

of a trial court are subject to revision at any time before the entry of judgment. A trial court may not, however, reconsider a question decided by an appellate court."[15]

In *Pepper v. United States*, the Supreme Court considered the applicability of the law of the case doctrine after a review for an abuse of discretion in the context of resentencing.[16] In *Pepper*, the Eighth Circuit had held that the sentencing court's decision to give the defendant a 40-percent downward departure was not an abuse of discretion, but for other reasons remanded the entire case for resentencing.[17] At resentencing before a different district court judge, the defendant argued that the original 40-percent departure was the law of the case; however, the resentencing judge only granted a 20-percent departure.[18] On review, the Supreme Court held that the Eighth Circuit's remand for a *de novo* resentencing—which the defendant did not challenge—"effectively wiped the slate clean" even if the 40-percent departure had at one point been the law of the case.[19] In dicta, the Supreme Court noted that the Eighth Circuit did not hold "that the forty-percent departure was the only reasonable departure that a sentencing court could grant . . . ; rather, the only issue [the Eighth Circuit] actually decided was that a 40-percent downward departure was not an abuse of discretion."[20]

---

[15] *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2011).

[16] 562 U.S. 476, 505–08 (2011).

[17] 562 U.S. 476, 506 (2011).

[18] *Pepper v. United States*, 562 U.S. 476, 505–06 (2011).

[19] *Id.* at 507.

[20] *Id.* at 506 n. 18.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 4 of 14

Although sentencing determinations are not analogous to the evidentiary ruling at issue here,[21] the *Pepper* dicta indicates that circuit court decisions based on an abuse of discretion standard have less force as the law of the case. This may be particularly true when the appellate court remands for an entirely new trial. Applying the *Pepper* dicta here, the only issue the Ninth Circuit actually decided was that it was not an abuse of discretion to allow Mr. Schmidt to testify as an expert. Therefore, the Court will determine *de novo* whether to allow Mr. Schmidt to testify.

### ii. Qualifications

The defense asserts that Mr. Schmidt is not qualified to give expert testimony because "[h]is work never involves trying to determine the make and model of a vehicle and especially never involves trying to do so from a low-resolution surveillance video."[22] The defense contends that Mr. Schmidt has no education or training in identifying a vehicle from a surveillance video and has not researched or published in this area.[23]

Mr. Schmidt is a "technical specialist" at Honda, where he has worked for more than 20 years. During that time he has worked in service engineering (dealing with repairs, writing service bulletins, and analyzing broken parts) and has worked with the Honda legal department investigating lawsuits against the company.[24] For seven years

---

[21] *Cf. United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) ("Although the law of the case ordinarily governs, special considerations come into play when the admissibility of evidence is involved. The judge who actually presides at trial must be accorded wide discretion in deciding either to admit or exclude evidence, since it is he who determines the course which the trial is to take. *** Thus in deciding whether to admit the proffered evidence the trial record to that point should be the decisive factor, not a pre-trial order of another judge.").

[22] Docket 1006 at 8.

[23] Docket 1006 at 9.

[24] Docket 1006 at 2–3.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 5 of 14

he worked as an engineer on the Honda CR-V, the type of vehicle at issue here.[25] Although Mr. Schmidt has no formal education or training in identifying Honda CR-Vs, Rule 702 provides that a person may be qualified as an expert based on their knowledge, skill, or experience so long as they have specialized knowledge. Mr. Schmidt's work at Honda, particularly his years as an engineer working on the CR-V, the exact model of Honda at issue here, gives him specialized familiarity with the characteristics of a Honda CR-V. This familiarity qualifies him to give an expert opinion as to whether he believes the vehicle in the T-1 video is a Honda CR-V.

### iii. Reliability

The defense contends that Mr. Schmidt's "testimony contains no explanation of the principles or methodology that allows him to reach the opinion[]" that he is 70% certain the vehicle in the video is a Honda CR-V.[26] The defense also maintains that Mr. Schmidt's conclusion was based on "purely subjective" principles and methods.[27] However, review of the FBI interviews of Mr. Schmidt shows that he compared discrete and unique characteristics of Honda CR-Vs to the image in the T-1 video. For example, Mr. Schmidt maintained "that the vehicle's headlights and the position of the vehicle's tail lights and off-center, rear mounted spare tire were also consistent with the first generation of Honda CRVs."[28] Mr. Schmidt later referred to the tail light assembly and reflector location, the "wheel overhang, the light positioning, the distance between the wheels, and the

---

[25] *Wells*, 879 F.3d at 933.

[26] Docket 1006 at 6.

[27] Docket 1006 at 6.

[28] Docket 228-11 at 1 (FBI interview of Neil Schmidt on Nov. 20, 2012).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 6 of 14

greenhouse, meaning the glass area of the car" on the Honda CR-V as factors he considered.[29] Mr. Schmidt was also able to explain how he ruled out other possible makes and models of vehicles.[30]

The defense's focus on Mr. Schmidt assigning a "70%" to his level of confidence as to his identification is misguided. This is not a statistical evaluation in the sense that testing and scientific calculations equated to 70% as a mathematical value. Instead, it was simply the level of confidence that Mr. Schmidt assigned to his own conclusion, which he reached using the objective factors discussed above. The task Mr. Schmidt was asked to perform—comparing the vehicle seen in the T-1 video to Honda CR-V characteristics— inherently requires some subjective analysis. Based on the quality of the video and the task at hand, it is unlikely that Mr. Schmidt could have delivered any opinion with certainty. However, "[l]ack of certainty is not, for a qualified expert, the same thing as guesswork."[31] Mr. Schmidt's expert opinion is based on sufficient data and he reliably applied his specialized knowledge to the facts of this case. Thus, he was able to establish a reliable basis for his opinion and explain his methodology.

---

[29] Docket 228-11 at 3, 4 (FBI interviews of Neil Schmidt on Nov. 26, 2012, and Dec. 17, 2012).

[30] Docket 228-11 at 3, 5 (FBI interviews of Neil Schmidt on Nov. 26, 2012, and Dec. 17, 2012). Mr. Schmidt purportedly "provided a detailed comparison of each listed vehicle with the vehicle depicted in the video. A detailed spreadsheet of differences between these vehicles and the vehicle in the video can be found in the 1A attached to this document." Docket 228-11 at 6. Neither party has directed the Court to where, if anywhere, this 1A spreadsheet is located in the record.

[31] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* Apr. 27, 2010.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 7 of 14

### iv. Relevance

The parties do not dispute that Mr. Schmidt's proposed testimony is relevant. The Ninth Circuit found that "[h]is testimony was relevant, in order to place Wells in Nancy Wells' 2001 blue Honda CR-V, on the morning of the murders."[32] The Court agrees that Mr. Schmidt's testimony is relevant to and fits with the issues in this case.

The Court finds that Mr. Schmidt's proposed testimony has sufficient probative value that is not substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or the presentation of cumulative evidence.

In summary, Mr. Schmidt may give expert testimony as to his methodology and opinion as to why the vehicle seen in the T-1 video is, to a 70% probability, a Honda CR-V and not some other make and model of vehicle.

### B. Rick Wyant (Docket 1007; opposition at Docket 1023)

The government seeks to introduce the expert testimony of Rick Wyant, a firearm and toolmark expert who created and narrated a short video showing the loading, firing, and unloading of two handguns—one revolver and one semi-automatic. The government initially provided the defense with Mr. Wyant's *curriculum vitae*, his contract with the government, and the two-and-a-half minute narrated video.[33] The government later supplemented its disclosure with a list of items Mr. Wyant reviewed, including specific

---

[32] *Wells*, 879 F.3d at 933.

[33] Docket 1007 at 2.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 8 of 14

discovery.[34] Mr. Wyant does not appear to have been involved in the first trial of this case.

The defense contends that Mr. Wyant's testimony should be precluded because the government has not complied with Federal Rule of Criminal Procedure 16. Rule 16 provides that "the government must give to the defendant *a written summary* of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."[35] It does not appear that Mr. Wyant has provided a written summary of his testimony. Therefore, the government must provide the defense a transcript of Mr. Wyant's statements on the video.[36] Mr. Wyant's CV has already provided the defense with the required written summary of his qualifications.

Mr. Wyant's testimony assumes a fact that cannot be proven—that a revolver or semi-automatic handgun of the type depicted in his video was the type of firearm used in the homicides. The Court finds that Mr. Wyant's proposed testimony has sufficient probative value that is not substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or the presentation of cumulative evidence.

---

[34] Docket 1023 at 3.

[35] Fed. R. Cr. P. 16(a)(1)(G) (emphasis added).

[36] The government's response in opposition notes that the government provided the defense with "the list of previously discovered items Wyant was provided for his review." Docket 1023 at 3.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 9 of 14

However, the Court is prepared to give a limiting instruction if requested by the defense to the effect that simply because an expert makes an assumption of a fact does not mean that the fact has been proven or that the jury has to presume that same fact.

In summary, Mr. Wyant will be permitted to give expert testimony consistent with the video so long as he can first authenticate the video and a transcript of the audio of the video and list of information and materials is promptly provided to the defense. The Court expects the direct examination of Mr. Wyant to be brief, as he may not testify beyond what is shown and discussed in the video.

### C. Robert Morton (Docket 1004; opposition at Docket 1008; reply at Docket 1035)

The government seeks to introduce the expert testimony of Robert Morton, a former FBI behavioral analyst and crime scene analyst. The defense seeks to limit Mr. Morton's testimony so that it does not include any "profile-like conclusions, opinions, assessments, motives, or characteristics."[37] The defense does not challenge Mr. Morton's qualifications.[38] The Court agrees with the parties that Mr. Morton is qualified—as relevant here—to testify as to crime-scene analysis. The Court also finds that Mr. Morton's proposed testimony is relevant to assist the jury in understanding the government's theory of what events unfolded at the crime scene. The Court has undertaken a Rule 403 analysis and finds that, except as set forth below, Mr. Morton's testimony has sufficient probative value that outweighs any unfair prejudice associated with this testimony.

---

[37] Docket 1004 at 18.

[38] Docket 1035 at 3.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 10 of 14

In the first trial of this case, Mr. Morton testified as to his crime scene analysis and opined that "the offender targeted Mr. Hopkins and Mr. Belisle for a personal cause."[39] He also testified about the lifestyles of the victims and how their lifestyles supported the conclusion that there was a personal cause for the homicides.[40] He testified as to his reasoning and conclusions regarding the sequence of events that occurred in the T-2 building at the time of the homicides and why the perpetrator chose to use the weapon that was used.[41] The government asserts that Mr. Morton's testimony during the retrial "will not be a carbon copy" of his first testimony and that it will be asking Mr. Morton a different set of questions.[42]

The parties' dispute about Mr. Morton can be distilled to one point: Whether Mr. Morton is proposing to give inadmissible "profiling" testimony or whether he is proposing to give relevant and admissible "crime scene analysis" testimony.[43] Mr. Morton has submitted two reports: A report dated October 11, 2013, and a report dated November

---

[39] Docket 1004-3 at 8.

[40] Docket 1004-3 at 9.

[41] Docket 1004-3 at 11–14, 43.

[42] Docket 1008 at 2. Although the government criticizes the defense for prematurely speculating as to Mr. Morton's testimony by referencing his testimony in the first trial of this case, the Court does not find it unreasonable for a party to look at a witness's prior testimony in the same case when preparing motions and argument for the second trial. *See* Docket 1008 at 2, 3. The Court finds that the defense motion is ripe.

[43] There is no dispute that profiling testimony is not admissible in this case. *United States v. Wells*, 879 F.3d 900, 922 (9th Cir. 2018) ("The probative value of Dr. Meloy's [profiling] testimony is found only in its ability to answer the impermissible question of whether, based on his character profile, Wells acted in accordance therewith on the morning of April 12, 2012."). The Ninth Circuit reversed and remanded this case for a new trial based on the improper and prejudicial introduction of profiling testimony, reasoning that it had "no place as substantive evidence of guilt" and was improper character evidence pursuant to Rule 404(a)(1). *Id.* at 924.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 11 of 14

30, 2018.[44] The Court has reviewed both reports and Mr. Morton's testimony from the first trial. The reports generally focus on crime scene analysis such as the locations of the bodies, the trajectory of bullets and the victims' wounds and the physical layout of the T-2 building. Except as set forth below, the Court will allow Mr. Morton to testify as to this crime scene analysis. The reports also include Mr. Morton's "victimology" analysis. The Court will allow Mr. Morton to testify as to objective information he learned about the victims (*e.g.*, their routines and their lifestyles).

However, the Court will *not* allow Mr. Morton to testify to the following:

- Materials presented in Mr. Morton's October 11, 2013 report that are not included in his November 30, 2018 report. The Court will hold the government to its assertion that Mr. Morton is only going to testify as to facts, conclusions, and opinions that are found in his supplemental (November 30, 2018) report.[45] If the government seeks to elicit testimony from Mr. Morton that is not contained in that supplemental report, as further limited below, it must first make application to the Court outside the presence of the jury.

- As to the supplemental report, the conclusions that the offender "drove to the building."[46] The Court is aware of no eyewitness who will testify or video that shows that the vehicle seen in the T-1 video stopped at the T-2 building (or correspondingly ever left the T-2 building). Mr. Morton may refer to the T-1

---

[44] Docket 1004-1 (2013 report); Docket 1004-2 (2018 supplemental report).

[45] Docket 1008 at 5.

[46] Docket 1004-2 at 1.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 12 of 14

> video but may not definitively state that the relevant vehicle is being driven to or leaving the T-2 building.

- The conclusion "Mr. Belisle was not concerned about the person who entered" the T-2 building.[47] This conclusion is too speculative and unreliable to be admissible. This conclusion is based on the victim having his back to the perpetrator, which could have been caused by the victim attempting to run away, simply turning away from an armed threat, or not hearing the perpetrator enter the T-2 building. Mr. Morton has not sufficiently explained how he concluded that the victim was not alarmed.

- The conclusion that the offender's use of a large-caliber weapon was "to ensure the death of the victims."[48] Mr. Morton has provided almost no justification for this conclusion. This conclusion also improperly implies that Mr. Morton has special insight into the mind of the perpetrator.

Prior to Mr. Morton opining to the jury that the homicides were "personal cause homicides," the government must make application to the Court outside the presence of the jury to establish that Mr. Morton can reach this opinion in light of the restrictions on his testimony.[49]

## II. Conclusion

In light of the foregoing, IT IS ORDERED that:

---

[47] Docket 1004-2 at 1.

[48] Docket 1004-1 at 8; Docket 1004-2 at 2; Docket 1004-3 at 16, 43.

[49] Similarly, counsel shall not refer to potential testimony on "personal cause homicides" by Mr. Morton during opening statements, unless otherwise ordered.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 13 of 14

- The motion regarding Mr. Schmidt at Docket 1006 is DENIED.
- The motion regarding Mr. Wyant at Docket 1007 is DENIED so long as the government provides a transcript of the audio on the video to the defense **within seven days** of the date of this order.
- The motion regarding Mr. Morton at Docket 1004 is GRANTED IN PART and DENIED IN PART as set forth above.

Both parties should seek to elicit testimony from their experts that can reasonably be found within the four corners of the testifying expert's report. If an expert begins testifying to matters that cannot be fairly derived from the report, the Court will entertain objections based on unfair extrapolation.

Both parties must comply with this order, and any application to modify the terms of this order shall be made outside the presence of the jury.[50]

DATED this 17th day of July, 2019, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[50] Although the Court has addressed its Evidence Rule 403 findings in this order, the Court does not intend these findings to preclude objections to specific questions or testimony at trial based on Evidence Rule 403, or on any other applicable basis.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motions *in Limine* to Exclude Government Expert Witnesses
Page 14 of 14