# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| JAMES MICHAEL WELLS, | Case No. 3:13-cr-00008-SLG |
| Defendant. | |

## ORDER RE MOTION TO EXCLUDE OTHER ACTS EVIDENCE

Before the Court at Docket 943 is defendant James Michael Wells' Motion to Exclude Other Act Evidence.[1] The government filed an opposition.[2] Mr. Wells filed a reply.[3] The motion was addressed at oral argument on April 22, 2019.[4] Thereafter, at the request of the Court, both parties filed supplemental briefing.[5]

Mr. Wells seeks an order prohibiting "the introduction of inadmissible other act evidence pursuant to F.R.E. 404(b), 403, and the defendant's constitutional right to a fair trial."[6] The defense challenges specific allegations of employment misconduct by Mr. Wells, set forth below in chronological order:

1. Being upset about the decision to install bird diverters

---

[1] The memorandum in support of the motion is at Docket 944.

[2] Docket 957.

[3] Docket 962.

[4] Docket 970 (minute entry).

[5] Docket 973 (government's supplemental brief); Docket 983 (defendant's supplemental brief).

[6] Docket 943 at 2.

2. Not participating in the creation of an antenna manual

3. Allegedly misusing a fuel card

4. Participating in tree collaring

5. Failing to notify superiors of his absences and whereabouts

6. Losing the opportunity to attend a professional conference

7. Not participating in a warehouse cleanout

8. Determining how to install an antenna cable[7]

Four Federal Rules of Evidence govern the admissibility of these prior acts. Evidence Rules 401 and 402 require that the evidence be relevant. Evidence Rule 404(b) prohibits introduction of prior act evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but allows this evidence to prove motive. Evidence Rule 403 requires that the probative value of prior acts not be substantially outweighed by unfair prejudice, confusion of the issues, a risk of misleading the jury, undue delay, wasting time, or result in cumulative evidence. Accordingly, if the prior acts are relevant under Rules 401 and 402, comply with Rule 404(b), and pass the Rule 403 balancing test, then they are admissible.

**I.      Relevancy**

On appeal after his first trial, Mr. Wells challenged the same prior acts he challenges in this current motion.[8] The Ninth Circuit held that the prior acts evidence, "as

---

[7] The government has indicated that it will not be introducing evidence of the 2003 Attu Island incident (which the Ninth Circuit had held inadmissible, *Wells*, 879 F.3d 900, 928 (9th Cir. 2018)), evidence of Mr. Wells' purported engagement with prostitutes, or evidence of allegedly stolen Coast Guard property. Docket 956 at 5; Docket 957 at 6.

[8] *Compare* Docket 944 (outlining challenged prior acts) *with Wells*, 879 F.3d 900, 926–27 (9th Cir. 2018) (listing prior acts challenged on appeal). At the first trial, the defense objected to the admission of the prior acts, and those "pretrial objections were definitively overruled, adequately

a whole, was relevant to Wells' work environment, including his relationships with relevant co-workers and supervisors . . . ."[9] The government now pursues essentially the same theory as to Mr. Wells' motive that it presented during the first trial: That the "discontent he suffered in his professional life and deterioration in professional status preced[ed] the murder of his two colleagues who stood in his way."[10] This motive theory makes testimony about prior acts related to Mr. Wells' workplace relevant.

However, after reviewing the motive theory presented by the government in the first trial, the Ninth Circuit found "that the Government crafted this motive theory with much too broad a brushstroke, paving the way for it to introduce evidence which was not truly relevant to the charged crimes."[11] Instead, the Ninth Circuit accepted the government's motive theory "*if it begins with the 2011 investigation into the unauthorized use of the fuel card*; proceeds to the resultant letter of caution issued in 2012; recognizes that, throughout that time, Wells suffers a consistent loss of 'rank' within the rigger shop; builds to the decision by the USCG command to disallow Wells' attendance at an annual

---

preserving these claims for appeal." *Wells*, 879 F.3d at 925. The Ninth Circuit reviewed the prior acts evidence *de novo*. *Id. See also* 2016 WL 929803 at *53–54 (Appellant's Opening Brief listing prior acts).

[9] *Wells*, 879 F.3d at 930.

[10] Docket 958 at 3. At oral argument, the government described its motive theory as: "Wells had frustrations beginning in 2011 with the change in the COMMSTA command, which placed unwelcomed pressure on him to conform to the change of command. Due to those absences from work, he becomes increasingly frustrated by a loss of both professional independence and importance. His frustrations turn to anger and culminate in the murder of his co-workers, one of whom is his direct supervisor and the of whom is the individual who appears to be taking over his job." Docket 1073 (partial transcript of oral argument on motions *in limine*, Apr. 22, 2019).

[11] *Wells*, 879 F.3d at 925.

conference; and finally culminates in Wells' murder of his co-workers."[12] Thus, the chronological starting point for the government's motive theory begins with the investigation into the use of the fuel card, which occurred in the fall of 2011.[13] Accordingly, the prior acts that predated the fuel card investigation are not relevant to the government's motive theory and do not have any independent relevance that would justify admissibility. These prior acts are the June 2011 disagreement about whether to install bird diverters[14] and Mr. Wells' lack of participation in creating an "antenna book," which began no later than 2010.[15] The Ninth Circuit did not address either of these events in

---

[12] *Wells*, 879 F.3d at 929 (emphasis added).

[13] Docket 973-1 ("Letter of Caution-Misuse of COMMSTA Kodiak's General Fuel Card").

[14] The Court, after its own review, also finds that the bird-diverter evidence has no relevance to the government's motive theory. The testimony was that Mr. Wells was "upset" by the decision to install the bird diverters and that he did not participate in installing them, although he was never asked to participate in installing them. Docket 732 at 197; Docket 741 at 30 (testimony of Chief Scott Reckner). Even when viewed in conjunction with the other prior acts, trying to connect this evidence to Mr. Wells' purported motive to commit homicide requires too much speculation to be relevant. This evidence does not show Mr. Wells' "diminished position in the Rigger Shop and his frustrations with Command." Docket 973 at 16. This evidence also carries a risk of unfair prejudice because it characterizes Mr. Wells as a bad employee and demonstrates his willingness to ignore federal law. Docket 732 at 195–96 (testimony of Chief Scott Reckner that the EPA and "the law" require installation of bird diverters). Due to its *de minimus* probative value and the risk of unfair prejudice, it is also prohibited by Evidence Rule 403.

[15] The Court, after its own review, also finds that the antenna book evidence has no relevance to the government's motive theory. The testimony was that at some time no later than 2010 Mr. Wells was asked to produce a reference manual for all of the antennae in the inventory. Docket 732 at 221 (testimony of Chief Scott Reckner). However, Mr. Wells did not appear to begin work on the book, so the task was instead completed by the two victims and a third employee. Docket 732 at 222–23 (testimony of Chief Scott Reckner). When the third employee sought information from Mr. Wells to put in the book, "[s]ometimes he was very forthcoming and gave information or he'd reference me to a manual to look at. Other times he didn't want to talk about it. It was frustrating. I don't think he--he didn't like--he thought it was pointless that we were doing it." Docket 741 at 85 (testimony of Seaman Leah Henry). Review of the totality of the testimony regarding the antenna book reveals that it is at best neutral as to Mr. Wells' attitude towards the creation of the book. In the Court's view, the evidence does not show that "Wells was not helpful in providing her the information" or that "Wells was feeling marginalized." Docket 973 at 13. Due to its *de minimus* probative value and the risk of unfair prejudice, it is

its opinion, and Mr. Wells did not present them with any detail in his briefing to the Ninth Circuit.[16]

The Court finds that the remainder of the prior acts listed above are relevant to show Mr. Wells' motive.

## II. Application of Evidence Rule 404(b).

Evidence Rule 404(b) expressly permits evidence of prior acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[17] The government maintains that evidence of prior acts is permitted here to prove Mr. Wells' motive for the homicides.[18] As discussed *supra*, the prior acts are "relevant to Wells' work environment, including his relationships with relevant co-workers and supervisors . . . ."[19] Because Mr. Wells' work environment is directly tied to the government's motive theory, the prior acts are relevant to show motive. The defense's primary argument is that the remaining prior acts do not involve either of the two victims, and thus "there was no logical argument that Wells would kill two individuals uninvolved

---

also prohibited by Evidence Rule 403.

[16] *See* 2016 WL 929803 at *53–54 (Appellant's Opening Brief) ("The government was also permitted to elicit an array of prior act evidence to show Wells's narcissism and motive to kill . . . . Other incidents included an accusation of having improperly collared trees on Coast Guard property to cause their early death so he could use them as firewood, having disagreements regarding bird diverters on an antenna tower, having a difference of opinion about how to wire a particular antenna, failing to participate in a project to clean out a warehouse, and a perception of resisting collaborating in a project to prepare an antenna book."); 2017 WL 1093480 (Appellant's Reply Brief) (internal citations to the record omitted).

[17] Fed. R. Evid. 404(b)(2).

[18] Docket 957 at 8.

[19] *Wells*, 879 F.3d at 930.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Other Acts Evidence
Page 5 of 12

in the [prior acts] for this reason."[20] This focuses only on Mr. Wells' feelings towards the two victims and ignores the government's theory of Mr. Wells' diminishing professional importance and independence: that the overall "discontent he suffered in his professional life and deterioration in professional status preced[ed] the murder of his two colleagues who stood in his way."[21] This motive theory makes testimony about prior acts related to Mr. Wells' workplace relevant even if the acts did not involve either of the victims.

Even if other act evidence is relevant to prove a Rule 404(b) category, it is not admissible unless it also "(1) tends to prove a material point in issue; (2) is not too remote in time; [and] (3) is proven with evidence sufficient to show that the act was committed[.]"[22] Because the Court has already found that the prior acts are relevant—and thus tend to prove a material point in issue—the Court reviews the second and third elements for each challenged prior act.[23]

### A. September 2011 fuel card investigation and February 2012 letter of caution

Evidence of this act consists of testimony that Mr. Wells may have taken a government fuel card to purchase several hundred dollars' worth of fuel for his private use and that he was given a reprimand after an investigation into the use of the fuel card. This incident it is not too remote in time—it marks the beginning of the timeline for an

---

[20] Docket 944 at 5.

[21] Docket 958 at 3.

[22] *United States v. Wells*, 879 F.3d at 930 (citing *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002)). Because the Court is not admitting the prior acts to show intent, there is no requirement that the prior acts be similar to the charged offense. *Id.*

[23] Some of these prior acts do not fit neatly into an Evidence Rule 404(b) analysis because the *acts* themselves are not being used "to prove a person's character." Instead, Mr. Wells' *reaction to being reprimanded for the act* is being used to support the government's motive theory.

acceptable motive theory set out by the Ninth Circuit: "*if it begins with the 2011 investigation into the unauthorized use of the fuel card* . . . and finally culminates in Wells' murder of his co-workers."[24]

The government should focus its presentation of the fuel card incident on Mr. Wells' reaction to the letter of caution and not dwell on the actual underlying incident of the use of the fuel card being or minute details of the investigation. Mr. Wells' alleged misuse of the fuel card and the details of the investigation, standing alone, are not relevant to support the government's motive theory.[25] The misuse of the fuel card and the result of the investigation are only relevant to the motive theory because of how Mr. Wells allegedly *reacted* or *responded* to being given a letter of caution from his superior.

The defense contends that there is insufficient evidence that Mr. Wells was the person who misused the fuel card.[26] The Court recognizes that the Coast Guard investigation into the misuse of the fuel card was inconclusive as to who had used the fuel card.[27] However, the investigation produced circumstantial evidence that indicated Mr. Wells had used the fuel card.[28] The Court finds that there is sufficient evidence to allow a jury to find that Mr. Wells used the fuel card, and that there is undisputed evidence

---

[24] *Wells*, 879 F.3d at 929 (emphasis added).

[25] The only facts about the investigation relevant to the motive theory introduced at the first trial are that the two victims reported the fuel card missing (Docket 732 at 201 (testimony of Chief Scott Reckner)), and that the two victims provided statements to the investigator (Docket 732 at 89 (testimony of Chief Stephen Cartier).

[26] Docket 983 at 7.

[27] Docket 732 at 97–98 (testimony of Chief Stephen Cartier); Docket 741 at 31 (testimony of Chief Scott Reckner).

[28] Docket 971-1.

that he was reprimanded for use of the fuel card. Therefore, the fuel card incident meets Rule 404(b)'s requirement.[29] However, due to the lack of conclusive evidence about who used the fuel card, the government shall not argue that Mr. Wells definitively stole or misused the fuel card.

### B. 2011 tree collaring

Evidence of this act consists of testimony that in the summer of 2011, Mr. Wells had collared trees that did not need to be cut down in order to collect firewood for personal use. In a meeting in August of 2011, he was directed that tree collaring must stop immediately.[30] In November of 2011, he was given a follow-up memorandum outlining the tree-removal policies.[31]

The Ninth Circuit expressly found that the tree collaring incident was properly admitted at the first trial under Evidence Rule 404(b)(2) because it fit "within a reasonably tailored version of the Government's motive theory . . . ."[32] The Court agrees as to Mr. Reckner's discovery of the tree collaring that immediately preceded the August 2011 meeting, the August 2011 meeting itself, and the subsequent memorandum. These events are not too remote in time, were proven by sufficient evidence, and meet Rule 404(b)'s requirements.

---

[29] The defense maintains that Mr. Wells was not "disciplined" for use of the fuel card. Docket 983 at 5. Although the letter states that it is "non-disciplinary," the tone of the letter is indisputably one of chastisement as it states that Mr. Wells "did not fulfill [his] basic responsibilities" and that his "conduct was unacceptable and will not be tolerated." Docket 973-1.

[30] Docket 973-2.

[31] Docket 973-2.

[32] *Wells*, 879 F.3d at 930.

However, in the first trial of this case, the government also elicited testimony about a previous disagreement Mr. Wells had with a co-worker regarding taking firewood and an old memorandum "from several commands ago" that had previously been issued to Mr. Wells stating that he could not collar trees.[33] These instances lack relevance, are too remote in time, and thus are not admissible in the government's case-in-chief.

### C. November 2011 letter of expectation

Evidence of this event consists of testimony that in November of 2011, Senior Chief William Reed gave Mr. Wells a letter of expectation outlining the proper use of sick leave and vacation leave.[34] The letter was written in response to Mr. Wells not advising his superiors about when he would be away from work or his whereabouts. There is no evidence that Mr. Wells became angry or argued about the issues or about the reprimand. This does not appear to be a prior act subject to Evidence Rule 404(b).[35] However, it is relevant in that it is an example of Mr. Wells' superiors applying pressure on him to comply with Coast Guard employee regulations.

### D. January 2012 limitation placed on Wells' work travel

Evidence of this event consists of testimony that Mr. Wells' superiors decided that Mr. Wells would not attend the National Association of Tower Erectors annual conference in early 2012, and that the two victims would attend instead.[36] This decision was made

---

[33] Docket 741 at 207–12 (testimony of Lieutenant David Pizzurro).

[34] The letter is dated April of 2011 but was signed by Mr. Wells in November of 2011. Docket 973-3. The letter indicates that the points in the letter were discussed with Mr. Wells in April of 2011. Docket 973-3 at 1.

[35] To the extent it may include prior acts subject to Rule 404, it is relevant, it is not too remote in time, and it is proven by testimony sufficient to prove that it occurred.

[36] Docket 944 at 8; Docket 732 at 213 (testimony of Chief Scott Reckner); Docket 742 at 31

due to Mr. Wells' disciplinary problems and excessive absences. When informed of this decision, Mr. Wells became upset and questioned why one of the victims—Mr. Belisle—was allowed to attend the conference.[37] Notably, Mr. Wells then asked his superior—Chief Reckner—what role the chief felt Mr. Wells played in the rigger shop. This led to a "heated" discussion between Chief Reckner and Mr. Wells, during which the chief expressed that Mr. Belisle had done great work in Mr. Wells' absence, and that "in my opinion, [Mr. Belisle] wasn't that far away knowledge wise from Mr. Wells."[38]

This event occurred a few months prior to the homicides, it can be proven with testimony that shows the act was committed, and it meets the requirements of Rule 404(b).

### E. March 2012 warehouse cleanout

Evidence of this event consists of testimony that Mr. Wells did not participate in cleaning out or organizing the warehouse in March of 2012. Specifically, Mr. Wells "walked in, he saw all of his equipment going into this box, and then he said something, and then he walked out."[39] Mr. Wells did not participate in the cleanout even though a superior asked him to help; however, due to illness Mr. Wells "was gone for a good part of it."[40] There was no testimony in the prior trial that Mr. Wells became angry or

---

(testimony of Senior Chief William Reed).

[37] Docket 732 at 214 (TR 923).

[38] Docket 732 at 214–15 (TR 923–24) (testimony of Chief Scott Reckner).

[39] Docket 732 at 148 (testimony of Petty Officer James Encinas).

[40] Docket 732 at 226 (testimony of Chief Scott Reckner); Docket 731 at 29 (testimony of Petty Officer Cody Beauford).

argumentative. This does not appear to be a prior act subject to Evidence Rule 404(b).[41] However, it is relevant in that it demonstrates Mr. Wells' purported diminishing role or authority in the rigger shop, as some of the items being discarded were items he had collected and wanted to keep.

### F. April 2012 satellite antenna cable placement disagreement

Evidence of this event consists of testimony that on the day before the homicides, Mr. Wells and one of the victims—Mr. Belisle—were determining the best way to run an antenna cable to the roof of a building. Mr. Wells and Mr. Belisle had differing ideas on how to run the wire, and Chief Reckner elected to implement Mr. Belisle's idea. Mr. Wells was calm and did not argue about this decision.[42] This is not a prior act subject to Evidence Rule 404(b).[43] However, it is relevant in that it involved one of the victim's ideas being chosen instead of Mr. Wells' idea, supports the government's motive theory, and occurred the day before the homicides.

### III. The prior acts do not violate Evidence Rule 403.

The Ninth Circuit held that "[o]n balance, the probative value of this evidence is unique in a workplace homicide trial, and we do not find that it is substantially outweighed by any danger of unfair prejudice."[44] The Court has undertaken its own Rule 403

---

[41] To the extent it may be subject to Rule 404, it is relevant, it is not too remote in time, and it is proven by testimony sufficient to prove that it occurred.

[42] Docket 731 at 44 (testimony of Petty Officer Cody Beauford); Docket 732 at 230 (testimony of Chief Scott Reckner).

[43] To the extent it may be subject to Rule 404(b), it is relevant, it is not too remote in time, and it is proven by testimony sufficient to prove that it occurred.

[44] *Wells*, 879 F.3d at 930.

evaluation of the prior acts in part because the defense maintains that, unlike in the first trial, it will not be seeking to introduce any or Mr. Wells' personnel records.[45] Having weighed the probative value of the prior acts, the Court finds that their probative value, taken individually and cumulatively, is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or presentation of cumulative evidence.

The defense has transcripts of the witnesses' previous testimony that can be used for impeachment should a witness deviate materially from their prior testimony. The government has indicated that it will propose a limiting instruction to inform the jury that the evidence is admitted only for the limited purpose of proving motive and that the jury can only consider it for that limited purpose.[46] Finally, as to the fuel card incident, because the government should focus its evidence on Mr. Wells' reactions to the reprimands and not the minute details of the alleged misconduct, the presentation of this evidence is unlikely to be confusing or misleading or to take substantial time.

In light of the foregoing, IT IS ORDERED that the motion at Docket 943 is GRANTED IN PART and DENIED IN PART as outlined above.

DATED this 29th day of July, 2019, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[45] Docket 962 at 4–5; Docket 983 at 3; *see also Wells*, 879 F.3d at 925 ("More persuasive is the Government's argument that much of the other act testimony concerned actions which were detailed in Wells' USCG personnel folder, referred to during defense counsel's opening statement and admitted without objection at trial.").

[46] Docket 956 at 9 (government's Notice of Intent to Introduce Other Acts Pursuant to Federal Rule of Evidence 404(b)).