Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA 98101
(206) 624-1551
petercamiel@yahoo.com

Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER OFFICE
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>Vs.<br><br>JAMES MICHAEL WELLS,<br><br>        Defendant. | Case No. 3:13-cr-00008-SLG<br><br>**DEFENDANT WELLS' SUPPLEMENTAL BRIEF REGARDING CONDITIONAL RELEVANCE OF APRIL 19 VIDEO RECORDING** |

James Michael Wells, through counsel Peter A. Camiel and Gary Colbath, submits this supplemental brief on the issue of conditional relevance in support of his motion found at docket 1012. Since there is no evidence that Wells drove his wife's Honda CR-V on April 12, 2012, the government-created April 19 video and all images extracted from that video have no relevance and should be excluded.

The government theory is that on April 12, 2012, Wells drove his white Dodge truck to the Kodiak airport, switched to his wife's Honda CR-V, drove the CR-V from the airport to the T-2 rigger shop, murdered Belisle and Hopkins, and then drove the CR-V back to the airport, switched back to his white truck and drove home. The government seeks to introduce

video and still frame shots from a law enforcement created April 19 video which employed use of the Wells' Honda CR-V through government expert witnesses including Mr. Vorder Bruegge, Mr. Toglia, Mr. Becker, Mr. Schmidt, and Mr. Mestha.

Kodiak main base video shows Wells' white truck pass by the main gate heading away from his residence towards the airport/T-2 at 6:48 a.m. on April 12. That same main gate camera shows Wells' white truck drive past the main gate heading back towards his residence at 7:22 a.m. There is no main gate video showing the Honda CR-V on April 12.

The government's only "evidence" that the Honda CR-V was driven by Wells on April 12 is that the car was in a location where Wells had the opportunity to use it, however there is no actual evidence that supports the claim that he drove the CR-V on that day.[1] It is undisputed that the Honda CR-V had been parked at the Kodiak airport since April 10 when Mrs. Wells flew to Anchorage. The Alaska cargo office located in the airport terminal was equipped with a surveillance video camera that covered not only the interior of that building but also covered part of the parking lot through the building window. Neither Wells, the Honda CR-V or Wells' white truck were captured on video on April 12, 2012.

On the morning of April 12, 2012 between 6:48 a.m. and 7:22 a.m. the Kodiak airport was a beehive of activity. The airport terminal was fully staffed with airline and car rental employees. Alaska airlines flight 47 arrived with 51 passengers at 7:00 a.m. That aircraft picked up 39 passengers and departed for Anchorage at approximately 7:15 a.m. Era flight 886 arrived during this time with 26 passengers and departed after picking up 12 new

---

[1] The Court should note in the first instance that no evidence exists to show that the blue car from the April 12 video stopped at T-2 or was involved in the murders. Interestingly, the government makes the completely circular argument that it can prove Wells drove the CR-V on April 12 (and was therefore involved in the murders) precisely because they believe his car is shown on the video that morning.

passengers. People were coming out of the Alaska air terminal who had arrived on the incoming fights and either walking to their parked cars or to waiting cars. Likewise, all of the departing passengers either parked in the parking lot or were dropped off by others who drove through the parking lot. At least two other airlines adjacent to the parking lot, Island Air and Servant Air, had scheduled passengers and employees at the airport. The airport hotel, the Comfort Inn, had 52 registered guests coming and going that day. The airport coffee shop had customers coming and going. The airport parking lot was being refurbished and the construction crew began work before 7:00 a.m.

In spite of there being an estimated three hundred people at the airport that morning, no one saw Wells nor the Honda CR-V being driven at all. However, two people did observe the Wells' CR-V parked at the airport. The first saw it just before 7:00 a.m. and the second saw it just after 7:30 a.m. Both observed it stationary and in the exact same spot where it was when law enforcement placed a guard on it the night of April 12 and seized it three days later on April 15. The government wants the Court to ignore these facts even though under its theory Wells would have had to have entered the parking lot, exited his truck and walked to his wife's CR-V, drove back out through the parking lot, and then fifteen minutes later drove back through the parking lot in the CR-V a second time, parked the CR-V near the same spot that had somehow stayed vacant, then walked back to his truck and drove away all without being seen. Of course it is far more likely that the reason no one saw Wells or the CR-V being driven is because the car never left the airport. In the face of the undisputed facts about the airport activities and eye-witness observations on the morning of April 12, the government's stand-alone "opportunity" argument in no way supports a finding by a preponderance of evidence that Wells drove the CR-V on that day.

Yet more evidence supports the defense argument and contradicts the government's position here. From 6:48 a.m. to 7:48 a.m. on April 12 Anton Larson Bay Road was also full of traffic. Shift change was taking place at T-1 and T-2. Construction workers were arriving for work at the water treatment plant located along that road. Employees were headed to work at both the golf course and DOT shop located along that road. But again, no one saw Wells driving the CR-V or the Wells' CR-V itself anywhere near T-2. However, one witness, a truck driver delivering equipment to the water treatment plant, did identify a car consistent with Wells' CR-V parked near the Buskin River bridge along Anton Larson Bay road at approximately 7:45 a.m.[2] Law enforcement dismissed this sighting without investigation. The government would have this Court do the same.

There is more. On April 15, 2012 law enforcement seized the Wells' Honda CR-V. Crime scene technicians thoroughly examined the exterior and interior of that vehicle for any evidence linking it to the murders. The examinations included the inspection and vacuuming of the interior to test for blood or any other biological evidence. Nothing was found to show that the vehicle had any connection to the murders or had been driven on April 12 by Wells, or anyone else.

The evidence supports a finding for the defense when comparing both sides' theories under a preponderance standard. The government's only evidence is that the CR-V was in a location that may have given Wells time to access it to commit the murders under its asserted timeline. The defense evidence is that Wells drove from his home towards work, stopped

---

[2] The witness reported this sighting to law enforcement after seeing a picture of Wells' CR-V in the Kodiak newspaper. However, law enforcement determined it could not be Wells' car as he had already passed back across the main gate camera headed home in his white truck by 7:22 am.

briefly at an out-of-the-way area of the airport, then returned back towards his home, while never accessing the CR-V at all. The evidence regarding the multitude of people who should have seen Wells if the government is correct, coupled with the eye-witnesses who saw the CR-V unmoved at the airport and a blue SUV on Anton Larson Bay road at a time when it could not have been driven by Wells, far outweighs the weak government opportunity theory. Clearly the evidence makes the defense's position more likely to be true than the government's theory.

F.R. Cr. P. 104(b) provides:

(b) **Relevance That Depends on a Fact**. When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

Rule 104 is the source of this Court's "gate-keeping" authority. Rule 104(a) states that the court "must decide any preliminary question" of fact or law about three types of issues: whether (1) "a witness is qualified, " (2) "a privilege exists, " or (3) "evidence is admissible." Fed.R.Evid. 104(a); *see also* Fed. R. Evid. 104(a) advisory committee notes. Rule 104(a) is necessarily limited by other rules of evidence—most importantly, Rule 402, which provides that evidence is admissible so long as (1) it is relevant, and (2) it is not otherwise inadmissible. Fed.R.Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible."). Thus, Rule 104(a) provides the trial court with the authority to decide questions that might make evidence inadmissible under some *other* rule of evidence (or under the Constitution, a federal statute, or other Supreme Court rules). *See United States*

*v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991) ("Rule 104 . . . is limited to the preliminary requirements or conditions that must be proved before a particular rule of evidence may be applied."). For example, trial courts can exercise their authority under Rule 104(a) to determine that a statement was made for the purposes of medical diagnosis, making it admissible under Rule 803(4), *see United States v. Lukashov*, 694 F.3d 1107, 1115 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 1744 (2013); that a conspiracy existed, making certain co-conspirator statements admissible under Rule 801(d)(2)(E), *see Bourjaily v. United States*, 483 U.S. 171, 175 (1987); and that an agency relationship existed, making certain statements admissible under Rule 802(d)(2)(D). The Supreme Court determined in *Huddleston v. United States*, 485 U.S. 681, 689 (1988), that under Rule 104(b) the court must find by a preponderance of the evidence that a jury could reasonably find the conditional fact at issue.

Here, the April 19 video is only relevant under Rules 401 and 402 if the government can prove by a preponderance the conditional fact -- that Wells drove the Honda CR-V on April 12. Without such showing, the government created video is not relevant. Moreover, because of the extreme prejudice by the use of the April 19 video (and screen shots from it), which produced a highly suggestive single object show up, Rule 403 must also be considered. In light of the video's extremely prejudicial effect, the Court should require the government to proffer evidence, outside the presence of the jury in advance of trial to show that a jury could find by a preponderance that Wells drove the CR-V on April 12 before admitting the April 19 video or any images extracted from that video. Based on the evidence known to the defense, the government cannot meet this burden.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                                                      Page 6

Case 3:13-cr-00008-SLG   Document 1097   Filed 08/06/19   Page 6 of 7

DATED this 6th day of August, 2019.

Respectfully submitted,

*/s/Gary Colbath*
Assistant Federal Defender

Certificate of Service:

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596
Attorneys for Defendant Wells

I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on August 6, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.

*/s/ Gary G. Colbath*