BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:   steven.skrocki@usdoj.gov
         christina.sherman@usdoj.gov
         kelley.stevens@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JAMES MICHAEL WELLS )<br>)<br>Defendant. )<br>_____ ) | No. 3:13-cr-00008-SLG |

**UNITED STATES' RESPONSE TO DEFENSE MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT WITNESSES ROBERT PLETNIKOFF AND LUKE ROBINSON**

COMES NOW the United States of America, by and through the above-named

counsel, and files with the Court this response to the Defense Motion to Exclude the Testimony of Government Witnesses, Robert Pletnikoff and Luke Robinson. (Doc. 1088).

In its motion, the defense specifically seeks the exclusion of Robert Pletnikoff's and Luke Robinson's testimony, alleging that "it is remote, irrelevant, speculative, argumentative, and unfairly prejudicial." Dkt 1088 at 2. Specifically, the defense opposes Mr. Pletnikoff's reference to a stainless steel revolver he believed to be either a 357 or .44 magnum that he observed in Wells' possession while hunting approximately "ten years ago" to the time of giving his 2012 statement. Additionally, the defense moves to exclude Mr. Robinson's reference to a silver revolver he believed to be a Smith and Wesson .44 magnum he too observed in the Wells' residence around the same time( approximately 1997/1998).

## I. Applicable Law

The Federal Rules of Evidence exist to ascertain the truth and secure a just determination. FRE 102. To that end, all relevant evidence should be admitted. Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without that evidence and the fact is of consequence in determining the action." FRE 401. The standard for relevance is a low one - does the evidence have any tendency to prove or disprove the disputed fact? See United States v. Martinez, 938 F.2d 1078 (10th Cir. 1991). Relevance depends on the proponent's reading of the facts, and is not dependent upon a finding by the judge that the evidence is credible. Johnson v. Washington Metropolitan Area Transit Authority, 764 F.Supp. 1568 (D.D.C. 1991).

Relevant evidence may be excluded if the probative value is outweighed by adverse considerations such as the danger of unfair prejudice, confusion, or waste of time. Because the law favors the admission of all relevant evidence, exclusion under Rule 403 "is 'an extraordinary remedy [that] should be used sparingly.'" United States v. Watson, 766 F.3d 1219, 1241 (10th Cir. 2014). Just because evidence is prejudicial however, is not a reason for exclusion as long as it is sufficiently probative. United States v. McGuire, 27 F.3d 457 (10th Cir.1994). The more probative the evidence, the more a court will tolerate prejudice. United States v. Earls, 704 F.3d 466, 471 (7th Cir. 2012), citing Whitehead v. Bond, 680 F.3d 919, 930 (7th Cir. 2012); United States v. Curry, 79 F.3d 1489, 1496 (7th Cir. 1996); United States v. Dwyer, 539 F.2d 924 (2d Cir. 1976). Whether the evidence is unfairly prejudicial is a different question than whether the evidence is prejudicial. United States v. Bailleaux, 685 F.2d 1105, 1111 n.2 (9th Cir. 1982). The fact that the evidence may tend to convict the defendant does not make it unfairly prejudicial. United States v. Avants, 367 F.3d 433, 445 (5th Cir. 2004), cert. denied, 536 U.S. 968 (2002). See also United States v. Johnson, 581 F.3d 320, 327 (6th Cir. 2007); cert. denied, 560 U.S. 966 (2010) ("'[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.'")

Rule 403 is a rule of inclusion, not of exclusion. United States v. Norton, 867 F.2d 1354 (11th Cir. 1989), cert. denied, 491 U.S. 907, 493 U.S. 871 (1989); the Rule carries a strong presumption for admissibility. United States v. Grant, 256 F.3d 1146, 1155 (11th

U.S. v. James Michael Wells
3:13-cr-00008-SLG                                3

Case 3:13-cr-00008-SLG   Document 1108   Filed 08/12/19   Page 3 of 9

Cir. 2001). The appellate court should judge the evidence in the light most favorable to the proponent, "maximizing its probative value and minimizing its prejudicial effect." United States v. Henthorn, 864 F.3d 1241, 1256 (10th Cir. 2017); United States v. Jamil, 707 F.2d 638, 642 (2d Cir. 1983); United States v. Nevels, 490 F.3d 800, 805(10th Cir. 2007); United States v. Campos, 221 F.3d 1143, 1150 n.3 (10th Cir. 2000); United States v. Maliszewski, 161 F.3d 992, 1010 (6th Cir. 1998), cert. denied, 525 U.S. 1183, 1184 (1999). Use of Rule 403 should be sparing since it permits exclusion of concededly probative evidence. Henthorn, supra; United States v. King, 713 F.2d 627 (11th Cir. 1983), cert. denied sub. nom.; McGlocklin v. United States, 466 U.S. 942 (1984). For example, the government, because of its heavy burden of proof, is entitled to cumulate evidence. United States v. Gallo, 543 F.2d 361 (D.C. Cir. 1976). Also, the United States is entitled to present its strongest case against a defendant. United States v. Eufrasio, 935 F.2d 553, 572-73 (3d Cir.), cert. denied sub nom., Idone v. United States, 502 U.S. 925, 112 S.Ct. 340 (1991).

To be inadmissible under this rule, "'the evidence must do more than damage the Defendant's position at trial, 'it must make ...a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocense [sic] of the crime charged." United States v. Burgess, 576 F.3d 1078, 1099 (10th Cir. 2009).

II. Argument

### a. Mr. Pletnikoff's Statements Surrounding the Stainless Steel Revolver Observed in Wells' Possession Circa 1998.

Law enforcement interviewed Mr. Pletnikoff twice, once in April 2012 and again in

U.S. v. James Michael Wells
3:13-cr-00008-SLG 4

July 2013. Additionally, he testified before the grand jury in December of 2012. During both interviews, Mr. Pletnikoff advised law enforcement that he observed Wells in possession of a stainless steel revolver. In April 2012, he stated that,

> [w]ell you know, he has um, he had a pistol for—for a bear. Um I'm not sure what kind it was. Maybe um, maybe a .44 or 357 [UI] stainless pistol he got it at one time. I've only seen it one time.

Transcript of April 2012 R. Pletnikoff Statement to Law Enforcement, attached herein as Exhibit 1. During his testimony before the grand jury in December of 2012, Mr. Pletnikoff further testified under oath that his recollection of the firearm that he observed in the defendant's possession while on a hunting trip was as he accurately and truthfully described it to law enforcement in his April 2012 interview. See Excerpt from R. Pletnikoff Grand Jury Testimony, attached herein as Exhibit 2. During his July 2013 interview with law enforcement, he reiterated that he thought it was a "big revolver…a shiny gun…maybe a stainless steel." See Audio Recording of Robert Pletnikoff July 2013, attached herein as Exhibit 3. Most notably however, Mr. Pletnikof never advised law enforcement that he remembered the gun he observed in the defendant's possession as a "blue steeled revolver". See Exhibit 2 at 2. This fact specifically counters the defense's argument that Mr. Pletnikoff observed the defendant's personal blue steel revolver recovered by law enforcement from the Wells' residence and discounted by experts as a possible murder weapon.

The defense argues that his observation of the firearm is "speculative" and "remote". Despite having observed the firearm many years priors to making his

U.S. v. James Michael Wells
3:13-cr-00008-SLG 5

Case 3:13-cr-00008-SLG Document 1108 Filed 08/12/19 Page 5 of 9

statement, the relevance of this observation does not dissipate with time. Although one's memory may naturally fade over time, Mr. Pletnikoff specifically brought the existence of the "stainless steel" revolver to the attention of the government without prompting. Further, when asked about the veracity of his initial statement made shortly to law enforcement after the murders, Mr. Pletnikoff indicated his statement remained an accurate account of what he remembered. See Exhibit 2.

Certainly, the defense can cross examine Mr. Pletnikoff about the surrounding facts in order to weaken the connection/nexus of the "shiny" "stainless steel" revolver with that of Mr. Stein's silver revolver last possessed by the defendant, the make and model of which experts will indicated was just one of three possible murder weapons.

### b. Luke Robinson's Statements Surrounding the Silver Revolver He Observed in the Wells' Residence.

The defense bases their argument for the exclusion of this piece of evidence on the same argument made for the exclusion of Mr. Pletnikoff's statement. This argument ignores the fact that this witness, like Mr. Pletnikoff, provided the information to law enforcement absent any specific prompting.[1] See Luke Robinson Summarized Statement to Law Enforcement, attached herein as Exhibit 4. Thus, two independent witnesses both observed a "stainless steel" revolver. The cumulative effect of this supports that their statements were in fact not speculative but based on a solid recollection of the events as

---

[11] Law enforcement made no indication of the color of the revolver to the witness countering any argument of "confirmation bias".

U.S. v. James Michael Wells
3:13-cr-00008-SLG                           6

they had observed them. Even so, the defense's argument of speculation should go towards the weight the jury gives this evidence.

Further, Mr. Robinson's statement that he observed a silver Smith and Wesson revolver is particularly probative because it disproves that the revolver he observed at the Wells' residence closely around the same time that Mr. Stein reported his silver Smith and Wesson revolver missing, was the Ruger model seized from the Wells' residence and discounted as the murder weapon. The defendant's revolver seized by law enforcement is dark blue steal with a wooden handle. See Dkt 1088-3 at 1.

### c. 403 Balancing Analysis

Lastly, the probative value of both the Pletnikoff and Robinson statements do not outweigh the danger of unfair prejudice. The admission of prejudicial evidence, without more, cannot be unconstitutional. All evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case. The key however, is whether it "far" outweighs its probative value. See e.g., United States v. LeMay, 260 F.3d 1018, 1026 (9th Cir. 2001). LeMay further highlights that, "[p]otentially devastating evidence of little or no relevance would have to be excluded under Rule 403." Id. Here, the evidence is not "devastating" as the defense can readily argue the same weaknesses they articulated in their brief. Nor is this evidence one that would unduly sway the emotions of the jury. The evidence however, highlights a probative and relevant piece in Wells' overarching actions and preparation in carrying out the murders against his colleagues, the potential access to, and use of, a stainless steel revolver not directly

traceable to him, the same make and model that experts identified as one of just three possible murder weapons; a relevant fact integral to the United States' theory of the case.

Here two separate individuals arguably biased towards the defendant (both were friends of his) independently identified a stainless steel revolver near the time that John Stein reported his own stainless steel revolver missing from the safe stored at the Wells' residence. Their individual statements collectively support the government's theory that the defendant had access to one of only three possible make and model firearms believed to have fired the bullets that killed the two victims. Further, the Court may give an appropriate limiting instruction to guide the jury in understanding that the testimony of these two individuals should go towards supporting the reasonable inference that Wells' possessed a Smith and Wesson 44 caliber revolver, and had access to it still at the time of the murders.

As such, given this testimony's probative value evidencing the defendant's access to one of only three probable make and models of the weapon used to murder the two victims, outweighing the prejudicial impact the non "devastating" and non-emotionally charged observations would have , it should be allowed as it goes to weight.

### III. Conclusion

Accordingly, the United States respectfully requests that this Court deny the defense's motion to exclude the statements of Mr. Pletnikoff and Mr. Robinson. The government does not request oral argument on this motion.

//

U.S. v. James Michael Wells
3:13-cr-00008-SLG            8

Case 3:13-cr-00008-SLG   Document 1108   Filed 08/12/19   Page 8 of 9

RESPECTFULLY SUBMITTED August 12, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Kelley Stevens
KELLEY STEVENS
Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2019, a true and correct copy of the foregoing was served electronically on:

Counsel of Record

s/ Kelley Stevens
Office of the U.S. Attorney

U.S. v. James Michael Wells
3:13-cr-00008-SLG                    9