## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JAMES MICHAEL WELLS,<br><br>        Defendant. | Case No. 3:13-cr-00008-SLG |

### ORDER REGARDING MOTION TO EXCLUDE TESTIMONY OF JUDY PLETNIKOFF

Before the Court at Docket 1089 is Defendant James Michael Wells' Motion to Exclude Testimony of Government Witness Judy Pletnikoff. The Government filed a response.[1] Neither party requested an evidentiary hearing or oral argument on the motion.

**I.  Background**

At the first trial of this case, government rebuttal witness Judy Pletnikoff testified about three subjects. First, she testified that she had historically assisted Mr. Wells' wife in moving her Honda CR-V when it was parked at the Kodiak Airport. Specifically, if Ms. Wells had parked in the airport parking lot while traveling and Mr. Wells was not available to move the CR-V, Ms. Pletnikoff would retrieve the CR-V and park it off-site away from the airport.[2] At the time of the homicides, Ms. Wells had flown to Anchorage for work,

---

[1] Docket 1102.

[2] Docket 1089-1 at 3–4.  Apparently, Ms. Wells did not want to leave her CR-V at the airport because it had once been vandalized while parked there and she wanted to avoid having to pay for parking fees.  Docket 1089-1 at 3

and her CR-V was parked at the airport. However, she had not asked Ms. Pletnikoff to move the CR-V on that occasion.[3] Ms. Pletnikoff testified this was because Mr. Wells "was in town, so that would have been—the job would have fallen on him."[4]

Second, Ms. Pletnikoff testified as to a change she observed in Mr. Wells' behavior—that he appeared "frustrated"—after he returned from a work trip to Shemya, Alaska.[5]

Third, Ms. Pletnikoff testified that at some point after the homicides but before Mr. Wells was in custody, Mr. Wells asked her if the FBI had been in contact with her. When Ms. Pletnikoff told Mr. Wells that she had spoken with the FBI, he angrily said, "I told you not to talk to them. You're to slam down the phone if they call."[6]

Ms. Pletnikoff also made a statement to a defense investigator about a fourth subject, although she did not testify about it during the first trial. She told the investigator that at some unidentified time prior to the homicides when she was at the Wells' house, Mr. Wells said, "I don't believe in divorce, I believe in murder."[7] Ms. Pletnikoff thought it was very important that the jury hear this statement.[8]

---

[3] Docket 1089-1 at 4.

[4] Docket 1089-1 at 4. Ms. Pletnikoff also testified that while she often moved Ms. Wells' CR-V when Ms. Wells traveled, she did not do so "when Jim [w]as in town." Docket 1089-1 at 9.

[5] Docket 1089-1 at 6–7.

[6] Docket 1089-1 at 7–8.

[7] Docket 1089 at 3.

[8] Docket 1089 at 3.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Testimony of Judy Pletnikoff
Page 2 of 7
Case 3:13-cr-00008-SLG   Document 1118   Filed 08/13/19   Page 2 of 7

## II. The statements about Mr. Wells' change in behavior and him "believ[ing] in murder"

The government has indicated that it will not be seeking to admit Ms. Pletnikoff's testimony as to Mr. Wells' change in behavior following his trip to Shemya or her testimony about Mr. Wells' purported statement that he "believe[d] in murder."[9] If the government later seeks to introduce evidence of these observations or statements, either through Ms. Pletnikoff or some other witness, it shall first seek leave of the Court outside the presence of the jury.

## III. Ms. Pletnikoff's testimony regarding moving the CR-V

Mr. Wells first asserts that Ms. Pletnikoff's testimony regarding moving the CR-V from the airport is improper character evidence.[10] The Government responds that the testimony is not character evidence, but that if it is character evidence it is inextricably intertwined with the homicides and is "'necessary to permit' counsel for the government to 'offer a coherent and comprehensible story regarding' Wells' commission of the murders."[11] The conduct of moving the CR-V away from the airport parking lot is not evidence of character or of a character trait as to either Mr. Wells or Ms. Wells. Even if it were a character trait as to Mr. Wells, it would not be prohibited by Evidence Rule 404(b) because the government is not seeking to admit it "to prove that on a particular occasion [Mr. Wells] acted in accordance with that character or trait." The government is seeking

---

[9] Docket 1102 at 2.

[10] Docket 1089 at 3–4.

[11] Docket 1089 at 3–4.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Testimony of Judy Pletnikoff
Page 3 of 7

to admit it to prove that Mr. Wells did *not* move the car from the airport after Ms. Wells departed just prior to the homicides.

Mr. Wells next maintains that Ms. Pletnikoff's testimony regarding moving the CR-V is improper habit evidence pursuant to Evidence Rule 406.[12] "Rule 406 is an exception to the general exclusion of character evidence under the Federal Rules . . . ."[13] The Ninth Circuit has set forth a three-element test to determine whether certain conduct constitutes habit: "(1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct."[14] "These elements are not meant to be three discrete components, each of which must be fully satisfied for evidence to qualify under Rule 406. Instead, a district court must consider the overall reliability of the evidence, using these factors as guides."[15]

Here, the conduct of moving the Honda CR-V from the parking lot at the airport does not qualify as habit evidence. It is not "reflexive or semi-automatic" behavior; Ms. Pletnikoff testified that Ms. Wells would make "very conscientious" plans with Ms. Pletnikoff regarding moving the CR-V, including calling her multiple times to ensure that the CR-V had been moved.[16] The specificity of the conduct only exists in that Ms. Wells wanted the CR-V moved; sometimes it would be moved back to the Wells' home, to the

---

[12] Docket 1089 at 3–4.

[13] *United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc).

[14] *Id.*

[15] *Id.* at 799 n. 5.

[16] Docket 1089-1 at 3–4.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Testimony of Judy Pletnikoff
Page 4 of 7
Case 3:13-cr-00008-SLG   Document 1118   Filed 08/13/19   Page 4 of 7

parking area by Island Air, or to someplace else "offsite" and was moved by various people.[17] There is also no evidence about the frequency of this conduct; although Ms. Pletnikoff testified that Ms. Wells "travels a lot," another witness gave conflicting statements about whether this conduct "was common" or if it was "what [Ms. Wells], or [the Wellses] did often."[18] On balance, the *Angwin* elements do not support a finding that this conduct qualifies as habit evidence.

Even though it is not habit evidence, testimony about Mr. Wells historically moving the CR-V from the airport (and Ms. Wells wishing to have it moved) is otherwise relevant in that it has a tendency to make a fact of consequence "more or less probable than it would be without the evidence."[19] Specifically, the jury could find that it demonstrates that Mr. Wells deviated from his normal course of action (moving the CR-V away from the airport) and that he did so in order to have the CR-V available for use during the homicides. The probative value of this evidence is not substantially outweighed by a danger of unfair prejudice or otherwise prohibited by Evidence Rule 403.[20] Accordingly, the Court finds that testimony about Mr. Wells historically moving the CR-V from the airport parking lot is admissible.

---

[17] Docket 1089-1 at 4; Docket 1102-1 at 1; Docket 1102-2 at 3.

[18] Docket 1089-1 at 3; Docket 1102-2 at 2 ("So I don't know of them ever leaving cars at the airport if that was common for Nancy [Wells], or if that's what she preferred. I don't know if that's what she, or they, wanted or did often."; Docket 1102-2 at 5 ("I don't know of any time they've ever left their vehicles at the airport.").

[19] Fed. R. Evid. 401.

[20] *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Testimony of Judy Pletnikoff
Page 5 of 7
Case 3:13-cr-00008-SLG   Document 1118   Filed 08/13/19   Page 5 of 7

### IV. Ms. Pletnikoff's testimony regarding Mr. Wells telling her not to speak with the FBI

Mr. Wells asserts that Ms. Pletnikoff's testimony about Mr. Wells purportedly telling her not to speak with the FBI is "irrelevant and prejudicial" and is "offered to show Wells' purported character for threats or violence."[21] The government responds that "his statement, made after the murder and directly related to the investigation of the murders, evidences his consciousness of guilt."[22]

The government is not offering Ms. Pletnikoff's testimony to show that Mr. Wells had a threatening or violent character. The Ninth Circuit has held that "the concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact."[23] Although Mr. Wells' purported statement that he did not want Ms. Pletnikoff to speak to the FBI and that she should "slam down the phone if they call" is not a direct threat to Ms. Pletnikoff and is not an explicit request that she testify untruthfully, it is an effort to impede a potential witness from participating in an investigation. Accordingly, it has some probative value in that it may indicate consciousness of guilt.

The probative value of Ms. Pletnikoff's testimony is not substantially outweighed by a danger of unfair prejudice.[24] As noted, Mr. Wells' purported statement does not

---

[21] Docket 1089 at 6.

[22] Docket 1102 at 8.

[23] *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976).

[24] Fed. R. Evid. 403.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Testimony of Judy Pletnikoff
Page 6 of 7
Case 3:13-cr-00008-SLG   Document 1118   Filed 08/13/19   Page 6 of 7

contain any explicit threats or requests that she testify untruthfully and as such is not particularly inflammatory. The defense may cross-examine Ms. Pletnikoff to elicit that the statements "are not recorded, and no other witness corroborates that they were made."[25] Upon a timely request of the defense at trial, the Court will give a limiting instruction at the time of the testimony.[26]

In light of the foregoing, IT IS ORDERED that the motion at Docket 1089 is denied as moot as to the statements regarding Mr. Wells' change in behavior and purported statement about murder. The motion at Docket 1089 is denied as to the testimony regarding the history of moving the CR-V from the airport and as to Mr. Wells' purported statement to Ms. Pletnikoff that she should not speak with the FBI.

DATED this 13TH day of August, 2019, at Anchorage, Alaska.

<u>Sharon L. Gleason</u>
UNITED STATES DISTRICT JUDGE

---

[25] Docket 1089 at 6.

[26] *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 at n. 5 (9th Cir. 1996) ("The trial court instructed the jury that the threat 'may be considered by you as a circumstance tending to show a consciousness of guilt. However, such conduct is not sufficient, by itself, to prove guilt.' The court also instructed the jury that it could not consider the evidence as proof of bad character or violent disposition.").

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: Motion to Exclude Testimony of Judy Pletnikoff
Page 7 of 7
Case 3:13-cr-00008-SLG   Document 1118   Filed 08/13/19   Page 7 of 7