BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska    99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:steven.skrocki@usdoj.gov
       christina.sherman@usdoj.gov
       kelley.l.stevens@uscg.mil

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:13-cr-00008-SLG |
| | ) | |
| JAMES MICHAEL WELLS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**NOTICE OF THE UNITED STATES' REQUESTING CLARIFICATION AND JUDICIAL GUIDANCE ON THIS COURT'S PREVIOUS RULING AT DOCKET 1081**

The United States files with the court a notice seeking clarification of the court's

ruling at Docket 1081 on the issue of the defendant's response and reaction to the 'bird diverter' matter which occurred on Shemya Island in July, 2011. At trial, the United States seeks to introduce brief and limited testimony as to Wells' reaction and response to his supervisor when he was informed of his supervisor's decision to not follow his recommendation. While Wells' response was one of being 'upset' the response was not directed toward the bird diverter installation at all, but the hostility and anger was directed at his supervisor who was, in effect, supervising the defendant. Given that the court's ruling at Docket 1081 focused on permitting testimony about "reaction and response" to prove motive in the fuel card context, the United States seeks clarification on whether, with respect to this issue, limited, generalized and sanitized testimony can be elicited at trial given Wells' very hostile reaction to his supervisor, in effect, supervising. This testimony can be elicited without reference to location, the bird diverters or any other issue of concern to the court.

### A. THE COURT'S ORDER AT DOCKET 1081 FOCUSED ON THE DEFENDANT'S 'BIRD DIVERTER' POSITION ITSELF AND NOT THE DEFENDANT'S HEATED REACTION TO HIS SUPERVISOR, SCOTT RECKNER

The defense in this case filed with the court a Motion to Exclude Other Act Evidence. (Docket 943) The United States opposed at Docket 962 and supplemental briefing followed after oral argument held before this court in April of this year. This court issued an order on the matters before it on July 30, 2019 and in particular focused on 8 matters raised by the defense. One of those 8 matters dealt with the issue of conduct by Wells in the workplace, in particular, the first, with that being: "1. Being upset about the

decision to install bird diverters." (Docket 1081, pg. 1.) With respect to granting the defense motion to exclude the issue of the bird diverter installation, a matter opposed by Wells, the court found, in a footnote, as follows:

> The Court, after its own review, also finds that the bird-diverter evidence has no relevance to the government's motive theory. The testimony was that Mr. Wells was "upset" by the decision to install the bird diverters and that he did not participate in installing them, although he was never asked to participate in installing them. Docket 732 at 197; Docket 741 at 30 (testimony of Chief Scott Reckner). Even when viewed in conjunction with the other prior acts, trying to connect this evidence to Mr. Wells' purported motive to commit homicide requires too much speculation to be relevant. This evidence does not show Mr. Wells' "diminished position in the Rigger Shop and his frustrations with Command." Docket 973 at 16. This evidence also carries a risk of unfair prejudice because it characterizes Mr. Wells as a bad employee and demonstrates his willingness to ignore federal law. Docket 732 at 195–96 (testimony of Chief Scott Reckner that the EPA and "the law" require installation of bird diverters). Due to its de minimus probative value and the risk of unfair prejudice, it is also prohibited by Evidence Rule 403.

The court's ruling found the evidence lacking in several respects, most notably for the notion that it did not fit the United States' motive theory, that it was too speculative, and that it carried a risk of unfair prejudice due to characterization that Wells was a bad employee and demonstrates a willingness to violate federal law. The United States notes however, that in the same order, Docket 1081 at pg. 7, that the 'misuse of the fuel card and the result of the investigation are relevant only to the motive theory because of how Wells *reacted* or *responded* to being given a letter of caution from his superior." (emphasis in original) 1

Given that language, the United States seeks clarification within the construct of

---

1 The United States notes that the same rationale was relied upon by the court for the introduction of relevant character evidence filed at Docket 1074, pg. 4.

U.S. v. Wells  Page 3 of 7
3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 1151   Filed 08/23/19   Page 3 of 7

this order, as the order, on the one hand, clearly focused on Wells' reaction or response to the fuel card incident, while on the other with respect to the bird diverter issue it seemed to focus on Wells' intent to violate federal law and that he was upset about the decision. The bird diverter conversation, which occurred in June/July, 2011 is more nuanced in the views of the United States, as Wells' reaction and response is something clearly supported by the court's rationale concerning Wells' reaction to the fuel card incident. Here, the United States can proffer that, consistent with his recorded interviews with investigators, Mr. Reckner can testify that he and Wells had a partially private, extensive, and very heated discussion after Reckner made the decision to proceed with installing the bird diverters. Said discussion concerned not just the bird diverters, but Reckner's overall supervision of Wells himself and that Reckner, in Wells' view, was not allowing Wells to do his job.

While the United States understands the court's ruling on the bird diverter issue above and will certainly comply with it, there is room here in the view of the United States to permit very limited testimony as to Wells' reaction to Reckner countermanding him. This is because the defense did not seek to preclude Wells *reaction* or *response* to Reckner's decision. (See, Dockets 944, 962 and 983.) In their original *motion in limine* to preclude this testimony the defense argued bird diverters had nothing to do with either victim as the basis to exclude but did mention that Wells was 'upset,' citing from the United States' trial brief from the previous trial. (Docket 944, at page 10) In the subsequent response, the defense Reply, Docket 962, the defense argued only that Wells disagreed with Reckner on the decision, Docket 962 at pg. 5, and that Reckner overruled Wells on the installation of the diverters, Docket 962, pg. 6 In a Supplemental Briefing, Docket 983,

at pgs. 25-27 the defense argued the issue much more extensively. All manner of reasons for exclusion were argued: a backdoor for the removal of Meloy's testimony, profiling, diminished position in the rigger shop, relevancy, 403 and 404(b). None of the points argued, however, relate to Wells' reaction or response, the very things the court noted as being permissible in its order at Docket 1081.

The issue here is subtly different, relevant and admissible with careful and limited questioning, a not insurmountable approach. Reckner can testify that he and Wells had a heated argument about a workplace disagreement where Reckner elected to make the decision in contravention of Wells' choice. Wells was upset enough, as was Reckner, that the two had a literal yelling match in the presence and outside the presence of the crew. This is different than Wells being merely upset because he didn't get his way and was not complying with a federal mandate. Instead, a mere two months before the fuel card incident Wells and Reckner engaged in a heated argument, both alone and with others in earshot, about a supervisory decision which contradicted Wells' decision and with Reckner in effect countermanding Wells decision in the field. Wells reaction to this, confronting his manager in an elevated way, falls squarely within the court's ruling on reaction and response of Wells to Reckner's supervisory authority over him, just as the fuel card reaction has found to be relevant, and the admonishments on tree collaring. 2

The United States submits this request for clarification in good faith based on

---

2 Reckner's interview with the FBI, in relevant part, is attached hereto as Exhibit 1. At trial, the United States would focus on Wells reaction to Reckner's command decision, which, by the exhibit, was very hostile. Said testimony is provided to the court as to the general nature of the proposed testimony, which again can be limited by the United States to avoid areas of concern to the court.

U.S. v. Wells  Page 5 of 7
3:13-cr-00008-SLG

seeking clarification of the court's order. It does so as it believes under FRE 401 that these facts are relevant to the issue of motive. Wells' reaction to Reckner's supervisory authority, fits precisely into the government's motive theory. They are even more relevant particularly in the light of it arising mere weeks before the fuel card incident and the tree collaring incident of summer, 2011. The testimony will be brief, and can be easily tailored to avoid the issues of concern for the court. Moreover, they can be briefly addressed on direct, even with a few short leading questions if the court permits. Reaction to supervision in a very angry way is very much relevant to the United States' motive theory here, as is being overruled by a supervisor on a work-decision. Testimony can be presented without the details of concern as noted by the court's order. The United States can have Reckner testify as to this incident with a non-specific set of questions about Wells challenging Reckner's supervisory decisions over him without reference to bird diverters at all.

**CONCLUSION**

Wells' reaction to Reckner's authority, on a matter that occurred only two months prior to the fuel card incident, is relevant under the *Wells* opinion, and pretrial orders of this court as they go to the United States' theory on motive. This instant request for clarification, given the court's prior order at Docket 1081, is made out of an abundance of caution and seeks a pretrial ruling on a narrow matter not raised previously in the briefs and noticed by the United States in its continued pretrial review of the court's orders. Therefore, the United States seeks clarification/guidance on the boundaries for introducing Wells' reaction to being overruled by Reckner, and the heated discussion that followed without running afoul of the court's ruling on the bird diverter matter.

RESPECTFULLY SUBMITTED August 23, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2019, a true and correct copy of the foregoing was served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney