Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA 98101
(206) 624-1551
petercamiel@yahoo.com

Gary George Colbath
Federal Public Defender's Agency
425 G Street, Suite 800
Anchorage, AK 99501
907-646-3400
Fax: 907-646-3480
Email: gary_colbath@fd.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                      )<br>                         Plaintiff,     )<br>                                                      )<br>              v.                                  )<br>                                                      )<br> JAMES MICHAEL WELLS,       )<br>                                                      )<br>                         Defendant.  )<br>                                                      ) | No. 3:13-CR-00008-SLG<br><br>DEFENDANT'S RESPONSE IN<br>OPPOSITION TO MOTION TO COMPEL<br>IN CAMERA REVIEW OF DEFENSE<br>INTERVIEW, DOC. 1131 |

Mr. Wells through counsel Peter A. Camiel and Gary G. Colbath files this response in opposition to the Government "Motion to Compel Defense Investigator Interview of United States Witness To Court For *Ex Parte*, In Camera Review." The motion is unfounded, and no more than an attempted government interference with the defense investigation and should be denied. There is no legal support for any requirements that the defense produce defense interviews for *in camera* review.

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--1

Nevertheless, the defense will file a motion to submit a copy of the transcript of the defense interview to the Court *ex parte* which will clearly show the spuriousness of the government's claims.

## FACTS

On June 23, 2019 defense investigator Karina Mueller conducted an interview of Jason Bullis at a coffee shop in Homestead Florida. Ms. Mueller had gone to Mr. Bullis' residence the day before, introduced herself and explained the reason for her visit. At that time, she served him with a trial subpoena. She also left him with her business card and the business card of F.P.D Investigator Johnson. As Bullis was caring for a child at the time, he suggested they set up another time to meet and talk. Mr. Bullis chose the location and time. Mr. Bullis voluntarily appeared for that interview. Ms. Mueller properly identified herself to Mr. Bullis and identified the purpose of her interview. Mr. Bullis consented to the recording of the interview. As the government notes, Mr. Bullis freely elected to speak with the investigator. The interview lasted for one hour and seven minutes.

Bullis had worked as a Coast Guard Watch Officer in the T-1 building on the night of April 11, 2012 starting his shift at 7:00pm and ending his shift at 7:00am on the morning of April 12, 2012. He testified at the first trial and is listed as a witness at the retrial. While the government characterizes him as a government witness, he would be subpoenaed for trial by the defense if the government did not call him to testify.

### During the Interview the Defense Never Suggested Confirmation Bias, Any Other Defense Theory, or Criticized the Government Investigation

A review of the transcript of the interview of Mr. Bullis will confirm that at no time during the interview did Ms. Mueller ever use the term "confirmation bias" or even

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--2

the word "bias." She never suggested in her questions or comments anything negative about the government investigation or the government investigators. Mr. Bullis responded to all her questions and never voiced any concern about the tone of the questions or the subject matter of the questions.

The likely source for Mr. Bullis' concern about "confirmation bias" came after the defense interview when he then talked to the government. Mr. Bullis' affidavit says, "During the course of the interview, the investigator raised the issue of *what I later learned was officially termed "confirmation bias"* implying that the government investigation focused only on Jim Wells." It is clear from the way Bullis has phrased this sentence that when he was debriefed by government lawyers about the defense interview, Bullis was told *by the government attorneys* about the concept of "confirmation bias" rather than being told this by the defense. What Mr. Bullis' affidavit does not state is from whom he "later learned" about the issue he now says was "officially termed" confirmation bias. There is no doubt it was the government who explained to Bullis what the government believes is the defense theory of the case, and explained to this witness their belief as to why the defense was asking certain questions.

At no time during the defense interview did the defense investigator say or suggest that the government or the FBI investigation was biased. At no time during the defense interview did the defense investigator use any derogatory terms to characterize the government investigation. At no time did she suggest, imply or urge Bullis to change his prior statements or testimony in any way. Bullis does not state that any suggestion was made that his prior testimony was in any way mistaken. Bullis was also *never* asked any questions about whether or if the government investigation focused only on Jim

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--3

Wells although he was asked about what he heard regarding the investigation. Bullis' interpretation of the defense investigator questions, coming after his debriefing with the government, "implying that the government investigation focused only on Jim Wells" is not borne out by the actual questions asked by the defense investigator. She never asked any question or made any comment that was phrased to suggest that the government only investigated Jim Wells.

Bullis was asked about his job duties at COMMSTA, his usual routine including at the start and end of his shift, his activities and observations on the evening of April 11, 2012 and his observations on the morning of April 12, 2012 as he left COMMSTA after completing his shift. He was asked about the layout of the T-1 and T-2 buildings. He was asked about his observations and contacts with T-2 employees. He was asked about his knowledge of Mr. Wells and other employees. He was also asked about how he learned of the murders and about his contact with the FBI and CGIS investigators and his supervisors after the murders.

The actual subject that it appears Bullis was referring to in his affidavit that appears to have triggered the government's unwarranted reaction were questions regarding the fact that the FBI set up its Kodiak investigative headquarters/command post in an unclassified conference room in the T-1 building in view of the T-1 personnel. It was obvious to employees who worked in that area that the FBI was present and working out of that room. During the weeks that the FBI conducted their investigation from that room, according to other witnesses who worked in that area of T-1, the FBI repeatedly played audio recordings of Mr. Wells voice message calls made on April 12, 2012 at a volume that could be heard by employees outside the room being used by the FBI.

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--4*

Bullis also volunteered during the defense interview that he overheard questions throughout the building about what kind of car Mr. Wells drove, what kind of car his wife had, and whether he owned a particular kind of firearm. Bullis was also asked by Ms. Mueller if the FBI kept classified or secretive their theory about who they believed was responsible for the murders or whether their theory was well known.

The interview by the defense investigator was conducted professionally and in a fact seeking manner. All of the questions were proper. The defense investigator never referred to any defense theory and did nothing to make any attempt to influence Mr. Bullis. Any suggestion that the defense has acted improperly with this or any other witness is nothing more than the government attempt to impugn the integrity of the defense team and chill the defense investigation.

## ARGUMENT

The government motion is not supported by either fact or law but instead consists of unsupported innuendo and specious claims of "inject[ing] a defense theme/argument into a fact witness interview," engaging in a "tactic would be to influence the witness' opinions…" and "insinuation/influencing tactic" and introduced, injected and presented a principal and/or main defense theory/argument to a trial witness." The only evidence to support the government claim is Bullis' claim that the interview "*made me feel* that the investigator was trying to get me to agree that the investigation only focused on Jim Wells." Bullis' actual feelings were more likely later influenced by the government debriefing of him, than at the time of the defense interview. Indeed, the defense investigator spoke to him on June 23 but it was not until weeks later, after the government prepared him for trial, that any bad feelings or supposed complaint came to

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--5

light. Certainly, as a Coast Guard member and government employee Bullis knew how to get ahold of authorities or express some concern sooner if it truly had been created by the defense. As the court will read from the interview transcript, nothing was asked by the investigator which could even remotely be interpreted as an attempt to "influence the witness' opinions."

This motion is simply a government attempt to interfere with and inject itself into the defense investigation. It appears that the real reason for the filing of this motion is that the government is upset that witnesses have agreed to talk to the defense after having been advised/warned in writing that before doing so they should contact the government. This of course is just a veiled way to keep the defense from being able to interview witnesses.[1]

Mr. Wells has a constitutional right to effective assistance of counsel. Effective assistance of counsel includes the duty of counsel to conduct an investigation. That duty includes interviewing witnesses. The courts have held that "[a] lawyer who fails adequately to investigate and introduce . . . [evidence] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart v. Gomez,* 174 F.3d 1067, 1070 (9th Cir. 1999) *Lord v. Wood,* 184 F.3d 1083, 1095-96 (9th Cir. 1999) (holding that counsel's failure to call key witnesses whose testimony undermined the prosecutor's case constituted deficient performance); *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir.

---

[1] While a witness is free to decide whether to grant an interview with defense counsel, see *United States v. Bowens,* 318 F.2d 828, 829 (7th Cir. 1963); see also *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985); *United States v. Fischel,* 686 F.2d 1082, 1092 (5th Cir. 1982), governmental interference with a witness occurs when there is a clear showing that the government instructed the witness not to cooperate with the defendant." *United States v. White,* 454 F.2d 435, 439 (7th Cir. 1971).

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)*--6

1994) (holding that counsel's failure to investigate evidence that someone else was the killer constituted deficient performance). "The failure to investigate is especially egregious when a defense attorney fails to consider potentially exculpatory evidence." *Rios v. Rocha,* 299 F.3d 796, , 805 (9th Cir. 2002); see also *Harris v. Wood*, 64 F.3d 1432, 1435-37 (9th Cir. 1995) (holding that counsel's failure to retain an investigator and interview many of the individuals identified in the police reports was deficient performance).

The defense interview with Mr. Bullis is not subject to disclosure at this time. F.R.C.P. 16(b)(2) could not be more clear:

> **2) Information Not Subject to Disclosure.** Except for scientific or medical reports, **Rule** 16(b)(1) does not authorize discovery or inspection of:
>
> **(A)** reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or
>
> **(B)** a statement made to the defendant, or the defendant's attorney or agent, by:
>
> **(i)** the defendant;
>
> **(ii)** a government or defense witness; or
>
> **(iii)** a prospective government or defense witness.

In this case, the defense has no duty to disclose to the government any statements made by the witness in question. We are nevertheless making an *ex parte* disclosure to the Court to put an end to the government's mistaken accusations.

The defense has both the right and duty to investigate the facts of this case including the manner in which the government conducted the investigation. The

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--7*

government has no right to screen or review defense interviews or control what subject areas the defense investigates. Yet this seems to be the goal of the government's motion. The court should not sanction nor permit such conduct.

## CONCLUSION

The government motion should be denied. The claims made in this motion are without any foundation and are more evidence of the government crying wolf when faced with a thorough defense investigation.

Dated this 23rd day of August, 2019.

Respectfully submitted,

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596

*/s/Gary Colbath*
Assistant Federal Public Defender
Attorneys for Defendant Wells

### Certificate of Service

I hereby certify that on the 23rd day of August, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

/*s/Peter A. Camiel*
Peter A. Camiel

Defense Response to Government Motion for *In Camera* Review
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)--8*

Case 3:13-cr-00008-SLG   Document 1157   Filed 08/23/19   Page 8 of 8