BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska   99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:steven.skrocki@usdoj.gov
        christina.sherman@usdoj.gov
        kelley.stevens@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.   3:13-cr-00008-SLG |
| | ) |
| JAMES MICHAEL WELLS, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| _____ | ) |

**RESPONSE OF THE UNITED STATES TO DEFENSE'S NOTICE OF
EVIDENTIARY ISSUES AND OMNIBUS MOTION IN LIMNE**

The United States submits the following response to the Defense's Notice of

Evidentiary Issues and Omnibus Motion in Limine. Their notice, filed on August 8, 2019,

is 55 days past the date issued by the Court mandating the filing of Motions in Limine, a date agreed upon by both parties. *See* Court Scheduling Rrder at Docket 955.

Nevertheless, the Court should consider it and the United States does not oppose on the issue of tardiness. The United States however, does oppose on the basis that the notice and motion is premature, continues to resort to broadly alleged and unsupported allegations of improper testimony elicited from the prior trial team, lacks legal points and authorities and is otherwise without merit. Each claim will be briefly discussed in turn.

## A. The United States will not Elicit Expert Testimony from Law Enforcement Witnesses.

Without one specific citation or example, Wells once again broadly lobs an unsupported allegation against the former trial team. He failed to raise this argument on appeal and similarly omitted any reference or citation to the record that the United States or this Court could rely upon in support of their claim.

Nonetheless, the United States has no intention of eliciting expert testimony from law enforcement officers not already noticed to this Court and the defense. Any law enforcement officer can testify as to what he or she did based on what he or she saw due to their training and experience in conducting an investigation and moving it forward towards prosecution. This includes explaining the investigatory techniques they used, equipment, practices and the like. The defense of course may not like it, but questions related to relevant facts investigators discovered that ultimately assists a jury's determination of the "who, what, when, where, why and how" a crime occurred, are fair and appropriate under the law.

Case 3:13-cr-00008-SLG   Document 1180   Filed 08/29/19   Page 2 of 7

## B. The Defense's Late Motion in Limine to Preclude Wells' Post Murder Act of Changing His Tires Should be Denied.

Wells objects to the testimony of Special Agent Sean Bottary who witnessed the defendant swap out the other three of his truck tires in his driveway using a pneumatic wrench in just under 14 minutes one month after the murders. The timing of when this tire swap occurred is irrelevant. What is relevant is that Wells advised law enforcement in his interview and in a voice mail to his supervisor, Scott Reckner, that he was having trouble removing the lug nuts on the allegedly low, flat, or otherwise damaged tire, causing him to remain away from work, the scene of the crime, longer than would usually be the case to change one tire.

The fact Wells took under five minutes on each tire using a pneumatic tool to quickly remove any troublesome lug nuts, contradicts the facts established by investigators, including facts provided by Wells himself in his statements. Additionally, the evidence of which of the three tires he changed and which of the four tires he did not change, evidences which tire on his truck he claimed was "low" or "flat" at the time of the murders

Thus, the observation of Special Agent Bottary is relevant to rebut Wells' evolving alibi and it is probative of his overall scheme and plan to commit these murders undetected. If the Court has any concerns, the United States submits that it will be ready to address those at the final pre-trial conference.

## C. Evidence that Mr. Belisle and Mr. Hopkins Were Good People, Fathers, and Supervisors is Admissible.

Once again the defense files a claim they should have made long ago. In order to provide the jurors with the necessary context and background of its overall story leading

up and following the murders, including the overarching motive of the defendant, the United States will seek admission of testimony about general information, including the home lives of the victims, work relationships, co-worker and family member observations and the like. The United States recognizes that eliciting testimony aimed specifically at a juror's bias or sympathy to influence their decision is improper and will not present it in a way to call on a juror's emotions or fears.

The testimony in this case will undoubtedly involve the emotions of the witnesses. In a murder trial, this is unavoidable. The appropriate mechanism however, for handling this inevitable scenario, it to provide the members with an instruction to "not let any bias, sympathy or prejudice [they] may feel toward one side or the other influence [their] decision in any way." *See Skilling v. United States*, 561 U.S. 358, 399 n.34, (2010) ("it is a premise of [our justice] system that jurors will set aside their preconceptions when they enter the courtroom and decide cases based on the evidence presented."). That said, the United States will not make demonstrable statements attempting to call on a juror's emotions or fears.  *See*, *e.g*., *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).   Nor will we encourage the jury to identify with the crime victims.  *See*, *e.g*., *Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005.

In short, where a defendant commits a heinous act, he cannot but expect that the horrible details will be presented where they are central to the prosecution and elements of the crime; this naturally includes information about the victims he killed. As long as proper precautions are taken to ensure that the jury is aware of its obligation to remain impartial and no improper attempts are made to tempt it away from that responsibility, this Court

should presume that the jury will be able to undertake its duty responsibly.

As such, this Court should allow this foundational and relevant information in as it enables the United States to tell their story about these heinous acts carried out on individuals who happen to be loving family men and good people.

### D. Jim Wells' Proclivity Towards Availing Himself of Prostitutes while on Government Funded Travel.

Wells' routine trysts with a laundry list of different sex workers in the various cities he traveled to on official government business is relevant to his overall motive to kill his supervisor and the man primed to take his job and replace him as the expert in antenna maintenance. Despite its relevance, the United States submits that it does not intend to introduce these facts during its case in chief.  It will however, move this Court for the introduction of this evidence outside the presence of the jury should the defense open the door during the direct examination of the defendant.

Should the defendant open the door, the United States submits that Wells' extramarital penchant for meeting up with prostitutes while on official government travel goes towards his overarching motive that he killed his supervisor and the man threatening to replace him in order to regain the power and control that slipped from his grasp in the wake of new leadership and during his repeated absences from work.  His fall from the top of the "independent republic of T-2" came from the command's increased scrutiny over his unaccounted for absences, inconsistent work schedule, and questionable and costly work related travel opportunities leading up to the murders.

While the defense at the tail end of their motion seeks to prohibit the United States

from using this evidence, relying on a meritless "chilling effect" claim, they have nonetheless wholly failed to provide any basis or authority for the same. Despite the fact that this evidence may be embarrassing and uncomfortable for the defendant to address openly in public, should the issue arise (i.e., if Wells takes the stand), the United States will move this Court for its admission and brief the Court regarding its basis of admissibility at that stage.

### E. Conclusion

The United States moves this Court to order as admissible the testimony regarding the victims' roles as fathers, good men, supervisors etc., with the appropriate limiting instruction. Evidence of Special Agent Bottary's observation of Wells changing his three other tires is relevant and admissible and the Court should similarly allow it be admitted. Lastly, the defense's motion in limine regarding the admissibility of Wells' employment of prostitutes on work trips lacks legal support and argument at this time. It is simply premature and baseless. Should the United States move to explore this motive evidence during the cross examination of the defendant, the United States will advise the Court outside the presence of the jury and submit argument in support thereof if so requested by the Court.

RESPECTFULLY SUBMITTED August 29, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2019, a
true and correct copy of the foregoing was
served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney