# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>JAMES MICHAEL WELLS,<br><br>                Defendant. | Case No. 3:13-cr-00008-SLG |

## ORDER REGARDING APRIL 19, 2012 GOVERNMENT DRIVING EXPERIMENT VIDEO

Before the Court at Docket 1012 is Defendant James Michael Wells' Motion to Exclude the April 19, 2012 Government Driving Experiment Video. The government filed a response in opposition.[1] With leave of the Court, Mr. Wells filed a reply.[2] The Court held an evidentiary hearing and heard oral argument on the motion on July 30 and 31, 2019. The parties then filed supplemental briefing on the issue of the conditional relevance of the April 19, 2010 video.[3] At the Court's request, the parties then filed relevant citations to the record from the first trial identifying when witnesses testified about the CR-V having been moved from one parking area to another close in time to the homicides.[4] Finally, the government filed Objections of the United States to Defense

---

[1] Docket 1047.

[2] Docket 1052.

[3] Docket 1096 (government's supplemental brief); Docket 1097 (defendant's supplemental brief).

[4] Docket 1106 (Court's text order requesting information from the parties); Docket 1122 (defendant's response to Court's text order); Docket 1123 (government's response to Court's text order).

Evidence In Re Evidentiary Hearing of July 30, 2019 and Other Issues,[5] and Mr. Wells filed a response to the government's objections.[6]

**I.     Background**

After the homicides that occurred at the Coast Guard Communication Station (COMMSTA) T-2 building on April 12, 2012, investigators reviewed footage captured by a surveillance camera mounted on a pole outside of the COMMSTA T-1 building. That footage shows a vehicle driving north on Anton Larsen Bay Road and then driving south on the same road approximately five minutes later (the "April 12 video").[7] Anton Larsen Bay Road passes by the entrance to COMMSTA and is used to access the parking area outside of the T-2 building.

Due to the vehicle appearing near the T-2 building close in time to the homicides, investigators set out to identify the vehicle. An Alaska Wildlife Trooper had viewed the April 12 video and went to the Kodiak Airport to "document what [he] could find as far as, you know, blue, dark-colored SUV or a—or a van" because the perpetrator of the homicides "might want to get off the island, so the airport would be a logical place to go if you're trying to out of there real quick."[8] He located a blue Honda CR-V owned by Nancy Wells, the wife of the defendant, parked in the two-hour parking area at the Kodiak Airport.[9] The government theorizes that Mr. Wells drove his own truck to the Kodiak

---

[5] Docket 1124.

[6] Docket 1134.

[7] Defense exhibit A at 7:09:21 (northbound); Defense exhibit A at 7:14:32 (southbound).

[8] Docket 744 at 31, 37–38, 40 (trial testimony of Lieutenant Willard Ellis).

[9] Docket 744 at 44.

Airport where he switched to Ms. Wells' CR-V (which was parked at the airport while she was traveling), drove the CR-V to the T-2 building where he committed the homicides, and then reversed those actions and returned the CR-V to the Kodiak Airport.[10]

One week after the homicides, on April 19, 2012, four Coast Guard special agents filmed Ms. Wells' CR-V driving back and forth multiple times in front of the same camera mounted outside of the T-1 building.[11] Their goal was to determine whether the CR-V could have been the vehicle seen in the surveillance footage from the morning of the homicides.[12] Coast Guard Investigative Service Special Agent Joe Sturgis was in charge of the T-1 camera. Because COMMSTA employees had used the T-1 camera during the prior week, its settings (*i.e.*, the angle, zoom, and focus) had been changed from the settings in place on April 12.[13] He used the camera controls to maneuver the camera in an attempt to match the camera angle and view to that seen on the April 12 video.[14] Another agent then drove the CR-V on Anton Larsen Bay Road in front of the T-1 camera. The CR-V made "14 passes, seven one way, seven the other."[15] The CR-V's speed was increased by five miles an hour after each back-and-forth pass, resulting in video of the CR-V driving back and forth near the T-2 building at speeds ranging from five to 35 miles

---

[10] Docket 1047 at 31; Docket 1097 at 1.

[11] Docket 1092 at 10.

[12] Docket 1092 at 8–10, 21.

[13] Docket 1092 at 20, 29.

[14] Docket 1092 at 11, 28.

[15] Docket 1092 at 12.

per hour.[16] The defense motion challenges the admissibility of this video (the "April 19 video") at trial.

## II. The Court will permit the government to introduce evidence at trial to attempt to establish that the April 19 video is conditionally relevant.

Evidence Rule 104(b) provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." As stated by the government, "[i]n this instance the conditional admission is that if the jury concluded the vehicle depicted on April 12th is in fact Wells' blue Honda CRV then they may further examine and/or consider the April 19th video and the accompanying [screen] captures and give it the weight they feel it deserves or does not deserve."[17] In determining whether proposed evidence is conditionally relevant, a district court does not determine whether the proponent of the evidence "has proved the conditional fact by a preponderance of the evidence" but instead "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence."[18]

A district court "is not required to make any preliminary finding that the government has proved the conditional fact,"[19] and the Court declines to do so here. The Court simply notes that there is not such a paucity of evidence that the vehicle seen on the April 12 video is Ms. Wells' CR-V that it would be appropriate to prohibit the government from

---

[16] Docket 1092 at 13.

[17] Docket 1096 at 2.

[18] *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

[19] *United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005) (citing *Huddleston*, 485 U.S. at 690).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: April 19, 2012 Government Driving Experiment Video
Page 4 of 15

attempting to introduce evidence at trial to meet the conditional relevancy standard set forth in *Huddleston v. United States.*[20]

Although Evidence Rule 104 permits the Court to allow the proponent of the evidence "to introduce the evidence and 'connect it up' later," the Court finds that order of proof is not appropriate in this case.[21] Because of the potential prejudice of the April 19 video, the significant number of witnesses that the parties intend to call to testify about the video, and any risk of confirmation bias, the Court is disinclined to "admit the [video] on the condition that the proof be introduced later." There is a risk of wasting time with witnesses whose testimony may later become moot, and there is a risk that the Court would need to instruct the jury to disregard the video—after the jury has viewed it—if insufficient evidence is presented at trial that would allow the jury to "reasonably conclude that fulfillment of the condition" is established.[22] Accordingly, before playing the April 19 video or showing the jury still images from that video, the government must introduce other evidence that is sufficient to support a finding that the jury could reasonably find by a preponderance of the evidence that the vehicle seen in the April 12 video is Ms. Wells'

---

[20] *See, e.g.*, Docket 747 at 41–43 (testimony of Amanda Sanford explaining the location in the Kodiak Airport parking lot where Ms. Wells had left the CR-V); Docket 1097 at 2 (explaining that other Coast Guard base cameras at a different location captured Mr. Wells' truck driving toward the airport the morning of the homicides and then later returning and driving towards his residence).

[21] *Huddleston v. United States*, 485 U.S. 681, 690 n. 7 (1988).

[22] Fed. R. Evid. 104(b); Notes of the Advisory Committee on Proposed Rules ("The order of proof here, as generally, is subject to the control of the judge."); *United States v. Black*, 767 F.2d 1334, 1342 n. 6 (9th Cir. 1985) ("Under Rule 104(b), the order of proof is committed to the discretion of the trial judge.").

CR-V and seek a ruling from the Court outside the presence of the jury that it has done so.[23]

## III. The April 19 video is substantially similar to the April 12 T-1 surveillance video.

Mr. Wells asserts that the April 19 video is so dissimilar from the April 12 video "that it makes the April 19 driving experiment video unfairly misleading and unfairly prejudicial."[24] Specifically, Mr. Wells contends that April 19 video was filmed late in the afternoon on an overcast and rainy day when there was less snow cover than on April 12, and "the resultant disparate distortion of the vehicle outlines, colors, and other attributes make a scientifically meaningful comparison between these vehicles impossible."[25] The defense also maintains that the April 19 video differs from the April 12 video as to the number of other vehicles in the parking lots (some of which obscure the view of Anton Larsen Bay Road in the April 12 video) and as to the lights both inside and outside of the T-2 building.[26] Finally, the defense asserts that the "repositioning, refocusing, and realignment of the T-1 camera" at the beginning of the driving experiment on April 19 resulted in the April 19 video capturing a different view, angle, and focus than the April 12 video.[27]

---

[23] *Huddleston*, 485 U.S. at 690; Fed. R. Evid. 104(b).

[24] Docket 1012 at 9.

[25] Docket 1012 at 9–11.

[26] Docket 1012 at 12–15.

[27] Docket 1012 at 15–18. At the evidentiary hearing and in its post-hearing brief, the defense asserted that the difference in the number of frames per second captured by the April 12 video and the April 19 video constituted another variance between the videos. Docket 1134 at 18–22.

The government first responds that because the defense objected to the April 19 video at the prior trial, the trial court overruled the objection, and Mr. Wells did not raise the issue before the Ninth Circuit, this Court is bound by the law-of-the-case doctrine and must comport with the previous trial court's admission of the video.[28] "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."[29] "The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. All rulings of a trial court are subject to revision at any time before the entry of judgment."[30] Here, the prior trial court's ruling is not binding on this Court after the Ninth Circuit's remand for a new trial, particularly in light of the government's assertion that "a new trial is forthcoming, and certainly will not be a carbon copy of the one that went before."[31] Even if the law-of-the-case doctrine did apply, "special considerations come into play when the admissibility of evidence is involved. The judge who actually presides at trial must be accorded wide discretion in deciding either to admit or exclude evidence, since it is he who determines the course which the trial is to take. *** Thus in deciding whether to admit the proffered evidence the trial record to that point should be the decisive factor, not a pre-trial order of another judge."[32]

---

[28] Docket 1047 at 2, 19–21.

[29] *United States v. Jingles*, 702 F.3d 494, 499–500 (9th Cir. 2012) (internal citations omitted).

[30] *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2011).

[31] Docket 1008 at 2.

[32] *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982).

The government also maintains that the defense "significantly exaggerates the minor variables between the two video recordings . . . ." and that "any discrepancies which might exist go to weight, not admissibility."[33] The parties have not cited, and the Court has not found, published Ninth Circuit precedent addressing the standards for presentation of a reenactment video.[34] However, both parties cite to the Seventh Circuit standard set forth in *United States v. Jackson*:[35]

> Because [experiment evidence] can be quite persuasive, in order to avoid unfair prejudice, the conditions under which an experiment is performed must be "substantially similar" to those surrounding the simulated event. This is a flexible requirement: "substantially similar" does not mean "identical," and dissimilarities can be explored on cross-examination. In other words, as a general matter, dissimilarities between experimental and actual conditions affect the weight, not the admissibility of the evidence.
>
> ***
>
> Whether in a criminal case or a civil one, however, the requirement's application always depends on the purpose for which the experiment is introduced. So if the purpose is to recreate an event, the timing and physics of which are critical, courts will only admit evidence of experiments that are conducted under nearly identical conditions as the actual event.
>
> ***
>
> By contrast, where the purpose of the experiment is not to recreate events but simply to rebut or falsify the opposing party's sweeping hypothesis, the substantial similarity requirement is relaxed.[36]

---

[33] Docket 1047 at 2.

[34] *Espinoza v. Dunn*, an unpublished Ninth Circuit opinion, cites the Eighth Circuit standard that a court "'may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions.' [But] 'perfect identity between actual and experimental conditions' is not required." 48 F.3d 1227 at *3 (9th Cir. 1995) (unpublished) (quoting *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278 (8th Cir. 1987)).

[35] Docket 1012 at 24; Docket 1047 at 24–25.

[36] 479 F.3d 485, 489 (7th Cir. 2007). The Ninth Circuit has cited *Jackson* for its holding regarding unanimity instructions. *United States v. Ruiz*, 710 F.3d 1077, 1081 (9th Cir. 2013).

Other circuits have announced similar standards for the presentation of reenactment or experimental evidence.[37] Although the parties' briefing discuss the different standards applied depending on whether the contested evidence is a "reenactment," "illustration," "demonstration," or an "experiment," the parties both urge the Court to apply a "substantial similarity" standard when evaluating the April 12 and April 19 videos.[38] The Court elects to adopt the standard set forth by multiple circuits and agreed to by the parties and thus evaluates the April 19 video to determine whether it is "substantially similar" to the April 12 video.

The Court has reviewed both videos and the exhibits showing still images from the videos side by side. The defense is correct that there are differences between the two videos, including things such as the exact camera angle, the field of vision, and vehicles obstructing the view of Anton Larsen Bay Road. An ideal reenactment would have parked

---

[37] *See Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 425 (4th Cir. 1996) ("[W]e established a requirement that videotaped evidence purporting to recreate events at issue must be substantially similar to the actual events to be admissible."); *Glick v. White Motor Co.*, 458 F.2d 1287, 1294–95 (3d Cir. 1972) ("Experimental evidence is admissible so long as it is relevant and probative, and such evidence has probative value if the conditions of the experiment are identical with or similar to the conditions of the transactions in litigation."); *United States v. Baldwin*, 418 F.3d 575, 579 (6th Cir. 2005) (conditions of a video reenactment "must be 'substantially similar' to those of the events at issue, but '[a]dmissibility . . . does not depend on perfect identity between actual and experimental conditions'") (alterations in original).

Although some courts discuss reenactment evidence being "admissible," it appears they are using this term to mean the presentation of demonstrative exhibits to a jury, not the admission of substantive evidence for the jury's deliberations. *See, e.g.*, *Bradshaw v. FFE Transp. Services, Inc.*, 715 F.3d 1104, 1109 (8th Cir. 2013) (discussing the "admissibility of demonstrative medical illustrations" while also noting that the medical "exhibits were visual aids and not substantive evidence").

[38] Docket 1012 at 22, 24; Docket 1047 at 21–29. The government's response states that the "video re-enactment/demonstration [was] prepared by investigators for trial." Docket 1047 at 2. However, testimony at the hearing disclosed that the video was not originally made for use as a trial exhibit but instead was simply intended to further the homicide investigation. Docket 1092 at 67–69.

cars in the parking lot to better mimic the cars parked there on April 12, which partially blocked the view of the vehicle at issue. The videos are not made under identical conditions. However, taken as a whole the April 19 video was made under conditions substantially similar to those on April 12. Assuming the conditional relevancy standard is established and the video is shown to the jury, the defense may point out any differences between the videos on cross-examination or through its own witnesses, and the jury may give the April 19 video the weight it sees fit.

### IV.     Federal Rule of Evidence 403 analysis.

Evidence Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed" by the danger of unfair prejudice. The parties have not cited, and the Court has not found, any case law addressing a situation such as the one here, where the reenactment video purports to depict an event *that itself was captured on video*. However, the Court finds that the probative value of the April 19 video is reduced by the fact that the jury will be able to view the actual surveillance footage from the morning of the homicides. The Court also finds that the probative value of the April 19 video is reduced by the fact that the video was not created with expert input but instead was created by investigators with no formal training in the area of video reenactments. Nonetheless, assuming its conditional releance is established, the Court finds that the April 19 video could aid the jury in understanding the evidence and is, on balance, helpful.[39]

---

[39] *See Roland v. Langlois*, 945 F.2d 956, 963 (7th Cir. 1991) (finding that the benefit of admission of a life-size model of an amusement park ride—which could help the jury understand the scene of an amusement park accident—was not substantially outweighed by the danger of unfair prejudice).

Regarding unfair prejudice, the April 19 video contains repeated depictions of Ms. Wells' CR-V traveling at various speeds; this is prejudicial and unnecessarily repetitive as it does not accurately reflect that there were only two passes of the relevant vehicle on the April 12 video. Additionally, there are "unique problems presented by the introduction of videotapes purporting to recreate events at the focus of trial. [There is a] potential prejudicial effect of such evidence because the jury viewing a recreation might be so persuaded by its life-like nature that it becomes unable to visualize an opposing viewpoint of those events."[40] Although some theories of a case, "when demonstrated in a fairly abstract way, are quite unlikely to be confused with the events on trial[, t]he more troublesome cases, however, are ones like this one where some principles of some kind may be demonstrated but in a fashion that looks very much like a recreation of the event that gave rise to the trial."[41] As presented in government exhibit 14, the April 19 video "may come dangerously close to usurping the jury's function" of interpreting the April 12 video.[42]

However, the Court also finds that the unfair prejudice can be abated through certain restrictions on the use of the April 19 video. Assuming that the conditional relevance of the April 19 video is established, in order to reduce the risk of unfair prejudice the Court will order the following:

---

[40] *Hinkle*, 81 F.3d at 424–25.

[41] *Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir. 2006).

[42] *United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007).

- The government may elect one northbound and one southbound pass shown in the April 19 video to play at trial, although it may use still images from any portion of the video, subject to the following conditions.

- The government must include on the April 19 video an on-screen label clearly indicating that the video is an "experiment that does not depict actual events and only depicts an opinion of what may have happened" or similar language.[43] This same label must appear on any still images extracted from the April 19 video that are shown to the jury, whether as stand-alone image or as part of a larger display created by or used by a government expert.

- The government shall not play the April 19 video or show still images from that video until after the jury has seen the April 12 video.

- Before the government plays any portion of the April 19 video or shows the jury still images from that video, a witness must authenticate and lay foundation for the April 19 video. Accordingly, the April 19 video and still images from that video shall not be shown during the government's opening statement.

- The government shall not refer to the CR-V in the April 19 video as being related to the homicides, only that it is Ms. Wells' CR-V.

- The Court will give a limiting instruction to the jury regarding the nature of the April 19 video and the limited purpose for which it is being shown to the jury.

---

[43] *See Hinkle*, 81 F.3d at 425 ("Although there is a fine line between a recreation and an illustration, the practical distinction is the difference between a jury believing that they are seeing a repeat of the actual event and a jury understanding that they are seeing an illustration of someone else's opinion of what happened.") (quotations and citation omitted).

- The designated portion of the April 19 video and the stills from that video may be used as demonstrative exhibits. They may be helpful to the jury to explain the experts' opinions and to demonstrate the government's theory of Mr. Wells' use of his wife's CR-V. However, the April 19 video shall not be admitted as evidence and it will not accompany the jury into the jury room during its deliberations.[44]
- Still images taken from the April 19 video—including the PowerPoint slides created by experts that include still images from the April 19 video[45]—may also be used as demonstrative exhibits but shall not be received into evidence and shall also not accompany the jury into the jury room.

## V. The scope of the evidentiary hearing

The parties have filed briefings addressing whether the scope of the evidentiary hearing properly included *Daubert* challenges, whether the defense properly raised a *Daubert* claim, and whether the defense properly raised an objection to the admission of the April 12 surveillance video.[46] Since the Court will be allowing the April 19 video and still images to be used solely as demonstrative exhibits, it appears that the defense does

---

[44] *Cf. United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991) ("[P]edagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations."). *See also United States v. Chadwell*, 798 F.3d 910, 914 (9th Cir. 2015) ("Jurors generally may examine all or part of any exhibit *received into evidence* and determine the weight to give that evidence during deliberations in the privacy of the jury room.") (emphasis added).

[45] *See also* Fed. R. Evid. 703 ("But if the facts or data [relied on by an expert to form their opinion] would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."). Assuming conditional relevance is established, the Court finds that with the ordered limitations, the wholescale exclusion of the stills is not warranted by Rule 403.

[46] Docket 1124; Docket 1134.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Order Re: April 19, 2012 Government Driving Experiment Video
Page 13 of 15

not have a *Daubert* objection.[47] The "substantial similarity" test urged by both parties applies when a court is considering allowing demonstrative exhibits to be presented to a jury. Assuming that the conditional relevance of the April 19 video is established, the April 19 video and related still images may be shown to the jury at trial as demonstrative exhibits, subject to the restrictions set forth herein.

The Court is not considering any defense challenge to the April 12 video, as it was not raised by the defense motion.[48]

The government encourages the Court to disregard or exclude the testimony of Mr. Hoerrick and Dr. Reisberg.[49] The Court finds the testimony of each expert was helpful to the extent it fell within the proper scope of the hearing and does not find a basis to exclude their testimony. The Court has considered Mr. Hoerrick's testimony to the extent it addressed the technical reasons why the April 19 video was or was not substantially similar to the April 12 video, which inherently involved some explanation of the April 12 video. The Court has also considered Dr. Reisberg's testimony and his recommendations for reducing the risk of prejudice.

At this time, the Court will again defer ruling on whether Dr. Reisberg may testify regarding the risk of jurors being influenced by confirmation bias. The Court will revisit this issue after the government's case-in-chief, at which time the Court should be in a better position to undertake an Evidence Rule 403 analysis of such testimony.

---

[47] Docket 1134 at 6, 10.

[48] Docket 1134 at 14, 28–29 (defense filing confirming that "[a]dmissibility of the April 19 video and still frame pictures taken from it, are the only materials raised by the defense motion.").

[49] Docket 1124 at 8 n. 6, 9, 12–16.

Accordingly, the parties shall not reference this portion of Dr. Reisberg's proposed testimony in their opening statements, and the defense shall not elicit any such testimony from Dr. Reisberg unless application has first been made outside the presence of the jury.

In light of the foregoing, IT IS ORDERED that the motion at Docket 1012 is DENIED. The April 19, 2012 video and the associated stills may be used as demonstrative exhibits at trial subject to the above conditions.

DATED this 3rd day of September, 2019, at Anchorage, Alaska.

Sharon L. Gleason
UNITED STATES DISTRICT JUDGE