BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
       christina.sherman@usdoj.gov
       kelley.stevens@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|             Plaintiff, | ) |
|       vs. | ) No. 3:13-cr-00008-SLG |
| JAMES MICHAEL WELLS | ) |
|            Defendant. | ) |

**UNITED STATES' NOTICE OF INTENT TO INTRODUCE
OTHER ACT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE
404(b) and 403**

COMES NOW the United States of America, by and through the above-named

counsel, and files with the court this notice of intent to introduce evidence of certain acts of the defendant pursuant to Federal Rule of Evidence 404(b) recently discovered during a pretrial interview July 29, 2019. Said evidence is relevant to Wells' motive to commit murder and is more probative than prejudicial.

## I. Factual Background

Last week, during a pretrial interview, witness Nathaniel Pacheco advised the United States of additional information not revealed prior to that date as it related to an altercation with defendant James Wells in the Rigger Shop. After the pretrial conference, the United States verbally advised both counsel for the defendant of this newly discovered information. As to that information, Mr. Pacheco advised as follows:

> Some point in time after Mr. Hopkins became the Rigger Shop supervisor,[1] Hopkins ordered Pacheco, who was a USCG 'non-rate' to organize a variety of tools in the Rigger Shop that were in disarray. While performing this order, Wells approached Pacheco and asked in an angry tone, words to the effect of "[w]hat are you doing? Now I won't know where anything is." Pacheco responded that he was just following orders from Hopkins and continued with his assignment. Pacheco advised that he and the defendant got into a heated argument over this matter. Sometime later that day, and prior to a team meeting, the defendant passed Pacheco who was sitting on the edge of a desk. When Wells passed Pacheco he one-arm shoved Pacheco hard enough to move him off the desk. Pacheco immediately got up to confront Wells but was restrained and removed from the building by his supervisor in order to de-escalate the situation.

The United States seeks first, Wells' reaction and confrontation with Pacheco, who was under orders by Jim Hopkins, to organize tools Wells used. The United States seeks introduction of Wells' statement, confrontation, and heated argument with Pacheco as

---

[1] James Hopkins reported to the Rigger Shop in the summer of 2009.

U.S. v. James Michael Wells
3:13-cr-00008-SLG 2

relevant, direct evidence as to motive inasmuch as, 1) the order to rearrange the tools came from ET1 Hopkins who was Wells' direct supervisor and whom Wells murdered, and 2) that Wells viewed the Rigger Shop as his private domain to remain undisturbed by others, particularly his manager.

The United States is not seeking to introduce Wells "shove" of Pacheco. While clearly relevant to evidence that Wells had an "explosive temper," the United States recognizes that this evidence, while relevant, may be too close to the "too prejudicial" line to survive scrutiny on appeal.

> **II. The Defendant's Response to Pacheco Organizing the Tools is Relevant and Admissible at His Trial under FRE 404(b)(2) as Evidence that Establishes his Motive.**

Notwithstanding the United States' decision to not seek the introduction of the "shove", the United States hereby provides notice to the defendant of its intent to use the argument over the tools and Wells' displeasure regarding the organization of the tools, as prior act evidence in support of Well's overarching motive to kill his co-workers.[2]

In general, FRE 402(b)(2) provides an appropriate mechanism for the inclusion of this evidence upon proper notice and states that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show on a particular occasion the person acted in accordance with that character." Further,

> [s]uch evidence may be admissible for other purposes, "such as proving

---

[2] FRE 404(b)(2) allows other act evidence for other permissible purposes, including motive and intent, so long as the prosecutor provides "reasonable notice of the general nature of any such evidence the prosecutor intends to offer at trial." FRE 404(b)(2)(A).

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Thus, "Rule 404(b) is a rule of inclusion—not exclusion—which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge.

*Wells*, 879 F.3d 900, 928, and 930 *citing, United States v. Curtin*, 489 F.3d 935, at 944, (9th Cir.2007). Essentially 404(b)(1) prohibits propensity evidence. The clear reading of the rule shows that relevant evidence of motive and intent falls outside the prohibitions of Rule 404(b), and is therefore not evidence of propensity. Indeed, other Ninth Circuit authorities similarly conclude other act evidence as admissible with a limiting instruction to prove motive. *See also United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000) (explaining that Rule 404(b) is "one of inclusion" in that "other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity" (*quoting United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982))).

In making this notice, the information regarding Wells' displeasure following Pacheco's organization of "his tools" ties directly into the government's ongoing theory of motive, adopted previously by this Court, finding that his workplace character was relevant as it related to the discontent Wells suffered in his professional life and the deterioration in his professional status preceding the murder of his two colleagues who stood in his way. *See* Docket 1074 at 4 ("[t]his motive theory makes testimony about Wells' workplace character relevant.')  While Wells' reaction to Pachecho moving "his tools" is not a bad act or character evidence per se, the lines of logic are similar. Wells' reaction to a non-rate assigned by Hopkins to disrupt Wells' way of storing "his tools", is completely relevant

and applicable to the government's theory. Indeed, the court noted at footnote 23, Docket 1081, that some of these prior acts do not fit neatly into a FRE 404(b) analysis because the acts themselves are not being used to "prove a person's character" but are instead being used to show Wells' *reaction* to being reprimanded or overruled in order to support the prosecution's theory. Such is clearly the case here. Wells' hostility and challenging of Pacheco, who was acting pursuant to the direct order of one of the murder victims, James Hopkins, is clearly relevant to show that Wells' 20 year rule as the "king" of the Rigger Shop was finally beginning its demise. His fall from the top began prior to 2011, beginning with the summer of 2009 arrival of James Hopkins, as he started taking a more proactive and affirmative role in managing the day-to-day tasking and management of the Rigger Shop and those working there. The order for Pacheco to rearrange the tools that no one would touch previously without the blessing of Jim Wells, clearly demonstrates a proactive posture by Hopkins to challenge the norm, and marks the shift from a hands-off mentality enjoyed by Wells under previous commands, to an active and engaged command that valued accountability.

Additionally, Wells' hostility towards Pacheco and his statement of, "I won't be able to find anything," similarly fits into the prosecution's overarching motive theme that Wells wanted everything his way, that he was superior to even to his supervisor, that he didn't want or need supervision or accountability, and that he treated the Rigger Shop, those working there, and the items contained therein, as his own. For these reasons, Wells' argument with Pacheco should be admitted.

U.S. v. James Michael Wells
3:13-cr-00008-SLG  5

The Ninth Circuit summarized the government's theory surrounding Wells' motive during its first case-in-chief, as follows:

> *Wells' frustrations began with a 2011 change in COMMSTA command, which placed unwelcome pressure on him to conform to the change in command. Due to personal illness and his resulting absences from work, Wells became increasingly frustrated by loss of professional independence and importance. His frustrations turned to anger and culminated in the murder of his co-workers, whom he deemed threats to maintaining his station with the rigger shop.*

*United States v. Wells*, 879 F.3d 900, 929 (9th Cir. 2018) (emphasis added). Notwithstanding the government's present and independent argument of admissibility for this event that occurred between the summer of 2009 and the summer of 2010 (vice 2011 as argued by the previous trial team), the United States further submits that this Court may appropriately admit these facts as the Ninth Circuit previously found that other similar acts involving his reaction were admissible.

As stated by the Ninth Circuit in *Wells* on this very issue:

> *Applying [the 404(b)] four-part test to evidence surrounding the 2012 letter of caution, Wells' tree collaring instances, and our catch-all category of Wells' disagreements with co-workers, we are satisfied that the district court properly admitted this evidence under Rule 404(b)(2). This evidence, as a whole, was relevant to Wells' work environment, including his relationships with relevant co-workers and supervisors; was not too remote in time and fits within a reasonably tailored version of the Government's motive theory; and was proven through both the admission, without objection, of Wells' personnel file, as well as the testimony of the co-workers and supervisors involved in the underlying acts. On balance, the probative value of this evidence is unique in a workplace homicide trial, and we do not find that it is substantially outweighed by any danger of unfair prejudice.*

*United States v. Wells*, 879 F.3d 900, 930 (9th Cir. 2018) (emphasis added).

Of import here is that the Ninth Circuit, while reversing admission of Dr. Meloy's

U.S. v. James Michael Wells
3:13-cr-00008-SLG                            6

Case 3:13-cr-00008-SLG   Document 1217   Filed 09/04/19   Page 6 of 9

testimony and the circumstances of a 2003 Attu Island dispute, found admissible under both 404(b)(2) and FRE 403 balancing, the "catch-all category of Wells' disagreements with co-workers." The government submits that the incident occurred while Hopkins was acting as Wells' supervisor sometime between the summer of 2009 and summer of 2010. Although falling anywhere from six months to a year and half outside the 2011 time frame identified by the Ninth Circuit, the United States submits that this incident is not too remote in time due to the circumstances and context as "workplace homicide". Although his reaction is prior to 2011, given that his reaction stemmed specifically from a task ordered by Hopkins' – one of the deceased – it is relevant to Wells' overall opinion that the Rigger Shop and the control over the items and people contained therein, belonged to him. When others challenged it, including his supervisor by tasking a subordinate to organize "his tools", Wells challenged back. In this incident, he yelled and got into an argument. Unlike the Attu incident which occurred well before the arrival of the instant command, beginning with Jim Hopkins, responsible for this change in accountability, the Pacheco incident clearly demonstrates Wells' state of mind regarding his perceived position of being "untouchable" and reigning over all things in the Rigger Shop. This is important as this self-perceived role started to deteriorate beginning with Hopkins' arrival in the summer of 2009, eventually gaining speed in the six months leading up to the murders; ultimately culminating in the murders of his supervisor and the co-worker slated to take over his position as he struggled to remain relevant and above the watchful of the command.

    Based on the foregoing, the government's theory on motive remains reasonably

U.S. v. James Michael Wells
3:13-cr-00008-SLG       7

Case 3:13-cr-00008-SLG Document 1217 Filed 09/04/19 Page 7 of 9

tailored, is not too remote in time as it falls under the instant chain of command responsible for his gradual fall from the top, and the admissibility of this event fits squarely within the government's recurring theme. That is that Wells' reactions to actions ordered by his supervisor absent his approval or "blessing", are probative of his perceived position of power and control, one that over the course of just under three years in his overall 20 year career at the COMMSTA, crumbled before his eyes.

### III. The Government Will Seek a Limiting Instruction.

The United States will seek that the Court instruct the jury, both during and at the end of trial, that this evidence be, "admitted only for the limited purpose of proving intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or absence of accident, and thus the jury can consider that evidence for that limited purpose and not for any other purpose." Such an instruction would be in accord with FRE. 403, and 404(b)(2). Indeed, once the government establishes that the evidence is properly admitted under 404(b)(2), the only mechanism justifying exclusion lies under FRE 403. Under that rule, there is no basis to exclude the evidence proffered by the government, and a limiting instruction will direct the jury as to the proper utilization of this evidence as to motive and intent.

### IV. Conclusion

The government should be permitted to introduce evidence of Wells' reaction when Pacheco, as ordered by James Hopkins, one of the victims in this case, rearranged the tools in the Rigger Shop. It is clearly relevant to the defendant's perception that he alone held

U.S. v. James Michael Wells
3:13-cr-00008-SLG        8

the ultimate responsibility of deciding how the Rigger Shop was run, and evidences the beginning of the tidal shift away from a 20 year high of no accountability, brought in by Jim Hopkins' attempts at managing his Rigger shop; efforts that led to more formal management and disciplinary actions against the defendant and which ultimately drove the defendant to murder.

As such, the United States moves this Court to order as admissible under both Federal Rules of Evidence 404(b) and 403, this verbal altercation between Pacheco and the defendant as it goes towards motive.

RESPECTFULLY SUBMITTED September 4, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2019, a
true and correct copy of the foregoing was
served electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the U.S. Attorney