Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
5200 Pike Street, Suite 2500
Seattle, WA 98101
Phone: (206) 624-1551
Email: petercamiel@yahoo.com

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES MICHAEL WELLS,<br><br>    Defendant. | No. 3:13-CR-00008-SLG<br><br>**MOTION TO LIMIT TESTIMONY OF GOVERNMENT WITNESS TERRY KIELE** |

**SPEEDY TRIAL STATUS**

A period of additional excludable delay under 18 U.S.C. § 3161(h) will NOT occur as a result of the filing this motion as this motion will not result in any delay of trial as the Court has ruled this a complex case and has set trial for September 9, 2019, taking into account any pretrial motions that will be filed in this case.

## I.    INTRODUCTION

Defendant Wells through counsel Peter A. Camiel and Gary Colbath moves this Court to limit the testimony of government witness Terry Kiele.[1]

---

[1] Ms. Kiele is Jim Wells' sister.

Kiele and her husband Donald Kiele testified in the government's case at the first trial.  The testimony of each was extremely short and limited to really only providing a description of a single "conversation" they had with Jim Wells months after the murders.  The relevant portion of each person's testimony was as follows:

> Don Kiele:  Q:  And what did he say about them (Belisle and Hopkins)? A: We were sitting in our living room and he was asked a question by my daughter, that -- she said, "Gee, I'm so sorry for your -- your friends and -- and their families. How are they doing?" And he kind of went into a rant about – that they were incompetent, that they were unqualified to have their jobs, that Rich was a -- an alcoholic, a drunk, is what he called him. Talked about that their work -- you know, he was the only one there that knew what was going on and they didn't deserve to have their jobs.  Trial Tr. p. 2401.
>
> Terry Kiele:  Q: And what did he say about -- did he talk about their qualifications to the job? A: Yes. He said they were unqualified, incompetent, and he had taught them everything that they knew, that they didn't have the technical abilities for electronics and for – for being electricians, that they weren't qualified for that.
> Q: And given the things he'd said before, did that strike you as unusual? A: Shocked me.  Trial Tr. p. 2398.

## II.    FACTS

Apparently during trial preparation with government counsel Ms. Kiele has developed a whole new series of revelations she now has about interactions with her brother regarding this case.  *Last week,* the government provided the defense with a USCG "Action Supplement Report" which contains in relevant part the following information that Kiele now purports to offer during her testimony:  1) Jim Wells told her he was angry about not getting to go to the NATE conference; 2) she noticed "marked change" in his behavior after hearing

about this and described him as "withdrawn and depressed;" 3) Jim Wells told her that on the morning of the murders he took the clothes he was wearing and put them in a garbage bag in a room in his house; 4) Jim Wells told her that the FBI investigators were "stupid ignorant people;" 5) Jim Wells told her about his travels on the way to work on April 12, getting a flat tire, having to use the restroom, and needing to clean himself up; 6) Jim Wells told her that he did not have tools to fix his tire so he had to return home to do so; 7) that Jim Wells was "big on loyalty and felt that the COMMSTA was pshing him out;" 8) that Jim Wells "felt he had earned his position and no one was going to take it from him;" 9) that Jim Wells told her "if acquitted he wanted his job back;" 10) the Jim Wells said "no Kodiak murder had ever been solved, and this murder will never be solved either;" and 11) that she feared for her safety and the safety of her family if Jim Wells is acquitted.

Despite at least 3 prior interviews with law enforcement, prior trial preparation with former government counsel and agents, and the giving of testimony under oath at the first trial, Ms. Kiele had never disclosed any of the information listed above even though <u>all of the information</u> was supposedly known prior to her contact with law enforcement and happened long before the first trial. From the notes of Ms. Kiele and the interviewing agent that received this "new" information, it is apparent that many of the statements or information about Jim Wells come from hearsay statements that Ms. Kiele heard from others, including Jim Wells' spouse. Additionally, Ms. Kiele has

indicated in the past, and continues to assert that he and Jim Wells' relationship is "strained" due to prior "inappropriate sexual comments" made by Jim Wells about another a member of her family.

### III. ARGUMENT AND AUTHORITIES

The Court should limit Ms. Kiele's testimony to relevant statements, directly attributable to Jim Wells, made about the events of April 12, 2012. The rest of Ms. Kiele's beliefs, feelings about other post-incident statements that Jim Wells allegedly made about the FBI investigation or other matters are irrelevant and prejudicial. Wells disputes making the statements, they are not recorded, and they have never been disclosed in the past seven years despite numerous interviews and prior testimony. Given the timing of the disclosures, Ms. Kiele's obvious motive to negatively affect her brother's trial, and the hearsay nature of most of the information, the Court should find the statements per say incredible. They should be excluded under Rules 401 and 403.

Specifically with respect to a "change in Jim Wells' behavior" regarding the NATE conference, Ms. Kiele never talked with Jim Wells about that situation nor "observed" him in any fashion in the months following the decision that was made to not allow him to attend. Instead, whatever information Ms. Kiele may have had about that matter, came from conversations she had with Nancy Wells, other family members, or agents investigating this case. The testimony should be excluded as hearsay.

Moreover, it should be excluded under the Court's prior ruling on character evidence, Docket 1074. Her description of Wells' "behavior," which is by itself calls for a broad, generic character description, is not offered to demonstrate the work environment at T-2 where the murders occurred, and it is different from and in addition to any of the characterizations set forth in Docket 1074. Under the Ninth Circuit's previous decision and this Court's subsequent rulings, admission of character traits were permitted only to the extent they "provided background information regarding Wells' relationships with this co-workers, his working environment and his work history, all of which is relevant in a workplace homicide prosecution." *United States v. Wells*, 879 F.3d 900, 926 (9th Cir. 2018).

Ms. Kiele did not work for the Coast Guard and her purported "observations" were limited to her personal, non-work related, after-the-fact interactions with her brother at best. She had nothing to do with the rigger shop. Her testimony relates to a supposed general change in behavior (whatever that means) from how Wells acted during the past to some unidentified more recent time apparently during the months prior to the murders. It is not testimony regarding work place behavior. As such her opinion generally about any change in behavior is overly broad, vague, and irrelevant as respects the issues at trial. It should be excluded under Rules 404 and 403.

Ms. Kiele's statements about character traits of Jim Wells, like loyalty or a sense of entitlement, are not relevant either. Interestingly, although she had never described her brother this way before and lives in the lower 48 far away from Kodiak, Alaska, Ms. Kiele now wants to put these labels on him which are the exact same traits the government pushed through its inadmissible profile testimony at the last trial. Odd that she only now says she observed these things in relation to him. Somehow for the first time after trial preparation with current USCG investigators and counsel does she have a list of observations, behaviors, and even purported statements from Jim Wells himself that precisely fit the government's motive and overall theory of the case.

Any of Ms. Kiele's perceptions and feelings about any conversation she may have had with Jim Wells are also irrelevant. Her beliefs or interpretation about the statements are only offered to show Jim Wells' purported bad character. The prejudicial effect of these post-event statements, if made, outweighs any marginal probative value they may have. The statements should be excluded under Rule 403. Relevant evidence may be excluded under F.R.E. 403 if its probative value is substantially outweighed by one or more of the articulated dangers or considerations. Those include unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

MOTION TO EXCLUDE TESTIMONY OF JUDY PLETNIKOFF
*(USA v. James Michael Wells, 3:13-cr-00008-SLG)* Page 6

Case 3:13-cr-00008-SLG   Document 1219   Filed 09/05/19   Page 6 of 7

## IV. CONCLUSION

The government should not be allowed to prove its case with prejudicial, hearsay-based character/propensity evidence. For all the reasons stated herein above, the testimony of Terry Kiele should be limited to the general nature of the testimony she offered at the prior trial of this case.

DATED this 5th day of September, 2019.

Respectfully submitted,

*/s/Gary Colbath*
Assistant Federal Defender
Attorney for Defendant Wells

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596
Attorney for Defendant Wells

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on September 5, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*