BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:  steven.skrocki@usdoj.gov
        christina.sherman@usdoj.gov
        kelley.stevens@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JAMES MICHAEL WELLS ) <br> ) <br> Defendant. ) <br> ) | No. 3:13-cr-00008-SLG |

**UNITED STATES' RESPONSE TO DEFENSE MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT WITNESS THERESA KIELE**

COMES NOW the United States of America, by and through the above-named counsel, and files with the Court this response to the Defense Motion to Exclude the

Testimony of Government Witness, Theresa Kiele. (Doc. 1219).

In its motion, the defense specifically seeks to restrict Ms. Kiele's testimony to the general nature of the testimony she offered at the prior trial of this case. The defense further submits that they have only just received the below statements from Ms. Kiele:

1. Jim Wells told her he was angry about not getting to go to the NATE conference;
2. she noticed "marked change" in his behavior after hearing about this and described him as "withdrawn and depressed;"
3. Jim Wells told her that on the morning of the murders he took the clothes he was wearing and put them in a garbage bag in a room in his house;
4. Jim Wells told her that the FBI investigators were "stupid ignorant people;"
5. Jim Wells told her about his travels on the way to work on April 12, getting a flat tire, having to use the restroom, and needing to clean himself up;
6. Jim Wells told her that he did not have tools to fix his tire so he had to return home to do so;
7. that Jim Wells was "big on loyalty and felt that the COMMSTA was pushing him out;"
8. that Jim Wells "felt he had earned his position and no one was going to take it from him;"
9. that Jim Wells told her "if acquitted he wanted his job back;"
10. the Jim Wells said "no Kodiak murder had ever been solved, and this murder will never be solved either;" and
11. that she feared for her safety and the safety of her family if Jim Wells is acquitted.

Dkt 1219 at 2-3. Further, the defense seeks to prohibit Ms. Kiele from testifying about her observations of the defendant following the murders, specifically asserting that her "opinion generally about the change in behavior is overly broad, vague, and irrelevant as respects [sic] the issues at trial." Id. at 5.

The defense makes these assertions despite having received discovery in this case whereby Ms. Kiele discussed similar, if not identical, matters to those the defense now

U.S. v. James Michael Wells
3:13-cr-00008-SLG 2

allege are "a whole new series of revelations [Ms. Kiele] now has about interactions with her brother regarding this case." Dkt 1219 at 2. The United States provided the defense discovery containing these "new series of revelations" through audio recordings of Mr. and Mrs. Kiele and their daughter, Kristy Kiele more than a year ago. The defense signed for these items, evidencing their receipt, on July 18, 2018 and December 13, 2018, respectively.[1] See Signed Discovery Receipts attached herein as Exhibit 1. Further, the United States immediately disclosed the written notes recently provided to the government by Ms. Kiele, and which she references during her interview with law enforcement, and submits that these notes mirror those statements previously provided to the defense in discovery. Ms. Kiele's previously recorded statement containing all relevant portions the defense claims are "new revelations" are attached in audio format herein as Exhibit 2.[2]

Notwithstanding the fact that the defense has had these statements for some time, the government submits that it will elicit testimony regarding any out of court statements made by the defendant to Ms. Kiele and any personal observations Ms. Kiele had of the defendant and his demeanor both leading up to and following the murders. The government will not be limiting her testimony to what she testified to previously. The

---

[1] The defense signed for everything relating to Don and Theresa Kiele on 7/18/18 at Bates No. 90743. The discovery receipt for matters involving Kristy Kiele shows the defense signed for the discovery on 12/14/18 at Bates Nos. 88586-92777.

[2] The United States directs the Court's attention to a roughly 30 minute segment of Ms. Kiele's statement beginning at 1:42:00 and ending at approximately 2:22:00 wherein she discusses her observations of Wells' marked change in demeanor beginning in fall of 2011, the derogatory statements Wells made about the murder victims following the murders, his alibi involving a low tire, not having tools to change it and the fact he "shit" his pants at the airport; the fact he put his soiled pants in a bag in the house; Wells' feelings about loyalty, his sense of entitlement regarding his position at work, and wanting his job back and an apology from the Coast Guard; and her fear of Wells should he be released.

U.S. v. James Michael Wells
3:13-cr-00008-SLG 3

government however, submits that it will not elicit the statement made by Nancy Wells to Ms. Kiele that "no Kodiak murder had ever been solved, and this murder will never be solved either."

## I. Law

The United States adopts and incorporates by reference, its summary of applicable law, specifically of Federal Rules of Evidence (FRE) 401 (relevance) and 403 (balancing), as set forth in its Response in Opposition to Defense Motion to Exclude Testimony of Government Witness Judy Pletnikoff at Docket 1102.

Additionally, the United States may elicit statements made by a party opponent offered against him in his own capacity. *See* FRE 801(d)(2)(A). Rule 801(D)(2)(a) provides that a party's own out of court statement offered against himself is not hearsay. The law is clear that such a statement, termed an admission by a party opponent, is not hearsay. *Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir.1985). The statement must be offered "against a party" and, to constitute an admission, must "relate to the offense." *Id*. A defendant's "own out-of-court admissions ... surmount all objections based on the hearsay rule ... and [are] admissible for whatever inferences the trial judge [can] reasonably draw." *United States v. Matlock*, 415 U.S. 164, 172 (1974).

## II. Alibi Statements Made by the Defendant to the Kiele's about his Whereabouts on the Morning of April 12, 2012, the Date of the Murders.

The defense makes a convoluted argument in an attempt to exclude their client's out of court statements relating to his alleged low tire and bout of diarrhea the morning of the murders, stating first that this Court should, "limit Ms. Kiele's testimony to relevant

U.S. v. James Michael Wells
3:13-cr-00008-SLG   4

statement's directly attributable to Jim Wells, made about the events of April 12, 2012." Dkt 1219 at 4. They conclude their motion however, by requesting that this Court limit Ms. Kiele's testimony to the testimony she provided at the first trial. <u>Id</u>. at 7. The United States has made clear that this trial team will take a fresh approach to the prosecution of this case and will not restrict the testimony of its lay witnesses to that elicited during the first trial. Further, this Court has twice indicated that it does not expect the parties to have their witnesses regurgitate their prior testimony verbatim. <u>See</u> Docket 1074 at 7 ("[t]he Court does not expect the government to ask identical questions to those asked at the first trial, nor does it expect a witness to testify verbatim or precisely the same as at the first trial.") *See also* Docket 1212 at 3 ("[t]he Court does not expect the parties to put on identical cases to those put on in the first trial, nor does it expect witnesses to testify verbatim to their earlier testimony.) Whether the jury believes Ms. Kiele or not, is a matter of the weight they give her testimony, not a matter of its admissibility. Accordingly, the defendant's out of court statements made to Ms. Kiele should be admitted and the jury left to determine the appropriate weight these statements deserve.

### III. Personal Observations of the Defendant's Demeanor.

Ms. Kiele can give testimony of her observations and or perceptions of the defendant's demeanor. Her observations and or perceptions are not related to out of court statements but rather behavior she perceived. The analysis as to its admissibility falls under FREs 401 (relevance) and a 403 (balancing).

Here, the fact that Wells appeared "out of sorts" and was acting strange and not

himself just months before the murders is probative of a fact in consequence – that the defendant began to fall from a position of total control at the COMMSTA, and his fall caused withdrawal, increased shortness with others, and his increasingly indifferent attitude. This is particularly true given the fact that Wells would often stop at the Kiele's residence in Seattle when traveling to or from Kodiak on work related business. He would often discuss the importance he had at the COMMSTA and portrayed himself as the only competent tower climber and electrician. His change in demeanor during the precise time he was having significant issues with his command, readily suggests that his ouster as the "Top Dog" negatively impacted him and dramatically affected his demeanor and behavior. Certainly the defense can cross examine her regarding these perceptions and the jury may give it the weight it deems appropriate.

## IV.   Conclusion

Despite their baseless claim of how "odd" it is that Ms. Kiele only now says she observed the defendant do and say these things, the truth is that she has been describing her brother's actions and statement this way from the day she met with investigators in 2013. If anything, her statements and perceptions surrounding the defendant have remained consistent, identical, and unwavering; a fact that cuts sharply against the defense's assertions and inferences that the government must have fed her information for her "list of observations, behaviors, and purported statements from Jim Wells". Dkt 1219 at 6.

Accordingly the United States respectfully requests that this Court deny the

defense's motion to exclude Ms. Kiele's testimony. The government does not request oral argument on this motion.

RESPECTFULLY SUBMITTED September 6, 2019, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/Kelley Stevens
KELLEY STEVENS
Special Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2019, a true and correct copy of the foregoing was served electronically on:

Counsel of Record

s/ Kelley Stevens
Office of the U.S. Attorney

U.S. v. James Michael Wells
3:13-cr-00008-SLG 7