Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
5200 Pike Street, Suite 2500
Seattle, WA 98101
Phone: (206) 624-1551
Email: petercamiel@yahoo.com

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>JAMES MICHAEL WELLS,<br><br>                Defendant. | Case No. 3:13-cr-00008-SLG<br><br>**DEFENDANT'S MOTION TO CLARIFY APRIL 19 VIDEO ORDER, DOCKET 1211, AND FURTHER OBJECTION TO GOVERNMENT EXPERTS & EXHIBITS** |

## INTRODUCTION

The Court issued its order, Dk. 1211, regarding Defendant's prior motion to exclude the April 19 Government Driving Experiment Video, on September 4, 2019. In the order, the Court ordered, among other things, the following:

    1) [B]efore playing the April 19 video or showing the jury still images from that video, the government must introduce other evidence that is sufficient to support a finding that the jury could reasonably find by a preponderance of the evidence that the vehicle seen in the April 12 video is Ms. Wells' CR-

V and seek a ruling from the Court outside the presence of the jury that it has done so. Dk. 1211, pp. 5-6.
2) Assuming the conditional relevancy standard is established and the video is shown to the jury, the defense may point out any differences between the videos on cross-examination or through its own witnesses, and the jury may give the April 19 video the weight it sees fit. Dk. 1211, p. 10.
3) Assuming that the conditional relevance of the April 19 video is established, in order to reduce the risk of unfair prejudice the Court will order the following:
   a) The government may elect one northbound and one southbound pass shown in the April 19 video to play at trial, although it may use still images from <u>any portion of the video</u>, subject to the following conditions.
   b) The government must include on <u>the April 19 video</u> an on-screen label clearly indicating that the video is an "experiment that does not depict actual events and only depicts an opinion of what may have happened" or similar language. This same label must appear on any still images extracted from <u>the April 19 video</u> that are shown to the jury, whether as stand-alone image or as part of a larger display created by or used by a government expert.
   c) The government shall not play <u>the April 19 video</u> or show still images from <u>that video</u> until after the jury has seen the April 12 video.
   d) Before the government plays any portion of <u>the April 19 video</u> or shows the jury still images from <u>that video</u>, a witness must authenticate and lay foundation for <u>the April 19 video</u>. Accordingly, <u>the April 19 video</u> and still images from <u>that video</u> shall not be shown during the government's opening statement.
   e) The government shall not refer to the CR-V in <u>the April 19 video</u> as being related to the homicides, only that it is Ms. Wells' CR-V.
   f) The designated portion of <u>the April 19 video</u> and <u>the stills from that video</u> may be used as demonstrative exhibits. They may be helpful to the jury to explain the experts' opinions and to demonstrate the government's theory of Mr. Wells' use of his wife's CR-V. However, <u>the April 19 video</u> shall not be admitted as evidence and it will not accompany the jury into the jury room during its deliberations.
   g) Still images taken from <u>the April 19 video</u>—including the PowerPoint slides created by experts that include still images from <u>the April 19 video</u>—may also be used as demonstrative exhibits but shall not be received into evidence and shall also not accompany the jury into the jury room.

4) Since the Court will be allowing the April 19 video and still images to be used solely as demonstrative exhibits, it appears that the defense does not have a Daubert objection. Dk. 1211, pp.13-14

## MOTION TO CLAIRFY

The Court's order refers to "the April 19 video" and "that video" a number of times throughout Docket 1211. At times, the reference appears to be the entirety of the originally created (approximately 2 hour long) April 19 video and at times is clearly referring to the restriction single pass back-and-forth that the court has instructed the government will be limited in presenting. The defense specifically seeks clarification that the Court's order intends to also limit the government to using still frame shots or images from ONLY the specific back-and-forth pass that it elects to choose to present to the jury. This interpretation is the only sensible reading of the Court's order that will give effect to the substantive findings the Court has made in otherwise ruling on the defense's motion.

The Court should view the entire original April 19 video experiment as a series of seven back-and-forth videos. In that respect, each would arguably represent a stand-alone attempted comparison to the actual evidence video from April 12, current government exhibit 62. As already evidenced, and as further evidence will show, the April 12 video consists of a total of 9 still frames, five going left to right and four going right to left (assuming both cars are the same). Thought of as a deck of cards or slides,

the evidence in the case is made of nine cards. The April 19 video series of seven video passes also each are made up of a number of slides or cards, ranging from nine (like the evidence) to more than 20, such as the pass run at five miles per hour. If the Court limits the government to using one video, it only makes sense that the cards or slides from that video should also be what is used for comparative purposes. The government should not have the restriction of one representative pass, but then have unfettered ability to use seven full decks of cards to parade in front of the jury an endless array of images, taken from across all the video passes, for use by its experts. To allow such process renders the Court's restriction of a single video pass meaningless.

A good example of how the government can easily circumvent the Court's order is already in evidence as government exhibits 64 and 65. In those exhibits, the government took images from the April 12 video, five in exhibit 64 and four in exhibit 65 and when admitted and "played" before the jury, the images were just shown in rapid succession, running both forward and backward a number of times as witness Michael Haseldon testified. As respects the April 19 video, proposed exhibit 181, (Toglia's power point) contains numerous successive slides where frames are run together in succession just as if the jury is watching a video, only slowed down frame by frame. So the government accomplishes in slow motion, or one image at a time, what the Court has restricted it can do by video. However, the effect on the jury is

the same, or potentially worse. Because by allowing the government to use all of the images from seven back-and-forth passes, the jury will potentially see most, if not all of the video, but just see it one frame at a time. This is true because the government proposes to have witness Toglia use several dozen images, witness Becker use multiple different images, and witness Vorder Bruegge use multiple different images. Clearly, by the time the jury is done watching each of these witness's testimony and slide shows, they will have seen substantially all of the video passes, or parts from all of them. This results in the identical danger that "may come dangerously close to usurping the jury's function" of interpreting the April 12 video that the Court has already found needs to be prevented. Accordingly, the defense urges the Court to clarify that its order limits the government to one video back-and-forth pass AND the still images from whatever back-and-forth pass it chooses to play for the jury.

## *DAUBERT* OBJECTION

The Court's initial assessment of the defense's position regarding its *Daubert* challenge to the April 19 video was correct. That is, if the Court limits the government's use of the video to demonstrative of the testimony of any and all witnesses who talk about it, AND THE GOVERNMENT FOLLOWED THAT ORDER, no *Daubert* analysis or exclusion would be needed. But while the Court has ruled that the government can only use the April 19 video as demonstrative evidence, the government exhibits and proposed testimony regarding the April 19 video make

abundantly clear that the government fully intends to overwhelm the jury with substantive expert discussion and analysis using the April 19 video.

Consider the proposed testimony of government expert Richard Vorder Bruegge. His 49 page "Power Point presentation," proposed exhibit 219 contains multiple still frame images taken from the April 19 video that are gleaned from several different back-and-forth video passes. More importantly, as shown by his report and the bench notes accompanying it, his proposed testimony relates to calculations and comparisons based on scientific processes and reverse photogrammetry work only possible through the substantive use of the April 19 video images.

In his report, Vorder Bruegge details how he took both the April 12 and April 19 videos and "electronically processed" selected images from each. Then, "the questioned vehicle(s) as depicted in the Q9 images from April 12, 2012 was compared to the known 2001 Honda CR-V vehicle as depicted in the Q9 images from April 19 and April 20, 2012." He goes on to explain that he thereafter, "[a]n overlay of these images was then prepared so that the characteristics and dimensions of the questioned vehicle could be compared with those of the known vehicle." Substantive results could only be made by applying the overlay to the April 19 video, the overlays were otherwise useless by themselves. Vorde Bruegge's bench notes indicate he used computer analysis on the April 19 video to calculate the "pixel length" and "pixel height" of the known CR-V, as well as calculating the "resolution per pixel in length

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                                           Page 6

Case 3:13-cr-00008-SLG   Document 1240   Filed 09/16/19   Page 6 of 12

~177.60/37=4.8"/pixel" and "resolution per pixel in height ~65.90/15=4.4"/pixel". Thereafter he used additional information gleaned from the April 19 "known" video to determine an error rate for "motion blur" and to determine the potential speeds of the vehicle. These are just a few of the examples that demonstrate how his use of the April 19 video is anything but demonstrative.

Next, consider the proposed testimony of witness Toglia. His 129 page "Power Point presentation," is now proposed government exhibit 181. Toglia's proposed testimony also involves highly scientific processes and reverse projection photogrammetry analysis only possible through substantive use of the April 19 video still frame images. See former testimony, TR. p. 2516, et.seq. It is evident from his power point presentation that the "substance" of his testimony is offered to show characteristics drawn <u>from the April 19 video</u> are consistent with the April 12 video, therefore the vehicles are consistent. But he is not able, using the April 12 video alone, to make any such statement. Thus, rather than formulate an opinion, and then use images from the April 19 video to assist in demonstrating that opinion, Toglia must make substantive analysis of and use the April 19 video to derive his opinion in the first place. Not letting the jury take the power point back to the jury room does nothing to remove the substantive nature of the testimony about it, and the ultimate conclusion drawn using it, which is what the government really seeks to rely on.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                                          Page 7

Case 3:13-cr-00008-SLG   Document 1240   Filed 09/16/19   Page 7 of 12

Most troublesome, is the government's newest proposed expert, Steven Becker. Becker, who will apparently testify first by way of experts discussing the April 19 video, was asked to "analyze <u>the surveillance videos</u>[1] to determine the make and model of a vehicle of interest and if it is consistent with Wells' 2001 Honda CR-V." By his own description, Becker performed "analysis" on both videos. His conclusions could not be made without doing so on both. The government should have by now submitted Becker's full report to the Court. A review of the report clearly illustrates the substantive nature of the analysis, that includes substantive work, testing, comparison, and manipulation of the April 19 video. This work is all far afield from simply use to "demonstrate" his otherwise scientifically formulated opinions.

A clear example of Becker's "scientific" and substantive use of the April 19 video starts on page 9 of his report. On page 9, Becker discusses pixels and three color variables: saturation, luminance, and hue, and points out that low saturation colors appear "washed-out," while high saturation of pixels results in a "pure" color. He then explains that there are 16,777,216 possible RGB (red, green, blue) values for each pixel that can be determined by the convergence of hue, luminance and saturation. Becker goes on to perform a color analysis on images (that others) extracted from both the April 12 and April 19 videos on page 12 and 13 of his report. Those pages also contain substantive color graphs depicting the analysis results of

---

[1] Becker refers to both the April 12 and April 19 videos as surveillance videos, which obviously the latter is not.

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                 Page 8

his computer generated color testing of the images. This is just one example of the substantive scientific use Becker makes of the April 19 video. Nothing about this testing is demonstrative, it forms part of the basis of his substantive opinions that follow and will be relied on by the government as substantive evidence of the same.

Because the government experts used the April 19 video or images extracted from it to formulate, test, and substantively develop their opinions, the evidence is being used substantively through expert testimony, which triggers the Court's function under *Daubert*. Simply preventing the "exhibits" that illustrate the testimony, without limiting the testimony does nothing to prevent the evidentiary unfairness and impropriety of the expert opinions. As respects *Daubert*, the Court is well aware that to admit an expert opinion, the court must resolve whether:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; see also, *Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148–49 (1999). The court must determine whether the reasoning or methodology employed by the expert is reliable—that is, whether it is "scientifically valid." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-593 (1993). To make this last assessment, the court should consider the following nonexclusive factors, commonly referred to as the "*Daubert* factors:"

> (1) Whether the scientific theory or technique can be or has been tested;
> (2) Whether the theory or technique has been subject to peer review or publication;

(3) The known or potential rate of error; and

(4) The general acceptance of the theory or technique in the scientific community.

*Id.* at 594-595. The *Daubert* court emphasized that this test is "a flexible one" that focuses on scientific validity and the principles and methodology, rather than the conclusions they generate. *Id.* The government bears the burden of establishing by a preponderance of the evidence, that its experts' testimonies, based on analysis of the non-scientific April 19 video exercise which they had no part in creating, meets these requirements for admissibility. Based on the arguments already submitted to the Court, primarily in Docket 1134, the government experts' testimony and opinions interwoven with analysis of the April 19 video should be excluded under *Daubert*.

## OBJECTION TO PROPOSED EXHIBITS

Should the Court find the government both establishes the conditional relevance of the April 19 video and images taken therefrom, and determines that the government experts can offer, demonstratively, their presentations at proposed exhibits 95, 181, and 219, Defendant has the following further objections.

With respect to exhibit 95, Defendant objects to page 9 of the exhibit as the blurry green image depicted on the page is taken from the April 19 video but is not labeled as such.

With respect to exhibit 181, Defendant objects to the following pages as depicting events which are not actual evidence or that do not depict real events, but are not labeled as such: 10, 23-24, 26-27, 29-30, 32-33, 35-36, 38-39, 41-45, 51-52, 54-

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                              Page 10

55, 57-58, 60-61, 63-64, 67-69, 71, 73-77, 79-82, 89-95, 105. Additionally and separately, Defendant objects to the following exhibits and urges the Court to exclude the following pages containing animation overlays altogether under Rule 403 as they are cumulative, invite jury confusion and substantially more prejudicial than probative: 23-24, 26-27, 29-30, 31-32, 35-36, 38-39, 41-45, 51-52, 54-55, 57-58, 60-61, 63-64, 66-69, 71, 73-77, 79-82, 84-95, 97-98, 100-114, 116-117, 119-127.

With respect to exhibit 219, Defendant objects to the following pages that are not labeled consistent with the Court's prior order, Dk. 1211: 23, 26, 41 and 44.

## CONCLUSION

For all the reasons stated herein above, and based on the Court's prior rulings in Docket 1211, the Court should:

1) Limit the government to the demonstrative use of one back-and-forth pass from the April 19 video and ONLY still images from the particular pass it chooses to use;

2) Exclude the testimony of government experts Vorde Bruegge, Toglia and Becker under *Daubert*, as their opinions are offered through substantive use of analysis of the April 19 video and images taken therefrom. And such opinions cannot be limited or restricted simply through withholding their power point exhibits from the jury while allowing substantive testimony about the same; and

3) Exclude or further restrict the exhibits set forth above if allowed as demonstrative exhibits.

DATED at Anchorage, Alaska this 16th day of September, 2019.

    Respectfully submitted,

    */s/ Gary G. Colbath*
    Gary G. Colbath
    Assistant Federal Defender

    */s/ Peter A. Camiel*
    Peter A. Camiel WSBA 12596
    Attorney for Defendant

    *Attorneys for James Michael Wells*

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on September 16, 2019. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*