BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
Deputy Criminal Chief
CHRISTINA SHERMAN
Assistant U.S. Attorneys

KELLEY STEVENS
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
     christina.sherman@usdoj.gov
     kelley.stevens@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES MICHAEL WELLS, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:13-cr-00008-SLG <br> ) <br> ) <br> ) <br> ) |

**MOTION IN RE POSSIBLE DEFENSE JUROR CONTACT AND REQUEST
FOR HEARING
<u>FILED ON EXPEDITED CONSIDERATION</u>**

The United States files with the court a motion precluding any representative,

member of, or any individual acting on behalf of the Federal Public Defender Agency

and/or James Wells from contacting, in whatever fashion, a member of the trial jury, including alternates, in the above captioned case. Said motion is based on the following facts.

### A. FACTS AND OVERVIEW IN SUPPORT OF A HEARING

During a recent jail call, between James Wells and his spouse Nancy Wells, reviewed by the United States, defendant James Wells stated that his 'defense team' will be contacting the trial jurors in this case after the new year. It is unknown to the United States whether the defense will be attempting to interview the trial jurors in this case. If true, the United States is opposed for several reasons, partially due to the new local criminal rules to be in effect on January 1, 2020, which prohibits juror contact unless contacted is initiated by the jurors themselves, and just as importantly due to Jim Wells belief, stated below, that the inquiry will intrude into the jury deliberation process, a process prohibited by the law. As of this writing, there is a complete the lack of any evidence or reason justifying such an intrusion into the now-discharged jury deliberative processes. If there is such evidence, the defense should present it to the court *before* any jury contact for the court to either approve or reject any jury contact.

For these reasons, the United States requests a hearing in order to ascertain the following:

        -Whether such a plan is indeed in place,

        -Whether it has already occurred, and when and with whom,

        -The factual or legal reason for the contact,

Without more, the United States seeks a court inquiry with respect to this possibility. If indeed true, the United States will be seeking a court order precluding any such contact by any member of the Federal Public Defender Agency or anyone acting on behalf of Jim Wells of any trial juror including alternates.

For the reasons set forth below, the court should grant the United States' request for a hearing given that such contact would interfere in the province of the jury, is based on no facts nor evidence whatsoever, no incidents of misconduct occurring during the trial, and will only serve to intimidate, harass, and scare a panel whose duties have been discharged. At a minimum, the defense should be required to make application to the court, and the United States requests the court order the same, to show good cause why jurors contact information should be disclosed.[1]

> Jim: Bruce did come by yesterday, so
> Nancy: uh huh
> J: so he did take pictures, um…. And
> N: ok
> J: he did drop off transcripts of of what they have, they didn't get everything they just got certain things so
> N: yeah, yeah i knew that
> J: dropped those off and um…they're hoping to talk to jury after first of the year
> N: oh, are they thinking they'll be allowed to?
> J: well they're they they made a rule change so
> N: oh
> J: so
> N: who made a rule change?
> J: well the the district court here in Alaska
> N: oh, that

---

1 In this age, there is probably no need for the 'release of juror contact information' as all anyone needs is an individual's name in order to locate their address, place or work, or other contact information online.

> J: last time you couldn't do it, they changed a local rule
> N: uh huh
> J: so that is going to be allowed, so they are going to wait until after, after the first of the year
> N: ok… well that'll be interesting to hearing what they actually, what transpired.
> J: what, what the hell were they thinking why did they ignore ignore the truth and the evidence.
> N: well that will be an interesting one….that will be an interesting one… Because it will
> J: yeah
> N: we'll see what they have to say…. And it'll be interesting, hopefully they'll talk to more than one because they may find out that, I mean who knows if there was stuff going on…that was illegal
> J: well we'll see
> N: yup, yup, well that's good, yeah he had sent me an email a text email yesterday afternoon saying he had seen you so, and dropped off stuff though, so….
>
> *See* Exhibit 1.

On this date, and filed as Exhibit 2, is a recording of the defendant's conversation with his wife Nancy Wells. During this recording the defendant stated his belief that the interviews will now happen *before* the Christmas holiday. This makes sense as the new local rule, effective January 1, 2020, prohibits juror contact without contact being initiated by the juror. (see, New Local Rule 24.1 (d) (*After Trial; After the jury concludes its deliberations and is discharged, a party, attorney, or other interested person **may communicate with a juror who first initiates contact**.*)(emphasis added)

So far, there has been no evidence presented to this court nor provided to the United States establishing juror or jury misconduct, and, in fact, it is unknown as to

Page **4** of **8**  3:13-cr-00008-SLG

whether defense counsel is even aware of this idea, though Mr. Wells seems well versed in the upcoming criminal rules change. Nevertheless, courts have commented that post-verdict juror interviews would "denigrate jury trials by afterwards ransacking the jurors in search of some ground ... for a new trial." *See e.g., In re Express–News Corporation and Cecil Clift*, 695 F.2d 807, 801 (5th Cir.1982), *quoting O'Rear v. Fruehauf Corp.*, 554 F.2d 1304 (5th Cir.1977). *See also, United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir.1985) ("[U]nbridled interviewing of jurors" post-verdict could easily lead to "diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties.") *see, Economou v. Little*, 850 F.Supp. 849, 852 (N.D. Calif. 1994). Thus, it is clear that any interview with intent to examine jury deliberations is looked upon very unfavorably if not prohibitively.

Further confirmation, with reference to FRE 606), can be found in *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739 (1987). In that case, the court denied an application to probe, months after trial, allegations of juror substance abuse. In that case, the court found:

There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. *See, Government of Virgin Islands v. Nicholas*, supra, at 1081 (one

year and eight months after verdict rendered, juror alleged that hearing difficulties affected his understanding of the evidence). Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct. See Note, *Public Disclosures of Jury Deliberations*, 96 Harv.L.Rev. 886, 888–892 (1983).

In *Tanner*, the court further relied upon FRE 606(b). In referencing that rule, the Supreme Court stated: Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences. *See Government of Virgin Islands v. Gereau*, 523 F.2d 140, 149, n. 22 (CA3 1975); S.Rep. No. 93–1277, p. 13 (1974), U.S.Code Cong. & Admin.News 1974, p. 7051 (observing that Rule 606(b) "embodied long-accepted Federal law").

Rule 606(b) states: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter

about which he would be precluded from testifying be received for these purposes." *See, Tanner*, 107 S.Ct. at 2750, (Public policy requires a finality to litigation). And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberations of the jurors." Id., at 13–14, U.S.Code Cong. & Admin. News 1974, p. 7060)

Therefore, Wells' claim that the inquiry will go into the jury's deliberation cannot occur.

### B. CONCLUSION

There is a significant body of case law, in addition to that provided here, prohibiting under FRE 606(b) inquiry into what occurs in the jury room. While a large brief on this issue may be premature, the foregoing provides the court with the proper legal landscape to begin the inquiry based on James Wells' statements.

For the reasons provided herein, an inquiry into the jury's deliberations should be precluded. There has been no allegation of juror misconduct or undue influence since the verdict from mid-September. Absent specific facts, inquiry by investigators for the Federal Public Defender Agency should be precluded by court order. Accordingly, the United States requests a hearing in order to get on the record whether or not such an action has, is or will be taking place.

RESPECTFULLY SUBMITTED December 12, 2019, at Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on December 12, 2019,
a true and correct copy of the foregoing
was served electronically on:

Gary Colbath
Peter Camiel

*/s/Steven E. Skrocki*

Page **8** of **8**　　　　3:13-cr-00008-SLG

Case 3:13-cr-00008-SLG   Document 1329   Filed 12/12/19   Page 8 of 8