```
1                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA, )
                              )
4         Plaintiff,          )
                              )
5   vs.                       )    CASE NO. 3:18-cr-00008-SLG
                              )
6   JAMES MICHAEL WELLS,      )
                              )
7         Defendant.          )
    _____)
8

9

          TRANSCRIPT OF STATUS OF COUNSEL HEARING
10   BEFORE THE HONORABLE SHARON L. GLEASON, DISTRICT JUDGE
                  June 21, 2018; 1:35 p.m.
11                    Anchorage, Alaska

12

13  FOR THE GOVERNMENT:
          Office of the United States Attorney
14        BY:  KIMBERLY SAYERS-FAY and JONAS WALKER
          222 West 7th Avenue, #9
15        Anchorage, Alaska 99513
          (907) 271-5071
16

17  FOR THE DEFENDANT:
          Office of the Federal Public Defender
18        BY:  F. RICHARD CURTNER and GARY G. COLBATH
          425 G Street, Suite 800
19        Anchorage, Alaska 99501
          (907) 646-3400
20

21

22  _____

23             SONJA L. REEVES, RMR-CRR
             Federal Official Court Reporter
24             222 West 7th Avenue, #4
               Anchorage, Alaska 99513
25     Transcript Produced from the Stenographic Record
```

```
1                (Call to Order of the Court at 1:35 p.m.)

2                DEPUTY CLERK:  All rise.  Her Honor, the Court,

3   the United States District Court for the District of

4   Alaska is now in session, the Honorable Sharon L.

5   Gleason presiding.

6                Please be seated.

7                THE COURT:  Good afternoon.  We're on record in

8   United States versus Wells.  We have Ms. Sayers-Fay,

9   Mr. Walker here.  Mr. Colbath is here, Mr. Curtner in

10  the back, and Mr. Wells.

11               So Mr. Colbath, there you are in counsel chair.

12               MR. COLBATH:  Here I am, Your Honor.  My

13  understanding is this was in part a status of counsel

14  hearing, and if I can start.

15               THE COURT:  Go right ahead, please.

16               MR. COLBATH:  Thank you.  From the defendant's

17  perspective, it's our request that the Court's original

18  order appointing the federal public defender's office to

19  represent Mr. Wells continue.  I can tell the Court that

20  from today forward, actually, from earlier this week

21  moving forward, Mr. Scoble is out internally from our

22  office because of his recent change in status that the

23  Court is aware of.  Mr. Scoble is out and he'll be,

24  going forward, hands-off this case 100 percent.

25               I am going to take over the case as lead
```

counsel and trial counsel.  Certainly, Mr. Curtner will
be involved.  Like in all our federal public defender
cases, the office resources will be used, but I will be
counsel of record and counsel going forward.

THE COURT:  All right.

MR. COLBATH:  With that in mind, I have thought
about -- I attended and listened to the Court's comments
last hearing and Mr. Scoble's interactions with you, and
so I am prepared to propose some dates and deadlines or
go through those with the Court from the defense.

THE COURT:  Let's hear your proposed -- you
probably don't have an opinion as to the potential
length of trial.  I think the government has said two
weeks.

MS. SAYERS-FAY:  Yes, Your Honor.

MR. COLBATH:  Your Honor, I had to ask somebody
this morning, as it happened, how long the first trial
took, so I have zero idea.

THE COURT:  Fair enough.  What's your proposal
on dates, and then I'll hear from the government.

MR. COLBATH:  I understand from both government
counsel, whom I appreciate called me yesterday to talk
through some of these things, I understand from them,
and I understand from earlier conversations with
Mr. Scoble, that there are some outstanding sort of

discovery issues.  Not having been privy to much prior
and certainly nothing on record prior, I would like the
Court to set a discovery deadline, and when I say
"discovery deadline," I have a couple of things in mind.

Number one, there has been discovery previously
provided obviously in the prior case.  So for -- I
understand from the government that for past discovery
provided, we're going to get that discovery again, but
there is a problem with the government resurrecting it
and providing it in the form that it was provided,
particularly with the same Bates stamp numbers.  They
had some -- it's an IT problem, I guess, if you will.

And so my understanding is the government is
going to provide us with discovery that we have already
received, but it's going to have new Bates stamp
numbers, different from what was previously.  Now, that,
of course, as the Court might guess, given the breadth
of material in this case, which now occupies dozens of
banker boxes and a whole room at our office --

THE COURT:  I guess if you got a set with Bates
stamps is what I'm hearing, could that be the -- this
just sounds potentially confusing to have a new set of
Bates stamps.

MR. COLBATH:  Your Honor, and I'll --

THE COURT:  And then I'll hear from

Ms. Sayers-Fay.

        MR. COLBATH:  What I understand is during the
first trial let's say the government provided discovery
and it was Bates number 1 through 30,000, and we have
that, my office has that.  Because the government can't
just reproduce that, pull the computer disc back up or
the drive and say we'll just reprint 1 through 30,000
and here it is again to make sure it all meshes, they
are going to reprint everything they have but they have
to do a new Bates stamp, so they are going to start at
30,001, so that at no time any numbers are duplicated to
avoid the confusion I think the court was thinking
about, oh, we have two number 10,000s, is one the old
and one the new, and avoid that confusion.

        So number one, I would like some indication of
when I'm going to get that.  That needs to happen sooner
rather than later and here is why:  Much of the defense
organization, much of our cross-referencing of things,
our referring to things or whatnot, is done not only by
document title, but, of course, it's done by Bates
number.

        And so now if I get something, and my expert
all along or a witness or my own reference and notes
knows that that's document number 10,000, if now all of
a sudden I'm going to get that again but it's going to

be document 50,000, I need to, number one, make sure
they truly are the same or I have seen it and I'm
talking about the same thing, and then I need to update
my notes or my expert or my witnesses.  That's going to
take -- that's just logistical work on our part, but
it's work that has to be done.  So the sooner I can get
that the better.

I also understand from the government that
there is some new discovery that is new in relation to
its witnesses, one or more, that may have had post-trial
interaction with Mr. Wells that may now be offering some
form of statements or something, something to do with
interactions with Mr. Wells.  It's new discovery.  So
there is that issue, and I understand and I'll let the
government explain what legal issues exist there.

Then there is just off the top of my head I can
envision that much time has passed since the trial
previous and I don't know if the government has hired
new experts.  I don't know if the government has done
either re-interviews of existing known witnesses or done
brand-new interviews of previously never-interviewed
folks, just based on either new theories or new
whatever.

Obviously, the trial dates that I commit to
today, the motions deadlines that I commit to, all those

1    are hinged on discovery.  I am not looking to tie the
2    government's hands such that if something comes to light
3    post deadline, obviously, if the government can
4    establish we just got this or we just recently got it
5    and we couldn't have gotten it prior to now through due
6    diligence, fine, it obviously comes in and whatever
7    impact that has.
8         But this case was tried once, so 90 percent of
9    the universe should be known.  The case was overturned
10   in December of last year.  That was seven months ago.
11   And Mr. Wells has been here since March of this year.
12   And now we have been actively litigating in this court
13   so far and we're three months post that.
14        So right quickly here, and my thought was a
15   July 1st deadline, certainly a July 1st for the old
16   stuff that's simply a numbering problem for the
17   government.
18        THE COURT:  All right.
19        MR. COLBATH:  I would like to see sometime very
20   shortly after that, within the next 30 days or
21   something, here is all the new stuff we have got that
22   you have never seen before deadline, maybe by
23   August 1st.  And then anything that comes in beyond that
24   is probably new investigation or something that's
25   ongoing that they couldn't -- that they didn't have as

1  of August 1st.  And then assuming those deadlines

2  happen, I would be prepared to have a November 1st

3  motions deadline for regular substantive pretrial

4  motions.  And my thought was a pretrial conference in

5  January and a trial date of February 11th, which is the

6  second Monday in February.

7         THE COURT:  All right.  Ms. Sayers-Fay, go

8  ahead, please.

9         MS. SAYERS-FAY:  Thank you, Your Honor.  I

10  think I'll address it in reverse order so we can begin

11  with what we agreed on, and that is the trial date.

12         THE COURT:  I have heard it was conditioned on

13  the other dates.

14         MS. SAYERS-FAY:  Yeah, I heard the same thing,

15  and that is where we're not going to have agreement.

16         THE COURT:  Well, why don't you explain to me

17  what the problem is with the first 30,000 pages.

18         MS. SAYERS-FAY:  Sure.  So the initial 30,000

19  pages, which was all the underlying evidence from round

20  one, Your Honor, was maintained in a database that is no

21  longer -- it is obsolete basically.

22         And the way that data was organized for us is

23  no longer something that we can utilize.  So if we as

24  the government want to go in and use the prior

25  organization, it is not available to us.  And when we

tried to use some backup tapes to sort of repopulate
that, that was not successful either.

So we have had to get all of the evidence
serialized from the FBI brought back over and we have
had to populate our own database anew. And that will
allow us to continue on with that and organize the new
materials in the same database.

THE COURT: All right. I'm no expert on
technology. I'll say that on the record. But I don't
see why it's not possible to take the 30,000 pages, scan
them and put them into whatever database you need. And
it just seems it is going to be far more time-consuming
for everybody to go forward here with the method you're
proposing.

MS. SAYERS-FAY: Well, we have taken some
pains, and I did explain those to Mr. Colbath, to avoid
I think what you're concerned about. And one of those
steps is we have imported the data -- they have
explained to me that there is no way that we can utilize
the same data and the same Bates numbers as it was
organized previously. That is simply not available to
the government, absent sitting there and scanning by
hand those 30,000 pages.

So we have already put that into a new
database. We have already put new Bates numbers, which

are not duplicative of the old Bates numbers.  What they

are doing right now is running a correlation.  What we

provide to the defense will be here is the entire

universe of what you got before, and these are the new

materials that we haven't yet given you, and here are

the Bates numbers so you can see, so they can easily

isolate what they have received previously and what is

new.

So we're not drowning them in a bunch of

materials.  We're taking great pains to show this is the

old, this is the new, and these are the Bates numbers

that it was labeled before and these are the Bates

numbers now.

If they want to proceed with theirs, assuming

their technology is not obsolete and they want to use

their old Bates numbers, nothing prevents that.  So I

want to make it clear that they have that information

and they always have, so if they want to go forward,

that's fine.

But we have to, for our purposes, we have to

make a new database.  We have to make a database that

accommodates the new information that's forthcoming and

it will allow consecutive numbering throughout, and also

allow us access to the underlying data in an organized

fashion.  We felt like we need to give them that

database.

THE COURT:  So if you were wanting to find out, let's say there was Bates stamp number 10,000, old Bates stamp, can you type that in and it spits out the new one?

MS. SAYERS-FAY:  Yes.  As I see it right now, and this is something we're still working with them on making sure that is entirely comprehensive, but as I see it right now, it is in a digitized form and there is a column that is "old/new," and they have run a hash value.

So we are taking great pains to ensure that we can quickly identify what it was marked before and what it is marked now.

THE COURT:  So what's your deadline for providing that?

MS. SAYERS-FAY:  Your Honor, I would propose July 19th for that.

THE COURT:  All right.

MS. SAYERS-FAY:  And with regard to the other discovery, I will say this:  Both Mr. Walker and I have done a number of trials in federal court and we're very aware of what it will take to make sure that we maintain that trial date and that is very important to us.

But suggesting that, for example, all of the

1    government's discovery be turned over in the next

2    30 days would be frankly malpractice on our part.  Two

3    people are dead and the government will continue to

4    investigate to the eve of trial and through trial.  So I

5    don't have --

6              THE COURT:  What I heard was that Mr. Colbath

7    was requesting what you have as of now be provided by

8    August 1st.

9              MS. SAYERS-FAY:  Well, and if what we were

10   talking about there is the database that we already have

11   and a modest amount of --

12             THE COURT:  No, no, that was July 19th.  He

13   proposed July 1st.  What he was talking about is

14   post-trial contacts, any new experts and any new

15   information interviews.  And maybe there are different

16   dates you would propose.

17             MS. SAYERS-FAY:  There are.  We would suggest

18   October 1st, Your Honor.  There will be some new expert

19   discovery.  We do anticipate that.  And the government

20   is very much working in earnest on that and we intend to

21   keep doing so.

22             THE COURT:  Let's say October 1st on experts.

23   Why couldn't the post-trial contacts and the other

24   interviews that you have already had be provided sooner?

25   That's what I'm suggesting.

1          MS. SAYERS-FAY:  We have -- I think post-trial

2     contacts I want to take separately because that is

3     *Jencks* material, and so that raises a whole host of

4     other problems, including the fact that *Jencks*, under

5     *Acosta*, the Ninth Circuit, trumps *Brady*, and the Court

6     actually cannot alter the statutory deadline for

7     disclosure of *Jencks* materials.

8          THE COURT:  What I heard, and I'll get

9     Mr. Colbath to clarify, but what I heard was he's of the

10    view that you may have more statements made by

11    Mr. Wells.  Maybe I misunderstood.  That would not be

12    *Jencks* in my mind.  I agree with you on *Jencks*.

13         MS. SAYERS-FAY:  Well, my understanding, Your

14    Honor, is within the ambit of Rule 16 would include any

15    statements that Mr. Wells made to law enforcement

16    post-trial, but if, for example, he made a secondary

17    confession to someone else, that would be their *Jencks*,

18    and that is something I don't think we are at liberty to

19    turn over.  I believe that falls under the rubric of

20    *Jencks* rather than *Brady* under the *Acosta* case.

21         THE COURT:  I might need briefing on that to

22    sort that out.

23         MS. SAYERS-FAY:  I point that out because I

24    think it's important to keep in mind the law, but,

25    again, I would say that we again are trying to make sure

that this trial proceeds in an orderly fashion.  So I'm
not suggesting, although the rule does say that we can
turn over *Jencks* after the witness has testified, and
frankly that's what BOP would have us do.  That is not
what we want to do.  And we are working with BOP to find
a middle ground that appropriately protects their valid
concerns concerning security of their own inmates.

So all that said is I don't think that the
Court can lawfully set a deadline concerning the
production of *Jencks* materials that would include
materials concerning cooperating witnesses in BOP
custody.

THE COURT:  What I can do is set a deadline for
both sides to brief this issue.

MS. SAYERS-FAY:  We can certainly do that.

THE COURT:  We can sort that out sooner rather
than later of what would fall within *Jencks*.  As I
understand the government's position it's that
statements that Mr. Wells may have made to third parties
post-trial fall under *Jencks*, if you plan to call the
third party as a witness?

MS. SAYERS-FAY:  Right, because under
statements -- under the Rule 16 statements that -- we
just looked at this before we came.

THE COURT:  I haven't.

1          MS. SAYERS-FAY:  It defines the statement -- if

2     he had made the statement to law enforcement, but these

3     are clearly not statements made to law enforcement, so I

4     do not think it falls under Rule 16, but I'd be happy to

5     brief it.

6          Frankly, it's something that we would be

7     looking into ourselves as a matter of due diligence and

8     responsible litigation.

9          THE COURT:  Is July 19th a workable date?

10          MS. SAYERS-FAY:  Yes, that would be fine.

11          THE COURT:  I just threw it out because that's

12     your other date.

13          MS. SAYERS-FAY:  So we were discussing -- so I

14     would suggest an October 1st deadline for discovery

15     separate and apart from the issues that may arise with

16     cooperating witnesses that would be within the ambit of

17     *Jencks*.

18          I would suggest a pretrial motion deadline of

19     December 3rd.  And then trial either beginning on

20     February 11th or February 19th.  I would note that if we

21     begin trial on February 11th, and it is going to be at

22     least a two-week trial, that there is the President's

23     Day holiday so there is a three-day holiday.  I don't

24     know how Your Honor feels about that.

25          It may make sense to begin on Tuesday,

February 19th. That's sort of how we see it. I want to just put on the record as well that if, for example, Your Honor suggests or selects an October 1st production deadline, I will say that again our obligation here and our sort of prime mover is that we want to make sure that the trial proceeds in February as planned.

We don't plan on holding back discovery that we have, for example, the stuff in the database. We want to push it out, and to the extent that I can do that before the deadline, I will be happy to do that.

Now, with the exception of some of the BOP materials where there are very different concerns.

THE COURT: The *Jencks* issue, we'll sort that out by motion.

MS. SAYERS-FAY: The *Jencks* issue. So I'm not -- the government is not sort of coming from a position of holding information hostage. By the same token, I'm a little troubled by the October deadline. That's four months before trial, and I will say again this is a very serious case. We are continuing to investigate. We will continue to investigate until there is no further opportunity because the evidence has closed.

So what I heard Mr. Colbath say is that he understands that. I'm sure he will be in the same position of if he finds something that he wants to bring

1    to the Court's attention after the deadline, we'll be

2    doing that as well.  So what I see that as is an effort,

3    a deadline to say this is a good faith effort to produce

4    what is in our possession at that time understanding the

5    more we exchange earlier on that heightens the

6    probability of the trial going without incident.

7              THE COURT:  In terms of the *Jencks*, what's your

8    intended date of providing that material once we sort

9    out what that consists of?

10             MS. SAYERS-FAY:  Well, I need to confer further

11   with BOP on that.

12             THE COURT:  That's fine.

13             MS. SAYERS-FAY:  I literally don't --

14             THE COURT:  That's really fine.

15             MS. SAYERS-FAY:  Much of the information I do

16   not have.  I expect frankly, Your Honor, that we're

17   going to have do to some in-camera work on that.  There

18   will have to be some protective orders.  I need to

19   confer further with BOP.  They favor a later date.

20             THE COURT:  Fair enough.  Thank you.

21             Mr. Colbath, your thoughts on all of this?

22   Anything further?  What about July 19th simultaneous

23   briefing on this issue of the scope -- or do you concur

24   with Ms. Sayers-Fay that the *Jencks* would apply to such

25   statements?

1          MR. COLBATH:  My legal opinion is the *Jencks*

2     doesn't apply and those statements are different.  They

3     are Rule 16 discovery.  They are not *Jencks* statements.

4          THE COURT:  Simultaneous briefing on July 19th?

5          MR. COLBATH:  I can submit a simultaneous

6     brief, although I'm not sure until the government

7     factually lays out -- because I haven't seen the

8     statements.

9          THE COURT:  It's a --

10         MR. COLBATH:  It's hard for me to characterize

11    this is what this statement is and therefore this is

12    what legal rule it fits into until I have a

13    representation, a direct representation by the

14    government, here is the context of the statement, so I

15    can then say, well, legally it fits this pigeonhole or

16    that pigeonhole, so my preference would be to see their

17    brief and then respond.

18         And then if the Court wants to grant them the

19    ability to file a brief reply, since it wasn't a

20    simultaneous brief, that would be great.  If the Court

21    tells me I have to submit a simultaneous brief, I'll be

22    prepared to do that.  Either way, July 19th, I'm fine

23    with that date.

24         If I get to submit a -- if it's not

25    simultaneous, I'll have my brief in within one week of

1  receiving the government's brief.  If it is

2  simultaneous, then I'll do it on -- so on that issue,

3  I'll do it on July 19th or one week later, whichever the

4  Court tells me.

5          THE COURT:  All right.  Well, I do think it

6  would be more useful to have it staggered in this case

7  because then the government can more squarely define

8  what we're talking about.

9          So then Ms. Sayers-Fay, you can do a reply as

10 optional within a week thereafter.  It would be

11 July 19th; July 26th for any opposition; and August 2nd

12 for the reply with regard to the *Jencks* applicability to

13 statements by the defendant to third parties, is how I

14 understood the issue to be, non law enforcement, whether

15 it's a 16 one or a Jencks and how we sort that out.

16         With regard to the July 19th production of this

17 new Bates-stamped material?

18         MR. COLBATH:  The only comment, Your Honor, I

19 have on that is this:  I proposed July 1st.  They

20 proposed July 19th.  I don't see that as a huge

21 difference other than to say I think Ms. Sayers-Fay's

22 comments to the Court illustrate the problem perfectly.

23         The government has known since December we were

24 likely going to redo this.  They have spent seven months

25 painstakingly recreating all of this work on their end.

1    Not that it's going to take me equal amount of work, but

2    I can tell the Court it's malpractice for me to just

3    accept at face value, oh, here is stuff we gave you the

4    first time, so don't worry about this, this is not new.

5            Somebody, me or somebody at my office is going

6    to have to check to make sure they are right, this is

7    really something we have seen before and not something

8    new, so we're going to have go through and double-check

9    their process.  It's taken them months and months and

10   months and they are still not done.  They are telling us

11   it's going to take another month before we get it.

12           So while I'm trying to meet the other deadlines

13   and go forward with preparing for trial, we're starting

14   -- we're under that, albeit less strenuous, but still

15   pretty strenuous obligation.  So if July 19th is the

16   date we pick, I just want it as soon as I can get it,

17   quite honestly.

18           If we get it July 1st, we'll start three weeks

19   earlier.  If we get it July 19th, we'll start likely on

20   July 19th.

21           THE COURT:  July 19th is the deadline for the

22   production of the re-Bates-stamped or new Bates-stamped

23   prior discovery.  And certainly, I'm hearing the sooner

24   the better, but July 19th is the anticipated latest date

25   that that would be made available to the defense.

1          All right.  With regard to the additional

2    discovery, new discovery, my intent on that now is to

3    set a status hearing in August.  I'm not going to set

4    the closing date of discovery at this time, but it will

5    be certainly no later than October 1st, but we'll meet

6    in August and I'll get an update then of what the

7    government has provided, what may have been provided by

8    the defense as well, make sure we're on track with the

9    July 19th.

10          If I have anything further I need on the

11   briefing issue, we can take that up too, although I

12   don't anticipate that.  So I won't set the close of

13   discovery now, but I'll set it at this August conference

14   and it will be no later than October 1st subject to good

15   cause thereafter.

16          I will say that I would be likely to go with

17   the government's proposal of October 1st if the

18   government had provided considerable discovery of a new

19   nature to the defense by the time of our August

20   conference.  If nothing had been forthcoming, it may be

21   a crush on the government to get together what it does

22   need to provide much sooner than October 1st.

23          So you understand what I'm saying there?  If

24   the government has provided a lot and you have got one

25   expert you're still trying to finagle or whatever,

1  you'll get a better reception, because I think that

2  gives the defense more time as well.

3          If we had October 1st as the absolute latest

4  but we anticipate further -- let's set the August date

5  before I forget that.  We'll do it toward the middle of

6  the month.  How about August 15th at 2 p.m.?

7          MS. SAYERS-FAY:  Oh, Judge, August 15th, I

8  think is that the Ninth Circuit --

9          THE COURT:  The FBA I'm showing is on the 14th.

10 I may well be in trial that week.  I think we would do

11 better -- let's do -- how about Friday, the 17th, at

12 2 p.m., does that work?

13         MS. SAYERS-FAY:  Yes, Your Honor.

14         THE COURT:  I would actually do better if we

15 did 1:00 p.m.  Can you be available then, Mr. Colbath?

16 Fairbanks?

17         MR. COLBATH:  Yeah, I really try to avoid

18 Fridays if there is any way I can.

19         THE COURT:  All right.  How about 3 p.m. on the

20 13th?  If I happen to be in trial that day, I can just

21 end early.  That's Monday.

22         MS. SAYERS-FAY:  I won't be in town that day,

23 Your Honor.

24         THE COURT:  Can Mr. Walker handle it?  You'd

25 rather not?  Will you be gone the whole week?

1          MS. SAYERS-FAY:  I will be back on the 14th,

2     which is the day the Ninth Circuit -- there is the FBA

3     day-long bit.  The Ninth Circuit is also in town that

4     week.  But any day other than the 13th would be

5     terrific.

6          MR. COLBATH:  Your Honor, I'll make the 17th

7     work.

8          THE COURT:  That would be great.  You can do

9     that as well?

10          MS. SAYERS-FAY:  Absolutely.

11          THE COURT:  So we will have a status hearing on

12     August 17th at 1 p.m.  And we'll assess the status of

13     discovery, set the deadline for the close of discovery

14     at that time.

15          Assuming worst-case scenario, that you get

16     discovery October 1st, Mr. Colbath, what date are you

17     proposing here for a motion deadline?

18          MR. COLBATH:  I can tell the Court this.  We're

19     actually in the odd situation of I requested

20     November 1st, the government requested December 3rd.  I

21     just know from my looking at the case study of the Ninth

22     Circuit decision knowing what's happened prior, I am

23     intent on filing a large number of substantive motions.

24          I am told by Mr. Scoble that this Court has

25     previously commented we will not be going through the

magistrate court and the R&R process.  That will be
helpful.  I think that's appropriate that you just
directly rule on everything.  That will streamline it,
but even so, I anticipate some meaningful motion
practice.

          And so really as long as the Court tells me,
well, if it's November 1st, that will give us time.  If
it's December 3rd, that will give us time.  The more
time I have is actually better.  December 3rd is fine,
but I will just warn the Court I might file -- if it's
December 3rd, you might get by Thanksgiving time a dozen
substantive motions from me.

          If you do, if you think that the month of
Christmas is enough to sort that out and be ready to go
in January with the pretrial where I'll file a second
round of pretty meaningful motions in limine, and then
we'll start trial in February, I'm fine, but I want it
to be known now that it's going to be more work than
less work, which is what I had in mind when I thought,
okay, November 1st is 90 days before a trial date as
opposed to 60, given that Thanksgiving and Christmas are
in there.

          THE COURT:  All right.

          MR. COLBATH:  That's my thoughts.

          THE COURT:  Your thoughts?  If I made it

November 16th, that would be a pretty bad date for the
government.

        MS. SAYERS-FAY:  It would, as would
mid-December.  So November 1st?  I don't know if that's
even -- November 1st is a Friday.

        MR. COLBATH:  Your Honor, I'm also open to -- I
mean, status on August 17th is -- and I'm not going to
wait to file 12 motions the week of the deadline.

        THE COURT:  Put that in the minutes.

        MR. COLBATH:  Put that in the record, please.
If I identify a suppression motion next week and I feel
I have adequately briefed it and I have the discovery,
which I don't, to make sure that I have the discovery
related to that motion, I'll file it next week, but it
strikes me as maybe August 17th --

        THE COURT:  You'll be in a better position?

        MR. COLBATH:  We will probably be in a better
position.  I will have better seen a bunch of discovery
by then and I will be in a better position.

        MS. SAYERS-FAY:  You do have -- you have all of
the discovery.

        THE COURT:  Ms. Sayers-Fay, let's not talk to
each other on the record or we're going to go downhill.

        MR. COLBATH:  I'll be in a better position
certainly having -- I meant personally I haven't seen

1    discovery.  I haven't read the reports.

2          THE COURT:  That's all good.  My thought then

3    is let's see where we are August 17th, but we're going

4    to set a firm trial date, and I am inclined to do, I

5    assume there is no objection by the defense, the later

6    week of February, February 19th, so that we don't have

7    that holiday weekend in between, particularly if we were

8    just by random chance to end up with somebody from

9    Unalaska that couldn't go home or whatever.  We usually

10    don't let them go home on the weekends.  It's too risky.

11          MR. COLBATH:  We would start the Tuesday right

12    after?

13          THE COURT:  We would start the Tuesday after

14    the holiday weekend, correct.  I'm hearing both sides

15    are available then.  And right, Tuesday, February 19th

16    at 8:30.

17          And I can set a final pretrial conference now.

18    I suspect I'll see you before then, but might as well.

19    What about if we did three weeks prior to the trial,

20    which I believe would be January 28th at 1:30 p.m.  Does

21    that work?

22          MS. SAYERS-FAY:  Yes.

23          MR. COLBATH:  1:30 p.m. you said?

24          THE COURT:  1:30 p.m. on January 28th, which is

25    a Monday.  So we have our next hearing set for August.

1 And what's the status on speedy trial findings in this

2 case? It's been declared complex, I would assume.

3 There has been a finding of excludable delay?

4       We need to address speedy trial. Under 18

5 U.S.C. 3161 -- is there any disagreement that the case

6 is complex?

7       MS. SAYERS-FAY: No.

8       THE COURT: And there is a need for reasonable

9 time to prepare here certainly. Any disagreement with

10 findings on that basis?

11       MR. COLBATH: No, Your Honor.

12       THE COURT: Then I will find excludable delay

13 through to the date of trial under 18 U.S.C.

14 3161(h)(7)(A) and (B)(ii) and (iv), and find that the

15 ends of justice will be served by granting the

16 continuance that outweigh the best interests of the

17 public and the defendant in a speedy trial because the

18 case is complex and there is a substitution of counsel

19 that needs reasonable time to prepare.

20       And I'm always a little hesitant to not give

21 you a discovery deadline and a motions deadline, but

22 really my intent in not doing that today is to move up

23 the date as much as practicable and certainly not past

24 the dates we have discussed here. I want to make that

25 clear on the record that where I set that next date for

1   the close of discovery will really be based on what has

2   occurred between now and then.

3           And with all of that said, anything further,

4   Ms. Sayers-Fay, for the government?

5           MS. SAYERS-FAY:  Nothing further.  Thank you.

6           THE COURT:  Anything further?

7           MR. COLBATH:  Your Honor, I assume motions

8   deadlines would -- the Court would have the same thought

9   process it does on discovery, and that is when we see

10  where we're at on August 17th, unless the parties don't

11  anticipate a bunch of motions or something changes, the

12  Court would be looking at setting sooner deadlines

13  rather than later?

14          THE COURT:  Correct.  My goal is to get this --

15  just for looking at November and December, it would be

16  -- I do intend to keep that February trial date absent

17  some truly extenuating circumstance, and the holiday

18  season will be dependent on how much you can accomplish

19  between now and then for both sides.

20          So I intend to go forward, and if we're in

21  hearings at the end of the year so be it, but I hope we

22  can avoid that, but that would be the fallback if we're

23  not able to get the work done.

24          MR. COLBATH:  I just wanted to make sure I

25  understood that, which I did, Your Honor.  Thank you.

1   With that, nothing from the defendant.

2           THE COURT:  Very good.  We'll stand in recess

3   at this time.

4           DEPUTY CLERK:  All rise.  This matter is now

5   adjourned.  Court stands in recess until 2:30 p.m.

6           (Proceedings concluded at 2:11 p.m.)

7

8                       CERTIFICATE

9       I, Sonja L. Reeves, Federal Official Court Reporter
    in and for the United States District Court of the
10  District of Alaska, do hereby certify that the foregoing
    transcript is a true and accurate transcript from the
11  original stenographic record in the above-entitled
    matter and that the transcript page format is in
12  conformance with the regulations of the Judicial
    Conference of the United States.

13

14      Dated this 1st day of April, 2020.

15
                        /s/ Sonja L. Reeves
16                      SONJA L. REEVES, RMR-CRR
                        FEDERAL OFFICIAL COURT REPORTER
17

18

19

20

21

22

23

24

25