```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF ALASKA
 2

 3   UNITED STATES OF AMERICA, )
                               )
 4          Plaintiff,         )
                               )
 5   vs.                       )    CASE NO. 3:13-cr-00008-SLG
                               )
 6   JAMES MICHAEL WELLS,      )
                               )
 7          Defendant.         )
     _____)
 8

 9        TRANSCRIPT OF STATUS HEARING/PENDING MOTIONS
       BEFORE THE HONORABLE SHARON L. GLEASON, DISTRICT JUDGE
10                December 20, 2018; 1:02 p.m.
                        Anchorage, Alaska
11

12   FOR THE GOVERNMENT:
            Office of the United States Attorney
13          BY:  KIMBERLY SAYERS-FAY and JONAS M. WALKER
            222 West 7th Avenue, #9
14          Anchorage, Alaska 99513
            (907) 271-5071
15

16   FOR THE DEFENDANT:
            Office of the Federal Public Defender
17          BY:  GARY GEORGE COLBATH
            601 West 5th Avenue, Suite 800
18          Anchorage, Alaska 99501
            (907) 646-3400
19
            Camiel & Chaney, P.S.
20          BY:  PETER A. CAMIEL
            520 Pike Street, Suite 2500
21          Seattle, Washington 98101
            (206) 624-1551
22
     _____
23
                    SONJA L. REEVES, RMR-CRR
24               Federal Official Court Reporter
                    222 West 7th Avenue, #4
25                  Anchorage, Alaska 99513
          Transcript Produced from the Digital Recording
```

1          (Call to Order of the Court at 1:02 p.m.)

2          DEPUTY CLERK:  All rise.  Her Honor, the Court,

3    the United States District Court for the District of

4    Alaska is now in session, the Honorable Sharon L.

5    Gleason presiding.

6          Please be seated.

7          THE COURT:  Good afternoon.  We're on record in

8    *United States versus Wells*.  Ms. Sayers-Fay and

9    Mr. Walker are here.  And Mr. Colbath and Mr. Camiel and

10   Mr. Wells are all here.  I understand we have some

11   individuals listening in on the phone.

12         And I have reviewed the topics that were filed.

13   I have reviewed the motion that's pending.  Sounds like

14   not a whole lot of issues in dispute apart from the

15   pending motion.

16         So Ms. Sayers-Fay, anything to add from your

17   perspective before I hear from defendant?

18         MS. SAYERS-FAY:  No, Your Honor.

19         THE COURT:  Mr. Colbath, anything to add?

20   Well, with regard to experts, is there any issue from

21   your perspective at this point in time, or has that been

22   remedied?

23         MR. COLBATH:  Your Honor, I would provide this

24   I guess status to the Court, or this is what I have to

25   say about that:  Subsequent to my filing, I did receive,

as the government's filing indicated, some additional
materials.  I will tell the Court that I have, within a
day of -- the same day as I've received materials, I
have blanketed my experts and consultants with that
material.

With respect to the three new government
experts, I do not believe that I will be able to on
January 11th provide responses.  I will be able to
likely provide notice of who I have working on it.

THE COURT:  But not the disclosure?  The
identity of the expert, but not the disclosure?

MR. COLBATH:  Yes, likely.  Frankly, two of the
three I don't have an expert.  I have talked to the
people that I have either had as consultants and/or
previously identified experts and have been told by my
folks I can't do that, you will need to talk to somebody
else.

So we're looking for folks, but I'm sure
between now and January 11th, will identify somebody,
but I have zero confidence that I'll have a report to
disclose or a final opinion for me to disclose.

But because they -- what my proposal would be
is because they will not be new experts as far as
anything that I would have done in my case in chief or
raising new issues that the defense is raising, but they

would be experts responding to these new reports we got

from the government, I would propose that I be allowed

to disclose them on my surrebuttal deadline as opposed

to on my normal deadline, which right now is

February 15th, although, you know, that's without sort

of the week lag time that all our deadlines suffered in

the earthquake.

But you know, my thought was truly they are

rebuttal experts to rebut this stuff from the

government.

THE COURT:  Which three topics or experts are

we talking about you rebutting on February 15th?

MR. COLBATH:  So I received expert reports from

experts identified.  One is a new expert related to the

video enhancement and the vehicle identification of

certain security video footage that the government had

previously had.

That was the subject and topic of prior expert

testimony.  Both sides actually had experts that had

done extensive work in that field, but the government

has produced a new expert that was not involved at all

in the case, to my knowledge, in the prior trial or

whatnot.

THE COURT:  But is it a new topic or a new

expert?

1          MR. COLBATH:  It's a new expert who is in

2     addition to -- also noticed are the previous experts on

3     that same topic.  It's a new expert.  It appears to me

4     he has used different software or different material,

5     different program, different something.

6          His preparation in order to arrive at his

7     opinions, the best I can study it so far, may be

8     different than what my expert has done before.  I have

9     that report with my expert right now and I'm waiting to

10    hear back.

11         The expert that I previously had may say,

12    "Well, in addition to what I have already done, I can

13    also address this."  I don't think he'll have a new

14    report addressing the government's new report or he'll

15    have his final conclusions done by January 11th, but I

16    may very well just, to not reinvent the wheel, I may be

17    telling the government, "With regard to your new expert

18    on the video enhancement and vehicle identification we

19    will be using the expert that I already have."

20         So that wouldn't be a true new hire for me.

21    The second report is about a 60-some-page report by an

22    individual whose last name is Mestha, M-e-s-t-h-a.  Just

23    for a short description, he basically did color

24    enhancement of vehicles and video photos and color

25    comparison using what appears to be highly technical

proprietary software. I have already checked with each
of the folks that I thought we already retained that
might be familiar with that or have a chance to review
that and they have told me nothing we can do. And so we
have just this morning begun researching who we might
even find to address that testimony.

THE COURT: All right. And the third?

MR. COLBATH: And the third is a firearms video
expert. The government's expert's name is Wyant,
W-y-a-n-t. And they produced a short demonstrative
video showing the operation of firearms.

I have sent that to my firearm expert, firearm
and tool mark person. He's not available this week, but
they are going to get back to me next week. I know that
their firm does not do like video reenactments or video
enhancements.

I looked at the government's expert's sort of
general field, and they appear to produce things like
this video, and, among other things, do reenactments, do
shooting reconstruction, things like that. My firearms
expert, while it relates to firearms, he's not -- that's
not part of what they do. I may not need that and I
may, but I won't know until next week. And that puts me
10 or 12 days from my disclosure.

So I could certainly identify who I'll be using

1  to counter, but I don't know --

2          THE COURT:  By January 11th?

3          MR. COLBATH:  Yeah, by the normal deadline, I

4  can have a name for the government of who I'll be using

5  and sort of the report is in progress or the opinions

6  are in progress.  I would propose to have the reports

7  ready --

8          THE COURT:  As to these three only is what

9  you're proposing, responsive to these three?

10          MR. COLBATH:  Responsive to these three by the

11  February deadline.  I will file on January 11th the

12  experts that I have already been working with, the ones

13  that I intend to use in my case in chief that I had

14  already been planning on.  We're continuing to prepare

15  and meet the January 11th deadline.

16          THE COURT:  All right.  Thank you.  That was

17  helpful.  Any more on that topic?

18          MR. COLBATH:  Based on those new -- I may need

19  to request some additional material from the government.

20  I may not.  I don't know until I hear from experts that

21  are going to address those things.

22          THE COURT:  Ms. Sayers-Fay, what are your

23  thoughts on this proposal?

24          MS. SAYERS-FAY:  First, I just want to

25  recapitulate the proposal to make sure I have it right.

1          THE COURT:  Go right ahead.

2          MS. SAYERS-FAY:  What I understand Mr. Colbath

3    is proposing is that as to all the experts that are not

4    responsive to these three, that he would produce that in

5    its entirety on January 11th, on the original date.

6          And as to these three, he is proposing to give

7    us the names, to identify them on the January 11th date

8    and provide responsive reports on 2-15.

9          THE COURT:  That's how I understood the

10   proposal.  Mr. Colbath, is that correct?

11         MR. COLBATH:  Yes, Your Honor.

12         MS. SAYERS-FAY:  I think that's fine, Your

13   Honor.  My only concern is that we did have built into

14   the schedule that the government would have three weeks

15   for responding to whatever he gives us, so you know,

16   everything is going to slide back a little bit.  But

17   really this is a very -- these are very few witnesses.

18         Your Honor questioned whether it was a new

19   topic or just a new expert.  It is just a new expert.

20         THE COURT:  Sounds like kind of an amalgamation

21   maybe.

22         MS. SAYERS-FAY:  He did take it further, that

23   is true.  The color expert is truly, that is a new bit.

24   It was explored very superficially in the prior trial,

25   so I would grant him the complexity on that.

1          THE COURT:  So I hear the parties agree then

2    January 11 remains the deadline for defense experts,

3    except for with regard to responsive expert reports as

4    to these three experts by February 15th, but the names

5    of the responsive experts and CVs I assume to be

6    provided by January 11th?  Everybody agrees there?

7          MS. SAYERS-FAY:  Right.

8          MR. COLBATH:  Your Honor, I did have one other

9    expert thing.  As the Court is aware --

10          THE COURT:  Ms. Sayers-Fay, why don't you take

11    a seat and I'll come back to you on that one.  Thank

12    you.

13          MR. COLBATH:  I wanted the Court to be aware,

14    and it's not anything anybody can do anything about, but

15    of course the entire government is under all sorts of

16    financial burdens and freezes and whatnot.  Our office

17    does not have expert money, expenditure from its expert

18    budget, and because of the current state of Washington

19    affairs, we do not have the ability to go get new expert

20    money.

21          We have ability to get resources, and I'm

22    assured by my office that we have the ability to

23    contract with folks, but because of how we have to

24    request money, there can be a slight, a couple week

25    delay in securing money, depending on how much it is and

1   what it's for.

2          THE COURT:  Well, obviously, every deadline is

3   subject to revision in the event of unforeseen

4   circumstances.

5          MR. COLBATH:  Related to that is, as the Court

6   is aware, we did make a request, Mr. Camiel I believe

7   made a request for approval of CJA funds for an expert

8   to be retained.  That matter got referred to the

9   magistrate judge quite some time ago.

10         THE COURT:  I will review that.  Can you give

11  me the approximate date of the request because I don't

12  have access to that unless I make a specific request.

13         MR. CAMIEL:  Probably about three weeks ago.

14         MR. COLBATH:  And because we're not allowed to

15  commit to the expert and have them do anything until we

16  know we have the funds to pay, so we're waiting on that,

17  which, of course, just delays the work.

18         THE COURT:  I will try to make an inquiry

19  today.

20         MR. COLBATH:  I don't think -- today I don't

21  anticipate delays and those are the deadlines I propose.

22  I've put on the record today so that if later we had to

23  bring the issue to the Court we would.

24         THE COURT:  Thank you.  With regard to each of

25  your notices had some agreed upon extensions, let me

1  make sure I'm clear on all of those.

2          Well, Ms. Sayers-Fay, why don't you set out

3  your understanding of those and we'll make sure

4  Mr. Colbath agrees.  I really commend both sides for

5  being able to make these agreements along the way.

6  That's helpful.

7          MS. SAYERS-FAY:  So the first deadline that we

8  extended was the government's deadline that was

9  December 7th.  That was for both Rule 16 disclosures and

10 for expert witness disclosures.  We continued that to

11 12-14.

12         Then we likewise continued the defense

13 disclosures that were to be due on January 4th to

14 January 11th.

15         And likewise then the government's that was set

16 for government disclosure of responsive expert witness

17 reports was set to be on February 1st.  That would go to

18 February 8th.

19         THE COURT:  I read you're going to make every

20 effort --

21         MS. SAYERS-FAY:  Yes.

22         THE COURT:  -- to disclose sooner, both sides.

23         MS. SAYERS-FAY:  Right.  I did say to the

24 extent, especially that we're dealing with -- if there

25 is -- again, we're sort of going over trotted ground,

1  then the government will make every effort to keep to

2  the 2-1 deadline.  But we're now modifying it further

3  because there is going to be these sort of three

4  stragglers perhaps, so we don't have a deadline set for

5  those three stragglers.

6          So if the government complies by the original

7  2-1, then the defense was on 2-15, so that would remain

8  unchanged.

9          THE COURT:  What about with regard to -- I'm

10  not going to call them the stragglers, the three late

11  disclosed here that we're focusing on, if you got the

12  reports -- is that the final step there is the defense

13  reports, or does the government get another bite?

14          MS. SAYERS-FAY:  I think we get another bite.

15          THE COURT:  What timeframe are you proposing

16  there?

17          MS. SAYERS-FAY:  I would suggest three weeks.

18          THE COURT:  From the 15th of -- three weeks

19  from disclosure?

20          MS. SAYERS-FAY:  From disclosure, right.  I

21  would need to check.

22          THE COURT:  Is that what it is now for the

23  others?

24          MS. SAYERS-FAY:  Right now I think we had from

25  the 11th to the 1st.

1          THE COURT:  Roughly.

2          MS. SAYERS-FAY:  But what I had done, Your

3    Honor, was I had let my experts know that that was the

4    timeframe, so please set aside time to respond within

5    that deadline.  And now that we're moving, I can't be

6    sure that I can have their time.

7          THE COURT:  So you'd like three weeks from

8    whenever the defense response is received for you to

9    provide whatever it's called?

10          MS. SAYERS-FAY:  Right.

11          THE COURT:  Surrebuttal.

12          MS. SAYERS-FAY:  Yes, please.

13          THE COURT:  Mr. Colbath, is that agreeable,

14    with regard only to these three experts?

15          MR. COLBATH:  That's fine.

16          THE COURT:  So I'm fine with it being as

17    reflected here in the minute order.  If either side

18    seeks to have a written order to reflect that, is that a

19    request from either side, or sufficiently clear here in

20    the record?  I'll be sure to look at the minutes and

21    make sure they reflect --

22          MS. SAYERS-FAY:  I think if it's in the minute

23    order that's fine.

24          THE COURT:  If the minute order seems

25    inconsistent with either side's recollection of what we

```
 1   stated here, just do a motion to correct minute order
 2   and we'll fix it, but I'll try to review that as well.
 3          Very good.  Then the next topic I wanted to
 4   take up -- any other issues from these notice of issues?
 5   It seemed that was it that I read, apart from this
 6   motion on the CW1.
 7          MS. SAYERS-FAY:  Nothing further from the
 8   government.
 9          THE COURT:  Anything else?
10          MR. COLBATH:  No, Your Honor.
11          THE COURT:  What I want to do is give you my
12   tentative thoughts on how I'm inclined to rule on this
13   and then hear from each side on why that is an
14   acceptable approach or not so much.
15          And here is what I am inclined to do, and I'll
16   hear first from defense since it's their motion.  I am
17   inclined to keep the deadline of February 22nd with
18   regard to CW1 for the disclosure.
19          I am inclined however to do the following, and
20   that is have it in a position that on or before that
21   date the parties had a ruling from the Court as to the
22   scope of the discovery that would be required to be
23   provided, because when I read the briefing on this, and
24   perhaps I'm wrong, there appeared to be the potential of
25   a dispute as to just how much discovery would need to be
```

provided, and it would seem we would -- that discovery

dispute, and sometimes this is easier said than done

when it's more or less a potentially hypothetical, but

easier -- should be resolved prior to the 22nd so that

on that date that discovery is completed rather than us

engaging then in a few weeks of a discussion as to what

discovery should be provided.

So that is my inclination.  To that end, what I

was inclined to do was take the defendant's brief at

Docket 902, which sets out a number of categories, and

direct a due date toward the end of January for the

government to respond as to those, I believe it was 16

-- each of the topics that are laid out there, 24

topics, of discovery that are sought and hear, at least

in generic terms, what the government's position is on

that, get a response from the defendant, and so that on

or before the 22nd when, as I said, am inclined to keep

that date, you would have a ruling from the Court as to

what exactly was required to be provided so we weren't

then sorting that out in the ensuing weeks.

That was my inclination.  Like I say, it's not

a ruling.  I would like to hear from each side.

Mr. Camiel, Mr. Colbath, if you wanted to take

a moment and confer, likewise government counsel, before

I hear from you on this, that's fine, with your team.

1          MR. CAMIEL:  Your Honor, I'm prepared to

2     address --

3          THE COURT:  Sure, let me give the government

4     just a moment to confer, and then I'll hear from you,

5     Mr. Camiel.  And welcome to Anchorage.  Do you like the

6     snow?

7          MR. CAMIEL:  I love it.

8          THE COURT:  Good answer.

9          MR. CAMIEL:  I was in front of Your Honor a

10    couple years ago and we had some.

11         THE COURT:  Did we?  You remember, I don't.

12    It's all one blur, as they say in the snow world.

13         (Pause)

14         THE COURT:  Ready to proceed?  Mr. Camiel, go

15    ahead, please, on this motion.  Just to be clear on the

16    record here, we're talking the motion at 901.  Go ahead,

17    please.

18         MR. CAMIEL:  Your Honor, when the original

19    scheduling order was set, my understanding is that the

20    purpose of that order was to make sure there was orderly

21    progression of discovery and to make sure that both

22    sides were in a position to be prepared to go forward on

23    the trial date of April 29th.

24         And at the time that that order was entered,

25    the defense didn't have any information yet about CW1.

1          THE COURT:  I thought you had limited

2     information.

3          MR. CAMIEL:  It may have been very limited, but

4     the government has now turned over admittedly over 2,500

5     pages of materials.  The problem is that those 2,500

6     pages reveal extensive investigation that still needs to

7     be done.

8          In the government's response to the motion,

9     they point out that they have indicated they have turned

10    over all of the *Jencks*.  So what's not turned over is

11    the *Brady*- and *Giglio*-type material that is critical.

12    It appears from what we see in what's been turned over

13    that this individual has cooperated or attempted to

14    cooperate in different parts of the country.  We don't

15    know how many times and we don't know what the results

16    were.

17          We don't know what he was promised.  We don't

18    know whether he ever testified.  We don't know so much

19    about this person.  And all of the investigation of him

20    is investigation that's going to be taking place in the

21    Lower 48.

22          This person was in we count about 20 different

23    institutions.  And so there is a huge amount of

24    investigation that we anticipate just based on what we

25    have seen so far.  If we're not getting the materials

1  until February 22nd, that's not a lot of time and that

2  jams us.  The reason I brought this motion now is

3  because we don't want to be in a position at the end of

4  March or the beginning of April telling the Court we're

5  moving for a continuance because we haven't been able to

6  conduct this investigation.

7        Now, the government in its response says, well,

8  this witness -- they are not going to feature him in

9  their case in chief, and I'm not quite sure what that

10  means, whether he's going to be called or not, but

11  whether he's in their case in chief or in rebuttal, we

12  have a duty under the Sixth Amendment to conduct a

13  complete and full investigation of this person.

14        This is a whole new type of evidence from what

15  was presented in the first trial, and the importance of

16  this witness can't be understated.  My concern is our

17  investigator, who is down there, isn't going to have the

18  time to do what needs to be done.  The Court certainly

19  has the authority -- because we're not talking about

20  *Jencks* anymore, we're talking about *Giglio* and *Brady* --

21  to advance the production of this material.

22        And as near as I can tell, the reason that the

23  government isn't willing to disclose it now isn't

24  because it's *Jencks*, because they have already turned

25  that over.  It's not because of safety concerns, because

1    we have a pretty rigorous protective order in place.

2    It's purely for strategic reasons to put us at a

3    disadvantage and not give us the time we need to

4    investigate.  They clearly have this type of material or

5    have access to it, and so the only reason I can think of

6    that they are not turning it over is strategic, and

7    there is a matter of fundamental fairness, and not

8    having the defense jammed against a trial date in trying

9    to investigate this new critical witness.

10           So that's why I would urge the Court to advance

11   the date that was in the scheduling order.  I understand

12   it was agreed to at the time, but things have changed

13   based on the new information that we have.

14           THE COURT:  All right.  Thank you, Mr. Camiel.

15           Ms. Sayers-Fay, go ahead.

16           MS. SAYERS-FAY:  Yes, Your Honor.  Just to

17   start, I guess, from the first principles.  When we

18   negotiated the scheduling order, and that was a

19   negotiation that was back and forth with Mr. Colbath, at

20   that time that culminated, as you may recall, on

21   October 2nd.  That was actually after a fair amount of

22   discovery on CW1 had gone over.

23           For example, the entire audio and transcript of

24   CW1's statement had gone over.  I actually had disclosed

25   the name of the cooperator back in the end of July.

1   There was about 400 pages, I believe, of discovery on

2   CW1 that had gone over in the end of July and more on

3   September 12th.  So I don't think the argument that we

4   didn't know really should hold much sway with this

5   Court.

6           The government though -- the other thing I

7   would like to point out is we started producing the

8   *Giglio* material on this cooperator before Your Honor

9   even ordered the scheduling -- set the schedule on

10  October 2nd.

11          We have been producing as things have come in,

12  and we have undertaken a very diligent inquiry.  I can

13  tell you the government's inquiry so far began with BOP,

14  but then we went on and we went on the office of the

15  pardon attorney, we went to another district where he

16  was known to have cooperated, we went to the FBI files

17  historically going back as far as 20 years.

18          We have done a very thorough search.  And the

19  notion that we are just sitting -- the suggestion that

20  we're sitting on materials to hold them back is

21  absolutely untrue.  That is not the case.  What we did

22  in this case was we got as much information as we could

23  early on.  We disclosed it early on.

24          THE COURT:  Are there things that you have now

25  related to CW1 that you have not provided?

1          MS. SAYERS-FAY:  Yes.  I have a small amount of

2    information awaiting redaction from a 19 -- from the

3    original conviction of CW1 that I know that remains to

4    be redacted.  That is all.

5          THE COURT:  That's all?

6          MS. SAYERS-FAY:  That is all.

7          THE COURT:  Do you anticipate going through

8    that?  We have a holiday coming up.

9          MS. SAYERS-FAY:  It won't be until January.  I

10   want to think about that redaction as well, because one

11   of the points that Mr. Camiel has pointed out, and I

12   think it is well taken, is that some of the BOP

13   documents, for example, that we redacted at the behest

14   of BOP because they had very strong concerns about the

15   names and ID numbers of the other prisoners, may inhibit

16   their investigation.

17          THE COURT:  I thought you agreed to look at

18   that with them.

19          MS. SAYERS-FAY:  What we have said is we're

20   going to make a time for them to come over.  They

21   haven't --

22          THE COURT:  This is on page eight of Docket

23   908?

24          MS. SAYERS-FAY:  Right.  We haven't spoken

25   about that yet, but it would be very difficult before

the end of the year, but if they have particular things that they want to look at, they can come over and look at them on the unredacted copy, discover the identities of folks.  That would give Mr. Camiel something to certainly to do between now and the time that the government completes its disclosures, because he does have the vast majority of the disclosures that we anticipate.

THE COURT:  You are agreeable basically at any mutually convenient time, beginning now, to meet with the defense team to review with the AUSA the names and BOP ID numbers of any inmates the defense team believes that may be important?

MS. SAYERS-FAY:  Right.  There is one really very salient matter in which the CW1 cooperated back in 1999 and 2000, so clearly they need to know the name of that matter.  I'm happy to give them the name of that particular matter and that particular defendant so they can sort of mine that for all it's worth.  That's fine.

But the redaction does take time.  We do have, as Mr. Colbath points out, government resources are not infinite and the reality is we depend on one person in the discovery center.

THE COURT:  In terms of the redaction of what you have now from 1990, is that what you said?

```
 1              MS. SAYERS-FAY:  1996.

 2              THE COURT:  Can you give a date within January?

 3              MS. SAYERS-FAY:  Sure.  I would say two weeks

 4    into January we can give that over.  We're not sitting

 5    on things.  What I would say is having prioritized that

 6    early on, we're now at a place where we need to focus on

 7    our case in chief.

 8              And there are sort of dribs and drabs coming

 9    in.  There are a couple things that he points out,

10    sealed pleadings, for example, sealed pleadings, that's

11    something where we don't get them like that.  Efforts

12    are underway.  We had planned them to coincide with our

13    February 22nd deadline, so we're marching forward.

14              But what I'm asking is, given the progress of

15    this case and the fact that the government has I think

16    demonstrated good faith very much so to this point, I

17    don't think it's fair for him to ask the government to

18    accelerate that dramatically.  I think the Court's

19    proposal is really very reasonable.

20              THE COURT:  So to go through the government's

21    position with regard to the Court's proposal of going

22    through Docket 902, which is the memorandum the defense

23    team filed, what are your thoughts on that?

24              MS. SAYERS-FAY:  I think that's fine, if what

25    Your Honor is anticipating, if I understand correctly,
```

is by the end of January the government would go through those 23 points and would say we either -- we don't believe this is relevant, we believe it exists and we're giving it to you, or you believe it exists and we're not giving it to you, some sort of substantive response.

The one concern I have about that is all of the points were put out there. For example, the books records, every book and magazine that CW1 ordered during the time -- first of all, I don't believe that that exists, but there is a burden on defense to articulate the materiality of the request, and in many cases there was no effort done to do so.

So it's really speculative. Maybe he ordered a book title that somehow rises to the level of *Brady* impeachment material. I think that's highly speculative. There is an onus on defendant to go beyond that. So in a few cases that would be the government's anticipated response is we don't believe this is relevant and we don't believe he's articulated a right to it.

In other cases we would say perhaps it exists and we're going to get it, or we don't believe it exists.

THE COURT: Thank you.

Mr. Camiel, last word on this topic. Go ahead,

1   please.

2               MR. CAMIEL:  Your Honor, a couple things.

3   First, as my co-counsel points out, we really couldn't

4   start our investigation of CW1 until the modified

5   protective order, because we couldn't even ask people

6   about him under the original protective order.

7               As to the comments by government counsel, the

8   redacted names of other inmates is one thing, but she

9   speaks of the 1999/2000 cooperation.  Was there a

10  cooperation agreement?  Did he make a statement?  Did he

11  testify?  Why did he think there was a cooperation

12  agreement, because he apparently filed a motion wanting

13  it enforced.  Was there something in writing with him or

14  with counsel?

15              And that's not the only time he cooperated.

16  It's clear from looking through his writings that we did

17  receive that he claims to have cooperated with the

18  government in a case in California; we don't know what

19  case.  We don't know what became of that.  We don't know

20  if there was an agreement.

21              And there are other areas where he claims that

22  he cooperated with the government, so that's not the

23  only time.  But if he has ever testified for the

24  government in any case, that ought to be disclosed.

25  That's the kind of thing we're talking about.

1    If he attempted to cooperate and the government

2    decided he wasn't truthful or he was exaggerating, that

3    ought to be disclosed.  Those are the kinds of things

4    we're talking about that we're worried about having to

5    investigate at the last minute.

6    And so while I appreciate we can go up and look

7    at the BOP records to see the unredacted names of other

8    inmates, that doesn't answer all of the questions we

9    have about the prior cooperation by this person.

10    THE COURT:  All right.  Thank you.

11    I appreciate both sides' arguments.  I am going

12    to do the following:  I'll grant in part the motion at

13    901 with regard to CW1.  And first of all, with regard

14    to the discovery that is already in the government's

15    possession and is awaiting redaction, I am well aware,

16    as one of only two active judges doing criminal cases,

17    there is a large burden on the U.S. attorney's office

18    with regard to redactions in every case.

19    But with regard to the redaction and review of

20    what's currently in the office's possession, I'll order

21    that to be provided by January 18, 2019.  Likewise, I

22    will order that the government respond to each of these,

23    I believe there are 24 points, and to some extent you

24    already have done so today, but to go through each one I

25    believe would be helpful.  I would direct that to be by

1 the same date, January 18.

2          Then I will give defense really like one week,

3 but I realize everybody has got a lot on their plate,

4 but if I received by February 1 even the defense

5 response on this discovery of why it needs to be

6 produced, then I can be sure to get a decision no later

7 than the 22nd of February.

8          I have heard a valid desire on the part of the

9 defense team to get information sooner rather than

10 later.  I have heard a valid reason for the government

11 to say we've got a lot of tasks going on here.  I have

12 not heard reasons that have persuaded me that the

13 February 22nd date to which the parties agreed and the

14 Court ordered earlier in the case for this disclosure is

15 completely unworkable, particularly if the parameters of

16 the disclosure are provided to the parties prior to that

17 date.

18          I don't really think it's necessary, but with

19 regard to what the government agreed to at page eight of

20 Docket 908, will also be required, which is the United

21 States make a digital version of the documents available

22 with regard to the BOP records for the defense team at

23 its request so that further information can be

24 solicited.

25          But with regard to the balance of accelerating

the discovery to early January for CW1, the balance of
the motion is denied.  Like I say, I will then have that
framework to have this issue fully queued up so that on
February 22nd we're not back here trying to sort it out,
but the defense team is ready to go forward.

So questions or clarification regarding that
ruling from the government?

MS. SAYERS-FAY:  No, Your Honor.

THE COURT:  Mr. Camiel, questions or
clarification regarding that ruling?

MR. CAMIEL:  No, Your Honor.

THE COURT:  Very good.  Then that will address
901.  I would like to set another status hearing at the
time both sides believe might be most useful for us to
touch base.

Ms. Sayers-Fay, what's your perspective on
that?  I don't think I have set another one.

MS. SAYERS-FAY:  We're just checking.  We think
you may have, Your Honor.

THE COURT:  Perhaps I have.  I didn't run the
calendar.  The next one is the final pretrial in April,
which is not a good time for us to meet again.  I was
thinking at some point toward the end of January to see
where we are on defense experts and the status of the
CW1 discovery.  Maybe we can iron out some of those

issues after I have reviewed the government's brief and,
more importantly, the defense team has, see where we are
on sorting out some of those.  Even if I don't have --
be helpful if I had the reply though, the response
before we met again too on that.

Mr. Camiel, I gave you two weeks.  Can I
shorten that to one so we can meet at the end of the
month?

MR. CAMIEL:  I think you gave me one week
already.

THE COURT:  Good.  That's what I meant to deep
down.  18th for the government.  25th for the -- really,
I'm going to be unavailable the week of the 28th, so if
the defense had until the 24th, we could meet on the
25th of January would be my suggestion.  I would have
enough time then to take up each side's perspective, and
even if I didn't rule from the bench, at least it would
be fully briefed and we could take up any issues there.

And then your experts, Mr. Colbath, should be
pretty well sorted out, where you are in the process in
terms of complying with the February deadline is what
I'm thinking.  Is that agreeable, Friday, January 25th
at 1:00 p.m.?

MS. SAYERS-FAY:  Yes, Your Honor.

THE COURT:  Mr. Camiel, Mr. Colbath?

1  Mr. Camiel, if it's more convenient for you to be

2  telephonic, that's fine.

3          MR. CAMIEL:  Thank you, Your Honor.

4          MR. COLBATH:  Your Honor, I would also note

5  that that is the deadline for pretrial motions, and so

6  presuming that both parties have filed motions, it's

7  very appropriate we meet that day, I think, to outline a

8  plan for responses and/or hearings required by the

9  motions.

10          THE COURT:  That might be good then to

11  calendar.  If there are going to be evidentiary

12  hearings, we could take that up at that time as well.

13          MR. COLBATH:  That would be my --

14          THE COURT:  Not take up -- not have the

15  evidentiary hearing, schedule the evidentiary hearing.

16          MS. SAYERS-FAY:  My understanding is the

17  deadline is that day, so we would be meeting before the

18  deadline.

19          THE COURT:  Go back and do your final proofing.

20          MS. SAYERS-FAY:  Right, so I don't know that

21  we'll be in a position -- I think what Mr. Colbath was

22  pointing out is after those motions were filed, it would

23  be sensible to meet to anticipate hearings or something,

24  but they won't be on file yet.

25          THE COURT:  Maybe you could give us a heads-up

1  of what you anticipate filing.

2         MR. COLBATH:  I thought I wouldn't wait until

3  the afternoon of the deadline, is my hope, but might not

4  happen, but it's my hope.

5         MS. SAYERS-FAY:  We did have that on record.

6         THE COURT:  Well, in any event, we can take it

7  up as warranted.  I think it's a great idea that at the

8  very least we have a tentative date for a hearing.  If

9  we don't need it, that's easy enough to vacate.

10        MR. COLBATH:  That will work for both of us,

11  Your Honor.

12        THE COURT:  Friday, January 25, 1:00 p.m.  That

13  is what we'll do is have our next status hearing then.

14        Any other topics from the government's

15  perspective today that I have overlooked?

16        MS. SAYERS-FAY:  No, Your Honor.

17        THE COURT:  Mr. Colbath, Mr. Camiel, anything

18  else I have overlooked?

19        MR. CAMIEL:  No, Your Honor.

20        THE COURT:  Very good.  We'll see you in

21  January.  We'll go off record at this time.

22        DEPUTY CLERK:  All rise.  Court stands in

23  recess until 3:00 p.m.

24        (Proceedings concluded at 1:42 p.m.)

25

1              CERTIFICATE

2      I, Sonja L. Reeves, Federal Official Court Reporter
in and for the United States District Court of the
3  District of Alaska, do hereby certify that the foregoing
transcript is a true and accurate transcript from the
4  original stenographic record in the above-entitled
matter and that the transcript page format is in
5  conformance with the regulations of the Judicial
Conference of the United States.

6

7      Dated this 14th day of April, 2020.

8

                         /s/ Sonja L. Reeves
9                       SONJA L. REEVES, RMR-CRR
                         FEDERAL OFFICIAL COURT REPORTER
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25