```
1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA, )
                              )
4           Plaintiff,        )
                              )
5   vs.                       )    CASE NO. 3:13-cr-00008-SLG
                              )
6   JAMES MICHAEL WELLS,      )
                              )
7           Defendant.        )
    _____)
8
```

9                    TRANSCRIPT OF STATUS CONFERENCE
    **BEFORE THE HONORABLE SHARON L. GLEASON, DISTRICT JUDGE**
10                   January 10, 2019; 3:02 p.m.
                         Anchorage, Alaska
11

12  **FOR THE GOVERNMENT:**
           Office of the United States Attorney
13         BY:  STEVEN SKROCKI and CHRISTINA M. SHERMAN
           222 West 7th Avenue, #9
14         Anchorage, Alaska 99513
           (907) 271-5071
15

16  **FOR THE DEFENDANT:**
           Office of the Federal Public Defender
17         BY:  GARY GEORGE COLBATH
           601 West 5th Avenue, Suite 800
18         Anchorage, Alaska 99501
           (907) 646-3400
19
           Camiel & Chaney, P.S.
20         BY:  PETER A. CAMIEL (via speakerphone)
           520 Pike Street, Suite 2500
21         Seattle, Washington 98101
           (206) 624-1551
22

_____

23
                    **SONJA L. REEVES, RMR-CRR**
24              Federal Official Court Reporter
                   222 West 7th Avenue, #4
25                 Anchorage, Alaska 99513
           Transcript Produced from the Digital Recording

1          (Call to Order of the Court at 3:02 p.m.)

2          DEPUTY CLERK:  All rise.  Her Honor, the Court,

3   the United States District Court for the District of

4   Alaska is now in session, the Honorable Sharon L.

5   Gleason presiding.

6          Please be seated.

7          Your Honor, I have Mr. Camiel on the overhead.

8          THE COURT:  Very good.  We're on record in

9   *United States versus Wells*.

10         Mr. Camiel, are you on the line there?

11         MR. CAMIEL:  I am.  Good afternoon, Your Honor.

12         THE COURT:  Good afternoon.  Mr. Skrocki and

13  Ms. Sherman are here for the government.  And

14  Mr. Colbath is here.  Mr. Camiel is on the phone.  Mr.

15  Wells is here.

16         This is my new clerk for criminal cases, Emily

17  Ellison, so you may get calls from her.  And I'm

18  delighted to have her, so she thought she would come in

19  -- well, I asked her to.

20         MR. SKROCKI:  Is she getting paid, Your Honor,

21  is the question?

22         THE COURT:  Well, through next Friday I believe

23  we're all getting paid, and thereafter there is a big

24  question mark.

25         Go right ahead, Mr. Skrocki.

1      MR. SKROCKI:  Thank you, Judge.  I appreciate

2  the Court putting this on the calendar.  I have had some

3  discussions with defense counsel, and I wanted just to

4  give the Court the landscape of a couple of things with

5  respect to, of course, there's new trial counsel on the

6  docket here, so it's Ms. Sherman and myself.

7      We're dedicated to keeping the trial date

8  moving forward.  I have a couple of things I wanted to

9  advise the Court about in respect to that.  First of

10  all, we have advised Mr. Colbath about two weeks ago

11  we're not going to call (name redacted) in our case in

12  chief or our rebuttal case.

13      THE COURT:  Is (name redacted) the confidential

14  informant?

15      MR. SKROCKI:  CW1, correct, and that would be

16  referencing Docket 902.  We believe that would moot the

17  Court's orders and the deadlines that are consistent

18  with that order.  We do have other --

19      THE COURT:  Which specific deadlines are you

20  talking about?

21      MR. SKROCKI:  There was, I believe, 22

22  different responses in that docket that we were required

23  to comply with.

24      THE COURT:  All right.  Yes.  Okay.  I'm with

25  you now.

```
 1        MR. SKROCKI:  Thank you.  And we also have some
 2   additional material in office with respect to that
 3   witness.  We will be examining that for any Brady
 4   material, and we'll turn that over timely with respect
 5   to that issue.
 6        We advised Mr. Colbath about that verbally and
 7   in writing two weeks ago, and that's the point I wanted
 8   to make with that case.  I think that will take a lot
 9   off the plate in terms of Mr. Colbath's work and some
10   other things.
11        With respect to witness Meloy, we're all aware
12   of the Ninth Circuit's ruling, so Mr. Meloy will not be
13   called in our case in chief.  We can make that
14   representation.  The trial team at this stage is not
15   interested in calling Mr. Meloy in our rebuttal case,
16   but that's an office internal discussion that's still
17   ongoing.  We'll have an answer for the Court, if the
18   Court needs an answer, to Mr. Colbath in ten days.
19        THE COURT:  All right.  I suppose Mr. Colbath
20   is more interested at this point than me in getting that
21   information, but that's fine.  So you may call Mr. Meloy
22   in rebuttal, but not -- you can let the defense team
23   know in ten days, but you do not plan to call him
24   regardless in your case in chief?
25        MR. SKROCKI:  Correct.  There is another
```

witness. Why this is sort of important, there is a

timing aspect because Mr. Colbath and I talked about the

shutdown, the pending shutdown and things of that

nature, so these I think will help the Court in that

context.

We have another expert that I have spoken to

Mr. Colbath about who's done some color analysis. It's

very, very technical. We are examining whether we need

to call him or not in our case in chief and/or rebuttal.

I'll have an answer to Mr. Colbath on that in ten days.

THE COURT: What's that individual's name?

MR. SKROCKI: Lalit, L-a-l-i-t, Mestha,

M-e-s-t-h-a.

THE COURT: Okay.

MR. SKROCKI: And again, we have had some

discussions on this witness. His testimony is very,

very technical. His software is proprietary and creates

some problems, so we're evaluating whether it's

necessary.

THE COURT: So you had something in your motion

for this conference about a motion. I'm trying to

remember what you said last week when you asked for

this. Are there scheduling changes you're seeking?

MR. SKROCKI: No, Your Honor.

THE COURT: So ten days from today you're going

to let the defense, the Court know about Mr. Mestha and Mr. Meloy.

MR. SKROCKI:  Correct.

THE COURT:  And Mr. Mestha would be case in chief, I assume?

MR. SKROCKI:  Yes.  In terms of scheduling too, and this is workload for the attorneys, not so much for Your Honor, we have advised Mr. Colbath that we are producing rough notes of agent interviews that were not produced in the last case, primarily because they were supporting recorded interviews of specific witnesses.

Ms. Sherman and I have done an A to Z -- or actually it's A to W now, we're almost to Z, review of the entire database of our case, so we have elected to turn those notes over.  There are a lot of notes, but they again are just notes, the background of recorded interviews, so we don't believe it will be too much a lift for the defense team.

THE COURT:  It's not additional interviews, it's just more regarding ones --

MR. SKROCKI:  Correct.  Again, these are recorded interviews between an agent and a specific witness, so those are the rough notes in support of that.

Mr. Colbath has requested a number of things

1  from us in writing that are due on the 18th.  We will

2  comply with those requests concerning new experts, newly

3  discovered or newly retained experts for this case, not

4  necessarily from the first case.

5          We will advise the Court, and I just advised

6  Mr. Colbath, that we were also doing, as we should,

7  another e-mail review of specific government witnesses

8  from the first trial up to the present day, and that may

9  produce some additional discovery.

10         I think that covers it, except lastly we will

11  have a third interview who will enter an appearance

12  soon.  Her name is Kelley Stevens.  She's a lieutenant

13  commander with the Coast Guard, as a special assistant

14  U.S. attorney.

15         THE COURT:  Mr. Skrocki, thank you.

16  Mr. Colbath, am I going to hear from you or Mr. Camiel?

17         MR. COLBATH:  Me probably at this point.  Thank

18  you, Your Honor.  I don't really have a lot to add to

19  the issues that Mr. Skrocki identified, given that sort

20  of the purpose of the hearing was for him to relay the

21  change in counsel and those things to the Court.

22         What I would like to do is, if I could, while

23  we're here and because we're ahead of -- the next

24  scheduled hearing we had was January 25th.  I just

25  wanted to alert everybody to a few issues, ongoing

```
 1    things, update the Court.  Some of these I have talked
 2    to Mr. Skrocki about, some of them I have not.  I will
 3    tell the Court that my expectation is while we're all
 4    here we're going to meet informally after this hearing
 5    and try and talk through further or work through some of
 6    these things, some of the things he's talked about, some
 7    other things.
 8              But given this is a chance for me to make a
 9    record sooner rather than later, I want to update the
10    Court.
11              As far as discovery issues, based on the
12    government's -- based on the government's recommendation
13    that -- representation that CW1 will not be called in
14    the case, we are going to abandon the motions and the
15    motions work that we had pending to that, the discovery
16    -- we had, I believe, unresolved outstanding discovery
17    motions or requests related to that.
18              THE COURT:  I'm showing tomorrow was the
19    discovery motion deadline for recent material.
20              MR. COLBATH:  We are not going to file those
21    things, nor work any further on that in light of the
22    government's representation, so those issues and filings
23    will go away.
24              We do have, as Mr. Skrocki said, some other
25    outstanding government -- or discovery requests from the
```

```
 1   government about some expert issues and some other
 2   things that aren't really ripe for decision yet or for a
 3   motion yet, so we will work forward on those.
 4           As far as experts go, I will be providing in
 5   the morning to government counsel a letter outlining or
 6   disclosing nine expert witnesses that the defense is
 7   going to notice.  I think only two of them are new
 8   people, but even though they are new to the case being
 9   they were not experts in the original trial, they are
10   not experts on new topics.  They are related to -- they
11   are rebuttal to government experts that are previous.
12           THE COURT:  When you say you're disclosing,
13   what's the status of the reports?
14           MR. COLBATH:  I have reports from, I believe,
15   seven of the nine.
16           THE COURT:  All right.
17           MR. COLBATH:  And those will be included -- I
18   have a summary of everybody's testimony.  I have
19   everybody's CV.  I have reports, I think, I'm fairly
20   confident, seven out of nine.
21           THE COURT:  When do you anticipate the other
22   two?
23           MR. COLBATH:  Well, I'm getting to that.  My
24   letter also identifies, consistent with what was said at
25   the last hearing, I have two potential -- the government
```

in their disclosure back on December 14th had three new

people that were just completely new to us, one of which

was that color expert Mr. Skrocki talked about.

One of my existing experts is working on

responding to one of their new experts. I don't have

his new responsive material. He hasn't even started

responding on it yet because we need the government --

we need the things underlying the government expert

evaluation, which I understand I'm going to be getting

shortly, for my expert to even begin work.

So when his report will be available, I do not

know, but they have his initial report. He testified at

the last trial. So who he is and what he does and his

general opinions are not a secret at all. It's just how

he's going to respond to their new expert is the only

thing that's left open.

THE COURT: Is this related to the color expert

or a different expert?

MR. COLBATH: Different expert. I am just in

the process of speaking with three different potential

people to address the color expert, so who I might

choose and when their report might be available, I can't

say.

And then they had a new firearms-type person,

and I have not been able to identify yet a witness who

1  -- an expert who would respond to that. Here is the
2  problem: Since December 18th, I received the
3  government's materials December 14th, and since that
4  same week, I have been unable at my office to allocate
5  funds. I have been unable to going forward commit
6  funds.

7  My office will not let me at this point sign an
8  expert contract with anybody. They will not let me
9  supplement an existing contract. As the Court is aware,
10 based on the shutdown, the federal defender's office
11 hands are 100 percent tied on what we can do financially
12 going forward. They are deactivating contracts as quick
13 as they can that are deemed nonessential. That hasn't
14 happened in Mr. Wells case, but certainly spending money
15 going forward I am not allowed to do.

16 So on any of my experts, I can't at this point,
17 if they were not already paid to hold the trial date, I
18 can't even keep them under contract to do that, or issue
19 a new contract.

20 THE COURT: What about through the CJA?

21 MR. COLBATH: We don't know. We're exploring
22 that. Mr. Johnson has been in -- Mr. Johnson has been
23 in the works of doing an alternative case budget, has
24 talked with folks in Washington, DC. We're exploring
25 the source of alternative funds as quickly and as best

1    we can.

2            And we have not received an answer I guess one

3    way or the other to that, but the shutdown has us on an

4    expert standstill.  And so I'm doing the best to the

5    extent that I know who folks are, that I have their CV,

6    that I can summarize and provide the general summary of

7    what they would be testifying to and what they would be

8    looking at, which is consistent with the disclosures

9    under Rule 702 and Rule 16.

10           I'm going to give that information to the

11   government.  It's just not going to be expert's report

12   or the details on things until I can pay the expert to

13   give me that.  Frankly, what I will say is when all of

14   that becomes possible and becomes available, it will

15   likely be a circumstance where I get an expert report on

16   one day and the government sees it the next day.

17           I mean they will see it as soon as I see it, so

18   that will sort of be an ongoing disclosure.

19           THE COURT:  It's somewhat out of your control.

20           MR. COLBATH:  Right.  That leads me to sort of

21   the broader idea that the shutdown also has our

22   investigative team and our preparation team -- I mean at

23   this point, the office isn't allowing travel.  We can't

24   go outside the municipality of Anchorage, other than if

25   I have to travel to see a client in an essential matter

or make a court appearance. The attorney's travel is limited. The investigator's travel has been pretty much off at this point. Anything we're doing going forward, we just have a very bogged-down workflow.

THE COURT: What travel -- you don't need to say on the record here. That's fine.

MR. COLBATH: For example, of I would say the 100-plus witnesses that testified in the first trial, if 80 percent of them were in or from Alaska at that time, at this point, 80 percent or more of them are not in Alaska at this point.

So to re-interview somebody, to serve a subpoena, to do much of the investigation or the location and subpoenaing of witnesses that we need to do, folks are not here. That's requiring outside the office resources or travel by inside the office resources.

Again, we're exploring whether Mr. Camiel and the investigator that's working with him can do some of that, but, again, he has to submit a travel request or additional investigator travel requests, and those have to go through. And everything is just in flux with the shutdown. And so I just wanted that to be known.

Starting with the earthquake, deadlines started to slide, and no pun intended, by a couple weeks, and we

have just -- we have been under the adverse effects of
that flowing right into the shutdown since.  And so we
are struggling to get through things.

          Mr. Wells is, as the Court is well aware, been
confined throughout this process at the jail, and while
he's had the discovery that we have got from the
government, he's only able to go through it a few hours
a week, because he's restricted to -- there is one
computer that federal inmates can use to look at.  He's
very limited in the number of actual pieces of paper he
can have at the jail, so we can't take in bankers boxes
of discovery, so he has to do it electronically.

          There is one computer that federal inmates can
look at discovery on, and he has to -- so he has to
share that with anybody else who needs to review their
discovery.  And then it's done outside of law library
hours, because he has to be alone when he's reviewing
his discovery by their policy, which means during the
day when the law library is open, people come and go,
people have resources and access to that, and so you're
not allowed to review discovery.

          It's evening hours and some weekend hours that
he has to each time put in a request for, and if his
request is granted, he gets to go down and work for
whatever period of time he has.  And so we're running

into lots of problems with him being able to look at
things that we need him to look at or that he needs to
look at or wants to look at to be able to work with us.

            And really for about the last two months, we
have spent a bunch of our time with me or one of my
investigators or another staff member hand-carrying CW1
stuff and sitting with Mr. Wells to review it, because
we weren't allowed to leave it with him or provide a
disk where he could review it after hours.  So our
discovery review and his discovery review got
sidetracked for the better part of 60 days or more with
reviewing that discovery because we were having to work
on investigating that, and we have had a lot motions and
other issues with that.

            So we have some real challenges there that are
ongoing.  I'm not asking the Court to do anything about
it, but I may be soon, and so I wanted that I guess to
be known.

            THE COURT:  So there is a motion deadline.  I'm
trying to figure that out here.

            MR. COLBATH:  I think the general regular
motion deadline is January 25th.

            THE COURT:  That's what I see.  And so are you
on track there?

            MR. COLBATH:  I don't know.  Certainly

1  potentially not as it respects expert witnesses.

2          THE COURT:  I understand as to experts, but as

3  to any other motions?

4          MR. COLBATH:  I have several substantive

5  motions drafted or in draft form at this point, not

6  several, but a number, and will certainly be filing some

7  before the 25th.

8          I will end my comments, and I'm not sure if

9  Mr. Camiel had anything to add for the record, but I

10  will end my comments with this:  Given the shutdown,

11  given the problems that we have had, given the way there

12  is all kinds of other delays and issues that I won't go

13  into that have got us to this point that if I need to I

14  will, I'm going to talk with new government counsel here

15  after this hearing and over the next couple of days and

16  make a final decision.

17          I want the Court to know I may file a motion to

18  continue next week or ask for a hearing where we file on

19  a motion to continue next week.  Maybe I can talk to

20  Mr. Skrocki, and with some of the representations he's

21  made and some of the things the government is saying

22  that we can avoid that.  I'm a little also reluctant to

23  pull that trigger right now knowing that if the

24  government shutdown ended tomorrow, that would largely

25  impact that.  By the same token, if I'm sitting at

January 25th and I'm still in the posture I am today, if
we get outside of the month of January, I will
100 percent be needing a continuance and requesting it,
whether it's granted or not, but I'll be requesting it.

I would like to make that sooner, that decision
sooner rather than later for everybody's benefit, and
I'm not asking to even really discuss it further now. I
would like more time to talk with Mr. Skrocki, because
this counsel, this team of counsel has just gotten
involved and they are already making pretty productive
changes.

The problem is a bunch of it's out of their
control and a bunch of it doesn't change past government
decisions that have affected us. That's my piece for
the record at this point. As I say, Mr. Camiel and I
did not -- I'll leave for Mr. Camiel if I missed
anything relative to CW1 or if there was anything
outstanding that I wasn't aware of that needs to be
withdrawn or not worried about by the Court.

THE COURT: When would you find it most useful
to have another hearing in this case?

MR. COLBATH: What I will do is -- well, does
the Court -- right now, we're on your calendar for the
25th?

THE COURT: Right. I need to change that

1    hearing, but I could do it the 24th.

2           MR. COLBATH:  That would help me as well.

3    Judge Beistline would like me up in Fairbanks on the

4    25th, and so I was going to appear by telephone anyway.

5    Rather than move us by just one day --

6           THE COURT:  I'm going to ask Mr. Skrocki as

7    well.  If the two of you want to confer and then you can

8    do a notice.  If you're going to talk after this

9    hearing, you could confer and just do a notice of when

10   you requested it or call my office.

11          MR. COLBATH:  Does the Court have availability

12   either on the 17th, which would be next Thursday, or on

13   the 22nd?

14          THE COURT:  Yes, I can make either of those

15   work.  22nd is probably better.

16          MR. COLBATH:  All right.  What I would propose

17   is to let Mr. Skrocki and I visit, and then I will -- I

18   will file some sort of motion asking to reschedule the

19   hearing from the 25th to one of those dates, likely the

20   22nd.

21          THE COURT:  All right.

22          MR. COLBATH:  And I will be in a position to

23   tell the Court, I think, if I'm going to request a

24   continuance, I'll file it ahead of that hearing.

25          THE COURT:  Hopefully, we'll have some

1   resolution of our budgeting status.

2          MR. COLBATH:  That would be my extreme

3   preference for personal and professional reasons, and

4   for Mr. Wells' behalf, but on all fronts that would be a

5   great thing.

6          THE COURT:  Mr. Camiel, anything to add?

7          MR. CAMIEL:  No, Your Honor.  Thank you.

8          THE COURT:  Looking at this -- Mr. Colbath,

9   what I would like you and Mr. Skrocki to be able to

10  address at our next hearing would be the deadline for

11  expert, any motions regarding experts, because that is

12  not -- as I see it in this schedule at Docket 881-1 is

13  not addressed, meaning I think it was envisioned to be

14  encompassed within the January 25th motion deadline,

15  which does not seem practical.

16          So I'm saying let's take up at the next hearing

17  the deadline for any motions by either side with regard

18  to experts, and it could be staggered, depending on

19  where you are with experts at that point, but we'll take

20  that up.

21          MR. COLBATH:  That would make sense.

22          THE COURT:  Anything else we should strive to

23  take up at that hearing?  Sounds like discovery disputes

24  are by and large resolved at this point, and we'll take

25  up anything that we need to, but I'm wondering if I

1    should just tentatively put it on for the 22nd and then

2    if you need to change it, we could do that.

3            MR. SKROCKI:  Please.

4            THE COURT:  How about 1:30 p.m., January 22nd?

5            MR. SKROCKI:  Thank you.

6            THE COURT:  Mr. Colbath, does that work for

7    your schedule, Tuesday, January 22nd at 1:30 p.m.?

8            MR. COLBATH:  It does.  Your Honor, because

9    staff is short and -- well, and just work between now,

10   that's not very far away, and work is at a premium,

11   could I request that the Court authorize as of today --

12   typically, one or more the victims' families seek to

13   listen by phone.  Mr. Wells' wife seeks to listen by

14   phone.  And then depending on counsel's travel

15   availability, Ms. Stevens may have to travel and

16   Mr. Camiel may have to travel.  And so could the Court

17   authorize those necessary folks that might need to

18   appear by telephone to appear by phone without having to

19   file -- everybody files their separate unopposed motion.

20           THE COURT:  Yes.  I assume no objection?

21           MR. SKROCKI:  Of course not.

22           THE COURT:  Then telephonic appearances of

23   anybody that seeks to be telephonic will be permitted

24   for the January 22nd hearing at 1:30.  We'll put in

25   today's minutes that phone number.  As long as people

```
 1   call five minutes before, that's all you need.  As long
 2   as you tell anyone to call five minutes before, we'll
 3   get them on the overhead.
 4          MR. COLBATH:  It would be folks who have all
 5   done that before and are familiar.
 6          THE COURT:  All right.
 7          MR. SKROCKI:  One quick thing, Your Honor.
 8          THE COURT:  Sure.
 9          MR. SKROCKI:  Your Honor, inadvertently at the
10   beginning of my talk I named CW1 by name, so if I could
11   just request the minutes refer to as CW1.
12          THE COURT:  Deleted.  Thank you.
13          Anything else, Mr. Colbath?  I assume no
14   objection to that?
15          MR. COLBATH:  No, that would be consistent with
16   the Court's past orders for sure.
17          THE COURT:  Anything else from the defense
18   today?
19          MR. COLBATH:  No.
20          THE COURT:  Then I will see you next in this
21   case January 22nd at 1:30 p.m., and we'll go off record
22   at this time.
23          DEPUTY CLERK:  All rise.  This matter is now
24   adjourned.  Court stands in recess until call of the
25   gavel.
```

1          (Proceedings concluded at 3:28 p.m.)

2

3                      CERTIFICATE

4      I, Sonja L. Reeves, Federal Official Court Reporter
   in and for the United States District Court of the
5  District of Alaska, do hereby certify that the foregoing
   transcript is a true and accurate transcript from the
6  original stenographic record in the above-entitled
   matter and that the transcript page format is in
7  conformance with the regulations of the Judicial
   Conference of the United States.

8
       Dated this 14th day of April, 2020.
9

10
                         /s/ Sonja L. Reeves
11                       SONJA L. REEVES, RMR-CRR
                         FEDERAL OFFICIAL COURT REPORTER
12

13

14

15

16

17

18

19

20

21

22

23

24

25