<pre>
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF ALASKA
 2

 3   UNITED STATES OF AMERICA, )
                              )
 4         Plaintiff,         )
                              )
 5   vs.                      )   CASE NO. 3:13-cr-00008-SLG
                              )
 6   JAMES MICHAEL WELLS,     )
                              )
 7         Defendant.         )
     _____)
 8

 9         PARTIAL TRANSCRIPT OF TRIAL BY JURY - DAY 1
                      (Public Proceedings)
10     BEFORE THE HONORABLE SHARON L. GLEASON, DISTRICT JUDGE
                   September 9, 2019; 8:38 a.m.
11                      Anchorage, Alaska

12   FOR THE GOVERNMENT:
            Office of the United States Attorney
13          BY:  STEVEN SKROCKI
            BY:  CHRISTINA M. SHERMAN
14          BY:  KELLEY L. STEVENS
            222 West 7th Avenue, #9
15          Anchorage, Alaska 99513
            (907) 271-5071
16

17   FOR THE DEFENDANT:
            Office of the Federal Public Defender
18          BY:  GARY GEORGE COLBATH
            601 West 5th Avenue, Suite 800
19          Anchorage, Alaska 99501
            (907) 646-3400

20          Camiel & Chaney, P.S.
            BY:  PETER A. CAMIEL
21          520 Pike Street, Suite 2500
            Seattle, Washington 98101
22          (206) 624-1551

23   _____

              SONJA L. REEVES, RMR-CRR
24           Federal Official Court Reporter
                222 West 7th Avenue, #4
25               Anchorage, Alaska 99513
        Transcript Produced from the Stenographic Record
</pre>

```
1              (Call to Order of the Court at 8:38 a.m.)

2              (Prospective jurors absent)

3              DEPUTY CLERK:  All rise.  Her Honor, the Court,

4    the United States District Court for the District of

5    Alaska is now in session, the Honorable Sharon L.

6    Gleason presiding.

7              Please be seated.

8              THE COURT:  Good morning.  We're on record in

9    United States versus Wells, and here on the first day of

10   trial.  And Mr. Skrocki and his team is here.  And

11   Mr. Colbath and his team, Mr. Wells.

12             So a number of issues I have to take up and

13   then I can hear from the parties as well.

14             The first is with regard to the Western

15   Washington video, as I understand it, both sides agree

16   to play that to the jury this morning or to the panel;

17   is that correct?

18             MR. SKROCKI:  That's correct.

19             THE COURT:  You have seen it?

20             MR. SKROCKI:  I have.

21             THE COURT:  Mr. Colbath?

22             MR. COLBATH:  Us as well, Your Honor.

23             THE COURT:  Very good.  And then the e-mails I

24   saw said that the government's consent was, I'm using my

25   language, but basically conditioned on not discussing it
```

1  throughout the trial.  Is that the --

2          MR. SKROCKI:  Yes, Your Honor.

3          THE COURT:  Not in opening or closing or

4  witnesses or at all?

5          MR. SKROCKI:  Yes, it doesn't seem necessary to

6  us.

7          THE COURT:  Mr. Colbath, is that agreeable?

8          MR. COLBATH:  Fine.

9          THE COURT:  And then I would ask any experts in

10 particular that might seek to address that to be

11 instructed by their counsel not to do so.

12          All right.  Very good.  You can tell our jury

13 clerk that, if you would, please, that they can watch

14 the video.  So we're good there.

15          All right.  What I would like to do during the

16 jury selection is have spectators either in the very

17 last row on the left or on the right of the two sides.

18 It doesn't need to be now, but that's very good.

19          And if it extends into the one row up, that's

20 fine on either side, but I would ask that before we

21 bring in the panel that we have people in those places

22 only.  And I would direct all the spectators not to

23 communicate in any manner with the panel at all.

24          Questions in the back from anyone about all of

25 that?  No?  I don't see that.  All right.  Very good.

1          Then let's see.  No particular order here, the
2    government's witnesses, I saw the list that you had.  My
3    thought, Mr. Skrocki, is to put that list on the DEPS
4    and then have you read the names.  Is that agreeable?
5          MR. SKROCKI:  Totally fine, Judge.
6          THE COURT:  Then we'll do that at the
7    appropriate place in the voir dire.  And then are there
8    any defense witnesses we could identify now so that we
9    don't run into a problem later?  You can ponder that and
10   discuss it.
11         MR. COLBATH:  Yes, Your Honor.  We'll likely do
12   the same thing.
13         THE COURT:  All right.  Well, we're coming up
14   on that time.
15         MR. COLBATH:  With at least a fairly --
16         THE COURT:  It would be helpful, I think, so
17   that we don't have a person knowing down the road.
18         MR. COLBATH:  Sure.
19         THE COURT:  Very good.  Then there was a
20   request I saw in the defense trial brief to have up to
21   two hours of voir dire by the attorneys, and I don't
22   intend to permit that.  I know, as I indicated at the
23   pretrial where I had not yet read the trial briefs,
24   15 minutes per side and then a party can make
25   application if that's insufficient, but I would observe

1    that it's been my practice in the past here in federal

2    court and has been sufficient in other comparable cases.

3            So I will make that observation.  In the event

4    that there are additional questions, it's likely too

5    that the Court would simply ask them after communicating

6    with the parties.

7            But I will go through the voir dire that was

8    proposed by each side and tell you what I have

9    incorporated and what I haven't here in just a bit.

10           What's the status, Mr. Colbath, of the alibi

11   notices that were filed at 106 and 118, quite some time

12   ago?

13           MR. COLBATH:  I'm not sure, I guess, what the

14   Court means as far as the status goes.

15           THE COURT:  The status meaning they're in

16   effect.

17           MR. COLBATH:  Absolutely.

18           THE COURT:  And they can be referred to by

19   either side, because there is a rule that allows for

20   them to be withdrawn.  My question, rather poorly

21   worded, was:  Are those notices still in full force?

22           MR. COLBATH:  Yes, ma'am.

23           THE COURT:  Does that address the government's

24   perspective then, that they can be, from the Court's

25   perspective, referred to and relied on unless and until

1  withdrawn, and then there is case law on the timing of

2  withdraw we don't need to address.

3       MR. SKROCKI:  That's correct, Your Honor.

4  We're fine.

5       THE COURT:  Very good.  That's fine.

6       Then on the statement of the case, which the

7  parties reached an agreement on, and then I disagreed,

8  I'm glad that there was that agreement.

9       I have -- let me find it.  I do intend, just to

10  put you on notice here, to reorder the statement, and

11  specifically to read the second sentence first that

12  talks about the date and location of the homicides and

13  then read the charges and the statutes, because I

14  otherwise am concerned that people might not be

15  listening after I start citing a bunch of U.S. code

16  citations.  And so I do intend to reorder that.

17       Questions about that, Mr. Skrocki?

18       MR. SKROCKI:  No, Your Honor.

19       THE COURT:  Mr. Colbath?

20       MR. COLBATH:  No, Your Honor.

21       THE COURT:  Very good.  Then that is what I

22  will do.

23       Just so I'm clear, the pronunciation, it's Mr.

24  Belisle; is that correct?

25       MR. SKROCKI:  Yes, Your Honor.

1      THE COURT:  Thank you.  And then when we had

2  the final pretrial, Mr. Colbath, there was a pending

3  question as to the extent to which Mr. Wells would seek

4  to participate in sidebars.

5      MR. COLBATH:  Your Honor, with respect to the

6  voir dire process, Mr. Wells would like to see all of

7  the voir dire or hear all of that, so to the extent that

8  we have to have a sidebar, an individual inquiry,

9  Mr. Wells would like to be part of that.

10      Once we move to trial, Mr. Wells will remain at

11  counsel table.  And we anticipated whoever, from our

12  side at least, whoever was involved in the matter, we'll

13  just handle it with the attorneys.

14      THE COURT:  So yes, in voir dire.  And my law

15  clerk -- you could come up here if you wanted, Emily,

16  because I'm going to have her in the jury box -- sorry,

17  in the witness stand.  She's going to sit in the witness

18  box and try to keep track of which questions each juror

19  seeks to have taken up, and that's why I'm going to have

20  her here so she can have a better ability to do that.

21      And then we'll go through -- so if, for

22  example, Juror No. 1 -- and I will try to remember to

23  say that you're using their numbers at my request -- but

24  Juror No. 1 has issues about vacation and medical issues

25  and law enforcement or whatever, we'll try to do all of

1    those topics with that person at one time.

2         So we'll keep a running list, but certainly

3    would hope that counsel would as well.

4         All right.  Then I have got the motions that

5    were filed, and the plan that was shared with Emily to

6    have simply jury selection today, take up any motions at

7    the end of the day and then start with openings

8    tomorrow.  I was thinking the same thing, so that will

9    be fine.

10         And I signed the order, I don't know if it's

11    been docketed yet, on the conventional filing so I can

12    get the recording of the interview, and that I'll try to

13    get to before then.

14         I don't know.  I suspect both sides have

15    thought about this.  I thought about it after our

16    pretrial, that it would seem that it may well be

17    appropriate to excuse for cause anyone -- well, I guess

18    I would be interested in the parties' perspective on if

19    an individual was aware of the fact of the homicides,

20    that I would intend to explore with regard to the

21    ability to render a fair verdict based on the evidence

22    here, but if the individual was aware that there had

23    been a guilty verdict and that we're here on retrial,

24    what are the government's thoughts on that?

25         MR. SKROCKI:  Totally appropriate, yes, please.

```
 1          THE COURT:  Excuse for cause?
 2          MR. SKROCKI:  Yes, we agree.
 3          THE COURT:  And then explore people -- I was
 4    also wondering if there are people from Kodiak in this
 5    group that is amassing that we could simply excuse them
 6    all and we haven't.
 7          MR. SKROCKI:  Just a couple from Kodiak.
 8          THE COURT:  Right, you had the list.
 9          MR. SKROCKI:  Yes, Your Honor.  Only two.
10    Kodiak, if they are aware of it, or just explore it with
11    them, we agree with your first part.  Certainly if they
12    know about the guilty verdict, they should be excused
13    for cause, but further inquiry as to what you may know
14    about that is appropriate.
15          THE COURT:  Mr. Colbath?
16          MR. COLBATH:  Your Honor, we not only agree
17    that it would be certainly appropriate and required if
18    they knew that there was a guilty verdict.  It's kind of
19    our position that if they know there was a prior trial
20    that they have to be excused, because I could envision,
21    even if they said, "Well, I heard there was a trial, I
22    know there was a trial, but I don't know anything more
23    than that," then they end up on our panel and they get
24    back and they share that information with the rest of
25    the folks, then they are all wondering, well, what
```

1   happened in the last trial or why was the trial or why

2   did they not tell us that during this trial.  It affects

3   the rest of the --

4           THE COURT:  So they were aware of a --

5           MR. COLBATH:  If they know there was a prior

6   trial, it's our position that that's why we're going out

7   of our way to not say "at the prior trial" during the

8   trial.

9           THE COURT:  Mr. Skrocki, what's the

10  government's view on that?  I hadn't really pondered

11  that possibility that someone is aware of the trial but

12  not the verdict.

13          MR. SKROCKI:  I think we should take this one

14  step at a time and do it case by case if someone has

15  heard about it.  I think given the age of the case and

16  prior proceeding, some people might get it, that we're

17  back for one reason or another.

18          THE COURT:  In any event, as of now, I will

19  excuse for cause anyone that is aware of the fact there

20  was a guilty verdict, and then we'll take up anybody

21  else with some knowledge of the case or the trial, prior

22  trial, on a case-by-case basis.

23          All right.  Then those were my initial topics

24  here.  And then I can go through the voir dire and then

25  hear from each side.

1          With regard to the proposed voir dire of the

2     government, I have by and large incorporated everything

3     in your voir dire, except for 17 and 18 of your -- I'm

4     referring here to Docket 1140.  But I don't have any

5     concern, if you sought to inquire about those topics

6     during your 15 minutes that's great, that's fine.  I

7     don't have an opinion, but they are fine if you seek to

8     do so. But the others I think you will see are by and

9     large incorporated into the questions that I'll be

10    posing.

11          With regard to the defense, I had more

12    concerns.  I think my initial observation would be on

13    the burden of proof.  Asking individuals whether or not

14    they agree with what the law is is problematic, in my

15    mind, because it in effect could be read to encourage

16    individuals to establish their own standards.

17          And the key in my mind of voir dire is to

18    ensure that individuals are willing to follow the law,

19    even if they might see that a different law would be a

20    better law.  And so, for example, where there is

21    question number seven, talks about how it's a higher

22    burden of proof in a criminal case, certainly an

23    appropriate topic of inquiry, but at the end to say "do

24    you agree with the distinction" is where I'm troubled,

25    Mr. Colbath.

1          And that is to ask a juror -- it opens the

2     door, in my mind, to say, "You can set up your own

3     standard," and that is obviously not what I would deem

4     warranted.

5          And so that was my general observation about

6     the burden of proof questions, six through ten, would be

7     that asking the -- inviting the jurors to reflect on

8     whether it's a good standard or not is a topic of

9     inquiry that I would have avoided.  Questions about

10    that?

11         MR. COLBATH:  No, Your Honor.

12         THE COURT:  Next one on the presumption of

13    innocence, I disagree with the legal proposition that

14    the presumption of innocence alone is enough to acquit,

15    unless the Ninth Circuit has said that.  I think that's

16    -- we were talking, Emily and I, this morning about when

17    does the presumption of innocence no longer apply when a

18    jury goes to deliberate, and I don't know if we have to

19    resolve that today, but I'm not sure that's an accurate

20    statement of the law.

21         And same with 18, which is to say, yes, the

22    presumption of innocence is attached at this time, but

23    where does that tie in within the instructions that I

24    give to the jury later on how to deliberate, which does

25    not focus on the presumption of innocence from the

pattern.

So I'll leave you to ponder that, but I don't want to -- I disagree with the statements of the law that are set out here and would instead intend to rely on the pattern. I don't have an issue with number 19 about is it possible that prosecutors or the police make mistakes. That would be fine.

I do address the testimony of law enforcement versus other people, but in any event that would be fine.

The questions regarding testimony by the accused I thought were very good. And I will incorporate 20 through 23 into my own questions, except 22 I don't see as warranted, but if there were -- I don't object to the defense following up on 22.

Credibility questions, I cover those briefly. And 25 through 31 I will address. Expert credibility questions, I was just looking at the expert instruction from the pattern, which is 4.14, or that's one of them. And the committee recommends to avoid labeling witnesses as experts, and I would ask the parties to avoid using that term.

They are persons who are qualified because of education or experience to provide the jury with an opinion on a certain topic, and that's what the pattern

     instructs.  And nonetheless, the Court is obligated to
     make a finding before a witness testifies that the
     witness qualified to provide that opinion.  In terms of,
     "Your Honor, we move to have Mr. So-and-So qualified as
     an expert," I would not do that, because that's
     inconsistent with the pattern and the Ninth Circuit
     authority that's cited in the comment to the pattern.

             Instead, it would be -- and I realize if
     somebody slips up, that can happen, because we're all
     used to different language, but that the witness is
     qualified to give an opinion on topic X is how the
     pattern envisions it.

             So we can discuss this more later today and
     before an expert is called, but it's 4.14 that I would
     bring to your attention and we can go from there.  All
     right.  But that relates to the questions 32 through 34,
     and it's more "qualified to give an opinion" as opposed
     to -- which is interesting because then you have lay
     experts that can give opinions too, I mean lay
     witnesses.

             On 35, which is on circumstantial evidence, I
     do not -- I will not permit the question at 35.  That is
     different than the pattern's definition of
     circumstantial evidence.  And so I don't have a concern
     of inquiring about what is circumstantial evidence, but

would direct you to the pattern language on its
definition of circumstantial evidence, and the model
instruction is 1.5 on that topic.  And I do intend to
read that instruction at the beginning, but it's a
slightly different wording.

Basically, the background questions I was fine
with.  Many of them I will be asking myself during the
course, or they will be reading from the sheet.  I would
ask on number 59, do not ask prospective jurors which
school their children are attending.

Do you see that, Mr. Colbath?

MR. COLBATH:  Yep.

THE COURT:  So that inquiry I don't see as
necessary or appropriate, but the rest were fine,
subject to the time limitations that I have established.

The ones that I'm not going to touch on at all
are 71 through 74, but I don't have a concern if you
sought to raise those in your own questioning.  That
would be fine.  71 through 74.

On the military background questions, I ask
about this, but not in the detail here.  There again, if
you wanted to follow up with individuals on that during
the time allotted, that would be fine.

I had considerable concerns regarding the
general deliberation questions.  For example, "Do you

promise to play an active role in its deliberations," I
don't see as an appropriate question. A juror is not
obligated to make that promise to either side or to the
Court.

The general promise approach, here again, Emily
and I had this discussion, I disagree with as an
appropriate form of voir dire, particularly when some of
the promises that are sought out in these questions are
inconsistent with my understanding of a juror's
responsibility during deliberations.

And so for example, the holdout language here
says, "Do you promise not to surrender your opinion
solely for the purpose of reaching an agreement," is at
odds or intention with the instruction the Court is
going to give at closing on the juror's role, and that's
specifically instruction, model instruction 7.1.

"During your deliberations, you should not
hesitate to reexamine your own views and change your
opinion if you become persuaded that it is wrong."
That's the instruction. If there are questions that are
posed by either side regarding deliberating, they need
to be consistent with the pattern.

All right. Questions? I would say staying
away from promising to either side is least likely to
invoke the Court's interruption of a question.

1          So all right.  Questions or clarification on

2     any of that?

3          MR. SKROCKI:  No, Your Honor.  Thank you.

4          THE COURT:  Mr. Colbath, questions or

5     clarification on any of that?

6          MR. COLBATH:  No, thank you.

7          THE COURT:  I will say, unfortunately, I

8     learned that the jurors sign up for a period of time

9     within which they are to call, and this was -- this week

10    is the last week of the group of jurors that we've had

11    for a few months calling in, and as a result, I would

12    anticipate that there are jurors that may have made

13    other plans after this week, legitimately done so,

14    thinking their jury service was done this week.

15         So I have called in more than normal for that

16    reason, because I anticipate we'll have people that have

17    made vacation or other travel plans or commitments that

18    were thinking they were done this week.  So I wanted to

19    give you that heads-up.

20         Do we have a heads-up from Jerri?  She said she

21    thought it would take longer than 9:00.

22         DEPUTY CLERK:  I do know we have 71 jurors so

23    far.  I think they are still watching the film.

24         THE COURT:  They are watching the film.

25    Anything else to take up from the government at this

1  time?

2          MR. SKROCKI:  Thank you for the comments about

3  the expert witnesses.  We'll talk about that later this

4  afternoon.  For the mechanics of it, we've spoken to

5  people in our office about how you prefer to do it.  I

6  would like some clarification from you later.

7          THE COURT:  I am on the committee, so I have a

8  bias, I guess, on how the instruction reads right now,

9  but I'm open to refining it.

10          MR. SKROCKI:  We'll take a look at that.  And

11  then we filed Docket 1222 on the motion with respect to

12  the Kiele testimony.  We filed a motion to put the

13  exhibit under seal.

14          THE COURT:  Has the motion been filed?

15          MR. SKROCKI:  It will be filed.

16          THE COURT:  Okay.  Then it can be filed under

17  seal.  We can make a note in the minutes.  Very good.

18          Mr. Colbath, Mr. Camiel, anything?

19          MR. COLBATH:  Not at this point, Your Honor.

20          THE COURT:  Very good.  We'll let you know when

21  the jury is present.  When we come back on record, I

22  would like the spectators in the last row or two as

23  indicated and no communication with the panel.  We

24  probably will end up putting some in the jury box.  That

25  doesn't mean they are selected, obviously, but if we run

1    out of seating in the box, we'll put them in the box.

2            We'll go off record.

3            DEPUTY CLERK:  All rise.  Court stands in a

4    brief recess.

5            (Recessed from 9:04 a.m. to 9:56 a.m.)

6            (Prospective jurors enter courtroom)

7            DEPUTY CLERK:  All rise.  Her Honor, the Court,

8    the United States District Court for the District of

9    Alaska is now in session, the Honorable Sharon L.

10   Gleason presiding.

11           Please be seated.

12           THE COURT:  All right.  Good morning, everyone.

13   And we are on record in *United States versus James*

14   *Wells*.  And my name is Sharon Gleason, and I am the

15   district judge that will be presiding over this case.

16           And it's been a long morning already I know,

17   and I appreciate you all coming to court here today.

18           This is my assistant, Emily, who is a law

19   clerk.  She's not our first witness and you're not

20   necessarily on this jury, ladies and gentlemen, even

21   though you're in the jury box.  We'll go through this

22   process.

23           As I said, you have been summoned as

24   prospective jurors in the case of *United States of*

25   *America versus James Michael Wells*.  This is a criminal

1    case.  And the jury clerk has previously taken roll and

2    we are ready here to select a jury today.

3          Jury service is one of the highest duties and

4    responsibilities of American citizenship, and while it

5    may require some personal sacrifice, it is an important

6    civic responsibility that we all share.  Under our

7    system of justice, we have the right to have a jury of

8    our fellow citizens decide a case such as this, and that

9    means that we must all be prepared to serve as jurors

10   when asked.  I hope you'll find this to be an

11   interesting and rewarding experience.

12         The trial of this particular case, ladies and

13   gentlemen, is expected to take approximately five weeks,

14   up to five weeks, and that means it is scheduled to end

15   right now no later than October 11.  Trial days go here

16   in federal court full days, unlike in state court in

17   Anchorage.  We begin our trial day around 8:30 or 9:00.

18   I typically meet with the lawyers and take up any issues

19   before the jury comes in in the morning.  And we

20   conclude Monday through Thursday at 5:00 p.m.

21         We will adjourn on Fridays for this trial by

22   noon, and those of you who live out of Anchorage can

23   travel home every weekend, come back during the course

24   of the trial.  We take a lunch break each day, and

25   breaks in the morning and in the afternoon as well.

```
 1          At this point, I'm going to ask the lawyers to
 2   introduce themselves, the parties, and beginning with
 3   the government lawyer, Mr. Skrocki, if you would,
 4   please.
 5          MR. SKROCKI:  Thank you, Your Honor.
 6          Good morning, everybody.  My name is Steve
 7   Skrocki.  I'm with the U.S. attorney's office here in
 8   Anchorage.  Trying the case with me is Christina
 9   Sherman.  She's also with the U.S. attorney's office
10   here in Anchorage.
11          Next in line is Kelley Stevens, a commander
12   with the United States Coast Guard, the lawyer helping
13   us with the case here.
14          Paralegal specialist, Blair Van Wyhe, with our
15   office here in Anchorage as well.  Special Agent Darren
16   Woods, United States Coast Guard Investigative Services.
17   And the main case agent, Daryl Allison, with the FBI
18   here in Anchorage.
19          THE COURT:  Thank you, Mr. Skrocki.
20          Mr. Colbath, go ahead, please.
21          MR. COLBATH:  Thank you, Your Honor.
22          Good morning, ladies and gentlemen.  My name is
23   Gary Colbath.  I am a trial attorney with the federal
24   public defender's office here in Anchorage and also work
25   in Fairbanks.
```

1          Trying the case with me is Peter Camiel.

2    Mr. Camiel is visiting us from Washington and here to

3    help.  At the end of the table -- we are here

4    representing Jim Wells.  Mr. Wells is here with us,

5    along with his family in the back.

6          Next to him is Bruce Johnson.  Mr. Johnson is

7    an investigator with the federal public defender's

8    office and will be assisting us here, as will these two

9    folks.  Deatrich Sheffield, Ms. Sheffield is also an

10   investigator with the federal public defender's office.

11   And Mark Heinrichs is a paralegal with our office.

12         THE COURT:  Thank you, Mr. Colbath.

13         Trial in this case will be conducted, as every

14   trial is, in accordance with established rules.  As the

15   judge, my role is to enforce the rules, determine what

16   evidence may be admitted and what law is to be applied

17   in the case.

18         The lawyers present the evidence according to

19   these rules.  And it's the function of the jury to

20   decide the facts, the credibility of the witnesses and

21   the weight to be given to witness's testimony, and to

22   render a just verdict, if you are able.

23         It's the jury's sworn duty to accept the law as

24   given to you by the Court.  You will then apply the law

25   to the facts as you determine them to be.  As the trial

proceeds, I'll explain this in more detail, as well as
explain more fully the procedure that is followed and
the order of the trial.

As I mentioned earlier, this is a criminal
case.  Mr. Wells has been charged in an indictment with
six crimes.  I'm going to read you just a little bit
here about that document, once I find my page here to do
so.

These charges arise out of the April 12, 2012
shooting deaths of U.S. Coast Guard Petty Officer First
Class James Hopkins and U.S. Coast Guard civilian
employee Richard Belisle at the communications station,
also known as COMMSTA, located at the rigger shop in
Kodiak Island in the town of Kodiak, Alaska.

Mr. Wells has pleaded not guilty to each of the
charges brought against him, and those charges are as
follows:  First, violations of 18 U.S.C. Section 73 and
1111(a) and (b), murder in the first degree.  That's
Counts 1 and 2.

Second, under 18 U.S.C. Section 1114 and 1111,
murder of an officer or employee of the United States,
and that's Counts 3 and 4.

And finally, under 18 U.S.C. Section 924(c) and
(j), using and carrying a firearm in relation to a crime
of violence, and that is Counts 5 and 6.

1       I have summarized the indictment for you,

2   ladies and gentlemen, but I must caution you that an

3   indictment is nothing more than a formal method of

4   accusing someone of a crime.  It is not evidence of any

5   kind.  Let me repeat, it is not evidence of any kind and

6   does not create any presumption or permit any inference

7   of guilt.

8       In other words, an indictment is merely an

9   allegation of the charge against the defendant and

10  informs the defendant of the specific crimes with which

11  he's charged.  The fact that an indictment has been

12  filed against a defendant may not be considered by you

13  for any purpose and is not evidence and should not be

14  considered as such by you.

15      As I indicated, the defendant has pleaded not

16  guilty to the charges in the indictment.  A plea of not

17  guilty means that the government must prove beyond a

18  reasonable doubt all of the material allegations and

19  essential elements of each crime charged.

20      Ladies and gentlemen, we're now here to select

21  the trial jury in this case.  And it's clearly a crucial

22  stage in this trial since it's important for both sides

23  to have a fair and impartial jury.  Both the government

24  and the defendant are entitled to jurors who approach

25  this case with open minds and agree to keep their minds

1    open until a verdict is reached.

2            Jurors must be as free as humanly possible from

3    bias, prejudice or sympathy, and must not be influenced

4    by preconceived ideas as to the facts or as to the law.

5            In this case, the jury is going to be composed

6    of 12 persons as well as four alternates.  The

7    alternates will be chosen at the end of the trial, so

8    we're going to be seating 16 jurors today, and the

9    alternates will be randomly selected, like I said, at

10   the very end of the case.

11           I'm going to have specific questions for a

12   number of you later on.  We're going to pull some names,

13   36 names, but first I have a number of general questions

14   for everyone here in the courtroom.  And before that,

15   I'm going to ask our courtroom deputy to administer an

16   oath to all of you.

17           (Oath administered to prospective jurors)

18           THE COURT:  Ladies and gentlemen, I'm going to

19   be asking you a number of general questions, but first I

20   wanted to stress, and I'll have more instruction on this

21   in the course of the morning and in the course of the

22   trial, and that is that it's critical to our justice

23   system that people not do any research, not do any

24   Googling, not do any discussion about a case in which

25   you serve as a juror.

1          And so I am going to give you a lot more

2     detailed instructions on that later, but I'm instructing

3     you all now not to do any research or Googling or

4     otherwise about this case.

5          All right.  I am going to ask a series of

6     questions here.  First, is there anyone who is not a

7     citizen of the United States?  Please raise your hand.

8          All right.  Very good.  I don't see any hands

9     raised.

10          Anyone who is under the age of 18?  No hands

11     raised.  Our wonderful jury clerk does a very good job.

12          Anyone who has a physical or mental condition

13     or ailment that would make it extremely difficult or

14     inconvenient for you to sit as a juror in this case?

15          Yes?  If you would come forward to the

16     microphone.  And I will say, as you're making your way

17     there -- sir, you can stay -- right there is the

18     microphone.  If at any time there is a question that you

19     would rather answer privately, that's absolutely fine,

20     semi-privately, I guess I should say, with the lawyers

21     and myself present but not the rest of the room, and so

22     if you would state your number, your juror number and

23     then tell me --

24          PROSPECTIVE JUROR NO. 57:  57.

25          THE COURT:  Would you like to address the

1    medical issues privately?

2              PROSPECTIVE JUROR NO. 57:  I wouldn't mind it.

3    I'm on an active transplant list for kidneys.  And when

4    I say "active," I mean really active.  I have been on it

5    for four years.  I have a potential for getting a kidney

6    soon.  I have been an alternate.

7              Last month, I was an alternate, and I have been

8    an alternate several times.  If the phone rings that I

9    have got it in my pocket, I'm going to have to leave

10   immediately because I only have 24 hours, because, as

11   you know, kidneys are very viable.

12             I would love to serve on the jury.

13   Unfortunately, this precludes it.  I have also got some

14   doctors' appointments that I really need to keep.

15   Swedish Hospital is coming down to evaluate me again.

16   They do every year, and that's coming up next week, so I

17   cannot miss that appointment.

18             THE COURT:  Why don't you have a seat and I'll

19   take up your issues later on, sir, with the lawyers.

20   Thank you.

21             PROSPECTIVE JUROR NO. 40:  No. 40.

22             THE COURT:  Do you want to take up your issues

23   privately?

24             PROSPECTIVE JUROR NO. 40:  Yes, please.

25             THE COURT:  I have made a note then and we'll

1   come back to you in due course.

2           Anybody else with a mental or physical

3   condition that would require you to -- would make it

4   very difficult to serve on this jury?

5           PROSPECTIVE JUROR NO. 16:  No. 16.  And as you

6   see in this thing, so it's up to Your Honor if you would

7   like me to stay on.  I just can only walk about two or

8   three steps at a time, so getting through chairs and

9   stuff, it's up to you all.  I wanted you to know about

10  the limitations.

11          THE COURT:  And I hope we can accommodate that.

12  I think we can, if you're willing to give us a try.  I

13  appreciate that.

14          Anybody else?

15          PROSPECTIVE JUROR NO. 36:  No. 36.  I'm

16  35 weeks pregnant, so I'm not sure --

17          THE COURT:  Oh, gosh.  Do the math there.  All

18  right.  Okay.  I will make a note and take that up.  I

19  have to tell you, ladies and gentlemen, when I served on

20  a jury, I was likewise pregnant and they were really

21  worried that the trial would run up until week 40, but

22  it didn't, all was well.  In any event, my dates were a

23  little different than 35 weeks.

24          All right.  Anybody else?  Did you get that

25  juror's number?  Very good.

1          Does anyone have any difficulty reading or --

2     this is really an unfair question, because if you did,

3     you wouldn't understand the question.  Anybody have any

4     difficulty reading or understanding the English

5     language?  No?  All right.  Very good.

6          Is anyone currently taking any medication or

7     have any other health issues that could affect your

8     ability to serve as a juror?  No?  All right.  Very

9     good.

10         Has anyone here ever visited Kodiak or lives or

11    has lived on the island of Kodiak?  If you could come

12    forward, except we'll start in the jury box.  Tell us

13    about that.  We'll start with Juror No. 9.

14         PROSPECTIVE JUROR NO. 9:  My name is Josh

15    Bormuel.  I was born and raised in Kodiak for 26 years.

16         THE COURT:  Do you still live there now?

17         PROSPECTIVE JUROR NO. 9:  Yes.

18         THE COURT:  Very good.  Thank you.  Moving on.

19    You can just tell us your number.

20         PROSPECTIVE JUROR NO. 28:  Yeah.  I just went

21    to Kodiak just to visit.

22         THE COURT:  Okay.  When was that?

23         PROSPECTIVE JUROR NO. 28:  It was two years

24    ago.

25         THE COURT:  Very good.  Thank you.

1         PROSPECTIVE JUROR NO. 2:  I'm Juror No. 2,

2 Andrew Anderson.

3         THE COURT:  I don't need your names, ladies and

4 gentlemen.  I really ask the lawyers and we all just go

5 by your numbers.  So they will call you by your numbers,

6 although they would probably rather call you by your

7 names, but we all use numbers here.

8         PROSPECTIVE JUROR NO. 2:  I have spent about

9 three months in Port Lions, which is on Kodiak Island.

10 I have a lot of friends in Kodiak.  I chased a girl from

11 there, so familiar with the area.

12         THE COURT:  Thank you.  Anybody else in the

13 jury box?

14         PROSPECTIVE JUROR NO. 56:  Been to Kodiak

15 Island for the Office of Children's Services.

16         THE COURT:  Very good.  How long ago -- when

17 were you last there?

18         PROSPECTIVE JUROR NO. 56:  I honestly couldn't

19 remember.  Maybe four years ago.

20         THE COURT:  Fair enough.  I saw some hands

21 raised in the back.  If you could come forward, and as

22 you make your way, let me say I am going to have a

23 question later on about have you heard anything about

24 this case.  And I suspect maybe people have, maybe they

25 haven't, but if you have, I don't want you to say

anything about that in this room full of people.  We'll
take that up privately.

So moving along, who has been to Kodiak?  I
have been to Kodiak.  Please come forward and tell us
about it or if you live there.

PROSPECTIVE JUROR NO. 51:  51.  I travel over
there once or twice a year to repair machines.

THE COURT:  What kind of machines?

PROSPECTIVE JUROR NO. 51:  Pitney Bowes postage
machines.

PROSPECTIVE JUROR NO. 35:  I'm No. 35.  Through
the military, I have been there, and then on my personal
time as well.

THE COURT:  How many times would you estimate
you have been there?

PROSPECTIVE JUROR NO. 35:  About four or five
times.

THE COURT:  Very good.  Thank you.

PROSPECTIVE JUROR NO. 63:  No. 63.  I have
lived in Alaska about 46 years.  I have been there four
or five times.  Most of them have been between 45 to
20 years ago.  I haven't been back since.

In the early years, we went there a few times
because of high school sports teams, and then I went
through a few other times to get to Afognak Island to do

1  some hunting.

2  PROSPECTIVE JUROR NO. 3:  Juror No. 3.  Been to

3  Kodiak several times over the years to visit family and

4  friends, and also for conventions.  And probably have

5  been there six times.

6  THE COURT:  Okay.  Thank you.

7  PROSPECTIVE JUROR NO. 22:  Juror No. 22.  I

8  have been to Kodiak at least twice for high school

9  track.  That was about three years ago.

10  THE COURT:  Thank you.

11  PROSPECTIVE JUROR NO. 16:  Juror No. 16.  I'm

12  with Coast Guard Auxiliary.  I go there to buy uniforms,

13  training and to train.

14  THE COURT:  Have you been on the COMMSTA area,

15  the command --

16  MR. SKROCKI:  Communication station.

17  THE COURT:  Communication station.

18  PROSPECTIVE JUROR NO. 16:  Yes, for training

19  once, but that was like eight years ago.

20  THE COURT:  Thank you.  Juror No. 16, if you

21  have other responses, we can bring the microphone right

22  to you.  Just raise your hand and Emily will come back.

23  All right.  Very good.

24  PROSPECTIVE JUROR NO. 37:  Juror 37.  I travel

25  to Kodiak periodically on business.  Last time was about

1  three weeks ago.

2          THE COURT:  Periodically, every year?

3          PROSPECTIVE JUROR NO. 37:  Every few months.

4          THE COURT:  Thank you.

5          PROSPECTIVE JUROR NO. 6:  Juror 6.  I have been

6  to Kodiak twice, both hunting, quite some time ago.

7          THE COURT:  Thank you.

8          PROSPECTIVE JUROR NO. 44:  Deadman's Bay beach

9  sanding back in 1979.

10          THE COURT:  Very good.  Thank you.

11          PROSPECTIVE JUROR NO. 60:  Been to Kodiak for

12  hunting several years ago.  Currently have a nephew that

13  is a business owner there currently right now.

14          THE COURT:  What kind of business does he own?

15          PROSPECTIVE JUROR NO. 60:  He is in steel

16  fabrication.

17          PROSPECTIVE JUROR NO. 52:  No. 52.  Been to

18  Kodiak about six times, mainly visiting friends.

19          PROSPECTIVE JUROR NO. 12:  No. 12.  Been to

20  Kodiak twice.  The last time was about four years ago.

21          PROSPECTIVE JUROR NO. 38:  I was raised in

22  Kodiak.

23          THE COURT:  How long did you live there?

24          PROSPECTIVE JUROR NO. 38:  About 23, 24 years

25  before I moved to Anchorage.

```
 1              THE COURT:  Very good.
 2              PROSPECTIVE JUROR NO. 38:  My family still
 3     resides there.
 4              THE COURT:  Do you go back and visit them?
 5              PROSPECTIVE JUROR NO. 38:  Oh, yes.
 6              THE COURT:  Thank you.
 7              PROSPECTIVE JUROR NO. 25:  Juror 25.  I don't
 8     remember what year.  It was about 20 years ago, but my
 9     stepdad was in the Coast Guard.  We lived there for
10     about two years, I think.
11              THE COURT:  Thank you.
12              PROSPECTIVE JUROR NO. 45:  Juror 45.  I was in
13     Kodiak 15 years ago for work.
14              THE COURT:  How long were you there?
15              PROSPECTIVE JUROR NO. 45:  Three days.
16              THE COURT:  All right.
17              PROSPECTIVE JUROR NO. 23:  Juror No. 23.  I
18     have been there twice just to visit a friend that lives
19     there, for fun.
20              THE COURT:  And last, but not least.
21              PROSPECTIVE JUROR NO. 34:  No. 34.  I have been
22     to Kodiak several times.  I work communications and I
23     travel there quite often.
24              THE COURT:  All right.  When you say "quite
25     often" --
```

1          PROSPECTIVE JUROR NO. 34:  Every two to three

2     months.

3          THE COURT:  And have you been to the

4     communication station?

5          PROSPECTIVE JUROR NO. 34:  Yes, ma'am, I have.

6          THE COURT:  How many times would you estimate

7     you have been there?

8          PROSPECTIVE JUROR NO. 34:  At least three.

9          THE COURT:  Thank you.  Anybody else that has

10    been to Kodiak or lives there or lived there?  All

11    right.

12          Next question:  Have you ever been a party to a

13    lawsuit, meaning have you ever sued someone or been

14    sued?  And I don't need to hear if it's a domestic case,

15    if you have been involved in a custody or a divorce

16    case, I don't need to hear about that, but any other

17    case in which you have been sued or somebody sued you,

18    small claims perhaps or a lawsuit involving anything.

19    There are lots of lawsuits out there.

20          So anybody in the jury box ever been a party to

21    a court case?  Yes.

22          PROSPECTIVE JUROR NO. 56:  No. 56.  Don't know

23    if this counts, but I used to work for the Office of

24    Children's Service.

25          THE COURT:  And so you were involved in Child

1  in Need of Aid proceedings?

2        PROSPECTIVE JUROR NO. 56:  Yes, ma'am.

3        THE COURT:  Anybody else ever been a party?  If

4  you could come up to the microphone.

5        PROSPECTIVE JUROR NO. 63:  I was involved in a

6  real estate transaction that involved a legal action

7  that was taken, but it did not go to court.

8        THE COURT:  All right.  Were you the person

9  that got sued or you sued somebody?

10       PROSPECTIVE JUROR NO. 63:  I was the person who

11 was sued.

12       THE COURT:  Anything about that make it hard to

13 sit as a juror here?

14       PROSPECTIVE JUROR NO. 63:  No.

15       THE COURT:  Thank you.  Let's do the rest of

16 the jury box and then we'll come back to you.  Go right

17 ahead, please.

18       PROSPECTIVE JUROR NO. 26:  Juror No. 26.  My

19 company sued somebody where I live, so we were part of

20 -- I was not sued.

21       THE COURT:  What kind of company?

22       PROSPECTIVE JUROR NO. 26:  Fuel company,

23 freight company.

24       THE COURT:  Anybody else in the jury box been

25 in a lawsuit?

```
 1              PROSPECTIVE JUROR NO. 61:  61.  We sued a
 2    person that did not pay their -- we sold property and
 3    they didn't pay up, but it settled out of court.
 4              And then the next was I was involved in an, I
 5    guess it was the city against my organization.  We had a
 6    school and they said we could not have a school.
 7              THE COURT:  All right.
 8              PROSPECTIVE JUROR NO. 8:  No. 8.  I got hurt
 9    and had to sue somebody.
10              THE COURT:  Did it go to court?  Did you have a
11    trial or it settled?
12              PROSPECTIVE JUROR NO. 8:  It was settled.
13              THE COURT:  Anything about that make it hard to
14    be a juror today?
15              PROSPECTIVE JUROR NO. 8:  No.
16              PROSPECTIVE JUROR NO. 35:  Your Honor, No. 35.
17    I sued a landlord over rent, and also being a foster
18    parent.
19              THE COURT:  Anything about those cases that
20    makes it hard to serve here today?
21              PROSPECTIVE JUROR NO. 35:  No, ma'am.
22              THE COURT:  Thank you.
23              PROSPECTIVE JUROR NO. 72:  No. 72.  My mother
24    died at the hands of a negligent doctor, so we sued for
25    medical malpractice.
```

```
 1           THE COURT:  How long ago was that?
 2           PROSPECTIVE JUROR NO. 72:  It was in the
 3  nineties.
 4           THE COURT:  And anything about that -- did you
 5  feel that the system was fair, unfair, in between?
 6           PROSPECTIVE JUROR NO. 72:  Unfair.
 7           THE COURT:  Thank you.  Lawyers might have
 8  follow-up later, but that's fine.
 9           PROSPECTIVE JUROR NO. 6:  No. 6.  And I have a
10  family business in Valdez, and so we were sued one time
11  for personal injury.  And then I was also sued by a
12  family member for rights to the business.
13           THE COURT:  All right.  Anything about those
14  cases that would make it hard to serve here?
15           PROSPECTIVE JUROR NO. 6:  No.
16           THE COURT:  Thank you.  Finally, hello.
17           PROSPECTIVE JUROR NO. 40:  No. 40.  I was
18  involved in a lawsuit against a previous employer for
19  nonpayment.
20           THE COURT:  Of wages?
21           PROSPECTIVE JUROR NO. 40:  Yes.
22           THE COURT:  Did that resolve in a way that you
23  thought was fair?
24           PROSPECTIVE JUROR NO. 40:  Yes.
25           THE COURT:  Very good.  Thank you.
```

1           PROSPECTIVE JUROR NO. 21:  No. 21.  Car

2   accident.  I don't know if that counts or not.

3           THE COURT:  That's fine.  Did you sue or were

4   you sued?

5           PROSPECTIVE JUROR NO. 21:  Yes, it was a very

6   long time ago, but yeah.

7           PROSPECTIVE JUROR NO. 52:  No. 52.  2016,

8   wrongful death/wrongful injury lawsuits.

9           THE COURT:  Anything about that that would make

10  it hard to serve in this case?

11          PROSPECTIVE JUROR NO. 52:  No.

12          THE COURT:  Thank you.

13          Has anyone appeared --  I'm sorry.

14          PROSPECTIVE JUROR NO. 29:  No. 29.  I was sued

15  for a car accident my son was in.  It was no big deal.

16          THE COURT:  Very good.  People are remembering

17  lawsuits here.  No right or wrong answers.

18          PROSPECTIVE JUROR NO. 32:  No. 32.  Maybe when

19  I was 15 or 16, my mom sued somebody.

20          THE COURT:  Were you in the case, a party to

21  the case?

22          PROSPECTIVE JUROR NO. 32:  I think so.

23          THE COURT:  All right.

24          PROSPECTIVE JUROR NO. 59:  My family sued a

25  company in Kotzebue.

```
 1            THE COURT:  Anything about that -- what was the

 2   lawsuit about?

 3            PROSPECTIVE JUROR NO. 59:  The owner killed my

 4   dad.

 5            THE COURT:  Anything about that that would make

 6   it hard to serve in a case like this?

 7            PROSPECTIVE JUROR NO. 59:  I don't know.

 8            THE COURT:  Hold that thought.  Anybody else

 9   that has been involved in a lawsuit as a party?

10            All right.  Has anyone testified as a witness,

11   meaning sat where Emily is or gone to a deposition where

12   somebody asked you questions?  I don't need, like the

13   CINA person I'm sure did, people to -- if you've already

14   talked about a court case, then I don't need you to come

15   back.

16            But anybody testified in a case, in somebody

17   else's case that you haven't told us about?  If you

18   could come forward.

19            PROSPECTIVE JUROR NO. 35:  No. 35.  I was not

20   necessarily a direct witness, but because of the

21   military, the casualty assistance officer, I had to go

22   and testify.

23            THE COURT:  How long ago was that?

24            PROSPECTIVE JUROR NO. 35:  Eight years ago.

25            THE COURT:  All right.  Thank you.
```

1              PROSPECTIVE JUROR NO. 38:  No. 38.  Back in '91

2     or '92, I believe it was, I was involved in a deposition

3     in Kodiak.  An accident happened on the logging ship on

4     Afognak Island.

5              THE COURT:  Very good.

6              PROSPECTIVE JUROR NO. 48:  No. 48.  In 2002,

7     the company I worked for, a couple of employees

8     embezzled money and I had to testify.

9              THE COURT:  Was it a criminal case or civil?

10             PROSPECTIVE JUROR NO. 48:  Criminal.

11             THE COURT:  Anybody else?

12             PROSPECTIVE JUROR NO. 10:  I was an expert

13    witness in a contractor case.

14             THE COURT:  All right.  What type of expertise?

15             PROSPECTIVE JUROR NO. 10:  I was saying that

16    their work was okay versus what the suit was about.

17             PROSPECTIVE JUROR NO. 50:  I'm No. 50.  I don't

18    know if a civil custody case counts.

19             THE COURT:  I don't need to hear that, no, but

20    thank you for coming forward.

21             Anybody else testified as a witness in a court

22    case?

23             All right.  Has anyone been in a dispute with a

24    federal agency, meaning an audit perhaps or an issue

25    with land or any tort claims.  Sometimes we have cases.

1    Anybody been in a dispute with a federal agency?  No.

2         And when I say anybody, I'm also talking if

3    there is somebody close to you, meaning somebody in your

4    home or that is a close friend or family member.

5         All right.  No hands raised there.  Then my

6    next question --

7         PROSPECTIVE JUROR NO. 26:  I'm not sure if it

8    counts.

9         THE COURT:  There is no right or wrong answer.

10        PROSPECTIVE JUROR NO. 26:  No. 26.  My in-laws

11   were criminally charged with trafficking ivory about

12   eight years ago, and it was a federal case.

13        THE COURT:  Anything about that -- how did you

14   think the process worked?  Was it fair, unfair, not

15   sure?

16        PROSPECTIVE JUROR NO. 26:  It was unfair in

17   some aspects and fair in others, but the person who got

18   charged just recently died like last week, so it's kind

19   of a whole thing.

20        THE COURT:  All right.  Anything about that

21   that would make it hard to serve in this case?

22        PROSPECTIVE JUROR NO. 26:  Yes.  I have an

23   autistic son who is severely autistic, and he was very

24   close to his grandmother who just died who was charged

25   in this case, and so leaving him behind to come to

1 Anchorage has been really hard.

2 THE COURT: I made a note and we might follow

3 up with you later. Thank you.

4 Anybody else?

5 PROSPECTIVE JUROR NO. 2: This might be

6 inconsequential. Juror No. 2. My father and uncle have

7 a business. They were audited when I was a small child.

8 THE COURT: Nothing about that --

9 PROSPECTIVE JUROR NO. 2: Not at all.

10 THE COURT: I appreciate it.

11 Anybody been the victim of a crime in the last

12 ten years? So ten years. And when I say "you" been the

13 victim of a crime, you or a close family friend or

14 family member. Anyone been a crime victim? Did I see

15 hands raised?

16 PROSPECTIVE JUROR NO. 2: Juror No. 2. My car

17 was broken into recently.

18 THE COURT: Here in Anchorage or somewhere

19 else?

20 PROSPECTIVE JUROR NO. 2: It was actually in

21 Dawson Creek, British Columbia.

22 THE COURT: Anybody else been the victim of a

23 crime?

24 PROSPECTIVE JUROR NO. 47: No. 47. Can I do it

25 privately?

          1          THE COURT:  Yes, absolutely.  What's your

          2 number, 47?  We made a note and we'll follow up with you

          3 later.

          4          PROSPECTIVE JUROR NO. 51:  51.  My truck was

          5 stolen a couple weeks ago.

          6          THE COURT:  Did you get it back?

          7          PROSPECTIVE JUROR NO. 51:  Yeah.

          8          THE COURT:  All right.  Anybody else?

          9          PROSPECTIVE JUROR NO. 31:  No. 31.  My truck

         10 was stolen from my job.

         11          THE COURT:  All right.  Did you get it back?

         12          PROSPECTIVE JUROR NO. 31:  Yeah.

         13          THE COURT:  Anybody else been the victim of a

         14 crime in the last ten years?  No?  All right.

         15          Has anyone been the subject of a criminal

         16 investigation or been charged with a criminal offense in

         17 the last ten years, or someone close to you?  And I

         18 don't need to hear again about your individuals, the

         19 in-laws.

         20          Anybody else been the subject of a criminal

         21 investigation or charged with a crime in the last ten

         22 years?  I don't need to hear about speeding tickets,

         23 although you can tell us.  But anybody been charged --

         24 and if you want to speak privately, like I said, that's

         25 all fine too.

1          PROSPECTIVE JUROR NO. 15:  Juror No. 15.  Speak

2   privately.

3          THE COURT:  All right.  We'll make a note and

4   come back to that.  Anybody else?

5          PROSPECTIVE JUROR NO. 21:  No. 21.  I don't

6   know if it counts, but I have a stepdaughter who is

7   something else, so she's got a history, a criminal

8   history.  And then also one --

9          THE COURT:  Does she live with you?

10          PROSPECTIVE JUROR NO. 21:  She does not.  And

11   then also the father of one of my children.

12          THE COURT:  All right.  Thank you.

13          PROSPECTIVE JUROR NO. 50:  No. 50.  I was

14   involved in a case involving custody.  It was a

15   custodial interference.

16          THE COURT:  So there was a criminal charge

17   brought?

18          PROSPECTIVE JUROR NO. 50:  There was, although

19   I was acquitted.

20          THE COURT:  Did you go to trial?

21          PROSPECTIVE JUROR NO. 50:  It did.

22          THE COURT:  Anybody else?

23          PROSPECTIVE JUROR NO. 44:  No. 44.  Four years

24   ago, I was charged with reckless driving.

25          THE COURT:  All right.  Anything about that

that would make it hard for you to be fair to both sides here?

PROSPECTIVE JUROR NO. 44:  No.

THE COURT:  Was that here in Alaska, sir?

PROSPECTIVE JUROR NO. 44:  Yes, it was down in Soldotna.

THE COURT:  That was Juror 44.

PROSPECTIVE JUROR NO. 17:  Can I discuss it privately?

THE COURT:  Yes.  What's your number?

PROSPECTIVE JUROR NO. 17:  17.

THE COURT:  I've made a note.  We'll come back to you later.

PROSPECTIVE JUROR NO. 73:  I would like to discuss it privately.

THE COURT:  73.  That's fine.  All right.

Anybody else that has been the subject of a criminal investigation, charged with a criminal offense in the last ten years, you or someone close to you?  I don't see any other hands raised.

Has anyone here been on federal or state probation or parole or supervision, or had someone close to you that was on parole or supervision?

Yes.  Does it relate to the same point you brought up earlier?

 1          PROSPECTIVE JUROR NO. 15:  Yes.

 2          PROSPECTIVE JUROR NO. 55:  Juror 55.  My

 3     brother was on ankle monitor for, I don't remember when

 4     we went to jail, domestic abuse.

 5          THE COURT:  Thank you.  Anybody else?

 6          PROSPECTIVE JUROR NO. 24:  Can I talk about it

 7     privately?

 8          THE COURT:  Yes.  What's your number?

 9          PROSPECTIVE JUROR NO. 24:  24.

10          THE COURT:  24.  Absolutely.  Anybody else,

11     state or federal probation, parole or supervision?

12          PROSPECTIVE JUROR NO. 21:  For the same people

13     before, No. 21, stepdaughter.

14          THE COURT:  Yes.  All right.  Very good.

15          Very good.  I don't see any other hands raised.

16          Switching here to the next question.  Have you

17     or has someone close to you ever worked in any area of

18     law enforcement?  And so by that I mean a broad term.

19     That would mean any federal law enforcement agency or

20     state trooper or local police or the FBI, drug

21     enforcement, customs service, the Bureau of Alcohol,

22     Tobacco, Firearms & Explosives, et cetera.

23          You or someone close to you work in law

24     enforcement?

25          PROSPECTIVE JUROR NO. 26:  Juror No. 26.  My

1    ex-husband was a village public safety officer.

2              THE COURT:  What community?

3              PROSPECTIVE JUROR NO. 26:  Glennallen, Gakona,

4    Gulkana, Copper.

5              PROSPECTIVE JUROR NO. 72:  No. 72.  My son is

6    an Air Force cop.

7              THE COURT:  Does he live here?

8              PROSPECTIVE JUROR NO. 72:  Yes, in Soldotna.

9    And then we have family in Texas that are law

10   enforcement.

11             THE COURT:  All right.  Thank you.

12             PROSPECTIVE JUROR NO. 44:  No. 44.  My dad was

13   a peace officer up on the Slope for three years.

14             THE COURT:  For how many?

15             PROSPECTIVE JUROR NO. 44:  For three.

16             PROSPECTIVE JUROR NO. 7:  No. 7.  My dad was a

17   Colorado state patrolman and an Alaska state trooper.

18             THE COURT:  For how many years did he serve?

19             PROSPECTIVE JUROR NO. 7:  Oh, gosh, 15 maybe.

20             PROSPECTIVE JUROR NO. 47:  No. 47.  My husband

21   worked as military police, and then he was in

22   corrections.

23             THE COURT:  All right.  How many years did he

24   work in the military police?

25             PROSPECTIVE JUROR NO. 47:  I believe it was

1     about six.

2              THE COURT:  He's in corrections now?

3              PROSPECTIVE JUROR NO. 47:  No longer in

4     corrections.

5              THE COURT:  How long did he work in

6     corrections?

7              PROSPECTIVE JUROR NO. 47:  That was about four

8     years.

9              PROSPECTIVE JUROR NO. 50:  No. 50 again.  My

10    brother-in-law works for APD as an officer.

11             THE COURT:  Here in Anchorage?

12             PROSPECTIVE JUROR NO. 50:  Yeah.

13             PROSPECTIVE JUROR NO. 36:  No. 36.  My husband

14    is Security Forces in the Air Force.

15             THE COURT:  Here in Anchorage or --

16             PROSPECTIVE JUROR NO. 36:  Yes, ma'am.

17             PROSPECTIVE JUROR NO. 25:  No. 25.  My dad is a

18    correctional officer in the state of California.  I

19    think he's going on like 15 years.

20             PROSPECTIVE JUROR NO. 48:  No. 48.  My uncle is

21    a retired state trooper from Nevada.

22             THE COURT:  Very good.  Thank you.

23             PROSPECTIVE JUROR NO. 31:  No. 31, and my dad

24    used to work at McLaughlin. He was a juvenile officer.

25             THE COURT:  How many years did he work there?

1    PROSPECTIVE JUROR NO. 31:  I think like

2  30 years.

3    THE COURT:  Thank you.

4    PROSPECTIVE JUROR NO. 43:  No. 43.  I'm not

5  sure if this applies, but I'm currently a database

6  administrator for the State of Alaska and I work with

7  CGIS data.

8    THE COURT:  I appreciate that.  Did the person

9  in the back --

10    PROSPECTIVE JUROR NO. 16:  No. 16.  I have a --

11  my husband was a military cop.  I have a son that's a

12  marine cop.  I had a daughter who was in the Navy also

13  doing cops.  And I have a daughter that's with the FBI

14  doing linguistics.

15    THE COURT:  All right.  Thank you.  I saw

16  somebody in the jury box.  Thank you.

17    PROSPECTIVE JUROR NO. 68:  No. 68.  My

18  grandfather was in U.S. Customs and Border Patrol for

19  40 years.  He recently passed away this year though.

20    THE COURT:  All right.

21    PROSPECTIVE JUROR NO. 13:  No. 13.  I have

22  three cops that are neighbors, but they are

23  acquaintances.  I don't know them more than first name.

24    PROSPECTIVE JUROR NO. 73:  No. 73.  I don't

25  know exactly what he did, but one of my housemates used

1    to be in the Marine Corps and the Air Force.

2           THE COURT:  All right.

3           PROSPECTIVE JUROR NO. 28:  No. 28.  I used to

4    work with the State of Alaska background check unit.

5           THE COURT:  Okay.  Very good.  Anybody else?

6           PROSPECTIVE JUROR NO. 29:  No. 29.  I have a

7    son-in-law that's Secret Service, 18 years.  And

8    daughter-in-law was 15 years Secret Service.  My middle

9    son is armed security for the courthouse here,

10   contracted.  I think that's it.

11          THE COURT:  All right.  Very good.  Anybody

12   else, have you or someone close to you worked in the

13   area of law enforcement?

14          PROSPECTIVE JUROR NO. 61:  No. 61.  I have a

15   nephew that's worked in corrections in Idaho for

16   25 years.

17          THE COURT:  Thank you.

18          Some witnesses in this case may be law

19   enforcement officers and/or government officials, and

20   the credibility of these witnesses under the rules of

21   our court is to be judged by the same standards as any

22   other witness.  Their testimony is not entitled to any

23   greater weight nor lesser weight simply because the

24   witness is involved in law enforcement.

25          Would anyone have any difficulty following this

1    instruction?  I don't see hands raised.

2          Has anyone here or someone close to you ever

3    worked for a criminal defense attorney or agency or with

4    a lawyer who practices criminal prosecution, so with

5    either a prosecutor or a defense lawyer in the criminal

6    justice field?  Anybody worked that, or perhaps we have

7    some lawyers here, sometimes we do.

8          PROSPECTIVE JUROR NO. 49:  No. 49.  My

9    brother-in-law works for special prosecution for the

10   State of Alaska, and I know one of the --

11         THE COURT:  I'm going to get to that.  Very

12   good.  Hold that thought.  Anybody else?

13         PROSPECTIVE JUROR NO. 16:  No. 16.  I have a

14   daughter who worked at the courthouse in Soldotna or

15   Kenai, and is waiting to get her -- to be a lawyer.

16   She's worked quite a bit in the courthouse.

17         THE COURT:  Anybody else worked in criminal

18   defense or prosecution or someone close to you?

19         PROSPECTIVE JUROR NO. 68:  No. 68.  Not

20   entirely sure if this counts.  My stepmother is a

21   paralegal, but she works for a --

22         THE COURT:  Civil?

23         PROSPECTIVE JUROR NO. 68:  Yes, civil.

24         THE COURT:  So not criminal cases, a civil

25   case?

1          PROSPECTIVE JUROR NO. 68:  Yes.

2          PROSPECTIVE JUROR NO. 6:  Juror 6.  I'm close

3   with my cousin and her husband, Steven and Dana

4   McAlpine.  I think they have lots of experience in the

5   courthouse.

6          THE COURT:  Very good.

7          PROSPECTIVE JUROR NO. 7:  No. 7.  My niece is

8   the assistant to the district attorney.

9          THE COURT:  And where?

10         PROSPECTIVE JUROR NO. 7:  Here.

11         THE COURT:  Here in Anchorage.  Very good.

12         PROSPECTIVE JUROR NO. 15:  Juror No. 15.  I

13  know the clerk of court down in Kenai.

14         THE COURT:  All right.  Very good.

15         PROSPECTIVE JUROR NO. 15:  I play hockey with

16  her son.

17         THE COURT:  Very good.  Anybody else?

18         PROSPECTIVE JUROR NO. 29:  Juror No. 29.  My

19  brother was a criminal attorney here in Anchorage.

20         THE COURT:  All right.  I'm having trouble

21  hearing you, so I bet the court reporter is too.

22         PROSPECTIVE JUROR NO. 29:  My oldest my brother

23  was criminal here in Anchorage.  And my sister is a

24  civil attorney.  And you met my dad, Pete Fannon, from

25  Florida, bar association.  I remember that.  Anyway,

1  that's it.

2          THE COURT:  Have you ever gone to court and

3  watched your siblings?

4          PROSPECTIVE JUROR NO. 29:  Oh, yes.

5          THE COURT:  You have.  Very good.

6          Has anyone else ever worked in a criminal

7  prosecution or criminal defense?

8          All right.  Then next, has anyone taken any

9  classes or courses in law enforcement or criminal

10  justice?  And that would include, I know there is a

11  class here in Anchorage that the police department puts

12  on for people to go, I think it's like a citizens'

13  academy.

14          Anything like that or classes at the university

15  on criminal justice or law?

16          PROSPECTIVE JUROR NO. 56:  No. 56.  My degree

17  is in criminal justice.

18          THE COURT:  When did you get that?

19          PROSPECTIVE JUROR NO. 56:  2010 for my

20  master's, and early in the nineties.

21          THE COURT:  Anybody else taken classes -- way

22  in the back.

23          PROSPECTIVE JUROR NO. 16:  No. 16.  I was

24  studying to be a lawyer before and then switched to

25  nursing.  I got halfway through all the core courses I

1    needed to take before I made the change.

2            THE COURT:  Approximately when was that?

3            PROSPECTIVE JUROR NO. 16:  In the late

4    eighties.

5            THE COURT:  All right.  Fair enough.  Anyone

6    else, classes in law enforcement or law or criminal

7    justice?

8            PROSPECTIVE JUROR NO. 44:  No. 44.  On the

9    question before that, back in the mid-nineties, I had to

10    represent myself in a DUI case and had to pick the jury.

11    The judge walked me through it, but two days of trial.

12            THE COURT:  All right.

13            PROSPECTIVE JUROR NO. 44:  Still got guilty.

14            THE COURT:  All right.  Has anyone here or

15    anyone close to you had a particularly bad or a

16    particularly good experience with any law enforcement

17    agency?  I'll probably take them up privately later on,

18    but, yes, this is the same thing we talked about.  All

19    right.  That was No. 26.

20            Anybody else, particularly good, particularly

21    bad experience?  If you could come up to the microphone.

22    I see a hand raised in the back.

23            PROSPECTIVE JUROR NO. 58:  No. 58.  My father

24    worked in mountain rescue for 35 years and worked with

25    the troopers, so good experience.

1          PROSPECTIVE JUROR NO. 50:  I have had both good

2    and bad.

3          THE COURT:  Your number again?

4          PROSPECTIVE JUROR NO. 50:  No. 50.

5          THE COURT:  I'll come back that.  Anybody else,

6    particularly good or bad experience with law

7    enforcement?

8          PROSPECTIVE JUROR NO. 3:  No. 3.  I would

9    discuss it privately.

10          THE COURT:  All right.  No. 3.  All right.

11    Thank you.

12          Let me ask again.  Anybody else?

13          Then my question is:  Does anyone here know any

14    of the other potential jurors?

15          PROSPECTIVE JUROR NO. 11:  No. 11.  On the last

16    one, I had a bad experience.

17          THE COURT:  All right.  Can we discuss that

18    privately later on?

19          PROSPECTIVE JUROR NO. 11:  Yes.

20          THE COURT:  We'll do that.

21          Anybody else on that question, or my new one,

22    which is do you know any of the other potential jurors

23    today?

24          I have to say I have been doing this job for

25    several years, and I have never had a case where people

1    didn't know each other.  We're a small state.

2              PROSPECTIVE JUROR NO. 72:  I know Abby.  72

3    knows 33.

4              THE COURT:  How do you know each other?

5              PROSPECTIVE JUROR NO. 72:  We're friends.

6              THE COURT:  Could you disagree with each other?

7              PROSPECTIVE JUROR NO. 72:  I guess.

8              THE COURT:  Or could you agree?

9              PROSPECTIVE JUROR NO. 72:  Yeah, I guess so.

10             THE COURT:  Could you work together?

11             PROSPECTIVE JUROR NO. 72:  Her mother is dating

12   a friend of mine.  I'm his pastor.  That's the

13   relationship.

14             THE COURT:  Anything to add on that?

15             PROSPECTIVE JUROR NO. 33:  No.

16             PROSPECTIVE JUROR NO. 55:  No. 55.  One of my

17   employees.

18             THE COURT:  Who do you know?

19             PROSPECTIVE JUROR NO. 55:  I don't know his

20   number.  Oh, what's your number?  27.

21             THE COURT:  So 27 works for you?

22             PROSPECTIVE JUROR NO. 55:  Yes.

23             THE COURT:  Do you agree?

24             PROSPECTIVE JUROR NO. 27:  Yes.

25             THE COURT:  Do you think you could disagree and

1    feel -- I'm asking 27.

2              PROSPECTIVE JUROR NO. 27:  Disagree to like --

3              THE COURT:  Like if you saw the evidence one

4    way and the other juror saw the evidence differently, do

5    you think that you could speak your mind and disagree?

6              PROSPECTIVE JUROR NO. 27:  Potentially, yes.

7              THE COURT:  All right.  And what about you?

8              PROSPECTIVE JUROR NO. 55:  Yeah.

9              THE COURT:  All right.  Do you work together in

10   the same room or down the hall or building?

11             PROSPECTIVE JUROR NO. 55:  Same building.  It's

12   an airport.

13             THE COURT:  Which airport?

14             PROSPECTIVE JUROR NO. 55:  I work for UPS.  I'm

15   his supervisor.

16             THE COURT:  So you're both at UPS?

17             PROSPECTIVE JUROR NO. 55:  Yes.

18             THE COURT:  You're his supervisor?

19             PROSPECTIVE JUROR NO. 55:  Yes.

20             THE COURT:  Direct supervisor?

21             PROSPECTIVE JUROR NO. 55:  Yes.

22             THE COURT:  How long have you been his

23   supervisor?

24             PROSPECTIVE JUROR NO. 55:  He is switching back

25   to my shift, but he wasn't before, but maybe three

 1    months.

 2            THE COURT:  Anything to add on that?

 3            PROSPECTIVE JUROR NO. 27:  No.

 4            PROSPECTIVE JUROR NO. 12:  No. 12.  I know No.

 5    28.

 6            THE COURT:  Okay.

 7            PROSPECTIVE JUROR NO. 12:  Our sons played

 8    hockey together about ten years ago.

 9            THE COURT:  Do you think you could disagree or

10    agree or work together?

11            PROSPECTIVE JUROR NO. 12:  Yeah, I think so.

12            THE COURT:  Any disagreement with that?

13            PROSPECTIVE JUROR NO. 28:  No.

14            PROSPECTIVE JUROR NO. 63:  No. 63.  Behind me

15    is No. 5.  We worked together on the Slope for a couple

16    decades.  We haven't seen each other in ten years until

17    just meeting in the room here.

18            THE COURT:  Think you could work together?

19            PROSPECTIVE JUROR NO. 63:  Yes.

20            PROSPECTIVE JUROR NO. 48:  47.

21            THE COURT:  You have got adjoining numbers.

22    How do you know each other?

23            PROSPECTIVE JUROR NO. 48:  She and my wife are

24    co-workers.

25            THE COURT:  Do you think you could work

1    together on a jury?

2            PROSPECTIVE JUROR NO. 48:  Yes.

3            THE COURT:  Anybody else feel you know any of

4    the other potential jurors here?

5            All right.  And I know somebody said that this

6    might be the case, anybody who feels they are personally

7    acquainted with any of the lawyers or the paralegals in

8    this case, all these people sitting at the tables?

9    Anybody feel -- I thought there was somebody that

10   indicated they might know one of the government lawyers.

11           PROSPECTIVE JUROR NO. 49:  No. 49.  Yeah, I'm

12   acquainted with Chrissy, one of the government lawyers.

13           THE COURT:  How do you know each other?

14           PROSPECTIVE JUROR NO. 49:  Went to high school

15   with her brother.  Good friends with her brother.

16           THE COURT:  Do you see her in social settings?

17           PROSPECTIVE JUROR NO. 49:  Not anymore, not

18   since high school.

19           THE COURT:  Very good.  Anybody else know any

20   of these individuals?  All right.

21           And does anyone know of, is personally

22   acquainted with Mr. Wells, it's James Wells, or any

23   member of his family?  Anybody know Mr. Wells?  No.  All

24   right.  I don't see hands raised.

25               There are going to be a number of witnesses

that are going to testify in this case.  And I am going
to have first the government lawyer put forward the list
of those names.  I think we're going to do that on the
overhead, correct, Mr. Skrocki?

MR. SKROCKI:  I am, Your Honor.

THE COURT:  Mr. Skrocki is going to put up a
long list of names.  I'm going to ask him to read that
list as well, and then if you feel you may know any of
these individuals, I'll give everybody an opportunity to
respond.

Go ahead, please, Mr. Skrocki.

MR. SKROCKI:  Thank you, Your Honor.

Hernando Acosta.  Daryl Allison.  Denise
Anderson.  Raymond Anderson.  Scott Arsenault.  Cody
Beauford.  Steven Becker.  Nicola Belisle.  Charlene
Bell.  Gary Bolden.  Arthur Bors.  Sean Bottary.  Kelly
Brockett.  Jason Bullis.  Stephen Cartier.  Helena
Chavez.  Aaron Coggins.  Lynn Concepcion-Glover.  Echo
Davis.  Andrew Devries.  Dennis Dupras.  Annette Ecret.
Willard Ellis.  Pedro Elizondo.  James Encinas.  Derek
Espeland.  Raymond Fillion.  Collette Francisco.
Meredith Frank.  Jacob Gerasimof.  Vicki Grimes.
Michael Haselden.  Leah Henry.  Joshua Honour.  Patrick
Hopkins.  Joseph Hostetler.

THE COURT:  Why don't we stop there.  And

Mr. Skrocki has read a number of names.  As to those names only, anybody recognize any of those names, feel they might know one or more of those individuals?

PROSPECTIVE JUROR NO. 3:  No. 3.  I believe I recognize possibly Raymond Anderson.

THE COURT:  The Raymond Anderson that you know, where does he live?

PROSPECTIVE JUROR NO. 3:  He travels during the winter.  Then lives and fishes out of Chignik during the summer, and resides, I believe, sometimes in Seward.

THE COURT:  Is that the same person?

MR. SKROCKI:  It's not.

THE COURT:  Some names obviously are more common, and we didn't give you a whole lot of information, so feel free if you have a question like that to tell us.

Anybody else that first column of names?  Mr. Skrocki, please proceed to the second column.

MR. SKROCKI:  Alan Jones.  Phillip Jordinelli.  Margaret Kavanaugh.  Donald Kiele.  Kristy Kiele.  Teresa Kiele.  Doug Klein.  Tom Logan.  Troy Lowdermilk.  Brett Mills.  Robert Morton.  Vance Newby.  Kirk Oberlander.  Nathaniel Pacheco.  John Pearson.  David Pizzurro.  Robert Pletnikoff.  Julia Pletnikoff.  Tim Putney.  Jennifer Raymond.  Scott Reckner.  William

1    Reed.  Luke Robinson.  Don Rudat.  Joshua Sanders.

2    Amanda Sanford.  James Schilbach.  Neil Schmidt.  Robert

3    Shem.  Jim Sine.  Kelvin Skongberg.  Daniel Smith.

4    David Smith.  Holly Steeves.  John Stein.  Terry Stein.

5    Angela Strause.  On that column, Judge.

6            THE COURT:  Thank you.  Anybody recognize any

7    of those names, think you might know some of those

8    people or one or more?

9            PROSPECTIVE JUROR NO. 35:  No. 35.  I believe

10   Joshua Sanders, I believe he's in the Guard.

11           THE COURT:  Is that the Joshua Sanders we have

12   here?

13           PROSPECTIVE JUROR NO. 35:  Army National Guard.

14           THE COURT:  All right.  Here in Anchorage or

15   somewhere else?

16           PROSPECTIVE JUROR NO. 35:  No, in Kodiak.

17           THE COURT:  Hold that thought.  Anybody else

18   feel they might know any of those names?

19           PROSPECTIVE JUROR NO. 47:  No. 47.  I don't

20   know if it's the same person, but I knew a Schilbach,

21   Dr. Schilbach.

22           THE COURT:  Here in Anchorage or elsewhere?

23           PROSPECTIVE JUROR NO. 47:  Yes, here in

24   Anchorage.

25           MR. SKROCKI:  Not the same, Your Honor.

1          THE COURT:  Anybody else on that list?

2          PROSPECTIVE JUROR NO. 28:  I got Daniel Smith.

3          THE COURT:  That's a pretty common name.  Where

4     does he live?

5          PROSPECTIVE JUROR NO. 28:  Used to be my son's

6     classmate.

7          THE COURT:  Okay.  In Kodiak?

8          PROSPECTIVE JUROR NO. 28:  Here in Anchorage.

9          THE COURT:  Very good.  Are we ready to proceed

10    to the next list?  Go ahead, Mr. Skrocki, if you would.

11         MR. SKROCKI:  Joe Sturgis.  Olivia Terry.

12    Timothy Tilly.  Angelo Toglia.  Para Upchurch.  Peter

13    Van Ness.  Richard Vorder Bruegge.  Aaron Woods.

14    William Weth.  And Rick Wyant.

15         THE COURT:  How about those names, ladies and

16    gentlemen, anybody recognize any of those?  No.  All

17    right.

18         MR. SKROCKI:  That completes our list.

19         THE COURT:  Mr. Colbath, did you have names

20    that you seek to put out here today?

21         MR. COLBATH:  I do, Your Honor.  I'm not sure

22    that all of these folks will be additional witnesses

23    given the number the government is calling, but some

24    that may additionally appear.

25         Jarrett Andrews.  Steve Beck.  Carl Blain.

```
 1    Arwen Botz.  Park Dietz.  Amanda Fortier.  Collette
 2    Francisco.  Indrea Gainer.  Dr. Song Gan.  Jeremy Goode.
 3    Robert Greene.  Martin Heckerman.  Mark Heinrichs.  Jim
 4    Hoerricks.  Chris Iber.  Bruce Johnson.  Rachelle Joy.
 5    Paul Kish.  Lori McAbier.  Nicholas McAbier.  Susan
 6    McEntee.  Gregg McCrary.  Bruce McNeil.  Michael Natoli.
 7    Wilton Nelson.  Daniel Reisberg.  Gerald Richards.
 8    Deatrich Sheffield.  Kristin Small.  Frank Stearns.
 9    Alex Tschida.  Matthew Wells.  Jennifer Raymond.
10    Jessica Walker.  Deborah Gillis.  And Sarah Graziano
11    (phonetic).
12            THE COURT:  Thank you.  Anybody recognize any
13    of those names or believe you might?  All right.  I
14    don't see -- did I see a hand raised in the back there?
15            PROSPECTIVE JUROR NO. 38:  No. 38.  Robert
16    Greene sounds familiar from Kodiak High School, '82.
17            THE COURT:  Okay.  Thank you.  You can follow
18    up as need be.
19            MR. COLBATH:  Thank you, Your Honor.
20            THE COURT:  Anybody else recognize any of those
21    names?  All right.
22            Then my next question is:  Some of you may have
23    heard about this case.  As I told you, it relates to
24    events on April 12, 2012, in Kodiak, Alaska.  Anybody
25    who believes they may have heard about this?
```

 1          I don't want to hear now what you may have

 2     heard.  If you're not sure, that's okay, you can tell us

 3     about it.  If you believe you may have ever heard

 4     anything about this case, please come forward, give me

 5     your number, and then I will -- we'll ask you questions

 6     privately later.

 7          So anybody believes they may have heard about

 8     this case?  We'll start with the jury box.  We'll just

 9     get your numbers.  If you can tell us and then we'll

10     call you in privately later.

11          PROSPECTIVE JUROR NO. 39:  My number is 39.

12          THE COURT:  39.  Thank you.

13          PROSPECTIVE JUROR NO. 2:  No. 2.

14          THE COURT:  2.  All right.  Anybody else in the

15     jury box believe they may have heard about this case?

16     We'll go over here.

17          PROSPECTIVE JUROR NO. 63: No. 63.

18          THE COURT:  63.

19          PROSPECTIVE JUROR NO. 7:  No. 7.

20          THE COURT:  7.

21          PROSPECTIVE JUROR NO. 3:  No. 3.

22          THE COURT:  3.

23          PROSPECTIVE JUROR NO. 51:  51.

24          PROSPECTIVE JUROR NO. 62:  62

25          THE COURT:  Anybody else in that corner?

1  Center area?

2          PROSPECTIVE JUROR NO. 44: 44.

3          THE COURT:  44.  Thank you.

4          PROSPECTIVE JUROR NO. 29: 29.

5          PROSPECTIVE JUROR NO. 35:  35.

6          PROSPECTIVE JUROR NO. 57: 57.

7          PROSPECTIVE JUROR NO. 23:  23.

8          PROSPECTIVE JUROR NO. 47:  47.

9          PROSPECTIVE JUROR NO. 18:  18.

10         THE COURT:  Anybody else in the middle section

11  believe they may have heard about this case?

12         PROSPECTIVE JUROR NO. 38: 38.

13         THE COURT:  38.  All right.

14         Is that it for the middle section?  Turning to

15  this area.

16         PROSPECTIVE JUROR NO. 43: 43.

17         PROSPECTIVE JUROR NO. 53:  53.

18         PROSPECTIVE JUROR NO. 60:  60.

19         PROSPECTIVE JUROR NO. 12: 12.

20         PROSPECTIVE JUROR NO. 21:  21.

21         PROSPECTIVE JUROR NO. 52:  52.

22         THE COURT:  Anybody else in that section?

23         PROSPECTIVE JUROR NO. 11: 11.

24         THE COURT:  Anybody else believe they may have

25  heard about this case?

1      Well, then my next question is, sometimes the

2  nature of a case can prevent some persons from sitting

3  on the case because of their own past experiences or

4  strong personal feelings.  As I said earlier, this is a

5  homicide case.  There will be some autopsy photos and

6  scenes from a crime scene.

7      And so is this -- is the nature of the charges

8  here one that would be particularly difficult for anyone

9  where they believe they should not serve as a juror on

10 this particular case?  Anybody feel that in this case?

11     PROSPECTIVE JUROR NO. 31:  No. 31.

12     THE COURT:  I made a note and we'll come back

13 to you on that.  Anybody else?

14     All right.  I have a couple questions here

15 about some of the legal issues here.

16     First of all, does everybody understand that

17 under the law in this country, no person that has been

18 charged in a criminal case has to produce any evidence

19 at all in order to defend themselves?  Anybody have

20 trouble with that principle?  Everybody understand that?

21     And under our legal system, a person that has

22 been charged with a crime does not have to testify at

23 the trial, and so at the end of this case, I'm going to

24 instruct that if Mr. Wells did not testify, you are not

25 to consider that fact in evaluating the evidence.

 1          Is there anyone here who would have difficultly

 2   following that instruction about a defendant's right not

 3   to testify?

 4          Likewise, under our legal system, a person

 5   charged with a crime is also entitled to testify at his

 6   or her trial, if he chooses to do so.  So at the end of

 7   the case, I'll instruct you that if Mr. Wells did choose

 8   to testify, you must evaluate his testimony the same way

 9   you would evaluate any other witness's testimony.

10          Is there anyone that would not be able to

11   follow that instruction, understand that component of

12   our law?  All right.  I don't see any hands raised.

13          Then as I mentioned earlier, this trial is

14   expected to last up to five weeks.  And I need to know,

15   and I did hear from some people already and you don't

16   need to come back, but does anyone have any reasons why

17   it would be impossible for you to attend or to

18   participate in this trial for that timeframe?  We'll get

19   those.  Go ahead.

20          PROSPECTIVE JUROR NO. 56:  I work for St. Paul

21   Island.  I'm scheduled to leave to go there tomorrow.

22          THE COURT:  What kind of work do you do at St.

23   Paul?

24          PROSPECTIVE JUROR NO. 56:  I'm the director of

25   their Health and Human Services Department.

1          THE COURT:  How long have you been off the

2     island?

3          PROSPECTIVE JUROR NO. 56:  Maybe a week.

4          PROSPECTIVE JUROR NO. 26:  No. 26.  For the

5     reason I stated before, but also my company will not pay

6     me.

7          THE COURT:  All right.  Who do you work for?

8          PROSPECTIVE JUROR NO. 26:  Glenn Transport in

9     Glennallen, Alaska.

10          PROSPECTIVE JUROR NO. 61:  No. 61.  I have a

11     scheduled -- so the 24th through October 1st, a

12     scheduled trip to Idaho finishing out my deceased

13     mother's effects.

14          THE COURT:  Anybody else in the jury box?

15          PROSPECTIVE JUROR NO. 39:  No. 39.  My sister

16     just had her baby and she's in the hospital for a while.

17     I'm also scheduled to go to Vegas on the 18th of

18     October.  And my company doesn't pay me either.

19          THE COURT:  Thank you.  Where is your sister

20     and the baby?

21          PROSPECTIVE JUROR NO. 39:  Providence.

22          THE COURT:  Here in Anchorage?

23          PROSPECTIVE JUROR NO. 39:  Yeah.

24          PROSPECTIVE JUROR NO. 71:  No. 71.  My mom is

25     getting surgery soon for her heart and she needs me to

1    take care of my dad who is paralyzed.

2              THE COURT:  When is your mother scheduled for

3    the surgery?

4              PROSPECTIVE JUROR NO. 71:  Next week.

5              THE COURT:  Anybody else in the jury box?

6              PROSPECTIVE JUROR NO. 28:  I'm not sure whether

7    if I could -- I would like to serve here, but I'm

8    working right now with the Commissioner of Human Rights,

9    so we're having ongoing cases that we need to finish.

10             THE COURT:  That was 28, correct?

11             PROSPECTIVE JUROR NO. 28:  28.

12             THE COURT:  Anybody else?  Let's start with

13   that section.  Anybody in this section here unable --

14   feels that their situation is one that would make it

15   very difficult to attend every day?

16             PROSPECTIVE JUROR NO. 7:  No. 7.  I work for a

17   company that works remotely.  I am the accountant and

18   bookkeeper and I work on payroll.  There is nobody else

19   in the office except for me.

20             THE COURT:  Okay.  What company is that?

21             PROSPECTIVE JUROR NO. 7:  It's a mining

22   company.

23             THE COURT:  All right.  Thank you.

24             PROSPECTIVE JUROR NO. 57:  For the reasons I

25   stated before.

1          THE COURT:  All right.  Anybody else in the

2     section over here?  No.  How about the center section?

3     Your circumstances are particularly difficult.

4          PROSPECTIVE JUROR NO. 41:  No. 41.  My company

5     wouldn't pay me for being here also.

6          THE COURT:  All right.  What company is that?

7          PROSPECTIVE JUROR NO. 41:  Ravn.

8          PROSPECTIVE JUROR NO. 50:  No. 50.  I would

9     have no problem aside from, again, I don't get paid

10    either, so the five weeks would be a bit of a challenge,

11    not an impossibility but a hardship.

12         THE COURT:  Thank you.

13         PROSPECTIVE JUROR NO. 67:  Can I talk about it

14    privately?

15         THE COURT:  Sure.  I'll make a note.

16         PROSPECTIVE JUROR NO. 36:  No. 36.  I have two

17    other small children, and my husband is on leave today

18    for them.

19         THE COURT:  All right.  Thank you.

20         PROSPECTIVE JUROR NO. 49:  No. 49.  I started a

21    new job last week and my company wouldn't pay me, Ravn.

22         PROSPECTIVE JUROR NO. 64:  No. 64.  Can we talk

23    in private?

24         THE COURT:  Certainly.

25         PROSPECTIVE JUROR NO. 69:  I do not have my own

1  form of transportation.  I rely on my parents to get

2  from Anchorage to Wasilla.

3          THE COURT:  So how did you get here today, with

4  your parents?

5          PROSPECTIVE JUROR NO. 69:  My mom drove me.

6          THE COURT:  Thank you.

7          PROSPECTIVE JUROR NO. 22:  I work for TCC,

8  which is an oil spill response company down in Valdez,

9  and I work as a mechanic there as well as an oil spill

10  responder.  And they wouldn't pay me, and I might be on

11  call.

12          THE COURT:  All right.  Thank you.

13          PROSPECTIVE JUROR NO. 72:  I'm a pastor of a

14  small church.  I have no other staff to fulfill the

15  day-to-day duties if I'm gone for five weeks.

16          THE COURT:  Where is your church?

17          PROSPECTIVE JUROR NO. 72:  Peninsula Christian

18  Center in Soldotna.

19          PROSPECTIVE JUROR NO. 55:  No. 55.  I work for

20  a small insurance office and my boss is currently out of

21  state.

22          THE COURT:  Where do you work?

23          PROSPECTIVE JUROR NO. 55:  I have more than one

24  job.

25          THE COURT:  So you work in an insurance office

1  how many hours a week?

2        PROSPECTIVE JUROR NO. 55:  Three days a week,

3  eight hours a day.

4        THE COURT:  Where else do you work?

5        PROSPECTIVE JUROR NO. 55:  UPS five and a half

6  hours a night five days a week.

7        THE COURT:  All right.  I was getting confused.

8        PROSPECTIVE JUROR NO. 47:  No. 47.  It's not an

9  impossibility, but it would be a hardship.  We rely on

10  my paycheck, and I work 12-hour nights, so I would have

11  to make up my hours.

12        THE COURT:  At night?

13        PROSPECTIVE JUROR NO. 47:  Yes.

14        PROSPECTIVE JUROR NO. 52:  No. 52.  I have

15  three meetings scheduled for the next five weeks.  One

16  in Juneau, one in Portland, and one in Seattle.  And so

17  I have already booked those.  I'm kind of like the lead

18  person that deals with the collaboration of the group

19  that we work with.  I'm the director of admin for the

20  company.

21        THE COURT:  What company?

22        PROSPECTIVE JUROR NO. 52:  The Aleutian

23  Pribilof Island Community Development Association.

24        PROSPECTIVE JUROR NO. 4:  No. 4.  I already

25  have plane tickets leaving the 23rd of this month until

```
 1   the 18th of next month, but it is something that I can
 2   forego, but it would be at an expense.
 3           THE COURT:  Vacation or work?
 4           PROSPECTIVE JUROR NO. 4:  Vacation.
 5           THE COURT:  I appreciate that.  Anybody else?
 6           PROSPECTIVE JUROR NO. 60:  No. 60.  Due to
 7   close on a house next week.  Also with the Caswell Fire
 8   Department and we have been in the throes of the
 9   McKinley Fire here lately, though that's wrapping down,
10   but it would still be a hardship on the teammates there.
11           THE COURT:  Where is the house closing?
12           PROSPECTIVE JUROR NO. 60:  Meadow Lakes.
13           PROSPECTIVE JUROR NO. 34:  No. 34.  I'm
14   retiring on the 13th of this month and I have a trip
15   planned for the following week for my retirement.
16           THE COURT:  All right.  Anybody else feel their
17   circumstances are particularly --
18           PROSPECTIVE JUROR NO. 9:  No. 9.  I don't know
19   if my job will let me be gone for that long.  I only get
20   up to like two weeks, that's it.
21           THE COURT:  Where do you work?
22           PROSPECTIVE JUROR NO. 9:  Wal-Mart.
23           THE COURT:  Do they pay for you to be on jury
24   duty?
25           PROSPECTIVE JUROR NO. 9:  Yes.
```

1            PROSPECTIVE JUROR NO. 28:  On the top of my

2 other job, I am the one who is dealing with the payments

3 for the State of Alaska and nobody else is doing it

4 except me.

5            THE COURT:  But you work for the State?

6            PROSPECTIVE JUROR NO. 28:  Yes, ma'am.

7            THE COURT:  Anybody else?  Okay.

8            Very good.  So anything else that comes to your

9 mind as to why you think you should not serve as a juror

10 in this particular case?  Anything that I haven't asked

11 about that you're thinking, boy, I think these lawyers

12 and the judge should know this about me and I just

13 haven't asked about it?

14            PROSPECTIVE JUROR NO. 56:  I sat for you, Judge

15 Gleason, when I was at OCS.

16            THE COURT:  You did look a little familiar.  I

17 used to be a state judge, so it's been a number of

18 years.

19            All right.  It's actually a good question.

20 Does anybody feel they know either Emily, my law clerk

21 here; or Caroline, the courtroom deputy; Sonja, who is

22 our court reporter?  Anybody feel you know any of us?

23            PROSPECTIVE JUROR NO. 31:  No. 31.  I was here

24 for the last question.  I'm sorry.

25            THE COURT:  That's fine.

1            PROSPECTIVE JUROR NO. 31:  Can I talk about it

2      privately?

3            THE COURT:  I think we have you down to talk

4      privately, so hold that thought and I'll come back to

5      it.  Your number again?

6            PROSPECTIVE JUROR NO. 31:  31.

7            PROSPECTIVE JUROR NO. 38:  No. 38.  I was under

8      your courtroom under a custody case years ago.

9            THE COURT: All right.  Very good.  Anything

10     about that that would make it hard to follow

11     instructions that I might give in this case?  Sir,

12     anything about the fact that you were a litigant in

13     state court when I was the judge that would make it hard

14     for you to follow my instructions in this case?

15            PROSPECTIVE JUROR NO. 38:  No, ma'am.

16            THE COURT:  Very good.  Anybody else?

17            And let me say that, as I said at the

18     beginning, it is my job to set forth the law that's

19     applicable to this case.  I'll do so with written jury

20     instructions that I'll read to you at the end of the

21     trial prior to the jury's deliberations.  You will also

22     have written copies of those instructions in the jury

23     room.

24            Jurors must be willing to follow all of the

25     jury instructions that apply and as I set it forth and

not apply whatever you think the law should be or as others may have told you it is. So really it's to follow up on the same question I asked the gentleman in the back there, and that is: Is there any one of you who cannot commit to strictly follow the Court's instructions?

There is no right or wrong answer. All right. I don't see any hands raised.

Let me give you some examples. The law requires that a defendant is presumed to be innocent and that the government must prove a defendant's guilt beyond a reasonable doubt.

Does anybody feel they could not follow that particular instruction? I don't see hands raised.

Secondly, the law does not require a defendant to testify in a criminal case, as I said earlier, and provides that a jury can't hold that fact against a defendant that might choose not to testify.

Anyone feel they can't follow that instruction? I don't see hands raised.

And also, the law does not impose any burden on a defendant in a criminal case to prove innocence, the burden rests only on the government. Anybody feel that they could not follow that instruction?

All right. And the law also requires that a

jury decide a case only on the evidence that's presented
here in the courtroom by the witnesses that testify and
the exhibits that are admitted into evidence.

Is there anyone who can't follow that
instruction?

All right. And then what I am going to do is
the following, ladies and gentlemen: It's 11:15 now.
Those of you who asked to speak privately we are going
to have come into the courtroom one at a time and take
up all of those topics. I hope that that proceeds
efficiently. I expect it will.

And then we will have everybody come back. And
what I'm thinking is we'll take about a ten-minute break
here for counsel, for the parties, and then we'll have
Emily and one of my other staff will be calling out the
names of the numbers to come down here one at a time and
do that and go through these hopefully as quickly as
possible.

And I'll have the rest of you at the jury
assembly room, and then when we have concluded that
process, we'll see what time it is and I'll schedule
further proceedings. I do have every expectation to
complete the jury selection today, so that is our hope.
And we'll take a lunch break as well later on today, but
for now, we'll take about a ten-minute break, counsel,

1    we'll come back and I will have my assistant here work

2    with another person to bring these individuals back.

3    Meanwhile, we can make a list, if you could, of the

4    private ones.

5            If you go back to the jury assembly room and

6    you think of a matter that you wish you had said you

7    wanted to address privately, simply tell Jerri, the jury

8    clerk that, and she can inform my staff accordingly.

9            I want to stress again the critical importance

10   to a fair trial to both the government and to the

11   defendant is that people not do any research about a

12   case, not talk about the case.  It goes back to the

13   point I was just making that you are to decide this case

14   only on the evidence that's going to be presented here

15   in the courtroom.

16           So please -- I know everybody -- it's just

17   amazing to me when I started as a judge nobody had a

18   phone.  Now everybody has a phone or two and iPads.  And

19   it is critical to this process that you not do any

20   research about this case or the participants in it while

21   you're here in this jury selection process.

22           So with that said, we'll take about ten

23   minutes.  And then wait in the assembly room and we'll

24   bring you one at a time and take up these private

25   questions.  We'll go off record.

1          DEPUTY CLERK:  All rise.  Court stands in a

2    brief recess.

3          (Recessed from 11:20 a.m. to 11:37 a.m.)

4          (Prospective jurors absent)

5          DEPUTY CLERK:  All rise.  Her Honor, the Court,

6    the United States District Court is again in session.

7          THE COURT:  Please be seated.  We're back on

8    record without the jury present.

9          Let me just say first when I said let's not use

10   the term "expert," it was with dismay that I saw the

11   list that said "defense experts" up there.  Mr. Colbath,

12   I know we're all trying to do our best, but we can do

13   better going forward.

14          MR. COLBATH:  It never even occurred to me,

15   Your Honor, quite honestly.

16          THE COURT:  I'm going to try to keep a pleasant

17   disposition and I know we all are, but if there is

18   something that troubles me the most is when I spend

19   hours doing orders and then they are not precisely

20   complied with by all of the participants.  Having said

21   that, let's move forward.  I know it was unintended

22   oversight.

23          MR. COLBATH:  I never envisioned having to show

24   the list.  I thought I was just going to have to read

25   it, so that list was handed this morning to the

1    government.

2            THE COURT:  It's all good.  In any event, I

3    also wanted to correct or clarify anything I may have

4    said this morning about the presumption of innocence.

5    And a different law clerk found me a case, *U.S. v.*

6    *Perlaza*, 439 F.3d 1149, from the Ninth Circuit, which

7    talked about how the presumption of innocence goes with

8    the jury when it deliberates.

9            And in that case, the government

10   inappropriately said that the presumption of guilt went

11   to the jury room, and the judge was found to have not

12   sufficiently clarified that misstatement, which the

13   government acknowledged on appeal.

14           In any event, the case is helpful on how the

15   presumption of innocence does go with the jury when it

16   deliberates and cites to a prior case, *Cummings*, which

17   so held as well in the circuit.

18           I would propose that we excuse jurors 36, who

19   is 35 weeks pregnant, and 57, who is the kidney

20   candidate.  Mr. Skrocki, any objection to that?

21           MR. SKROCKI:  Absolutely not.

22           THE COURT:  Mr. Colbath, 36 and 57?

23           MR. COLBATH:  We're in agreement.

24           THE COURT:  Any others that you would propose

25   we excuse at this point in time?  I'm open to

suggestions.  Those seemed the most obvious, I suppose.

MR. SKROCKI:  Nothing from us.

THE COURT:  Mr. Colbath, any other at this time?

MR. COLBATH:  Not at this point, Your Honor.

THE COURT:  Those two can be excused. Sometimes I make people stay around, but those two I think are so obvious that excusing them at this time should not cause any surprise to the other panel members, so we'll just go ahead and thank and excuse them.  You can notify the jury clerk.

We have a list here of 30-some-odd names for private inquiry.  And so at this point, I would propose -- I'm going to do them in the order of individuals who indicated that they had heard something about the case. This might be handy to give your -- I can read the numbers, how about that?

MR. SKROCKI:  Thank you.

THE COURT:  39, 2, 63, 7, 3, 51, 62, 44, 29, 35, 57, who has been excused, 23, 47, 18, 38, 43, 53, 60, 12, 21, 52, and 11.  Those were all the individuals that our courtroom deputy indicated had heard about the case.

In addition, these additional jurors had not indicated they heard about the case, but had a different

```
 1   reason or reasons for seeking to confer privately, and
 2   that was 15, 17, 73, 24, 26, 67, 64, and 31.
 3           So those are the numbers that the Court has.
 4   Mr. Skrocki, do you have any additions to those numbers?
 5   Take a moment.
 6           MR. SKROCKI:  A quick moment just to -- I have
 7   a list of the folks who had heard about the case.  I
 8   want to make sure mine is aligned with yours.  I believe
 9   so.  Just one moment.
10           (Pause)
11           THE COURT:  Same question in a bit here,
12   Mr. Colbath.
13           (Pause)
14           THE COURT:  Why don't we do this while you're
15   reviewing that, I'll have the other clerk -- there he is
16   -- get 39, 2, 63, 7 and 3, who we know are going to have
17   questions, go and get those.  When you have those five
18   seated, just stick your head in the door and Emily can
19   come get the first one.
20           MR. SKROCKI:  Thank you.  My list does track
21   with the Court's list.  We would request the courtroom
22   be sealed.
23           THE COURT:  Any objection, Mr. Colbath?
24           MR. COLBATH:  I think given the nature, that's
25   appropriate.
```

1          THE COURT:  We'll have you back in for the

2    public portion just as soon as we get there later this

3    afternoon.  All right.  Very good.  Thank you, both.

4          (Pause)

5          THE COURT:  We'll put this under seal.  Any

6    objection?

7          MR. SKROCKI:  No.

8          MR. COLBATH:  This portion of the record?

9          THE COURT:  Yes.

10          MR. COLBATH:  Yeah, that's fine.

11          THE COURT:  Mr. Colbath, did you get those same

12    numbers as indicating they wanted to take up matters

13    privately?

14          MR. COLBATH:  So in addition to the list who

15    had heard about the case?

16          THE COURT:  I can read again the additional

17    numbers.  That would be 15, 17, 73, 24, 26.

18          MR. COLBATH:  Hold on.  73, 24.

19          THE COURT:  26, 67, 64 and 31.

20          MR. COLBATH:  I additionally had No. 40, who

21    indicated that she had medical issues that she would

22    like to discuss in private.  I had No. 50.

23          THE COURT:  All right.  Do you have a note of

24    what that was?

25          MR. COLBATH:  My note --

```
 1            THE COURT:  Law enforcement?
 2            MR. COLBATH:  Right, had a previous trial or
 3   law enforcement experience and wanted to discuss in
 4   private.
 5            And No. 31 who indicated --
 6            THE COURT:  31 I have.  50 did not say wanted
 7   to discuss in private.  And 40 had medical issues.  Did
 8   you have 40 in private?
 9            MS. ELISON:  I did.
10            THE COURT:  What about 50?
11            MS. ELISON:  I did not have 50.
12            MR. COLBATH:  It was medical issues, Your
13   Honor.
14            MR. SKROCKI:  40, Your Honor, medical issues.
15   And 50, good and bad issues with law enforcement.
16            THE COURT:  All right.  So did you show wanted
17   to discuss privately, 50?
18            MR. SKROCKI:  I think that would be
19   appropriate.
20            THE COURT:  I hear the defense would like that
21   too, so we'll add 50.  I'll just try to remember to tell
22   that person that he might have not said privately, but
23   we had some follow-up questions.
24            MR. COLBATH:  The Court added No. 40 as well?
25            THE COURT:  40 as well.
```

1    MR. COLBATH:  Then my list I think that

2    matches.

3    THE COURT:  Very good.  All right.

4    (Pause)

5    (Proceedings took place that are not included

6    in this Partial Transcript, after which, proceedings

7    continued as follows:)

8    (Prospective jurors absent)

9    DEPUTY CLERK:  All rise.  Her Honor, the Court,

10   the United States District Court is again in session.

11   THE COURT:  All right.  Please be seated,

12   everyone.  And we're bringing the jury down?

13   DEPUTY CLERK:  Yes.

14   THE COURT:  Okay.  So to review here, we're

15   going to call 36 names.  What we have been discussing is

16   the logistics of the wheelchair person.  We're going to

17   keep that spot empty, and if her number is called,

18   she'll be in that position, but since everybody is going

19   to refer to these individuals by their number on their

20   clothing, you never call this person Juror No. 1 in

21   their seat.  Am I clear there, you only go by their

22   clothing number?  Then it doesn't matter they are going

23   to be seated potentially out of the order.  Does that

24   make sense?

25   MR. SKROCKI:  Yes, ma'am.

```
 1              THE COURT:  Good.

 2              (Pause)

 3              (Prospective jurors enter courtroom)

 4              THE COURT:  Good afternoon, ladies and

 5      gentlemen.  Please have a seat anywhere in the back.

 6              Well, welcome back, ladies and gentlemen.  Go

 7      ahead and be seated.  Please be seated, everyone.

 8              Go ahead and find a seat.  There should be a

 9      seat.  We counted, so we're hopeful.

10              All right.  What we're going to do at this

11      point, ladies and gentlemen, is the clerk, the courtroom

12      deputy here is going to randomly call 36 names.  And

13      there are two ways we can do this now, we can print a

14      computer list, which doesn't seem random, or we can use

15      the box from old days, and Caroline is going to use this

16      box to randomly call 36 names.

17              If your name is called, we'll direct you where

18      to go.  So go ahead, please.

19              DEPUTY CLERK:  Juror 33.

20              THE COURT:  Juror 33, if you could come

21      forward.  We're going to start right back here in the

22      back row in the back chair closest to the back of the

23      courtroom.

24              DEPUTY CLERK:  Juror 46.

25              THE COURT:  Juror 46.
```

```
1           DEPUTY CLERK:  Juror 67.

2           THE COURT:  Juror 67.

3           DEPUTY CLERK:  Juror 20.

4           Juror 42.

5           Juror 41.

6           Juror 5.

7           Juror 39.

8           Juror 52.

9           Juror 21.

10          THE COURT:  We'll have you in the front row all

11   the way at the end, sir.

12          DEPUTY CLERK:  Juror 71.

13          Juror 12.

14          Juror 61.

15          Juror 28.

16          Juror 73.

17          Juror 38.

18          Juror 62.

19          THE COURT:  We need to do musical chairs now,

20   and that is everybody in the front row, if there is

21   anybody there, get up and move to an empty seat in the

22   back because we're going to put Juror No. 62 all the way

23   over on that side.  Over here.  Thank you.

24          DEPUTY CLERK:  Juror 56.

25          MR. COLBATH:  Your Honor, I think we're out of
```

1    order here.

2            DEPUTY CLERK:  Sir, you'll need to move one

3    more back.  He's volunteering, but I haven't pulled your

4    number yet.

5            THE COURT:  All right.  Juror 56.  Did we find

6    56?  Very good.

7            DEPUTY CLERK:  Juror 43.

8            Juror 10.

9            Juror 9.

10           Juror 25.

11           Juror 8.

12           Juror 19.

13           Juror 63.

14           Juror 50.

15           Juror 70.

16           Juror 55.

17           Juror 35.

18           Juror 14.

19           Juror 15.

20           Juror 18.

21           Juror 2.

22           Juror 49.

23           THE COURT:  So 49, first seat in the second row

24   behind 35.  There you go.

25           DEPUTY CLERK:  Juror 44.

1          THE COURT:  And last number should be?

2          DEPUTY CLERK:  Juror 23.

3          THE COURT:  23.  All right.  So to the people

4   whose number wasn't called, it's quite possible that

5   during the course of our discussion here that you may be

6   called forward to replace a person whose number was

7   called, so I would ask you to remain present here.

8          And I wanted to say too, I meant to earlier and

9   I neglected to do so, we do have hearing assistive

10  devices, so if anybody has trouble hearing and wanted to

11  try these, raise your hand and we can give them to you.

12  People seem to really like them.

13         All right.  So what we're going to do next then

14  is you should all now have, the 36 numbers that were

15  called, what is called a Juror Personal History

16  Questionnaire that was on your seat.  If you would take

17  that questionnaire, and beginning with Juror No. 1,

18  state your juror number, et cetera.

19         Where it says "place of residence," we don't

20  need an address, a mailing address.  Just your community

21  of residence is all we're seeking there.

22         So Juror No. 1, go ahead, please.

23         PROSPECTIVE JUROR NO. 33:  I'm Juror No. 33.

24  Place of residence is Soldotna.  Length of residence in

25  Alaska is ten years.

1          Occupation:  I am an early Head Start home

2    visitor, and I am employed by Kenaitze Indian tribe.  I

3    have worked for them for the past five years, first for

4    preschool for two years and now doing this job.

5          Highest level of formal education is an

6    associate's degree.

7          I am single.  I have no children.  Hobbies and

8    clubs:  I like to go hunting, fishing, and I do jujitsu.

9    I'm a gun owner.

10         How do I get my news?  I don't watch it a whole

11   lot.  I haven't had cable since I was ten years old, so

12   not a whole lot.

13         No military service.  Prior jury service I

14   haven't had.  And right now, I don't think there is any

15   reason I shouldn't be able to serve.

16         THE COURT:  So have you had prior jury service

17   or no?

18         PROSPECTIVE JUROR NO. 33:  No.

19         THE COURT:  Very good.  Thank you.  Go ahead,

20   please pass that over.

21         PROSPECTIVE JUROR NO. 46:  Place of residence

22   is Wasilla.  Length of residence in Alaska:  39 years.

23         I'm an office manager with Matanuska Valley

24   Federal Credit Union.  I have actually worked there for

25   17 years.

1          Highest level of formal education:  High school

2     graduate.

3          Marital status:  Divorced.  I have two

4     children, both the age of 12.

5          Hobbies, clubs and organizations:  I like to

6     hike, go fishing, read.

7          Not a gun owner.  Get my news mostly from

8     television.  No military service.  Yes, I have had prior

9     jury service, civil case, a verdict was reached.  I was

10    not the foreperson.  And I have never been on grand

11    jury.  And I don't have any reason why I can't serve.

12          THE COURT:  All right.  Thank you.

13          PROSPECTIVE JUROR NO. 67:  Place of residence

14    is Wasilla, Alaska.  I have been here for -- or there

15    for 31 years.

16          Occupation:  I am operations hiring manager at

17    Subway.  I have worked there for 13 years.

18          Highest level of education:  Some college.

19          Married.  No children.

20          Snowmobiling, hiking, are my hobbies.  Yes, gun

21    owner.  News through social media and TV.

22          Not military service.  No prior jury service.

23    And other than the reasons listed before, no other

24    reasons.

25          PROSPECTIVE JUROR NO. 20:  Juror No. 20.  I

live in Anchorage, been here 38 years.

I'm a PSM engineering tech with Conoco. Worked there for 20 years. High school degree.

I'm single. I have two children. One is a chef. The other is a stay-at-home dad.

I like to garden, work with my dog like in agility. I do have a gun. Watch the news in the morning.

No military service. I was selected on a jury but I was recused. Does that count?

THE COURT: That's fine.

PROSPECTIVE JUROR NO. 20: There is no other reason why I should not be a jury.

THE COURT: So recused at the end? You were chosen as the alternate?

PROSPECTIVE JUROR NO. 20: Because of the type of case.

THE COURT: All right.

PROSPECTIVE JUROR NO. 42: Juror No. 42. Residence: Anchorage, Alaska. Moved here in 1994.

I'm a tire technician. I have been doing this since 2000. Education: High school.

I'm married. My wife is an accountant.

Don't own a gun. No military. I don't see why I can't serve on jury duty.

1          THE COURT:  Have you ever been on a jury, the

2     question there?

3          PROSPECTIVE JUROR NO. 42:  Maybe two years ago.

4          THE COURT:  All right.  Were you on a jury in a

5     criminal or civil case?

6          PROSPECTIVE JUROR NO. 42:  No, I got released.

7          PROSPECTIVE JUROR NO. 41:  Juror 41.  I live in

8     Bethel.  I have been in Alaska 26 years.

9          Employed with Ravn for three years now.  Before

10    that, I was working at YKHC for four years.  Highest

11    level of education:  I graduated.

12         Single.  I have two kids under 12.  Don't

13    really have hobbies or clubs or organizations.  I don't

14    own a gun.  I get my news from friends, family.

15         No military service.  And I was summoned to do

16    jury in Bethel, but I was excused.  And I don't think I

17    would be able to do jury here also.

18         THE COURT:  Because of your job commitments?

19         PROSPECTIVE JUROR NO. 41:  Yes.  Uh-huh.

20         THE COURT:  Anything else that you haven't

21    talked about?

22         PROSPECTIVE JUROR NO. 41:  Did I mention I was

23    a single mom?

24         THE COURT:  Thank you.

25         PROSPECTIVE JUROR NO. 5:  Juror No. 5.

Resident of Anchorage, Alaska.  Been a resident of
Alaska for 40 years.  There was a six-year break in
between that 40 that I was out of state.

I work for Schlumberger as a sales engineer.
Have been with them for over 15 years.  High school
education.

I am married.  Have four children, all adults.
Their occupations:  Two of them work in the restaurant
industry.  One does hair.  And one is a caretaker for
elderly.

Hobbies:  Golf, fishing.  I am a gun owner.
Get the majority of my news off of social media.

No military service.  I have two prior jury
service, one where they came to a settlement before they
actually selected the jury, so I was there, but there
was actually no jury selected.  The other was a grand
jury that I did serve on.

THE COURT:  Here in Alaska?

PROSPECTIVE JUROR NO. 5:  Yes, ma'am.

THE COURT:  All right.

PROSPECTIVE JUROR NO. 5:  And no other reasons
why.

PROSPECTIVE JUROR NO. 39:  Juror No. 39.  I
have been in Wasilla for probably 12 years.  I'm a
barista at the Perfect Start in the Valley.  I have been

1    doing that for two and a half years now.

2            I graduated high school.  I'm single.  I don't

3    have kids of my own, but I do take care of two infants.

4    I do things -- as hobbies, I do things with them.

5            I am a gun owner.  I get my news from TV and

6    social media.  My dad was in the military for my whole

7    child -- or not really my whole childhood, but he was a

8    Ranger in the military.

9            I have never been in a jury service.  And

10   reasons I can't is because I am going to be out of town,

11   I have to take care of the two small children and I

12   couldn't afford to not work for five weeks.

13           THE COURT:  Thank you.  If we could pass it all

14   the way down here.

15           PROSPECTIVE JUROR NO. 52:  Juror No. 52.  Place

16   of residence:  Anchorage.  Lived in Alaska for 38 years.

17           Director of administration for the Aleutian

18   Pribilof Island Community Development Association.  Last

19   five years the same, director of administration for same

20   company.

21           Highest level:  Bachelor's degree in science.

22   I'm married.  My wife, she works for the Aleutian

23   Pribilof Islands Association as a curriculum developer.

24           I have one child.  She's going to graduate

25   school.

 1          Hobbies are hunting, fishing, and that's about
 2     it, hunting and fishing.  I am a gun owner.  I get my
 3     news from radio and TV.
 4          Not a military service.  No jury duty.  And my
 5     job commitments that may stop me from working or being a
 6     juror.
 7          THE COURT:  All right.
 8          PROSPECTIVE JUROR NO. 21:  Juror No. 21.
 9     Palmer, Alaska, 42 years.  I'm a home mom.  Just getting
10     back into working.  I'm going to be a sub teacher with
11     the Mat-Su School District.  I also worked with the
12     Iditarod Trail Committee in the past five years.
13          High school diploma with a little bit of
14     college classes.  I'm married.  He is a tire guy.  I
15     have a five-year-old and two adult children, and their
16     occupations are undetermined.
17          Hobbies:  Fishing.  Not much.  Gun owner:  Yes.
18     Get my news from social media and TV.
19          No military service.  I have had jury duty, but
20     never been on a jury, I guess.  No other reason except
21     for my five-year-old.
22          PROSPECTIVE JUROR NO. 71:  Juror No. 71.  I
23     live in Anchorage, Alaska for 18 years.  I work in
24     McDonald's.  I'm a manager.  For four years I have been
25     working there.

1          I graduated high school this year.  I'm not
2    married.  I have no children.  I have no hobbies.  I'm
3    not a gun owner.  I don't watch the news.
4          I'm not a military service.  And never did jury
5    service.  The reason I can't stay is my mom is doing the
6    surgery next week.
7          PROSPECTIVE JUROR NO. 12:  Juror No. 12.  I
8    live in Anchorage, Alaska.  I have been in Alaska for
9    39 years.  I'm an underwriting manager for the Alaska
10   Municipal League Joint Insurance Association.  I have
11   been working with them since 2005.
12         I have some college.  I am married.  My wife
13   does not have an occupation.  I have two adult children.
14   My son is a delivery driver and I have a daughter with a
15   disability who is not employed at this time.
16         My hobbies:  I do internet gaming and PC
17   gaming.  I am a gun owner.  I get my news, some
18   television, some on the internet.
19         No military service.  Yes, I did serve on a
20   jury.  It's been over 20 years ago.  It was a criminal
21   case.  We did reach a verdict.  I was not the
22   foreperson.  And I have not served on a grand jury.  And
23   I can't think of any reason I could not serve.
24         PROSPECTIVE JUROR NO. 61:  No. 61.  Resident of
25   Seward, Alaska.  I have been a resident for 35 years.

Then I was gone for ten years out of state taking care
of a parent, and then returned five years.

Occupation:  I'm retired, but small business
owner and also was a registrar for a charter school.
What I have done last five years:  Working and retired.
I have done vocal training instructor for home school
students.

And I have had some college.  Marital status, I
am married.  My husband was a journeyman electrician,
but he's now retired also.  We have four grown children,
the children's occupations are:  Contractor, journey
electrician, stay-at-home mom, and esthetician.

My hobbies are clubs, our grandchildren,
singing, painting and hiking.  I am a gun owner.  Get
news by internet or paper.

No military service.  And yes, I have had prior
service of jury, criminal and civil case.  Verdict was,
yes, was found.

I also was an inquisition about someone dying.
That was in Seward.  And then I was on a grand jury in
Kenai.  And the only reason that I might not be able to
serve is for my trip that's already scheduled on
September 23rd to October 1st, and that's to take care
of my deceased mother's effects.

PROSPECTIVE JUROR NO. 28:  No. 28.  Place of

residence:  I'm in Anchorage.  I am here in Alaska for
the last 19 years.

I am working with the State of Alaska in their
Health and Social Services.  I have been in the State
for 15 years working as an accounting tech.

I finished a bachelor of science in business
administration, majored in accounting.

I am divorced.  I have only one child, and
right now he is not here.  He's working as a tax
accountant.

My hobbies:  I am in the league for tennis,
Alaska tennis, and bowling.  And I'm with the Filipino
association.

I am not a gun owner.  I'm using social media
for the news.  I'm not in military.  I was called for
jury duty service only one time, but I was released.
This one is the second time.

The reason that I cannot stay or serve right
now, because I am one of the commissioners for the human
rights, so we're conducting the interview right now for
the executive director.  And also doing the payments for
the childcare providers that needs to be done daily.
And also I'm also booked for a trip outside Alaska.

THE COURT:  When is the trip?

PROSPECTIVE JUROR NO. 28:  September 20th to

27th.

THE COURT:  Where are you scheduled to travel?

PROSPECTIVE JUROR NO. 28:  September 20th and be back on the 27th.

THE COURT:  Where are you scheduled to go?

PROSPECTIVE JUROR NO. 28:  Going with a family friend to Mexico.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 28:  I already have the ticket bought.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 73:  Juror No. 73. Anchorage, Alaska.  I have been here for about ten years plus.

Unfortunately, I don't work right now.  I have been dealing with some past things that's taken more than five years, unfortunately.

High school.  I have never been married.  I have no children.  I play video games online and art when I'm not doing that.

I live with two gun owners.  I'm not one of them.  I get my news however I can.  I'm not in the -- I have never been in the military.  I have never done jury service, and I don't really have a reason not to be here.

1          THE COURT:  All right.  Thank you.

2          PROSPECTIVE JUROR NO. 38:  No. 38.  Place of

3    residence, Alaska, Anchorage.  I have been here in

4    Alaska for 51 years.

5          My occupation is a retail store manager,

6    convenience store manager.  Employer is Anabi

7    Oil/Tesoro.  I have been there 14 years.

8          High school graduate.  Couple years of college.

9    Not married.  I have a 14-year-old daughter.

10          And my hobbies are woodworking.  And I don't

11    own a gun.  And I get my news from TV.  Not been in the

12    military.

13          And I have served on a grand jury before

14    several years ago.  And aside from working seven days a

15    week, there is nothing that, other than that, that's

16    really only thing that would prevent me.

17          THE COURT:  Tesoro will cover your pay when

18    you're on jury duty, I believe?

19          PROSPECTIVE JUROR NO. 38:  They have told me

20    they would.

21          THE COURT:  All right.  Thank you.

22          PROSPECTIVE JUROR NO. 62:  Juror No. 62.  I

23    live in Kasilof, Alaska.  I have lived here about ten

24    years.

25          I am three years retired, having worked ten

years prior to that for Wal-Mart. I have an applied associate and applied science degree in poultry science.

Not married. Too many hobbies. And belong to the Eagles Club in Kasilof.

I own guns. I get my news newspaper, radio and internet.

Served in the military, Vietnam vet, E-4 at discharge. Called for prior jury service and not selected. The only reason I would like to skip this is I got to get back to my critters and get ready for winter.

THE COURT: All right. Thank you. Juror No. 56.

PROSPECTIVE JUROR NO. 56: Palmer, 23 years. Health and Human Services Director for Valley Community of St. Paul Island in St. Paul Island, Alaska.

Been a social worker, psychologist for the past five years. Master's degree.

Marital status is married. I have got a 13-year-old and an adult child who is a criminal justice major in school.

Hobbies include hiking, a bunch of other stuff. Gun owner, yes. Don't watch the news.

Military was in the Army, discharged at E-4. Was in the Air Force, discharged at second lieutenant.

1          No prior jury.  And I travel a lot for work.

2          THE COURT:  Thank you.

3          PROSPECTIVE JUROR NO. 43:  Juror 43.  I live in

4   Anchorage, Alaska.  I have been in Alaska for 45 years.

5          I'm a database administrator for the State of

6   Alaska.  I have done that for the past two years.  And

7   then three years prior, I was an analyst programmer for

8   the Department of Natural Resources.  I have bachelor's

9   of science in computer science.

10          I'm married.  My wife owns her own business and

11   she's a care coordinator.  I have two children, 12 and

12   6.

13          My hobbies are reading, music and camping.  I

14   don't own a gun.  I get my news newspaper, internet,

15   radio, television.

16          I have never been in the military.  I have

17   served on a jury and it was a criminal case and a

18   verdict was reached.  I wasn't the foreperson.  I have

19   never been on a grand jury.  There isn't any reason I

20   can't serve.

21          PROSPECTIVE JUROR NO. 10:  No. 10.  Anchorage.

22   Been in Alaska 41 years.  I'm a manager of a general

23   contractor, House Surgeons.

24          I have an associate's degree.  I'm widowed.

25   Two adult children, both work for federal civil service.

1          Hobby is gardening.  I own guns.  Get my news

2    through TV or radio.

3          Military service, E-8.  Been on a jury before,

4    criminal case.  Reached a verdict.  I was not the

5    foreperson.

6          And there is no reason that I couldn't serve.

7          PROSPECTIVE JUROR NO. 9:  Juror No. 9.

8    Residence, Kodiak, Alaska.  26 years in Alaska.

9          My occupation is customer service manager with

10   Wal-Mart.  Three years as a cashier and service desk.

11   And then the next five years after that, I became a

12   customer supervisor.

13         And for my education, I was a part-time student

14   for the college.  I am single.  I have no children.  My

15   favorite hobby to do is hiking, going outdoors, and

16   playing video games.

17         I do not own any weapons.  I get my news

18   through social media, internet, so forth.  Not in the

19   military.

20         For prior jury, I served in grand jury in 2013.

21   And I have no reason why I should not serve jury.

22         PROSPECTIVE JUROR NO. 25:  Juror 25.  Place of

23   residence is Homer.  The length I have been in Alaska,

24   probably total of 12 years; two when I was younger and

25   ten now.

1    My occupation, I'm a PIC for Safeway.  Then for
2  about a year and a half and for the four prior, I was a
3  -- I worked at Arc of Anchorage.

4    I have a high school diploma.  I'm also
5  certified to be a nurse assistant.  My marital status is
6  single.  I have one 12-year-old son.  My hobbies are
7  basically what he needs.

8    I'm not a gun owner.  I get my news through
9  social media.  No service, no military service.  I have
10 done one criminal case about 15 years ago.  I served on
11 it.  There was a verdict reached.  I was not the
12 foreperson.  And other than that, that's it.

13   PROSPECTIVE JUROR NO. 8:  Juror No. 8.
14 Wasilla, Alaska.  40 years.

15   Construction.  Trade school.  Single.  Two
16 daughters, stay-at-home moms.

17   No hobbies.  No guns.  News from the radio.  No
18 military.  No prior jury service.  And I can't think of
19 any reason.

20   PROSPECTIVE JUROR NO. 19:  Juror No. 19.  I
21 live here in Anchorage.  I have lived here for 40 years.

22   I'm a fleet manager with Alaska Native Tribal
23 Health Consortium.  I have worked there for the past 14
24 and a half years.

25   My highest education is a high school graduate.

1    I am married.  I have an eight-year-old and a

2    13-year-old.

3            My hobbies is hockey, coaching hockey, and

4    hunting and fishing.  I do own guns.  I mostly get my

5    news from radio and internet.

6            I have been summoned for jury duty, but never

7    picked.  And there is no reason I shouldn't be able to.

8            PROSPECTIVE JUROR NO. 63:  Juror 63.  Soldotna,

9    Alaska.  46 years in the state.

10           I have been retired for more than five years.

11   I worked on the Slope before that for a pretty long

12   time.  I have a bachelor's degree.

13           I'm single at this point in time.  I have four

14   adult children.  Two of them are teachers and two of

15   them work in the oil industry.

16           Hiking, outdoor activities.  I am a gun owner.

17   I get my news from news sources on the internet and

18   newspapers also.  I did not have any military service.

19           I have been on a juries before, criminal cases.

20   A verdict was reached.  I was not the foreperson.  And I

21   have not been on grand jury.  And I don't see any reason

22   why I can't serve on this jury.

23           PROSPECTIVE JUROR NO. 50:  Juror No. 50.

24   Wasilla, Alaska.  13 years in Alaska.

25           I'm a licensed general contractor.  I have been

doing contracting construction work the last five years.
High school, trade school.

Currently married. She is a school teacher.
Hobbies include hiking. I am a gun owner. I don't get
a lot of news. Social media.

No military. I have not been called for jury
service before. The only reason I might not be able to
serve is because five weeks would require foregoing
90 percent of the contracts I have for the rest of the
year because I don't get paid if I don't get work done.
Other than that --

THE COURT: Thank you.

PROSPECTIVE JUROR NO. 70: I'm Juror No. 70. I
live in Cordova. I have been there for 13 years.

I work for the United States Postal Service. I
have also worked for Alaska Commercial and Restaurant.
I have done vocational college.

I'm single. I have two adult children. One is
an EMT and works for Sampson Tug & Barge, and then the
other one works for Northrop Grumman on military
aircraft.

I shoot skeet, like to hike, hunt. I own guns.
I don't watch the news. I have not been in the
military.

I have been summoned for jury, but never done

1  it.  And there is no reason I can't serve.

2         PROSPECTIVE JUROR NO. 55:  Juror No. 55.

3  Anchorage, Alaska, 13 years.

4         I work for UPS as well as Alaska Benefits.

5  Work history, delivery food driver, restaurant worker,

6  customer service, various different places.

7         For the last five years, I worked at a TV

8  station as a business office coordinator.

9         Highest level of education, high school

10 diploma.  Not married.  No kids.  Hobbies:  Reading,

11 hiking, camping, fishing.

12        Not a gun owner currently.  Wherever I can get

13 my news, radio, TV, social media.  No military service.

14 No prior jury service.  And I would be missing a lot of

15 work that I can't really afford to miss if I was to be

16 on this jury, but, yeah, that's really my only reason.

17        PROSPECTIVE JUROR NO. 35:  Your Honor, I am

18 Juror No. 35.  Place of residence is Palmer, Alaska.  I

19 have been here for 50 years.

20        Occupation:  I retired last year from the

21 Alaska Army National Guard.  I am a student for the last

22 year.  Highest level of education is four years of

23 college, no degree.

24        Divorced.  I have three adult children, a care

25 provider, laborer and stay-at-home mom.  Hobbies:

Walking, basketball, football, Warrant Officer
Association.

I am not a gun owner.  I get the news sometimes
through friends.  I get the newspaper, but I don't read
it, so I need to stop it.  And every now and then on the
radio as well.

Military service is the Army.  I retired as a
CW-4 or Chief Warrant Officer 4 in the military.

Jury service, my number was called but never
served.  And there shouldn't be any reason why I can't
serve.

PROSPECTIVE JUROR NO. 14:  Juror No. 14.  I
live in Peters Creek.  Length of time in Alaska, I have
been here since '84.

I'm a mechanic down at Matson at the port.
Been there for 16 years.  Have an associate's degree.

Divorced.  I have two kids, two boys, 11 and
12.  Hobbies are their football, hockey, snow machine,
dirt bikes, camping.

I own guns.  Get my news off the radio when I'm
in the shop.  No military.  Been called for jury, never
been picked.  And there is no reason why I cannot.

PROSPECTIVE JUROR NO. 15:  No. 15.  Soldotna,
Alaska.  Five years.  Unemployed.  Odds and end jobs.

High school.  Not married.  I have no children.

I like hockey, hunting, fishing, gardening.  I am a gun
owner.  I watch the news on TV, newspaper, radio.  Not
served in the military.

I have been picked for jury but not served.
There is no reason I would not be able to serve.

PROSPECTIVE JUROR NO. 18:  Juror No. 18.
Willow, Alaska, 44 years residency.

Substance abuse counselor.  Worked for a
company called True North Recovery.  Highest level of
education is high school graduate.

I am married.  My wife works as a bus monitor
for Bunker & Bunker.  Three stepkids, one minor of the
three.

Hobbies are music and photography.  I am a gun
owner.  I get my news from radio, TV and internet.

No military service.  No prior jury service.
And no real reason why I can't serve.

PROSPECTIVE JUROR NO. 2:  I'm Juror No. 2.  I
reside in Anchorage, Alaska, have done so for the past
15 years.

I work for the Anchorage School District as a
teacher and also worked as a charter boat guide in the
summers.

I have a bachelor's degree and some post-grad
work.  I'm single.  No kids.  I enjoy hunting, fishing,

and skiing.  I own guns.  I get my news by word of mouth
or the radio.

No military service.  I have been on a criminal
trial and we did reach a verdict.  I was not the
foreperson.  And no additional reason I couldn't serve.

PROSPECTIVE JUROR NO. 49:  Juror No. 49.  I
live in Chugiak.  I have been there 25 years.

I'm an aircraft mechanic for Ravn.  Been there
two weeks.  And prior to that, I was working for the
University of Alaska Anchorage.

I have a bachelor's of science degree.  I am
married.  I have four kids, 6, 7, 9 and 15.  Hobbies
include hiking, hunting, snow machining, skiing,
baseball, pretty much anything outdoors.

I am a gun owner.  I get my news from TV,
radio, the internet, social media.

No military service.  I have never served on a
jury.  My only reason for possibly not being able to
serve would be work commitments and then my wife is
leaving town later this week and so I'll be running
shuttle service for kids.

THE COURT:  How old are your kids?

PROSPECTIVE JUROR NO. 49:  6, 7, 9 and 15.

THE COURT:  How long is she going to be out of
town?

1          PROSPECTIVE JUROR NO. 49:  She'll be out of

2     town through the end of the week.

3          THE COURT:  Very good.

4          PROSPECTIVE JUROR NO. 44:  No. 44.  Soldotna,

5     Alaska.  Probably 23, 24 years over the years.

6          Occupation:  I'm a fish camp host, Kruggs Camp.

7     That's over the last nine years.  Two years of college.

8     Single.  No kids.

9          Fishing, hunting, you know.  Yes, a gun owner.

10    A little TV, internet.  No military.  And was on a

11    criminal case.  I was picked as the foreman, but I was

12    released before the trial started.  And no other reason.

13         THE COURT:  All right.  Very good.

14         Thank you, all.  I am going to do the

15    following -- did I miss somebody?  Go ahead.  So sorry.

16         PROSPECTIVE JUROR NO. 23:  Juror 23.  I live in

17    Anchorage.  I have lived here for 22 years.

18         I am a veterinary technician at Veterinary

19    Specialists of Alaska.  I have worked there for

20    15 years.

21         Bachelor's degree.  Single.  No children.  I

22    like gardening, fishing, camping.  I do not own a gun.

23    I get my news from radio or online.

24         No military service.  I have never served on a

25    jury.  And there is not -- there is no reason why I

1    can't serve on this.

2          THE COURT:  All right.  Very good.  Now I can

3    say thank you all.  Let me do the following:  I want to

4    talk with the attorneys here just for a few minutes.  We

5    are going to conclude today no later than 5:00, even if

6    we can't conclude the jury selection process, in which

7    event, I would need people back, but I'm going to ask

8    the jury to go to the assembly room just until 4:30, so

9    about 12 minutes here, while I take up this one issue

10   with counsel.

11          So let's do that.  Please remember your seat,

12   because when we come back, you should go in the exact

13   same seat, especially the 36 names that we called.

14          All right.  You may all be excused.  Remember

15   my admonition not to discuss the case.

16          (Prospective jurors absent)

17          THE COURT:  Please be seated, everyone.  All

18   right.  My thoughts are these, and that is that,

19   particularly in light of the fact that jurors were told

20   this was their last week, that I would consider excusing

21   several people who I think have demonstrated a hardship.

22          And so the names -- the numbers which I was

23   considering that are the following, and then I would

24   like counsel's thoughts on this proposal.  It would be

25   Juror No. 41.

1        And I will readily acknowledge some have more

2   hardship than others on this list.  But 41, 39, 61 and

3   28, both of whom have trips planned.  More of a question

4   mark with regard to up above that, 71, with the

5   five-year-old.  And those were the ones I thought were

6   the most compelling.  And I suppose to a lesser degree

7   50 and 55, but we do have many more people in the

8   courtroom and so it just seemed more efficient, even

9   though it's this delay to have everybody leave, to not

10  have you do questioning of people that there is an

11  agreement to excuse these individuals.

12       So with regard to that list and/or others,

13  Mr. Skrocki, what's the government's position?  I'm most

14  inclined with regard to the individuals with the trips.

15  There is no reason that they wouldn't have had a trip

16  frankly planned given the timing of this.

17       MR. SKROCKI:  Can we have a moment to scan the

18  list?

19       THE COURT:  Take a few moments.  And 39 had a

20  trip too.

21       (Pause)

22       THE COURT:  Let me interrupt your conferral and

23  say the other two that I didn't list but considered were

24  52 and 43, both of whom had work commitments, but I was

25  operating -- I am operating on the assumption that they

1    were concerned more about the needs of their employer

2    than their own personal needs.  Let me put it that way.

3              MR. SKROCKI:  Okay.  Thank you.

4              MR. COLBATH:  You said, Your Honor, 52?

5              THE COURT:  52, who is the Aleutian Pribilof

6    person.  And 43, who was the St. Paul social worker.

7              MR. COLBATH:  The St. Paul social worker is No.

8    56.

9              THE COURT:  Then my number is in the wrong

10   spot.  56 is who I meant, not 43.  Did I say 71, the

11   mother scheduled for surgery?  I did intend that.  Yes.

12             MR. SKROCKI:  Yes.  No objection, Your Honor.

13             THE COURT:  So no objection as to all of those

14   being excused?

15             MR. SKROCKI:  Yes.

16             THE COURT:  Which was 41 -- now I want to make

17   sure I have got all the numbers, including what's the

18   government's view on 52 and 56?

19             MR. SKROCKI:  The same, we included those.

20             THE COURT:  No objection by the government to

21   excluding 41, 39, 52, 71, 61, 28, 56, as well as 50 and

22   55?

23             MR. SKROCKI:  Yes.

24             THE COURT:  Mr. Colbath, what's the defense

25   view on those individuals?

         1          MR. COLBATH:  Two things, Your Honor.  Number

         2    one, as to the numbers identified, we don't have any

         3    objection.

         4          THE COURT:  So 41, 39, 52, 71, 61, 28, 56, 50

         5    and 55, no objection by the defense either?

         6          MR. COLBATH:  Correct.

         7          THE COURT:  Then what's the second thing?

         8          MR. COLBATH:  The second issue is by my count

         9    that leaves, based on our notes, at least five or six

        10    other folks that had financial concerns or --

        11          THE COURT:  In this group?

        12          MR. COLBATH:  Yeah.  I know that --

        13          THE COURT:  Here is what I would like to do

        14    with them, if you can identify someone that's you

        15    believe comparable to these ones, fine, but, if not,

        16    then I would see that as subject you could follow up on

        17    in your questions.

        18          MR. COLBATH:  What I was going to ask if it's a

        19    number of folks is if the Court would be willing to do

        20    that, so that I don't end up with my whole 15 minutes on

        21    five or six financial folks.

        22          THE COURT:  Who are we talking about?

        23          MR. COLBATH:  So I believe that Juror No. 56 --

        24    excuse me, Juror No. 67, she had asked to speak to us in

        25    private and her only issue was she is the operations

manager out in the Valley for Subway. She indicated

she's the sole financial provider for her home, that

Subway will not pay her while she's off work, and she's

pregnant.

In no particular order here, No. 49 had --

THE COURT: The wife out of town?

MR. COLBATH: Wife is out of town. He has four

minor children. He indicated that he started with Ravn

two weeks ago. He was actually the second person we

have work for Ravn, and both of them commented that Ravn

would not pay them while they were gone. And so I don't

see how somebody with four minor kids -- I couldn't

afford my four kids when I was making good money, and if

he's not going to get paid for five weeks, I don't see

how that's going to work.

And then one of my other ones you got. Maybe

just -- one of my notes I had my numbers crossed, and so

the Court actually took care of that.

THE COURT: So 67 and 49 are the two additional

that you would propose?

MR. COLBATH: Yes.

THE COURT: Any objection by the government?

MR. SKROCKI: We don't object.

THE COURT: All right. So in addition, excuse

those two, and then I would call up names to replace all

1    of those individuals.  So 67 and 49, the government

2    agreed, correct?

3            MR. SKROCKI:  Yes, agreed.

4            THE COURT:  Then I think we have two minutes

5    for a very short break.  And then they will come back,

6    they will all get in their seats, then I will call up

7    names to replace each of these 13 people and then they

8    will read the sheets.  And then we'll see what time

9    we're at at that point.  Anything else to take up?

10           MR. SKROCKI:  No, Your Honor.   Thank you.

11           THE COURT:  Anything else?

12           MR. COLBATH:  Not at this point, Your Honor.

13           THE COURT:  Very good.  We'll take a short

14   break.

15           DEPUTY CLERK:  All rise.  Court stands in a

16   brief recess.

17           (Recessed from 4:28 p.m. to 4:34 p.m.)

18           (Prospective jurors present)

19           DEPUTY CLERK:  All rise.  Her Honor, the Court,

20   the United States District Court is again in session.

21           Please be seated.

22           THE COURT:  Please be seated, everyone.  And it

23   was brought to my attention that Juror No. 38 wanted to

24   raise something additional.  That's fine.  We're going

25   to track down the microphone.

1           PROSPECTIVE JUROR NO. 38:  Sorry.  You asked me

2     if my employer was going to be paying me if I had to

3     serve on the jury.  I said they would, but I'm still

4     working seven days a week regardless, and plus I have a

5     daughter that needs to go to visitation on Wednesdays at

6     3 p.m. to 6 p.m., so I need to bring her and pick her

7     up.  I have no other way to deal with that.  That's all

8     I wanted to say.

9           THE COURT:  Thank you.  Counsel, can we confer?

10          We don't really have a sidebar.  I'll state it

11    on the record.

12          (Discussion off record)

13          THE COURT:  I have conferred with counsel and

14    they have agreed as well to excuse Juror No. 38.

15    Correct, Mr. Colbath, Mr. Skrocki?

16          MR. COLBATH:  Correct, consistent with our

17    earlier discussion.

18          MR. SKROCKI:  Yes, Your Honor.  Thank you.

19          THE COURT:  At this point, I have listened and

20    have conferred with the lawyers with regard to the

21    various hardship circumstances that have been presented

22    here by a number of jurors.  And I am going to thank and

23    excuse several, a number of individuals at this time.

24          And I do hope -- I appreciate you coming to

25    court today.  If you need a note for your employer for

today, you can get that from the jury clerk.  I
appreciate you participating in this process.  I'm
confident there is the right jury for you some day in
your future because it is a critical part of our justice
system.

So I'll thank and excuse the following
individuals.  Wait until I list off about 12 or 13
names, please, so everybody can hear their number being
called.

I'm going to thank and excuse:  Juror 52, 71,
61, 28 and 38.  In row two, 67, 41, and 39.  And in the
back front row I will thank and excuse 56, 50, 55 and
49.  So you all are free to go.  You are all no longer
subject to the admonition that I gave earlier about not
communicating about the case.

And you can go back to the jury assembly room.
Like I said, if you need a note or be on your way, once
again, on behalf of the court system, I appreciate your
participation in our justice system.  So those
individuals can all be excused.  You may go.

Where that leaves us is with our trusty box.
If your number is called, I'm going to have you come up
and take the seat that was replaced, and I'll try to
direct you where to go, but basically we're going to
fill in again each of these spots starting with the seat

over here in the -- we started with the back row, so it
will be that seat there in the back row.  And go ahead,
Madam Clerk.

        DEPUTY CLERK:  Filling seat number three will
be Juror 22.

        THE COURT:  Juror 22 in the back.  Very good.

        DEPUTY CLERK:  Filling seat number six will be
Juror 17.

        Filling seat number eight will be Juror 47.

        Filling seat number nine will be Juror 30.

        Seat number 11 will be 65.

        Seat number 13 will be Juror 51.

        Seat number 14 will be No. 32.

        Number 16 will be Juror No. 54.

        Number 18 will be Juror No. 16.

        THE COURT:  That's over here in the front row
of the back.  Oh, in the wheelchair, then, ma'am, you
can remain in the aisle right up here in the front.
That would be great.

        DEPUTY CLERK:  Juror 26 will be No. 72.

        Seat number 28 will be Juror No. 34.

        Juror 34 will be No.  66.

        That would fill all the seats.

        THE COURT:  All right.  Very good.  So
beginning with Juror 22, can you read -- do you have the

1    sheet there?

2              PROSPECTIVE JUROR NO. 22:  My juror number is

3    22.  I live in Valdez, Alaska.  I have lived in Alaska

4    for 20 years.

5              I am a heavy diesel mechanic for TCC down in

6    Valdez.  I have worked there for five months now.  My

7    last job was working for Peak Oil Spill as a mechanic,

8    and I worked there for a summer.  And my job that I

9    worked the most was at Safeway for three years.

10             My highest level of education is trade school.

11   I'm not married.  I have no children.

12             My hobbies are hunting, fishing, and hiking.  I

13   am a gun owner.  I get my news through the internet or

14   social media.

15             I am not in the military or have been.  I have

16   not done any jury duty at all.  And the only reason I

17   wouldn't be able to be on this jury is I'm a 24-hour

18   on-call oil spill responder for my company.

19             THE COURT:  So what does that mean exactly?

20             PROSPECTIVE JUROR NO. 22:  If there is an oil

21   spill and I get called, I have to go and respond to the

22   oil spill.

23             THE COURT:  When was the last time that

24   happened?

25             PROSPECTIVE JUROR NO. 22:  Last Monday.

         1          THE COURT:  How frequent is that?

         2          PROSPECTIVE JUROR NO. 22:  Usually, it's not

         3   too frequent, but there is a berth down in Valdez across

         4   the bay that always spills oil, so you never know.

         5          THE COURT:  Are there other individuals that

         6   work with you on that?

         7          PROSPECTIVE JUROR NO. 22:  Not that I know of.

         8   Not here.

         9          THE COURT:  No, I mean at your company in

        10   Valdez.

        11          PROSPECTIVE JUROR NO. 22:  Yes.

        12          THE COURT:  So if you were on vacation or

        13   unavailable, would there be people that could cover the

        14   oil spill?

        15          PROSPECTIVE JUROR NO. 22:  I believe so.

        16          THE COURT:  Very good.  Thank you.  Moving on

        17   to 17, I believe.

        18          PROSPECTIVE JUROR NO. 17:  So I'm Juror 17.  I

        19   live in Anchorage.  Been here my whole life, 32 years.

        20          I work for Arctic Import Repair.  I'm the shop

        21   manager there.  Been there a little over eight years.

        22          I have got some college.  Marital status is

        23   single.  I do have one son who is 11 years old.

        24          Don't really have time for hobbies.  I'm not a

        25   gun owner.  I usually get my news through social media.

1          No military service.  No prior jury service.

2     The only reason I can think of to not serve on a jury is

3     prior work obligations.

4          THE COURT:  Could those be addressed?

5          PROSPECTIVE JUROR NO. 22:  There is not really

6     anybody else to cover because everybody else up front is

7     leaving state.

8          PROSPECTIVE JUROR NO. 47:  I'm Juror No. 47.  I

9     live in Anchorage, Alaska.  I've been here 41 years.

10          I work for Alaska Native Medical Center as a

11     nightshift registered nurse.  I have a bachelor's of

12     nursing science.

13          Married.  He is an eligibility technician for

14     the State of Alaska Health and Human Services.  I have

15     three minor children -- I'm sorry, four: 3, 6, 7 and

16     17.  And I have three adult children.  They work in

17     travel, construction, and one is a home --

18          Hobbies:  Outdoors stuff, fishing and quilting,

19     children stuff.  I am a gun owner.  I get my news from

20     radio, TV, and social media.

21          No military service.  I have had prior jury

22     service.  I was seated on a jury, and we had testimony

23     for several days and then was dismissed.  I believe it

24     was a mistrial.

25          Any other reason:  I don't consistently have

someone who can pick my children up from school.  I
drive them to and from school generally.  One of my
stepchildren will be able to do that several days of the
week, but not every day, so I will have to look for
further after-school care for them.

THE COURT:  Other than that, any reason you
can't serve?

PROSPECTIVE JUROR NO. 47:  No.

THE COURT:  Thank you.

PROSPECTIVE JUROR NO. 30:  No. 30.  I live in
Wasilla, Alaska.  Been up here for six years.

Work as an apprentice aircraft mechanic at
Everett's Air Cargo.  Been working there for seven
months.

Highest level of education is high school.  Not
married.  No children.  For hobbies I like fishing and
hiking.

Not a gun owner.  I get news on internet.  No
military service.  No prior jury service.  There is not
really a reason I can't serve.

THE COURT:  Thank you.  On to I believe 65; is
that right?

PROSPECTIVE JUROR NO. 65:  I'm Juror 65.  I
live in Anchorage.  I have been here about two and a
half years.

1          I currently work as the operations manager of

2     Alaska Club East over on Tudor.  Past five years, I was

3     employed prior to that working for Target in the

4     shipping department, and then in Pittsburgh as a

5     contractor.

6          I have a bachelor's in psychology.  I'm single.

7     I have no children.  Hobbies are spending time with my

8     girlfriend and my dog.  And I am a gun owner.  I get my

9     news from newspapers and online.

10         I have not served in the military.  I have had

11    no prior jury service.  And I have no reason that I

12    can't serve.

13         PROSPECTIVE JUROR NO. 51:  I'm Juror 51.  I

14    live in Anchorage.  I have lived here since '92.

15         I have been -- I'm a Pitney Bowes service rep

16    for the last 19 years.  Married almost 30.  Two kids.

17    One just started medical school and one works at ANMC.

18         I do own a gun.  I read my news off the

19    internet pretty much.

20         Ten years Army.  I got out as an E-5.  Never

21    served on a jury.  And no reason.

22         PROSPECTIVE JUROR NO. 32:  32.  I live in Eek,

23    Alaska.  I was here for 30 years.

24         I don't work.  The highest level I completed

25    was 11th grade.  I'm married.  My husband works at the

1  gas station.  I have four children:  11, 7, 4 and 2.

2         Hobbies:  Hunting, fishing, picking berries.

3  My husband is a gun owner.  I get my news from online.

4         Not in the military.  I didn't serve jury

5  before.  And I am a stay-at-home mom.  And one of my

6  boys always go to dental every month.

7         THE COURT:  When is that?

8         PROSPECTIVE JUROR NO. 32:  I can't remember

9  when his next appointment is, but he has braces and I

10 always have to bring him every month.

11        THE COURT:  Thank you.

12        PROSPECTIVE JUROR NO. 54:  I'm No. 54.  I live

13 in Anchorage.  I have been in Alaska for two years.

14        I'm a supply chain manager and have also been a

15 procurement manager in the last five years.  My highest

16 level of education is approximately two years of

17 college.

18        I'm married.  My husband is in sales.  He's

19 currently staying home with the kids.  I have a

20 14-year-old and a ten-year-old.

21        I like hiking and photography.  We are gun

22 owners.  I get my news through social media and morning

23 news.

24        I have not been in the military.  I have served

25 on a jury before.  It was -- I believe it was a criminal

1   case, and we did come to a verdict.  I was not the

2   foreperson.  And I don't have any reasons why I can't

3   serve.

4          THE COURT:  All right.  Thank you.  We're going

5   to get the microphone over to No. 16 here in just a

6   moment.  We're going to stop just once we go through

7   these at 5:00 here.  We should be able to finish up

8   these new four people here.

9          PROSPECTIVE JUROR NO. 16:  I'm No. 16.  I live

10  in Kasilof right now.  I have been here about 24 years.

11         My occupation was a nurse in psychiatry and

12  trauma.  I'm disabled at this time.  My highest

13  education is 18 years.

14         Married status, I'm just recently widowed.  I

15  have ten children between 41 and 28 ages and they range.

16  I have two still in the military.  Three out of the

17  military but going to school finishing up to transition

18  from military life to civilian.  I have one that's a

19  psychologist.  One studying for the Bar in Alaska.  I

20  have one that's becoming a vet.  And I'm missing

21  somebody.  I have two nurses.  I knew two of them went

22  to nursing school, followed me.

23         My hobbies are my family, grandchildren.  I

24  hunt.  I fish.  I canoe, kayak.  I'm in the Coast Guard

25  auxiliary.  Stay very active there.

I am a gun owner. I usually listen to the news, mainly national and international news. I have not been in the military, but I'm a proud wife and mother for 36 years and counting.

Prior jury service. I had a criminal case in Savannah, Georgia. A verdict was reached. I was not a foreperson. I have served on a grand jury in Los Angeles, California, and we got halfway through and the guy decided to plead guilty. He took a plea deal.

And there is no reason that I shouldn't be able to serve on the jury at this time.

PROSPECTIVE JUROR NO. 72: I'm No. 72. I live in Soldotna. I have been there a little over six years.

Senior pastor, Peninsula Christian Center in Soldotna. I have a bachelor's degree and some graduate school hours.

I'm married. My wife is a procedure nurse at Peninsula Internal Medicine there in Soldotna. Two kids, 27 and 24. My son is nine years in the Air Force and Air Guard. He serves in security forces. He also works for NANA Management Services as an armed security for a well pad. And my daughter is a medical records supervisor at the same office that my wife works.

Hobbies: Hunting, fishing, shooting. Clubs: NRA. Yes, I own guns. I get my news online and the TV

1    and radio.

2           Never served in the military.  No prior jury

3    service.  And it would be -- is there any reason I think

4    I can't serve:  I already have plans to travel beginning

5    Sunday, leaving the 15th for eight days.  The plane

6    tickets are already bought.

7           And then also, like I said, I'm a senior pastor

8    with no help, and so prior to popular belief, pastors

9    work more than one day a week.

10          THE COURT:  All right.  Thank you.

11          PROSPECTIVE JUROR NO. 34:  No. 34.  I live in

12   Wasilla.  I've lived in Alaska 21 years.

13          My occupation is an installer with AT&T.  I

14   have worked for them for the past 13 years.  High school

15   education.

16          Married.  My wife is a nurse at Alaska Urology.

17   I have three grown children.  The oldest daughter is a

18   pharmacist.  The youngest daughter is going to nursing

19   school.  And my son is in college to go to medical

20   school.

21          Hunting, fishing, hiking.  NRA, I am a gun

22   owner.  I get my news mainly from the radio on the way

23   to work.

24          And military service:  I was in the military,

25   in the Army for three years.  Discharged as an E-5.

I have had prior jury service on a criminal case. I was not the foreperson. A verdict was reached. Never served on a grand jury.

And there again, I'm retiring on the 13th, and I do have a trip scheduled and booked for the 18th through the 18th of October.

THE COURT: All right. Thank you. And moving on to 66, I believe.

PROSPECTIVE JUROR NO. 66: Juror No. 66. I live in Kenai. Lived in Alaska for 20 years. Gone for 12, back for eight.

I work as an administrator at Trinity Christian Center in Soldotna. I have worked there for six years. I have a high school diploma with some college.

I'm married. My husband is a mechanic and truck driver for Jolt Construction. I have two adult girls. One is in the hotel industry. The other is floundering. I have a minor son, 17.

I have a lot of hobbies, too many to name. I am a gun owner. I get my news from the internet and the radio.

I have not served in the military. This is my first jury summons. And I cannot think of any reason why I could not serve.

THE COURT: All right. Thank you.

1        All right, ladies and gentlemen.  So what I'm
2   going to do at this point is adjourn for the day.
3   Before I do, a couple of things.  I will need everybody
4   back here by 9:00 is when we'll start the court
5   proceedings.
6        I actually will be here with the lawyers at
7   8:30, but my goal is to take up any issues so that we
8   use your time more effectively when you arrive.  At that
9   point, I anticipate that everybody except for the 16
10  jurors that will be impaneled will be excused by no
11  later than, in an abundance of caution I'll say 11:00.
12  I think it will be earlier than that, more likely 10:00.
13       I will have you all back here no later than
14  9:00.  Please remember my admonition.  It is really
15  critical to the parties in this case, to our justice
16  system not to do any research, not to discuss the case
17  with family or friends, and not to do any investigation
18  or any online research or Googling or any of the many
19  forms of access to information that are available to us.
20       It's a key part of our system that the case be
21  decided solely on the evidence that will be presented
22  here in court.
23       So with that, we'll send you on your way.  I
24  appreciate your careful attention today.  And we'll see
25  you back here tomorrow morning and conclude with regard

1  to most of you at that time.  If you have questions

2  about any logistics, Jerri should be able to answer them

3  in the jury room for you.

4         All right.  Very good.  We'll see you tomorrow

5  morning.

6         (Prospective jurors absent)

7         THE COURT:  Please be seated, everyone.  Well,

8  we'll conclude here in a bit, but any thoughts as to

9  individuals that would be proposed to be excused

10 comparable to the last group?

11        I think we still have approximately how many?

12 There is a total of 51 remaining, so that means 15 more

13 in addition to the 36, which I think could be a factor

14 here.  Or do you want me to weigh in and then you can?

15        MR. SKROCKI:  Maybe try to make it easy on you,

16 Your Honor.  Maybe we have the same ones.  We have 22,

17 17 and 72.

18        THE COURT:  22.  I was not too concerned about

19 22, because it sounded as if he does have a critically

20 important job, oil spill, but it also sounds --

21        MS. SHERMAN:  He had previously said he won't

22 get paid.  He did say that before.

23        THE COURT:  With that understanding -- is that

24 your recollection as well, Mr. Colbath?  It would be

25 unusual for an oil service not to pay.

1      MR. COLBATH:  I don't have a note one way or
2  the other on that.  We have that same note, Your Honor.
3  Mr. Camiel had it and I did not.
4      THE COURT:  So what's -- any objection to 22,
5  17 or 72?  Those were the three you raised.  What about
6  34, who also has the retirement trip scheduled
7  September 18th through October 18th.  That's what I
8  heard.  So those -- would the government agree to 34
9  with that understanding?
10     MR. SKROCKI:  Yeah.  It doesn't seem at this
11  stage fair to oppose.
12     THE COURT:  Well, especially when they were not
13  told --
14     MR. SKROCKI:  I understand.
15     THE COURT:  So he made it for this next week.
16  All right.  Mr. Colbath, 22, 17, 72 and 34, any
17  objection?
18     MR. COLBATH:  No objection to those four, Your
19  Honor.  The only other individual, I just wrote a
20  question mark next to Juror 32.  I'm not sure where the
21  community of Eek is.  My only concern for her would be a
22  husband that works, four minor children.  She's a
23  stay-at-home mom.  I don't know the size or the
24  circumstance of Eek, but if she's trapped in Anchorage
25  with minor children -- I know she said she had a young

son that she took at some point to the dentist on a
regular basis, but other than that, she was the only
other person that I didn't know if we had an issue with.

        As to the other four, no objection.

        MR. SKROCKI:  So Eek is --

        THE COURT:  Out in the middle of nowhere.

        MR. SKROCKI:  YK Delta.  I think we had the
same sort of collective view that she has a pretty tough
go being out.

        THE COURT:  With a working spouse and four
children under 12.

        MR. SKROCKI:  She made no mention of it, which
could be a cultural thing.

        MR. COLBATH:  Two of the kids were age two and
age four.

        THE COURT:  I would be inclined, if counsel
agree, to excuse her as well.  So any others?  Those
were the five.

        MR. COLBATH:  Of the group that we had, those
were the five, Your Honor.

        THE COURT:  And the government agrees on those
five?

        MR. SKROCKI:  Yes, Your Honor.

        THE COURT:  I would concur.  The only other one
I had a question mark on, and I don't think it's an

issue, was the nurse with the after-school pickup, 47.
But if both sides are comfortable, she didn't sound
overwhelmed.  She sounded as if she needed to do more
logistical arrangements.

MR. SKROCKI:  That's my recollection as well,
so I think we should try to get her to work it out.

THE COURT:  Okay with 47?

MR. COLBATH:  I would not have an objection to
her being excused, but I didn't -- I had the same as the
Court, a question mark as opposed to a definite problem.

THE COURT:  Let's keep her on, unless she shows
up tomorrow morning with invigorated excuses.  Then I
will excuse first thing in the morning 22, 17, 32, 72
and 34.

And actually, any objection to the jury clerk
simply calling them this evening and saying they are
excused?

MR. SKROCKI:  No objection.

THE COURT:  The woman can go back to Eek.
That's what we can do on those five, if she can reach
them.  If she can't, that's fine.  They can show up and
I'll excuse them tomorrow.

Anything else we can take up today or wait
until 8:30 tomorrow?

MR. SKROCKI:  One moment, please.

1          THE COURT:  Any others to raise at this time?

2          MS. STEVENS:  One, Your Honor.  No. 47,

3     conferring with defense, it sounds like we both have a

4     note that there is a financial hardship for that juror

5     as well.

6          THE COURT:  She's an ANMC nurse.

7          MR. COLBATH:  Your Honor, I recalled -- I said

8     I had a question mark for her, and after Ms. Stevens

9     talked to me here and I thought about it, when she came

10    up to the microphone in our earlier, before she was

11    called and placed, what she said was, and you're right,

12    she's a nurse, and the reason she takes her kids to

13    school during the day is she said, "I work 12-hour

14    shifts.  I would have to work in the evenings.  I have

15    to work at night."

16          I fear that this poor woman runs kids around

17    during the day, and she said, "We're relying on my

18    income, but I work nightshifts."  And so think that she

19    probably has to work evenings or is going to try to work

20    some evenings by force.

21          THE COURT:  I would be surprised if ANMC did

22    not pay its staff to serve on a jury.

23          MS. STEVENS:  We can inquire more tomorrow with

24    her.

25          THE COURT:  Let's do that.

1        MR. COLBATH:  I think that's why I had it

2   before is she did have a financial issue that she would

3   have to maybe work nights as a nursing job and then try

4   to do this during the day.

5        THE COURT:  I'll inquire of 47 in the morning.

6   And then we can take her up outside the presence of the

7   jury as needed.  But if you can inquire -- I would be of

8   the view that ANMC, which is affiliated with the federal

9   government, would cover jury duty for its staff, but I

10  have been wrong before.

11       So in any event, other topics we can take up?

12  I realize we have got these last set of motions.  I have

13  not listened to Ms. Kiele's interview.  I will try to do

14  that.  I can give you my tentative thoughts on these

15  motions having read through them at this point and then

16  we can address them further at 8:30.

17       How about if I do that, because I've read them

18  through, but rather briefly.  So with that, we'll do

19  that and then call it a day and take it back up in the

20  morning.

21       With regard to -- so view this as a tentative

22  ruling and then you can tell me where you think I am

23  incorrect tomorrow morning.  With regard to the

24  government's notice with Nathaniel Pacheco, and I think

25  there is a cross motion, I have made a concerted effort

1    to adhere to this fuel card incident date.

2         I understand there is an effort by the

3    government to establish that this incident is also

4    relevant, but even if there is some relevance to the

5    motive theory or the work environment theory, I will

6    hold to that fuel card incident demarcation line.  And I

7    say that because I did that, and I tried to make it

8    clear in the *Henthorn* order, not only as to the

9    government's bad acts, but as to the *Henthorn* material,

10   I have just kind of drawn a line and I am disinclined to

11   open that, move that line for any items, so that is my

12   tentative ruling on that.

13        With regard to Terry Kiele, I will listen to

14   the tape first, but not having listened to the tape and

15   just reading the motion or the briefing by the parties

16   on it, I am inclined to let in most of her statements.

17        Where I could see taking up -- well, first, I

18   would have to listen to the tape, and if it laid a

19   sufficient basis on the change in behavior issue, that

20   could be dispositive.

21        Without that, I would intend to preclude the

22   government from bringing up this change in behavior

23   issue, but allow for you to make application outside the

24   presence of the jury and essentially give the Court an

25   opportunity to hear what Ms. Kiele would say in that

1    regard.

2           And it relates to how frequently was she in

3    Seattle -- or was Mr. Wells in Seattle where she resides

4    and what's the basis for that, because in the Court's

5    view, this is not so much as workplace behavior, but I

6    suppose goes almost to a consciousness of guilt type

7    theory.  But I need to listen, of course, to that half

8    hour.  I hope that's arrived today.  I suspect it has.

9    It was going to be conventionally filed.  So I'll track

10   that down.

11          The testimony re fear, similarly somewhat, I

12   would be disinclined to allow that testimony with regard

13   to Mr. Reed, Mr. Kiele and Mr. Reckner.  On Olivia

14   Terry, I would likely seek to have also an opportunity

15   to hear the proffer of Ms. Terry outside the presence of

16   the jury.  That one I had more of a question mark, but

17   disinclined with regard to the other three based on what

18   I have read there.

19          I believe that addresses all of the issues that

20   were outstanding.  Questions or clarification on that?

21   It's not a ruling.  I will hear from each side in the

22   morning.

23          MR. SKROCKI:  I have one more we filed a while

24   back with respect to -- I think I know what the answer

25   is going to be.  It's Mr. Reckner's discussion with

1  Mr. Wells in Shemya.

2         THE COURT:  The bird diverter?  I thought I

3  issued an order on that.

4         MR. SKROCKI:  It's still different.  The word

5  he used was "nuanced," that it's a little more of a

6  nuanced argument because Mr. Reckner at that time of the

7  bird diverter incident did have a very heated and

8  volatile argument.  So I filed a motion for

9  clarification on how far we can expand.

10        THE COURT:  If I haven't docketed it, I signed

11  an order on the bird diverter and the clarification

12  motion.

13        MR. SKROCKI:  Oh, really?  Was it denied?

14        DEPUTY CLERK:  Was it a sealed motion?

15        THE COURT:  It could have been a sealed motion

16  that you haven't seen, because I did it late last week.

17  That is possible.

18        DEPUTY CLERK:  If it's sealed, then it's in

19  your box.

20        THE COURT:  Can you print them out?

21        It's denied.  I will say that.  But I give you

22  a longer explanation than simply that.

23        MR. SKROCKI:  We'll look at that tonight as

24  well.

25        THE COURT:  The gist of it is it relates to the

same demarcation.  I can understand the relevance
theory, but -- and I went back, and I think this is
addressed in a footnote in some prior order, to what
extent was the issue even presented to the Ninth
Circuit, because you could look at some of what they
said as talking, really being concerned about the '03
incident and then kind of starting with the fuel card
incident and never really fitting in where the bird
diverter was in the whole scheme of things, but I have
found that sentence to be a mandate.

       MR. SKROCKI:  I understand.  We'll look at them
tonight.  If we have further application tomorrow, we'll
make it.

       THE COURT:  We'll get you the order because I
signed it.  Very good.

       Anything else from the defense?

       MR. COLBATH:  I don't think, Your Honor, that
can't wait until 8:30.

       THE COURT:  Then I will see you all at that
time.  We'll go off record.

       DEPUTY CLERK:  All rise.  Court stands in
recess until tomorrow at 8:30 a.m.

       (Recessed at 5:20 p.m.)

1                        CERTIFICATE

2       I, Sonja L. Reeves, Federal Official Court Reporter
   in and for the United States District Court of the
3  District of Alaska, do hereby certify that the foregoing
   transcript is a true and accurate transcript from the
4  original stenographic record in the above-entitled
   matter and that the transcript page format is in
5  conformance with the regulations of the Judicial
   Conference of the United States.

6

        Dated this 24th day of April, 2020.

7

8

                        /s/ Sonja L. Reeves
9                    SONJA L. REEVES, RMR-CRR
                     FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25