Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
5200 Pike Street, Suite 2500
Seattle, WA 98101
Phone: (206) 624-1551
Email: petercamiel@yahoo.com

*Attorneys for Defendant James Michael Wells*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES MICHAEL WELLS, <br><br> Defendant. | Case No. 3:13-cr-00008-SLG <br><br> **DEFENDANT'S MEMORANDUM RE: RESTITUTION & RESPONSE TO DOCKET NO. 1395** |

## INTRODUCTION

Defendant James Michael Wells, through counsel Gary G. Colbath and Peter A. Camiel, files this response to the United States request for Restitution and brief in support thereof, Dk. No. 1395. Wells agrees the victims are entitled to some amount of restitution, but the government's calculation is excessive.

## FACTS

To begin, the government asserts a number of times that the Wellses failed to follow prior orders of the Court in the previous litigation requiring them to file a financial affidavit or information with the court detailing their finances. This is simply not the case. Nancy Wells provided a complete list of their financial assets and liabilities on August 29, 2014 as ordered. (See, Dk. 697, Exhibit A, filed separately under seal). The general nature of the Wellses assets has not materially changed since that time.

Here, like before, the government bases its request for restitution for each victim on calculations made by its expert determining two general types of "damages" purportedly owed to each victim. The losses are broken into 1) earnings losses and 2) household services losses. The government expert report includes future lost income with projections of retirement dates at age 62 for both victims. It determines a military service retirement after 30 years of service for victim Hopkins. However, the evidence at trial established that Hopkins had already instituted the process of collecting and preparing his retirement paperwork prior to his death and was planning to retire within the year of when he died. At the time he had approximately 20 years of service.

The government expert also used statistical work earning expectancies from private sector classes of employment based on the single assumption that each victim would obtain employment in the same field privately as they had worked in for the

Coast Guard. No factual support for the assumption is provided or explained in the report.

In determining restitution, the Court should also consider Nancy Wells, who is an innocent and entirely blameless party in this matter. She was not on the island of Kodiak at the time of the homicides. Very little has changed for her financially since she last filed documents with the Court. Her only real assets in life, despite a long career of admirable work for Alaskan children are her joint interests in the couple's home in Kodiak and her interest in Jim's retirement account. The Court should not unduly harm Nancy in fashioning restitution for the victims in this case.

Nancy Wells has no retirement of her own. She did, but following the district court's prior erroneous ruling removing second counsel during the prior trial process, Nancy was forced to cash out her entire retirement account and retain a second counsel to assist the Defenders office at trial. Although the Ninth Circuit found that counsel should not have been removed, Nancy's retirement was gone and nothing could be done to replace it.

Nancy is 70 years old. She lives a very modest life, is fully retired and cares for her grandchildren when she can. She lives in Oregon, where she can be closer to her children. She should not be made destitute by this Court during this process. Without retention of some of Jim's assets and retirement income, she will have nothing to survive on.

With respect to the couple's home in Kodiak, the government correctly notes its assessed value is $301,700. Equally true, however, is the government's astute observation that the property is "a now many years long rental property on Kodiak" that will undoubtedly "require code updates, deferred maintenance and other issues which suck away significant funds" prior to any sale. The home is indeed a "problematic asset" and its true present value is far less than $300,000.

## ARGUMENT & AUTHORITIES

### I. THE COURT CANNOT AWARD RESTITUTION BASED ON FACTS NOT DETERMINED BY THE JURY – *APPRENDI V. NEW JERSEY*, 530 U.S. 466 (2000).

Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), this Court should not enter a restitution order that is not based on facts found by a jury beyond a reasonable doubt. Here, the jury made no findings relative to restitution whatsoever. Indeed, the government asked for none. In addition, the Seventh Amendment applies to restitution imposed as part of a criminal sentence. The Seventh Amendment requires a restitution order to comply with traditional equity practice and to be bound by the jury's verdict.

Counsel acknowledges that the Ninth Circuit's prior decision in *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir.), cert. denied, 571 U.S. 1025 (2013), which determined that "restitution is not a question that is subject to the protections of Apprendi," is binding on this court. Accord, *United States v. Alvarez*, 835 F.3d 1180, 1185 (9th Cir. 2016); *United States v. Eyraud*, 809 F.3d 462, 471 (9th Cir.

2015).

However, since *Green*, Justices Gorsuch and Sotomayor have recently explained why an en banc panel should reconsider the Ninth Circuit's precedent and hold that *Apprendi* does in fact apply to restitution. See *Hester v. United States*, 139 S. Ct. 509 (2019) (Gorsuch, J., dissenting from denial of certiorari). Indeed, their view is confirmed by other Supreme Court opinions decided after *Green* (and after *Alvarez* and *Eyraud*).

Defendant raises here, to preserve the argument for appeal, that imposing restitution based on facts not found by the jury violates the Fifth and Sixth Amendments. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. "In stating *Apprendi's* rule, [the Supreme Court] ha[s] never distinguished one form of punishment from another. Instead, [its] decisions broadly prohibit judicial fact finding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms that each undeniably embrace fines." *Southern Union Co. v. United States*, 132 S.Ct. 2344, 2351 (2012). Because a criminal fine is punishment, *Apprendi* applies to criminal fines. *Id.* at 2357. Restitution, too, is punishment. *Paroline v. United States*, 134 S.Ct. 1710, 1726 (2014). As such, *Apprendi* applies also to restitution. But see, *Eyraud*, 809 F.3d 462 (9th Cir. 2015) (holding contra).

## II. RESTITUTION CANNOT BE BASED ON SEPCULATION.

Future lost income may be ordered under the MVRA if it is not speculative. A calculation of future lost income must be reasonably calculable and not based upon speculation. *United States v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006). Here, there is no basis on which to order "household services losses." The government cites no authority permitting recovery of the class of "loss" which its expert calls future household services. Moreover, no real factual support for the method of calculation, basis for the numbers or time frames used to calculate, and time periods upon which the calculations are based has been provided. Finally, to the extent the expert reports list such material, no information regarding the source or appropriateness of use of such information is provided. The Court should reject these speculative calculations.

## III. MR. WELLS' TSP ACCOUNT IS EXEMPT FROM COLLECTION BECAUSE HIS INTEREST IN THE ACCOUNT IS LIMITED BY FEDERAL LAW.

Even if the MVRA is applied, the Court should not order seizure of Wells' Thrift Savings Plan (TSP) retirement account in defiance of his spouse's legally-protected interest in the account. The MVRA authorizes the enforcement of restitution orders against retirement plan benefits.[1] When levying on a retirement account to fulfill a restitution judgment, the government steps into the shoes of the defendant and

---

[1] *United States v. Novak*, 476 F.3d 1041, 1053 (9th Cir. 2007)(citing 18 U.S.C. §§ 3663A(d), 3664(m)(1)(A)(i)).

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                 Page 6

acquires whatever rights he possesses.[2] However, the scope of the defendant's interest in a retirement plan varies with the type of plan at issue.

In *Novak*, the Ninth Circuit, sitting *en banc*, held that because the government steps into the defendant's shoes, the government may not unilaterally cash out a retirement plan when, for example, federal law constrains that right by requiring that lump sum payments be made only with spousal consent.[3] Thus, the Court held that the government could immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment if, and only if, "the terms of the plan allow the defendant to demand a lump sum payment at the present time."[4] This limitation, the Court held, accords with the congressional intent to protect "blameless" dependents.[5]

Under federal law, Jim Wells is not entitled to seek an immediate cash payment from the TSP. Rather, his rights are restricted by the provisions of the TSP enabling statutes. The Federal Employees Retirement System Act of 1986, which created the TSP, guarantees certain rights to spouses of participants. If a participant seeks to make a full withdrawal from a TSP account containing a balance of $3500 or more, the participant's spouse is entitled under federal law to a prescribed survivor annuity.[6] This right can only be waived in writing. Because Nancy Wells has a right to a survivor's annuity, Jim Wells' right to demand a lump sum payment of his TSP

---

[2] *Id.*
[3] *United States v. Novak*, 476 F.3d 1041, 1063 (9th Cir. 2007).
[4] *Id.*
[5] Id. (citing *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990)).
[6] 5 U.S.C. § 8435.

is limited under the terms of 5 U.S.C. § 8434(a)(2)(B). Accordingly, the government may not collect something Wells himself cannot collect.[7]

Although the Code of Federal Regulations allows garnishment of funds from a TSP to satisfy a criminal restitution order, *see* 5 CFR 1653.31-36, the TSP statute itself makes it clear that Wells is not entitled to unilaterally withdraw all of his contributions. Because the government cannot reach the assets in the TSP account without spousal consent, those funds cannot be used to satisfy the criminal restitution order.

The government acknowledges that, "[w]hen levying on a retirement account, the Government steps into the shoes of the Defendant and acquires whatever right he possesses." (CR 1395 at 9 (citing *Novak*, 476 F.3d at 1061-62)). But it argues that "recent amendments to the CFR allow for enforcement of criminal restitution orders against an employee's TSP regardless of the employee's right to withdraw and without spousal consent." (*Id.* at 11(citing 5 C.F.R. § 1653.31-36)). However, the provisions of the C.F.R. the government cites do not purport to change the law on what constitutes the defendant's "property or right to property" under 18 U.S.C. § 3613(a). The regulations merely explain the process for paying valid restitution orders. Indeed, in the Federal Register Notice publishing the final regulation, the Agency explained in response to a comment it had received expressing opposition to allowing the IRS to levy TSP accounts, "the Thrift Savings Plan is required by law to

---

[7] *Novak*, 476 F.3d at 1063.

honor IRS levies and criminal restitution orders, and the regulations only explain the payout process." 79 FR 53603-01. The Agency has set forth a method for paying lawful restitution orders. It remains the Court's obligation to ensure that restitution orders are lawful. Nothing in the CFR alters that obligation or allows the Court to enter an illegal restitution order.

Here, any order that fails to take into account Nancy Wells' spousal rights and claim to a portion of Jim Wells' TSP account would be illegal.

## IV. ONLY 25% OF MR. WELLS' MONTHLY RETIREMENT BENEFITS SHOULD BE GARNISHED TO SATISFY THE RESTITUTION ORDER.

As set forth above, restitution orders are enforceable in the same manner as criminal fines. *Novak, supra.* Section 18 U.S.C. § 3613(a)(3) of the MVRA provides that provisions of the Consumer Credit Protection Act (CCPA) apply to enforcement of a restitution judgment. The provision to enforce criminal fines provides specifically that "the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal or State law." 18 U.S.C. § 3613(a)(3). And section 303 of the CCPA provides "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed . . . 25 per centum of his disposable earnings of that week." 15 U.S.C. § 1673. "'Earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). "'Garnishment' means any legal or equitable

procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C. § 1672(c). Under 15 U.S.C. § 1675(c), "[n]o court of the United States . . . may make, execute, or enforce any order or process in violation of this section."

In *United States v. DeCay*, the Fifth Circuit Court of Appeals held that the provisions of the CCPA are controlling and that in collecting restitution, monthly payments from a pension or retirement plan are subject to this 25% cap. 620 F.3d 534, 543-44 (5th Cir. 2010) ("We find the statutory language unambiguous and hold that the United States may garnish only twenty-five percent of [the Defendant's] monthly pension benefits. The statute explicitly defines 'earnings' to include 'periodic payments made pursuant to a pension or retirement program.'"). Since *DeCay*, most federal courts considering the issue have held that garnished funds from pension plans and retirement programs are subject to the 25% limitation.[8]

### A. Because Mr. Wells Has Not Attempted to Conceal Assets or Earned Income from the Court, the All Writs Act Is Unnecessary to Ensure Satisfaction of the Court's Restitution Order.

---

[8] See *United States v. Ashcraft*, 732 F.3d 860, 865 (8th Cir. 2013) ("For the reasons stated above, we conclude Ashcraft's disability payments are 'earnings' within the plain meaning of the Act and are therefore subject to the Act's limitations on garnishment); *United States v. Beulke*, 892 F. Supp. 2d 1176, 1183 (D.S.D. 2012) ("This Court agrees with DeCay that the 25% garnishment ceiling in § 1673(a) applies to payments from pension funds."); *United States v. Lee*, 659 F.3d 619, 622 (7th Cir. 2011) ("Given the unambiguous language of the statute, periodic payments from a pension or retirement savings plan made in accordance with its terms would be made 'pursuant to' the pension or retirement plan and therefore be subject to the 25% limitation of the CCPA."); *United States v. Cunningham*, 866 F.Supp.2d 1050, 1060-61 (S.D. Iowa 2012) (holding that the Government under the CCPA may only garnish 25% of monthly pension benefits).

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                                              Page 10

The All Writs Act[9] may not be used to circumvent other applicable statutory prohibitions: it is "a residual source of authority to issue writs that are not otherwise covered by statute."[10] "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."[11] Here, the enforcement of a criminal restitution order is covered by 18 U.S.C. §§ 3664(m)(1)(A)(i), 3613(a). Section 3613 provides CCPA § 303 applies; CCPA § 303 limits garnishment to 25% of earnings and prohibits courts from making orders in violation of that limitation. This Court's order should be limited to 25% of Wells' income.

In the context of criminal restitution, courts have relied on the All Writs Act almost exclusively only to restrain a defendant who attempts to frustrate the collection of the restitution debt by secreting, wasting or placing the money beyond the reach of the victim or the government.[12] For example, in *Yielding*, the district court issued a temporary restraining order pursuant to the All Writs Act after learning that the defendant, who was incarcerated, would be receiving $160,000 to settle unrelated litigation. Because of the government's concerns that the settlement proceeds were at risk of disappearing, the Eighth Circuit upheld the district court's invocation of the All Writs Act to enjoin the defendant and his agents from

---

[9] 28 U.S.C. § 1651
[10] *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985).
[11] *Id.*
[12] See *United States v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011) collecting cases).

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG                                                         Page 11

transferring the assets before restitution was made.[13]  Here, applying the provisions of the All Writs Act to override the provisions of the MVRA in this context would be inappropriate.  Indeed, the Supreme Court has said that "[a]lthough the [All Writs] Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."[14]

## V. THE COURT'S RESTITUTION ORDER SHOULD ACCOUNT FOR THE WELLS' TAX LIABILITY ON LUMP-SUM PAYMENTS MADE FROM THE TSP.

In assessing the value of the TSP, if the Court is inclined to award a portion (or all) of Wells' TSP account to the government, the Court should consider that any payments made from the TSP will be treated as taxable income.  Although the TSP management will withhold 10% of any distribution for federal taxes, based on the disbursement and their retirement income, the Wells will likely fall within a much higher tax bracket.  Assuming that the entirety of the TSP funds is withdrawn and assuming a 30% tax rate, the Wells will shoulder a tax liability of over $100,000.  At the very least, if the Court awards funds from the TSP to the government, the Court should authorize restitution to be paid only from post-tax distributions.

## VI. THE COURT'S RESTITUTION ORDER SHOULD ACCOUNT FOR WELLS' OUTSTANDING DEBTS & FINANCIAL OBLIGATIONS OF HIS DEPENDENTS.

---

[13] *Id.* at 727.
[14] *Id.*

The MVRA requires that, in setting the payment schedule of a restitution order, the Court must consider the defendant's "financial resources and other assets," his "projected earnings and other income," and "any financial obligations of the defendant; including obligations to dependents."[15] The MVRA carefully balances the need for obtaining victim compensation with a requirement that restitution obligations be structured around the defendant's ability to pay.[16]

In its Order, the Court should consider debts that Nancy Wells will be facing as her husband spends the rest of his life in prison. In addition to her necessary living expenses, she may be liable for taxes as noted above. If she retains her or any other interest in the couple's home, substantial expenses will be incurred to maintain and fix the property.

Nancy Wells is 70 years old. She is retired and her personal retirement funds have been exhausted. Her spouse faces incarceration for the rest of his life. Nonetheless, the government's request would leave Nancy Wells (and Jim Wells) to subsist on a residual 50% interest in Jim's military and civil service payments. If the couple divorces, Nancy's interest would dwindle to a meager 25% interest. This sum will certainly not be enough to cover basic living expenses as well as avoid delinquency on her debts. In light of these financial burdens, Wells respectfully

---

[15] Title 18 U.S.C. § 3664(f)(2). See *United States v. Corbett*, 357 F.3d 194, 195 (2nd Cir. 2004) (remanding for clarification of restitution order which required garnishment of 75% of "defendant's cash flow" but failed to account for reasonable living expenses for defendant and spouse).
[16] *United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013).

requests that the Court authorize garnishment of no more than 25% of his military and civil service funds towards restitution.

### VII. THE COURT MUST ISSUE A STAY OF THE RESTITUTION ORDER PENDING APPEAL.

Federal Rule of Criminal Procedure 38(e) states that "[i]f the defendant appeals, the district court, or court of appeals under Federal Rule of Appellate Procedure 8, may stay – on any terms considered appropriate – any sentence providing for restitution . . . ." Fed. R. Crim. Proc. 38(e)(1). The Rule further provides that the Court may issue "any order reasonably necessary" to ensure compliance with a restitution order after disposition of an appeal. Fed. R. Crim. Proc. 38(e)(2).

Wells is again pursuing an appeal of his conviction and sentence. In the meantime, any restitution order would effectively terminate Wells' right to access his TSP account.[17] If the Court awards all or any portion of Wells' TSP to the government and the program honors the order and decides to garnish his account, that decision is final and he cannot seek an administrative appeal.[18] The TSP regulations provide that funds paid out to fulfill a criminal restitution order may not be redeposited. 5 C.F.R. § 1653.36. Therefore, if this Court does not grant this stay, Wells will suffer irreparable harm that even a later ruling on appeal in his favor will be unable to reverse.

---

[17] "As soon as practicable after the TSP receives a document that purports to be a qualifying retirement benefits court order, whether or not complete, the participant's account will be frozen." 5 C.F.R. § 1653.3(c).

[18] "The TSP decision letter is a final determination of the parties' rights in the account. There is no administrative appeal from the TSP decision." 5 C.F.R. § 1653.3 (g).

*United States v. James Michael Wells*
Case No. 3:13-cr-00008-SLG  Page 14

Wells moves this Court to stay enforcement of the restitution judgment and hold it in abeyance until the criminal appeals process has been exhausted, so as to safeguard, at a minimum his spouse's financial interests, and in order to avoid irreparable harm. *See* Fed. Rule. Civ. Pro. 60(d). This Court should also prohibit the distribution of future garnished funds pending appeal. As the district court did in the prior litigation, this Court should order these funds not be disbursed (or be held in escrow) until the disposition of Wells' direct appeal.

A stay is warranted, particularly with respect to the TSP fund, because if Wells' Thrift Savings Plan is executed upon, not only will the Wellses be responsible for a significant tax liability that neither has the ability to pay, but also the removal of funds will be irreversible. This is because the regulations concerning payment of criminal restitution penalties out of TSP accounts provide that funds cannot be thereafter redeposited in a TSP account.

//

//

## CONCLUSION

For all the reasons stated herein above, the Court should limit restitution as required by law and not award funds from Wells' TSP account. Any award of future retirement funds should be limited to 25% of such payments as program regulations provide. Finally, the Court should grant a stay of execution of its restitution order

and require that any future funds garnished under the order be held in escrow pending disposition of Wells' direct criminal appeal.

DATED at Anchorage, Alaska this 18th day of December, 2020.

Respectfully submitted,

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender

*/s/ Peter A. Camiel*
Peter A. Camiel WSBA 12596
Attorney for Defendant

*Attorneys for James Michael Wells*

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on December 18, 2020. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary G. Colbath*