BRYAN SCHRODER
United States Attorney

STEVEN E. SKROCKI
CHRISTINA SHERMAN
Assistant U.S. Attorneys
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
       christina.sherman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 3:13-cr-00008-SLG |
| Plaintiff, | ) |
| v. | ) |
| JAMES MICHAEL WELLS | ) |
| Defendant. | ) |

**SECOND SUPPLEMENTAL MEMORANDUM OF
THE UNITED STATES ON RESTITUION**

The United States files with the court a Supplemental Memorandum on Restitution in light of the hearing set for this Friday, January 8, 2021 and does so in response to the facts that the defendant and likely his spouse have, together, or alone, have withdrawn approximately $125,000 from the defendant's Thrift Savings Plan/Retirement account in

violation of an order of this court. Due to this telling act of defiance, by the defendant and likely his spouse, the United States provides the following.

**A. The TSP Withdrawal**

Upon receiving word of this withdrawal from defense counsel, the United States issued a subpoena to the Thrift Savings Plan as to the details of this withdrawal. As of this writing, no return of information has yet been made. From information provided by defense counsel, the withdrawal made by the defendant was done, in part, in order to pay off credit card debt, in an amount believed to be $44,000. In addition to the payoff of personal credit card debt, reportedly the defendant and or his spouse paid approximately $88,000 to the Social Security Administration for Social Security benefit overpayments he should have not received due to his incarceration. The exact amount of the repayment for the overpayment is in the process of being verified with the Social Security Administration.

This is all that is known by the United States as to this withdrawal, and if the subpoena request is returned between this filing and the time of the hearing, it will be shared with defense and with the court on shortened time. Of course, the defendant is free to share more with the court but, as of yet, he has not. The United States notes that this withdrawal was made against this court's express order not to do so. The defendant did not request from the court permission to make this withdrawal, nor did he seek clarification of the court's order for this withdrawal if in fact he believed there to be a legitimate basis to make a withdraw on the account. The fact that this was done in secret,

Supplement to Memorandum 2
US v. Wells
3:13-cr-00008-SLG

and reportedly done without knowledge of defense counsel, puts into sharp focus the fact that the parties to this act were clearly aware of this court's ruling prohibiting financial activity of this type yet did it anyway. With respect to this withdrawal, what has been done, has been done, and what has been done falls on the defendant. The responsibility is his, and possibly his spouses. There are remedies available to the court to ensure two things based on its decision concerning restitution with the primary concern being that this does not occur again as the defendant obviously considers the court's authority not binding on him. Thus, the United States will ask the court to specifically secure the assets in the following ways, pending the court's decision on restitution.

> B. Securing Assets

As to the TSP, the United States seeks a specific court order for the Thrift Savings plan that any amounts determined by the court due to Mrs. Hopkins and Mrs. Belisle from the TSP be awarded immediately, and placed either with the victims for their own use as the law allows, or placed into an escrow fund controlled by the District Court pending appeal in the event the court stays its ruling. It is known that the Wells' are renting their Kodiak home on a month to month basis, so the court should be satisfied that Nancy Wells is receiving income from that source. As to the sale or any transfer of the Wells' residence, no such transfer should occur without approval of the court. In addition to that condition, the court should order that any proceeds from the sale be delivered to the Court for either escrow for distribution to Mrs. Hopkins and Mrs. Belisle until the roughly $120,000 is returned in full. While the $44,000 in credit card pay-off,

well-nigh impossible to recover, needs to be recovered as well from the sale of the home, or its rental income, the more substantial amount, the $88,000 paid to Social Security for overpayment, can be collected via the sale of the Wells' residence and/or by a more immediate route which the United States submits should be implemented by court order.

### C. Return of the Misappropriated Funds by Social Security to TSP or to the Court

As to the $88,000, the court can and should order the Social Security Administration to refund those funds to an interest-bearing account controlled by the court. The Wells' should not benefit in the pay-off of this debt by subterfuge nor should the victims of his crime be denied these funds due to Wells contempt of this court's order. The most direct, and it appears the most logical mechanism for recouping these funds is to order Social Security to remit the confirmed amount to this court for safe keeping.

### D. Any Court Determined Income/Benefit Funds Awarded to Mrs. Belisle and Mrs. Hopkins Should, If the Matter Be Stayed, Be Immediately Directed to a Court Controlled Interest Bearing Account Pending Appeal

The United States, while fully cognizant of a pending appeal, is opposed to a stay of any restitution being made available under the Mandatory Victim Restitution Act due to that action. In the event the court issues a stay, the United States requests that all available benefit/income streams, to wit, the defendant's VA Disability Benefits, U.S. Military Retirement Benefits, Civil Service Retirement System Benefits, and TSP, all be directed toward an interest bearing trust account controlled by the court. While this

makes sense in an ordinary case, it makes even more sense now given the Wells' actions with the TSP as described here.

E. **Summary/Conclusion**

At the hearing set for this Friday the United States will be calling Prof. Laura Taylor as to the figures available for restitution along with the economic loss of their lives and the valuation thereof. For the court's understanding, at the hearing, the United States will be inquiring of Prof. Taylor with respect to Dockets 1411 and 1435, exhibits filed under seal in support of various motions filed by the United States. It is not believed there is any objection to Prof. Taylor testifying as to the contents of these exhibits, in general, by the defense.

As to the United States' position on the figures and amounts provided to the court in previous filings, those remain unchanged, however the United States will be requesting that the court secure, collect, and distribute what is appropriate under the law and to have those assets distributed immediately or secured with the court in an interest bearing account.

RESPECTFULLY SUBMITTED this 7th day of January 2021, at Anchorage, Alaska.

> BRYAN SCHRODER
> United States Attorney
>
> s/ Steven E. Skrocki
> STEVEN E. SKROCKI
> Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2021,
a copy of the foregoing was served
electronically on:

Counsel of Record

s/ Steven E. Skrocki
Office of the US Attorney