```
                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF ALASKA


UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )
                             )
     vs.                     )   CASE NO. 3:13-cr00008-SLG
                             )
JAMES MICHAEL WELLS,         )
                             )
         Defendant.          )
                             )
```

TRANSCRIPT OF REMOTE PROCEEDINGS
STATUS CONFERENCE
BEFORE THE HONORABLE SHARON L. GLEASON, DISTRICT JUDGE
December 30, 2020; 11:03 a.m.
Anchorage, Alaska

**FOR THE GOVERNMENT:**
    Office of the United States Attorney
    BY: STEVEN E. SKROCKI and CHRISTINA SHERMAN
    222 West 7th Avenue, #9
    Anchorage, Alaska  99513
    907-271-5071

**FOR THE DEFENDANT:**
    Office of the Federal Public Defender
    BY: GARY GEORGE COLBATH
    900 West 5th Avenue, Suite 200
    Anchorage, Alaska  99501
    907-646-3400

    Camiel & Chaney P.S.
    BY:  PETER A. CAMIEL
    2101 Fourth Avenue, Suite 1900
    Seattle, Washington  98121
    206-624-1551

R. JOY STANCEL, RMR-CRR
Federal Official Realtime Reporter
222 West 7th Avenue, #4
Anchorage, Alaska  99513
Proceedings Recorded by Mechanical Stenography
Transcript Produced by Computer

1          (Call to Order of the Court)
2          DEPUTY CLERK:  We're on record in Case
3  Number 3:13-Criminal-8-SLG, the United States of America versus
4  James Michael Wells.  Present for the Government, we have
5  Christina Sherman and Steve Skrocki.  Present for the
6  defendant, we have Gary Colbath and Peter Camiel.  We also have
7  Nancy Wells and Nicola Belisle on the phone.
8          THE COURT:  Good morning, everyone.  And I
9  understand, Mr. Colbath, that efforts to try to reach Mr. Wells
10 at the jail were unsuccessful, and that you feel you're
11 agreeable to proceeding on this basic, just touching base,
12 status conference.  Is that correct?  And then you can advise
13 him of what we discuss today?
14         MR. COLBATH:  Yes, Your Honor.  In light of the fact
15 that we were only scheduled for a status, sort of scheduling
16 hearing without substantive matters being presented, I think
17 it's best, since we have counsel and the Court, that we proceed
18 with getting done what discussions we can have, and I will make
19 arrangements to advise Mr. Wells of what transpired.
20         THE COURT:  All right.  I'm not sure what happened
21 with the jail, because I was just looking at the minute order.
22 I thought it was pretty clear about the time, but these things
23 happen.  I know they have a lot of challenges.
24         So in any event, moving forward, Mr. Skrocki, good
25 morning.  What are your thoughts on how we proceed here?

1    MR. SKROCKI: Good morning, Your Honor. Thank you,
2  and pre-happy New Year's to you.
3          THE COURT: Thank you.
4          MR. SKROCKI: You're welcome. We're ready to go,
5  Judge. We've got our expert calendared in. I think you've
6  seen both sides' pleadings on this matter, from last week.
7  We're ready to go on the 8th, subject to the Court's calendar.
8  And I want to say also that I know the spouses of Mr. Belisle
9  and Mr. Hawkins are very certain they want to go forward on the
10 date set. So Your Honor, we would like to go forward on the
11 8th. Thank you.
12         THE COURT: Thank you. Mr. Colbath, what are your
13 thoughts?
14         MR. COLBATH: Well, Your Honor, the -- the pleadings
15 have been submitted, and so I think that we are tentatively
16 ready to proceed as well on the 8th, and going to be prepared
17 to go forward. Obviously, some -- during the interim, between
18 the time that we last appeared and were on the record and
19 today, the MGO-40 was filed. So I wasn't -- my only question
20 would be, you know, Mr. Wells' intention and desire is to be
21 present in the courtroom so that he can communicate with me and
22 more expeditiously and privately, and/or I guess be as aware
23 and attentive as possible to all parties to the proceedings,
24 whatnot. And so I didn't know, logistically, if that was -- I
25 understood that was going to be the plan, if we -- as we went

```
 1  forward, and then I didn't know if the most recent MGO changed
 2  that, or exactly what the Court's logistical outlook of the
 3  hearing would be, if that's changed at all since our last
 4  hearing, but assuming it has not changed and we can go forward
 5  in the fashion that's been previously discussed, I think we'll
 6  be ready to go as scheduled.
 7              THE COURT:  All right, all right.  What I haven't
 8  done -- and I was actually listening to this on the news -- is
 9  reviewed the most recent municipal regulations with regard to
10  indoor gatherings, and I don't know if either side has had the
11  opportunity to do that.  I am ready, willing to proceed, so
12  long as the number of people in the courtroom would be
13  consistent with the municipal regulation that's in place.  And
14  like I said, I heard just kind of in passing, six and ten
15  people, and I can work with courtroom staff so that really, our
16  court reporter and even our deputy could be out of the
17  courtroom.  We would have -- Mr. Skrocki, how many lawyers on
18  behalf of the Government would you anticipate in the courtroom.
19              MR. SKROCKI:  Yes, Your Honor, thank you.  I would
20  like to be personally present in the courtroom.  Ms. Sherman
21  can appear telephonically, if that would help with the Court's
22  calculus.
23              THE COURT:  All right.  So one person from the
24  Government, in the courtroom.  And did you talk with victims?
25  I think what we can do is have them listen in telephonically,
```

we might even be able to have that video conferenced. I can run that by, but is that going to be -- you don't anticipate -- I don't think our MGO allows spectators in the courtroom, so --

MR. SKROCKI: Right, and the -- the victims, just to help you out, Your Honor, the victim spouses are both out of state, so we don't expect them to attend personally.

THE COURT: Telephonically would --

MR. SKROCKI: If they prefer video, I will let the Court know about that as soon as we find that out today.

THE COURT: We'll see if we can do that. That might involve -- just as a heads-up, if we were to do that, where I have with people out of state, it involves going to like another federal court. So I'm not sure in this current circumstance, with COVID-19, that's feasible. Telephonic certainly is, but we have a listening line available. All right.

MR. SKROCKI: Yes, and --

THE COURT: Go ahead, go ahead.

MR. SKROCKI: Sorry. You know, one more time, one more thing. Our expert, as the Court may be aware, is going to be participating telephonically or testifying telephonically.

THE COURT: I thought we had done the video, but it's going to be telephonic?

MR. SKROCKI: Either way, either way.

THE COURT: All right. Well, telephonic is a lot

1  easier, if that's agreeable to both sides, just in terms of
2  logistics.  And I think the only thing that you'd want to make
3  sure is that both sides exchange -- make sure that each expert
4  has any anticipated exhibits so that we're all literally on the
5  same page.  That would be very helpful.
6              MR. SKROCKI:  Yes, Your Honor.
7              THE COURT:  Anything else, Mr. Skrocki?
8              MR. SKROCKI:  No.  Thank you.
9              THE COURT:  All right; very good.  Mr. Colbath, go
10  ahead.  How many do you envision besides you and Mr. Wells in
11  the courtroom?
12             MR. COLBATH:  Your Honor, my belief would be that it
13  would only be Mr. Wells and myself in the courtroom.
14  Mr. Camiel, I understand, will appear telephonically, and I
15  believe the only spectator and/or potential witness that I
16  would have would be Nancy Wells, and she is much like the
17  victim spouses, out of state.  And so she would be on either
18  the telephone or video, whichever accommodation ultimately gets
19  made.
20             If it can be done, it would be my request that the
21  witnesses that testify, you know, testify by video so I could
22  see who it was I was talking to and questioning, and if
23  documents were being referred to, or things looked at, that we
24  all would be knowledgeable of that.
25             THE COURT:  Right, and I agree with you, and it's

certainly easy, you know, for the trier of fact.  It's obviously much preferred.  I am going to inquire of court staff, because what I think would work better is to use the Zoom platform as opposed to the Cisco.  That is much more -- it's just an easier thing to work, but we have to use Cisco when we have someone at the jail.  Well, we don't, so I think if we can use the Zoom platform.  It will work much better for us.  So I will work on that with court staff and give you instructions through a minute order, but I assume both sides are comfortable at this point, ten months into this, with the Zoom platform.  Mr. Skrocki, yes?

        MR. SKROCKI:  Yes, Your Honor.  Thank you.

        THE COURT:  All right.  Likewise, Mr. Colbath?

        MR. COLBATH:  Yes, Your Honor.  And I guess my expectation, if we had a Zoom conference, if Your Honor and myself and Mr. Wells are in the courtroom, we'll be seeing some sort of Zoom presentation from there.  So personally, I won't have -- I won't be logging on separately, nor will Mr. Wells.  We'll be watching along with the Court from the courtroom.

        THE COURT:  Correct.  I would envision, if we can do this, that we would have one of those big TVs that are generally down in the magistrate courtrooms in the courtroom for us all to watch the same video screen.  That's what I envision, as opposed to each of us watching on our own monitors, but I'll have to work with court staff on that issue,

but we should be able to sort that out by Friday.

And so the only people in the courtroom, then, am I hearing, would be the Government, Mr. Wells, Mr. Colbath, the marshals and myself, and then to the extent we need them, court staff, but I'm not sure we will need them in the courtroom if we -- they can be on the Zoom. So that should -- and then we'd be -- the maximum would be six, if there were no court staff -- two marshals, Mr. Wells, Mr. Colbath, myself, and Mr. Skrocki -- which I believe is the -- that's the lowest number that I heard on the radio about the municipal regulations. So I think we'd be fine with that.

And Mr. Colbath, it would be my expectation that you and Mr. Wells, nonetheless, keep your distance from each other. I understand the need to confer and the way -- and if you could relay to him, the way I would expect that to occur is that we take a break, everybody else leave the room, meaning Mr. Skrocki and myself, whenever there's a -- a request to confer, within reason, obviously, and that's how the two of you confer, six feet or more apart, while the rest of us leave. Any questions about that?

MR. COLBATH: No, Your Honor. In the few live court appearances or access to the courtroom that I've had, at least if we're in Courtroom Number 2, typically, on counsel table, there has been a phone on either end of the table that I've been able to use a couple of times.

```
 1                THE COURT:  Oh, great.  Okay.  Well, you're way ahead
 2   of me.  I have not --
 3                MR. COLBATH:  It's just a private line, line to line,
 4   so I think we can talk one end of the table to the other, just
 5   whispering, as we would if we were whispering in each other's
 6   ear.  I believe, unless something's changed, the last time I
 7   was in Courtroom 2, that was on defense counsel table.
 8                THE COURT:  I'll double-check on that.  That sounds
 9   very good.
10                DEPUTY CLERK:  Yes, Your Honor.  Those have been
11   installed in Courtrooms 2 and 3.
12                THE COURT:  Oh, very good.  Thank you.  Thank you,
13   Holly.  All right.  So we are set there.
14                And Mr. Skrocki, anything else to take up at this
15   time?  I hope to get you Zoom instructions, and there's not
16   going to be -- just my only question, there, is anything under
17   seal that you anticipate, Mr. Skrocki?  That's part of the
18   reason we go with Cisco, is the confidentiality of Zoom is of
19   lesser magnitude.
20                MR. SKROCKI:  Yes, it's a little more stable of a
21   platform, less unpredictable, but not quite as secure.  That's
22   the tradeoff.  I can't think of anything right now, Your Honor,
23   in terms of under seal.  I've got a call with Mr. Colbath after
24   this hearing, so we can discuss that.  If that changes, we'll
25   let you know, and if you -- I guess if you don't hear from us
```

1  on that, you can assume there will be nothing under seal.
2  And lastly, my very quick researching colleague,
3  Christina Sherman, has confirmed that the Muni limit is six
4  people.  So she went and took a look at that.
5  THE COURT:  All right.  Thank you, Ms. Sherman.  That
6  was prompt research.  If that is the limit, then I'll work with
7  the court to -- court staff to make sure that we stay within
8  that limit and proceed accordingly.  I also heard there are a
9  number of exceptions, and I don't know if court proceedings
10 would fall within that, but I certainly think all of us would
11 like to aim to stay within those recommendations, or
12 guidelines, or requirements.
13 All right; very good.  Mr. Colbath, anything else we
14 can take up at this time?
15 MR. COLBATH:  Not from me at this point, Your Honor.
16 THE COURT:  All right.  So if either side or if the
17 Court is of the view that it would be helpful for us to meet
18 again on logistics, or something else, prior to the 8th, by all
19 means, do a notice or stipulation; let me know, but otherwise,
20 we'll aim for January 8th to have this hearing, and take up the
21 issues at that time.  I appreciated both sides' briefing.  That
22 was helpful.  And anything else for this year, Mr. Skrocki,
23 before we adjourn?
24 MR. SKROCKI:  Thank you, Your Honor.  No, we don't
25 have anything further for 2020.

1     THE COURT: All right. Mr. Colbath, anything
2  further?
3     MR. COLBATH: No, me as well, Your Honor. Thank you.
4     THE COURT: All right; good. Well then, thank you
5  all. We'll go off record at this time.
6     DEPUTY CLERK: This matter is adjourned. This court
7  now stands in recess until 12 p.m.
8     (Proceedings concluded at 11:17 a.m.)
9
10
11
12                          CERTIFICATE
13     I, R. Joy Stancel, Federal Official Realtime Court
14  Reporter in and for the United States District Court for the
15  District of Alaska, do hereby certify that the foregoing
16  transcript is a true and accurate transcript from the original
17  stenographic record in the above-entitled matter and that the
18  transcript page format is in conformance with the regulations
19  of the Judicial Conference of the United States.
20     Dated this 9th day of February, 2021.
21
22                              /s/ R. Joy Stancel
                            _____
                               R. JOY STANCEL, RMR-CRR
23                          FEDERAL OFFICIAL COURT REPORTER
24
25