```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF ALASKA


UNITED STATES OF AMERICA,   )
                            )
     Plaintiff,             )
                            )
vs.                         )    CASE NO. 3:13-cr-00008-SLG
                            )
JAMES MICHAEL WELLS,        )
                            )
     Defendant.             )
_____)


   TRANSCRIPT OF REMOTE PROCEEDINGS VIA TELECONFERENCE
                    STATUS CONFERENCE
   BEFORE THE HONORABLE SHARON L. GLEASON, DISTRICT JUDGE
               November 17, 2020; 10:03 a.m.
                     Anchorage, Alaska
```

**FOR THE GOVERNMENT:**
    Office of the United States Attorney
    BY: STEVEN E. SKROCKI and CHRISTINA M. SHERMAN
    222 West 7th Avenue, #9
    Anchorage, Alaska 99513
    (907) 271-5071

**FOR THE DEFENDANT:**
    Office of the Federal Public Defender
    BY: GARY GEORGE COLBATH
    425 G Street, Suite 800
    Anchorage, Alaska 99501
    (907) 646-3400

    Camiel & Chaney, P.S.
    BY: PETER A. CAMIEL
    2815 Elliott Avenue, Suite 100
    Seattle, Washington 98121
    (206) 636-1725

---

**SONJA L. REEVES, RMR-CRR**
Federal Official Court Reporter
222 West 7th Avenue, #4
Anchorage, Alaska 99513
Transcript Produced from the Stenographic Record

```
 1              (Call to Order of the Court at 10:03 a.m.)
 2              DEPUTY CLERK:  Her Honor, the Court, the United
 3   States District Court for the District of Alaska is now
 4   in session, the Honorable Sharon L. Gleason presiding.
 5              Your Honor, we're on record in case
 6   3:13-criminal-8-SLG, United States of America versus
 7   James Michael Wells.
 8              We do have Mr. Wells on the line.  We have
 9   Steve Skrocki and Christina Sherman for the government,
10   Peter Camiel and Gary Colbath for the defendant.
11              Court staff, Irma Hernandez, deputy clerk;
12   Sonja Reeves, court reporter.  And also on the line we
13   have Nancy Wells and Mrs. Belisle.
14              THE COURT:  Good morning, everyone.  I put this
15   on to see where we can go to get the restitution issue
16   resolved here.
17              So, Mr. Skrocki, why don't I hear from you
18   first, your thoughts on where we go.
19              MR. SKROCKI:  Yes, Your Honor.  Good morning.
20   Good to be in front of you again, Judge.  I hope all is
21   well.
22              Yes, as far as we're concerned, we would like
23   to move forward on the restitution hearing as soon as
24   practicably possible in light of the current COVID
25   issues.  Just to give the Court some background, during
```

the course of the last couple of months, we have provided Mr. Colbath and Mr. Camiel with all of our underlying discovery for the numerical figures that our expert has determined would be due and owing in the event the Court granted the government's motion under the MVRA.

Last week we got the final report from the expert, which I've disclosed to defense counsel. What we would like to do is provide that to the Court because the Court would need that final document to ascertain the government's position.

And we would like to set this, given all the discovery and the final report, for December. And maybe, Judge, I would suggest -- I think Mr. Colbath is going to suggest January, but I think if we look at December timeframe, maybe the middle of the month, we could use that as a placeholder to see how the COVID situation either develops in a better way or not, and then the Court could evaluate what it wishes to do for a January date.

I believe in the interest of the victims in this case that January would be as far out as we would be willing to have a hearing because it's been going on for so long. And I believe as well that just by the data that's out there with this COVID situation, it just

doesn't seem like this is going to be getting any better any time soon. And whereas we understand Mr. Wells may have some concerns about transportation and being in the courtroom, the government is certainly willing to work with the Court and the defense counsel on appearing out of court telephonically or by video, however the Court may wish to structure that.

Our expert is going to be appearing by stipulation by video, so you can reduce the court numbers in the courtroom to accommodate any concerns that the defense might have.

We would like the Court to set something for December, and at the latest January, but we prefer December just to get this thing finished.

THE COURT: All right. Thank you, Mr. Skrocki.

Mr. Colbath, go ahead.

MR. COLBATH: Thank you, Your Honor. Well, as Mr. Skrocki said, we just received, I believe it was middle of last week, kind of the final numbers from the government and the final pieces, I guess, to put the numbers on the government's position and their request.

That being received, Mr. Skrocki was right. It was going to be my request today that the Court set a tentative hearing in January and give our pandemic situation another period of time to see how -- if and

how things change.

We continue to be, for the record, under the scenario that, although Mr. Wells could be transported by the marshals over to the federal building either for purposes of meeting with me or for purposes of attending a live court appearance, my understanding is that he would be subjected to some search and otherwise sort of isolated handling by the marshals.

But more significantly, when he's returned to the Anchorage jail facility, he would be in lockdown and quarantined for 14 days. And given Mr. Wells has spent a considerable amount of time in protective custody and on the segregation unit over at the jail, and so when he comes back and quarantines, it's basically sitting in an isolation cell by himself for 14 days without access to really anything other than meals and medical checks, if requested.

And he does not want to -- number one, he wants to be present in person to be able to communicate with me. I would envision being present in person certainly at the hearing. And he wants to be present in front of Your Honor and whoever else might be attending the hearing live, so he wants to be there in person.

And number two, he does not want to suffer the consequences of exercising that right, to the extent

1  that it's avoidable.  Our request was going to be a
2  hearing scheduled in January, and then a deadline for
3  me, for the defense to submit our final documents and
4  restitution response to the government sometime in
5  December.
6           If we had a December deadline, the Court would
7  have all the material by sometime in December and then
8  we would envision a hearing in January, or at least an
9  evaluation of where things are at and a date reserved in
10 January.
11          DEPUTY CLERK:  Your Honor, are you still on the
12 line?  This is Irma, the deputy clerk.
13          (Pause)
14          DEPUTY CLERK:  I just heard a beep, so I think
15 she might have got disconnected.
16          (Pause.)
17          THE COURT:  Hello, it's Judge Gleason.  I don't
18 know what happened there.  Is everybody else still on
19 the line?
20          DEPUTY CLERK:  Yes, Your Honor.
21          THE COURT:  All right.  I don't know what
22 happened there, but in any event, I'm back.
23          So, Mr. Colbath, you were in the middle of
24 talking, so go ahead.  Early January -- or January you
25 were thinking of?

```
 1            MR. COLBATH:  Yes, Your Honor.  A January
 2   hearing date with a December, mid-December deadline for
 3   us to respond and get our documents in to the Court.
 4   Now that the government's process is complete, we will
 5   also get a written response to the Court.
 6            You would have all the documents by December,
 7   and we would see where we're at and have a hearing date
 8   reserved in January with, hopefully, circumstances
 9   better, or the Court determining what, I guess, needs to
10   happen if circumstances appear the same or not getting
11   better.
12            THE COURT:  All right.  And, Mr. Skrocki, how
13   long do you envision for -- can we do this in one day, I
14   guess is my question, in your view?
15            MR. SKROCKI:  Yes, Your Honor.  I think we can
16   do this in half a day.  The expert's testimony is pretty
17   much going to be summarized in the report.  It's more
18   like a letter.  It's about a page and a half.
19            And the underlying documents have been provided
20   to the defense already, so I don't see this taking more
21   than half a day.
22            If you're inclined to move it to January, if we
23   could do it in early January, that would be preferable.
24            THE COURT:  I was thinking of the first week of
25   January is what I think makes the most sense here is a
```

hearing at that time. And I'm thinking as well that it -- let me ask first, Mr. Colbath, would you concur that we can do this in half a day?

MR. COLBATH: Yes, Your Honor. I would not think -- with ahead-of-time submissions and whatnot, I agree with Mr. Skrocki.

THE COURT: All right. Mr. Skrocki, if you received the defense position on this issue by mid-December, would that be sufficient for you to be ready to go in early January?

MR. SKROCKI: Yes, Your Honor, very much so. Thank you.

THE COURT: All right. Very good. Well, then that's what I'm inclined to do. I can't do that now. I need to work with the calendaring staff. At this point, we are not able to give our own dates for the foreseeable future, but I will get you a date that first week of January.

I think the 4th is Monday, if I recall correctly, so sometime during that week. I'm inclined as well to have a brief telephonic hearing the week before, assuming both sides would be available, and simply to address the logistics, because it would be my intent to proceed, regardless of the condition of the pandemic, at that point in time, give Mr. Wells the

1  option to either come in person, which is certainly his
2  right, and follow the guidance or the provisions of the
3  DOC and the marshals with regard to quarantining, or
4  alternatively videoconference.
5          Unless, Mr. Colbath, if what you're saying is
6  Mr. Wells is certain that he wants to appear in person
7  in January, then I'm not going to set a status
8  conference, we'll simply assume that to be the case.
9  None of us really know what the future holds in the
10 pandemic situation for then.
11         So what are your thoughts on that, Mr. Colbath,
12 simply -- do we need a status hearing or not?
13         MR. COLBATH:  Your Honor, I suppose that it is
14 best to have a status hearing so that Mr. Wells can be
15 knowledgeable of his options in as close to time as the
16 hearing is scheduled as possible so that we know what
17 arrangements are.
18         I would also let the Court know I'm unavailable
19 the 4th and the 5th, just the first part of that first
20 week of January, so if we could do Wednesday, Thursday,
21 Friday of that week, that would be preferable for me.
22         THE COURT:  All right.  Mr. Skrocki, are you
23 available one of those days as well?
24         MR. SKROCKI:  Yes, Your Honor, I have no plans
25 on going anywhere.  With one caveat, I'll check with our

1  expert as soon as I'm off the line here and make sure
2  she's available.  I think she is.  She is in academia,
3  so she tends to have a structured schedule as well, so I
4  think this will be okay.
5          THE COURT:  Mr. Colbath, would you concur there
6  is a stipulation that the government's expert can appear
7  by videoconference?
8          MR. COLBATH:  Yes, Your Honor.
9          THE COURT:  And to the extent the defendant is
10 calling any witness, Mr. Skrocki, do you agree that that
11 person can be by videoconference as well?
12         MR. SKROCKI:  Yes, Your Honor, we do.
13         THE COURT:  All right.  Very good.  So I'll go
14 ahead then and confer with calendaring and get you a
15 date.  You'll have a text order for the end of that
16 week, 6th, 7th or 8th, for up to a four-hour block.
17         And then I'm going to do it -- actually, what
18 I'll ask is to get the block on Friday when the
19 videoconference capabilities -- when we have a big block
20 of time for federal cases at the Anchorage jail for
21 videoconference in the event that that's how we're
22 proceeding, but either way, we'll either be all in the
23 courtroom or not.
24         And we'll sort that out at a status hearing
25 during the prior week that I'll also obtain from

1  calendaring.  December 18th I believe is a Friday,
2  Mr. Colbath.  I'll make that the deadline for your
3  compliance with providing the government any documents
4  that you intend to introduce.
5         And that I hear, Mr. Skrocki, gives you
6  sufficient time, correct?
7         MR. SKROCKI:  Yes, ma'am.
8         THE COURT:  All right.  Very good.  Anything
9  else we can take up today, Mr. Skrocki?
10        I am proceeding telephonically.  It's a status
11 hearing.  It's just a scheduling conference, but I do
12 find that given the pandemic that proceeding by
13 telephone today is in the interests of everyone's health
14 and safety.  So that's why I set this on as a
15 telephonic.
16        Go ahead, Mr. Skrocki.
17        MR. SKROCKI:  Nothing further from us, Your
18 Honor.
19        THE COURT:  Anything further, Mr. Colbath?
20        MR. COLBATH:  No, Your Honor.
21        THE COURT:  Very good.  Then we'll go off
22 record at this time.  Thank you, all.
23        DEPUTY CLERK:  This matter is adjourned.  This
24 court now stands in recess until 12:00 p.m.
25               (Proceedings concluded at 10:17 a.m.)

CERTIFICATE

I, Sonja L. Reeves, Federal Official Court Reporter in and for the United States District Court of the District of Alaska, do hereby certify that the foregoing transcript is a true and accurate transcript from the original stenographic record in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 24th day of February, 2021.


/s/ Sonja L. Reeves
SONJA L. REEVES, RMR-CRR
FEDERAL OFFICIAL COURT REPORTER