# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>JAMES MICHAEL WELLS,<br><br>                Defendant. | Case No. 3:13-cr-00008-SLG |

## RESTITUTION ORDER

Defendant James Michael Wells was found guilty of six counts[1] and was sentenced to six terms of life imprisonment.[2] After sentencing, on January 8, 2021, the Court held a restitution hearing.[3]

Prior to the hearing, the government filed a Memorandum Regarding Assets Available for Restitution,[4] two supplements to the memorandum,[5] and a Notice to

---

[1] (1) Murder in the First Degree of Richard Belisle, a violation of 18 U.S.C. §§ 7(3) and 1111(a), (b); (2) Murder in the First Degree of James A. Hopkins, a violation of 18 U.S.C. §§ 7(3) and 1111(a), (b); (3) Murder of an Officer or Employee of the United States, Richard Belisle, a violation of 18 U.S.C. §§ 1114 and 1111; (4) Murder of an Officer or Employee of the United States, Petty Officer James A. Hopkins, a violation of 18 U.S.C. §§ 1114 and 1111; (5) Possession and Use of a Firearm in Relation to a Crime of Violence, the murder of Richard Belisle, a violation of 18 U.S.C. §§ 924(c)(1)(A), (B)(ii) and 924(j)(1); and (6) Possession and Use of a Firearm in Relation to a Crime of Violence, the murder of James A. Hopkins, a violation of 18 U.S.C. §§ 924(c)(1)(A), (B)(ii) and 924(j)(1). Docket 1314.

[2] Docket 1356.

[3] Docket 1445 (minute entry); Docket 1458 (transcript of restitution hearing).

[4] Docket 1395 (sealed exhibits to the memorandum are at Dockets 1396, 1411, and 1435).

[5] Docket 1436 and Docket 1443.

Court Regarding Violation of Court Order Concerning Withdrawal of Approximately $125,000 from the Thrift Savings Plan Account of James Wells.[6] Mr. Wells filed a Memorandum Regarding Restitution.[7] After the hearing, the government filed an updated restitution calculation,[8] a Notice of Citation to Trial Record,[9] a proposed restitution order,[10] and a Notice of Supplemental Authority on Restitution.[11] Mr. Wells filed a Notice of Citation to Trial Record,[12] a response and objection to the government's proposed order,[13] and a response to the government's supplemental authority regarding restitution.[14] The Court has reviewed and considered all of these filings. In addition, the Court has considered the exhibits and testimony of Laura Taylor that were presented at the restitution hearing.

---

[6] Docket 1438.

[7] Docket 1439. In this memorandum, Mr. Wells raises—to preserve for appeal—"that imposing restitution based on facts not found by the jury violates the Fifth and Sixth Amendments." Docket 1439 at 5. Mr. Wells acknowledges that Ninth Circuit precedent to the contrary is binding on this Court, and so the Court will not further address this argument.

[8] Docket 1444.

[9] Docket 1449.

[10] Docket 1450.

[11] Docket 1452.

[12] Docket 1448.

[13] Docket 1451.

[14] Docket 1455.

The Mandatory Victims Restitution Act (MVRA) requires the Court to order restitution to victims of violent crimes.[15] After determining the amount of restitution owed, 18 U.S.C. § 3664(f)(2) requires the Court to determine the manner in which restitution is to be paid. "Any dispute as to the proper amount or type of restitution shall be resolved . . . by the preponderance of the evidence."[16] The government bears the burden of showing the victims' amount of loss; the defendant bears the burden of showing his financial resources and the financial needs of his dependents.[17]

The government provided evidence concerning Mr. Wells' assets and future income, including information obtained from the United States Coast Guard (USCG), information regarding the ownership and valuation of the Wellses' Kodiak house, and reports and testimony from Dr. Laura J. Taylor, a forensic economist this Court has recognized as an expert.[18] This Court finds that Dr. Taylor's methodology is sound and adopts her calculations for purposes of this order.

---

[15] 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(i).

[16] 18 U.S.C. § 3664(e).

[17] 18 U.S.C. § 3664(e). Mr. Wells did not put on evidence of the financial needs of his dependents.

[18] Docket 1458 at 7; s*ee also* Docket 1396-1; Docket 1411-1; Docket 1435-1; Docket 1444-1 (reports of Dr. Taylor).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 3 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 3 of 19

## I. Restitution amounts owed to the victims

The government presented evidence, through Dr. Taylor, of "the economic loss resulting from the deaths of Richard Belisle and James Hopkins."[19] Dr. Taylor calculated those economic losses by considering both "earnings loss" and "household services loss."[20] Mr. Wells contends that there is no legal authority to impose restitution based on "household services loss" and that the amounts calculated by Dr. Taylor for such a loss are speculative.[21] The Court has taken guidance from tort damages law, which permits a jury to award damages for the loss of household services and will include such losses in the restitution award.[22]

Having considered the parties' positions, the hearing testimony, and the exhibits, the Court finds that the following restitution amounts have been established by a preponderance of the evidence.

---

[19] Docket 1444-1 at 1; Docket 1444-1; Docket 1458 at 7–8.

[20] Docket 1458 at 8. Dr. Taylor defined "earnings loss" as "the earnings and benefits associated with the individual's employments" and defined "household services loss" as the "losses to the survivors of the care and maintenance that the individual would have provided in the household, so things like shoveling the drive or mowing the lawn or doing housework . . . ." Docket 1458 at 9.

[21] Docket 1439 at 6 (citing *United States v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006)).

[22] *See, e.g.*, *Babinec v. Yabuki*, 799 P.2d 1325, 1336–37 (Alaska 1990); *Tate v. United States*, Case No. 3:14-cv-242-JWS, 2017 WL 2560341, at *10 (D. Ak. June 12, 2017) (awarding $630,000 for loss of household services in a Federal Tort Claims Act case).

### A. The Estate of James Hopkins

Mr. Wells asserts that evidence discussed at trial shows that, at the time of his death, Mr. Hopkins was planning to retire.[23] According to Mr. Wells, the Court should reduce the amount of future earnings loss attributed to Mr. Hopkins to reflect that he would not "have continued with his U.S. Coast Guard employment until retirement at 30 years of service,"[24] which is how Dr. Taylor calculated future earnings loss. The Court has reviewed the parties' filings and positions regarding Mr. Hopkins' estimated retirement age[25] and adopts Dr. Taylor's calculations of projected earning loss for Mr. Hopkins in their entirety. The Court finds by a preponderance of the evidence, including the evidence admitted at trial, that Mr. Hopkins would have likely continued working full time until age 61.9 years.[26] The Court further finds that while Mr. Hopkins may well have left the Coast Guard before that age, it would have been to obtain a higher paying civilian job, and thus Dr. Taylor's lost-earnings estimate is conservative.

The Court awards restitution against Mr. Wells in favor of the Estate of James Hopkins in the amount of $ 1,178,758.

---

[23] Docket 1439 at 2.

[24] Docket 1458 at 12.

[25] *See* Docket 1448, Docket 1449, Docket 1390 at 217 (Trial Transcript); Docket 1405 at 126–130 (Trial Transcript).

[26] Docket 1411-1 at 1.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 5 of 19
Case 3:13-cr-00008-SLG Document 1459 Filed 04/21/21 Page 5 of 19

## B. The Estate of Richard Belisle

The Court adopts Dr. Taylor's calculations of projected earning loss for Mr. Belisle in their entirety. The Court awards restitution against Mr. Wells in favor of the Estate of Richard Belisle in the amount of $ 742,882.

## II. Mr. Wells' financial resources

The restitution statutes "carefully balance the need for obtaining victim compensation with a requirement that restitution obligations be based on the defendant's ability to pay. It is for that reason that, in determining the manner of payment and the monthly payment schedule, the district court must consider the defendant's financial resources and assets and [his] projected income and [his] obligations, including those of [his] dependents."[27] The MVRA allows enforcement of a restitution judgment against all of a defendant's assets, i.e., his "property or rights to property."[28] Thus, the Court must determine what assets are available to Mr. Wells. The government presented evidence of real property and certain retirement and disability income that Mr. Wells is eligible to receive.[29]

---

[27] *United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013).

[28] *United States v. Berger*, 574 F.3d 1202, 1205 (9th Cir. 2009).

[29] Docket 1444-1 at 1.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 6 of 19
Case 3:13-cr-00008-SLG  Document 1459  Filed 04/21/21  Page 6 of 19

## A. Kodiak House

As shown by the tax history filed by the government, and agreed to by Mr. Wells, Mr. Wells' and Nancy Wells' house was assessed at $310,700 in 2020.[30] It appears that Mr. Wells and Nancy Wells purchased the home together in 1990[31]; they own the property as tenants by the entirety.[32] The Court finds that Mr. Wells and Nancy Wells each have a one-half interest in the house.[33] Through counsel, Mr. Wells asserts that the house is in poor condition and "its true present value is far less than $300,000."[34] The Court finds by a preponderance of the evidence that the assessed tax value of the house is its value for purposes of restitution, and Mr. Wells owns a one-half interest in the house, worth $155,350.

## B. Thrift Savings Plan

Mr. Wells has a federal Thrift Savings Plan (TSP) account valued at $524,502 as of January 7, 2021.[35] The government asserts that the entire TSP amount can and should be used for restitution, contending that Nancy Wells' "interest in the retirement fund is [ ] derivative of her husband's interest, and she

---

[30] Docket 1411-2 at 3; Docket 1439 at 4.

[31] Docket 774-1.

[32] AS 34.15.140.

[33] *United States v. Lindsey*, 2013 WL 3947757, at *6 n.3 (noting that "[e]ach spouse owns a fifty percent interest in property held as tenants by the entirety" and ordering the sale of the property to satisfy both spouses' tax liens).

[34] Docket 1439 at 4.

[35] Docket 1444-1 at 2.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 7 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 7 of 19

has no independent property right she may assert to defeat garnishment."[36] Mr. Wells responds that Nancy Wells has a right to a survivor's annuity from the TSP account, and that her interest in the TSP account cannot be used for restitution without her consent.[37] The TSP's survivor's annuity is set forth at 5 U.S.C. § 8435(a)(1), which provides that a plan participant "may withdraw all or part of a Thrift Savings Fund account . . . only if . . . [they and their] spouse jointly waive, by written election, any right which the spouse may have to a survivor annuity."

In *United States v. Novak*, the *en banc* Ninth Circuit held "that criminal restitution orders can be enforced by garnishing retirement funds, but with the funds only payable when the defendant has a current, unilateral right to receive payments under the terms of the retirement plan."[38] Thus, if Nancy Wells has a right to restrict Mr. Wells' ability to access his TSP, that right may impact the availability of the TSP account for restitution.

The Ninth Circuit has "recognized from the breadth of [the MVRA] Congress's intent to broaden the government's collection powers to reach all of a *defendant's* assets."[39] The Circuit has held that "the government can immediately

---

[36] Docket 1395 at 10 (quoting *United States v. Belan*, 2008 WL 2444496, *3 (E.D. Mich. 2008); and *United States v. Beulke*, 892 F. Supp. 2d 1176, 1180-81 (D. S.D. 2012) ("While the concept of marital property is critical to resolving the administration of estates and divorce proceedings, it will not vest in a non-divorced spouse an interest in her partner's ERISA-qualified pension plan.")).

[37] Docket 1439 at 6–9.

[38] 476 F.3d at 1043.

[39] *United States v. Swenson*, 971 F.3d 977, 983 (9th Cir. 2020) (emphasis in original).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 8 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 8 of 19

garnish the corpus of a retirement plan to satisfy a MVRA judgment—rather than merely obtain post-retirement payments that otherwise would have gone to the defendant—if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time."[40] However, "because the government's right is to step into the *defendant's* shoes, it will not be able unilaterally to cash out a retirement plan when [that plan] requires that lump sum payments be made payable only with spousal consent."[41] This limitation reflects Congress' intent "to protect 'blameless' dependents."[42] However, if a defendant's retirement plan does not provide survivor annuities, "the government does not need to receive spousal consent to cash out these plans (unless the plan itself provides otherwise)."[43]

Here, Mr. Wells' age and length of service make him eligible to withdraw all of his contributions to his TSP.[44] But the TSP also provides survivor annuities and requires spousal consent for any lump sum withdrawal.[45] A court can order

---

[40] *Novak*, 476 F.3d at 1063.

[41] *Id.* (emphasis in original).

[42] *Novak*, 476 F.3d at 1063 (quoting *Guidry*, 493 U.S. at 376).

[43] *Novak*, 476 F.3d at 1064 (explaining "that is because Congress has chosen in those instances not to protect spouses against a participant's decision to squander any lump sum due").

[44] 5 CFR §§ 1650.2, 1650.31.

[45] *Novak*, 476 F.3d at 1063 (holding that "the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment—rather than merely obtain post-retirement payments that otherwise would have gone to the defendant—if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time"); *id.* at 1054 (The ""MVRA authorizes the enforcement of restitution orders against retirement plan benefits[.]"); *United States v. Fellows*, Case No. 8:19CR28, 2019 WL 2371715, at *2 (D. Neb. June 5, 2019) (A defendant's "TSP account may be subject to garnishment for a criminal restitution order that

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 9 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 9 of 19

restitution from the defendant's TSP account, but without spousal consent can only prohibit lump sum withdrawals from the account and order monthly payments be directed to restitution.[46]

### C. Monthly retirement and disability payments

According to Dr. Taylor's analysis, Mr. Wells receives payments from his military retirement in the amount of $1,873 per month, civil service retirement payments of $916 per month, and VA disability benefits in the amount of $1,234.68 per month.[47]

The interface between the MVRA and federal consumer protection laws is somewhat complex and affects the manner in which restitution can be collected from Mr. Wells' monthly retirement and disability payments. The MVRA explicitly states that the exemptions contained in the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. § 3014, do not apply to the enforcement of a federal criminal judgment.[48] However, § 3613(a)(3) of the MVRA does apply provisions of

---

results from the sentencing of a participant pursuant to the MVRA.").

The government cites to *United States v. Abell*, 985 F.3d 111 (1st Cir. 2021), in support of its position that the Court can order all of Mr. Wells' TSP account be used for restitution. Docket 1452. However, the terms of the 401(k) retirement plan at issue in *Abell* did not require spousal consent before the account holder could receive a lump sum payout. 985 F.3d at 114–15. The Court can also freeze the TSP account and prohibit withdrawals pursuant to the All Writs Act, 28 U.S.C. § 1651.

[46] The record does not reflect the amount of Mr. Wells' monthly TSP payment.

[47] Docket 1435-1 at 1. The disability benefits may be reduced to a 10% rating, with payments of $142.29 per month. Docket 1458 at 18–19.

[48] 18 U.S.C. § 3613(a)(2).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 10 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 10 of 19

the Consumer Credit Protection Act (CCPA) to the enforcement of a restitution judgment. The CCPA limits the amount which can be garnished for restitution to 25% of a debtor's disposable earnings in most cases.[49]

Courts interpreting the CCPA are divided over whether retirement income is subject to the 25% limitation.[50] For purposes of this order, it need not be decided whether the 25% limitation applies to Mr. Wells' monthly payments. For even assuming the CCPA operates to limit amounts recoverable pursuant to a writ of garnishment, this Court has discretion under the All Writs Act, 28 U.S.C. § 1651, to take a higher percentage of Mr. Wells' monthly payments because he is incarcerated.

The All Writs Act authorizes a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[51] It is a "legislatively approved source of procedural instruments designed to achieve the rational ends of law," and authorizes a district court "to issue such commands . . . as may be necessary or appropriate to effectuate and

---

[49] 15 U.S.C. §§ 1672(a), 1673(a).

[50] *Usery v. First Nat'l Bank of Arizona*, 586 F.2d 107, 108 (9th Cir. 1978) (noting that the maximum disposable earnings that may be garnished is 25% of weekly disposable earnings); *United States v. Crawford*, Case No. F-04-0200-TAG, 2006 WL 2458710, *2–3. (E.D. Cal. 2006) (finding that retirement annuity payments do not constitute earnings pursuant to the CCPA). *But see United States v. Thomas*, Case No. 2:11-mc-00064-LKK-KJN, 2012 WL 147876, *7–8 (E.D. Cal. 2012) (citing cases, but not referencing *Usery*); *United States v. DeCay*, 620 F.3d 534, 544 (5th Cir. 2006) (holding that only 25% of monthly pension benefits may be garnished pursuant to the CCPA); *United States v. Lee*, 659 F.3d 619, 622 (7th Cir. 2011) (same).

[51] 28 U.S.C. § 1651.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 11 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 11 of 19

prevent the frustration of orders it has previously issued."[52] The MVRA expressly authorizes courts to use "all other available and reasonable means" to collect restitution.[53] Courts have used the All Writs Act in "restraining a restitution debtor from diverting or concealing assets to avoid paying restitution"[54] and in garnishing in excess of the 25% authorized under the CCPA.[55]

Use of the All Writs Act is appropriate to execute upon an increased percentage of an incarcerated defendant's income in that: (1) the defendant has significantly reduced living expenses, thus reducing the need for the protection of the CCPA[56]; (2) 18 U.S.C. § 3664(f)(2) allows for modifications of the order if circumstances change[57]; and (3) 18 U.S.C. § 3664(n) requires that when a defendant is incarcerated and "receives substantial resources from any source,

---

[52] *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (internal quotations and citations omitted).

[53] 18 U.S.C. § 3664(m)(1)(A)(ii).

[54] *United States v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011) (collecting cases).

[55] *United States v. Cunningham*, 866 F. Supp. 2d 1050, 1062 (S.D. Iowa 2012) (authorizing garnishment of 25% of retirement payments under CCPA and the remaining 75% pursuant to the All Writs Act).

[56] *See United States v. Cooper*, 2006 WL 3512936, *5 (D. Kan. 2006) ("The purpose of § 1673(a) of the CCPA was to prevent honest debtors from plunging into bankruptcy by protecting at least 75 percent of their regular take home pay so that they would have enough cash to meet their basic personal and family needs.").

[57] *See United States v. Dolan*, 571 F.3d 1022, 1032 (10th Cir. 2009) ("So if a district court's . . . payment schedule proves too onerous, the defendant is not stuck, overwhelmed with an obligation he cannot meet and without the means to seek redress.  Congress has specifically directed that the doors of the district court should remain open to the defendant, and that the court is free to revise its payment schedule at any time.").

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 12 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 12 of 19

including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed."

Based upon the above analysis, this Court finds that 100% of Mr. Wells' monthly retirement and disability payments are available for restitution. Thus, this Court finds that the assets available for restitution consist of (1) 50% of the value of the Kodiak house; (2) monthly annuity payments from the TSP; and (3) monthly retirement and disability benefit payments.

### III. COLLECTION OF RESTITUTION

Determining the amount of Mr. Wells' assets available for restitution does not end this Court's inquiry. Although the primary purpose of the MVRA is to ensure that victims are made whole,[58] a defendant's financial circumstances are relevant to the determination of the rate at which the restitution must be paid.[59] Pursuant to § 3664(f)(2), this Court must consider Mr. Wells' financial resources, assets, projected income and obligations and demonstrate its consideration of them on the record.[60] Here, the concern is not with Mr. Wells, who will be

---

[58] *United States v. Crandall*, 525 F.3d 907, 916 (9th Cir. 2008).

[59] *United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013).

[60] *United States v. Leonard*, 502 Fed.Appx. 685, 686 (9th Cir. 2012); *United States v. Berger*, 574 F.3d 1202, 1206 (9th Cir. 2009); *United States v. Leftwich*, 628 F.3d 665, 667–68 (4th Cir. 2010).

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 13 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 13 of 19

incarcerated for the remainder of his life, but for Nancy Wells, who is retired and at least partially dependent on Mr. Wells' income.

This Court has carefully reviewed the financial information submitted by the defense and the government and finds that the following method of distributing Mr. Wells' assets will maximize the amounts recovered by the victims while according Nancy Wells sufficient assets and income to meet her basic needs. The Court has also considered that the Wellses removed approximately $125,000 from the TSP account in late 2020,[61] that Nancy Wells cashed out her retirement during the first trial in this case to pay for a second defense attorney,[62] and that rental income is available from the Kodiak property.

### A. Kodiak House

The Wellses' home is currently being used as a rental property, and Nancy Wells does not reside there. The government asserts that "the court should force the Wells[es] to sell their home as Nancy Wells no longer lives there and, it appears, has no intent to live there."[63] The government proposes that proceeds of the sale should be held by the Court for distribution to the victims, "with the remainder, if any, to be distributed to Nancy Wells after the determination of the

---

[61] Docket 1438.

[62] *See United States v. Wells*, 879 F.3d 900, 911–13 (9th Cir. 2018).

[63] Docket 1450 at 3. This is a change from the government's position that it "proposes that Nancy Wells be permitted by the court to maintain possession of the residence" because "the home is a problematic asset and therefore should stay in the Wells' possession." Docket 1395 at 19.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 14 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 14 of 19

appropriate amount" by the Court.[64] Mr. Wells objects to the forced sale of the house for two reasons: First, because the sale of the house is enjoined by a state court order.[65] Second, because of the poor condition of the house, any "[s]ale of the property will result in returns drastically below market value."[66] Mr. Wells proposes that the Court not determine the sale of the house until after the direct appeal is concluded, and proposes that in the meantime the Wellses be prohibited from in any way transferring ownership of the house without the Court's permission and required to maintain the condition of the house.[67] The government contends that the state court stay is of no matter, because it can work with the victims "with respect to removing any state court stay on the sale of the residence" since the victims have an interest in the property in both federal and state court proceedings.[68]

The logistics of a forced sale of the house would pose difficulty given the repeated violation of court orders—the failure to file affidavits in 2014 and the TSP withdrawal in 2020—the state court order regarding the house, and the presence of tenants. Accordingly, the Court will not order the sale of the Kodiak house.[69]

---

[64] Docket 1450 at 3.

[65] Docket 1451 at 3.

[66] Docket 1451 at 3.

[67] Docket 1451 at 3.

[68] Docket 1450 at 3.

[69] Nancy Wells has not consented to the sale of the Kodiak house.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 15 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 15 of 19

Rather, the Court will aware the substantial majority of Mr. Wells' other assets to the victims in restitution, with 80% of the monthly payments from the TSP and 80% of the monthly military, civil service, and disability to be paid to the victims until the full amount of restitution has been paid. The Court also orders that Mr. Wells shall not sell, encumber, gift, or otherwise transfer his ownership of the Kodiak house without seeking further order of this Court. Mr. Wells shall maintain, preserve, and otherwise keep safe his interest in the Kodiak property until the conclusion of the direct appeal proceedings in this case.[70] At that time, Mr. Wells may seek relief from this order pursuant to 18 U.S.C. §§ 3663A and 3664.

### B. THRIFT SAVINGS PLAN (TSP)

Pursuant to 18 U.S.C. §§ 3663A and 3664, the Court orders that restitution is owed by defendant James Michael Wells for the murders of Richard Belisle and James Hopkins pursuant to the Mandatory Victim Restitution Act. It is ordered that 80% of funds are awarded from Mr. Wells' TSP account to be applied to the Court's restitution order. It is further ordered that James Michael Wells shall not sell, encumber, gift, withdraw from, access, or otherwise transfer ownership of James Wells' TSP account without seeking further order of this Court.[71] Accordingly, the Thrift Savings Plan is hereby ordered to freeze for withdrawal and transfer

---

[70] Any rental income from the Kodiak house may be retained by the Wellses.

[71] The government shall consult with the Thrift Savings Plan and submit any additional proposed order necessary to effectuate this order.

purposes all funds in the Thrift Savings Plan for account holder James Michael Wells until further order of the Court. Monthly disbursement of the TSP account funds subject to the Court's restitution order will occur upon further order of this Court. All necessary and owed taxes resulting from the disbursement shall be withheld by the Thrift Savings Plan pursuant to its regulations and the law.

Pursuant to 5 C.F.R. §§ 1653.33–36, this Court orders that:

(1) restitution in this case is ordered pursuant to 18 U.S.C. §§ 3663A and 3664;

(2) the total amount of restitution owed by Defendant is $1,921,640;

(3) the TSP is to pay 80% of Mr. Wells' monthly benefits to the victims for restitution;

(4) the government will provide Defendant's SSN to the TSP in a separate document; and

(5) the name and address of the payee is:
Clerk of Court, U.S. District Court for the District of Alaska
222 W. 7th Ave., #4
Anchorage, AK 99513

## C. MONTHLY MILITARY, VA, AND CIVIL SERVICE PAYMENTS

In recognition that the Court is not making the real property subject to restitution, the Court authorizes the government to garnish up to 80% of James Michael Wells' military, VA and Civil Service payments through the provisions of the MVRA and All Writs Act.

Pursuant to 18 U.S.C. § 3663A and 18 U.S.C. § 3664, it is the order of this

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 17 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 17 of 19

Court that restitution is owed by the defendant James Michael Wells for the murders of Richard Belisle and James Hopkins under the Mandatory Victim Restitution Act. The Court hereby awards 80% percent of all future retirement and disability payments belonging to James Wells as restitution in this matter. The United States Department of Veteran's Affairs, the United States Department of Veteran's Affairs Office of Disability, and the Civil Service Retirement System are hereby ordered to direct 80% of all forthcoming retirement and disability benefits for James Michael Wells (SSN XXX-XX-0365) to this Court for placement in an interest-bearing trust account beginning immediately. The remainder of such monthly retirement and disability benefits shall be paid in the manner currently in place to James Michael Wells or his beneficiary pursuant to agency regulations and the law. This order is based on the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A and 18 U.S.C. § 3664 and the All Writs Act, 28 U.S.C. 1651.

**IV.  MISCELLANEOUS PROVISIONS**

(1) Pursuant to 18 U.S.C. § 3664(f)(2), either party may petition the Court for a modification of this Order based upon changed circumstances;

(2) The government may file the proposed orders or other documents it determines are necessary to fully effectuate the terms of this order;

(3) This order does not address any payments the defendant is entitled to receive through the Social Security Administration. Should it be determined that the defendant is entitled to such payments, the government may seek

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 18 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 18 of 19

to garnish those payments and this Court will consider such a request in light of the factors discussed above; and

(4) Unless otherwise directed by this Court, the Clerk of Court shall distribute restitution to the two victims' estates on a pro rata basis: 39.7% shall be distributed to the estate of Richard Belisle; 61.3% shall be distributed to the estate of James Hopkins.[72]

IT IS SO ORDERED

DATED this 21st day of April, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[72] The Court has calculated the percentage of the total amount of restitution ($1,921,640) that is owed to each victim's estate. The estate of Richard Belisle is owed $742,882, which is 39.7% of the total amount of restitution. The estate of James Hopkins is owed $1,178,758, which is 61.3% of the total amount of restitution.

Case No. 3:13-cr-00008-SLG, *United States v. Wells*
Restitution Order
Page 19 of 19
Case 3:13-cr-00008-SLG   Document 1459   Filed 04/21/21   Page 19 of 19