**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAMES MICHAEL WELLS,

Defendant.

Case No. 3:13-cr-00008-SLG

## ORDER ON REMAND

By prior order, the Court had directed the Clerk of Court to release funds held in the Court's registry to the Government so that the funds could be disbursed to the victims' estates.[1] The funds originated from Defendant's Thrift Savings Plan ("TSP") account, were withdrawn by the Government, and then were placed in the Court's registry. Defendant appealed the Court's order directing the Clerk to release the TSP funds. On appeal, the Ninth Circuit held that "[u]nder the [Mandatory Victims Restitution Act ("MVRA")], the government cannot enforce a restitution order by cashing out a defendant's retirement plan account if the retirement plan's terms prohibit the defendant from doing so without spousal consent."[2] And because 5 U.S.C. § 8435 prohibited Defendant "from cashing out the balance of his TSP account without his spouse's consent," the Ninth Circuit vacated this Court's prior

[1] Docket 1525 at 4.

[2] *United States v. Wells*, 156 F.4th 907, 916 (9th Cir. 2025) [hereinafter *Wells III*].

order and remanded the case "for restitution proceedings consistent with [its] opinion, including a determination of whether Wells' TSP funds constitute 'earnings' under 15 U.S.C. § 1673 such that any garnishment would be limited to 25% under the MVRA."[3]

## BACKGROUND

In 2019, Defendant was convicted for the murders of two of his co-workers at a U.S. Coast Guard maintenance facility in Kodiak, Alaska.[4] On January 7, 2020, the Court sentenced Defendant to life in prison.[5] On April 21, 2021, the Court ordered Defendant to pay $1,921,640 in restitution to the victims' estates.[6] In the order, the Court rejected the Government's contention that it was entitled to 100% of the TSP funds, finding that without the consent of Defendant's spouse, the Court could not order a lump sum payment but only that monthly distributions from the account could be garnished for restitution.[7] As to how much of the monthly TSP payments could be garnished, the Court agreed with the Government that the All Writs Act authorized garnishment of 80% of the monthly TSP payments even though

[3] *Id.*

[4] *United States v. Wells*, 55 F.4th 784, 788-91 (9th Cir. 2022) [hereinafter *Wells II*].

[5] Docket 1460.

[6] Docket 1459; Docket 1460.

[7] Docket 1459 at 7-10, 16-17; *see also Wells III*, 156 F.4th at 910.

the Consumer Credit Protection Act ("CCPA"), which is incorporated into the MVRA, "limits 'garnishment' to 25% of an individual's 'aggregate disposable earnings.'"[8]

Defendant appealed, and the Ninth Circuit vacated the restitution order, holding that "[b]ecause the MVRA creates specific statutory requirements for garnishing earnings, the All Writs Act cannot be used to sidestep those requirements."[9] The Ninth Circuit remanded the case to this Court "to determine whether each of Wells's benefit payment streams constituted 'earnings' under 15 U.S.C. § 1673" that would therefore be subject to the 25% garnishment cap.[10]

On remand, the Government cited 5 C.F.R. § 1653.33 to support its request for an amended criminal judgment that made restitution due "immediately" such that "the government could serve the judgment on the TSP administrator to 'make a determination and provide information about right of survivorship, if any, and account status/funding.'"[11] The Court issued an amended criminal judgment "that added the following special instruction regarding restitution: 'In addition, the United States government may enforce collection of the lump sum payment at any time.'"[12]

A few months later, Defendant learned that the Government "had completely cashed out his TSP account, prompting him to file a motion for an order to show

---

[8] Docket 1459 at 8, 17; *see also Wells III*, 156 F.4th at 910 (citing 18 U.S.C. § 3613(a)(3)).

[9] *Wells II*, 55 F.4th at 800.

[10] *Id.*

[11] *Wells III*, 156 F.4th at 910.

[12] *Id.*; *see also* Docket 1495 at 4.

cause regarding the government's restitution collection actions."[13] At the time the Government seized the funds from Defendant's TSP account, the account had a balance of $562,398.73.[14] Upon withdrawal of the funds, TSP administrators withheld $112,479.75 of the account balance and transmitted it to the Internal Revenue Service ("IRS") for the resulting federal tax liability.[15] The remaining funds, totaling $449,318.98, were deposited with the Clerk of Court where they have remained.

In response to Defendant's motion for an order to show cause, the Government again relied on federal regulations in 5 C.F.R. Part 1653, claiming that they provided "a separate collection method for criminal restitution that is not subject to a spousal consent requirement."[16] The Court agreed with the Government, finding that "because the government had seized the TSP funds through an 'administrative collection' under Part 1653 rather than through garnishment, . . . the [Court's] previous TSP ruling prohibiting a lump-sum withdrawal without spousal consent did not apply."[17] The Court then entered an order directing that all of the

[13] *Wells III*, 156 F.4th at 910.

[14] Docket 1574 at 9; Docket 1574-2 at 1.

[15] Docket 1574 at 9-10.

[16] *Wells III*, 156 F.4th at 910.

[17] *Id.* at 910-11.

TSP funds held by the Court be disbursed as restitution, with each victim's estate receiving 50% of those funds.[18]

Defendant again appealed.[19] The Ninth Circuit held that neither 5 C.F.R. § 1653.33 nor 5 U.S.C. § 8437(e)(3) overrode the spousal protections for TSP accounts set forth in 5 U.S.C. § 8435, such that the Government could not "unilaterally cash out a retirement plan balance when the plan's terms require spousal consent."[20] The Ninth Circuit vacated this Court's restitution order and remanded "for restitution proceedings consistent with [its] opinion, including a determination of whether Wells' TSP funds constitute 'earnings' under [the CCPA] such that any garnishment would be limited to 25% under the MVRA."[21]

The case is now again before the Court on remand. Defendant filed a Restitution Brief at Docket 1574.[22] The Government filed a Restitution Brief at Docket 1575.[23] The Court held a restitution hearing on March 4, 2026.[24] The Court then ordered the Government to file a proposed order as to all remaining restitution

---

[18] Docket 1527.

[19] Docket 1528.

[20] *Wells III*, 156 F.4th at 914; *see id.* at 913-16.

[21] *Id.* at 916.

[22] *See also* Docket 1585 (Defendant's Response to Government's Restitution Memorandum).

[23] *See also* Docket 1582 (Government's Memorandum in Response).

[24] Docket 1588.

issues.[25] The Government filed its proposed order at Docket 1599-1. Defendant filed objections to the proposed order at Docket 1600, to which the Government replied at Docket 1601.

## DISCUSSION

### I. Restoration of the Funds to Defendant's TSP Account

As an initial matter, the Court must determine whether to return the funds in the Court's registry to TSP administrators, as requested by the Government. The Government asks the Court to "release funds in the amount of $449,318.98 held in the Registry for this case and transfer those funds to the Federal Retirement Thrift Investment Board" and to order the IRS to return to the Board "approximately $112,479.75" that the Board withheld and transmitted to the IRS when the Government withdrew the entire balance of Defendant's TSP account.[26] The Government contends that "the defendant's TSP account can be reconstituted if the Clerk transmits those funds back to TSP" and "that it is possible for IRS to return the tax withholding payment it received from TSP upon a request by TSP to IRS."[27] The Government filed a declaration by Adrion Batson, a Participant and Operations Branch Chief with the Federal Retirement Thrift Investment Board.[28] Mr. Batson

---

[25] Docket 1598.

[26] Docket 1599-1 at 1; *see also* Docket 1575 at 1.

[27] Docket 1575 at 4.

[28] Docket 1591; Docket 1591-1.

stated that the Board "is able" to receive funds from the Court's registry and from the IRS to deposit into Defendant's reconstituted TSP account.[29]

Defendant disagrees with the Government that Defendant's TSP could be reconstituted with funds from the Court's registry and the IRS, maintaining that "[o]nce withdrawn, the TSP funds cannot be restored."[30] Defendant notes that Mr. Batson "describes the technical process by which the funds would be transferred, but does not cite any legal authority that gives the Court the power to override statutory and regulatory provisions that prohibit funds from being returned to a TSP account."[31]

Federal law provides that "[a]n employee or Member who separates from Government employment is entitled to the amount of the balance in the employee's or Member's account" and "is entitled and may elect to withdraw from the Thrift Savings Fund the balance of the employee's or Member's account as (1) an annuity; (2) a single payment; (3) 2 or more substantially equal payments to be made not less frequently than annually; or (4) any combination of payments as provided under paragraphs (1) through (3) as the Executive Director may prescribe by regulation."[32]

---

[29] Docket 1591-1 at ¶¶ 3-4 (Batson Decl.) (stating that the Board "is able" to receive funds from the Court's registry and from the IRS to deposit into Defendant's TSP account).

[30] Docket 1574 at 2 (citing 5 C.F.R. § 1650.17(b)); *see also* Docket 1585 at 8 (citing 5 U.S.C. § 8433).

[31] Docket 1600 at 5.

[32] 5 U.S.C. § 8433(a)-(b).

Further, "[a] former employee or Member may not return a payment that was made pursuant to an election under this section."[33]

Federal regulations similarly provide that "participants may elect a distribution of all or a portion of their TSP accounts in a single payment, a series of installment payments, a life annuity, or any combination of these options."[34] Once a participant's "distribution election . . . has been processed," it "cannot be changed or cancelled."[35] "Consequently, funds disbursed cannot be returned to the TSP."[36]

The Government maintains that these provisions do not apply because the "regulation applies to a 'post-employment distribution election,' which [the Government maintains] is not what occurred here, and in any event the [Government] already informed defense counsel that the defendant's TSP account can be restored."[37]

The Court is not persuaded by the Government's arguments. The statutory and regulatory provisions identified above authorize a single payment to withdraw TSP funds after an employee separates from government employment. And because, as Defendant argues, "the Government steps 'into the shoes of the defendant'" and acted as a "proxy for Mr. Wells' legal interests" when it elected to

---

[33] *Id.* § 8433(d)(2).

[34] 5 C.F.R. § 1650.11(a)

[35] *Id.* § 1650.17(b).

[36] *Id.*

[37] Docket 1582 at 2.

withdraw the entirety of his TSP account, a de facto post-employment election occurred here and the funds cannot, or at least should not, be returned to the TSP.[38] Further, whether it is logistically possible for Defendant's TSP account to be restored is immaterial to whether restoration is consistent with federal law.[39]

For the foregoing reasons, the Court will not order restoration of the funds held in the Court's registry to the TSP.

## II. Whether Required Minimum Distributions are "Earnings" Under the CCPA

Having denied the Government's request to order the return of the withdrawn TSP funds to the TSP, the Court must determine how to disburse the funds. Defendant maintains that, pursuant to the CCPA, the Government would have been limited to 25% of any periodic distributions from Defendant's TSP account, to include any Required Minimum Distributions ("RMD"), and the Court should similarly find that the 25% CCPA cap applies to the funds in the Court's registry.[40] Applying the cap to what Defendant would have received as RMDs beginning in 2025 when he turned 73 years old, Defendant calculates that "a total of $87,000 would have been set aside for restitution over the life of the TSP account at the low end, or

---

[38] Docket 1585 at 8; *see also* Docket 1575 at 11 ("In *Novak*, the Ninth Circuit held that, when seeking to garnish a retirement plan to satisfy a criminal restitution debt, the government 'step[s] into the defendant's shoes,' meaning that it has whatever rights a defendant has to receive funds from the plan." (quoting *United States v. Novak*, 476 F.3d 1041, 1062-63 (9th Cir. 2007) (en banc))).

[39] *See* Docket 1600 at 5 ("The declaration describes the technical process by which the funds would be transferred, but does not cite any legal authority that gives the Court the power to override statutory and regulatory provisions that prohibit funds from being returned to a TSP account.").

[40] Docket 1574 at 10-14.

$106,704 at the high end."[41] Based on these figures and concerns about the impact of the Government's unilateral liquidation of Defendant's TSP account on Defendant's spouse, Defendant "proposes that $150,000 [of the TSP funds in the Court's registry] be set aside for restitution," with the remainder released to Defendant's spouse.[42] Defendant also proposes that his spouse "execute a release of liability for whatever claims she could assert against the TSP administrator and the United States for its violation of the federal statute and TSP regulations."[43]

The Government maintains that it "is entitled to garnish 100% of distributions from the TSP account once reconstituted, and is also entitled to be designated the beneficiary of the account and paid the balance upon the death of the defendant."[44] Further, "[t]he government is not aware of any authority for the Court to simply divide up the TSP funds held by the Clerk based on the hypothetical that the defendant will not make any withdrawals from his TSP over his lifetime and that all withdrawals will be . . . RMDs."[45]

The MVRA provides that the United States may enforce a judgment imposing a fine against all property or right to property of the person fined and that the CCPA

[41] Docket 1574 at 14.

[42] Docket 1574 at 15.

[43] Docket 1574 at 5.

[44] Docket 1582 at 2.

[45] Docket 1582 at 2-3.

applies to enforcement of the judgment.[46] In turn, the CCPA provides "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week . . . ."[47] The CCPA defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld," with "earnings" defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."[48]

RMDs are required under 26 U.S.C. § 401(a)(9) and 5 CFR § 1650.16 beginning when a participant turns 73 years old. "In the event that a separated participant does not withdraw from his or her account an amount sufficient to satisfy his or her required minimum distribution for the year, the TSP record keeper will automatically distribute the necessary amount . . . ." by no later than December 31 of that year.[49]

In support of his argument that RMDs are "earnings" pursuant to the CCPA, Defendant relies on *United States v. DeCay,* 620 F.3d 534 (5th Cir. 2010), and

---

[46] 18 U.S.C. § 3613(a), (a)(3).

[47] 15 U.S.C. § 1673(a)(1).

[48] 15 U.S.C. § 1672(a)-(b).

[49] 5 C.F.R. § 1650.16(a), (c).

*United States v. Lee*, 659 F.3d 619 (7th Cir. 2011).[50] In *DeCay*, the Fifth Circuit held that monthly pension benefit payments are "earnings" and therefore subject to the 25% limitation in the CCPA.[51] The Fifth Circuit explained that "the statutory language [is] unambiguous" because "[t]he statute explicitly defines 'earnings' to include 'periodic payments made *pursuant to* a pension or retirement program,'" and the "parties [did] not dispute the terms of the pension plan or that the plan entitles Barre to monthly pension-benefit payments."[52] The Fifth Circuit further reasoned that its conclusion was consistent with congressional intent behind the CCPA, as "[r]etirement benefits, like wages, are intended to provide a 'continued means of support' and subsistence for a judgment-debtor and his family."[53] Similarly, in *Lee*, the Seventh Circuit held that annual mandatory payments from a 401k and defined pension plan are "earnings" and therefore subject to the 25% garnishment limitation in the CCPA.[54]

In support of its contention that RMDs are not earnings pursuant to the CCPA, the Government relies on *Kokoszka v. Belford* and *Usery v. First National Bank of Arizona*.[55] In *Kokoszka*, the Supreme Court held that tax refunds are not "earnings"

---

[50] Docket 1574 at 11-12.

[51] 620 F.3d at 536, 543-44.

[52] *Id.* at 544 (emphasis in original).

[53] *Id.* at 544 n.10.

[54] 659 F.3d at 621-22.

[55] Docket 1575 at 7-9 (first citing 417 U.S. 642 (1974); and then citing 586 F.2d 107 (9th Cir. 1978)).

under the CCPA and thus are not subject to the 25% garnishment cap and the entire refund could be transferred to the trustee during bankruptcy proceedings.[56] In so holding, the Supreme Court explained that Congress intended that the CCPA's limitation on the garnishment of earnings "to avoid the necessity of bankruptcy" and therefore the Court affirmed the lower court's holding that "the terms 'earnings' and 'disposable earnings,' as used in 15 U. S. C. §§ 1672, 1673, did not include a tax refund, but were limited to 'periodic payments of compensation and [do] not pertain to every asset that is traceable in some way to such compensation.'"[57]

In *Usery*, the Ninth Circuit held that "a bank served with a garnishment directed at a depositor's account" need not determine whether the CCPA's 25% garnishment cap would apply to funds released subject to the garnishment.[58] In so holding, the Ninth Circuit explained that "[t]he restrictions of [the CCPA] are defined in terms of a percentage of compensation for a weekly pay period and in terms of the minimum wage for a 30-hour week. These calculations bear no relation to the lump sum amount in a checking or savings account."[59] Further, the Circuit Court reasoned that the CCPA provides that "an employer may not discharge an employee by reason of the fact that his wages have been garnished for one

---

[56] 417 U.S. at 642, 649-51.

[57] *Id.* at 651 (quoting *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir. 1973)).

[58] 586 F.2d at 107-08,

[59] *Id.* at 109.

indebtedness" and "[t]his purpose would not be furthered by extending the [CCPA's] restrictions to garnishee banks since garnishments of bank accounts, unlike garnishment of an employer, is not likely to lead to loss of employment."[60] The Court analogized to the tax refund considered by the Supreme Court in *Kokoszka*, explaining that "[l]ike a lump sum tax return, a bank account has neither an element of periodicity nor the critical relationship to a person's subsistence that a paycheck does."[61]

The Government maintains that RMDs are akin to the tax refund considered in *Kokoszka*, as both are paid, if paid at all, once per year, and both are calculated on a yearly basis and can vary each year.[62] And the Government contends that a TSP is similar to a bank account as considered in *Usery* because "a TSP participant who has reached retirement age can withdraw lump sum amounts from their TSP account at any time . . . ."[63] Further, according to the Government, "RMDs are also not 'periodic payments pursuant to a pension or retirement program,'" as they are "mandated by statute."[64]

---

[60] *Id.* at 110.

[61] *Id.*

[62] Docket 1575 at 9.

[63] Docket 1575 at 8.

[64] Docket 1575 at 9-10 (quoting 15 U.S.C. § 1572(a)). The Government relies on other cases that are not relevant because they do not address distributions from retirement accounts where a unilateral lump sum payment by the defendant is not permitted absent spousal consent. *See, e.g.*, *United States v. Sayyed*, 186 F. Supp. 3d 879, 881 (N.D. Ill. 2016), *aff'd,* 862 F.3d 615 (7th Cir. 2017) (upholding liquidation of funds held in retirement accounts because "both accounts allow him [to] withdraw their full value now"); *United States v. Renfrow*, Case No. C17-1305 TSZ, 2017 WL

The Court finds that under the plain language of the CCPA, RMDs are "periodic payments pursuant to a pension or retirement program" and therefore the CCPA's 25% cap applies to the disbursement of the TSP funds in the Court's registry.[65] RMDs from the TSP are required by statute and regulation if a TSP participant does not withdraw a certain amount from his account within a given year.[66] Therefore, an RMD is made "pursuant to" the TSP.

The Court's conclusion is supported by *Lee*, the case in which the Seventh Circuit held that annual mandatory payments from a 401k and defined pension plan are "earnings" and therefore subject to the 25% garnishment limitation in the CCPA.[67] In reaching this holding, the Seventh Circuit distinguished *Kokoszka*, explaining that there, "[n]either the statutory language nor the legislative history or purpose supported treating the tax refund as earnings even though it was traceable to earnings. Unlike the reference to 'periodic payments pursuant to a pension or

---

6389303, at *2 (W.D. Wash. Dec. 14, 2017) ("[The defendant] has offered no evidence to suggest that she could not immediately withdraw the entire amount in either or both of the Greenway accounts.").

[65] 15 U.S.C. § 1672(a); Docket 1600 at 8-9 (first citing *United States v. DeCay,* 620 F.3d 534 (5th Cir. 2010) (holding that the United States could garnish only 25% of the defendant's monthly benefit from the Louisiana Sheriffs Pension and Relief Fund); then citing *United States v. Miller*, 588 F. Supp. 2d 789 (W.D. Mich. 2008) (issuing order of garnishment allowing the United States to seize 25% of the defendant's monthly benefit from the General Motors Hourly Pension Plan); and then citing *United States v. Wilson*, 2007 WL 4557774 (S.D. Ga. Dec. 20, 2007) (granting the Government's proposed writ of continuing garnishment in the amount of 25% of the defendant's monthly benefit from the Teachers Retirement System of Georgia)).

[66] 26 U.S.C. § 401(a)(9); 5 CFR § 1650.16

[67] 659 F.3d at 621-22.

retirement program,' [the CCPA] does not mention tax refunds."[68] The *Lee* Court further explained that "[t]he statutory language refers to periodic payments, which describe the . . . annual payments from Lee's 401(k) and defined benefit pension plan" and "[g]iven the unambiguous language of the statute, periodic payments from a pension or retirement savings plan made in accordance with its terms would be made 'pursuant to' the pension or retirement plan and therefore be subject to the 25% limitation of the CCPA."[69]

Like the mandatory annual distributions in *Lee*, RMDs also occur annually and are mandatory. The cases relied on by the Government are of minimal relevance, as they did not involve mandatory annual distributions from a retirement account that was otherwise subject to a spousal consent requirement.

The Government takes issue with Defendant's suggestion "to simply divide up the TSP funds held by the Clerk based on the hypothetical that the defendant will not make any withdrawals from his TSP over his lifetime and that all withdrawals will be required minimum distributions (RMDs)."[70] But it was the Government's withdrawal of Defendant's TSP funds that made a hypothetical necessary in the first place.

---

[68] *Id.* at 622.

[69] *Id.*

[70] Docket 1582 at 2-3.

Because the Court finds that RMDs qualify as earnings pursuant to the CCPA and therefore the 25% limitation on their garnishment applies, the Court turns to the distribution of the funds in the Court's registry. Defendant proposes putting $150,000 of the funds toward his restitution obligation, which is more than the amount that Defendant calculated could have been garnished to date if the TSP had remained intact and RMDs had actually occurred.[71] The Government does not dispute Defendant's calculations nor does it propose an alternative to Defendant's proposed distribution beyond arguing that the TSP should be reconstituted with 100% of the distributions subject to garnishment. On this record, the Court therefore finds that $150,000 of the TSP funds in the Court's registry are appropriately applied toward Defendant's restitution obligation, with the remainder of the TSP funds disbursed to Defendant's spouse.

In addition to the TSP funds, the Court's registry holds approximately $13,107.68 in funds received from garnishments of Defendant's retirement income.[72] The Government seeks disbursal of those funds to the victims' estates.[73] Defendant does not respond to this portion of the Government's proposed order. Therefore, the Court also finds that $13,107.66 in funds in the Court's registry shall be equally disbursed to the victims' estates.

---

[71] Docket 1574 at 5.

[72] Docket 1575 at 3 n.1.

[73] Docket 1599-1 at 1.

There is also $843.60 in funds that were deposited into the Court registry pursuant to the first conviction and Final Order of Garnishment entered at that time, which funds were received by the Court immediately after the 2018 order vacating that order of garnishment and directing the return of the funds in the Court registry at that time to Defendant; Court staff were unaware of that final deposit at that time.[74] Those funds should be disbursed to Defendant.

**CONCLUSION**

In light of the foregoing, IT IS HEREBY ORDERED:

1. $150,000 of the $449,318.98 in TSP funds held in the Court's registry shall be disbursed to the victims' estates—50% (i.e. $75,000) to each victim's estate;
2. The remainder of the TSP funds in the Court's registry shall be disbursed to Defendant's spouse after the Court approves a release executed by Mrs. Wells that releases from liability any and all claims she could assert against the TSP administrator and the United States for its liquidation of Defendant's TSP;
3. $13,107.68 from the garnishment of Defendant's other retirement income held in the Court's registry shall be disbursed equally to the victims' estates; and

[74] *See* Docket 828 (March 12, 2018 Order).

4. $843.60 of funds collected from garnishments in March 2018 shall be returned to Defendant Wells or his designee.

DATED this 24th day of November, 2026 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE